**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., | Case No.: 23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF DEBTORS' MOTION TO ENFORCE THREE ORDERS PROTECTING
DEBTORS - THE AUTOMATIC STAY, STIPULATED STAY RELIEF ORDER,
AND STATUS QUO INJUNCTION - AND FOR SANCTIONS
AGAINST LEVONA HOLDINGS LTD. PURSUANT TO
SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that, on November 27, 2023, Eletson Holdings Inc. and its Debtors affiliates (collectively the "Debtors"), Debtors-in-possession in the above-captioned chapter 11 case, filed the *Debtors' Motion to Enforce Three Orders Protecting Debtors – the Automatic Stay, Stipulated Stay Relief Order, and Status Quo Injunction – and for Sanctions Against Levona Holdings Ltd. Pursuant to Sections 105(A) and 262 of the Bankruptcy Code* (the "Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Court").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion (the "Hearing") will be held before the Honorable John P. Mastando III, United States Bankruptcy Judge for the Southern District of New York, in the United States Bankruptcy Court for the Southern District of New York (the "Court"), in Courtroom No. 501, located at One Bowling Green, New York, New York 10004, on **December 20, 2023 at 12:00 P.M. (Eastern Time).**

---

[1]    The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to entry of the order must: (i) be made in writing, (ii) state with particularity the grounds therefor, (iii) be filed in accordance with the electronic filing procedures for the United States Bankruptcy Court for the Southern District of New York, with proof of service, with a courtesy copy delivered to the undersigned counsel and the Chambers of the Honorable John P. Mastando III, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York, 10004; and (iv) be served upon (a) counsel to the Debtors, Reed Smith LLP, 599 Lexington Avenue, New York, NY 10022, Attn: Andrew L. Buck and Louis M. Solomon, Reed Smith LLP, 10 South Wacker Drive, 40th Floor Chicago, IL 60606, Attn: Ann E. Pille and Reed Smith LLP, Three Logan Square, 1717 Arch Street, Suite 3100, Philadelphia PA 19146, Attn: Derek J. Baker and Derek Osei-Bonsu; (b) counsel to William K. Harrington, the United States Trustee for Region 2, U.S. Department of Justice, Office of the U.S. Trustee, Alexander Hamilton U.S. Custom House, One Bowling Green, Room 534, New York, New York 10004, Attn: Paul Schwartzberg, Esq. and Daniel Rudewicz, Esq. paul.schwartzberg@usdoj.gov and daniel.rudewicz@usdoj.gov); (c) and any other party in interest who files a Notice of Appearance and a request for service of documents, so as to be received by **December 13, 2023 at 4:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that only those objections that are timely filed, served and received will be considered at the Hearing. Failure to file a timely objection may result in the entry of a final order granting the relief requested in the Motion without further notice. Failure to attend the Hearing in person or by counsel may result in relief being granted or denied upon default. In the event that no objection to the Motion is timely filed and served, the relief requested in the Motion may be granted without a hearing before the Court.

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted as a hybrid hearing, either "in Person" or via "Zoom for Government."  Parties wishing to appear at the Hearing, whether making a "In Person" "live" or "listen only" appearance before the Court, must make an electronic appearance utilizing the Electronic Appearance portal located at the Court's website at:

https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Appearances must be entered no later than **December 19**, **2023 at 4:00 p.m. (Eastern Time)** (the "Appearance Deadline").  After the Appearance Deadline has passed, parties who have made their electronic appearance through the Court's website to appear via Zoom

for Government will receive an invitation from the Court with a Zoom link that will allow them to attend the Hearing.  Requests to receive a Zoom link should not be emailed to the Court, and the Court will not respond to late requests that are submitted on the day of the hearing.  Further information on the use of Zoom for Government can be found at the Court's website at https://www.nysb.uscourts.gov/zoom-video- hearing-guide.

**PLEASE TAKE FURTHER NOTICE** that the Application, as well as all other case related filings can be viewed and/or obtained by (i) accessing the Court's Website for a fee, or (ii) by contacting the Office of the Clerk of the United States Bankruptcy Court, Southern District of New York.  Please note that a PACER password is required to access documents on the Court's Website.

DATED:    New York, New York
          November 27, 2023

**REED SMITH LLP**

*/s/ Louis M. Solomon*
Louis M. Solomon
Andrew L. Buck
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: lsolomon@reedsmith.com
          abuck@reedsmith.com

-and-

Derek J. Baker
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
          dosei-bonsu@reedsmith.com
-and-

Ann E. Pille
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Proposed Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.:  23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

### DEBTORS' MOTION TO ENFORCE THREE ORDERS PROTECTING DEBTORS - THE AUTOMATIC STAY, STIPULATED STAY RELIEF ORDER, AND STATUS QUO INJUNCTION - AND FOR SANCTIONS AGAINST LEVONA HOLDINGS LTD. <u>PURSUANT TO SECTIONS 105(A) AND 362 OF THE BANKRUPTCY CODE</u>

---

[1]   The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………1

JURISDICTION ................................................................................................................ 5

FACTUAL BACKGROUND ............................................................................................ 6

   A.  Levona's Willful Violations of the Status Quo Orders ...................................... 10

RELIEF REQUESTED..................................................................................................... 15

BASIS FOR RELIEF ....................................................................................................... 16

   A.  Levona is Willfully Violating the Automatic Stay Through its Intentional and
       Repeated Violations of the Status Quo Injunction and Stipulated Stay Relief Order ........ 17

   B.  Levona Should be Found in Contempt for its Willful Violation of the
       Status Quo Orders ............................................................................................ 20

NOTICE............................................................................................................................ 22

NO PRIOR REQUEST .................................................................................................... 23

CONCLUSION................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 48th St. Steakhouse*,
   835 F.2d 427 (2d Cir. 1987)......................................................................................20

*In re 5 Adelphia Communs. Corp. v. The American Channel, LLC*,
   345 B.R. 69 (Bankr. S.D.N.Y. 2006)........................................................................20

*In re Ampal-Am. Isr. Corp.*,
   502 B.R. 361 (Bankr. S.D.N.Y. 2013)......................................................................17

*In re Anderson*,
   884 F.3d 382 (2d Cir. 2018)......................................................................................16

*Aviv v. Brainard*,
   No. 18-cv-5088 (PKC), 2018 U.S. Dist. LEXIS 176169 (S.D.N.Y. Oct. 11,
   2018) ...........................................................................................................................11

*In re Ditech Holding Corp.*,
   No. 19-10412 (JLG), 2021 Bankr. LEXIS 2274 (Bankr. S.D.N.Y. Aug. 20,
   2021) ......................................................................................................................16, 20

*Eletson Holdings, Inc., et al. v. Levona Holdings, Inc.*,
   Civil No. 23-cv-7331 (LJL) ......................................................................................10

*Fletcher v. Ball* (*In re Soundview Elite, Ltd.*),
   No. 15-5666 (KPF), 2016 U.S. Dist. LEXIS 38494 (S.D.N.Y. Mar. 23, 2016).....11

*Kamlet v. Bd. of Educ.*,
   399 N.Y.S.2d 366 (Sup. Ct. 1977).............................................................................18

*Knupfer v. Lindblade (In re Dyer)*,
   322 F.3d 1178 (9th Cir. 2003) ...................................................................................20

*In re Lehman Bros. Holdings Inc.*,
   2013 Bankr. LEXIS 5076, 2013 WL 6283572 (Bankr. S.D.N.Y. Dec. 3, 2013) ...................21

*In re Lehman Bros. Holdings, Inc.*,
   645 F. App'x 6 (2d Cir. 2016) ...................................................................................21

*Lopresti v. Pace Press*,
   868 F. Supp. 2d 188 (S.D.N.Y. 2012).......................................................................18

*In re Manchanda*,
    2016 Bankr. LEXIS 2056, 2016 WL 3034693 (Bankr. S.D.N.Y. May 19,
    2016) ........................................................................................................................20

*O'Dowd v. Trueger (In re O'Dowd)*,
    233 F.3d 197 (3d Cir. 2000) ....................................................................................17

*SEC v. Talley Indus., Inc.*,
    399 F.2d 396 (2d Cir. 1968) ....................................................................................18

*In re Sledziejowski*,
    533 B.R. 408 (Bankr. S.D.N.Y. 2015) ....................................................................11

**Statutes**

11 U.S.C. § 105(a) ...........................................................................................................16

11 U.S.C. § 541(a)(1) .......................................................................................................17

**Rules**

Fed. R. Civ. P. 65 .............................................................................................................11

**Other Authorities**

Collier on Bankruptcy P 541.07 (Alan N. Resnick & Henry J. Sommer eds., 16th
    ed.) ...........................................................................................................................17

Webster's New International Dictionary (2d ed.) .............................................................18

Eletson Holdings Inc. ("Holdings") along with the remaining above captioned debtors

and debtors-in-possession (Eletson Finance (US) LLC, and Agathonissos Finance LLC.)

(collectively the, "Debtors") move (the "Motion") this Court for entry of an order substantially

similar to the proposed order ("Proposed Order") attached hereto as **Exhibit A** enforcing against

Levona Holdings Ltd. ("Levona") three orders protecting Debtors – the (i) automatic stay, (ii) the

terms of the Stipulated Stay Relief Order and (iii) the terms of the Status Quo Injunction (each as

defined below) – and for an award for civil contempt against Levona arising from Levona's

willful violations of those three orders.  The Declarations of Vassilis E. Kertsikoff ("Kertsikoff

Decl.") and Louis M. Solomon, Esq. ("Solomon Decl.") are filed contemporaneously herewith in

support of the Motion.

**PRELIMINARY STATEMENT**

1.      Debtors bring this Motion against Levona to enforce rights and interests granted

to Debtors arising out of three separate, but related orders:  the automatic stay, this Court's

Stipulated Stay Relief Order, and the Status Quo Injunction issued in the arbitration between

Holdings, Corp and Levona (collectively, the "Status Quo Orders").  Debtors seek this Court's

intervention to stop Levona's willful and flagrant violations of these Orders, actions which

continue directly and indirectly substantially to impair Holdings' estate and the clear protections

afforded to Holdings pursuant to the terms of the Status Quo Orders.

2.      This is not the first time Holdings required the assistance of a tribunal to protect

its interest against the egregious bad acts of Levona and its alter-ego affiliates.  Following the

commencement the arbitration between Holdings, Corp and Levona (the "Arbitration"),

Honorable Ariel Belen, the arbitrator presiding over the Arbitration (the "Arbitrator"), issued a

Temporary Restraining Order, followed by a preliminary status quo injunction, which ordered

the parties to the arbitration in two specific respects:  First, to maintain the *status quo* and,

second, specifically prohibited the parties from "engag[ing] in the transfer or sale of, or attempt to sell or otherwise transfer, any assets of … [Eletson Gas LLC] … , or assets in dispute in th[e] arbitration, absent the joint written consent of the parties." Despite these clear directives, Levona proceeded to violate the TRO and Status Quo Injunction, with the goal to transfer assets of Eletson Gas LLC ("Gas") and destroy financially the company for Levona's and its affiliates own benefit – goals with severe consequences for Holdings.

3.      Levona and its affiliates then sought to utilize bankruptcy as a sword to escape the Arbitration and the Arbitrator's orders. Following the commencement of the involuntary bankruptcy proceedings against Holdings by Levona's alter-ego affiliate, Pach Shemen LLC ("Pach Shemen"), and two other alleged creditors (collectively, with Pach Shemen, the "Petitioning Creditors"), the Arbitration was stayed pending further order of this Court. In order to permit the Arbitration to continue, the Debtors and the Petitioning Creditors negotiated a *Stipulation and Order Granting Alleged Debtor's Motion for Relief from Stay to Proceed With, or, to Conform the Inapplicability of, the Automatic Stay to Prepetition Arbitration Proceedings* (ECF 48) (the "Stipulated Stay Relief Order"), designed specifically to permit the Arbitration to continue through a Final Award and confirmation appeal, at which point the parties to the Arbitration would return to this Court.

4.      Similar to the protections afforded to Holdings pursuant to the TRO and status quo injunction entered by the Arbitrator, the parties to the Stipulated Stay Relief Order agreed that "***no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent further order of this Court***" (Stipulated Stay Relief Order, ¶ 4). The stipulation was so-ordered by this Court, notice was provided to the Arbitrator and Levona, and the Arbitration

continued to its conclusion, resulting in a Final Award in favor of Holdings and Corp that is currently subject to confirmation in federal court.

5.    Significantly, in the Final Award, the Arbitrator specifically found that Levona, with the assistance of its alter-ego affiliates, violated the Arbitrators' status quo injunction numerous times (conduct that gave rise to punitive damages), including by wrongfully declaring a loan issued to Gas in default and accelerating payment of the loan and attempting to sell the *Symi* and *Telendos*—assets in dispute—while the status quo injunction was in effect.  Levona, however, remains undeterred.

6.    Levona's and its alter-ego affiliates' bad faith conduct was, and continues to be, manifest.  As the Arbitrator found:  "If there was a case warranting punitive damages, I believe this is one."  Indeed, "the evidence establishe[d]" that Levona and its affiliates "engaged in an intentionally hostile, corrupt, wanton, and deceitful campaign to the great detriment of [Gas]."  Levona continues its "hostile, corrupt, wanton and deceitful campaign" to usurp the rights and interests provided to the Debtors and specifically Holdings' estate.

7.    Despite the clear and unambiguous terms of the TRO and status quo injunction (which Levona was found by the Arbitrator to have violated repeatedly), the Stipulated Stay Relief Order, and the automatic stay, and the rights and interests afforded to the Debtors pursuant to the Status Quo Orders, Levona continues to take affirmative steps to actively violate these orders, with the clear intent to impair substantially Holdings' management and economic interests in Gas, in at least six ways:

- Marketing actively and transacting in the sale of the *Telendos* vessel, an asset in dispute in the Arbitration and subject to the Final Award;

- Directing unilaterally and without authority one or more of the Eletson parties to undertake Fundamental Actions "with an eye toward terminating" Corp's management of Gas' vessels and "[c]hang[ing] the method of appointing directors such that Levona is able to appoint them unilaterally and increase the number of directors," actions that would drastically alter the *status quo* of Gas and Holdings' management and economic interests in Gas and indeed was another of the issues specifically addressed by Arbitrator and as to which the Arbitrator found Levona and its alter-ego affiliates' conduct unlawful;

- Demanding the financial manager of the *Telendos* to make substantial and unsubstantiated payments from the *Telendos'* bank accounts, to a wholly owned subsidiary of Levona, putting at risk the vessels' long-term commercial and financial viability;

- Attempting to change the composition of the board of directors of the Greek Special Maritime Enterprise ("SME") that is the bareboat charter (lessee) of the *Symi* vessel, an asset in dispute in the Arbitration., Levona has purported to file recently with the Greek Ministry of Shipping board minutes of the SME, back dated to September 2022 in what appears to be a fraudulent attempt to skirt the Arbitrator's TRO, appointing Levona as the sole shareholder of the SME;

- Commencing two bad-faith arbitrations in the London Court of International Arbitration (the "LCIA") against Gas, one of which mirrors conduct already found to violate the injunction and one that asserts the exact same claims and issues raised and determined in the arbitration between Holdings, Corp and

Levona, for the purposes of overtaking Gas and liquidating the company to the detriment of Gas, Corp and Holdings.

8.      Despite demand by Holdings and Corp to cease and desist from engaging in these actions, Levona has failed to respond and has shown that it will undertake any and all misconduct, including by willfully and wrongfully violating the Status Quo Orders, all to interfere substantially with Holdings' economic rights and the ability to recover fully damages from Levona in connection with the Final Award.

9.      Levona's ongoing and willful disregard of the Status Quo Orders warrants this Court's intervention.  For these reasons, the Court should enforce the Status Quo Orders, all of which provide the Debtors with substantial protections, hold Levona in contempt and impose sanctions against Levona arising out of its egregious misconduct.

## **JURISDICTION**

10.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference Re: Title 11* from the United States District Court for the Southern District of New York, dated as of February 1, 2012 (12 MISC 00032).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

12.     The statutory basis for the relief requested herein are sections 105(a), 362(a), and 362(k) of Title 11 of the United States Code (the "Bankruptcy Code").

## FACTUAL BACKGROUND

13.    The underlying facts relating to the Arbitration have been addressed extensively and are set out in detail in Holdings' *Memorandum in Support of its Motion for Relief from the Automatic Stay to Allow the Alleged Debtor to Proceed with, or to Confirm the Inapplicability of the Automatic Stay to, Prepetition Arbitration Proceedings* (ECF 6) and *Memorandum in Support of the Alleged Debtors' Motion to Dismiss the Chapter 7 Involuntary Petitions Filed by Pach Shemen LLC, VR Global Partners, L.P., and Alpine Partners (BVI) L.P.* (ECF 41).  For ease of reference, the most relevant facts are set forth herein.

14.    Since July 29, 2022, Debtor Holdings and non-debtor Corp have been engaged in a bitter and heavily contentious Arbitration with Levona regarding Levona's attempt to use preferred shares in Gas—interests it no longer held as of March 2022—for the purpose of liquidating Gas and impairing substantially the management and economic value of Holdings' common interests in Gas and terminating Corp's management of Gas' vessels, from which it derives significant value (Kertsikoff Aff., ¶ 6; *see also* ECF 6 and ECF 41).

15.    Corp, a subsidiary of Holdings, is responsible for the provision of management services for the vessels owned by Gas through subsidiaries (Kertsikoff Aff., ¶ 5).  For its management services, Corp is paid management fees from the vessel subsidiaries (*id.*).  The management fees are an asset of Corp (a receivable) and a liability for Gas or the relevant subsidiaries incurring the expense (*id.*).  Corp's management of Gas' vessels is a bedrock foundation of Gas, with the underlying LLC agreement of Gas (the "LLCA") prohibiting the preferred member from terminating or interfering with Corp's management agreements without Holdings' consent (*id.*).

16.    Among other things, Holdings and Corp commenced the Arbitration seeking a declaration that Levona's preferred interests in Gas were bought out as of March 2022, and to

-6-

secure redress for Levona's actions to devalue Gas, Corp, and Holdings, arising out of attempts by Levona and its alter-ego affiliates, including Murchinson Ltd. ("Murchinson"), to strip Gas of substantially all of its assets for less than fair market value for Levona's personal gain, including by engaging in a bad-faith, fraudulent, and orchestrated campaign to take over and dismantle Gas and drive the Holdings and Corp out of business (Kertsikoff Aff., ¶ 6).  Levona, in turn, filed counterclaims against the Holdings and Corp (*id.*).

17.     On October 10, 2022, the Arbitrator, issued a Temporary Restraining Order (the "TRO") directing that the parties shall (i) "***maintain the status quo*** and (ii) shall not, among other things: (1) engage in the transfer or sale of any assets of … Gas … absent the joint written consent of the parties, which shall be sent to the undersigned Arbitrator; or (2) notice or conduct of any board meetings for the purposes of proposing considering transfer or sale of any assets of [Gas]" (ECF 44-3).  Yet, in the face of the TRO, Levona blatantly continued its attempts to engage in preparatory work for the sale of the *Symi* and *Telendos*, as well as the Company's other vessels (Kertsikoff Aff., ¶ 9).

18.     On November 7, 2022, after Levona argued that the TRO did not apply to preparatory work for "the sale of the Symi and Telendos" because "those vessels are not assets of … Gas," the Arbitrator rejected this interpretation of his TRO as "incorrect" (Kertsikoff Aff., ¶ 9, Ex. 1).  "By its terms," the TRO compelled the parties "to 'maintain the status quo'" (*id.*), and accordingly, the TRO extended to "any attempt to sell or otherwise transfer the Symi and Telenos" (*id.*).  Such preservations were critical, among other things, to prevent Levona from dissipating assets and ensuring that Holdings and Corp had a mechanism in place for the meaningful recovery of assets pending a resolution of the Arbitration in the Holdings' and Corp's favor (Kertsikoff Aff., ¶ 7).

-7-

19.    On January 12, 2023, the Arbitrator issued a preliminary injunction, thereby extending the TRO's broad prohibition on actions upsetting to the *status quo* until further notice (together with the TRO, the "Status Quo Injunction") (ECF 44-4 at 22–23, 26).  In relevant part, the Status Quo Injunction stated: "the parties hereto shall **maintain the status quo** and shall not, *among other things*: (a) engage in the transfer or sale of, or attempt to sell or otherwise transfer, any assets of … Gas … , or **assets in dispute in this arbitration**, absent the joint written consent of the parties, which shall be sent to the undersigned Arbitrator; or (b) notice or conduct of any board meetings for the purposes of proposing or considering the transfer or sale of any assets of [Gas] or **other assets in dispute in this arbitration**" (*id.* (emphasis added)).  The primary purpose of the Status Quo Injunction was to maintain the status quo between the parties, which inured to the benefit of Holdings, and remained "in effect until amended by subsequent order of the undersigned arbitrator" (*id.*, at 25-26; Kertsikoff Aff., ¶ 10).

20.    On March 7, 2023, Levona's affiliate, Pach Shemen, and two other alleged creditors of Holdings, improperly commenced involuntary bankruptcy petitions against Holdings (*see* ECF 1).  As a result, Levona insisted that the arbitration be stayed in light of the involuntary bankruptcy, and accordingly, on March 10, 2023, the Arbitrator informed the parties to the Arbitration that the Arbitration would be stayed pending further order of this Court (ECF 44-10).

21.    Holdings disputed that the automatic stay precluded it from actively pursuing its claims against Levona in the Arbitration (*see* ECF 6).  Nevertheless, on April 17, 2023, this Court approved and entered the Stipulated Stay Relief Order.  The Stipulated Stay Relief Order was negotiated over the course of several weeks and resolved the issue of whether the Arbitration could continue, while keeping certain protections in place for the benefit of Holdings and its creditors (Solomon Decl., ¶ 4).  The Stipulated Stay Relief Order modified the automatic

stay to permit "a trial, any related pre-trial proceedings (including any remaining discovery), any related post-trial proceedings or briefing, and a final determination or award to be made by the Arbitration, including any appeal, with respect to the claims currently pending in the Arbitration (Stipulated Stay Relief Order, ¶ 3). Relevant here, the Stipulated Stay Relief Order specifically provides that "***no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent further order of this Court*** (*id.*, ¶ 4) (emphasis added). The Stipulated Stay Relief Order defines expressly the "Arbitration Parties" as Holdings, Corp. and Levona (Stipulated Stay Relief Order, ¶ D). Thus, the express terms of the Stipulated Stay Relief Order permits the Arbitration to proceed until a final award is confirmed (which Holdings and Corp are currently pursuing), including appeals, and enjoins the parties to the Arbitration from, among other things, transferring, transacting in, using or impairing any assets relating to the Arbitration Award. One of the primary purposes of the Stipulated Stay Relief Order was to ensure that the Arbitration Parties could not use assets of Gas outside the ordinary course of business to alter substantially the *status quo* of Gas, to the detriment of the Debtors (Kertsikoff Aff., ¶ 11). Upon confirmation, the parties to the Arbitration will return to this Court (Stipulated Stay Relief Order, ¶ 4).

22.    On April 17, 2023, counsel for Holdings and Corp provided the Arbitrator and Levona with a copy of the Stipulated Stay Relief Order (Solomon Decl., ¶ 5, Ex. 1).

23.    On July 28, 2022, the Arbitrator issued an "interim" ruling and award in Holdings' and Corp's favor and awarded compensatory and punitive damages. On September 29, 2023, the Arbitrator issued a Final Award, which "adopts, incorporates, and republishes the Corrected Interim Award in its entirety amending the Corrected Interim Award only as necessary

to make certain ministerial and stylistic edits, and to integrate the undersigned arbitrator's

subsequent determinations regarding the Claimants' request for attorneys' fees, costs, expenses

and interest" (ECF 249-4 at 44 (the "Final Award")).  In the Final Award, the Arbitrator awarded

damages against Levona totaling $86,901,244.40, and attorneys' fees, costs, expenses, and

interest (the majority of which is payable to Gas).

24.      In addition, the Arbitrator specifically found, among other things, that Levona had

violated the Status Quo Injunction by "[t]rying to sell vessels, including the Symi and Telendos,

while the Status Quo Injunction was in effect" and "[w]rongfully declaring the [Gas] in default

of the loan from Levona and wrongfully purporting to accelerate payment of the principal (Final

Award at 98).  Notably, the Status Quo Injunction, and provisions thereof that inure to the

benefit of the Debtors, remain in place "until the later of the final court judgment being entered

on any Award or any further order of th[e] Arbitrator" (Final Arbitral Award at 96).

25.      Holdings and Corp have filed a Petition to Confirm the Arbitral Award in the

United States District Court for the Southern District of New York, and Levona has cross-moved

to vacate the Final Award.  *See Eletson Holdings, Inc., et al. v. Levona Holdings, Inc.*, Civil No.

23-cv-7331 (LJL).  Oral argument on the parties' petitions is currently scheduled for January 2,

2024.

26.      On September 25, 2023 this Court entered the *Order Converting These Cases to

Cases Under Chapter 11* (ECF 215) (the "Conversion Order").  The Conversion Order converted

these bankruptcy cases to a proceeding under Chapter 11 of the Bankruptcy Code but did not

modify or otherwise impact the Status Quo Injunction or the Stipulated Stay Relief Order.

### A.    Levona's Willful Violations of the Status Quo Orders

27.      The terms of the Status Quo Orders are clear.  Pursuant to the Status Quo

Injunction and Stipulated Stay Relief Order, no party to the Arbitration may take any action to

-10-

encumber, impair, transact in, use or otherwise dispose of any property related to the Arbitration

absent the written consent of all parties to the Arbitration and further order from this Court,

including taking any acts outside of the normal course of business to alter substantially the *status*

*quo* of Gas (*see* ECF 44-4, ECF 48).  Further, by virtue of the terms of the Status Quo Injunction

and the Stipulated Stay Relief Order, the Debtors are protected by the provisions of the automatic

stay pursuant to section 362(a) of the Bankruptcy Code.  As such, any action against any

property of the Debtors is void and without effect.

28.    There is no dispute that Levona, who has submitted itself to the jurisdiction of this

Court, is bound by the Status Quo Orders.  Indeed, Levona itself has filed motions for

affirmative relief in these bankruptcy cases by among other things (i) being a signatory to that

certain *Stipulation and Order by and Among the Alleged Debtors, the Petitioning Creditors, and*

*Levona Regarding Contested Bankruptcy Proceedings, Arbitration, and Stay Motion* (ECF 23)

which sought substantive and procedural relief in these bankruptcy cases and (ii) seeking

affirmative relief pursuant to that *Motion to Authorize Production of Certain Documents* (ECF

144) and (iii) *Motion to Modify the Protective Order* (ECF 230).  But even if this were not the

case, Levona had clear notice of the Status Quo Orders, and is bound both as an Arbitration Party

and an affiliate of Pach Shemen.  *See e.g.*, Fed. R. Civ. P. 65; *Fletcher v. Ball* (*In re Soundview*

*Elite, Ltd.*), No. 15-5666 (KPF), 2016 U.S. Dist. LEXIS 38494, *23-24 (S.D.N.Y. Mar. 23,

2016) (noting that under Rule 65(d), an injunctive order binds a party's "officers, agents,

servants, employees, and attorneys, and . . . those persons in active concert or participation with

them who receive actual notice of the order"); *Aviv v. Brainard*, No. 18-cv-5088 (PKC), 2018

U.S. Dist. LEXIS 176169, at *2-3 (S.D.N.Y. Oct. 11, 2018) ("Under New York law, 'nonparties

may be bound by an injunction [or temporary restraining order] if they have knowledge of it,

provided they are servants or agents of the defendants, or act in collusion or combination with

them.'") (internal citations omitted); *see also In re Sledziejowski*, 533 B.R. 408, 423 (Bankr.

S.D.N.Y. 2015) (discussing contempt liability for non-parties and noting that "where an enjoined

party seeks to 'circumvent an injunction through the instrumentality of a shell company, an

agent, or a successor in interest, the injunction will reach the conduct of the non-party") (internal

citation omitted).

29.     Notwithstanding the clear terms of the Status Quo Orders (and determinations by

the Arbitrator that Levona has willfully violated the Status Quo Injunction), Levona has once

again retreated to taking numerous actions in blatant violation of the orders to the detriment of

the Debtors and their estates.  At this time, the Debtors are aware of at least six different

violations of the Status Quo Orders.

30.     *First*, the Debtors have learned that Levona has engaged brokers to solicit offers

for the *Telendos* for purpose of marketing and selling the vessel.  By way of example, Levona

has engaged Associated Shipbroking (ASM) to "develop for sale the" *Telendos* and who is

seeking, on behalf of Levona, "best offers" for the vessel (Kertsikoff Aff., ¶ 13, Ex. 2).  Levona's

efforts actively to market and transact in the sale of *Telendos* are clear violations of Status Quo

Injunction and Stipulated Stay Relief Order.  Indeed, this bad faith conduct in furtherance of

dissipating assets related to the Arbitration Award is similar to conduct already found by the

Arbitrator to have violated his injunctions (Kertsikoff Aff., ¶ 13).

31.     *Second*, the Directors of Gas received a letter from Levona's counsel, dated

November 2, 2023, purporting to direct Holdings, Corp, and Gas to undertake certain

Fundamental Actions, including, but not limited to, taking certain actions "with an eye toward

terminating" technical and commercial management of Gas' vessels and "[c]hang[ing] the

method of appointing directors such that Levona is able to appoint them unilaterally and increase the number of directors" of Gas (Kertsikoff Aff., ¶ 14, Ex. 3).  Notwithstanding the fact that the Fundamental Action Letter is void and without effect, as determined the Arbitrator (*see* Final Award at 38-42), Levona's demands therein attempt drastically to alter the *status quo* of Gas, resulting in a significant impairment and/or putting at risk the financial and commercial operations of Gas (Kertsikoff Aff., ¶ 14).  As such the Levona's letter is prima facie evidence of a violative "use" of an asset related to the Arbitration, i.e., the preferred shares of Gas and/or Gas's vessels.

32.     *Third*, the Debtors have recently learned that, on November 15, 2023, Levona attempted to appoint new directors to the board of the *Symi* II SME, an asset in dispute in the Arbitration, by purporting to file with the Greek Ministry of Shipping board minutes of the SME, **back dated to September 30, 2022—before the TRO was issued**—appointing Levona as the sole shareholder of the SME (Kertsikoff Aff., ¶ 15).  The board meeting minutes were purportedly notarized and apostilled by a notary in Gibralter (where Levona's representative, Eliyahu Hasset resides) on October 12, 2022—five days after the Arbitrator issued orally the TRO and two days after the Arbitrator memorialized the TRO in a written order (*id.*).  Further, the Debtors understand that similar corporate actions were purportedly taken for the entity that charters and operates the *Telendos* (the "Telendos SME"), which the Debtors continue to investigate with the Greek Ministry of Shipping (*id.*).  Levona's actions to make an end run around the TRO, Status Quo Injunction and the Stipulated Stay Relief Order are thus both deceitful and fraudulent.  In fact, the date of the board meeting minutes is more than suspect, calling into question the validity of Levona's bad faith actions, and a transparent attempt to unilaterally seize control of the Symi SME and Telendos in order to:  (a) change the management status of these entities and the

-13-

respective vessels that they charter and operate, (b) sell the *Symi* and *Telendos*; and (c) to evade
attempts to recover damages granted in the Final Award against Levona, upon confirmation, by
Holdings and Corp (*id.*).

33.    *Fourth*, Levona has demanded that EMC Gas Corporation ("EMC Gas"), the
financial manager of the *Telendos*, proceed with the payment of unusually high amounts from
the Telendos SME's bank accounts to Columbia Shipmanagement Ltd ("Columbia") by virtue of
a "Debit Note – Invoice" for the amount of $1,727,073.44 (Kertsikoff Aff., ¶ 16, Ex. 4).  Based
on Holdings' and Corp's years of experience in the industry, including by acting as managers of
various vessels, the amounts requested by Levona are not only unsubstantiated, but
extraordinarily high and can only be seen as a transparent attempt by Levona to deplete the bank
accounts of the *Telendos*, putting at risk the vessel's long-term, commercial viability (Kertsikoff
Aff., ¶ 17).  Columbia's "Debit Note – Invoice" appears to be addressed to two offshore
companies, namely Tropical Island International Ltd. and Bolder Corporate Services (BVI)
Limited (Kertsikoff Aff., ¶¶ 16-17, Ex. 4).  The Debtors understand, upon information and belief,
that the former entity is a wholly owned subsidiary affiliate Levona (Kertsikoff Aff., ¶¶ 16-17,
Ex. 5).

34.    *Fifth*, Levona has commenced in bad faith an arbitration in the London Court of
International Arbitration ("LCIA") against Gas, purporting to accelerate the loan extended to Gas
and seeking "a declaration that Gas was and remains bound to comply with the Fundamental
Actions" in the Fundamental Action Letter (Kertsikoff Aff., ¶ 18, Ex. 6).  Among other things,
Levona's actions are an abuse of process, violates the Status Quo Injunction and Stipulated Stay
Relief Order, seeks to siphon money out of the Gas for its own benefit and to the detriment of
Holdings' interests in Gas, and tortiously misuses the Fundamental Action Letter,

-14-

notwithstanding the fact, pursuant to its terms, the Fundamental Action Letter is not valid and

has no force or effect as a result of the Arbitration (Kertsikoff Aff., ¶ 18).  Improper calling of

the loan has already been found to violate Justice Belen's injunction (*id.; see also* Final Award at

98).

35.    *Sixth*, Levona has commenced a second arbitration in the LCIA against Gas,

blatantly disregarding the Final Award, asserting the very same claims litigated and decided fully

and completely in the Arbitration, including that the purchase option had been exercised and that

Levona no longer holds an interest in Gas (Kertsikoff Aff., ¶ 19, Ex. 7).  Levona's actions violate

the Stipulated Stay Relief Order and Status Quo Injunction in each of the ways summarized

above and are a cavalier attempt to circumvent the Final Award issued in the Arbitration,

requiring Gas to expend significant sums to defend the improper action to the detriment of Gas,

and again evidencing that Levona is using and transacting in assets related to the Final Award

(Kertsikoff Aff., ¶ 19).  Levona's attempts to extract value from Gas represent a constant and

continued attack on the value of Holding's estate in violation of the automatic stay and evidence

a flagrant disregard to the terms of the Status Quo Injunction and Stipulated Stay Relief Order

(*id.*).

36.    In a letter, dated November 15, 2023, Holdings and Corp demanded that "Levona

cease and desist from engaging in any further conduct that violates the Status Quo Injunction or

Lift Stay Order, including, but not limited to, attempts to sell the *Symi* and *Telendos*" (Solomon

Decl., ¶ 6, Ex. 2).  To date, Levona has failed to provide any response to the cease and desist

letter (Solomon Decl., ¶ 6) and, on the contrary, continues to violate the Status Quo Injunction

and Stipulated Stay Relief Order in at least the respects identified herein.

## RELIEF REQUESTED

37.    The Debtors seek entry of the Proposed Order pursuant to sections 105(a) and

362(a) of the Bankruptcy Code enforcing the automatic stay, the terms of the Stipulated Stay

Relief Order, and Status Quo Injunction, which inure to the benefit of the Debtors, and ordering

Levona to cease and desist from all actions which seek to alter the status quo of Gas, transfer

assets relating to the Final Award, and prosecute arbitrations before the LCIA that violate the

injunctions and seek to relitigate actions resolved fully and completely by the Arbitrator in the

Arbitration.  Further, the Debtors seek an order finding Levona in contempt of the Status Quo

Orders and awarding sanctions against Levona for its willful violation of orders, including the

costs incurred by the Debtors in bringing this Motion.

### BASIS FOR RELIEF

38.     The Status Quo Injunction and Stipulated Stay Relief Order, to which the Debtors

are direct and intended beneficiaries, bar Levona from engaging in actions that seek to "dispose

of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or

any asset or property related thereto" (Stipulated Stay Relief Order, ¶ 4; *see also* Status Quo

Injunction at 26 (requiring the parties to the Arbitration to "maintain the status quo" and barring

the parties from "engag[ing] in the transfer or sale of, or attempt to sell or otherwise transfer . . .

assets in dispute in this arbitration.").

39.     Bankruptcy courts have the power to enforce their orders, both inherently and

pursuant to Section 105(a). *See In re Anderson*, 884 F.3d 382, 391 (2d Cir. 2018) (noting the

"undisputed power of a bankruptcy court to enforce its own orders" and that "Congress afforded

the bankruptcy courts wide latitude to enforce their own orders, specifically granting these

specialty courts the power to 'issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of" the Bankruptcy Code.'") (quoting 11 U.S.C. § 105(a));

*In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 Bankr. LEXIS 2274, at *20 (Bankr.

-16-

S.D.N.Y. Aug. 20, 2021) ("A bankruptcy court has the inherent power to enforce its own

orders.").

40.     This Court thus has authority to enforce the Status Quo Orders that operate to the

benefit of the Debtors and Holdings' estate.

**A.     Levona is Willfully Violating the Automatic Stay Through its Intentional and
Repeated Violations of the Status Quo Injunction and Stipulated Stay Relief
Order**

41.     The Status Quo Injunction and Stipulated Stay Relief Order created a cause of

action in favor of Holdings to enforce the terms of the protective injunctions created pursuant to

the terms of both orders.  Specifically, the Stipulated Stay Relief Order states, in relevant part,

that "[t]he Court shall retain jurisdiction with respect to any matters, claims, rights or disputes

arising under this Stipulation and Order or any other actions to implement, interpret or enforce

the terms and provisions of this Stipulation and Order" (Stipulated Stay Relief Order, ¶ 9).

42.     When a bankruptcy petition is filed "all legal or equitable interests of the debtor,"

"wherever located and by whomever held," become property of the estate. 11 U.S.C. § 541(a)(1).

"Property of the estate" includes all causes of action that the debtor had a right to bring at the

time the bankruptcy was filed, including causes of action that the debtor was not aware of prior

to the bankruptcy filing.  Collier on Bankruptcy P 541.07 (Alan N. Resnick & Henry J. Sommer

eds., 16th ed.)  *O'Dowd v. Trueger (In re O'Dowd)*, 233 F.3d 197, 202 (3d Cir. 2000) (stating

that property of the estate "includes all kinds of property, including tangible or intangible

property, causes of action. . . and all other forms of property currently specified in section 70a of

the Bankruptcy Act").  If a cause of action is property of the estate, any "act" by a creditor to

assert that claim for its personal benefit violates 11 U.S.C.S. § 362(a)(3).  *In re Ampal-Am. Isr.

Corp.*, 502 B.R. 361, 365 (Bankr. S.D.N.Y. 2013).  Therefore, the Debtors' interests in and

-17-

benefit of the Status Quo Injunction and Stipulated Stay Relief Order constitute assets that belong to the Debtors' estates.

43.    As discussed above, Levona is flagrantly and knowingly violating the terms of the Stipulated Stay Relief Order and Status Quo Injunction, and in turn violating the automatic stay by contravening the Debtors' direct rights and interests pursuant to the orders.

44.    Levona's efforts actively to use, market, and transact in the sale of *Telendos* are clear violations of both the Status Quo Injunction and Stipulated Stay Relief Order, which provide that the parties to the Arbitration, including Levona, shall not "transact in" or "use" "any asset or property related" to the Final Award "absent a further order of this Court" (Stipulation Stay Relief Order, ¶ 4).  *See e.g.*, *Lopresti v. Pace Press*, 868 F. Supp. 2d 188, 201 (S.D.N.Y. 2012) (noting that "the verb 'transact' means to do, carry on, or conduct or to conduct business"); *SEC v. Talley Indus., Inc.*, 399 F.2d 396, 402 (2d Cir. 1968) (stating "transact" means "'[t]o prosecute negotiations; to carry on business; to have dealings'" (citing Webster's New International Dictionary (2d ed.)); *Kamlet v. Bd. of Educ.*, 399 N.Y.S.2d 366, 368 (Sup. Ct. 1977) (finding "planning sessions" fell under the definition of transacting in public business). By engaging brokers to solicit offers for sale of the *Telendos*, without the consent of the Holdings and Corp and a further order from this Court, there is no question that Levona has improperly "transacted in" the sale of the vessels, and indeed, is attempting to "use" "sell or otherwise transfer" the *Telendos*, in violation of the Status Quo Injunction and Stipulated Stay Relief Order.  The Arbitrator has already so found, and that determination binds Levona and should be binding on this Court here.

45.    Further, the Levona's fundamental action letter purports to direct Holdings, Corp and Gas to undertake certain actions that would significantly impact property of Holdings' estate,

namely Holdings' ownership of all outstanding common shares of Gas and the rights associated

with such beneficial ownership of those shares (Kertsikoff Aff., ¶ 20).  The ownership interests

in Gas are an asset of Holdings' estate, as are Holdings' rights and interests under the Status Quo

Injunction and Stipulated Stay Relief Order, and Levona's actions to impair or control Gas, to

the detriment of Holdings, are clear violations of the automatic stay (*id*.).  Indeed, Holdings'

estate, by virtue of its common interest in Gas, will be depleted if Levona continues to demand

Holdings, Corp, and Gas to take actions that will provide Levona with complete control of Gas.

Levona's intentions are abundantly clear:  it wants to take over control of Gas, liquidate it, and

terminate Corp's management of Gas' vessel, impairing substantially the revenues received by

Corp which flow to Holdings' estate (*id.*).

46.      Levona's direction to EMC to make disproportionately large payments to

Columbia is also in violation of the Status Quo Orders as this direction directly impacts property

subject to the Final Award, is a radical departure from the *status quo*, and nothing more than a

naked cash grab to the detriment of Holdings (Kertsikoff Aff., ¶ 16).

47.      Finally, the initiation of both arbitration actions before the LCIA are clear

violations of the Stipulated Stay Relief Order and Status Quo Injunction, which provide that no

party to the Arbitration shall engage in any actions that alter the *status quo* of Gas or "use" or

"transact in" assets related to the Final Award.

48.      Levona's willful violations of the Status Quo Orders continue to infringe upon the

Debtors' rights created pursuant to the terms thereof in violation of the automatic stay.  With

each and every action described herein, Levona is attempting improperly to exercise control over

Gas, alter substantially the *status quo* by using assets subject to the Arbitration and Final Award,

and negatively impact the management and economic value of Holdings' common interests in

Gas.  What is more, Levona is seemingly attempting to dissipate its assets, including the *Symi* and *Telendos*, for the purpose of preventing any recovery by Holdings relating to the Final Award once it is confirmed.  To the extent Holdings and Corp are unable to collect on the Final Award, following an enforcement proceeding in this Court, the Debtors and Holdings' estate will be harmed severely (Kertsikoff Aff., ¶ 21).  Levona's actions are transparent:  it is seeking to make an end run around the Status Quo Orders to position itself to flush cash out of Levona immediately following an order of enforcement by this Court.  Levona must be stopped (*id.*).

49.     This Court should enforce the Status Quo Orders to prevent Levona from engaging in any and all actions to impair significantly Holdings' estate to the detriment of its creditors.

**B.      Levona Should be Found in Contempt for its Willful Violation of the Status Quo Orders**

50.     Acts taken in violation of the automatic stay set forth in 11 U.S.C. § 362(a) are void.  *In re 48th St. Steakhouse*, 835 F.2d 427, 431 (2d Cir. 1987); 3 Collier on Bankruptcy ¶ 362.12[1] (16th ed. 2020), and courts routinely grant relief to ameliorate their effect.  *In re 5 Adelphia Communs. Corp. v. The American Channel, LLC*, 345 B.R. 69, 83-84, 86 (Bankr. S.D.N.Y. 2006).  "Under section 105(a) of the Bankruptcy Code, the Court has broad authority to issue contempt orders and award sanctions to enforce compliance with its orders."  *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 Bankr. LEXIS 2274, at *33-34 (Bankr. S.D.N.Y. Aug. 20, 2021) (citing *In re Manchanda*, 2016 Bankr. LEXIS 2056, 2016 WL 3034693 at *4 (Bankr. S.D.N.Y. May 19, 2016)).  The automatic stay has the effect of a court order for purposes of the contempt power as further supported by 11 U.S.C. § 105(a).  *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003) ("Because the metes and bounds of the automatic stay are provided by statute and systematically applied to all cases, there can be no

doubt that the automatic stay qualifies as a specific and definite court order.") (internal quotation and citation omitted).

51.    A finding of contempt and an award of sanctions requires that "(1) the order the party failed to comply with is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *In re Lehman Bros. Holdings Inc.*, 2013 Bankr. LEXIS 5076, 2013 WL 6283572, at *1 (Bankr. S.D.N.Y. Dec. 3, 2013), *aff'd sub nom. In re Lehman Bros. Holdings, Inc.*, 645 F. App'x 6 (2d Cir. 2016).  Application of these factors supports an award of sanctions against Levona here.

52.    *First*, the Status Quo Injunction and Stipulated Stay Relief Order are clear and unambiguous, and there can be no dispute that Levona has been, and continues to be, fully aware of the provisions of the orders.

53.    *Second*, despite notice of the orders, and in fact, a determination by the Arbitrator that Levona violated the Status Quo Injunction in numerous ways including by the exact conduct that Levona is continuing to engage in (*e.g.,* trying to sell the *Symi* and *Telendos*; prosecuting a frivolous action on the loan (*see* Final Award at 98-99), Levona has willfully chosen to ignore the Status Quo Injunction and the Stipulated Stay Relief Order.

54.    Levona's attempts to "use" and "transact in" the sale of the *Telendos* is an action taken in contempt of the Status Quo Orders.  Indeed, pursuant to the Stipulated Stay Relief Order, "no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent further order of this Court" (Stipulated Stay Relief Order, ¶ 4).  The *Telendos* is an "asset or property related" to the Final Award, and therefore, Levona is required to seek an order from this Court before it attempts to engage in the sale, transfer and/or disposition of the *Telendos*.

-21-

Levona has made no application to this Court and instead has chosen to willfully ignore the terms of the Status Quo Injunction (as it did repeatedly in the Arbitration) and the Stipulated Stay Relief Order.  Levona's attempt to thumb its nose at this Court's order warrants sanctions.

55.    Levona's purported directives to Holdings, Corp, and Gas to undertake certain Fundamental Actions relating to Gas are clear violations of the automatic stay.  Levona seeks to improperly exercise control of and impair the value of Holdings' economic interests in Gas, including by terminating Corp from management of Gas' vessels, therefore attempting to exercise control over a critical and material asset of Holding's estate.

56.    Further, by initiating the two London arbitrations, Levona has shown that it will employ any and all measures to circumvent the Final Award and take over control of Gas, with the clear intent to liquidate Gas and terminate Corp's management of Gas' vessels to Holdings' detriment.

57.    *Third*, Levona has not taken any steps, despite demand, to comply with Status Quo Orders.  Instead, Levona has failed to even acknowledge the cease and desist letter (Solomon Decl., ¶ 6).  Rather, Levona, represented by sophisticated counsel, has sought affirmative relief from this Court, yet at the same flagrantly flouts the protections afforded to the Debtors pursuant to the Status Quo Orders to which Levona is bound.

58.    For these reasons, the Court should enforce the Status Quo Injunction, Stay Relief Order and the automatic stay, hold Levona in civil contempt based on its willful and continued violations of same, and impose monetary sanctions against Levona, including attorneys' fees related to brining this Motion.

## **NOTICE**

59.    Notice of this Motion has been provided to: (a) counsel to the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States

Department of Justice; (e) the United States Attorney for the Southern District of New York; (f) counsel to Levona; (g) counsel to the Petitioning Creditors; (h) counsel to the Official Committee of Unsecured Creditors and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

60.     No prior motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court (a) enter the Proposed Order substantially in the form attached hereto as <u>Exhibit A</u> and (b) grant such other and further relief as is just and proper.

DATED:   New York, New York
           November 27, 2023

**REED SMITH LLP**

*/s/ Louis M. Solomon*
Louis M. Solomon
Andrew L. Buck
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: lsolomon@reedsmith.com
        abuck@reedsmith.com

-and-

Derek J. Baker
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
        dosei-bonsu@reedsmith.com
-and-

Ann E. Pille
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Proposed Counsel to the Debtors*