Stephen D. Zide
David A. Herman
Owen S. Haney
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
Facsimile: (212) 698-3599
Email: stephen.zide@dechert.com
david.herman@dechert.com
owen.haney@dechert.com

*Proposed Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ELETSON HOLDINGS INC., et al., | : | Case No. 23-10322 (JPM) |
|  | : |  |
|  | : | Jointly Administered |
| Debtors.[1] | : |  |
|  | : |  |

------------------------------------------------------------x

### *EX PARTE* APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING AND DIRECTING THE PRODUCTION OF DOCUMENTS FROM AND EXAMINATIONS OF THE DEBTORS AND CERTAIN THIRD PARTIES

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

JURISDICTION AND VENUE ..................................................................................... 3

BACKGROUND ............................................................................................................ 3

    A.    The Chapter 11 Cases ................................................................................3

    B.    The Eletson Family ...................................................................................3

    C.    The Debtors' Assets and Liabilities ...........................................................4

    D.    Eletson Gas ...............................................................................................8

    E.    Corporate Governance .............................................................................10

    F.    The Prior Rule 2004 Application ..............................................................11

RELIEF REQUESTED.................................................................................................. 12

BASIS FOR RELIEF ................................................................................................... 12

    I.    The Court Should Authorize the Rule 2004 Examinations. .......................... 12

        A.    The Scope of the Rule 2004 Requests is Appropriate. ...........................12

        B.    The Court Should Authorize Rule 2004 Examinations of the Non-Debtor Examination Parties. ...............................................................13

    II.    A Rule 2004 Examination May be Commenced by an Ex Parte Application. .............. 14

    III.    Service of Subpoenas by FedEx or Other Means of Service Allowable under Bankruptcy Rule 9016 is Appropriate. ....................................... 15

NOTICE........................................................................................................................ 16

NO PRIOR REQUESTS............................................................................................... 16

CONCLUSION............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ........................................13

*In re Bakalis*,
    199 B.R. 443 (Bankr. E.D.N.Y. 1996) ...................................................................................12

*In re Bibhu LLC*,
    2019 WL 171550 (Bankr. S.D.N.Y. Jan. 10, 2019)............................................................2, 13

*Cordius Trust v. Kummerfeld*,
    Case No. 99 CIV. 3200(DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) ..............................15

*In re Enron Corp.*,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002)..............................................................................13, 14

*In re Kramer*,
    492 B.R. 366 (Bankr. E.D.N.Y. 2013) ..................................................................................15

*Medical Diagnostic Imaging PLLC v. CareCore Nat. LLC*,
    Case Nos. 06 Civ. 7764(CS)(THK), 2008 WL 3833238 (S.D.N.Y. Aug. 15, 2008) ...............................................................................................................................15

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) .............................................................................12, 14

*In re Shur*,
    184 B.R. 640 (Bankr. E.D.N.Y. 1995)...................................................................................15

*In re Toft*,
    453 B.R. 186 (Bankr. S.D.N.Y. 2011) ...................................................................................14

**Statutes**

11 U.S.C. § 105.............................................................................................................................1,3

11 U.S.C. § 1102 .............................................................................................................................3

11 U.S.C. § 1103........................................................................................................................2, 8, 12

11 U.S.C. § 1109 ...........................................................................................................................12

28 U.S.C. § 157 ..............................................................................................................................3

28 U.S.C. § 1408 ............................................................................................3

28 U.S.C. § 1409 ...........................................................................................3

**Other Authorities**

Fed. R. Bankr. P. 2015.3 ................................................................ *passim*

Fed. R. Bankr. P. 9016 .................................................................. *passim*

Fed. R. Bankr. P. 2004 .................................................................. *passim*

Fed. R. Civ. Pro. 45 .........................................................................................15

The Official Committee of Unsecured Creditors (the "Committee") of Eletson Holdings, Inc. ("Eletson Holdings"), Eletson Finance (US) LLC ("Eletson Finance"), and Agathonissos Finance LLC ("Agathonissos," and together with Eletson Holdings and Eletson Finance, collectively, the "Debtors"), by and through its undersigned counsel, respectfully submits this *ex parte* application (the "Application"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Committee seeks an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order") authorizing the Committee to (a) issue notices of examination and requests for production of documents from the Debtors, and to (b) issue subpoenas to conduct oral examinations of, and seek the production of documents from, (i) Debtors' affiliates or subsidiaries, and (ii) the Debtors' officers, directors, shareholders, and other insiders, and any affiliates thereof (collectively, the "Examination Parties"), including the Cypriot Nominees (defined below), in each case to obtain information concerning the acts, conduct, and property of the Debtors, the Debtors' financial condition, and matters affecting the administration of the Debtors' estates (collectively, the "Examination Requests").

## INTRODUCTION

1.      The Committee seeks authority under Rule 2004 to conduct examinations of the Debtors, their non-Debtor affiliates, and entities affiliated with the Debtors' insiders who purport to hold assets that may be recoverable by, or for the benefit, of the Debtors' estates.

2.      As set forth below, there is an urgent need to ascertain the extent of the Debtors' estates. The Debtors' schedules of assets and liabilities identify more than $400 million in claims against the estates, but they identify no assets except for litigation claims against certain of their creditors and equity interests in non-Debtor subsidiaries, the value of which they list as "$0" and

elsewhere proclaim is "unknown." The Debtors have repeatedly failed to make public disclosures that are required under the Bankruptcy Code and Rules and have insisted in Court and during 341 Meetings under oath that they do not know the value of their assets. And they contend that most of the value that would otherwise be available to the estates was purportedly transferred to Cypriot entities affiliated with their insiders, with no corporate documentation evidencing such transfer.

3.      Rule 2004 examinations are made for these circumstances. Their primary purpose is to "discover the nature and extent of the bankruptcy estate in order to distribute the debtor's assets for the benefit of its creditors." *In re Bibhu LLC*, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019). Under Rule 2004, the Court may authorize the examination of "any entity" including, here, the Debtors, their non-Debtor Affiliates, and the Cypriot Nominees, to ascertain information concerning the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate."

4.      The Court should authorize such examinations here. The Committee seeks information regarding the acts, conduct, and property of the Debtors, the Debtors' financial condition, and matters affecting the administration of the Debtors' estates, including purported transfers between the Debtors and Non-Debtors. This information is critical for the Committee to carry out its duties under section 1103 of the Bankruptcy Code to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor" and to "participate in the formulation of a plan."

5.      To be clear, the Committee is not seeking to obtain discovery that the Debtors have already produced. Any such materials should be excluded from the Debtors' responses to the proposed document requests, so that the materials produced are limited to new information that

was not previously disclosed.  For the reasons set forth below, the Committee's application to conduct Rule 2004 examinations should be granted.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for relief requested by this Application are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 2004.

**BACKGROUND**

**A.      The Chapter 11 Cases**

7.      On March 7, 2023, three creditors filed involuntary petitions against the Debtors under chapter 7 of the Bankruptcy Code.  (ECF 1.)

8.      On September 25, 2023, upon the Debtors' motion (ECF 201), the Court entered an order (ECF 215) converting the involuntary chapter 7 cases to voluntary cases under chapter 11 of the Bankruptcy Code.

9.      On October 25, 2023, the office of the United States Trustee (the "U.S. Trustee") appointed the Committee under section 1102 of the Bankruptcy Code.  (ECF 233.)  The Committee's members are Aegean Baltic Bank S.A., Gene B. Goldstein, and Wilmington Savings Fund Society, FSB, as Indenture Trustee.  Additionally, Deutsche Bank Trust Company Americas, as Indenture Trustee, serves as an ex-officio member of the Committee.

**B.      The Eletson Family**

10.      Eletson is a family business.  (*See, e.g.*, Ex. B (LK Dep. Tr. at 52:9-10 (describing the Debtors' enterprise as "Eletson Family").)  Specifically, the Debtors and their non-Debtor affiliates are closely held, managed, and controlled by three families: the Kertsikoff, Hadjieleftheriadis, and Karastamati families (the "Principal Families").  ████████████

████████████████████████████████████████████████████

████████████████████████████████ In addition, members of the three Principal

Families are simultaneously (a) directors and officers of Eletson Holdings; (b) directors and

officers of Eletson Gas LLC ("Eletson Gas"); and (c) the beneficial owners of the Cypriot

Nominees. The three Principal Families thus control the Debtors and their non-Debtor subsidiaries

through their effective control of the Board and management of each of the Debtors and the

Subsidiaries, their ownership of the Liberian trusts that comprise the shareholders, and their

ownership of the Cypriot Nominees that purport to hold the preferred interests in Eletson Gas.

(*See also* ECF 329-1 (minutes of joint shareholder and board meeting).)

11.     Two other families, the Zilakos Family and the Andreoulakis Family ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ One

of the Debtors' principals has aptly described the Debtors' business enterprise as "Eletson Family."

(*See* Ex. B (LK Dep. Tr.) at 52:3-18 ("So it is, for us it is one thing, it is Eletson family. It is – I

mean, we didn't care, I mean, who – if it was Eletson Gas or Eletson company or Eletson family.")

12.     Based on discovery to date, the affiliations among the shareholders, the directors

and officers of Eletson Holdings and Eletson Gas, and the Cypriot Nominees is as follows:

| Name | Board of Holdings | Officer of Holdings | Indirect Owner of Holdings | Owner of Nominee | Board of Gas |
|---|---|---|---|---|---|
| Lascarina J. Karastamati | ✓[2] | ✓ President[1] | ✓ Lassia Investment Company[3] | ✓ Fentalon Limited[4] | ██████[6] |
| Vasilis A. Hadjeleftheriadis | ✓[7] | ✓ Vice President and Treasurer[8] | ✓ Glafkos Trust Company[9] | ✓ Desimuso Trading Company[10] | |
| Vassilis E. Kertsikoff | ✓[4] | ✓ Vice President[11] | ✓ Family Unity Trust Company[12] | ✓ Apargo Limited[13] | ✓[4] President[5] |
| Eleni Karastamati | ✓[4] | | | ✓ Fentalon Limited[3] | |
| Emmanouil S. Andreoulakis | ✓[4] | ✓ Secretary[14] | ✓ Keros Shipping Corporation[15] | | |
| Ioannis Zilakos | ✓[4] | | ✓ Elafonissos Shipping Corporation[16] | | |
| Konstantinos Hadjieleftheriadis | ✓[4] | | ✓ Glafkos Trust Company[6] | ✓ Desimuso Trading Company[7] | |
| Elena P. Vandorou | | ✓ Assistant Secretary[17] | | | |

13.    Debtor Eletson Holdings is a holding company that holds the controlling interests

in various subsidiary corporations ("<u>Subsidiaries</u>," and together with Eletson Holdings, the

---

[2] Ex. B at 15:17-23; ECF 217 at 42 (Holdings' Statement of Financial Affairs).
[3] Ex. B at 17:24-18:2.
[4] Ex. B at 35:11-13.
[5] Ex. B at 22:18-23:7; *but see* ECF 217 at 42 (not listing Zilakos).
[6] Ex. P ██████████████████████████████.
[7] Ex. B at 16:15-17:3; ECF 217 at 42.
[8] Ex. Q (July 14, 2023 V. Hadjieleftheriadis Dep. Tr.) at 44:10-45:3; ECF 217 at 42.
[9] Ex. Q at 53:19-54:9.
[10] Ex. R (July 18, 2023 V. Hadjieleftheriadis Dep. Tr.) at 268:6-22; ECF 249-4 at 30 (Final Arbitration Award).
[11] Ex. S (July 12, 2023 V. Kertsikoff Dep. Tr.) at 36:3-20.
[12] Ex. S at 62:10-64:10.
[13] Ex. B at 39:13-15
[14] Ex. T (12-18-19 EHI Certificate); Ex. U (1-15-20 EHI Certificate); ECF 217 at 42.
[15] ECF 42-3 at 36 (Second RSA Signature Page).
[16] ECF 42-3 at 35.
[17] Ex. T; Ex. U; ECF 217 at 42.

"Eletson Enterprise"). Those subsidiaries include debtors Agathonissos and Eletson Finance, as well as various non-Debtor subsidiaries. Relevant here, the non-Debtor subsidiaries include, among others, Eletson Corporation ("Eletson Corp."), EMC Investment Corporation ("EMC"), and Eletson Gas. (*See* Ex. D (Org. Chart).)

C.    **The Debtors' Assets and Liabilities**

14.    On October 10, 2023, the Debtors filed their schedules of assets and liabilities (the "Schedules") and statements of financial affairs. (ECF Nos. 216-221.) In their Schedules, the Debtors report that they have had no revenue since at least 2021. (*See* ECF 217, 219, 221.) They further disclose that they have no cash on hand, and that their only assets are equity interests in subsidiaries and certain litigation claims. (ECF No. 217 at 1.) Eletson Holdings further lists the value of the equity in each of its 73 subsidiaries as "$0." (ECF 216 at 10-11.)

15.    On October 13, 2023, the U.S. Trustee scheduled a section 341(a) meeting of creditors (the "341 Meeting"). (ECF 223.) The scheduling of that meeting triggered the Debtors' obligation under Bankruptcy Rule 2015.3 to file, seven days before the meeting, reports regarding their interests in their subsidiaries (the "2015.3 Reports"). Those reports were due October 31, 2023, but on that date the Debtors failed to file 2015.3 Reports.

16.    The 341 Meeting was scheduled to occur on November 7. A day before, however, the meeting was adjourned because the Debtors' witness was unavailable. (*See* ECF No. 223; Ex. E at 2:23-3:9.)

17.    At a hearing the next day, November 8, the Debtors acknowledged that the value of their assets is "unknown at this time." (Ex. F (Nov. 8 Hr'g. Tr.) at 11:15.) The Committee raised that it had not received any clarity from the Debtors on how they plan to fund the Chapter 11 Cases without any cash or any pending cash collateral or cash management motions. (*Id.* at 52:5-13, 55:8-11.) The Debtors acknowledged that, although they had no cash, they understood that

6

"they will need to satisfy all administrative claims in full on the effective date" and that they "are working towards that process in terms of identifying its assets that are appropriate for monetization in order to do that." (*Id*. at 53:18, 58:5-9.) At the Committee's request, the Court directed the Debtors to "continue discussions with the committee and provide an update to the Court" at the December 4 hearing. (*Id*. at 60:10-12.)

18.     At the rescheduled 341 Meeting on November 14, the Debtors again failed to produce a witness. The U.S. Trustee explained that the Debtors are "required to appear to be examined under oath regarding the bankruptcy case" and that if the Debtors' "representative cannot attend these meetings or timely file reports, such as those required by Rule 2015.3, we will consider whether it is advisable to appoint a Chapter 11 Trustee." (Ex. E at 2:14-15, 3:13-16.) The U.S. Trustee rescheduled the 341 Meeting for November 21, 2023.

19.     On November 15, the Committee asked for a call with Debtors' counsel regarding the Debtors' plan to address the administrative expenses of these cases. The Debtors questioned the need to discuss that subject when the "only approved administrative expense is the $1.5 million claim owed to Togut" and the Committee had not yet filed a retention application. (Ex. G at 11.) The Committee explained that the "Debtors and the Committee are both incurring administrative expenses, subject of course to later approval of retention and fee applications." (*Id.* at 9.) After the Committee followed up on November 19, the Debtors agreed to have a call. (*Id.* at 6-7.)

20.     During that call on November 20, however, the Debtors informed the Committee's counsel for the first time that the Debtors would not provide additional information to the Committee concerning their assets and plan to fund those cases until Dechert has been retained and until the Committee has signed a confidentiality agreement. The Committee pointed out that Dechert and the Committee are already party to the protective order entered in these cases (*see*

ECF 37) and that, to date, the Debtors have not offered up a separate confidentiality agreement, despite the Committee's suggestion that they do so. The Debtors also informed the Committee that they would not commit to sharing information regarding the funding of these cases until the Debtors deem it is "appropriate." (Ex. G at 3.)

21.    November 20 was also the day before the second rescheduled 341 Meeting. Later that day, the Debtors filed 2015.3 Reports for ten of their 73 subsidiaries. The information in the 2015.3 Reports did not match certain of the information included in the Debtors' Schedules. Specifically, whereas the Schedules report the equity value in each of the Debtors' 73 subsidiaries as "$0," the 2015.3 Reports show positive net equity value for ten of those subsidiaries. (*Compare* ECF 216 at 10 *with* ECF 271 at 6-15, 39-48.)

22.    At the second rescheduled 341 Meeting on November 21, Vassilis Kertsikoff appeared as the Debtors' representative. Kertsikoff testified that the Schedules reflect "market value" of the Debtors' subsidiaries, whereas the 2015.3 Reports reflect "book value." (Ex. H at 40:11-24.) Kertsikoff acknowledged that the values of the Debtors' subsidiaries were listed on the Schedules as "zero," but testified that "the better characterization is unknown." (*Id.* at 13:14-15.) Debtors' counsel stated that the "Schedules were based on what was anticipated to be market value or true value issues which are unknown at this time." (*Id.* at 25:19-21.)

23.    The Committee continues to make a good-faith effort to engage with the Debtors in a constructive discussion regarding case funding. In correspondence, the Committee has explained that these discussions are consistent with the Committees' functions under section 1103 of the Bankruptcy Code. The Debtors, however, have continued to provide no additional information to the Committee on how they plan to fund these Chapter 11 Cases. The Debtors have only insisted that they have "no cash need" and stated in conclusory fashion that they believe that

they have "sufficient assets which will be monetized by the effective date of [a] plan to cover all properly presented and approved administrative expenses."  (Ex. G at 1, 8.)

**D.     Eletson Gas**

24.     Eletson Gas is a limited liability company with common and preferred membership interests.  (Ex. I at 27.)  Eletson Holdings holds 100% of the common shares.  The question of who holds the Preferred Shares has been the subject of contentious litigation between the Debtors and Levona Holdings, Ltd. ("Levona"), which has been described at length in other filings.  (*See, e.g.*, ECF 181 (filed under seal), 239.)

25.     When they filed their 2015.3 Reports on November 20, the Debtors did not include a report for Eletson Gas.  The Debtors asserted that Levona had prevented them from doing so (*see* ECF 272 at 1), which Levona denied (*see* ECF 279 at 1).  The Committee asked the Debtors in writing on November 20 and again on November 27 to explain what actions Levona had taken to prevent the Debtors from making those disclosures, but the Debtors did not respond.  (*See* Ex. J.)  On November 27, the U.S. Trustee filed a response, explaining that Levona "presents no bar" to the Debtors' compliance with Rule 2015.3 and requested that the Debtors immediately furnish the information.  (ECF 284 at 3.)

26.     On November 30, the Debtors filed an "amended" 2015.3 Report with financial information concerning Eletson Gas.   (ECF 298.)   The amended report lists the "Total stockholders' equity" of Eletson Gas at a deficit of $87,915,000.  (*Id.* at 20.)

27.     At a third scheduled 341 Meeting on December 12, 2023, Kertsikoff testified that Eletson Holdings' interest in the common equity of Eletson Gas has "negative value."  (Ex. K at 12:15.)  He further testified that the value of the Preferred Shares is "a big number," reflected in the 2015.3 Reports, at least in part, as $186,762,000.  (*Id.* at 13:2-3; *see also* ECF 298 at 20 (other Non-Current Liabilities).)  Kertsikoff further testified that he "believe[s]" that the Preferred Shares

have additional value beyond the approximately $186.7 million referenced in the 2015.3 Report but that he is "not familiar with that off the top of [his] head." (Ex. K at 16:20-21.)[18]

28.     As the Court is aware, the Debtors contend that the Preferred Shares were transferred to Cypriot entities (the "Cypriot Nominees") that are wholly owned by the Kertsikoff family and the other two Principal Families.  They contend the shares were transferred in return for a promise to pay 3 million euros—or about 1.7% of the $187 million[19] they now claim those shares are worth—and they concede that the 3 million euros has not been paid.  (*See* ECF 286 at ¶ 34.)   The purported transfer was supposedly authorized at a "family meeting," was not memorialized in any documentation, and was not approved by the boards of either Eletson Gas or Eletson Holdings.

E.     **Corporate Governance**

29.     At the 341 Meeting on December 12, Kertsikoff was also asked whether the Debtors have any independent directors.  (*See* Ex. K at 22:11.)  Kertsikoff replied:  "What does it mean, independent director?"  (*Id.* at 22:15-18.)  He further testified:

> I don't believe—I was not—I—if they are, whether they should be designated as independent or not I don't know. I don't—I haven't seen a form like that before. So I can—you know, what are you—you know, by definition of independent, what are you meaning?  Do they work for the company or what does that—what are trying to get at?

(*Id.* at 23:2-12.)   Later that day, the Committee sent a letter to Debtors' counsel seeking "to ascertain the status of Eletson Holdings, Inc.'s . . . independent directors," noting that the Debtors' articles of incorporation require that Eletson Holdings have at least two such directors.  (*See* Ex. L.) The Debtors have not responded to the Committee's letter.

---

[18] Kertsikoff acknowledged that he is "the president and CEO for Eletson Gas."  (Ex. K at 15:4 6.)
[19] Calculated at the March 11, 2022 exchange rate of 1 Euros to $1.0914 USD.

30. On December 21, 2023, the Debtors filed a "Notice of Establishment of Independent Committee," representing that the shareholders of Eletson Holdings had elected a new director and that its board had appointed such director to a purportedly "Independent Committee." (ECF 329.) The Debtors' filing attaches meeting minutes, indicating that the election of this director purportedly occurred on December 11, 2023, the day before the 341 Meeting at which Kertsikoff professed under oath not to know what counsel was "trying to get at" by asking about independent directors. (*See* Ex. K at 23:6-12.) According to the Debtors' filing, Kertsikoff was among the Eletson Holdings shareholders and directors who purportedly elected the new director on December 11 and appointed him to the "Independent Committee." (*See* ECF 329, Ex. A at 3-4 & Ex. B at 5 at (Kertsikoff signature).)

**F. The Prior Rule 2004 Application**

31. During the involuntary proceedings on March 16, 2023, the Court authorized certain of the petitioning creditors to obtain information from the Debtors regarding their financial condition, assets and liabilities, and prepetition transactions. (ECF No. 22.) In accordance with that order, the petitioning creditors issued Rule 2004 subpoenas to the Debtors and their affiliates. The Debtors objected to those requests, and the petitioning creditors narrowed the requests in scope, limiting them only to certain narrow requests to the Debtors themselves. As reflected in those narrowed requests (attached hereto as Exhibit M), information exchanged during the involuntary proceedings was limited. The Committee does not seek to discover documents that were previously produced.

32. Documents produced during the involuntary proceedings also raise additional questions. For example, documents produced in discovery raise questions as to whether Eletson Holdings and/or certain of its Subsidiaries have made unreported loans to the Principal Families. (*See* Ex. N, Ex. O.) Further discovery is needed to explore those issues, among others.

**RELIEF REQUESTED**

33.    The Committee respectfully requests entry of the Proposed Order authorizing the Committee to issue Examination Requests to each of the Examination Parties, including requests substantially in the form attached as **Exhibits 1-4** to the Proposed Order and follow-up requests as may be appropriate.

**BASIS FOR RELIEF**

I.    **The Court Should Authorize the Rule 2004 Examinations.**

A.    **The Scope of the Rule 2004 Requests Is Appropriate.**

34.    Rule 2004 provides that, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Such examination must relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any other matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b).

35.    The Committee is a "party in interest" within the meaning of Rule 2004(a). *See* 11 U.S.C. § 1109(b). As a fiduciary for unsecured creditors, the Committee has broad statutory authority to, among other things, "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor . . . and any other matter relevant to the case or to the formation of a plan." 11 U.S.C. § 1103(c)(2); s*ee In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (authorizing unsecured creditors' committee to conduct rule 2004 examination and recognizing that the "Committee is expressly authorized to investigate the acts, conduct, assets, liabilities and financial condition of the Debtors under § 1103 of the Bankruptcy Code.").

36.    Examinations under Rule 2004 are "unfettered and broad." *See In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) ("The scope of a Bankruptcy Rule 2004 examination is 'unfettered and broad.' Its purpose is to facilitate the discovery of assets and the unearthing of frauds. . ..." (citations omitted)). Courts have recognized that Rule 2004 authorizes a "fishing

expedition." *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). Such breadth is consistent with the purpose of Rule 2004, which is to "discover the nature and extent of the bankruptcy estate in order to distribute the debtor's assets for the benefit of its creditors." *In re Bibhu LLC*, 2019 WL 171550, at *2; *see also In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate…and for 'discovering assets, examining transactions, and determining whether wrongdoing has occurred'") (citation omitted); *Drexel Burnham Lambert Grp.,* 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991).

37.       In this case, there is an urgent need to determine the full extent of the estate. The Debtors' Schedules indicate that they have no assets other than litigation claims against certain of their creditors and equity interests in their subsidiaries, but the litigation claims are not assigned a value and the value of the equity interests in the subsidiaries is listed at "$0." The Debtors have filed incomplete 2015.3 Reports, and during multiple 341 Meetings have dismissed the information in such statements as "book value," taking the position that the actual value of their assets is "unknown." Without meaningful disclosures from the Debtors, the Committee thus requires Rule 2004 examinations to ascertain the extent of the estate and the assets that may be available to fund administrative expenses and distributions to creditors.

**B.       The Court Should Authorize Rule 2004 Examinations of the Non-Debtor Examination Parties.**

38.       The Committee requires examinations not only of the Debtors but of the non-Debtor Examination Parties, including the Debtors' subsidiaries and affiliates, as well as the Cypriot Nominees that are affiliated with the Debtors' insiders.

39.     By its terms, Rule 2004 authorizes the examination of "any entity."  *See* Fed. R. Bankr. P. 2004(a).  Thus, courts generally permit the examination of "any third party who can be shown to have a relationship with the debtor," so long as the information requested relates (as here) to the acts, conduct, liabilities, or financial condition of the debtor, or the administration of the debtor's estate.  *Ionosphere Clubs,* 156 B.R. at 432; *see also In re Enron Corp.*, 281 B.R. at 840 ("[T]he Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate."); *In re Recoton Corp.,* 307 B.R. at 755 (permitting Rule 2004 examination of the former directors and officers of debtor).

40.     Here, the requested relief is well within the scope of Rule 2004.  The Requests relate to the acts, conduct, and property of the Debtors, the Debtors' financial condition, and matters affecting the administration of the Debtors' estates, including transfers between the Debtors and Non-Debtors.  *See* Fed. R. Bankr. P. 2004.  The parties to which the Committee proposes to serve requests are affiliates of the Debtors' insiders and non-Debtor subsidiaries that are wholly owned by the Debtors and therefore have a close relationship with the Debtors and possess knowledge of the Debtors' acts, conduct, liabilities, or financial condition which relate to the administration of the bankruptcy estate.  *In re Recoton Corp.,* 307 B.R. at 755.  Examination of the Cypriot Nominees is particularly crucial, as they purport to control assets—the Preferred Shares—that may represent the most significant value that should be available for distribution to creditors of these estates.

II.     **A Rule 2004 Examination May be Commenced by an Ex Parte Application.**

41.     A Rule 2004 examination may be commenced by an *ex parte* motion.  *See, e.g., In re Toft*, 453 B.R. 186, 198 (Bankr. S.D.N.Y. 2011) ("an examination under Bankruptcy Rule 2004

may be commenced by an *ex parte* motion"); *In re Kramer*, 492 B.R. 366, 372 (Bankr. E.D.N.Y. 2013) (noting "[t]he Rule 2004 Application could have been made *ex parte*").

42.     Although this Application is initially being made *ex parte*, any entity ultimately served with a deposition notice, request for production of documents, or subpoena will receive a copy of the Court's Order approving this Application and may contest the scope or issuance of that notice, request, or subpoena, and any disputes that cannot be resolved between the Committee and a subpoenaed party may be raised with this Court.

## III.     Service of Subpoenas by FedEx or Other Means of Service Allowable under Bankruptcy Rule 9016 is Appropriate.

43.     Service of subpoenas pursuant to the Proposed Order by FedEx and any other means of service allowable under Bankruptcy Rule 9016 is appropriate because personal service on all persons subpoenaed pursuant to the Proposed Order would be unduly burdensome and expensive and would delay the Committee's efforts to obtain information about of the Debtors' financial affairs and the nature and extent of the Debtors' estates.

44.     Courts in the Second Circuit have authorized alternative service when such service was reasonably "calculated to provide timely actual notice." *Medical Diagnostic Imaging PLLC v. CareCore Nat. LLC*, Case Nos. 06 Civ. 7764(CS)(THK), 2008 WL 3833238, at *2 (S.D.N.Y. Aug. 15, 2008); *see Cordius Trust v. Kummerfeld*, Case No. 99 CIV. 3200(DLC), 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000) (allowing alternative service by certified mail because "alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness"); *In re Shur*, 184 B.R. 640, 644 (Bankr. E.D.N.Y. 1995) (holding that Rule 45 of the Federal Rules of Civil Procedure (and by extension Bankruptcy Rule 9016) does not require personal service and that other service is permissible provided service was reasonably calculated to give actual notice). Here, delivery of the subpoenas by FedEx, other overnight-delivery service, or other means agreed

to by the subpoenaed parties, is reasonably calculated by the Committee to ensure actual receipt by the subpoenaed parties. Actual notice is readily achievable here where the Examination Parties are closely affiliated with the Debtors.

## NOTICE

45.     The Committee seeks entry of the Proposed Order on an *ex parte* basis. Once entered, the Committee will serve the Court's Order approving this Application by email (if available) or first-class mail to: (a) the United States Trustee; (b) the Debtors; and (c) all parties that have filed a notice of appearance in these cases. Moreover, the Committee will serve a copy of the Proposed Order with any Discovery Request that it serves pursuant to the Proposed Order. Due to the nature of the relief requested, the Committee respectfully submits that no further notice is required.

## NO PRIOR REQUESTS

46.     No prior application for the relief requested herein has been made by the Committee to this or any other court.

## CONCLUSION

47.     For the foregoing reasons, the Committee respectfully requests that the Court enter the Proposed Order, in substantially the form attached hereto as Exhibit A, authorizing the Committee to conduct examinations under Rule 2004, and grant such further relief as this Court may deem just and proper.

Dated:      December 26, 2023         Respectfully submitted,
             New York, New York

By: */s/ David A. Herman*____
Stephen D. Zide
David A. Herman
Owen S. Haney
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
stephen.zide@dechert.com
david.herman@dechert.com
owen.haney@dechert.com
Tel: (212) 698-3500
Fax: (212) 698-3599

*Proposed Counsel to the Official Committee
of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 26, 2023, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all

ECF recipients in the above-captioned matter.

Dated: New York, New York
        December 26, 2023

Respectfully submitted,


By: */s/ David A. Herman*
     Stephen D. Zide
     David A. Herman
     Owen S. Haney
     DECHERT LLP
     1095 Avenue of the Americas
     New York, NY  10036-6797
     stephen.zide@dechert.com
     david.herman@dechert.com
     owen.haney@dechert.com
     Tel:  (212) 698-3500
     Fax: (212) 698-3599

     *Proposed Counsel to the Official Committee of*
     *Unsecured Creditors*

Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
                                                          :
In re:                                                    :          Chapter 11
                                                          :
ELETSON HOLDINGS INC., et al.,                            :          Case No. 23-10322 (JPM)
                                                          :
                                                          :          Jointly Administered
                                  Debtors.[1]             :
                                                          :
--------------------------------------------------------------x

## ORDER AUTHORIZING DISCOVERY PURSUANT TO
## RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Upon the *ex parte* application dated December __, 2023 (the "Application") of the Official

Committee of Unsecured Creditors (the "Committee"), for entry of an order (this "Order") pursuant

to section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016, authorizing the

Committee to (a) issue notices of examination and requests for production of documents to Eletson

Holdings Inc. ("Eletson Holdings"), Eletson Finance (US) LLC, and Agathonissos Finance LLC

(the "Debtors"), and to (b) issue subpoenas to conduct oral examinations of, and seek the

production of documents from any affiliates or subsidiaries in which one or more of the Debtors

may own a direct or indirect controlling interest, and any current or former principal, employee,

agent, or representative of each of the foregoing (the "Non-Debtors," and together with the Debtors,

including any current or former shareholder, principal, employee, agent, or representative of each

of the foregoing, the "Examination Parties") to obtain information concerning the acts, conduct,

and property of the Debtors, the Debtors' financial condition, and matters affecting the

---

[1]     The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

administration of the Debtors' estates; and the Court having jurisdiction to consider the Application and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that no other notice is necessary except as provided herein; and the relief requested therein raising a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the relief sought being in the best interests of the Debtors' estate, their creditors, and other parties in interest; and it appearing that good and sufficient cause for the relief sought in the Application exists, therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is granted as set forth herein.

2. The Committee is authorized to issue notices of examination, requests for production of documents, and subpoenas to the Examination Parties, including requests substantially in the forms attached hereto as **Exhibits 1 – 4** and such follow-up requests as the Committee may deem appropriate.

3. The subpoenas authorized by this Order may be served by FedEx or any other method of service permitted under Bankruptcy Rule 9016 or applicable non-bankruptcy law or by other means agreed to by the subpoenaed entities or persons.

4. The Committee shall serve a copy of this Order with any notice of examination, request for production of documents, or subpoena that is served pursuant to this Order.

5. Any notice of examination, request for production of documents, or subpoena issued pursuant to this Order shall provide at least fourteen days' notice to the recipient to provide the recipient an opportunity to object in writing to the notice of examination, request for production of documents, or subpoena or to file any written motion with the Court.

6.     If any entity or person who receives a request for production of documents or subpoena for the production of documents pursuant to this Order withholds any documents on the basis of an asserted privilege, that entity is directed to provide a privilege log in accordance with Bankruptcy Rule 7026 to Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Stephen D. Zide Esq. (stephen.zide@dechert.com), David A. Herman, Esq. (david.herman@dechert.com), and Owen S. Haney, Esq. (owen.haney@dechert.com), so as to be received with the document production required by the subpoena, or at such time as may be mutually agreed to by the Committee and the subpoenaed entity or person.

7.     The Committee shall serve a copy of the Application and this Order by electronic mail or FedEx to the Notice Parties within two (2) business days of entry of this Order.

8.     The entry of this Order is without prejudice to the rights of the Committee to apply for any other or further relief, including, but not limited to, further relief under Bankruptcy Rule 2004.

9.     The Court shall retain jurisdiction to hear and determine any and all matters arising from the interpretation and/or implementation of this Order.


Dated:              , 2023
New York, New York


_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit 1</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                    :
In re:                                              :          Chapter 11
                                                    :
ELETSON HOLDINGS INC., et al.,                      :          Case No. 23-10322 (JPM)
                                                    :
                                                    :
                           Debtors.[1]              :
                                                    :
-------------------------------------------------------------x

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FIRST SET OF RULE 2004 REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO [DEBTOR]

Pursuant to Federal Rules of Civil Procedure 26 and 34, and the Bankruptcy Court's *Order Authorizing Discovery Pursuant to Rule 2004 of the Federal rules of Bankruptcy Procedure*, entered on [__] [Case No. 23-10322 (JPM), Docket No. __], the Official Committee of Unsecured Creditors (the "Committee"), by and through its undersigned counsel, hereby requests that [Debtor] produce within 14 days of service of this request, the documents requested herein at the offices of Dechert LLP, located at 1095 Avenue of the Americas, New York, New York 10036.

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

## **DEFINITIONS**

1.       The term "Accounts" shall mean: (i) any and all bank accounts, including, but not limited to, all operating, payroll, tax, and escrow accounts; (ii) investment accounts including, but not limited to, equities, bonds, or governmental obligations; (iii) any credit card, merchant and other accounts; and (iv) pension, profit sharing, retirement and life insurance accounts.

2.       The term "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(2) of the Bankruptcy Code.

3.       The term "AB Bank" means Aegean Baltic Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

4.       The term "Alpha Bank" means Alpha Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

5.       The term "Apargo" means Apargo Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

6.      The term "Arbitration" means the JAMS arbitration proceeding entitled, *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, and any related appeals and confirmation proceedings including the proceedings captioned *Eletson Holdings Inc. v. Levona Holdings, LTD.,* Case No. 23-cv-07331 (LJL) (S.D.N.Y. 2023).

7.      The term "Bankruptcy Cases" means the above captioned bankruptcy cases that were commenced as involuntary chapter 7 cases on March 7, 2023, and converted by the Debtors to voluntary chapter 11 cases on September 25, 2023.

8.      The term "Bankruptcy Code" means title 11 of the United States Code.

9.      The term "Berenberg" means Joh. Berenberg, Gossler & Co. KG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

10.      The term "Bergos" means Bergos AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by Bergos.

11.      The term "Board" means any board of directors, board of managers, or similar governing body for any entity, including any committee, subcommittee, or other subset thereof.

12.      The term "Board Materials" means, with respect to any Board, all Documents or Communications concerning the meetings, resolutions, decisions, or business such Board,

including (without limitation) meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

13.     The term "BOL" means the Binding Offer Letter, dated February 22, 2022 (EletsonBK059421).

14.     The term "Citibank" means Citibank Europe Plc, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

15.     The term "Common Shares" means the common interests in Eletson Gas.

16.     The term "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, and Snapchat., telephone conversations (including recorded or taped telephone conversations and including messages left on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

17.     The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating,

demonstrating, identifying, referencing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

18.     The term "Credit Agricole" means Credit Agricole Bank, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

19.     The term "Credit Suisse" means Credit Suisse Group AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

20.     The term "Cypriot Nominees" means Apargo, Desimuso, and Fentalon, individually and/or collectively.

21.     The term "Debtors" means Eletson Holdings, Eletson Finance, and Eletson MI, individually and/or collectively.

22.     The term "Demand Review Committee" means the Demand Review Committee established by the Board of Eletson Holdings.

23.     The term "Director" means any member of a Board (as defined above), whether designated as a director, as a manager, or with another title.

24.     The term "Desimuso" means Desimuso Trading Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

25.     The term "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule of Civil Procedure 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notes, handwritten or otherwise; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

26.     The term "DNB Bank" means DNB Bank ASA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees,

officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

27.     The term "DVB Bank" means DVB Bank SE, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by DVB Bank.

28.     "Elafonissos" shall mean Elafonissos Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

29.     The term "Elafonissos Family" means any person who is a beneficial owner or representative of Elafonissos, including without limitation, (a) Ioannis Zilakos and (b) Niki Zilakos and her spouse and lineal descendants.

30.     The term "Eletson Finance" means Eletson Finance (US) LLC, including all of its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

31.     The term "Eletson Gas" means Eletson Gas LLC, including its subsidiaries, officers, directors, managers, members, partners, employees, counsel, financial advisors,

investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

32.      The term "Eletson Holdings" means Eletson Holdings Inc., including its officers, directors, co-founders, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

33.      The term "Eletson Holdings Shareholders" means Family Unity Trust, Glafkos Trust, Lassia Investment Company, Elafonissos, and/or Keros, individually or collectively, any Affiliates thereof, and/or any of the Families.

34.      The term "Eletson MI" means Agathonissos Finance LLC, including its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

35.      The term "Family Unity Trust" means Family Unity Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

36.      The term "Fentalon" means Fentalon Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

37.     The term "Glafkos Trust" means Glafkos Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

38.     The term "Families" means the Elafonissos Family, Hadjieleftheriadis Family, Karastamati Family, Keros Family, Kertsikoff Family, both collectively and/or individually.

39.     The term "Guarantors" means the thirteen vessel-owning special purpose vehicles that guaranteed the Debtors' Obligations under the Indenture and the First Preferred Ship Mortgage Notes due 2022 issued by the Debtors under the Indenture.

40.     The term "Hadjieleftheriadis Family" means any person who is a beneficial owner or representative of the Glafkos Trust Company, including without limitation, (a) Vasilis Hadjieleftheriadis, (b) Konstantine Hadjieleftheriadis, and (c) A.B. Hadjieleftheriadis and his spouse and lineal descendants.

41.     The term "including" means including, without limitation.

42.     The term "Initial Independent Directors" means LaChance and Vogel, in their capacity as Independent Directors of Eletson Holdings, both collectively and/or individually.

43.     The term "Indenture" means the Indenture dated as of July 2, 2018 (together with all amendments, modifications, supplements, and ancillary Documents related thereto) by and among the Debtors, the Guarantors, and the Trustee.

44.     The term "Independent Director" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in *Articles of Amendment of the Restated Articles of Incorporation Eletson Holdings Inc.*, dated the 29th day of June 2018.

45.     The term "Independent Managers" means LaChance and Vogel, in their capacity as Independent Directors of Eletson MI, both collectively and/or individually.

46.     The term "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

47.     The term "Karastamati Family" means any person who is a beneficial owner or representative of the Lassia Investment Company, including without limitation, (a) Lascarina Karastamati, (b) Eleni Karastamati, and (c) J.E. Karastamati and his spouse and lineal descendants.

48.     The term "Keros" shall mean Keros Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

49.     The "Keros Family" means any person who is a beneficial owner or representative of the Keros, including without limitation, (a) Emmanouil Andreoulakis, and (b) Vassiliki Andreoulakis and her spouse and lineal decedents.

50.     The "Kertsikoff Family" means any person who is a beneficial owner or representative of the Family Unity Trust, including without limitation, (a) Vassilis Kertsikoff, (b) Constantine Kertsikoff, and (c) E.B. Kertsikoff and his spouse and lineal descendants.

51.     The term "Konstantaras" means Panagiotis Konstantaras.

52.     The term "LaChance" means Jim LaChance.

53.     The term "Lassia Investment Company" means Lassia Investment Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial

advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

54.     The term "Morgan Stanley" means Morgan Stanley, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

55.     The term "Nordbank" means Hamburg Commercial Bank (formerly HSH NordBank), including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

56.     The term "Obligations" shall mean obligations owed by a Person, whether individually, as a co-obligor, or jointly with another Person, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise.

57.     The term "Piraeus Bank" mean Piraeus Bank SA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

58.     The term "Person" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(41) of the Bankruptcy Code.

59.     The term "Preferred Shares" means the preferred interests in Eletson Gas.

60.     The term "Relevant Period" means January 1, 2018, through the date of production.

61.     The term "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an entity, including such holder's affiliates, relatives, or other related parties.

62.     The term "Subsidiary" means any entity whose management is controlled, directly or indirectly, by a second entity, including but not limited to any entity whose stock or other ownership interests are owned by a second entity in such quantity that the second entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the entity.

63.     The term "Transfer" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(54) of the Bankruptcy Code.

64.     The term "Trustee" means Wilmington Savings Fund Society, FSB.

65.     The term "UniCredit" means UniCredit Bank AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

66.     The term "Valuation" means the attribution of a qualitative or quantitative value, to or a change in value of, a particular asset, liability, or category of either whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

67.     The term "Vessel" or "Vessels" mean, individually and collectively, the Salamina, Fourni, Kastos, Kinaros, Kimolos, Anafi, Nisyros, Tilos, Symi, Telendos, Othoni, Astipalea, Paros, Kithnos, Dilos, Kithira, Antikithira, Ithacki, Kalolimnos, and/or any other vessel that any of the Debtors, their Subsidiaries and/or Affiliates held or hold any direct or indirect interest in.

68. The term "Vogel" means Scott Vogel.

69. The term "Western Asset" means Western Asset Management Company, LLC, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

70. The terms "You" or "Your" means [Debtor] and its and its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, attorneys, and any other Persons and entities purporting to act on its behalf.

## INSTRUCTIONS

1. To the extent, if at all, You object to any of the Requests herein, whether in whole or in part, please respond to as much of the Request to which no objection is asserted. With respect to that part of the Request to which an objection is asserted, please state with specificity the basis of that objection.

2. With respect to each Request to produce Documents, please identify and produce all the Documents in Your possession, custody, or control, and all Documents that can be located or discovered by reasonably diligent efforts, including, without limitation, all such Documents in Your files (whether Personal, business, or any other files) or in the possession, custody, or control of Your attorneys, accountants, agents, representatives, or employees, or any other Person acting or purporting to act on Your behalf.

3. If any Document responsive to these Requests was, but is no longer, in Your possession or subject to Your control, please state whether it (i) is missing or lost, (ii) has been

destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, and their identity (iv) is currently in the possession of or controlled by others, and their identity or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding such disposition thereof and state the date or approximate date thereof. If a Document is in the possession of a Person or entity over whom You have no control: (i) set forth whether and when the Document was in Your possession or otherwise how You became aware of the Document; (ii) set forth the reason(s) why the Document is no longer in Your possession; and (iii) identify the individual who or entity which is presently in possession of the Document.

4.      If a Document responsive to these Requests has been destroyed, it should be identified as follows: (i) preparer(s) and addressor(s); (ii) addressee(s); (iii) each recipient and each Person to whom distributed or shown; (iv) date prepared; (v) date transmitted; (vi) date received; (vii) description of contents and subject matter; (viii) date of destruction; (ix) manner of destruction; (x) name, title, and address of the Person who directed that the Document be destroyed and the Person who destroyed the Document; (xi) the reason for the Document's destruction; (xii) the names of Persons having knowledge of the destruction; and (xiii) a full description of the efforts made to locate the Document.

5.      If any Document or information otherwise responsive to these Requests is withheld or redacted on a claim of privilege, work product immunity or other immunity from discovery, each such Document should be identified in writing by specifying the following for each such Document: the type of Document; a general description of the information contained within the Document; the identities of the author(s), addresser(s), addressee(s), or any indicated or blind copy recipients; and the date of creation or transmittal. In addition, for each such Document, You should (1) indicate that it claims privilege; (2) state the grounds on which the claim of privilege.

6.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege or protection pursuant to paragraph 5 above, those portions of the Document subject to the claim of privilege or protection may be redacted from the Document, but the instructions in the preceding paragraph 5 shall be applicable and the redacted Document shall be produced.

7.      All Documents are to be produced (i) as they are kept in the usual course by You with any identifying labels, file markings, or similar identifying features, or (ii) shall be organized and labeled to correspond to the appropriate request herein.

8.      If any portion of any Document is responsive to any Request, the entire Document must be produced, including all attachments and enclosures.

9.      If there are no Documents responsive to any particular Request, please so state in writing.

10.     In construing each Request herein:

a.      The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, voices, whenever necessary to bring within the scope of any Request all information that might otherwise be construed to be outside its scope;

b.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whenever necessary in order to bring within the scope of this Request any Document or information that might otherwise be construed to be outside of its scope;

c.      Words in the masculine, feminine, or neuter gender shall include each of the other genders;

d.      The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request any Document or information that might otherwise be construed to be outside its scope; and

e.      The terms "all," "any," and "each" shall each be construed as encompassing all, any, and each.

11.     Each request shall be interpreted to include all Documents that concern the Relevant Period or otherwise-specified period, even if such Documents were prepared or published outside of the Relevant Period or otherwise-specified period. If any Document that was prepared or published before or after the Relevant Period or otherwise-specified period is necessary for a correct or complete understanding of any Document that is responsive to a Request, You shall produce these Documents as well. If any Document is undated and the date of its preparation cannot be determined, You shall produce the Document if otherwise responsive to a request for production.

12.     Any Document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

13.     Any Documents attached to each other shall not be separated.

14.     Each page of every Document produced in response to a Request must be marked with a unique Bates number to allow for accurate identification.

15.     Each requested Document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other Documents at any time affixed thereto.

16.     Electronically stored information must be produced in both native and a searchable format, unless the Petitioning Creditors agree otherwise.

17.     All Documents that are produced in electronic format shall be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic Document. The Petitioning Creditors also request

that all spreadsheets created in Microsoft Excel or a similar spreadsheet program be produced in their native format. The Petitioning Creditors reserve their rights to request that other Documents be produced in their native format if necessary. The following metadata fields shall also be produced with all Documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | An automatically-generated number assigned to first page of the Document |
| ENDDOC | An automatically-generated number assigned to last page of the Document |
| BEGATTACH | An automatically-generated number assigned to the first page of the parent Document in a family |
| ENDATTACH | An automatically-generated number assigned to the last page of an attachment in a Document family |
| PARENT_ID | The beginning DOCID for a parent Document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, |
| PARENT_CHILD | A vendor-populated field where "P" denotes a parent |
| PAGECOUNT | The number of pages of each individual Document |
| FROM | The name of the sender of an email, from the "From" field |
| TO | The recipient(s) of an email, from the "To" field |
| CC | The name(s) of any Person(s) to whom a copy of an email |
| BCC | The name(s) of any Person(s) that were blind copied on an email, |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or |
| CUSTODIAN | The name(s) of the Person(s) from which a collection of |
| AUTHOR | The name of the author or the creator of an application |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last |
| DATE_CREATED | The date an email or application file was created |
| TIME_ CREATED | The time at which an email or application was created |
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the "Title" field of an application file |
| LAST_AUTHOR | The name in the "Last Author" field for an application file |
| LAST_SAVED | The date in the "Last Saved" field for an application file |
| LAST_PRINTED | The date in the "Last Printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The filename extension of each email, attachment, or |
| FILENAME | The name of an application file, including its extension |
| FILESIZE | The size of a Document in bytes |
| SOURCEFOLDER | The full path information for email, attachments, and |

| Field Name | Description |
|---|---|
| HASHVALUE | The output of an algorithm-generated value for each |
| SEARCH_HIT | The search term or terms that "hit" on a Document |
| NATIVE_FILE | A hyperlink to the native file |

18.     All Documents or Communications previously produced by the Debtors in the Bankruptcy Cases should not be produced a second time.

19.     These Requests shall be continuing in nature, and You are therefore requested to supplement Your responses upon discovery of additional responsive Documents or information throughout the course of this action. The Committee reserves its right to serve additional Requests as discovery continues.

## REQUESTS FOR PRODUCTION

### A.     Corporate Structure and Organization

1.     All of the Debtors', their Subsidiaries', and/or their Affiliates' corporate formation or organizational documents, and any amendments thereto or restatements thereof, including, without limitation, any articles of incorporation, articles of amendment, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar Documents.

### B.     Board Materials

2.     All Board Materials of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation:

a.     All Documents and Communications concerning any meeting, resolution, or decision of the Board(s) of any of the Debtors, their Subsidiaries, and/or their Affiliates; and

b.     All Documents and Communications sent to, provided to, or considered by the Board(s) of the Debtors, their Subsidiaries, and/or their Affiliates.

### C. Corporate Governance

3. Documents sufficient to identify all officers and directors of each of the Debtors and their Subsidiaries and Affiliates.

4. Documents sufficient to show all compensation or remuneration of any kind paid to or for the benefit of any officers or directors of any of the Debtors, their Subsidiaries and/or their Affiliates.

5. All Documents and Communications concerning the appointment, election, removal, replacement or resignation of (a) any Director of Eletson Holdings, including any Initial Independent Director or other Independent Director, and/or (b) the Independent Managers.

6. All Communications concerning the Initial Independent Directors or the Independent Managers.

7. All Documents and Communications concerning Konstantaras or the Demand Review Committee, including without limitation: (a) the Debtors' consideration, selection and/or appointment of Konstantaras as an Independent Director; (b) the Debtors' creation of the Demand Review Committee; (c) the Debtors' consideration, selection, and/or appointment of any other Person for service as an Independent Director of Eletson Holdings or as a member of the Demand Review Committee; and (d) the appointment, election, removal, replacement or resignation of Konstantaras from the Board of Eletson Holdings during the time period of December 1, 2013 through the date of production.

8. All Documents and Communications concerning any business or familial relationship between Konstantaras and (a) the Debtors (b) any of the Debtors' subsidiaries or Affiliates, (c) the Eletson Holdings Shareholders, (d) the Families, or any members thereof, (e) Eletson Gas, or (f) the Cypriot Nominees.

9.     All Documents and Communications concerning the Debtors' consideration, investigation, investigation, pursuit, or valuation of any potential causes of action by the Debtors against (a) any of their creditors (including indenture trustees); (b) any of their Shareholders or their affiliates; (c) any of the Families or members thereof; or (d) any of the Cypriot Nominees.

10.     All Documents and Communications concerning the ability of the Debtors' "shareholder/director(s) with [a] potential interest to recuse themselves, and allow the creation of an independent demand review or special litigation committee," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

11.     All Documents and Communications concerning the actual or potential recusal of any of the Debtors' director(s) or Officers in connection with (a) any decisions of the Debtors' Board(s); (b) any direction given to the Debtors' counsel; or (c) any decision or action taken in connection with these bankruptcy cases or the Arbitration.

**D.     Shareholder Materials**

12.     All Documents and Communications concerning any meeting of the Shareholders of any of the Debtors, their Subsidiaries, and/or Affiliates, including all general business updates, minutes, resolutions, consents, notes and/or agendas from any Shareholder meeting.

13.     Documents sufficient to identify (a) each of the Shareholders of each of the Debtors, their Subsidiaries, and their Affiliates, and (b) the beneficial owners of each of the Shareholders of each of the Debtors, their Subsidiaries, and/or their Affiliates.

14.     Documents sufficient to show, for each of the Shareholders for each of the Debtors, their Subsidiaries, and/or Affiliates:

    a.     the amounts invested by such Shareholder in the Debtors, their Subsidiaries, and/or Affiliates, as applicable;

    b.     the percentage ownership of such Shareholder in the Debtors, their Subsidiaries, and/or Affiliates, as applicable;

      c.      all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders and any other Transfer to or for the benefit of such Shareholder or any of its affiliates.

**E.**      **Asset Transfers**

15.      All Documents and Communications concerning any Transfer of cash, assets, or thing of value, from any of the Debtors, their Subsidiaries, or their Affiliates to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families.

16.      All Documents and Communications concerning any loan, advance, or other Transfer by any of the Debtors, their Affiliates, or their Subsidiaries to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families, including without limitation:

      a.      all Documents and Communications concerning "the debts of the families and shareholders to the Company" referred to by Costis Kertsikoff in that certain September 28, 2022 email to Lascarina Karastamati (EletsonBK020376); and

      b.      all Documents or Communications concerning the "file with the debts of the families and the shareholders (personally)" referred to by Lascarina Karastamati in that certain October 6, 2022 email (EletsonBK020375), including, without limitation, any emails including Lascarina Karastamati (lascarina.karastamati@eletson.com) and/or Dimitris Stamos (dimitris.stamos@eletson.com) and any of the following participants: (x) Costis Kertsikoff (coskerts@gmail.com); (y) Vasilis Kertsikoff (vaskerts@hotmail.com); and/or (z) Irina Kertsikoff (irina.kertsikoff@gmail.com).

17.      All monthly, quarterly, and annual statements and wire transfer confirmations for all Accounts of any of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation, with respect to Accounts located at any of the following financial institutions: (a) AB Bank; (b) Alpha Bank; (c) Berenberg; (d) Bergos; (e) Citibank; (f) Credit Agricole; (g) Credit Suisse; (h) DNB Bank; (i) DVB Bank; (j) Morgan Stanley; (k) Nordbank; (l) Piraeus Bank; (m) UniCredit; (n) Western Asset; or (o) any other financial institution where any of the Debtors,

their Subsidiaries, and/or their Affiliates was an authorized signatory and/or held beneficial interest, whether individually or jointly with another Person, with respect to an Account.

18.    All Documents and Communications concerning fees or expenses paid to or incurred by Reed Smith LLP, including (without limitation):

        a.    All Documents concerning Eletson Corporation's payment of the fees and expenses owed to Reed Smith for its representation of Eletson Holdings in (a) the Arbitration; (b) the District Court confirmation proceedings; and (c) the Bankruptcy Cases.

        b.    All Documents and Communications concerning the decision of the Debtors, their Subsidiaries, and/or their Affiliates for Eletson Corporation to pay obligations owing to Reed Smith in connection with the Bankruptcy Cases, the Arbitration Proceedings, and the District Court confirmation proceedings.

        c.    All Documents and Communications between September 6, 2023 and September 25, 2023 concerning the payment of fees or expenses of Reed Smith.

        d.    All Documents and Communications concerning the agreement of the Cypriot Nominees "to pay Reed Smith's fees and expenses related to the Arbitration and Confirmation Proceeding in the event Corp was unable to satisfy its obligations to Reed Smith," as referenced I paragraph 13 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261).

        e.    The "comfort letter to Reed Smith sent on behalf of the five shareholders of Holdings," as referenced in paragraph 15 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261), and all Documents and Communications concerning such "comfort letter," including any drafts or amendments thereof.

        f.    All Documents and Communications concerning Reed Smith's determination to "waive any claims Reed Smith would potentially have against the shareholders of Holdings for any amounts unpaid by Corp," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

19.    All Documents and Communications Concerning Reed Smith's determination "to waive any claims Reed Smith would potentially have against the Cypriot Entities for any amounts unpaid by Corp," as stated in the Third Supplemental Declaration of Derek J. Baker, dated

December 21, 2023 (ECF 330).  Documents sufficient to identify all payments made by Eletson Corporation to or for the benefit of Eletson Holdings and/or the other Debtors, from March 7, 2023 to the date of production, including the date, amount, and recipient of each such payment.

### F.    Intercompany Agreements and Transfers

20.    All Documents and Communications concerning any agreements by or among the Debtors, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees, including, without limitation, any Documents or Communications concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

21.    All Documents and Communications concerning Transfers by or among the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

22.    All Documents and Communications concerning the any of the Debtors' and their Subsidiaries' and/or Affiliates intercompany debt or Obligations (including intercompany notes and guarantees), and the calculations thereof.

23.    All Documents and Communications concerning any and all Obligations owed to the Debtors by any of the other Debtors or the Debtors' Affiliates or Subsidiaries, including, but not limited to drafts, invoices, purchase orders, proposals, Documents evidencing payment, notices sent pursuant to any agreement and Communications concerning.

### G.    The Interests in Eletson Gas

24.    All Documents and Communications concerning Eletson Holdings' interest in Eletson Gas for the time period of January 1, 2022 through the date of production.

25.    All Documents and Communications concerning the Preferred Shares or the Common Shares, including without limitation:

      a.      all Documents and Communications concerning any Valuation of the Preferred Shares or the Common Shares; and

      b.      all Documents and Communications concerning any dividends, distributions, or return of profits or capital due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

26. All Documents and Communications concerning the deconsolidation and/or derecognition of the assets and liabilities of Eletson Gas, and/or minority interest in Eletson Gas from the books and records and/or financial statements of Eletson Holdings in 2019 or during any other year.

**H.    The Cypriot Nominees**

27. All Documents and Communications with or concerning any of the Cypriot Nominees, including, without limitation:

      a.      all Documents and Communications concerning any Transfer of the Preferred Shares to any of the Cypriot Nominees;

      b.      all Communications between Reed Smith LLP and the Cypriot Nominees;

      c.      all Communications with Reed Smith LLP concerning the Cypriot Nominees;

      d.      all Documents and Communications on or before March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and

      e.      all Documents and Communications after March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and All Documents and Communications at any time concerning the Cypriot Nominees' interests, contingent or otherwise, in the Preferred Shares.

28. All Documents and Communications from January 1, 2022 through the date of production, concerning the Preferred Shares, including, without limitation, (a) the purported

Transfer of the Preferred Shares to any of the Cypriot Nominees, (b) the purported Transfer of the Preferred Shares to any other entity, or (c) any disposition, cancellation, or retirement of the Preferred Shares.

29. All Documents and Communications concerning the actual or potential status of Eletson Holdings as the sole shareholder of Eletson Gas as stated in the affidavit of Vassilis Kertsikoff, dated October 25, 2022.

I. **Affiliate Transactions**

30. All Documents and Communications concerning any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

31. All Documents and Communications concerning any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b) Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, Officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

32. All Documents and Communications concerning any transaction, contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

33. All Documents and Communications (including any contracts and agreements) concerning cash receipts or disbursements to, or transactions, loans, receivable/payable balances or write-offs with any (a) Insiders, (b) Subsidiaries, Affiliates of, or related parties to, Debtors, and/or (c) Eletson Holdings Shareholders, (d) the Families any members thereof, or (e) any of the Cypriot Nominees.

**J.     Financial Condition of the Debtors and their Subsidiaries**

34. All Documents Concerning the Debtors', their Subsidiaries', and their Affiliates' operations, structure, and financial condition, including, but not limited to, all:

      a.      monthly, quarterly, and annual trial balances;

      b.      monthly, quarterly, and annual general ledgers;

      c.      audited and unaudited annual financial statements;

      d.      monthly, quarterly and annual balance sheets;

      e.      monthly, quarterly and any annual income/profit and loss statements;

      f.      monthly, quarterly and any annual cashflow statements;

      g.      statements/analyses of receipts and disbursements;

      h.      monthly, quarterly and annual income/payroll statements;

      i.      sales and use tax returns;

      j.      monthly, quarterly and any annual bank or other financial account statements;

      k.      annual and current year-to-date ledgers;

      l.      monthly accounts receivable and all related cash receipts including the source thereof;

      m.      monthly accounts payable reports and lists of all disbursements by check, wire and ACH;

      n.      budgets or projections of income and/or cash flows;

o. audited and unaudited financial statements including on a monthly, quarterly, and annual basis, including, without limitation, all accounting, audit, or other workpapers prepared by or on behalf of the Debtors, their Subsidiaries, and/or their Affiliates in connection with preparation of such financial statements;

p. consolidated and unconsolidated monthly, quarterly, and annual income statements, balance sheets, and cash flows as excel files for years, with details of any adjusting journal entries and associated working papers;

q. quarterly and annual budget to actual comparison for income statements;

r. quarterly and annual budget to actual comparison for cash flows;

s. monthly, quarterly, and annual accounts receivable aging reports;

t. monthly accounts payable aging reports prepared by or for the benefit of any of the Debtors, their Subsidiaries, or their Affiliates;

u. liquidation analyses prepared by or for the benefit of any of the Debtors, their Subsidiaries, or their Affiliates; and

v. tax returns or other reports filed with tax authorities in any jurisdiction by the Debtors, their Subsidiaries, or their Affiliates.

35. All Documents and Communications concerning the Debtors', their Subsidiaries', and their Affiliates' financial information, including, without limitation, assets, liabilities, and any other financial information relating to financial performance, intercompany Transfers, and related party transactions.

36. All Documents and Communications concerning any real property owned by the Debtors, their Subsidiaries, or their Affiliates.

37. All Documents and Communications concerning any internal or external appraisals or reports concerning the Valuation of any of Your investments or ownership interests in any of the Debtors' Subsidiaries or Affiliates.

38. All Documents and Communications concerning the Vessels, including, without limitation:

a.   all Documents and Communications concerning, monthly, quarterly and annual operating or management accounts related to the Vessels, including without limitation, accounts concerning (i) daily Vessel operating costs (by Vessel) such as crew costs, travel and training costs, and/or costs for victualling, lube oils, non-capex repairs and maintenance, insurance, spares and supplies, ship management, and port and other related charges; (ii) bunker fuel transactions and/or costs (by Vessel); (iii) capital expenditures related to repair and maintenance costs (by Vessel); and/or (iv) on-shore organization cost by operational and SG&A activities and/or costs;

b.   all Document and Communications concerning the purchase, acquisitions, sale, disposition, or any other Transfer of an interest in any Vessel held by the Debtors, their Subsidiaries, and/or Affiliates;

c.   all Documents and Communications concerning all agreements related to the Vessels, including, but not limited to, time charters, bareboat charters, contracts of affreightment, agency service agreements, and related expenditures; and

d.   all customs documents, purchase orders, shipping documentation, freight and/or weight documents for the time period of January 1, 2020 through the date of production.

39.   Documents sufficient to identify all lenders to the Debtors, their Subsidiaries, and/or their Affiliates, together with all loan documents, UCC-1 filings, or other similar security filings.

40.   All Documents evidencing credit agreements, forbearance agreements, amendments, pledges, guarantees, promissory notes, waivers, intercreditor, or subordination agreements and fee letters concerning any of the Debtors', their Affiliates, or their Subsidiaries' debt.

41.   All Documents and Communications concerning any analysis or evaluation of the Debtors' unsecured creditors' claims.

42.   All Documents and Communications concerning any of any off-balance sheet commitments or contingent liabilities of any of the Debtors, the Debtors' Subsidiaries, or the Debtors' Affiliates.

43. All Documents and Communications evidencing or concerning (a) the Debtors' insurance policies, including any directors and officers liability insurance policies, and/or (b) any insurance policy under which any of the Debtors is a beneficiary or an additional insured.

Dated: December [__], 2023

_____
Stephen D. Zide
David A. Herman
Owen S. Haney
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
Facsimile: (212) 698-3599
Email: stephen.zide@dechert.com
david.herman@dechert.com
owen.haney@dechert.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

Exhibit 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                   :
In re:                                             :        Chapter 11
                                                   :
ELETSON HOLDINGS INC., et al.,                     :        Case No. 23-10322 (JPM)
                                                   :
                                                   :
                          Debtors.[1]              :
                                                   :
-------------------------------------------------------------x

## NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Federal Rules of Bankruptcy Procedure 2004, and the Bankruptcy Court's *Order Authorizing*

*Discovery Pursuant to Rule 2004 of the Federal rules of Bankruptcy Procedure*, entered on [__]

[Case No. 23-10322 (JPM), Docket No. __], the Official Committee of Unsecured Creditors, by

and through its undersigned counsel, will take the deposition upon oral examination of

[DEBTOR].

The deposition will be on the subject matters set forth in **Exhibit A**, and will be held at

the offices of Dechert LLP, located at 1095 Avenue of the Americas, New York, New York

10036, and will commence promptly on [insert date] at [insert time] (Prevailing Eastern Time).

This deposition shall continue from day to day until concluded, and be recorded by videotape,

audio, and stenographic means pursuant to Federal Rule of Civil Procedure 30(b)(3).

---

[1]        The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US)
LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118
Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson
Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

# EXHIBIT A

## DEFINITIONS

Unless otherwise defined below, the definitions and instructions set forth in the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Federal Rules of Civil Procedure (the "Federal Rules"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall apply to the Rule 2004 Examination Topics listed below.

1.  The term "Accounts" shall mean: (i) any and all bank accounts, including, but not limited to, all operating, payroll, tax, and escrow accounts; (ii) investment accounts including, but not limited to, equities, bonds, or governmental obligations; (iii) any credit card, merchant and other accounts; and (iv) pension, profit sharing, retirement and life insurance accounts.

2.  The term "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(2) of the Bankruptcy Code.

3.  The term "AB Bank" means Aegean Baltic Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

4.  The term "Alpha Bank" means Alpha Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

5. The term "Apargo" means Apargo Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

6. The term "Arbitration" means the JAMS arbitration proceeding entitled, *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, and any related appeals including the proceedings captioned *Eletson Holdings Inc. v. Levona Holdings, LTD.,* Case No. 23-cv-07331 (LJL) (S.D.N.Y. 2023).

7. The term "Bankruptcy Cases" means the above captioned bankruptcy cases that were commenced as involuntary chapter 7 cases on March 7, 2023, and converted by the Debtors to voluntary chapter 11 cases on September 25, 2023.

8. The term "Bankruptcy Code" means title 11 of the United States Code.

9. The term "Berenberg" means Joh. Berenberg, Gossler & Co. KG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

10. The term "Bergos" means Bergos AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by Bergos.

3

11. The term "Board" means any board of directors, board of managers, or similar governing body for any entity, including any committee, subcommittee, or other subset thereof.

12. The term "Board Materials" means, with respect to any Board, all Documents or Communications concerning the meetings, resolutions, decisions, or business such Board, including (without limitation) meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

13. The term "BOL" means the Binding Offer Letter, dated February 22, 2022 (EletsonBK059421).

14. The term "Citibank" means Citibank Europe Plc, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

15. The term "Common Shares" means the common interests in Eletson Gas.

16. The term "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, and Snapchat., telephone conversations (including recorded or taped telephone conversations and including messages left on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal

intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

17.     The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

18.     The term "Credit Agricole" means Credit Agricole Bank, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

19.     The term "Credit Suisse" means Credit Suisse Group AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

20.     The term "Cypriot Nominees" means Apargo, Desimuso, and Fentalon, individually and/or collectively.

21.     The term "Debtors" means Eletson Holdings, Eletson Finance, and Eletson MI, individually and/or collectively.

22.     The term "Director" means any member of a Board (as defined above), whether designated as a director, as a manager, or with another title.

23.     The term "Desimuso" means Desimuso Trading Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

24.     The term "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule of Civil Procedure 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notes, handwritten or otherwise; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

25.     The term "DNB Bank" means DNB Bank ASA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

26.     The term "DVB Bank" means DVB Bank SE, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by DVB Bank.

27.     "Elafonissos" shall mean Elafonissos Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

28.     The term "Elafonissos Family" means any person who is a beneficial owner or representative of Elafonissos, including without limitation, (a) Ioannis Zilakos and (b) Niki Zilakos and her spouse and lineal descendants.

29.     The term "Eletson Finance" means Eletson Finance (US) LLC, including all of its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

30. The term "Eletson Gas" means Eletson Gas LLC, including its subsidiaries, officers, directors, managers, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

31. The term "Eletson Holdings" means Eletson Holdings Inc., including its officers, directors, co-founders, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

32. The term "Eletson Holdings Shareholders" means Family Unity Trust, Glafkos Trust, Lassia Investment Company, Elafonissos, and/or Keros, individually or collectively, any Affiliates thereof, and/or any of the Families.

33. The term "Eletson MI" means Agathonissos Finance LLC, including its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

34. The term "Family Unity Trust" means Family Unity Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

35. The term "Fentalon" means Fentalon Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers,

agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

36.     The term "Glafkos Trust" means Glafkos Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

37.     The term "Families" means the Elafonissos Family, Hadjieleftheriadis Family, Karastamati Family, Keros Family, Kertsikoff Family, both collectively and/or individually.

38.     The term "Guarantors" means the thirteen vessel-owning special purpose vehicles that guaranteed the Debtors' Obligations under the Indenture and the First Preferred Ship Mortgage Notes due 2022 issued by the Debtors under the Indenture.

39.     The term "Hadjieleftheriadis Family" means any person who is a beneficial owner or representative of the Glafkos Trust Company, including without limitation, (a) Vasilis Hadjieleftheriadis, (b) Konstantine Hadjieleftheriadis, and (c) A.B. Hadjieleftheriadis and his spouse and lineal descendants.

40.     The term "including" means including, without limitation.

41.     The term "Initial Independent Directors" means LaChance and Vogel, in their capacity as Independent Directors of Eletson Holdings, both collectively and/or individually.

42.     The term "Indenture" means the Indenture dated as of July 2, 2018 (together with all amendments, modifications, supplements, and ancillary Documents related thereto) by and among the Debtors, the Guarantors, and the Trustee.

43.     The term "Independent Director" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in *Articles of Amendment of the Restated Articles of Incorporation Eletson Holdings Inc.*, dated the 29th day of June 2018.

44.     The term "Independent Managers" means LaChance and Vogel, in their capacity as Independent Directors of Eletson MI, both collectively and/or individually.

45.     The term "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

46.     The term "Karastamati Family" means any person who is a beneficial owner or representative of the Lassia Investment Company, including without limitation, (a) Lascarina Karastamati, (b) Eleni Karastamati, and (c) J.E. Karastamati and his spouse and lineal descendants.

47.     The term "Keros" shall mean Keros Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

48.     The "Keros Family" means any person who is a beneficial owner or representative of the Keros, including without limitation, (a) Emmanouil Andreoulakis, and (b) Vassiliki Andreoulakis and her spouse and lineal decedents.

49.     The "Kertsikoff Family" means any person who is a beneficial owner or representative of the Family Unity Trust, including without limitation, (a) Vassilis Kertsikoff, (b) Constantine Kertsikoff, and (c) E.B. Kertsikoff and his spouse and lineal descendants.

50.     The term "LaChance" means Jim LaChance.

51.     The term "Lassia Investment Company" means Lassia Investment Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

52.     The term "Morgan Stanley" means Morgan Stanley, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

53.     The term "Nordbank" means Hamburg Commercial Bank (formerly HSH NordBank), including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

54.     The term "Obligations" shall mean obligations owed by a Person, whether individually, as a co-obligor, or jointly with another Person, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise.

55.     The term "Piraeus Bank" mean Piraeus Bank SA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

56.     The term "Person" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(41) of the Bankruptcy Code.

57.     The term "Preferred Shares" means the preferred interests in Eletson Gas.

58.     The term "Relevant Period" means January 1, 2018, through the date of production.

59.     The term "Requests" is defined to be The Official Committee of Unsecured Creditors First Set of Rule 2004 Requests for the Production of Documents to [Debtor], served on [DATE].

60.     The term "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an entity, including such holder's affiliates, relatives, or other related parties.

61.     The term "Subsidiary" means any entity whose management is controlled, directly or indirectly, by a second entity, including but not limited to any entity whose stock or other ownership interests are owned by a second entity in such quantity that the second entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the entity.

62.     The term "Transfer" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(54) of the Bankruptcy Code.

63.     The term "Trustee" means Wilmington Savings Fund Society, FSB.

64.     The term "UniCredit" means UniCredit Bank AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

65.     The term "Valuation" means the attribution of a qualitative or quantitative value, to or a change in value of, a particular asset, liability, or category of either whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

66.     The term "Vessel" or "Vessels" mean, individually and collectively, the Salamina, Fourni, Kastos, Kinaros, Kimolos, Anafi, Nisyros, Tilos, Symi, Telendos, Othoni, Astipalea, Paros, Kithnos, Dilos, Kithira, Antikithira, Ithacki, Kalolimnos, and/or any other vessel that any of the Debtors, their Subsidiaries and/or Affiliates held or hold any direct or indirect interest in.

67.     The term "Vogel" means Scott Vogel.

68.     The term "Western Asset" means Western Asset Management Company, LLC, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

69.     The terms "You" or "Your" means [Debtor] and its and its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, attorneys, and any other Persons and entities purporting to act on its behalf.

**LIST OF TOPICS FOR EXAMINATION**

In accordance with Federal Rule of Civil Procedure 30(b)(6), you are advised of Your duty to designate one or more officers, directors, or managing agents or other Persons who consent to testify on your behalf with respect to the following matters. The relevant time period for each examination is January 1, 2018, through the date of examination (the "Relevant Time Period"), unless otherwise specifically indicated.

**A.      Corporate Structure and Organization**

1.      All of the Debtors', their Subsidiaries', and/or their Affiliates' corporate and organizational structure.

**B.      Officers and Directors**

2.      All Board Materials of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation:

> a.      all Board Materials concerning any meeting, resolution, or decision of the Board(s) of any of the Debtors, their Subsidiaries, and/or their Affiliates;
>
> b.      all Board Materials sent to, provided to, or considered by the Board(s) of the Debtors, their Subsidiaries, and/or their Affiliates;
>
> c.      the independent committee referenced in the filing at ECF 329; and
>
> d.      the Debtors process for making and executing decisions concerning their assets and liabilities, their business operations, the bankruptcy cases, and the Arbitration.

3.      The Boards and officers of each of the Debtors, and their Subsidiaries and Affiliates, including without limitation:

> a.      the identity of the officers and/or Directors;
>
> b.      any familial relationship among any of the officers and/or Directors;
>
> c.      the compensation or renumeration of any kind paid to or on behalf of any officers or Directors.

4.      The appointment, election, removal, replacement, or resignation of any officer or Director, including any Initial Independent Director, other Independent Director, or Independent Manager.

5.      The Debtors' consideration, investigation, investigation, pursuit, or valuation of any potential causes of action by the Debtors against (a) any of their creditors (including indenture

14

trustees); (b) any of their Shareholders or their affiliates; (c) any of the Families or members thereof; or (d) any of the Cypriot Nominees.

**D.      Shareholders**

6.      The Shareholders of each of the Debtors, their Subsidiaries, and/or Affiliates, including, without limitation:

> a.      any meeting of such Shareholders;
>
> b.      the identity of such Shareholders, and their beneficial owners, if any;
>
> c.      any familial relationship among any of the Shareholders, or any beneficial owners thereof;
>
> d.      the amounts invested by and the percentage ownership held by such Shareholders; and
>
> e.      all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders, any other Transfer to or for the benefit of such Shareholders or any of their respective affiliates.

**E.      Asset Transfers**

7.      Any Transfer of cash, assets, or thing of value, from any of the Debtors, their Subsidiaries, or their Affiliates to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) of any member(s) or Affiliate(s) of the Families.

8.      Any loan, advance, or other Transfer by any of the Debtors, their Affiliates, or their Subsidiaries to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families.

9.      All Accounts of any of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation, with respect to Accounts located at any of the following financial institutions: (a) AB Bank; (b) Alpha Bank; (c) Berenberg; (d) Bergos; (e) Citibank; (f) Credit Agricole; (g) Credit Suisse; (h) DNB Bank; (i) DVB Bank; (j) Morgan Stanley; (k) Nordbank; (l)

Piraeus Bank; (m) UniCredit; (n) Western Asset; or (o) any other financial institution where any of the Debtors, their Subsidiaries, and/or their Affiliates was an authorized signatory and/or held beneficial interest, whether individually or jointly with another Person, with respect to an Account.

10.     Fees or expenses paid to or incurred by Reed Smith LLP.

**F.     Intercompany Agreements and Transfers**

11.     All intercompany agreements by or among the Debtors, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees, including, without limitation, any such agreements concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

12.     All intercompany Transfers by or among the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

13.     All intercompany debt or Obligations (including intercompany notes and/or guarantees) of Debtors, their Subsidiaries, and/or Affiliates, including the calculation of such intercompany debt or Obligations.

**G.     The Interests in Eletson Gas**

14.     Eletson Holdings' interest in Eletson Gas for the time period of January 1, 2022 to the present time.

15.     The Preferred Shares or the Common Shares, including without limitation:

a.      the value of the Preferred Shares or the Common Shares; and

b.      any dividends, distributions, or return of profits or capital made, due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

**H.     The Cypriot Nominees**

16.     The Cypriot Nominees, including without limitation:

a.   any purported Transfer of the Preferred Shares to any of the Cypriot Nominees;

b.   the designation of any of the Cypriot Nominees or any other entity as a "nominee" under the BOL;

c.   any actual or contemplated Transfer of the Preferred Shares to any entity other than the Cypriot Nominees; and

d.   any disposition, cancellation, or retirement of the Preferred Shares.

I.   **Affiliate Transactions**

17.   Any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

18.   Any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

19.   Any contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries, including without limitation, any contracts or agreements

concerning cash receipts or disbursements, or transactions, loans, receivable/payable balances or write-offs with any of the Persons identified in (a)-(e) of this topic.

**J.      Financial Condition of Debtors and their Subsidiaries**

20.      The Debtors' financial condition, including, but not limited to, all of Your assets, liabilities, Accounts, Obligations, and material transactions or Transfers.

21.      The financial condition of the Debtor's Subsidiaries, including, but not limited to, all of the Subsidiaries' assets, liabilities, Accounts, Obligations, and material transactions or Transfers.

22.      The financial condition of the Debtors' Affiliates, including, but not limited to, all of the Affiliates' assets, liabilities, Accounts, Obligations, and material transactions or Transfers.

23.      The Debtors', their Subsidiaries', and their Affiliates' audited and unaudited financial statements including on a monthly, quarterly, and annual basis, including, without limitation, all accounting, audit, or other workpapers prepared by or on behalf of the Debtors, their Subsidiaries, and/or their Affiliates in connection with preparation of such financial statements.

24.      Any Valuation concerning the Debtors or any of the Debtors' Subsidiaries or Affiliates, or any assets or liabilities of the Debtors or any of the Debtors' Subsidiaries or Affiliates.

25.      The Vessels.

26.      The Debtors' insurance policies, including any directors and officers liability insurance policies, and any insurance policy under which any of the Debtors is a beneficiary or an additional insured.

27.      The Requests and any documents produced in response thereto.

28.      The Debtors', their Subsidiaries', and their Affiliates' documents collection, retention, and information management processes and procedures including as they relate to the Requests.

**K. The Bankruptcy Cases**

29.     All communication between the Debtors and any of their creditors or entities purporting to be creditors including Middle East Shipping Agencies Overseas, Ltd.

Exhibit 3

# **EXHIBIT A**

## **SCHEDULE 1 – DOCUMENT REQUESTS**

### **DEFINITIONS**

Unless otherwise defined below, the definitions and instructions set forth in the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Federal Rules of Civil Procedure (the "Federal Rules"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall apply to the requests for production (the "Requests") listed below.

### **DEFINITIONS**

1.      The term "Accounts" shall mean: (i) any and all bank accounts, including, but not limited to, all operating, payroll, tax, and escrow accounts; (ii) investment accounts including, but not limited to, equities, bonds, or governmental obligations; (iii) any credit card, merchant and other accounts; and (iv) pension, profit sharing, retirement and life insurance accounts.

2.      The term "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(2) of the Bankruptcy Code.

3.      The term "AB Bank" means Aegean Baltic Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

4.      The term "Alpha Bank" means Alpha Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers,

agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

5.    The term "Apargo" means Apargo Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

6.    The term "Arbitration" means the JAMS arbitration proceeding entitled, *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, and any related appeals including the proceedings captioned *Eletson Holdings Inc. v. Levona Holdings, LTD.,* Case No. 23-cv-07331 (LJL) (S.D.N.Y. 2023).

7.    The term "Bankruptcy Cases" means the above captioned bankruptcy cases that were commenced as involuntary chapter 7 cases on March 7, 2023, and converted by the Debtors to voluntary chapter 11 cases on September 25, 2023.

8.    The term "Bankruptcy Code" means title 11 of the United States Code.

9.    The term "Berenberg" means Joh. Berenberg, Gossler & Co. KG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

10.   The term "Bergos" means Bergos AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents,

officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by Bergos.

11. The term "Board" means any board of directors, board of managers, or similar governing body for any entity, including any committee, subcommittee, or other subset thereof.

12. The term "Board Materials" means, with respect to any Board, all Documents or Communications concerning the meetings, resolutions, decisions, or business such Board, including (without limitation) meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

13. The term "BOL" means the Binding Offer Letter, dated February 22, 2022 (EletsonBK059421).

14. The term "Citibank" means Citibank Europe Plc, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

15. The term "Common Shares" means the common interests in Eletson Gas.

16. The term "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, and Snapchat., telephone conversations (including recorded or taped telephone conversations and including messages left on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings

on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

17.    The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

18.    The term "Credit Agricole" means Credit Agricole Bank, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

19.    The term "Credit Suisse" means Credit Suisse Group AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

20.    The term "Cypriot Nominees" means Apargo, Desimuso, and Fentalon, individually and/or collectively.

21.     The term "Debtors" means Eletson Holdings, Eletson Finance, and Eletson MI, individually and/or collectively.

22.     The term "Director" means any member of a Board (as defined above), whether designated as a director, as a manager, or with another title.

23.     The term "Desimuso" means Desimuso Trading Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

24.     The term "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule of Civil Procedure 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notes, handwritten or otherwise; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer

print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

25. The term "DNB Bank" means DNB Bank ASA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

26. The term "DVB Bank" means DVB Bank SE, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by DVB Bank.

27. "Elafonissos" shall mean Elafonissos Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

28. The term "Elafonissos Family" means any person who is a beneficial owner or representative of Elafonissos, including without limitation, (a) Ioannis Zilakos and (b) Niki Zilakos and her spouse and lineal descendants.

29. The term "Eletson Finance" means Eletson Finance (US) LLC, including all of its officers, directors, co-founders, members, partners, employees, counsel, financial advisors,

investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

30.     The term "Eletson Gas" means Eletson Gas LLC, including its subsidiaries, officers, directors, managers, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

31.     The term "Eletson Holdings" means Eletson Holdings Inc., including its officers, directors, co-founders, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

32.     The term "Eletson Holdings Shareholders" means Family Unity Trust, Glafkos Trust, Lassia Investment Company, Elafonissos, and/or Keros, individually or collectively, any Affiliates thereof, and/or any of the Families.

33.     The term "Eletson MI" means Agathonissos Finance LLC, including its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

34.     The term "Family Unity Trust" means Family Unity Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

35.     The term "Fentalon" means Fentalon Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees,

officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

36.     The term "Glafkos Trust" means Glafkos Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

37.     The term "Families" means the Elafonissos Family, Hadjieleftheriadis Family, Karastamati Family, Keros Family, Kertsikoff Family, both collectively and/or individually.

38.     The term "Guarantors" means the thirteen vessel-owning special purpose vehicles that guaranteed the Debtors' Obligations under the Indenture and the First Preferred Ship Mortgage Notes due 2022 issued by the Debtors under the Indenture.

39.     The term "Hadjieleftheriadis Family" means any person who is a beneficial owner or representative of the Glafkos Trust Company, including without limitation, (a) Vasilis Hadjieleftheriadis, (b) Konstantine Hadjieleftheriadis, and (c) A.B. Hadjieleftheriadis and his spouse and lineal descendants.

40.     The term "including" means including, without limitation.

41.     The term "Initial Independent Directors" means LaChance and Vogel, in their capacity as Independent Directors of Eletson Holdings, both collectively and/or individually.

42.     The term "Indenture" means the Indenture dated as of July 2, 2018 (together with all amendments, modifications, supplements, and ancillary Documents related thereto) by and among the Debtors, the Guarantors, and the Trustee.

43. The term "Independent Director" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in *Articles of Amendment of the Restated Articles of Incorporation Eletson Holdings Inc.*, dated the 29th day of June 2018.

44. The term "Independent Managers" means LaChance and Vogel, in their capacity as Independent Directors of Eletson MI, both collectively and/or individually.

45. The term "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

46. The term "Karastamati Family" means any person who is a beneficial owner or representative of the Lassia Investment Company, including without limitation, (a) Lascarina Karastamati, (b) Eleni Karastamati, and (c) J.E. Karastamati and his spouse and lineal descendants.

47. The term "Keros" shall mean Keros Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

48. The "Keros Family" means any person who is a beneficial owner or representative of the Keros, including without limitation, (a) Emmanouil Andreoulakis, and (b) Vassiliki Andreoulakis and her spouse and lineal decedents.

49. The "Kertsikoff Family" means any person who is a beneficial owner or representative of the Family Unity Trust, including without limitation, (a) Vassilis Kertsikoff, (b) Constantine Kertsikoff, and (c) E.B. Kertsikoff and his spouse and lineal descendants.

50. The term "LaChance" means Jim LaChance.

51.     The term "Lassia Investment Company" means Lassia Investment Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

52.     The term "Morgan Stanley" means Morgan Stanley, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

53.     The term "Nordbank" means Hamburg Commercial Bank (formerly HSH NordBank), including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

54.     The term "Obligations" shall mean obligations owed by a Person, whether individually, as a co-obligor, or jointly with another Person, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise.

55.     The term "Piraeus Bank" mean Piraeus Bank SA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

56.     The term "Person" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(41) of the Bankruptcy Code.

57.     The term "Preferred Shares" means the preferred interests in Eletson Gas.

58.     The term "Relevant Period" means January 1, 2018, through the date of production.

59.     The term "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an entity, including such holder's affiliates, relatives, or other related parties.

60.     The term "Subsidiary" means any entity whose management is controlled, directly or indirectly, by a second entity, including but not limited to any entity whose stock or other ownership interests are owned by a second entity in such quantity that the second entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the entity.

61.     The term "Transfer" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(54) of the Bankruptcy Code.

62.     The term "Trustee" means Wilmington Savings Fund Society, FSB.

63.     The term "UniCredit" means UniCredit Bank AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

64.     The term "Valuation" means the attribution of a qualitative or quantitative value, to or a change in value of, a particular asset, liability, or category of either whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

65.     The term "Vessel" or "Vessels" mean, individually and collectively, the Salamina, Fourni, Kastos, Kinaros, Kimolos, Anafi, Nisyros, Tilos, Symi, Telendos, Othoni, Astipalea, Paros, Kithnos, Dilos, Kithira, Antikithira, Ithacki, Kalolimnos, and/or any other vessel that any of the Debtors, their Subsidiaries and/or Affiliates held or hold any direct or indirect interest in.

66.     The term "Vogel" means Scott Vogel.

67.     The term "Western Asset" means Western Asset Management Company, LLC, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

68.     The terms "You" or "Your" means [Subpoenaed Party] and its and its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, attorneys, and any other Persons and entities purporting to act on its behalf.

## **INSTRUCTIONS**

1.     To the extent, if at all, You object to any of the Requests herein, whether in whole or in part, please respond to as much of the Request to which no objection is asserted.  With respect to that part of the Request to which an objection is asserted, please state with specificity the basis of that objection.

2.     With respect to each Request to produce Documents, please identify and produce all the Documents in Your possession, custody, or control, and all Documents that can be located or discovered by reasonably diligent efforts, including, without limitation, all such Documents in Your files (whether Personal, business, or any other files) or in the possession, custody, or control

of Your attorneys, accountants, agents, representatives, or employees, or any other Person acting or purporting to act on Your behalf.

3.       If any Document responsive to these Requests was, but is no longer, in Your possession or subject to Your control, please state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, and their identity (iv) is currently in the possession of or controlled by others, and their identity or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding such disposition thereof and state the date or approximate date thereof.  If a Document is in the possession of a Person or entity over whom You have no control: (i) set forth whether and when the Document was in Your possession or otherwise how You became aware of the Document; (ii) set forth the reason(s) why the Document is no longer in Your possession; and (iii) identify the individual who or entity which is presently in possession of the Document.

4.       If a Document responsive to these Requests has been destroyed, it should be identified as follows:  (i) preparer(s) and addressor(s); (ii) addressee(s); (iii) each recipient and each Person to whom distributed or shown; (iv) date prepared; (v) date transmitted; (vi) date received; (vii) description of contents and subject matter; (viii) date of destruction; (ix) manner of destruction; (x) name, title, and address of the Person who directed that the Document be destroyed and the Person who destroyed the Document; (xi) the reason for the Document's destruction; (xii) the names of Persons having knowledge of the destruction; and (xiii) a full description of the efforts made to locate the Document.

5.       If any Document or information otherwise responsive to these Requests is withheld or redacted on a claim of privilege, work product immunity or other immunity from discovery, each such Document should be identified in writing by specifying the following for each such

Document: the type of Document; a general description of the information contained within the Document; the identities of the author(s), addresser(s), addressee(s), or any indicated or blind copy recipients; and the date of creation or transmittal. In addition, for each such Document, You should (1) indicate that it claims privilege; (2) state the grounds on which the claim of privilege.

6.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege or protection pursuant to paragraph 5 above, those portions of the Document subject to the claim of privilege or protection may be redacted from the Document, but the instructions in the preceding paragraph 5 shall be applicable and the redacted Document shall be produced.

7.      All Documents are to be produced (i) as they are kept in the usual course by You with any identifying labels, file markings, or similar identifying features, or (ii) shall be organized and labeled to correspond to the appropriate request herein.

8.      If any portion of any Document is responsive to any Request, the entire Document must be produced, including all attachments and enclosures.

9.      If there are no Documents responsive to any particular Request, please so state in writing.

10.     In construing each Request herein:

a.      The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, voices, whenever necessary to bring within the scope of any Request all information that might otherwise be construed to be outside its scope;

b.      The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whenever necessary in order to bring within the scope of this Request any Document or information that might otherwise be construed to be outside of its scope;

c.      Words in the masculine, feminine, or neuter gender shall include each of the other genders;

d. The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request any Document or information that might otherwise be construed to be outside its scope; and

e. The terms "all," "any," and "each" shall each be construed as encompassing all, any, and each.

11. Each request shall be interpreted to include all Documents that concern the Relevant Period or otherwise-specified period, even if such Documents were prepared or published outside of the Relevant Period or otherwise-specified period. If any Document that was prepared or published before or after the Relevant Period or otherwise-specified period is necessary for a correct or complete understanding of any Document that is responsive to a Request, You shall produce these Documents as well. If any Document is undated and the date of its preparation cannot be determined, You shall produce the Document if otherwise responsive to a request for production.

12. Any Document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

13. Any Documents attached to each other shall not be separated.

14. Each page of every Document produced in response to a Request must be marked with a unique Bates number to allow for accurate identification.

15. Each requested Document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other Documents at any time affixed thereto.

16. Electronically stored information must be produced in both native and a searchable format, unless the Petitioning Creditors agree otherwise.

17.     All Documents that are produced in electronic format shall be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic Document. The Petitioning Creditors also request that all spreadsheets created in Microsoft Excel or a similar spreadsheet program be produced in their native format. The Petitioning Creditors reserve their rights to request that other Documents be produced in their native format if necessary. The following metadata fields shall also be produced with all Documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | An automatically-generated number assigned to first page of the Document |
| ENDDOC | An automatically-generated number assigned to last page of the Document |
| BEGATTACH | An automatically-generated number assigned to the first page of the parent Document in a family |
| ENDATTACH | An automatically-generated number assigned to the last page of an attachment in a Document family |
| PARENT_ID | The beginning DOCID for a parent Document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, |
| PARENT_CHILD | A vendor-populated field where "P" denotes a parent |
| PAGECOUNT | The number of pages of each individual Document |
| FROM | The name of the sender of an email, from the "From" field |
| TO | The recipient(s) of an email, from the "To" field |
| CC | The name(s) of any Person(s) to whom a copy of an email |
| BCC | The name(s) of any Person(s) that were blind copied on an email, |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or |
| CUSTODIAN | The name(s) of the Person(s) from which a collection of |
| AUTHOR | The name of the author or the creator of an application |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last |
| DATE_CREATED | The date an email or application file was created |
| TIME_ CREATED | The time at which an email or application was created |
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the "Title" field of an application file |

| Field Name | Description |
|---|---|
| LAST_AUTHOR | The name in the "Last Author" field for an application file |
| LAST_SAVED | The date in the "Last Saved" field for an application file |
| LAST_PRINTED | The date in the "Last Printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The filename extension of each email, attachment, or |
| FILENAME | The name of an application file, including its extension |
| FILESIZE | The size of a Document in bytes |
| SOURCEFOLDER | The full path information for email, attachments, and |
| HASHVALUE | The output of an algorithm-generated value for each |
| SEARCH_HIT | The search term or terms that "hit" on a Document |
| NATIVE_FILE | A hyperlink to the native file |

18.     These Requests shall be continuing in nature, and You are therefore requested to supplement Your responses upon discovery of additional responsive Documents or information throughout the course of this action.  The Committee reserves its right to serve additional Requests as discovery continues.

## REQUESTS FOR PRODUCTION

**A.     Corporate Structure and Organization**

1.     All of the Debtors', their Subsidiaries', and/or their Affiliates' corporate formation or organizational documents, and any amendments thereto or restatements thereof, including, without limitation, any articles of incorporation, articles of amendment, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar Documents.

**B.     Board Materials**

2.     All Board Materials of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation:

> a.     all Documents and Communications concerning any meeting, resolution, or decision of the Board(s) of any of the Debtors, their Subsidiaries, and/or their Affiliates; and

      b.      all Documents and Communications sent to, provided to, or considered by the Board(s) of the Debtors, their Subsidiaries, and/or their Affiliates.

**C.      Corporate Governance**

3.      Documents sufficient to identify all officers and Directors of each of the Debtors and their Subsidiaries and Affiliates.

4.      Documents sufficient to show all compensation or remuneration of any kind paid to or for the benefit of any officers or Directors of any of the Debtors, their Subsidiaries and/or their Affiliates.

5.      All Documents and Communications concerning the appointment, election, removal, replacement or resignation of (a) any Director of Eletson Holdings, including any Initial Independent Director or other Independent Director, and/or (b) the Independent Managers.

6.      All Communications concerning the Initial Independent Directors or the Independent Managers.

**D.      Shareholder Materials**

7.      All Documents and Communications concerning any meeting of the Shareholders of any of the Debtors, their Subsidiaries, and/or their Affiliates, including all general business updates, minutes, resolutions, consents, notes and/or agendas from any Shareholder meeting.

8.      Documents sufficient to identify (a) each of the Shareholders of each of the Debtors, their Subsidiaries, and their Affiliates, and (b) the beneficial owners of each of the Shareholders of each of the Debtors, their Subsidiaries, and/or their Affiliates.

9.      Documents sufficient to show, for each of the Shareholders for each of the Debtors, their Subsidiaries, and/or Affiliates:

      a.      the amounts invested by such Shareholder in the Debtors, their Subsidiaries, and/or Affiliates, as applicable;

b. the percentage ownership of such Shareholder in the Debtors, their Subsidiaries, and/or Affiliates, as applicable;

c. all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders and any other Transfer to or for the benefit of such Shareholder or any of its affiliates.

**E. Asset Transfers**

10. All Documents and Communications concerning any Transfer of cash, assets, or thing of value, from any of the Debtors, their Subsidiaries, or their Affiliates to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families.

11. All Documents and Communications concerning any loan, advance, or other Transfer by any of the Debtors, their Affiliates, or their Subsidiaries to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families, including without limitation:

a. all Documents and Communications concerning "the debts of the families and shareholders to the Company" referred to by Costis Kertsikoff in that certain September 28, 2022 email to Lascarina Karastamati (EletsonBK020376); and

b. all Documents or Communications concerning the "file with the debts of the families and the shareholders (personally)" referred to by Lascarina Karastamati in that certain October 6, 2022 email (EletsonBK020375), including, without limitation, any emails including Lascarina Karastamati (lascarina.karastamati@eletson.com) and/or Dimitris Stamos (dimitris.stamos@eletson.com) and any of the following participants: (x) Costis Kertsikoff (coskerts@gmail.com); (y) Vasilis Kertsikoff (vaskerts@hotmail.com); and/or (z) Irina Kertsikoff (irina.kertsikoff@gmail.com).

12. All monthly, quarterly, and annual statements and wire transfer confirmations for all Accounts of any of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation, with respect to Accounts located at any of the following financial institutions: (a) AB Bank; (b) Alpha Bank; (c) Berenberg; (d) Bergos; (e) Citibank; (f) Credit Agricole; (g) Credit

Suisse; (h) DNB Bank; (i) DVB Bank; (j) Morgan Stanley; (k) Nordbank; (l) Piraeus Bank;

(m) UniCredit; (n) Western Asset; or (o) any other financial institution where any of the Debtors,

their Subsidiaries, and/or their Affiliates was an authorized signatory and/or held beneficial

interest, whether individually or jointly with another Person, with respect to an Account.

13. All Documents and Communications concerning fees or expenses paid to or

incurred by Reed Smith LLP, including (without limitation):

a. All Documents concerning Eletson Corporation's payment of the fees and expenses owed to Reed Smith for its representation of Eletson Holdings in (a) the Arbitration; (b) the District Court confirmation proceedings; and (c) the Bankruptcy Cases.

b. All Documents and Communications concerning the decision of the Debtors, their Subsidiaries, and/or their Affiliates for Eletson Corporation to pay obligations owing to Reed Smith in connection with the Bankruptcy Cases, the Arbitration Proceedings, and the District Court confirmation proceedings.

c. All Documents and Communications between September 6, 2023 and September 25, 2023 concerning the payment of fees or expenses of Reed Smith.

d. All Documents and Communications concerning the agreement of the Cypriot Nominees "to pay Reed Smith's fees and expenses related to the Arbitration and Confirmation Proceeding in the event Corp was unable to satisfy its obligations to Reed Smith," as referenced I paragraph 13 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261).

e. The "comfort letter to Reed Smith sent on behalf of the five shareholders of Holdings," as referenced in paragraph 15 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261), and all Documents and Communications concerning such "comfort letter," including any drafts or amendments thereof.

f. All Documents and Communications concerning Reed Smith's determination to "waive any claims Reed Smith would potentially have against the shareholders of Holdings for any amounts unpaid by Corp," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

       g.      All Documents and Communications Concerning Reed Smith's determination "to waive any claims Reed Smith would potentially have against the Cypriot Entities for any amounts unpaid by Corp," as stated in the Third Supplemental Declaration of Derek J. Baker, dated December 21, 2023 (ECF 330).

14.     Documents sufficient to identify all payments made by Eletson Corporation to or for the benefit of Eletson Holdings and/or the other Debtors, from March 7, 2023 to the date of production, including the date, amount, and recipient of each such payment.

### F.      Intercompany Agreements and Transfers

15.     All Documents and Communications concerning any agreements by or among the Debtors, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees, including, without limitation, any Documents or Communications concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

16.     All Documents and Communications concerning Transfers by or among the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

17.     All Documents and Communications concerning any of the Debtors' and their Subsidiaries' and/or Affiliates intercompany debt or Obligations (including intercompany notes and guarantees), and the calculations thereof.

18.     All Documents and Communications concerning any and all Obligations owed to the Debtors by any of the other Debtors or the Debtors' Affiliates or Subsidiaries, including, but not limited to drafts, invoices, purchase orders, proposals, Documents evidencing payment, notices sent pursuant to any agreement and Communications concerning.

### G.      The Interests in Eletson Gas

19.     All Documents and Communications concerning Eletson Holdings' interest in Eletson Gas for the time period of January 1, 2022 through the date of production.

20. All Documents and Communications concerning the Preferred Shares or the Common Shares, including without limitation:

    a. all Documents and Communications concerning any Valuation of the Preferred Shares or the Common Shares; and

    b. all Documents and Communications concerning any dividends, distributions, or return of profits or capital due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

21. All Documents and Communications concerning the deconsolidation and/or derecognition of the assets and liabilities of Eletson Gas, and/or minority interest in Eletson Gas from the books and records and/or financial statements of Eletson Holdings in 2019 or during any other year.

**H.    The Cypriot Nominees**

22. All Documents and Communications with or concerning any of the Cypriot Nominees, including, without limitation:

    a. all Documents and Communications concerning any Transfer of the Preferred Shares to any of the Cypriot Nominees;

    b. all Communications between Reed Smith LLP and the Cypriot Nominees;

    c. all Communications with Reed Smith LLP concerning the Cypriot Nominees;

    d. all Documents and Communications on or before March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and

    e. all Documents and Communications after March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and All Documents and Communications at any time concerning the Cypriot Nominees' interests, contingent or otherwise, in the Preferred Shares.

23. All Documents and Communications from January 1, 2022 through the date of production. concerning the Preferred Shares, including, without limitation, (a) the purported Transfer of the Preferred Shares to any of the Cypriot Nominees, (b) the purported Transfer of the Preferred Shares to any other entity, or (c) any disposition, cancellation, or retirement of the Preferred Shares

24. All Documents and Communications concerning the actual or potential status of Eletson Holdings as the sole shareholder of Eletson Gas as stated in the affidavit of Vassilis Kertsikoff, dated October 25, 2022.

## I. Affiliate Transactions

25. All Documents and Communications concerning any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

26. All Documents and Communications concerning any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b) Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

27. All Documents and Communications concerning any transaction, contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot

Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

28.     All Documents and Communications (including any contracts and agreements) concerning cash receipts or disbursements to, or transactions, loans, receivable/payable balances or write-offs with any (a) Insiders, (b) Subsidiaries, Affiliates of, or related parties to, Debtors, and/or (c) Eletson Holdings Shareholders, (d) the Families or any members thereof, or (e) any of the Cypriot Nominees.

**J.     Financial Condition of the Debtors and their Subsidiaries**

29.     All Documents Concerning the Debtors', their Subsidiaries', and their Affiliates' operations, structure, and financial condition, including, but not limited to, all:

a.      monthly, quarterly, and annual trial balances;

b.      monthly, quarterly, and annual general ledgers;

c.      audited and unaudited annual financial statements;

d.      monthly, quarterly and annual balance sheets;

e.      monthly, quarterly and any annual income/profit and loss statements;

f.      monthly, quarterly and any annual cashflow statements;

g.      statements/analyses of receipts and disbursements;

h.      monthly, quarterly and annual income/payroll statements;

i.      sales and use tax returns;

j.      monthly, quarterly and any annual bank or other financial account statements;

k.      annual and current year-to-date ledgers;

l.      monthly accounts receivable and all related cash receipts including the source thereof;

m.      monthly accounts payable reports and lists of all disbursements by check, wire and ACH;

n. budgets or projections of income and/or cash flows;

o. audited and unaudited financial statements including on a monthly, quarterly, and annual basis, including, without limitation, all accounting, audit, or other workpapers prepared by or on behalf of the Debtors, their Subsidiaries, and/or their Affiliates in connection with preparation of such financial statements;

p. consolidated and unconsolidated monthly, quarterly, and annual income statements, balance sheets, and cash flows as excel files for years, with details of any adjusting journal entries and associated working papers;

q. quarterly and annual budget to actual comparison for income statements;

r. quarterly and annual budget to actual comparison for cash flows;

s. monthly, quarterly, and annual accounts receivable aging reports;

t. monthly accounts payable aging reports prepared by or for the benefit of any of the Debtors, their Subsidiaries, or their Affiliates;

u. liquidation analyses prepared by or for the benefit of any of the Debtors, their Subsidiaries, or their Affiliates; and

v. tax returns or other reports filed with tax authorities in any jurisdiction by the Debtors, their Subsidiaries, or their Affiliates.

30. All Documents and Communications concerning the Debtors', their Subsidiaries', and their Affiliates' financial information, including, without limitation, assets, liabilities, and any other financial information relating to financial performance, intercompany Transfers, and related party transactions.

31. All Documents and Communications concerning any real property owned by the Debtors, their Subsidiaries, or their Affiliates.

32. All Documents and Communications concerning any internal or external appraisals or reports concerning the Valuation of any of Your investments or ownership interests in any of the Debtors' Subsidiaries or Affiliates.

33. All Documents and Communications concerning the Vessels, including, without limitation:

a. all Documents and Communications concerning, monthly, quarterly and annual operating or management accounts related to the Vessels, including without limitation, accounts concerning (i) daily Vessel operating costs (by Vessel) such as crew costs, travel and training costs, and/or costs for victualling, lube oils, non-capex repairs and maintenance, insurance, spares and supplies, ship management, and port and other related charges; (ii) bunker fuel transactions and/or costs (by Vessel); (iii) capital expenditures related to repair and maintenance costs (by Vessel); and/or (iv) on-shore organization cost by operational and SG&A activities and/or costs;

b. all Document and Communications concerning the purchase, acquisitions, sale, disposition, or any other Transfer of an interest in any Vessel held by the Debtors, their Subsidiaries, and/or Affiliates;

c. all Documents and Communications concerning all agreements related to the Vessels, including, but not limited to, time charters, bareboat charters, contracts of affreightment, agency service agreements, and related expenditures; and

d. all customs documents, purchase orders, shipping documentation, freight and/or weight documents for the time period of January 1, 2020 through the date of production.

34. Documents sufficient to identify all lenders to the Debtors, their Subsidiaries, and/or their Affiliates, together with all loan documents, UCC-1 filings, or other similar security filings.

35. All Documents evidencing credit agreements, forbearance agreements, amendments, pledges, guarantees, promissory notes, waivers, intercreditor, or subordination agreements and fee letters concerning any of the Debtors', their Affiliates', or their Subsidiaries' debt.

36. All Documents and Communications concerning any analysis or evaluation of the Debtors' unsecured creditors' claims.

37. All Documents and Communications concerning any of any off-balance sheet commitments or contingent liabilities of any of the Debtors, the Debtors' Subsidiaries, or the Debtors' Affiliates.

38.     All Documents and Communications evidencing or concerning (a) the Debtors' insurance policies, including any directors and officers liability insurance policies, and/or (b) any insurance policy under which any of the Debtors' is a beneficiary or an additional insured.

## SCHEDULE 2 – EXAMINATION TOPICS

## DEFINITIONS

Unless otherwise defined below, the definitions and instructions set forth in the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Federal Rules of Civil Procedure (the "Federal Rules"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall apply to the Rule 2004 Examination Topics listed below.

1.　　　　The term "Accounts" shall mean: (i) any and all bank accounts, including, but not limited to, all operating, payroll, tax, and escrow accounts; (ii) investment accounts including, but not limited to, equities, bonds, or governmental obligations; (iii) any credit card, merchant and other accounts; and (iv) pension, profit sharing, retirement and life insurance accounts.

2.　　　　The term "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(2) of the Bankruptcy Code.

3.　　　　The term "AB Bank" means Aegean Baltic Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

4.　　　　The term "Alpha Bank" means Alpha Bank S.A., including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

5. The term "Apargo" means Apargo Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

6. The term "Arbitration" means the JAMS arbitration proceeding entitled, *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, and any related appeals including the proceedings captioned *Eletson Holdings Inc. v. Levona Holdings, LTD.,* Case No. 23-cv-07331 (LJL) (S.D.N.Y. 2023).

7. The term "Bankruptcy Cases" means the above captioned bankruptcy cases that were commenced as involuntary chapter 7 cases on March 7, 2023, and converted by the Debtors to voluntary chapter 11 cases on September 25, 2023.

8. The term "Bankruptcy Code" means title 11 of the United States Code.

9. The term "Berenberg" means Joh. Berenberg, Gossler & Co. KG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

10. The term "Bergos" means Bergos AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by Bergos.

11.     The term "Board" means any board of directors, board of managers, or similar governing body for any entity, including any committee, subcommittee, or other subset thereof.

12.     The term "Board Materials" means, with respect to any Board, all Documents or Communications concerning the meetings, resolutions, decisions, or business such Board, including (without limitation) meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

13.     The term "BOL" means the Binding Offer Letter, dated February 22, 2022 (EletsonBK059421).

14.     The term "Citibank" means Citibank Europe Plc, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

15.     The term "Common Shares" means the common interests in Eletson Gas.

16.     The term "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, and Snapchat., telephone conversations (including recorded or taped telephone conversations and including messages left on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal

intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

17. The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

18. The term "Credit Agricole" means Credit Agricole Bank, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

19. The term "Credit Suisse" means Credit Suisse Group AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

20. The term "Cypriot Nominees" means Apargo, Desimuso, and Fentalon, individually and/or collectively.

21. The term "Debtors" means Eletson Holdings, Eletson Finance, and Eletson MI, individually and/or collectively.

22.     The term "Director" means any member of a Board (as defined above), whether designated as a director, as a manager, or with another title.

23.     The term "Desimuso" means Desimuso Trading Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

24.     The term "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule of Civil Procedure 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notes, handwritten or otherwise; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

25.     The term "DNB Bank" means DNB Bank ASA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

26.     The term "DVB Bank" means DVB Bank SE, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf, along with any and all funds and accounts managed and/or advised by DVB Bank.

27.     "Elafonissos" shall mean Elafonissos Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

28.     The term "Elafonissos Family" means any person who is a beneficial owner or representative of Elafonissos, including without limitation, (a) Ioannis Zilakos and (b) Niki Zilakos and her spouse and lineal descendants.

29.     The term "Eletson Finance" means Eletson Finance (US) LLC, including all of its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

33

30.     The term "Eletson Gas" means Eletson Gas LLC, including its subsidiaries, officers, directors, managers, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

31.     The term "Eletson Holdings" means Eletson Holdings Inc., including its officers, directors, co-founders, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

32.     The term "Eletson Holdings Shareholders" means Family Unity Trust, Glafkos Trust, Lassia Investment Company, Elafonissos, and/or Keros, individually or collectively, any Affiliates thereof, and/or any of the Families.

33.     The term "Eletson MI" means Agathonissos Finance LLC, including its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

34.     The term "Family Unity Trust" means Family Unity Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

35.     The term "Fentalon" means Fentalon Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers,

agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

36.     The term "Glafkos Trust" means Glafkos Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

37.     The term "Families" means the Elafonissos Family, Hadjieleftheriadis Family, Karastamati Family, Keros Family, Kertsikoff Family, both collectively and/or individually.

38.     The term "Guarantors" means the thirteen vessel-owning special purpose vehicles that guaranteed the Debtors' Obligations under the Indenture and the First Preferred Ship Mortgage Notes due 2022 issued by the Debtors under the Indenture.

39.     The term "Hadjieleftheriadis Family" means any person who is a beneficial owner or representative of the Glafkos Trust Company, including without limitation, (a) Vasilis Hadjieleftheriadis, (b) Konstantine Hadjieleftheriadis, and (c) A.B. Hadjieleftheriadis and his spouse and lineal descendants.

40.     The term "including" means including, without limitation.

41.     The term "Initial Independent Directors" means LaChance and Vogel, in their capacity as Independent Directors of Eletson Holdings, both collectively and/or individually.

42.     The term "Indenture" means the Indenture dated as of July 2, 2018 (together with all amendments, modifications, supplements, and ancillary Documents related thereto) by and among the Debtors, the Guarantors, and the Trustee.

43. The term "Independent Director" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in *Articles of Amendment of the Restated Articles of Incorporation Eletson Holdings Inc.*, dated the 29th day of June 2018.

44. The term "Independent Managers" means LaChance and Vogel, in their capacity as Independent Directors of Eletson MI, both collectively and/or individually.

45. The term "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

46. The term "Karastamati Family" means any person who is a beneficial owner or representative of the Lassia Investment Company, including without limitation, (a) Lascarina Karastamati, (b) Eleni Karastamati, and (c) J.E. Karastamati and his spouse and lineal descendants.

47. The term "Keros" shall mean Keros Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

48. The "Keros Family" means any person who is a beneficial owner or representative of the Keros, including without limitation, (a) Emmanouil Andreoulakis, and (b) Vassiliki Andreoulakis and her spouse and lineal decedents.

49. The "Kertsikoff Family" means any person who is a beneficial owner or representative of the Family Unity Trust, including without limitation, (a) Vassilis Kertsikoff, (b) Constantine Kertsifkoff, and (c) E.B. Kertsikoff and his spouse and lineal descendants.

50. The term "LaChance" means Jim LaChance.

51.     The term "Lassia Investment Company" means Lassia Investment Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

52.     The term "Morgan Stanley" means Morgan Stanley, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

53.     The term "Nordbank" means Hamburg Commercial Bank (formerly HSH NordBank), including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

54.     The term "Obligations" shall mean obligations owed by a Person, whether individually, as a co-obligor, or jointly with another Person, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise.

55.     The term "Piraeus Bank" mean Piraeus Bank SA, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

56. The term "Person" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(41) of the Bankruptcy Code.

57. The term "Preferred Shares" means the preferred interests in Eletson Gas.

58. The term "Relevant Period" means January 1, 2018, through the date of production.

59. The term "Requests" is the above Schedule 1 – Document Requests.

60. The term "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an entity, including such holder's affiliates, relatives, or other related parties.

61. The term "Subsidiary" means any entity whose management is controlled, directly or indirectly, by a second entity, including but not limited to any entity whose stock or other ownership interests are owned by a second entity in such quantity that the second entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the entity.

62. The term "Transfer" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(54) of the Bankruptcy Code.

63. The term "Trustee" means Wilmington Savings Fund Society, FSB.

64. The term "UniCredit" means UniCredit Bank AG, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

65. The term "Valuation" means the attribution of a qualitative or quantitative value, to or a change in value of, a particular asset, liability, or category of either whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

66.     The term "Vessel" or "Vessels" mean, individually and collectively, the Salamina, Fourni, Kastos, Kinaros, Kimolos, Anafi, Nisyros, Tilos, Symi, Telendos, Othoni, Astipalea, Paros, Kithnos, Dilos, Kithira, Antikithira, Ithacki, Kalolimnos, and/or any other vessel that any of the Debtors, their Subsidiaries and/or Affiliates held or hold any direct or indirect interest in.

67.     The term "Vogel" means Scott Vogel.

68.     The term "Western Asset" means Western Asset Management Company, LLC, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

69.     The terms "You" or "Your" means [Subpoenaed Party] and its and its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, attorneys, and any other Persons and entities purporting to act on its behalf.

## LIST OF TOPICS FOR EXAMINATION

In accordance with Federal Rule of Civil Procedure 30(b)(6), you are advised of your duty to designate one or more officers, directors, or managing agents or other Persons who consent to testify on your behalf with respect to the following matters. The relevant time period for each examination is January 1, 2018, through the date of examination (the "Relevant Time Period"), unless otherwise specifically indicated.

**A.      Corporate Structure and Organization**

1.      All of the Debtors', their Subsidiaries', and/or their Affiliates' corporate formation or organizational documents, and any amendments thereto or restatements thereof,

including without limitation, any articles of incorporation, articles of amendment, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar Documents.

**B.      Board Materials**

2.      All Board Materials of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation:

a.      all Board Materials concerning any meeting, resolution, or decision of the Board(s) of any of the Debtors, their Subsidiaries, and/or their Affiliates; and

b.      all Board Materials sent to, provided to, or considered by the Board(s) of the Debtors, their Subsidiaries, and/or their Affiliates.

**C.      Corporate Governance**

3.      The officers and Board of each of the Debtors, and their Subsidiaries and Affiliates, including without limitation:

a.      the identity of the officers and/or Directors;

b.      any familial relationship among any of the officers and/or Directors;

c.      the compensation or renumeration of any kind paid to or on behalf of any officers or Directors; and

d.      the appointment, election, removal, replacement, or resignation of any officer or Director, including any Initial Independent Director, other Independent Director, or Independent Manager.

**D.      Shareholder Materials**

4.      The Shareholders of each of the Debtors, their Subsidiaries, and/or Affiliates, including, without limitation:

a.      any meeting of such Shareholders;

b.      the identity of such Shareholders, and their beneficial owners, if any;

     c.        any familial relationship among any of the Shareholders, or any beneficial owners thereof;

     d.        the amounts invested by and the percentage ownership held by such Shareholders; and

     e.        all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders, any other Transfer to or for the benefit of such Shareholders or any of their respective affiliates.

### E.    Asset Transfers

5.      Any Transfer of cash, assets, or thing of value, from any of the Debtors, their Subsidiaries, or their Affiliates to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) of any of the Families.

6.      Any loan, advance, or other Transfer by any of the Debtors, their Affiliates, or their Subsidiaries to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) of any of the Families.

7.      All Accounts of any of the Debtors, their Subsidiaries, and/or their Affiliates, including without limitation, with respect to Accounts located at any of the following financial institutions: (a) AB Bank; (b) Alpha Bank; (c) Berenberg; (d) Bergos; (e) Citibank; (f) Credit Agricole; (g) Credit Suisse; (h) DNB Bank; (i) DVB Bank; (j) Morgan Stanley; (k) Nordbank; (l) Piraeus Bank; (m) UniCredit; (n) Western Asset; or (o) any other financial institution where any of the Debtors, their Subsidiaries, and/or their Affiliates was an authorized signatory and/or held beneficial interest, whether individually or jointly with another Person, with respect to an Account.

8.      Fees or expenses paid to or incurred by Reed Smith LLP.

### F.    Intercompany Agreements and Transfers

9.      All intercompany agreements by or among the Debtors, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees,

including, without limitation, any such agreements concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

10.     All intercompany Transfers by or among the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

11.     All intercompany debt or Obligations (including intercompany notes and/or guarantees) of Debtors, their Subsidiaries, and/or Affiliates, including the calculation of such intercompany debt or Obligations.

**G.     The Interests in Eletson Gas**

12.     Eletson Holdings' interest in Eletson Gas for the time period of January 1, 2022 through the date of production.

13.     The Preferred Shares or the Common Shares, including without limitation:

    a.     all Valuations of the Preferred Shares or the Common Shares; and

    b.     all dividends, distributions, or return of profits or capital due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

**H.     The Cypriot Nominees**

14.     The Cypriot Nominees, including without limitation:

a.     any Transfer of the Preferred Shares to any of the Cypriot Nominees;

b.     the designation of any of the Cypriot Nominees as a "nominee" under the BOL;

c.     any Transfer of the Preferred Shares to any entity other than the Cypriot Nominees; and

d.     any disposition, cancellation, or retirement of the Preferred Shares.

**I.     Affiliate Transactions**

15.     Any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot

42

Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

16.    Any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

17.    Any contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries, including without limitation, any contracts or agreements concerning cash receipts or disbursements, or transactions, loans, receivable/payable balances or write-offs with any of the Persons identified in (a)-(e) of this topic.

**J.    Financial Condition of Debtors and their Subsidiaries**

18.    Your financial condition, including, but not limited to, all of Your assets, liabilities, Accounts, Obligations, and material transactions or Transfers.

19.    The financial condition of Your Subsidiaries, including, but not limited to, all of the Subsidiaries' assets, liabilities, Accounts, Obligations, and material transactions or Transfers.

20.    The financial condition of Your Affiliates, including, but not limited to, all of the Affiliates' assets, liabilities, Accounts, Obligations, and material transactions or Transfers.

21.    The Debtors', their Subsidiaries', and their Affiliates' audited and unaudited financial statements including on a monthly, quarterly, and annual basis, including, without

limitation, all accounting, audit, or other workpapers prepared by or on behalf of the Debtors, their Subsidiaries, and/or their Affiliates in connection with preparation of such financial statements.

22.     Any Valuation concerning the Debtors or any of the Debtors' Subsidiaries or Affiliates, or any assets or liabilities of the Debtors or any of the Debtors' Subsidiaries or Affiliates.

23.     The Vessels.

24.     The Debtors' insurance policies, including any directors and officers liability insurance policies, and any insurance policy under which any of the Debtors is a beneficiary or an additional insured.

25.     The Requests.

Exhibit 4

# EXHIBIT A

## SCHEDULE 1 – DOCUMENT REQUESTS

### DEFINITIONS

Unless otherwise defined below, the definitions and instructions set forth in the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Federal Rules of Civil Procedure (the "Federal Rules"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall apply to the requests for production (the "Requests") listed below.

### DEFINITIONS

1.      The term "Accounts" shall mean: (i) any and all bank accounts, including, but not limited to, all operating, payroll, tax, and escrow accounts; (ii) investment accounts including, but not limited to, equities, bonds, or governmental obligations; (iii) any credit card, merchant and other accounts; and (iv) pension, profit sharing, retirement and life insurance accounts.

2.      The term "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(2) of the Bankruptcy Code.

3.      The term "Apargo" means Apargo Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

4.      The term "Arbitration" means the JAMS arbitration proceeding entitled, *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, and any related appeals

including the proceedings captioned *Eletson Holdings Inc. v. Levona Holdings, LTD.*, Case No. 23-cv-07331 (LJL) (S.D.N.Y. 2023).

5.     The term "Bankruptcy Cases" means the above captioned bankruptcy cases that were commenced as involuntary chapter 7 cases on March 7, 2023, and converted by the Debtors to voluntary chapter 11 cases on September 25, 2023.

6.     The term "Bankruptcy Code" means title 11 of the United States Code.

7.     The term "Board" means any board of directors, board of managers, or similar governing body for any entity, including any committee, subcommittee, or other subset thereof.

8.     The term "Board Materials" means, with respect to any Board, all Documents or Communications concerning the meetings, resolutions, decisions, or business such Board, including (without limitation) meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

9.     The term "BOL" means the Binding Offer Letter, dated February 22, 2022 (EletsonBK059421).

10.     The term "Common Shares" means the common interests in Eletson Gas.

11.     The term "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, and Snapchat., telephone conversations (including recorded or taped telephone conversations and including messages left on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal

intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

12.     The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

13.     The term "Cypriot Nominees" means Apargo, Desimuso, and Fentalon, individually and/or collectively.

14.     The term "Debtors" means Eletson Holdings, Eletson Finance, and Eletson MI, individually and/or collectively.

15.     The term "Director" means any member of a Board (as defined above), whether designated as a director, as a manager, or with another title.

16.     The term "Desimuso" means Desimuso Trading Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

17.     The term "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule of Civil Procedure 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-

identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notes, handwritten or otherwise; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

18. "Elafonissos" shall mean Elafonissos Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

19. The term "Elafonissos Family" means any person who is a beneficial owner or representative of Elafonissos, including without limitation, (a) Ioannis Zilakos and (b) Niki Zilakos and her spouse and lineal descendants.

20. The term "Eletson Finance" means Eletson Finance (US) LLC, including all of its officers, directors, co-founders, members, partners, employees, counsel, financial advisors,

investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

21.    The term "Eletson Gas" means Eletson Gas LLC, including its subsidiaries, officers, directors, managers, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

22.    The term "Eletson Holdings" means Eletson Holdings Inc., including its officers, directors, co-founders, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

23.    The term "Eletson Holdings Shareholders" means Family Unity Trust, Glafkos Trust, Lassia Investment Company, Elafonissos, and/or Keros, individually or collectively, any Affiliates thereof, and/or any of the Families.

24.    The term "Eletson MI" means Agathonissos Finance LLC, including its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

25.    The term "Family Unity Trust" means Family Unity Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

26.    The term "Fentalon" means Fentalon Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees,

officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

27.     The term "Glafkos Trust" means Glafkos Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

28.     The term "Families" means the Elafonissos Family, Hadjieleftheriadis Family, Karastamati Family, Keros Family, Kertsikoff Family, both collectively and/or individually.

29.     The term "Guarantors" means the thirteen vessel-owning special purpose vehicles that guaranteed the Debtors' Obligations under the Indenture and the First Preferred Ship Mortgage Notes due 2022 issued by the Debtors under the Indenture.

30.     The term "Hadjieleftheriadis Family" means any person who is a beneficial owner or representative of the Glafkos Trust Company, including without limitation, (a) Vasilis Hadjieleftheriadis, (b) Konstantine Hadjieleftheriadis, and (c) A.B. Hadjieleftheriadis and his spouse and lineal descendants.

31.     The term "including" means including, without limitation.

32.     The term "Indenture" means the Indenture dated as of July 2, 2018 (together with all amendments, modifications, supplements, and ancillary Documents related thereto) by and among the Debtors, the Guarantors, and the Trustee.

33.     The term "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

34.     The term "Karastamati Family" means any person who is a beneficial owner or representative of the Lassia Investment Company, including without limitation, (a) Lascarina Karastamati, (b) Eleni Karastamati, and (c) J.E. Karastamati and his spouse and lineal descendants.

35.     The term "Keros" shall mean Keros Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

36.     The "Keros Family" means any person who is a beneficial owner or representative of the Keros, including without limitation, (a) Emmanouil Andreoulakis, and (b) Vassiliki Andreoulakis and her spouse and lineal decedents.

37.     The "Kertsikoff Family" means any person who is a beneficial owner or representative of the Family Unity Trust, including without limitation, (a) Vassilis Kertsikoff, (b) Constantine Kertsikoff, and (c) E.B. Kertsikoff and his spouse and lineal descendants.

38.     The term "Lassia Investment Company" means Lassia Investment Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

39.     The term "Obligations" shall mean obligations owed by a Person, whether individually, as a co-obligor, or jointly with another Person, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise.

40.     The term "Person" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(41) of the Bankruptcy Code.

41.     The term "Preferred Shares" means the preferred interests in Eletson Gas.

42.     The term "Relevant Period" means January 1, 2018, through the date of production.

43.     The term "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an entity, including such holder's affiliates, relatives, or other related parties.

44.     The term "Subsidiary" means any entity whose management is controlled, directly or indirectly, by a second entity, including but not limited to any entity whose stock or other ownership interests are owned by a second entity in such quantity that the second entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the entity.

45.     The term "Transfer" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(54) of the Bankruptcy Code.

46.     The term "Trustee" means Wilmington Savings Fund Society, FSB.

47.     The term "Valuation" means the attribution of a qualitative or quantitative value, to or a change in value of, a particular asset, liability, or category of either whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

48.     The terms "You," or "Your" means [Subpoenaed Party] and its and its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, attorneys, and any other Persons and entities purporting to act on its behalf.

# INSTRUCTIONS

1.      To the extent, if at all, You object to any of the Requests herein, whether in whole or in part, please respond to as much of the Request to which no objection is asserted.  With respect to that part of the Request to which an objection is asserted, please state with specificity the basis of that objection.

2.      With respect to each Request to produce Documents, please identify and produce all the Documents in Your possession, custody, or control, and all Documents that can be located or discovered by reasonably diligent efforts, including, without limitation, all such Documents in Your files (whether Personal, business, or any other files) or in the possession, custody, or control of Your attorneys, accountants, agents, representatives, or employees, or any other Person acting or purporting to act on Your behalf.

3.      If any Document responsive to these Requests was, but is no longer, in Your possession or subject to Your control, please state whether it (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, and their identity (iv) is currently in the possession of or controlled by others, and their identity or (iv) has been otherwise disposed of, and in each instance explain the circumstances surrounding such disposition thereof and state the date or approximate date thereof.  If a Document is in the possession of a Person or entity over whom You have no control: (i) set forth whether and when the Document was in Your possession or otherwise how You became aware of the Document; (ii) set forth the reason(s) why the Document is no longer in Your possession; and (iii) identify the individual who or entity which is presently in possession of the Document.

4.      If a Document responsive to these Requests has been destroyed, it should be identified as follows:  (i) preparer(s) and addressor(s); (ii) addressee(s); (iii) each recipient and

each Person to whom distributed or shown; (iv) date prepared; (v) date transmitted; (vi) date received; (vii) description of contents and subject matter; (viii) date of destruction; (ix) manner of destruction; (x) name, title, and address of the Person who directed that the Document be destroyed and the Person who destroyed the Document; (xi) the reason for the Document's destruction; (xii) the names of Persons having knowledge of the destruction; and (xiii) a full description of the efforts made to locate the Document.

5.      If any Document or information otherwise responsive to these Requests is withheld or redacted on a claim of privilege, work product immunity or other immunity from discovery, each such Document should be identified in writing by specifying the following for each such Document: the type of Document; a general description of the information contained within the Document; the identities of the author(s), addresser(s), addressee(s), or any indicated or blind copy recipients; and the date of creation or transmittal. In addition, for each such Document, You should (1) indicate that it claims privilege; (2) state the grounds on which the claim of privilege.

6.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege or protection pursuant to paragraph 5 above, those portions of the Document subject to the claim of privilege or protection may be redacted from the Document, but the instructions in the preceding paragraph 5 shall be applicable and the redacted Document shall be produced.

7.      All Documents are to be produced (i) as they are kept in the usual course by You with any identifying labels, file markings, or similar identifying features, or (ii) shall be organized and labeled to correspond to the appropriate request herein.

8.      If any portion of any Document is responsive to any Request, the entire Document must be produced, including all attachments and enclosures.

9. If there are no Documents responsive to any particular Request, please so state in writing.

10. In construing each Request herein:

   a. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, voices, whenever necessary to bring within the scope of any Request all information that might otherwise be construed to be outside its scope;

   b. The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whenever necessary in order to bring within the scope of this Request any Document or information that might otherwise be construed to be outside of its scope;

   c. Words in the masculine, feminine, or neuter gender shall include each of the other genders;

   d. The words "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request any Document or information that might otherwise be construed to be outside its scope; and

   e. The terms "all," "any," and "each" shall each be construed as encompassing all, any, and each.

11. Each request shall be interpreted to include all Documents that concern the Relevant Period or otherwise-specified period, even if such Documents were prepared or published outside of the Relevant Period or otherwise-specified period. If any Document that was prepared or published before or after the Relevant Period or otherwise-specified period is necessary for a correct or complete understanding of any Document that is responsive to a Request, You shall produce these Documents as well. If any Document is undated and the date of its preparation cannot be determined, You shall produce the Document if otherwise responsive to a request for production.

12.     Any Document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

13.     Any Documents attached to each other shall not be separated.

14.     Each page of every Document produced in response to a Request must be marked with a unique Bates number to allow for accurate identification.

15.     Each requested Document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules or other Documents at any time affixed thereto.

16.     Electronically stored information must be produced in both native and a searchable format unless the Petitioning Creditors agree otherwise.

17.     All Documents that are produced in electronic format shall be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic Document. The Petitioning Creditors also request that all spreadsheets created in Microsoft Excel or a similar spreadsheet program be produced in their native format. The Petitioning Creditors reserve their rights to request that other Documents be produced in their native format if necessary. The following metadata fields shall also be produced with all Documents produced in electronic format:

| Field Name | Description |
| --- | --- |
| BEGDOC | An automatically-generated number assigned to first page of the Document |
| ENDDOC | An automatically-generated number assigned to last page of the Document |
| BEGATTACH | An automatically-generated number assigned to the first page of the parent Document in a family |

| Field Name | Description |
|---|---|
| ENDATTACH | An automatically-generated number assigned to the last page of an attachment in a Document family |
| PARENT_ID | The beginning DOCID for a parent Document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, |
| PARENT_CHILD | A vendor-populated field where "P" denotes a parent |
| PAGECOUNT | The number of pages of each individual Document |
| FROM | The name of the sender of an email, from the "From" field |
| TO | The recipient(s) of an email, from the "To" field |
| CC | The name(s) of any Person(s) to whom a copy of an email |
| BCC | The name(s) of any Person(s) that were blind copied on an email, |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or |
| CUSTODIAN | The name(s) of the Person(s) from which a collection of |
| AUTHOR | The name of the author or the creator of an application |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last |
| DATE_CREATED | The date an email or application file was created |
| TIME_ CREATED | The time at which an email or application was created |
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the "Title" field of an application file |
| LAST_AUTHOR | The name in the "Last Author" field for an application file |
| LAST_SAVED | The date in the "Last Saved" field for an application file |
| LAST_PRINTED | The date in the "Last Printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The filename extension of each email, attachment, or |
| FILENAME | The name of an application file, including its extension |
| FILESIZE | The size of a Document in bytes |
| SOURCEFOLDER | The full path information for email, attachments, and |
| HASHVALUE | The output of an algorithm-generated value for each |
| SEARCH_HIT | The search term or terms that "hit" on a Document |
| NATIVE_FILE | A hyperlink to the native file |

18.     These Requests shall be continuing in nature, and You are therefore requested to supplement Your responses upon discovery of additional responsive Documents or information throughout the course of this action.  The Committee reserves its right to serve additional Requests as discovery continues.

<u>**REQUESTS FOR PRODUCTION**</u>

**A.      Corporate Structure and Organization**

1.      All of Your corporate formation or organizational documents, and any amendments thereto or restatements thereof, including without limitation, any articles of incorporation, articles of amendment, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar Documents.

**B.      Board Materials**

2.      All Board Materials of Your Board, including without limitation:

     a.      all Documents and Communications concerning any meeting, resolution, or decision of the Your Board concerning any of the Debtors, their Subsidiaries, and/or Affiliates; and

     b.      all Documents and Communications sent to, provided to, or considered by Your Board concerning any of the Debtors, their Subsidiaries, or their Affiliates.

**C.      Corporate Governance**

3.      Documents sufficient to identify all of Your officers and Directors.

4.      Documents sufficient to show all compensation or remuneration of any kind paid to or on behalf of any of Your officers or Directors by any of the Debtors, their Subsidiaries and/or Affiliates.

5.      All Documents and Communications concerning the appointment, election, removal, replacement or resignation of any of Your officers or Directors.

6.      All Documents and Communications concerning the ability of the Debtors' "shareholder/director(s) with [a] potential interest to recuse themselves, and allow the creation of

an independent demand review or special litigation committee," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

7. All Documents and Communications concerning the actual or potential recusal of any of the Debtors' director(s) or officers in connection with (a) any decisions of the Debtors' Board(s); (b) any direction given to the Debtors' counsel; or (c) any decision or action taken in connection with these bankruptcy cases or the Arbitration.

### D. Shareholder Materials

8. All Documents and Communications concerning any meeting of Your Shareholders that concerned, in whole or in part, any of the Debtors, their Subsidiaries, and/or Affiliates, including all general business updates, minutes, resolutions, consents, notes and/or agendas from any such Shareholder meeting.

9. Documents sufficient to identify (a) each of Your Shareholders, and (b) the beneficial owners, if any, of each of Your Shareholders.

10. Documents sufficient to show, for each of Your Shareholders:

    a. the amounts invested by such Shareholder;

    b. the percentage ownership of such Shareholder;

    c. all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders and any other Transfer to or for the benefit of such Shareholder or any of its affiliates.

### E. Asset Transfers

11. All Documents and Communications concerning any Transfer of cash, assets, or thing of value, to You from (a) any of the Debtors, their Subsidiaries, or their Affiliates; (b) the Eletson Shareholders; (c) Cypriot Nominees; (d) the Families; or (e) any member(s) of any of the Families.

12.    All Documents and Communications concerning any loan, advance, or other Transfer to You by (a) any of the Debtors, their Affiliates, or their Subsidiaries, (b) the Eletson Holdings Shareholders; (c) the Cypriot Nominees; (d) the Families; or (e) any member(s) of any of the Families.

13.    All monthly, quarterly, and annual statements and wire transfer confirmations for all of Your Accounts, which concern, reflect, or report, any Transfers to or from (a) any of the Debtors, their Affiliates, or their Subsidiaries, (b) the Eletson Holdings Shareholders; (c) the Cypriot Nominees; (d) the Families; or (e) any member(s) of any of the Families.

14.    All Documents and Communications concerning fees or expenses paid to or incurred by Reed Smith LLP, including (without limitation):

      a.    all Documents concerning Eletson Corporation's payment of the fees and expenses owed to Reed Smith for its representation of Eletson Holdings in (a) the Arbitration; (b) the District Court confirmation proceedings; and (c) the Bankruptcy Cases.

      b.    all Documents and Communications concerning the decision of the Debtors, their Subsidiaries, and/or their Affiliates for Eletson Corporation to pay obligations owing to Reed Smith in connection with the Bankruptcy Cases, the Arbitration Proceedings, and the District Court confirmation proceedings.

      c.    all Documents and Communications between September 6, 2023 and September 25, 2023 concerning the payment of fees or expenses of Reed Smith.

      d.    all Documents and Communications concerning the agreement of the Cypriot Nominees "to pay Reed Smith's fees and expenses related to the Arbitration and Confirmation Proceeding in the event Corp was unable to satisfy its obligations to Reed Smith," as referenced I paragraph 13 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261).

      e.    the "comfort letter to Reed Smith sent on behalf of the five shareholders of Holdings," as referenced in paragraph 15 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261), and all Documents and Communications concerning such "comfort letter," including any drafts or amendments thereof.

f.      all Documents and Communications concerning Reed Smith's determination to "waive any claims Reed Smith would potentially have against the shareholders of Holdings for any amounts unpaid by Corp," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

g.      all Documents and Communications Concerning Reed Smith's determination "to waive any claims Reed Smith would potentially have against the Cypriot Entities for any amounts unpaid by Corp," as stated in the Third Supplemental Declaration of Derek J. Baker, dated December 21, 2023 (ECF 330).

**F.      Agreements and Transfers**

15.     All Documents and Communications concerning any agreements by or among the You, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees, including, without limitation, any Documents or Communications concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

16.     All Documents and Communications concerning any Transfers by or among You, the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

17.     All Documents and Communications concerning any loans, debts or Obligations owed by You to any of the Debtors' and their Subsidiaries' and/or Affiliates (including notes and guarantees), and the calculations thereof.

18.     All Documents and Communications concerning any loans, debts or Obligations owed to You by any of the Debtors' and their Subsidiaries' and/or Affiliates (including notes and guarantees), and the calculations thereof.

19.     All Communications with Reed Smith LLP.

**G.      Interests in Eletson Gas**

20.     All Documents and Communications concerning the interest in Eletson Gas held by any Shareholder for the time period of January 1, 2022 through the date of production.

21. All Documents and Communications concerning the Preferred Shares or the Common Shares, including without limitation:

    a. all Documents and Communications concerning any Valuation of the Preferred Shares or the Common Shares; and

    b. all Documents and Communications concerning any dividends, distributions, or return of profits or capital due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

**H.    The Cypriot Nominees**

22. All Documents and Communications with or concerning any of the Cypriot Nominees, including, without limitation:

    a. all Documents and Communications concerning any actual or contemplated Transfer of the Preferred Shares to any of the Cypriot Nominees;

    b. all Communications between Reed Smith LLP and the Cypriot Nominees;

    c. all Communications with Reed Smith LLP concerning the Cypriot Nominees;

    d. all Documents and Communications on or before March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and

    e. all Documents and Communications after March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and All Documents and Communications at any time concerning the Cypriot Nominees' interests, contingent or otherwise, in the Preferred Shares.

23. All Documents and Communications from January 1, 2022 through the date of production, concerning the Preferred Shares, including, without limitation, (a) the purported Transfer of the Preferred Shares to any of the Cypriot Nominees, (b) the purported Transfer of the

Preferred Shares to any other entity, or (c) any disposition, cancellation, or retirement of the Preferred Shares.

I.    **Affiliate Transactions**

24.    All Documents and Communications concerning any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

25.    All Documents and Communications concerning any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b)  Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

26.    All Documents and Communications concerning any transaction, contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

27.    All Documents and Communications (including any contracts and agreements) concerning cash receipts or disbursements to, or transactions, loans, receivable/payable balances or write-offs with any (a) Insiders, (b) Subsidiaries, Affiliates of, or related parties to, Debtors,

and/or (c) Eletson Holdings Shareholders, (d) the Families any members thereof, or (e) any of the Cypriot Nominees.

**J. The Bankruptcy Cases**

28.     All Communications with any creditor of any of the Debtors, or any party purporting to be such a creditor.

29.     All Documents and Communications concerning any actual or potential plan of reorganization or liquidation for any of the Debtors, or any terms of any such plan.

## SCHEDULE 2 – EXAMINATION TOPICS

## DEFINITIONS

Unless otherwise defined below, the definitions and instructions set forth in the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules"), the Federal Rules of Civil Procedure (the "Federal Rules"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall apply to the Rule 2004 Examination Topics listed below.

1.      The term "Accounts" shall mean: (i) any and all bank accounts, including, but not limited to, all operating, payroll, tax, and escrow accounts; (ii) investment accounts including, but not limited to, equities, bonds, or governmental obligations; (iii) any credit card, merchant and other accounts; and (iv) pension, profit sharing, retirement and life insurance accounts.

2.      The term "Affiliate" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(2) of the Bankruptcy Code.

3.      The term "Apargo" means Apargo Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

4.      The term "Arbitration" means the JAMS arbitration proceeding entitled, *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, and any related appeals including the proceedings captioned *Eletson Holdings Inc. v. Levona Holdings, LTD.,* Case No. 23-cv-07331 (LJL) (S.D.N.Y. 2023).

5.      The term "Bankruptcy Cases" means the above captioned bankruptcy cases that were commenced as involuntary chapter 7 cases on March 7, 2023, and converted by the Debtors to voluntary chapter 11 cases on September 25, 2023.

6.      The term "Bankruptcy Code" means title 11 of the United States Code.

7.      The term "Board" means any board of directors, board of managers, or similar governing body for any entity, including any committee, subcommittee, or other subset thereof.

8.      The term "Board Materials" means, with respect to any Board, all Documents or Communications concerning the meetings, resolutions, decisions, or business such Board, including (without limitation) meeting agendas, meeting minutes, presentations, board packages, resolutions, consents, and consents in lieu of a meeting.

9.      The term "BOL" means the Binding Offer Letter, dated February 22, 2022 (EletsonBK059421).

10.     The term "Common Shares" means the common interests in Eletson Gas.

11.     The term "Communication" or "Communications" means the transmittal of information in any form or medium including any letters, e-mail, instant messages, text messages, messages, messages sent over mobile-device chat services, including Instant Bloomberg, Bloomberg messages, BlackBerry Messenger, Google Hangouts, Apple iMessage, Facebook Messenger, WhatsApp, KakaoTalk, Line, Slack, WeChat, and Snapchat., telephone conversations (including recorded or taped telephone conversations and including messages left on cellular phones), correspondence, notes, facsimiles, facsimile confirmation sheets, blog entries, postings on internet websites, internal call notes, sales pipeline updates, or other forms of written or verbal intercourse (electronic or otherwise) and any Documents exchanged with or attached to such Communications.

12.     The term "Concerning" means concerning, reflecting, relating to, relate to, arising out of, describing, discussing, analyzing, comprising, constituting, containing, considering, embodying, evaluating, evidencing, mentioning, memorializing, supporting, collaborating, demonstrating, identifying, referencing, indicating, providing, referring to, showing, refuting, disputing, rebutting, controverting, contradicting, made in connection with or by reason of or arising therefrom, or otherwise pertaining in any way, in whole or in part, to the subject matter referenced.

13.     The term "Cypriot Nominees" means Apargo, Desimuso, and Fentalon, individually and/or collectively.

14.     The term "Debtors" means Eletson Holdings, Eletson Finance, and Eletson MI, individually and/or collectively.

15.     The term "Director" means any member of a Board (as defined above), whether designated as a director, as a manager, or with another title.

16.     The term "Desimuso" means Desimuso Trading Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

17.     The term "Document" or "Documents" is used in the broadest possible sense allowable under Federal Rule of Civil Procedure 34(a)(1)(A) of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, and shall include the original, all non-identical copies, and drafts of any tangible or intangible item from which information can be derived or discerned, and specifically includes any written, recorded, or graphic material of any

kind, whether prepared by You or by any other Person, and whether in print or in electronic form, that is in Your possession, custody, or control. The term includes, without limitation, agreements; contracts; letters; telegrams; memoranda; reports; records; instructions; specifications; notes; handwritten or otherwise; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or Communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs, letters, e-mails, text messages, instant messaging, and all forms of electronic data and other information stored on electronic media.

18.     "Elafonissos" shall mean Elafonissos Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

19.     The term "Elafonissos Family" means any person who is a beneficial owner or representative of Elafonissos, including without limitation, (a) Ioannis Zilakos and (b) Niki Zilakos and her spouse and lineal descendants.

20.     The term "Eletson Finance" means Eletson Finance (US) LLC, including all of its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

21. The term "Eletson Gas" means Eletson Gas LLC, including its subsidiaries, officers, directors, managers, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

22. The term "Eletson Holdings" means Eletson Holdings Inc., including its officers, directors, co-founders, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

23. The term "Eletson Holdings Shareholders" means Family Unity Trust, Glafkos Trust, Lassia Investment Company, Elafonissos, and/or Keros, individually or collectively, any Affiliates thereof, and/or any of the Families.

24. The term "Eletson MI" means Agathonissos Finance LLC, including its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all Persons and entities purporting to act on its behalf.

25. The term "Family Unity Trust" means Family Unity Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

26. The term "Fentalon" means Fentalon Limited, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers,

agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

27.     The term "Glafkos Trust" means Glafkos Trust Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

28.     The term "Families" means the Elafonissos Family, Hadjieleftheriadis Family, Karastamati Family, Keros Family, Kertsikoff Family, both collectively and/or individually.

29.     The term "Guarantors" means the thirteen vessel-owning special purpose vehicles that guaranteed the Debtors' Obligations under the Indenture and the First Preferred Ship Mortgage Notes due 2022 issued by the Debtors under the Indenture.

30.     The term "Hadjieleftheriadis Family" means any person who is a beneficial owner or representative of the Glafkos Trust Company, including without limitation, (a) Vasilis Hadjieleftheriadis, (b) Konstantine Hadjieleftheriadis, and (c) A.B. Hadjieleftheriadis and his spouse and lineal descendants.

31.     The term "including" means including, without limitation.

32.     The term "Indenture" means the Indenture dated as of July 2, 2018 (together with all amendments, modifications, supplements, and ancillary Documents related thereto) by and among the Debtors, the Guarantors, and the Trustee.

33.     The term "Insider" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(31) of the Bankruptcy Code.

34.     The term "Karastamati Family" means any person who is a beneficial owner or representative of the Lassia Investment Company, including without limitation, (a) Lascarina Karastamati, (b) Eleni Karastamati, and (c) J.E. Karastamati and his spouse and lineal descendants.

35.     The term "Keros" shall mean Keros Shipping Corporation, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

36.     The "Keros Family" means any person who is a beneficial owner or representative of the Keros, including without limitation, (a) Emmanouil Andreoulakis, and (b) Vassiliki Andreoulakis and her spouse and lineal decedents.

37.     The "Kertsikoff Family" means any person who is a beneficial owner or representative of the Family Unity Trust, including without limitation, (a) Vassilis Kertsikoff, (b) Constantine Kertsifkoff, and (c) E.B. Kertsikoff and his spouse and lineal descendants.

38.     The term "Lassia Investment Company" means Lassia Investment Company, including all of its Affiliates, divisions, subgroups, subsidiaries, parent entities, predecessors-in-interest, successors, assignees, officers, directors, trustees, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, and all persons and entities acting or purporting to act on any of their behalf.

39.     The term "Obligations" shall mean obligations owed by a Person, whether individually, as a co-obligor, or jointly with another Person, whether directly or indirectly, whether contingent or not contingent, and whether by contract or otherwise.

40.     The term "Person" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(41) of the Bankruptcy Code.

41.     The term "Preferred Shares" means the preferred interests in Eletson Gas.

42.     The term "Relevant Period" means January 1, 2018, through the date of production.

43.     The term "Requests" means the above Schedule 1 – Document Requests.

44.     The term "Shareholder" shall be broadly construed and means any holder of one or more shares or equity interests—common, preferred or otherwise—in an entity, including such holder's affiliates, relatives, or other related parties.

45.     The term "Subsidiary" means any entity whose management is controlled, directly or indirectly, by a second entity, including but not limited to any entity whose stock or other ownership interests are owned by a second entity in such quantity that the second entity possesses the ordinary voting power to elect a majority of the board of directors or managers of the entity.

46.     The term "Transfer" is defined to be synonymous in meaning and equal in scope to the usage of this term as it is defined in section 101(54) of the Bankruptcy Code.

47.     The term "Trustee" means Wilmington Savings Fund Society, FSB.

48.     The term "Valuation" means the attribution of a qualitative or quantitative value, to or a change in value of, a particular asset, liability, or category of either whether based on book value, market value, or any other valuation metric utilized under any reporting standard.

49.     The terms "You," or "Your" means [Subpoenaed Party] and its and its officers, directors, co-founders, members, partners, employees, counsel, financial advisors, investment bankers, agents, officials, representatives, attorneys, and any other Persons and entities purporting to act on its behalf.

## LIST OF TOPICS FOR EXAMINATION

In accordance with Federal Rule of Civil Procedure 30(b)(6), you are advised of your duty to designate one or more officers, directors, or managing agents or other Persons who consent to testify on your behalf with respect to the following matters. The relevant time period for each examination is January 1, 2018, through the date of examination (the "Relevant Time Period"), unless otherwise specifically indicated.

**A.      Corporate Structure and Organization**

1.      Your corporate formation or organizational documents, and any amendments thereto or restatements thereof, including without limitation, any articles of incorporation, articles of amendment, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar Documents.

**B.      Board Materials**

2.      All Board Materials of Your Board, including without limitation:

   a.      any meeting, resolution, or decision of the Your Board concerning any of the Debtors, their Subsidiaries, or their Affiliates; and

   b.      any Documents and Communications sent to, provided to, or considered by Your Board concerning any of the Debtors, their Subsidiaries, or their Affiliates.

**C.      Corporate Governance**

3.      Your officers and Directors, including without limitation:

   a.      the identity of the officers and/or Directors;

   b.      any familial relationship among any of the officers and/or Directors;

   c.      the compensation or renumeration of any kind paid to or on behalf of any officers or Directors; and

   d.      the appointment, election, removal, replacement, or resignation of any officer or Director.

**D.     Shareholder**

4.     Your Shareholders, including without limitation:

   a.      Any meeting of such Shareholders;

   b.     the identity of such Shareholders, and their beneficial owners, if any;

   c.     any familial relationship among any of the Shareholders, or any beneficial owners thereof;

   d.     the amounts invested by and the percentage ownership held by such Shareholders; and

   e.     all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders, any other Transfer to or for the benefit of such Shareholders or any of their respective affiliates.

**E.     Asset Transfers**

5.     Any Transfer of cash, assets, or thing of value, to You from (a) any of the Debtors, their Subsidiaries, or their Affiliates; (b) the Eletson Shareholders; (c) Cypriot Nominees; (d) the Families; or (e) any member(s) of any of the Families.

6.     Any loan, advance, or other Transfer to You by (a) any of the Debtors, their Affiliates, or their Subsidiaries, (b) the Eletson Holdings Shareholders; (c) the Cypriot Nominees; (d) the Families; or (e) any member(s) of any of the Families.

7.     All monthly, quarterly, and annual statements and wire transfer confirmations for all of Your Accounts, which concern, reflect, or report, any Transfers to or from (a) any of the Debtors, their Affiliates, or their Subsidiaries, (b) the Eletson Holdings Shareholders; (c) the Cypriot Nominees; (d) the Families; or (e) any member(s) of any of the Families.

8.     Fees or expenses paid to or incurred by Reed Smith LLP.

**F.     Agreements and Transfers**

9.     All agreements by or among You, the Debtor, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees, including,

without limitation, any Documents or Communications concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

10.     All Transfers by or among You, the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

11.     All loans, debts or Obligations owed by You to any of the Debtors and their Subsidiaries and/or Affiliates (including notes and guarantees), and the calculations thereof.

12.     All loans, debts or Obligations owed to You by any of the Debtors and their Subsidiaries and/or Affiliates (including notes and guarantees), and the calculations thereof.

**G.     Interests in Eletson Gas**

13.     Any interest in Eletson Gas held by any Shareholder for the time period of January 1, 2022 through the present.

14.     The Preferred Shares or the Common Shares, including without limitation:

    a.     all Valuation of the Preferred Shares or the Common Shares; and

    b.     all dividends, distributions, or return of profits or capital due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

**H.     The Cypriot Nominees**

15.     The Cypriot Nominees, including, without limitation:

    a.     any Transfer of the Preferred Shares to any of the Cypriot Nominees;

    b.     the designation of any of the Cypriot Nominees as a "nominee" under the BOL;

    c.     any Transfer of the Preferred Shares to any entity other than the Cypriot Nominees; and

    d.     any disposition, cancellation, or retirement of the Preferred Shares.

## I.     Affiliate Transactions

16.     Any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

17.     Any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b) Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, Officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

18.     Any contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries, including without limitation, any contracts or agreements concerning cash receipts or disbursements, or transactions, loans, receivable/payable balances or write-offs with any of the Persons identified in (a)-(e) of this topic

19.     The Requests.