**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Eletson Holdings Inc., *et al.*,<br><br>                    Debtors. | **NOT FOR PUBLICATION**<br><br>Chapter 11<br><br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |

**MEMORANDUM OPINION AND ORDER DENYING THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS' MOTION TO MODIFY THE
COURT'S PRIOR ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

*A P P E A R A N C E S:*

**REED SMITH LLP**
*Counsel for the Debtors*
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
By:    Anne E. Pille, Esq.

**REED SMITH LLP**
*Counsel for the Debtors*
599 Lexington Avenue
New York, NY 10022
By:    Louis M. Solomon, Esq.

**DECHERT LLP**
*Counsel for the Official Committee of Unsecured Creditors*
1095 Avenue of the Americas
New York, NY 10036
By:    Stephen D. Zide, Esq.

**PERKINS COIE LLP**
*Counsel for Wilmington Savings Fund Society, FSB*
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036
By:    Tina N. Moss, Esq.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.      INTRODUCTION

Pending before the Court is the Official Committee of Unsecured Creditors' (the "**Committee**") *Motion to Modify the Court's Prior Order Granting Relief from the Automatic Stay* (the "**Motion**"). (Docket No. 239).[1] The Motion seeks modification of this Court's April 17, 2023 stipulation and order (the "**Stay Relief Order**") (Docket No. 48), which lifted the automatic stay to permit debtor Eletson Holdings Inc. and its subsidiary, non-debtor Eletson Corporation, to pursue an arbitration against Levona Holdings Ltd. ("**Levona**") to determine ownership of preferred shares (the "**Preferred Shares**") of a non-debtor entity, Eletson Gas, LLC ("**Eletson Gas**"). (Motion ¶¶ 1, 15).

In response to the Motion, Eletson Holdings Inc., Eletson Finance (US) LLC and Agathonissos Finance LLC (collectively, the "**Debtors**") filed the *Opposition of the Debtors to the "Motion of the Official Committee of Unsecured Creditors to Modify the Court's Prior Order Granting Relief from the Automatic Stay"* (the "**Objection**"). (Docket No. 286).

Thereafter, the Committee filed the *Reply of the Official Committee of Unsecured Creditors in Further Support of its Motion to Modify the Court's Prior Order Granting Relief from the Automatic Stay* (the "**Reply**"). (Docket No. 302).

The Court heard arguments of counsel at a hearing on December 4, 2023 (the "**December 4, 2023 Hearing**," and the transcript thereof (Docket No. 309), the "**December 4, 2023**

---

[1] References to "Docket No. __" are to filings entered on the docket in *In re Eletson Holdings Inc. et al.*, No. 23-10322. References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York. References to "FRCP __" are to the Federal Rules of Civil Procedure.

Transcript"). The Court has reviewed and considered the Motion, the Objection, the Reply, the arguments of counsel at the December 4, 2023 Hearing, and all relevant material on the record.

## II.　JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G).

## III.　BACKGROUND

On March 7, 2023, Pach Shemen, LLC, VR Global Partners, L.P., and Alpine Partners (BVI), L.P. (the "**Petitioning Creditors**") filed involuntary chapter 7 bankruptcy petitions against the Debtors under Section 303 of the Bankruptcy Code. (Docket No. 1.) Shortly thereafter, at a hearing on April 17, 2023, (the "**April 17, 2023 Hearing**," and the transcript thereof (Docket No. 63), the "**April 17, 2023 Transcript**") the parties stipulated to stay relief to permit debtor Eletson Holdings and its subsidiary, Eletson Corporation, to pursue an arbitration against Levona to determine the ownership of Preferred Shares in non-debtor Eletson Gas.[2] (Motion ¶¶ 1, 15; April 17, 2023 Hearing Transcript 14:1–21). On the same date, this Court entered the Stay Relief Order pursuant to the stipulation. (Docket No. 48).

Following entry of the Stay Relief Order, on July 27, 2023, Justice Ariel Belen (the "**Arbitrator**") entered an interim award[3] (the "**Arbitration Award**") in favor of the Debtors finding, in relevant part: (i) Eletson Gas had exercised its option to purchase the Preferred Shares, which shares were then transferred to certain non-debtor entities outside the Debtors' capital structure (the "**Cypriot Nominees**"); and (ii) Murchinson, Ltd. ("**Murchinson**"), Levona,

---

[2] The common shares of Eletson Gas are held by debtor Eletson Holdings. (December 4, 2023 Hearing Transcript 77:21–22.)
[3] The interim award was later made final on September 29, 2023. (*See* Objection Ex. A.)

3

and Pach Shemen, LLC (collectively, with Murchinson and Levona, the "**Murchinson Entities**") were jointly and severally liable to Eletson Gas and the Cypriot Nominees for $102 million in compensatory and punitive damages. (*Id.* at ¶ 5; Objection at ¶ 3). On August 18, 2023, Eletson Holdings and Eletson Corporation filed a petition (the "**Confirmation Proceedings**") in the United States District Court for the Southern District of New York (the "**District Court**") to confirm the Arbitration Award. (Motion at ¶ 30).

On September 25, 2023, this Court entered an order converting these cases to cases under chapter 11. (*Id.* at ¶ 31). Shortly thereafter, on October 20, 2023, the U.S. Trustee appointed the Committee pursuant to Section 1102(a) of the Bankruptcy Code. (Docket No. 233). The Committee is comprised of the following members: Aegean Baltic Bank S.A.; Gene B. Goldstein; and Wilmington Savings Fund Society, FSB, as Indenture Trustee. (*Id.*)

By way of the Motion, the Committee seeks an order modifying the Stay Relief Order to provide that, "until further order of this Court, (a) the Arbitration and related [C]onfirmation [P]roceedings are stayed; and (b) the Debtors shall not take any steps to transfer, or seek a ruling as to the transfer of, any assets of the Debtors or their subsidiaries, including Eletson Gas." (*Id.* at ¶ 37).

The Committee argues that this Court has inherent authority to modify the Stay Relief Order under Section 105(a) of the Bankruptcy Code. (Motion at ¶ 38). Moreover, the Committee asserts that under Federal Rule of Civil Procedure 60(b)(6) (made applicable to bankruptcy cases by Bankruptcy Rule 9024), on a "motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." (*Id.* at ¶ 39 (citing Fed. R. Civ. P. 60(b)(6))).

4

In support of its position that this Court should exercise its authority pursuant to Section 105(a) and Bankruptcy Rule 60(b)(6) to modify the Stay Relief Order, the Committee asserts that such relief is necessary to preserve the status quo and avoid irreparable harm to the estates that would occur if the Arbitration Award is confirmed. (*Id.* at ¶¶ 41–47). The Committee is specifically troubled by the portion of the Arbitration Award that found that the Preferred Shares in Eletson Gas were transferred "to the Debtors' out-of-the-money shareholders and outside the reach of their creditors." (*Id.* at ¶¶ 42–43). In essence, the Committee argues that if such a transfer did occur, the Debtors' estates may have "valuable causes of action arising from that transfer, including claims to avoid the transfer as a fraudulent conveyance and claims against the individuals involved for, among other things, breach of fiduciary duty, corporate waste, and usurpation of corporate opportunity." (*Id.* at ¶ 42).

At the same time, the Committee argues that counsel for the Debtors—who also represent debtor Eletson Holdings and non-debtor Eletson Corporation in the Arbitration—advanced arguments in the Arbitration contrary to the Debtors' best interest in urging the Arbitrator to find that the Preferred Shares had been transferred to the Cypriot Nominees. (*Id.* at ¶ 43).

Finally, the Committee asserts that the Arbitration Award was obtained in violation of the Stay Relief Order because that order only modified the stay with respect to "claims currently pending in the Arbitration." (*Id.* at ¶ 46 (citing the Stay Relief Order)). According to the Committee, the Debtors violated the Stay Relief Order by claiming that the Preferred Shares belonged to the Cypriot Nominees and not the Debtors, which is a claim that the Committee asserts was not pending at the time that this Court entered the Stay Relief Order. (*Id.*).

In the Debtors' Objection, the Debtors assert the following primary arguments: (i) the Motion was filed by the Committee for an improper purpose, namely, to prevent the Murchinson

5

Entities from having to pay the damages assessed against them in the arbitration (Objection at ¶¶ 13–21); (ii) the Motion is procedurally improper because the relief sought by the Committee requires the commencement of an adversary proceeding (*Id.* at ¶¶ 22–26); (iii) the Motion contains factual misrepresentations (*Id.* at ¶¶ 27–38); (iv) the Arbitration Award provides substantial benefit to the Debtors (*Id.* at ¶¶ 39–41); and (v) efficient use of estate resources compels that the Stay Relief Order remain unmodified. (*Id.* at ¶¶ 42–44).

In the Committee's Reply, the Committee generally asserts that: (i) the Committee filed the Motion because the Debtors seek confirmation of the Arbitration Award, which would benefit their equity holders at the expense of their creditors (Reply at ¶¶ 8–10); (ii) the Motion is procedurally proper and does not require an adversary proceeding (*Id.* at ¶¶ 11–13); and (iii) the Motion was filed in good faith and for a proper purpose, namely to preserve estate assets and highlight the fact that the Debtors violated the Stay Relief Order by raising new arguments in the arbitration. (*Id.* at ¶¶ 14–30).

## IV.    LEGAL STANDARDS AND DISCUSSION

Requests for reimposition or reinstatement of the automatic stay require the filing of an adversary proceeding. *See In re Armenakis*, 406 B.R. 589, 597, n.9 (Bankr. S.D.N.Y. 2009) (noting that "reimposition of the stay under § 105(a) . . . [is] a 'proceeding to obtain an injunction or other equitable relief' under Rule 7001(7) and require[s] the filing of an adversary proceeding"); *see also In re Zahn Farms,* 206 B.R. 643, 645, n.1 (B.A.P. 2nd Cir. 1997) (noting that requests to reinstate the § 362(a) stay are "governed [] by FRBP 7001(7), and require[] an [a]dversary [p]roceeding"). Here, the Committee has not commenced an adversary proceeding.

However, some Courts have distinguished motions to reconsider filed pursuant to FRCP 60(b) from motions seeking to reimpose the automatic stay, and have found that such relief pursuant to FRCP 60(b) may be requested by motion. For example, in *In re Armenakis*, in ruling

6

on a motion to reconsider under Rule 60(b), the court noted that "the specific action taken by the [c]ourt vacated the [l]ift [s]tay [o]rder and reinstated the stay, restoring the parties to the status quo before the [l]ift [s]tay [o]rder was granted." *In re Armenakis*, 406 B.R. at 597, n.9. The court distinguished such action from "the reimposition of the stay under § 105(a), which would be a 'proceeding to obtain an injunction or other equitable relief' under Rule 7001(7) and require the filing of an adversary proceeding . . ." and noted that the Tenth Circuit permits such relief to be requested by motion. *Id.* (citing *In re Gledhill*, 76 F.3d 1070, 1079 (10th Cir.1996)).

Assuming, *arguendo*, that motions seeking to modify the automatic stay brought pursuant to FRCP 60(b) may be exempt from the general requirement of an adversary proceeding under Bankruptcy Rule 7001(7), the Court finds that the applicable standard to obtain relief under FRCP 60(b) has not been met.

FRCP 60(b), made applicable to bankruptcy cases by Bankruptcy Rule 9024, allows the Court to relieve a party from a final judgment for:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In the Motion, the Committee moves under Rule 60(b)(6), which, as stated above, permits the Court to grant relief from an order for "any [] reason that justifies relief." (Motion at ¶ 39 (citing Fed. R. Civ. P. 60(b)(6))). Courts have held that FRCP 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." *United*

7

*Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (citing *Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir.1986) (internal quotation marks omitted)). However, "[a]lthough courts have broad discretion in applying [] Rule 60(b)(6) . . . relief should not be granted unless [the] movant shows exceptional or extraordinary circumstances, . . . or extreme and undue hardship." *In re AL & LP Realty Co.*, 164 B.R. 231, 234 (Bankr. S.D.N.Y. 1994) (internal citations omitted); *see also House v. Sec'y of Health & Hum. Servs.*, 688 F.2d 7, 9 (2d Cir. 1982) (collecting cases).

As stated above, the Committee's principal argument that exceptional or extraordinary circumstances, or extreme and undue hardship exist here is that the Arbitration Award contains a finding that the Preferred Shares in Eletson Gas were transferred "to the Debtors' out-of-the-money shareholders and outside the reach of their creditors." (Motion at ¶ 43). The Committee asserts, accordingly, that confirmation of the Arbitration Award would be tantamount to dissipation of estate assets. (*Id.* at ¶¶ 42–43). The Committee also argues that counsel for the Debtors advanced arguments in the Arbitration contrary to the Debtors' best interest by urging the Arbitrator to find that the Preferred Shares had been transferred to the Cypriot Nominees. (*Id.* at ¶ 43). Finally, the Committee argues that the Arbitration Award was obtained in violation of the Stay Relief Order, which only modified the stay with respect to "claims currently pending in the Arbitration." (*Id.* at ¶ 46 (citing the Stay Relief Order)).

The Court is unpersuaded that exceptional or extraordinary circumstances, or extreme and undue hardship exist here. First, confirmation of the Arbitration Award would not impinge on any party's ability to attempt to assert causes of action, if warranted, in these proceedings relating to any finding or action in the Arbitration. Indeed, in the Motion, the Committee itself states that the Debtors' estates may have "valuable causes of action arising from that transfer [to the Cypriot Nominees], including claims to avoid the transfer as a fraudulent conveyance and

8

claims against the individuals involved for, among other things, breach of fiduciary duty, corporate waste, and usurpation of corporate opportunity." (*Id.* at ¶ 42).

The lack of exceptional or extraordinary circumstances, or extreme and undue hardship is further evidenced by the express terms of the Stay Relief Order, which provides:

> Any Arbitration Award, whether in favor of any Arbitration Party, shall be stayed pending further order of the Bankruptcy Court on a motion noticed following the issuance of the Arbitration Award. For avoidance of doubt, no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent a further order of this Court.

(Stay Relief Order at ¶ 4).

Moreover, the Arbitration Award contains an award of approximately $102 million in compensatory and punitive damages against the Murchinson Entities, approximately half of which is payable to debtor Eletson Holdings' subsidiary, Eletson Gas. (*Id.* at ¶ 5; Objection at ¶ 3; December 4, 2023 Hearing Transcript 77:21–22).

Finally, the Committee's contention that the Arbitration Award was obtained in violation of the Stay Relief Order also does not constitute exceptional or extraordinary circumstances, or extreme and undue hardship. The Court notes that similar arguments were already raised and rejected by the Arbitrator. (Final Award at 30–32). Indeed, in the Arbitration, Levona filed a *Motion to Strike Claimants' New Allegations of the Transfer of the Preferred Shares to the Preferred Nominees, or in the Alternative, to Dismiss Claimants' Claims in Chief* (the "**Motion to Strike or Dismiss**") on the grounds that such claims were untimely raised. (*Id.* at 17, 30). Notwithstanding that it was "undisputed that Eletson raised th[e] contingent transfer to Cypriot nominees for the first time in its Rule 20(b) submission on May 5, 2023," the Arbitrator denied the Motion to Strike or Dismiss, finding that Eletson credibly explained why it did not initially raise the transfer to the Cypriot Nominees (because Eletson did not believe such information was

9

relevant until Levona claimed that the Preferred Shares were property of the Eletson Holdings estate in these bankruptcy proceedings), and also finding that the timing of such late disclosure was not prejudicial to Levona.[4] (*Id.* at 30–32).

Relatedly, Levona sought to stay the Confirmation Proceedings before the District Court three times: first, by filing a "statement of relatedness" seeking to establish that the Confirmation Proceedings and these bankruptcy proceedings are related (Objection at ¶ 4); second, by filing a Referral Motion (the "**Referral Motion**") seeking to refer the Confirmation Proceedings to this Court (*Id.* at ¶ 4); and third, by filing a Motion to Reconsider (the "**Motion to Reconsider**") the denial of the Referral Motion. (*Id.* at ¶ 7). All three attempts were denied by the District Court. (*Id.* at ¶¶ 4–7).

In denying the Referral Motion, the District Court noted that it "has original jurisdiction over the action . . . . [and] is the proper forum to decide whether to confirm or vacate the award." (*Id.* at ¶ 5 (citing the October 10, 2023, *Memorandum and Order* (J. Liman), attached to the Objection as Exhibit B)). In denying the Motion to Reconsider, the District Court further elaborated that "all that the bankruptcy court could do in this matter would be to prepare and submit proposed findings of fact and conclusions of law that would be reviewed de novo by [the District Court] . . . . The [District] Court assumes it has the authority to send this matter to the bankruptcy court and declines to exercise that authority." (*Id.* at ¶ 7 (citing the October 17, 2023, *Order* (J. Liman), attached to the Objection as Exhibit C)).

As Judge Liman noted in the Confirmation Proceedings, it is the District Court—not this Court—that has original jurisdiction over confirmation of the Arbitration Award. (Objection at ¶ 5). For this reason, the Court finds that these issues related to the timeliness of claims raised in

---

[4] The Arbitrator also found that Levona had an opportunity to seek additional discovery regarding the transfer and to cross-examine witnesses on the issue but did not do so. (*Id.* at 31–32).

10

the Arbitration should be addressed by the District Court in the Confirmation Proceedings. (December 4, 2023 Hearing Transcript 80:1–24).

Accordingly, the Court finds that the Committee has failed to demonstrate that exceptional or extraordinary circumstances, or extreme and undue hardship exist here to warrant relief under FRCP 60(b)(6). *See In re AL & LP Realty Co.*, 164 B.R. at 234; *see also House v. Sec'y of Health & Hum. Servs.*, 688 F.2d at 9.

The Committee also advanced Section 105(a) as an alternative basis for the Court to modify the Stay Relief Order, stating that this Court has inherent authority to do so. (Reply at ¶ 11). The Court, however, declines to exercise the inherent authority it may have under Section 105(a) to modify the Stay Relief Order for all the same reasons stated above.

Finally, for these same reasons, even if the Committee were to file an adversary proceeding seeking to reimpose the stay, such adversary proceeding appears unlikely to succeed. As noted above, seeking reimposition of the automatic stay is akin to seeking an injunction. *In re Zahn Farms*, 206 B.R. at 645 (noting that a "request to 'reinstate' the § 362(a) stay is, in fact, a request for an injunction and should meet the standards therefor"). In obtaining an injunction, the moving party must show, in relevant part, that it "will suffer irreparable harm in the absence of an injunction . . . ." *See Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2d Cir. 1995). As stated above, if, as the Committee asserts, causes of action exist relating to findings made in the Arbitration, the Court is unaware of any impediment (as a result of the Stay Relief Order) to such causes of action being asserted in these proceedings by the appropriate party, at the appropriate time. Accordingly, confirmation of the Arbitration Award does not constitute irreparable harm to the estate.

11

## V. CONCLUSION

For the foregoing reasons the Motion is DENIED.

**It is SO ORDERED.**

Dated: January 4, 2024
New York, New York

                                        /S/ John P. Mastando III
                                        HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE