UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ELETSON HOLDINGS INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 23-10322 (JPM)<br><br>(Jointly Administered) |

**DEBTORS' OBJECTION TO OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' APPLICATION FOR AN ORDER AUTHORIZING
THE RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC.
AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS EFFECTIVE AS OF DECEMBER 8, 2023**

The above captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby object to the *Application for an Order Authorizing the Retention and Employment of FTI Consulting, Inc. as Financial Advisor to the Official Committee of Unsecured Creditors Effective as of December 8, 2023* [Dkt. No. 349] (the "FTI Application"), pursuant to which the Official Committee of Unsecured Creditors (the "Committee") seeks to retain the services of FTI Consulting, Inc. ("FTI") as financial advisor in the Debtors' chapter 11 cases (the "Chapter 11 Cases").  In support thereof, the Debtors state as follows:

## BACKGROUND

1. The Debtors are holding companies that maintain no operations and have no employees.

2. On March 7, 2023, the Debtors were placed into bankruptcy through the filing of involuntary petitions for relief under chapter 7 of Title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

"Bankruptcy Code"). On September 25, 2023, the Debtors voluntarily converted the chapter 7 cases into the Chapter 11 Cases.

3. On October 10, 2023, the Debtors filed their Schedules of Assets and Liabilities (collectively, and as amended from time to time the "Schedules") and their Statements of Financial Affairs (collectively, the "SOFAs").

4. On October 20, 2023, the Committee was appointed by the United States Trustee for Region 2.

5. On November 20, 2023, the Debtors filed their monthly operating reports (collectively, and as amended from time to time the "MORs") pursuant to the United States Trustee's Operating Guidelines and Reporting Requirements for Chapter 11 Debtors and Trustees (the "Guidelines"). The Debtors have subsequently remained in compliance with the Guidelines and have filed MORs for each Debtor in a timely manner. Also on November 20, 2023, the Debtors filed their periodic statement pursuant to rule 2015.3 of the Federal Rules of Bankruptcy Procedure (as amended from time to time the "2015.3 Disclosure"). On November 30, 2023, the Debtors filed an amended 2015.3 Disclosure. On December 29, 2023, the Debtors filed an amended Schedule A/B.

## THE FTI APPLICATION

6. Pursuant to the FTI Application FTI will provide the Committee with financial advisory services, including, but not limited to:

- Assistance in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

- Assistance with the assessment and monitoring of the Debtors' short term cash flow, liquidity, and operating results;

- Assistance with the review of the Debtors' potential disposition or liquidation of both core and non-core assets;

- Assistance with the review of the Debtors' cost/benefit analysis with respect to the affirmation or rejection of various executory contracts and leases;

- Assistance with the review of the Debtors' identification of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

- Assistance in the review and monitoring of the asset sale process, including, but not limited to an assessment of the adequacy of the marketing process, completeness of any buyer lists, review and quantifications of any bids;

- Assistance with review of any tax issues associated with, but not limited to, claims/stock trading, preservation of net operating losses, refunds due to the Debtors, plans of reorganization, and asset sales;

- Assistance in the review of the claims reconciliation and estimation process;

- Assistance in the review of other financial information prepared by the Debtors, including, but not limited to, cash flow projections and budgets, business plans, cash receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which Court approval is sought;

- Attendance at meetings and assistance in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these chapter 11 proceedings, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

- Assistance in the review and/or preparation of information and analysis necessary for the confirmation of a plan and related disclosure statement in these chapter 11 proceedings;

- Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

- Assistance in the prosecution of Committee responses/objections to the Debtors' motions, including attendance at depositions and provision of expert reports/testimony on case issues as required by the Committee; and

- Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding (collectively the "FTI Services").

7. As compensation for the FTI Services, the FTI Application provides that FTI will bill fees to the Debtors' estates on an hourly basis with hourly rates ranging from $1,095 to $1,495 per hour for Senior Managing Directors to $340 -$370 an hour for Administrative/Paraprofessionals (as set forth in the FTI Application, the "FTI Fees"). FTI Application at ¶ 17. The FTI Application does not include a budget, projections, or an estimate of the aggregate FTI Fees incurred providing the FTI Services to the Committee. Further there is no proposed interim or aggregate cap on the FTI Fees.

8. In addition to the FTI Services and the FTI Fees, the FTI Application provides for the indemnification of FTI by the Debtors for all claims "arising from, related to, or in connection with FTI's engagement under [the FTI Application]." FTI Application at ¶ 20.

## OBJECTION TO RETENTION OF FTI

9. The Committee's retention of FTI in these Chapter 11 Cases is wholly unnecessary and serves no purpose other than needlessly increasing the administrative expenses of the Debtors' estates.

10. In the FTI Application the Committee states that the "employment of FTI and its professionals by the Committee are reasonable and in line with the terms and conditions typical for engagements of this size and character." FTI Application at ¶ 22. Further, the Committee asserts "[b]ecause the Committee will require substantial assistance with these chapter 11 cases, it is reasonable for the Committee to seek to employ and retain FTI to serve as its financial advisor on the terms and conditions in this Application." Id. Neither of these statements could be further from the truth.

11. Despite the Committees' assertions, the retention of a financial advisor, especially a financial advisor of the size and cost of FTI, is wholly unnecessary. While the Committee notes that it will need "substantial assistance with these chapter 11 cases" the Committee does not present any facts in these Chapter 11 Cases that would require substantial assistance from a financial advisor.

### A. The FTI Services are Unnecessary in These Chapter 11 Cases

12. The reasonableness of a retention and the services to be provided thereto are dependent on the circumstances of the case. These Chapter 11 Cases are exceedingly straightforward. The Debtors are a collection of holding companies who maintain no operations and have no ongoing expenses, no active recurring disbursements, and no recurring receipts. The Debtors are not making distributions and are not receiving payments or income from any third parties. The Debtors' balance sheets and financial information as set forth in the MORs, 2015.3 Disclosure, Schedules and SOFAs are an accurate representation of the Debtors' assets and operations and are sufficiently straightforward. Further, the Debtors have continually amended and supplemented these financial disclosures in accordance with the requests of all parties in interests in these Chapter 11 Cases, including the Committee.

13. In fact, as the Committee is keenly aware, the **only** significant ongoing and accruing expenses of the Debtors are fees for professional services. Rather than work constructively with the Debtors to maximize the distributable value of the Debtors' assets, the Committee aims to needlessly increase the administrative burn on the Debtors' estates to the detriment of the very creditor constituency the Committee owes its fiduciary duties to.

14. The superfluousness of FTI's retention is highlighted by a review of the FTI Services. For example, FTI will provide the Committee with "assistance in the review of

financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports." However, the Committee has pointed out no reason why such assistance is necessary. The Schedules, SOFAs, 2015.3 Disclosure, and MORs are straightforward documents that provide all the necessary accountings of the Debtors' current assets and liabilities. The amendments to these documents filed by the Debtors have only provided further insight to the Debtors' corporate and operational structure including financial information for non-Debtor and non-operating and assetless entities. There is no need to retain a financial advisor and incur tens or hundreds of thousands of dollars of additional administrative expenses for the review of the Schedules, SOFAs, 2015.3 Disclosure, and MORs of three Debtors without operations.

15.     FTI will also provide "Assistance with the assessment and monitoring of the Debtors' short term cash flow, liquidity, and operating results". As the Debtors have no operations there are no short-term cash flow, liquidity, or operating results to assess or monitor. Likewise, FTI purports to assist the Committee with the "review of the Debtors' potential disposition or liquidation of both core and non-core assets" however the Debtors have not articulated any plans to dispose of any assets as part of these Chapter 11 Cases. While the Debtors reserve all rights regarding the progression of these Chapter 11 Cases, the additional administrative burn of FTI based on a "what if" is unreasonable. Along the same lines FTI's assistance "in the review and monitoring of the asset sale process, including, but not limited to an assessment of the adequacy of the marketing process, completeness of any buyer lists, review and quantifications of any bids" is wholly unnecessary and contingent at best, and does not justify any additional administrative burden on the Debtors' estates.

16. FTI purports to assist the Committee with "the review of the Debtors' cost/benefit analysis with respect to the affirmation or rejection of various executory contracts and leases." The Debtors are not party to any unexpired leases and to the best of the Debtors' knowledge are only party to executory contracts that would be best described as de minimis. FTI also asserts that it will assist the Committee with "the review of the Debtors' identification of potential cost savings, including overhead and operating expense reductions and efficiency improvements." As the Debtors have no operations there is no need to hire FTI for these services.

17. In addition to the foregoing, FTI will provide the Committee with "assistance with review of any tax issues associated with, but not limited to, claims/stock trading, preservation of net operating losses, refunds due to the Debtors, plans of reorganization, and asset sales. As the Debtors are not subject to any United State taxing requirements, there is little if any need for the retention of a financial advisor to assist the Committee in this regard.

18. The remaining FTI Services do little more than add the fees and expenses of additional set of professionals to the Debtors whose rates are comparable to that of counsel to the Committee. For example, FTI will assist the Committee through "Attendance at meetings and assistance in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these chapter 11 proceedings, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested." Yet these services are simply duplicative of responsibilities of the Committee and add another layer of expenses. If the FTI Services were as necessary as the Committee claims, one would at least expect the Committee to take the time to tailor the requested relief to the actual needs of these Chapter 11 Cases.

B. **The FTI Fees are Unreasonable if Not Subject to a Budget or Otherwise Capped**.

19. The FTI Application shockingly ask this Court to provide the Committee and FTI with a blank check signed by the Debtors' estates. With no budget, estimate or caps on the FTI Fees, there is no way for the Debtors, or even the Committee, to determine the burden the FTI retention will have on the Debtors' estates and how much value would be directed towards FTI that would otherwise be distributable to the Debtors' creditors. Further, the FTI Application does not disclose how many professionals will be active in this representation nor what level of seniority will be attributable to those professionals.

20. Given the circumstances of these Chapter 11 Cases the retention of FTI without a budget, cap, or even projections of the aggregate FTI Fees is unreasonable. Even with the flexibility provided by an hourly rate structure, there is no indication that the FTI Fees will be commensurate with the actual needs of these Chapter 11 Cases. While FTI must seek allowance of the FTI Fees, the Debtors believe that this alone is not sufficient and the uncertainty of the FTI Fees from month to month will not only leave the Debtors in limbo and at the mercy of FTI's timekeepers but could also significantly impact the Debtors' ability to successfully reorganize by unnecessarily ballooning the size of the Debtors' administrative claims pool.

C. **The FTI Retention is Another Tactic Aimed at Destroying the Debtors' Estates**

21. Finally, the FTI Application should be denied because the Committee has not (and cannot) demonstrated that they seek to retain FTI in good faith. Throughout these cases the Committee has engaged in a pattern of harassing and pointless filings and motion practice at the bidding of Murchinson Inc., Levona Ltd. and/or Pach Shemen LLC. The Committee is well aware of the Debtors' status as holding companies, two of which are prohibited from actually holding assets. Further, counsel to the Committee and members of the Committee have been

engaged in litigation with the Debtors and certain of their affiliates for over a year and a half and in that time has been provided with discovery regarding the financial information of the Debtors in addition to the information provided in these cases. Despite this unprecedented access to the Debtors' financial information for years, the Committee is only now asserting that it needs the assistance of FTI to review documents with no cap on the FTI Fees.

22. The Committee has provided no justification for the selection of FTI as financial advisor. The FTI Application and the Declaration of Michael Cordasco attached to the FTI Application do not indicate any expertise in the international shipping industry, or any industry adjacent to those of the Debtors that would justify the retention of FTI. Given the simplicity of the Chapter 11 Cases, the Debtors' lack of operations and the failure of FTI to articulate any exclusive industry expertise that justifies FTI's retention, an untold number of financial advisors could provide the same service as FTI at a fraction of the cost. Given this, the only logical explanation is that the Committee hopes to bleed out the Debtors to the point of administrative insolvency, an outcome in direct conflict with the Committee's fiduciary duties.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully requests that this Court: (i) deny the FTI Application and (ii) grant such other and further relief as the Court deems proper.

*[Remainder of Page Intentionally Left Blank]*

DATED:   New York, New York
January 18, 2024

**REED SMITH LLP**

<u>/s/ Derek J. Baker</u>
Derek J. Baker
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
       dosei-bonsu@reedsmith.com

-and-

Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
       lsolomon@reedsmith.com

-and-

Ann E. Pille (Admitted *Pro Hac Vice*)
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Counsel to the Debtors*