**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

### OBJECTION TO MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

Eletson Holdings Inc. ("Holdings"), Eletson Finance (US) LLC and Agathonissos Finance LLC (together with Holdings, the "Debtors") hereby object to the *Motion of the Official Committee of Unsecured Creditors for an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 353] (the "Compensation Motion"), pursuant to which the Official Committee of Unsecured Creditors (the "Committee") seeks to impose payment obligations on the Debtors which are inconsistent with the plain language of the Bankruptcy Code. In support thereof, the Debtors state as follows:

1. The Compensation Motion is the latest in the unnecessary and wasteful pleadings filed by the Committee in these cases. The Committee's first act was to try to prevent the Debtors from seeking to confirm the arbitration award which preserved Holdings' equity ownership to the exclusion of Levona Ltd ("Levona"). It is plain that the Committee is simply doing the bidding of Murchinson Inc. ("Murchinson"), Levona and/or Pach Shemen LLC ("Pach Shemen"). Levona and its affiliates are the only parties that would have benefited from such a prevention. The Court denied the Committee's motion noting that it was improperly sought.

---

[1]    The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

2.      Next, the Committee tried to interfere with the Debtors' retention of their professionals, despite their professionals' agreement not to do so, trying to derail the chapter 11 cases from the outset.  Again, the Court saw through the Committee's actions and granted the retention of Reed Smith over the Committee's interference.

3.      Now, the Committee is intent on simply trying to "outspend" the Debtors and create and implement procedures which are inconsistent with the Bankruptcy Code and not necessitated in these cases for no reason other than to increase the administrative burden on the Debtors' estates.

4.      The Committee is seeking to employ an unnecessary and expensive financial advisor to review and advise on a series of items which are not even an issue in these cases.  Of the three Debtors, two entities are contractually prohibited from owning (and have not owed) any assets and have only one liability (co-liability on the bonds).  There is nothing to review or advise with respect to these entities.  The final entity – Holdings – is a true holding company whose sole assets (prior to the improper actions precipitating these cases)[2] is the ownership of various subsidiaries.  Holdings does not have (and has not had) any separate operations.  Holdings does not operate the subsidiaries; each of the subsidiaries have separate boards, officers, and operations. Holdings' sole right is to receive the equity value of those subsidiaries after those subsidiaries first use their respective assets to satisfy their respective liabilities.  All of Holdings' equity positions for those respective subsidiaries are accurately reflected in the financial statements filed of record in these cases.  (*See Notice of Filing of Debtors' Second Amended Periodic Report Pursuant to Bankruptcy Rule 2015.3* [Dkt. No. 341].)

5.      There is no evidence – or suggestion – that the Committee's financial advisor has any specialized experience in the valuation of Holdings' ownership in its subsidiaries (including various special maritime enterprises) and the more likely scenario is that the financial advisor is

---

[2] Because of the improper actions of Murchinson and its alter egos Levona and Pach Shemen (among others) and those of its proxies, including Wilmington Savings Fund Society, FSB (as indenture trustee), Holdings now holds various claims and defenses to various claims asserted or assertable by such parties which inure to the benefit of "non-improperly acting" creditors.

being retained simply to "spend" estate resources for the purpose of creating administrative expenses which provide no value to the estate.

6.      Consolidated financial information for these entities was produced months ago (including detailed spreadsheets and trial balances) and were reviewed and subject to more than 15 hours of deposition.  Despite the Committee's suggestion of "need" a financial advisor, the Committee has proffered absolutely no basis or need for a financial advisor to "re-review" the work allegedly performed to date.[3]  Only one group benefits from simply creating costs and claims which parties will assert preclude the confirmation of the Debtors' plan of reorganization: Murchison, Levona and Pach Shemen.

7.      Now, the Committee tries to force the Debtors to spend time and expense in the determination of professional fee petitions on a timeline and with a process different than that called for in the United States Bankruptcy Code.  The Compensation Motion is simply trying to "accelerate" the procedure outlined by the Bankruptcy Code and create payment obligations which the Bankruptcy Code does not require.  All this is merely to interfere with the administration of the Debtors' cases and to increase costs, all to benefit the Committee's true puppet master: Murchison, Levona and Pach Shemen.

8.      Section 331 of the Bankruptcy Code specifically details a process for the interim presentation and determination of fee applications for professionals.  That process contemplates that persons employed under §§ 327 or 1103 may apply to the Court not more than once every 120 days for allowance of fees unless the court permits otherwise.  Reed Smith's first application may be filed on or after January 25, 2024; the Committee's first application may be filed on or after February 25, 2024.  The Bankruptcy Code's process is more than sufficient.  There is simply no need to permit otherwise.  In fact, at one of the very first hearings in this case, Reed Smith reported on its understanding that the professionals would be acting pursuant to the deadlines set in the

---

[3] If the Committee presses its proposed retention, it calls into direct question the propriety or validity of the work allegedly undertaken by professionals during the involuntary portion of these cases.  If such professionals' work is so unusable that the Committee now needs a financial advisor to advise it on Holdings' assets/liabilities, the Court should summarily dismiss the various administrative claims submitted by the alleged Petitioning Creditors for their alleged professionals' work.

Bankruptcy Code and payments made on the effective date of the Debtor's plan.  (See 11/2/23 Hrg. 54:2-17.)   The Committee acknowledged that Holdings is a holding company without separate access to cash.  (Id. at 55:20-23.)

9.      Despite that acknowledgement, the Committee is apparently now unsatisfied with the timing of that process.   The Committee is trying to create a "unpaid" obligation by "accelerating" the fee application process.   A monthly fee process is completely unnecessary and outside the bounds for a case of the size.  The Committee's processionals are trying to do is alter the provisions of the Bankruptcy Code and require items that the Bankruptcy Code does not otherwise require – all for the benefit of Murchinson, Levona and/or Pach Shemen.

10.      The case law regarding the implementation of interim compensation procedures that differ from those provided in the Bankruptcy Code is clear.   The primary consideration for when interim compensation modifications are appropriate is when parties have exercised an extensive amount of time to achieve a successful reorganization and would otherwise be harmed by the 120-day period.  See *In re Bennett Funding Grp., Inc.*, 213 B.R. 227, 232 (Bankr. N.D.N.Y. 1997).   Further, modification of the compensation procedures set forth in section 331 of the Bankruptcy Code is generally reserved for larger cases based on the ***Debtors'*** needs*.  See, e.g., 3 Collier on Bankruptcy* P 331.03 (2016) ("In general, it is in the large chapter 11 reorganization cases where courts allow applications for payment of interim compensation to be made in less than the 120-day period described in section 331, which will almost always be either a monthly or a 60-day period. In reducing the period in those types of complex cases, courts have focused on a variety of factors, including cash flow needs of the debtor in possession, the ability of the debtor to reorganize, the reputation of the debtor in possession's counsel and whether there is assurance that any fees subsequently disallowed can be repaid by the affected professional.").

11.      It is the movant's burden to prove that the proposed interim compensation procedures are reasonable.   While the Committee notes factors for consideration in determining whether to implement interim compensation procedures, they point to no facts in the Debtors' cases requiring their proposed compensation procedures.  As stated herein, the Debtors' cases are

exceedingly straightforward, with no operations or cash flows to monitor. Further it is the Committee's continued frivolous attacks on the Debtors' estates that are increasing the time expended by estate professional while distracting the Debtors from focusing on effecting their reorganization. The Committee has not asserted that any party in interest in these chapter 11 cases would be prejudiced if its proposed procedures are not put in place. As there are no hardships requiring modification of the plain directives of the Bankruptcy Code, there is no basis for the proposed compensation procedures. *See, e.g., In re Haven Eldercare, LLC*, 382 B.R. 180, 185 (Bankr. D. Conn. 2008) (refusing to modify 120-day compensation schedule when debtor did not show that 120-day period would present a hardship to any professionals and was unwarranted given the cases were not unusually large).

12.     Finally, the Committee cannot rely solely on the Court's equitable powers pursuant to section 105(a) of the Bankruptcy Code for the implementation of the Committee's proposed procedures when no other justification for such modification exists. *See Law v. Siegel*, 571 U.S. 415 (2014) (providing that section 105(a) does not allow bankruptcy courts to override other provisions of the Bankruptcy Code).

13.     The true purpose of the Committee's actions here is to force a monetization event in advance of the Debtors' Plan) so that Murchinson, Levona and/or Pach Shemen can continue to force the estate to incur costs and spend funds which provide absolutely no benefit to the Debtors' creditors. It only benefits Murchinson, Levona and/or Pach Shemen on their "dual litigation front." The Court should not countenance the Committee's actions here.

14.     Finally, there is almost no precedent for an order approving interim compensation procedures by a creditors committee. Despite the Committee's assertion that its proposed procedures are routinely approved in this district, none of the cases cited by the Committee involved relief sought by a party other than the debtor in those cases. Here, without justification or need is seeking to bind the Debtors to its own proposed compensation terms and direct how the Debtors administer their estates and interact with their retained professionals. We are aware of only two cases where an unsecured creditors' committee, and not the Debtor, sought court approval

for interim compensation orders and the requested relief was granted.  *See In re Jet Oilfield Services, LLC*, Case No. 22-70126 (TMD) (Bankr. W.D. Tex. 2022); *In re NBI, Inc.*, 129 B.R. 212 (Bankr. D. Colo. 1991).  The first case was not objected to by the debtors or any party in interest in those cases.  The second involved procedures specifically for the committee and was noted by the court to be a special procedural order.  *See In re NBI*, at fn. 2.  We are not aware of any precedent for approving interim compensation procedures sought by an unsecured creditors' committee over the objection of the debtors in that case.

15.    For the reasons set forth herein, the Debtors request that this Court deny the Compensation Motion and direct the parties to otherwise comply with the standard provisions of 331 of the Bankruptcy Code.

**[remainder of page left intentionally blank]**

DATED:    New York, New York
          January 18, 2024

**REED SMITH LLP**

<u>/s/ Derek J. Baker</u>
Derek J. Baker
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
        dosei-bonsu@reedsmith.com

-and-

Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
        lsolomon@reedsmith.com

-and-

Ann E. Pille (Admitted *Pro Hac Vice*)
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Counsel to the Debtors*