Exhibit A

[FILED UNDER SEAL]

Exhibit B



# THE REPUBLIC OF LIBERIA



# APOSTILLE

(Hague Convention of 5 October 1961/Convention de La Haye du 5 Octobre 1961)

1. Country: The Republic of Liberia

**This Public Document**

2. Has been signed by: Margaret Ansumana

3. Acting in the capacity of: Deputy Registrar of Corporations, Republic of Liberia

4. Bears the seal/stamp of: Ministry of Foreign Affairs, Republic of Liberia

**Certified**

5. At: Piraeus, Greece

6. On: June 29, 2018

7. By: I. PAPOUTSOGLOU
Special Agent,
Liberia Maritime Authority

8. Number: G-129612

9. Seal/Stamp:

10. Signature:



C-40191-1111088

# REPUBLIC OF LIBERIA

Business Corporation Act 1977
The Associations Law, Title 5, as Amended, of the Liberian Code of Laws Revised

# ARTICLES OF AMENDMENT
# OF
# ELETSON HOLDINGS INC.

*(A Nonresident Domestic Corporation)*

## Registration Number C-40191

**INCORPORATED on the 4th day of December, 1985**



The LISCR Trust Company
80 Broad Street
Monrovia
Liberia

# REPUBLIC OF LIBERIA

BUSINESS CORPORATION ACT 1977
THE ASSOCIATIONS LAW, TITLE 5, AS AMENDED, OF THE LIBERIAN CODE OF LAWS REVISED

# ARTICLES OF AMENDMENT
# OF
# ELETSON HOLDINGS INC.

*(A Nonresident Domestic Corporation)*
### Registration Number C-40191

REPUBLIC OF LIBERIA

## MINISTRY OF FOREIGN AFFAIRS

### *FILED*

on

this 29th day of June, 2018

By order of the Registrar

ARTICLES OF AMENDMENT
OF
THE RESTATED ARTICLES OF INCORPORATION
OF
ELETSON HOLDINGS INC.

PURSUANT TO THE LIBERIAN BUSINESS CORPORATION ACT

1. Pursuant to Section 9.5 of the Liberian Business Corporation Act, we, the undersigned, for the purpose of amending the Restated Articles of Incorporation of ELETSON HOLDINGS INC. (the "**Corporation**"), being the duly appointed, qualified and acting President and Secretary of the Corporation organized under the Laws of the Republic of Liberia, with registration number C-40191, hereby **CERTIFY THAT:**

A. The name of the Corporation is: ELETSON HOLDINGS INC.

B. The Articles of Incorporation of the Corporation were filed with the Minister of Foreign Affairs on December 4, 1985.

C. Previous Amendments to the Articles of Incorporation were filed with the Minister of Foreign Affairs as of the 15th day of February, 1994, and as of the 29th day of June, 2007.

2. This Amendment to the Restated Articles of Incorporation was authorized by vote of the holders of all of the outstanding shares entitled to vote thereon, and the shareholders' resolution to the Amendment was executed on the [21st] day of June, 2018.

3. Article IV CLASSES OF COMMON STOCK of the Restated Articles of Incorporation presently provides that the Corporation shall have two classes of common stock: Class A (the "Class A Shares") and Class C (the "Class C Shares"), the holders thereof being hereinafter called "Class A Holders" and "Class C Holders", respectively. The authorised number and description of the rights of such respective classes of common stock are as follows:

*Section 1: Aggregate Number of Shares.*

(a)    The aggregate number of Class A Shares that the Corporation is authorised to issue is ten thousand (10,000) registered shares without par value.

(b)    Upon filing of these Articles of Amendment with the Ministry of Foreign Affairs, the outstanding Class A and Class B Shares will be converted into new Class A Shares at a rate of conversion of one (1) (previous) Class A or Class B (as the case may be) Share to ten (10) (new) Class A Shares.

(c)    The aggregate number of Class C Shares that the Corporation is authorised to issue is one hundred (100) registered shares without par value. Class C Shares shall be issued only to those persons deemed, in the sole discretion of the Board of Directors of the Corporation, to be senior management of the Corporation and/or any company wholly owned and controlled by such person. Any and all Class C Shares may be freely redeemed from time to time in the sole discretion of the Board of Directors upon payment by the Corporation to

the holder of Class C shares of $100 per share and such other amounts, if any, as the Board of Directors has declared are payable at such time in accordance with the provisions of Section 2 (d) of this Article IV.

### *Section 2: Dividend Rights*

(a)   The Class A Holders shall be entitled to receive pro rata, when and as declared by the Board of Directors of the Corporation out of funds legally available for the purpose, annual cumulative dividends, as hereinafter provided (the "**Mandatory Dividend**"), payable in cash within 15 days from the date of the Annual General Meeting in each year, less the amount of any interim dividend previously paid by the Corporation in respect of the same fiscal year. The Mandatory Dividend shall be equal to the greater of **(aa)**: twenty five percent (25%) of Net Income for the year (as defined from time to time in the Corporation's accounting policies) adjusted to include only twenty percent (20%) of any Net Capital Gain (defined as the aggregate of capital gains less capital losses for any calendar year on ships, investments and other fixed assets) i.e. eighty percent (80%) of Net Capital Gain will be excluded from the calculation of adjusted Net Income, but all Net Capital Losses (if capital losses exceed capital gains) will be included;   and **(bb)** Five Million United States Dollars (U.S.$5,000,000).

(b)   To the extent permitted by law, the Shareholders of the Corporation, by written resolution, approved by the majority provided for in Article IV.4(a) hereof, may **(aa)** declare and require the Corporation from time to time to make interim dividend payments, in respect of a given fiscal year, and/or **(bb)** declare and require the Corporation to make dividend payments in amounts greater than the Mandatory Dividend.

(c)   In the event that the Corporation does not pay a minimum annual aggregate dividend of at least Five Million United States Dollars (U.S.$5,000,000), the difference between **(a)** the aggregate amount of any dividends, if any, declared and actually paid in any calendar year and **(b)** Five Million United States Dollars (U.S.$5,000,000) shall accumulate, without interest, and be paid out, pro rata, to the Class A Holders on the earliest date on which the Directors of the Corporation determine that any such payment of accumulated dividends may lawfully and prudently be made; provided, however, that in the event that the full amount of such accumulated dividends is not paid within any two year period immediately after any portion of such accumulated amount first accrued, no further dividends shall thereafter accumulate on the Class A Shares until such time as all cumulative dividends which accrued during any such two year period have been paid in full.

(d)   The Class C Holders shall be entitled to receive, when and as declared by the Board of Directors of the Corporation out of funds legally available for the purpose, annual non-cumulative dividends as hereinafter provided in this paragraph (d), payable in cash on dates to be determined by the Board of Directors of the Corporation in the following amount: a percentage, to be determined by the Board of Directors of the Corporation, of the amount by which Net Income (as defined from time to time in the Corporation's accounting policies) for any calendar year (including all capital gains and losses) exceeds a specified level of return to be determined by the Board of Directors of the Corporation on the average of the total stockholders' equity (as defined from time to time in the Corporation's accounting

policies) of the Corporation at the beginning and end of such calendar year; *provided, however,* that no such dividend shall be paid in any year to the Class C Holders, if in any such year, the Class A Holders have not been paid in full all dividends payable to them in accordance with the provisions of Articles IV.2(a) and IV.2(c) of these Articles of Incorporation.

### Section 3: Liquidation Rights

(a)  Upon dissolution of the Corporation pursuant to Chapter 11 of the Liberian Business Corporation Act, the Class A Holders shall be entitled to receive a distribution of all remaining assets of the Corporation *pari passu.*

(b)  Upon dissolution of the Corporation pursuant to Chapter 11 of the Liberian Business Corporation Act, the Class C Holders shall have no right to receive a distribution of any remaining assets of the Corporation.

### Section 4: Voting

(a)  Each Class A Holder shall be entitled to one vote per share on all matters with respect to which any Shareholder vote is solicited. Only the registered owners of Class A shares, or such owners' duly appointed proxies, shall have the right to participate in any meeting of Shareholders of the Corporation and to vote such shares; *provided, however ,* that (aa) each Class A Holder may appoint only one proxy for all Class A Shares held by it, and **(bb)** such proxy must vote all shares represented by it in the same manner; and (cc) only the following shall be eligible to hold and vote any such proxy: (1) Original Shareholders (2) members of any of the Families (as such terms are defined in Article IV.4(c) hereof), and (3) any other person approved by the holders of not less than sixty five percent (65%) of Class A Shares, excluding those shares which are the subject of such proxy.

(b)  Except as otherwise hereinafter provided all matters coming before any meeting of the Shareholders of the Corporation shall be decided by the vote of Shareholders entitled to cast sixty five percent (65%) of the total number of votes entitled to be cast at any such meeting; *provided, however,* that (aa) a unanimous (100%) vote of the Class A Holders entitled to vote shall be required to approve any and all amendments of the Articles of Incorporation and/or By-Laws of the Corporation , except as otherwise provided with respect to matters set forth in (bb) below, and **(bb)** as provided in ByeLaws Article II (4) (bb) the investment in/or commencement of any new kind of business other than that currently contemplated by the Corporation and/or the dissolution and/or the sale of all or substantially all assets or shipping assets (i.e. vessels or shares in shipowning corporations) of the Corporation, and/or the merger, consolidation or the like of the Corporation with another entity that is not a wholly owned subsidiary of the Corporation at the time of such merger , consolidation or the like shall be decided by the vote of Class A Holders entitled to cast eighty five percent (85%) of the total number of votes entitled to be cast at any such meeting. In the event that, upon the effectiveness of any proposed merger , consolidation or the like, the Corporation is not to be the surviving entity and the surviving entity is not to be an entity whose shares are publicly held, then upon the request of a dissenting Shareholder, the shareholders voting for approval of such merger, consolidation or the like, shall have the obligation, on or before the

date of such proposed transaction , to acquire the shares of such dissenting Shareholder at a price equal to 110% of the price per share payable to approving Shareholders by the entity seeking to effect such merger , consolidation or the like with the Corporation. This obligation to acquire the shares from the dissenting Shareholders shall not be in derogation of any other rights under the Liberian Business Corporation Act of such dissenting Shareholders to seek judicial relief.

(c)    For purposes of these Articles , the following terms shall have the meanings set forth below:

   (1)    "Family" – In respect of the Corporation and each of the Current Shareholders, the Original Shareholder(s), their spouses and their *"lineal descendants"* as hereinafter defined.

   (2)    "Original Shareholders" – (a) In respect of the Corporation J. E. Karastamatis, E. B. Kertsikoff, A. B. Hadjieleftheriadis , Niki Zilakos and Vassiliki Andreoulakis, and (b) in respect of LASSIA INVESTMENT COMPANY J. E. Karastamatis and his spouse and linear descendants, (c) FAMILY UNITY TRUST COMPANY E. B. Kertsikoff and his spouse and linear descendants, (d) GLAFKOS TRUST COMPANY A. B. Hadjieleftheriadis and his spouse and linear descendants, (e) ELAFONISSOS SHIPPING CORPORATION Niki Zilakos and her spouse and linear descendants and (f) KEROS SHIPPING CORPORATION Vassiliki Andreoulakis and her spouse and linear descendants.

   (3)    The term *"Lineal Descendant"* of any Original Shareholder shall mean solely and exclusively any of (i) those children of an Original Shareholder who are (A) issue surviving from a marriage of such Original Shareholder, (B) legally recognized by such Original Shareholder, or (C) legally adopted by such Original Shareholder, and (ii) any of those children of a Lineal Descendent as defined in clause (i) of this sentence who are (A) issue surviving from a marriage of such Lineal Descendent, (B) legally recognized by such Lineal Descendent, or by any controlling legal authority having jurisdiction or (C) legally adopted by such Lineal Descendent.

   (4)    "Current Shareholders" – The Liberian corporations LASSIA INVESTMENT COMPANY, GLAFKOS TRUST COMPANY, FAMILY UNITY TRUST COMPANY, ELAFONISSOS SHIPPING CORPORATION and KEROS SHIPPING CORPORATION, so long as each is a Class A Holder.

### Section 5: Reacquired Shares

In the event the Corporation shall acquire any shares of stock of any class, whether under this Section or for any other reason, upon reacquisition of such shares, such shares shall be deemed Treasury shares and be no longer outstanding nor be taken into account for the computation of the quorum and the vote needed to approve a matter presented to the Shareholders herein provided.

Said Article of the Restated Articles of Incorporation is hereby titled Article IV CLASSES OF COMMON STOCK AND PREFERRED STOCK and amended and restated to include at its end the following language:

Section 6: Preferred Shares

(i) There is hereby created a class of Preferred Stock designated as the "Preferred Shares." Any shares outstanding prior to the creation of the Preferred Shares are heretofore referred to as common shares and the holders thereof are referred to as common shareholders. For purposes of these Articles, "Preferred Shares" means the Preferred Shares of the Corporation representing Preferred Stock of the Corporation, having such rights associated with such Preferred Shares as set forth in these Articles and any equity securities issued or issuable in exchange for or with respect to such Preferred Shares (i) by way of a dividend, split or combination of shares or (ii) in connection with a reclassification, recapitalization, merger, consolidation or other reorganization.

(ii) The Preferred Shares shall consist of a single series and shall have a liquidation preference equal to USD 1,000.00 per unit of Preferred Share (the "Liquidation Preference").

(iii) No dividends shall accrue on the Preferred Shares. The Preferred Shares shall have no voting rights. The Preferred Shares shall be entitled to distributions to be made on the common shares at the times and in the aggregate amounts determined by the Board of Directors. Notwithstanding any provision to the contrary contained in these Articles, the Corporation shall not be required to make a distribution on the common stock if such distribution would violate the Liberian Business Corporation Act or any other applicable law or that certain indenture, to be dated on or about June 29, 2018, by and among the Corporation, Eletson Finance (US) LLC and Agathonissos Finance LLC, as co-issuers (together, the "Co-Issuers") and Wilmington Savings Fund Society, FSB, as trustee (the "Trustee") and collateral agent (the "Collateral Agent") (as the same may be amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "Indenture") or any Security Document (as defined in the Indenture). For so long as no acceleration of the maturity date of the Corporation's First Preferred Ship Mortgage Notes due 2022 issued pursuant to the Indenture (the "Notes") pursuant to Article VI of the Indenture due to the occurrence of an "Event of Default" under the Indenture (an "Acceleration") or Bankruptcy (as hereinafter defined) of the Corporation has occurred, no distributions shall be made on the Preferred Shares. Upon the occurrence of an Acceleration or a Bankruptcy of the Corporation, the holders of the Preferred Shares (the "Preferred Shareholders") shall be entitled to receive, with respect to their Preferred Shares, out of the assets of the Corporation legally available for distribution to its Shareholders before any payment shall be made to the holders of

common shares, a distribution in respect of such Preferred Shares in an amount per Preferred Share equal to 100% of the Liquidation Preference. If, upon an Acceleration, the assets of the Corporation available for distribution to its Shareholders are insufficient to pay the Preferred Shareholders the full Liquidation Preference on each Preferred Share to which the Preferred Shareholders are entitled, the Preferred Shareholders shall share ratably in any distribution of assets according to the respective amounts which would be payable with respect to such Preferred Shares held by them upon such distribution if all amounts payable on or with respect to such Preferred Shares were paid in full. Upon the payment of the full Liquidation Preference to which all Preferred Shares are entitled, no Preferred Shares shall be entitled to share in any further distribution of assets, all Preferred Shares shall then cease to be outstanding for any purpose hereunder and shall be cancelled automatically, without the need for any act of the Corporation or any Stockholder.

(iv)     The total number of Preferred Shares which the Corporation shall have authority to issue shall be 300,000. On the date of the issuance of the Notes, the Corporation shall issue 300,000 Preferred Shares to Wilmington Savings Fund Society, in its capacity as the Preferred Shares Agent (the "Preferred Shares Agent").

(v)     Each Preferred Share shall be identical to all other Preferred Shares in all respects and shall entitle the holder thereof to the rights, interests, preferences and privileges of a holder of Preferred Shares as set forth in these Articles.

(vi)     The Preferred Shares shall not be redeemable at the option of the Corporation or the Preferred Shareholders.

(vii)     At the time the principal amount of all of Notes issued pursuant to the Indenture has been satisfied and discharged in full, including, without limitation, (i) upon a payment in full of all outstanding Notes upon their maturity date, (ii) upon redemption of all outstanding Notes in accordance with the Indenture, (iii) upon a payment in full of all outstanding Notes upon their acceleration or (iv) upon any other satisfaction of the Corporation's obligation to pay such principal amount, in each case other than pursuant to a Bankruptcy of the Corporation, the Corporation shall mandatorily redeem all of the outstanding Preferred Shares at a price per Preferred Share of $0.01. Upon the completion of such redemption, each Preferred Share so acquired in such mandatory redemption shall be cancelled and not reissued.

(viii)     So long as any Notes are outstanding, without the prior written consent of the Trustee (acting in accordance with the Indenture):

(A)     The terms of the Preferred Shares may not be modified or amended;

(B)    No additional Preferred Shares may be issued;

(C)    No outstanding Preferred Shares may be redeemed or cancelled, except as provided in these Articles;

(D)    No amendments to these Articles that adversely affect the rights and privileges of the Preferred Shares or the Preferred Shareholders may be made;

(E)    No additional shares in the Corporation that rank pari passu or senior as to liquidation preference or dividends to the Preferred Shares may be issued; and

(F)    No common shares shall be issued other than to the common shareholders.

For purposes of this Article IV, "Bankruptcy" means, with respect to any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association, joint stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, and any governmental authority (each a "Person"), (A) if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, or (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (B) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated.

4.    Article VIII BY-LAWS of the Articles of Incorporation presently reads as follows:

"Article VIII BY-LAWS The Board of Directors as well as the Shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation."

Said Article VIII BY-LAWS of the Articles of Incorporation is hereby amended and restated in its entirety to read as follows:

"Article VIII BY-LAWS The Board of Directors as well as the shareholders of the Corporation shall have the authority to adopt, amend or repeal the bylaws of the Corporation.

Notwithstanding any contrary provision of the Articles of Incorporation, the by-laws of the Corporation as from time to time adopted, or any provision of law that otherwise so

empowers the Corporation, the Board of Directors, any officer of the Corporation or any other Person, so long as any Notes are outstanding, neither the Board of Directors, nor any officer of the Corporation nor any other Person shall be authorized or empowered on behalf of the Corporation to, nor shall they permit the Corporation to, and the Corporation shall not, without the prior unanimous written consent of the shareholders of the Corporation and the unanimous consent of the Independent Directors (as defined in Article VI), take, nor amend, modify or otherwise change the Articles of Incorporation or the by-laws of the Corporation. Any amendment, modification or other change to the Articles of Incorporation or the by-laws of the Corporation made in contravention of the foregoing shall, to the fullest extent permitted by law, be null and void *ab initio*.

5. Article VI of the Restated Articles of Incorporation presently reads as follows:

"VI. DIRECTORS      The number of directors constituting the initial Board of Directors is three (3).

Said Article VI of the Restated Articles of Incorporation is hereby amended and restated in its entirety to read as follows:

"VI. DIRECTORS      The number of directors constituting the initial Board of Directors is three (3). As long as any Notes are outstanding, the Shareholders shall cause the Corporation at all times to have at least two Independent Directors (as hereinafter defined) who will be appointed by the Shareholders other than the Preferred Shareholders. The initial Independent Directors are Jim LaChance and Scott Vogel. To the fullest extent permitted by law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Directors shall consider only the interests of the Corporation, including its creditors, in acting or otherwise voting on Material Actions (as hereinafter defined). Except for duties to the Corporation as set forth in the immediately preceding sentence (including duties to the Shareholders and the Corporation's creditors solely to the extent of their respective economic interests in the Corporation but excluding (i) all other interests of the common shareholders, (ii) the interests of other Affiliates of the Corporation, and (iii) the interests of any group of Affiliates of which the Corporation is a part), the Independent Directors shall not have any fiduciary duties to the Shareholders, any Director or any other Person bound by these Articles; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing. To the fullest extent permitted by law, an Independent Director shall not be liable to the Corporation, the Shareholders or any other Person bound by these Articles for breach of contract or breach of duties (including fiduciary duties), unless the Independent Director acted in bad faith or engaged in willful misconduct.   No resignation or removal of an Independent Director, and no appointment of a successor Independent Director, shall be effective until such successor shall have accepted his or her appointment as an Independent Director by executing a counterpart to these Articles. In the event of a vacancy in the position of Independent Directors, the remaining Independent Director (or if there is no remaining Independent Director, the common shareholders) shall, as soon as practicable, appoint a successor Independent Director. Notwithstanding anything to the contrary contained in these Articles, no Independent Director may be removed except for Cause, and no Independent Director shall be removed or replaced unless the Corporation provides the Trustee with no less than five (5) business days' prior written notice of (a) any proposed removal of such Independent Director, and (b) the identity of the proposed replacement Independent Director, together with a certification that such

replacement satisfies the requirements for an Independent Director set forth in these Articles. All right, power and authority of the Independent Directors shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in these Articles. No Independent Director shall at any time serve as trustee in bankruptcy for any affiliate of the Corporation.

For purposes of this Article VI, "Cause" means, with respect to an Independent Director, (i) acts or omissions by such Independent Director constituting fraud, dishonesty, gross negligence, willful misconduct or other deliberate action which causes injury to the Corporation or an act by such Independent Director involving moral turpitude or a serious crime, or (ii) that such Independent Director no longer meets the definition of "Independent Director" as set forth in these Articles.

For purposes of this Article VI, "Material Action" means to (i) file or consent to the filing of any bankruptcy, insolvency or reorganization petition under any applicable federal or state law relating to bankruptcy naming the Corporation as debtor or otherwise institute bankruptcy or insolvency proceedings by or against the Corporation or otherwise seek with respect to such entity relief under any laws relating to the relief from debts or the protection of debtors generally; (ii) seek or consent to the appointment of a receiver, liquidator, conservator, assignee, trustee, sequestrator, custodian or any similar official for the Corporation or all or any portion of any of its properties; (iii) make or consent to any assignment for the benefit of the Corporation's creditors; (iv) admit in writing the inability of the Corporation to pay its debts generally as they become due; (v) consent to substantive consolidation with any owner of the shares of the capital stock of the Corporation or any affiliate of such owner of capital stock; (vi) sell, exchange, lease or otherwise transfer all or substantially all of the assets of the Corporation or consolidate or merge the Corporation with or into another Person whether by means of a single transaction or a series of related transactions; (vii) amend these Articles (except as required by law) or the bylaws of the Corporation or (viii) to the fullest extent permitted by law, dissolve, liquidate or wind up the Corporation or approve of any proposal relating thereto.

For purposes of this Article VI, "Independent Director" shall mean an individual who has prior experience as an independent director, independent manager or independent member with at least three years of employment experience and which individual is duly appointed as an Independent Director and is not, and has never been, and will not while serving as Independent Director be, any of the following: (i) a member, partner, equityholder, manager, director, officer or employee of the Corporation, the common shareholders, or any of their respective equityholders or affiliates (other than as an Independent Director or independent manager of the Corporation or an affiliate of the Corporation); (ii) a creditor, supplier or service provider (including provider of professional services) to the Corporation, or any of its equityholders or affiliates (other than a nationally-recognized company that routinely provides professional independent managers or independent directors and other corporate services to the Corporation or any of its equityholders or affiliates in the ordinary course of its business); (iii) a family member of any such member, partner, equityholder, manager, director, officer, employee, creditor, supplier or service provider; or (iv) a Person that controls (whether directly, indirectly or otherwise) any of the Persons listed in clauses (i), (ii) or (iii) above. A natural person who otherwise satisfies the foregoing definition and satisfies subparagraph (i) by reason of being the independent manager or independent director of a "special purpose entity" affiliated with the Corporation shall be qualified to serve as an

Independent Director of the Corporation, provided that the fees that such individual earns from serving as independent manager or independent director of affiliates of the Corporation in any given year constitute in the aggregate less than five percent (5%) of such individual's annual income for that year.

Notwithstanding any other provision of these Articles and any provision of law that otherwise so empowers the Corporation, so long as any Notes are outstanding, no Person shall be authorized or empowered on behalf of the Corporation to, nor shall they permit the Corporation to, and the Corporation shall not, without the prior unanimous written consent of the Board of Directors, including all Independent Directors, take any Material Action, provided, however, that, the Board of Directors may not authorize the taking of any Material Action unless there are at least two Independent Directors then serving in such capacity on the Board of Directors.

Until the date that is one year and one day after the date on which the Indenture has been terminated in accordance with its terms and all Obligations (as defined in the Indenture) thereunder and under the other Security Documents (as defined in the Indenture) have been fully satisfied, the common shareholders shall not institute, or join any other Person in instituting, or authorize a trustee or other Person acting on its behalf or on behalf of others to institute, any involuntary bankruptcy, reorganization, arrangement, insolvency, liquidation or receivership proceedings against the Corporation, or, to the fullest extent permitted by law, make application for or institute or maintain any action for, the dissolution of the Corporation, in each case under the Liberian Business Corporation Act or any other applicable law.

IN WITNESS WHEREOF, the undersigned have executed these Articles of Amendment on this the 29th day of June 2018.

Signature: _[signature]_

Name: Laskarina I. Karastamati

Title:  President

Signature: _[signature]_

Name:  Emmanouil S. Andreoulakis

Title:  Secretary

ACKNOWLEDGMENT:

On this _____ day of [_____] 2018, before me personally came _____ and _____ known to me to be the individuals described in and who executed the foregoing instrument and they jointly and severally duly acknowledged to me that the execution thereof was their act and deed/the act and deed of the Corporation.

NOTARIAL SIGNATURE AND SEAL

The foregoing instrument, signed on the 29th day of June, 2018 bears the signature of **KARASTAMATI LASKARINA (LASCARINA)**, having Passport Number AN3998015 issued by GREECE on 20 JAN 2017 and expiring on 19 JAN 2022  and the signature of **ANDREOULAKIS EMMANOUIL** having Passport Number AK2528209 issued by GREECE on 29 JUL 2013 and expiring on 28 JUL 2018  known to me to be the individuals described in and who executed the foregoing instrument and who jointly and severally duly acknowledged that the execution thereof was their act and deed/the act and deed of the corporation.

Legalized on this 29th day of June, 2018.

Spyridon Stamoulis
Special Agent,
Liberia Maritime Authority



## Exhibit C

[FILED UNDER SEAL]

Exhibit D

1    other action.

2            The next bullet, Your Honor, respective professionals

3    agree not to object to other professionals seeking retention as

4    estate professionals in the capacity as debtors' counsel or

5    special counsel or committee counsel, respectively.

6            The next bullet, Your Honor, the debtors agree not to

7    object to a substantial contribution motion on behalf of the

8    petitioning creditors up to collectively 1.5 million dollars

9    with the agreement that the petitioning creditors may seek

10   additional amounts, and the debtors and the petitioning

11   creditors reserve all rights with regard to such later

12   requests.

13           Only two more bullets to go, Your Honor.

14           The next bullet, petitioning creditors will not object

15   to or assert rights of recovery against the pre-petition fees

16   of the debtors' counsel up to a two-million-dollar cap, and all

17   rights are reserved for any amounts above the two-million-

18   dollar cap.

19           And the final bullet, Your Honor, this agreement is

20   without prejudice to all causes of action, claims, and defenses

21   that the parties may assert, including without limitation the

22   debtors' ability to object to claims in the Chapter 11.

23           And that's the agreement that we would ask Your Honor

24   to so order on the record.  But of course, before doing that,

25   wanted to see if you have any questions.  Also we do have a

1  internet link, so I could email it to you right now if you

2  wanted that, Your Honor.  It's helpful to see it in writing.

3         THE COURT:  Sure.  Why don't you do that.

4         MR. ORTIZ:  Happy to.

5         THE COURT:  And while you do that, I'll allow anyone

6  else who wishes to be heard to --

7         MR. SOLOMON:  Your Honor, this is Lou Solomon, and we,

8  too, want to thank the Court for its good offices today and

9  thank you to all of your staff for putting up with us.  We did

10  try to resolve this before today.  It just wasn't possible.  So

11  thank you for the luxurious courtroom.

12         What was put onto the record is our agreement.  I

13  think I simply wanted to clarify that what might not be clear

14  to Your Honor is that the proceeding that relates to the

15  arbitration, the confirmation and vacatur proceeding --

16         THE COURT:  Um-hum.

17         MR. SOLOMON:  -- is a matter that is currently

18  pending --

19         THE COURT:  Right.

20         MR. SOLOMON:  -- in the district court before Judge

21  Limon.  And that is --

22         THE COURT:  I saw that in the papers.

23         MR. SOLOMON:  Okay.  That's what we are referring to.

24         THE COURT:  Yes.

25         MR. SOLOMON:  Thank you, Your Honor.

Exhibit E

OFFICE OF THE UNITED STATES TRUSTEE
SOUTHERN DISTRICT OF NEW YORK


IN RE:                   .    Case No. 23-10322(JPM)
                         .    Case No. 23-10323(JPM)
                         .    Case No. 23-10321(JPM)
ELETSON HOLDINGS, INC.,  .    (Jointly Administered)
ELETSON FINANCE (US) LLC,.
AGATHONISSOS FINANCE LLC,.    Office of the U.S. Trustee
                         .    201 Varick Street, Room 1006
                         .    New York, NY 10014
                         .
           Debtors.      .    November 14, 2023
. . . . . . . . . . . . . ..   9:00 a.m.



         TRANSCRIPT OF 341 MEETING OF CREDITORS
              BEFORE DANIEL RUDEWICZ, ESQ.
                OFFICE OF THE U.S. TRUSTEE




TELEPHONIC APPEARANCES:

For the Debtor:          Reed Smith LLP
                         By:  DEREK J. BAKER, ESQ.
                         599 Lexington Avenue
                         New York, NY 10022




Proceedings recorded by electronic sound recording, transcript
            produced by transcription service.
_____

             **J&J COURT TRANSCRIBERS, INC.**
                 **268 Evergreen Avenue**
              **Hamilton, New Jersey 08619**
              **E-mail:  jjcourt@jjcourt.com**

       **(609) 586-2311    Fax No. (609) 587-3599**

1    MR. RUDEWICZ:  Good morning.  Let the record reflect
2  that today is November 14th, 2023.  The time is 9 a.m.

3        This is the initial Section 341 meeting of creditors
4  in the Chapter 11 case of In re Eletson Holdings, Inc., Case
5  Number 23-10322, which is the lead case that is being jointly
6  administered with affiliated cases of debtors Eletson Finance
7  (US) LLC, that's Case Number 23-10323, and Agathonissos Finance
8  LLC, Case Number 23-10321.

9        My name is Daniel Rudewicz.  I am an attorney in the
10 office of the United States Trustee, a component of the
11 Department of Justice, and I will be the presiding officer at
12 this meeting.  The United States Trustee supervises the
13 administration of bankruptcy cases under the Bankruptcy Code.

14       The debtor is required to appear to be examined under
15 oath regarding the bankruptcy case.  The examination must be
16 and is being recorded.  All persons questioning the debtor must
17 state their names and indicate who they represent.

18       At this time I would like to swear in the debtors'
19 representative.  Is debtors' counsel on the line?

20      MR. BAKER:  Debtors' counsel is on the line.  Good
21 morning, Mr. Rudewicz.  This is Derek Baker from Reed Smith on
22 behalf of the debtors.

23       As I indicated via e-mail last week, due to -- and
24 I'll start by saying that we recognize that the meeting was
25 originally scheduled for last week, and that the office, your

1  office was kind enough to accommodate a scheduling conflict

2  because the client representative was traveling for a funeral.

3      When he returned back from his funeral travels, we

4  had advised that -- we had been advised and so we immediately

5  advised your office that the representative was not available

6  today due to previously scheduled travel and other matters, and

7  so we requested that the matter be continued again until

8  November 29th and 30th -- or 30th, excuse me, and for that

9  reason the representative is not available.

10      MR. RUDEWICZ:  Okay.  We will continue this meeting

11  until Tuesday, November 21st at 9 a.m.  Please ensure the

12  representative is available at this time.

13      If the representative cannot attend these meetings or

14  timely file reports, such as those required by Rule 2015.3, we

15  will consider whether it is advisable to appointed a Chapter 11

16  Trustee.

17      This meeting again is continued until Tuesday,

18  November 21st at 9 a.m.  Thank you.  The recording is being

19  stopped --

20      MR. BAKER:  I would --

21      MR. RUDEWICZ:  -- now.

22                  *  *  *  *  *

23

24

25

**C E R T I F I C A T I O N**

I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.    DATE:  November 16, 2023

Exhibit F

OFFICE OF THE UNITED STATES TRUSTEE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | . | Case No. 23-10322(JPM) |
| | . | Case No. 23-10323(JPM) |
| | . | Case No. 23-10321(JPM) |
| ELETSON HOLDINGS, INC., | . | (Jointly Administered) |
| ELETSON FINANCE (US) LLC, | . | |
| AGATHONISSOS FINANCE LLC, | . | Office of the U.S. Trustee |
| | . | 201 Varick Street, Room 1006 |
| | . | New York, NY 10014 |
| | . | |
| Debtors. | . | November 21, 2023 |
| . . . . . . . . . . . . . . . | | 9:02 a.m. |


TRANSCRIPT OF 341 MEETING OF CREDITORS
BEFORE DANIEL RUDEWICZ, ESQ.
OFFICE OF THE U.S. TRUSTEE


TELEPHONIC APPEARANCES:

For the Debtor:              Reed Smith LLP
                             By:  DEREK J. BAKER, ESQ.
                             599 Lexington Avenue
                             New York, NY 10022

For Pach Shemen:             Togut, Segal & Segal LLP
                             By:  JARED C. BORRIELLO, ESQ.
                             One Penn Plaza, Suite 3335
                             New York, NY 10119

For the Official
Committee on Secured
Creditors:                   Dechert, LLP
                             By:  DAVID HERMAN, ESQ.
                             Three Bryant Park
                             1095 Avenue of the Americas
                             New York, NY 10036-6797


Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

1 Q    Yeah.  I mean, who makes the decisions for each of these

2 subsidiaries?  Who's directing their operations?  You said you

3 have to look at the consolidated picture, so I'm just trying to

4 understand who is, you know, directing the inter-company

5 transfers and the operation of each of these subsidiaries?

6 A    Well, there's, you know, these businesses have their own

7 Boards and, you know, managers.  Effectively, it's the same

8 group of people.  I mean, you know, yeah, I think -- I mean,

9 again, the Holdings is a consolidated, let's say, construct.

10 And so I -- yeah, I don't understand the question.  A lot of

11 them is, I mean, same people basically.

12 Q    Okay.  I have no more questions at the moment.

13         MR. RUDEWICZ:    Thank you.  Are there any other

14 creditors on the line that wish to ask questions of the

15 Debtors' representative at this time?

16         MR. HERMAN:  Mr. Rudewicz, this is David Herman from

17 Dechert, proposed counsel for the Official Committee on Secured

18 Creditors.  I have some questions.

19         MR. RUDEWICZ:  Go ahead, Mr. Herman.

20         MR. HERMAN:  Thank you.

21                         EXAMINATION

22 BY MR. HERMAN:

23 Q    Hi, Mr. Kertsikoff.  Nice to speak with you again.  I

24 want to go back to something that you said in the beginning of

25 this meeting.  You indicated that Holdings has access to assets

1  listed at about 25 million?

2  A    I (indiscernible) few minutes ago.

3  Q    And forgive me.  I'm not intending to repeat myself.

4  It's just, you know, these were filed late last night and I'm

5  doing my best to -- and just follow.  So this is not consistent

6  with the Rider to the Schedules.  So how are we to understand

7  the inconsistency?

8           MR. BAKER:  Asked and answered.

9  A    I believe I've answered.  There's no inconsistency.  I

10 think I explained that previous -- in the previous minutes.

11 Q    Okay.  And (indiscernible) said it's book value versus

12 market value?

13 A    I believe I already answered this question.  So --

14 Q    I just want to make sure it's clear because the Schedules

15 indicate zero value in subsidiaries and we got a Monthly

16 Operating Report late last night that states something

17 different.  So this is very important for creditors to

18 understand.  So give me, if you think it's been answered

19 already, but I just want to make sure we're very clear on why

20 the apparent discrepancy?

21 A    Yeah, this is, as I said, first of all, I think I did

22 refer to book values and, you know, so it is -- yeah, this is,

23 there's no inconsistency, as far as we're concerned.  So this

24 is the appropriate presentation, you know.  Again, we report US

25 GAAP, we record our books and records with US GAAP so we

Exhibit G

| | |
|---|---|
| **From:** | Herman, David |
| **Sent:** | Monday, November 27, 2023 11:48 AM |
| **To:** | Baker, Derek J.; Pille, Ann E.; Osei-Bonsu, Derek M. |
| **Cc:** | Zide, Stephen; Haney, Owen Sargent |
| **Subject:** | FW: Eletson - 2015.3 Statement |
| **Attachments:** | 2023.11.20 Eletson Statement re Gas.pdf |

Derek:

I am following up on my November 20 email below regarding the Debtors' assertion that they are unable to file a 2015.3 statement concerning Eletson Gas.  We have not received a response from you.  As you know, Levona has filed a statement on the docket indicating that it does not object to Eletson Holdings filing a 2015.3 for Eletson Gas.  Please let us know how the Debtors plan to proceed.  Is there concern about filing that information publicly?  If so, we would appreciate your letting us know what the concern is so that the Committee can assess the situation.  We would also ask that the Debtors provide the information to the Committee on a confidential basis while the issue of public disclosure is addressed.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

**From:** Herman, David
**Sent:** Monday, November 20, 2023 8:04 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>
**Subject:** Eletson - 2015.3 Statement

Derek:

We have reviewed the attached document, which states that the Debtors will not disclose in the first 2015.3 statement "any financial information related to Eletson Gas."  We are surprised you did not mention this issue on our call earlier when we asked about the Rule 2015.3 reports.  What actions has Levona taken to prevent the Debtors from making those disclosures?  Have the Debtors reached out to Levona to obtain Levona's consent to disclose the information (assuming such consent were necessary)?  If the issue is that Levona claims an interest in Eletson Gas, did the Debtors notify Levona of their intent to file a 2015.3 for gas?

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

Exhibit H

OFFICE OF THE UNITED STATES TRUSTEE
SOUTHERN DISTRICT OF NEW YORK


IN RE:                    .    Case No. 23-10322(JPM)
                          .    Case No. 23-10323(JPM)
                          .    Case No. 23-10321(JPM)
ELETSON HOLDINGS, INC., .    (Jointly Administered)
ELETSON FINANCE (US) LLC,.
AGATHONISSOS FINANCE LLC,.    Office of the U.S. Trustee
                          .    201 Varick Street, Room 1006
                          .    New York, NY 10014
                          .
            Debtors.      .    January 5, 2024
. . . . . . . . . . . . ..    9:00 a.m.


          TRANSCRIPT OF 341 MEETING OF CREDITORS
              BEFORE DANIEL RUDEWICZ, ESQ.
                OFFICE OF THE U.S. TRUSTEE


TELEPHONIC APPEARANCES:

For the Debtor:           Reed Smith LLP
                          By:  DEREK J. BAKER, ESQ.
                          599 Lexington Avenue
                          New York, NY 10022

For Pach Shemen:          Togut, Segal & Segal LLP
                          By:  BRIAN F. SHAUGHNESSY, ESQ.
                          One Penn Plaza, Suite 3335
                          New York, NY 10119

For the Official
Committee on Secured
Creditors:                Dechert, LLP
                          By:  DAVID HERMAN, ESQ.
                          Three Bryant Park
                          1095 Avenue of the Americas
                          New York, NY 10036-6797



Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
_____

          **J&J COURT TRANSCRIBERS, INC.**
              **268 Evergreen Avenue**
          **Hamilton, New Jersey 08619**
          **E-mail:  jjcourt@jjcourt.com**

        **(609) 586-2311    Fax No. (609) 587-3599**

 1  know, exploring the options we have so that we can formulate,

 2  present and confirm the plan organization.  We know the

 3  deadlines, so we believe we'll be ready by the 24th or so to

 4  present that plan and hopefully confirm it.  So, we're working

 5  around the clock for that.

 6  Q    Okay.  And what work have the debtors done since that

 7  November 14th meeting to progress that process?

 8  A    Well, I think this is a -- this is an internal process

 9  that we're doing and I think -- again, don't take me wrong.  I

10  don't think I need to or have to expose that work, but we're

11  basically very busy working on that -- on that basis.  You

12  know, monetize -- you know, we're there to -- you know, we

13  continue to evaluate the monetization of the assets, debtor

14  assets.

15  Q    Meaning in share holdings?

16  A    As well as what Mr. Rudewicz mentioned before, litigation

17  claims.  So, we'll be able to present the proposal by the

18  due -- by the due time.

19  Q    And have the debtors done any negotiations with their

20  creditors concerning the plan?

21  A    No, I don't believe so.  Well, let me put it this way.

22  With Pach Shemen there's no -- no, there's no -- there's no

23  negotiations.

24  Q    And is there any further information that the debtor needs

25  in order to formulate the plan?

1  Q    Understood.  But are you saying --

2  A    Okay.  But in the -- in -- it happened -- sorry.  I'm

3  sorry.  I'm sorry.  It happened in, you know, summer of --

4  summer of '22.

5  Q    Understand.  And it also -- so are you telling me that

6  corp has made payments both before the conversion, after the

7  conversion?

8  A    That's correct.  For -- for the -- again, for the

9  arbitration.

10 Q    Right.  Including for the District Court proceeding?

11 A    Yes, that -- I'm not sure.  I mean, these are -- to be

12 honest, the two big more recent invoices I'm not familiar

13 exactly with the breakdown, but I know we've paid -- you know,

14 corp has paid monies post-conversion for the arbitration.  I

15 can't tell you the exact invoice, but --

16 Q    Got it.  Okay.  All right.  Let me -- I have just one

17 other -- one other subject which has to do with other potential

18 sources of financial support.  At the oral argument that was

19 held on Tuesday in the District Court the debtor's counsel, Lou

20 Solomon, said the following, which is at Page 129 of the

21 Transcript, Line 4.  He's talking about the alleged transfer of

22 the preferred shares to the nominees and he said the following:

23      "The company needed money.  The nominees were willing

24 to put up money.  Gas couldn't put up money because Gas was

25 being strangled.  Gas couldn't pay even its legal fees.  Gas

1   had to go outside of Gas in order to get its own legal fee pro

2   bono (inaudible)."  My question for you is, have the nominees

3   provided money to the debtors for their subsidiaries?

4   A     How would I know --

5          MR. BAKER:  This is Derek -- this is Derek --

6          THE WITNESS:  But I know --

7          MR. BAKER:  I'm going to -- I'm going to simply note

8   that I don't know what any of that has to do with the debtors

9   other than whether the nominees paid money to the debtors.  You

10  can answer that question, if you know.  I don't know if any of

11  that is relevant or even appropriate in connection with

12  anything outside of that for the 341 meeting.  And I'll note

13  that Mr. Kertsikoff isn't here in capacity as a representative

14  of the nominee, nor does he have counsel, nor do the nominees

15  have counsel present, so I'm not sure that that's an

16  appropriate question of an unrepresented party.

17         MR. HERMAN:  Okay.  Let me just say that I completely

18  disagree with that.  The issue of whether there is that versus

19  funds for the debtors or their wholly and subsidiaries is a

20  very important financial issue for these cases.

21  Q     And so I'm going to ask a question and I would like an

22  answer and my question is, have the nominees provided any money

23  to the debtors or their subsidiaries?

24         MR. BAKER:  And I'll make the same comments that I

25  made and, Mr. Kertsikoff, I give you that same instruction.

1  A     Yes, so the nominees have not paid, nor has there been --

2  you know, because there are allegations in some of the other

3  statements, motions, I don't know the legal anyway, but money

4  that has flowed from Gas, I mean, that's totally false and

5  incorrect.  So, there's been no transactions -- you know, money

6  flowing in and out of the nominees to the debtors or Gas.

7  Q     So, the nominee has not paid legal fees of Gas, is that

8  right?

9  A     State the question again.  The nominees?

10 Q     The -- have the nominees paid any of Gas' legal fees?

11 A     No.

12 Q     And have they paid any corp's legal fees?

13 A     Any of Holdings?

14 Q     Let's start with Holdings.  Have the nominees paid any of

15 Holdings' legal fees?

16 A     No.

17 Q     And have the nominees paid any of Eletson Corporation's

18 legal fees?

19        MR. BAKER:  Again, same comment, Mr. Kertsikoff.

20 A     No, is the answer.

21 Q     Okay.  I think this is clear, but just to make sure it's

22 clear.  The nominees have not provided any money whatsoever to

23 the debtors or their subsidiaries to this point, is that right?

24 A     Correct.

25        MR. HERMAN:  Mr. Rudewicz, I think that's all I have.

1  Committee.

2          MR. BAKER:  And, again, there's been no 2018 filed.

3                          EXAMINATION

4  BY MR. SHAUGHNESSY:

5  Q    Mr. Kertsikoff, we've been on this document, Docket 340.

6  I'd like to ask you some more questions about that, the

7  Schedule AB that was filed on December 29, 2023.  Do you still

8  have that in front of you?

9  A    Yes.

10 Q    So, let's go back to Part 4, which is on Page 2 of 12 of

11 that document.

12 A    Yeah.

13 Q    And on Section 15 where it says, "The valuation method

14 used for current value..." and it's listed as market value, do

15 you see that?

16 A    Yeah.

17 Q    And I just want to be clear for the record.  The term

18 "market value" should be book value, is that right, given your

19 testimony and the note at the end of this document?

20 A    Look, I -- look, this is your job, meaning -- I'm saying

21 it in a good way.  You know, you do this all the time.  You

22 know, you are involved and, you know, that's your specialty to

23 do these forms.  This is the first time we do this form.  Of

24 course, we are -- you know, we have advisors.

25          All I know is that, you know, the market value as we

1  put in the forms is, you know, unknown, is zero.  And, however,

2  the ryders and the statements of the underlying subsidiaries,

3  you know, have book value entries as figures GAAP.  So, you

4  know -- so that's -- that's my statement.

5  Q    Okay.  So, it should say "book value" --

6  A    And then we have -- and then -- and then sorry.  And then

7  the professionals -- again, you know, the professionals working

8  for the subs, you know, Holdings doesn't have -- have put --

9  you know, again, with the help of advisors, you know, we have

10 those notes -- global notes that I think are -- are, you know,

11 to the -- to the specialists, let's say, or not necessarily --

12 so those specialties, you know, are self-explanatory.

13       MR. SHAUGHNESSY:  So, given that the term "market

14 value" is actually incorrect, we request that the debtors

15 correct this statement so that it reflects what is stated at

16 the end of this document.  We also request that the debtors

17 review of all their statements that they have filed, make sure

18 that they are correct.  We shouldn't have to conduct a 341

19 meeting based on incorrect --

20                      (Multiple speakers)

21       THE WITNESS:  They're totally -- they're totally --

22       MR. RUDEWICZ:  Can I --

23       THE WITNESS:  -- correct, Mr. Shaughnessy.

24       MR. RUDEWICZ:  Guys, guys --

25       THE WITNESS:  They're 100 percent -- they're 100

Exhibit I

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

ELETSON HOLDINGS INC.,                    Main Case No.

          Debtors.                        23-10322-jpm

- - - - - - - - - - - - - - - - - - - -x

            United States Bankruptcy Court

            One Bowling Green

            New York, New York

            November 8, 2023

            10:54 AM

B E F O R E:

HON. JOHN P. MASTANDO, III

U.S. BANKRUPTCY JUDGE

ECRO:  MARIA

1   available for parties to understand the nature of this case,

2   while the Debtors continue to explore the value of their assets

3   for the purposes of formulating, preparing, and presenting a

4   plan for confirmation.

5           MR. ZIDE:  Your Honor, if I may respond briefly.

6           THE COURT:  Please.

7           MR. ZIDE:  Stephen Zide from Dechert on behalf of the

8   Official Committee of Unsecured Creditors.

9           Just two points I want to make.  Number one, waiting

10  for a plan here to pay all administrative cases and

11  administrative claims in these cases, it really is no plan at

12  all.  And in my perspective, we're talking about contingent

13  litigation claims that relying on -- there is not only going to

14  be administrative expenses for the committee, there's going to

15  be administrative expenses for Debtors' counsel.  There's also

16  going to be U.S. Trustee fees.  How do they plan to pay those

17  U.S. Trustee's fees as this case goes on?

18          And the comment that Mr. Baker made about other cases,

19  where there's just a hold co, with all due respect, in all

20  those other cases, the Debtors have their act together and they

21  file and they respect corporate formalities and they have

22  intercompany relationships.  They have cash management systems.

23  They have cash flowing through the system.  They disclose those

24  procedures.  They disclose those processes.  They make those

25  cash flows understood to their creditors.  There's nothing been

Exhibit J

| | |
|---|---|
| **From:** | Baker, Derek J. <DBaker@ReedSmith.com> |
| **Sent:** | Monday, November 27, 2023 9:03 AM |
| **To:** | Herman, David; Pille, Ann E.; Osei-Bonsu, Derek M. |
| **Cc:** | Zide, Stephen; Haney, Owen Sargent |
| **Subject:** | RE: Eletson - Administrative Expenses |

[EXTERNAL EMAIL]

You have repeatedly misstated Eletson Holdings, Inc.'s asset position despite the statement being made on the record at the November hearing, the several emails exchanged with you and the conversations we had and at the 341 Meeting.

For the last time - there ARE assets – the assets are the ownership in the various subsidiaries and the various litigations listed on the scheduled (and others which are ongoing).

Asking us how we value those or how we intend to convert them to cash (despite the fact that the Debtors have absolutely no cash need at this time – and you have identified none despite our request for your to do so) is quintessential work product.

Your strained suggestions regarding the Protective Order – despite your clear knowledge that "representatives" are require to sign it (not just counsel) and your confirmation below that at least one of your committee member has not done so  - confirms your violations of it.

If the Committee wishes to engage in good faith – it should join the Debtors in seeking the immediate cessation of stay violations by Levona and your client Murchinson.  Your actions to date – and your refusal to act against Murchinson – shows Dechert's true loyalties and intentions.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

---

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Sunday, November 26, 2023 5:46 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

---

**External E-Mail - FROM david.herman@dechert.com <david.herman@dechert.com>**

---

Derek:

It is not clear what facts you contend I have misstated in my email simply asking you to confirm the Debtors' position expressed to us on our call. Nowhere in your very long email can I find an answer to the one question I asked or the identification of anything in my last email that was misstated.

All we have been asking is what assets the Debtors have and how they intend to fund administrative expenses. Those are simple questions that I think are very appropriate for an official committee to ask, particularly given that the Debtors have no cash and their schedules indicate that the value of the their interests in their subsidiaries is zero. We are not asking for litigation strategy or work product. If the Debtors' position is that they are not able or not willing to provide the Committee with further information at this stage, we accept that that is the Debtors' position and will proceeding accordingly. If the Debtors are willing to provide any additional information, please let us know what information they will provide. As of now, you have provided the Committee with nothing other than late and deficient public disclosures and references to documents you produced in connection with the motion to dismiss months ago.

Regarding your other comments:
- The transcript of the 341 meeting will speak for itself. The Debtors' representative asserted that the Debtors have sufficient assets to pay allowed claims. I asked questions about that assertion and about the Debtors' access to cash, both of which topics are plainly related to the Debtors' financial position, and the representative declined to supply further information.
- The Committee and Dechert have at all times complied with the protective order. Two of the Committee members executed individual joinders prior to the Committee's formation, and Dechert executed an additional joinder on behalf of the Committee after receiving written confirmation from the third member of its agreement to be bound by the protective order.
- I have no idea what you think the Committee has done to interfere with the Debtors' formulation of a plan.

The Committee has been seeking to engage with the Debtors on these very basic subjects in good faith. It is disappointing that those efforts have been met with such hostility.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

---

**From:** Baker, Derek J. <DBaker@ReedSmith.com>
**Sent:** Wednesday, November 22, 2023 5:34 PM
**To:** Herman, David <David.Herman@dechert.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

[EXTERNAL EMAIL]

David – once again you misstate the facts. This is now the third or fourth time you have done so. These misstatements – which appear to be quite purposeful on your part – are the very reason why the Debtors are unwilling to provide the committee non-public information.

Let us set the record straight. You stated that the Debtors have no assets. We have refuted that on the Debtors' schedules, on the record before the Court, during the 341 meeting held yesterday as well as in several conversations with you. In fact, in the discovery on the Motion to Dismiss, you had access to detailed consolidated financial which confirmed the value of the Debtors' overall enterprise. Importantly, the claims of Holdings are structurally subordinated, such that the enterprise value of various subsidiaries must be (and the Debtors believe are able to be) monetized to return value to Holdings creditors. This is not new.

As we noted for you, not only do the Debtors have assets, Debtors believe those assets (i.e., the shareholder value of subsidiaries and certain litigation claims) can be monetized in advance of the effective date of the Debtors plan. What you have asked – and the Debtors are not prepared to disclose to you – is how the Debtors' plan to seek to monetize value those assets. The rationale for that is quite plain. The Debtors continue to be extremely concerned about the improper actions undertaken by specific creditors – including members of the committee (and those directing the actions of such members) – as well as their counsel (including Dechert) in obtaining information from the Debtors used to the detriment of the Debtors and their respective estates. There is no basis – nor obligation – for these Debtors to disclose their valuation or litigation strategies (to anyone) at this time. That is plain work product. The Debtors are not required, nor can be compelled to, provide such work product. At such time as the Debtors seek to propose a plan of reorganization, and establish such plan's feasibility, the Debtors will engage in the appropriate disclosure process and (if appropriate) consult with the committee about that process.

During the November 8 hearing, your office raised a question about the Debtor's ability to satisfy administrative claims. We addressed that with the court and re-made that point to you numerous times via email and through the conversation we had prior to the 341 meeting. Notwithstanding that information, you used the 341 meeting as an opportunity to improperly seek a deposition on the topics which we told you were subject to ongoing consideration and analysis by the Debtors at the direction of counsel. That shows the impropriety of your actions. We highlighted these very same issues (and its evaluative process) at length for the court. We noted: "Debtors understand that in order to confirm their plan, they will need to satisfy all administrative claims in full on the effective date. And the Debtors are working towards that process in terms of identifying its assets that are appropriate for monetization in order to do that." 58:4-9. The Court simply asked us to "to continue the discussions with the committee and provide an update to the Court the next time we're together, which I think is on December 4th." 60:9-14. The Debtor has done that. The fact that you "don't like the answers" does not change the fact that Debtor has engaged with the committee on the Debtors intention to resolve properly asserted claims through the monetization of the Debtors assets through their plan pursuant to the provisions of the Bankruptcy Code. We asked the Committee to identify a single claim or a single basis for the Debtor to be compelled to pay claims in advance of the effective date of a plan. You have not provided us a singular contrary citation, that would require the Debtors to make payment prior to the effective date. Therefore, there is no need – or requirement – to provide the committee a roadmap of the Debtors' valuation strategy in advance of proposing a plan.

Your continuing attempts to interfere with the Debtors opportunity to formulate, present, and confirm a plan of reorganization during its exclusivity period is yet another of your violations of the sprit and the terms of the stipulation agreed to on September 6. Nevertheless, we wish to reiterate that the Debtors are continuing to explore the valuation of all appropriate assets (both their shareholdings and their potential litigation claims), for the appropriate monetization in accordance with a proposed plan of reorganization, to return value to appropriately presented and allowed administrative and another creditors.

Finally, in response to your suggestion that the Debtors are "obligated" to provide information to the Committee pursuant to section 1103(c), we note that such subsection merely identifies what the committee "may" do. It does not direct the Debtors to perform any actions. Rather, only section 1103(d) relates to the Debtors and it only requires the Debtor to meet with the committee "to transact business which may be necessary and proper." The Debtors are, and remain willing to interface with the committee and their appropriately retained

professionals at the appropriate time on business that the Debtors deem necessary and proper. The Committee asking the Debtors to disclose their work product is neither "necessary" nor "proper". The Debtors continue to operate within their exclusivity and will engage with the Committee once the Debtors have a plan, which would require such engagement on necessary business at that time.

We note your purported delivery of the "joiner" to the protective order, asserting that entitles the Committee confidential information. First, this is the first time this "joiner" was provided to us and the timing is suspect at best. Second, we note that the protective order only relates to materials produced in connection with discovery. There is no pending discovery, nor has the Committee sought or entitled to seek any, so the joiner does not "require" the Debtors to do anything. Third, the "parties" and professionals who previously signed the protective order and obtained information in connection with the discovery on the motion to dismiss, have already acted in contravention of the protective order. In particular, Dechert received information in connection with its role representing the Trustee. Dechert utilized such confidential information, in violation of the protective order for a purported "new" client – the committee – by sharing it with members who are not signatories to the protective order and attaching it to pleadings in the case. This action shows that various parties and professionals continue to ignore the appropriate protections outlined by the protective order. These acts all confirm that the protective order – and any purported joiner - are not a sufficient protection for the Debtors. When it is appropriate for the Debtors to disclose confidential information to the committee, the Debtors will propose a traditional form of confidentiality agreement at that time.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

---

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Tuesday, November 21, 2023 6:48 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

External E-Mail - FROM david.herman@dechert.com <david.herman@dechert.com>

---

Derek:

Following up on our call yesterday, we understand the Debtors' position to be that they will not be providing the Committee with any further information in response to our questions concerning the assets that may be available to fund administrative expenses (or recoveries on account of allowed claims) because (a) Dechert's representation of the

Committee has not yet been approved by the Court; and (b) there is no NDA in place with the Committee.  We heard both of these things for the first time on our call yesterday, so if we have misunderstood your position, please clarify.

We encourage you to rethink that position.  There is a Stipulated Confidentiality Agreement and Protective Order in place (ECF 37), which Dechert has signed on behalf of the Committee (see attached), and each committee member has agreed in writing to be bound by such order.  Although Dechert's retention application remains pending, the Committee has been duly appointed by the Office of the United States Trustee, and it has selected Dechert as its proposed counsel.  At the hearing on November 8, 2023, in response to concerns we raised about a lack of a plan to fund administrative expenses, the Court specifically instructed "the Debtors' counsel to continue the discussions with the committee and provide an update to the Court next time we're together," and "I trust that counsel will continue the discussions and have . . . a meaningful dialog."  (Nov. 8 Hr'g Tr. at 60:9-14.)  I will also refer you to Section 1103(c) of the Bankruptcy Code concerning the powers and duties of the Committee, which contemplates that a debtor-and-possession and an official committee will have that very dialog.  We would appreciate the Debtors' cooperation with the Committee's efforts to fulfill its statutory obligations.

Again, if we have misunderstood your position, please clarify it for us.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

**From:** Baker, Derek J. <DBaker@ReedSmith.com>
**Sent:** Monday, November 20, 2023 1:14 PM
**To:** Herman, David <David.Herman@dechert.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

[EXTERNAL EMAIL]

Sure – right after the committee sends me the budget I asked for 5 days ago.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Monday, November 20, 2023 1:11 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

**External E-Mail - FROM david.herman@dechert.com <david.herman@dechert.com>**

That works for us.  I'll send a dial-in.  We would appreciate an answer to my question from yesterday in advance of the call.

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

**From:** Baker, Derek J. <DBaker@ReedSmith.com>
**Sent:** Monday, November 20, 2023 1:03 PM
**To:** Herman, David <David.Herman@dechert.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

[EXTERNAL EMAIL]

I can be available at 2

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Sunday, November 19, 2023 9:04 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

Derek:

Following up, could we please schedule a call for tomorrow to discuss the funding of administrative expenses?  We are available 10:30-11:30, 1:30-2:30, or after 5:30 NY time.

In advance of that call, would you please advise what assets the Debtors believe will be "monetized by the effective date of its plan to cover all properly presented and approved administrative expenses" (as stated in your November 15 email below)?

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

---

**From:** Herman, David
**Sent:** Thursday, November 16, 2023 6:05 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

Derek:

We are aware of the difference between assets and cash.  Let's have a call to discuss.  We would interested to understand better how you think the Debtors can be in a position to pay all their approved administrative expenses on the effective date of a plan.  Those times on Friday do not work for us, but we could talk anytime after 11:30am ET on Monday.  Please let us know what works for you.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

**From:** Baker, Derek J. <<DBaker@ReedSmith.com>>
**Sent:** Wednesday, November 15, 2023 4:39 PM
**To:** Herman, David <<David.Herman@dechert.com>>; Pille, Ann E. <<APille@ReedSmith.com>>; Osei-Bonsu, Derek M. <<DOsei-Bonsu@reedsmith.com>>
**Cc:** Zide, Stephen <<Stephen.Zide@dechert.com>>; Haney, Owen Sargent <<Owen.Haney@dechert.com>>
**Subject:** RE: Eletson - Administrative Expenses

[EXTERNAL EMAIL]

You're (again) misconstruing the scope of the Debtor's assets and its chapter 11 payment obligations with "cash" which are two entirely different things. The Bankruptcy Code does not require – and Debtor does not have - any "current" payment obligations. There are no orders compelling payment. The Debtors are properly accruing for any properly allowed and allowable administrative expenses. All approved administrative chapter 11 expenses are required to be and will be paid on the effective date of the Debtors' plan. The Debtors believe it has more that sufficient assets which will be monetized by the effective date of its plan to cover all properly presented and approved administrative expenses.

If the Committee wishes to present a budget of what the Committee anticipates to incur (without prejudice to the Debtors' right to object to the propriety of professionals and whether any proposed fees are necessary, valuable, beneficial and/or reasonably incurred and commensurate with the tasks to be undertaken) we'll be happy to receive/review it.

I am not available tomorrow due to a court appearance in another matter. I can be available Friday between 1-3 ET and will be happy to review whatever budget the committee would like to provide.



**Derek J. Baker**

<dbaker@reedsmith.com>
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
**reedsmith.com**

**From:** Herman, David <<David.Herman@dechert.com>>
**Sent:** Wednesday, November 15, 2023 4:05 PM
**To:** Pille, Ann E. <<APille@ReedSmith.com>>; Baker, Derek J. <<DBaker@ReedSmith.com>>; Osei-Bonsu, Derek M. <<DOsei-Bonsu@reedsmith.com>>
**Cc:** Zide, Stephen <<Stephen.Zide@dechert.com>>; Haney, Owen Sargent <<Owen.Haney@dechert.com>>
**Subject:** RE: Eletson - Administrative Expenses

External E-Mail - FROM david.herman@dechert.com <<david.herman@dechert.com>>


Ann:

It would be helpful if not every email from you and Derek included some sort of personal disparagement. We are trying to engage with you in good faith.

We do not think it is an answer to say retention applications have not yet been filed or granted.  The Debtors and the Committee are both incurring administrative expenses, subject of course to later approval of retention and fee applications.  There is also, as you mentioned, an already-approved $1.5 million fee for Togut.  If Eletson Corp. is part of the source of funding for the Debtors' administrative expenses, we would like to understand better the terms of that.  We are available for a call the rest of today or tomorrow 11:30-12, 2:30-3 or after 4 (NY time).  Please let us know what works for you.

Thanks,
David


**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

---

**From:** Pille, Ann E. <APille@ReedSmith.com>
**Sent:** Wednesday, November 15, 2023 3:39 PM
**To:** Herman, David <David.Herman@dechert.com>; Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

[EXTERNAL EMAIL]

David,

I honestly can't tell if you're being difficult for the sake of being difficult, or if there's something unclear in what we've previously told you.   The attorneys' fees incurred in the district court confirmation proceeding have been, and will continue to be, paid by Eletson Corporation – a non-debtor.   I'm also unclear what you're referring to when you refer to fees incurred "elsewhere."   Can you clarify?

As to your other points, since these entities are not operating entities, I would think that the US Trustee fees will be de minimis, but let me know if you disagree.   The same is anticipated to be true for "operational" expenses for the debtors since they have no employees, no real property leases, no utility bills, etc.  Again, if I'm missing, something please let me know.

As of today, the only retention application that has been filed is for Reed Smith to act as counsel to the Debtors.   That, as you know, has not been granted.   No application has been filed on behalf of the committee, nor have any non-attorney professionals sought to be retained.    As such, it seems somewhat premature to discuss budgets.  That said, if you have thoughts or ideas, we're more than happy to hear them.

The same is true for any alternative fee arrangements or potential firms you think would be good candidates for the litigation claims.  Although, candidly, given your firm's representation of Murchinson – an anticipated target of at least some of those claims – we're unlikely to take Dechert's recommendations on those points.

Given this, do you want to push forward with a call?  We're happy to do so, but also want to avoid additional needless inefficiencies.

-Ann


**Ann Pille**

apille@reedsmith.com
D: +1 312-207-3870
M: +1 312-399-0230

**Reed Smith**
10 South Wacker Drive
Chicago, IL 60606-7507
T: +1 312 207 1000
F: +1 312 207 6400
**reedsmith.com**

---

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Wednesday, November 15, 2023 2:00 PM
**To:** Pille, Ann E. <APille@ReedSmith.com>; Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

External E-Mail - FROM david.herman@dechert.com <david.herman@dechert.com>

---

Ann:

In addition to the approved $1.5 million Togut fee, other administrative expenses include (a) fees and expenses of the Debtors' professionals, including in the chapter 11 case, in the district court, and elsewhere; (b) fees and expenses of Committee professionals; (c) U.S. Trustee fees; (d) any administrative expenses that may be submitted by the bar date, to the extent they are allowed; and (e) the costs, if any, of operating the debtors during the case.  There may well be others.  If the plan is to seek to liquidate and monetize illiquid assets, we need to discuss how those efforts are to be funded, with what budget, and on what schedule.  Please let us know when you are available to discuss.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

---

**From:** Pille, Ann E. <APille@ReedSmith.com>
**Sent:** Wednesday, November 15, 2023 2:39 PM
**To:** Herman, David <David.Herman@dechert.com>; Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - Administrative Expenses

[EXTERNAL EMAIL]

David,

Can you clarify your question so we can best address your concern?  You have the schedules, and are aware of the assets that may serve as a basis for payment of those administrative expenses.   As Derek explained at the hearing, many of those assets have values that are unknown or unliquidated.   Since there's no way to express that on the form schedules, they are represented as having a value of "$0.00," but that does not mean they don't have value.   That said, they may take time to liquidate and monetize.

At the point, the only approved administrative expense is the $1.5 million claim owed to Togut.    Is that the administrative expense claim you wish to discuss, or are there others?


-Ann


**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Wednesday, November 15, 2023 12:20 PM
**To:** Pille, Ann E. <APille@ReedSmith.com>; Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** Eletson - Administrative Expenses

**External E-Mail - FROM david.herman@dechert.com <david.herman@dechert.com>**


Derek:


We would like to have a call with you to discuss the administrative expenses of these cases and the Debtors' plan for addressing them.  As we noted in prior emails and at the most recent hearing, the Committee is very concerned about the lack of funds available to cover the expenses associated with the chapter 11 cases.


Please let us know when you are available this afternoon.


Thanks,

David


**David A. Herman**
Partner


**Dechert LLP**
+1 212 649 8728 Direct

+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

Exhibit K

[FILED UNDER SEAL]

Exhibit L

**Wade, Karli**

---

| | |
|---|---|
| **From:** | Herman, David |
| **Sent:** | Wednesday, December 13, 2023 4:01 PM |
| **To:** | Baker, Derek J.; Pille, Ann E.; Osei-Bonsu, Derek M. |
| **Cc:** | Zide, Stephen; Haney, Owen Sargent |
| **Subject:** | Eletson - FTI |
| **Attachments:** | Eletson - FTI Joinder to Confi Order (fully executed).pdf |

Derek and Ann:

The Committee has selected FTI as its financial advisor. Attached for your files is FTI's joinder to the protective order. The Committee intends to file a retention application for FTI in due course.

FTI has begun the process of conducting financial and operational diligence concerning the Debtors' businesses. Please let us know if there is a point of contact at the company with whom FTI can be in touch with diligence questions.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

Exhibit M



Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**STEPHEN ZIDE**

Stephen.Zide@dechert.com
+1 212 698 3629 Direct
+1 212 698 3599 Fax

December 28, 2023

Derek J. Baker
Reed Smith LLP
Three Logan Square, 1717 Arch Street,
Suite 3100 Philadelphia, Pennsylvania 19103

**VIA EMAIL**

Re: *In re Eletson Holdings, Inc., et al.,* Case No. 23-10322 (JPM)

Dear Derek:

We write regarding certain statements made by the Debtors with respect to the Preferred Shares of Eletson Gas.[1]

At the hearing on December 14, Levona asserted that the Debtors and their affiliates had violated the Stay Relief Order, including by transferring the Preferred Shares to the Nominees and using "Eletson Gas's assets as a piggy bank" to pay insiders, the Debtors, and their counsel. *See* Dec. 14 Hr'g Tr. at 20:1-10, 21:6-9. In response, Mr. Solomon initially denied Levona's assertions, representing that "there's no truth" to them and that "Gas is not transferring any of its assets," but then stated that "Gas is operating in the ordinary course of business. So obviously it is transferring assets." *Id.* at 34:7, 45:6-7, 45:9-11.

In addition, with respect to the purported transfer of the Preferred Shares, although Mr. Solomon previously represented that "nothing is going to happen with the transfers because we're coming back to Your Honor," more recently he asserted that the "transfer has already happened." *See* May 17 Hr'g Tr. at 17:4-5; Dec. 4 Hr'g Tr. at 85:16-17.

We therefore seek clarification that, although the arbitration may have ruled that the Preferred Shares were transferred to the Nominees and the District Court may affirm or

---

[1] Capitalized terms used but not defined shall have the meanings set forth in the *Motion of the Official Committee of Unsecured Creditors to Modify the Court's Prior Order Granting Relief from the Automatic Stay* (ECF 239).



reject that ruling, the Debtors, their affiliates, their insiders, and the Nominees have not taken (and will not take) any acts with respect to the Preferred Shares or use the Preferred Shares in any respects without first obtaining relief from the Bankruptcy Court as required under the Stay Relief Order.  *See* ECF 48 ¶ 4.

We believe this is entirely consistent with prior representations of the Debtors,[2] but given the recent ambiguity in the Debtors' remarks and the fact that the Debtors have refused to provide the Committee with any visibility regarding the operations of its subsidiaries, we ask that you confirm this understanding in writing on behalf of the Debtors, their affiliates, the insiders and the Nominees by the close of business on January 2, 2024.  To the extent any of the above-mentioned parties are represented by separate counsel (or you do not speak for such parties), we ask that you provide them with a copy of this letter and let us know immediately if that is the case.

Sincerely yours,

Stephen D. Zide

---

[2] See the representations made by Ms. Pille on the record on April 17 that the Debtors "have agreed to bring matters of enforcement [of any arbitration award] back before Your Honor so that Your Honor could fully evaluate the impact, if any, to the estate[.]"  Apr. 17 Hr'g Tr. at 14:8-10.  See also the representations by Mr. Solomon on May 17 that the Debtors are "not making any transfers" and are "going to respect the order. We understand what the order says.  Nothing is going to be done until we come back to Your Honor." May 17 Hr'g Tr. at 15:14-16.

Exhibit N

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

ELETSON HOLDINGS INC., ET Al.,             Main Case No.

      Debtors.                             23-10322-jpm

- - - - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York

        January 18, 2024

        11:03 AM

B E F O R E:

HON. JOHN P. MASTANDO, III

U.S. BANKRUPTCY JUDGE

ECRO:  MARIA

1   collection and rolling productions as soon as we can.  In fact,

2   we've already begun that meet-and-confer process, and we will

3   hopefully be able to resolve any issues.  But if there are --

4   if there are any, we will bring them back to the Court.

5         THE COURT:  Great.  Thank you.

6         Would anyone else like to be heard?

7         MR. BAKER:  Your Honor, Derek Baker from Reed Smith on

8   behalf of the debtors.  I am happy to agree with Mr. Herman

9   with respect to the process and procedure.  I also wanted to

10  extend my thanks to Mr. Herman and to the Court for

11  accommodating.  I had a scheduling conflict yesterday.  So I

12  appreciate moving it to today.

13        But I do think that we did use the time well.  I do

14  think that we have a good process in place to figure out how to

15  move some of the information requests forward.  And obviously,

16  the committee has their rights, and the debtors reserve their

17  rights to address what are, at least in our view, believed to

18  be improper requests or expansive requests or duplicative

19  requests.  But we'll take that up through the meet-and-confer

20  process at the appropriate time and proceed in due course.

21        So again, thank you to Mr. Herman.  Thank you to Your

22  Honor for scheduling.  And I am pleased that we'll be sending

23  you in a revised form of order on the merits.

24        THE COURT:  Thank you.  I'm pleased to hear the

25  parties have worked it out.

Exhibit O

| | |
|---|---|
| **From:** | Baker, Derek J. <DBaker@ReedSmith.com> |
| **Sent:** | Tuesday, January 23, 2024 8:54 AM |
| **To:** | Herman, David; Pille, Ann E.; Osei-Bonsu, Derek M. |
| **Cc:** | Zide, Stephen; Walters, Alyssa; Haney, Owen Sargent |
| **Subject:** | RE: Eletson - M&C |

[EXTERNAL EMAIL]

David –

We didn't agree that we would resolve all issues in advance of the objections.  At the hearing you said "We've also agreed with the debtors that we will begin the meet-and-confer process and the debtors will begin collection and rolling productions **as soon as we can**. In fact, we've already begun that meet-and-confer process, and we will hopefully be able to resolve any issues."  10:24-11:3  (emphasis added)   I said: "I do think that we have a good process in place to figure out how to move some of the information requests forward. And obviously, the committee has their rights, and the debtors reserve their rights to address what are, at least in our view, believed to be improper requests or expansive requests or duplicative requests. But we'll take that up through the meet-and-confer process **at the appropriate time** and proceed in due course."  11:13-20.  (emphasis added)  This not the "appropriate time".  In fact, if you recall, I asked you to take the first step of revising your requests for duplicity.  You said no.  That's fine, so we're doing it and we'll let you know which ones we think are duplicative.  That is the first part of the process because if the items are duplicative, we're not re-searching or re-collecting.  We're only going to discuss collecting what is NOT duplicative and NOT objectionable.  That's appropriate.

I understand you want to know the position of what the Debtor's believe is in their "custody and control".  Once we know the universe of what is non-duplicative, we can more accurately address that question on what is potentially responsive to non-duplicative and otherwise non-objectionable requests.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
**reedsmith.com**

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Monday, January 22, 2024 6:40 PM
**To:** Pille, Ann E. <APille@ReedSmith.com>; Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Walters, Alyssa <Alyssa.Walters@dechert.com>; Haney, Owen Sargent

\<Owen.Haney@dechert.com\>
**Subject:** RE: Eletson - M&C

**External E-Mail - FROM david.herman@dechert.com <david.herman@dechert.com>**

Ann:

We specifically agreed that we would not wait until your response deadline to begin the meet and confer process. That is reflected on the record at the hearing. Please provide us times tomorrow. We will not expect you to be in a position to articulate responses to each request, but there are some overarching issues we need to start dealing with. In particular, we need to understand if there are categories of documents at the subsidiary level that the Debtors will contend are not in their possession, custody or control. Derek told me last week that he would run that down, so I expect you to have answers to that question by now. There are also categories of documents the Debtors should be in a position to produce in short order. We need to start these discussions.

Thanks,
David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct
+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

**From:** Pille, Ann E. <APille@ReedSmith.com>
**Sent:** Monday, January 22, 2024 5:58 PM
**To:** Herman, David <David.Herman@dechert.com>; Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Walters, Alyssa <Alyssa.Walters@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** RE: Eletson - M&C

[EXTERNAL EMAIL]

David,

It's unorthodox to have a meet and confer before we have even identified all our objections. We are working on those now, and will put together something in writing for your review. We believe that will make the meet and confer significantly more efficient and productive.

-Ann

**From:** Herman, David <David.Herman@dechert.com>
**Sent:** Monday, January 22, 2024 9:37 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Pille, Ann E. <APille@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Zide, Stephen <Stephen.Zide@dechert.com>; Walters, Alyssa <Alyssa.Walters@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>
**Subject:** FW: Eletson - M&C

Derek:

I am following up on my request last week to meet and confer with you regarding the 2004 requests.  Please let me know when you are available.

Thanks,

David

**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct

+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

---

**From:** Herman, David
**Sent:** Friday, January 19, 2024 11:44 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>
**Cc:** Pille, Ann E. <APille@ReedSmith.com>; Zide, Stephen <Stephen.Zide@dechert.com>; Walters, Alyssa <Alyssa.Walters@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Subject:** RE: Eletson - M&C

Derek,

Attached please find the Rule 2004 requests to the Debtors.  Please advise when you are available to meet and confer, as requested in my email below.

Thanks,

David


**David A. Herman**
Partner


**Dechert LLP**
+1 212 649 8728 Direct

+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

---

**From:** Herman, David
**Sent:** Thursday, January 18, 2024 2:03 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>
**Cc:** Pille, Ann E. <APille@ReedSmith.com>; Zide, Stephen <Stephen.Zide@dechert.com>
**Subject:** Eletson - M&C


Derek,


Let's have a follow-up meet and confer concerning the issue of the Debtors' ability to produce documents from and pertaining to their subsidiaries. Our view is it all is and should be in the Debtors' possession, custody and/or control and responsive documents should be produced. We would like to have the Debtors' position on this with details on where and with whom information is located (once you have conferred with your client, if necessary) in the hopes that we can avoid the need to raise issues with the Court. Please advise on some good times tomorrow.


Thanks,

David


**David A. Herman**
Partner

**Dechert LLP**
+1 212 649 8728 Direct

+1 917 623 7139 Mobile
david.herman@dechert.com
dechert.com

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

Exhibit P

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

ELETSON HOLDINGS INC., ET Al.,          Main Case No.

      Debtors.                          23-10322-jpm

- - - - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York

        January 25, 2024

        10:08 AM

B E F O R E:

HON. JOHN P. MASTANDO, III

U.S. BANKRUPTCY JUDGE

ECRO:  MARIA

1        So I don't think that it's in any way improper.  I

2    don't think that it in any way justifies any of the statements

3    that were made.  In fact, what the value that is returned to

4    these creditors is the very litigation that they so greatly

5    want against themselves.  And that's exactly what we're

6    prepared to give them.

7        So we've talked about that.  We've put that together

8    in our plan.  The fact that the recovery doesn't reach what

9    they want from an economic perspective on a economic analysis

10   that they have no right to seek is an entirely different

11   discussion that we will have at the appropriate time.  And we

12   don't think that's today, but we're prepared to have that.

13       That's one of the reasons why I noted in my initial

14   conversation that we've made an introduction to have a ongoing

15   dialog if they -- or have a dialog.  If they want to have it,

16   we're happy to have it.  If they don't, we don't have to.  And

17   we can simply proceed on that basis.

18       With respect to the comments by the committee, no, we

19   didn't share the plan with them in advance.  There's very clear

20   reasons why we didn't share the plan with them in advance

21   because of the very nature of the actions by Murchinson, who

22   are directing the committee.  And so we believe that having

23   those items out in a pre-plan procedure would only leak into

24   other issues, and so it didn't make any sense for us to do

25   that.  But we're happy to have those conversations now because

1   little bit improper for the committee now to say we want to

2   have a meet-and-confer on the substance of the issues, when

3   they wouldn't even remove what is clearly duplicative items.

4          Now, we're going to bring those -- we're going to

5   address those items in due course.  This is not -- we have not

6   had a meet-and-confer on those issues, and we're prepared to do

7   it.  But we told the committee well in advance that we were --

8   that this was a major issue.  And the committee said, we're not

9   going to proceed on that basis.

10         So we're proceeding by going through, line by line,

11  every one of the fifty-six document requests that they made so

12  that we can identify for them the ones that we believe are

13  entirely duplicative and that they have all the information on.

14  That's going to take a little bit of time.  Demand for a meet-

15  and-confer the day after you entered an order is entirely

16  appropriate when they served the discovery that afternoon and

17  say, I want to meet and confer tomorrow.  So we'll have those

18  meet-and-confers after we've gone through the process.

19         That's our position on those, Your Honor.

20         THE COURT:  Thank you, Counsel.  What about the

21  possession, custody, or control issue regarding the

22  subsidiaries?

23         MR. BAKER:  Your Honor, we have to first go through

24  and understand what has not already been produced to determine

25  what is left to be produced and whether or not that is within

<u>Exhibit Q</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Eletson Holdings Inc., *et al.*, [1] | Case No. 23-10322 (JPM) |
| Debtors. | (Jointly Administered) |

## DEBTORS' OBJECTIONS AND ANSWERS TO COMMITTEE'S FIRST SET OF RULE 2004 REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Debtors, Eletson Holdings Inc. ("Eletson Holdings"), Eletson Finance (US) LLC ("Eletson Finance", and Agathonissos Finance LLC ("Agathonissos Finance" and, collectively, the "Debtors"), by its attorneys, Derek J. Baker, Ann E. Pille, Louis M. Solomon, and Michael B. Galibois of Reed Smith LLP, for their Objections and Answers to The Official Committee of Unsecured Creditors First Set of Rule 2004 Requests for the Production of Documents to the Debtors (collectively, the "Requests")[2] served by the Official Committee of Unsecured Creditors (the "Committee"), state as follows:

### PRELIMINARY STATEMENT

Although Debtors have made a diligent and good faith effort to gather the information with which to respond to the Requests, collection in this matter is in its preliminary stages and is ongoing. For this reason, Debtors' responses may require supplementation in the normal course of litigation. Accordingly, all of the following responses are given without prejudice to and with the express reservation of Debtors' right to supplement or modify its responses to the extent

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.

[2] Many of the Requests are duplicative of the List of Topics for Examination (the "Topics") set forth in the Notice of Deposition served by the Committee on January 19, 2024. To the extent that the Debtors have asserted an objection to the Requests, they also object to the corresponding Topics, and reserve all rights to identify additional objections to all such Topics.

required by applicable rules to incorporate other discovered information, and to rely upon any and all such information at trial or otherwise. Likewise, Debtors' shall not be prejudiced if any of their present responses are based on incomplete knowledge or comprehension of the facts, events, or occurrences involved in this matter.

Debtors also have responded to the Requests based on their best, good-faith understanding and interpretation of each item therein. Accordingly, if the Committee subsequently asserts a different interpretation than that presently understood by heDebtors, the Debtors reserve the right to object to that interpretation, or, alternatively, to supplement or amend these objections and responses as needed.

Finally, the Debtors' responses to these Requests do not constitute admissions or acknowledgements that the information and documents sought are within the proper scope of discovery. Nor shall a statement that documents will be produced constitute an admission that such documents actually exist. Instead, it shall only mean that, if responsive documents exist and survive the general and specific objections, they will be produced. Likewise, an objection to producing documents does not mean that documents otherwise responsive to a particular Request in fact exists. In responding to these Requests or producing documents responsive to those Requests, Debtors do not waive, and in fact explicitly retains, the right to object to the document's relevance and admissibility at the appropriate time.

## <u>GENERAL OBJECTIONS</u>

1.     Debtors' answers to the Requests are based on information currently available to them. This may include hearsay and other forms of evidence which are neither reliable nor admissible. The Debtors and their attorneys have not completed their analysis or review of investigations conducted to date. These responses therefore state the present information of

Debtors and their attorneys, as required and reviewed to date, without prejudice to Debtors' right to supplement its responses or present additional facts, documents, contentions, or theories at any time hereafter.

2. Debtors interpreted the words and phrases of each Request in accordance with the usual definitions and common usages. To the extent any such Request intends to convey a meaning other than the generally accepted one, the Debtors' object because it is vague and ambiguous and cannot be understood in context.

3. The Debtors object to each Request to the extent it seeks information beyond Debtors' possession, custody or control, which cannot be found after reasonable search for such information.

4. Debtors object to the extent information responsive to a Request can be derived or ascertained from Committee's records, including records in the possession of the Committees' counsel, or public records, or documents already produced in this case, including, but not limited to, documents produced as part of the Arbitration proceeding, the Motion to Enforce, and prior initial disclosures.

5. Debtors object to each Request to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. The responses herein are limited to information or documents not protected from disclosure by such applicable privileges or doctrines.

6. The Debtors object to the Requests to the extent that they are not limited by any identified relevant time period. For the avoidance of doubt, except as otherwise expressly set forth herein, the Debtors will only produce responsive documents for the period of time from March 7, 2019 to March 7, 2023.

7.     Debtors object to each Request to the extent it seeks information unrelated to the Debtor Eletson Holdings, and information not in the custody or control of Eletson Holdings or Eletson Corporation.  For the avoidance of doubt, the Debtors will only produce documents of the Debtors, and will only produce such documents to the extent they are in the custody or control of the Debtors or Eletson Corporation.

8.     By responding to any one Request herein, Debtors do not concede its relevance, materiality or admissibility and does not waive, but rather expressly reserves any and all objections to the relevance, materiality, or admissibility of such response.

9.     Debtors reserve its right to rely on any facts, documents or other evidence that may develop or come to its attention at a later time.  Debtors also reserve the right to amend or supplement its answers and objections as additional information is developed through discovery.

Subject to the foregoing General Objections, which are incorporated into the responses below, Debtors respond as follows:

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

### Corporate Structure and Organization

1.     All of the Debtors', their Subsidiaries', and/or their Affiliates' corporate formation or organizational documents, and any amendments thereto or restatements thereof, including, without limitation, any articles of incorporation, articles of amendment, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, by-laws, or other similar Documents.

**OBJECTION/ANSWER:** Debtors object to Request No. 1 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on these bankruptcy cases, or the claims or the matters in dispute herein.  Furthermore, Debtors object to the extent this Request seeks information already

in the Committee's possession.  Subject to these objections and without waiving the same, Debtor

Eletson Holdings will produce responsive documents of Eletson Holdings in its possession or in

the possession of Eletson Corporation.   The Debtors will not produce any documents, and will not

direct Eletson Corporation to produce, any documents for non-debtor Subsidiaries or Affiliates.

**Board Materials**

2.      All Board Materials of the Debtors, their Subsidiaries, and/or their Affiliates,

including without limitation:

(a)     All Documents and Communications concerning any meeting, resolution, or decision of the Board(s) of any of the Debtors, their Subsidiaries, and/or their Affiliates; and

(b)     All Documents and Communications sent to, provided to, or considered by the Board(s) of the Debtors, their Subsidiaries, and/or their Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 2 as overbroad, unduly

burdensome, and not proportional to the needs of the case to the extent it purports to seek

information that has no bearing whatsoever on these bankruptcy cases, or the claims or the matters

in dispute herein.  Debtors also object to the extent this Request seeks information already in the

Committee's possession. Furthermore, Debtors object to Request No. 2 to the extent it seeks

information or documents protected from disclosure by the attorney-client privilege, work product

doctrine or other applicable legal privilege. Subject to these objections and without waiving same,

Debtor Eletson Holdings will produce responsive documents of Eletson Holdings in its possession

or in the possession of Eletson Corporation.   The Debtors will not produce any documents, and

will not direct Eletson Corporation to produce, any documents for non-debtor Subsidiaries or

Affiliates.

**Corporate Governance**

3.     Documents sufficient to identify all officers and directors of each of the Debtors and their Subsidiaries and Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 3 as the phrase "sufficient to identify" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 3 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on these bankruptcy cases, or the claims or the matters in dispute herein. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 3 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce responsive documents of Eletson Holdings in its possession or in the possession of Eletson Corporation sufficient to show the officers and directors of the Debtors during the relevant time period. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for non-debtor Subsidiaries or Affiliates.

4.     Documents sufficient to show all compensation or remuneration of any kind paid to or for the benefit of any officers or directors of any of the Debtors, their Subsidiaries and/or their Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 4 as the phrase "sufficient to show" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 4 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information

already in the Committee's possession. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce responsive documents of Eletson Holdings, if any, which show compensation, remuneration, or benefits paid by any Debtor to or for benefit of any officer director of the Debtors. The Debtors will not produce documents, and will not direct Eletson Corporation to produce documents, for non-debtor Subsidiaries or Affiliates.

5. All Documents and Communications concerning the appointment, election, removal, replacement, or resignation of (a) any Director of Eletson Holdings, including any Initial Independent Director or other Independent Director, and/or (b) the Independent Managers.

**OBJECTION/ANSWER:** Debtors object to Request No. 5 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Debtors also object to the extent this Request seeks information already in the Committee's possession. Furthermore, Debtors also object to Request No. 5 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged, responsive documents of Eletson Holdings in its possession.

6. All Communications concerning the Initial Independent Directors or the Independent Managers.

**OBJECTION:** Debtors object to Request No. 6 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on these bankruptcy cases, or the claims or the matters in dispute. Furthermore, Debtors also object to Request No. 5 to the extent it seeks information or documents

protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. For the avoidance of doubt, the Debtors will not produce documents in response to Request No. 6.

7.    All Documents and Communications concerning Konstantaras or the Demand Review Committee, including without limitation: (a) the Debtors' consideration, selection and/or appointment of Konstantaras as an Independent Director; (b) the Debtors' creation of the Demand Review Committee; (c) the Debtors' consideration, selection, and/or appointment of any other Person for service as an Independent Director of Eletson Holdings or as a member of the Demand Review Committee; and (d) the appointment, election, removal, replacement or resignation of Konstantaras from the Board of Eletson Holdings during the time period of December 1, 2013 through the date of production.

**OBJECTION/ANSWER:** Debtors object to Request No. 7 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors also object to Request No. 7 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged documents of Eletson Holdings, if any, in its possession or in the possession of Eletson Corporation responsive to subparagraphs (a) and (d) of Request No. 7.

8.    All Documents and Communications concerning any business or familial relationship between Konstantaras and (a) the Debtors (b) any of the Debtors' subsidiaries or Affiliates, (c) the Eletson Holdings Shareholders, (d) the Families, or any members thereof, (e) Eletson Gas, or (f) the Cypriot Nominees.

**OBJECTION:** Debtors object to Request No. 8 as the phrase "[a]ll Documents and Communications concerning any business or familial relationship" is vague and ambiguous—specifically as to the scope of the Request. Debtors further object to Request No. 8 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce responsive documents of Eletson Holdings in its possession or in the possession of Eletson Corporation which evidence: (i) any familial relationship between Konstantaras and the Families, or any members thereof, and (ii) any business relationship between Konstantaras and the Debtors.

9.       All Documents and Communications concerning the Debtors' consideration, investigation, investigation (sic), pursuit, or valuation of any potential causes of action by the Debtors against (a) any of their creditors (including indenture trustees); (b) any of their Shareholders or their affiliates; (c) any of the Families or members thereof; or (d) any of the Cypriot Nominees.

**OBJECTION/ANSWER:**    Debtors object to Request No. 9 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Debtors also object to Request No. 9 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtors have no non-privileged, responsive documents at this time, but Debtors reserve the right to amend and supplement its answer to this Request.

10.     All Documents and Communications concerning the ability of the Debtors' "shareholder/director(s) with [a] potential interest to recuse themselves, and allow the creation of an independent demand review or special litigation committee," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

**OBJECTION/ANSWER:**   Debtors object to Request No. 10 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute.  Debtors also object to Request No. 10 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  Subject to these objections and without waiving same, Debtor Eletson Holdings incorporates by reference the documents produced in connection with Request No. 1.

11.     All Documents and Communications concerning the actual or potential recusal of any of the Debtors' director(s) or Officers in connection with (a) any decisions of the Debtors' Board(s); (b) any direction given to the Debtors' counsel; or (c) any decision or action taken in connection with these bankruptcy cases or the Arbitration.

**OBJECTION/ANSWER:**   Debtors object to Request No. 11 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute.  Debtors also object to Request No. 11 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  Subject to these objections and without waiving same, Debtor Eletson Holdings incorporates by reference the documents produced in connection with Request No. 2.

**Shareholder Materials**

12.     All Documents and Communications concerning any meeting of the Shareholders of any of the Debtors, their Subsidiaries, and/or Affiliates, including all general business updates, minutes, resolutions, consents, notes and/or agendas from any Shareholder meeting.

**OBJECTION/ANSWER:** Debtors object to Request No. 12 as the phrase "concerning any meeting" is vague and ambiguous—specifically as to the scope of the Request.  Debtors also object to Request No. 12 as the phrase "all general business updates…notes and/or agendas" is vague and ambiguous – specifically as to the scope of the Request.  Debtors also object to Request No. 12 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute.  Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 12 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged responsive documents of Eletson Holdings, if any, in its possession or in the possession of Eletson Corporation.  The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for non-debtor Subsidiaries or Affiliates.

13.     Documents sufficient to identify (a) each of the Shareholders of each of the Debtors, their Subsidiaries, and their Affiliates, and (b) the beneficial owners of each of the Shareholders of each of the Debtors, their Subsidiaries, and/or their Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 13 as the phrase "sufficient to identify" is vague and ambiguous—specifically as to the scope of the Request.  Debtors also object to Request No. 13 as overbroad, unduly burdensome, and not proportional to the needs of the case

to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged responsive documents of Eletson Holdings, if any, that identify Eletson Holdings Shareholders in Eletson Holdings' possession or in the possession of Eletson Corporation. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents sufficient to identify Shareholders or beneficial owners for the Debtors' Affiliates or Subsidiaries.

14. Documents sufficient to show, for each of the Shareholders for each of the Debtors, their Subsidiaries, and/or Affiliates:

(a) the amounts invested by such Shareholder in the Debtors, their Subsidiaries, and/or Affiliates, as applicable;

(b) the percentage ownership of such Shareholder in the Debtors, their Subsidiaries, and/or Affiliates, as applicable;

(c) all distributions or dividends—declared, accrued, paid, or otherwise—to such Shareholders and any other Transfer to or for the benefit of such Shareholder or any of its affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 14 as the phrase "sufficient to identify" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 14 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged documents of the Debtors, if any, in Eletson Holdings' possession or in the possession of Eletson Corporation that identify information responsive to subparagraphs (a)-(c) of Request No. 14 for Shareholders in the Debtors related to

their respective ownership interest in the Debtors.  The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for responsive the Request for Shareholders of non-debtor Subsidiaries or Affiliates.

.

**Asset Transfers**

15.    All Documents and Communications concerning any Transfer of cash, assets, or thing of value, from any of the Debtors, their Subsidiaries, or their Affiliates to any of (a) the Eletson Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families.

**OBJECTION/ANSWER:** Debtors object to Request No. 15 as the phrase "concerning any Transfer" is vague and ambiguous—specifically as to the scope of the Request.  Debtors also object to Request No. 15 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 15 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  Information evidencing any Transfers from the Debtors have been disclosed in prior filings with this Court, and are already in the possession of the Committee.  The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for responsive the Request related to Transfers from any non-debtor Subsidiaries or Affiliates.

16.    All Documents and Communications concerning any loan, advance, or other Transfer by any of the Debtors, their Affiliates, or their Subsidiaries to any of (a) the Eletson

Holdings Shareholders; (b) the Cypriot Nominees; (c) the Families; or (d) any member(s) or Affiliate(s) of any of the Families, including without limitation:

    (a)    all Documents and Communications concerning "the debts of the families and shareholders to the Company" referred to by Costis Kertsikoff in that certain September 28, 2022 email to Lascarina Karastamati (EletsonBK020376); and

    (b)    all Documents or Communications concerning the "file with the debts of the families and the shareholders (personally)" referred to by Lascarina Karastamati in that certain October 6, 2022 email (EletsonBK020375), including, without limitation, any emails including Lascarina Karastamati (lascarina.karastamati@eletson.com) and/or Dimitris Stamos (dimitris.stamos@eletson.com) and any of the following participants: (x) Costis Kertsikoff (coskerts@gmail.com); (y) Vasilis Kertsikoff (vaskerts@hotmail.com); and/or (z) Irina Kertsikoff (irina.kertsikoff@gmail.com).

**OBJECTION/ANSWER:** Debtors object to Request No. 16 as the phrase "concerning any Transfer" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 16 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 16 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Information evidencing any Transfers from the Debtors have been disclosed in prior filings with this Court, and are already in the possession of the Committee. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for responsive the Request related to Transfers from any non-debtor Subsidiaries or Affiliates.

17.    All monthly, quarterly, and annual statements and wire transfer confirmations for all Accounts of any of the Debtors, their Subsidiaries, and/or their Affiliates, including without

limitation, with respect to Accounts located at any of the following financial institutions: (a) AB Bank; (b) Alpha Bank; (c) Berenberg; (d) Bergos; (e) Citibank; (f) Credit Agricole; (g) Credit Suisse; (h) DNB Bank; (i) DVB Bank; (j) Morgan Stanley; (k) Nordbank; (l) Piraeus Bank; (m) UniCredit; (n) Western Asset; or (o) any other financial institution where any of the Debtors, their Subsidiaries, and/or their Affiliates was an authorized signatory and/or held beneficial interest, whether individually or jointly with another Person, with respect to an Account.

**OBJECTION/ANSWER:** Debtors object to Request No. 17 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 17 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Information evidencing any Accounts of the Debtors have been disclosed in prior filings with this Court, and are already in the possession of the Committee. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for responsive the Request related to Accounts from any non-debtor Subsidiaries or Affiliates.

18. All Documents and Communications concerning fees or expenses paid to or incurred by Reed Smith LLP, including (without limitation):

     (a)     All Documents concerning Eletson Corporation's payment of the fees and expenses owed to Reed Smith for its representation of Eletson Holdings in (a) the Arbitration; (b) the District Court confirmation proceedings; and (c) the Bankruptcy Cases.

     (b)     All Documents and Communications concerning the decision of the Debtors, their Subsidiaries, and/or their Affiliates for Eletson Corporation to pay obligations owing to Reed Smith in connection with the Bankruptcy Cases, the Arbitration Proceedings, and the District Court confirmation proceedings.

(c)     All Documents and Communications between September 6, 2023 and September 25, 2023 concerning the payment of fees or expenses of Reed Smith.

(d)     All Documents and Communications concerning the agreement of the Cypriot Nominees "to pay Reed Smith's fees and expenses related to the Arbitration and Confirmation Proceeding in the event Corp was unable to satisfy its obligations to Reed Smith," as referenced I paragraph 13 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261).

(e)     The "comfort letter to Reed Smith sent on behalf of the five shareholders of Holdings," as referenced in paragraph 15 of the Supplemental Declaration of Derek J. Baker dated November 7, 2023 (ECF 261), and all Documents and Communications concerning such "comfort letter," including any drafts or amendments thereof.

(f)     All Documents and Communications concerning Reed Smith's determination to "waive any claims Reed Smith would potentially have against the shareholders of Holdings for any amounts unpaid by Corp," as stated in the Second Supplemental Declaration of Derek J. Baker, dated November 30, 2023 (ECF 297).

**OBJECTION/ANSWER:**  Debtors object to Request No. 18 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 18 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Apart from those documents that the Debtors have agreed to voluntarily produce in connection with the above-captioned bankruptcy proceedings, the Debtors will not produce additional documents in response to this Request.

19.    All Documents and Communications Concerning Reed Smith's determination "to waive any claims Reed Smith would potentially have against the Cypriot Entities for any amounts unpaid by Corp," as stated in the Third Supplemental Declaration of Derek J. Baker, dated December 21, 2023 (ECF 330). Documents sufficient to identify all payments made by Eletson

Corporation to or for the benefit of Eletson Holdings and/or the other Debtors, from March 7, 2023 to the date of production, including the date, amount, and recipient of each such payment.

**OBJECTION/ANSWER:** Debtors object to Request No. 19 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 19 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Apart from those documents that the Debtors have agreed to voluntarily produce in connection with the above-captioned bankruptcy proceedings, the Debtors will not produce additional documents in response to this Request.

**Intercompany Agreements and Transfers**

20.     All Documents and Communications concerning any agreements by or among the Debtors, the Debtors' Affiliates, the Debtors' Subsidiaries, the Families or any member thereof, and/or any of the Cypriot Nominees, including, without limitation, any Documents or Communications concerning the payment of legal fees and/or expenses related to (a) the Bankruptcy Cases or (b) the Arbitration.

**OBJECTION/ANSWER:** Debtors object to Request No. 20 as the phrase "[a]ll Documents and Communications concerning any . . . agreements" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 20 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to Request No. 20 to the extent it seeks information or documents protected from

disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Without waiving the foregoing, and for the avoidance of doubt, the Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for responsive the Request related to agreements to which any Debtor is not a party. Further responding, apart from those documents that the Debtors have agreed to voluntarily produce in connection with the above-captioned bankruptcy proceedings, the Debtors will not produce additional documents in response to this Request

21.     All Documents and Communications concerning Transfers by or among the Debtors, the Debtors' Affiliates, or the Debtors' Subsidiaries.

**OBJECTION/ANSWER:**  Debtors object to Request No. 21 as the phrase "concerning any Transfer" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 21 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 21 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Without waiving the foregoing objections, information evidencing any Transfers from the Debtors have been disclosed in prior filings with this Court, and/or are already in the possession of the Committee. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents for responsive the Request related to Transfers from any non-debtor Subsidiaries or Affiliates.

22.     All Documents and Communications concerning the (sic) any of the Debtors' and their Subsidiaries' and/or Affiliates intercompany debt or Obligations (including intercompany notes and guarantees), and the calculations thereof.

**OBJECTION/ANSWER:** Debtors object to Request No. 22 as the phrase "[a]ll Documents and Communications concerning the (sic) . . . intercompany debt or Obligations" is vague and ambiguous—specifically as to the scope of the Request.  Debtors also object to Request No. 22 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 22 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  Without waiving the foregoing objections, the Debtors assert that information sufficient to show intercompany obligations of the Debtors have been disclosed in prior filings with this Court, and/or are already in the possession of the Committee.  The Debtors will not produce additional documents responsive to these Requests.

23.     All Documents and Communications concerning any and all Obligations owed to the Debtors by any of the other Debtors or the Debtors' Affiliates or Subsidiaries, including, but not limited to drafts, invoices, purchase orders, proposals, Documents evidencing payment, notices sent pursuant to any agreement and Communications concerning.

**OBJECTION/ANSWER:** Debtors object to Request No. 23 as the phrase "[a]ll Documents and Communications concerning any and all Obligations" is vague and ambiguous— specifically as to the scope of the Request.  Debtors also object to Request No. 23 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore,

Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 23 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Without waiving the foregoing objections, the Debtors assert that information sufficient to show intercompany Obligations of the Debtors (or owed to the Debtors) have been disclosed in prior filings with this Court, and/or are already in the possession of the Committee. The Debtors will not produce additional documents responsive to these Requests.

**The Interests in Eletson Gas**

24.     All Documents and Communications concerning Eletson Holdings' interest in Eletson Gas for the time period of January 1, 2022 through the date of production.

**OBJECTION/ANSWER:** Debtors object to Request No. 24 as the phrase "[a]ll Documents and Communications concerning Eletson Holdings' interest in Eletson Gas" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 24 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 24 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged, responsive documents of Eletson Holdings sufficient to show Eletson Holdings' interest as a common interest holder in Eletson Gas from January 1, 2022 to the present. In addition, Eletson Holdings will produce a copy of the Final

Award from the arbitration evidencing the current ownership of any interest in the preferred interests of Eletson Gas.

25.     All Documents and Communications concerning the Preferred Shares or the Common Shares, including without limitation:

      (a)     all Documents and Communications concerning any Valuation of the Preferred Shares or the Common Shares; and

      (b)     all Documents and Communications concerning any dividends, distributions, or return of profits or capital due, payable, or outstanding on account of the Preferred Shares or the Common Shares.

**OBJECTION/ANSWER:** Debtors object to Request No. 25 as the phrase "[a]ll Documents and Communications concerning the Preferred Shares or the Common Shares" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 25 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 25 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged, responsive documents of Eletson Holdings sufficient to show Eletson Holdings' interest as a common interest holder in Eletson Gas from January 1, 2022 to the present.   In addition, Eletson Holdings will produce a copy of the Final Award from the arbitration evidencing the current ownership of any interest in the preferred interests of Eletson Gas

26.     All Documents and Communications concerning the deconsolidation and/or derecognition of the assets and liabilities of Eletson Gas, and/or minority interest in Eletson Gas

from the books and records and/or financial statements of Eletson Holdings in 2019 or during any other year.

**OBJECTION/ANSWER:** Debtors object to Request No. 26 as the phrases "[a]ll Documents and Communications concerning the deconsolidation and/or derecognition of the assets and liabilities of Eletson Gas, and/or minority interest in Eletson Gas" and "during any other year" are vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 26 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 26 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Absent further clarification regarding the intended interpretation of the Request, the Debtors are not aware of any documents in their possession that are responsive this Request.

**The Cypriot Nominees**

27.     All Documents and Communications with or concerning any of the Cypriot Nominees, including, without limitation:

> (a)     all Documents and Communications concerning any Transfer of the Preferred Shares to any of the Cypriot Nominees;
>
> (b)     all Communications between Reed Smith LLP and the Cypriot Nominees;
>
> (c)     all Communications with Reed Smith LLP concerning the Cypriot Nominees;
>
> (d)     all Documents and Communications on or before March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith

LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and

(e)    all Documents and Communications after March 7, 2023 concerning the designation of any of the Cypriot Nominees as a "nominee" under the BOL, including, without limitation, any Communications with Reed Smith LLP, and any Communications sent by email, fax, e-fax, text message, instant message, or other electronic means; and All Documents and Communications at any time concerning the Cypriot Nominees' interests, contingent or otherwise, in the Preferred Shares.

**OBJECTION/ANSWER:** Debtors object to Request No. 27 as the phrases "[a]ll Documents and Communications with or concerning any of the Cypriot Nominees" are vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 27 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 27 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce: (i) the Final Award, (ii) documents produced in the Arbitration by Eletson Holdings and/or Eletson Corporation to support the findings set forth in the Final Award, and (iii) documents sufficient to identify the Cypriot nominees.

28.    All Documents and Communications from January 1, 2022 through the date of production, concerning the Preferred Shares, including, without limitation, (a) the purported Transfer of the Preferred Shares to any of the Cypriot Nominees, (b) the purported Transfer of the Preferred Shares to any other entity, or (c) any disposition, cancellation, or retirement of the Preferred Shares.

**OBJECTION/ANSWER:** Debtors object to Request No. 28 as the phrase "[a]ll Documents and Communications . . . concerning the Preferred Shares" is vague and ambiguous—

specifically as to the scope of the Request. Debtors also object to Request No. 28 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 28 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce: (i) the Final Award, (ii) documents produced in the Arbitration by Eletson Holdings and/or Eletson Corporation to support the findings set forth in the Final Award, and (iii) documents sufficient to identify the Cypriot nominees

29.     All Documents and Communications concerning the actual or potential status of Eletson Holdings as the sole shareholder of Eletson Gas as stated in the affidavit of Vassilis Kertsikoff, dated October 25, 2022.

**OBJECTION/ANSWER:** Debtors object to Request No. 29 as the phrase "[a]ll Documents and Communications concerning the actual or potential status of Eletson Holdings as the sole shareholder of Eletson Gas" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 29 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 29 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged,

responsive documents of Eletson Holdings sufficient to show Eletson Holdings' interest as the sole common interest holder in Eletson Gas from January 1, 2022 to the present.

**Affiliate Transactions**

30.　All Documents and Communications concerning any Transfer of value to the Debtors, their Subsidiaries, and/or their Affiliates, from, or on behalf of, (a) any of the Debtors or the Debtors' Affiliates or Subsidiaries, (b) the Eletson Holdings Shareholders (c) the Families or any member thereof, (d) any of the Cypriot Nominees, (e) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (f) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

**OBJECTION/ANSWER:** Debtors object to Request No. 30 as the phrase "[a]ll Documents and Communications concerning any Transfer of value" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 30 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 30 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Without waiving the foregoing objections, information evidencing any Transfers from or to the Debtors have been disclosed in prior filings with this Court, and/or are already in the possession of the Committee. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive the Request related to Transfers that were not either from or to a Debtor.

31.     All Documents and Communications concerning any Transfer of value from any of the Debtors or the Debtors' Affiliates or Subsidiaries, to (a) any of the Eletson Holdings Shareholders, (b) Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, Officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) any other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

**OBJECTION/ANSWER:** Debtors object to Request No. 31 as the phrase "[a]ll Documents and Communications concerning any Transfer of value" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 31 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 31 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Without waiving the foregoing objections, information evidencing any Transfers from or to the Debtors have been disclosed in prior filings with this Court, and/or are already in the possession of the Committee. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive the Request related to Transfers that were not either from or to a Debtor.

32.     All Documents and Communications concerning any transaction, contract, or other agreement by or among any of the Debtors or the Debtors' Affiliates or Subsidiaries, and (a) the Eletson Holdings Shareholders, (b) the Families or any member thereof, (c) any of the Cypriot Nominees, (d) any Director, officer, or Insider of the Debtors or the Debtors' Affiliates or Subsidiaries, or (e) other Person related to the Debtors or the Debtors' Affiliates or Subsidiaries.

**OBJECTION/ANSWER:** Debtors object to Request No. 32 as the phrase "[a]ll Documents and Communications concerning any transaction, contract, or other agreement" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 32 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 32 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings directs the Committee to the responses to Request Nos. 30 and 31 above, and the non-privileged responsive documents produced pursuant to thereto. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive the Request related to transactions, contracts or other agreements to which a Debtor was not a party.

33.     All Documents and Communications (including any contracts and agreements) concerning cash receipts or disbursements to, or transactions, loans, receivable/payable balances or write-offs with any (a) Insiders, (b) Subsidiaries, Affiliates of, or related parties to, Debtors, and/or (c) Eletson Holdings Shareholders, (d) the Families any members thereof, or (e) any of the Cypriot Nominees.

**OBJECTION:** Debtors object to Request No. 33 as the phrase "[a]ll Documents and Communications (including any contracts and agreements) concerning cash receipts or disbursements to, or transactions, loans, receivable/payable balances or write-offs with any" of the listed entities/persons is vague and ambiguous—specifically as to the scope of the Request. Debtors object to Request No. 33 as overbroad, unduly burdensome, and not proportional to the

needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Subject to these objections and without waiving same, Debtor Eletson Holdings directs the Committee to the responses to Request Nos. 30, 31 and 32 above, and the non-privileged responsive documents produced pursuant to thereto. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive the Request related to cash receipts, disbursements to, or transactions, loans, receivable/payable balances or write-offs to which a Debtor was not a party.

### Financial Condition of the Debtors and their Subsidiaries

34.     All Documents Concerning the Debtors', their Subsidiaries', and their Affiliates' operations, structure, and financial condition, including, but not limited to, all:

(a)     monthly, quarterly, and annual trial balances;

(b)     monthly, quarterly, and annual general ledgers;

(c)     audited and unaudited annual financial statements;

(d)     monthly, quarterly and annual balance sheets;

(e)     monthly, quarterly and any annual income/profit and loss statements;

(f)     monthly, quarterly and any annual cashflow statements;

(g)     statements/analyses of receipts and disbursements;

(h)     monthly, quarterly and annual income/payroll statements;

(i)     sales and use tax returns;

(j)     monthly, quarterly and any annual bank or other financial account statements;

(k)     annual and current year-to-date ledgers;

(l)     monthly accounts receivable and all related cash receipts including the source thereof;

(m)     monthly accounts payable reports and lists of all disbursements by check, wire and ACH;

(n)     budgets or projections of income and/or cash flows;

(o)     audited and unaudited financial statements including on a monthly, quarterly, and annual basis, including, without limitation, all accounting, audit, or other workpapers prepared by or on behalf of the Debtors, their Subsidiaries, and/or their Affiliates in connection with preparation of such financial statements;

(p)     consolidated and unconsolidated monthly, quarterly, and annual income statements, balance sheets, and cash flows as excel files for years, with details of any adjusting journal entries and associated working papers;

(q)     quarterly and annual budget to actual comparison for income statements;

(r)     quarterly and annual budget to actual comparison for cash flows;

(s)     monthly, quarterly, and annual accounts receivable aging reports;

(t)     monthly accounts payable aging reports prepared by or for the benefit of any of the Debtors, their Subsidiaries, or their Affiliates;

(u)     liquidation analyses prepared by or for the benefit of any of the Debtors, their Subsidiaries, or their Affiliates; and

(v)     tax returns or other reports filed with tax authorities in any jurisdiction by the Debtors, their Subsidiaries, or their Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 34 as the phrase "[a]ll Documents and Communications Concerning the Debtors', their Subsidiaries', and their Affiliates' operations, structure, and financial condition" is vague and ambiguous—specifically as to the scope of the Request.  Debtors also object to Request No. 34 as overbroad (including to the extent the Relevant Period purports to extend beyond March 7, 2023 or before March 7, 2019), unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request Nos. 31 through 34 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive to the Request related to operations, structure, and financial condition of non-debtor Affiliates or Subsidiaries.

35.     All Documents and Communications concerning the Debtors', their Subsidiaries', and their Affiliates' financial information, including, without limitation, assets, liabilities, and any other financial information relating to financial performance, intercompany Transfers, and related party transactions.

**OBJECTION/ANSWER:**     Debtors object to Request No. 35 as the phrase "[a]ll Documents and Communications concerning the Debtors', their Subsidiaries', and their Affiliates' financial information" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 35 as overbroad (including to the extent the Relevant Period purports to extend beyond March 7, 2023 to March 7, 2019), unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 35 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege.  To the extent the Request seeks information related to the Debtors, it is duplicative of other Requests set forth herein.  To the extent it seeks financial information regarding the Debtors' Affiliates and Subsidiaries, the Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive to the Request.

36.     All Documents and Communications concerning any real property owned by the Debtors, their Subsidiaries, or their Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 36 as the phrase "[a]ll Documents and Communications any real property owned by the Debtors, their Subsidiaries, or their Affiliates[,]" is vague and ambiguous—specifically as to the scope of the Request.  Debtors

also object to Request No. 36 as overbroad (including to the extent the Relevant Period purports to extend beyond March 7, 2023 to March 7, 2019), unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 36 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings directs the Committee to the responses to Request Nos. 34 above, and the non-privileged responsive documents produced pursuant to thereto. The Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive to the Request related to real property held by the Debtors' Affiliates or Subsidiaries.

37. All Documents and Communications concerning any internal or external appraisals or reports concerning the Valuation of any of Your investments or ownership interests in any of the Debtors' Subsidiaries or Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 37 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Debtors also object to Request No. 37 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtors have no non-privileged, responsive documents at this time, but Debtors reserve the right to amend and supplement its answer to this Request.

38. All Documents and Communications concerning the Vessels, including, without limitation:

> (a) all Documents and Communications concerning, monthly, quarterly and annual operating or management accounts related to the Vessels, including without limitation, accounts concerning (i) daily Vessel operating costs (by Vessel) such as crew costs, travel and training costs, and/or costs for victualling, lube oils, non-capex repairs and maintenance, insurance, spares and supplies, ship management, and port and other related charges; (ii) bunker fuel transactions and/or costs (by Vessel); (iii) capital expenditures related to repair and maintenance costs (by Vessel); and/or (iv) on-shore organization cost by operational and SG&A activities and/or costs;

> (b) all Document and Communications concerning the purchase, acquisitions, sale, disposition, or any other Transfer of an interest in any Vessel held by the Debtors, their Subsidiaries, and/or Affiliates;

> (c) all Documents and Communications concerning all agreements related to the Vessels, including, but not limited to, time charters, bareboat charters, contracts of affreightment, agency service agreements, and related expenditures; and

> (d) all customs documents, purchase orders, shipping documentation, freight and/or weight documents for the time period of January 1, 2020 through the date of production.

**OBJECTION/ANSWER:** Debtors object to Request No. 38 as the phrase "[a]ll Documents and Communications concerning the Vessels" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 38 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 38 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged, responsive documents of Eletson Holdings, if any, in its possession or in the possession of Eletson Corporation, related to Vessels owned by any Debtor.

39.     Documents sufficient to identify all lenders to the Debtors, their Subsidiaries, and/or their Affiliates, together with all loan documents, UCC-1 filings, or other similar security filings.

**OBJECTION/ANSWER:** Debtors also object to Request No. 39 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Subject to these objections and without waiving same, Debtor will produce copies of all proofs of claim filed by any lender against any Debtor, and loan and security documents in the Debtors' possession sufficient to evidence those claims.  Except as otherwise addressed by the preceding sentence, the Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive to the Request related to loans made to the Debtors' Affiliates or Subsidiaries.

40.     All Documents evidencing credit agreements, forbearance agreements, amendments, pledges, guarantees, promissory notes, waivers, intercreditor, or subordination agreements and fee letters concerning any of the Debtors', their Affiliates, or their Subsidiaries' debt.

**OBJECTION/ANSWER:** Debtors also object to Request No. 40 is overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Subject to the foregoing objections, the Debtor will produce copies of all proofs of claim filed by any lender against any Debtor, and the loan and security documents, forbearance agreements, amendments, pledges, guarantees, promissory notes, waivers, intercreditor agreements or

subordination agreements sufficient to evidence those claims. Except as otherwise addressed by the preceding sentence, the Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive to the Request related to loans made to the Debtors' Affiliates or Subsidiaries.

41.     All Documents and Communications concerning any analysis or evaluation of the Debtors' unsecured creditors' claims.

**OBJECTION/ANSWER:** Debtors object to Request No. 41 as the phrase "[a]ll Documents and Communications concerning any analysis or evaluation of the Debtors' unsecured creditors' claims" is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 41 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors object to the extent this Request seeks information already in the Committee's possession. Debtors also object to Request No. 41 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtors will produce the objections to claim previously filed in the above-captioned proceeding.  Debtors reserve the right to amend and supplement their answer to this Request.

42.     All Documents and Communications concerning any of any off-balance sheet commitments or contingent liabilities of any of the Debtors, the Debtors' Subsidiaries, or the Debtors' Affiliates.

**OBJECTION/ANSWER:** Debtors object to Request No. 42 as the phrase "[a]ll Documents and Communications concerning any of any off-balance sheet commitments or contingent liabilities" is vague and ambiguous—specifically as to the scope of the Request.

Debtors also object to Request No. 42 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors also object to Request No. 42 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same, Debtor Eletson Holdings will produce non-privileged, responsive documents of Eletson Holdings, if any, in its possession or in the possession of Eletson Corporation. Debtors will not produce, and will not direct Eletson Corporation to produce, any documents responsive to the Request related to the Debtors' Affiliates or Subsidiaries.

43. All Documents and Communications evidencing or concerning (a) the Debtors' insurance policies, including any directors' and officers' liability insurance policies, and/or (b) any insurance policy under which any of the Debtors is a beneficiary or an additional insured.

**OBJECTION/ANSWER:** Debtors object to Request No. 43 as the phrase "[a]ll Documents and Communications evidencing or concerning (a) the Debtors' insurance policies . . . and/or (b) any insurance policy under which any of the Debtors is a beneficiary or an additional insured[,]"is vague and ambiguous—specifically as to the scope of the Request. Debtors also object to Request No. 43 as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to seek information that has no bearing whatsoever on the claims or the matters in dispute. Furthermore, Debtors also object to Request No. 43 to the extent it seeks information or documents protected from disclosure by the attorney-client privilege, work product doctrine or other applicable legal privilege. Subject to these objections and without waiving same,

Debtor Eletson Holdings will produce non-privileged, responsive documents of Eletson Holdings, if any, in its possession or in the possession of Eletson Corporation.

Dated: February 2, 2024 

 

Ann E. Pille (Admitted Pro Hac Vice)
Michael B. Galibois (Admitted Pro Hac Vice)
Reed Smith LLP
10 S. Wacker Drive, Floor 40
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail:   mgalibois@reedsmith.com
          apille@reedsmith.com

-and-

Louis M. Solomon
Andrew L. Buck
Zachary B. Kaye
599 Lexington Avenue, Floor 22
New York, NY 10022
Tel.     (212) 521-5400
Fax.    (212) 521-5450
Email:   lsolomon@reedsmith.com
         abuck@reedsmith.com
         zkaye@reedsmith.com

-and-

Derek J. Baker
Derek M. Osei-Bonsu
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel.     (215) 851-8100
Fax.    (215) 851-1420
Email:   dbaker@reedsmith.com
         dosei-bonsu@reedsmith.com

I, Ann E. Pille, counsel of record for the above-captioned Debtors, hereby certify that on February 2, 2024, I caused a copy of the Debtors' Objections and Answers to Committee's First Set of Rule 2004 Requests for the Production of Documents to be served on David Herman and Stephen Zide of Dechert LLP via email at the addresses set forth below:

david.herman@dechert.com

stephen.zide@dechert.com

_____

Ann E. Pille

Exhibit R

Page 1

                    JAMS
- - - - - - - - - - - - - - - - - - - - x
ELETSON HOLDINGS, INC. and
ELETSON CORPORATION,

          Claimants,          JAMS Ref. No.
                              5425000511
          v.

LEVONA HOLDINGS LTD,

          Respondent.

- - - - - - - - - - - - - - - - - - - - x


                    May 15, 2023
                    10:00 a.m.
                    620 Eighth Avenue
                    New York, New York

B E F O R E:

          HONORABLE ARIEL E. BELEN,

               The Arbitrator




          MAGNA LEGAL SERVICES
            (866) 624-6221
            www.MagnaLS.com



Page 2

```
 1
 2    APPEARANCES:
 3
 4    REED SMITH
      Attorneys for Claimant
 5               599 Lexington Avenue
                 New York, New York 10022
 6    BY:        JILLIAN FITZPATRICK, ESQUIRE
                 LOU SOLOMON, ESQUIRE
 7               COLIN UNDERWOOD, ESQUIRE
                 JOSH PELES, ESQUIRE
 8               ALYSSA CONN, ESQUIRE
 9
10    FRANKEL, RUBIN, KLEIN, PAYNE & PUDLOWSKI,
      P.C.
11    Attorneys for Respondent
                 231 South Bemiston Avenue
12               Suite 1111
                 St. Louis (Clayton), Missouri
13               63105-1914
      BY:        REID SIMPSON, ESQUIRE
14               MAYER KLEIN, ESQUIRE
                 MIRIAM HIRSCH, ESQUIRE
15
16    ALSO PRESENT:
17    ADAM SPEARS
18    LASKARINA KARASTAMATI
19    VASSILIS KERTSIKOFF
20    VASILIS HADJIELEFTHERIADIS
21    RACHEL A. GUPTA, Law Clerk
22    MICHAEL LION, Exhibit Tech
         Magna Legal Services
23
                                        09:38:39
24                                      10:13:08
25
```



Page 6

```
 1
 2        follow this logical structure.              10:16:24
 3             Certainly the main event is the        10:16:28
 4        LLCA and the BOL.  We intend to show        10:16:30
 5        that under the BOL, an option was           10:16:35
 6        exercised to remove Levona as the           10:16:40
 7        preferred, that Levona, for reasons that    10:16:44
 8        I think will become clear during the        10:16:49
 9        hearing, decided not to honor the           10:16:51
10        contract.                                   10:16:54
11             We will ask for your Honor to honor    10:16:54
12        that contract for them to remove them as    10:16:56
13        a preferred.                                10:16:59
14             There is a whole second area of        10:17:01
15        aggravated conduct that we intend to        10:17:04
16        prove and that brings us both before and    10:17:07
17        after Levona became a purported             10:17:11
18        preferred of Eletson Gas.                   10:17:17
19             And then the last issue which I        10:17:23
20        normally would not spend time on in an      10:17:24
21        opening, but I feel I would like to         10:17:27
22        spend a little time on and that is          10:17:29
23        relief, not just the damages, but why       10:17:34
24        and how we might structure relief here      10:17:35
25        so that it's effective so that we don't     10:17:38
```


MAGNA
LEGAL SERVICES

Page 7

```
 1
 2      wind up going through all this and your      10:17:40
 3      Honor will come to toil and struggle to      10:17:43
 4      come to a decision and your Honor will       10:17:44
 5      come to a decision and then Levona and       10:17:46
 6      its affiliates will render it nugatory.      10:17:48
 7           Having said that those are the          10:17:55
 8      three areas, those are the three kind of     10:17:56
 9      major elect areas that we are going to       10:17:59
10      be focused on, I will not go that route,     10:18:05
11      I will go more chronologically.  I think     10:18:08
12      it will help understanding.                  10:18:11
13           And let me start with who the           10:18:12
14      parties are and your Honor knows this.       10:18:15
15      I can do this quite quickly.  Eletson        10:18:17
16      Holdings is one of the claimants, it         10:18:20
17      holds the common shares of Eletson Gas,      10:18:23
18      also called the company.                     10:18:26
19           Eletson Corporation is a special        10:18:28
20      member of the company and responsible        10:18:32
21      for the provision of management services     10:18:33
22      for the vessels owned directly or            10:18:36
23      indirectly by the company and we mushed      10:18:39
24      together a lot, Eletson and company and      10:18:45
25      whose who and management and whatnot.        10:18:48
```



Page 153

```
 1
 2     this proceeding.  As soon as they said,    13:10:10
 3     even if they win -- even if we win in      13:10:14
 4     this proceeding, they're going to take     13:10:18
 5     that asset and they are -- it goes back    13:10:19
 6     into Holdings and so, lo and behold, the   13:10:22
 7     bankruptcy allows them to take it.         13:10:26
 8         So your Honor has wasted a year,       13:10:28
 9     your Honor has given us a standstill for   13:10:30
10     nothing, your Honor went through all       13:10:33
11     this evidence and that's when we said,     13:10:34
12     well, wait a minute, I went back to my     13:10:36
13     client and it says these nominees, why     13:10:37
14     don't we just transfer it to the           13:10:40
15     nominees and they said, we don't have      13:10:42
16     to, we have already done it.  Not          13:10:43
17     something that we knew about.              13:10:45
18         We then went and found the            13:10:45
19     documents.  Let's be very clear about      13:10:48
20     the documents.  The documents are          13:10:50
21     evidence of the agreement.  They are not   13:10:52
22     the agreement.  The agreement is an oral   13:10:55
23     agreement and your Honor will be able to   13:10:57
24     question the witnesses about it.           13:11:01
25         However, under your Honor's order,    13:11:02
```

