WILLIAM K. HARRINGTON
United States Trustee, Region 2
U.S. Department of Justice
Office of the United States Trustee
One Bowling Green, Room 534
New York, New York 10004
Telephone: (212) 510-0500
By: Paul Schwartzberg, Trial Attorney
Daniel Rudewicz, Trial Attorney

Hearing Date: February 27, 2024[1]
Hearing Time: 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| ELETSON HOLDINGS INC. *et al.,* | Case No. 23-10322 (JPM) |
| Debtors.[2] | (Jointly Administered) |

**THE UNITED STATES TRUSTEE'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE**

---

[1] The Court will hold a status conference on February 27, 2024. Any briefing schedule on this Motion shall be considered (to the extent necessary) at the February 27, 2024 status conference.

[2] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") files this motion (the "Motion") for an order appointing a chapter 11 trustee. In support thereof, the United States Trustee represents and alleges as follows:

**PRELIMINARY STATEMENT**

Sufficient grounds exist to appoint a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(2). The appointment of an independent, objective chapter 11 trustee is in the interests of the creditors and all other interests in this case.

As the Court is well aware, the different constituents in this case – the Debtor, the official committee of unsecured creditors (the "Committee"), the petitioning creditors, and the equity holders – are hopelessly at odds and do not trust each other. Countless arguments have been made about how terrible the other side's actions have been. For example, in the past two days alone the Petitioning Creditors, the Committee, the Debtors, and Levona each filed a letter to the Court.[3] The tone of these letters could be described in one word: acrimonious. And courts have found acrimony between parties to be enough to appoint to a chapter 11 trustee.

In addition, as discussed below, courts have reasoned that debtors should remain in possession because current management is in the best position to operate the business. The Debtors here have no operating assets, just ownership of equity interests in subsidiaries and potential causes of action. Thus, the practical reasons why a debtor should remain in possession are not present. Further, the appointment of a chapter 11 trustee is not a punishment of the debtor or the other parties in the case. Here it would simply be a recognition that the acrimony between

---

[3] *See Letter to the Honorable John P. Mastando, III on Behalf of the Petitioning Creditors re: Mediation Motion* [ECF No. 414]; *Letter to Judge Mastando Regarding Request for Status Conference* [ECF No. 415]; *Letter to the Honorable Judge John P. Mastando III Regarding District Court Application* [ECF No. 416]; *Letter Addressed to the Honorable John P. Mastando re: Discovery Conference* [ECF No. 423].

2

the parties has mired this case in attacks and allegations instead of progress towards reorganization. The appointment of an independent fiduciary to move this case forward in a fair and transparent manner is in the best interest of these estates and all of their parties in interest.

**BACKGROUND**

1. On March 7, 2023, Pach Shemen LLC; VR Global Partners, L.P.; and Alpine Partners (BVI), L.P. (collectively, the "Petitioning Creditors") filed involuntary petitions under section 303 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code")[4] against each of the Debtors.

2. On September 25, 2023, the Court entered an Order converting the case to a voluntary chapter 11 case. ECF No. 215.

3. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On October 20, 2023, the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. ECF No. 233.

5. On January 23, 2024, the Debtors filed the *Motion of Debtors and Debtors in Possession for an Order: (I) Approving Their Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Their Plan of Reorganization; (III) Establishing the Confirmation Hearing and Related Deadlines and (IV) Granting Related Relief* [ECF No. 372] (the "Disclosure Statement Motion"), *Disclosure Statement in Support of First Joint Plan of Reorganization of Debtors Under Chapter 11 of the United States Bankruptcy Code* [ECF No. 371] (the "Disclosure Statement"), and the *First Joint Plan of Reorganization of Debtors Under Chapter 11 of the United States Bankruptcy Code* [ECF No. 370] (the "Plan").

---
[4] Unless otherwise stated herein, all section references are to the Bankruptcy Code.

3

6. On January 29, 2024, the Petitioning Creditors filed the *Motion of the Petitioning Creditors to Terminate the Debtors' Exclusivity Period* [ECF No. 384] (the "Exclusivity Motion").

7. On February 6, 2024, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for an Order Appointing a Chapter 11 Trustee* [ECF No. 394] ("Committee Motion for Chapter 11 Trustee").

8. On February 9, 2024, the Committee filed the *Letter to the Court Requesting Conference* [ECF No. 402] (the "Committee Letter"), which (i) requested "a conference with the Court to discuss an orderly schedule of proceedings in light of the important motions that are now pending before the Court" and (ii) asked the Court to "hold in abeyance briefing on the Debtors' motion for the approval of a disclosure statement until the Court has heard and resolved the Committee's motion for appointment of a chapter 11 trustee and the Petitioning Creditors' motion to terminate plan exclusivity."

9. On February 9, 2024, the Debtors filed the *Letter to the Honorable Judge John P. Mastando III Regarding Confirmation Order* [ECF No. 403] (the "Debtor Letter"), which (i) informed the Court that Judge Liman "entered an Opinion and Order confirming in largest part and in part vacating Justice Belen's Final Award, *Eletson Holdings, Inc. and Eletson Corp. v. Levona Holdings Ltd.*, No. 23-cv-7331 (LJL)" and (ii) requested "an adjournment of all deadlines to the Omnibus Hearing Date and to convert the Omnibus Hearing to a general status conference to address all currently pending hearings and deadlines."

4

10. On February 12, 2024, the Court ordered the following relief at ECF No. 405:

(1) The omnibus hearing scheduled for February 27, 2024 is converted to a general status conference on all pending motions.
(2) The briefing schedule on all pending motions is adjourned and will be considered at the February 27, 2024 status conference.
(3) The February 21, 2024 hearing is adjourned to February 27, 2024 and converted to a status conference (and the related briefing is adjourned).
(4) The parties shall meet and confer and submit a joint status report of no more than five pages setting forth their respective positions by February 26, 2024 at 12:00 noon.

11. On February 13, 2024, the Debtors filed the *Debtors' Motion to Compel Mediation Regarding Competing Plan and Competing Plan Procedures* [ECF No. 412].

12. On February 14, 2024, the Petitioning Creditors filed the *Letter to the Honorable John P. Mastando, III on behalf of the Petitioning Creditors re: Mediation Motion* [ECF No. 414].

13. On February 14, 2024, the Committee filed the *Letter to Judge Mastando regarding Request for Status Conference* [ECF No. 415].

14. On February 14, 2024, the Debtors filed the *Letter to the Honorable Judge John P. Mastando III Regarding District Court Application* [ECF No. 416].

15. On February 15, 2024, the Court entered an order at ECF No. 421 regarding docket nos. 412, 414, 415, and 416, ordering the following:

(1) The hearing on the Motion to Compel on February 27, 2024 shall be a status conference;
(2) Briefing on the Motion to Compel is adjourned and shall be considered (to the extent necessary) at the February 27, 2024 status conference; and
(3) The parties are directed to continue their discussions and update the Court in the Status Report to be filed with the Court by February 26, 2024, at 12:00 noon.

16. On February 15, 2024, Levona Holdings, Ltd. ("Levona") filed the *Letter Addressed to the Honorable John P. Mastando re: Discovery Conference* [ECF No. 423].

5

**BASIS FOR RELIEF**

I.      **STATUTORY FRAMEWORK**

"While there is a presumption that a debtor should be permitted to remain in possession of its business, that presumption is not absolute." *In re Sillerman*, 605 B.R. 631, 640 (Bankr. S.D.N.Y. 2019). Section 1104(a) provides for two paths to the appointment of a chapter 11 trustee: (1) for cause or (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. 11 U.S.C. § 1104(a)(1) and (2). The sections provide, in pertinent part:

> (a)    At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. . . .
> >
> > (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor [ ].

11 U.S.C. § 1104(a)(1), (a)(2).

Section 1104(a)(2) of the Bankruptcy Code allows appointment of a trustee even when no "cause" exists. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

II.     **APPOINTMENT OF A CHAPTER 11 TRUSTEE IS IN THE INTERESTS OF CREDITORS AND OTHER INTERESTS OF THE ESTATE**

The Court may appoint a trustee if it is in the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). "Section 1104(a)(2) envisions a flexible standard and gives the district court discretion to appoint a trustee when

6

doing so would serve the parties' and estate's interests." *In re The 1031 Tax Grp., LLC*, 374 B.R. 78, 90 (Bankr. S.D.N.Y. 2007) (internal quotations and citations omitted). In applying section 1104(a)(2), courts should "eschew rigid absolutes and look to the practical realities and necessities." *In re Adelphia Communication Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006) (citations and alterations omitted). As a court noted in *Schuster v. Dragone*:

> In determining whether the appointment of a trustee is in the best interests of creditors, a bankruptcy court must necessarily resort to its broad equity powers." In equity, "courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests . . . . Moreover, equitable remedies are a special blend of what is necessary, what is fair, and what is workable.

266 B.R. 268, 272-73 (D. Conn. 2001) (quotations omitted). Accordingly, the standard for appointment of a chapter 11 trustee under section 1104(a)(2) is flexible.

To be sure, "there is a strong presumption against appointing an outside trustee, because '[t]he debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization.'" *In re Eljamal*, No. 17-CV-7870 (KMK), 2018 WL 4735719, at *6 (S.D.N.Y. Sept. 28, 2018) (quoting *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998)). But this presumption arises because current management is the most suitable to operate the business. *See id.* (citing *Taub v. Adams*, 2010 WL 8961434, at *5 (E.D.N.Y. Aug. 31, 2010); *In re Marvel Entm't Grp. Inc.*, 140 F.3d at 471). Here, there are three Debtors, each with no operations. *See, e.g.*, Eletson Holdings Inc. Statement of Financial Affairs (SOFA) [ECF No. 217] at 1 (answering "none" to the question asking: "Gross Revenue from business" and "Non-business revenue") Agathonissos Finance LLC Statement of Financial Affairs (SOFA) [ECF No. 219] at 1 (same); Eletson Finance (US) LLC Statement of Financial Affairs (SOFA) [ECF No. 221] (same). The main assets the Debtors have are shares and equity interests of subsidiaries and

7

potential causes of action. *See generally*, Eletson Holdings Inc. Schedules [ECF No. 216]; Agathonissos Finance LLC Schedules [ECF No. 218]; Eletson Finance (US) LLC Schedules [ECF No. 220]. Accordingly, no presumption should apply here as there are no operations.

Other factors considered by the courts in assessing motions brought under this section include: (1) the trustworthiness of the parties, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence – or lack thereof – of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment. *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). While courts will consider these factors, "in the final analysis, the decision to appoint a trustee rests in the court's discretion." *In re China Fishery Grp. Ltd. (Cayman)*, No. 16-11895 (JLG), 2016 WL 6875903, at *14 (Bankr. S.D.N.Y. Oct. 28, 2016). Applying the factors to the instant case demonstrates the need for a trustee.

### A. Trustworthiness

The parties in this case clearly lack trust in the competing parties. In fact, in connection with this factor or as its own separate factor, the appointment of a trustee under §1104(a)(2) is appropriate where a court determines the level of acrimony between the debtor and its creditors warrants a neutral third party. In *In re Eljamal*, the United States District Court for the Southern District of New York affirmed the judgement of the bankruptcy court in appointing a chapter 11 trustee pursuant to section 1104(a)(2). 2018 WL 4735719, at *8–9 (S.D.N.Y. Sept. 28, 2018). The district court noted the "long history of acrimony between the Parties" in the case and that the "relationship between the Parties was contentious prior to the bankruptcy proceedings, and this acrimony carried over into the bankruptcy case." *Id* at *8. The district court further stated, "given the history of contentious litigation between the Parties, it was reasonable for the

8

bankruptcy court to find that the acrimony between them would continue at an unacceptable level without management by an objective third party." *Id.*; *see also In re Marvel Entm't Grp., Inc.*, 140 F.3d at 474 ("The level of acrimony found to exist in this case certainly makes the appointment of a trustee in the best interest of the parties and the estate."); *In re Ancona*, 2016 WL 7868696, *12 (Bankr. S.D.N.Y) (conflict and acrimony between debtor and creditor, which is at heart of case, may be alleviated by neutral trustee who will foster transparency and bolster confidence); *In re Bible Speaks*, 74 B.R. 511, 513 (Bankr. Mass. 1987) (appointment of trustee justified by bickering between debtor and creditors committee). Here, the level of acrimony between the parties can be demonstrated in excerpts from three recent filings. In the Debtors' objection to a motion filed by the Committee:

> Filed within hours of the Committee's selection of Dechert as the Committee's proposed counsel, the [motion filed by the Committee] seems to be principally aimed at benefitting Murchinson Ltd. ("Murchinson") and its alter egos – which were until very recently (discovery will determine when, if ever, it stopped) represented by Dechert, and which continue to direct the actions of Committee member, Wilmington Savings Fund Society, FSB ("Wilmington"). . . . Dechert now seeks to cloak its actions in the legitimacy of its role as Committee counsel. Yet the motivations of Dechert and Wilmington remain the same – unfettered allegiance to Murchinson and an unwavering commitment to preventing enforcement under the Final Award. . . . Justice Ariel Belen, the arbitrator in the Arbitration, after becoming quite familiar with Murchinson and Levona's actions, entered both a temporary restraining order and a status quo injunction prohibiting Murchinson and its affiliates from further interference. Both prior to, and after, the issuance of these injunctions, Murchinson, Levona, and their alter ego, Pach Shemen LLC ("Pach Shemen"), engaged in bribery (*Final Award*, . . . at 51); fraud (*id.* at 70); commercial sabotage leading to unlawful disclosure of confidential financial information, ship arrests, and other bank interference (*id.* at 51-56); knowing contract breaches characterized as unlawful and invalid by Levona's own counsel (*id.* at 57-59); deliberate and willful violation of status quo injunctions (*id.* at 59-62); a constant barrage of Levona motions in the Arbitration (*id.* at 83-84, 88); the multiplication of other bad-faith proceedings against individuals and affiliates, culminating in a bad-faith bankruptcy filing (*id.* at 73); other "game- playing" by Murchinson including only producing documents that it wanted to and none that it did not and taking an active part in the Arbitration while at the same time feigning it was not subject to its jurisdiction (*id.* at 73); lies under

9

oath to the Arbitrator (*id.* at 71-73); and the complete absence of any contrition for their odious and terribly damaging behavior (*id.* at 72).

*Objection of the Debtors to the "Motion of the Official Committee of Unsecured Creditors to Modify the Court's Prior Order Granting Relief from the Automatic Stay"* [ECF No. 286] at 1- 3.

The Committee said the following regarding the Debtors and the families that own equity of the Debtors:

> Rather than seeking to maximize the value of their estates, the families that own and manage the Debtors have been working relentlessly to transfer their most valuable assets to entities they own in the hopes of placing them outside the reach of creditors. According to the Debtors, the families purportedly transferred the preferred shares in Eletson Gas, worth about $187 million, to entities they control in return for an alleged (unfulfilled) promise to pay €3 million, less than 2% of what those interests are worth. They supposedly did so at a "family meeting," with no apparent corporate authority, with no documentation, and at a time that Eletson Holdings was deeply insolvent and in default on its bond debt. . . . [A]t the direction of the very individuals who seek to loot the estate, the Debtors have spent millions of dollars that should be preserved for creditors—without Court approval—to not only defend the purported transfer but to insulate it from avoidance or challenge by creditors. . . . The Debtors also have refused to cooperate with the Committee or make disclosures concerning the Debtors' assets.

Committee Motion for Chapter 11 Trustee at ¶ 3-6. Likewise the Petitioning Creditors have also made their views known:

> At no time since the commencement of these cases have the Debtors demonstrated any appreciation for their fiduciary duties to creditors. Instead, the Debtors have unabashedly prosecuted these cases solely for the benefit of their insiders and aggressively sought to punish any party that seeks to have them answer for their debts. The Debtors could not have demonstrated this point more clearly than by filing their bad faith, impossible-to-confirm chapter 11 plan on the 120th day of exclusivity. To maintain exclusivity, the Debtors are required to work with their creditors in good faith toward a resolution. . . . . Although the Eletson insiders view the Debtors and their affiliates all as part of a family business, that does not entitle them to any different treatment under the law. There is no "family" company exception to the absolute priority rule. The principal families' sense of entitlement, however, has clearly impaired the Debtors' ability to faithfully discharge their fiduciary duties to their creditors.

Exclusivity Motion at 1-2.

10

While the Court has seen the statements above before, the juxtaposition of them demonstrates the level of acrimony and illustrates why an independent chapter 11 trustee is in the best interests of the estates. This acrimony between the Debtor, the Committee, and the Petitioning Creditors, among others, is not only at the heart of this case, but prevents the case from moving forward in a transparent manner in which all sides can be confident.

### B. Prospects of Rehabilitation

Almost a year ago, on March 7, 2023, the Petition Creditors filed the involuntary petitions. And while the case converted to chapter 11 in September 2023, only recently have the Debtors filed the Plan. According to the statements made by the Committee and the Petitioning, this Plan will not have overwhelming support, and any prospect of rehabilitation or reorganization in the future is dim. *See* Committee Letter at 2 ("[T]he Debtors' plan has no creditor support and is patently unconfirmable. Among its many fatal defects, the Debtors have proposed a 'new value' plan in which the opportunity to contribute new value and receive all the equity in the Debtors has been offered to their existing shareholders on an exclusive basis, without a market test, in violation of the Supreme Court's ruling in *Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S. 434 (1999)."); Exclusivity Motion at 16 ("Put simply, the Debtors' Plan is nothing more than an improper and unconfirmable tool for delay.").

### C. Confidence of Community

As shown by the facts above, neither the Debtor nor the Committee trust the other to manage the assets of this case. And the Debtors clearly do not trust Petitioning Creditor Pach Shemen. In addition, the parties vocalizing their concerns on behalf of creditors—namely the

11

Committee and the Petitioning Creditors—do not trust the actions of certain of the Debtors' current management or equity owners.

### D. Benefit of a Trustee Balanced Against the Cost

A cost-benefit analysis clearly weighs in favor of a chapter 11 trustee. As the court in *Elimjal* pointed out, "it is important to note that the appointment of a Chapter 11 trustee, pursuant to § 1104(a)(2), is not punishment, nor does it imply a finding of fault." *In re Eljamal*, 2018 WL 4735719, at *9 (S.D.N.Y. Sept. 28, 2018) (internal quotations and alterations omitted). The court noted that "deceptive actions of the Committee would support the appointment of a neutral third party" and found that "the relevant issue here is not which Party should be blamed for causing the delay, but rather that the case had continuously been delayed, to the point that an objective third party was needed to move the progress forward." *Id.* (internal quotations and citations omitted). Here, the Court does not need to find one party at fault, but rather determine if the parties would benefit from a neutral third party, given the costs. Clearly, it is in the interest of the Debtors and the creditors at this juncture to put an end the struggle for control of the limited assets of this estate which would continue for months down the road. Accordingly, the Court should appoint a chapter 11 trustee.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court direct the United States Trustee to appoint a chapter 11 trustee or grant such other and further relief as may be deemed just and proper.

Dated: February 16, 2024
       New York, New York

                                     WILLIAM K. HARRINGTON
                                     UNITED STATES TRUSTEE

By:   */s/ Daniel Rudewicz*
       Paul Schwartzberg, Esq.
       Daniel Rudewicz, Esq.
       Trial Attorneys
       Office of the United States Trustee - NY
       Alexander Hamilton Custom House
       One Bowling Green, Room 534
       New York, NY 10004-1408
       Tel. No. (212) 510-0500