**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ELETSON HOLDINGS INC.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 23-10322 (JPM)<br><br>(Jointly Administered) |

**DEBTORS' NOTICE OF OBJECTION TO DECHERT LLP'S FIRST AND SECOND MONTHLY FEE STATEMENTS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIODS FROM OCTOBER 25, 2023 THROUGH DECEMBER 31, 2023**

The above captioned debtors and debtors-in-possession (the "Debtors") in these Chapter 11 cases, hereby object to the: (1) *First Monthly Fee Statement of Dechert LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period From October 25, 2023 through November 30, 2023* [Dkt. 399] ("First Fee Statement"); and (2) *Second Monthly Fee Statement of Dechert LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period From December 1, 2023 through December 31, 2023* [Dkt. 400] ("Second Fee Statement", together with the First Fee Statement, the "Fee Statements"), pursuant to which Dechert LLP ("Dechert"), as counsel to the Official Committee of Unsecured Creditors (the "Committee"), seeks compensation pursuant to the *Order Granting Motion Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Dkt. 398] (the "Interim Compensation Order"). In support thereof, the Debtors state as follows:

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

**I.     INTRODUCTION**

1.     While the Debtors have numerous bases for this Objection, they can be summed up relatively simply – a substantial portion of the services for which Dechert seeks reimbursement have provided no benefit to the Debtors' estate.  Rather, the Fee Statements confirm that Dechert has continued act at the behest of Murchinson Ltd. ("Murchinson"), Levona Holdings Ltd. ("Levona") and Pach Shemen LLC ("Pach Shemen"), the only parties who could have conceivably benefited from a large portion of the services performed by Dechert during the periods at issue in the Fee Statements.

2.     Notwithstanding this, the fees ($1,306,760.00) and expenses ($23,024.94) generated by Dechert, for just **two months** of work, is excessive, unnecessary and outside the bounds for a case of the size.  Even a cursory review of Dechert's invoices reflect that the Committee is intent on simply trying to "outspend" the Debtors for no reason other than to increase substantially the administrative burden on the Debtors' estates.

3.     Now, the Committee tries to force the Debtors to spend time and expense in the determination of professional fee petitions on an expedited timeline.  All this is merely to interfere with the administration of the Debtors' cases and to increase costs, all to principally benefit a single creditor and its affiliates.

**II.    ARGUMENT**

   **A.     General Considerations Regarding Compensation of Professionals**

4.     Section 330(a)(1)(A) of the Bankruptcy Code provides that a bankruptcy court may award "reasonable compensation for actual, necessary services rendered" by an attorney for the Committee. 11 U.S.C. § 330(a)(1)(A).  Such fees are only to be awarded after notice and a hearing, and the movant bears the burden of establishing that its actions justify compensation. *See, e.g., In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) ("The applicant bears the burden of

proof on its claim for compensation."). The concept of the reasonable value of professional services also applies to interim requests for compensation made pursuant to Section 331 of the Bankruptcy Code. 11 U.S.C. § 331 ("any professional person . . . may apply to the court [under Section 331] . . . for such compensation for services rendered . . . or reimbursement for expenses incurred . . . as is provided under section 330."). Compensation and expenses need not be granted in the amounts requested by the movant. A court, on its own motion, or on the motion of any party in interest, may award compensation that is less than the amount of compensation requested. 11 U.S.C. § 330(a)(2).

5. In determining the amount of reasonable compensation to be awarded, the bankruptcy court shall consider the nature, the extent and the value of such services, taking into account all relevant factors, including, *inter alia*, whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under the Bankruptcy Code. 11 U.S.C. § 330(a)(3). At the same time, the bankruptcy court shall not allow compensation for: (1) unnecessary duplication of services, or (2) services that were not (a) reasonably likely to benefit the debtor's estate, or (b) necessary to the administration of the case. 11 U.S.C. § 330(a)(4).

### B. Benefit to the Estate is a Threshold Requirement for Compensation or Reimbursement From Estate Assets

6. In determining whether compensation should be allowed to be paid from the assets of the estate, the bankruptcy court must first examine whether the legal services provided by the movant were "necessary" and benefited the estate. *In re Level 8 Apparel LLC*, 2023 Bankr. LEXIS 1006 (Bankr. S.D.N.Y. April 13, 2023) (citing *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1322-23 (10th Cir. 1993)). Thus, this question of "whether an attorney's services have conferred a benefit on the bankruptcy estate is not merely a factor to be considered when deciding what

would constitute a reasonable fee for attorney's services, but is a *threshold question* bearing on an attorney's eligibility for *any* compensation." *In re Coastal Nursing Center, Inc.*, 162 B.R. 918, 919 (Bankr. S.D. GA 1993) (emphasis added) (denying compensation for anything beyond the pre-petition retainer debtor's counsel had received when debtor's attorney's services conferred little or no benefit on the estate).

7.      Given that the benefit requirement is a threshold issue, the Court "shall not allow" compensation for "unnecessary duplication of service," for services that were not "reasonably likely to benefit the debtor's estate," or for services that were not "necessary to the administration of the case." *In re Haimil Realty Corp.*, 579 B.R. 19, 27 (Bankr. S.D.N.Y. 2017) (citing 11 U.S.C. § 330(a)(4)); *see also In re Ryan*, 82 B.R. 929, 932 (N.D. Ill. 1987) (as a matter of law, attorneys may recover fees from the estate only if their services actually benefited the estate).

8.      Here, Dechert has not established – as is its burden – that a substantial portion of the legal services for which it now seeks compensation conferred any benefit or otherwise maximized the value *on the Debtors' estate*. Indeed, in just *two months*, Dechert incurred fees **exceeding $1,300,000**, a substantial portion of which is directly attributable to advancing the Committee's meritless attempts to derail the confirmation proceedings in the District Court, objecting to the Debtors' retention of its professionals, and driving up administrative costs under the guise of "investigation" and "litigation."

### 1.      *Automatic Stay Matters (Code 005)*

9.      Dechert seeks compensation for services it provided to the Committee in connection with the *Motion of the Official Committee of Unsecured Creditors to Modify the Court's Prior Order Granting Relief from the Automatic Stay [Dkt. 239]* (the "Motion to Modify"), **totaling $170,858.00**. None of these expenses provided any benefit to the estate whatsoever, and Debtors object to the reimbursement of these fees in their entirety.

10. On October 25, 2023—the first day of Dechert's retention—Dechert's very first act was to try to prevent Holdings from seeking to confirm the arbitration award which preserved Holdings' equity ownership to the exclusion of Levona. The Motion to Modify sought to halt indefinitely the confirmation proceedings between Holdings and non-debtor Eletson Corp. and Levona in the District Court. There are no interests this served other than Murchinson and Levona, who, facing in excess of $100 million in damages, sought repeatedly to derail the arbitration and confirmation proceedings. Prior to the Motion to Modify, Levona attempted three separate times to have the confirmation proceeding moved to the Bankruptcy Court, but each attempt was rejected by the District Court. *See Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 23-cv-7331 (LJL) at Dkt. No. 32 (statement of relatedness to bankruptcy action); Dkt. No. 36 (denying referral to Bankruptcy Court); Dkt. No. 39 (denying reconsideration of denial of referral to Bankruptcy Court).

11. Dechert spent over 40 hours preparing the Motion to Modify, which was filed coincidentally only *three days* after Dechert was retained, and *ten days* after the District Court declined to transfer the case to this Court. What is even more incredible, Dechert spent a total of **156.7 hours** pursuing the motion, which this Court ultimately denied noting that it was improperly sought. *See Dkt. 348*. The lack of any conceivable benefit to the estate should have been obvious from the outset. Accordingly, all fees related to the Motion to Modify should be denied.

    2. *Litigation (Code 014)*

12. Dechert seeks compensation of **$107,479.50** for work related to "litigation." Aside from an entry "research[ing] case law in support of potential litigation" (1.6 hours), *Dkt. 399 at 36*, virtually all the time billed by Dechert was spent analyzing, monitoring and improperly intervening in the District Court confirmation proceedings. Not only is the amount of time spent excessive and unreasonable, but much like the Motion to Modify, this work unquestionably served

to benefit principally Murchinson and Levona, and not the estate, and the request for reimbursement for this category of fees should be denied in full.

13.     If there was ever any doubt, the Fee Statements clearly show that the Committee is doing the bidding of Murchinson and Levona, while seeking to exploit the estate's limited resources in pursuit of these efforts. For example, Dechert's invoices reflect that it engaged in multiple telephone calls with Levona and its counsel regarding the Motion to Stay and the "status" of the confirmation proceedings:

| Date | Name | Hours | Code | Amount |
|---|---|---|---|---|
| 11/01/23 | David Herman | 0.30 | 014 | 382.50 |
| | Call with Quinn regarding District Court proceedings (.3). | | | |
| 11/01/23 | Stephen Zide | 1.00 | 014 | 1,550.00 |
| | Call with Quinn regarding arbitration appeal (.5); discuss same with D. Herman (.5). | | | |
| 11/02/23 | David Herman | 4.90 | 013 | 6,247.50 |
| | Prepare talking points for hearing on motion to shorten time (2.3); meeting with O. Haney regarding same (.5); call with Quinn regarding motion to shorten (.5); call with Committee member regarding same (.3); participate in hearing on motion to shorten time (.8); call with Quinn regarding motion to shorten (.2); call with Committee member regarding same (.3). | | | |
| 11/02/23 | Stephen Zide | 0.50 | 014 | 775.00 |
| | Call with D. Herman and Quinn regarding status of appeal (.5). | | | |
| 11/05/23 | Stephen Zide | 0.60 | 005 | 930.00 |
| | Call with Quinn regarding stay motion (.3); call with counsel to Committee member regarding same (.3). | | | |
| 11/16/23 | David Herman | 0.40 | 014 | 510.00 |
| | Call with I. Nesser regarding District Court proceedings. | | | |
| 11/28/23 | Stephen Zide | 0.70 | 008 | 1,085.00 |
| | Call with Quinn Emmanuel regarding case issues (.7). | | | |

*Dkt. 399 at 35, 51, 53, 57; Dkt. 400 at 35.* These entries only demonstrate that Dechert sought to use the Debtors' estate to advance solely the interests of Murchinson and Levona.

14. Further, Dechert spent 39 hours (generating $54,776.00 in fees) researching, preparing and drafting a *2 ½ page letter* filed with the District Court on behalf of the Committee on December 28, 2023—over six weeks after briefing had closed and five days prior to the oral argument in the confirmation proceeding. *See Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 23-cv-7331 (LJL) at Dkt. No. 69 (requesting that the Court "vacate that portion of the award finding that the Preferred Shares were transferred to the Nominees and holding that the Nominees and Eletson Gas, rather than the Petitioners, were entitled to damages").[2] Significantly, other than purporting to alert the District Court that it could "confirm or vacate the arbitration award 'either in whole or in part,'" the letter simply re-hashed the same arguments asserted by Levona in its briefing. Putting aside the impropriety of the filing, the amount of time spent on preparing the motion is indisputably unreasonable and excessive.[3]

15. Finally, between December 15 to December 21, 2023, Dechert spent over 26 hours researching and preparing memos on "injunctions and restraining orders" and "enforcement of arbitration awards." *See Dkt. 400 at 29-30*. Dechert provides no detail regarding what the mysterious "injunction and restraining order" related to (presumably to attempt, yet again, to halt the confirmation) or why the Committee was at all interested in enforcement of the award. Dechert's "litigation" entries, therefore, do not appear to provide any benefit to the estate, but is rather a transparent attempt to ratchet up fees to assist Murchinson and Levona with derailing the confirmation. These fees must be denied.

---

[2] Nothing in the Federal Rules of Civil Procedure permitted the Committee, a "non-party," to be heard in the confirmation proceeding, and nothing in the New York Convention permitted this intrusion either.
[3] Dechert also spent over 4 hours preparing for the confirmation hearing—a hearing in which it had no role. *See Dkt. 400 at 28-29*.

### *3.     Retention and Fee Applications (Code 001)*

16.    Dechert seeks reimbursement for fees totaling $339,545,50 relating to retention and fee applications.  While Debtors do not object to the fees incurred by Dechert with respect to its initial retention application and the application to retain FTI, the Debtors object to all work performed in responding to the Debtors' limited objection to Dechert's retention, including preparing its reply brief in support of retention, totaling approximately $66,826.00 (First Fee Statement) and $24,784.50 (Second Fee Statement).  This work could have been avoided had Dechert fully and properly disclosed its prior engagements with several parties to this bankruptcy proceeding.

17.    As to Murchinson and Pach Shemen, Dechert represented both alter-ego entities in connection with their alleged acquisition of the Notes, and Stephen Zide of Dechert played a principal role in the negotiations with the selling noteholders.  Dechert was not fully transparent about this representation, and initially misrepresented to the Court the date on which that representation began.  *See Dkt. 273, Ex. B (Zide Decl.) ¶ 26* ("Dechert's representation of Murchinson and Pach Shemen began on December 6, 2022").  It was only after the Debtors' questioned the timing of Dechert's representation that Dechert was compelled to disclose, on December 1, 2023, that the relationship with Murchinson actually began on or before October 20, 2022. *See Dkt. 304 (Zide Reply Decl.) ¶¶ 5-7* (also disclosing that "[a]t the time, Murchinson was a client of the firm on an unrelated matter").  Dechert's lack of transparency gave rise to needless motion practice, at the expense of the estate, and the fees arising out of same should be denied.

18.    Next, the Committee tried to interfere with the Debtors' retention of their professionals, despite their professionals' agreement not to do so, trying to derail the chapter 11 cases from the outset.  Again, the Court saw through the Committee's actions and granted the retention of Reed Smith over the Committee's interference.  The Debtors, therefore, object to the

reimbursement of any fees and expenses related to Dechert's objections to the Debtors' retention of Reed Smith as counsel, totaling $35,777.50. *See Dkt. 399 at 15-18.*

    **4.**  **DIP/Cash Collateral/Cash Management (Code 002)**

  19. Dechert cannot provide any basis for performing services, totaling $38,812.50 in fees, related to investigating the Debtors' debtor-in-possession, cash collateral and cash management procedures between November 3 to November 29, 2023. What these entries ultimately reflect is Dechert's attempts to run up administrative costs to determine whether the case should be converted—in *November 2023*—for an inability to pay administrative fees. *See, e.g. Dkt. 399 at 23* (entries stating: "Conduct legal research regarding conversion to chapter 7 for lack of case funding" (3.2 hours), "Research case law regarding case funding and administrative expenses" (3.8 hours), and "Conduct legal research regarding administrative expenses, lack of funding, and the plan" (3.3 hours)). Of the 32 hours spent by Dechert, only four hours were spent emailing counsel for the Debtors, one hour on calls, and the remainder determining if the Debtors had enough money to fund administrative costs, despite the fact that no procedures or orders for interim compensation were filed or even contemplated at this point. This represents a clear waste of resources and the Debtors, therefore, object to these fees in their entirety.

    **5.**  **Investigation (Code 015)**

  20. Dechert likewise cannot provide any reasonable explanation for spending over **<u>240 hours</u>** spent on "investigations" in the two months covered by the Fee Statements. Dechert spent nearly half of that time (approximately 35 hours in November and 72 hours in December) related to drafting and filing the Committee's *Ex Parte Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Rule 2004 Authorizing and Directing the Production of Documents from and Examinations of the Debtors and Certain Third Parties* [Dkt. No. 335] (the "<u>2004 Motion</u>"), which including, the motion, form document requests and

form deposition notice consists of 152 pages. Notwithstanding the significant amount of time spent on the 2004 Motion, most of the requested discovery in the 2004 Motion is already in Dechert's possession from the Arbitration and the previous 2004 discovery undertaken in the chapter 7 cases, rendering most of the requests in the 2004 Motion unnecessary. Further, a significant portion of the of the 2004 Motion seeks information related to non-Debtors, the Arbitration and other information otherwise unrelated to these Chapter 11 cases. The inordinate amount of time spent preparing and filing a duplicative 2004 Motion is a clear waste of estate resources and the Debtors, therefore, object to those fees.

21. Dechert spent approximately 18 hours preparing for (not attending) 341(a) meetings which despite being adjourned twice, is an irregular, and unnecessary cost to the Debtors' estates. The Committee spent a majority of that time seeking information unrelated to the Debtors' financials and repeatedly asking the same questions as reflected in the transcripts for the hearings of the 341(a) meetings. *See 2004 Motion Exhibit H* at 33-43. Given the unnecessary amount of time spent on preparing for 341(a) meetings the Debtors object to those fees.

22. Dechert spent a majority of the remainder of the time on undefined investigations of claims and purported insider transfers. Despite expending approximately 60 hours related to "claim investigations" the Committee has asserted no claims other than the repeated claim that the transfer of the preferred shares of Eletson Gas LLC ("Gas") constituted a fraudulent transfer of some sort, yet has made no demands on the independent committee established by the Debtors to independently assess the validity of claims asserted against the Debtors' insiders. Dechert has not spent anytime meaningfully pursuing the claims it supposedly believes exist. There are no references to any complaints, standing motions or demands on the Debtors or the independent committee established by the Debtors. Instead, Dechert has spent significant time repeatedly

reviewing the same information provided by the Debtors hoping to find new ways to attack the same non-Debtor transaction that has now been twice upheld. *See Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 23-cv-7331 (LJL) at Dkt. No. 83 (decision confirming in part, and vacating in part, the final arbitration award).

23. The Debtors understand that the purpose of the Committee is to undertake investigations. However, the Committee should not be permitted to continually investigate a single transaction that has repeatedly been upheld or seek excessive and duplicative discovery to the detriment of the Debtors' estates and the creditors the Committee is meant to represent.

24. In short, the Committee cannot have it both ways. The Committee and/or Dechert has the information it seeks and should have presented it to the independent committee, and unless and until the Committee presents it to the independent committee and makes a demand, the Debtors object to the fees in full. Conversely, the Committee and/or Dechert has the information it seeks, in which case it is inconceivable how Dechert could have spent substantial time and resources on tasks for which it purportedly lacked information. Given that the these "investigations" have not had a recognizable benefit to the Debtors' estates, the Debtors believe these fees are unwarranted and should be denied.

C. **Dechert's Fees are Duplicative, Excessive and Unreasonable**

25. The prevailing method for weighing the reasonableness of fees pursuant to Section 330(a)(3) of the Code is the "lodestar" approach. *See In re Ridgemour Meyer Props., LLC*, No. 08-13153 (SMB), 2018 Bankr. LEXIS 1497, at *38 (Bankr. S.D.N.Y. May 18, 2018), *aff'd*, 599 B.R. 215 (S.D.N.Y. 2019), *aff'd*, 791 F. App'x 279 (2d Cir. 2020). "Courts generally apply the 'lodestar' method under which they arrive at a fee by multiplying the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Id.* (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (internal quotations omitted).

26. Further, the reasonableness of the hours expended is a "critical lodestar component," which courts must consider. *In re Hanover*, No. 8-20-70676-ast, 2020 Bankr. LEXIS 1308, at *7 (Bankr. E.D.N.Y. May 19, 2020). Courts must exclude hours that are "excessive, redundant, or otherwise unnecessary" and have "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *In re Ridgemour*, 2018 Bankr. LEXIS 1497, at *38 (Bankr. S.D.N.Y. May 18, 2018), (citing *Kirsch*, 148 F.3d at 172). Further, "[i]t is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Aus. Creditanstalt AG*, 2005 U.S. Dist. LEXIS 28880, at *23 (S.D.N.Y. Nov. 16, 2005).

27. First, Debtors object to rates charged by Dechert's partners and one associate as unreasonable: Gary J. Mennitt (Partner: $1,600); Stephen Zide (Partner: $1,500); David Herman (Partner: $1,275); and Samantha DeRuvo (Associate: $1,140). These rates are inflated, excessive and do not justify the work given relative size and complexity of this matter. Indeed, these rates far exceed the rates charged by the Debtor's counsel. *See Dkt. 235-2 at 5* (average rate for partners of $994; primary partners charging $896 and 894 per hour).

28. Debtors further object to fees related to the excessive and unnecessary work performed by Dechert's partners. From October 25 through December 31, 2023, Dechert staffed three partners on this matter: David Herman, Stephen Zide and Gary J. Mennitt. While Mr. Mennitts' role appeared to be minimal, the worked performed by Mr. Herman and Mr. Zide was disproportionate and excessive compared to the total amount of time spent by Dechert for the two interim periods. Indeed, of the total amounts requested in the First Fee Statement and Second Fee

Statement, $339,492.50 (58.4% of total fees) and $396,542.00 (54.6% of total fees), respectively, are directly attributable to Mr. Herman and Mr. Zide. *See Dkt. 399 at 3; Dkt. 400 at 3.*

29. As an initial matter, many tasks carried out by these partners could have been delegated to associates. To cite an example, Dechert's associates cold have ""conduct[ed] legal research regarding conversation to Chapter 7 for lack of case funding" (2.3 hours). *See Dkt. 399 at 23.* Further, Dechert's partners spent considerable time reviewing, drafting and revising the same motions (including spending over 7 hours "review[ing] and analyz[ing]" Debtors' objection to Dechert's retention application) where use of a single partner would have been reasonable:

**Motion to Stay**

| Date | Attorney | Hours | Code | Amount |
|---|---|---|---|---|
| 10/25/23 | David Herman | 4.10 | 005 | 5,227.50 |
| | Draft motion to reimpose stay (2.7); revise proposed order in connection with motion to reimpose stay (.6); email correspondence with O. Haney regarding stay motion (.3); email with S. Zide and O. Haney regarding motion to shorten time (.1); review comments to stay motion (.4). | | | |
| 10/26/23 | David Herman | 5.50 | 005 | 7,012.50 |
| | Meeting with O. Haney regarding draft motion and work plan (.4); email with Committee member regarding stay motion (.3); revise motion to modify stay relief order (3.4); strategy meeting with S. Zide (.4); call with Committee member counsel regarding stay motion (.4); email with Committee regarding stay motion (.2); email with Committee member regarding stay motion (.4). | | | |
| 10/26/23 | Stephen Zide | 2.30 | 005 | 3,565.00 |
| | Email correspondence with Committee members regarding motion to reinstate the stay (.4); call with Committee members regarding motion to reinstate the stay (.5); revise stay motion (1.0); meeting with D. Herman regarding strategy (.4). | | | |
| 10/27/23 | David Herman | 4.80 | 005 | 6,120.00 |
| | Email correspondence with Committee member regarding stay motion (.3); revise and finalize motion to modify stay relief order (2.7); revise motion to shorten notice (.5); email correspondence with O. Haney regarding stay motion (.4); finalize motion papers to accompany stay relief order (.5); revise draft hearing notice (.2); revise correspondence to the Court regarding stay motion (.2). | | | |

## Retention Motions

| Date | Name | Hours | Task | Amount |
|---|---|---|---|---|
| 11/27/23 | David Herman | 3.60 | 001 | 4,590.00 |

Email with Debtors' counsel regarding objection to Dechert retention application (.2); review and analyze Debtors' objection to Dechert retention application (1.8); discussions with S. Zide regarding same (1.2); call with Committee member regarding same (.4).

| | | | | |
|---|---|---|---|---|
| 11/27/23 | Stephen Zide | 5.70 | 001 | 8,835.00 |

Call with potential financial advisor regarding interest in Committee representation (.3); review Debtors' objection to Dechert retention (2.9); confer with D. Herman regarding same (1.2); call with Committee member regarding same (.4); analyze U.S. Trustee reservation of rights for Dechert retention (.6); review bondholder objection to Dechert retention (.3).

| | | | | |
|---|---|---|---|---|
| 11/28/23 | David Herman | 7.70 | 001 | 9,817.50 |

Analyze Debtors' objection to Dechert retention (1.0); outline reply in support of retention application (1.3); call with U.S. Trustee's Office regarding retention applications (.5); call with S. Zide regarding same (.2); call with B. Rosenberg regarding Dechert retention application (.5); draft reply in support of Dechert retention application (2.8); review research and case law in connection with Dechert retention application reply (1.4).

| | | | | |
|---|---|---|---|---|
| 11/28/23 | Stephen Zide | 6.50 | 001 | 10,075.00 |

Review draft supplemental declaration from Reed Smith regarding retention (.7); conduct research on retention issues (.5); draft supplemental Zide declaration Dechert regarding retention (2.9); call with D. Herman regarding same (.2); review research on retention issues (.5); further draft supplemental Zide declaration regarding Dechert retention (1.7).

| | | | | |
|---|---|---|---|---|
| 11/29/23 | David Herman | 11.50 | 001 | 14,662.50 |

Analyze Debtors' objection to retention application (1.6); draft reply in support of retention application (3.7); review and comment on potential motion concerning retention application (.6); email correspondence with S. Zide regarding retention application (.4); email correspondence with S. DeRuvo regarding research (.2); review case law in connection with retention reply (1.8); revise reply in support of retention application (3.2).

| | | | | |
|---|---|---|---|---|
| 12/01/23 | David Herman | 4.30 | 001 | 5,482.50 |

Revise reply in support of Dechert retention (3.4); revise sealing motion regarding same (.5); call with O. Haney regarding same (.2); supervise filing of Dechert retention reply (.3).

| | | | | |
|---|---|---|---|---|
| 12/01/23 | Stephen Zide | 1.80 | 001 | 2,790.00 |

Review and finalize retention reply (1.5); email correspondence with potential financial advisors regarding pitches (.3).

**2 ½ Page Letter Brief – District Court**

| Date | Name | Hours | Task | Amount |
|---|---|---|---|---|
| 12/27/23 | David Herman | 9.00 | 014 | 11,475.00 |

Draft letter to the District Court regarding arbitration (2.7); review pleadings in connection with same (1.8); review research and case law in connection with same (1.4); call with S. Zide regarding letter (.3); call with O. Haney regarding research (.2); call with S. Zide regarding same (.1); revise letter to the District Court regarding arbitration (1.9); call with S. Zide regarding letters to the Court and Debtors' counsel (.6).

| Date | Name | Hours | Task | Amount |
|---|---|---|---|---|
| 12/27/23 | Stephen Zide | 4.40 | 014 | 6,820.00 |

Review and comment on letter to District Court regarding modification of award case law (2.7); call with D. Herman regarding same (.3); review research on res judicata and arbitration appeal (1.4).

| Date | Name | Hours | Task | Amount |
|---|---|---|---|---|
| 12/28/23 | David Herman | 8.30 | 014 | 10,582.50 |

Review comments to District Court letter (.3); revise letter to the District Court regarding arbitration (3.6); call with S. Zide and Committee member regarding same (.8); call with S. Zide regarding same (.3); review case law in connection with same (2.4); further call with S. Zide regarding letter to District Court (.2); call with B. Stone regarding filing logistics (.1); supervise filing of letter to the District Court (.6).

| Date | Name | Hours | Task | Amount |
|---|---|---|---|---|
| 12/28/23 | Stephen Zide | 4.20 | 014 | 6,510.00 |

Revise letter to District Court regarding arbitration review (1.6); call with D. Herman and Committee member regarding same (.8); call with K. Wade regarding same (.3); call with D. Herman regarding same (.3); email correspondence with D. Herman and O. Haney regarding same (.4); finalize same (.2); further call with D. Herman regarding same (.2); call with Committee member regarding same (.4).

30.     These are but a few examples of the excessive duplication of efforts and unreasonable amount of time spent by Dechert's partners on matters in this case. While it was the Committee's prerogative to commission or approve such staffing, the Debtors find it unreasonable to shift the resulting fees to the estate when Dechert's efforts could have been pursued with leaner, less partner-intensive staffing. Therefore, the fees requested in the Fee Statements relating to work performed by Dechert's partners should be reduced by 25% to reflect the excessive hours recorded by Dechert's partners. *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) ("a material reduction in the requested fee award is merited to reflect the unusually partner-intensive nature of [the firm's] work"); *Melodrama Publ'g, LLC v. Santiago*, No. 12cv7830-JSR-FM, 2015 U.S. Dist. LEXIS 66769, at *15 (S.D.N.Y. May 19, 2015) (reducing fees by 25% where

the hours billed were excessive and partner-heavy).

31. Similarly, Dechert's invoices reflect that Dechert not only overstaffed this straight-forward bankruptcy proceeding (3 partners, 5 associates, 2 law clerks), but its attorneys consistently duplicated tasks to the detriment of the estate's resources. For example, three partners and two associates spent 11.5 and 21.7 hours, respectively, drafting and editing the Committee's reply in support of the Motion to Modify. *See Dkt. 399 at 28*. This, in conjunction with the unreasonable rates and amount of time spent in connection with the categories of task in the Fee Statements, including but not limited to those discussed in paragraphs 9 to 29 above, warrants a reduction of at least 25% of Dechert's fees requested in the Fee Statements. *See Santiago,* 2015 U.S. Dist. LEXIS 66769, at *15; *In re Navient Sols., LLC*, 627 B.R. 581, 593 (Bankr. S.D.N.Y. 2021) (applying 50% reduction for overstaffing); *Libra Bank, Ltd. v. Banco Nacional de Costa Rica, S.A.*, 570 F. Supp. 870, 896 (S.D.N.Y. 1983) (reducing the lodestar figure by 20% to account for over-staffing)

32. For the reasons set forth herein, the Debtors object to Dechert's request for interim compensation and request a reduction as follows:

**First Fee Statement**

| Code | Project Category | Total Hours | Total Requested Compensation | Total Unobjected Compensation | 25% Reduction Due to Inflated Hourly Rates, Oversatffing and Duplication | Total Revised Compensation |
|---|---|---|---|---|---|---|
| 1 | Retention and Fess Application | 204.7 | $ 232,731.50 | $ 130,128.00 | | $ 130,128.00 |
| 2 | DIP/Cash Collateral/Cash Management | 32.8 | $ 38,812.50 | $ - | | $ - |
| 5 | Automatic Stay Matters | 127.9 | $ 137,937.00 | $ - | | $ - |
| 7 | Business Operations and Governance | 19 | $ 20,295.00 | $ 20,295.00 | $ 5,073.75 | $ 15,221.25 |
| 8 | Case Administration | 36.4 | $ 40,907.50 | $ 40,907.50 | $ 10,226.88 | $ 30,680.63 |
| 9 | Claims Administration and Objections | 31.3 | $ 32,237.00 | $ 32,237.00 | $ 8,059.25 | $ 24,177.75 |
| 13 | Hearings | 37.8 | $ 42,766.00 | $ 42,766.00 | | $ 42,766.00 |
| 14 | Litigation | 20 | $ 21,650.50 | $ 1,400.00 | | $ 1,400.00 |
| 15 | Investigation | 80.2 | $ 93,679.00 | $ - | | $ - |
| 19 | Committee | 52.5 | $ 65,207.50 | $ 65,207.50 | | $ 65,207.50 |
| Total | | | $ 726,223.50 | | | $ 309,581.13 |
| Interim Compensation | | | | | | $ 247,664.90 |

**Second Fee Statement**

| Code | Project Category | Total Hours | Total Requested Compensation | Total Unobjected Compensation | 25% Reduction Due to Inflated Hourly Rates, Oversatffing and Duplication | Total Revised Compensation |
|---|---|---|---|---|---|---|
| 1 | Retention and Fess Application | 98.3 | $ 105,814.00 | $ 81,029.50 | | $ 81,029.50 |
| 5 | Automatic Stay Matters | 28.8 | $ 32,921.00 | $ - | | $ - |
| 7 | Business Operations and Governance | 17.8 | $ 18,819.50 | $ 18,819.50 | $ 4,704.88 | $ 14,114.63 |
| 8 | Case Administration | 34.2 | $ 37,221.50 | $ 37,221.50 | $ 9,305.38 | $ 27,916.13 |
| 9 | Claims Administration and Objections | 9.2 | $ 8,667.00 | $ 8,667.00 | $ 2,166.75 | $ 6,500.25 |
| 13 | Hearings | 52.8 | $ 61,343.50 | $ 61,343.50 | | $ 61,343.50 |
| 14 | Litigation | 86.1 | $ 85,829.00 | $ - | | $ - |
| 15 | Investigation | 161.2 | $ 166,060.50 | $ - | | $ - |
| 19 | Committee | 56 | $ 63,860.50 | $ 63,860.50 | $ 15,965.13 | $ 47,895.38 |
| Total | | | $ 580,536.50 | | | $ 238,799.38 |
| Interim Compensation | | | | | | $ 191,039.50 |

[remainder of page left intentionally blank]

DATED:  New York, New York
February 22, 2024

**REED SMITH LLP**

/s/ *Louis M. Solomon*
Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
      lsolomon@reedsmith.com

-and-

Derek J. Baker
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
      dosei-bonsu@reedsmith.com

-and-

Ann E. Pille (Admitted *Pro Hac Vice*)
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Counsel to the Debtors*