UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Chapter 11 |
|---|---|
| ELETSON HOLDINGS INC., | Case No.: 23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' NOTICE OF OBJECTION TO FIRST MONTHLY FEE STATEMENT OF FTI CONSULTING, INC. FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM DECEMBER 8, 2023 THROUGH DECEMBER 31, 2023**

The above captioned debtors and debtors-in-possession (the "Debtors") in these Chapter 11 cases, hereby object to the: (1) *First Monthly Fee Statement of FTI Consulting, Inc. for Compensation for Services Rendered and Reimbursement of Expenses as Financial Advisor to the Official Committee of Unsecured Creditors for the Period From December 8, 2023 through December 31, 2023* [Dkt. 401] ("Fee Statement"), pursuant to which FTI Consulting, Inc. ("FTI"), as the financial advisor to the Official Committee of Unsecured Creditors (the "Committee"), seeks compensation pursuant to the *Order Granting Motion Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Dkt. 398] (the "Interim Compensation Order") of: (i) $171,788.40 (80% of $214,735.50) as compensation for professional services rendered; and (ii) $18,380.27 for reimbursement of expenses. In support thereof, the Debtors state as follows:

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

**I.      INTRODUCTION**

1.      FTI's Fee Statement now confirms the serious concerns that the Debtors raised at the time the Committee sought to retain FTI.  In a matter of only 24 days, FTI has managed to accrue a staggering $214,735.00 in fees and $18,380.27 in expenses.  The fees are indisputably excessive, unnecessary and outside the bounds for a case of the size.  Even a cursory review of FTI's invoices reflect that the Committee is intent on driving up administrative costs in order to increase substantially the administrative burden on the Debtors' estates.

2.      While FTI has a fiduciary duty to assist the Committee in this proceeding, it does have not a blank check to conduct work in an excessive and redundant manner, even at the direction of the Committee.  FTI's Fee Statement only highlights the immediate need to reign in these increasing costs.  Should this work continue unbated and without objection, FTI will undoubtedly continue to needlessly drive up he administrative expenses of the Debtors' estates, to detriment of the Debtors' creditors to which the Committee owes its fiduciary duties.

**II.     ARGUMENT**

   **A.      General Considerations Regarding Compensation of Professionals**

3.      Section 330(a)(1)(A) of the Bankruptcy Code provides that a bankruptcy court may award "reasonable compensation for actual, necessary services rendered" by a professional retained by the Committee. 11 U.S.C. § 330(a)(1)(A).  Such fees are only to be awarded after notice and a hearing, and the movant bears the burden of establishing that its actions justify compensation. *See, e.g., In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) ("The applicant bears the burden of proof on its claim for compensation.").  The concept of the reasonable value of professional services also applies to interim requests for compensation made pursuant to Section 331 of the Bankruptcy Code. 11 U.S.C. § 331 ("any professional person . . . may apply to the court [under Section 331] . . . for such compensation for services rendered . . . or reimbursement

for expenses incurred . . . as is provided under section 330."). Compensation and expenses need not be granted in the amounts requested by the movant. A court, on its own motion, or on the motion of any party in interest, may award compensation that is less than the amount of compensation requested. 11 U.S.C. § 330(a)(2).

4. In determining the amount of reasonable compensation to be awarded, the bankruptcy court shall consider the nature, the extent and the value of such services, taking into account all relevant factors, including, *inter alia*, whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under the Bankruptcy Code. 11 U.S.C. § 330(a)(3). At the same time, the bankruptcy court shall not allow compensation for: (1) unnecessary duplication of services, or (2) services that were not (a) reasonably likely to benefit the debtor's estate, or (b) necessary to the administration of the case. 11 U.S.C. § 330(a)(4).

### B. Benefit to the Estate is a Threshold Requirement for Compensation or Reimbursement From Estate Assets

5. In determining whether compensation should be allowed to be paid from the assets of the estate, the bankruptcy court must first examine whether the legal services provided by the movant were "necessary" and benefited the estate. *In re Level 8 Apparel LLC*, 2023 Bankr. LEXIS 1006 (Bankr. S.D.N.Y. April 13, 2023) (citing *In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1322-23 (10th Cir. 1993)). Thus, this question of "whether an attorney's services have conferred a benefit on the bankruptcy estate is not merely a factor to be considered when deciding what would constitute a reasonable fee for attorney's services, but is a *threshold question* bearing on an attorney's eligibility for *any* compensation." *In re Coastal Nursing Center, Inc.*, 162 B.R. 918, 919 (Bankr. S.D. GA 1993) (emphasis added) (denying compensation for anything beyond the

pre-petition retainer debtor's counsel had received when debtor's attorney's services conferred little or no benefit on the estate).

6. Given that the benefit requirement is a threshold issue, the Court "shall not allow" compensation for "unnecessary duplication of service," for services that were not "reasonably likely to benefit the debtor's estate," or for services that were not "necessary to the administration of the case." *In re Haimil Realty Corp.*, 579 B.R. 19, 27 (Bankr. S.D.N.Y. 2017) (citing 11 U.S.C. § 330(a)(4)); *see also In re Ryan*, 82 B.R. 929, 932 (N.D. Ill. 1987) (as a matter of law, attorneys may recover fees from the estate only if their services actually benefited the estate).

7. Here, FTI has not established – as is its burden – that a substantial portion of the legal services for which it now seeks compensation conferred any benefit or otherwise maximized the value *on the Debtors' estate*. Indeed, in just ***24 days***, FTI incurred fees and expenses ***exceeding $233,000***, which is unreasonable given the short time frame in which it had been retained.

### 1. *Current Operating Results & Events (Task Code 1)*

8. FTI spent over 50 hours reviewing the Debtors' historical financial information and generating summaries for a total of $31,820. Almost a quarter of this time was spent preparing balance sheet summaries and other financial information for Eletson Gas LLC, a non-Debtor. The remainder of this time was spent seemingly playing catch up. Given that the Debtors' chapter 11 cases had been pending for approximately two and a half months prior to FTI's retention and the Debtors' straightforward financial information the Debtors believe that the amount of time spent on these tasks is excessive, and raises the question of what analysis, if any, the Committee undertook of the Debtors' financials prior to their retention of FTI.[2] The Debtors believe that given

---

[2] Of particular note are FTI's references to documents "provided through Relativity" and "Eletson Gas' historical income statements per document production" prior to December 27, 2023, the date on which the Committee filed its 2004 Motion. The Committee has repeatedly asserted that it the 2004 Motion was necessary as the Debtors' refused to provide the Committee with information, though it seems, as the Debtors have continually asserted, that the

the straightforward nature of the Debtors' financial information the fact that the time spent on reviewing historical financial information which could have been materially reduced by coordinating with the Committee, these fees should be reduced by 25%.

### 2. *Analysis of Claims/Liab Subject to Compro (Task Code 14)*

9. FTI spent over 57 hours analyzing claims and liability subject to compromise for a total of $41,499. The time spent on this review of the Debtors' claims is excessive. Only 22 proofs of claims were filed against Eletson Holdings, and six duplicative claims were filed against Eletson (US) Finance LLC and Agathonissos Finance LLC. Notwithstanding the limited universe of claims FTI spent over 30 hours drafting claims presentations despite the fact that only 20 claims were filed by non-Committee members, and several of these claims were carbon copies of each other. Given the excessive time spent on the Debtors' limited claim pool, the Debtors believe that these fees should be reduced by 50%.

### 3. *Potential Avoidance Actions & Litigation (Task Code 18))*

10. Of the 276.3 hours billed and $214,735.50 charged in the three weeks of December, 130.1 of those hours and $103,100 was charged to the Potential Avoidance Actions & Litigation task code. Given the limited time period in which these fees were charged this number is excessive. Examining the time entries provided paints an even worse picture. Approximately 38 hours were spent "reviewing publicly available information" (read googling) regarding Eletson Holdings' corporate governance and corporate structure despite this information being readily available from the Debtors' schedules and statements of financial affairs, the documents produced in the chapter 7 cases and arbitration, deposition testimony and the Committee's own filings. An additional 16 hours were spent preparing presentations on Eletson Holdings' governance. At least

---

Committee had this financial information in its possession as a result of the discovery undertaken during the chapter 7 cases and the Arbitration.

14 hours were spent analyzing the Arbitration Award which has repeatedly been found to not inure to the benefit of the Debtors' estates.

11. At least half of the time spent "investigating" the Debtors was spent undertaking needless research on information already at FTI's disposal and assessing assets of non-Debtors. None of the research of this publicly available information was in any way beneficial to the estate,

12. Further FTI's claim investigation is clearly duplicative in nature. Prior to December 8, 2023, the date FTI was retained, Dechert had spent approximately 100 hours on claims investigations. Subsequent to the retention of FTI, Dechert proceeded to spend another 140 hours on claims investigation while FTI spent 130 hours on claims investigations at approximately the same time. Aside from the latent unreasonableness of a cumulative 370 hours of claims investigation in just two months, it is impossible for there to have been no overlap of work or unnecessary duplication of work given the nearly identical time billed in the period between December 8 and December 31, 2023. In light of the foregoing the fees of FTI related to the claims investigation are clearly excessive given the time frame, duplication of the work performed by Dechert, and not beneficial to the Debtors' estates. For these reasons these fees must be reduced by 50%.

    C.    **FTI's Fees are Duplicative, Excessive and Unreasonable**

13. The prevailing method for weighing the reasonableness of fees pursuant to Section 330(a)(3) of the Code is the "lodestar" approach. *See In re Ridgemour Meyer Props., LLC*, No. 08-13153 (SMB), 2018 Bankr. LEXIS 1497, at *38 (Bankr. S.D.N.Y. May 18, 2018), *aff'd*, 599 B.R. 215 (S.D.N.Y. 2019), *aff'd*, 791 F. App'x 279 (2d Cir. 2020). "Courts generally apply the 'lodestar' method under which they arrive at a fee by multiplying the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Id.* (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (internal quotations omitted).

14. Further, the reasonableness of the hours expended is a "critical lodestar component," which courts must consider. *In re Hanover*, No. 8-20-70676-ast, 2020 Bankr. LEXIS 1308, at *7 (Bankr. E.D.N.Y. May 19, 2020). Courts must exclude hours that are "excessive, redundant, or otherwise unnecessary" and have "discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *In re Ridgemour*, 2018 Bankr. LEXIS 1497, at *38 (Bankr. S.D.N.Y. May 18, 2018), (citing *Kirsch*, 148 F.3d at 172). Further, "[i]t is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate." *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Aus. Creditanstalt AG*, 2005 U.S. Dist. LEXIS 28880, at *23 (S.D.N.Y. Nov. 16, 2005).

15. First, FTI's invoices reflect that it has grossly overstaffed this straight-forward bankruptcy proceeding with 16 timekeepers. FTI seems to acknowledge this concern by voluntarily reducing fees charged by three timekeepers "who were deemed to have tangential involvement in these cases." *See Dkt. 401 at 7.* FTI nevertheless seeks compensation for 13 timekeepers (3 Senior Managing Directors, 1 Managing Director, 2 Senior Directors, 1 Director, 1 Senior Consultant, 3 Consultants, 1 Manager and 1 Independent Contractor). *See id.* This itself is unreasonable and objectionable. Indeed, combined with the Committee's counsel, the Committee had **25 to 28 professionals** performing services (often related to the same tasks) on its behalf for the period at issue. *See Dkt. 400 at 3.*

16. Second, Debtors object to both the rates and fees incurred by FTI's senior personnel as unreasonable. From December 8 through December 32, 2023, FTI staffed: (1) three Senior Managing Directors (rates ranging from $1,225 to $1,390); (2) a Managing Director (rate of

$1,110); and two Senior Directors (rates ranging from $1,005 to $1,025). FTI cannot demonstrate that these rates are commensurate with the size and complexity of this matter. To that end, the rates that FTI's Senior Directors charged exceed the rates charged by the Debtor's counsel. *See Dkt. 235-2 at 5* (average rate for partners of $994; primary partners charging $896 and 894 per hour). Thus, it is not surprising that FTI seeks compensation of $121,850 for work performed by representatives in senior roles, comprising 56.7% of the total fees sought.

17. Despite the excessive fees, FTI failed to reign in the number of its personnel completing the same task, including attending meetings. For example, FTI's invoices show that at various times in December 2023, between three and four of its Senior and Managing Directors participated in calls with Dechert, Togut and the Committee:

- December 13, 2023: Three Senior Managing Directors "[p]articipat[ing] in call with Counsel re: strategy and workplans";

- December 13, 2023: Two Senior Managing Directors and a Managing Director "[p]articipat[ing] in call with Counsel re: investigation workstreams"

- December 18, 2023: Three Senior Managing Directors and a Managing Director "[p]articpat[ing] in status update call with the Commmitee re: discovery and Rule 2004 Motion filings"; and

- December 21, 2023: Two Senior Managing Directors and a Senior Director "[p]articipat[ing] in call with Counsel re: strategy and workplans."

*See Dkt..401 at 19-29*.

18. These are but a few examples of the excessive duplication of efforts and unreasonable amount of time spent by FTI's senior directors on matters in this case. Therefore, the fees requested in the First Fee Statement relating to work performed FTI's senior employees should be reduced by 25% to reflect the excessive rates, fees and hours recorded by the senior directors. *See Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) ("a material reduction in the requested fee award is merited to reflect the unusually partner-intensive

nature of [the firm's] work"); *Melodrama Publ'g, LLC v. Santiago*, No. 12cv7830-JSR-FM, 2015 U.S. Dist. LEXIS 66769, at *15 (S.D.N.Y. May 19, 2015) (reducing fees by 25% where the hours billed were excessive and partner-heavy).

19. Third, FTI consistently and unnecessarily duplicated tasks which provided little or no benefit to the estate. By way of a glaring example, FTI's invoices show that four representatives spent *54 hours* reviewing, analyzing and preparing presentations related to "corporate governance." *See Dkt. 401 at 13 -18.* Significantly, over 37 hours were spent reviewing **public documents**, including by a Senior Director who charges $1,025 per hour. Just a sample of these entries demonstrate the unreasonable lack of fiscal restraint employed by FTI in this matter:

| Date | Name | Hours | Description |
|---|---|---|---|
| 12/11/2023 | Santisario, Stefani | 3.6 | Review publicly available information re: Eletson corporate governance. |
| 12/12/2023 | Santisario, Stefani | 3.8 | Review publicly available information re: Eletson corporate governance. |
| 12/12/2023 | Vellios, Christopher | 3.3 | Conduct research into public records on Eletson's corporate structure. |
| 12/13/2023 | Vellios, Christopher | 2.7 | Conduct research into public records re: Eletson's corporate governance. |
| 12/13/2023 | Vellios, Christopher | 2.4 | Continue to conduct research into public records re: Eletson's corporate governance. |
| 12/14/2023 | Santisario, Stefani | 3.9 | Conduct research into public records of Eletson Holdings' corporate structure. |
| 12/14/2023 | Halloran, Kelsey | 2.8 | Conduct research into documents provided on Relativity re: Eletson corporate governance. |
| 12/18/2023 | Santisario, Stefani | 0.5 | Conduct research into public records of Eletson Holdings' corporate governance. |
| 12/18/2023 | Haulund, Christian | 2.4 | Conduct research into public records of Eletson Holdings' corporate governance. |
| 12/18/2023 | Haulund, Christian | 0.8 | Continue to conduct research into public records of Eletson Holdings' corporate governance. |
| 12/19/2023 | Haulund, Christian | 3.5 | Conduct research into public records of Eletson Holdings' corporate governance. |
| 12/19/2023 | Haulund, Christian | 2.7 | Continue to conduct research into public records of Eletson Holdings' corporate governance. |

| Date | Name | Hours | Description |
|---|---|---|---|
| 12/29/2023 | Haulund, Christian | 1.6 | Conduct research into public records of Eletson Holdings' corporate governance. |
| 12/29/2023 | Haulund, Christian | 0.7 | Continue to conduct research into public records of Eletson Holdings' corporate governance. |

20. The excess and redundancy is pervasive throughout FTI's invoices, particularly when read in conjunction with Dechert's Fee Statements. For this reason, and for those discussed above, the remaining balance of fees sought by FTI should be reduced by 25%. *See Santiago,* 2015 U.S. Dist. LEXIS 66769, at *15; *In re Navient Sols., LLC*, 627 B.R. 581, 593 (Bankr. S.D.N.Y. 2021) (applying 50% reduction for overstaffing and duplication of services); *Libra Bank, Ltd. v. Banco Nacional de Costa Rica, S.A.*, 570 F. Supp. 870, 896 (S.D.N.Y. 1983) (reducing the lodestar figure by 20% to account for over-staffing).

21. For the reasons set forth herein, the Debtors object to FTI's request for interim compensation and request a reduction in compensation as follows:

| Task Code | Task Description | Total Hours | Total Requested Fees | 50% Reduction Due to Inflated Hourly Rates, Oversatffing, and Duplication | 25% Reduction Due to Inflated Hourly Rates, Oversatffing, and Duplication | Total Revised Compensation |
|---|---|---|---|---|---|---|
| 1 | Current Operating Results | 50.70 | $ 31,820.00 | | $ 7,955.00 | $ 23,865.00 |
| 11 | Prepare for and Attend Court Hearings | 3.10 | $ 2,664.00 | | $ 666.00 | $ 1,998.00 |
| 12 | Analysis of SOFAs & SOALs | 1.80 | $ 1,609.50 | | $ 402.38 | $ 1,207.13 |
| 13 | Analysis of Other Miscellaneous Motions | 2.80 | $ 2,706.00 | | $ 676.50 | $ 2,029.50 |
| 14 | Analysis of Claims/Liab Subject to Compro | 57.80 | $ 41,499.00 | $ 20,749.50 | | $ 20,749.50 |
| 18 | Potential Avoidance Actions & Litigation | 131.10 | $ 103,100.00 | $ 51,550.00 | | $ 51,550.00 |
| 19 | Case Management | 6.80 | $ 8,400.00 | | $ 2,100.00 | $ 6,300.00 |
| 20 | General Mtgs with Debtor & Debtors' Prof | 2.40 | $ 1,926.00 | | $ 481.50 | $ 1,444.50 |
| 21 | General Mtgs with UCC & UCC Counsel | 8.50 | $ 10,903.50 | | $ 2,725.88 | $ 8,177.63 |
| 23 | Firm Retention | 12.30 | $ 10,107.50 | | $ 2,526.88 | $ 7,580.63 |
| **Total** | | | $ 214,735.50 | | | $ 124,901.88 |
| **Interim Compensation** | | | | | | $ 99,921.50 |

**[remainder of page left intentionally blank]**

DATED: New York, New York
February 22, 2024

**REED SMITH LLP**

/s/ *Louis M. Solomon*
Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
       lsolomon@reedsmith.com

-and-

Derek J. Baker
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
       dosei-bonsu@reedsmith.com

-and-

Ann E. Pille (Admitted *Pro Hac Vice*)
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Counsel to the Debtors*