UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
ELETSON HOLDINGS INC., et al.,                  :     Case No. 23-10322 (JPM)
                                                :
                                                :
                        Debtors.[1]             :
                                                :
------------------------------------------------------------x

# JOINT STATUS REPORT

Pursuant to the Court's Orders of February 12, 2024 (ECF. 405) and February 15, 2024 (ECF. 421), the Parties submit the following joint status report concerning matters to be discussed at the status conference scheduled for February 27, 2024.

## I.   THE DEBTORS' POSITION

On January 23, 2024, the Debtors filed the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 370] (the "Plan") their related disclosure statement and solicitation motion. The Debtors have been proceeding towards the culmination of their reorganization strategy since that time and are ready, willing and able to proceed on the solicitation process for their Plan and obtain confirmation thereof. As the Debtors promised, the Debtor sought to engage with the Committee and others to discuss the Plan with them. Despite several correspondence requests and telephone calls, no meaningful response or any counter proposal has been provided. The Debtors disagree with many of the Creditor Parties' assertions set forth below and will be prepared to discuss those matters at the status conference.

**Arbitration Award Enforcement**

On February 9, 2024, Judge Liman entered an Opinion and Order confirming in largest part Justice Belen's Final Award issued in *Eletson Holdings, Inc. and Eletson Corp. v. Levona Holdings Ltd.,* No. 23-cv-7331. Confirmation of the Award confirmed the obligation of Levona Holding Ltd. ("Levona") to pay/reimburse certain attorneys' fees previously payable by Eletson Corp. ("Corp") and confirmed damages awarded to Eletson Gas, LLC ("Gas") and others. Corp and Gas have advised the Debtors that they intend to retain Reed Smith LLP to continue the enforcement of those monetary damages in favor of those parties. Those engagements would be in separate engagements, and Reed Smith will undertake, as appropriate, any steps necessary to

---

[1]   The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

make further supplemental disclosures in accordance with § 327 and 329 and/ or Fed. R. Bankr. P. 2014 and 2017. Further, Corp and Gas have advised the Debtors that they intend to seek the enforcement of those monetary awards against Levona in all appropriate jurisdictions at the earliest opportunity in accordance with applicable non bankruptcy law. The Debtors were advised that the Nominees were nominated to hold the Preferred Shares of Gas as of March 11, 2022. Justice Belen found that such transfer occurred, and Judge Liman's Confirmation Order confirmed that determination.

### Mediation

On February 13, 2024, the Debtors filed their *Motion to Compel Mediation Regarding Competing Plan and Competing Plan Procedures* (the "Mediation Motion"). (Dkt.No. 412). As noted in the Mediation Motion, and as the Court will recall, the parties had previously engaged in mediation before Judge Alan Gropper. During that mediation, the Debtors and representatives of certain of their shareholders participated. In that mediation, the Debtors engaged with Judge Gropper on potential paths forward and provided additional and detailed documentation/valuation information which was to be used in connection with reviewing the proposals from the Debtors and eliciting counterproposals from the Other Parties. Although the Debtors complied with requests from Judge Gropper, and despite asking Judge Gropper to obtain counter proposals from the Petitioning Creditors and others, no counter proposals were presented to the Debtors through Judge Gropper.

The Plan filed by the Debtors implemented various aspects of the proposals that had been made by the Debtors through the mediation before Judge Gropper. Immediately after filing the Plan, the Debtors also sought to engage with the Committee and others asking them for counter proposals in order to have a further engagement. Despite several correspondence requests and telephone calls, no counter proposals have been provided.

In their letters, the Other Parties have indicated that they will mediate only before Judge Gropper and, in other correspondence thereafter, that they would present their proposals only through Judge Gropper.

The reason the Debtors filed the Mediation Motion was because the Other Parties would not engage. While the Debtors recognized the prior engagement of Judge Gropper, the Debtors were concerned that the prior engagement did not in any way result in responses from the Other Parties to the proposals and information provided by the Debtors. In the Debtors' view, the Other Parties were not serious about proceeding in mediation. However, if the only way that the Other Parties will engage is through the reappointment and facilitation of Judge Gropper, the Debtors are prepared to engage with Judge Gropper at his earliest convenience on the condition that the Other Parties immediately make their proposals to Judge Gropper so that they can be relayed to the Debtors, and the Debtors can immediately evaluate/engage on them.

### Investigation

As the Court is aware, the Debtors established an independent committee and introduced counsel for the Independent Committee to counsel for the Other Parties. The Debtors have been advised that as of today the Debtors' Independent Committee has not received any demand

2

(formally or informally) to perform an investigation of claims from any Party including the Committee.  Therefore, despite requests for a basis for the statements made in pleadings and in hearings, no party has presented any claim involving shareholders of the Debtors, any party affiliated (as defined in § 101(2)) with any Debtor or even the Preferred Nominees of Gas (which are not affiliates of any Debtors nor qualify as statutory insiders under § 101(31)(B) or (E)).

**Next Steps**

While the Debtors await the proposals through Judge Gropper, the Debtors propose to maintain *sine die* all of the pending motions that are presently set for status conference on February 27, 2024 to the next scheduled Omnibus Hearing Date (i.e., March 21, 2024).  It is important that the parties be directed to mediation and focus their energies on resolution.  If the Creditor Parties want to force the Court to set hearings on their motions – while at the same time asking the Court to hold in abeyance the pending motions of the Debtors – it shows an intention to not meaningfully engage in the mediation in good faith.  At the March 21, 2023 hearing, the Debtors would anticipate reporting on the status of mediation and discussing an appropriate solicitation process for a competing plan scenario and/or the discovery/briefing/trial schedule on the pending Chapter 11 trustee motions (if necessary).  Moreover the Creditor Parties overstate the simplicity of their motions.  The Creditor Parties do not identify any fraud or dissipation of assets mandating prompt action – the sole basis relied upon is acrimony for which the Creditor Parties are equally responsible – and for which they now try to take advantage.  Since the Chapter 11 trustee motions require an evidentiary showing by clear and convincing evidence, the Debtors believe that the matter can only be determined after an appropriate evidentiary hearing.  The Debtors expect a trial on the Chapter 11 trustee motion would take appropriately 2-3 trial days.

## II.   THE CREDITOR PARTIES' POSITION

This section sets forth the collective position of (a) the Official Committee of Unsecured Creditors (the "Committee"); (b) eleven petitioning creditors represented by Togut, Segal & Segal LLP and collectively holding over $230 million in claims (collectively, the "Petitioning Creditors"); (c) Wilmington Savings Fund Society, FSB, as trustee for the Debtors' First Preferred Ship Mortgage Notes due 2022 ("WSFS"); and (d) Deutsche Bank Trust Company Americas as Trustee for holders of 9.265% First Preferred Ship Mortgage Notes Due ("DBTCA" and, collectively, the "Creditor Parties"), concerning the appropriate course of proceedings in these cases in the near term.

There is broad consensus among the Creditor Parties, as well as the Office of the United States Trustee (the "U.S. Trustee"), that the Court must appoint an independent trustee to manage these cases under 11 U.S.C. § 1104(a).  On February 6, 2024, the Committee filed a motion to appoint a chapter 11 trustee "for cause" under § 1104(a)(1) and "in the interest of creditors" under § 1104(a)(2). (ECF 394.)  The two largest institutional creditors, WSFS and DBTCA, each filed joinders to the Committee's motion. (ECF 404, 420.)  On February 16, 2024, the U.S. Trustee filed its own motion for the appointment of a chapter 11 trustee, explaining that "[t]he appointment of an independent fiduciary to move this case forward in a fair and transparent manner is in the best interest of these estates and all of their parties in interest." (ECF 424 at 3, collectively with the Committee's motion, the "Trustee Motions".)  In addition, on January 29, 2024, the Petitioning Creditors filed a motion to terminate plan exclusivity, explaining that they are prepared to "file

3

and fund" an alternative plan that would provide, among other things, "a meaningfully higher plan value than the plan proposed by the Debtors" and "significantly better recoveries to all creditors." (ECF 384 (the "Exclusivity Motion") at 5.)

The Creditor Parties urge the Court to schedule the Trustee Motions and the Exclusivity Motion to be heard at the next available hearing. These cases have been pending for almost a year, and the Debtors have been in chapter 11 for more than five months. Yet there has been virtually no progress toward resolution. As the U.S. Trustee explained, "the acrimony between the parties" in this case "has mired this case in attacks and allegations instead of progress toward reorganization." (ECF 424 at 3.) The Creditor Parties broadly agree that the Court should hear the motions to appoint a trustee at the earliest possible opportunity.

Importantly, there is no need for an evidentiary hearing, let alone "multiple" of them, as the Debtors contend (ECF 412 at 8), to resolve the Trustee Motions. *See, e.g., In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019) ("bankruptcy courts . . . are not required to conduct a full evidentiary hearing in considering a motion for the appointment of a chapter 11 trustee"). The grounds for "cause" set forth in the Committee's motion either do not raise factual issues at all, are based on the sworn testimony of the Debtors' own principals or are documented in the Debtors' own filings and correspondence. The issues the Debtors pressed in their motion to dismiss the involuntary proceedings—such as whether certain of the Petitioning Creditors purchased notes in violation of the "Second RSA"—have no bearing on the factors set forth in 11 U.S.C. § 1104(a), which pertain to the conduct of the Debtors, not of creditors. And the issues presented in the U.S. Trustee's motion—whether the appointment of a trustee is "in the interest of creditors"—similarly require no factual development. Even if the Court were to hold an evidentiary hearing, such a hearing could and should be held at the March omnibus hearing.

Although the Creditor Parties would have liked to use the last few weeks to attempt a mediation, the Creditor Parties remain willing to use the time leading up to the hearing on the Trustee Motions and the Exclusivity Motion to seek a consensual resolution of these cases. The Creditor Parties are only willing to conduct mediation, however, if Levona and the Cypriot "Nominees" are participants. As the Court is aware, Debtor Eletson Holdings and its subsidiary, Eletson Corp., sought and ultimately obtained a substantial damages award against Levona, as well as a ruling concerning the Preferred Shares in Eletson Gas, which should have delivered significant value to the estates. Instead, as the District Court observed, Eletson Holdings and Eletson Corp. asserted for the first time after these bankruptcy cases had been filed "that the Preferred Interests should be transferred to the Nominees" and "ask[ed] at the last minute that damages be paid to [Eletson Gas and the Nominees] and not to itself." (ECF 403-1 at 71, 89.) Accordingly the estates have causes of action, among others, that Eletson Holdings improperly transferred claims belonging to the estate or an entity owned by the estate to the Nominees or other non-debtors. (*Id.* at 87-89 (District Court noting that it "remain[s] open for the bankruptcy court to decide," among other things, "whether the election by Eletson that the Preferred Shares go to the Nominees rather than to the Company effected a fraud on the creditors of Holdings.")

In addition, it is critical that any mediation not delay a hearing and resolution of the Trustee Motions or the Exclusivity Motion. The Creditor Parties are open to seeking a consensual resolution if that is achievable, but mediation should not be used as a means to further delay

4

progress in these cases. The parties can conduct a mediation in advance of the next hearing and report to the Court at such hearing on their progress, if any.

Any briefing on the Debtors' proposed plan should be held in abeyance pending resolution of the Trustee Motions and the Exclusivity Motion. The appointment of a trustee would moot the need for any briefing on the Debtors' current proposed plan because an independent trustee would be expected to engage with creditors and work to formulate a different plan that maximizes creditor recoveries. In addition, if the Court terminates exclusivity, there will be a competitive plan process in which the proposed plan is likely to be superseded by competing plan proposals. Briefing now, while the Trustee Motions and the Exclusivity Motion are unresolved, would be a waste of party and judicial resources, in particular because the Debtors' Plan has no creditor support and is unconfirmable.

Finally, the Creditor Parties disagree with many of the Debtors' assertions set forth above, including their assertions concerning prior mediation efforts, their professed ignorance of material causes of actions against insiders that the Creditor Parties (and the District Court) have identified, and certain of their representations regarding the arbitration award and the District Court's ruling. The Creditor Parties will be prepared to discuss those matters at the status conference.

The Debtors and the Creditor Parties thank the Court for its attention to these matters and look forward to discussing the next steps in these cases at tomorrow's status conference.

Respectfully submitted,

| | |
|---|---|
| */s/ Derek J. Baker* | */s/ Stephen D. Zide* |
| Derek J. Baker | Stephen D. Zide |
| Derek Osei-Bonsu | David A. Herman |
| REED SMITH LLP | Owen S. Haney |
| Three Logan Square | DECHERT LLP |
| 1717 Arch Street | 1095 Avenue of the Americas |
| Philadelphia, PA 19103 | New York, NY 10036-6797 |
| Telephone: (215) 851-8100 | stephen.zide@dechert.com |
| Facsimile: (215) 851-1420 | david.herman@dechert.com |
| E-Mail: dbaker@reedsmith.com | owen.haney@dechert.com |
| dosei-bonsu@reedsmith.com | Tel: (212) 698-3500 |
| | Fax: (212) 698-3599 |
| -and- | |
| | *Counsel to the Official Committee of Unsecured Creditors* |
| Andrew L. Buck | |
| Louis M. Solomon | |
| 599 Lexington Avenue | */s/ Bryan M. Kotliar* |
| New York, NY 10022 | Kyle J. Ortiz |
| Telephone: (212) 251-5400 | Bryan M. Kotliar |
| Facsimile: (212) 521-5450 | Brian F. Shaughnessy |
| E-Mail: abuck@reedsmith.com | Jared C. Borriello |
| lsolomon@reedsmith.com | TOGUT, SEGAL & SEGAL LLP |

5

-and-

Ann E. Pille (Admitted *Pro Hac Vice)*
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Counsel to the Debtors*

/s/   Tina N. Moss
Tina N. Moss
PERKINS COIE LLP
1155Avenue of the Americas
New York, NY 10036-6797
TMoss@perkinscoie.com
Tel: (212) 262-6900
Fax: (212) 977-1648

*Counsel to Wilmington Savings Fund Society, FSB, as Trustee and Collateral Agent*

One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel for the Petitioning Creditors*

/s/ *John H. Bae*
John H. Bae, Esq.
THOMPSON HINE LLP
300 Madison Avenue, 27th Floor
New York, New York 10017
Telephone: 212-344-5680
Facsimile: 212-344-6101
John.Bae@ThompsonHine.com

*Attorney for Deutsche Bank Trust Company Americas as Trustee under the 2013 Indenture for the 9.625% First Preferred Ship Mortgage Notes Due 2022*