Stephen D. Zide
David A. Herman
Owen S. Haney
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
Facsimile: (212) 698-3599
Email: stephen.zide@dechert.com
david.herman@dechert.com
owen.haney@dechert.com

*Counsel to the Official Committee of
Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ELETSON HOLDINGS INC., et al., | : | Case No. 23-10322 (JPM) |
| | : | |
| | : | Jointly Administered |
| Debtors.[1] | : | |
| | : | |

---------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE FIRST INTERIM FEE APPLICATION OF REED SMITH
LLP, COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION, FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
SEPTEMBER 25, 2023 TO DECEMBER 31, 2023**

---

[1]     The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

OBJECTION ........................................................................................................................... 3

    A.    Legal Standard ............................................................................................. 3

    B.    Reed Smith Should Not be Compensated for Any Fees Related to the
        Arbitration or District Court Proceedings............................................. 4

    C.    Reed Smith Should Not be Compensated for Any Fees Related to the
        Debtors' Plan. ............................................................................................ 8

    D.    Reed Smith Should Not be Compensated for Any Fees Related to the
        Debtors' Objection to Dechert's Retention and Their Fees Related to Their
        Own Retention Should Be Reduced. .................................................... 9

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Am. Nat'l Trust & Savs. Assoc. v. 203 N. LaSalle Street Partnership*,
    526 U.S. 434 (1999)..................................................................................2, 8

*In re Bennett Funding Group, Inc.*
    213 B.R. 234 (Bankr. N.D.N.Y. 1997) ...........................................................3

*In re Cenargo Intern., PLC*,
    294 B.R. 571 (Bankr. S.D.N.Y. 2003)............................................................8

*CFTC v. Weintraub*,
    471 U.S. 343 (1985)........................................................................................4

*Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*,
    Civil No. 23-cv-7331 (LJL) .............................................................................1

*In re Hancock Street SML LLC*,
    2016 WL 6271329 (Bankr. E.D.N.Y. 2016) ...................................................8

*In re Keene*,
    205 B.R. 690 (Bankr. S.D.N.Y. 1997).........................................................4, 8

*In re Kohl*,
    421 B.R. 115 (Bankr. S.D.N.Y. 2009)............................................................4

*In re Lederman Enterprises*,
    997 F.2d 1321 (10th Cir. 1993) ......................................................................8

**Statutes**

11 U.S.C. § 330...................................................................................................3, 4

11 U.S.C. § 1129......................................................................................................8

**Other Authorities**

7 Collier on Bankruptcy ¶ 1129.02 .........................................................................9

ii

The Official Committee of Unsecured Creditors (the "Committee") of Eletson Holdings Inc. ("Eletson Holdings" or "Holdings"), Eletson Finance (US) LLC, and Agathonissos Finance LLC (collectively the "Debtors"), respectfully submits this objection to the *First Interim Fee Application Of Reed Smith LLP, Counsel to the Debtors and Debtors in Possession, For Compensation and Reimbursement of Expenses for the Period September 25, 2023 to December 31, 2023* (the "Debtors' Fee Application").

## PRELIMINARY STATEMENT

1.      The vast majority of the fees for which Reed Smith seeks payment are for services that not only provided no benefit to the Debtors' estates, but actually harmed the estates and their creditors.  As set forth below, the Court should reject, or significantly reduce, Reed Smith's requests for at least three classes of fees.

2.      *First*, Reed Smith seeks payment of almost $1.7 million in fees for work performed in the Arbitration and District Court[2] that was detrimental to the Debtors' estates and creditors. The dispute in the Arbitration and District Court was primarily over the proper owner of certain preferred shares of Eletson Gas (the "Preferred Shares"), a wholly owned subsidiary of Holdings. As the District Court observed, Holdings initially took the position in the Arbitration that it was the "sole unit holder" of Eletson Gas, ECF 403-1 (District Court "Op.") at 20-21, and that Holdings would benefit if it prevailed in the Arbitration because the value of the Preferred Shares would inure to Holdings' benefit.[3]  Its position changed, however, after creditors commenced involuntary proceedings against Holdings in March of 2023.  From that point forward, Holdings argued that

---

[2] The "Arbitration" refers to the arbitration proceeding before Justice Belen at JAMS Ref. No. 5425000511 and the "District Court" refers to the United States District Court for the Southern District of New York, where Eletson Holdings and Eletson Corporation (or "Corp.") petitioned the District Court to confirm the Arbitration award (the "Award") in *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.*, Civil No. 23-cv-7331 (LJL).

[3] *See* Ex. A at 113 (District Court describing how Holdings would benefit from Eletson Gas being the holder of the Preferred Shares through its ownership of the common equity interests in Eletson Gas).

the Preferred Shares had been previously transferred to three Cypriot Nominees (the "<u>Nominees</u>") that are owned directly or indirectly by the Debtors' directors, officers and shareholders (the "<u>Insiders</u>") and thus were no longer an asset of Holdings or any of its subsidiaries. The Arbitrator accepted this argument, removing hundreds of millions in value that would have been for the benefit of Holdings' estate. These efforts will also lead to further litigation as to whether the actions taken by Holdings "effected a fraud on the creditors of Holdings." Op. at 87. Reed Smith should not be entitled to fees for these actions that actively harmed the estates.

3.      Since the Arbitration concluded, Reed Smith has incurred millions of dollars in fees pursuing confirmation of the Arbitration Award, for which it seeks compensation from Holdings' estate, while taking the position that Holdings is not entitled to receive any monetary benefit from the Award. Far from seeking to maximize the value of the estate's legal claims, as is the duty of the Debtors and their counsel, Reed Smith has vigorously *opposed* arguments before the District Court that the value of the Preferred Shares and damages should be recoverable by the estate. It has done so even in the face of statements by the District Court identifying claims the estate has to those assets. Instead, Reed Smith has insisted that all of the value from the Arbitration should be diverted to non-Debtors. The Debtors' estates should not be forced to finance those efforts to deplete estate assets and diminish creditor recoveries.

4.      *Second*, Reed Smith seeks payment of $75,942.45 for its work in support of a patently unconfirmable plan that only benefits the Insiders. The Debtors proposed plan facially violates Supreme Court precedent that prohibits confirmation of a "new value" plan that reinstates insider equity holders without conducting a market test.[4] The Plan yields little to no recovery for

---

[4] *See Bank of Am. Nat'l Trust & Savs. Assoc. v. 203 N. LaSalle Street Partnership*, 526 U.S. 434, 458 (1999).

creditors and Reed Smith should not be compensated for any services associated with this unconfirmable plan.

5.    *Third,* Reed Smith has also requested payment of $123,885.45 for work objecting to the Committee's application to retain Dechert and repeatedly supplementing its deficient disclosures relating to its own retention. In objecting to Dechert's retention, the Debtors violated a Court-ordered stipulation and caused the estate to suffer additional unnecessary costs. The Debtors also added to the administrative burden of the estates by filing an opaque retention application that did not adequately disclose Reed Smith's relationships with interested parties, leading to the filing of *three supplemental declarations* during the interim compensation period. While the payment of some fees relating to Reed Smith's retention is reasonable, the Committee submits that a 50% reduction in payment is appropriate given Reed Smith's wasteful conduct.

## OBJECTION

### A.    Legal Standard

6.    Interim fee applications are analyzed under the standards of Section 330 of the Bankruptcy Code. *In re Bennett Funding Group, Inc.* 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997). Section 330 of the Bankruptcy Code allows for "reasonable compensation for actual, necessary services rendered by the…attorney and by any paraprofessional person employed by any such person." 11 U.S.C. § 330(a)(1)(A).

7.    When considering the reasonableness of the compensation awarded, the Court will "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)    the time spent on such services;
(B)    the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

11 U.S.C. § 330(a)(3)(A)-(F).

8.      The Bankruptcy Code also prohibits payment for work that was not "reasonably likely to benefit the debtor's estate; or necessary for the administration of the case." *Id.* at (a)(4)(A)(ii)(I)-(II). The court may accordingly reduce or disallow fees that provide no real benefit to the estate. *In re Keene*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997).

9.      The test for whether services are reasonably likely to benefit the estate "is objective, considering the services that a reasonable lawyer would have performed in the same circumstances." *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009). The likelihood of benefit to the estate is "determined from the perspective of the time at which the services were rendered." *Id.*

10.     A debtor in possession has an obligation to maximize the value of the estate. *CFTC v. Weintraub*, 471 U.S. 343, 355-56 (1985). This duty flows to the Debtors' professionals, including their attorneys. *In re Keene,* 205 B.R. at 696 (citing *Matter of Taxman Clothing Co.,* 49 F.3d 310, 315 (7th Cir. 1995).

**B.      Reed Smith Should Not be Compensated for Any Fees Related to the Arbitration or District Court Proceedings.**

11.     The Bankruptcy Code prohibits payment for work that was not "reasonably likely to benefit the debtor's estate; or necessary for the administration of the case." 11 U.S.C. § 330

4

(a)(4)(A)(ii)(I)-(II).  None of Reed Smith's services on behalf of the Debtors in the Arbitration or District Court benefitted the Debtors' estates.  In fact, they harmed them.

12.     The core dispute in the Arbitration concerned the proper owner of the Preferred Shares—property that the Debtors value at over $186 million.  ECF 341 (Debtor's 2015.3 Report) at 20.  Although Holdings initially argued in the Arbitration proceedings that the Preferred Shares belonged to Eletson Gas, the Debtors changed their position following the filing of the involuntary bankruptcy.  Since then, the Debtors have repeatedly taken the position that the Preferred Shares "never belonged to Holdings" and are not property of the estates.  *See* Ex. B at 89:2-3; Ex. C at 128:19-23.  They have also attempted to confirm the arbitrator's award in the District Court which they acknowledge provides no measurable value to the estates[5] and principally benefits the Insiders who control and manage the Nominees.

13.     Their approach has been driven by conflicts of interest among the Debtors, the Insiders and the Nominees.  *See* ECF 394 (Committee's trustee motion) at ¶ 14 (illustrating familial overlap among the Debtors' board and the owners of the Nominees).  As an example, the Nominees agreed to backstop Reed Smith's fees in the Arbitration.  *See* ECF 261 (Derek Baker's Second Decl.) at ¶ 13.  This agreement made economic sense to the Nominees because Holdings, at the Insiders' direction, advanced the Nominees' interests in the Arbitration and the District Court at the expense of Holdings.  As fiduciaries, the Debtors should never have incurred any expenses advocating for the transfer of valuable assets to the Nominees.  Instead, they should have taken the position in the District Court that the arbitrator had no authority to award damages or the Preferred

---

[5] The Debtors concede that they would receive no monetary value from confirmation of the Award.  *See* ECF 286 ¶¶ 40-41 (Debtors' opposition to Committee's motion to modify stay relief order); *see id.* at ¶ 41 ("The fact that Holdings received no direct monetary award under the Final Award does not render the Final Award valueless to Holdings.").

Shares to non-parties, and should have argued that monetary or other relief should be awarded to Holdings, the party to the Arbitration.

14.     Reed Smith's actions facilitated a well-documented fraud[6] on the Debtors' creditors.  As the District Court acknowledged: "*the bankruptcy court will have to decide . . . whether the election by Eletson that the Preferred Shares go to the Nominees rather than to the Company effected a fraud on the creditors of Holdings,*" (Op. at 87), and there is ample evidence that the purported transfer was made solely to remove assets from the Debtors' estates.  The Debtors did not disclose the purported transfer of the Preferred Shares until after the involuntary bankruptcy proceedings had commenced. *See id.* at 71 ("[I]t was not until the pre-hearing brief, months after the arbitration had commenced, that Petitioners asserted that the Preferred Interests should be transferred to the Nominees and not until after the hearing and in its proposed order that Petitioners asked that damages be awarded to Gas and to the Nominees and not to itself."); *see also id.* at 20-21 ("Eletson made the same claim [that they were the 'sole unit holder of the Company']" in an October 2022 affidavit and three memoranda of law).  Even Reed Smith was apparently not aware of the purported transfer until after the bankruptcy proceedings had commenced:

> "As soon as they said, . . . if we win in this proceeding, they're going to take that asset and they are–it goes back into Holdings and so, lo and behold, the bankruptcy allows them to take it . . . and that's when we said, well, wait a minute, ***I went back to my client and it says these nominees, why don't we just transfer it to the nominees and they said, we don't have to, we have already done it.***"

---

[6] *See* ECF 394 at ¶ 61 (Committee's trustee motion) (describing how purported transfer was "textbook fraudulent conveyance" with "ample evidence" of "actual intent to defraud creditors of Holdings"); ECF 239 at ¶ 42 (Committee's motion to modify stay relief order) (discussing claims arising from purported transfer of Preferred Shares); ECF 181 (Sur-reply of Wilmington Savings Fund Society in support of opposition to Debtors' motion to dismiss) (same).

Ex. D at 153:2-24 (emphasis added).  The District Court explained that the "timing of the election by Eletson" will have to be addressed by the Bankruptcy Court in future proceedings as well as "whether the Preferred Interests should be considered to be property of the estate or should be clawed back or avoided." *Id.* at 89.

15.  Meanwhile, Holdings sought and ultimately obtained a damages award of $87 million against Levona in the Arbitration, which should have delivered significant value to the estates.  Instead, as the District Court pointed out, Holdings "ask[ed] at the last minute that damages be paid to [Eletson Gas and the Nominees] and not to itself."  Op. at 89.  The District Court observed that these maneuvers may give rise to estate causes of action that Holdings improperly "transferred a claim that belonged to the estate or an entity owned by the estate to a non-debtor and that the damages awarded to [the non-debtor] should instead be for the benefit of the creditors of Holdings." *Id.*

16.  Reed Smith's services in the Arbitration and the District Court thus not only deprived the estate of assets but have caused, and will continue to cause, the estates to incur further expense to undo the damage caused by the Debtors.  For example, the purported transfer of the Preferred Shares was a driving force behind the Committee's motion to modify the stay relief order, the Petitioning Creditors' motion to terminate the Debtors' exclusivity period, and the Committee's motion to appoint a chapter 11 trustee. *See, e.g.,* ECF 239 at 18 (Committee's motion to modify stay relief order); ECF 384 at 12 (Petitioning Creditors' motion to terminate the Debtors' exclusivity period); ECF 394 at 18-21 (Committee's trustee motion).  The prosecution of these motions has and will cost the estates millions more in administrative expenses and is the direct result of Reed Smith's advocacy in the Arbitration and District Court.

17.     In sum, Reed Smith's services in the Arbitration and District Court not only failed to "benefit" the Debtors' estates—they also harmed them.  Accordingly, they should be denied compensation for work performed in those proceedings.  *In re Cenargo Intern., PLC*, 294 B.R. 571, 604-05 (Bankr. S.D.N.Y. 2003) (reducing debtors' attorney fees for causing financial harm to the debtors' estates); *In re Keene*, 205 B.R. at 696 (internal citations omitted) (disallowing compensation to the debtors' attorneys for unnecessary litigation that provided minimal benefit to the debtor's estate.).

## C.     Reed Smith Should Not be Compensated for Any Fees Related to the Debtors' Plan.

18.     The Debtors' request to pay Reed Smith $75,942.45 for preparing their plan of reorganization should not be approved because the Debtors' plan is patently unconfirmable.  *In re Lederman Enterprises*, 997 F.2d 1321, 1323-24 (10th Cir. 1993) (holding that time spent formulating a patently unconfirmable plan was not compensable); *In re Hancock Street SML LLC*, 2016 WL 6271329 at *7 (Bankr. E.D.N.Y. 2016) (same).

19.     Among its many fatal defects, the Debtors' plan would give their shareholders the exclusive right to invest "new value" and retain their interests without any market test before creditors are paid in full, which violates the absolute priority rule and the Supreme Court's ruling in *203 North Lasalle*.  526 U.S. at 457-58 ("[P]lans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within § 1129(b)(2)(B)(ii)'s prohibition.").  The plan also violates the best interest of creditors test because, in a chapter 7 liquidation, creditors would receive the proceeds of a liquidation— including the value of the Debtors' operating subsidiaries—before shareholders would recover anything.  In contrast, under the Debtors' plan, creditors would receive almost no recoveries while shareholders receive almost all of the reorganized Debtors' value.  *See, e.g.*, 11 U.S.C.

§ 1129(a)(7)(A)(ii); 7 Collier on Bankruptcy ¶ 1129.02[7] ("It is an individual guaranty to each creditor or interest holder that it will receive as much in reorganization as it would in liquidation."). The Debtors still have not provided a liquidation analysis to show that the best interest test is satisfied.

      **D.**      **<u>Reed Smith Should Not be Compensated for Any Fees Related to the Debtors' Objection to Dechert's Retention and Their Fees Related to Their Own Retention Should Be Reduced.</u>**

      20.      The Court should reduce by 50% the $123,885.45 in fees requested by Reed Smith for its services in support of (i) the Debtors' objection to the Committee's application to retain Dechert as its counsel, and (ii) the Debtors' deficient application to retain Reed Smith as Debtors' counsel.

      21.      On September 6, 2023, the Debtors and the Petitioning Creditors reached an agreement to resolve the Debtors' motion to dismiss the involuntary petitions, which the Court so ordered on the record. See Ex. E at 9:3-11:2, 12:19-25 (the "<u>Stipulation</u>"). The Stipulation provided that the "respective professionals agree not to object to other professionals seeking retention as estate professionals in the capacity as debtors' counsel or special counsel or committee counsel, respectively." *See id.* at 10:2-5.  Notwithstanding the Stipulation, on November 27, 2023, the Debtors filed its *Debtors' Statement Regarding Actionable Deficiencies and Known Inaccuracies in the Application of the Unofficial Committee of Unsecured Creditors for an Order Authorizing the Employment and Retention of Dechert LLP as Counsel and Request for Further Disclosures.  See* ECF 287 (filed under seal).

      22.      Unlike the Committee's response to Reed Smith's retention application (ECF 245 (Committee's Response)), the Debtors did not simply seek additional disclosures regarding Dechert's retention.  The Debtors violated the Court-ordered Stipulation by arguing that Dechert was "disqualified" from representing the Committee. *See, e.g.*, ECF 287 at 5, 9, 13 (Debtor's

statement regarding Dechert's retention); *see also id.* at 2 ("███████████
████████████████████"); *id.* at 3 ("██████████████████
████████████████"); *id.* ("█████████████████████
████████████████████."); *id.* at 13 ("██████████████
█████████████████████████████████████
████████████████"); *id.* at 14 ("██████████████
█████████████"). Accordingly, in violation of a Court order, the Debtors sought to have the Committee's counsel disqualified, at significant expense to the estate.

23. The Debtors' primary basis for objecting to Dechert's retention was Dechert's purported failure to properly disclose the start date of its past representations of Murchinson and Pach Shemen. *Id.* at 10. To the extent the Debtors legitimately sought additional disclosures from the Committee, the Debtors could have simply approached Dechert on an informal basis, just as the Committee did with respect to the Debtors' retention application, as described below. Doing so would have avoided the Debtors incurring administrative expenses related to prosecuting their objection and the Committee incurring administrative expenses related to defending their choice of counsel. In any event, the result would have been the same: counsel for the Committee would have filed supplemental declarations clarifying the scope of its past representations and the Court would have authorized Dechert's retention.

24. In addition, on October 25, 2023, the Debtors filed their application to retain and employ Reed Smith as counsel. *See* ECF 235 (Debtors' application to employ Reed Smith). The application did not fully explain who or what entity would be paying Reed Smith's fees, in violation of Bankruptcy Rule 2014. Instead, the application noted only that Eletson Corporation had paid Reed Smith's fees prior to the chapter 11 cases and that "additional parties other than the

Debtors agreed to support Corp. and satisfy any outstanding obligations owed to Reed Smith." *Id.* at ¶ 20. The next day, counsel for the Committee reached out to the Debtors over email seeking to clarify the Debtors' disclosures regarding the entity or entities responsible for Reed Smith's past and future fees. *Id.* at Ex. D. The Debtors did not provide clear answers. *Id.* In response to the Committee's pleading and the objection of the United States Trustee, the Debtors' filed a supplemental declaration. *See* ECF 261 (First Baker Decl.). This declaration raised additional questions, including the terms of the "comfort letter" sent by the shareholders of Eletson Holdings to Reed Smith and the nature of the agreement among the Nominees and Eletson Corp. to backstop Reed Smith's fees in the Arbitration. *Id.* at ¶¶ 13, 15. The Committee raised these questions with the Debtors immediately on an informal basis and, once again, the Committee was left with deficient answers. The cycle repeated.

25.    In total, the Debtors filed three supplemental declarations during the interim compensation period to clarify their earlier deficient disclosures, needlessly driving up costs. *See* ECF 261 (First Baker Decl.); ECF 297 (Second Baker Decl.); ECF 330 (Third Baker Decl.). In the end, Eletson Corporation agreed not to assert any claim against Holdings related to payments made to Reed Smith, (*see* ECF 330 (Third Baker Decl.) at ¶ 10), and Reed Smith averred that it would reject any funds it should ever receive from Holdings' shareholders. *Id.* at ¶ 11. All this back-and-forth could have been avoided had Reed Smith made thorough and complete disclosures in its initial application or provided adequate disclosures through informal means.

## <u>CONCLUSION</u>

26.    For the reasons stated herein, the Committee respectfully requests that this Court deny Reed Smith's request for payment on account of the services described above or, in the alternative, greatly reduce them.

Dated: March 14, 2024                    Respectfully submitted,
       New York, New York
                                         By: *Stephen D. Zide*
                                         Stephen D. Zide
                                         David A. Herman
                                         Owen S. Haney
                                         DECHERT LLP
                                         1095 Avenue of the Americas
                                         New York, NY  10036-6797
                                         stephen.zide@dechert.com
                                         david.herman@dechert.com
                                         owen.haney@dechert.com
                                         Tel: (212) 698-3500
                                         Fax: (212) 698-3599

                                         *Counsel to the Official Committee of*
                                         *Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all ECF recipients in the above-captioned matter.

Dated: March 14, 2024
      New York, New York

Respectfully submitted,

By: *Stephen D. Zide*
Stephen D. Zide
David A. Herman
Owen S. Haney
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
stephen.zide@dechert.com
david.herman@dechert.com
owen.haney@dechert.com
Tel: (212) 698-3500
Fax: (212) 698-3599

*Counsel to the Official Committee of*
*Unsecured Creditors*

Exhibit A

O12Gele1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  ELETSON HOLDINGS INC.,
4            Petitioner,
5       v.                          23 Civ. 7331 (LJL)
6  LEVONA HOLDINGS LTD.,
                                    Oral Argument
7
            Respondent.
8
   ------------------------------x
9                                  New York, N.Y.
                                   January 2, 2024
10                                 2:00 p.m.
11 Before:
12                  HON. LEWIS J. LIMAN,
13                                    District Judge
14                      APPEARANCES
15 REED SMITH LLP
        Attorneys for Petitioner
16 BY:  LOUIS M. SOLOMON
        COLIN A. UNDERWOOD
17      MELISSA CONN
18 QUINN EMANUEL URQUHART & SULLIVAN LLP
        Attorneys for Respondent
19 BY:  ISAAC NESSER
        WILLIAM ADAMS
20      ALEX VAN DYKE
        JOHN SUPER
21      ERIC KAY
22
23
24
25

O12Gele1

1    presentation that -- well, it was all going to go to Holdings

2    and then they switched it up.  False.  And Justice Belen finds

3    that it's false.  And your Honor should refer to those

4    findings.

5             THE COURT:  It sounds like you are knowledgeable about

6    what's happening in the Bankruptcy Court, so just educate me.

7             If the preferred go back to Gas rather than to the

8    nominees, the preferred go to Gas, then I assume that that's

9    going to increase the value of the common interest, effectively

10   what's happening is that Gas is retiring its senior level of

11   equity, increasing the value of the common; right?  I mean, it

12   buys back its -- it's taking back the preferred leaving the

13   common as the only equity; is that right?

14            MR. SOLOMON:  Do you mean, if Gas were to extinguish

15   the preferred, then the common --

16            THE COURT:  If the arbitrator had awarded the

17   preferred to Gas -- you were of the view, you expressed it to

18   the arbitrator that basically what Levona was trying to do was

19   to protect its downside in the arbitration and get the

20   preferred one way or the other; they would be able to either

21   get it by winning the arbitration or they would be able to get

22   it through the bankruptcy, you expressed a view to that effect?

23            MR. SOLOMON:  That's at the Holdings level, your

24   Honor, not at Gas.

25            THE COURT:  Explain to me what your logic was at the

Exhibit B

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 - - - - - - - - - - - - - - - - - - - -x

5

6 In the Matter of:

7 ELETSON HOLDINGS INC., et al.,          Main Case No.

8          Debtors.                       23-10322-jpm

9

10 - - - - - - - - - - - - - - - - - - - -x

11

12               United States Bankruptcy Court

13               One Bowling Green

14               New York, New York

15

16               December 4, 2023

17               10:09 AM

18

19

20

21 B E F O R E:

22 HON. JOHN P. MASTANDO, III

23 U.S. BANKRUPTCY JUDGE

24

25 ECRO:  MARIA

1  early on Levona had said why don't we have this preferred come

2  back -- go someplace else.  And the parties negotiated an

3  agreement whereby Gas had the right to appoint nominees to

4  receive those preferred.

5          And that was in January of 2022, Your Honor.  That's

6  when that happened.  And by February of 2022, in the BOL -- so

7  this is a year before anything they're talking about.  The BOL

8  itself says that the preferred goes where Gas nominates it to

9  go.

10         And on March 11 of 2022, there's a board meeting of

11 Gas with four members.  There's a six-member board, and four of

12 the members are Dechert's client's alter ego.  And they give to

13 the other two directors, who are the Eletson directors, the

14 right to confirm and to carry out the deal.  And that they did.

15         Now, none of this should, with respect, matter to Your

16 Honor, because, one, nothing that can be done about it now; the

17 transfer has already happened.  Two, Justice Belen, in

18 addressing all of their issues, rejected all of their issues.

19 It is binding on them.  It is binding on them, not only because

20 they are the alter ego of Murchinson; it is binding on them

21 because it created a res, and that is what happened.

22         And Your Honor, I believe, said it so right when they

23 asked to shorten time.  And what Your Honor said is, look,

24 what's done is done.  The implications to this bankruptcy court

25 are something that Your Honor is going to address when it comes

1  getting through or it's just being ignored.

2      These preferred shares were not debtor assets.  They

3  never belonged to Holdings.  And so when Mr. Zide continues to

4  say that they are assets of the debtor, they never were.  They

5  also continue to say that they were transfers to shareholders.

6  The Cypriots are not the shareholders.  As we've disclosed,

7  there could be overlap, but those are not one and the same.

8      Back at the May 17th hearing, Mr. Zide said we may

9  need to go and investigate this.  And in the six months since

10  that hearing took place, nobody investigated it.  And so those

11  facts are what they are, but they are very different than what

12  Mr. Zide has represented to this Court, and we've corrected

13  them on numerous occasions, and they continue to be made.

14      So Your Honor, I am mindful of the fact that people

15  make arguments, but those arguments should not be confused with

16  the facts which are very different than what the committee has

17  represented to this Court.

18      THE COURT:  Thank you, counsel.

19      MS. MOSS:  Your Honor, Tina Moss, Perkins Coie.  May I

20  be heard briefly as well?

21      THE COURT:  Yes, please.

22      MS. MOSS:  Yes.  Your Honor, we just would like to

23  note for the record that the debtors and their counsel, in

24  their opposition to the pending motion, and as well with

25  respect to the retention application, have made numerous

Exhibit C

O12Gele1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  ELETSON HOLDINGS INC.,

4              Petitioner,

5       v.                          23 Civ. 7331 (LJL)

6  LEVONA HOLDINGS LTD.,
                                    Oral Argument
7
             Respondent.
8
   ------------------------------x
9                                   New York, N.Y.
                                    January 2, 2024
10                                  2:00 p.m.

11 Before:

12                  HON. LEWIS J. LIMAN,

13                                  District Judge

14                      APPEARANCES

15 REED SMITH LLP
        Attorneys for Petitioner
16 BY:  LOUIS M. SOLOMON
        COLIN A. UNDERWOOD
17      MELISSA CONN

18 QUINN EMANUEL URQUHART & SULLIVAN LLP
        Attorneys for Respondent
19 BY:  ISAAC NESSER
        WILLIAM ADAMS
20      ALEX VAN DYKE
        JOHN SUPER
21      ERIC KAY

22

23

24

25

O12Gele1

1          MR. SOLOMON:  It is our position, your Honor, that

2     your Honor should not edit what the arbitrator did, that your

3     Honor should confirm the award.  I was looking -- because your

4     Honor asked the question -- I was looking at various of the

5     cases that have been cited, and we will continue to look for

6     them, but with respect have not seen the courts here, in the

7     Second Circuit or in the Southern District, edit awards.

8          Levona was clearly a party to the award.  They were a

9     party to the arbitration.  And the award, in all of its

10    findings, in all of its detail should be confirmed against

11    Levona, even those respects --

12         THE COURT:  Where do you get the notion that findings

13    get confirmed, is there authority for that proposition?  I

14    don't understand it.

15         MR. SOLOMON:  The proposition, your Honor, is that the

16    award is confirmed.  It is a separate question, and I would

17    like to address it separately.

18         We have not asked your Honor to enforce any part of

19    this award.  We cannot do that because of the bad faith

20    bankruptcy filing that was made against Holdings.  We, in order

21    to get the arbitration done, entered into a stipulation that,

22    to the extent -- to the extent the automatic stay covered our

23    claims -- and it did not, and it does not, and the Bankruptcy

24    Court never found that it --

25         THE COURT:  But it did cover their claims against you.

O12Gele1

1    benefit of the creditors of Holdings?

2            MR. SOLOMON:  I'd like to take those in separate

3    pieces, because one was argued to Justice Belen and one is a

4    new argument made for the first time here.

5            I believe that the sole question is whether Justice

6    Belen exceeded his powers in deciding that the articulation,

7    the identification of the preferred nominees by name was --

8    somehow he exceeded his authority by doing that.  And then as

9    part of the relief that he gave awarding damages to them and to

10   Gas.  And what Justice Belen finds and his findings are what's

11   entitled to deference here, your Honor, not just his ruling, as

12   between us and Levona, his findings are entitled to deference,

13   because he says -- because one, the parties knew from the

14   outset, in seeking to enforce the BOL -- and yes, we asked for

15   specific enforcement, and yes, we did it early, and yes, we

16   incorporated it late, but it doesn't matter because I read --

17           THE COURT:  What he says in his relief is the

18   preferred interest in the company were transferred to the

19   preferred nominees effective as of March 11, 2022.  And the

20   preferred nominees are permitted transferees under the LLCA.

21           So my question to you is whether any of that would

22   preclude the Bankruptcy Court from determining that the

23   transfer was a fraud on the creditors of Holdings.

24           MR. SOLOMON:  This has been raised with the bankruptcy

25   judge, with Judge Mastando, and each time he said, I would like

O12Gele1

1    to figure out if this award is going to get confirmed and

2    then --

3           THE COURT:  Right, because I raised my preliminary

4    views, which is that I would think, at most, all you're going

5    to get from me is that the preferred -- that the nominees were

6    transferees under the BOL, but not that what Eletson Gas did

7    wasn't fraudulent or that it shouldn't all be clawed back.  In

8    other words, leaving it to the Bankruptcy Court to address

9    those issues or in the -- under the Bankruptcy Code and the law

10   of fraudulent conveyance and not the law of confirmation.

11          MR. SOLOMON:  I believe there is a role, and the

12   Bankruptcy Court feels there is a role for it with respect to

13   even a confirmed award, before that award gets enforced, and so

14   to that extent --

15          THE COURT:  No, but the question is how I should

16   interpret what -- how one would interpret what it is that you

17   want to have enforced.  Is it limited to just, it was

18   transferred to them, whether it's transferred in a fraudulent

19   conveyance or not is totally up to the Bankruptcy Court?

20          MR. SOLOMON:  We're not asking for anything other from

21   your Honor than confirmation of the award.  We're not asking

22   for additional rulings to be made.

23          But I call your Honor's attention to the fact that

24   Levona claims that it is a creditor of Holdings.  And Levona

25   has asserted a $252 million claim against Eletson in the

O12Gele1

1  presentation that -- well, it was all going to go to Holdings

2  and then they switched it up.  False.  And Justice Belen finds

3  that it's false.  And your Honor should refer to those

4  findings.

5       THE COURT:  It sounds like you are knowledgeable about

6  what's happening in the Bankruptcy Court, so just educate me.

7       If the preferred go back to Gas rather than to the

8  nominees, the preferred go to Gas, then I assume that that's

9  going to increase the value of the common interest, effectively

10 what's happening is that Gas is retiring its senior level of

11 equity, increasing the value of the common; right?  I mean, it

12 buys back its -- it's taking back the preferred leaving the

13 common as the only equity; is that right?

14      MR. SOLOMON:  Do you mean, if Gas were to extinguish

15 the preferred, then the common --

16      THE COURT:  If the arbitrator had awarded the

17 preferred to Gas -- you were of the view, you expressed it to

18 the arbitrator that basically what Levona was trying to do was

19 to protect its downside in the arbitration and get the

20 preferred one way or the other; they would be able to either

21 get it by winning the arbitration or they would be able to get

22 it through the bankruptcy, you expressed a view to that effect?

23      MR. SOLOMON:  That's at the Holdings level, your

24 Honor, not at Gas.

25      THE COURT:  Explain to me what your logic was at the

1    stay itself did not apply to us, but the stay did say that if

2    and to the extent the stay applies, then any claim that is

3    being——that the claim should then go and be tried.  Go and try

4    the claims, or the things related to the claims.  And that is

5    what we did.  Levona's principal argument here is that that

6    lift-stay prevented us from giving the names of those nominees.

7    The claim had been in the suit from the beginning, as your

8    Honor said, as your Honor noted.  The BOL never intended——never

9    had it as part of it that those preferred would go to Holdings.

10    Yet you have Levona telling the bankruptcy court and telling

11    Justice Belen that, by the way, those preferred have to go to

12    Levona.  I believe that Justice Belen had the authority to

13    reject that.  I believe he was fully within his power to find

14    that those claims——that's the language I read to your Honor

15    before——had been in the case from the outset, from the start.

16    That was his language.  There was no new claim asserted.  And

17    so there was not even an arguable violation of the lift-stay

18    order.

19         Now in terms of whether the preferred are part of the

20    estate, they're not part of the estate, they were never part of

21    the estate, and it was only a bad-faith argument that Levona

22    made to start an involuntary bankruptcy that made it part of

23    that.  Those claims, his findings, which I believe are going to

24    be——should be binding on Levona, have found that the preferred

25    interests were never part of Holdings.  That is what the

O121ELE2

1    Corbin on Contracts, Volume 9, at Section 46.2, which says,

2    "Currently, there is no longer any doubt that a promisee has

3    the same right to performance in a contract for the benefit of

4    a third party as any other contract promise."  The question

5    that I raised, first of all, the parties are free to address

6    that.

7        The second question that I raised is whether the

8    vindication of a contractual right, whether that right inures

9    to the benefit of the promisee or the third-party beneficiary

10   in and of itself is a concrete interest that is redressable in

11   a court proceeding sufficient to give rise to standing.  There

12   is language from Justice Thomas concurring in the Spokeo case

13   that would tend to support that proposition, 578 U.S. at 344.

14   The parties can address that question and the extent to which

15   it assists in the standing analysis.

16       And then somewhat related to that is any further

17   education that the parties can give me with respect to whether

18   a claim in an arbitration should be considered a singular unit

19   or be divisible.  The analogy I thought of, without knowing

20   precisely which way it plays out—which is always the benefit

21   of raising a question, you get educated—is the way in which a

22   judgment might be treated when a party that is affected by a

23   portion of the judgment but not all of it seeks relief from the

24   judgment.  Does the court then break the judgment in part,

25   retaining some and getting rid of others, or does the court

Exhibit D

```
                    JAMS
- - - - - - - - - - - - - - - - - - - - x
ELETSON HOLDINGS, INC. and
ELETSON CORPORATION,

         Claimants,          JAMS Ref. No.
                             5425000511
         v.

LEVONA HOLDINGS LTD,

         Respondent.

- - - - - - - - - - - - - - - - - - - - x



                    May 15, 2023
                    10:00 a.m.
                    620 Eighth Avenue
                    New York, New York

B E F O R E:

         HONORABLE ARIEL E. BELEN,

              The Arbitrator



         MAGNA LEGAL SERVICES
           (866) 624-6221
           www.MagnaLS.com
```



Page 2

```
 1
 2   APPEARANCES:
 3
 4   REED SMITH
     Attorneys for Claimant
 5            599 Lexington Avenue
              New York, New York 10022
 6   BY:      JILLIAN FITZPATRICK, ESQUIRE
              LOU SOLOMON, ESQUIRE
 7            COLIN UNDERWOOD, ESQUIRE
              JOSH PELES, ESQUIRE
 8            ALYSSA CONN, ESQUIRE
 9
10   FRANKEL, RUBIN, KLEIN, PAYNE & PUDLOWSKI,
     P.C.
11   Attorneys for Respondent
              231 South Bemiston Avenue
12            Suite 1111
              St. Louis (Clayton), Missouri
13            63105-1914
     BY:      REID SIMPSON, ESQUIRE
14            MAYER KLEIN, ESQUIRE
              MIRIAM HIRSCH, ESQUIRE
15
16   ALSO PRESENT:
17   ADAM SPEARS
18   LASKARINA KARASTAMATI
19   VASSILIS KERTSIKOFF
20   VASILIS HADJIELEFTHERIADIS
21   RACHEL A. GUPTA, Law Clerk
22   MICHAEL LION, Exhibit Tech
        Magna Legal Services
23
                                      09:38:39
24                                    10:13:08
25
```



Page 6

1

2        follow this logical structure.                    10:16:24

3            Certainly the main event is the              10:16:28

4        LLCA and the BOL.  We intend to show             10:16:30

5        that under the BOL, an option was                10:16:35

6        exercised to remove Levona as the                10:16:40

7        preferred, that Levona, for reasons that         10:16:44

8        I think will become clear during the             10:16:49

9        hearing, decided not to honor the                10:16:51

10       contract.                                         10:16:54

11           We will ask for your Honor to honor          10:16:54

12       that contract for them to remove them as          10:16:56

13       a preferred.                                       10:16:59

14           There is a whole second area of              10:17:01

15       aggravated conduct that we intend to             10:17:04

16       prove and that brings us both before and          10:17:07

17       after Levona became a purported                   10:17:11

18       preferred of Eletson Gas.                         10:17:17

19           And then the last issue which I              10:17:23

20       normally would not spend time on in an           10:17:24

21       opening, but I feel I would like to              10:17:27

22       spend a little time on and that is               10:17:29

23       relief, not just the damages, but why            10:17:34

24       and how we might structure relief here           10:17:35

25       so that it's effective so that we don't          10:17:38



Page 7

1

2          wind up going through all this and your        10:17:40

3          Honor will come to toil and struggle to        10:17:43

4          come to a decision and your Honor will         10:17:44

5          come to a decision and then Levona and         10:17:46

6          its affiliates will render it nugatory.        10:17:48

7              Having said that those are the             10:17:55

8          three areas, those are the three kind of       10:17:56

9          major elect areas that we are going to         10:17:59

10         be focused on, I will not go that route,       10:18:05

11         I will go more chronologically.  I think       10:18:08

12         it will help understanding.                    10:18:11

13             And let me start with who the              10:18:12

14         parties are and your Honor knows this.         10:18:15

15         I can do this quite quickly.  Eletson          10:18:17

16         Holdings is one of the claimants, it           10:18:20

17         holds the common shares of Eletson Gas,        10:18:23

18         also called the company.                       10:18:26

19             Eletson Corporation is a special           10:18:28

20         member of the company and responsible          10:18:32

21         for the provision of management services       10:18:33

22         for the vessels owned directly or              10:18:36

23         indirectly by the company and we mushed        10:18:39

24         together a lot, Eletson and company and        10:18:45

25         whose who and management and whatnot.          10:18:48



Page 153

```
 1
 2       this proceeding.  As soon as they said,    13:10:10
 3       even if they win -- even if we win in       13:10:14
 4       this proceeding, they're going to take      13:10:18
 5       that asset and they are -- it goes back     13:10:19
 6       into Holdings and so, lo and behold, the    13:10:22
 7       bankruptcy allows them to take it.          13:10:26
 8            So your Honor has wasted a year,       13:10:28
 9       your Honor has given us a standstill for    13:10:30
10       nothing, your Honor went through all        13:10:33
11       this evidence and that's when we said,      13:10:34
12       well, wait a minute, I went back to my      13:10:36
13       client and it says these nominees, why      13:10:37
14       don't we just transfer it to the           13:10:40
15       nominees and they said, we don't have       13:10:42
16       to, we have already done it.  Not           13:10:43
17       something that we knew about.               13:10:45
18            We then went and found the             13:10:45
19       documents.  Let's be very clear about       13:10:48
20       the documents.  The documents are          13:10:50
21       evidence of the agreement.  They are not    13:10:52
22       the agreement.  The agreement is an oral    13:10:55
23       agreement and your Honor will be able to    13:10:57
24       question the witnesses about it.            13:11:01
25            However, under your Honor's order,     13:11:02
```



Exhibit E

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

ELETSON HOLDINGS INC., et al.,          Main Case No.

      Debtors.                          23-10322-jpm

- - - - - - - - - - - - - - - - - - - -x

          United States Bankruptcy Court

          One Bowling Green

          New York, New York

          September 6, 2023

          12:45 PM

B E F O R E:

HON. JOHN P. MASTANDO, III

U.S. BANKRUPTCY JUDGE

ECRO:  KAREN

```
 1              THE COURT:  Good morning.  Thank you.
 2              Okay.  Who would like to begin?
 3              MR. ORTIZ:  Good afternoon again, Your Honor.  Kyle
 4    Ortiz of Togut, Segal & Segal for twelve of the fourteen
 5    petitioning creditors.  First of all, Your Honor, thank you
 6    very much for your patience this morning.  On behalf of all of
 7    the parties, we really do appreciate it.  And we're happy to
 8    report that we think it was time well spent, and the parties
 9    were able to reach a resolution of the immediate matters before
10    the Court.
11              And what we'd like to do, Your Honor, if it's okay
12    with you, is to read our stipulation into the record.  And
13    honestly, Your Honor, I feel a little silly now.  Ms. Castillo
14    just came out and said, are you going to send something to the
15    judge.  Would probably could have just sent it to you so you
16    had it in front of you.  We're happy to do that immediately
17    after the hearing.
18              But what we were thinking is that we would read it
19    into the record, and then provided it's all right with Your
20    Honor, once you've heard it, that Your Honor so orders the
21    record so that we are all bound by it today, and then we can
22    continue from there.
23              THE COURT:  Sounds great.  Thank you.
24              MR. ORTIZ:  All right.  And before reading it, I
25    should note that appreciate the hard work by all parties to get
```

1 to a resolution.

2        THE COURT:  Court appreciate it as well.

3        MR. ORTIZ:  So Your Honor, I'm going to try to make

4 sure I get every word right.

5        So the stipulation and order that the parties agree to

6 is that first of all, within seven days, the debtors will

7 withdraw the motion to dismiss without prejudice to the

8 arguments set forth therein and will voluntarily convert to

9 Chapter 11.  And petitioning creditors agree not to object to

10 any such voluntary conversion.

11        The next bullet, Your Honor, petitioning creditors or

12 people acting in concert with the petitioning creditors agree

13 not to bring a motion to appoint an examiner, a trustee, or to

14 limit exclusivity during the first 120 days of the Chapter 11

15 cases.

16        The next bullet, Your Honor, debtors withdrawal

17 without prejudice the adversary proceeding case number 23-1132

18 and agree not to reinitiate that action or the claims therein

19 for the longer of four months or the end of confirmation and

20 vacatur proceedings related to the arbitration.  Subject to the

21 foregoing sentence, parties reserve their rights in this

22 stipulation and order, and any conduct pursuant thereto is

23 entirely without prejudice to make any and all arguments,

24 claims, defenses, and positions in the arbitration or in any

25 confirmation, vacatur, or enforcement proceeding or in any

1 | other action.
2 |      The next bullet, Your Honor, respective professionals
3 | agree not to object to other professionals seeking retention as
4 | estate professionals in the capacity as debtors' counsel or
5 | special counsel or committee counsel, respectively.
6 |      The next bullet, Your Honor, the debtors agree not to
7 | object to a substantial contribution motion on behalf of the
8 | petitioning creditors up to collectively 1.5 million dollars
9 | with the agreement that the petitioning creditors may seek
10 | additional amounts, and the debtors and the petitioning
11 | creditors reserve all rights with regard to such later
12 | requests.
13 |      Only two more bullets to go, Your Honor.
14 |      The next bullet, petitioning creditors will not object
15 | to or assert rights of recovery against the pre-petition fees
16 | of the debtors' counsel up to a two-million-dollar cap, and all
17 | rights are reserved for any amounts above the two-million-
18 | dollar cap.
19 |      And the final bullet, Your Honor, this agreement is
20 | without prejudice to all causes of action, claims, and defenses
21 | that the parties may assert, including without limitation the
22 | debtors' ability to object to claims in the Chapter 11.
23 |      And that's the agreement that we would ask Your Honor
24 | to so order on the record.  But of course, before doing that,
25 | wanted to see if you have any questions.  Also we do have a

1   internet link, so I could email it to you right now if you

2   wanted that, Your Honor.  It's helpful to see it in writing.

3          THE COURT:  Sure.  Why don't you do that.

4          MR. ORTIZ:  Happy to.

5          THE COURT:  And while you do that, I'll allow anyone

6   else who wishes to be heard to --

7          MR. SOLOMON:  Your Honor, this is Lou Solomon, and we,

8   too, want to thank the Court for its good offices today and

9   thank you to all of your staff for putting up with us.  We did

10  try to resolve this before today.  It just wasn't possible.  So

11  thank you for the luxurious courtroom.

12         What was put onto the record is our agreement.  I

13  think I simply wanted to clarify that what might not be clear

14  to Your Honor is that the proceeding that relates to the

15  arbitration, the confirmation and vacatur proceeding --

16         THE COURT:  Um-hum.

17         MR. SOLOMON:  -- is a matter that is currently

18  pending --

19         THE COURT:  Right.

20         MR. SOLOMON:  -- in the district court before Judge

21  Limon.  And that is --

22         THE COURT:  I saw that in the papers.

23         MR. SOLOMON:  Okay.  That's what we are referring to.

24         THE COURT:  Yes.

25         MR. SOLOMON:  Thank you, Your Honor.

1      THE COURT:  Okay.  Would anyone else like to be heard?

2      MR. HERMAN:  Your Honor, David Herman on behalf of the

3  trustee.  We similarly would like thank the Court for its

4  patience this morning.  The trustee is supportive of this

5  agreement.

6      THE COURT:  Thank you.

7      Anyone else?

8   (Pause)

9      MR. ORTIZ:  It's been sent, Your Honor.  I sent it to

10  Ms. Castillo and also to the orders email you have.  And I

11  apologize.  It doesn't have all the typical "Dear the Honorable

12  Chambers" and "respectfully" --

13      THE COURT:  No, that's fine.

14      MR. ORTIZ:  -- "submitted".

15      THE COURT:  Just give me a moment, and I'll --

16      MR. ORTIZ:  Yeah.

17      THE COURT:  -- (indiscernible).

18   (Pause)

19      THE COURT:  Okay.  Great.  Thank you.

20      Did anyone else wish to be heard?

21      Okay.  The Court has reviewed the stipulation as read

22  into the record by counsel and agreed to by all counsel

23  present, and the Court will so order.  And once the, I guess,

24  conversion is complete, we will figure out dates and the next

25  status.

1          MR. ORTIZ:  That's right, Your Honor.

2          THE COURT:  And that process.  All right.

3          UNIDENTIFIED SPEAKER:  Thank you.

4          THE COURT:  Good.  Anything else for today?

5          MR. ORTIZ:  No, Your Honor.  Thank you.

6          THE COURT:  All right.

7          MR. ORTIZ:  Thank you very much, Your Honor.

8          THE COURT:  Thank you, everyone.  We're adjourned.

9    Have a great day.  Thank you.

10       (Whereupon these proceedings were concluded at 12:56 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         I N D E X

3   RULINGS:                                      PAGE   LINE

4   Parties' stipulation is so ordered            12     21

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25