TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Brian F. Shaughnessy
Amanda C. Glaubach

*Counsel for Pach Shemen LLC, VR Global Partners, L.P., Alpine Partners (BVI), L.P., Gene B. Goldstein, Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust, Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust, Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust, Robert Latter, Tracy Lee Gustafson, Jason Chamness, and Ron Pike* (collectively, the "*Petitioning Creditors*")

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ELETSON HOLDINGS INC., et al., | : | Case No. 23-10322 (JPM) |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |
| | : | |

-------------------------------------------------------------x

## OBJECTION AND RESERVATION OF RIGHTS OF THE PETITIONING CREDITORS TO REED SMITH LLP'S APRIL MONTHLY FEE STATEMENT

The Petitioning Creditors, by and through their undersigned counsel, hereby submit this objection and reservation of rights (the "Fourth Objection") to the *Fourth Monthly Fee Statement of Reed Smith LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtors and Debtors in Possession, for the Period from April 1, 2024 Through April 30, 2024* [Docket No. 702] (the "April Fee Statement") and respectfully state:[2]

---

[1] The Debtors in these cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Preliminary Objection (as defined below).

## OBJECTION

A. <u>The First Interim Fee Period</u>

1. On February 29, 2024, the Debtors filed the *First Interim Fee Application of Reed Smith LLP, Counsel to the Debtors and Debtors in Possession, for Compensation and Reimbursement of Expenses for the Period September 25, 2023 to December 31, 2023* [Docket No. 444] (the "<u>First Fee Application</u>"). By the First Fee Application, Reed Smith requested allowance **and payment** of fees in the amount of $2,522,514.75 and expenses in the amount of $4,657.03 for the period from the Conversion Date through December 31, 2023 (the "<u>First Fee Period</u>").

2. On March 14, 2024, the Petitioning Creditors filed the *Preliminary Objection of the Petitioning Creditors to the First Interim Fee Application of Reed Smith LLP, Counsel to the Debtors and Debtors in Possession, for Compensation and Reimbursement of Expenses for the Period September 25, 2023 to December 31, 2023* [Docket No. 484] (the "<u>Preliminary Objection</u>").

3. Following a hearing held on May 8, 2024, on May 14, 2024, the Court entered a first interim order granting the First Fee Application, in part solely with respect to "bankruptcy-related" fees and reserving all rights with respect to the Preliminary Objection for the final fee hearing [Docket No. 676] (the "<u>First Interim Fee Order</u>"). Also, on May 8, 2024, the Court heard argument, and reserved decision, on the Preliminary Objection as it relates to the "arbitration" fees.

B. <u>Subsequent Fee Statements and Pending Objections</u>

4. On March 28 and April 1, 2024, respectively, the Debtors filed the:
(a) *First Monthly Fee Statement of Reed Smith LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtors and Debtors in Possession, for the Period from January 1, 2024 Through January 31, 2024* [Docket No. 537]

2

(the "January Fee Statement") and (b) *Second Monthly Fee Statement of Reed Smith LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtors and Debtors in Possession, for the Period from February 1, 2024 Through February 29, 2024* [Docket No. 541] (the "February Fee Statement"), which the Petitioning Creditors objected to on April 11, 2024 [Docket No. 578] (the "Subsequent Objection").

5. On April 26, 2024, the Debtors filed the *Third Monthly Fee Statement of Reed Smith LLP for Allowance of Compensation for Services Rendered and Reimbursement of Expenses as Counsel to the Debtors and Debtors in Possession, for the Period from March 1, 2024 Through March 31, 2024* [Docket No. 618] (the "March Fee Statement"), which the Petitioning Creditors objected to on May 10, 2024 [Docket No 659] (the "Third Objection" and, together with the Preliminary Objection and the Subsequent Objection, the "Prior Objections").

6. The Prior Objections object to the allowance and payment of substantial fees and expenses that do not provide any actual and necessary benefit to the Debtors' estates, and accordingly, should not be paid for by the Debtors. *See* Preliminary Objection at II.B; Subsequent Objection ¶ 5; Third Objection ¶ 8. For example, during the First Fee Period, Reed Smith billed approximately $1.7 million to the "Arbitration" matter (in addition to substantial time scattered across various other work categories that also relate to the Arbitration) and $75,942 to the "Plan and Disclosure Statement" matter, both of which benefit the Debtors' shareholders and insiders—not the Debtors' estates. *See* Preliminary Objection at II.B. Similarly, the January Fee Statement and February Fee Statement seek payment of fees of approximately $1,026,691 billed to the "Arbitration" matter (in addition to substantial time scattered across various other work categories that also relate to the Arbitration), and fees of approximately $111,734 billed

3

to the "Plan and Disclosure Statement" matter.  *See* Subsequent Objection ¶ 5.  Further, the March Fee Statement seeks payment of fees of approximately $42,778.50 billed to the "Arbitration" matter (in addition to substantial time scattered across various other work categories that also relate to the Arbitration), fees of approximately $127,381 billed to the "Plan and Disclosure Statement" matter, and fees of approximately $133,215 billed to the "Financing and Cash Collateral" matter.  *See* Third Objection ¶ 8-9.

7. The Prior Objections also raise various other issues including, among other things, (a) duplicative, excessive, and unnecessary time entries (Preliminary Objection ¶¶47-50), (b) vague time entries and inconsistent and unclear listings of time across various work categories (*id.* ¶ 55), and (c) inconsistencies between some of the rates charged in the First Fee Application, the January Fee Statement, the February Fee Statement, the March Fee Statement and those disclosed in the Retention Application and related disclosures (*id.* ¶¶ 51-53; Subsequent Objection ¶6; Third Objection ¶13), all of which make it impossible for the Court, creditors, or other parties in interest to determine what amounts incurred by Reed Smith provide an actual and necessary benefit to the Debtors' estates.

8. In addition, the Prior Objections raise various inconsistences and issues regarding Reed Smith's multiple engagements with the Debtors, their non-Debtor affiliates, and which entities are responsible for payment of such fees.  *See* Preliminary Objection ¶¶ 6-19; Subsequent Objection ¶ 7; Third Objection ¶¶ 11-12.  The Preliminary Objection also provides that as of March 14, 2024, Reed Smith "has not provided copies of any of its engagement letters with the Debtors and non-Debtor affiliates that would shed light on their clients."  Preliminary Objection at 1, n. 4.  As of the date hereof, almost three months later, Reed Smith still has not shared copies of any

4

of its engagement letters with the Debtors, non-Debtor affiliates, or any insiders Reed Smith represents.

C.      Objections to the April Fee Statement

9.      For substantially the same reasons set forth in the Prior Objections, which are incorporated herein by reference, the Petitioning Creditors object to the April Fee Statement. In addition, the April Fee Statement has a myriad of other issues similar to those raised and disputed in the Prior Objections, such as (a) fees of approximately $50,446.00 relating to the Arbitration that do not provide any benefit to the Debtors or their estates,[3] and (b) fees of approximately $165,764.00 billed to the "Plan and Disclosure Statement" matter, which should not be compensable because the Debtors' unconfirmable, bad faith new value plan only benefits the Debtors' shareholders and insiders—not their estates.[4] The Debtors should not be charged for any amounts billed to the "Arbitration" or the "Plan and Disclosure Statement" matters pursuant to the April Fee Statement for substantially the same reasons set forth in the Preliminary Objection.

10.     Additionally, the April Fee Statement seeks payment of $8,220.00 billed to the "Financing and Cash Collateral" matter, which provided zero benefit to the Debtors' estates and is not compensable for the same reasons set forth in the Third Objection. *See* Third Objection ¶¶ 9-11.

---

[3] The $50,446.00 is before taking into account substantial time spent on the Arbitration billed to other categories of work that should have been billed to the "Arbitration" matter. It is also before taking into account substantial Arbitration-related work (like motions to enforce, modifications to the Court's stay order, and for stay relief (or in opposition thereof)) Reed Smith billed to the Debtors outside of the "Arbitration" matter, such as the $35,728.50 billed to the "Relief from Stay and Adequate Protection" matter, which the Debtors should not pay for.

[4] The Debtors' amended plan, filed on April 8, 2024 [Docket No. 570] and second amended plan, filed on May 13, 2024 [Docket No. 671], only benefit the Debtors' shareholders and insiders and are unconfirmable for the same reasons that the Insider Plan is unconfirmable.

11. The April Fee Statement also requests payment of $377,649.00 billed to the "Claims Administration and Objections" matter, which should not be compensable because those services did not benefit the Debtors' estates. The majority of the time entries billed to the "Claims Administration and Objections" matter relate to the Debtors' objections to Proofs of Claims [Docket Nos. 376-380] (the "Claims Objections"). As described more fully in the various responses to the Claims Objections, the Claims Objections are meritless and demonstrate a willful ignorance of the Bankruptcy Code, controlling caselaw, and the *Order Establishing Deadlines for Filing Proofs of Claim and Claims Related to Gap Period and Approving Form and Manner of Notice Thereof* [Docket No. 264].[5] The Claims Objections were clearly filed in connection with the Debtors' pursuit of their patently unconfirmable, improper new value plan that benefits their insiders and shareholders, not the Debtors, their estates, and their creditors. Given that the Claims Objections have no factual or legal basis, the time billed to the "Claims Administration and Objections" category cannot be said to benefit the Debtors' estates and accordingly should not be compensable.

12. The April Fee Statement also requests payment of $27,558.00 billed to the "Employment and Fee Applications Objections" matter, which includes fees for responding to some of the Prior Objections, as well as other objections to the Debtors' fees. Not only do these fees clearly not benefit the Debtors' estates, they are also not compensable under binding Supreme Court precedent that precludes an award of fees

---

[5] As of the date hereof, the following responses were filed to the Claims Objections: (i) *Response of Deutsche Bank Trust Company Americas to Debtors' First Omnibus Objection to Certain Claims* [Docket No. 637]; (ii) *Preliminary Response of Wilmington Savings Fund Society, FSB, as Trustee and Collateral Agent, to Debtors' Objection to Claims of Wilmington Savings Fund Society, FSB* [Docket No. 639], (iii) *Preliminary Opposition to the Debtors' Objection to Claims of Pach Shemen LLC, VR Global Partners, LP, and Alpine Partners (BVI), L.P.* [Docket No. 643], (iv) *Preliminary Response of New Agathonissos Finance LLC to Debtors' Objection to Claims* [Docket No. 644], and (v) *Petitioning Creditors' Joinder to WSFS's Opposition to the Debtors' Objections to WSFS's Claims* [Docket No. 645].

6

and expenses for a professional defending objections to its fee applications. *See Baker Botts L.L.P. v. ASARCO LLC,* 576 U.S. 121, 131-33 (2015) (holding that while sections 330(a)(1) and (a)(6) of the Bankruptcy Code allow for payment of fees and expenses in connection with "preparing" fee applications, section 330(a)(1) of the Bankruptcy Code does not allow for payment of fees and expenses for "defending a fee application."). Further to this point, the Debtors have taken the position that the "Eletson Gas Shareholder Dispute" matter should be compensable by Eletson Corp. and not the Debtors. Thus, even by the Debtors' own formulation of those fees (which the Petitioning Creditors dispute), Reed Smith's fees and expenses for defending objections to the Eletson Gas Shareholder Dispute matter should not be compensable by the Debtors.

13. In addition, as with the First Fee Application, the January Fee Statement, the February Fee Statement, and the March Fee Statement, the April Fee Statement also seeks payment of fees charged at rates that exceed the amounts permitted by the Retention Order and Reed Smith's subsequent disclosures. On January 30, 2024, Reed Smith disclosed the increased hourly rates for partners, associates, and other personnel who may work on these Chapter 11 Cases. *See Fifth Supplemental Declaration of Derek J. Baker Under Fed. R. Bankr. P. 2014 in Support of Debtors Application to Retain and Employ Reed Smith LLP, as Counsel to the Debtor and Debtor-in-Possession, Nunc Pro Tunc as of the Conversion Date* [Docket No. 386] (the "<u>Fifth Supplemental Declaration</u>") ¶ 4. The Fifth Supplemental Declaration provides that the range for partners is "$820 - $1,470" per hour. *Id.* ¶ 4. Mr. Solomon, who billed $270,770.50 in connection with the April Fee Statement, is billed at two different rates $1,610 and $1,715—both of which exceed the

7

highest possible partner rate set forth in the Fifth Supplemental Declaration.[6] The Debtors should not be charged any rates above the $1,470 disclosed in the Fifth Supplemental Declaration.

14.     Like the March Fee Statement, the April Fee Statement includes a handful of time entries for work that was done in March that should have been billed to the March Fee Statement. Specifically, time entries billed to the "2004 Discovery" (J.P. Matthews 03/04/24 ("Prepare supplemental client documents for inclusion into document workspace pursuant to instructions from George Avdellas for potential upcoming disclosure")), "Case Administration" (J.P. Matthews 03/04/24 ("Prepare supplemental key natives for case team analysis pursuant to D. Baker's request")), and "Corporate Governance and Board Matters" (J.P. Matthews 03/05/24 ("Build document set referenced in Outline of Proof re Chapter 11 Trustee Hearing for case team reference/analysis pursuant to instruction from K. Venugopal")), matters contain time entries from March. While the April Fee Statement includes a footnote that provides that "[t]he fees identified above include amounts incurred prior to April 1, 2024 in the amount of $2,645.00 due to billing delays in the ordinary course of business; however such amounts have not been previously billed or included in any prior fee statement" (April Fee Statement at 2), the Debtors should bill their time properly.

15.     Finally, the April Fee Statement also seeks reimbursement of various expenses that should not be reimbursed. Pursuant to General Order M-447, dated January 29, 2013 (Morris, C.J.) (the "General Order"), individual meal expenses cannot exceed $20.00. The April Fee Statement includes multiple expenses that violate the

---

[6]  The April Fee Statement does not explain why Reed Smith is billing Mr. Solomon at a higher rate in the Chapter 11 Cases than in the Arbitration.

8

General Order. For example, the April Fee Statement includes a lunch for fourteen in the amount of $469.73, which is beyond the limits imposed by the General Order. The April Fee Statement also includes multiple vague expenses, including expenses from March that should have been billed to the March Fee Statement, described as "Flik International" that relate to various meals for which it is unclear what timekeepers are charging such meals and the purposes for billing the estates for them. Further, the April Fee Statement includes expenses in the amount of $757.50 for "Secretarial Overtime" which should be classified as overhead and should not be compensable.

## **RESERVATION OF RIGHTS**

16.     The Petitioning Creditors reserve all rights in connection with this Fourth Objection, the April Fee Statement, the Third Objection, the March Fee Statement, the Subsequent Objection, the January Fee Statement, the February Fee Statement, the Preliminary Objection, and these Chapter 11 Cases, including, without limitation, to supplement this Fourth Objection following discovery in advance of any evidentiary hearing(s) scheduled with respect to the April Fee Statement.

|  |  |
|---|---|
| DATED: May 31, 2024<br>New York, New York | TOGUT, SEGAL & SEGAL LLP<br>By:<br><br>*/s/Bryan M. Kotliar*<br>KYLE J. ORTIZ<br>BRYAN M. KOTLIAR<br>BRIAN F. SHAUGHNESSY<br>AMANDA C. GLAUBACH<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000<br><br>*Counsel for the Petitioning Creditors* |

9