**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 23-10322 (JPM) |
| Debtors. [1] | (Jointly Administered) |

**NOTICE OF FILING OF FURTHER REVISED**
**SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**OF DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on July 5, 2024, the above captioned debtors and debtors-in-possession (collectively the "Debtors") filed the solicitation version of the *Second Amended Joint Plan of Reorganization of Debtors Under Chapter 11 of the United States Bankruptcy Code* [Dkt. No. 840] (the "Solicitation Plan").

**PLEASE TAKE FURTHER NOTICE** that on September 8, 2024 the Debtors filed a revised version of the Plan [Dkt. No. 1091] (the "Revised Solicitation Plan").

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file an a further revised version of the Solicitation Plan attached hereto as **Exhibit A** (the "Further Revised Plan") for confirmation by this Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Further Revised Plan the Debtors have made the following changes:

- Addressing a scrivener's error in the Revised Plan regarding the treatment of Class 5 Claims.

**PLEASE TAKE FURTHER NOTICE** that annexed hereto as **Exhibit B** is an iterative redline comparing the Further Revised Plan and the Revised Plan.

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

**PLEASE TAKE FURTHER NOTICE** that annexed hereto as **Exhibit C** is a cumulative redline comparing the Further Revised Plan and the Solicitation Plan.

**PLEASE TAKE FURTHER NOTICE** that copies of the Solicitation Plan, Revised Plan, Further Revised Plan and other pleadings filed in the above-captioned chapter 11 case may be obtained from the Court's website, https://ecf.nysb.uscourts.gov, for a nominal fee.

DATED:    New York, New York
          September 11, 2024

**REED SMITH LLP**

/s/ Derek J. Baker
Derek J. Baker
Joshua Peles (*admitted pro hac vice*)
Derek Osei-Bonsu
Reed Smith LLP
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
        jpeles@reedsmith.com
        dosei-bonsu@reedsmith.com

-and-

Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
        lsolomon@reedsmith.com
*Counsel to the Debtors*

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Eletson Holdings Inc., *et al.*,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |

---

### SECOND AMENDED JOINT PLAN OF
### REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE
### UNITED STATES BANKRUPTCY CODE (AS FURTHER MODIFIED)

---

### REED SMITH LLP

Derek J. Baker
Derek Osei-Bonsu
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
          dosei-bonsu@reedsmith.com

-and-

Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
        lsolomon@reedsmith.com
*Counsel for the Debtors*

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, RESERVATION OF RIGHTS AND DEFINED TERMS ...................................................1

    A.    Rules of Interpretation, Computation of Time and Governing Law........................1

    B.    Defined Terms ..............................................................................................2

    C.    Exhibits .....................................................................................................16

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS .....................................................................................................17

    A.    Classification...............................................................................................17

    B.    Unclassified Claims: Administrative Claims......................................................17

        a.    Administrative Claims (other than Professional Fee Claims, DIP Claims or Committee Professional Fee Claims) ...................18

        b.    Professional Fee Claims and Committee Professional Fee Claims .....................................................................................18

        c.    DIP Claims....................................................................................19

        d.    Administrative Claims and Substantial Contribution Claim Filing Deadline...........................................................................19

    C.    Treatment of Classified Claims ......................................................................19

        1.    Class 1 — OCM Guaranty Claims...................................................19

        2.    Class 2 — Corp Guaranty Claims....................................................20

        3.    Class 3 — Azure Guaranty Claims...................................................20

        4.    Class 4 — Trade Creditor Claims....................................................20

        5.    Class 5 — Noteholder Election Recovery Claims.....................................21

        6.    Class 6A — Non-Petitioning Creditor Note Claims................................21

        7.    Class 6B — Petitioning Creditor Exchange Note Claims .........................22

        8.    Class 7 — Interests ........................................................................22

ARTICLE III. ACCEPTANCE OR REJECTION OF THE PLAN .............................................23

    A.    Voting Classes ............................................................................................23

    B.    Classes Presumed to Accept this Plan ...............................................................23

    C.    Acceptance by Impaired Classes .....................................................................23

    D.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.....................................................................................................23

    E.    Non-Consensual Confirmation .......................................................................24

    F.    Controversy Concerning Impairment ...............................................................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN..........................................24

    A.    Implementation of the Plan and Sources of Consideration for Plan
        Distributions.........................................................................................24

        1.    The Shareholder New Value Contribution ...............................24

        2.    Distributable Cash....................................................................25

        3.    Excess SME Proceeds................................................................25

        4.    Litigation Trust Causes of Action ............................................26

    B.    Substantive Consolidation ...................................................................26

        1.    Order Granting Plan Consolidation ..........................................26

        2.    Plan Consolidation ...................................................................26

    C.    Corporate Existence .............................................................................27

    D.    Vesting of Assets in the Reorganized Debtor .......................................27

    E.    Dissolution of the Committee ...............................................................28

    F.    Reorganized Debtor Organizational Documents ..................................28

    G.    Appointment of Directors and Officers of the Reorganized Debtor.....28

    H.    Creation of the Litigation Trust ...........................................................29

    I.    Transfer of Assets and the Litigation Trust Causes of Action to the
        Litigation Trust ....................................................................................30

    J.    Liabilities of the Litigation Trust.........................................................30

    K.    Appointment of the Litigation Trust Trustee and Members of the
        Litigation Trust Oversight Committee..................................................31

    L.    Cooperation and Privilege....................................................................31

    M.    Duties of the Litigation Trust Trustee...................................................32

    N.    Post Confirmation Expenses .................................................................34

    O.    Liability; Indemnification ....................................................................35

    P.    Litigation Trust Oversight Committee..................................................35

    Q.    Good Faith ............................................................................................36

    R.    Saturday, Sunday or Legal Holiday .....................................................37

    S.    Exemption from Certain Taxes and Fees..............................................37

    T.    Issuance of Documents Necessary to Consummate the Plan................37

    U.    Final Decree .........................................................................................37

ARTICLE V. RETAINED CAUSES OF ACTION .............................................................37

    A.    Maintenance of Causes of Action .........................................................37

    B.    Preservation of Causes of Action..........................................................38

C.     Preservation of All Causes of Action Not Expressly Settled or Released ............ 39

D.     Retained Causes of Action and Retained Causes of Action Contribution ............ 39

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 40

A.     Rejection of Executory Contracts or Unexpired Leases ....................................... 40

B.     Rejection Damages Bar Date ................................................................................ 40

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 41

A.     Disbursing Agent .................................................................................................. 41

     1.     Litigation Trust Trustee as Disbursing Agent for Class 6A Claims and Class 6B Claims ...................................................................... 41

     2.     Alternative Disbursing Agent Qualification ............................................ 41

B.     Time and Manner of Distributions ....................................................................... 41

C.     Interest on Claims ................................................................................................. 42

D.     Compliance with Tax Requirements/Allocations ................................................. 42

E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions ........... 42

     1.     Delivery of Distributions in General ....................................................... 42

     2.     Undeliverable Distributions ..................................................................... 42

          a.     Holding of Undeliverable Distributions ....................................... 42

          b.     Failure to Claim Undeliverable Distributions .............................. 43

F.     Claims Administration Responsibility .................................................................. 43

     1.     Reservation of Rights to Object to Claims ............................................... 43

     2.     Filing of Objections ................................................................................. 43

     3.     Determination of Claims .......................................................................... 44

G.     Procedures for Treating and Resolving Disputed and Contingent Claims or Interests ................................................................................................................ 44

     1.     No Distributions Pending Allowance ....................................................... 44

     2.     Claim Estimation ..................................................................................... 44

H.     Setoffs and Recoupment ...................................................................................... 45

I.     Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code ............................................................................................... 45

J.     Cancellation of Instruments and Agreements ...................................................... 45

K.     Withholding Taxes ............................................................................................... 46

L.     Reports ................................................................................................................. 46

M.     Distribution Record Date ..................................................................................... 46

N.     Timing and Calculation of Amounts to be Distributed ........................................ 47

O. Settlement of Claims and Controversies ..................................................47

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND OCCURRENCE
OF THE EFFECTIVE DATE ..........................................................................47

A. Conditions Precedent to Confirmation ...................................................47

B. Conditions Precedent to Occurrence of Effective Date ...........................47

C. Waiver of Conditions ............................................................................48

D. Debtors' Right of Revocation or Withdrawal .........................................48

ARTICLE IX. EFFECT OF CONFIRMATION .................................................................48

A. Injunction ............................................................................................48

B. Term of Injunctions or Stays ................................................................49

C. Exculpation .........................................................................................49

D. Release of Liens ..................................................................................50

ARTICLE X. RETENTION OF JURISDICTION .............................................................50

ARTICLE XI. MISCELLANEOUS PROVISIONS ............................................................52

A. Effectuating Documents, Further Transactions and Corporation Action ..............52

B. Payment of Statutory Fees ...................................................................52

C. Headings .............................................................................................52

D. Binding Effect of Plan .........................................................................53

E. Final Order .........................................................................................53

F. Withholding and Reporting Requirements .............................................53

G. Tax Exemption ....................................................................................53

H. Governing Law ....................................................................................54

I. Severability .........................................................................................54

J. Plan Controls .......................................................................................54

K. Amendments and Modifications ...........................................................54

L. Notices ................................................................................................54

M. Filing of Additional Documents ...........................................................55

N. Direction to a Party .............................................................................55

O. Successors and Assigns .......................................................................55

P. Reservation of Rights ..........................................................................56

Q. Further Assurances .............................................................................56

R. Entire Agreement ................................................................................56

S. Filing of Additional Documents ...........................................................56

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, Eletson Holdings Inc., Eletson Finance (US) LLC and Agathonissos Finance LLC, debtors and debtors-in-possession (collectively and as defined below the "Debtors"), in the above-captioned and numbered case, hereby respectfully propose this Joint Plan of Reorganization of Debtors Under Chapter 11 of the United States Bankruptcy Code.

The Plan effects a restructuring of the Debtors' outstanding obligations owed to its creditor constituencies and is created for the purposes, among others, of making distributions to the Holders of Allowed Claims and Interests, and otherwise restructuring the outstanding obligations of the Estates, all as more fully set forth in this Plan.

**ARTICLE I.**

**RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, RESERVATION OF RIGHTS AND DEFINED TERMS**

A.  *Rules of Interpretation, Computation of Time and Governing Law*

1.  For purposes herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference herein to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references herein to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.  In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

B.    *Defined Terms*

Unless the context requires otherwise, the following terms shall have the following meanings when used in capitalized form herein:

1.      "Administrative Bar Date" means the date which is the 30th day after the Effective Date.

2.      "Administrative Budget" means (i) the initial budget for the period following the Effective Date, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Litigation Trust, together with any amendments or modifications thereto, as prepared by the Debtors pursuant to Article IV.N of this Plan which shall be determined by the Debtors with the consent of the Committee, which consent shall not be unreasonably withheld, in an amount no less than $200,000 which shall be drawn from the Distributable Cash; and (ii) any modified budget, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Litigation Trust, together with any amendments or modifications thereto, as prepared by the Litigation Trust Trustee and approved by the Litigation Trust Oversight Committee pursuant to Article IV.N of this Plan.

3.      "Administrative Claim" means a Claim for costs and expenses of administration under sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise; and (c) all fees and charges assessed against the Estates under chapter 123 of Title 28 United States Code, 28 U.S.C. §§ 1911-1930.

4.      "Administrative Fund" means the reserve established for the Post-Confirmation Expenses in accordance with Article IV.N herein, which reserve may be augmented with Litigation Trust Assets by the Litigation Trust Trustee in consultation with and at the direction of the Litigation Trust Oversight Committee; provided, however, on the Effective Date, the initial Administrative Fund shall not exceed the amount of $200,000 necessary to monetize the Litigation Trust Causes of Action as of the Effective Date.

5.      "Allowed Claim" or "Allowed Interest" means, respectively, a Claim or Interest: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Claims Bar Date to which (x) no objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made, and (y) the Litigation Trust Trustee has determined that no objection, or motion to subordinate, disallow or otherwise limit recovery, will be made to such Claim or Interest; (iii) as to which a timely Administrative Claim Request has been filed to which (x) no objection thereto, or application to equitably subordinate or otherwise limit recovery has been made, and (y) the Litigation Trust Trustee has determined that no objection, or application to equitably subordinate or otherwise limit recovery, will be made to such Administrative Claim Request; or (iv) that has been allowed by a Final Order or

pursuant to the terms of this Plan. An Allowed Claim shall not include interest on the amount of any Claim except with respect to an Allowed Secured Claim as permitted by section 506(b) of the Bankruptcy Code or as specifically provided in this Plan, or by Final Order of the Bankruptcy Court. If the Litigation Trust Trustee shall object to any Claim in accordance with section 502(d) of the Bankruptcy Code, such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

6. "Allowed _____ Claim" or "Allowed _____ Interest" means an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Claim, Secured Claim, General Unsecured Claim or Interest, as the case may be.

7. "Arbitration" means the JAMS Arbitration initiated by Eletson Holdings and Eletson Corp. against Levona Holdings Ltd.

8. "Assets" means all assets of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Section 541 of the Bankruptcy Code; Cash; Causes of Action including Avoidance Actions; rights; interests; and property, real and personal, tangible and intangible.

9. "Avoidance Actions" means those avoidance actions available in these Chapter 11 Cases pursuant to Chapter 5 of the Bankruptcy Code.

10. "Azure" means collectively Azure Nova Spring Company, Ltd., Azure Nova Summer Company, Ltd., Azure Nova Autumn Company, Ltd. and Azure Nova Winter Company, Ltd.

11. "Azure Guarantees" means those certain guarantees dated as of August 24, 2017, executed by Eletson Holdings in favor of the obligations of certain Eletson affiliates to Azure.

12. "Azure Guaranty Claims" means any and all guaranty related Claims arising from the Azure Guarantees.

13. "Azure Guaranty Recovery" means the lesser of (i) $200,000 and (ii) such other amount as determined by the Debtors and Azure in full and complete settlement, release and satisfaction of the Azure Guaranty Claims.

14. "Ballots" means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests in the Debtors entitled to vote shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

15. "Bankruptcy Code" means Title 11 of the United States Code, and the applicable portions of Title 28 of the United States Code.

16. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

17. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General, Local and Chambers Rules of the Bankruptcy Court.

18. "Bar Date Order" means the *Order Establishing Deadlines for Filing Proofs of Claim and Claims Related to Gap Period and Approving Form and Manner of Notice Thereof* [D.I. 264].

19. "Beneficial Holder" means the Person or Entity holding the beneficial interest in a Claim or Interest.

20. "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) in New York, York.

21. "Cash" means cash and cash equivalents in certified or immediately available funds, including, but not limited to, bank deposits, checks and similar items.

22. "Cause of Action" means, but is not limited to the following: all claims as defined in section 101(5) of the Bankruptcy Code, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, all claims in any avoidance, recovery, inequitable conduct, subordination or other actions against Insiders and/or any other Persons under the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553) of the Debtors, the Debtors in Possession and/or the Estates against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown.

23. "Chapter 11 Cases" means the chapter 11 bankruptcy cases of the Debtors initiated pursuant to that *Order Converting These Cases to Cases Under Chapter 11* [D.I. 215], jointly administered under the name Eletson Holdings Inc. Case No. 23-10322.

24. "Claim" means any claim(s) against the Debtors as such term is defined in Bankruptcy Code § 101(5).

25. "Claim Holder" means the Holder of a Claim.

26. "Claims Bar Date" means (i) December 18, 2023, and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against the Debtors, must have filed a Proof of Claim or Administrative Claim Request or be forever barred from asserting such Claim.

27. "Class" means a category of Claims or Interests as set forth in Article II herein.

28. "Class 6 Claims" means the aggregate Claims of Class 6A and Class 6B.

29. "Collections Contribution" means the Gas Ownership Defendants' agreement to contribute and deliver to the Litigation Trust Trustee a one time-cash payment equal to (i) 90% of

the first $21 million of net cash recoveries under the Final Award (with the remaining 10% of net cash recoveries being collected by Eletson Corporation on account of amounts awarded to Eletson Corporation under the Final Award); plus (ii) 50% of the next $20 million of net cash recoveries under the Final Award (with the remaining 50% of such of cash recoveries of amounts awarded to Eletson Corporation under the Final Award); plus (iii) 75% of the net cash recoveries in excess of $41 million under the Final Award; provided, however, for purposes of the foregoing, "net cash recoveries" shall mean cash actually collected under the Final Award net of costs of collection incurred following the date of the Final Award (*i.e.*, September 29, 2023) by Eletson Corporation and/or the Gas Ownership Defendants and net of any amounts setoff by any Gas Ownership Defendants for amounts owed to Levona.

30. "Committee" means the Official Committee of Unsecured Creditors as constituted by the Office of United States Trustee in the Chapter 11 Cases. [D.I. 233.]

31. "Committee Professionals" means (a) Dechert LLP, (b) FTI Consulting, Inc., and (c) any other Person or Entity employed by the Committee pursuant to a Final Order in accordance with sections 327 and 1103 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code.

32. "Committee Professional Fees" means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Committee Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

33. "Committee Professional Fee Claims" means all Committee Professional Fees which remain unpaid as of the Effective Date.

34. "Confirmation" means the entry of the Confirmation Order.

35. "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rule 5003.

36. "Confirmation Hearing" means that hearing before the Bankruptcy Court wherein the Debtors seek confirmation of the Plan as provided for in section 1128 of the Bankruptcy Code.

37. "Confirmation Order" means the order of the Bankruptcy Court, in form and substance satisfactory to the Debtors, confirming this Plan pursuant to section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

38. "Consolidating Debtors" means collectively Eletson Finance (US) LLC and Agathonissos Finance LLC.

39. "Conversion Date" means September 25, 2023.

40.     "Corp Guarantees" means an executed guaranty or similar security agreement other than the Azure Guarantees and the OCM Guarantees executed by Eletson Holdings guaranteeing the obligations of Eletson Corporation.

41.     "Corp Guaranty Claims" means any guaranty related Claims arising from the Corp Guarantees.

42.     "Creditor" shall have the meaning in section 101(10) of the Bankruptcy Code.

43.     "Debtors" means collectively Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

44.     "Debtor Privilege" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtors.

45.     "DIP Agent" means the administrative agent set forth in the DIP Documents.

46.     "DIP Claim" means any Claim in respect of the Debtors' obligations under the DIP Documents, including principal, interests and other fees and expenses owing pursuant to the DIP Documents and in accordance therewith held by or otherwise owed to the DIP Agent and/or DIP Lenders.

47.     "DIP Credit Agreement" means the credit agreement governing the terms and conditions of the postpetition financing facility entered into by the Debtors, DIP Agent and DIP Lenders and approved pursuant to order of the Bankruptcy Court.

48.     "DIP Documents" means the DIP Credit Agreement and related documents.

49.     "DIP Facility" means the postpetition financing facility approved by the Bankruptcy Court pursuant to the DIP Order.

50.     "DIP Lenders" means the lenders under the DIP Credit Agreement and any successors and permitted assigns.

51.     "DIP Order" means the interim or final order, as applicable, entered by the Bankruptcy Court approving the DIP Facility and authorizing the DIP Documents.

52.     "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court, (iii) is not Scheduled and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors or the Litigation Trust Trustee and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

53. "Disbursing Agent" means the Litigation Trust Trustee, Reorganized Debtor or third party as applicable in accordance with Article VII.A.

54. "Disclosure Statement" means the First Amended Disclosure Statement in Support of the Second Amended Joint Plan of Reorganization of Debtors under Chapter 11 of the Bankruptcy Code, dated as of July 5, 2024, and all exhibits thereto, as amended, supplemented, or modified from time to time, describing the Plan, that is prepared and distributed in accordance with the Bankruptcy Code and approved by the Bankruptcy Court.

55. "Disclosure Statement Order" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on July 10, 2024 [D.I. 856].

56. "Disputed" means, for purposes of this Plan, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed or contingent and for which a timely objection has been filed; or (b) as to which any Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules which has not been withdrawn or determined by a Final Order; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

57. "Distributable Cash" means all remaining Cash or cash equivalents comprising of the Shareholder New Value Contribution and SME Revenue after (i) payment of the Allowed Administrative Claims including Professional Fee Claims and Committee Fee Claims, (ii) funding of the Administrative Fund, (iii) funding of the Azure Guaranty Recovery, (iv) funding the Eletson Corporation Guaranty Recovery, (v) funding the Trade Creditor Claim Reserve, and (vi) funding the Noteholder Recovery Election Reserve. Notwithstanding the foregoing, (i) any excess amounts remaining in the Trade Creditor Claim Reserve and Noteholder Election Recovery Reserve, if any, after final distributions on account of Allowed Trade Creditor Claims and Noteholder Election Recovery Claims, and (ii) any excess amounts remaining in the Administrative Fund.

58. "Distribution Record Date" means the Effective Date unless a different date is ordered by the Bankruptcy Court.

59. "District Court Confirmation Proceedings" means those proceedings before the United States District Court for the Southern District of New York regarding the confirmation of the Final Award issued in the Arbitration.

60. "Effective Date" means the date selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII herein have been (i) satisfied or (ii) waived pursuant to the applicable provisions of this Plan.

61. "Eletson Corporation" means non-Debtor Eletson Corporation.

62. "Eletson Corporation Guaranty Recovery" means $1,000,000.00 to be paid Pro Rata to Holders of Corp Guaranty Claims.

63. "Eletson Gas" means non-Debtor Eletson Gas LLC.

64.     "Eletson Holdings" means Eletson Holdings, Inc.

65.     "Eletson Holdings Members" means the holders of the common shares in Eletson Holdings.

66.     "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

67.     "Estate" means the estate of each Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

68.     "Excess SME Cash Flow Proceeds" means the future cash contributions of the Reorganized Debtor to the Litigation Trust during the Excess SME Proceeds Period of 20% of the consolidated excess cash flow (calculated on a semi-annual basis) of the consolidated operating revenues of the SMEs less the consolidated operating expenses for the previous six month period, up to a maximum of $5 million in the aggregate.

69.     "Excess SME Proceeds" means the Excess SME Cash Flow Proceeds and the Excess SME Sale Proceeds.

70.     "Excess SME Proceeds Period" means the earlier of the four-year anniversary of the Effective Date or the date on which the sale of all of the SMEs and/or the SME Vessels has been consummated.

71.     "Excess SME Sale Proceeds" means 20% of the gross proceeds from the sale of any SME and/or SME Vessel less said SME's existing debt (including any unpaid obligations under the terms of the applicable bareboat charter and any trade obligations applicable to the operation of such SME Vessel which were incurred but not paid prior to the sale closing date) up to a maximum of $5 million in the aggregate.

72.     "Exchange Noteholder" means a Holder of the Exchange Notes.

73.     "Exchange Notes" means those certain 9.625% First Preferred Ship Mortgage Notes due 2022 in an original Face Amount of $300 million issued by the Debtors that were exchanged by noteholders pursuant to the that May 25, 2018 exchange offer.

74.     "Exchange Notes Indenture" means that certain Indenture, dated as of July, 2, 2018, by and among the Debtors, as co-issuers, the guarantors party thereto, and the Exchange Notes Trustee, as trustee and collateral agent (as amended, amended and restated, modified, or supplemented from time to time).

75.     "Exchange Notes Trustee" means Wilmington Savings Fund Society, FSB, in its capacity as trustee and collateral trustee under the Exchange Notes Indenture, including any successor and permitted assigns thereto.

76.     "Exculpated Parties" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases: the Debtors and the Debtors' officers and directors and the Debtors' professionals retained under the

Bankruptcy Code (each in their capacities as such) that served in such capacities at any time between the Petition Date and the Effective Date.

77.     "Face Amount" means (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

78.     "File" or "Filed" means file or filed with the Bankruptcy Court in the Chapter 11 Cases.

79.     "Final Award" means the final arbitral award issued in the arbitration proceeding titled *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.* before Justice Belen at JAMS Ref. No. 5425000511.

80.     "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

81.     "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Case that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari or rehearing thereof has been pursued or granted then such an appeal, reargument, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.   Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

82.     "Gas Ownership Defendants" means Eletson Gas, the Preferred Owners and/or any officers or directors of the same.

83.     "General Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, a Secured Claim or an Interest.

84.     "Governmental Unit" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

85.     "Holder" and collectively, "Holders" means a Person or Entity holding an Interest or Claim, and with respect to a vote on the Plan, means the Beneficial Holder as of the Distribution Record Date or any authorized signatory who has completed and executed a Ballot in accordance with the Voting Instructions.

86.     "Impaired" means with respect to any Class of Claims or Interests, any Claims or Interests that are impaired within the meaning of § 1124 of the Bankruptcy Code.

87.     "Impaired Claim" means a Claim classified in an Impaired Class of Claims.

88.     "Impaired Class" means each of the Classes that is not an Unimpaired Class.

89.     "Intercompany Interest" means any Interest of a Debtor or a Non-Debtor Affiliate that is held by another Debtors, including (a) all issued, unissued, authorized or outstanding shares or stock and (b) any interest, including but not limited to, any warrant, options, conversion privileges or contract rights to purchase or acquire any equity security or membership interest of any of the Debtors at any time.

90.     "Interest" means any common equity interest in Eletson Holdings, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock.

91.     "IRS" means the Internal Revenue Service.

92.     "Levona" means Levona Holdings Ltd. and/or its alter egos as determined in the Arbitration or necessary or appropriate to collect the Final Award.

93.     "Liberian Law" means the governing laws of the Republic of Liberia.

94.     "Liens" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

95.     "Litigation Trust" means the trust that will be created to pursue the Litigation Trust Causes of Action and effect distributions to applicable holders of Litigation Trust Interests following the Effective Date in accordance with the terms of this Plan and the Litigation Trust Agreement.

96.     "Litigation Trust Agreement" means the trust agreement described in Article IV of this Plan and substantially in the form to be filed with the Plan Supplement that, among other things, shall be drafted and filed by the Committee (subject to review by the Debtors), and establishes the Litigation Trust, and describes the powers, duties and responsibilities of the agreement respecting the transfer of documents, information, and Litigation Trust Privileges and privileges of the Reorganized Debtor (solely in its capacity as successor to the Debtors) and solely related to the Litigation Trust Causes of Action to be entered into with the Litigation Trust Trustee; provided, however, that to the extent the terms of Article IV of this Plan conflict with the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall control.

97.     "Litigation Trust Assets" means the Litigation Trust Causes of Actions, the Excess SME Proceeds, Collections Contribution, Retained Causes of Action Contribution and the Distributable Cash; provided, that neither the Debtors nor the Reorganized Debtor shall have any obligations to provide any funding to the Litigation Trust.

98.     "Litigation Trust Beneficiaries" means holders of the Litigation Trust Interests.

99.     "Litigation Trust Causes of Action" means any and all claims and Causes of Action of the Debtors arising under state or federal law, Liberian Law or Marshall Islands Law including all Pending Adversary Proceedings, Claim Objections and Avoidance Actions owned

by, or asserted on behalf of, or that may be asserted by or on behalf of, the Debtors or their Estates listed on the Litigation Trust Causes of Action Schedule.

100.    "Litigation Trust Causes of Action Schedule" means the schedule attached to the Plan as Appendix A setting forth the Causes of Action that will be transferred to the Litigation Trust and constitute the Litigation Trust Causes of Action.

101.    "Litigation Trust Distributable Proceeds" means all actual proceeds of (i) the Litigation Trust Causes of Action, net of any amounts (a) used to repay any funding for the Litigation Trust in accordance with the terms of such funding, (b) used to pay the Litigation Trust Expenses, and (c) as otherwise provided in accordance with the Litigation Trust Agreement (ii) the remaining Distributable Cash after satisfaction of the Litigation Trust Expenses, (iii) the Collections Contribution (v) the Retained Causes of Action Contributions and (vi) the cash provided by the Excess SME Proceeds.

102.    "Litigation Trust Expenses" means all reasonable fees, costs and expenses of and incurred by the Litigation Trust, including legal and other professional fees, costs and expenses, administrative fees and expenses, insurance fees, taxes and escrow expenses, which shall be paid in accordance with the Litigation Trust Agreement and the terms of this Plan; provided, however, that neither the Debtors nor the Reorganized Debtor shall be required in any event to pay the Litigation Trust Expenses.

103.    "Litigation Trust Interests" means the interests in the Litigation Trust to be distributed on a Pro Rata basis to holders of Claims in Class 6 as set forth herein, which shall entitle such Holder to its Pro Rata portion (based on the percentage of Litigation Trust Interests held by such Holder) of Litigation Trust Distributable Proceeds.

104.    "Litigation Trust Oversight Committee" means the committee of up to five (5) members formed on the Effective Date and composed of members selected by the Committee. The initial members of the Litigation Trust Oversight Committee shall be identified in the Plan Supplement to be filed prior to the Confirmation Hearing or identified by the Litigation Trust Trustee pursuant to the terms of the Litigation Trust Agreement, as applicable.

105.    "Litigation Trust Privileges" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtors related exclusively to Litigation Trust Causes of Action which shall be transferred to the Litigation Trust along with the Litigation Trust Causes of Action.

106.    "Litigation Trust Trustee" means the individual selected by the Committee pursuant to Article IV of this Plan to act as trustee of the Litigation Trust in accordance with the provisions of this Plan and the Litigation Trust Agreement.

107.    "Marshall Islands Law" means the governing law of the Republic of the Marshall Islands.

108.    "NAF Claim" means the Claim asserted by New Agathonissos Finance LLC to the extent any portion of said Claim is deemed an Allowed Claim.

109.     "Non-Debtor Affiliate" means any person that is an affiliate of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

110.     "Non-Petitioning Creditors Exchange Note Claims" means claims asserted by Exchange Noteholders other than the Petitioning Creditors on account of the Exchange Notes.

111.     "Noteholder Election Recovery" means the recovery provided to Holders of Noteholder Election Recovery Claims paid from the Noteholder Election Recovery Reserve which for each individual Holder of a Noteholder Election Recovery Claim shall be the lesser of (i) the Face Amount of such Holder's Noteholder Election Recovery Claim, (ii) such Holder's Pro Rata portion of the Noteholder Election Recovery Cap, or (iii) $70,000.

112.     "Noteholder Election Recovery Cap" means $7,000,000.

113.     "Noteholder Election Recovery Claims" means the Claims of any Holder of a Claim in Class 6A or 6B that affirmatively and irrevocably elects to have their Non-Petitioning Creditor Exchange Note Claim, Petitioning Creditor Exchange Note Claim or Old Note Claim, as applicable, treated as a Claim under Class 5 with recovery drawn from the Noteholder Election Recovery Reserve.

114.     "Noteholder Election Recovery Reserve" means a reserve created in the amount up to the Noteholder Election Recovery Claim Cap to fund recoveries for Noteholder Election Recovery Claims.

115.     "Objection Deadline" means that date which is one year after the Effective Date or such later date as the Court may allow upon request by the Litigation Trust Trustee, by which the Litigation Trust Trustee or any party in interest has to file an objection to any Claim not previously allowed.

116.     "OCM Entities" means collectively OCM Maritime Rhine LLC, OCM Maritime Yukon LLC, OCM Maritime Autumn LLC and OCM Maritime Thames LLC.

117.     "OCM Guarantees" means the guarantees executed by Eletson Holdings in favor of the obligations of the SMEs to the OCM Entities.

118.     "OCM Guaranty Claims" means Claims arising from the OCM Guarantees.

119.     "Old Noteholders" means the Holders of the Old Notes.

120.     "Old Notes" means those certain 9.625% First Preferred Ship Mortgage Notes due 2022 in an original Face Amount of $300 million issued by the Debtors that were not converted by holders of Old Notes pursuant to that May 25, 2018 exchange offer.

121.     "Old Notes Claim" means Claims arising from the Old Notes and the NAF Claim.

122.     "Old Notes Indenture" means that certain indenture, dated as of December 19, 2013, among Eletson Holdings and Eletson Finance, as co-issuers, the guarantor parties thereto,

and the Old Notes Trustee, as trustee and collateral trustee (as amended, amended and restated, modified, or supplemented from time to time).

123. "Old Notes Trustee" means Deutsche Bank Trust Company Americas, in its capacity as trustee and collateral trustee under the Old Notes Indenture, including any successor and permitted assigns thereto.

124. "Pach Shemen" means Pach Shemen LLC.

125. "Pending Adversary Proceedings" means all adversary proceedings commenced by the Debtors which are currently pending in the Bankruptcy Court.

126. "Person" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

127. "Petition Date" means March 7, 2023, the date on which certain of the Petitioning Creditors filed involuntary petitions for relief commencing the Bankruptcy Cases.

128. "Petitioners" means the Debtors, Eletson Corporation and any other party benefiting from the Final Award.

129. "Petitioning Creditors" means Pach Shemen, VR Global Partners, L.P., and Alpine Partners (BVI) L.P. and (ii) Levona to the extent Levona is deemed to be a creditor of the Debtors by order of the Bankruptcy Court.

130. "Petitioning Creditors Exchange Note Claims" means any and all claims asserted by any Petitioning Creditor arising from said Petitioning Creditor's purporting to be the Beneficial Holder of any Exchange Notes.

131. "Plan" means this Second Amended Joint Plan of Reorganization of Debtors under Chapter 11 of the United States Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

132. "Plan Consideration" means the Shareholder New Value Contribution, the SME Revenue, Retained Causes of Action Contribution, and the Excess SME Proceeds.

133. "Plan Consolidation" means the consolidation of the Consolidating Debtors into Eletson Holdings as set forth in Article IV.B of this Plan.

134. "Plan Supplement" means a document supplementing the Plan to be submitted with the Court no later than ten (10) days prior to the objection deadline for the Confirmation Hearing.

135. "Post-Confirmation Expense" means any fees, costs and expenses (including, without limitation, United States Trustee Quarterly Fees, Litigation Trust Expenses, attorneys'

fees, the fees of other professionals, and any taxes imposed on the Litigation Trust or in respect of its Assets) necessary to complete the reorganization contemplated herein and the Litigation Trust after the Effective Date.

136. "Preferred Owners" means collectively Desimuso Trading Company, Apargo Limited, and Fentalon Limited.

137. "Preferred Shares" means the Preferred Shares of non-Debtor Eletson Gas LLC.

138. "Priority Claim" means a Claim entitled to priority pursuant to Bankruptcy Code § 507 that is not an Administrative Claim

139. "Professional" or, collectively, "Professionals" means a Person or Entity (a) employed by the Debtors pursuant to a Final Order in accordance with sections 327 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code by a Final Order.

140. "Professional Fees" means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

141. "Professional Fee Claims" means all Professionals Fees which remain unpaid as of the Effective Date.

142. "Professional Claims Bar Date" means 5:00 p.m. (prevailing Eastern Time) on the date that is the first Business Day that is forty-five (45) days after the Effective Date.

143. "Proof of Claim" means a Claim for which a proof of claim on Official Form 410 has been filed on or before the Claims Bar Date.

144. "Pro Rata" means the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

145. "Record Holder" means the Holder of a Claim or Interest on the Distribution Record Date.

146. "Reorganized Debtor" means Eletson Holdings on and after the Effective Date.

147. "Reorganized Debtor Organizational Documents" means the applicable bylaws, charter documents, articles of incorporation, certificates of incorporation, certificates of formation, limited liability company operating agreements, and related documents regarding the corporate existence and governance of the Reorganized Debtor.

148.    "Retained Causes of Action" means all Causes of Action existing as of the Effective Date not transferred to the Litigation Trust (including Unknown Causes of Action as applicable) and retained by the Reorganized Debtor which may be pursued by the Reorganized Debtor for the benefit of the Reorganized Debtor and Litigation Trust through the Retained Causes of Action Contribution.

149.    "Retained Causes of Action Contribution" means 75% of the net cash recoveries on account of Retained Causes of Action; provided, however, for purposes of the foregoing, "net cash recoveries" shall mean cash actually collected under any Retained Causes of Action net of costs of collection incurred by the Reorganized Debtor and net of any amounts setoff by the Reorganized Debtor for amounts owed to any defendant under a Retained Cause of Action.

150.    "Restructuring Transactions" means the transactions described in Article IV of this Plan.

151.    "Scheduled" with respect to any Claim, means listed on the Schedules.

152.    "Schedules" mean the schedules of assets and liabilities, schedules of executory contracts, and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they have been and may be amended and supplemented from time to time.

153.    "Secured Claim" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code in each case as of the Petition Date, to the extent that the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

154.    "Shareholder New Value Contribution" means contribution provided by or caused to be provided by the Eletson Holdings Members (or affiliates thereof), consisting of (a) Cash and cash equivalents in an aggregate amount of $37 million and (b) the Collections Contribution.

155.    "SMEs" means each of Fourni Special Maritime Enterprises, Kastos Special Maritime Enterprises, Kimolos II Special Maritime Enterprise, and Kinaros Special Maritime Enterprise.

156.    "SME Revenue" means any excess cash on hand of each of the SMEs existing as of the Effective Date after subtracting therefrom (i) any amounts, as necessary to satisfy the projected operating expenses of the SMEs not otherwise reasonably expected to be satisfied by anticipated revenues of the SMEs (on a consolidated basis) through the SME Revenue Period; and (ii) $250,000 (on a consolidated basis).

157.    "SME Revenue Period" means the period beginning on the first Business Day after the Effective Date and ending one hundred and eighty (180) days later.

158.    "SME Vessels" means each of and collectively, the vessels known as the Fourni, Kastos, Kimolos, and Kinaros as operated by the SMEs.

159. "Trade Creditor" means any creditor whose Claim has been Allowed and is not a creditor classified in Class 1, Class 2, Class 3, Class 5, Class 6A or Class 6B.

160. "Trade Creditor Claim" means any Allowed General Unsecured Claim against the Debtors held by a Trade Creditor.

161. "Trade Creditor Claim Cap" means $1,000,000.00.

162. "Trade Creditor Claim Reserve" means a reserve created in the amount of the Trade Creditor Claim Cap to fund recoveries for Trade Creditor Claims.

163. "Unclassified Claims" means those Administrative and Priority Claims described in Article II herein.

164. "Unimpaired Claims" means Claims in an Unimpaired Class.

165. "Unimpaired Class" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

166. "United States Trustee" means the Office of the United States Trustee for Region 2.

167. "United States Trustee Quarterly Fee" means the quarterly fees payable to the United States Trustee accrued over the course of these Chapter 11 Cases pursuant to 28 U.S.C. § 1930(a)(6).

168. "Voting Class" means any class of Claims and Interests entitled to vote on the Plan.

169. "Voting Deadline" means the date, as stated in the Voting Instructions, of August 9, 2024, at 4:00 p.m. prevailing Eastern Time for all Holders of Claims, which is the date and time by which all votes must be received in accordance with the procedures set forth in the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court by which all Ballots must be received.

170. "Voting Instructions" mean the instructions for voting on the Plan contained in Article II of the Disclosure Statement entitled "Voting On and Confirmation of the Plan" and in the Ballots.

C.    *Exhibits*

All Exhibits to this Plan, if any, are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

# ARTICLE II.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

A.    *Classification*

The classification of Claims (except for Administrative Claims) and Interests listed below is for all purposes, including, without limitation, voting, confirmation and distributions under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent such Claim or Interest satisfies the definition of such Class and shall be deemed classified in a different Class to the extent any remainder or other portion of such Claim or Interest satisfies the definition of such different Class.  NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR CLAIM OR INTEREST IS CLASSIFIED IN A CERTAIN CLASS FOR VOTING PURPOSES.  A Claim is in a particular Class only to the extent such Claim is an Allowed Claim in such Class and has not been paid or otherwise settled before the Effective Date.  The classification of Claims and Interests pursuant to this Plan is as follows:

|  | | *Class* | *Status* | | *Voting Rights* |
|---|---|---|---|---|---|
| Class 1 | — | OCM Guaranty Claims | Impaired | — | Entitled to vote |
| Class 2 | — | Corp Guaranty Claims | Impaired | — | Entitled to vote |
| Class 3 | — | Azure Guaranty Claims | Impaired | — | Entitled to vote |
| Class 4 | — | Trade Creditor Claims | Impaired | — | Entitled to vote |
| Class 5 | | Noteholder Election Recovery Claims | Impaired | — | Entitled to vote |
| Class 6A | — | Non-Petitioning Creditor Exchange Note Claims | Impaired | — | Entitled to vote |
| Class 6B | — | Petitioning Creditor Exchange Note Claims | Impaired | — | Entitled to vote |
| Class 7 | — | Interests | Impaired | — | Entitled to vote |

B.    *Unclassified Claims: Administrative Claims*

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims shall not be classified for the purposes of voting or receiving distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article II.B.

a.     Administrative Claims (other than Professional Fee Claims, DIP Claims or Committee Professional Fee Claims)

The Disbursing Agent shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims, DIP Claims and Committee Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the later of: (i) the occurrence of the Effective Date, or (ii) the date such Administrative Claim becomes an Allowed Claim.  Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim may be paid on such other date or dates and upon such other less favorable terms as may be agreed upon by such Holder and the Disbursing Agent.  Notwithstanding anything else herein, all United States Trustee Quarterly Fees payable to the United States Trustee under 28 U.S.C. § 1930 and any interest that accrues thereon under 31 U.S.C. § 3717 shall be paid in full on the Effective Date, or as soon as reasonably practicable thereafter.  All fees that arise under 28 U.S.C. § 1930 and any interest that accrues thereon under 31 U.S.C. § 3717 after the Effective Date shall be paid in full when due until the Chapter 11 Cases are closed, dismissed, or converted, whichever occurs first.  Notwithstanding any other provision herein, the United States Trustee shall not be required to file a proof of claim or a request for payment of United States Trustee Quarterly Fees.

b.     Professional Fee Claims and Committee Professional Fee Claims

Prior to the Effective Date, the Debtors may pay any Professional Fees (other than Committee Professional Fees) which the Bankruptcy Court has allowed pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code from the Petition Date through the Effective Date.  Prior to the Effective Date the Debtors may pay any Committee Professional Fees for all Committee Professional Fee Claims which are allowable or allowed pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code from the Conversion Date through the Effective Date.  From and after the Effective Date, the Disbursing Agent shall pay Professionals and the Committee Professionals the respective Professional Fees and the Committee Professional Fees awarded by Final Order of the Bankruptcy Court, as soon as practicable after the later of (i) the Effective Date, and (ii) within three (3) Business Days of entry of such Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases.

On the Effective Date, any objections previously filed to any applications for payment of the Professional Fees shall be deemed withdrawn (with prejudice) on the Effective Date.  Further, after the occurrence of the Effective Date, neither the Disbursing Agent, the Reorganized Debtor, the Litigation Trust, Litigation Trust Trustee nor the Litigation Trust Oversight Committee shall assert any objection to any Committee Professional Fee Claims.

Any final application for allowance of Professional Fee Claims and Committee Professional Fee Claims for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtors, counsel for the Litigation Trust, the Litigation Trust Trustee and on the United States Trustee at the addresses listed in Article XI.L of this Plan so that it is received no later than forty-five (45) days after the Effective Date.  In the event an application for allowance of Professional Fee Claims and Committee Professional Fee Claims is not filed by the appropriate date, such Professional Fee

Claims and Committee Professional Fee Claims shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Litigation Trust, the Litigation Trust Trustee and their successors, their assigns or their Assets. Allowed Professional Fee Claims and Committee Professional Fee Claims must be paid in full and Professional Fee Claims and Committee Professional Fee Claims pending allowance by the Bankruptcy Court must be reserved for in full prior to any payment to Holders of Allowed Claims in (a) Class 3 (Azure Guaranty Claims), (b) Class 4 (Trade Creditor Claims); (c) Class 5 (Noteholder Election Recovery Claims); (d) Class 6A (Non-Petitioning Creditor Exchange Note Claims); (e) Class 6B (Petitioning Creditor Exchange Note Claims); and (f) Administrative Claims.

c.     DIP Claims

As of the Effective Date, the DIP Claims, if any, shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Documents, including principal, interest, fees and expenses.

Except to the extent that the Holder of an Allowed DIP Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim, each such Holder of an Allowed DIP Claim shall receive payment in full in Cash of such holders Allowed DIP Claim on the Effective Date, or as soon as reasonably practicable thereafter.

Immediately upon receipt of the payments set forth in this section, the DIP Documents shall be deemed cancelled. The DIP Agent and DIP Lenders shall take all actions to effectuate and confirm such termination and discharge as reasonably requested by the Debtors or Reorganized Debtor as applicable.

d.     Administrative Claims and Substantial Contribution Claim Filing Deadline

Each Holder of an Administrative Claim (excluding Professional Fee Claims and Committee Professional Fee Claims that are not a substantial contribution claim) must file an Administrative Claim Request with the Bankruptcy Court prior to the Administrative Bar Date.

C.    *Treatment of Classified Claims*

1.    **<u>Class 1 — OCM Guaranty Claims</u>**

(a)    *Classification:* Class 1 consists of all OCM Guaranty Claims.

(b)    *Treatment*: The OCM Guaranty Claims are Allowed Claims. Except to the extent that a Holder of an Allowed OCM Guaranty Claim agrees to less favorable treatment, upon the occurrence of the Effective Date, or as soon as reasonably practicable thereafter and in full settlement, release, and satisfaction of, and in exchange for each OCM Guaranty Claim, each of the OCM Guarantees shall be reinstated in full force and effect and made effective as to the Reorganized Debtor unmodified in their terms without further action of the Debtors, Reorganized Debtor or OCM Entities, provided, however,

that the Reorganized Debtor shall only be obligated to guaranty fifty percent (50%) of the obligations of the SMEs subject to the OCM Guarantees.

(c)     *Voting*: Class 1 is Impaired and the Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

2.     **Class 2 — Corp Guaranty Claims**

(a)     *Classification*: Class 2 consists of all Corp Guaranty Claims.

(b)     *Treatment*: The Corp Guaranty Claims are Allowed Claims.  Except to the extent that a Holder of an Allowed Corp Guaranty Claim agrees to less favorable treatment, upon the occurrence of the Effective Date, or as soon as reasonably practicable thereafter and in full settlement, release, and satisfaction of, and in exchange for each Corp Guaranty Claim, (i) each holder of an Allowed Corp Guaranty Claim shall receive its pro rata distribution of the Eletson Corporation Guaranty Recovery and (ii) each of the Corp Guarantees shall be reinstated in full force and effect and made effective as to the Reorganized Debtor unmodified in their terms without further action of the Debtors, Reorganized Debtor or Corp Guaranty counterparties, provided, however, that the Reorganized Debtor shall only be obligated to guaranty fifty percent (50%) of the obligations of Eletson Corporation subject to the Corp Guarantees.

(c)     *Voting*: Class 2 is Impaired and the Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3.     **Class 3 — Azure Guaranty Claims**

(a)     *Classification*: Class 3 consists of the Azure Guaranty Claims.

(b)     *Treatment*:  The Azure Guaranty Claims are Allowed Claims.  Except to the extent that a holder of an Allowed Azure Guaranty Claim agrees to less favorable treatment, If not paid previously, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Azure Guaranty Claims, the Disbursing Agent shall pay to the Holders of Azure Guaranty Claims, by wire transfer of immediately available funds, their Pro Rata portion of the Azure Guaranty Recovery.

(c)     *Voting*: Class 3 is Impaired and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4.     **Class 4 — Trade Creditor Claims**

(a)     *Classification*: Class 4 consists of the Trade Creditor Claims.

(b)     *Treatment*:  The Trade Creditor Claims are Allowed Claims. Except to the extent that a Holder of an Allowed Trade Creditor Claim agrees to less favorable treatment, if not paid previously, on the Effective Date, or as soon as reasonably

practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Trade Creditor Claims, each Holder of an Allowed Trade Creditor Claim shall receive, in exchange for such Allowed Trade Creditor Claim, Cash in an amount equal to 15% of the Face Amount of such Holder's Trade Creditor Claim from the Trade Creditor Claim Reserve; *provided*, that in the event the aggregate distributions to Holders of Trade Creditor Claims exceeds the Trade Creditor Claim Cap, Holders of Trade Creditor Claims shall receive their Pro Rata Share of the Trade Creditor Claim Cap.

(c)     *Voting*: Class 4 is Impaired and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.     **Class 5 — Noteholder Election Recovery Claims**

(a)     *Classification*: Class 5 consists of all Allowed Noteholder Election Recovery Claims.

(b)     *Treatment*: The Noteholder Election Recovery Claims are Allowed Claims. Claims may only be treated as Noteholder Election Recovery Claims upon the affirmative and irrevocable election of a Holder of a Claim classified in Class 6A or 6B to have their Claim treated in Class 5. Except to the extent that a Holder of an Allowed Noteholder Election Recovery Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Noteholder Election Recovery Claims, each Holder of an Allowed Noteholder Election Recovery Claim shall receive in exchange for such Noteholder Election Recovery Claim, Cash from the Noteholder Election Recovery Reserve in an amount equal to the lesser of (i) the Face Amount of such Holder's Noteholder Election Recovery Claim, (ii) such Holder's Noteholder Election Recovery Claim's Pro Rata portion of the Noteholder Election Recovery Cap, or (iii) $70,000.

Notwithstanding the foregoing if the Bankruptcy Court determines that the existence of Class 5 and/or the Noteholder Election Recovery Claims violates any provisions of the Bankruptcy Code, Holders of Class 5 Noteholder Election Recovery Claims will be deemed to hold Claims under Class 6A or Class 6B in accordance with said Holder's original Claim classification.

(c)     *Voting:* Class 5 is Impaired and Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

6.     **Class 6A — Non-Petitioning Creditor Note Claims**

(a)     *Classification*: Class 6A consists of all Allowed Non-Petitioning Creditor Exchange Note Claims and Old Note Claims.

(b)     *Treatment*: The Non-Petitioning Creditor Note Claims are Allowed Claims.  Except to the extent that a Holder of an Allowed Non-Petitioning Creditor Note Claim agrees to less favorable treatment, each Holder of an Allowed Class 6A Claim shall receive in full settlement, release, and satisfaction of such Allowed Class 6A Claim that is due and payable, on the Effective Date, or as soon as reasonably practicable thereafter their Pro Rata portion of Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

(c)     *Voting*: Class 6A is Impaired and Holders of Class 6A Claims are entitled to vote to accept or reject the Plan.

7.     **Class 6B — Petitioning Creditor Exchange Note Claims**

(a)     *Classification*: Class 6B consists of all Allowed Petitioning Creditor Exchange Note Claims.

(b)     *Treatment*: The Petitioning Creditor Exchange Note Claims are Disputed Claims and may only become Allowed by Final Order of the Bankruptcy Court.  To the extent the Petitioning Creditor Exchange Note Claims are deemed Allowed Claims the Petitioning Creditor Exchange Note Claims are equitably subordinated pursuant to section 510(c) of the Bankruptcy Code and are only entitled to a recovery upon the satisfaction of all Claims in Class 6A.  In the event Petitioning Creditor Exchange Note Claims are found to be Allowed Claims and all Class 6A Non-Petitioning Creditor Exchange Note Claims are paid in full, and except to the extent that a Holder of an Allowed Petitioning Creditor Exchange Note Claim agrees to less favorable treatment, each Holder of an Allowed Class 6B Claim shall receive in full settlement, release, and satisfaction of such Allowed Class 6B Claim that is due and payable, on the Effective Date, or as soon as reasonably practicable thereafter their Pro Rata portion of the Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

Notwithstanding the foregoing, if the Bankruptcy Court determines it is unable to equitably subordinate the claims of Holders of Class 6B Claims through the Confirmation Order, Holders of Class 6B Claims will be deemed to hold claims under Class 6A and will be entitled to their Pro Rata portion of Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

(c)     *Voting*: Class 6B is Impaired and Holders of Class 6B Claims are entitled to vote to accept or reject the Plan.

8.     **Class 7 — Interests**

(a)     *Classification*: Class 7 consists of all Interests.

(b)     *Treatment*:   On the Effective Date, all Interests shall be discharged, cancelled, and extinguished.  In exchange for the Shareholder New Value Contribution, the Holders making such Shareholder New Value Contribution shall receive their pro rata

share of equity of the Reorganized Debtor in a pro rata amount equal to their portion of the Shareholder New Value Contribution made.

(c)     *Voting*:  Class 7 is Impaired, and Holders of Interests are entitled to vote to accept or reject the Plan.

# ARTICLE III.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.     *Voting Classes*

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Holders of Claims in Class 1 (OCM Guaranty Claims), Class 2 (Corp Guaranty Claims) Class 3 (Azure Guaranty Claims), Class 4 (Trade Creditor Claims), Class 5 (Noteholder Election Recovery Claims) Class 6A (Non-Petitioning Creditor Exchange Note Claims), Class 6B (Petitioning Creditor Exchange Note Claims) and Class 7 (Interests) shall be entitled to vote to accept or reject this Plan.

B.     *Classes Presumed to Accept this Plan*

There are no Unimpaired Classes and no class is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

C.     *Acceptance by Impaired Classes*

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims and Interests actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims and Interests actually voting in such Class have voted to accept the Plan.

D.     *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

E.    *Non-Consensual Confirmation*

The Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code if any Voting Class fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code. The Debtors reserve the right (a) to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or (b) to modify the Plan in accordance with Article XI.K hereof.

F.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Implementation of the Plan and Sources of Consideration for Plan Distributions*

The Debtors and Reorganized Debtor as applicable will fund distributions and other sources and uses contemplated by the Plan with the Plan Consideration and the transfer and assignment of the Litigation Trust Assets to the Litigation Trust.

1.    **The Shareholder New Value Contribution**

The Debtors propose to implement and consummate this Plan on and after the Effective Date. Within ten (10) Business Days of entry of the Confirmation Order, the Eletson Members shall contribute, or cause to be contributed, to Eletson Holdings the full amount of the cash portion of the Shareholder New Value Contribution which shall be a contribution of Cash and cash equivalents in a total aggregate value of $37 million dollars.

The cash portion of the Shareholder New Value Contribution will be utilized as follows: *first*, for the payment of Administrative Claims including the Professional Fee Claims, DIP Claims (if any) and the Committee Professional Fee Claims including the funding any reserves on account of the Professional Fee Claims and Committee Professional Fee Claims required by the terms of this Plan; *second*, to fund the Administrative Fund as set forth in Article IV.N; *third* to fund the Azure Guaranty Recovery; *fourth*, to fund the Eletson Corporation Guaranty Recovery, *fifth*, to fund the Trade Creditor Claim Reserve; *sixth*, to fund the Noteholder Election Recovery Reserve; and *seventh*, to fund the Litigation Trust.

The Collections Contribution constitutes an additional portion of the Shareholder New Value Contribution, and the Eletson Members shall cause the applicable Gas Ownership Defendant to direct the applicable portion of the Collections Contribution to the Litigation Trust within thirty (30) Business Days of the receipt of a final, non-appealable, determination payment in satisfaction of the Final Award.

2. **Distributable Cash**

Immediately upon the satisfaction of the payments provided for in Article IV A.1, the remaining cash portion of the Shareholder New Value Contribution shall become Distributable Cash which shall be transferred to the Litigation Trust in accordance with the terms of this Plan and the Litigation Trust Agreement.

3. **Excess SME Proceeds**

Beginning on January 31, 2025, and on July 31 and January 31 of each subsequent calendar year during the SME Excess Proceeds Period, the Reorganized Debtor shall transfer any SME Excess Proceeds for the immediately preceding six-month period to the Litigation Trust in accordance with the instructions provided to the Reorganized Debtor by the Litigation Trust Trustee. On each payment date the SME Excess Proceeds paid shall be accompanied with a reasonable accounting supporting the amounts of the Excess SME Proceeds transferred to the Litigation Trust. The Reorganized Debtor shall confer with the Litigation Trust Trustee with respect to any questions on the accounting and provide such information as the Litigation Trust Trustee shall reasonably request in connection therewith.

Neither the Litigation Trust nor Litigation Trust Trustee shall have any rights to direct the Reorganized Debtor in the operation and/or management of the SMEs after the Effective Date, during the Excess SME Revenue Period or otherwise. The Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee upon the execution of any letter of intent or other similar pre-sale documents entered into by the Reorganized Debtor or any affiliate of the Reorganized Debtor and any potential purchaser with respect to any SME and/or SME Vessels within ten (10) Business Days of execution of such document. In the event a sale is ultimately consummated, the Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of the consummation of such sale. The Litigation Trust shall have no right to direct, comment or impede any sale of any SME and/or SME Vessel by the Reorganized Debtor. The Litigation Trust and Litigation Trust Trustee as applicable are not, and are not intended to be, third party beneficiaries of any contract of sale, and are provided with no additional rights and/or standing to object to the terms of any sale of any SME or SME Vessel pursuant to the terms of this Plan. For the avoidance of doubt the Reorganized Debtor is not required to consummate any sale of the SMEs or SME Vessels during the Excess SME Proceeds Period.

Unless the Reorganized Debtor and the Litigation Trust and Litigation Trust Trustee agree otherwise in writing, the Bankruptcy Court shall retain sole jurisdiction to resolve any dispute regarding the payment of the Excess SME Proceeds, the accounting supporting the Excess SME Proceeds, and/or the refund of any Excess SME Proceeds during the Excess SME Proceeds Period.

Upon the earlier of (i) the expiration of the Excess SME Proceeds Period or (ii) the Litigation Trust having received Excess SME Cash Flow Proceeds of $5 million in the aggregate and Excess SME Sale Proceeds of $5 million in the aggregate, the obligations of the Reorganized Debtor related to the Excess SME Proceeds hereunder, and any reporting obligations to the Litigation Trust related thereto shall cease, and the Reorganized Debtor shall have no further

obligations related to the Excess SME Proceeds, and the Litigation Trust shall have no right or claim to any further Excess SME Proceeds. In the event the Excess SME Proceeds transferred to the Litigation Trust exceed (i) $5 million in the aggregate on account of the Excess SME Cash Flow Proceeds or (ii) $5 million in the aggregate on account of the Excess SME Sale Proceeds, the Litigation Trust shall within ten (10) Business Days of written notice of such over payment by the Reorganized Debtor, refund to the Reorganized Debtor the portion of the actually paid Excess SME Proceeds exceeding the thresholds in clauses (i) and (ii) above in accordance with the instructions provided to the Litigation Trust by the Reorganized Debtor.

4. **Litigation Trust Causes of Action**

On the Effective Date the Debtors shall fully and finally transfer and or assign each of the Litigation Trust Causes of Action and the applicable Litigation Trust Privileges to the Litigation Trust.

Litigation Trust Distributable Proceeds will be obtained from the Distributable Cash and the Litigation Trust Causes of Action, and Plan Consideration as applicable. Unless otherwise specified herein, Cash payments to be made pursuant to the Plan will be made by the applicable Disbursing Agent.

B. *Substantive Consolidation*

1. **Order Granting Plan Consolidation**

Unless and to the extent previously approved by a prior order of the Bankruptcy Court, at the Confirmation Hearing, the Bankruptcy Court will consider approval under the Plan of the Plan Consolidation.

2. **Plan Consolidation**

The Consolidating Debtors are holding companies that were formed for the express purpose of issuing the Exchange Notes. Pursuant to the Exchange Notes Indenture, the Consolidating Debtors are prohibited from holding or maintaining any assets. As the Exchange Notes and the claims related thereto will be discharged after the confirmation of these Chapter 11 Cases, the Debtors maintain there is no reason for the continued existence of the Consolidating Debtors. As such, the Consolidating Debtors will be consolidated into the Reorganized Debtor for the convenience of all parties, and with no impact to any operations, distributions, assets or rights of any party in interest or the Reorganized Debtor.

Upon the Effective Date, the Consolidating Debtors shall be consolidated for all purposes into the Reorganized Debtor and (i) all assets and liabilities of the Consolidating Debtors shall be consolidated and merged into Eletson Holdings, (ii) all guarantees of any Consolidating Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Consolidating Debtor, any guaranty thereof executed by either of the Consolidating Debtors and any joint or several liability of either of the Consolidating Debtors shall be one obligation of Eletson Holdings and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against any Debtor shall be deemed filed against Eletson Holdings and shall be one Claim against, and if to the extent allowed, shall become one obligation of Eletson Holdings; provided

further, the consolidation shall also limit the rights of a creditor to assert that its Claim is secured by a right of setoff under section 553 of the Bankruptcy Code, and the Debtors will be deemed, for purposes of any Claims or determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, such that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to any of the Consolidating Debtors shall be offset against Claims against another Debtor. The substantive consolidation provided for in this section shall not affect the obligations of each and every Debtor to pay fees to the United States Trustee that may have come due prior to the Effective Date.

Pursuant to Bankruptcy Rule 9019 and any applicable state law and as consideration for the distributions and other benefits provided under the Plan, the provisions of this section shall constitute a good faith compromise and settlement of any Causes of Action or disputes that could be brought by a Holder of a Claim or Interest asserting that such Claim or Interest would have received more favorable treatment had substantive consolidation not been effected. This compromise and settlement is in the best interests of Holders of Claims and Interests and is fair, equitable and reasonable. Upon Confirmation of the Plan, the Plan shall be approved as a settlement of all such Causes of Action and disputes. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this settlement pursuant to Bankruptcy Rule 9019 and its finding that this is a good faith settlement pursuant to any applicable state laws, given and made after due notice and opportunity for hearing, and shall bar any such Cause of Action by any Holder of a Claim or Interest with respect to the matters described in this section.

C.    *Corporate Existence*

Except as otherwise provided in the Plan (including with respect to any Restructuring Transaction undertaken pursuant to the Plan), the Reorganized Debtor Organizational Documents, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each Debtor shall be deemed to merge with and into the Reorganized Debtor, with the Reorganized Debtor being the sole surviving entity and the separate existence of the Consolidating Debtors shall cease and only the Reorganized Debtor shall continue to exist and as a separate corporation, with all the powers of a corporation pursuant to the applicable Liberian law and pursuant to the respective certificate of incorporation and bylaws in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal, country of incorporation, or applicable foreign law).

D.    *Vesting of Assets in the Reorganized Debtor*

Except for the Litigation Trust Causes of Action and Plan Consideration as applicable as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Litigation Trust Agreement), on the Effective Date, pursuant to the Plan all property in each Estate and any property acquired by any of the Debtors, including Intercompany Interests held by the Debtors in non-Debtor subsidiaries, shall revest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order. On and

after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.      *Dissolution of the Committee*

Upon the Effective Date, the Committee shall dissolve automatically whereupon its members, Committee Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code for Committee Professional Fee Claims; (iii) any pending motions or proceedings to which the Committee is a party (including any related appeals in connection therewith); and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order, including related appeals.  The Committee members and the Committee Professionals shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with the items listed in the preceding sentence after the Effective Date.

F.      *Reorganized Debtor Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, on the Effective Date, the Reorganized Debtor will file such Reorganized Debtor Organizational Documents as are required to be filed with the applicable authorities in the state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtor may amend and restate the Reorganized Debtor Organizational Documents, and the Reorganized Debtor may file the certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the country of incorporation and the Reorganized Debtor Organizational Documents.

G.      *Appointment of Directors and Officers of the Reorganized Debtor*

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, in the Plan Supplement the identity and any affiliations of any Person proposed to serve on as a Director or officer of the Reorganized Debtor, which appointments shall be confirmed in the Confirmation Order.  To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

H. *Creation of the Litigation Trust*

This Plan contemplates the transfer of the Litigation Trust Assets into the Litigation Trust for distribution of the Litigation Trust Distributable Proceeds to Holders of Litigation Trust Interests.

Prior to the Effective Date, the Debtors and the Litigation Trust Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Plan, which shall be for the benefit of the Litigation Trust Beneficiaries. Additionally, on the Effective Date the Debtors shall transfer and/or assign and shall be deemed to transfer and/or assign to the Litigation Trust all of their rights, title and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to (a) Litigation Trust Interests and (b) the Litigation Trust Expenses as provided for in this Plan and the Litigation Trust Agreement. Also on the Effective Date, subject to, in all respects, the terms of the Litigation Trust Agreement, all Litigation Trust Privileges shall transfer to and vest exclusively in the Litigation Trust.

The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trust Trustee. The powers, rights, and responsibilities of the Litigation Trust Trustee shall be specified in the Litigation Trust Agreement. The Litigation Trust Trustee shall hold and distribute the Litigation Trust Assets in accordance with the Plan and the Litigation Trust Agreement. Other rights and duties of the Litigation Trust Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement.

After the Effective Date, the Debtors and the Reorganized Debtor shall have no interest in the Litigation Trust Assets except to the extent set forth in this Plan and the Litigation Trust Agreement. To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Reorganized Debtor and the Litigation Trust Trustee or Litigation Trust as applicable shall be deemed to have been designated as a representative of the Reorganized Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Reorganized Debtor for the benefit of the Litigation Trust Beneficiaries. Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed in accordance with this Plan.

The Litigation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Litigation Trust Trustee and to ensure the treatment of the Litigation Trust as a liquidation trust for federal income tax purposes, all consistent with this Plan.

Notwithstanding anything in this Plan to the contrary, the Reorganized Debtor shall have no obligation to provide any funds or financing to the Litigation Trust, other than the obligation to contribute the Litigation Trust Assets and the initial funding of the Administrative Fund, and

under no circumstances will the expenses of the Litigation Trust be paid or reimbursed by the Debtors or the Reorganized Debtor, as applicable.

The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest may extend the term of the Litigation Trust if it is necessary to facilitate or complete the distribution of the Litigation Trust Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Litigation Trust Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidation trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

I.      *Transfer of Assets and the Litigation Trust Causes of Action to the Litigation Trust*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Litigation Trust is intended to be treated as a "liquidating trust" for U.S. federal income tax purposes pursuant to Treasury Regulation section 301-7701-4(d), and the Litigation Trust Trustee will take this position on the Litigation Trust's tax return accordingly. The Litigation Trust Beneficiaries shall be treated as the grantors of the Litigation Trust and as the deemed owners of the Litigation Trust Assets. For U.S. federal income tax purposes, the transfer of assets to the Litigation Trust will be deemed to occur as (a) a first-step transfer of the Litigation Trust Assets to the Litigation Trust Beneficiaries, and (b) a second-step transfer by Litigation Trust Beneficiaries. As a result, the transfer of the Litigation Trust Assets to the Litigation Trust should be a taxable transaction, and the Debtors or the Reorganized Debtor should recognize gain or loss equal to the difference between the tax basis and fair value of such assets. As soon as possible after the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust Trustee shall make a good faith valuation of the Litigation Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors or the Reorganized Debtor, Litigation Trust Trustee, and the Holders of Claims receiving Litigation Trust Interests shall take consistent positions with respect to the valuation of the Litigation Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

J.      *Liabilities of the Litigation Trust*

The liabilities transferred to the Litigation Trust shall include all Litigation Trust Interests and the Litigation Trust Expenses.

In accordance with Article IV.I, the Debtors will transfer the Litigation Trust Assets to the Litigation Trust to make the payments required to Litigation Trust Beneficiaries pursuant to the Plan and the Litigation Trust Agreement.

K.     *Appointment of the Litigation Trust Trustee and Members of the Litigation Trust Oversight Committee*

The Committee shall appoint the Litigation Trust Trustee who shall have the power to administer the Litigation Trust and will be advised by the Litigation Trust Oversight Committee as specified in this Plan and the Litigation Trust Agreement. For the avoidance of doubt the members of the Litigation Trust Oversight Committee will be appointed by the Committee pursuant to the terms of the Litigation Trust Agreement.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, in the Plan Supplement, and with the consent and approval of the Committee, the identity and any affiliations of the Litigation Trust Trustee and any Person proposed to serve on the Litigation Trust Oversight Committee, which appointments shall be confirmed in the Confirmation Order. To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

The Debtors and the Litigation Trust Trustee shall enter into a Litigation Trust Agreement in substantially the form which shall be filed with the Bankruptcy Court with the Plan Supplement. On the Effective Date, and upon the establishment of the Litigation Trust the Litigation Trust Trustee shall succeed in all respects to all of the rights, privileges and immunities of the Debtors in regard to the Litigation Trust Causes of Action and the Litigation Trust Privileges and shall be appointed as the sole party with standing to pursue Litigation Trust Causes of Action on behalf of the Debtors as of the Effective Date. The Litigation Trust Trustee, and his/her successors, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the Litigation Trust, and (c) the payment of the final distributions to Holders of Litigation Trust Interests pursuant to the Plan; or (ii) the expiration of the term of such Litigation Trust Trustee's employment agreement or such Litigation Trust Trustee's resignation, death, incapacity, removal or termination by the Litigation Trust Oversight Committee pursuant to the Litigation Trust Agreement or order of the Bankruptcy Court. Notwithstanding the foregoing, the Debtor Privileges will not transfer to the Litigation Trust and shall remain solely in the possession of the Debtors or Reorganized Debtor as applicable.

As set forth herein, the pursuit and collection of the Litigation Trust Causes of Action and distribution of the proceeds thereof to the Litigation Trust Beneficiaries shall become the responsibility of the Litigation Trust Trustee who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property of the Litigation Trust free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the terms of the Plan and the Litigation Trust Agreement.

Upon creation of the Litigation Trust, the Litigation Trust Trustee shall be the trustee of the Litigation Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the Litigation Trust.

L.     *Cooperation and Privilege*

To effectively investigate, prosecute, compromise, and/or settle the Litigation Trust Causes of Action on behalf of the Litigation Trust, the Litigation Trust Trustee and its counsel

and representatives may require reasonable access to documents and information exclusively relating to the Litigation Trust Causes of Action in the possession of the Debtors, the Reorganized Debtor, and/or the Committee. Accordingly, the Litigation Trust Agreement shall provide for the Litigation Trust Trustee's reasonable access to the Debtors' records and information (which shall be maintained by the Reorganized Debtor) and the Committee's records and information, each of which relating to the Litigation Trust Causes of Action, including electronic records or documents, as further detailed in, and subject in all respects to, the Litigation Trust Agreement. The Litigation Trust Agreement shall also provide that as of the Effective Date, and subject in all respects to the terms of the Litigation Trust Agreement, the Litigation Trust Privileges, and privileges held by the Committee (if any) shall transfer to and vest exclusively in the Litigation Trust, and that the Reorganized Debtor shall preserve all of the Debtors' records and documents (including all electronic records or documents) exclusively related to the Litigation Trust Causes of Action and Litigation Trust Privileges for the later of a period of three (3) years after the Effective Date or until such later time as the Litigation Trust Trustee notifies the Reorganized Debtor in writing that such records are no longer required to be preserved.

M.   *Duties of the Litigation Trust Trustee*

In addition to the duties set forth elsewhere in this Plan, the Litigation Trust Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee as set forth more specifically in the Litigation Trust Agreement, and herein, shall have the following duties:

1.   to manage, control and operate the Litigation Trust;

2.   to investigate and, if necessary and appropriate, to prosecute and enforce (or not prosecute or enforce), or to compromise, release or settle any Litigation Trust Causes of Action on behalf of the Estate and the Litigation Trust without further approval of or application to the Bankruptcy Court;

3.   to invest any Cash and Litigation Trust Assets;

4.   to file any and all reports, pleadings, tax returns and other documents;

5.   to pay any and all distributions required or permitted to be made under this Plan;

6.   to pay out of the Litigation Trust any and all Claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all Post-Confirmation Expenses accruing from and after the Effective Date in accordance with the Administrative Budget;

7.   to employ, supervise and compensate any employees of the Litigation Trust;

8.   to make and file tax returns for the Litigation Trust;

9.   act as the Disbursing Agent to Holders of Class 6A Claims in accordance with the terms of this Plan, and in such capacity shall (i) disburse all Cash held by the Litigation Trust to the Holders of Class 6A Claims in any amount in excess of $1 million over the then current

budgeted needs of the Litigation Trust pursuant to the Administrative Budget within forty-five (45) days of the Effective Date and at least semi-annually thereafter, (ii) within ten (10) days upon receipt of any Excess SME Proceeds disburse to Holders of Class 6A Claims one hundred percent of such Excess SME Proceeds, and (iii) within ten (10) days upon receipt of any portion of the Collections Contribution disburse to Holders of Class 6A Claims one hundred percent of such Collections Contribution;

10.     to commence and pursue dissolution or winding up of proceedings for the Litigation Trust;

11.     to file, prosecute, compromise and settle objections to Claims after the Effective Date other than Administrative Claims or Claims seeking administrative allowance;

12.     to prepare and deliver to the Litigation Trust Oversight Committee for approval the Administrative Budget of the Litigation Trust and any amendments or modifications thereto; and

13.     to request the entry of a Final Decree.

In connection with the execution of his or her duties under this Plan, the Litigation Trust Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee as set forth more specifically in the Litigation Trust Agreement and herein, shall be authorized:

1.     to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his or her duties as a trustee of the Litigation Trust, including to execute such documents and take such other action on behalf of the Litigation Trust;

2.     to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

3.     to retain and pay professionals (including the Professionals or the Committee Professionals) or other Persons to assist the Litigation Trust Trustee in the administration of the Litigation Trust, without prior Bankruptcy Court approval;

4.     to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his or her duties as Litigation Trust Trustee;

5.     to compromise, release or settle any Disputed Claim or Litigation Trust Cause of Action or to sell or dispose of any Litigation Trust Asset; and

6.     to employ such other procedures, not inconsistent with this Plan, necessary for the Litigation Trust Trustee to perform his or her duties hereunder (including, without limitation, to borrow funds to pursue the Litigation Trust Causes of Action under terms in its sole discretion).

The Litigation Trust Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Litigation Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code (including, without

limitation, commencing, prosecuting or settling Litigation Trust Causes of Action and asserting claims, defenses, offsets and privileges arising from the Litigation Trust Privileges), to the extent not inconsistent with this Plan. In discharging the foregoing responsibilities, the Litigation Trust Trustee shall be entitled to exercise and rely upon his or her business judgment in consultation with the Litigation Trust Oversight Committee. The Litigation Trust Trustee shall not be obligated to take any action or to pursue any Litigation Trust Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Litigation Trust Trustee be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the generality of the foregoing, the Litigation Trust Trustee may consider the interests of Holders of Allowed Class 6A Claims and Class 6B Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment. Such authorization and benefits shall also extend to any, each and every successor Litigation Trust Trustee, without reservation or limitation.

The Litigation Trust Trustee, at the direction of the Litigation Trust Oversight Committee, may expend the Cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during the administration thereof, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee Quarterly Fees, Litigation Trust Trustee fees, professional fees, and taxes imposed on the Litigation Trust), and (c) to satisfy other respective liabilities incurred by the Litigation Trust in accordance with the Plan or the Litigation Trust Agreement.

N.      *Post Confirmation Expenses*

Prior to the Effective Date, the Committee shall provide the Administrative Budget (with the consent of the Debtors, not to be unreasonably withheld) for services to be rendered to the Litigation Trust, which Administrative Budget may be altered from time to time by the Litigation Trust Trustee with the consent of the Litigation Trust Oversight Committee in accordance with the Litigation Trust Agreement. The Litigation Trust Oversight Committee shall approve in advance the Litigation Trust Trustee's retention of professionals and their compensation arrangements.

On the Effective Date, the Litigation Trust Trustee shall establish the Administrative Fund. The initial amount of the Administrative Fund shall be based on the Litigation Trust Trustee's good faith estimate of the cost necessary to complete the Litigation Trust's obligations under this Plan and the Litigation Trust Agreement and will include the amount budgeted for the Litigation Trust's professionals provided, however, the initial Administrative Fund shall not exceed the amount of $200,000 necessary to commence and/or pursue and Litigation Trust Causes of Action as of the Effective Date. The Litigation Trust shall pay all Litigation Trust Expenses related to carrying out its obligations under this Plan and the Litigation Trust Agreement from the Administrative Fund and, in the Litigation Trust Trustee's discretion, and with approval of the Litigation Trust Oversight Committee, may add additional amounts of Cash held by the Litigation Trust to the Administrative Fund to further the prosecution of the Litigation Trust Causes of Action or for administration and other miscellaneous needs of the Litigation Trust without further notice or motion in accordance with the terms of the Litigation Trust Agreement.

The reasonable and necessary fees and actual and necessary expenses of the Litigation Trust Trustee, the Litigation Trust Oversight Committee and the professionals retained by the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall be paid solely by the Litigation Trust Trustee in accordance with the terms of such respective Person's employment with the Litigation Trust.

O.    *Liability; Indemnification*

Neither the Litigation Trust Trustee nor any member of the Litigation Trust Oversight Committee shall be liable for any act or omission taken or omitted to be taken in his or her capacity as Litigation Trust Trustee or as a member of the Litigation Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Litigation Trust Trustee's or Litigation Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Litigation Trust Trustee and the Litigation Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be.

Notwithstanding such authority, the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud.  The Litigation Trust shall indemnify and hold harmless the Litigation Trust Trustee, the Litigation Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by Final Order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

P.    *Litigation Trust Oversight Committee*

On the Effective Date, the Litigation Trust Oversight Committee shall have the duties set forth herein to maximize distributions to Litigation Trust Beneficiaries.  On the Effective Date, the Litigation Trust Oversight Committee shall be entitled to the rights, powers, immunities and privileges of the Committee.

The Litigation Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan. Additionally, the Litigation Trust Oversight Committee shall have the following rights and duties:

1.      to approve any release or indemnity in favor of any third party granted or agreed to by the Litigation Trust Trustee;

2.      to authorize the Litigation Trust Trustee to commence any Litigation Trust Cause of Action;

3.      to approve the settlement of any Litigation Trust Cause of Action and to approve any application by the Litigation Trust Trustee for an order in connection with any such settlement;

4.      to review all financial information relating to the Litigation Trust (including any quarterly reports required by the Office of the United States Trustee), which shall be promptly provided by the Litigation Trust Trustee upon request by the Litigation Trust Oversight Committee;

5.      to monitor distributions to Holders of Litigation Trust Interests;

6.      to take such other actions as it deems necessary and appropriate with respect to the implementation of the Plan;

7.      to approve the Litigation Trust Trustee's retention of professionals;

8.      to remove the Litigation Trust Trustee in accordance with the procedures in the Litigation Trust Agreement; and

9.      to approve the Administrative Budget after the Effective Date.

The duties and powers of the Litigation Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the Litigation Trust, and (iii) the payment of the final distributions to Holders of Litigation Trust Interests pursuant to this Plan.

The Litigation Trust Oversight Committee shall have the right, but shall not be required, to retain counsel of its choice, and the reasonable and necessary fees and expenses of such counsel shall be paid by the Litigation Trust from the Administrative Fund.  The reasonable and necessary fees and expenses of counsel to the Litigation Trust Oversight Committee shall be paid in accordance with the Litigation Trust Agreement.

Q.      *Good Faith*

Each of the Litigation Trust Trustee and Litigation Trust Oversight Committee shall act in good faith in carrying out its duties and responsibilities and use its best efforts to pursue or

settle the Litigation Trust Causes of Action and maximize the value of the Litigation Trust Assets and minimize claims against the Litigation Trust.

R.    *Saturday, Sunday or Legal Holiday*

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

S.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

T.    *Issuance of Documents Necessary to Consummate the Plan*

On or as soon as practicable after the Effective Date, the Debtors shall execute and deliver such other agreements, documents and instruments, as necessary to effectuate the Plan.

U.    *Final Decree*

Upon the Litigation Trust Trustee's determination that all Litigation Trust Causes of Action held by the Litigation Trust or the Litigation Trust Trustee, as applicable, have been finally resolved, transferred, or abandoned, the Litigation Trust shall move for the entry of a Final Decree pursuant to section 350 of the Bankruptcy Code closing the Chapter 11 Cases. The Litigation Trust may request the entry of the Final Decree notwithstanding the fact that not all Litigation Trust Assets have been monetized and distributed to Litigation Trust Beneficiaries.

## ARTICLE V.

## RETAINED CAUSES OF ACTION

A.    *Maintenance of Causes of Action*

Except as otherwise provided in the Plan, the Litigation Trust shall retain all rights on behalf of the Debtors and the Estates to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Litigation Trust Causes of Action transferred to the Litigation Trust. The Reorganized Debtor shall retain all rights to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Retained Causes of Action.

Except as otherwise provided in the Plan, upon the Effective Date and subject to the terms of the Litigation Trust Agreement in accordance with section 1123(b)(3) of the Bankruptcy Code, the Litigation Trust Causes of Action shall vest in the Litigation Trust. The Litigation Trust Trustee, on behalf of the Litigation Trust, shall retain and may exclusively enforce any and all Litigation Trust Causes of Action, and commence, pursue and settle the Litigation Trust Causes of Action in accordance with this Plan and the Litigation Trust Agreement as applicable, subject to the advice of counsel and the consent of the Litigation Trust Oversight Committee. The Litigation Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Litigation Trust Causes of Action without the consent or approval of any third party and without any further order of court subject to the advice of counsel and the consent of the Litigation Trust Oversight Committee as required by the Litigation Trust Agreement.

B.    *Preservation of Causes of Action*

Except as otherwise expressly provided in this Plan, from and after the Effective Date, unless expressly designated as a Litigation Trust Cause of Action, the Reorganized Debtor shall maintain and may litigate or settle any Retained Causes of Action, including the recovery or subordination actions under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 of the Bankruptcy Code or any other Causes of Action or rights to payments or claims that belong to the Debtors. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, no other Person may pursue any such Avoidance Actions, recovery or subordination actions or other Causes of Action that belong to the Debtors, Reorganized Debtor or the Litigation Trust as applicable, unless otherwise provided by order of the Bankruptcy Court.

To the extent any Claim or Cause of Action has not independently been reviewed by the Independent Committee and/or otherwise settled prior to the Effective Date, and such Claim or Cause of Action is designated a Litigation Trust Cause of Action, the Litigation Trust Trustee shall perform an independent investigation regarding whether such Litigation Trust Cause of Action, shall be investigated or pursued. It is possible that there may be other Causes of Action which currently exist or may subsequently arise but relate to facts and circumstances arising prior to the Effective Date that are not set forth herein, because the facts upon which such Causes of Action are based are not fully or currently known by the Debtors and, as a result, cannot be specifically referred to herein (collectively, the "Unknown Causes of Action"). Within twenty (20) Business Days of the discovery of the facts and circumstances underlying an Unknown Cause of Action, the Independent Committee shall notify the Committee or Litigation Trust Trustee as applicable of the existence of said Unknown Cause of Action, and the Independent Committee and Committee or Litigation Trust Trustee as applicable shall confer and make a determination of whether such Unknown Cause of Action will be transferred to the Litigation Trust as a Litigation Trust Cause of Action. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over any dispute between the Independent Committee and the Committee or Litigation Trust Trustee as applicable regarding the ownership of a discovered Unknown Cause of Action such that ownership of said discovered Unknown Cause of Action complies with the terms of this Plan.

C.	*Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Claim or Cause of Action against a Creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Claim or Cause of Action for later adjudication unless transferred to the Litigation Trust, (including, without limitation, Unknown Causes of Action), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been released in the Plan or other Final Order. In addition, the Debtors, the Litigation Trust and any successor entities under the Plan as applicable expressly reserve the right to pursue or adopt any Claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from Debtors or a transfer of money or property from the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Litigation Trust, as applicable, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a Proof of Claim against the Debtors in these Bankruptcy Cases; (ii) such Creditor's Proof of Claim has been objected to; *provided, however*, that the Litigation Trust may not file an objection to a Claim if such Creditor's Proof of Claim has previously been objected to; (iii) such Creditor's Claim was included in the Debtors' Schedules; or (iv) such Creditor's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

D.	*Retained Causes of Action and Retained Causes of Action Contribution*

On or before the expiration of any applicable statute of limitation, the Reorganized Debtor may initiate any Retained Causes of Action in any appropriate court of competent jurisdiction. Neither the Litigation Trust nor Litigation Trust Trustee shall have any rights to direct the Reorganized Debtor in the pursuit or settlement of the Retained Causes of Action. Beginning on the six-month anniversary of the Effective Date and every six months thereafter, the Reorganized Debtor shall provide the Litigation Trust and the Litigation Trust Trustee a report on the status of the pursuit of any Retained Causes of Action. The Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of any proposed settlement of any Retained Cause of Action. In the event of a successful collection of any Retained Cause of Action the Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of the collection made thereon. The Litigation Trust and Litigation Trust Trustee as applicable are not, and are not intended to be, third party beneficiaries of the proceeds of any Retained Causes of Action, and are provided with no additional rights and/or standing to object to the terms of any litigation strategy or proposed settlement of any Retained Causes of Action pursuant to the terms of this Plan. For the

avoidance of doubt the Reorganized Debtor is not required to pursue or settle any Retained Causes of Action.

Within ten (10) Business Days of receipt of any Retained Causes of Action Contributions arising from the final, non-appealable prosecution of a Retained Cause of Action or the settlement of a Retained Cause of Action, the Reorganized Debtor shall transfer the applicable Retained Causes of Action Contributions to the Litigation Trust in accordance with the instructions provided by the Litigation Trust Trustee. Each payment of the Retained Causes of Action Contributions paid shall be accompanied with a reasonable accounting supporting the amounts of the Retained Causes of Action Contributions transferred to the Litigation Trust.

Upon the resolution of all Retained Causes of Action any reporting obligations of the Reorganized Debtor to the Litigation Trust regarding the prosecution and/or settlement of any Retained Causes of Action shall cease, and the Reorganized Debtor shall have no further obligations related to the Retained Causes of Action Contributions, and the Litigation Trust shall have no right or claim to any proceeds of any Causes of Action retained by the Debtors. In the event the any Retained Causes of Action Contribution transferred to the Litigation Trust exceed seventy-five percent (75%) of the net cash recoveries of the applicable Retained Cause of Action, within ten (10) Business Days of written notice of such over payment by the Reorganized Debtor, the Litigation Trust shall refund the Reorganized Debtor the portion of the actually paid Retained Cause of Action Contributions exceeding net cash recovery threshold set forth in this Plan.

Unless the Reorganized Debtor and the Litigation Trust and Litigation Trust Trustee agree otherwise in writing, the Bankruptcy Court shall retain sole jurisdiction to resolve any dispute regarding the payment of the Retained Causes of Action Contributions, the accounting supporting the Retained Causes of Action Contributions, and the refund of any overpayments of Retained Causes of Action Contributions.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts or Unexpired Leases*

On the Effective Date, except for any executory contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, each executory contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code §§ 365 and 1123, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code §§ 365 and 1123 as of the Confirmation Date.

B.      *Rejection Damages Bar Date*

Except to the extent another Claims Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Bankruptcy Court, and a copy served

on counsel for the Debtors, the Reorganized Debtor and the Litigation Trust Trustee, within fifteen (15) days of the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Reorganized Debtor, the Litigation Trust, the Litigation Trust Trustee, their successors, their assigns or their Assets. Any timely filed Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 4 (Trade Creditor Claims). Nothing in this Plan extends or modifies any previously applicable Claims Bar Date.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Disbursing Agent*

1. **Litigation Trust Trustee as Disbursing Agent for Class 6A Claims and Class 6B Claims**

The Reorganized Debtor shall be the Disbursing Agent for any payments made to parties other than creditors that shall receive Litigation Trust Interests and shall make all required distributions to such creditors pursuant to this Plan. The Litigation Trust Trustee shall be the Disbursing Agent for creditors that shall receive Litigation Trust Interests and shall make all required distributions to such creditors pursuant to Article IV.M.9 of this Plan.

2. **Alternative Disbursing Agent Qualification**

Other than as set forth in this Plan, after the Effective Date no Person other than the Litigation Trust Trustee (or the Reorganized Debtor to the extent any applicable disbursement to be made by the Reorganized Debtor as Disbursing Agent could not be effected on the Effective Date) shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Litigation Trust Trustee consents in writing to that Person serving as Disbursing Agent, and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his or her duties as the Disbursing Agent under this Plan or order of the Bankruptcy Court.

B. *Time and Manner of Distributions*

The Disbursing Agent shall make Distributions under the Plan on account of Claims Allowed on the Effective Date or as soon as practicable after the Effective Date, except as otherwise agreed to by the Litigation Trust Oversight Committee or by order of the Bankruptcy Court. The Litigation Trust Trustee as Disbursing Agent shall have the power, subject to Litigation Trust Oversight Committee consent, to make interim distributions to Litigation Trust Beneficiaries in accordance with this Plan if the Litigation Trust Trustee determines that such interim distributions are warranted and economical. If the Litigation Trust Trustee determines to make interim distributions to Litigation Trust Beneficiaries, the Litigation Trust Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Litigation Trust Causes of Action. Amounts withheld will be placed in an interest-bearing account, which shall fund

ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Litigation Trust Causes of Action, if any.

At the option of the Disbursing Agent, except as otherwise provided in this Plan, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole dollar when and as necessary). Any distribution of less than $50.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $50.00 will not receive any distribution unless and until the aggregate of such distributions exceed $50.00. Such undistributed funds shall remain with and vest in the Litigation Trust for distribution to other Holders of Allowed Claims.

C.      *Interest on Claims*

Except as otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim unless all Claims have been paid in full in cash.

D.      *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Litigation Trust and Litigation Trust Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

E.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      **Delivery of Distributions in General**

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the applicable Disbursing Agent (i) at the addresses set forth on the Proof of Claim or Interest filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim or Interest is filed or the Debtors and the Litigation Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Litigation Trust Trustee or the Debtors as applicable after the date of any related Proof of Claim or Interest, or (iii) at the addresses reflected in the Schedules if no Proof of Claim or Interest has been filed and the Litigation Trust Trustee or the Debtors have not received a written notice of a change of address.

2.      **Undeliverable Distributions**

a.      Holding of Undeliverable Distributions.

If any distribution to a Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until notification in writing of such Holder's then-current address is provided. Undeliverable distributions shall be returned and shall remain in the possession of the Litigation Trust until such time as a distribution becomes deliverable. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Litigation Trust shall make all distributions that become deliverable.

        b.        Failure to Claim Undeliverable Distributions.

Any Holder of an Allowed Claim (irrespective of when a Claim became an Allowed Claim) that does not assert a Claim pursuant hereto for an undeliverable distribution (regardless of when not deliverable) within ninety (90) days after the distribution has been attempted to be made to the Holder of the Allowed Claim shall have its Claim related to such undeliverable distribution satisfied and shall be forever barred from asserting any such Claim against the Litigation Trust or be entitled to a further distribution. In such cases, any Cash held for distribution on account of such Claims shall be the property of the Litigation Trust free of any such Claim. Nothing contained herein shall require the Litigation Trust Trustee or any interested party to attempt to locate any Holder of an Allowed Claim.

F.     *Claims Administration Responsibility*

    1.    **Reservation of Rights to Object to Claims**

Except as provided in Article II.B hereof, for the avoidance of doubt, nothing in this Section F shall affect the rights, if any, of any interested party to object to any Claim or Interest before the Effective Date. Unless a Claim or Interest is expressly described as an Allowed Claim or Interest pursuant to or under this Plan, or otherwise becomes an Allowed Claim or Interest prior to Effective Date, the Debtors reserve any and all objections to any and all Claims and Interests and motions or requests for the payment of Claims or Interests, whether administrative expense, priority, secured or unsecured, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Debtors' failure (as applicable) to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Debtors' rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim or Interest is sought to be enforced by the Holder of such Claim or Interest prior to the Effective Date.

    2.    **Filing of Objections**

After the Effective Date, the Reorganized Debtor shall have the sole authority to file objections and otherwise object to all Administrative Claims, and all claims seeking allowance as Administrative Claims, not paid on or prior to the Effective Date.

On the Effective Date, the Litigation Trust and the Litigation Trust Trustee, as applicable, shall assume the right and obligation to prosecute any Claim Objections (other than Administrative Claims or claims seeking allowance as Administrative Claims) which have not been previously adjudicated prior to the Effective Date. After the Effective Date, the Litigation Trust and Litigation Trust Trustee, as applicable, shall have the sole authority to file objections

and otherwise object to all Claims (other than Administrative Claims or claims seeking allowance as Administrative Claims) which are paid on or after the Effective Date.

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if service is made by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims must be filed and served not later than the Objection Deadline.

> 3. **Determination of Claims**

Any Claim as to which a Proof of Claim or Interests or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim or Interest, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim or Interest filed by the Debtors on or prior to any applicable deadline for filing such objection or application with respect to such Claim or Interest. Any such Claim or Interest determined to be Allowed shall be deemed to be an Allowed Claim for such liquidated amount (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) and shall be satisfied in accordance with this Plan. Nothing contained in this Plan shall constitute or be deemed a waiver of any Claim, right or Cause of Action that the Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

G. *Procedures for Treating and Resolving Disputed and Contingent Claims or Interests*

> 1. **No Distributions Pending Allowance**

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim or Interest; provided, however, that in the event that only a portion of such Claim or Interest is an Allowed Claim or Interest, the Disbursing Agent may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim or Interest that becomes an Allowed Claim or Interest.

> 2. **Claim Estimation**

Prior to the Effective Date the Debtors, and after the Effective Date the Litigation Trust Trustee, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code; provided,

however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (ii) the timing and procedures for such estimation proceedings, if any.

H.      *Setoffs and Recoupment*

Prior to the Effective Date the Debtors, and after the Effective Date the Litigation Trust Trustee, as applicable, may, pursuant to Section 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan any claims or Causes of Action of any nature whatsoever the Debtors, Reorganized Debtor or the Litigation Trust, as applicable, may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, or Litigation Trust as applicable, of any right of setoff or recoupment the Debtors or Litigation Trust may have against the Holder of such Claim, nor of any other claim or Cause of Action.

I.      *Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code*

Allowance and disallowance of Claims shall be in all respects subject to the provisions of Section 502 of the Bankruptcy Code, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

J.      *Cancellation of Instruments and Agreements*

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, or agreements evidencing, giving rise to or governing any Claim shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be satisfied and the Holders thereof shall have no rights against the Debtors, the Estates, the Committee, the Reorganized Debtor, the Litigation Trust Trustee, the Litigation Trust Oversight Committee, and/or the Litigation Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan. In addition, the obligations of the Exchange Notes Trustee under or in connection with the Exchange Notes Indenture and the obligations of the Old Notes Trustee under the Old Notes Indenture shall be discharged and deemed satisfied on the Effective Date except to the extent necessary to comply with the terms of this Plan, including to facilitate the distributions provided for in this Plan to the applicable Holders of Claims and cancelling existing security interests. For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall limit or affect the standing of the Exchange Notes Trustee or Old Notes Trustee to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court on and after the Effective Date.

Notwithstanding the foregoing, the Exchange Notes Indenture and the Old Notes Indenture shall remain in effect solely for the purposes of (a) allowing the applicable Holders of Claims to receive their respective distributions under this Plan as provided herein, (b) allowing

the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to facilitate the distributions under this Plan to the applicable Holders of Claims as provided herein and otherwise comply with any obligations they may have under this Plan, including the cancellation of existing security interests, (c) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to preserve their respective rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holder of Exchange Note Claims and Old Notes Claims, as applicable, under this Plan, and to deduct such fees and expenses from such distributions, including in respect of payment and the right to exercise their charging liens, if any, against such distributions, (d) permitting the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to perform any functions that are necessary to effectuate the foregoing, and (e) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to assert any other right, privilege, benefit, or protection granted to either of them under the relevant documentation other than against the Reorganized Debtor and the Exculpated Parties; provided, however, that the foregoing shall not affect the discharge of the Debtors with respect to the Exchange Noteholder Claims and the Old Notes Claims as provided for herein, or result in any expenses or liability to the Reorganized Debtor, except to the extent set forth in or provided for under this Plan. Notwithstanding anything to the contrary herein, the terms and provisions of this Plan shall not alter, modify, or amend any existing contract or agreement between any of the Exchange Notes Trustee, the Old Notes Trustee and any current or former Exchange Noteholder or Old Noteholder, as applicable, and any such contract or agreement shall remain in full force and effect according to its terms following the Effective Date.

K.    *Withholding Taxes*

The Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan.  As a condition to making any distribution under this Plan, the Disbursing Agent may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Disbursing Agent may deem necessary to comply with applicable tax reporting and withholding laws.

L.    *Reports*

From the Effective Date, until a Final Decree is entered, the Litigation Trust Trustee shall file quarterly reports setting forth all receipts and disbursements of the Litigation Trust as required by the United States Trustee guidelines.

M.    *Distribution Record Date*

As of the close of business on the applicable Distribution Record Date, the transfer register for all Claims maintained by the Debtors or their agents, shall be closed, and there shall be no further changes in the Record Holders of any such Claims.  Moreover, the Debtors, Reorganized Debtor, Litigation Trust, Litigation Trust Trustee or Litigation Trust Oversight Committee as applicable shall have no obligation to recognize the transfer of any such Claims occurring after the applicable Distribution Record Date and shall be entitled for all purposes

herein to recognize and deal only with those Holders of record as of the close of business on the applicable Distribution Record Date.

N.     *Timing and Calculation of Amounts to be Distributed*

Except as otherwise provided herein, on the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class, provided however, the Litigation Trust shall maintain reserve accounts in trust for the payment or distribution on account of Litigation Trust Beneficiaries with respect to disputed claims and shall make the appropriate adjustments in distributions to adequately take into consideration and fund such reserve accounts. The Litigation Trust Trustee, as Disbursing Agent, shall be authorized to make interim distributions and any subsequent distributions necessary to distribute any Cash, or other consideration held in any reserve account to the appropriate Claim Holder as Claims are resolved and Allowed and reserves are reduced in accordance with this Plan.

O.     *Settlement of Claims and Controversies*

Pursuant to Fed. R. Bankr. P. 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of claims and/or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of any such Allowed Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND OCCURRENCE OF THE EFFECTIVE DATE

A.     *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions of the Plan and the Disclosure Statement are approved in the Confirmation Order.

B.     *Conditions Precedent to Occurrence of Effective Date*

It shall be a condition to occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions herein:

1.     Fourteen (14) days have passed since the entry of the Confirmation Order as a Final Order in form and substance satisfactory to the Debtors and the Committee in their absolute discretion. The Confirmation Order shall provide that, among other things:

(i)     the Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan; and

(ii)    the provisions of the Confirmation Order are nonseverable and mutually dependent.

2.    The appointment of the Litigation Trust Trustee shall have been confirmed by the Confirmation Order or order of the Bankruptcy Court.

3.    All actions, documents, consents, and agreements necessary to implement the Plan, including, without limitation, creating the Litigation Trust and entering into the Litigation Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred.

4.    The Debtors shall have established a reserve for all then outstanding Professional Fee Claims and Committee Professional Fee Claims (as limited by the Plan) as estimated by the Debtors and the Committee on or prior to the Effective Date.

C.    *Waiver of Conditions*

Except as otherwise required by the tenets of the Plan, the Debtors may waive any of the conditions to Confirmation of the Plan and/or to occurrence of the Effective Date of the Plan set forth in this Article VIII, at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate the Plan.

D.    *Debtors' Right of Revocation or Withdrawal*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw the Plan, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

**ARTICLE IX.**
**EFFECT OF CONFIRMATION**

A.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims that have been discharged pursuant to Article IX of the Plan or are subject to exculpation**

pursuant to Article IX of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtor, or the Exculpated Parties: (1) commencing or continuing in any manner any action or another proceeding of any kind on account of or in connection with or with respect to any such Claims or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the aforementioned entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the aforementioned entities or the property or the estates of the aforementioned entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the aforementioned entities or against the property of the aforementioned entities on account of or in connection with or with respect to any such Claims unless, such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim, Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX of the Plan.

B. *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) the closing of the Chapter 11 Cases or (ii) the dissolution of the Litigation Trust.

C. *Exculpation*

Effective as of the Effective Date, to the fullest extent permissible under 11 U.S.C. § 1125(e) and notwithstanding anything herein to the contrary, each Exculpated Party is hereby exculpated from any claim, obligation, Cause of Action, or liability for (a) any act or omission occurring between the Petition Date and the Effective Date in connection with, the representation of the Debtors, or (b) any act or omission occurring between the Petition Date and the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Reorganized Holdings Organizational Documents, the Reorganized Debtor Organizational Documents, the

Restructuring Transactions, the Litigation Trust Interests, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), in each case except for fraud, willful misconduct, gross negligence or claims for legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. § 1200), each solely to the extent as determined by a Final Order of a court of competent jurisdiction; provided, however, that, for the avoidance of doubt, such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Notwithstanding the foregoing, the Exculpation shall not release any obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or impair the ability of any Entity under the Plan to object to any request for payment on account of Professional Fee Claims.**

D.      *Release of Liens*

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any holder of such security interest (and the applicable agents for such holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtor, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## ARTICLE X.

## RETENTION OF JURISDICTION

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including, without limitation, the following:

1.      All matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2.      All matters relating to the ownership of a Claim or Interest;

3.      All matters relating to the distribution to Holders of Allowed Claims and Interests and to the determination of Claims and Interests;

4.      Any and all matters involving the Litigation Trust Trustee and/or the Litigation Trust and/or the Litigation Trust Oversight Committee;

5.      All matters relating to or arising in connection with the disallowance, Allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

6.      To enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7.      All matters relating to the construction and implementation of the Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

8.      All matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes involving the injunction and exculpation provisions of this Plan, and disputes arising under agreements, documents or instruments executed in connection with this Plan;

9.      To consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.     All applications for allowance of compensation and reimbursement of Professional Fee Claims and Committee Professional Fee Claims under this Plan or under §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

11.     To hear and determine all motions requesting allowance of an Administrative Claim;

12.     To determine requests for the payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

13.     All Causes of Action, Avoidance Actions and other suits and adversary proceedings, including proceedings to recover assets of the Litigation Trust, as successor-in-interest to the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

14.    All disputes between the Independent Committee and Committee or Litigation Trust Trustee as applicable regarding the ownership of any discovered Unknown Cause of Action;

15.    All disputes regarding the payment of the Excess SME Proceeds, the accounting supporting the Excess SME Proceeds, the refund of any Excess SME Proceeds during the Excess SME Proceeds Period;

16.    All matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

17.    Any other matter to the extent such jurisdiction is consistent with the Bankruptcy Code;

18.    To enter the Final Decree closing the Chapter 11 Case; and

19.    To enforce all orders previously entered by the Bankruptcy Court, including the Confirmation Order.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.    *Effectuating Documents, Further Transactions and Corporation Action*

The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements of documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof.

Prior to, on or after the Effective Date (as appropriate), all matters provided for hereunder that would otherwise require approval of the shareholders or directors of the Debtors shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states where each of the Debtors are organized without any requirement of further action by the shareholders or directors of any Debtor.

B.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid, prior to the Effective Date, out of the Assets of the Estate for each quarter (including any fraction thereof) and after the Effective Date by the Litigation Trust until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

C.    *Headings*

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

D.  *Binding Effect of Plan*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the Litigation Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is Impaired under this Plan and whether or not such Holder has accepted this Plan.  The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Litigation Trust Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

E.  *Final Order*

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors in consultation with the Committee upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

F.  *Withholding and Reporting Requirements*

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, the Debtors, Litigation Trust and the Litigation Trust Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

G.  *Tax Exemption*

Pursuant to section 1146 of the Bankruptcy Code, any transfers from the Debtors, the Litigation Trust or the Litigation Trust Trustee to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the Litigation Trust's personal property, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Litigation Trust Trustee of the Debtors' or the Litigation Trust's property in implementation of or as contemplated by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## H.    *Governing Law*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors and the Litigation Trust, corporate governance matters shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles.

## I.    *Severability*

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively.  Such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## J.    *Plan Controls*

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement or the Plan Supplement, the provisions of this Plan shall control and take precedence.

## K.    *Amendments and Modifications*

The Debtors may alter, amend or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing.  After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2) of the Bankruptcy Code) of this Plan, the Debtors in consultation with the Committee may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and pursue such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

## L.    *Notices*

Any notices required under this Plan or any notices or requests of the Debtors, Reorganized Debtor, or the Litigation Trust Trustee by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

To the Debtors:

Reed Smith LLP
Attn: Derek J. Baker, Esq. and Derek M. Osei-Bonsu, Esq.
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103

To the Committee:

Dechert LLP
Attn: Stephen Zide, Esq. and David Herman, Esq.
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

To the Reorganized Debtor:

_____

To the Litigation Trust and the Litigation Trust Trustee:

_____

M.    *Filing of Additional Documents*

On or before substantial consummation of this Plan, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

N.    *Direction to a Party*

From and after the Effective Date, the Debtors, the Litigation Trust or the Litigation Trust Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

O.    *Successors and Assigns*

The rights, benefits and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

P.    *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

Q.    *Further Assurances*

The Debtors, Reorganized Debtor, Litigation Trust Trustee, and all Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

R.    *Entire Agreement*

The Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

S.    *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Respectfully Submitted,

Eletson Holdings, *et al.*, as Debtors and Debtors-in-Possession

By:    /s/ Vasillis E. Kertsikoff
          Name: Vasillis E. Kertsikoff
          Title: Vice President & Director

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Eletson Holdings Inc., *et al.*, [1] | Case No. 23-10322 (JPM) |
| Debtors. | (Jointly Administered) |

---

**SECOND AMENDED JOINT PLAN OF
REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE
UNITED STATES BANKRUPTCY CODE (AS FURTHER MODIFIED)**

---

**REED SMITH LLP**

Derek J. Baker
Derek Osei-Bonsu
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
    dosei-bonsu@reedsmith.com

-and-

Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
    lsolomon@reedsmith.com
*Counsel for the Debtors*

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

# TABLE OF CONTENTS

**Page**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, RESERVATION OF RIGHTS AND DEFINED TERMS .................... 1

    A.    Rules of Interpretation, Computation of Time and Governing Law .................... 1

    B.    Defined Terms .................... 2

    C.    Exhibits .................... 16

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS .................... 17

    A.    Classification .................... 17

    B.    Unclassified Claims: Administrative Claims .................... 17

        a.    Administrative Claims (other than Professional Fee Claims, DIP Claims or Committee Professional Fee Claims) .................... 18

        b.    Professional Fee Claims and Committee Professional Fee Claims .................... 18

        c.    DIP Claims .................... 19

        d.    Administrative Claims and Substantial Contribution Claim Filing Deadline .................... 19

    C.    Treatment of Classified Claims .................... 19

        1.    Class 1 — OCM Guaranty Claims .................... 19

        2.    Class 2 — Corp Guaranty Claims .................... 20

        3.    Class 3 — Azure Guaranty Claims .................... 20

        4.    Class 4 — Trade Creditor Claims .................... 20

        5.    Class 5 — Noteholder Election Recovery Claims .................... 21

        6.    Class 6A — Non-Petitioning Creditor Note Claims .................... 21

        7.    Class 6B — Petitioning Creditor Exchange Note Claims .................... 22

        8.    Class 7 — Interests .................... 22

ARTICLE III. ACCEPTANCE OR REJECTION OF THE PLAN .................... 23

    A.    Voting Classes .................... 23

    B.    Classes Presumed to Accept this Plan .................... 23

    C.    Acceptance by Impaired Classes .................... 23

    D.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes .................... 23

    E.    Non-Consensual Confirmation .................... 23

    F.    Controversy Concerning Impairment .................... 24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN................................24

    A.    Implementation of the Plan and Sources of Consideration for Plan Distributions................................24

        1.    The Shareholder New Value Contribution................................24

        2.    Distributable Cash................................24

        3.    Excess SME Proceeds................................25

        4.    Litigation Trust Causes of Action................................26

    B.    Substantive Consolidation................................26

        1.    Order Granting Plan Consolidation................................26

        2.    Plan Consolidation................................26

    C.    Corporate Existence................................27

    D.    Vesting of Assets in the Reorganized Debtor................................27

    E.    Dissolution of the Committee................................28

    F.    Reorganized Debtor Organizational Documents................................28

    G.    Appointment of Directors and Officers of the Reorganized Debtor................................28

    H.    Creation of the Litigation Trust................................28

    I.    Transfer of Assets and the Litigation Trust Causes of Action to the Litigation Trust................................30

    J.    Liabilities of the Litigation Trust................................30

    K.    Appointment of the Litigation Trust Trustee and Members of the Litigation Trust Oversight Committee................................30

    L.    Cooperation and Privilege................................31

    M.    Duties of the Litigation Trust Trustee................................32

    N.    Post Confirmation Expenses................................34

    O.    Liability; Indemnification................................34

    P.    Litigation Trust Oversight Committee................................35

    Q.    Good Faith................................36

    R.    Saturday, Sunday or Legal Holiday................................36

    S.    Exemption from Certain Taxes and Fees................................36

    T.    Issuance of Documents Necessary to Consummate the Plan................................37

    U.    Final Decree................................37

ARTICLE V. RETAINED CAUSES OF ACTION................................37

    A.    Maintenance of Causes of Action................................37

    B.    Preservation of Causes of Action................................38

C.     Preservation of All Causes of Action Not Expressly Settled or Released................38

D.     Retained Causes of Action and Retained Causes of Action Contribution................39

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES40

A.     Rejection of Executory Contracts or Unexpired Leases................40

B.     Rejection Damages Bar Date................40

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS................40

A.     Disbursing Agent................40

     1.     Litigation Trust Trustee as Disbursing Agent for Class 6A Claims and Class 6B Claims................41

     2.     Alternative Disbursing Agent Qualification................41

B.     Time and Manner of Distributions................41

C.     Interest on Claims................42

D.     Compliance with Tax Requirements/Allocations................42

E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions................42

     1.     Delivery of Distributions in General................42

     2.     Undeliverable Distributions................42

         a.     Holding of Undeliverable Distributions.................42

         b.     Failure to Claim Undeliverable Distributions.................42

F.     Claims Administration Responsibility................43

     1.     Reservation of Rights to Object to Claims................43

     2.     Filing of Objections................43

     3.     Determination of Claims................44

G.     Procedures for Treating and Resolving Disputed and Contingent Claims or Interests................44

     1.     No Distributions Pending Allowance................44

     2.     Claim Estimation................44

H.     Setoffs and Recoupment................44

I.     Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code................45

J.     Cancellation of Instruments and Agreements................45

K.     Withholding Taxes................46

L.     Reports................46

M.     Distribution Record Date................46

N.     Timing and Calculation of Amounts to be Distributed................46

O.  Settlement of Claims and Controversies ................................................... 47

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND OCCURRENCE
OF THE EFFECTIVE DATE ............................................................................... 47

A.  Conditions Precedent to Confirmation ..................................................... 47

B.  Conditions Precedent to Occurrence of Effective Date ............................. 47

C.  Waiver of Conditions ................................................................................ 48

D.  Debtors' Right of Revocation or Withdrawal ............................................ 48

ARTICLE IX. EFFECT OF CONFIRMATION ...................................................... 48

A.  Injunction .................................................................................................. 48

B.  Term of Injunctions or Stays .................................................................... 49

C.  Exculpation ............................................................................................... 49

D.  Release of Liens ....................................................................................... 50

ARTICLE X. RETENTION OF JURISDICTION .................................................. 50

ARTICLE XI. MISCELLANEOUS PROVISIONS ............................................... 52

A.  Effectuating Documents, Further Transactions and Corporation Action ... 52

B.  Payment of Statutory Fees ........................................................................ 52

C.  Headings ................................................................................................... 52

D.  Binding Effect of Plan .............................................................................. 52

E.  Final Order ................................................................................................ 53

F.  Withholding and Reporting Requirements ................................................ 53

G.  Tax Exemption .......................................................................................... 53

H.  Governing Law .......................................................................................... 53

I.  Severability ............................................................................................... 54

J.  Plan Controls ............................................................................................ 54

K.  Amendments and Modifications ............................................................... 54

L.  Notices ...................................................................................................... 54

M.  Filing of Additional Documents ............................................................... 55

N.  Direction to a Party ................................................................................... 55

O.  Successors and Assigns ............................................................................ 55

P.  Reservation of Rights ................................................................................ 55

Q.  Further Assurances .................................................................................... 56

R.  Entire Agreement ...................................................................................... 56

S.  Filing of Additional Documents ............................................................... 56

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, Eletson Holdings Inc., Eletson Finance (US) LLC and Agathonissos Finance LLC, debtors and debtors-in-possession (collectively and as defined below the "Debtors"), in the above-captioned and numbered case, hereby respectfully propose this Joint Plan of Reorganization of Debtors Under Chapter 11 of the United States Bankruptcy Code.

The Plan effects a restructuring of the Debtors' outstanding obligations owed to its creditor constituencies and is created for the purposes, among others, of making distributions to the Holders of Allowed Claims and Interests, and otherwise restructuring the outstanding obligations of the Estates, all as more fully set forth in this Plan.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, RESERVATION OF RIGHTS AND DEFINED TERMS

A.    *Rules of Interpretation, Computation of Time and Governing Law*

1.     For purposes herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference herein to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references herein to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising

hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

B.    *Defined Terms*

Unless the context requires otherwise, the following terms shall have the following meanings when used in capitalized form herein:

1.    "Administrative Bar Date" means the date which is the 30th day after the Effective Date.

2.    "Administrative Budget" means (i) the initial budget for the period following the Effective Date, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Litigation Trust, together with any amendments or modifications thereto, as prepared by the Debtors pursuant to Article IV.N of this Plan which shall be determined by the Debtors with the consent of the Committee, which consent shall not be unreasonably withheld, in an amount no less than $200,000 which shall be drawn from the Distributable Cash; and (ii) any modified budget, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Litigation Trust, together with any amendments or modifications thereto, as prepared by the Litigation Trust Trustee and approved by the Litigation Trust Oversight Committee pursuant to Article IV.N of this Plan.

3.    "Administrative Claim" means a Claim for costs and expenses of administration under sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise; and (c) all fees and charges assessed against the Estates under chapter 123 of Title 28 United States Code, 28 U.S.C. §§ 1911-1930.

4.    "Administrative Fund" means the reserve established for the Post-Confirmation Expenses in accordance with Article IV.N herein, which reserve may be augmented with Litigation Trust Assets by the Litigation Trust Trustee in consultation with and at the direction of the Litigation Trust Oversight Committee; provided, however, on the Effective Date, the initial Administrative Fund shall not exceed the amount of $200,000 necessary to monetize the Litigation Trust Causes of Action as of the Effective Date.

5.    "Allowed Claim" or "Allowed Interest" means, respectively, a Claim or Interest: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Claims Bar Date to which (x) no objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made, and (y) the Litigation Trust Trustee has determined that no objection, or motion to subordinate, disallow or otherwise limit recovery, will be made to such Claim or Interest; (iii) as to which a timely Administrative Claim Request has been filed to which (x) no objection thereto, or application to equitably subordinate

or otherwise limit recovery has been made, and (y) the Litigation Trust Trustee has determined that no objection, or application to equitably subordinate or otherwise limit recovery, will be made to such Administrative Claim Request; or (iv) that has been allowed by a Final Order or pursuant to the terms of this Plan. An Allowed Claim shall not include interest on the amount of any Claim except with respect to an Allowed Secured Claim as permitted by section 506(b) of the Bankruptcy Code or as specifically provided in this Plan, or by Final Order of the Bankruptcy Court. If the Litigation Trust Trustee shall object to any Claim in accordance with section 502(d) of the Bankruptcy Code, such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

6. "Allowed _____ Claim" or "Allowed _____ Interest" means an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Claim, Secured Claim, General Unsecured Claim or Interest, as the case may be.

7. "Arbitration" means the JAMS Arbitration initiated by Eletson Holdings and Eletson Corp. against Levona Holdings Ltd.

8. "Assets" means all assets of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Section 541 of the Bankruptcy Code; Cash; Causes of Action including Avoidance Actions; rights; interests; and property, real and personal, tangible and intangible.

9. "Avoidance Actions" means those avoidance actions available in these Chapter 11 Cases pursuant to Chapter 5 of the Bankruptcy Code.

10. "Azure" means collectively Azure Nova Spring Company, Ltd., Azure Nova Summer Company, Ltd., Azure Nova Autumn Company, Ltd. and Azure Nova Winter Company, Ltd.

11. "Azure Guarantees" means those certain guarantees dated as of August 24, 2017, executed by Eletson Holdings in favor of the obligations of certain Eletson affiliates to Azure.

12. "Azure Guaranty Claims" means any and all guaranty related Claims arising from the Azure Guarantees.

13. "Azure Guaranty Recovery" means the lesser of (i) $200,000 and (ii) such other amount as determined by the Debtors and Azure in full and complete settlement, release and satisfaction of the Azure Guaranty Claims.

14. "Ballots" means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests in the Debtors entitled to vote shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

15.     "Bankruptcy Code" means Title 11 of the United States Code, and the applicable portions of Title 28 of the United States Code.

16.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

17.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General, Local and Chambers Rules of the Bankruptcy Court.

18.     "Bar Date Order" means the *Order Establishing Deadlines for Filing Proofs of Claim and Claims Related to Gap Period and Approving Form and Manner of Notice Thereof* [D.I. 264].

19.     "Beneficial Holder" means the Person or Entity holding the beneficial interest in a Claim or Interest.

20.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) in New York, York.

21.     "Cash" means cash and cash equivalents in certified or immediately available funds, including, but not limited to, bank deposits, checks and similar items.

22.     "Cause of Action" means, but is not limited to the following: all claims as defined in section 101(5) of the Bankruptcy Code, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, all claims in any avoidance, recovery, inequitable conduct, subordination or other actions against Insiders and/or any other Persons under the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553) of the Debtors, the Debtors in Possession and/or the Estates against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown.

23.     "Chapter 11 Cases" means the chapter 11 bankruptcy cases of the Debtors initiated pursuant to that *Order Converting These Cases to Cases Under Chapter 11* [D.I. 215], jointly administered under the name Eletson Holdings Inc. Case No. 23-10322.

24.     "Claim" means any claim(s) against the Debtors as such term is defined in Bankruptcy Code § 101(5).

25.     "Claim Holder" means the Holder of a Claim.

26.     "Claims Bar Date" means (i) December 18, 2023, and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against the Debtors, must have filed a Proof of Claim or Administrative Claim Request or be forever barred from asserting such Claim.

27. "Class" means a category of Claims or Interests as set forth in Article II herein.

28. "Class 6 Claims" means the aggregate Claims of Class 6A and Class 6B.

29. "Collections Contribution" means the Gas Ownership Defendants' agreement to contribute and deliver to the Litigation Trust Trustee a one time-cash payment equal to (i) 90% of the first $21 million of net cash recoveries under the Final Award (with the remaining 10% of net cash recoveries being collected by Eletson Corporation on account of amounts awarded to Eletson Corporation under the Final Award); plus (ii) 50% of the next $20 million of net cash recoveries under the Final Award (with the remaining 50% of such cash recoveries of amounts awarded to Eletson Corporation under the Final Award); plus (iii) 75% of the net cash recoveries in excess of $41 million under the Final Award; provided, however, for purposes of the foregoing, "net cash recoveries" shall mean cash actually collected under the Final Award net of costs of collection incurred following the date of the Final Award (*i.e.*, September 29, 2023) by Eletson Corporation and/or the Gas Ownership Defendants and net of any amounts setoff by any Gas Ownership Defendants for amounts owed to Levona.

30. "Committee" means the Official Committee of Unsecured Creditors as constituted by the Office of United States Trustee in the Chapter 11 Cases. [D.I. 233.]

31. "Committee Professionals" means (a) Dechert LLP, (b) FTI Consulting, Inc., and (c) any other Person or Entity employed by the Committee pursuant to a Final Order in accordance with sections 327 and 1103 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code.

32. "Committee Professional Fees" means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Committee Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

33. "Committee Professional Fee Claims" means all Committee Professional Fees which remain unpaid as of the Effective Date.

34. "Confirmation" means the entry of the Confirmation Order.

35. "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rule 5003.

36. "Confirmation Hearing" means that hearing before the Bankruptcy Court wherein the Debtors seek confirmation of the Plan as provided for in section 1128 of the Bankruptcy Code.

37. "Confirmation Order" means the order of the Bankruptcy Court, in form and substance satisfactory to the Debtors, confirming this Plan pursuant to section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

38.     "Consolidating Debtors" means collectively Eletson Finance (US) LLC and Agathonissos Finance LLC.

39.     "Conversion Date" means September 25, 2023.

40.     "Corp Guarantees" means an executed guaranty or similar security agreement other than the Azure Guarantees and the OCM Guarantees executed by Eletson Holdings guaranteeing the obligations of Eletson Corporation.

41.     "Corp Guaranty Claims" means any guaranty related Claims arising from the Corp Guarantees.

42.     "Creditor" shall have the meaning in section 101(10) of the Bankruptcy Code.

43.     "Debtors" means collectively Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

44.     "Debtor Privilege" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtors.

45.     "DIP Agent" means the administrative agent set forth in the DIP Documents.

46.     "DIP Claim" means any Claim in respect of the Debtors' obligations under the DIP Documents, including principal, interests and other fees and expenses owing pursuant to the DIP Documents and in accordance therewith held by or otherwise owed to the DIP Agent and/or DIP Lenders.

47.     "DIP Credit Agreement" means the credit agreement governing the terms and conditions of the postpetition financing facility entered into by the Debtors, DIP Agent and DIP Lenders and approved pursuant to order of the Bankruptcy Court.

48.     "DIP Documents" means the DIP Credit Agreement and related documents.

49.     "DIP Facility" means the postpetition financing facility approved by the Bankruptcy Court pursuant to the DIP Order.

50.     "DIP Lenders" means the lenders under the DIP Credit Agreement and any successors and permitted assigns.

51.     "DIP Order" means the interim or final order, as applicable, entered by the Bankruptcy Court approving the DIP Facility and authorizing the DIP Documents.

52.     "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court, (iii) is not Scheduled and as to which no Proof of

Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors or the Litigation Trust Trustee and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

53. "**Disbursing Agent**" means the Litigation Trust Trustee, Reorganized Debtor or third party as applicable in accordance with Article VII.A.

54. "**Disclosure Statement**" means the First Amended Disclosure Statement in Support of the Second Amended Joint Plan of Reorganization of Debtors under Chapter 11 of the Bankruptcy Code, dated as of July 5, 2024, and all exhibits thereto, as amended, supplemented, or modified from time to time, describing the Plan, that is prepared and distributed in accordance with the Bankruptcy Code and approved by the Bankruptcy Court.

55. "**Disclosure Statement Order**" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on July 10, 2024 [D.I. 856].

56. "**Disputed**" means, for purposes of this Plan, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed or contingent and for which a timely objection has been filed; or (b) as to which any Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules which has not been withdrawn or determined by a Final Order; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

57. "**Distributable Cash**" means all remaining Cash or cash equivalents comprising of the Shareholder New Value Contribution and SME Revenue after (i) payment of the Allowed Administrative Claims including Professional Fee Claims and Committee Fee Claims, (ii) funding of the Administrative Fund, (iii) funding of the Azure Guaranty Recovery, (iv) funding the Eletson Corporation Guaranty Recovery, (v) funding the Trade Creditor Claim Reserve, and (vi) funding the Noteholder Recovery Election Reserve. Notwithstanding the foregoing, (i) any excess amounts remaining in the Trade Creditor Claim Reserve and Noteholder Election Recovery Reserve, if any, after final distributions on account of Allowed Trade Creditor Claims and Noteholder Election Recovery Claims, and (ii) any excess amounts remaining in the Administrative Fund.

58. "**Distribution Record Date**" means the Effective Date unless a different date is ordered by the Bankruptcy Court.

59. "**District Court Confirmation Proceedings**" means those proceedings before the United States District Court for the Southern District of New York regarding the confirmation of the Final Award issued in the Arbitration.

60. "**Effective Date**" means the date selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII herein have been (i) satisfied or (ii) waived pursuant to the applicable provisions of this Plan.

61.     "Eletson Corporation" means non-Debtor Eletson Corporation.

62.     "Eletson Corporation Guaranty Recovery" means $1,000,000.00 to be paid Pro Rata to Holders of Corp Guaranty Claims.

63.     "Eletson Gas" means non-Debtor Eletson Gas LLC.

64.     "Eletson Holdings" means Eletson Holdings, Inc.

65.     "Eletson Holdings Members" means the holders of the common shares in Eletson Holdings.

66.     "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

67.     "Estate" means the estate of each Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

68.     "Excess SME Cash Flow Proceeds" means the future cash contributions of the Reorganized Debtor to the Litigation Trust during the Excess SME Proceeds Period of 20% of the consolidated excess cash flow (calculated on a semi-annual basis) of the consolidated operating revenues of the SMEs less the consolidated operating expenses for the previous six month period, up to a maximum of $5 million in the aggregate.

69.     "Excess SME Proceeds" means the Excess SME Cash Flow Proceeds and the Excess SME Sale Proceeds.

70.     "Excess SME Proceeds Period" means the earlier of the four-year anniversary of the Effective Date or the date on which the sale of all of the SMEs and/or the SME Vessels has been consummated.

71.     "Excess SME Sale Proceeds" means 20% of the gross proceeds from the sale of any SME and/or SME Vessel less said SME's existing debt (including any unpaid obligations under the terms of the applicable bareboat charter and any trade obligations applicable to the operation of such SME Vessel which were incurred but not paid prior to the sale closing date) up to a maximum of $5 million in the aggregate.

72.     "Exchange Noteholder" means a Holder of the Exchange Notes.

73.     "Exchange Notes" means those certain 9.625% First Preferred Ship Mortgage Notes due 2022 in an original Face Amount of $300 million issued by the Debtors that were exchanged by noteholders pursuant to the that May 25, 2018 exchange offer.

74.     "Exchange Notes Indenture" means that certain Indenture, dated as of July, 2, 2018, by and among the Debtors, as co-issuers, the guarantors party thereto, and the Exchange Notes Trustee, as trustee and collateral agent (as amended, amended and restated, modified, or supplemented from time to time).

75.    "Exchange Notes Trustee" means Wilmington Savings Fund Society, FSB, in its capacity as trustee and collateral trustee under the Exchange Notes Indenture, including any successor and permitted assigns thereto.

76.    "Exculpated Parties" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases: the Debtors and the Debtors' officers and directors and the Debtors' professionals retained under the Bankruptcy Code (each in their capacities as such) that served in such capacities at any time between the Petition Date and the Effective Date.

77.    "Face Amount" means (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

78.    "File" or "Filed" means file or filed with the Bankruptcy Court in the Chapter 11 Cases.

79.    "Final Award" means the final arbitral award issued in the arbitration proceeding titled *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.* before Justice Belen at JAMS Ref. No. 5425000511.

80.    "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

81.    "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Case that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari or rehearing thereof has been pursued or granted then such an appeal, reargument, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.    Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

82.    "Gas Ownership Defendants" means Eletson Gas, the Preferred Owners and/or any officers or directors of the same.

83.    "General Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, a Secured Claim or an Interest.

84.    "Governmental Unit" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

85.    "Holder" and collectively, "Holders" means a Person or Entity holding an Interest or Claim, and with respect to a vote on the Plan, means the Beneficial Holder as of the

Distribution Record Date or any authorized signatory who has completed and executed a Ballot in accordance with the Voting Instructions.

86. "Impaired" means with respect to any Class of Claims or Interests, any Claims or Interests that are impaired within the meaning of § 1124 of the Bankruptcy Code.

87. "Impaired Claim" means a Claim classified in an Impaired Class of Claims.

88. "Impaired Class" means each of the Classes that is not an Unimpaired Class.

89. "Intercompany Interest" means any Interest of a Debtor or a Non-Debtor Affiliate that is held by another Debtors, including (a) all issued, unissued, authorized or outstanding shares or stock and (b) any interest, including but not limited to, any warrant, options, conversion privileges or contract rights to purchase or acquire any equity security or membership interest of any of the Debtors at any time.

90. "Interest" means any common equity interest in Eletson Holdings, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock.

91. "IRS" means the Internal Revenue Service.

92. "Levona" means Levona Holdings Ltd. and/or its alter egos as determined in the Arbitration or necessary or appropriate to collect the Final Award.

93. "Liberian Law" means the governing laws of the Republic of Liberia.

94. "Liens" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

95. "Litigation Trust" means the trust that will be created to pursue the Litigation Trust Causes of Action and effect distributions to applicable holders of Litigation Trust Interests following the Effective Date in accordance with the terms of this Plan and the Litigation Trust Agreement.

96. "Litigation Trust Agreement" means the trust agreement described in Article IV of this Plan and substantially in the form to be filed with the Plan Supplement that, among other things, shall be drafted and filed by the Committee (subject to review by the Debtors), and establishes the Litigation Trust, and describes the powers, duties and responsibilities of the agreement respecting the transfer of documents, information, and Litigation Trust Privileges and privileges of the Reorganized Debtor (solely in its capacity as successor to the Debtors) and solely related to the Litigation Trust Causes of Action to be entered into with the Litigation Trust Trustee; provided, however, that to the extent the terms of Article IV of this Plan conflict with the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall control.

97. "Litigation Trust Assets" means the Litigation Trust Causes of Actions, the Excess SME Proceeds, Collections Contribution, Retained Causes of Action Contribution and the

Distributable Cash; provided, that neither the Debtors nor the Reorganized Debtor shall have any obligations to provide any funding to the Litigation Trust.

98.     "Litigation Trust Beneficiaries" means holders of the Litigation Trust Interests.

99.     "Litigation Trust Causes of Action" means any and all claims and Causes of Action of the Debtors arising under state or federal law, Liberian Law or Marshall Islands Law including all Pending Adversary Proceedings, Claim Objections and Avoidance Actions owned by, or asserted on behalf of, or that may be asserted by or on behalf of, the Debtors or their Estates listed on the Litigation Trust Causes of Action Schedule.

100.    "Litigation Trust Causes of Action Schedule" means the schedule attached to the Plan as Appendix A setting forth the Causes of Action that will be transferred to the Litigation Trust and constitute the Litigation Trust Causes of Action.

101.    "Litigation Trust Distributable Proceeds" means all actual proceeds of (i) the Litigation Trust Causes of Action, net of any amounts (a) used to repay any funding for the Litigation Trust in accordance with the terms of such funding, (b) used to pay the Litigation Trust Expenses, and (c) as otherwise provided in accordance with the Litigation Trust Agreement (ii) the remaining Distributable Cash after satisfaction of the Litigation Trust Expenses, (iii) the Collections Contribution (v) the Retained Causes of Action Contributions and (vi) the cash provided by the Excess SME Proceeds.

102.    "Litigation Trust Expenses" means all reasonable fees, costs and expenses of and incurred by the Litigation Trust, including legal and other professional fees, costs and expenses, administrative fees and expenses, insurance fees, taxes and escrow expenses, which shall be paid in accordance with the Litigation Trust Agreement and the terms of this Plan; provided, however, that neither the Debtors nor the Reorganized Debtor shall be required in any event to pay the Litigation Trust Expenses.

103.    "Litigation Trust Interests" means the interests in the Litigation Trust to be distributed on a Pro Rata basis to holders of Claims in Class 6 as set forth herein, which shall entitle such Holder to its Pro Rata portion (based on the percentage of Litigation Trust Interests held by such Holder) of Litigation Trust Distributable Proceeds.

104.    "Litigation Trust Oversight Committee" means the committee of up to five (5) members formed on the Effective Date and composed of members selected by the Committee. The initial members of the Litigation Trust Oversight Committee shall be identified in the Plan Supplement to be filed prior to the Confirmation Hearing or identified by the Litigation Trust Trustee pursuant to the terms of the Litigation Trust Agreement, as applicable.

105.    "Litigation Trust Privileges" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtors related exclusively to Litigation Trust Causes of Action which shall be transferred to the Litigation Trust along with the Litigation Trust Causes of Action.

106. "Litigation Trust Trustee" means the individual selected by the Committee pursuant to Article IV of this Plan to act as trustee of the Litigation Trust in accordance with the provisions of this Plan and the Litigation Trust Agreement.

107. "Marshall Islands Law" means the governing law of the Republic of the Marshall Islands.

108. "NAF Claim" means the Claim asserted by New Agathonissos Finance LLC to the extent any portion of said Claim is deemed an Allowed Claim.

109. "Non-Debtor Affiliate" means any person that is an affiliate of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

110. "Non-Petitioning Creditors Exchange Note Claims" means claims asserted by Exchange Noteholders other than the Petitioning Creditors on account of the Exchange Notes.

111. "Noteholder Election Recovery" means the recovery provided to Holders of Noteholder Election Recovery Claims paid from the Noteholder Election Recovery Reserve which for each individual Holder of a Noteholder Election Recovery Claim shall be the lesser of (i) the Face Amount of such Holder's Noteholder Election Recovery Claim, (ii) such Holder's Pro Rata portion of the Noteholder Election Recovery Cap, or (iii) $70,000.

112. "Noteholder Election Recovery Cap" means $7,000,000.

113. "Noteholder Election Recovery Claims" means the Claims of any Holder of a Claim in Class 6A or 6B that affirmatively and irrevocably elects to have their Non-Petitioning Creditor Exchange Note Claim, Petitioning Creditor Exchange Note Claim or Old Note Claim, as applicable, treated as a Claim under Class 5 with recovery drawn from the Noteholder Election Recovery Reserve.

114. "Noteholder Election Recovery Reserve" means a reserve created in the amount up to the Noteholder Election Recovery Claim Cap to fund recoveries for Noteholder Election Recovery Claims.

115. "Objection Deadline" means that date which is one year after the Effective Date or such later date as the Court may allow upon request by the Litigation Trust Trustee, by which the Litigation Trust Trustee or any party in interest has to file an objection to any Claim not previously allowed.

116. "OCM Entities" means collectively OCM Maritime Rhine LLC, OCM Maritime Yukon LLC, OCM Maritime Autumn LLC and OCM Maritime Thames LLC.

117. "OCM Guarantees" means the guarantees executed by Eletson Holdings in favor of the obligations of the SMEs to the OCM Entities.

118. "OCM Guaranty Claims" means Claims arising from the OCM Guarantees.

119. "Old Noteholders" means the Holders of the Old Notes.

120. "Old Notes" means those certain 9.625% First Preferred Ship Mortgage Notes due 2022 in an original Face Amount of $300 million issued by the Debtors that were not converted by holders of Old Notes pursuant to that May 25, 2018 exchange offer.

121. "Old Notes Claim" means Claims arising from the Old Notes and the NAF Claim.

122. "Old Notes Indenture" means that certain indenture, dated as of December 19, 2013, among Eletson Holdings and Eletson Finance, as co-issuers, the guarantor parties thereto, and the Old Notes Trustee, as trustee and collateral trustee (as amended, amended and restated, modified, or supplemented from time to time).

123. "Old Notes Trustee" means Deutsche Bank Trust Company Americas, in its capacity as trustee and collateral trustee under the Old Notes Indenture, including any successor and permitted assigns thereto.

124. "Pach Shemen" means Pach Shemen LLC.

125. "Pending Adversary Proceedings" means all adversary proceedings commenced by the Debtors which are currently pending in the Bankruptcy Court.

126. "Person" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

127. "Petition Date" means March 7, 2023, the date on which certain of the Petitioning Creditors filed involuntary petitions for relief commencing the Bankruptcy Cases.

128. "Petitioners" means the Debtors, Eletson Corporation and any other party benefiting from the Final Award.

129. "Petitioning Creditors" means Pach Shemen, VR Global Partners, L.P., and Alpine Partners (BVI) L.P. and (ii) Levona to the extent Levona is deemed to be a creditor of the Debtors by order of the Bankruptcy Court.

130. "Petitioning Creditors Exchange Note Claims" means any and all claims asserted by any Petitioning Creditor arising from said Petitioning Creditor's purporting to be the Beneficial Holder of any Exchange Notes.

131. "Plan" means this Second Amended Joint Plan of Reorganization of Debtors under Chapter 11 of the United States Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

132.	"Plan Consideration" means the Shareholder New Value Contribution, the SME Revenue, Retained Causes of Action Contribution, and the Excess SME Proceeds.

133.	"Plan Consolidation" means the consolidation of the Consolidating Debtors into Eletson Holdings as set forth in Article IV.B of this Plan.

134.	"Plan Supplement" means a document supplementing the Plan to be submitted with the Court no later than ten (10) days prior to the objection deadline for the Confirmation Hearing.

135.	"Post-Confirmation Expense" means any fees, costs and expenses (including, without limitation, United States Trustee Quarterly Fees, Litigation Trust Expenses, attorneys' fees, the fees of other professionals, and any taxes imposed on the Litigation Trust or in respect of its Assets) necessary to complete the reorganization contemplated herein and the Litigation Trust after the Effective Date.

136.	"Preferred Owners" means collectively Desimuso Trading Company, Apargo Limited, and Fentalon Limited.

137.	"Preferred Shares" means the Preferred Shares of non-Debtor Eletson Gas LLC.

138.	"Priority Claim" means a Claim entitled to priority pursuant to Bankruptcy Code § 507 that is not an Administrative Claim

139.	"Professional" or, collectively, "Professionals" means a Person or Entity (a) employed by the Debtors pursuant to a Final Order in accordance with sections 327 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code by a Final Order.

140.	"Professional Fees" means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

141.	"Professional Fee Claims" means all Professionals Fees which remain unpaid as of the Effective Date.

142.	"Professional Claims Bar Date" means 5:00 p.m. (prevailing Eastern Time) on the date that is the first Business Day that is forty-five (45) days after the Effective Date.

143.	"Proof of Claim" means a Claim for which a proof of claim on Official Form 410 has been filed on or before the Claims Bar Date.

144. "Pro Rata" means the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

145. "Record Holder" means the Holder of a Claim or Interest on the Distribution Record Date.

146. "Reorganized Debtor" means Eletson Holdings on and after the Effective Date.

147. "Reorganized Debtor Organizational Documents" means the applicable bylaws, charter documents, articles of incorporation, certificates of incorporation, certificates of formation, limited liability company operating agreements, and related documents regarding the corporate existence and governance of the Reorganized Debtor.

148. "Retained Causes of Action" means all Causes of Action existing as of the Effective Date not transferred to the Litigation Trust (including Unknown Causes of Action as applicable) and retained by the Reorganized Debtor which may be pursued by the Reorganized Debtor for the benefit of the Reorganized Debtor and Litigation Trust through the Retained Causes of Action Contribution.

149. "Retained Causes of Action Contribution" means 75% of the net cash recoveries on account of Retained Causes of Action; provided, however, for purposes of the foregoing, "net cash recoveries" shall mean cash actually collected under any Retained Causes of Action net of costs of collection incurred by the Reorganized Debtor and net of any amounts setoff by the Reorganized Debtor for amounts owed to any defendant under a Retained Cause of Action.

150. "Restructuring Transactions" means the transactions described in Article IV of this Plan.

151. "Scheduled" with respect to any Claim, means listed on the Schedules.

152. "Schedules" mean the schedules of assets and liabilities, schedules of executory contracts, and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they have been and may be amended and supplemented from time to time.

153. "Secured Claim" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code in each case as of the Petition Date, to the extent that the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

154. "Shareholder New Value Contribution" means contribution provided by or caused to be provided by the Eletson Holdings Members (or affiliates thereof), consisting of (a) Cash and cash equivalents in an aggregate amount of $37 million and (b) the Collections Contribution.

155.    "SMEs" means each of Fourni Special Maritime Enterprises, Kastos Special Maritime Enterprises, Kimolos II Special Maritime Enterprise, and Kinaros Special Maritime Enterprise.

156.    "SME Revenue" means any excess cash on hand of each of the SMEs existing as of the Effective Date after subtracting therefrom (i) any amounts, as necessary to satisfy the projected operating expenses of the SMEs not otherwise reasonably expected to be satisfied by anticipated revenues of the SMEs (on a consolidated basis) through the SME Revenue Period; and (ii) $250,000 (on a consolidated basis).

157.    "SME Revenue Period" means the period beginning on the first Business Day after the Effective Date and ending one hundred and eighty (180) days later.

158.    "SME Vessels" means each of and collectively, the vessels known as the Fourni, Kastos, Kimolos, and Kinaros as operated by the SMEs.

159.    "Trade Creditor" means any creditor whose Claim has been Allowed and is not a creditor classified in Class 1, Class 2, Class 3, Class 5, Class 6A or Class 6B.

160.    "Trade Creditor Claim" means any Allowed General Unsecured Claim against the Debtors held by a Trade Creditor.

161.    "Trade Creditor Claim Cap" means $1,000,000.00.

162.    "Trade Creditor Claim Reserve" means a reserve created in the amount of the Trade Creditor Claim Cap to fund recoveries for Trade Creditor Claims.

163.    "Unclassified Claims" means those Administrative and Priority Claims described in Article II herein.

164.    "Unimpaired Claims" means Claims in an Unimpaired Class.

165.    "Unimpaired Class" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

166.    "United States Trustee" means the Office of the United States Trustee for Region 2.

167.    "United States Trustee Quarterly Fee" means the quarterly fees payable to the United States Trustee accrued over the course of these Chapter 11 Cases pursuant to 28 U.S.C. § 1930(a)(6).

168.    "Voting Class" means any class of Claims and Interests entitled to vote on the Plan.

169.    "Voting Deadline" means the date, as stated in the Voting Instructions, of August 9, 2024, at 4:00 p.m. prevailing Eastern Time for all Holders of Claims, which is the date and time by which all votes must be received in accordance with the procedures set forth in the

Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court by which all Ballots must be received.

170.    "Voting Instructions" mean the instructions for voting on the Plan contained in Article II of the Disclosure Statement entitled "Voting On and Confirmation of the Plan" and in the Ballots.

C.    *Exhibits*

All Exhibits to this Plan, if any, are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

## ARTICLE II.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

A.    *Classification*

The classification of Claims (except for Administrative Claims) and Interests listed below is for all purposes, including, without limitation, voting, confirmation and distributions under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent such Claim or Interest satisfies the definition of such Class and shall be deemed classified in a different Class to the extent any remainder or other portion of such Claim or Interest satisfies the definition of such different Class. NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR CLAIM OR INTEREST IS CLASSIFIED IN A CERTAIN CLASS FOR VOTING PURPOSES. A Claim is in a particular Class only to the extent such Claim is an Allowed Claim in such Class and has not been paid or otherwise settled before the Effective Date. The classification of Claims and Interests pursuant to this Plan is as follows:

|  |  | *Class* | *Status* |  | *Voting Rights* |
|---|---|---|---|---|---|
| Class 1 | — | OCM Guaranty Claims | Impaired | — | Entitled to vote |
| Class 2 | — | Corp Guaranty Claims | Impaired | — | Entitled to vote |
| Class 3 | — | Azure Guaranty Claims | Impaired | — | Entitled to vote |
| Class 4 | — | Trade Creditor Claims | Impaired | — | Entitled to vote |
| Class 5 |  | Noteholder Election Recovery Claims | Impaired | — | Entitled to vote |
| Class 6A | — | Non-Petitioning Creditor Exchange Note Claims | Impaired | — | Entitled to vote |

| Class 6B | — | Petitioning Creditor Exchange Note Claims | Impaired | — | Entitled to vote |
| Class 7 | — | Interests | Impaired | — | Entitled to vote |

B.    *Unclassified Claims: Administrative Claims*

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims shall not be classified for the purposes of voting or receiving distributions under this Plan. Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article II.B.

a.    Administrative Claims (other than Professional Fee Claims, DIP Claims or Committee Professional Fee Claims)

The Disbursing Agent shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims, DIP Claims and Committee Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the later of: (i) the occurrence of the Effective Date, or (ii) the date such Administrative Claim becomes an Allowed Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim may be paid on such other date or dates and upon such other less favorable terms as may be agreed upon by such Holder and the Disbursing Agent. Notwithstanding anything else herein, all United States Trustee Quarterly Fees payable to the United States Trustee under 28 U.S.C. § 1930 and any interest that accrues thereon under 31 U.S.C. § 3717 shall be paid in full on the Effective Date, or as soon as reasonably practicable thereafter. All fees that arise under 28 U.S.C. § 1930 and any interest that accrues thereon under 31 U.S.C. § 3717 after the Effective Date shall be paid in full when due until the Chapter 11 Cases are closed, dismissed, or converted, whichever occurs first. Notwithstanding any other provision herein, the United States Trustee shall not be required to file a proof of claim or a request for payment of United States Trustee Quarterly Fees.

b.    Professional Fee Claims and Committee Professional Fee Claims

Prior to the Effective Date, the Debtors may pay any Professional Fees (other than Committee Professional Fees) which the Bankruptcy Court has allowed pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code from the Petition Date through the Effective Date. Prior to the Effective Date the Debtors may pay any Committee Professional Fees for all Committee Professional Fee Claims which are allowable or allowed pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code from the Conversion Date through the Effective Date. From and after the Effective Date, the Disbursing Agent shall pay Professionals and the Committee Professionals the respective Professional Fees and the Committee Professional Fees awarded by Final Order of the Bankruptcy Court, as soon as practicable after the later of (i) the Effective Date, and (ii) within three (3) Business Days of entry of such Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases.

On the Effective Date, any objections previously filed to any applications for payment of the Professional Fees shall be deemed withdrawn (with prejudice) on the Effective Date.

Further, after the occurrence of the Effective Date, neither the Disbursing Agent, the Reorganized Debtor, the Litigation Trust, Litigation Trust Trustee nor the Litigation Trust Oversight Committee shall assert any objection to any Committee Professional Fee Claims.

Any final application for allowance of Professional Fee Claims and Committee Professional Fee Claims for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtors, counsel for the Litigation Trust, the Litigation Trust Trustee and on the United States Trustee at the addresses listed in Article XI.L of this Plan so that it is received no later than forty-five (45) days after the Effective Date. In the event an application for allowance of Professional Fee Claims and Committee Professional Fee Claims is not filed by the appropriate date, such Professional Fee Claims and Committee Professional Fee Claims shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Litigation Trust, the Litigation Trust Trustee and their successors, their assigns or their Assets. Allowed Professional Fee Claims and Committee Professional Fee Claims must be paid in full and Professional Fee Claims and Committee Professional Fee Claims pending allowance by the Bankruptcy Court must be reserved for in full prior to any payment to Holders of Allowed Claims in (a) Class 3 (Azure Guaranty Claims), (b) Class 4 (Trade Creditor Claims); (c) Class 5 (Noteholder Election Recovery Claims); (d) Class 6A (Non-Petitioning Creditor Exchange Note Claims); (e) Class 6B (Petitioning Creditor Exchange Note Claims); and (f) Administrative Claims.

       c.     DIP Claims

As of the Effective Date, the DIP Claims, if any, shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Documents, including principal, interest, fees and expenses.

Except to the extent that the Holder of an Allowed DIP Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim, each such Holder of an Allowed DIP Claim shall receive payment in full in Cash of such holders Allowed DIP Claim on the Effective Date, or as soon as reasonably practicable thereafter.

Immediately upon receipt of the payments set forth in this section, the DIP Documents shall be deemed cancelled. The DIP Agent and DIP Lenders shall take all actions to effectuate and confirm such termination and discharge as reasonably requested by the Debtors or Reorganized Debtor as applicable.

       d.     Administrative Claims and Substantial Contribution Claim Filing Deadline

Each Holder of an Administrative Claim (excluding Professional Fee Claims and Committee Professional Fee Claims that are not a substantial contribution claim) must file an Administrative Claim Request with the Bankruptcy Court prior to the Administrative Bar Date.

C.    *Treatment of Classified Claims*

1.    **Class 1 — OCM Guaranty Claims**

(a)    *Classification:* Class 1 consists of all OCM Guaranty Claims.

(b)    *Treatment*: The OCM Guaranty Claims are Allowed Claims. Except to the extent that a Holder of an Allowed OCM Guaranty Claim agrees to less favorable treatment, upon the occurrence of the Effective Date, or as soon as reasonably practicable thereafter and in full settlement, release, and satisfaction of, and in exchange for each OCM Guaranty Claim, each of the OCM Guarantees shall be reinstated in full force and effect and made effective as to the Reorganized Debtor unmodified in their terms without further action of the Debtors, Reorganized Debtor or OCM Entities, provided, however, that the Reorganized Debtor shall only be obligated to guaranty fifty percent (50%) of the obligations of the SMEs subject to the OCM Guarantees.

(c)    *Voting*: Class 1 is Impaired and the Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

2.    **Class 2 — Corp Guaranty Claims**

(a)    *Classification*: Class 2 consists of all Corp Guaranty Claims.

(b)    *Treatment*: The Corp Guaranty Claims are Allowed Claims. Except to the extent that a Holder of an Allowed Corp Guaranty Claim agrees to less favorable treatment, upon the occurrence of the Effective Date, or as soon as reasonably practicable thereafter and in full settlement, release, and satisfaction of, and in exchange for each Corp Guaranty Claim, (i) each holder of an Allowed Corp Guaranty Claim shall receive its pro rata distribution of the Eletson Corporation Guaranty Recovery and (ii) each of the Corp Guarantees shall be reinstated in full force and effect and made effective as to the Reorganized Debtor unmodified in their terms without further action of the Debtors, Reorganized Debtor or Corp Guaranty counterparties, provided, however, that the Reorganized Debtor shall only be obligated to guaranty fifty percent (50%) of the obligations of Eletson Corporation subject to the Corp Guarantees.

(c)    *Voting*: Class 2 is Impaired and the Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3.    **Class 3 — Azure Guaranty Claims**

(a)    *Classification*: Class 3 consists of the Azure Guaranty Claims.

(b)    *Treatment*: The Azure Guaranty Claims are Allowed Claims. Except to the extent that a holder of an Allowed Azure Guaranty Claim agrees to less favorable treatment, If not paid previously, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Azure Guaranty Claims, the Disbursing Agent

shall pay to the Holders of Azure Guaranty Claims, by wire transfer of immediately available funds, their Pro Rata portion of the Azure Guaranty Recovery.

(c)　　*Voting*: Class 3 is Impaired and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4.　　**Class 4 — Trade Creditor Claims**

(a)　　*Classification*: Class 4 consists of the Trade Creditor Claims.

(b)　　*Treatment*: The Trade Creditor Claims are Allowed Claims. Except to the extent that a Holder of an Allowed Trade Creditor Claim agrees to less favorable treatment, if not paid previously, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Trade Creditor Claims, each Holder of an Allowed Trade Creditor Claim shall receive, in exchange for such Allowed Trade Creditor Claim, Cash in an amount equal to 15% of the Face Amount of such Holder's Trade Creditor Claim from the Trade Creditor Claim Reserve; *provided*, that in the event the aggregate distributions to Holders of Trade Creditor Claims exceeds the Trade Creditor Claim Cap, Holders of Trade Creditor Claims shall receive their Pro Rata Share of the Trade Creditor Claim Cap.

(c)　　*Voting*: Class 4 is Impaired and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.　　**Class 5 — Noteholder Election Recovery Claims**

(a)　　*Classification*: Class 5 consists of all Allowed Noteholder Election Recovery Claims.

(b)　　*Treatment*: The Noteholder Election Recovery Claims are Allowed Claims. Claims may only be treated as Noteholder Election Recovery Claims upon the affirmative and irrevocable election of a Holder of a Claim classified in Class 6A or 6B to have their Claim treated in Class 5. Except to the extent that a Holder of an Allowed Noteholder Election Recovery Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Noteholder Election Recovery Claims, each Holder of an Allowed Noteholder Election Recovery Claim shall receive in exchange for such Noteholder Election Recovery Claim, Cash <u>from the Noteholder Election Recovery Reserve</u> in an amount equal to ~~3% of~~ the <u>lesser of (i) the</u> Face Amount of such Holder's Noteholder Election Recovery Claim ~~from the~~ <u>, (ii) such Holder's</u> Noteholder Election Recovery ~~Reserve, *provided*,~~ that in the event the ~~aggregate distributions to Holders of Allowed Noteholder Election Recovery Claims exceeds~~ <u>Claim's Pro Rata portion of</u> the Noteholder Election Recovery Cap, ~~Holders of~~

~~Noteholder Election Recovery Claims shall receive their Pro Rata Share of the Noteholder Election Recovery Cap~~or (iii) $70,000.

Notwithstanding the foregoing if the Bankruptcy Court determines that the existence of Class 5 and/or the Noteholder Election Recovery Claims violates any provisions of the Bankruptcy Code, Holders of Class 5 Noteholder Election Recovery Claims will be deemed to hold Claims under Class 6A or Class 6B in accordance with said Holder's original Claim classification.

(c)     *Voting:* Class 5 is Impaired and Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

6.     **Class 6A — Non-Petitioning Creditor Note Claims**

(a)     *Classification*: Class 6A consists of all Allowed Non-Petitioning Creditor Exchange Note Claims and Old Note Claims.

(b)     *Treatment*: The Non-Petitioning Creditor Note Claims are Allowed Claims.  Except to the extent that a Holder of an Allowed Non-Petitioning Creditor Note Claim agrees to less favorable treatment, each Holder of an Allowed Class 6A Claim shall receive in full settlement, release, and satisfaction of such Allowed Class 6A Claim that is due and payable, on the Effective Date, or as soon as reasonably practicable thereafter their Pro Rata portion of Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

(c)     *Voting*: Class 6A is Impaired and Holders of Class 6A Claims are entitled to vote to accept or reject the Plan.

7.     **Class 6B — Petitioning Creditor Exchange Note Claims**

(a)     *Classification*: Class 6B consists of all Allowed Petitioning Creditor Exchange Note Claims.

(b)     *Treatment*: The Petitioning Creditor Exchange Note Claims are Disputed Claims and may only become Allowed by Final Order of the Bankruptcy Court.  To the extent the Petitioning Creditor Exchange Note Claims are deemed Allowed Claims the Petitioning Creditor Exchange Note Claims are equitably subordinated pursuant to section 510(c) of the Bankruptcy Code and are only entitled to a recovery upon the satisfaction of all Claims in Class 6A.  In the event Petitioning Creditor Exchange Note Claims are found to be Allowed Claims and all Class 6A Non-Petitioning Creditor Exchange Note Claims are paid in full, and except to the extent that a Holder of an Allowed Petitioning Creditor Exchange Note Claim agrees to less favorable treatment, each Holder of an Allowed Class 6B Claim shall receive in full settlement, release, and satisfaction of such Allowed Class 6B Claim that is due and payable, on the Effective Date, or as soon as reasonably practicable thereafter their Pro Rata portion of the Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

Notwithstanding the foregoing, if the Bankruptcy Court determines it is unable to equitably subordinate the claims of Holders of Class 6B Claims through the Confirmation Order, Holders of Class 6B Claims will be deemed to hold claims under Class 6A and will be entitled to their Pro Rata portion of Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

(c)     *Voting*: Class 6B is Impaired and Holders of Class 6B Claims are entitled to vote to accept or reject the Plan.

8.      **Class 7 — Interests**

(a)     *Classification*: Class 7 consists of all Interests.

(b)     *Treatment*:   On the Effective Date, all Interests shall be discharged, cancelled, and extinguished.  In exchange for the Shareholder New Value Contribution, the Holders making such Shareholder New Value Contribution shall receive their pro rata share of equity of the Reorganized Debtor in a pro rata amount equal to their portion of the Shareholder New Value Contribution made.

(c)     *Voting*:  Class 7 is Impaired, and Holders of Interests are entitled to vote to accept or reject the Plan.

## ARTICLE III.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.     *Voting Classes*

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Holders of Claims in Class 1 (OCM Guaranty Claims), Class 2 (Corp Guaranty Claims) Class 3 (Azure Guaranty Claims), Class 4 (Trade Creditor Claims), Class 5 (Noteholder Election Recovery Claims) Class 6A (Non-Petitioning Creditor Exchange Note Claims), Class 6B (Petitioning Creditor Exchange Note Claims) and Class 7 (Interests) shall be entitled to vote to accept or reject this Plan.

B.     *Classes Presumed to Accept this Plan*

There are no Unimpaired Classes and no class is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

C.     *Acceptance by Impaired Classes*

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims and Interests actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims and Interests actually voting in such Class have voted to accept the Plan.

D.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

E.    *Non-Consensual Confirmation*

The Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code if any Voting Class fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code. The Debtors reserve the right (a) to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or (b) to modify the Plan in accordance with Article XI.K hereof.

F.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Implementation of the Plan and Sources of Consideration for Plan Distributions*

The Debtors and Reorganized Debtor as applicable will fund distributions and other sources and uses contemplated by the Plan with the Plan Consideration and the transfer and assignment of the Litigation Trust Assets to the Litigation Trust.

1.    **The Shareholder New Value Contribution**

The Debtors propose to implement and consummate this Plan on and after the Effective Date. Within ten (10) Business Days of entry of the Confirmation Order, the Eletson Members shall contribute, or cause to be contributed, to Eletson Holdings the full amount of the cash portion of the Shareholder New Value Contribution which shall be a contribution of Cash and cash equivalents in a total aggregate value of $37 million dollars.

The cash portion of the Shareholder New Value Contribution will be utilized as follows: *first*, for the payment of Administrative Claims including the Professional Fee Claims, DIP Claims (if any) and the Committee Professional Fee Claims including the funding any reserves

on account of the Professional Fee Claims and Committee Professional Fee Claims required by the terms of this Plan; *second*, to fund the Administrative Fund as set forth in Article IV.N; *third* to fund the Azure Guaranty Recovery; *fourth*, to fund the Eletson Corporation Guaranty Recovery, *fifth*, to fund the Trade Creditor Claim Reserve; *sixth*, to fund the Noteholder Election Recovery Reserve; and *seventh*, to fund the Litigation Trust.

The Collections Contribution constitutes an additional portion of the Shareholder New Value Contribution, and the Eletson Members shall cause the applicable Gas Ownership Defendant to direct the applicable portion of the Collections Contribution to the Litigation Trust within thirty (30) Business Days of the receipt of a final, non-appealable, determination payment in satisfaction of the Final Award.

2. **Distributable Cash**

Immediately upon the satisfaction of the payments provided for in Article IV A.1, the remaining cash portion of the Shareholder New Value Contribution shall become Distributable Cash which shall be transferred to the Litigation Trust in accordance with the terms of this Plan and the Litigation Trust Agreement.

3. **Excess SME Proceeds**

Beginning on January 31, 2025, and on July 31 and January 31 of each subsequent calendar year during the SME Excess Proceeds Period, the Reorganized Debtor shall transfer any SME Excess Proceeds for the immediately preceding six-month period to the Litigation Trust in accordance with the instructions provided to the Reorganized Debtor by the Litigation Trust Trustee. On each payment date the SME Excess Proceeds paid shall be accompanied with a reasonable accounting supporting the amounts of the Excess SME Proceeds transferred to the Litigation Trust. The Reorganized Debtor shall confer with the Litigation Trust Trustee with respect to any questions on the accounting and provide such information as the Litigation Trust Trustee shall reasonably request in connection therewith.

Neither the Litigation Trust nor Litigation Trust Trustee shall have any rights to direct the Reorganized Debtor in the operation and/or management of the SMEs after the Effective Date, during the Excess SME Revenue Period or otherwise. The Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee upon the execution of any letter of intent or other similar pre-sale documents entered into by the Reorganized Debtor or any affiliate of the Reorganized Debtor and any potential purchaser with respect to any SME and/or SME Vessels within ten (10) Business Days of execution of such document. In the event a sale is ultimately consummated, the Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of the consummation of such sale. The Litigation Trust shall have no right to direct, comment or impede any sale of any SME and/or SME Vessel by the Reorganized Debtor. The Litigation Trust and Litigation Trust Trustee as applicable are not, and are not intended to be, third party beneficiaries of any contract of sale, and are provided with no additional rights and/or standing to object to the terms of any sale of any SME or SME Vessel pursuant to the terms of this Plan. For the avoidance of doubt the Reorganized Debtor is not

required to consummate any sale of the SMEs or SME Vessels during the Excess SME Proceeds Period.

Unless the Reorganized Debtor and the Litigation Trust and Litigation Trust Trustee agree otherwise in writing, the Bankruptcy Court shall retain sole jurisdiction to resolve any dispute regarding the payment of the Excess SME Proceeds, the accounting supporting the Excess SME Proceeds, and/or the refund of any Excess SME Proceeds during the Excess SME Proceeds Period.

Upon the earlier of (i) the expiration of the Excess SME Proceeds Period or (ii) the Litigation Trust having received Excess SME Cash Flow Proceeds of $5 million in the aggregate and Excess SME Sale Proceeds of $5 million in the aggregate, the obligations of the Reorganized Debtor related to the Excess SME Proceeds hereunder, and any reporting obligations to the Litigation Trust related thereto shall cease, and the Reorganized Debtor shall have no further obligations related to the Excess SME Proceeds, and the Litigation Trust shall have no right or claim to any further Excess SME Proceeds. In the event the Excess SME Proceeds transferred to the Litigation Trust exceed (i) $5 million in the aggregate on account of the Excess SME Cash Flow Proceeds or (ii) $5 million in the aggregate on account of the Excess SME Sale Proceeds, the Litigation Trust shall within ten (10) Business Days of written notice of such over payment by the Reorganized Debtor, refund to the Reorganized Debtor the portion of the actually paid Excess SME Proceeds exceeding the thresholds in clauses (i) and (ii) above in accordance with the instructions provided to the Litigation Trust by the Reorganized Debtor.

4.    **Litigation Trust Causes of Action**

On the Effective Date the Debtors shall fully and finally transfer and or assign each of the Litigation Trust Causes of Action and the applicable Litigation Trust Privileges to the Litigation Trust.

Litigation Trust Distributable Proceeds will be obtained from the Distributable Cash and the Litigation Trust Causes of Action, and Plan Consideration as applicable. Unless otherwise specified herein, Cash payments to be made pursuant to the Plan will be made by the applicable Disbursing Agent.

B.    *Substantive Consolidation*

1.    **Order Granting Plan Consolidation**

Unless and to the extent previously approved by a prior order of the Bankruptcy Court, at the Confirmation Hearing, the Bankruptcy Court will consider approval under the Plan of the Plan Consolidation.

2.    **Plan Consolidation**

The Consolidating Debtors are holding companies that were formed for the express purpose of issuing the Exchange Notes. Pursuant to the Exchange Notes Indenture, the Consolidating Debtors are prohibited from holding or maintaining any assets. As the Exchange Notes and the claims related thereto will be discharged after the confirmation of these Chapter 11

Cases, the Debtors maintain there is no reason for the continued existence of the Consolidating Debtors. As such, the Consolidating Debtors will be consolidated into the Reorganized Debtor for the convenience of all parties, and with no impact to any operations, distributions, assets or rights of any party in interest or the Reorganized Debtor.

Upon the Effective Date, the Consolidating Debtors shall be consolidated for all purposes into the Reorganized Debtor and (i) all assets and liabilities of the Consolidating Debtors shall be consolidated and merged into Eletson Holdings, (ii) all guarantees of any Consolidating Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Consolidating Debtor, any guaranty thereof executed by either of the Consolidating Debtors and any joint or several liability of either of the Consolidating Debtors shall be one obligation of Eletson Holdings and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against any Debtor shall be deemed filed against Eletson Holdings and shall be one Claim against, and if to the extent allowed, shall become one obligation of Eletson Holdings; provided further, the consolidation shall also limit the rights of a creditor to assert that its Claim is secured by a right of setoff under section 553 of the Bankruptcy Code, and the Debtors will be deemed, for purposes of any Claims or determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, such that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to any of the Consolidating Debtors shall be offset against Claims against another Debtor. The substantive consolidation provided for in this section shall not affect the obligations of each and every Debtor to pay fees to the United States Trustee that may have come due prior to the Effective Date.

Pursuant to Bankruptcy Rule 9019 and any applicable state law and as consideration for the distributions and other benefits provided under the Plan, the provisions of this section shall constitute a good faith compromise and settlement of any Causes of Action or disputes that could be brought by a Holder of a Claim or Interest asserting that such Claim or Interest would have received more favorable treatment had substantive consolidation not been effected. This compromise and settlement is in the best interests of Holders of Claims and Interests and is fair, equitable and reasonable. Upon Confirmation of the Plan, the Plan shall be approved as a settlement of all such Causes of Action and disputes. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this settlement pursuant to Bankruptcy Rule 9019 and its finding that this is a good faith settlement pursuant to any applicable state laws, given and made after due notice and opportunity for hearing, and shall bar any such Cause of Action by any Holder of a Claim or Interest with respect to the matters described in this section.

C.      *Corporate Existence*

Except as otherwise provided in the Plan (including with respect to any Restructuring Transaction undertaken pursuant to the Plan), the Reorganized Debtor Organizational Documents, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each Debtor shall be deemed to merge with and into the Reorganized Debtor, with the Reorganized Debtor being the sole surviving entity and the separate existence of the Consolidating Debtors shall cease and only the Reorganized Debtor shall continue to exist and as a separate corporation, with all the powers of a corporation pursuant to the applicable Liberian law and pursuant to the respective certificate of incorporation and bylaws in effect before the Effective Date, except to the extent such certificate of

incorporation and bylaws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal, country of incorporation, or applicable foreign law).

D.     *Vesting of Assets in the Reorganized Debtor*

Except for the Litigation Trust Causes of Action and Plan Consideration as applicable as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Litigation Trust Agreement), on the Effective Date, pursuant to the Plan all property in each Estate and any property acquired by any of the Debtors, including Intercompany Interests held by the Debtors in non-Debtor subsidiaries, shall revest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.     *Dissolution of the Committee*

Upon the Effective Date, the Committee shall dissolve automatically whereupon its members, Committee Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code for Committee Professional Fee Claims; (iii) any pending motions or proceedings to which the Committee is a party (including any related appeals in connection therewith); and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order, including related appeals.  The Committee members and the Committee Professionals shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with the items listed in the preceding sentence after the Effective Date.

F.     *Reorganized Debtor Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, on the Effective Date, the Reorganized Debtor will file such Reorganized Debtor Organizational Documents as are required to be filed with the applicable authorities in the state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtor may amend and restate the Reorganized Debtor Organizational Documents, and the Reorganized Debtor may file the certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent

documents as permitted by the laws of the country of incorporation and the Reorganized Debtor Organizational Documents.

G.    *Appointment of Directors and Officers of the Reorganized Debtor*

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, in the Plan Supplement the identity and any affiliations of any Person proposed to serve on as a Director or officer of the Reorganized Debtor, which appointments shall be confirmed in the Confirmation Order. To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

H.    *Creation of the Litigation Trust*

This Plan contemplates the transfer of the Litigation Trust Assets into the Litigation Trust for distribution of the Litigation Trust Distributable Proceeds to Holders of Litigation Trust Interests.

Prior to the Effective Date, the Debtors and the Litigation Trust Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Plan, which shall be for the benefit of the Litigation Trust Beneficiaries. Additionally, on the Effective Date the Debtors shall transfer and/or assign and shall be deemed to transfer and/or assign to the Litigation Trust all of their rights, title and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to (a) Litigation Trust Interests and (b) the Litigation Trust Expenses as provided for in this Plan and the Litigation Trust Agreement. Also on the Effective Date, subject to, in all respects, the terms of the Litigation Trust Agreement, all Litigation Trust Privileges shall transfer to and vest exclusively in the Litigation Trust.

The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trust Trustee. The powers, rights, and responsibilities of the Litigation Trust Trustee shall be specified in the Litigation Trust Agreement. The Litigation Trust Trustee shall hold and distribute the Litigation Trust Assets in accordance with the Plan and the Litigation Trust Agreement. Other rights and duties of the Litigation Trust Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement.

After the Effective Date, the Debtors and the Reorganized Debtor shall have no interest in the Litigation Trust Assets except to the extent set forth in this Plan and the Litigation Trust Agreement. To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Reorganized Debtor and the Litigation Trust Trustee or Litigation Trust as applicable shall be deemed to have been designated as a representative of the Reorganized Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Reorganized Debtor for the benefit of the Litigation Trust Beneficiaries.

Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed in accordance with this Plan.

The Litigation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Litigation Trust Trustee and to ensure the treatment of the Litigation Trust as a liquidation trust for federal income tax purposes, all consistent with this Plan.

Notwithstanding anything in this Plan to the contrary, the Reorganized Debtor shall have no obligation to provide any funds or financing to the Litigation Trust, other than the obligation to contribute the Litigation Trust Assets and the initial funding of the Administrative Fund, and under no circumstances will the expenses of the Litigation Trust be paid or reimbursed by the Debtors or the Reorganized Debtor, as applicable.

The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest may extend the term of the Litigation Trust if it is necessary to facilitate or complete the distribution of the Litigation Trust Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Litigation Trust Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidation trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

I.      *Transfer of Assets and the Litigation Trust Causes of Action to the Litigation Trust*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Litigation Trust is intended to be treated as a "liquidating trust" for U.S. federal income tax purposes pursuant to Treasury Regulation section 301-7701-4(d), and the Litigation Trust Trustee will take this position on the Litigation Trust's tax return accordingly. The Litigation Trust Beneficiaries shall be treated as the grantors of the Litigation Trust and as the deemed owners of the Litigation Trust Assets. For U.S. federal income tax purposes, the transfer of assets to the Litigation Trust will be deemed to occur as (a) a first-step transfer of the Litigation Trust Assets to the Litigation Trust Beneficiaries, and (b) a second-step transfer by Litigation Trust Beneficiaries. As a result, the transfer of the Litigation Trust Assets to the Litigation Trust should be a taxable transaction, and the Debtors or the Reorganized Debtor should recognize gain or loss equal to the difference between the tax basis and fair value of such assets. As soon as possible after the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust Trustee shall make a good faith valuation of the Litigation Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors or the Reorganized Debtor, Litigation Trust Trustee, and the Holders of Claims receiving Litigation Trust Interests shall take consistent positions with respect to the valuation of the Litigation Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

J.    *Liabilities of the Litigation Trust*

The liabilities transferred to the Litigation Trust shall include all Litigation Trust Interests and the Litigation Trust Expenses.

In accordance with Article IV.I, the Debtors will transfer the Litigation Trust Assets to the Litigation Trust to make the payments required to Litigation Trust Beneficiaries pursuant to the Plan and the Litigation Trust Agreement.

K.    *Appointment of the Litigation Trust Trustee and Members of the Litigation Trust Oversight Committee*

The Committee shall appoint the Litigation Trust Trustee who shall have the power to administer the Litigation Trust and will be advised by the Litigation Trust Oversight Committee as specified in this Plan and the Litigation Trust Agreement.  For the avoidance of doubt the members of the Litigation Trust Oversight Committee will be appointed by the Committee pursuant to the terms of the Litigation Trust Agreement.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, in the Plan Supplement, and with the consent and approval of the Committee, the identity and any affiliations of the Litigation Trust Trustee and any Person proposed to serve on the Litigation Trust Oversight Committee, which appointments shall be confirmed in the Confirmation Order.  To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

The Debtors and the Litigation Trust Trustee shall enter into a Litigation Trust Agreement in substantially the form which shall be filed with the Bankruptcy Court with the Plan Supplement.  On the Effective Date, and upon the establishment of the Litigation Trust the Litigation Trust Trustee shall succeed in all respects to all of the rights, privileges and immunities of the Debtors in regard to the Litigation Trust Causes of Action and the Litigation Trust Privileges and shall be appointed as the sole party with standing to pursue Litigation Trust Causes of Action on behalf of the Debtors as of the Effective Date.  The Litigation Trust Trustee, and his/her successors, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the Litigation Trust, and (c) the payment of the final distributions to Holders of Litigation Trust Interests pursuant to the Plan; or (ii) the expiration of the term of such Litigation Trust Trustee's employment agreement or such Litigation Trust Trustee's resignation, death, incapacity, removal or termination by the Litigation Trust Oversight Committee pursuant to the Litigation Trust Agreement or order of the Bankruptcy Court. Notwithstanding the foregoing, the Debtor Privileges will not transfer to the Litigation Trust and shall remain solely in the possession of the Debtors or Reorganized Debtor as applicable.

As set forth herein, the pursuit and collection of the Litigation Trust Causes of Action and distribution of the proceeds thereof to the Litigation Trust Beneficiaries shall become the responsibility of the Litigation Trust Trustee who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property of the Litigation Trust free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the terms of the Plan and the Litigation Trust Agreement.

Upon creation of the Litigation Trust, the Litigation Trust Trustee shall be the trustee of the Litigation Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the Litigation Trust.

L.    *Cooperation and Privilege*

To effectively investigate, prosecute, compromise, and/or settle the Litigation Trust Causes of Action on behalf of the Litigation Trust, the Litigation Trust Trustee and its counsel and representatives may require reasonable access to documents and information exclusively relating to the Litigation Trust Causes of Action in the possession of the Debtors, the Reorganized Debtor, and/or the Committee. Accordingly, the Litigation Trust Agreement shall provide for the Litigation Trust Trustee's reasonable access to the Debtors' records and information (which shall be maintained by the Reorganized Debtor) and the Committee's records and information, each of which relating to the Litigation Trust Causes of Action, including electronic records or documents, as further detailed in, and subject in all respects to, the Litigation Trust Agreement. The Litigation Trust Agreement shall also provide that as of the Effective Date, and subject in all respects to the terms of the Litigation Trust Agreement, the Litigation Trust Privileges, and privileges held by the Committee (if any) shall transfer to and vest exclusively in the Litigation Trust, and that the Reorganized Debtor shall preserve all of the Debtors' records and documents (including all electronic records or documents) exclusively related to the Litigation Trust Causes of Action and Litigation Trust Privileges for the later of a period of three (3) years after the Effective Date or until such later time as the Litigation Trust Trustee notifies the Reorganized Debtor in writing that such records are no longer required to be preserved.

M.    *Duties of the Litigation Trust Trustee*

In addition to the duties set forth elsewhere in this Plan, the Litigation Trust Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee as set forth more specifically in the Litigation Trust Agreement, and herein, shall have the following duties:

1.    to manage, control and operate the Litigation Trust;

2.    to investigate and, if necessary and appropriate, to prosecute and enforce (or not prosecute or enforce), or to compromise, release or settle any Litigation Trust Causes of Action on behalf of the Estate and the Litigation Trust without further approval of or application to the Bankruptcy Court;

3.    to invest any Cash and Litigation Trust Assets;

4.    to file any and all reports, pleadings, tax returns and other documents;

5.    to pay any and all distributions required or permitted to be made under this Plan;

6.    to pay out of the Litigation Trust any and all Claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all

Post-Confirmation Expenses accruing from and after the Effective Date in accordance with the Administrative Budget;

7.      to employ, supervise and compensate any employees of the Litigation Trust;

8.      to make and file tax returns for the Litigation Trust;

9.      act as the Disbursing Agent to Holders of Class 6A Claims in accordance with the terms of this Plan, and in such capacity shall (i) disburse all Cash held by the Litigation Trust to the Holders of Class 6A Claims in any amount in excess of $1 million over the then current budgeted needs of the Litigation Trust pursuant to the Administrative Budget within forty-five (45) days of the Effective Date and at least semi-annually thereafter, (ii) within ten (10) days upon receipt of any Excess SME Proceeds disburse to Holders of Class 6A Claims one hundred percent of such Excess SME Proceeds, and (iii) within ten (10) days upon receipt of any portion of the Collections Contribution disburse to Holders of Class 6A Claims one hundred percent of such Collections Contribution;

10.      to commence and pursue dissolution or winding up of proceedings for the Litigation Trust;

11.      to file, prosecute, compromise and settle objections to Claims after the Effective Date other than Administrative Claims or Claims seeking administrative allowance;

12.      to prepare and deliver to the Litigation Trust Oversight Committee for approval the Administrative Budget of the Litigation Trust and any amendments or modifications thereto; and

13.      to request the entry of a Final Decree.

In connection with the execution of his or her duties under this Plan, the Litigation Trust Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee as set forth more specifically in the Litigation Trust Agreement and herein, shall be authorized:

1.      to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his or her duties as a trustee of the Litigation Trust, including to execute such documents and take such other action on behalf of the Litigation Trust;

2.      to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

3.      to retain and pay professionals (including the Professionals or the Committee Professionals) or other Persons to assist the Litigation Trust Trustee in the administration of the Litigation Trust, without prior Bankruptcy Court approval;

4.      to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his or her duties as Litigation Trust Trustee;

5.                    to compromise, release or settle any Disputed Claim or Litigation Trust Cause of Action or to sell or dispose of any Litigation Trust Asset; and

6.                    to employ such other procedures, not inconsistent with this Plan, necessary for the Litigation Trust Trustee to perform his or her duties hereunder (including, without limitation, to borrow funds to pursue the Litigation Trust Causes of Action under terms in its sole discretion).

The Litigation Trust Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Litigation Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code (including, without limitation, commencing, prosecuting or settling Litigation Trust Causes of Action and asserting claims, defenses, offsets and privileges arising from the Litigation Trust Privileges), to the extent not inconsistent with this Plan. In discharging the foregoing responsibilities, the Litigation Trust Trustee shall be entitled to exercise and rely upon his or her business judgment in consultation with the Litigation Trust Oversight Committee. The Litigation Trust Trustee shall not be obligated to take any action or to pursue any Litigation Trust Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Litigation Trust Trustee be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the generality of the foregoing, the Litigation Trust Trustee may consider the interests of Holders of Allowed Class 6A Claims and Class 6B Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment. Such authorization and benefits shall also extend to any, each and every successor Litigation Trust Trustee, without reservation or limitation.

The Litigation Trust Trustee, at the direction of the Litigation Trust Oversight Committee, may expend the Cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during the administration thereof, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee Quarterly Fees, Litigation Trust Trustee fees, professional fees, and taxes imposed on the Litigation Trust), and (c) to satisfy other respective liabilities incurred by the Litigation Trust in accordance with the Plan or the Litigation Trust Agreement.

N.    *Post Confirmation Expenses*

Prior to the Effective Date, the Committee shall provide the Administrative Budget (with the consent of the Debtors, not to be unreasonably withheld) for services to be rendered to the Litigation Trust, which Administrative Budget may be altered from time to time by the Litigation Trust Trustee with the consent of the Litigation Trust Oversight Committee in accordance with the Litigation Trust Agreement. The Litigation Trust Oversight Committee shall approve in advance the Litigation Trust Trustee's retention of professionals and their compensation arrangements.

On the Effective Date, the Litigation Trust Trustee shall establish the Administrative Fund. The initial amount of the Administrative Fund shall be based on the Litigation Trust

Trustee's good faith estimate of the cost necessary to complete the Litigation Trust's obligations under this Plan and the Litigation Trust Agreement and will include the amount budgeted for the Litigation Trust's professionals provided, however, the initial Administrative Fund shall not exceed the amount of $200,000 necessary to commence and/or pursue and Litigation Trust Causes of Action as of the Effective Date. The Litigation Trust shall pay all Litigation Trust Expenses related to carrying out its obligations under this Plan and the Litigation Trust Agreement from the Administrative Fund and, in the Litigation Trust Trustee's discretion, and with approval of the Litigation Trust Oversight Committee, may add additional amounts of Cash held by the Litigation Trust to the Administrative Fund to further the prosecution of the Litigation Trust Causes of Action or for administration and other miscellaneous needs of the Litigation Trust without further notice or motion in accordance with the terms of the Litigation Trust Agreement.

The reasonable and necessary fees and actual and necessary expenses of the Litigation Trust Trustee, the Litigation Trust Oversight Committee and the professionals retained by the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall be paid solely by the Litigation Trust Trustee in accordance with the terms of such respective Person's employment with the Litigation Trust.

O.     *Liability; Indemnification*

Neither the Litigation Trust Trustee nor any member of the Litigation Trust Oversight Committee shall be liable for any act or omission taken or omitted to be taken in his or her capacity as Litigation Trust Trustee or as a member of the Litigation Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Litigation Trust Trustee's or Litigation Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Litigation Trust Trustee and the Litigation Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be.

Notwithstanding such authority, the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Litigation Trust shall indemnify and hold harmless the Litigation Trust Trustee, the Litigation Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Litigation Trust Trustee or the Litigation Trust

Oversight Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by Final Order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

P.     *Litigation Trust Oversight Committee*

On the Effective Date, the Litigation Trust Oversight Committee shall have the duties set forth herein to maximize distributions to Litigation Trust Beneficiaries. On the Effective Date, the Litigation Trust Oversight Committee shall be entitled to the rights, powers, immunities and privileges of the Committee.

The Litigation Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan. Additionally, the Litigation Trust Oversight Committee shall have the following rights and duties:

1.     to approve any release or indemnity in favor of any third party granted or agreed to by the Litigation Trust Trustee;

2.     to authorize the Litigation Trust Trustee to commence any Litigation Trust Cause of Action;

3.     to approve the settlement of any Litigation Trust Cause of Action and to approve any application by the Litigation Trust Trustee for an order in connection with any such settlement;

4.     to review all financial information relating to the Litigation Trust (including any quarterly reports required by the Office of the United States Trustee), which shall be promptly provided by the Litigation Trust Trustee upon request by the Litigation Trust Oversight Committee;

5.     to monitor distributions to Holders of Litigation Trust Interests;

6.     to take such other actions as it deems necessary and appropriate with respect to the implementation of the Plan;

7.     to approve the Litigation Trust Trustee's retention of professionals;

8.     to remove the Litigation Trust Trustee in accordance with the procedures in the Litigation Trust Agreement; and

9.     to approve the Administrative Budget after the Effective Date.

The duties and powers of the Litigation Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the Litigation Trust,

and (iii) the payment of the final distributions to Holders of Litigation Trust Interests pursuant to this Plan.

The Litigation Trust Oversight Committee shall have the right, but shall not be required, to retain counsel of its choice, and the reasonable and necessary fees and expenses of such counsel shall be paid by the Litigation Trust from the Administrative Fund. The reasonable and necessary fees and expenses of counsel to the Litigation Trust Oversight Committee shall be paid in accordance with the Litigation Trust Agreement.

Q.    *Good Faith*

Each of the Litigation Trust Trustee and Litigation Trust Oversight Committee shall act in good faith in carrying out its duties and responsibilities and use its best efforts to pursue or settle the Litigation Trust Causes of Action and maximize the value of the Litigation Trust Assets and minimize claims against the Litigation Trust.

R.    *Saturday, Sunday or Legal Holiday*

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

S.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

T.    *Issuance of Documents Necessary to Consummate the Plan*

On or as soon as practicable after the Effective Date, the Debtors shall execute and deliver such other agreements, documents and instruments, as necessary to effectuate the Plan.

U.    *Final Decree*

Upon the Litigation Trust Trustee's determination that all Litigation Trust Causes of Action held by the Litigation Trust or the Litigation Trust Trustee, as applicable, have been finally resolved, transferred, or abandoned, the Litigation Trust shall move for the entry of a Final Decree pursuant to section 350 of the Bankruptcy Code closing the Chapter 11 Cases. The Litigation Trust may request the entry of the Final Decree notwithstanding the fact that not all Litigation Trust Assets have been monetized and distributed to Litigation Trust Beneficiaries.

## ARTICLE V.

### RETAINED CAUSES OF ACTION

A.    *Maintenance of Causes of Action*

Except as otherwise provided in the Plan, the Litigation Trust shall retain all rights on behalf of the Debtors and the Estates to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Litigation Trust Causes of Action transferred to the Litigation Trust.  The Reorganized Debtor shall retain all rights to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Retained Causes of Action.

Except as otherwise provided in the Plan, upon the Effective Date and subject to the terms of the Litigation Trust Agreement in accordance with section 1123(b)(3) of the Bankruptcy Code, the Litigation Trust Causes of Action shall vest in the Litigation Trust.  The Litigation Trust Trustee, on behalf of the Litigation Trust, shall retain and may exclusively enforce any and all Litigation Trust Causes of Action, and commence, pursue and settle the Litigation Trust Causes of Action in accordance with this Plan and the Litigation Trust Agreement as applicable, subject to the advice of counsel and the consent of the Litigation Trust Oversight Committee.  The Litigation Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Litigation Trust Causes of Action without the consent or approval of any third party and without any further order of court subject to the advice of counsel and the consent of the Litigation Trust Oversight Committee as required by the Litigation Trust Agreement.

B.    *Preservation of Causes of Action*

Except as otherwise expressly provided in this Plan, from and after the Effective Date, unless expressly designated as a Litigation Trust Cause of Action, the Reorganized Debtor shall maintain and may litigate or settle any Retained Causes of Action, including the recovery or subordination actions under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 of the Bankruptcy Code or any other Causes of Action or rights to payments or claims that belong to the Debtors.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, no other Person may pursue any such Avoidance Actions, recovery or subordination actions or other Causes of Action that belong to the Debtors, Reorganized Debtor or the Litigation Trust as applicable, unless otherwise provided by order of the Bankruptcy Court.

To the extent any Claim or Cause of Action has not independently been reviewed by the Independent Committee and/or otherwise settled prior to the Effective Date, and such Claim or Cause of Action is designated a Litigation Trust Cause of Action, the Litigation Trust Trustee shall perform an independent investigation regarding whether such Litigation Trust Cause of Action, shall be investigated or pursued.  It is possible that there may be other Causes of Action which currently exist or may subsequently arise but relate to facts and circumstances arising prior to the Effective Date that are not set forth herein, because the facts upon which such Causes

of Action are based are not fully or currently known by the Debtors and, as a result, cannot be specifically referred to herein (collectively, the "Unknown Causes of Action"). Within twenty (20) Business Days of the discovery of the facts and circumstances underlying an Unknown Cause of Action, the Independent Committee shall notify the Committee or Litigation Trust Trustee as applicable of the existence of said Unknown Cause of Action, and the Independent Committee and Committee or Litigation Trust Trustee as applicable shall confer and make a determination of whether such Unknown Cause of Action will be transferred to the Litigation Trust as a Litigation Trust Cause of Action. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over any dispute between the Independent Committee and the Committee or Litigation Trust Trustee as applicable regarding the ownership of a discovered Unknown Cause of Action such that ownership of said discovered Unknown Cause of Action complies with the terms of this Plan.

C.      *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Claim or Cause of Action against a Creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Claim or Cause of Action for later adjudication unless transferred to the Litigation Trust, (including, without limitation, Unknown Causes of Action), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been released in the Plan or other Final Order. In addition, the Debtors, the Litigation Trust and any successor entities under the Plan as applicable expressly reserve the right to pursue or adopt any Claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from Debtors or a transfer of money or property from the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Litigation Trust, as applicable, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a Proof of Claim against the Debtors in these Bankruptcy Cases; (ii) such Creditor's Proof of Claim has been objected to; *provided, however*, that the Litigation Trust may not file an objection to a Claim if such Creditor's Proof of Claim has previously been objected to; (iii) such Creditor's Claim was included in the Debtors' Schedules; or (iv) such Creditor's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

D.      *Retained Causes of Action and Retained Causes of Action Contribution*

On or before the expiration of any applicable statute of limitation, the Reorganized Debtor may initiate any Retained Causes of Action in any appropriate court of competent jurisdiction. Neither the Litigation Trust nor Litigation Trust Trustee shall have any rights to

direct the Reorganized Debtor in the pursuit or settlement of the Retained Causes of Action. Beginning on the six-month anniversary of the Effective Date and every six months thereafter, the Reorganized Debtor shall provide the Litigation Trust and the Litigation Trust Trustee a report on the status of the pursuit of any Retained Causes of Action. The Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of any proposed settlement of any Retained Cause of Action. In the event of a successful collection of any Retained Cause of Action the Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of the collection made thereon. The Litigation Trust and Litigation Trust Trustee as applicable are not, and are not intended to be, third party beneficiaries of the proceeds of any Retained Causes of Action, and are provided with no additional rights and/or standing to object to the terms of any litigation strategy or proposed settlement of any Retained Causes of Action pursuant to the terms of this Plan. For the avoidance of doubt the Reorganized Debtor is not required to pursue or settle any Retained Causes of Action.

Within ten (10) Business Days of receipt of any Retained Causes of Action Contributions arising from the final, non-appealable prosecution of a Retained Cause of Action or the settlement of a Retained Cause of Action, the Reorganized Debtor shall transfer the applicable Retained Causes of Action Contributions to the Litigation Trust in accordance with the instructions provided by the Litigation Trust Trustee. Each payment of the Retained Causes of Action Contributions paid shall be accompanied with a reasonable accounting supporting the amounts of the Retained Causes of Action Contributions transferred to the Litigation Trust.

Upon the resolution of all Retained Causes of Action any reporting obligations of the Reorganized Debtor to the Litigation Trust regarding the prosecution and/or settlement of any Retained Causes of Action shall cease, and the Reorganized Debtor shall have no further obligations related to the Retained Causes of Action Contributions, and the Litigation Trust shall have no right or claim to any proceeds of any Causes of Action retained by the Debtors. In the event the any Retained Causes of Action Contribution transferred to the Litigation Trust exceed seventy-five percent (75%) of the net cash recoveries of the applicable Retained Cause of Action, within ten (10) Business Days of written notice of such over payment by the Reorganized Debtor, the Litigation Trust shall refund the Reorganized Debtor the portion of the actually paid Retained Cause of Action Contributions exceeding net cash recovery threshold set forth in this Plan.

Unless the Reorganized Debtor and the Litigation Trust and Litigation Trust Trustee agree otherwise in writing, the Bankruptcy Court shall retain sole jurisdiction to resolve any dispute regarding the payment of the Retained Causes of Action Contributions, the accounting supporting the Retained Causes of Action Contributions, and the refund of any overpayments of Retained Causes of Action Contributions.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.    *Rejection of Executory Contracts or Unexpired Leases*

On the Effective Date, except for any executory contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, each executory contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code §§ 365 and 1123, effective as of the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code §§ 365 and 1123 as of the Confirmation Date.

B.    *Rejection Damages Bar Date*

Except to the extent another Claims Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Bankruptcy Court, and a copy served on counsel for the Debtors, the Reorganized Debtor and the Litigation Trust Trustee, within fifteen (15) days of the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Reorganized Debtor, the Litigation Trust, the Litigation Trust Trustee, their successors, their assigns or their Assets.  Any timely filed Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 4 (Trade Creditor Claims).  Nothing in this Plan extends or modifies any previously applicable Claims Bar Date.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Disbursing Agent*

1.    **Litigation Trust Trustee as Disbursing Agent for Class 6A Claims and Class 6B Claims**

The Reorganized Debtor shall be the Disbursing Agent for any payments made to parties other than creditors that shall receive Litigation Trust Interests and shall make all required distributions to such creditors pursuant to this Plan.  The Litigation Trust Trustee shall be the Disbursing Agent for creditors that shall receive Litigation Trust Interests and shall make all required distributions to such creditors pursuant to Article IV.M.9 of this Plan.

2.    **Alternative Disbursing Agent Qualification**

Other than as set forth in this Plan, after the Effective Date no Person other than the Litigation Trust Trustee (or the Reorganized Debtor to the extent any applicable disbursement to be made by the Reorganized Debtor as Disbursing Agent could not be effected on the Effective

Date) shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Litigation Trust Trustee consents in writing to that Person serving as Disbursing Agent, and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his or her duties as the Disbursing Agent under this Plan or order of the Bankruptcy Court.

B.     *Time and Manner of Distributions*

The Disbursing Agent shall make Distributions under the Plan on account of Claims Allowed on the Effective Date or as soon as practicable after the Effective Date, except as otherwise agreed to by the Litigation Trust Oversight Committee or by order of the Bankruptcy Court. The Litigation Trust Trustee as Disbursing Agent shall have the power, subject to Litigation Trust Oversight Committee consent, to make interim distributions to Litigation Trust Beneficiaries in accordance with this Plan if the Litigation Trust Trustee determines that such interim distributions are warranted and economical. If the Litigation Trust Trustee determines to make interim distributions to Litigation Trust Beneficiaries, the Litigation Trust Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Litigation Trust Causes of Action. Amounts withheld will be placed in an interest-bearing account, which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Litigation Trust Causes of Action, if any.

At the option of the Disbursing Agent, except as otherwise provided in this Plan, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole dollar when and as necessary). Any distribution of less than $50.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $50.00 will not receive any distribution unless and until the aggregate of such distributions exceed $50.00. Such undistributed funds shall remain with and vest in the Litigation Trust for distribution to other Holders of Allowed Claims.

C.     *Interest on Claims*

Except as otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim unless all Claims have been paid in full in cash.

D.     *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Litigation Trust and Litigation Trust Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed

Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

E. *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1. **Delivery of Distributions in General**

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the applicable Disbursing Agent (i) at the addresses set forth on the Proof of Claim or Interest filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim or Interest is filed or the Debtors and the Litigation Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Litigation Trust Trustee or the Debtors as applicable after the date of any related Proof of Claim or Interest, or (iii) at the addresses reflected in the Schedules if no Proof of Claim or Interest has been filed and the Litigation Trust Trustee or the Debtors have not received a written notice of a change of address.

2. **Undeliverable Distributions**

a. Holding of Undeliverable Distributions.

If any distribution to a Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until notification in writing of such Holder's then-current address is provided. Undeliverable distributions shall be returned and shall remain in the possession of the Litigation Trust until such time as a distribution becomes deliverable. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Litigation Trust shall make all distributions that become deliverable.

b. Failure to Claim Undeliverable Distributions.

Any Holder of an Allowed Claim (irrespective of when a Claim became an Allowed Claim) that does not assert a Claim pursuant hereto for an undeliverable distribution (regardless of when not deliverable) within ninety (90) days after the distribution has been attempted to be made to the Holder of the Allowed Claim shall have its Claim related to such undeliverable distribution satisfied and shall be forever barred from asserting any such Claim against the Litigation Trust or be entitled to a further distribution. In such cases, any Cash held for distribution on account of such Claims shall be the property of the Litigation Trust free of any such Claim. Nothing contained herein shall require the Litigation Trust Trustee or any interested party to attempt to locate any Holder of an Allowed Claim.

F. *Claims Administration Responsibility*

1. **Reservation of Rights to Object to Claims**

Except as provided in Article II.B hereof, for the avoidance of doubt, nothing in this Section F shall affect the rights, if any, of any interested party to object to any Claim or Interest before the Effective Date. Unless a Claim or Interest is expressly described as an Allowed Claim

or Interest pursuant to or under this Plan, or otherwise becomes an Allowed Claim or Interest prior to Effective Date, the Debtors reserve any and all objections to any and all Claims and Interests and motions or requests for the payment of Claims or Interests, whether administrative expense, priority, secured or unsecured, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Debtors' failure (as applicable) to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Debtors' rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim or Interest is sought to be enforced by the Holder of such Claim or Interest prior to the Effective Date.

2. **Filing of Objections**

After the Effective Date, the Reorganized Debtor shall have the sole authority to file objections and otherwise object to all Administrative Claims, and all claims seeking allowance as Administrative Claims, not paid on or prior to the Effective Date.

On the Effective Date, the Litigation Trust and the Litigation Trust Trustee, as applicable, shall assume the right and obligation to prosecute any Claim Objections (other than Administrative Claims or claims seeking allowance as Administrative Claims) which have not been previously adjudicated prior to the Effective Date. After the Effective Date, the Litigation Trust and Litigation Trust Trustee, as applicable, shall have the sole authority to file objections and otherwise object to all Claims (other than Administrative Claims or claims seeking allowance as Administrative Claims) which are paid on or after the Effective Date.

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if service is made by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims must be filed and served not later than the Objection Deadline.

3. **Determination of Claims**

Any Claim as to which a Proof of Claim or Interests or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim or Interest, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim or Interest filed by the Debtors on or prior to any applicable deadline for filing such objection or application with respect to such Claim or Interest. Any such Claim or Interest determined to be Allowed shall be deemed to be an Allowed Claim for such liquidated amount (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to

appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) and shall be satisfied in accordance with this Plan. Nothing contained in this Plan shall constitute or be deemed a waiver of any Claim, right or Cause of Action that the Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

G. *Procedures for Treating and Resolving Disputed and Contingent Claims or Interests*

1. **No Distributions Pending Allowance**

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim or Interest; provided, however, that in the event that only a portion of such Claim or Interest is an Allowed Claim or Interest, the Disbursing Agent may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim or Interest that becomes an Allowed Claim or Interest.

2. **Claim Estimation**

Prior to the Effective Date the Debtors, and after the Effective Date the Litigation Trust Trustee, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code; provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (ii) the timing and procedures for such estimation proceedings, if any.

H. *Setoffs and Recoupment*

Prior to the Effective Date the Debtors, and after the Effective Date the Litigation Trust Trustee, as applicable, may, pursuant to Section 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan any claims or Causes of Action of any nature whatsoever the Debtors, Reorganized Debtor or the Litigation Trust, as applicable, may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, or Litigation Trust as applicable, of any right of setoff or recoupment the Debtors or Litigation Trust may have against the Holder of such Claim, nor of any other claim or Cause of Action.

I. *Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code*

Allowance and disallowance of Claims shall be in all respects subject to the provisions of Section 502 of the Bankruptcy Code, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

## J. *Cancellation of Instruments and Agreements*

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, or agreements evidencing, giving rise to or governing any Claim shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be satisfied and the Holders thereof shall have no rights against the Debtors, the Estates, the Committee, the Reorganized Debtor, the Litigation Trust Trustee, the Litigation Trust Oversight Committee, and/or the Litigation Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan. In addition, the obligations of the Exchange Notes Trustee under or in connection with the Exchange Notes Indenture and the obligations of the Old Notes Trustee under the Old Notes Indenture shall be discharged and deemed satisfied on the Effective Date except to the extent necessary to comply with the terms of this Plan, including to facilitate the distributions provided for in this Plan to the applicable Holders of Claims and cancelling existing security interests. For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall limit or affect the standing of the Exchange Notes Trustee or Old Notes Trustee to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court on and after the Effective Date.

Notwithstanding the foregoing, the Exchange Notes Indenture and the Old Notes Indenture shall remain in effect solely for the purposes of (a) allowing the applicable Holders of Claims to receive their respective distributions under this Plan as provided herein, (b) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to facilitate the distributions under this Plan to the applicable Holders of Claims as provided herein and otherwise comply with any obligations they may have under this Plan, including the cancellation of existing security interests, (c) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to preserve their respective rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holder of Exchange Note Claims and Old Notes Claims, as applicable, under this Plan, and to deduct such fees and expenses from such distributions, including in respect of payment and the right to exercise their charging liens, if any, against such distributions, (d) permitting the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to perform any functions that are necessary to effectuate the foregoing, and (e) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to assert any other right, privilege, benefit, or protection granted to either of them under the relevant documentation other than against the Reorganized Debtor and the Exculpated Parties; provided, however, that the foregoing shall not affect the discharge of the Debtors with respect to the Exchange Noteholder Claims and the Old Notes Claims as provided for herein, or result in any expenses or liability to the Reorganized Debtor, except to the extent set forth in or provided for under this Plan. Notwithstanding anything to the contrary herein, the terms and provisions of this Plan shall not alter, modify, or amend any existing contract or agreement between any of the Exchange Notes Trustee, the Old Notes Trustee and any current or former Exchange Noteholder or Old Noteholder, as applicable, and any such contract or agreement shall remain in full force and effect according to its terms following the Effective Date.

K.   *Withholding Taxes*

The Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan.  As a condition to making any distribution under this Plan, the Disbursing Agent may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Disbursing Agent may deem necessary to comply with applicable tax reporting and withholding laws.

L.   *Reports*

From the Effective Date, until a Final Decree is entered, the Litigation Trust Trustee shall file quarterly reports setting forth all receipts and disbursements of the Litigation Trust as required by the United States Trustee guidelines.

M.   *Distribution Record Date*

As of the close of business on the applicable Distribution Record Date, the transfer register for all Claims maintained by the Debtors or their agents, shall be closed, and there shall be no further changes in the Record Holders of any such Claims.  Moreover, the Debtors, Reorganized Debtor, Litigation Trust, Litigation Trust Trustee or Litigation Trust Oversight Committee as applicable shall have no obligation to recognize the transfer of any such Claims occurring after the applicable Distribution Record Date and shall be entitled for all purposes herein to recognize and deal only with those Holders of record as of the close of business on the applicable Distribution Record Date.

N.   *Timing and Calculation of Amounts to be Distributed*

Except as otherwise provided herein, on the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class, provided however, the Litigation Trust shall maintain reserve accounts in trust for the payment or distribution on account of Litigation Trust Beneficiaries with respect to disputed claims and shall make the appropriate adjustments in distributions to adequately take into consideration and fund such reserve accounts.  The Litigation Trust Trustee, as Disbursing Agent, shall be authorized to make interim distributions and any subsequent distributions necessary to distribute any Cash, or other consideration held in any reserve account to the appropriate Claim Holder as Claims are resolved and Allowed and reserves are reduced in accordance with this Plan.

O.   *Settlement of Claims and Controversies*

Pursuant to Fed. R. Bankr. P. 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of claims and/or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of any such Allowed Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND OCCURRENCE OF THE EFFECTIVE DATE

A.    *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions of the Plan and the Disclosure Statement are approved in the Confirmation Order.

B.    *Conditions Precedent to Occurrence of Effective Date*

It shall be a condition to occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions herein:

1.    Fourteen (14) days have passed since the entry of the Confirmation Order as a Final Order in form and substance satisfactory to the Debtors and the Committee in their absolute discretion.  The Confirmation Order shall provide that, among other things:

(i)    the Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan; and

(ii)    the provisions of the Confirmation Order are nonseverable and mutually dependent.

2.    The appointment of the Litigation Trust Trustee shall have been confirmed by the Confirmation Order or order of the Bankruptcy Court.

3.    All actions, documents, consents, and agreements necessary to implement the Plan, including, without limitation, creating the Litigation Trust and entering into the Litigation Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred.

4.    The Debtors shall have established a reserve for all then outstanding Professional Fee Claims and Committee Professional Fee Claims (as limited by the Plan) as estimated by the Debtors and the Committee on or prior to the Effective Date.

C.    *Waiver of Conditions*

Except as otherwise required by the tenets of the Plan, the Debtors may waive any of the conditions to Confirmation of the Plan and/or to occurrence of the Effective Date of the Plan set forth in this Article VIII, at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate the Plan.

D.    *Debtors' Right of Revocation or Withdrawal*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw the Plan, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE IX.
## EFFECT OF CONFIRMATION

A.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims that have been discharged pursuant to Article IX of the Plan or are subject to exculpation pursuant to Article IX of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtor, or the Exculpated Parties:  (1) commencing or continuing in any manner any action or another proceeding of any kind on account of or in connection with or with respect to any such Claims or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the aforementioned entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the aforementioned entities or the property or the estates of the aforementioned entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the aforementioned entities or against the property of the aforementioned entities on account of or in connection with or with respect to any such Claims unless, such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim, Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Each holder of an Allowed Claim or**

Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX of the Plan.

B.    *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) the closing of the Chapter 11 Cases or (ii) the dissolution of the Litigation Trust.

C.    *Exculpation*

Effective as of the Effective Date, to the fullest extent permissible under 11 U.S.C. § 1125(e) and notwithstanding anything herein to the contrary, each Exculpated Party is hereby exculpated from any claim, obligation, Cause of Action, or liability for (a) any act or omission occurring between the Petition Date and the Effective Date in connection with, the representation of the Debtors, or (b) any act or omission occurring between the Petition Date and the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Reorganized Holdings Organizational Documents, the Reorganized Debtor Organizational Documents, the Restructuring Transactions, the Litigation Trust Interests, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), in each case except for fraud, willful misconduct, gross negligence or claims for legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. § 1200), each solely to the extent as determined by a Final Order of a court of competent jurisdiction; provided, however, that, for the avoidance of doubt, such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit.    Notwithstanding the foregoing, the Exculpation shall not release any obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or impair the ability of any Entity under the Plan to object to any request for payment on account of Professional Fee Claims.

D.    *Release of Liens*

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.   Any holder of such security interest (and the applicable agents for such holder) shall be authorized and directed, at

the sole cost and expense of the Reorganized Debtor, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## ARTICLE X.

## RETENTION OF JURISDICTION

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including, without limitation, the following:

1. All matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2. All matters relating to the ownership of a Claim or Interest;

3. All matters relating to the distribution to Holders of Allowed Claims and Interests and to the determination of Claims and Interests;

4. Any and all matters involving the Litigation Trust Trustee and/or the Litigation Trust and/or the Litigation Trust Oversight Committee;

5. All matters relating to or arising in connection with the disallowance, Allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

6. To enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7. All matters relating to the construction and implementation of the Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

8. All matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes involving the injunction and exculpation provisions of this Plan, and disputes arising under agreements, documents or instruments executed in connection with this Plan;

9. To consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10. All applications for allowance of compensation and reimbursement of Professional Fee Claims and Committee Professional Fee Claims under this Plan or under §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

11. To hear and determine all motions requesting allowance of an Administrative Claim;

12. To determine requests for the payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

13. All Causes of Action, Avoidance Actions and other suits and adversary proceedings, including proceedings to recover assets of the Litigation Trust, as successor-in-interest to the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

14. All disputes between the Independent Committee and Committee or Litigation Trust Trustee as applicable regarding the ownership of any discovered Unknown Cause of Action;

15. All disputes regarding the payment of the Excess SME Proceeds, the accounting supporting the Excess SME Proceeds, the refund of any Excess SME Proceeds during the Excess SME Proceeds Period;

16. All matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

17. Any other matter to the extent such jurisdiction is consistent with the Bankruptcy Code;

18. To enter the Final Decree closing the Chapter 11 Case; and

19. To enforce all orders previously entered by the Bankruptcy Court, including the Confirmation Order.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.    *Effectuating Documents, Further Transactions and Corporation Action*

The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements of documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof.

Prior to, on or after the Effective Date (as appropriate), all matters provided for hereunder that would otherwise require approval of the shareholders or directors of the Debtors shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states where each of the Debtors are organized without any requirement of further action by the shareholders or directors of any Debtor.

B.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid, prior to the Effective Date, out of the Assets of the Estate for each quarter (including any fraction thereof) and after the Effective Date by the Litigation Trust until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

C.    *Headings*

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

D.    *Binding Effect of Plan*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the Litigation Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is Impaired under this Plan and whether or not such Holder has accepted this Plan.  The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Litigation Trust Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

E.    *Final Order*

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors in consultation with the Committee upon written

notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

F.      *Withholding and Reporting Requirements*

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, the Debtors, Litigation Trust and the Litigation Trust Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

G.      *Tax Exemption*

Pursuant to section 1146 of the Bankruptcy Code, any transfers from the Debtors, the Litigation Trust or the Litigation Trust Trustee to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the Litigation Trust's personal property, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Litigation Trust Trustee of the Debtors' or the Litigation Trust's property in implementation of or as contemplated by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

H.      *Governing Law*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors and the Litigation Trust, corporate governance matters shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles.

I.      *Severability*

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a

determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

J. *Plan Controls*

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement or the Plan Supplement, the provisions of this Plan shall control and take precedence.

K. *Amendments and Modifications*

The Debtors may alter, amend or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2) of the Bankruptcy Code) of this Plan, the Debtors in consultation with the Committee may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and pursue such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

L. *Notices*

Any notices required under this Plan or any notices or requests of the Debtors, Reorganized Debtor, or the Litigation Trust Trustee by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

To the Debtors:

Reed Smith LLP
Attn: Derek J. Baker, Esq. and Derek M. Osei-Bonsu, Esq.
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103

To the Committee:

Dechert LLP
Attn: Stephen Zide, Esq. and David Herman, Esq.
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

To the Reorganized Debtor:

_____

To the Litigation Trust and the Litigation Trust Trustee:

_____

M.    *Filing of Additional Documents*

On or before substantial consummation of this Plan, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

N.    *Direction to a Party*

From and after the Effective Date, the Debtors, the Litigation Trust or the Litigation Trust Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

O.    *Successors and Assigns*

The rights, benefits and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

P.    *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

Q.    *Further Assurances*

The Debtors, Reorganized Debtor, Litigation Trust Trustee, and all Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

R.    *Entire Agreement*

The Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

S.    *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.


Respectfully Submitted,

Eletson Holdings, *et al.*, as Debtors and
Debtors-in-Possession

By:    /s/ Vasillis E. Kertsikoff
       Name: Vasillis E. Kertsikoff
       Title:  Vice President & Director

| Summary report: Litera Compare for Word 11.3.0.46 Document comparison done on 9/11/2024 9:12:48 PM | |
|---|---|
| **Style name:** ReedSmith Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://us-digitalfile.reedsmith.com/US_ACTIVE/180568722/7 | |
| **Modified DMS:** iw://us-digitalfile.reedsmith.com/US_ACTIVE/180568722/9 | |
| **Changes:** | |
| Add | 8 |
| Delete | 4 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 12 |

# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| Eletson Holdings Inc., *et al.*, [1] | Case No. 23-10322 (JPM) |
| Debtors. | (Jointly Administered) |

---

## SECOND AMENDED JOINT PLAN OF
## REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE
## UNITED STATES BANKRUPTCY CODE (AS FURTHER MODIFIED)

---

### REED SMITH LLP

Derek J. Baker
Derek Osei-Bonsu
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-Mail: dbaker@reedsmith.com
        dosei-bonsu@reedsmith.com

-and-

Andrew L. Buck
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: abuck@reedsmith.com
        lsolomon@reedsmith.com
~~-and-~~

---

[1] The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

Ann E. Pille (Admitted *Pro Hac Vice*)
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-Mail: apille@reedsmith.com

*Counsel for the Debtors*

# TABLE OF CONTENTS

**Page**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, RESERVATION OF RIGHTS AND DEFINED TERMS .................................................. 1

    A.    Rules of Interpretation, Computation of Time and Governing Law .................. 1

    B.    Defined Terms .................................................................................................. 2

    C.    Exhibits .......................................................................................................... 16

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS .................................................................................................................. 17

    A.    Classification ................................................................................................. 17

    B.    Unclassified Claims: Administrative Claims .................................................. 17

            a.    Administrative Claims (other than Professional Fee Claims, DIP Claims or Committee Professional Fee Claims) ................... 18

            b.    Professional Fee Claims and Committee Professional Fee Claims .......................................................................................... 18

            c.    DIP Claims ....................................................................................... 19

            d.    Administrative Claims and Substantial Contribution Claim Filing Deadline ................................................................................ 19

    C.    Treatment of Classified Claims ...................................................................... 19

            1.    Class 1 — OCM Guaranty Claims .................................................. 19

            2.    Class 2 — Corp Guaranty Claims ................................................... 20

            3.    Class 3 — Azure Guaranty Claims .................................................. 20

            4.    Class 4 — Trade Creditor Claims .................................................... 20

            5.    Class 5 — Noteholder Election Recovery Claims ........................... 21

            6.    Class 6A — Non-Petitioning Creditor Note Claims ........................ 21

            7.    Class 6B — Petitioning Creditor Exchange Note Claims ................ 22

            8.    Class 7 — Interests ........................................................................... 22

ARTICLE III. ACCEPTANCE OR REJECTION OF THE PLAN ..................................... 23

    A.    Voting Classes ................................................................................................ 23

    B.    Classes Presumed to Accept this Plan ........................................................... 23

    C.    Acceptance by Impaired Classes .................................................................... 23

    D.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ........................................................................................................... 23

    E.    Non-Consensual Confirmation ...................................................................... 23

    F.    Controversy Concerning Impairment ............................................................ 24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN................................24

    A.     Implementation of the Plan and Sources of Consideration for Plan Distributions................................24

        1.    The Shareholder New Value Contribution................................24

        2.    Distributable Cash................................24

        3.    Excess SME Proceeds................................25

        4.    Litigation Trust Causes of Action................................26

    B.     Substantive Consolidation................................26

        1.    Order Granting Plan Consolidation................................26

        2.    Plan Consolidation................................26

    C.     Corporate Existence................................27

    D.     Vesting of Assets in the Reorganized Debtor................................27

    E.     Dissolution of the Committee................................28

    F.     Reorganized Debtor Organizational Documents................................28

    G.     Appointment of Directors and Officers of the Reorganized Debtor................................28

    H.     Creation of the Litigation Trust................................28

    I.     Transfer of Assets and the Litigation Trust Causes of Action to the Litigation Trust................................30

    J.     Liabilities of the Litigation Trust................................30

    K.     Appointment of the Litigation Trust Trustee and Members of the Litigation Trust Oversight Committee................................30

    L.     Cooperation and Privilege................................31

    M.    Duties of the Litigation Trust Trustee................................32

    N.     Post Confirmation Expenses................................34

    O.     Liability; Indemnification................................34

    P.     Litigation Trust Oversight Committee................................35

    Q.     Good Faith................................36

    R.     Saturday, Sunday or Legal Holiday................................36

    S.     Exemption from Certain Taxes and Fees................................36

    T.     Issuance of Documents Necessary to Consummate the Plan................................37

    U.     Final Decree................................37

ARTICLE V. RETAINED CAUSES OF ACTION................................37

    A.     Maintenance of Causes of Action................................37

    B.     Preservation of Causes of Action................................38

C. Preservation of All Causes of Action Not Expressly Settled or Released........38

D. Retained Causes of Action and Retained Causes of Action Contribution........39

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES40

A. Rejection of Executory Contracts or Unexpired Leases........40

B. Rejection Damages Bar Date........40

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS........40

A. Disbursing Agent........40

 1. Litigation Trust Trustee as Disbursing Agent for Class 6A Claims and Class 6B Claims........41

 2. Alternative Disbursing Agent Qualification........41

B. Time and Manner of Distributions........41

C. Interest on Claims........42

D. Compliance with Tax Requirements/Allocations........42

E. Delivery of Distributions and Undeliverable or Unclaimed Distributions........42

 1. Delivery of Distributions in General........42

 2. Undeliverable Distributions........42

  a. Holding of Undeliverable Distributions.........42

  b. Failure to Claim Undeliverable Distributions.........42

F. Claims Administration Responsibility........43

 1. Reservation of Rights to Object to Claims........43

 2. Filing of Objections........43

 3. Determination of Claims........44

G. Procedures for Treating and Resolving Disputed and Contingent Claims or Interests........44

 1. No Distributions Pending Allowance........44

 2. Claim Estimation........44

H. Setoffs and Recoupment........44

I. Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code........45

J. Cancellation of Instruments and Agreements........45

K. Withholding Taxes........46

L. Reports........46

M. Distribution Record Date........46

N. Timing and Calculation of Amounts to be Distributed........46

O.      Settlement of Claims and Controversies................................................................47

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND OCCURRENCE
OF THE EFFECTIVE DATE................................................................................................47

A.      Conditions Precedent to Confirmation................................................................47

B.      Conditions Precedent to Occurrence of Effective Date........................................47

C.      Waiver of Conditions...........................................................................................48

D.      Debtors' Right of Revocation or Withdrawal.......................................................48

ARTICLE IX. EFFECT OF CONFIRMATION...................................................................48

A.      Injunction............................................................................................................48

B.      Term of Injunctions or Stays................................................................................49

C.      Exculpation.........................................................................................................49

D.      Release of Liens..................................................................................................50

ARTICLE X. RETENTION OF JURISDICTION.................................................................50

ARTICLE XI. MISCELLANEOUS PROVISIONS...............................................................52

A.      Effectuating Documents, Further Transactions and Corporation Action..............52

B.      Payment of Statutory Fees...................................................................................52

C.      Headings.............................................................................................................52

D.      Binding Effect of Plan.........................................................................................52

E.      Final Order..........................................................................................................53

F.      Withholding and Reporting Requirements...........................................................53

G.      Tax Exemption.....................................................................................................53

H.      Governing Law....................................................................................................53

I.      Severability.........................................................................................................54

J.      Plan Controls.......................................................................................................54

K.      Amendments and Modifications..........................................................................54

L.      Notices................................................................................................................54

M.      Filing of Additional Documents..........................................................................55

N.      Direction to a Party.............................................................................................55

O.      Successors and Assigns.......................................................................................55

P.      Reservation of Rights..........................................................................................55

Q.      Further Assurances..............................................................................................56

R.      Entire Agreement................................................................................................56

S.      Filing of Additional Documents..........................................................................56

**SECOND AMENDED JOINT PLAN OF REORGANIZATION OF DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, Eletson Holdings Inc., Eletson Finance (US) LLC and Agathonissos Finance LLC, debtors and debtors-in-possession (collectively and as defined below the "Debtors"), in the above-captioned and numbered case, hereby respectfully propose this Joint Plan of Reorganization of Debtors Under Chapter 11 of the United States Bankruptcy Code.

The Plan effects a restructuring of the Debtors' outstanding obligations owed to its creditor constituencies and is created for the purposes, among others, of making distributions to the Holders of Allowed Claims and Interests, and otherwise restructuring the outstanding obligations of the Estates, all as more fully set forth in this Plan.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, RESERVATION OF RIGHTS AND DEFINED TERMS

A.      *Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference herein to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references herein to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      In computing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising

hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

B.    *Defined Terms*

Unless the context requires otherwise, the following terms shall have the following meanings when used in capitalized form herein:

1.    "Administrative Bar Date" means the date which is the 30th day after the Effective Date.

2.    "Administrative Budget" means (i) the initial budget for the period following the Effective Date, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Litigation Trust, together with any amendments or modifications thereto, as prepared by the Debtors pursuant to Article IV.N of this Plan which shall be determined by the Debtors with the consent of the Committee, which consent shall not be unreasonably withheld, in an amount no less than $200,000 which shall be drawn from the Distributable Cash; and (ii) any modified budget, setting forth in reasonable detail the anticipated Post-Confirmation Expenses of the Litigation Trust, together with any amendments or modifications thereto, as prepared by the Litigation Trust Trustee and approved by the Litigation Trust Oversight Committee pursuant to Article IV.N of this Plan.

3.    "Administrative Claim" means a Claim for costs and expenses of administration under sections 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including wages, salaries or commissions for services and payments for goods and other services and leased premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise; and (c) all fees and charges assessed against the Estates under chapter 123 of Title 28 United States Code, 28 U.S.C. §§ 1911-1930.

4.    "Administrative Fund" means the reserve established for the Post-Confirmation Expenses in accordance with Article IV.N herein, which reserve may be augmented with Litigation Trust Assets by the Litigation Trust Trustee in consultation with and at the direction of the Litigation Trust Oversight Committee; provided, however, on the Effective Date, the initial Administrative Fund shall not exceed the amount of $200,000 necessary to monetize the Litigation Trust Causes of Action as of the Effective Date.

5.    "Allowed Claim" or "Allowed Interest" means, respectively, a Claim or Interest: (i) that has been Scheduled and (a) is not Scheduled as disputed, contingent or unliquidated and (b) as to which no Proof of Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the relevant Claims Bar Date to which (x) no objection thereto, or motion to subordinate, disallow or otherwise limit recovery, has been made, and (y) the Litigation Trust Trustee has determined that no objection, or motion to subordinate, disallow or otherwise limit recovery, will be made to such Claim or Interest; (iii) as to which a timely Administrative Claim Request has been filed to which (x) no objection thereto, or application to equitably subordinate

or otherwise limit recovery has been made, and (y) the Litigation Trust Trustee has determined that no objection, or application to equitably subordinate or otherwise limit recovery, will be made to such Administrative Claim Request; or (iv) that has been allowed by a Final Order or pursuant to the terms of this Plan. An Allowed Claim shall not include interest on the amount of any Claim except with respect to an Allowed Secured Claim as permitted by section 506(b) of the Bankruptcy Code or as specifically provided in this Plan, or by Final Order of the Bankruptcy Court. If the Litigation Trust Trustee shall object to any Claim in accordance with section 502(d) of the Bankruptcy Code, such Claim shall not be an Allowed Claim until the avoidable transfer is returned, a Final Order has been entered that no avoidable transfer exists, or an agreement or settlement is reached that is approved by the Bankruptcy Court or pursuant to provisions in the Plan.

6. "Allowed _____ Claim" or "Allowed _____ Interest" means an Allowed Claim or Allowed Interest, as the case may be, of a specified Class or an Allowed Claim that is an Administrative Claim, Priority Claim, Secured Claim, General Unsecured Claim or Interest, as the case may be.

7. "Arbitration" means the JAMS Arbitration initiated by Eletson Holdings and Eletson Corp. against Levona Holdings Ltd.

8. "Assets" means all assets of the Debtors, of any nature whatsoever, including, without limitation, all property of the Estates under and pursuant to Section 541 of the Bankruptcy Code; Cash; Causes of Action including Avoidance Actions; rights; interests; and property, real and personal, tangible and intangible.

9. "Avoidance Actions" means those avoidance actions available in these Chapter 11 Cases pursuant to Chapter 5 of the Bankruptcy Code.

10. "Azure" means collectively Azure Nova Spring Company, Ltd., Azure Nova Summer Company, Ltd., Azure Nova Autumn Company, Ltd. and Azure Nova Winter Company, Ltd.

11. "Azure Guarantees" means those certain guarantees dated as of August 24, 2017, executed by Eletson Holdings in favor of the obligations of certain Eletson affiliates to Azure.

12. "Azure Guaranty Claims" means any and all guaranty related Claims arising from the Azure Guarantees.

13. "Azure Guaranty Recovery" means the lesser of (i) $200,000 and (ii) such other amount as determined by the Debtors and Azure in full and complete settlement, release and satisfaction of the Azure Guaranty Claims.

14. "Ballots" means the ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests in the Debtors entitled to vote shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

15.     "Bankruptcy Code" means Title 11 of the United States Code, and the applicable portions of Title 28 of the United States Code.

16.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

17.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General, Local and Chambers Rules of the Bankruptcy Court.

18.     "Bar Date Order" means the *Order Establishing Deadlines for Filing Proofs of Claim and Claims Related to Gap Period and Approving Form and Manner of Notice Thereof* [D.I. 264].

19.     "Beneficial Holder" means the Person or Entity holding the beneficial interest in a Claim or Interest.

20.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)) in New York, York.

21.     "Cash" means cash and cash equivalents in certified or immediately available funds, including, but not limited to, bank deposits, checks and similar items.

22.     "Cause of Action" means, but is not limited to the following: all claims as defined in section 101(5) of the Bankruptcy Code, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to, all claims in any avoidance, recovery, inequitable conduct, subordination or other actions against Insiders and/or any other Persons under the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553) of the Debtors, the Debtors in Possession and/or the Estates against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown.

23.     "Chapter 11 Cases" means the chapter 11 bankruptcy cases of the Debtors initiated pursuant to that *Order Converting These Cases to Cases Under Chapter 11* [D.I. 215], jointly administered under the name Eletson Holdings Inc. Case No. 23-10322.

24.     "Claim" means any claim(s) against the Debtors as such term is defined in Bankruptcy Code § 101(5).

25.     "Claim Holder" means the Holder of a Claim.

26.     "Claims Bar Date" means (i) December 18, 2023, and (ii) such other date(s) fixed by order(s) of the Bankruptcy Court, by which all Persons, including governmental units, asserting a Claim against the Debtors, must have filed a Proof of Claim or Administrative Claim Request or be forever barred from asserting such Claim.

27.     "Class" means a category of Claims or Interests as set forth in Article II herein.

28.     "Class 6 Claims" means the aggregate Claims of Class 6A and Class 6B.

29.     "Collections Contribution" means the Gas Ownership Defendants' agreement to contribute and deliver to the Litigation Trust Trustee a one time-cash payment equal to (i) 90% of the first $21 million of net cash recoveries under the Final Award (with the remaining 10% of net cash recoveries being collected by Eletson Corporation on account of amounts awarded to Eletson Corporation under the Final Award); plus (ii) 50% of the next $20 million of net cash recoveries under the Final Award (with the remaining 50% of such cash recoveries of amounts awarded to Eletson Corporation under the Final Award); plus (iii) 75% of the net cash recoveries in excess of $41 million under the Final Award; provided, however, for purposes of the foregoing, "net cash recoveries" shall mean cash actually collected under the Final Award net of costs of collection incurred following the date of the Final Award (*i.e.*, September 29, 2023) by Eletson Corporation and/or the Gas Ownership Defendants and net of any amounts setoff by any Gas Ownership Defendants for amounts owed to Levona.

30.     "Committee" means the Official Committee of Unsecured Creditors as constituted by the Office of United States Trustee in the Chapter 11 Cases.  [D.I. 233.]

31.     "Committee Professionals" means (a) Dechert LLP, (b) FTI Consulting, Inc., and (c) any other Person or Entity employed by the Committee pursuant to a Final Order in accordance with sections 327 and 1103 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code.

32.     "Committee Professional Fees" means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Committee Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

33.     "Committee Professional Fee Claims" means all Committee Professional Fees which remain unpaid as of the Effective Date.

34.     "Confirmation" means the entry of the Confirmation Order.

35.     "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rule 5003.

36.     "Confirmation Hearing" means that hearing before the Bankruptcy Court wherein the Debtors seek confirmation of the Plan as provided for in section 1128 of the Bankruptcy Code.

37.     "Confirmation Order" means the order of the Bankruptcy Court, in form and substance satisfactory to the Debtors, confirming this Plan pursuant to section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

38. "Consolidating Debtors" means collectively Eletson Finance (US) LLC and Agathonissos Finance LLC.

39. "Conversion Date" means September 25, 2023.

40. "Corp Guarantees" means an executed guaranty or similar security agreement other than the Azure Guarantees and the OCM Guarantees executed by Eletson Holdings guaranteeing the obligations of Eletson Corporation.

41. "Corp Guaranty Claims" means any guaranty related Claims arising from the Corp Guarantees.

42. "Creditor" shall have the meaning in section 101(10) of the Bankruptcy Code.

43. "Debtors" means collectively Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

44. "Debtor Privilege" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtors.

45. "DIP Agent" means the administrative agent set forth in the DIP Documents.

46. "DIP Claim" means any Claim in respect of the Debtors' obligations under the DIP Documents, including principal, interests and other fees and expenses owing pursuant to the DIP Documents and in accordance therewith held by or otherwise owed to the DIP Agent and/or DIP Lenders.

47. "DIP Credit Agreement" means the credit agreement governing the terms and conditions of the postpetition financing facility entered into by the Debtors, DIP Agent and DIP Lenders and approved pursuant to order of the Bankruptcy Court.

48. "DIP Documents" means the DIP Credit Agreement and related documents.

49. "DIP Facility" means the postpetition financing facility approved by the Bankruptcy Court pursuant to the DIP Order.

50. "DIP Lenders" means the lenders under the DIP Credit Agreement and any successors and permitted assigns.

51. "DIP Order" means the interim or final order, as applicable, entered by the Bankruptcy Court approving the DIP Facility and authorizing the DIP Documents.

52. "Disallowed Claim" means a Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court, (iii) is not Scheduled and as to which no Proof of

Claim or Administrative Claim Request has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors or the Litigation Trust Trustee and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

53.     "Disbursing Agent" means the Litigation Trust Trustee, Reorganized Debtor or third party as applicable in accordance with Article VII.A.

54.     "Disclosure Statement" means the First Amended Disclosure Statement in Support of the Second Amended Joint Plan of Reorganization of Debtors under Chapter 11 of the Bankruptcy Code, dated as of July 5, 2024, and all exhibits thereto, as amended, supplemented, or modified from time to time, describing the Plan, that is prepared and distributed in accordance with the Bankruptcy Code and approved by the Bankruptcy Court.

55.     "Disclosure Statement Order" means the order approving the Disclosure Statement, which was entered by the Bankruptcy Court on July 10, 2024 [D.I. 856].

56.     "Disputed" means, for purposes of this Plan, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed or contingent and for which a timely objection has been filed; or (b) as to which any Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules which has not been withdrawn or determined by a Final Order; provided, however, that a Claim shall not be a Disputed Claim to the extent it becomes an Allowed Claim or a Disallowed Claim.

57.     "Distributable Cash" means all remaining Cash or cash equivalents comprising of the Shareholder New Value Contribution and SME Revenue after (i) payment of the Allowed Administrative Claims including Professional Fee Claims and Committee Fee Claims, (ii) funding of the Administrative Fund, (iii) funding of the Azure Guaranty Recovery, (iv) funding the Eletson Corporation Guaranty Recovery, (v) funding the Trade Creditor Claim Reserve, and (vi) funding the Noteholder Recovery Election Reserve.  Notwithstanding the foregoing, (i) any excess amounts remaining in the Trade Creditor Claim Reserve and Noteholder Election Recovery Reserve, if any, after final distributions on account of Allowed Trade Creditor Claims and Noteholder Election Recovery Claims, and (ii) any excess amounts remaining in the Administrative Fund, and (iii) the SME Revenue, in each case, shall be deemed Distributable Cash.

58.     "Distribution Record Date" means the Effective Date unless a different date is ordered by the Bankruptcy Court.

59.     "District Court Confirmation Proceedings" means those proceedings before the United States District Court for the Southern District of New York regarding the confirmation of the Final Award issued in the Arbitration.

60.     "Effective Date" means the date selected by the Debtors on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article VIII herein have been (i) satisfied or (ii) waived pursuant to the applicable provisions of this Plan.

61. "Eletson Corporation" means non-Debtor Eletson Corporation.

62. "Eletson Corporation Guaranty Recovery" means $1,000,000.00 to be paid Pro Rata to Holders of Corp Guaranty Claims.

63. "Eletson Gas" means non-Debtor Eletson Gas LLC.

64. "Eletson Holdings" means Eletson Holdings, Inc.

65. "Eletson Holdings Members" means the holders of the common shares in Eletson Holdings.

66. "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

67. "Estate" means the estate of each Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

68. "Excess SME Cash Flow Proceeds" means the future cash contributions of the Reorganized Debtor to the Litigation Trust during the Excess SME Proceeds Period of 20% of the consolidated excess cash flow (calculated on a semi-annual basis) of the consolidated operating revenues of the SMEs less the consolidated operating expenses for the previous six month period, up to a maximum of $5 million in the aggregate.

69. "Excess SME Proceeds" means the Excess SME Cash Flow Proceeds and the Excess SME Sale Proceeds.

70. "Excess SME Proceeds Period" means the earlier of the four-year anniversary of the Effective Date or the date on which the sale of all of the SMEs and/or the SME Vessels has been consummated.

71. "Excess SME Sale Proceeds" means 20% of the gross proceeds from the sale of any SME and/or SME Vessel less said SME's existing debt (including any unpaid obligations under the terms of the applicable bareboat charter and any trade obligations applicable to the operation of such SME Vessel which were incurred but not paid prior to the sale closing date) up to a maximum of $5 million in the aggregate.

72. "Exchange Noteholder" means a Holder of the Exchange Notes.

73. "Exchange Notes" means those certain 9.625% First Preferred Ship Mortgage Notes due 2022 in an original Face Amount of $300 million issued by the Debtors that were exchanged by noteholders pursuant to the that May 25, 2018 exchange offer.

74. "Exchange Notes Indenture" means that certain Indenture, dated as of July, 2, 2018, by and among the Debtors, as co-issuers, the guarantors party thereto, and the Exchange Notes Trustee, as trustee and collateral agent (as amended, amended and restated, modified, or supplemented from time to time).

75. "Exchange Notes Trustee" means Wilmington Savings Fund Society, FSB, in its capacity as trustee and collateral trustee under the Exchange Notes Indenture, including any successor and permitted assigns thereto.

76. "Exculpated Parties" means, collectively, and in each case solely in its capacity as such and only to the extent they served in a fiduciary capacity during the Chapter 11 Cases: the Debtors and the Debtors' officers and directors and the Debtors' professionals retained under the Bankruptcy Code (each in their capacities as such) that served in such capacities at any time between the Petition Date and the Effective Date.

77. "Face Amount" means (i) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the Holder of such Claim in any Proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (ii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

78. "File" or "Filed" means file or filed with the Bankruptcy Court in the Chapter 11 Cases.

79. "Final Award" means the final arbitral award issued in the arbitration proceeding titled *Eletson Holdings, Inc., et al. v. Levona Holdings Ltd.* before Justice Belen at JAMS Ref. No. 5425000511.

80. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

81. "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket of the Chapter 11 Case that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing or, if an appeal, reargument, petition for certiorari or rehearing thereof has been pursued or granted then such an appeal, reargument, petition for certiorari or rehearing has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired. Notwithstanding, and in lieu of the foregoing, insofar as the Confirmation Order confirming this Plan is concerned, Final Order means such order or judgment with respect to which no stay is in effect.

82. "Gas Ownership Defendants" means Eletson Gas, the Preferred Owners and/or any officers or directors of the same.

83. "General Unsecured Claim" means any Claim that is not an Administrative Claim, Priority Claim, a Secured Claim or an Interest.

84. "Governmental Unit" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

85. "Holder" and collectively, "Holders" means a Person or Entity holding an Interest or Claim, and with respect to a vote on the Plan, means the Beneficial Holder as of the

Distribution Record Date or any authorized signatory who has completed and executed a Ballot in accordance with the Voting Instructions.

86.    "Impaired" means with respect to any Class of Claims or Interests, any Claims or Interests that are impaired within the meaning of § 1124 of the Bankruptcy Code.

87.    "Impaired Claim" means a Claim classified in an Impaired Class of Claims.

88.    "Impaired Class" means each of the Classes that is not an Unimpaired Class.

89.    "Intercompany Interest" means any Interest of a Debtor or a Non-Debtor Affiliate that is held by another Debtors, including (a) all issued, unissued, authorized or outstanding shares or stock and (b) any interest, including but not limited to, any warrant, options, conversion privileges or contract rights to purchase or acquire any equity security or membership interest of any of the Debtors at any time.

90.    "Interest" means any common equity interest in Eletson Holdings, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock.

91.    "IRS" means the Internal Revenue Service.

92.    "Levona" means Levona Holdings Ltd. and/or its alter egos as determined in the Arbitration or necessary or appropriate to collect the Final Award.

93.    "Liberian Law" means the governing laws of the Republic of Liberia.

94.    "Liens" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

95.    "Litigation Trust" means the trust that will be created to pursue the Litigation Trust Causes of Action and effect distributions to applicable holders of Litigation Trust Interests following the Effective Date in accordance with the terms of this Plan and the Litigation Trust Agreement.

96.    "Litigation Trust Agreement" means the trust agreement described in Article IV of this Plan and substantially in the form to be filed with the Plan Supplement that, among other things, shall be drafted and filed by the Committee (subject to review by the Debtors), and establishes the Litigation Trust, and describes the powers, duties and responsibilities of the agreement respecting the transfer of documents, information, and Litigation Trust Privileges and privileges of the Reorganized Debtor (solely in its capacity as successor to the Debtors) and solely related to the Litigation Trust Causes of Action to be entered into with the Litigation Trust Trustee; provided, however, that to the extent the terms of Article IV of this Plan conflict with the Litigation Trust Agreement, the terms of the Litigation Trust Agreement shall control.

97.    "Litigation Trust Assets" means the Litigation Trust Causes of Actions, the Excess SME Proceeds, Collections Contribution, Retained Causes of Action Contribution and the

Distributable Cash; provided, that neither the Debtors nor the Reorganized Debtor shall have any obligations to provide any funding to the Litigation Trust.

98.     "Litigation Trust Beneficiaries" means holders of the Litigation Trust Interests.

99.     "Litigation Trust Causes of Action" means any and all claims and Causes of Action of the Debtors arising under state or federal law, Liberian Law or Marshall Islands Law including all Pending Adversary Proceedings, Claim Objections and Avoidance Actions owned by, or asserted on behalf of, or that may be asserted by or on behalf of, the Debtors or their Estates listed on the Litigation Trust Causes of Action Schedule.

100.     "Litigation Trust Causes of Action Schedule" means the schedule attached to the Plan as Appendix A setting forth the Causes of Action that will be transferred to the Litigation Trust and constitute the Litigation Trust Causes of Action.

101.     "Litigation Trust Distributable Proceeds" means all actual proceeds of (i) the Litigation Trust Causes of Action, net of any amounts (a) used to repay any funding for the Litigation Trust in accordance with the terms of such funding, (b) used to pay the Litigation Trust Expenses, and (c) as otherwise provided in accordance with the Litigation Trust Agreement (ii) the remaining Distributable Cash after satisfaction of the Litigation Trust Expenses, (iii) the Collections Contribution (v) the Retained Causes of Action Contributions and (vi) the cash provided by the Excess SME Proceeds.

102.     "Litigation Trust Expenses" means all reasonable fees, costs and expenses of and incurred by the Litigation Trust, including legal and other professional fees, costs and expenses, administrative fees and expenses, insurance fees, taxes and escrow expenses, which shall be paid in accordance with the Litigation Trust Agreement and the terms of this Plan; provided, however, that neither the Debtors nor the Reorganized Debtor shall be required in any event to pay the Litigation Trust Expenses.

103.     "Litigation Trust Interests" means the interests in the Litigation Trust to be distributed on a Pro Rata basis to holders of Claims in Class 6 as set forth herein, which shall entitle such Holder to its Pro Rata portion (based on the percentage of Litigation Trust Interests held by such Holder) of Litigation Trust Distributable Proceeds.

104.     "Litigation Trust Oversight Committee" means the committee of up to five (5) members formed on the Effective Date and composed of members selected by the Committee. The initial members of the Litigation Trust Oversight Committee shall be identified in the Plan Supplement to be filed prior to the Confirmation Hearing or identified by the Litigation Trust Trustee pursuant to the terms of the Litigation Trust Agreement, as applicable.

105.     "Litigation Trust Privileges" means any attorney-client privilege, work product protection, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) held by the Debtors related exclusively to Litigation Trust Causes of Action which shall be transferred to the Litigation Trust along with the Litigation Trust Causes of Action.

106.    "Litigation Trust Trustee" means the individual selected by the Committee pursuant to Article IV of this Plan to act as trustee of the Litigation Trust in accordance with the provisions of this Plan and the Litigation Trust Agreement.

107.    "Marshall Islands Law" means the governing law of the Republic of the Marshall Islands.

108.    "NAF Claim" means the Claim asserted by New Agathonissos Finance LLC to the extent any portion of said Claim is deemed an Allowed Claim.

109.    "Non-Debtor Affiliate" means any person that is an affiliate of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

110.    "Non-Petitioning Creditors Exchange Note Claims" means claims asserted by Exchange Noteholders other than the Petitioning Creditors on account of the Exchange Notes.

111.    "Noteholder Election Recovery" means the recovery provided to Holders of Noteholder Election Recovery Claims paid from the Noteholder Election Recovery Reserve which for each individual Holder of a Noteholder Election Recovery Claim shall be the lesser of (i) the Face Amount of such Holder's Noteholder Election Recovery Claim, (ii) such Holder's Pro Rata portion of the Noteholder Election Recovery Cap, or (iii) $70,000.

112.    "Noteholder Election Recovery Cap" means $7,000,000.

113.    "Noteholder Election Recovery Claims" means the Claims of any Holder of a Claim in Class 6A or 6B that affirmatively and irrevocably elects to have their Non-Petitioning Creditor Exchange Note Claim, Petitioning Creditor Exchange Note Claim or Old Note Claim, as applicable, treated as a Claim under Class 5 with recovery drawn from the Noteholder Election Recovery Reserve.

114.    "Noteholder Election Recovery Reserve" means a reserve created in the amount up to the Noteholder Election Recovery Claim Cap to fund recoveries for Noteholder Election Recovery Claims.

115.    "Objection Deadline" means that date which is one year after the Effective Date or such later date as the Court may allow upon request by the Litigation Trust Trustee, by which the Litigation Trust Trustee or any party in interest has to file an objection to any Claim not previously allowed.

116.    "OCM Entities" means collectively OCM Maritime Rhine LLC, OCM Maritime Yukon LLC, OCM Maritime Autumn LLC and OCM Maritime Thames LLC.

117.    "OCM Guarantees" means the guarantees executed by Eletson Holdings in favor of the obligations of the SMEs to the OCM Entities.

118.    "OCM Guaranty Claims" means Claims arising from the OCM Guarantees.

119.     "Old Noteholders" means the Holders of the Old Notes.

120.     "Old Notes" means those certain 9.625% First Preferred Ship Mortgage Notes due 2022 in an original Face Amount of $300 million issued by the Debtors that were not converted by holders of Old Notes pursuant to that May 25, 2018 exchange offer.

121.     "Old Notes Claim" means Claims arising from the Old Notes and the NAF Claim.

122.     "Old Notes Indenture" means that certain indenture, dated as of December 19, 2013, among Eletson Holdings and Eletson Finance, as co-issuers, the guarantor parties thereto, and the Old Notes Trustee, as trustee and collateral trustee (as amended, amended and restated, modified, or supplemented from time to time).

123.     "Old Notes Trustee" means Deutsche Bank Trust Company Americas, in its capacity as trustee and collateral trustee under the Old Notes Indenture, including any successor and permitted assigns thereto.

124.     "Pach Shemen" means Pach Shemen LLC.

125.     "Pending Adversary Proceedings" means all adversary proceedings commenced by the Debtors which are currently pending in the Bankruptcy Court.

126.     "Person" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or other entity.

127.     "Petition Date" means March 7, 2023, the date on which certain of the Petitioning Creditors filed involuntary petitions for relief commencing the Bankruptcy Cases.

128.     "Petitioners" means the Debtors, Eletson Corporation and any other party benefiting from the Final Award.

129.     "Petitioning Creditors" means Pach Shemen, VR Global Partners, L.P., and Alpine Partners (BVI) L.P. and (ii) Levona to the extent Levona is deemed to be a creditor of the Debtors by order of the Bankruptcy Court.

130.     "Petitioning Creditors Exchange Note Claims" means any and all claims asserted by any Petitioning Creditor arising from said Petitioning Creditor's purporting to be the Beneficial Holder of any Exchange Notes.

131.     "Plan" means this Second Amended Joint Plan of Reorganization of Debtors under Chapter 11 of the United States Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

132.    "Plan Consideration" means the Shareholder New Value Contribution, the SME Revenue, Retained Causes of Action Contribution, and the Excess SME Proceeds.

133.    "Plan Consolidation" means the consolidation of the Consolidating Debtors into Eletson Holdings as set forth in Article IV.B of this Plan.

134.    "Plan Supplement" means a document supplementing the Plan to be submitted with the Court no later than ten (10) days prior to the objection deadline for the Confirmation Hearing.

135.    "Post-Confirmation Expense" means any fees, costs and expenses (including, without limitation, United States Trustee Quarterly Fees, Litigation Trust Expenses, attorneys' fees, the fees of other professionals, and any taxes imposed on the Litigation Trust or in respect of its Assets) necessary to complete the reorganization contemplated herein and the Litigation Trust after the Effective Date.

136.    "Preferred Owners" means collectively Desimuso Trading Company, Apargo Limited, and Fentalon Limited.

137.    "Preferred Shares" means the Preferred Shares of non-Debtor Eletson Gas LLC.

138.    "Priority Claim" means a Claim entitled to priority pursuant to Bankruptcy Code § 507 that is not an Administrative Claim

139.    "Professional" or, collectively, "Professionals" means a Person or Entity (a) employed by the Debtors pursuant to a Final Order in accordance with sections 327 or 363 of the Bankruptcy Code and to be compensated for services rendered or incurred through the Effective Date pursuant to sections 327, 328, 329, 330 and 331 or 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code by a Final Order.

140.    "Professional Fees" means all fees and expenses (including, but not limited to, success fees, if any) for services rendered by all Professionals in the Chapter 11 Cases through the Effective Date that the Bankruptcy Court has not denied by Final Order, regardless of whether a fee application has been filed for such fees.

141.    "Professional Fee Claims" means all Professionals Fees which remain unpaid as of the Effective Date.

142.    "Professional Claims Bar Date" means 5:00 p.m. (prevailing Eastern Time) on the date that is the first Business Day that is forty-five (45) days after the Effective Date.

143.    "Proof of Claim" means a Claim for which a proof of claim on Official Form 410 has been filed on or before the Claims Bar Date.

144. "Pro Rata" means the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

145. "Record Holder" means the Holder of a Claim or Interest on the Distribution Record Date.

146. "Reorganized Debtor" means Eletson Holdings on and after the Effective Date.

147. "Reorganized Debtor Organizational Documents" means the applicable bylaws, charter documents, articles of incorporation, certificates of incorporation, certificates of formation, limited liability company operating agreements, and related documents regarding the corporate existence and governance of the Reorganized Debtor.

148. "Retained Causes of Action" means all Causes of Action existing as of the Effective Date not transferred to the Litigation Trust (including Unknown Causes of Action as applicable) and retained by the Reorganized Debtor which may be pursued by the Reorganized Debtor for the benefit of the Reorganized Debtor and Litigation Trust through the Retained Causes of Action Contribution.

149. "Retained Causes of Action Contribution" means 75% of the net cash recoveries on account of Retained Causes of Action; provided, however, for purposes of the foregoing, "net cash recoveries" shall mean cash actually collected under any Retained Causes of Action net of costs of collection incurred by the Reorganized Debtor and net of any amounts setoff by the Reorganized Debtor for amounts owed to any defendant under a Retained Cause of Action.

150. "Restructuring Transactions" means the transactions described in Article IV of this Plan.

151. "Scheduled" with respect to any Claim, means listed on the Schedules.

152. "Schedules" mean the schedules of assets and liabilities, schedules of executory contracts, and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they have been and may be amended and supplemented from time to time.

153. "Secured Claim" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code in each case as of the Petition Date, to the extent that the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

154. "Shareholder New Value Contribution" means contribution provided by or caused to be provided by the Eletson Holdings Members (or affiliates thereof), consisting of (a) Cash and cash equivalents in an aggregate amount of $~~30~~37 million and (b) the Collections Contribution.

155. "SMEs" means each of Fourni Special Maritime Enterprises, Kastos Special Maritime Enterprises, Kimolos II Special Maritime Enterprise, and Kinaros Special Maritime Enterprise.

156. "SME Revenue" means any excess cash on hand of each of the SMEs existing as of the Effective Date after subtracting therefrom (i) any amounts, as necessary to satisfy the projected operating expenses of the SMEs not otherwise reasonably expected to be satisfied by anticipated revenues of the SMEs (on a consolidated basis) through the SME Revenue Period; and (ii) $250,000 (on a consolidated basis).

157. "SME Revenue Period" means the period beginning on the first Business Day after the Effective Date and ending one hundred and eighty (180) days later.

158. "SME Vessels" means each of and collectively, the vessels known as the Fourni, Kastos, Kimolos, and Kinaros as operated by the SMEs.

159. "Trade Creditor" means any creditor whose Claim has been Allowed and is not a creditor classified in Class 1, Class 2, Class 3, Class 5, Class 6A or Class 6B.

160. "Trade Creditor Claim" means any Allowed General Unsecured Claim against the Debtors held by a Trade Creditor.

161. "Trade Creditor Claim Cap" means $1,000,000.00.

162. "Trade Creditor Claim Reserve" means a reserve created in the amount of the Trade Creditor Claim Cap to fund recoveries for Trade Creditor Claims.

163. "Unclassified Claims" means those Administrative and Priority Claims described in Article II herein.

164. "Unimpaired Claims" means Claims in an Unimpaired Class.

165. "Unimpaired Class" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

166. "United States Trustee" means the Office of the United States Trustee for Region 2.

167. "United States Trustee Quarterly Fee" means the quarterly fees payable to the United States Trustee accrued over the course of these Chapter 11 Cases pursuant to 28 U.S.C. § 1930(a)(6).

168. "Voting Class" means any class of Claims and Interests entitled to vote on the Plan.

169. "Voting Deadline" means the date, as stated in the Voting Instructions, of August 9, 2024, at 4:00 p.m. prevailing Eastern Time for all Holders of Claims, which is the date and time by which all votes must be received in accordance with the procedures set forth in the

Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court by which all Ballots must be received.

170. "Voting Instructions" mean the instructions for voting on the Plan contained in Article II of the Disclosure Statement entitled "Voting On and Confirmation of the Plan" and in the Ballots.

C. *Exhibits*

All Exhibits to this Plan, if any, are incorporated by reference into and are made a part of this Plan as if set forth in full herein.

## ARTICLE II.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

A. *Classification*

The classification of Claims (except for Administrative Claims) and Interests listed below is for all purposes, including, without limitation, voting, confirmation and distributions under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent such Claim or Interest satisfies the definition of such Class and shall be deemed classified in a different Class to the extent any remainder or other portion of such Claim or Interest satisfies the definition of such different Class. NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR CLAIM OR INTEREST IS CLASSIFIED IN A CERTAIN CLASS FOR VOTING PURPOSES. A Claim is in a particular Class only to the extent such Claim is an Allowed Claim in such Class and has not been paid or otherwise settled before the Effective Date. The classification of Claims and Interests pursuant to this Plan is as follows:

|  |  | *Class* | *Status* |  | *Voting Rights* |
|---|---|---|---|---|---|
| Class 1 | — | OCM Guaranty Claims | Impaired | — | Entitled to vote |
| Class 2 | — | Corp Guaranty Claims | Impaired | — | Entitled to vote |
| Class 3 | — | Azure Guaranty Claims | Impaired | — | Entitled to vote |
| Class 4 | — | Trade Creditor Claims | Impaired | — | Entitled to vote |
| Class 5 |  | Noteholder Election Recovery Claims | Impaired | — | Entitled to vote |
| Class 6A | — | Non-Petitioning Creditor Exchange Note Claims | Impaired | — | Entitled to vote |

| Class 6B | — | Petitioning Creditor Exchange Note Claims | Impaired | — | Entitled to vote |
| Class 7 | — | Interests | Impaired | — | Entitled to vote |

B.  *Unclassified Claims: Administrative Claims*

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims shall not be classified for the purposes of voting or receiving distributions under this Plan.  Rather, all such Claims shall be treated separately as unclassified Claims on the terms set forth in this Article II.B.

      a.      Administrative Claims (other than Professional Fee Claims, DIP Claims or Committee Professional Fee Claims)

The Disbursing Agent shall pay each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims, DIP Claims and Committee Professional Fee Claims) the full amount of such Allowed Administrative Claim, without interest, in Cash, as soon as practicable after the later of: (i) the occurrence of the Effective Date, or (ii) the date such Administrative Claim becomes an Allowed Claim.  Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Claim may be paid on such other date or dates and upon such other less favorable terms as may be agreed upon by such Holder and the Disbursing Agent.  Notwithstanding anything else herein, all United States Trustee Quarterly Fees payable to the United States Trustee under 28 U.S.C. § 1930 and any interest that accrues thereon under 31 U.S.C. § 3717 shall be paid in full on the Effective Date, or as soon as reasonably practicable thereafter.  All fees that arise under 28 U.S.C. § 1930 and any interest that accrues thereon under 31 U.S.C. § 3717 after the Effective Date shall be paid in full when due until the Chapter 11 Cases are closed, dismissed, or converted, whichever occurs first.  Notwithstanding any other provision herein, the United States Trustee shall not be required to file a proof of claim or a request for payment of United States Trustee Quarterly Fees.

      b.      Professional Fee Claims and Committee Professional Fee Claims

Prior to the Effective Date, the Debtors may pay any Professional Fees (other than Committee Professional Fees) which the Bankruptcy Court has allowed pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code from the Petition Date through the Effective Date.  Prior to the Effective Date the Debtors may pay any Committee Professional Fees for all Committee Professional Fee Claims which are allowable or allowed pursuant to sections 503(b)(2) - (b)(6) of the Bankruptcy Code from the Conversion Date through the Effective Date.  From and after the Effective Date, the Disbursing Agent shall pay Professionals and the Committee Professionals the respective Professional Fees and the Committee Professional Fees awarded by Final Order of the Bankruptcy Court, as soon as practicable after the later of (i) the Effective Date, and (ii) within three (3) Business Days of entry of such Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases.

On the Effective Date, any objections previously filed to any applications for payment of the Professional Fees shall be deemed withdrawn (with prejudice) on the Effective Date.

Further, after the occurrence of the Effective Date, neither the Disbursing Agent, the Reorganized Debtor, the Litigation Trust, Litigation Trust Trustee nor the Litigation Trust Oversight Committee shall assert any objection to any Committee Professional Fee Claims.

Any final application for allowance of Professional Fee Claims and Committee Professional Fee Claims for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Debtors, counsel for the Litigation Trust, the Litigation Trust Trustee and on the United States Trustee at the addresses listed in Article XI.L of this Plan so that it is received no later than forty-five (45) days after the Effective Date. In the event an application for allowance of Professional Fee Claims and Committee Professional Fee Claims is not filed by the appropriate date, such Professional Fee Claims and Committee Professional Fee Claims shall be forever barred and shall not be enforceable against the Debtors, their Estates, the Litigation Trust, the Litigation Trust Trustee and their successors, their assigns or their Assets. Allowed Professional Fee Claims and Committee Professional Fee Claims must be paid in full and Professional Fee Claims and Committee Professional Fee Claims pending allowance by the Bankruptcy Court must be reserved for in full prior to any payment to Holders of Allowed Claims in (a) Class 3 (Azure Guaranty Claims), (b) Class 4 (Trade Creditor Claims); (c) Class 5 (Noteholder Election Recovery Claims); (d) Class 6A (Non-Petitioning Creditor Exchange Note Claims); (e) Class 6B (Petitioning Creditor Exchange Note Claims); and (f) Administrative Claims.

        c.      DIP Claims

As of the Effective Date, the DIP Claims, if any, shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Documents, including principal, interest, fees and expenses.

Except to the extent that the Holder of an Allowed DIP Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for, each Allowed DIP Claim, each such Holder of an Allowed DIP Claim shall receive payment in full in Cash of such holders Allowed DIP Claim on the Effective Date, or as soon as reasonably practicable thereafter.

Immediately upon receipt of the payments set forth in this section, the DIP Documents shall be deemed cancelled. The DIP Agent and DIP Lenders shall take all actions to effectuate and confirm such termination and discharge as reasonably requested by the Debtors or Reorganized Debtor as applicable.

        d.      Administrative Claims and Substantial Contribution Claim Filing Deadline

Each Holder of an Administrative Claim (excluding Professional Fee Claims and Committee Professional Fee Claims that are not a substantial contribution claim) must file an Administrative Claim Request with the Bankruptcy Court prior to the Administrative Bar Date.

C. *Treatment of Classified Claims*

1. **Class 1 — OCM Guaranty Claims**

    (a) *Classification:* Class 1 consists of all OCM Guaranty Claims.

    (b) *Treatment*: The OCM Guaranty Claims are Allowed Claims. Except to the extent that a Holder of an Allowed OCM Guaranty Claim agrees to less favorable treatment, upon the occurrence of the Effective Date, or as soon as reasonably practicable thereafter and in full settlement, release, and satisfaction of, and in exchange for each OCM Guaranty Claim, each of the OCM Guarantees shall be reinstated in full force and effect and made effective as to the Reorganized Debtor unmodified in their terms without further action of the Debtors, Reorganized Debtor or OCM Entities, provided, however, that the Reorganized Debtor shall only be obligated to guaranty fifty percent (50%) of the obligations of the SMEs subject to the OCM Guarantees.

    (c) *Voting*: Class 1 is Impaired and the Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

2. **Class 2 — Corp Guaranty Claims**

    (a) *Classification*: Class 2 consists of all Corp Guaranty Claims.

    (b) *Treatment*: The Corp Guaranty Claims are Allowed Claims. Except to the extent that a Holder of an Allowed Corp Guaranty Claim agrees to less favorable treatment, upon the occurrence of the Effective Date, or as soon as reasonably practicable thereafter and in full settlement, release, and satisfaction of, and in exchange for each Corp Guaranty Claim, (i) each holder of an Allowed Corp Guaranty Claim shall receive its pro rata distribution of the Eletson Corporation Guaranty Recovery and (ii) each of the Corp Guarantees shall be reinstated in full force and effect and made effective as to the Reorganized Debtor unmodified in their terms without further action of the Debtors, Reorganized Debtor or Corp Guaranty counterparties, provided, however, that the Reorganized Debtor shall only be obligated to guaranty fifty percent (50%) of the obligations of Eletson Corporation subject to the Corp Guarantees.

    (c) *Voting*: Class 2 is Impaired and the Holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

3. **Class 3 — Azure Guaranty Claims**

    (a) *Classification*: Class 3 consists of the Azure Guaranty Claims.

    (b) *Treatment*: The Azure Guaranty Claims are Allowed Claims. Except to the extent that a holder of an Allowed Azure Guaranty Claim agrees to less favorable treatment, If not paid previously, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Azure Guaranty Claims, the Disbursing Agent

shall pay to the Holders of Azure Guaranty Claims, by wire transfer of immediately available funds, their Pro Rata portion of the Azure Guaranty Recovery.

(c)     *Voting*: Class 3 is Impaired and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

4.     **Class 4 — Trade Creditor Claims**

(a)     *Classification*: Class 4 consists of the Trade Creditor Claims.

(b)     *Treatment*:  The Trade Creditor Claims are Allowed Claims. Except to the extent that a Holder of an Allowed Trade Creditor Claim agrees to less favorable treatment, if not paid previously, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Trade Creditor Claims, each Holder of an Allowed Trade Creditor Claim shall receive, in exchange for such Allowed Trade Creditor Claim, Cash in an amount equal to 15% of the Face Amount of such Holder's Trade Creditor Claim from the Trade Creditor Claim Reserve; *provided*, that in the event the aggregate distributions to Holders of Trade Creditor Claims exceeds the Trade Creditor Claim Cap, Holders of Trade Creditor Claims shall receive their Pro Rata Share of the Trade Creditor Claim Cap.

(c)     *Voting*: Class 4 is Impaired and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.     **Class 5 — Noteholder Election Recovery Claims**

(a)     *Classification*: Class 5 consists of all Allowed Noteholder Election Recovery Claims.

(b)     *Treatment*: The Noteholder Election Recovery Claims are Allowed Claims. Claims may only be treated as Noteholder Election Recovery Claims upon the affirmative and irrevocable election of a Holder of a Claim classified in Class 6A or 6B to have their Claim treated in Class 5. Except to the extent that a Holder of an Allowed Noteholder Election Recovery Claim agrees to less favorable treatment, on the Effective Date, or as soon as reasonably practicable thereafter and prior to any transfer by the Debtors of any Assets to the Litigation Trust or to any Holder of any Claim or otherwise, in full and complete settlement, release and satisfaction of the Noteholder Election Recovery Claims ~~or as soon as practicable thereafter~~, each Holder of an Allowed Noteholder Election Recovery Claim shall receive in ~~full settlement, release, and satisfaction of~~ exchange for such Noteholder Election Recovery Claim ~~that is due and payable,~~ Cash from the Noteholder Election Recovery Reserve~~,~~ in an amount equal to the lesser of (i) the Face Amount of such Holder's Noteholder Election Recovery Claim, (ii) such Holder's Noteholder Election Recovery Claim's Pro Rata portion of the Noteholder Election Recovery Cap, or (iii) $70,000.

Notwithstanding the foregoing if the Bankruptcy Court determines that the existence of Class 5 and/or the Noteholder Election Recovery Claims violates any provisions of the Bankruptcy Code, Holders of Class 5 Noteholder Election Recovery Claims will be deemed to hold Claims under Class 6A or Class 6B in accordance with said Holder's original Claim classification.

(c)    *Voting:* Class 5 is Impaired and Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

6.    **Class 6A — Non-Petitioning Creditor Note Claims**

(a)    *Classification*: Class 6A consists of all Allowed Non-Petitioning Creditor Exchange Note Claims and Old Note Claims.

(b)    *Treatment*: The Non-Petitioning Creditor Note Claims are Allowed Claims.  Except to the extent that a Holder of an Allowed Non-Petitioning Creditor Note Claim agrees to less favorable treatment, each Holder of an Allowed Class 6A Claim shall receive in full settlement, release, and satisfaction of such Allowed Class 6A Claim that is due and payable, on the Effective Date, or as soon as reasonably practicable thereafter their Pro Rata portion of Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

(c)    *Voting*: Class 6A is Impaired and Holders of Class 6A Claims are entitled to vote to accept or reject the Plan.

7.    **Class 6B — Petitioning Creditor Exchange Note Claims**

(a)    *Classification*: Class 6B consists of all Allowed Petitioning Creditor Exchange Note Claims.

(b)    *Treatment*: The Petitioning Creditor Exchange Note Claims are Disputed Claims and may only become Allowed by Final Order of the Bankruptcy Court.  To the extent the Petitioning Creditor Exchange Note Claims are deemed Allowed Claims the Petitioning Creditor Exchange Note Claims are equitably subordinated pursuant to section 510(c) of the Bankruptcy Code and are only entitled to a recovery upon the satisfaction of all Claims in Class 6A.  In the event Petitioning Creditor Exchange Note Claims are found to be Allowed Claims and all Class 6A Non-Petitioning Creditor Exchange Note Claims are paid in full, and except to the extent that a Holder of an Allowed Petitioning Creditor Exchange Note Claim agrees to less favorable treatment, each Holder of an Allowed Class 6B Claim shall receive in full settlement, release, and satisfaction of such Allowed Class 6B Claim that is due and payable, on the Effective Date, or as soon as reasonably practicable thereafter their Pro Rata portion of the Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

Notwithstanding the foregoing, if the Bankruptcy Court determines it is unable to equitably subordinate the claims of Holders of Class 6B Claims through the Confirmation Order, Holders of Class 6B Claims will be deemed to hold claims under Class 6A and

will be entitled to their Pro Rata portion of Litigation Trust Interests which shall be distributed to Holders of Class 6 Claims in accordance with the terms of this Plan.

(c)     *Voting*: Class 6B is Impaired and Holders of Class 6B Claims are entitled to vote to accept or reject the Plan.

8.     **Class 7 — Interests**

(a)     *Classification*: Class 7 consists of all Interests.

(b)     *Treatment*:   On the Effective Date, all Interests shall be discharged, cancelled, ~~released,~~ and extinguished.  In exchange for the Shareholder New Value Contribution, the Holders making such Shareholder New Value Contribution shall receive their pro rata share of equity of the Reorganized Debtor in a pro rata amount equal to their portion of the Shareholder New Value Contribution made.

(c)     *Voting*:   Class 7 is Impaired, and Holders of Interests are entitled to vote to accept or reject the Plan.

## ARTICLE III.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.     *Voting Classes*

Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Holders of Claims in Class 1 (OCM Guaranty Claims), Class 2 (Corp Guaranty Claims) Class 3 (Azure Guaranty Claims), Class 4 (Trade Creditor Claims), Class 5 (Noteholder Election Recovery Claims) Class 6A (Non-Petitioning Creditor Exchange Note Claims), Class 6B (Petitioning Creditor Exchange Note Claims) and Class 7 (Interests) shall be entitled to vote to accept or reject this Plan.

B.     *Classes Presumed to Accept this Plan*

There are no Unimpaired Classes and no class is presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

C.     *Acceptance by Impaired Classes*

An Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims and Interests actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims and Interests actually voting in such Class have voted to accept the Plan.

D.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

E.    *Non-Consensual Confirmation*

The Debtors will seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code if any Voting Class fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code.   The Debtors reserve the right (a) to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or (b) to modify the Plan in accordance with Article XI.K hereof.

F.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Implementation of the Plan and Sources of Consideration for Plan Distributions*

The Debtors and Reorganized Debtor as applicable will fund distributions and other sources and uses contemplated by the Plan with the Plan Consideration and the transfer and assignment of the Litigation Trust Assets to the Litigation Trust.

1.    **The Shareholder New Value Contribution**

The Debtors propose to implement and consummate this Plan on and after the Effective Date. Within ten (10) Business Days of entry of the Confirmation Order, the Eletson Members shall contribute, or cause to be contributed, to Eletson Holdings the full amount of the cash portion of the Shareholder New Value Contribution which shall be a contribution of Cash and cash equivalents in a total aggregate value of $~~30~~37 million dollars.

The cash portion of the Shareholder New Value Contribution will be utilized as follows: *first*, for the payment of Administrative Claims including the Professional Fee Claims, DIP Claims (if any) and the Committee Professional Fee Claims including the funding any reserves

on account of the Professional Fee Claims and Committee Professional Fee Claims required by the terms of this Plan; *second*, to fund the Administrative Fund as set forth in Article IV.N; *third* to fund the Azure Guaranty Recovery; *fourth*, to fund the Eletson Corporation Guaranty Recovery, *fifth*, to fund the Trade Creditor Claim Reserve; *sixth*, to fund the Noteholder Election Recovery Reserve; and *seventh*, to fund the Litigation Trust.

The Collections Contribution constitutes an additional portion of the Shareholder New Value Contribution, and the Eletson Members shall cause the applicable Gas Ownership Defendant to direct the applicable portion of the Collections Contribution to the Litigation Trust within thirty (30) Business Days of the receipt of a final, non-appealable, determination payment in satisfaction of the Final Award.

## 2. <u>Distributable Cash</u>

Immediately upon the satisfaction of the payments provided for in Article IV A.1, the remaining cash portion of the Shareholder New Value Contribution shall become Distributable Cash which shall be transferred to the Litigation Trust in accordance with the terms of this Plan and the Litigation Trust Agreement. ~~Distributable Cash shall also include the SME Revenue transferred to the Litigation Trust as set out in the Litigation Trust Agreement.~~

## 3. <u>Excess SME Proceeds</u>

Beginning on January 31, 2025, and on July 31 and January 31 of each subsequent calendar year during the SME Excess Proceeds Period, the Reorganized Debtor shall transfer any SME Excess Proceeds for the immediately preceding six-month period to the Litigation Trust in accordance with the instructions provided to the Reorganized Debtor by the Litigation Trust Trustee. On each payment date the SME Excess Proceeds paid shall be accompanied with a reasonable accounting supporting the amounts of the Excess SME Proceeds transferred to the Litigation Trust. The Reorganized Debtor shall confer with the Litigation Trust Trustee with respect to any questions on the accounting and provide such information as the Litigation Trust Trustee shall reasonably request in connection therewith.

Neither the Litigation Trust nor Litigation Trust Trustee shall have any rights to direct the Reorganized Debtor in the operation and/or management of the SMEs after the Effective Date, during the Excess SME Revenue Period or otherwise. The Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee upon the execution of any letter of intent or other similar pre-sale documents entered into by the Reorganized Debtor or any affiliate of the Reorganized Debtor and any potential purchaser with respect to any SME and/or SME Vessels within ten (10) Business Days of execution of such document. In the event a sale is ultimately consummated, the Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of the consummation of such sale. The Litigation Trust shall have no right to direct, comment or impede any sale of any SME and/or SME Vessel by the Reorganized Debtor. The Litigation Trust and Litigation Trust Trustee as applicable are not, and are not intended to be, third party beneficiaries of any contract of sale, and are provided with no additional rights and/or standing to object to the terms of any sale of any SME or SME Vessel pursuant to the terms of this Plan. For the avoidance of doubt the Reorganized Debtor is not

required to consummate any sale of the SMEs or SME Vessels during the Excess SME Proceeds Period.

Unless the Reorganized Debtor and the Litigation Trust and Litigation Trust Trustee agree otherwise in writing, the Bankruptcy Court shall retain sole jurisdiction to resolve any dispute regarding the payment of the Excess SME Proceeds, the accounting supporting the Excess SME Proceeds, and/or the refund of any Excess SME Proceeds during the Excess SME Proceeds Period.

Upon the earlier of (i) the expiration of the Excess SME Proceeds Period or (ii) the Litigation Trust having received Excess SME Cash Flow Proceeds of $5 million in the aggregate and Excess SME Sale Proceeds of $5 million in the aggregate, the obligations of the Reorganized Debtor related to the Excess SME Proceeds hereunder, and any reporting obligations to the Litigation Trust related thereto shall cease, and the Reorganized Debtor shall have no further obligations related to the Excess SME Proceeds, and the Litigation Trust shall have no right or claim to any further Excess SME Proceeds. In the event the Excess SME Proceeds transferred to the Litigation Trust exceed (i) $5 million in the aggregate on account of the Excess SME Cash Flow Proceeds or (ii) $5 million in the aggregate on account of the Excess SME Sale Proceeds, the Litigation Trust shall within ten (10) Business Days of written notice of such over payment by the Reorganized Debtor, refund to the Reorganized Debtor the portion of the actually paid Excess SME Proceeds exceeding the thresholds in clauses (i) and (ii) above in accordance with the instructions provided to the Litigation Trust by the Reorganized Debtor.

4. **Litigation Trust Causes of Action**

On the Effective Date the Debtors shall fully and finally transfer and or assign each of the Litigation Trust Causes of Action and the applicable Litigation Trust Privileges to the Litigation Trust.

Litigation Trust Distributable Proceeds will be obtained from the Distributable Cash and the Litigation Trust Causes of Action, and Plan Consideration as applicable. Unless otherwise specified herein, Cash payments to be made pursuant to the Plan will be made by the applicable Disbursing Agent.

B. *Substantive Consolidation*

1. **Order Granting Plan Consolidation**

Unless and to the extent previously approved by a prior order of the Bankruptcy Court, at the Confirmation Hearing, the Bankruptcy Court will consider approval under the Plan of the Plan Consolidation.

2. **Plan Consolidation**

The Consolidating Debtors are holding companies that were formed for the express purpose of issuing the Exchange Notes. Pursuant to the Exchange Notes Indenture, the Consolidating Debtors are prohibited from holding or maintaining any assets. As the Exchange Notes and the claims related thereto will be discharged after the confirmation of these Chapter 11

Cases, the Debtors maintain there is no reason for the continued existence of the Consolidating Debtors. As such, the Consolidating Debtors will be consolidated into the Reorganized Debtor for the convenience of all parties, and with no impact to any operations, distributions, assets or rights of any party in interest or the Reorganized Debtor.

Upon the Effective Date, the Consolidating Debtors shall be consolidated for all purposes into the Reorganized Debtor and (i) all assets and liabilities of the Consolidating Debtors shall be consolidated and merged into Eletson Holdings, (ii) all guarantees of any Consolidating Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Consolidating Debtor, any guaranty thereof executed by either of the Consolidating Debtors and any joint or several liability of either of the Consolidating Debtors shall be one obligation of Eletson Holdings and (iii) each and every Claim filed or to be filed in the Chapter 11 Cases against any Debtor shall be deemed filed against Eletson Holdings and shall be one Claim against, and if to the extent allowed, shall become one obligation of Eletson Holdings; provided further, the consolidation shall also limit the rights of a creditor to assert that its Claim is secured by a right of setoff under section 553 of the Bankruptcy Code, and the Debtors will be deemed, for purposes of any Claims or determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, such that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to any of the Consolidating Debtors shall be offset against Claims against another Debtor. The substantive consolidation provided for in this section shall not affect the obligations of each and every Debtor to pay fees to the United States Trustee that may have come due prior to the Effective Date.

Pursuant to Bankruptcy Rule 9019 and any applicable state law and as consideration for the distributions and other benefits provided under the Plan, the provisions of this section shall constitute a good faith compromise and settlement of any Causes of Action or disputes that could be brought by a Holder of a Claim or Interest asserting that such Claim or Interest would have received more favorable treatment had substantive consolidation not been effected. This compromise and settlement is in the best interests of Holders of Claims and Interests and is fair, equitable and reasonable. Upon Confirmation of the Plan, the Plan shall be approved as a settlement of all such Causes of Action and disputes. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this settlement pursuant to Bankruptcy Rule 9019 and its finding that this is a good faith settlement pursuant to any applicable state laws, given and made after due notice and opportunity for hearing, and shall bar any such Cause of Action by any Holder of a Claim or Interest with respect to the matters described in this section.

C.     *Corporate Existence*

Except as otherwise provided in the Plan (including with respect to any Restructuring Transaction undertaken pursuant to the Plan), the Reorganized Debtor Organizational Documents, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on and after the Effective Date, each Debtor shall be deemed to merge with and into the Reorganized Debtor, with the Reorganized Debtor being the sole surviving entity and the separate existence of the Consolidating Debtors shall cease and only the Reorganized Debtor shall continue to exist and as a separate corporation, with all the powers of a corporation pursuant to the applicable Liberian law and pursuant to the respective certificate of incorporation and bylaws in effect before the Effective Date, except to the extent such certificate of

incorporation and bylaws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal, country of incorporation, or applicable foreign law).

D.     *Vesting of Assets in the Reorganized Debtor*

Except for the Litigation Trust Causes of Action and Plan Consideration as applicable as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Litigation Trust Agreement), on the Effective Date, pursuant to the Plan all property in each Estate and any property acquired by any of the Debtors, including Intercompany Interests held by the Debtors in non-Debtor subsidiaries, shall revest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.     *Dissolution of the Committee*

Upon the Effective Date, the Committee shall dissolve automatically whereupon its members, Committee Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; (ii) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code for Committee Professional Fee Claims; (iii) any pending motions or proceedings to which the Committee is a party (including any related appeals in connection therewith); and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order, including related appeals.  The Committee members and the Committee Professionals shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with the items listed in the preceding sentence after the Effective Date.

F.     *Reorganized Debtor Organizational Documents*

To the extent required under the Plan or applicable non-bankruptcy law, on the Effective Date, the Reorganized Debtor will file such Reorganized Debtor Organizational Documents as are required to be filed with the applicable authorities in the state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor Organizational Documents will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtor may amend and restate the Reorganized Debtor Organizational Documents, and the Reorganized Debtor may file the certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent

documents as permitted by the laws of the country of incorporation and the Reorganized Debtor Organizational Documents.

G.      *Appointment of Directors and Officers of the Reorganized Debtor*

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, in the Plan Supplement the identity and any affiliations of any Person proposed to serve on as a Director or officer of the Reorganized Debtor, which appointments shall be confirmed in the Confirmation Order. To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

H.      *Creation of the Litigation Trust*

This Plan contemplates the transfer of the Litigation Trust Assets into the Litigation Trust for distribution of the Litigation Trust Distributable Proceeds to Holders of Litigation Trust Interests.

Prior to the Effective Date, the Debtors and the Litigation Trust Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Plan, which shall be for the benefit of the Litigation Trust Beneficiaries. Additionally, on the Effective Date the Debtors shall transfer and/or assign and shall be deemed to transfer and/or assign to the Litigation Trust all of their rights, title and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims and Liens, subject only to (a) Litigation Trust Interests and (b) the Litigation Trust Expenses as provided for in this Plan and the Litigation Trust Agreement. Also on the Effective Date, subject to, in all respects, the terms of the Litigation Trust Agreement, all Litigation Trust Privileges shall transfer to and vest exclusively in the Litigation Trust.

The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trust Trustee. The powers, rights, and responsibilities of the Litigation Trust Trustee shall be specified in the Litigation Trust Agreement. The Litigation Trust Trustee shall hold and distribute the Litigation Trust Assets in accordance with the Plan and the Litigation Trust Agreement. Other rights and duties of the Litigation Trust Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement.

After the Effective Date, the Debtors and the Reorganized Debtor shall have no interest in the Litigation Trust Assets except to the extent set forth in this Plan and the Litigation Trust Agreement. To the extent that any Litigation Trust Assets cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Litigation Trust Assets shall be deemed to have been retained by the Reorganized Debtor and the Litigation Trust Trustee or Litigation Trust as applicable shall be deemed to have been designated as a representative of the Reorganized Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets on behalf of the Reorganized Debtor for the benefit of the Litigation Trust Beneficiaries.

Notwithstanding the foregoing, all net proceeds of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed in accordance with this Plan.

The Litigation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Litigation Trust Trustee and to ensure the treatment of the Litigation Trust as a liquidation trust for federal income tax purposes, all consistent with this Plan.

Notwithstanding anything in this Plan to the contrary, the Reorganized Debtor shall have no obligation to provide any funds or financing to the Litigation Trust, other than the obligation to contribute the Litigation Trust Assets and the initial funding of the Administrative Fund, and under no circumstances will the expenses of the Litigation Trust be paid or reimbursed by the Debtors or the Reorganized Debtor, as applicable.

The Litigation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Bankruptcy Court, upon motion by a party in interest may extend the term of the Litigation Trust if it is necessary to facilitate or complete the distribution of the Litigation Trust Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Litigation Trust Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidation trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

I.    *Transfer of Assets and the Litigation Trust Causes of Action to the Litigation Trust*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Litigation Trust is intended to be treated as a "liquidating trust" for U.S. federal income tax purposes pursuant to Treasury Regulation section 301-7701-4(d), and the Litigation Trust Trustee will take this position on the Litigation Trust's tax return accordingly. The Litigation Trust Beneficiaries shall be treated as the grantors of the Litigation Trust and as the deemed owners of the Litigation Trust Assets. For U.S. federal income tax purposes, the transfer of assets to the Litigation Trust will be deemed to occur as (a) a first-step transfer of the Litigation Trust Assets to the Litigation Trust Beneficiaries, and (b) a second-step transfer by Litigation Trust Beneficiaries. As a result, the transfer of the Litigation Trust Assets to the Litigation Trust should be a taxable transaction, and the Debtors or the Reorganized Debtor should recognize gain or loss equal to the difference between the tax basis and fair value of such assets. As soon as possible after the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trust Trustee shall make a good faith valuation of the Litigation Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors or the Reorganized Debtor, Litigation Trust Trustee, and the Holders of Claims receiving Litigation Trust Interests shall take consistent positions with respect to the valuation of the Litigation Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

J.    *Liabilities of the Litigation Trust*

The liabilities transferred to the Litigation Trust shall include all Litigation Trust Interests and the Litigation Trust Expenses.

In accordance with Article IV.I, the Debtors will transfer the Litigation Trust Assets to the Litigation Trust to make the payments required to Litigation Trust Beneficiaries pursuant to the Plan and the Litigation Trust Agreement.

K.    *Appointment of the Litigation Trust Trustee and Members of the Litigation Trust Oversight Committee*

The Committee shall appoint the Litigation Trust Trustee who shall have the power to administer the Litigation Trust and will be advised by the Litigation Trust Oversight Committee as specified in this Plan and the Litigation Trust Agreement. For the avoidance of doubt the members of the Litigation Trust Oversight Committee will be appointed by the Committee pursuant to the terms of the Litigation Trust Agreement.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, on or prior to the Confirmation Date, in the Plan Supplement, and with the consent and approval of the Committee, the identity and any affiliations of the Litigation Trust Trustee and any Person proposed to serve on the Litigation Trust Oversight Committee, which appointments shall be confirmed in the Confirmation Order. To the extent any such Person is an "insider" under the Bankruptcy Code, the nature of any compensation for such Person will also be disclosed.

The Debtors and the Litigation Trust Trustee shall enter into a Litigation Trust Agreement in substantially the form which shall be filed with the Bankruptcy Court with the Plan Supplement. On the Effective Date, and upon the establishment of the Litigation Trust the Litigation Trust Trustee shall succeed in all respects to all of the rights, privileges and immunities of the Debtors in regard to the Litigation Trust Causes of Action and the Litigation Trust Privileges and shall be appointed as the sole party with standing to pursue Litigation Trust Causes of Action on behalf of the Debtors as of the Effective Date. The Litigation Trust Trustee, and his/her successors, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the Litigation Trust, and (c) the payment of the final distributions to Holders of Litigation Trust Interests pursuant to the Plan; or (ii) the expiration of the term of such Litigation Trust Trustee's employment agreement or such Litigation Trust Trustee's resignation, death, incapacity, removal or termination by the Litigation Trust Oversight Committee pursuant to the Litigation Trust Agreement or order of the Bankruptcy Court. Notwithstanding the foregoing, the Debtor Privileges will not transfer to the Litigation Trust and shall remain solely in the possession of the Debtors or Reorganized Debtor as applicable.

As set forth herein, the pursuit and collection of the Litigation Trust Causes of Action and distribution of the proceeds thereof to the Litigation Trust Beneficiaries shall become the responsibility of the Litigation Trust Trustee who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property of the Litigation Trust free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, but subject to the terms of the Plan and the Litigation Trust Agreement.

Upon creation of the Litigation Trust, the Litigation Trust Trustee shall be the trustee of the Litigation Trust for all purposes and in all respects, with all necessary and appropriate power to act for, on behalf of and in the name of the Litigation Trust.

L.    *Cooperation and Privilege*

To effectively investigate, prosecute, compromise, and/or settle the Litigation Trust Causes of Action on behalf of the Litigation Trust, the Litigation Trust Trustee and its counsel and representatives may require reasonable access to documents and information exclusively relating to the Litigation Trust Causes of Action in the possession of the Debtors, the Reorganized Debtor, and/or the Committee. Accordingly, the Litigation Trust Agreement shall provide for the Litigation Trust Trustee's reasonable access to the Debtors' records and information (which shall be maintained by the Reorganized Debtor) and the Committee's records and information, each of which relating to the Litigation Trust Causes of Action, including electronic records or documents, as further detailed in, and subject in all respects to, the Litigation Trust Agreement. The Litigation Trust Agreement shall also provide that as of the Effective Date, and subject in all respects to the terms of the Litigation Trust Agreement, the Litigation Trust Privileges, and privileges held by the Committee (if any) shall transfer to and vest exclusively in the Litigation Trust, and that the Reorganized Debtor shall preserve all of the Debtors' records and documents (including all electronic records or documents) exclusively related to the Litigation Trust Causes of Action and Litigation Trust Privileges for the later of a period of three (3) years after the Effective Date or until such later time as the Litigation Trust Trustee notifies the Reorganized Debtor in writing that such records are no longer required to be preserved.

M.    *Duties of the Litigation Trust Trustee*

In addition to the duties set forth elsewhere in this Plan, the Litigation Trust Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee as set forth more specifically in the Litigation Trust Agreement, and herein, shall have the following duties:

1.    to manage, control and operate the Litigation Trust;

2.    to investigate and, if necessary and appropriate, to prosecute and enforce (or not prosecute or enforce), or to compromise, release or settle any Litigation Trust Causes of Action on behalf of the Estate and the Litigation Trust without further approval of or application to the Bankruptcy Court;

3.    to invest any Cash and Litigation Trust Assets;

4.    to file any and all reports, pleadings, tax returns and other documents;

5.    to pay any and all distributions required or permitted to be made under this Plan;

6.    to pay out of the Litigation Trust any and all Claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all

Post-Confirmation Expenses accruing from and after the Effective Date in accordance with the Administrative Budget;

      7.      to employ, supervise and compensate any employees of the Litigation Trust;

      8.      to make and file tax returns for the Litigation Trust;

      9.      act as the Disbursing Agent to Holders of Class 6A Claims in accordance with the terms of this Plan, and in such capacity shall (i) disburse all Cash held by the Litigation Trust to the Holders of Class 6A Claims in any amount in excess of $1 million over the then current budgeted needs of the Litigation Trust pursuant to the Administrative Budget within forty-five (45) days of the Effective Date and at least semi-annually thereafter, (ii) within ten (10) days upon receipt of any Excess SME Proceeds disburse to Holders of Class 6A Claims one hundred percent of such Excess SME Proceeds, and (iii) within ten (10) days upon receipt of any portion of the Collections Contribution disburse to Holders of Class 6A Claims one hundred percent of such Collections Contribution;

      10.      to commence and pursue dissolution or winding up of proceedings for the Litigation Trust;

      11.      to file, prosecute, compromise and settle objections to Claims after the Effective Date other than Administrative Claims or Claims seeking administrative allowance;

      12.      to prepare and deliver to the Litigation Trust Oversight Committee for approval the Administrative Budget of the Litigation Trust and any amendments or modifications thereto; and

      13.      to request the entry of a Final Decree.

In connection with the execution of his or her duties under this Plan, the Litigation Trust Trustee, at the direction of and in consultation with the Litigation Trust Oversight Committee as set forth more specifically in the Litigation Trust Agreement and herein, shall be authorized:

      1.      to execute such documents and to take such other actions as are necessary to effectuate this Plan and perform his or her duties as a trustee of the Litigation Trust, including to execute such documents and take such other action on behalf of the Litigation Trust;

      2.      to open, close and manage bank accounts, and to enter into business transactions within or without the ordinary course of business;

      3.      to retain and pay professionals (including the Professionals or the Committee Professionals) or other Persons to assist the Litigation Trust Trustee in the administration of the Litigation Trust, without prior Bankruptcy Court approval;

      4.      to incur any reasonable and necessary expenses (up to the amounts set forth in the Administrative Budget) in the performance of his or her duties as Litigation Trust Trustee;

5.          to compromise, release or settle any Disputed Claim or Litigation Trust Cause of Action or to sell or dispose of any Litigation Trust Asset; and

6.          to employ such other procedures, not inconsistent with this Plan, necessary for the Litigation Trust Trustee to perform his or her duties hereunder (including, without limitation, to borrow funds to pursue the Litigation Trust Causes of Action under terms in its sole discretion).

The Litigation Trust Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Litigation Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code (including, without limitation, commencing, prosecuting or settling Litigation Trust Causes of Action and asserting claims, defenses, offsets and privileges arising from the Litigation Trust Privileges), to the extent not inconsistent with this Plan. In discharging the foregoing responsibilities, the Litigation Trust Trustee shall be entitled to exercise and rely upon his or her business judgment in consultation with the Litigation Trust Oversight Committee. The Litigation Trust Trustee shall not be obligated to take any action or to pursue any Litigation Trust Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Litigation Trust Trustee be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the generality of the foregoing, the Litigation Trust Trustee may consider the interests of Holders of Allowed Class 6A Claims and Class 6B Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment. Such authorization and benefits shall also extend to any, each and every successor Litigation Trust Trustee, without reservation or limitation.

The Litigation Trust Trustee, at the direction of the Litigation Trust Oversight Committee, may expend the Cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Litigation Trust Assets during the administration thereof, (b) to pay the respective reasonable administrative expenses (including, but not limited to, any United States Trustee Quarterly Fees, Litigation Trust Trustee fees, professional fees, and taxes imposed on the Litigation Trust), and (c) to satisfy other respective liabilities incurred by the Litigation Trust in accordance with the Plan or the Litigation Trust Agreement.

N.    *Post Confirmation Expenses*

Prior to the Effective Date, the Committee shall provide the Administrative Budget (with the consent of the Debtors, not to be unreasonably withheld) for services to be rendered to the Litigation Trust, which Administrative Budget may be altered from time to time by the Litigation Trust Trustee with the consent of the Litigation Trust Oversight Committee in accordance with the Litigation Trust Agreement. The Litigation Trust Oversight Committee shall approve in advance the Litigation Trust Trustee's retention of professionals and their compensation arrangements.

On the Effective Date, the Litigation Trust Trustee shall establish the Administrative Fund. The initial amount of the Administrative Fund shall be based on the Litigation Trust

Trustee's good faith estimate of the cost necessary to complete the Litigation Trust's obligations under this Plan and the Litigation Trust Agreement and will include the amount budgeted for the Litigation Trust's professionals provided, however, the initial Administrative Fund shall not exceed the amount of $200,000 necessary to commence and/or pursue and Litigation Trust Causes of Action as of the Effective Date. The Litigation Trust shall pay all Litigation Trust Expenses related to carrying out its obligations under this Plan and the Litigation Trust Agreement from the Administrative Fund and, in the Litigation Trust Trustee's discretion, and with approval of the Litigation Trust Oversight Committee, may add additional amounts of Cash held by the Litigation Trust to the Administrative Fund to further the prosecution of the Litigation Trust Causes of Action or for administration and other miscellaneous needs of the Litigation Trust without further notice or motion in accordance with the terms of the Litigation Trust Agreement.

The reasonable and necessary fees and actual and necessary expenses of the Litigation Trust Trustee, the Litigation Trust Oversight Committee and the professionals retained by the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall be paid solely by the Litigation Trust Trustee in accordance with the terms of such respective Person's employment with the Litigation Trust.

O.     *Liability; Indemnification*

Neither the Litigation Trust Trustee nor any member of the Litigation Trust Oversight Committee shall be liable for any act or omission taken or omitted to be taken in his or her capacity as Litigation Trust Trustee or as a member of the Litigation Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Litigation Trust Trustee's or Litigation Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Litigation Trust Trustee and the Litigation Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be.

Notwithstanding such authority, the Litigation Trust Trustee and the Litigation Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Litigation Trust Trustee or the Litigation Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Litigation Trust shall indemnify and hold harmless the Litigation Trust Trustee, the Litigation Trust Oversight Committee and their respective designees and professionals, and all duly designated agents and representatives (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Litigation Trust Trustee or the Litigation Trust

Oversight Committee, as the case may be, or the implementation or administration of this Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by Final Order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

P.    *Litigation Trust Oversight Committee*

On the Effective Date, the Litigation Trust Oversight Committee shall have the duties set forth herein to maximize distributions to Litigation Trust Beneficiaries.  On the Effective Date, the Litigation Trust Oversight Committee shall be entitled to the rights, powers, immunities and privileges of the Committee.

The Litigation Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of this Plan and in furtherance of the execution of this Plan. Additionally, the Litigation Trust Oversight Committee shall have the following rights and duties:

1.    to approve any release or indemnity in favor of any third party granted or agreed to by the Litigation Trust Trustee;

2.    to authorize the Litigation Trust Trustee to commence any Litigation Trust Cause of Action;

3.    to approve the settlement of any Litigation Trust Cause of Action and to approve any application by the Litigation Trust Trustee for an order in connection with any such settlement;

4.    to review all financial information relating to the Litigation Trust (including any quarterly reports required by the Office of the United States Trustee), which shall be promptly provided by the Litigation Trust Trustee upon request by the Litigation Trust Oversight Committee;

5.    to monitor distributions to Holders of Litigation Trust Interests;

6.    to take such other actions as it deems necessary and appropriate with respect to the implementation of the Plan;

7.    to approve the Litigation Trust Trustee's retention of professionals;

8.    to remove the Litigation Trust Trustee in accordance with the procedures in the Litigation Trust Agreement; and

9.    to approve the Administrative Budget after the Effective Date.

The duties and powers of the Litigation Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the Litigation Trust,

and (iii) the payment of the final distributions to Holders of Litigation Trust Interests pursuant to this Plan.

The Litigation Trust Oversight Committee shall have the right, but shall not be required, to retain counsel of its choice, and the reasonable and necessary fees and expenses of such counsel shall be paid by the Litigation Trust from the Administrative Fund. The reasonable and necessary fees and expenses of counsel to the Litigation Trust Oversight Committee shall be paid in accordance with the Litigation Trust Agreement.

Q.    *Good Faith*

Each of the Litigation Trust Trustee and Litigation Trust Oversight Committee shall act in good faith in carrying out its duties and responsibilities and use its best efforts to pursue or settle the Litigation Trust Causes of Action and maximize the value of the Litigation Trust Assets and minimize claims against the Litigation Trust.

R.    *Saturday, Sunday or Legal Holiday*

If any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

S.    *Exemption from Certain Taxes and Fees*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

T.    *Issuance of Documents Necessary to Consummate the Plan*

On or as soon as practicable after the Effective Date, the Debtors shall execute and deliver such other agreements, documents and instruments, as necessary to effectuate the Plan.

U.    *Final Decree*

Upon the Litigation Trust Trustee's determination that all Litigation Trust Causes of Action held by the Litigation Trust or the Litigation Trust Trustee, as applicable, have been finally resolved, transferred, or abandoned, the Litigation Trust shall move for the entry of a Final Decree pursuant to section 350 of the Bankruptcy Code closing the Chapter 11 Cases. The Litigation Trust may request the entry of the Final Decree notwithstanding the fact that not all Litigation Trust Assets have been monetized and distributed to Litigation Trust Beneficiaries.

# ARTICLE V.

## RETAINED CAUSES OF ACTION

A.    *Maintenance of Causes of Action*

Except as otherwise provided in the Plan, the Litigation Trust shall retain all rights on behalf of the Debtors and the Estates to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Litigation Trust Causes of Action transferred to the Litigation Trust.  The Reorganized Debtor shall retain all rights to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, any and all Retained Causes of Action.

Except as otherwise provided in the Plan, upon the Effective Date and subject to the terms of the Litigation Trust Agreement in accordance with section 1123(b)(3) of the Bankruptcy Code, the Litigation Trust Causes of Action shall vest in the Litigation Trust.  The Litigation Trust Trustee, on behalf of the Litigation Trust, shall retain and may exclusively enforce any and all Litigation Trust Causes of Action, and commence, pursue and settle the Litigation Trust Causes of Action in accordance with this Plan and the Litigation Trust Agreement as applicable, subject to the advice of counsel and the consent of the Litigation Trust Oversight Committee.  The Litigation Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Litigation Trust Causes of Action without the consent or approval of any third party and without any further order of court subject to the advice of counsel and the consent of the Litigation Trust Oversight Committee as required by the Litigation Trust Agreement.

B.    *Preservation of Causes of Action*

Except as otherwise expressly provided in this Plan, from and after the Effective Date, unless expressly designated as a Litigation Trust Cause of Action, the Reorganized Debtor shall maintain and may litigate or settle any Retained Causes of Action, including the recovery or subordination actions under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 of the Bankruptcy Code or any other Causes of Action or rights to payments or claims that belong to the Debtors.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, no other Person may pursue any such Avoidance Actions, recovery or subordination actions or other Causes of Action that belong to the Debtors, Reorganized Debtor or the Litigation Trust as applicable, unless otherwise provided by order of the Bankruptcy Court.

To the extent any Claim or Cause of Action has not independently been reviewed by the Independent Committee and/or otherwise settled prior to the Effective Date, and such Claim or Cause of Action is designated a Litigation Trust Cause of Action, the Litigation Trust Trustee shall perform an independent investigation regarding whether such Litigation Trust Cause of Action, shall be investigated or pursued.  It is possible that there may be other Causes of Action which currently exist or may subsequently arise but relate to facts and circumstances arising prior to the Effective Date that are not set forth herein, because the facts upon which such Causes

of Action are based are not fully or currently known by the Debtors and, as a result, cannot be specifically referred to herein (collectively, the "Unknown Causes of Action").  Within twenty (20) Business Days of the discovery of the facts and circumstances underlying an Unknown Cause of Action, the Independent Committee shall notify the Committee or Litigation Trust Trustee as applicable of the existence of said Unknown Cause of Action, and the Independent Committee and Committee or Litigation Trust Trustee as applicable shall confer and make a determination of whether such Unknown Cause of Action will be transferred to the Litigation Trust as a Litigation Trust Cause of Action. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over any dispute between the Independent Committee and the Committee or Litigation Trust Trustee as applicable regarding the ownership of a discovered Unknown Cause of Action such that ownership of said discovered Unknown Cause of Action complies with the terms of this Plan.

C.    *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Claim or Cause of Action against a Creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtors expressly reserve such Claim or Cause of Action for later adjudication unless transferred to the Litigation Trust, (including, without limitation, Unknown Causes of Action), and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Claims or Causes of Action have been released in the Plan or other Final Order.  In addition, the Debtors, the Litigation Trust and any successor entities under the Plan as applicable expressly reserve the right to pursue or adopt any Claim alleged in any lawsuit in which the Debtors are defendants or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from Debtors or a transfer of money or property from the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Litigation Trust, as applicable, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a Proof of Claim against the Debtors in these Bankruptcy Cases; (ii) such Creditor's Proof of Claim has been objected to; *provided, however,* that the Litigation Trust may not file an objection to a Claim if such Creditor's Proof of Claim has previously been objected to; (iii) such Creditor's Claim was included in the Debtors' Schedules; or (iv) such Creditor's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

D.    *Retained Causes of Action and Retained Causes of Action Contribution*

On or before the expiration of any applicable statute of limitation, the Reorganized Debtor may initiate any Retained Causes of Action in any appropriate court of competent jurisdiction.  Neither the Litigation Trust nor Litigation Trust Trustee shall have any rights to

direct the Reorganized Debtor in the pursuit or settlement of the Retained Causes of Action. Beginning on the six-month anniversary of the Effective Date and every six months thereafter, the Reorganized Debtor shall provide the Litigation Trust and the Litigation Trust Trustee a report on the status of the pursuit of any Retained Causes of Action. The Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of any proposed settlement of any Retained Cause of Action. In the event of a successful collection of any Retained Cause of Action the Reorganized Debtor shall notify the Litigation Trust and Litigation Trust Trustee within ten (10) Business Days of the collection made thereon. The Litigation Trust and Litigation Trust Trustee as applicable are not, and are not intended to be, third party beneficiaries of the proceeds of any Retained Causes of Action, and are provided with no additional rights and/or standing to object to the terms of any litigation strategy or proposed settlement of any Retained Causes of Action pursuant to the terms of this Plan. For the avoidance of doubt the Reorganized Debtor is not required to pursue or settle any Retained Causes of Action.

Within ten (10) Business Days of receipt of any Retained Causes of Action Contributions arising from the final, non-appealable prosecution of a Retained Cause of Action or the settlement of a Retained Cause of Action, the Reorganized Debtor shall transfer the applicable Retained Causes of Action Contributions to the Litigation Trust in accordance with the instructions provided by the Litigation Trust Trustee. Each payment of the Retained Causes of Action Contributions paid shall be accompanied with a reasonable accounting supporting the amounts of the Retained Causes of Action Contributions transferred to the Litigation Trust.

Upon the resolution of all Retained Causes of Action any reporting obligations of the Reorganized Debtor to the Litigation Trust regarding the prosecution and/or settlement of any Retained Causes of Action shall cease, and the Reorganized Debtor shall have no further obligations related to the Retained Causes of Action Contributions, and the Litigation Trust shall have no right or claim to any proceeds of any Causes of Action retained by the Debtors. In the event the any Retained Causes of Action Contribution transferred to the Litigation Trust exceed seventy-five percent (75%) of the net cash recoveries of the applicable Retained Cause of Action, within ten (10) Business Days of written notice of such over payment by the Reorganized Debtor, the Litigation Trust shall refund the Reorganized Debtor the portion of the actually paid Retained Cause of Action Contributions exceeding net cash recovery threshold set forth in this Plan.

Unless the Reorganized Debtor and the Litigation Trust and Litigation Trust Trustee agree otherwise in writing, the Bankruptcy Court shall retain sole jurisdiction to resolve any dispute regarding the payment of the Retained Causes of Action Contributions, the accounting supporting the Retained Causes of Action Contributions, and the refund of any overpayments of Retained Causes of Action Contributions.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.  *Rejection of Executory Contracts or Unexpired Leases*

On the Effective Date, except for any executory contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, each executory contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code §§ 365 and 1123, effective as of the Confirmation Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code §§ 365 and 1123 as of the Confirmation Date.

B.  *Rejection Damages Bar Date*

Except to the extent another Claims Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under this Plan must be filed with the Bankruptcy Court, and a copy served on counsel for the Debtors, the Reorganized Debtor and the Litigation Trust Trustee, within fifteen (15) days of the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Reorganized Debtor, the Litigation Trust, the Litigation Trust Trustee, their successors, their assigns or their Assets.  Any timely filed Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 4 (Trade Creditor Claims).  Nothing in this Plan extends or modifies any previously applicable Claims Bar Date.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.  *Disbursing Agent*

1.  **Litigation Trust Trustee as Disbursing Agent for Class 6A Claims and Class 6B Claims**

The Reorganized Debtor shall be the Disbursing Agent for any payments made to parties other than creditors that shall receive Litigation Trust Interests and shall make all required distributions to such creditors pursuant to this Plan.  The Litigation Trust Trustee shall be the Disbursing Agent for creditors that shall receive Litigation Trust Interests and shall make all required distributions to such creditors pursuant to Article IV.M.9 of this Plan.

2.  **Alternative Disbursing Agent Qualification**

Other than as set forth in this Plan, after the Effective Date no Person other than the Litigation Trust Trustee (or the Reorganized Debtor to the extent any applicable disbursement to be made by the Reorganized Debtor as Disbursing Agent could not be effected on the Effective

Date) shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Litigation Trust Trustee consents in writing to that Person serving as Disbursing Agent, and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under this Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his or her duties as the Disbursing Agent under this Plan or order of the Bankruptcy Court.

B.     *Time and Manner of Distributions*

The Disbursing Agent shall make Distributions under the Plan on account of Claims Allowed on the Effective Date or as soon as practicable after the Effective Date, except as otherwise agreed to by the Litigation Trust Oversight Committee or by order of the Bankruptcy Court. The Litigation Trust Trustee as Disbursing Agent shall have the power, subject to Litigation Trust Oversight Committee consent, to make interim distributions to Litigation Trust Beneficiaries in accordance with this Plan if the Litigation Trust Trustee determines that such interim distributions are warranted and economical. If the Litigation Trust Trustee determines to make interim distributions to Litigation Trust Beneficiaries, the Litigation Trust Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes and reserves necessary to provide for the resolution of Litigation Trust Causes of Action. Amounts withheld will be placed in an interest-bearing account, which shall fund ongoing expenses and costs relating to such reserves, including, without limitation, taxes in respect of Litigation Trust Causes of Action, if any.

At the option of the Disbursing Agent, except as otherwise provided in this Plan, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH. Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a distribution of Cash in whole cents (rounded to the nearest whole dollar when and as necessary). Any distribution of less than $50.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $50.00 will not receive any distribution unless and until the aggregate of such distributions exceed $50.00. Such undistributed funds shall remain with and vest in the Litigation Trust for distribution to other Holders of Allowed Claims.

C.     *Interest on Claims*

Except as otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim unless all Claims have been paid in full in cash.

D.     *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Litigation Trust and Litigation Trust Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. For tax purposes, distributions received in respect of Allowed

Claims will be allocated first to the principal amount of Allowed Claims with any excess allocated, if applicable, to unpaid interest that accrued on such Claims.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    **Delivery of Distributions in General**

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the applicable Disbursing Agent (i) at the addresses set forth on the Proof of Claim or Interest filed by such Holder (or at the last known address of such Holder if no motion requesting payment or Proof of Claim or Interest is filed or the Debtors and the Litigation Trust have been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Litigation Trust Trustee or the Debtors as applicable after the date of any related Proof of Claim or Interest, or (iii) at the addresses reflected in the Schedules if no Proof of Claim or Interest has been filed and the Litigation Trust Trustee or the Debtors have not received a written notice of a change of address.

2.    **Undeliverable Distributions**

a.    Holding of Undeliverable Distributions.

If any distribution to a Holder of an Allowed Claim is returned as undeliverable, no further distributions shall be made to such Holder unless and until notification in writing of such Holder's then-current address is provided. Undeliverable distributions shall be returned and shall remain in the possession of the Litigation Trust until such time as a distribution becomes deliverable. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind. As soon as reasonably practicable, the Litigation Trust shall make all distributions that become deliverable.

b.    Failure to Claim Undeliverable Distributions.

Any Holder of an Allowed Claim (irrespective of when a Claim became an Allowed Claim) that does not assert a Claim pursuant hereto for an undeliverable distribution (regardless of when not deliverable) within ninety (90) days after the distribution has been attempted to be made to the Holder of the Allowed Claim shall have its Claim related to such undeliverable distribution satisfied and shall be forever barred from asserting any such Claim against the Litigation Trust or be entitled to a further distribution. In such cases, any Cash held for distribution on account of such Claims shall be the property of the Litigation Trust free of any such Claim. Nothing contained herein shall require the Litigation Trust Trustee or any interested party to attempt to locate any Holder of an Allowed Claim.

F.    *Claims Administration Responsibility*

1.    **Reservation of Rights to Object to Claims**

Except as provided in Article II.B hereof, for the avoidance of doubt, nothing in this Section F shall affect the rights, if any, of any interested party to object to any Claim or Interest before the Effective Date. Unless a Claim or Interest is expressly described as an Allowed Claim

or Interest pursuant to or under this Plan, or otherwise becomes an Allowed Claim or Interest prior to Effective Date, the Debtors reserve any and all objections to any and all Claims and Interests and motions or requests for the payment of Claims or Interests, whether administrative expense, priority, secured or unsecured, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract. The Debtors' failure (as applicable) to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Debtors' rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim or Interest is sought to be enforced by the Holder of such Claim or Interest prior to the Effective Date.

2. **Filing of Objections**

After the Effective Date, the Reorganized Debtor shall have the sole authority to file objections and otherwise object to all Administrative Claims, and all claims seeking allowance as Administrative Claims, not paid on or prior to the Effective Date.

On the Effective Date, the Litigation Trust and the Litigation Trust Trustee, as applicable, shall assume the right and obligation to prosecute any Claim Objections (other than Administrative Claims or claims seeking allowance as Administrative Claims) which have not been previously adjudicated prior to the Effective Date. After the Effective Date, the Litigation Trust and Litigation Trust Trustee, as applicable, shall have the sole authority to file objections and otherwise object to all Claims (other than Administrative Claims or claims seeking allowance as Administrative Claims) which are paid on or after the Effective Date.

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if service is made by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims must be filed and served not later than the Objection Deadline.

3. **Determination of Claims**

Any Claim as to which a Proof of Claim or Interests or motion or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law, or (v) the lack of (a) an objection to such Claim or Interest, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim or Interest filed by the Debtors on or prior to any applicable deadline for filing such objection or application with respect to such Claim or Interest. Any such Claim or Interest determined to be Allowed shall be deemed to be an Allowed Claim for such liquidated amount (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to

appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) and shall be satisfied in accordance with this Plan. Nothing contained in this Plan shall constitute or be deemed a waiver of any Claim, right or Cause of Action that the Debtors may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

G.    *Procedures for Treating and Resolving Disputed and Contingent Claims or Interests*

1.    **No Distributions Pending Allowance**

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim or Interest; provided, however, that in the event that only a portion of such Claim or Interest is an Allowed Claim or Interest, the Disbursing Agent may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim or Interest that becomes an Allowed Claim or Interest.

2.    **Claim Estimation**

Prior to the Effective Date the Debtors, and after the Effective Date the Litigation Trust Trustee, as applicable, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code; provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to section 502(c) of the Bankruptcy Code, and (ii) the timing and procedures for such estimation proceedings, if any.

H.    *Setoffs and Recoupment*

Prior to the Effective Date the Debtors, and after the Effective Date the Litigation Trust Trustee, as applicable, may, pursuant to Section 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to this Plan any claims or Causes of Action of any nature whatsoever the Debtors, Reorganized Debtor or the Litigation Trust, as applicable, may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, or Litigation Trust as applicable, of any right of setoff or recoupment the Debtors or Litigation Trust may have against the Holder of such Claim, nor of any other claim or Cause of Action.

I.    *Allowance and Disallowance of Claims Subject to Section 502 of the Bankruptcy Code*

Allowance and disallowance of Claims shall be in all respects subject to the provisions of Section 502 of the Bankruptcy Code, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

## J.   *Cancellation of Instruments and Agreements*

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, or agreements evidencing, giving rise to or governing any Claim shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the obligations of the Debtors under such promissory notes, share certificates, instruments, indentures or agreements shall be satisfied and the Holders thereof shall have no rights against the Debtors, the Estates, the Committee, the Reorganized Debtor, the Litigation Trust Trustee, the Litigation Trust Oversight Committee, and/or the Litigation Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in this Plan.  In addition, the obligations of the Exchange Notes Trustee under or in connection with the Exchange Notes Indenture and the obligations of the Old Notes Trustee under the Old Notes Indenture shall be discharged and deemed satisfied on the Effective Date except to the extent necessary to comply with the terms of this Plan, including to facilitate the distributions provided for in this Plan to the applicable Holders of Claims and cancelling existing security interests.  For the avoidance of doubt, nothing contained in this Plan or the Confirmation Order shall limit or affect the standing of the Exchange Notes Trustee or Old Notes Trustee to appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court on and after the Effective Date.

Notwithstanding the foregoing, the Exchange Notes Indenture and the Old Notes Indenture shall remain in effect solely for the purposes of (a) allowing the applicable Holders of Claims to receive their respective distributions under this Plan as provided herein, (b) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to facilitate the distributions under this Plan to the applicable Holders of Claims as provided herein and otherwise comply with any obligations they may have under this Plan, including the cancellation of existing security interests, (c) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to preserve their respective rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the relevant Holder of Exchange Note Claims and Old Notes Claims, as applicable, under this Plan, and to deduct such fees and expenses from such distributions, including in respect of payment and the right to exercise their charging liens, if any, against such distributions, (d) permitting the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to perform any functions that are necessary to effectuate the foregoing, and (e) allowing the Exchange Notes Trustee and the Old Notes Trustee, as applicable, to assert any other right, privilege, benefit, or protection granted to either of them under the relevant documentation other than against the Reorganized Debtor and the Exculpated Parties; provided, however, that the foregoing shall not affect the discharge of the Debtors with respect to the Exchange Noteholder Claims and the Old Notes Claims as provided for herein, or result in any expenses or liability to the Reorganized Debtor, except to the extent set forth in or provided for under this Plan. Notwithstanding anything to the contrary herein, the terms and provisions of this Plan shall not alter, modify, or amend any existing contract or agreement between any of the Exchange Notes Trustee, the Old Notes Trustee and any current or former Exchange Noteholder or Old Noteholder, as applicable, and any such contract or agreement shall remain in full force and effect according to its terms following the Effective Date.

K.    *Withholding Taxes*

The Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan.  As a condition to making any distribution under this Plan, the Disbursing Agent may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Disbursing Agent may deem necessary to comply with applicable tax reporting and withholding laws.

L.    *Reports*

From the Effective Date, until a Final Decree is entered, the Litigation Trust Trustee shall submit file quarterly reports to the United States Trustee and the Litigation Trust Oversight Committee setting forth all receipts and disbursements of the Litigation Trust as required by the United States Trustee guidelines.

M.    *Distribution Record Date*

As of the close of business on the applicable Distribution Record Date, the transfer register for all Claims maintained by the Debtors or their agents, shall be closed, and there shall be no further changes in the Record Holders of any such Claims.  Moreover, the Debtors, Reorganized Debtor, Litigation Trust, Litigation Trust Trustee or Litigation Trust Oversight Committee as applicable shall have no obligation to recognize the transfer of any such Claims occurring after the applicable Distribution Record Date and shall be entitled for all purposes herein to recognize and deal only with those Holders of record as of the close of business on the applicable Distribution Record Date.

N.    *Timing and Calculation of Amounts to be Distributed*

Except as otherwise provided herein, on the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class, provided however, the Litigation Trust shall maintain reserve accounts in trust for the payment or distribution on account of Litigation Trust Beneficiaries with respect to disputed claims and shall make the appropriate adjustments in distributions to adequately take into consideration and fund such reserve accounts.  The Litigation Trust Trustee, as Disbursing Agent, shall be authorized to make interim distributions and any subsequent distributions necessary to distribute any Cash, or other consideration held in any reserve account to the appropriate Claim Holder as Claims are resolved and Allowed and reserves are reduced in accordance with this Plan.

O.    *Settlement of Claims and Controversies*

Pursuant to Fed. R. Bankr. P. 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of claims and/or controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of any such Allowed Claim.

## ARTICLE VIII.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND OCCURRENCE OF THE EFFECTIVE DATE

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions of the Plan and the Disclosure Statement are approved in the Confirmation Order.

B.      *Conditions Precedent to Occurrence of Effective Date*

It shall be a condition to occurrence of the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions herein:

1.      Fourteen (14) days have passed since the entry of the Confirmation Order as a Final Order in form and substance satisfactory to the Debtors and the Committee in their absolute discretion.  The Confirmation Order shall provide that, among other things:

> (i)      the Debtors are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan; and

> (ii)      the provisions of the Confirmation Order are nonseverable and mutually dependent.

2.      The appointment of the Litigation Trust Trustee shall have been confirmed by the Confirmation Order or order of the Bankruptcy Court.

3.      All actions, documents, consents, and agreements necessary to implement the Plan, including, without limitation, creating the Litigation Trust and entering into the Litigation Trust Agreement, shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred.

4.      The Debtors shall have established a reserve for all then outstanding Professional Fee Claims and Committee Professional Fee Claims (as limited by the Plan) as estimated by the Debtors and the Committee on or prior to the Effective Date.

C.      *Waiver of Conditions*

Except as otherwise required by the tenets of the Plan, the Debtors may waive any of the conditions to Confirmation of the Plan and/or to occurrence of the Effective Date of the Plan set forth in this Article VIII, at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to confirm and/or consummate the Plan.

D.    *Debtors' Right of Revocation or Withdrawal*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw the Plan, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person (ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE IX.
## EFFECT OF CONFIRMATION

A.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims that have been discharged pursuant to Article IX of the Plan or are subject to exculpation pursuant to Article IX of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtor, or the Exculpated Parties:  (1) commencing or continuing in any manner any action or another proceeding of any kind on account of or in connection with or with respect to any such Claims or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the aforementioned entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against the aforementioned entities or the property or the estates of the aforementioned entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the aforementioned entities or against the property of the aforementioned entities on account of or in connection with or with respect to any such Claims unless, such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim, Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests r settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Each holder of an Allowed Claim or**

Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX of the Plan.

B.    *Term of Injunctions or Stays*

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362, this Plan or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) the closing of the Chapter 11 Cases or (ii) the dissolution of the Litigation Trust.

C.    *Exculpation*

Effective as of the Effective Date, to the fullest extent permissible under 11 U.S.C. § 1125(e) and notwithstanding anything herein to the contrary, each Exculpated Party is hereby exculpated from any claim, obligation, Cause of Action, or liability for (a) any act or omission occurring between the Petition Date and the Effective Date in connection with, the representation of the Debtors, or (b) any act or omission occurring between the Petition Date and the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Reorganized Holdings Organizational Documents, the Reorganized Debtor Organizational Documents, the Restructuring Transactions, the Litigation Trust Interests, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), in each case except for fraud, willful misconduct, gross negligence or claims for legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York Rules of Professional Conduct (22 N.Y.C.R.R. § 1200), each solely to the extent as determined by a Final Order of a court of competent jurisdiction; provided, however, that, for the avoidance of doubt, such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit. Notwithstanding the foregoing, the Exculpation shall not release any obligation or liability of any Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or impair the ability of any Entity under the Plan to object to any request for payment on account of Professional Fee Claims.

D.    *Release of Liens*

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any holder of such security interest (and the applicable agents for such holder) shall be authorized and directed, at

the sole cost and expense of the Reorganized Debtor, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such holder (and the applicable agents for such holder), and to take such actions as may be reasonably requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## ARTICLE X.

## RETENTION OF JURISDICTION

This Plan shall not in any way limit the Bankruptcy Court's post-confirmation jurisdiction as provided under the Bankruptcy Code. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have exclusive jurisdiction (to the extent granted by applicable law, including any provisions permitting mandatory or discretionary withdrawal of such jurisdiction) over any matter arising out of or related to the Chapter 11 Cases and this Plan, including, without limitation, the following:

1. All matters relating to the assumption or rejection or the assumption and assignment of Executory Contracts, or Claims or disputes relating thereto;

2. All matters relating to the ownership of a Claim or Interest;

3. All matters relating to the distribution to Holders of Allowed Claims and Interests and to the determination of Claims and Interests;

4. Any and all matters involving the Litigation Trust Trustee and/or the Litigation Trust and/or the Litigation Trust Oversight Committee;

5. All matters relating to or arising in connection with the disallowance, Allowance or estimation of Claims or Interests filed, both before and after the Confirmation Date, including any objections to the classification of any Claim or Interest;

6. To enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7. All matters relating to the construction and implementation of the Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

8. All matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes involving the injunction and exculpation provisions of this Plan, and disputes arising under agreements, documents or instruments executed in connection with this Plan;

9.	To consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.	All applications for allowance of compensation and reimbursement of Professional Fee Claims and Committee Professional Fee Claims under this Plan or under §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

11.	To hear and determine all motions requesting allowance of an Administrative Claim;

12.	To determine requests for the payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto;

13.	All Causes of Action, Avoidance Actions and other suits and adversary proceedings, including proceedings to recover assets of the Litigation Trust, as successor-in-interest to the Debtors and property of the Estates, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

14.	All disputes between the Independent Committee and Committee or Litigation Trust Trustee as applicable regarding the ownership of any discovered Unknown Cause of Action;

15.	All disputes regarding the payment of the Excess SME Proceeds, the accounting supporting the Excess SME Proceeds, the refund of any Excess SME Proceeds during the Excess SME Proceeds Period;

16.	All matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

17.	Any other matter to the extent such jurisdiction is consistent with the Bankruptcy Code;

18.	To enter the Final Decree closing the Chapter 11 Case; and

19.	To enforce all orders previously entered by the Bankruptcy Court, including the Confirmation Order.

# ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.    *Effectuating Documents, Further Transactions and Corporation Action*

The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements of documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions hereof.

Prior to, on or after the Effective Date (as appropriate), all matters provided for hereunder that would otherwise require approval of the shareholders or directors of the Debtors shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states where each of the Debtors are organized without any requirement of further action by the shareholders or directors of any Debtor.

B.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of Title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid, prior to the Effective Date, out of the Assets of the Estate for each quarter (including any fraction thereof) and after the Effective Date by the Litigation Trust until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

C.    *Headings*

The headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

D.    *Binding Effect of Plan*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates, the Litigation Trust and their respective successors or assigns, whether or not the Claim or Interest of such Holders is Impaired under this Plan and whether or not such Holder has accepted this Plan. The rights, benefits and obligations of any entity named or referred to in this Plan, whose actions may be required to effectuate the terms of this Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity (including, without limitation, the Litigation Trust Trustee and any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

E.    *Final Order*

Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors in consultation with the Committee upon written

notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

F.      *Withholding and Reporting Requirements*

In connection with this Plan and all instruments issued in connection herewith and distributions hereunder, the Debtors, Litigation Trust and the Litigation Trust Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

G.      *Tax Exemption*

Pursuant to section 1146 of the Bankruptcy Code, any transfers from the Debtors, the Litigation Trust or the Litigation Trust Trustee to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of the Debtors' or the Litigation Trust's personal property, or the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Litigation Trust Trustee of the Debtors' or the Litigation Trust's property in implementation of or as contemplated by this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

H.      *Governing Law*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under this Plan, any agreements, documents and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtors and the Litigation Trust, corporate governance matters shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles.

I.      *Severability*

After the Effective Date, should the Bankruptcy Court or any other court of competent jurisdiction determine that any provision in this Plan is either illegal on its face or illegal as applied to any Claim, such provisions shall be unenforceable either as to all Holders of Claims or as to the Holder of such Claim as to which the provision is illegal, respectively. Such a

determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

J.      *Plan Controls*

In the event and to the extent any provision of this Plan is inconsistent with any provision of the Disclosure Statement or the Plan Supplement, the provisions of this Plan shall control and take precedence.

K.      *Amendments and Modifications*

The Debtors may alter, amend or modify this Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Hearing. After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2) of the Bankruptcy Code) of this Plan, the Debtors in consultation with the Committee may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and pursue such matters as may be necessary to carry out the purposes and effects of this Plan, by the filing of a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties-in-interest shall not be required.

L.      *Notices*

Any notices required under this Plan or any notices or requests of the Debtors, Reorganized Debtor, or the Litigation Trust Trustee by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

To the Debtors:

Reed Smith LLP
Attn: Derek J. Baker, Esq. and Derek M. Osei-Bonsu, Esq.
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103

~~-and-~~

~~Reed Smith LLP~~
~~Attn: Ann E. Pille, Esq.~~
~~10 S. Wacker Drive, Suite 4000~~
~~Chicago, IL 60606~~
To the Committee:

Dechert LLP
Attn: Stephen Zide, Esq. and David Herman, Esq.
Three Bryant Park

1095 Avenue of the Americas
New York, NY 10036

To the Reorganized Debtor:

_____

To the Litigation Trust and the Litigation Trust Trustee:

_____

M.    *Filing of Additional Documents*

On or before substantial consummation of this Plan, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

N.    *Direction to a Party*

From and after the Effective Date, the Debtors, the Litigation Trust or the Litigation Trust Trustee may apply to the Bankruptcy Court for the entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including the satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

O.    *Successors and Assigns*

The rights, benefits and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

P.    *Reservation of Rights*

Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

Q.    *Further Assurances*

The Debtors, Reorganized Debtor, Litigation Trust Trustee, and all Holders of Claims receiving distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

R.      *Entire Agreement*

The Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

S.      *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.


Respectfully Submitted,

Eletson Holdings, *et al.*, as Debtors and
Debtors-in-Possession

By:      /s/ Vasillis E. Kertsikoff
      Name: Vasillis E. Kertsikoff
      Title:  Vice President & Director

| Summary report: Litera Compare for Word 11.3.0.46 Document comparison done on 9/11/2024 9:02:04 PM | |
|---|---|
| **Style name:** ReedSmith Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://us-digitalfile.reedsmith.com/US_ACTIVE/180568722/6 | |
| **Modified DMS:** iw://us-digitalfile.reedsmith.com/US_ACTIVE/180568722/9 | |
| **Changes:** | |
| Add | 14 |
| Delete | 27 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 41 |