UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ELETSON HOLDINGS INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 23-10322 (JPM)<br><br>(Jointly Administered) |

### DECLARATION OF LOUIS M. SOLOMON UNDER FED. R. BANKR. P. 2014 IN SUPPORT OF DEBTORS APPLICATION TO RETAIN AND EMPLOY REED SMITH LLP, AS COUNSEL TO THE DEBTORS AND DEBTORS-IN-POSSESSION, *NUNC PRO TUNC* AS OF THE CONVERSION DATE

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), I, Louis M. Solomon, hereby declare:

1. I am a partner with the law firm of Reed Smith LLP ("Reed Smith") and am duly authorized to make this declaration on behalf of Reed Smith. I am responsible for coordinating the firm's representation of the Debtor. I am an attorney at law admitted and in good standing to practice in the State of New York. I make this declaration (the "Declaration") in further support of *Debtor's Application to Retain and Employ Reed Smith LLP, as Counsel to the Debtors and Debtors-in-Possession, Nunc Pro Tunc as of the Conversion Date, Pursuant to 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014* (the "Application") [Dkt. 235] and accompanying *Declaration of Derek J. Baker Under Fed. R. Bankr. P. 2014 in Support of Debtor's Application to Retain and Employ Reed Smith LLP, as Counsel to the Debtors and Debtors-in-Possession, Nunc Pro Tunc as of the Conversion Date* (the "Baker Declaration") [Dkt. 235-2] and consistent with the Order Authorizing the Debtors to Retain and Employ Reed Smith LLP, as

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

- 1 -

Counsel to the Debtors and Debtors-In-Possession, *Nunc Pro Tunc* as of the Conversion Date, Pursuant to 11 U.S.C. § 327(a) and Federal Rule of Bankruptcy Procedure 2014 entered January 5, 2024 [Dkt. 350].[2]

2.     Except as otherwise indicated, the facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto. I am making this Declaration because the facts set forth herein are more known to me than to Derek Baker, who subscribed the earlier Declarations on different aspects of this subject.

### SUPPLEMENTAL DISCLOSURES CONCERNING DISINTERESTEDNESS

3.     In order to ensure compliance with Bankruptcy Rule 2014 and to address issues raised by the Office of the United States Trustee concerning Reed Smith's prior formal disclosures, Reed Smith files this supplemental disclosure to: (1) clarify language included in its JAMS Arbitration Engagement Letter (the "JAMS Engagement Letter"); (2) clarify language included in correspondence to Levona Holdings Ltd. ("Levona") and third parties during the course of the JAMS Arbitration; and (3) explain Reed Smith's processes in identifying connections for disclosure in this matter.

4.     Reed Smith confirms it never represented Lascarina Karastamati, Vassilis Kertsikoff, and/or Vasilis Hadjieleftheriadis (collectively, the "Eletson Individuals") in connection with any of these or other matters.

A.     *Statement Clarifying Language Of JAMS Engagement Letter*

5.     In the JAMS Engagement Letter memorializing Reed Smith's originally disclosed representation of Holdings and Corp. (*see* Baker Decl. ¶ 15-17), Lascarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis are referenced by name. The JAMS Engagement

---

[2] Capitalized terms used but not defined in this Declaration have the meanings given in the Application.

- 2 -

Letter accurately sets forth the structure and relationships of the Reed Smith engagement as it relates to all entities and persons set forth therein.

6. To clarify the reference in the JAMS Engagement letter, Reed Smith confirms that it never undertook any representation of any of the Eletson Individuals. Reed Smith has never represented, rendered invoices to, nor received any payment from Lascarina Karastamati, Vassilis Kertsikoff, or Vasilis Hadjieleftheriadis. Such information is consistent with Reed Smith's disclosures regarding its relationship with Interested Parties (Baker Decl. ¶¶ 15, 25; *see also* Dkt. 297 ¶ 17 (demonstrating that all payments received by Reed Smith for the Arbitration and Final Award Confirmation Proceedings were received from Corp.)).

7. However, as summarized for the Court during the status conference on August 21, 2024, the JAMS Engagement Letter anticipated that certain "Eletson Interests," as defined in the letter, might be impacted by litigation, as Levona had threatened the Eletson Holdings Inc. ("Holdings") appointed directors and officers of Eletson Gas LLC ("Gas") with litigation after Holdings and non-debtor Eletson Corporation ("Corp.") objected to Levona's unilateral and improper attempt to sell substantially all assets of Gas.

8. When the JAMS Engagement Letter was issued, Reed Smith considered that it *might* be called upon to represent the Eletson Individuals in some capacity in litigation in the future, consistent with professional responsibility and conflict-of-interest rules.

9. However, no representation was ever undertaken. In fact, the Exclusion Provision within the Standard Terms and Conditions of Engagement of the JAMS Engagement Letter (the "Exclusion Provision") explicitly provided that any future representation of the Eletson Individuals required further discussion and independent agreement with Reed Smith:

> "Affiliates" of Client that are excluded from the meaning of Client include, but are not limited to (a) shareholders or constituent partners, members, or other equity stakeholders,

(b) parent, sister, brother and subsidiary companies, (c) joint ventures, limited partnerships, general partnerships, limited liability companies or other unincorporated entities in which Client may have an ownership interest, (d) officers, (e) directors, (f) employees, or (g) any other party related by family relationship, management position or capacity, contractual, cross-ownership or otherwise. ***Should Client feel it necessary and appropriate to change the identified client or to include any of the foregoing within the definition of "Client" for a particular matter, please discuss this matter with us before engaging us.***

(Dkt. 957, Ex. A at EletsonBK129055) (emphasis in original).

No discussion ever occurred, no agreement ever occurred, and no additional representation took place.

10. To clarify the reference to the Eletson Individuals in the body of the JAMS Engagement Letter, Reed Smith confirms that it at all times understood and acted by representing only the interests of Holdings and Corp. and not of any of the Eletson Individuals. The Eletson Individuals understood this as well.

11. As an example, Levona filed litigation against Mr. Kertsikoff and Ms. Karastamati in Delaware and Texas, *see Levona Holdings Ltd. v. Kertsikoff & Karastamati*, No. 4:22-cv-02988 (S.D. Tex.) and *Levona Holdings Ltd. v. Kertsikoff & Karastamati*, No. 2022-0823 (Del. Ch. Ct.). Reed Smith <u>did not</u> represent Mr. Kertsikoff and Ms. Karastamati in those proceedings—a fact noted by Justice Belen in the Final Award: "Levona . . . acknowledges that Reed Smith did not represent the individual Eletson officers in connection with those lawsuits" (Dkt. 483, Ex. A at 84) (emphasis added).

B. *Statement Clarifying Reed Smith Representations During The JAMS Arbitration And Letters To Levona And Third Parties*

12. The United States Trustee has expressed concern that certain letters sent by Reed Smith to third parties and to Levona suggest that that Reed Smith represented these individuals "outside of commenced litigation." (Dkt. 1166, US Trustee Motion at 8).

- 4 -

13.  To put the letters in context, prior to and through the initiation of the JAMS Arbitration, various letters were sent to Levona and third parties after Levona "entered into a Letter of Intent with Unigas, the main competitor of [Gas], to sell [Gas's] fleet of vessels for $262 million" (Dkt. 483, Ex. A at 9). The main issue giving rise to the JAMS Arbitration between Levona, on the one hand, and Holdings and Corp., on the other, "relate[d] to corporate control over non-party Eletson Gas LLC" (Dkt. 607 at 11 (Confirmation Amended Opinion And Order)). That corporate control contest pitted Holdings/Corp and its directors appointed to Gas against Murchinson/Levona and its directors appointed to Gas. Gas could only act through its directors, and each side's directors were not important as such, but only because they were appointed by their respective side.

14.  "Eletson Directors of Eletson Gas LLC" was listed immediately after explicit reference to Holdings and Corp. What that reference indicated was that Reed Smith was representing Holdings and that side of the corporate control contest, not that any separate representation was being given to those individuals.

15.  When sending these letters, Reed Smith was acting on behalf of Holdings and Corp. in the preservation of their interests in Gas. Gas's Third Amended and Restated Limited Liability Company Agreement (the "LLCA") sets forth the terms under which the Board of Directors of Gas would be appointed. (Ex. A, LLCA). Pursuant to the LLCA, "two Directors shall be designated and appointed by [Holdings]." (LLCA § 3.3). By virtue of the LLCA, these two Directors were Holdings's agents and fell under the scope of Reed Smith's representation of Holdings. *Cf., Ulit4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) ("A corporation can act only through its employees, subsidiaries, or agents."); New York R. Prof. Conduct 1.13(a)(comment 1).

16. In using this language with third parties, Reed Smith was making clear that there was a dispute regarding control of Gas and that Holdings had an interest in Gas's affairs by virtue of its appointees. There was no representation of any party separate from the representation of Holdings's and Corp.'s interests in Gas.

17. Further, these letters were disclosed and known to all the parties in the bankruptcy cases (including the Committee, Petitioning Creditors, and Levona's own counsel) as early as **July 13, 2023**, when the Debtors produced them during the involuntary phase of the case. Debtors did not conceal or refuse to produce these documents, thus confirming that there was no intent or purpose not to disclose anything. Despite full knowledge of these letters well over a year ago, neither the Committee, Petitioning Creditors, nor Levona raised them in connection with the disclosures that Reed Smith made at the time of its requested retention, acknowledging that there was no separate representation distinct from the disclosed prior representation of Holdings and Corp.

18. As has been raised many times throughout these proceedings, Lascarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis hold multiple roles and positions across the Eletson enterprise. They further hold positions outside the Eletson corporate enterprise. Reed Smith confirms that it is never represented any of the Eletson Individuals in this or any matter.

19. Reed Smith acknowledges that, despite that the letters were disclosed and known to the Committee, Petitioning Creditors, and Levona's own counsel, the reference to the Eletson Individuals in the JAMS Engagement Letter was not previously formally disclosed in its Bankruptcy Rule 2014 disclosures. While Reed Smith never formally took on a formal representation of any of Lascarina Karastamati, Vassilis Kertsikoff, or Vasilis Hadjieleftheriadis,

Reed Smith acknowledges, in an abundance of caution and as a best practice for the avoidance of doubt, Reed Smith should have disclosed this reference in the JAMS Engagement Letter as a potential connection at the time it filed its retention application, even though no representation was ever undertaken.

    C.    *Statement Regarding Reed Smith's Processes In Identifying Connections*

20.    As set forth in ¶ 25 of the Baker Declaration, Reed Smith researched its computer client database to determine whether Reed Smith had any relationships with the entities listed on Schedule 1, appended to the Application.

21.    Reed Smith has adopted computerized procedures for identifying and evaluating potential conflicts of interest. Accordingly, in preparing the Application, Reed Smith submitted the names and entities set forth in Schedule 1 to a separate Reed Smith Business Intake Department, which performed a search of Reed Smith's computer client database. The search results did not indicate any connection with the named individuals.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 30, 2024

                                                              Louis M. Solomon