# TOGUT, SEGAL & SEGAL LLP

ONE PENN PLAZA
NEW YORK, NEW YORK 10119
———
WWW.TOGUTLAWFIRM.COM

(212) 594–5000

BRIAN F. SHAUGHNESSY
(212) 201-6577
BSHAUGHNESSY@TEAMTOGUT.COM

August 16, 2024

**VIA EMAIL**

Honorable John P. Mastando III
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Re:    *In re Eletson Holdings Inc.*, Case No. 23-10322 (JPM)

Dear Judge Mastando:

I write on behalf of the Petitioning Creditors in connection with the Debtors' application to retain Reed Smith LLP ("Reed Smith") in the above-referenced Chapter 11 cases (ECF 235) (the "Retention Application"), and the related Declarations of Derek J. Baker, Esq. in support thereof (ECF 261, 297, 330, 385, and 386) (each a "Declaration" and collectively, the "Declarations").

As set forth below, and as the Petitioning Creditors have asserted for many months, Reed Smith has not been open and honest concerning the entities within the Eletson umbrella that it has connections with, including any past or present representation of the Eletson principals, Laskarina Karastamati, Vasillis Kertsikoff, and Vassilis Hadjielftheriadis.

The Retention Application and the initial Declaration attached thereto as Exhibit B states that Reed Smith ran a conflicts check on Karastamati, Kertsikoff, and Hadjielftheriadis, each of which is set forth on a page titled "Shareholders and Officers of Eletson Holdings, Inc." ECF 235, Ex. B, Sch. 1. Schedule 2 to that same Declaration contains Reed Smith's conflicts disclosures, which **does not include** the three aforementioned individuals. *See id.*, Ex. B, Sch. 2

The first supplemental Declaration also states that "Reed Smith is representing Debtor Holdings and non-debtor, Corp **– and only those entities –** in the Arbitration and Confirmation Proceedings before the District Court." ECF 261 ¶ 7 (emphasis added). None of the subsequent Declarations alters this representation. However, Reed Smith's engagement letter related to the Arbitration (attached hereto as **Exhibit A**,

TOGUT, SEGAL & SEGAL LLP

Honorable John P. Mastando III
United States Bankruptcy Court
November 25, 2024
Page 2

the "Engagement Letter") states that Reed Smith represents "Eletson Holdings Inc. and Eletson Corporation (**and their respective affiliates**)," as well as "**Lascarina Karastamati, Vasillis Kertsikoff, Vassilis Hadjielftheriadis** (together, the 'Eletson Interests')." Engagement Letter at p. 1 (emphasis added).  These connections were never disclosed, as required under Bankruptcy Rule 2014(a).  This apparently conscious disregard of the disclosure requirements concerning these connections raises serious questions about Reed Smith's ability to act in the interest of the Debtors' estates.

As one bankruptcy court in this District has stated:  "Complete and timely disclosure of all relevant and material information and documents lies at the heart of the bankruptcy process.  This is particularly so in a Chapter 11 case, where the Creditors' Committee and the U.S. Trustee's office, each with fiduciary duties of their own, must have confidence and trust in the debtor and its professionals."  *In re St. Vincent's Catholic Med. Ctrs. of N.Y.*, Case No. 05-14945, slip op., 2007 WL 2492787, at *16 (Bankr. S.D.N.Y. Aug. 29, 2007).

Reed Smith and the Debtors have fallen woefully short of that standard.  The Engagement Letter  demonstrates that Reed Smith has been – from the outset of these cases – untruthful with this Court regarding the extent of its connections to Eletson.

The Petitioning Creditors are available to discuss this at the Court's earliest convenience.

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP
By:

/s/ Brian F. Shaughnessy

Brian F. Shaughnessy
A Member of the Firm

# EXHIBIT "A"



**Driving progress**
through partnership

Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London EC2A 2RS
Phone +44 (0)20 3116 3000
Fax +44 (0)20 3116 3999
reedsmith.com

**Charles Weller**
Direct Phone:  +44 (0)20 3116 3632
Email:  CWeller@reedsmith.com

28 July 2022

Our Ref:  CGW\EletsonGas
Your Ref:

**By email**

lascarina.karastamati@eletson.com
vassilis.kertsikoff@eletson.com
vasilis.hadjieleftheriadis@eletson.com

Dear Colleagues

**Eletson Gas LLC/Levona Holdings Ltd**

As you may know, our rules of professional conduct require that we reduce to writing the material terms of our engagement.

We confirm that Reed Smith LLP will be pleased to act for Eletson Holdings Inc. and Eletson Corporation (and their respective affiliates), and Lascarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis (together, the "Eletson Interests") in this matter, on the terms of this letter.

We enclose our standard Terms of Business (February 2020 edition) ('Terms') which together with this letter (and any subsequent letter) set out the basis upon which we will be acting for you.  Please read our Terms carefully as they include certain exclusions and limitations of liability. Unless the context requires otherwise, any references in this letter and the Terms to I, we, us, our, Reed Smith, Firm should be read as referring to Reed Smith LLP, which is regulated by the Solicitors Regulation Authority.  This engagement letter will take precedence over the Terms.

We wish to avoid any circumstance in which you would regard our representation of another client to be inconsistent with our duties to and understandings with you.  Unless we have told you otherwise, we do not now represent another client in the specific matter in which you have retained us. Because we represent a large number of clients in a wide variety of legal matters around the world, it is possible that we currently represent, or in the future may be asked to represent, in some other matter unrelated to the specific matter in which you have engaged us, some person or entity whose interests are actually or potentially adverse to your interests in this or other matters, including in negotiations, work-outs, bankruptcy proceedings, or litigation.  We agree that we will not undertake any such representation if the subject of the other representation is related to the specific matter in which we currently represent you or are otherwise prohibited by our governing professional ethics rules and regulations. Consistent with the foregoing, if the matters are not related, then you hereby agree that we will be free to undertake such an unrelated adverse representation provided that (a) the unrelated representation will not implicate any confidential information we have received from you, and (b) the other client has consented to our continued representation of

Reed Smith LLP is a limited liability partnership registered in England and Wales with registered number OC303620 and its registered office at The Broadgate Tower, 20 Primrose Street, London EC2A 2RS.
Reed Smith LLP is authorised and regulated by the Solicitors Regulation Authority (authorisation number 389662). A list of the members of Reed Smith LLP,
and their professional qualifications, is available at the registered office.
The term partner is used to refer to a member of Reed Smith LLP, or a partner of an associated entity, or an employee of equivalent standing.

Reed Smith LLP is associated with Reed Smith LLP of Delaware, USA and the offices referred to below are offices of either Reed Smith LLP or Reed Smith LLP of Delaware, USA.
ABU DHABI • ATHENS • AUSTIN • BEIJING • BRUSSELS • CENTURY CITY • CHICAGO • DALLAS • DUBAI • FRANKFURT • HONG KONG
HOUSTON • KAZAKHSTAN • LONDON • LOS ANGELES • MIAMI • MUNICH • NEW YORK • PARIS • PHILADELPHIA • PITTSBURGH • PRINCETON
RICHMOND • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • TYSONS • WASHINGTON, D.C. • WILMINGTON

EME_ACTIVE-583255584.1



you. This means that this firm could represent another client against you in an unrelated matter such as a lawsuit, a transaction, or some other matter. Your agreement as set forth in this paragraph represents your acknowledgement that such adverse representations are foreseeable to you, and effects a waiver of your right, if any, to object to our representation in the unrelated matter of another client whose interests are adverse to yours.

We normally receive a retainer for substantial matters such as this. Given the expected intensity of the work streams we currently anticipate shall be required of us in at least the preliminary stages of this matter, in attempting to protect the Eletson Interests, we are seeking an evergreen retainer from you of US$200,000 at this time, to be paid by Monday 1 August 2022, which shall be deposited into our client escrow account and shall be used to pay amounts unpaid after the period(s) set forth in this letter and, at our option, all or part of our final billing statement in this retention. Furthermore, as a material inducement for Reed Smith to continue to work for you, we reserve the right to ask for and receive one or more additional evergreen back- end fully paid retainers in the future. In terms of payment of our monthly invoices, in addition to what is contained above and in the attached Terms, you agree that in December of any year you will bring all accounts fully current for fees and expenses incurred through November, should we request that, to coincide with our financial year end.

**Legal work to be undertaken**

1.    The work to be undertaken by Reed Smith will consist of advice and representation in respect of disputes with Levona Holdings Ltd and 'Unigas' arising out of the Eletson Gas LLC Agreement and the Binding Offer Letter dated 22 February 2022.

2.    Please note that we shall be advising on the law of the United States (including Delaware law, in the context of its relevance to Marshall Islands law) and the law of England, only and will not be advising on or responsible for finance, taxation, or Greek law issues unless specifically requested by you to do so.

**The legal team**

3.    Charles Weller will be your Client Relationship Partner with overall responsibility for the quality of our service. Charlie and Rob Wilkins will be responsible for English law matters arising out of our instructions.

4.    Lou Solomon will be the Lead Lawyer for this matter. The Lead Lawyer will be assisted by Nancy Savitt and Han Deng, and litigation lawyers as necessary, but Lou will be the lawyer primarily responsible for handling this matter on a day-to-day basis and will try the case should it come to that. Where appropriate, other lawyers, paralegals or trainees or costs draftsmen will also be involved.

**Privilege, communications and sharing your information**

5.    We understand from you that we shall be receiving instructions from the Timagenis Law Office and from you, and our correspondence should be addressed to Mr Gregory Timagenis, Mr Christos Timagenis, and Mr Yiannis Timagenis of the Timagenis Law Office. Please let us know if at any stage you need to provide our written correspondence direct to you and/or other individuals at Eletson Corporation. It is important that we know if you intend to do this, so that we can discuss with you in advance how to reduce the risk of communications between us not being considered privileged or losing privilege. Where it is necessary for us, or you ask us, to communicate with third parties (such as government or regulatory authorities or your other advisers / auditors) such communication is unlikely to be privileged and, if it is, privilege may be lost or waived by such communication.

6.    Email and other forms of electronic messaging such as instant messaging (IM) pose risks of inadvertent disclosure, interception or unauthorised access by third parties. Email is susceptible to use for fraudulent purposes such as identity theft (for example, bogus requests to transfer funds). Given the confidential nature of our communications with you, use of email or IM could have potential adverse consequences (e.g., loss of privilege, loss of trade secrets). We recommend that you only use secure corporate email addresses to receive our communications (rather than free 'public' email addresses).

7.    We refer you to our Terms and also to our website which sets out details of our structure and the Reed Smith entities (together referred to in this paragraph as "Reed Smith"). For the purposes of this matter,

Confidential - Attorneys' Eyes Only



Reed Smith London (a practice regulated by the Solicitors Regulation Authority) is the data controller of any personal data you, or your employees or others associated with you provide to us, or which we collect for the purposes of our legal advice on this matter. Please read our Privacy Policy at www.reedsmith.com.

8.    Across Reed Smith we have the same data security arrangements and obligations in place to keep your information confidential. You agree that we will share your information within Reed Smith. If you wish us to put in place security which will limit access to substantive information concerning this engagement to the Reed Smith lawyers acting for you, please let us know. For certain aspects of our work we may use the services of third parties, which may require us to share your information. We refer you to paragraph 5.4 of our Terms. Your information will be held by, or under the control of, or subject to contractual obligations to, Reed Smith, unless we are instructing others on your behalf or at your direction (such as counsel or experts). Please let us know before we commence providing services under this letter if you have any concerns regarding the sharing of information within Reed Smith or with third party service providers, or if you require any further information regarding our technical and security arrangements.

**Charges**

9.    As the principal venue for our work will be in New York, our fees will be charged in United States currency.

10.   Our fees, excluding expenses and third parties' fees and VAT, will be calculated on a time basis, as follows -

(a)    The current standard hourly rates for those who will be involved are as set out below. These rates are subject to review, as referred to at paragraph 3.1 of our Terms.

| Team Members | Hourly Rate |
|---|---|
| Charles Weller – Partner | US$800 |
| Rob Wilkins - Partner | US$915 |
| Louis Solomon - Partner | US$1535 |
| Colin Underwood – Partner | US$1195 |
| Nancy Savitt – Special Counsel | US$825 |
| Han Deng - Counsel | US$750 |

(b)    We may request the assistance of our research professionals to provide legal research (such as case law or legislation) or other research (such as corporate information, asset tracing, news articles). We do not charge for routine research where the time required by our research professionals is less than 12 minutes.

(c)    We will charge you for certain additional costs incurred by us on your behalf (including overseas telephone call photocopying and printing). These items will be listed on our bills. Please let us know if you would like details of how we calculate these charges.

(d)    It is difficult at this early stage to estimate the time likely to be involved in this case because it is still developing and remains in the initial phase of the dispute. However, we shall provide you with an estimate for London arbitration as soon as we are able, assuming the dispute is to be the subject of such legal proceedings.

**Payment terms[i]**

11.   We refer you to paragraphs 3.8, 3.9, 3.10 and 3.11 of the Terms for details of our terms in relation to billing and payment.

EME_ACTIVE-583255534.1



12.     Would you please give us details of your VAT registration number.

**Payments and bank account details**

13.     As we have explained at the outset of this letter, it is Reed Smith's policy when acting for clients to request payments on account in advance of fees, expenses and disbursements generally.  It is important that you understand that Reed Smith's total fees, additional costs and third party disbursements may be greater than any advance payment.  If we need to instruct counsel or third parties on your behalf and we shall ask you to pay any agreed or estimated fees for them in advance to us.  We shall provide our client account details, into which payment should be made, before we instruct counsel or any third parties.  We refer you to paragraphs 3.4, 3.5, 3.6 and 3.7 of our Terms.

14.     As stated above, we may ask you to provide us with money on account of our, or others, fees or you may need us to hold your money to assist with this matter. We will always make such requests by email, with confirmation of the request made by telephone from one of the lawyers acting for you.  We ask you to always verify any request you receive for the payment of funds which appears to be from Reed Smith.  Be wary of any request for payment which suggests we have recently changed our bank account details as we rarely do so.

15.     Where we receive funds into our client account on this matter which are payable or due to you, you agree that we may deduct our invoiced and outstanding fees (or the sum of any agreed fee) before transferring funds to you.  If we have not agreed a fee with you and have not yet billed you for our fees, or there is work yet to be done to complete the matter, we will hold funds for our fees (both for time already spent and where applicable an estimate of future fees) on client account, earmarked for our fees, until after we have invoiced you. Once we invoice you, we will pay our fees out of the money held and account to you for any surplus funds.

**Limitation**

16.     We refer you to paragraph 7.3 of the Terms. Reed Smith's liability shall not exceed the sum of £20 million.

**Referral arrangements**

17.     This matter was referred to us by Timagenis Law Firm.  Our firm is independent of Timagenis.  No fee or other consideration is paid by either firm to the other.

**Our service**

18.     If you have any queries or concerns about any aspect of our service, please do not hesitate to contact Charles Weller, your Client Relationship Lawyer.  We also refer you to paragraph 8 of our Terms.

Yours faithfully


Reed Smith LLP

------------------------------------------------------------------------------------------------

Confidential - Attorneys' Eyes Only

**Reed**Smith

Signed .......................................................

I am authorised to accept the terms of this letter and of the attached terms of business on behalf of Eletson Holdings Inc.

Signed .......................................................

I am authorised to accept the terms of this letter and of the attached terms of business on behalf of Eletson Corporation.

Signed .......................................................

I am authorised to accept the terms of this letter and of the attached terms of business.

Signed .......................................................
Lascarina Karastamati

I am authorised to accept the terms of this letter and of the attached terms of business.

Signed .......................................................
Vassilis Kertsikoff

I am authorised to accept the terms of this letter and of the attached terms of business.

Signed .......................................................
Vasilis Hadjieleftheriadis

Date: 29 July 2022

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129050

ReedSmith

...

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129051



27 July 2022
Page 7

Reed Smith LLP
Standard Terms and Conditions of Engagement

The following standard terms and conditions of engagement are incorporated in and made a part of the engagement letter for each matter that Reed Smith LLP ("Reed Smith" or "Firm") is engaged to represent "Client," as defined in the engagement letter. The terms provided in the cover letter to which these terms are attached will take precedence over these Terms, and the Letter and these Terms will take precedence to the extent Client provides the Firm with different, supplemental, or alternative terms.

**Fees.** Reed Smith will bill Client on a monthly basis unless otherwise specified in the engagement letter for a specific matter. Each bill will provide an accounting of services rendered and/or recorded during the immediately preceding month. The "services rendered" will be broken down into two separate components: (i) legal services provided by our attorneys, paralegals and other professionals, and (ii) reimbursable costs and expenses incurred by Reed Smith in connection with its representation of Client. With respect to legal services, Client will be billed on an hourly basis (unless otherwise specified) at rates which will vary with the nature of the matter, as well as with the experience and skill of the attorney, paralegal or professional rendering the services. Please note that our regular hourly rates are typically adjusted as of January 1 of each year and may, from time to time, be adjusted at other times during the year.

**Reimbursable Costs.** The second component of "services rendered" shown on our bill to Client will be a summary of expenses by category which includes: long distance telephone, postage, photocopy/scan/print, facsimile charges, secretarial and word processing overtime, etc. See table below:

| Costs & Expenses | |
|---|---|
| **Service** | **Charge** |
| Courier/Overnight Services | Actual charges incurred |
| Postage | Actual charges incurred |
| Electronic Research | Actual charges incurred |
| Third Party Conference Calls | Actual invoiced cost |
| Third Party Services such as: transcripts, title searches, title insurance, filing and recordation fees and taxes, and other transaction-related disbursements, such as expert witnesses and consultants and investigators. | Items over $1,000 are typically sent directly to client for payment. Otherwise, costs for such services are billed to clients at actual invoiced cost. |
| Data Hosting, if requested by Client | Actual charges incurred |

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129052

ReedSmith

While many expense costs are generally paid by the Firm and then charged to Client, it is our practice to forward invoices for significant filing fees or disbursements (e.g., $1,000 or higher) to Client for direct payment to the vendor. In addition, if substantial costs are to be advanced in connection with the matter, it is our practice to obtain a retainer from Client to cover such costs.

*Retainer.* The retainer is addressed above.

Unless Client elects that the retainer (or other funds provided to the Firm in trust) to be placed in a separate account, applicable law may require the Firm to deposit retainers into an account from which interest generated from the account is used to provide legal services to the indigent or for other purposes that benefit the public and that are related to legal services. If Client desires Client's deposit to be placed in a trust account with interest payable to Client, please so advise on an Advance Deposit Form, along with Client's taxpayer identification number on a properly executed W-9 Form. Reed Smith's trust accounts are held in approved financial institutions, and bear interest at the bank's rates for this type of account. The choice of bank, however, is subject to change at our discretion.

*Payment.* Payment in full of our invoices is due within 21 days of the date of our invoice.

*Interest on Overdue Accounts.* After the initial retainer, if payment is not made in full within 21-days of the date of our invoice, your account shall be considered past due, and from that point onward you agree to pay an interest charge that will be added to the outstanding balance in an amount equal to 9% per annum, compounded daily. Reed Smith also reserves the right, and you agree that Reed Smith may, immediately to stop work on the any and all matters if any of the amounts we have billed are not paid in full by the 28th day after each billing invoice is rendered. You will remain fully liable to pay all outstanding and accrued fees, interest, and expenses, and you specifically agree to pay any and all fees (at our normal rates) and expenses we incur in order to secure or collect payment.

*Term of Engagement.* Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct and subject to Client's payment in

full of all amounts incurred prior to termination. If Client so requests, we will suggest possible successor counsel. If permission for withdrawal is required by a court, we will promptly apply for such permission, in accordance with local court rules, and Client agrees to engage successor counsel to represent Client.

*Information/Client Responsibilities.* We will keep Client reasonably informed of the status of matters and, as appropriate, will send Client or a designee copies of correspondence, pleadings and/or other relevant documents which we initiate and copies of correspondence, pleadings and/or other relevant documents we receive from others. Client agrees to cooperate fully with the Firm and to provide promptly all information known or available to Client relevant to the Firm's representation of Client's interests, including furnishing all documents requested by us.

*Termination and Conclusion of Attorney-Client Relationship.* Unless previously terminated, our representation of the Client will terminate, and the attorney-client relationship shall be deemed concluded, after our completion of all matters for which we have represented Client but no later than the date of the invoice under which the last matter was billed in full. Client will pay in full any amounts owed at that time.

*Post-Engagement Matters.* Client has engaged the Firm to provide legal services in connection with a specific matter as described in the engagement letter. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact on the Client's future rights and liabilities. Unless Client engages the Firm to provide additional advice on issues arising from the matter, we have no continuing obligation to advise Client with respect to future developments.

*External Electronic Communication Authorization.* The Firm may send documents or other information that is covered by the attorney-client or work product privileges using external electronic communication ("EC") (via the internet or other network). Client understands that EC is not an absolutely secure method of communication. Client acknowledges and accepts the risk and authorizes the Firm to use EC means to communicate with Client or others necessary to effectively represent the Client. If there are certain documents with respect to which the Client wishes to maintain absolute confidentiality, the Client must

8

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129053

**Reed**Smith

advise the Firm in writing not to send them via EC and the Firm will comply with Client's request.

***Internal Communications.*** There are occasions when lawyers in the Firm find it useful and helpful to discuss our professional obligations to clients with lawyers experienced in such matters. Accordingly, as part of our agreement concerning our representation of Client, Client agrees that if we determine in our own discretion during the course of the representation that it is either necessary or appropriate to consult with our Firm's Legal Department (either the Firm's in-house counsel or, if we choose, outside counsel) we have Client's consent to do so. Any such communications are and will be deemed to be communications protected by the Firm's attorney-client privilege, and our representation of Client shall not, thereby, waive any attorney-client privilege that the Firm may otherwise have protecting the confidentiality of our communications with counsel. The client specifically approves the use of block billing.

***Future Conflicts In Unrelated Matters. The Engagement Letter covers this issue and controls. To the extent not inconsistent with those terms, Client agrees as follows.*** The Firm's ability to represent any and all clients is governed by the applicable rules of professional conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of a law firm or between a law firm and its clients (collectively, "the Conflicts Rules"). Except as we may have already disclosed, the Firm is not presently aware of a conflict created by the proposed representation of Client that would trigger the Conflicts Rules at this time. However, the nature and scope of the Firm's work for other clients may give rise to conflicts of interest in the future. The purpose of this section of the Standard Terms is to explain how the Firm proposes to resolve future conflicts issues so that the Client can decide whether or not to be represented by the Firm. In other words, the purpose of this section is to establish a waiver of future conflicts but to do so subject to the conditions and limitations noted herein.

The Scope of the Waiver

The Firm only requires Client's waiver for future work for other clients that is entirely factually and legally unrelated to the work we shall do for Client, but is

adverse to Client or Client's interest. Thus, the Firm does not recognize that this waiver would allow it:

- at any time, to attack the work that the Firm performs for the Client;
- to affect the independence of the Firm concerning work that the Firm performs for the Client;
- at any time, to disclose or use adversely to the Client, or to place itself in a position to disclose or use, any confidential and nonpublic information of the Client;
- at any time, to allow lawyers or nonlawyer staff who work for the Client to simultaneously work adversely to the Client; or
- for so long as the Firm continues to represent the Client, to allege criminal conduct by the Client.

Outside of these limitations, the Firm is and will remain free to represent other clients adversely to the Client, including in litigation. In other words, we may represent other clients in negotiations, business transactions, litigation, alternative dispute resolution, administrative proceedings, discovery disputes, or other legal matters even if those matters are adverse to Client or Client's interests. For example, and solely by way of illustration, the Firm could represent another client in a contractual dispute against Client, including litigation, provided we did not advise Client concerning the contract in question or have confidential information of Client that bears directly on the aspect of the contract in dispute.

To the extent permitted by the applicable rules of professional conduct, the Client agrees to consent to the Firm's withdrawal from the Client's matters if withdrawal is necessary for the Firm to continue representing other clients. If the Firm does withdraw from a matter, it will assist Client in transferring the matter to other counsel of Client's choice and will not bill Client for legal fees, expenses, or other charges arising from the need to assist successor counsel in coming up to speed.

***Insurance or Third Party Billing. Client may wish to determine whether Client has insurance to cover its exposure concerning matters for which Reed Smith shall serve as Client's counsel. Absent an*** express and specific requirement in the Scope of Engagement above identifying Reed Smith as

9

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129054

ReedSmith

responsible, Client shall be responsible for (1) determining whether Client has insurance coverage associated with the Scope of Engagement and (2) for tendering any claim or suit to Client's insurer. It is possible that Client or Reed Smith may secure the agreement of an insurance company that Reed Smith may act as Client's counsel. Some insurance companies impose restrictions on the type, amount of or hourly rate for legal services for which they will pay and may further refuse reimbursement for various cost items. In addition, some insurance companies may unilaterally impose other restrictions which are different from the terms provided hereunder. While Reed Smith will, of course, work cooperatively with any insurance company defending Client, and make every effort to minimize the expense not absorbed by Client's insurance company, Reed Smith's engagement agreement is with Client, and Client agrees to pay promptly Reed Smith's invoices, and Client will seek such reimbursement from the insurance company as may be appropriate. In the event a billing dispute arises between Client and the insurance carrier, Reed Smith will advise Client and, if Client wishes, Reed Smith will represent Client in connection with that dispute, at Reed Smith's standard hourly rates.

Additionally, upon request, we will forward or address our invoices to a third party designated by Client, other than an insurance company. Client agrees that in so requesting, Client waives any conflict of interest arising under applicable law which requires Client's consent for us to accept payment of legal fees from a party other than the represented client. We commit to Client that our representation of Client shall not be made less independent through the acceptance of fees for our services to Client from a party other than Client.

***Matters Involving Patents. We do not offer the service of annuity/maintenance fee payments on pending and granted patents. Therefore, Client is required to either contract with a direct-pay firm for payment of annuities/maintenance fees or undertake payment of such fees on Client's own behalf. If requested, we can assist Client in identifying such a firm but Client agrees to inform us of its election in this regard. Further, Client agrees that if Client does not report to us how annuity/maintenance fee payments will be made for Client's pending and granted patents, that we may conclude, and therefore may rely upon, that Client***

***has arranged to have the fees paid by some means other than through us.***

***Responses to Audit Letters.*** If Client engages an accountant to audit Client's financial statements, it is likely the accountant will request, during the audit, that Reed Smith provide a written description of all pending or threatened claims for lawsuits to which Reed Smith has given substantive attention on Client's behalf. This request is typically a standardized letter provided by the accountant which Client is requested to send to Reed Smith. Minimum fees for responses to audit letters will be billed at $550 for non-profit entities, $1050 for non-public, for-profit entities, and $1,550 for public entities. Client agrees that these fixed fees are reasonable in view of the time Reed Smith shall spend in preparing letters to Client's auditor. However, if more than three hours of time is necessary, we will charge our regular hourly rates.

***Disposition of Records.*** Reed Smith is not obligated to keep files/records related to a matter after that matter is finished unless required to do so by operation of law. With notice to Client, Reed Smith may destroy any file materials (hard copy or electronic form) after termination of the matter involved, unless Client requests those materials within thirty days of notification of Reed Smith's intent to destroy them.

***Exclusion of Owners, Subsidiaries, Officers, Directors and Employees.*** Our client for purposes of our representation is Client (for the avoidance of doubt this shall include both entities defined as Client herein) as specifically identified in the engagement letter for the matter, and not, unless expressly named in the engagement letter, any "Affiliates" of Client. "Affiliates" of Client that are excluded from the meaning of Client include, but are not limited to (a) shareholders or constituent partners, members, or other equity stakeholders, (b) parent, sister, brother and subsidiary companies, (c) joint ventures, limited partnerships, general partnerships, limited liability companies or other unincorporated entities in which Client may have an ownership interest, (d) officers, (e) directors, (f) employees, or (g) any other party related by family relationship, management position or capacity, contractual, cross-ownership or otherwise. ***Should Client feel it necessary and appropriate to change the identified client or to include any of the foregoing within the definition of "Client" for a particular matter, please discuss this matter with***

10

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only                                                                                                                              EletsonBK129055

**Reed**Smith

*us before engaging us.* Our objective in this policy is to avoid situations where (1) true clients or parties in interest being represented by our Firm find themselves being sued or in an adverse position to another client of our Firm because our records did not properly identify the client, or (2) after undertaking our representation of Client (or another client), and investing considerable time and dollars on Client's behalf, we are forced to withdraw from a representation because of a conflict which could have been identified earlier with accurate client identification at the inception of our attorney client relationship.

*New York Arbitration Clause*

The law requires us to give you notice, and we hereby notify you, that you may have a right to elect to resolve a fee dispute with us under Part 137 of the Rules of the Chief Administrator of the New York Courts, to the extent applicable. Attachment 1 is a copy of Part 137.

We do not anticipate having any disagreement with you about the quality, costs, or appropriateness of our services, but if any concerns about these matters arise, please notify us immediately. We would endeavor to resolve any disagreements in a fair and amicable manner. If for some reason we are not able to resolve any dispute ourselves, then we believe it would be preferable to resolve such dispute (including any fee dispute which would otherwise be subject to Part 137) by arbitration in the manner set forth herein, rather than under Part 137. You and we agree to do so, as follows: Accordingly, this will confirm our agreement to that the following terms shall govern:

> Any controversy, claim or dispute arising out of or relating to our agreement, or the breach thereof, shall be settled by binding arbitration before a single arbitrator in an arbitration administered by JAMS (New York City) under its Commercial Arbitration Rules interpreted to be accomplished in a streamlined and expedited manner, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Client agrees to subject itself to jurisdiction in New York County for purposes any award, including without limitation entry, vacatur, and enforcement. Client agrees to pay in full

> all fees and expenses of the Firm in connection with the arbitration, irrespective of which party prevails. The Firm shall in no case be responsible to pay Client's fees and expenses in connection with the arbitration. The arbitrator is empowered to impose all available provisional and emergency remedies, and Client agrees that it shall pay into a mutually agreed escrow account immediately upon the commencement of any arbitration the entirety of any amounts claimed to be due by the Firm together with an amount estimated by the Firm of the interest to be paid and the fees and expenses of the Firm in connection with any arbitration.

> Client has read this agreement and understands it has a right to have this arbitration agreement reviewed by other counsel in order to advise if it is in Client's best interest. Client represents that it has had an opportunity to consult with independent counsel.

New York law requires that, in order to effectuate an agreement to arbitrate in the manner provided above, which includes fee disputes that would otherwise be arbitrated under Part 137, you sign the consent annexed as Attachment 2 to this Statement of Standard Terms and Conditions. Accordingly, we ask that you do so.

11

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129056



**Driving progress**
through partnership

**Charles Weller**
Direct Phone: +44 (0)20 3116 3632
Email: CWeller@reedsmith.com

Reed Smith LLP
The Broadgate Tower
20 Primrose Street
London EC2A 2RS
Phone +44 (0)20 3116 3000
Fax +44 (0)20 3116 3999
reedsmith.com

— **Attachment 1** —

**(For New York Arbitration Clause)**

**Part 137. Fee Dispute Resolution Program**

### §137.0 Scope of Program

This Part establishes the New York State Fee Dispute Resolution Program, which provides for the informal and expeditious resolution of fee disputes between attorneys and clients through arbitration and mediation. In accordance with the procedures for arbitration, arbitrators shall determine the reasonableness of fees for professional services, including costs, taking into account all relevant facts and circumstances. Mediation of fee disputes, where available, is strongly encouraged.

### §137.1 Application

(a) This Part shall apply where representation has commenced on or after January 1, 2002, to all attorneys admitted to the bar of the State of New York who undertake to represent a client in any civil matter.

(b) This Part shall not apply to any of the following:

    (1) representation in criminal matters;

    (2) amounts in dispute involving a sum of less than $1000 or more than $50,000, except that an arbitral body may hear disputes involving other amounts if the parties have consented;

    (3) claims involving substantial legal questions, including professional malpractice or misconduct;

    (4) claims against an attorney for damages or affirmative relief other than adjustment of the fee;

    (5) disputes where the fee to be paid by the client has been determined pursuant to statute or rule and allowed as of right by a court; or where the fee has been determined pursuant to a court order;

    (6) disputes where no attorney's services have been rendered for more than two years;

    (7) disputes where the attorney is admitted to practice in another jurisdiction and maintains no office in the State of New York, or where no material portion of the services was rendered in New York;

    (8) disputes where the request for arbitration is made by a person who is not the client of the attorney or the legal representative of the client.

### §137.2 General

(a) In the event of a fee dispute between attorney and client, whether or not the attorney already has received some or all of the fee in dispute, the client may seek to resolve the dispute by arbitration under this Part. Arbitration

Reed Smith LLP is a limited liability partnership registered in England and Wales with registered number OC303620 and its registered office at The Broadgate Tower, 20 Primrose Street, London EC2A 2RS.
Reed Smith LLP is authorised and regulated by the Solicitors Regulation Authority (authorisation number 389662). A list of the members of Reed Smith LLP,
and their professional qualifications, is available at the registered office.
The term partner is used to refer to a member of Reed Smith LLP, or a partner of an associated entity, or an employee of equivalent standing.

Reed Smith LLP is associated with Reed Smith LLP of Delaware, USA and the offices referred to below are offices of either Reed Smith LLP or Reed Smith LLP of Delaware, USA.
**ABU DHABI • ATHENS • AUSTIN • BEIJING • BRUSSELS • CENTURY CITY • CHICAGO • DALLAS • DUBAI • FRANKFURT • HONG KONG
HOUSTON • KAZAKHSTAN • LONDON • LOS ANGELES • MIAMI • MUNICH • NEW YORK • PARIS • PHILADELPHIA • PITTSBURGH • PRINCETON
RICHMOND • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • TYSONS • WASHINGTON, D.C. • WILMINGTON**

EME_ACTIVE-583255534.1



Eletson Gas LLC

27 July 2022
Page 13

under this Part shall be mandatory for an attorney if requested by a client, and the arbitration award shall be final and binding unless de novo review is sought as provided in section 137.8.

(b) The client may consent in advance to submit fee disputes to arbitration under this Part. Such consent shall be stated in a retainer agreement or other writing that specifies that the client has read the official written instructions and procedures for Part 137, and that the client agrees to resolve fee disputes under this Part.

(c) The attorney and client may consent in advance to arbitration pursuant to this Part that is final and binding upon the parties and not subject to de novo review. Such consent shall be in writing in a form prescribed by the Board of Governors.

(d) The attorney and client may consent in advance to submit fee disputes for final and binding arbitration to an arbitral forum other than an arbitral body created by this Part. Such consent shall be in writing in a form prescribed by the Board of Governors. Arbitration in that arbitral forum shall be governed by the rules and procedures of that forum and shall not be subject to this Part.

### §137.3 Board of Governors

(a) There shall be a Board of Governors of the New York State Fee Dispute Resolution Program.

(b) The Board of Governors shall consist of 18 members, to be designated from the following: 12 members of the bar of the State of New York and six members of the public who are not lawyers. Members of the bar may include judges and justices of the New York State Unified Court System.

    (1) The members from the bar shall be appointed as follows: four by the Chief Judge from the membership of statewide bar associations and two each by the Presiding Justices of the Appellate Divisions.

    (2) The public members shall be appointed as follows: two by the Chief Judge and one each by the Presiding Justices of the Appellate Divisions.

    Appointing officials shall give consideration to appointees who have some background in alternative dispute resolution.

(c) The Chief Judge shall designate the chairperson.

(d) Board members shall serve for terms of three years and shall be eligible for reappointment for one additional term. The initial terms of service shall be designated by the Chief Judge such that six members serve one-year terms, six members serve two-year terms, and six members serve three-year terms. A person appointed to fill a vacancy occurring other than by expiration of a term of office shall be appointed for the unexpired term of the member he or she succeeds.

(e) Eleven members of the Board of Governors shall constitute a quorum. Decisions shall be made by a majority of the quorum.

(f) Members of the Board of Governors shall serve without compensation but shall be reimbursed for their reasonable, actual and direct expenses incurred in furtherance of their official duties.

(g) The Board of Governors, with the approval of the four Presiding Justices of the Appellate Divisions, shall adopt such guidelines and standards as may be necessary and appropriate for the operation of programs under this Part, including, but not limited to: accrediting arbitral bodies to provide fee dispute resolution services under this Part; prescribing standards regarding the training and qualifications of arbitrators; monitoring the operation and

EME_ACTIVE-583255534.1



Eletson Gas LLC

27 July 2022
Page 14

performance of arbitration programs to insure their conformance with the guidelines and standards established by this Part and by the Board of Governors; and submission by arbitral bodies of annual reports in writing to the Board of Governors.

(h) The Board of Governors shall submit to the Administrative Board of the Courts an annual report in such form as the Administrative Board shall require.

**§137.4 Arbitral Bodies**

(a) A fee dispute resolution program recommended by the Board of Governors, and approved by the Presiding Justice of the Appellate Division in the judicial department where the program is established, shall be established and administered in each county or in a combination of counties. Each program shall be established and administered by a local bar association (the "arbitral body") to the extent practicable. The New York State Bar Association, the Unified Court System through the District Administrative Judges, or such other entity as the Board of Governors may recommend also may be designated as an arbitral body in a fee dispute resolution program approved pursuant to this Part.

(b) Each arbitral body shall:

    (1) establish written instructions and procedures for administering the program, subject to the approval of the Board of Governors and consistent with this Part. The procedures shall include a process for selecting and assigning arbitrators to hear and determine the fee disputes covered by this Part. Arbitral bodies are strongly encouraged to include nonlawyer members of the public in any pool of arbitrators that will be used for the designation of multi-member arbitrator panels.

    (2) require that arbitrators file a written oath or affirmation to faithfully and fairly arbitrate all disputes that come before them.

(3) be responsible for the daily administration of the arbitration program and maintain all necessary files, records, information and documentation required for purposes of the operation of the program, in accordance with directives and procedures established by the Board of Governors.

(4) prepare an annual report for the Board of Governors containing a statistical synopsis of fee dispute resolution activity and such other data as the Board shall prescribe.

(5) designate one or more persons to administer the program and serve as a liaison to the public, the bar, the Board of Governors and the grievance committees of the Appellate Division.

**§137.5 Venue**

A fee dispute shall be heard by the arbitral body handling disputes in the county in which the majority of the legal services were performed. For good cause shown, a dispute may be transferred from one arbitral body to another. The Board of Governors shall resolve any disputes between arbitral bodies over venue.

**§137.6 Arbitration Procedure**

(a) (1) Except as set forth in paragraph (2), where the attorney and client cannot agree as to the attorney's fee, the attorney shall forward a written notice to the client, entitled "Notice of Client's Right to Arbitrate," by certified mail or by personal service. The notice (i) shall be in a form approved by the Board of Governors; (ii) shall contain a statement of the client's right to arbitrate; (iii) shall advise that the client has 30 days from receipt

Confidential - Attorneys' Eyes Only



Eletson Gas LLC

27 July 2022
Page 15

of the notice in which to elect to resolve the dispute under this Part; (iv) shall be accompanied by the written instructions and procedures for the arbitral body having jurisdiction over the fee dispute, which explain how to commence a fee arbitration proceeding; and (v) shall be accompanied by a copy of the "request for arbitration" form necessary to commence the arbitration proceeding.

(2) Where the client has consented in advance to submit fee disputes to arbitration as set forth in subdivisions (b) and (c) of section 137.2 of this Part, and where the attorney and client cannot agree as to the attorney's fee, the attorney shall forward to the client, by certified mail or by personal service, a copy of the "request for arbitration" form necessary to commence the arbitration proceeding along with such notice and instructions as shall be required by the rules and guidelines of the Board of Governors, and the provisions of subdivision (b) of this section shall not apply.

(b) If the attorney forwards to the client by certified mail or personal service a notice of the client's right to arbitrate, and the client does not file a request for arbitration within 30 days after the notice was received or served, the attorney may commence an action in a court of competent jurisdiction to recover the fee and the client no longer shall have the right to request arbitration pursuant to this Part with respect to the fee dispute at issue. An attorney who institutes an action to recover a fee must allege in the complaint (i) that the client received notice under this Part of the client's right to pursue arbitration and did not file a timely request for arbitration or (ii) that the dispute is not otherwise covered by this Part.

(c) In the event the client determines to pursue arbitration on the client's own initiative, the client may directly contact the arbitral body having jurisdiction over the fee dispute. Alternatively, the client may contact the attorney, who shall be under an obligation to refer the client to the arbitral body having jurisdiction over the dispute. The arbitral body then shall forward to the client the appropriate papers set forth in subdivision (a) necessary for commencement of the arbitration.

(d) If the client elects to submit the dispute to arbitration, the client shall file the "request for arbitration form" with the appropriate arbitral body, and the arbitral body shall mail a copy of the "request for arbitration" to the named attorney together with an "attorney fee response" to be completed by the attorney and returned to the arbitral body within 15 days of mailing. The attorney shall include with the "attorney fee response" a certification that a copy of the response was served upon the client.

(e) Upon receipt of the attorney's response, the arbitral body shall designate the arbitrator or arbitrators who will hear the dispute and shall expeditiously schedule a hearing. The parties must receive at least 15 days notice in writing of the time and place of the hearing and of the identity of the arbitrator or arbitrators.

(f) Either party may request the removal of an arbitrator based upon the arbitrator's personal or professional relationship to a party or counsel. A request for removal must be made to the arbitral body no later than five days prior to the scheduled date of the hearing. The arbitral body shall have the final decision concerning the removal of an arbitrator.

(g) The client may not withdraw from the process after the arbitral body has received the "attorney fee response." If the client seeks to withdraw at any time thereafter, the arbitration will proceed as scheduled whether or not the client appears, and a decision will be made on the basis of the evidence presented.

(h) If the attorney without good cause fails to respond to a request for arbitration or otherwise does not participate in the arbitration, the arbitration will proceed as scheduled and a decision will be made on the basis of the evidence presented.

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129060



Eletson Gas LLC

27 July 2022
Page 16

(i)  Any party may participate in the arbitration hearing without a personal appearance by submitting to the arbitrator testimony and exhibits by written declaration under penalty of perjury.

### §137.7 Arbitration Hearing

(a)  Arbitrators shall have the power to:

    (1)  take and hear evidence pertaining to the proceeding;

    (2)  administer oaths and affirmations; and

    (3)  compel, by subpoena, the attendance of witnesses and the production of books, papers and documents pertaining to the proceeding.

(b)  The rules of evidence need not be observed at the hearing.

(c)  Either party, at his or her own expense, may be represented by counsel.

(d)  The burden shall be on the attorney to prove the reasonableness of the fee by a preponderance of the evidence and to present documentation of the work performed and the billing history.  The client may then present his or her account of the services rendered and time expended.  Witnesses may be called by the parties.  The client shall have the right of final reply.

(e)  Any party may provide for a stenographic or other record at the party's expense.  Any other party to the arbitration shall be entitled to a copy of said record upon written request and payment of the expense thereof.

(f)  The arbitration award shall be issued no later than 30 days after the date of the hearing.  Arbitration awards shall be in writing and shall specify the bases for the determination.  Except as set forth in section 137.8, all arbitration awards shall be final and binding.

(g)  Should the arbitrator or arbitral body become aware of evidence of professional misconduct as a result of the fee dispute resolution process, that arbitrator or body shall refer such evidence to the appropriate grievance committee of the Appellate Division for appropriate action.

(h)  In any arbitration conducted under this Part, an arbitrator shall have the same immunity that attaches in judicial proceedings.

### §137.8 De Novo Review

(a)  A party aggrieved by the arbitration award may commence an action on the merits of the fee dispute in a court of competent jurisdiction within 30 days after the arbitration award has been mailed.  If no action is commenced within 30 days of the mailing of the arbitration award, the award shall become final and binding.

(b)  Any party who fails to participate in the hearing shall not be entitled to seek de novo review absent good cause for such failure to participate.

(c)  Arbitrators shall not be called as witnesses nor shall the arbitration award be admitted in evidence at the trial de novo.

### §137.9 Filing Fees

Upon application to the Board of Governors, and approval by the Presiding Justice of the Appellate Division in the judicial department where the arbitral program is established, an arbitral body may require payment by the parties of

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129061



Eletson Gas LLC

27 July 2022
Page 17

a filing fee.  The filing fee shall be reasonably related to the cost of providing the service and shall not be in such an amount as to discourage use of the program.

**§137.10 Confidentiality**

All proceedings and hearings commenced and conducted in accordance with this Part, including all papers in the arbitration case file, shall be confidential, except to the extent necessary to take ancillary legal action with respect to a fee matter.

**§137.11 Failure to Participate in Arbitration**

All attorneys are required to participate in the arbitration program established by this Part upon the filing of a request for arbitration by a client in conformance with these rules.  An attorney who without good cause fails to participate in the arbitration process shall be referred to the appropriate grievance committee of the Appellate Division for appropriate action.

**§137.12 Mediation**

(a) Arbitral bodies are strongly encouraged to offer mediation services as part of a mediation program approved by the Board of Governors.  The mediation program shall permit arbitration pursuant to this Part in the event the mediation does not resolve the fee dispute.

(b)    All mediation proceedings and all settlement discussions and offers of settlement are confidential and may not be disclosed in any subsequent arbitration.

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only

EletsonBK129062



**Driving progress
through partnership**

Eletson Gas LLC

27 July 2022
Page 18

— Attachment 2 —

Consent to Final and Binding Arbitration in an Arbitral Forum
Outside Part 137 Under § 137.2(d) of the Rules of the Chief Administrator

The parties to this agreement, You as defined in the Cover Engagement Letter (the "Client") and Reed Smith LLP ("Reed Smith"), agree that in the event a dispute should arise as to Reed Smith's fees for legal services, they will resolve the fee dispute by arbitration as set forth in the accompanying Terms, provided that if any court of competent jurisdiction determines that said agreement is not enforceable, then before an arbitral forum outside Part 137 of the Rules of the Chief Administrator of the Courts (22 NYCRR), and that the arbitration shall be governed by the rules and procedures of that forum.

By signing this agreement, Reed Smith and Client acknowledge that they have received and read the official written instructions and procedures for Part 137 and has been advised: (1) the Clients have the right to use the fee arbitration procedures of Part 137, where applicable, in the event that the dispute resolution provision of the Terms is determined to be unenforceable, and (2) that the Clients are not required to agree to arbitrate this fee dispute in an arbitral forum outside Part 137 other than pursuant to the dispute resolution provisions of the Terms. By signing this form, the Clients and Reed Smith agree to waive their rights with regard to arbitration pursuant to Part 137, which includes the right to reject the arbitrator(s) award by commencing an action on the merits (*trial de novo*) in a court of law.

**REED SMITH LLP**

Date: _____

By: __

_Louis M. Solomon_ (signature)

_____
Louis M. Solomon

Date: _____

EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only



Eletson Gas LLC

27 July 2022
Page 19

_____



EME_ACTIVE-583255534.1

Confidential - Attorneys' Eyes Only    EletsonBK129064

Confidential - Attorneys' Eyes Only

EletsonBK129065