**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Eletson Holdings Inc., *et al.*, [1] | Case No. 23-10322 (JPM) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF LOUIS M. SOLOMON IN SUPPORT**
**OF REED SMITH'S OPPOSITION TO EMERGENCY MOTION OF "REORGANIZED**
**ELETSON HOLDINGS INC. FOR AN ORDER IMPOSING SANCTIONS"**

I, Louis M. Solomon, being duly sworn, hereby declare the following to be true under penalty of perjury:

**I.     INTRODUCTION**

1.     I am a partner at the law firm Reed Smith LLP ("Reed Smith") which was retained by the above captioned debtors (collectively, the "Debtors") pursuant to an order [Dkt. No. 350] of this Court.

2.     I submit this Declaration in support of *Reed Smith's Opposition to the Emergency Motion of Reorganized Holdings Inc. for an Order Imposing Sanctions on Eletson Holdings' (A) Existing Person of Record and (B) Former Shareholders, Officer, Directors, and Counsel including Reed Smith LLP* (the "Objection").[2]

3.     I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration.  I am fully familiar with the facts and circumstances set forth below, and all evidence set out in this Declaration is based on my personal knowledge, including as counsel to the Debtors.  I submit this Declaration without any intent or authority to waive or prejudice any

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

[2] Capitalized terms used herein but otherwise undefined have the meaning provided in the Objection.

privilege or immunity held by the Debtors.

4. On October 25, 2024 this Court entered the Confirmation Opinion confirming the Petitioning Creditors' Plan and denying confirmation of the Debtors' plan of reorganization.

5. Throughout the confirmation process, based on the submissions made by Petitioning Creditors, we understood that the Petitioning Creditors were aware that the Confirmation Order sought in connection with the Plan would need to be recognized and enforced in foreign jurisdictions before the Plan could be implemented and before a change of corporate control could occur. At no time prior to the actions discussed below had the Petitioning Creditors ever indicated that they did not intend to comply with applicable non-U.S. law such as Greek and Liberian law. We did not expect that either we or the Debtors, their officers or directors would be asked to take any action contrary to non-U.S. law in connection with consummation of the Plan.

6. On October 28, 2024, the Petitioning Creditors circulated their first request for documents in pursuit of taking the Plan "effective" and scheduling an "all-hands" call for October 29, 2024. Attached to October 28 email was an initial diligence list and closing checklist for documents asserted by the Petitioning Creditors to be necessary for the effectiveness of the Plan (the "Closing Checklist"). *See* Ex. 1. On the same day, Reed Smith by email informed the Petitioning Creditors that Reed Smith believed many of the items requested of Reed Smith and the Debtors on the Closing Checklist actually involved (or required) actions of non-Debtors which Reed Smith did not represent. *See* Ex. 2. In this same response, Reed Smith also reasonably requested clarification on how Reed Smith would be compensated for actions taken in furtherance of the Petitioning Creditors bringing the Plan effective and sought assurances that the Petitioning Creditors would not object to Reed Smith's fees and expenses

related to these actions.  Notably, the Closing Checklist prepared by Petitioning Creditors provided that even at that point in the process the Petitioning Creditors were evaluating whether registration of the corporate documents of Reorganized Holdings was necessary in Liberia.

7.     At no point did Reed Smith state, or even imply, that it would not cooperate with the Petitioning Creditors regarding the effectiveness of the Plan.  Rather Reed Smith simply sought clarification as to the scope of information being requested from it, and noted potential issues with securing that information.

8.     On that same day, counsel to the Petitioning Creditors, Togut Segal & Segal LLP ("Togut"), responded, asserting that Reed Smith "had no basis not to cooperate" — despite the fact that we had not refused to cooperate in any way.  *See* Ex. 3.

9.     At the same time, the Petitioning Creditors sought broad and excessive information from the Debtors' principals pursuant to the DIP Agreement.  The Petitioning Creditors repeatedly attempted to use disclosure requirements under the DIP to seek information wholly unrelated to the DIP.  Further under the guise of "know your creditor" disclosures (requested after the DIP had been funded and disbursed) the Petitioning Creditors sought extremely sensitive personal information such as copies of the passports of Debtors' principals for seemingly no reason other than to harass the Debtors' principals.  Reed Smith forwarded each of these diligence requests to the Debtors' principals, as they sought information that was not in Reed Smith's possession and/or control.

10.     While we were unable to participate in the call that Togut had scheduled (without checking our availability), Reed Smith fully cooperated with the consummation of the Petitioning Creditors' Plan to the best of its ability without exposing itself or its current clients to unnecessary liability.

11.     By email on October 30, 2024, we informed Togut that we did not have any additional information to provide in response to the Closing Checklist.  *See* Ex. 4.  In response Togut sent an email asking if we intended on "cooperating" — notwithstanding the fact that we had neither stated we would not cooperate nor taken any action that could reasonably be construed as not cooperating.  *Se*e Ex. 5.  In response, we again explained that the Closing Checklist sought information not in the Debtors' possession, and from entities that we did not represent.  *See* Ex. 6.  In an effort to address the document requests constructively, we asked Togut to provide a list of the information they requested from non-Debtor affiliates.  *Id.*

12.     Five days later, on November 4, Togut responded with its list of diligence items specifically pertaining to non-Debtor affiliates.  *See* Ex. 7.  The very next day, Togut sent us another email asserting that the Petitioning Creditors had been informed that all of the SMEs were reportedly no longer moving and requesting a status update on the SME vessels.  *See* Ex. 8.

13.     We responded the next day to both of Togut's emails, confirming that we were working with Holdings on collecting the requested information, and stating that we were unaware of any interruption in the operation of the SME vessels. *See* Ex. 9.

14.     Without even waiting for our response, on November 6, the Petitioning Creditors filed a letter [Dkt. No. 1227] asserting without any basis that the Debtors and Reed Smith were not cooperating with the transition.

15.     On November 8, we responded to Togut's November 4 email, providing all of the requested documents and information that we had.  Notably, most, if not all of these documents had already been produced to the Petitioning Creditors in the course of discovery in this case.

16.     On November 11, Togut acknowledged receipt of the material we had sent on November 8 and requested the balance of the documents and information requested on October

28.  *See* Ex. 10.  We responded that same day that we had provided all of the requested material

that we had in our possession and control.   *See* Ex. 11.  We also said that we had requested that

Holdings search for any documents and information responsive to the remaining diligence and

documents requests, and inquire as to the availability of these documents from the non-Debtor

subsidiaries of Holdings.  *Id.*

17.     The next day, November 12, Togut again emailed us, asserting that: (i) the

Confirmation Order required us to participate in closing calls, (ii) Reed Smith and/or the Debtors

must provide the remaining documents requested and an update on requests which have not been

responded to, (iii) the Debtors had access to the requested information and must promptly

identify the specific entities, people, and processes undertaken to obtain requested information

from non-Debtor subsidiaries, (iv) the Debtors were required to schedule calls for the Petitioning

Creditors to speak to the appropriate personnel at the company as well as any third-party

advisors, including counsel, and (v) pursuant to section 9.1(k) of the Plan the Debtors were

required to confirm that no material adverse changes had occurred to the operations,

management or governance of the Debtors. *See* Ex. 12.

18.     We responded to this email by noting that the Confirmation Order did not require

participation in any "closing calls" and that we had taken all steps necessary and appropriate to

cooperate with implementation of the Plan.  *See* Ex. 13. We also said that neither Reed Smith nor

the Debtors had undertaken any act or omission that obstructed the Plan and process by which it

would go effective – namely the reconstitution of Holdings pursuant to the terms of the Plan and

the definitive documentation provided in the Prior Plan Supplements.  Rather, we had cooperated

by responding to Togut's document requests notwithstanding the fact that the requested

information was unnecessary for the implementation of the Plan and duplicative of information

already in the Petitioning Creditors' possession. Reed Smith also noted that the Petitioning Creditors had failed to provide any evidence that steps were being taken to comply with the requisite procedures of Liberian and Greek law to effectuate the change of control contemplated in the Plan. *Id*. In response Togut asserted that the Plan contained no requirements to adhere to applicable non-bankruptcy law, and that any such provisions were discretionary protections for the Petitioning Creditors. *See* Ex. 14. Togut also asserted that the Debtors were required to act as directed by the Petitioning Creditors to assist in effectuating the Plan. We answered by clarifying to the Petitioning Creditors that no provision of the Confirmation Order permitted the Petitioning Creditors to "direct" the Debtors prior to the Effective Date.

19. Reed Smith provided all responsive documents and information within its possession and control to the Petitioning Creditors within four days of receipt of the requested entity-by-entity Closing Checklist documentation and eleven days of receipt of the Closing Checklist. Further, Reed Smith advised Holdings to review its records and to communicate with subsidiaries to locate and provide the information requested by the Petitioning Creditors. Reed Smith did not direct the Debtors to withhold any requested information. Reed Smith did not object to or otherwise hinder the Petitioning Creditors in obtaining the requested documentation and did not take any action adverse or contrary to bringing the Plan effective. Based on the foregoing, I believe that Reed Smith has fully cooperated with the document and diligence requests of the Petitioning Creditors.

## II. RESIGNATION OF THE BOARD OF HOLDINGS AND APPOINTMENT OF PROVISIONAL BOARD

20. On November 12, we were informed by email that four directors of Holdings — Laskarina Karastamati, Eleni Karastamati, Takis Constantaras and Vassilis Kertsikoff — had resigned from their positions as directors and officers (as applicable) of Holdings. The email

also reported that there were "ongoing proceedings" that had been filed in Greece to fill the vacancies in Holdings' board of directors.

21.     We promptly informed Togut and the Court of these developments. *See* Ex. 13; *see also* Dkt. No. 1241.

22.     We later learned that, upon an application filed by two of Holdings' minority shareholders, a court in Greece, the Piraeus First Instance Court (the "First Instance Court"), had appointed a provisional board of directors (the "Provisional Board"), and that the Provisional Board had been granted limited authority to take certain corporate actions pending a hearing before the First Instance Court that was scheduled for February 4, 2025.

## III.   THE PETITIONING CREDITORS ATTEMPT TO FORCE REED SMITH AND THE DEBTORS TO CHANGE THE ADDRESS OF RECORD IN VIOLATION OF LIBERIAN LAW.

23.     Also on November 12, we received a letter from Togut requesting that Holdings complete a letter addressed to the Liberian International Ship & Corporate Registry ("LISCR") requesting a change to Holdings' "Address of Record" (the "Authorization Letter").  Notably, this request appears to be an acknowledgement that there are limits on the enforcement of the Confirmation Order and changing of the requisite corporate documents in Liberia by noting the following:

> We understand from our Liberian counsel that the Liberian Registry (LISCR) only accepts instructions from a company's current address of record or a person who has been granted authority by the current address of record through an authorization letter submitted to LISCR.  The amended and restated articles of incorporation and amended by laws for Reorganized Holdings that have been authorized by the Court as part of the Plan must be submitted by the address of record or another duly authorized person.
> *See* Ex. 15.

24.     On the same day, we received a communication from the Daniolos law firm, Greek counsel to the individual directors for Holdings informing us that under Liberian and

Greek law, the Confirmation Order was not immediately enforceable in Liberia or Greece, and that the members of the Provisional Board were counseled that attempts to update the Address of Record prior to entry of a recognized judgment in Liberia or Greece would expose the members of the Provisional Board of Holdings to liability. Furthermore, the Authorization Letter, which sought to appoint Adam Spears as the new Address of Record before the Effective Date, was facially invalid (as later acknowledged by the Petitioning Creditors).

25.     On the same day, Reed Smith filed a letter [Dkt. No. 1241] (the "Reed Smith Letter") explaining that we had not failed to cooperate in any way with the Petitioning Creditors in consummation of the Plan. The Reed Smith Letter explained that we had provided the Petitioning Creditors with all of the documents and information requested that we had, and that as we had previously told Togut, requests for information and documents that were not in the possession or control of Reed Smith had been forwarded to the directors of Holdings. We also informed the Court that the members of the Provisional Board had retained their own counsel and were evaluating their ability to respond to those document requests without incurring liability. While Reed Smith represents Holdings, we do not represent the members of the Provisional Board in their individual capacities. Even if we did, as counsel we could not compel those directors to undertake or refrain from taking any action.

26.     In response to our letter, the Petitioning Creditors filed a letter asking for the Court to order the Debtors to update the Liberian Registry, notably without even mentioning or addressing any ramifications that would have under Liberian law. *See* Dkt. No. 1242. In that letter, Petitioning Creditors again asserted, without any basis, that Debtors did not intend to cooperate with the Petitioning Creditors.

27.     The following day, this Court held a status conference during which the Petitioning Creditors again requested an order directing the Debtors to execute the Authorization Letter, and repeated their claim that the Debtors "plan to actively obstruct efforts to close." Transcript of November 13, 2024 Status Conference at 14:20-22.  As explained above, we believed (and had told the Petitioning Creditors and Togut) that the Petitioning Creditors were attempting to compel us and the Debtors to take actions prohibited by foreign law, rather than follow the appropriate steps to comply with applicable law as they had previously stated they would do in order to implement the Plan.

28.     At the Status Conference, Togut asserted the cancellation of the current stock equity of Holdings pursuant to § 5.4 of the Plan and the issuance of new equity pursuant to § 5.8 of the Plan require updating the Liberian registry to reflect new ownership.  *Id.* 16:13-25.  They told the Court that the Liberian registry could be updated in one of two ways: (i) by seeking recognition of the Confirmation Order in Liberia and subsequently proceeding to update the Liberian registry without the need or assistance of the Debtors and/or Reed Smith, or (ii) submission of the Authorization Letter.  *Id.* 18:5-11.  Togut then asserted (without any basis or justification) that "[Reed Smith] is going to instruct the debtors not to comply with court orders, then both the Debtors and their counsel should be sanctioned." (*Id.* 24:18-20) "Whether that [Authorization Letter] is sufficient in Liberia is our problem, not theirs.  They have no discretion.  They don't get to evaluate and decide whether to honor this Court's orders." *Id*. 25:18-21.  Counsel for the Committee of Unsecured Creditors surprisingly took Togut's assertions a step further and advised this Court that even if directing the Debtors to execute the Authorization Letter would violate foreign law, the Debtors should be ordered violate foreign law.  *Id.* at 12-15 ("[i]f there are violations of foreign law, I guess that'll get taken care of in those countries").

29.     In response, we explained that the representations about foreign law made by Togut were contrary to the legal opinions we had received from Greek and Liberian counsel, and that we were advised that the Petitioning Creditors' proposed course of conduct would constitute a knowing violation of Liberian law. *Id.* at 36: 3-10.

30.     This Court stated that it was "not prepared or able to rule on these issues being raised in this context" and (as we understood it), invited the parties to brief the issues relating to compliance with foreign law and attempt to reach a consensual resolution prior to the Plan going effective. *Id.* at 44:20-24.

31.     Following the Status Conference, Togut adjourned their targeted Effective Date until November 19 (notably without input from us or providing any basis for that date), and then proposed three options to address the issues surrounding the changing of the Address of Record via the Authorization Letter. *See* Ex. 16. The Petitioning Creditors suggested that the Debtors, Daniolos, the Petitioning Creditors, Togut and the Petitioning Creditors' Liberian counsel work together to either: (i) change the Address of Record to a representative of Reorganized Holdings such as Mr. Adam Spears, (ii) change the Address of Record to Reed Smith, or (iii) have the existing Address of Record make the requested filings of the organizational documents of Reorganized Holdings. *Id.* We also provided to Togut the contact information for the Liberian counsel that had provided the analysis that we were relying on.

32.     On November 14, as requested by the Court in the conference, we had a call with Togut to discuss the issues. We informed Togut that their proposed resolutions did not address the threshold issue of recognition of the Confirmation Order, and explained our understanding that, without recognition, there could be no proper change in the ownership or control of Holdings. Ultimately, no resolution was reached during the call. Following the call, we shared

the Petitioning Creditors' proposal with Daniolos and asked Daniolos, among other things, if any of the proposed options complied with Liberian law or if any other options existed that did not involve seeking recognition of the Confirmation Order in Liberia. *See* Ex. 17. On November 15, in response to a follow up email from Togut, we said that we had not yet heard back from Liberian counsel. *See* Ex. 18. We also suggested that perhaps the Debtors and Petitioning Creditor might be able to stipulate that the Petitioning Creditors would commit to seeking recognition of the Confirmation Order in Liberia and Greece and the directors of Holdings would commit to filing the Authorization Letter once the Confirmation Order was recognized in those jurisdictions. *See* Ex. 19. Togut rejected my suggestion, asserting that sections 1141 and 1142 of the Bankruptcy Code, the Plan and Confirmation Order required Holdings to update the Address of Record. *See* Ex. 20. Reed Smith addresses the inapplicability of those statutory sections in the accompanying brief.

33. On November 17, we notified the Petitioning Creditors that Liberian counsel had advised the directors of Holdings to refrain from taking any action regarding the change to the Address of record, including the three courses of action proposed by the Petitioning Creditors following the November 13 conference. *See* Ex. 21. Further, given the provisional status of the Provisional Board, Reed Smith was advised that an attempt to change the Address of Record could constitute a material change in Holdings' representation and corporate structure, which would expose the members of the Provisional Board to contempt charges for violation of the limited nature of their authority under First Instance Court's order. We also informed them that we had been advised that the Confirmation Order must be recognized in both Liberian and Greece to have any binding legal effect, and that a change of the Address of Record as they had

proposed could not supersede the recognition requirements in of these jurisdictions. We received no response to this email.

34. As the preceding recitation shows, Reed Smith at all times cooperated and engaged in good faith with the Petitioning Creditors regarding the change of the Address of Record. Reed Smith did not direct or advise the directors of Holdings or the Provisional Board regarding any actions related to the Address of Record. Rather, Reed Smith (along with the Provisional Board) have repeatedly explained their understanding that the Petitioning Creditors' proposed course of action would not address the underlying recognition issue and would expose the parties to liability under Liberian and/or Greek law. Further Reed Smith is not the party that would, or even could, execute the Authorization Letter.

35. Reed Smith ensured that the Petitioning Creditors' proposed alternatives had been reviewed by Liberian counsel, and even proposed a stipulation that Reed Smith reasonably believed might address the recognition issue. Any assertions that Reed Smith knowingly acted in a manner intended to prevent consummation of the Plan is inconsistent with the record. Any delays related to the consummation of the Plan as a result of the failure to seek recognition of the Confirmation Order in Liberia and Greece to permit the change of control contemplated therein lies with the Petitioning Creditors.

36. Notwithstanding the open issue regarding recognition of the Confirmation Order in Liberia and Greece and the inability to effectuate the change of control of Holdings, the Petitioning Creditors moved forward with the Effective Date.

**IV. ALLEGED OCCURRENCE OF THE EFFECTIVE DATE AND ATTEMPTS TO CHANGE DIRECTORS AND OFFICERS OF ELETSON HOLDINGS NOTWITHSTANDING LACK OF RECOGNITION OF THE CONFIRMATION ORDER**

37.     On November 19, 2024, the Petitioning Creditors filed the Effective Date Notice, which stated "that all conditions precedent to the Effective Date set forth in Section 9.1 of the Plan have been satisfied or waived pursuant to Section 9.2 of the Plan" and of the occurrence of the Effective Date on November 19, 2024.  *See* Dkt. No. 1258 at 2.

38.     On the same day, the Togut firm filed notices of appearance on behalf of Reorganized Eletson Holdings in both the Chapter 11 Cases and the District Court arbitration confirmation proceedings. *See* [Dkt. No. 1259] and Kotliar Decl., Ex. 16.

39.     Also on that day, Adam Spears sent a series of identical letters to Reed Smith and the barristers representing Eletson Gas LLC purporting to act as chief executive officer of Reorganized Holdings on behalf of "Eletson Holdings Inc and its subsidiaries (collectively, 'Eletson')", demanding, among other things, meetings with Reed Smith personnel, transmittal of Reed Smith's files and access to its systems, and restricting (without any demonstrated authority) Reed Smith from taking any actions, or making any filings or decisions (collectively the "Spears Letters"). See Ex. 22.  Pursuant to section 2.5(a) of the Plan, Reed Smith's retention by Reorganized Holdings had automatically been terminated as of the effective date of the plan.

40.     On the morning of November 21, we confirmed with Liberian Counsel that the Confirmation Order must be recognized in both Greece and Liberia before Reorganized Holdings can take any corporate actions, including changing of the Address of Record, changing the board of directors, changing or appointing the officers of Holdings and/or appointing counsel for Holdings.  As a result, we were told, any purported direction of Reed Smith made by Reorganized Holdings, which had failed to adhere to the required corporate formalities under

either Liberian or Greek law, was an invalid direction. Actions purporting to adopt amended articles of incorporation or bylaws through a shareholder agreement effective as a result of the Confirmation Order were also null and void for the same reason, and any such action would have no binding effect in Liberia or in Greece, Holding's principal place of business.

41. We were again informed that, pursuant to the First Instance Court's provisional order, the Provisional Board members were the only parties authorized to represent and/or bind Holdings. We were also informed that the Provisional Board, pursuant to its authority under the provisional order, had designated Reed Smith to represent Holdings and directed Reed Smith to refuse all requests contained in the Spears Letters. We were also directed to object to or pursue other legal remedies disputing the authority of Togut or any other counsel that was not appointed by the Provisional Board, and to file any document required to support the Appeal, which Reed Smith understood to mean the *Appellant's Statement of Issues to be Presented and Designation of Items to be Included in the Record on Debtors' Appeal of Confirmation Opinion* [Dkt. No. 1262] (the "Statement of Issues"). As stated in the Statement of Issues, it was "filed to ensure that any and all deadlines related to the Notice of Appeal are adhered to and is based on instructions given ***before the Effective Date*** of the Plan and reiterated since." *See* Dkt. No. 1262 at 1 (emphasis added). Further, Reed Smith represented that it "is attempting to comply with all orders of this Court as well as orders of the Greek court and have called this issue to the attention of the District Court." *See id.* at 2.

42. In the Motion, the Movants refer to a letter filed by Reed Smith in the District Court "in connection with the Committee's pending appeal of its prior motion to appoint a Chapter 11 trustee" (Motion ¶ 33). I note that this letter was intended for the District Court confirmation proceedings before Judge Liman but was inadvertently filed in the Chapter 11

trustee appeal proceedings (which is also before Judge Liman) and with the incorrect case caption. As the letter clearly indicates, it was in response to Togut's Notice of Appearance filed in the District Court confirmation proceedings (filed at Docket No. 210). Before the inadvertent filing of the letter, the latest docket entry in the Chapter 11 trustee appeal proceedings was Docket No. 21.

43. After learning of this error, on November 21, we filed a letter in the District Court on behalf of Eletson Corp (District Court Docket No. 211), stating that despite the automatic termination of Reed Smith's representation of Holdings pursuant to section 2.5(a) of the Plan, the plan had not terminated Reed Smith's representation of Eletson Corp, which continued.

44. Further, we noted for the District Court that because the purported shareholders of Reorganized Holdings had presented no evidence that they had taken the steps necessary under Greek and Liberian law to confirm their capacity to act on behalf of Holdings in the United States, Liberia or Greece, we believed that the Provisional Board was the only party authorized to appoint counsel until the issues surrounding who had capacity to speak for Holdings was sorted out. In any event, Reed Smith was ensuring that Holdings and Corp—whom Reed Smith has not been relieved of representing in the District Court under Local S.D.N.Y Rule 1.4—are being represented.

45. Subsequent to our filing of that letter, Togut filed a notice of appearance on behalf of Eletson Corp before the District Court. Togut then filed a letter in response, asserting that Reed Smith no longer represented Holdings or Eletson Corp, and that as a result of the Spears Letters, Reed Smith was not authorized to speak for or act on Eletson Corp's behalf. See Ex. 23. Notably, this response letter explicitly admitted that Reed Smith still represented Eletson Corp noting that "[a] termination of Reed Smith as counsel to Eletson Corp. is forthcoming." The

Togut letter also incorrectly asserted that "Reed Smith purports to serve as [Eletson Holdings' "former" officers', directors' and shareholders'] mouthpiece while they attempt to play jurisdictional games with this Court and the Bankruptcy Court."

46.     Later on the evening of November 21, we, as well as the barristers representing Eletson Gas LLC, received a second series of identical letters from Adam Spears, again purporting to terminate Reed Smith's engagement with Holdings and its subsidiaries as of November 20, and asserting that our November 21 letter to the District Court was not authorized. *See* Ex. 24.  To my knowledge and belief, no other relevant communications were had between Reed Smith, Togut, the Petitioning Creditors and/or Reorganized Holdings after that Spears letter before the filing of the Sanctions Motion.

47.     On December 4, 2024, Len Hoskinson, purporting to act without authority as CEO of Corp and Gas, sent an email to Reed Smith "formally terminat[ing] [Reed Smith's] representation of Eletson Gas LLC and its subsidiaries," effective that day and demanding that Reed Smith turnover all files relating to Corp and Gas.  Mr. Hoskinson proceeded to state as follows:

> As set forth in prior correspondence, Reed Smith's representation as to Eletson Holdings Inc. terminated by operation of its plan of reorganization on November 19, 2024 and was terminated by Eletson Holdings Inc.'s subsidiaries other than Eletson Gas, such as Eletson Corp., on November 20, 2024.
>
> Eletson Gas LLC has not agreed to and is not obligated to pay any of Reed Smith's fees and/or expenses incurred after the date hereof.
>
> Ensure that no further action is taken by you on Eletson Gas LLC or Eletson Corp or any of their subsidiaries.
>
> Additionally, promptly provide me with a complete copy of the Eletson Gas LLC and Eletson Corp files, including all documents, correspondence and notes, in a timely manner, as well as any other files that you may have in connection with any of their subsidiaries.
> *See* Ex. 25.

48.     Based on the foregoing, Reed Smith believes it took no action contrary to the terms of the Confirmation Order or otherwise refused or failed to cooperate with the consummation of the Plan.  Rather, Reed Smith was caught in the middle of competing directives from two parties: one purporting to represent the Debtor that had not changed control as a result of the Petitioning Creditors' failures to adhere to the formalities and requirements of Liberian and Greek law, and the other purporting to represent the Reorganized Debtor pursuant to the Confirmation Order and Notice of Effective Date and pushing for a violation of foreign law.

49.     As set forth herein, the Petitioning Creditors and/or Reorganized Holdings as applicable were aware of the jurisdictional and transitional issues caused by failure to have the Confirmation Order recognized in Liberia and in Greece.  As stated by Togut at the Status Hearing, in the Authorization Letter, and even in the Plan and Disclosure Statement, recognition of the Confirmation Order was a material part of the implementation of the Plan.

50.     In fact, it appears that all parties agree that recognition of the Confirmation Order in Liberia and Greece would resolve all of the issues surrounding the transition of control from the Provisional Board to Reorganized Holdings.  Notwithstanding this clear path forward, the Petitioning Creditors had chosen not to undertake this step, resulting in the muddied situation the parties find themselves in at this time.  (I have been advised that Pach Shemen has recently filed for recognition in Liberia.)

51.     Reed Smith has taken no action adverse to any party purporting to direct or control Reed Smith either before or since the filing of the Confirmation Opinion, entry of the Confirmation Order, and purported occurrence of the Effective Date.  As plainly set forth in the Plan, upon the Effective Date, Reed Smith's representation of Eletson Holdings in relation to the

Chapter 11 Cases was terminated. Based upon this plain language, and the previous orders of this Court stating Reed Smith's representation of Eletson Corp was a proceeding unrelated to the Chapter 11 Cases, Reed Smith reasonably believed, and still believes, that Reed Smith represents Eletson Corp. Further, given the conflicting directives between the Spears Letters and the direction from the Provisional Board, Reed Smith reasonably believed it to be within Reed Smith's authority to file a letter with the District Court requesting that the District Court refrain from making any decisions until the jurisdictional issues were resolved.

52. Reed Smith believes that it reasonably followed the directive of the Provisional Board which stated that Reed Smith continued to represent Holdings as the necessary actions to provide the Petitioning Creditors and Reorganized Holdings with the authority to direct Holdings and appoint counsel or terminate counsel were never undertaken.

## V. CONTINUED COOPERATION DESPITE BASELESS THREAT OF SANCTION

53. Reed Smith has not ceased cooperating with the Petitioning Creditors even since they filed the Sanctions Motion. Rather, Reed Smith continues to operate in accordance with the Confirmation Order to the best of its ability.

54. On November 26, Togut requested information from Reed Smith to assist the Petitioning Creditors in the filing of Reorganized Holdings' monthly operating reports. *See* Ex. 26. Reed Smith filed these monthly operating reports for the Debtors each month during the Chapter 11 Cases. Obviously, the information was provided to Reed Smith from the Debtors each month and was not generated from information held or known to Reed Smith prior to being provided by the Debtors. On the next day, Reed Smith responded to Togut informing Togut that this information was not in Reed Smith's possession, and that Reed Smith had forwarded the inquiry to the applicable parties at Holdings whom Reed Smith reasonably believed would be

able to address the inquiry. *See* Ex. 27. In response, Togut responded confrontationally and demanded that Reed Smith or the directors of Holdings provide the requested information. *See* Ex. 28. Notwithstanding Togut's hostility, Reed Smith did just as it said it would and forwarded the request along and reported back what it heard. On December 4, 2024 Reed Smith responded to Togut's November 26 email with all of the information that had been provided to Reed Smith.

55.     Reed Smith has even cooperated with the Petitioning Creditors and Togut in ensuring that the appropriate parties are served and the assertions in the Sanctions Memo may be swiftly resolved. On December 5, 2024 Togut purportedly served several parties to the Sanctions Motion through Reed Smith. Reed Smith notified Togut that not only had Reed Smith not entered a notice of appearance on behalf of these parties, Reed Smith had not represented these parties in any capacity in any case. As such Reed Smith was not authorized to accept service on behalf of these parties. Reed Smith could have simply ignored Togut's error and sprung it on them at the hearing on the Sanctions Motion. However, such a course of action would have simply created more issues and further burdened the estates of Holdings and Reorganized Holdings and wasted judicial resources. Instead, Reed Smith, again took the action that was in the best interest of all parties, in hopes to bring this matter to a swift conclusion.

56.     Ultimately, we will, of course, abide by whatever decision is rendered by this Court regarding the change of control contemplated in the Plan. We have not taken any action with the intent of violating an order of this Court. Rather, as fiduciaries with a responsibility to their client, and officers of the Court with an obligation to comply with the laws of a sovereign nation, we have acted in a reasonable manner given unclear directions from parties with conflicting interests.

57. Further, in support of this Declaration, attached hereto as Exhibit 29 is a true and correct copy of a letter submitted to Reed Smith by the Daniolos Law Firm reiterating its position regarding recognition of the Confirmation Order and actions of the Petitioning Creditors, their counsel, and principals as of the date hereof.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 10, 2024

_____

Louis M. Solomon

## **Exhibit 1**

**Closing Checklist**

*In re* Eletson Holdings Inc., *et al.*
Case No. 23-10322 (JPM) (Bankr. S.D.N.Y.)

Closing Checklist[1]
Effective Date Target: November [12], 2024

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| **A.** | **Pre-Closing Checklist** | | | | |
| 1. | Confirmation Order | LE | N/A | N/A | LE called Chambers regarding whether PC Plan proposed order will be entered or if the decision is the only order on the plan |
| 2. | Eletson Information | MM / AG / LE | Reed Smith | N/A | Reed Smith to provide the following:<br><br>- Employee roster for all entities<br>- Copies of all employment agreements<br>- Copies of all charters, certificates of incorporation, by laws, and similar corporate constituent documents for all entities<br>- Copies of all loan documents for all entities<br>- List of board members and officers for all entities<br>- List of all legal, financial and other professionals retained / employed by each entity and outstanding amounts due to each<br>- List of all pending, outstanding, and/or threatened or otherwise potentially known |

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| | | | | | litigations (threatened, actual, or otherwise) against or instituted by all entities |
| 3. | Greek Counsel | KO / BK / BS | Reed Smith | N/A | Discuss with Eletson whether local counsel necessary to implement restructuring<br><br>A. Spears working to identify Greek counsel |
| 4. | Oaktree Discussions (SMEs and Eletson Gas) | KO / BK | Reed Smith | N/A | Coordinate calls with Oaktree to discuss transition<br><br>TBD whether document waiver of COC / other defaults |
| 5. | Historical Lenders | KO / BK | Reed Smith | N/A | Coordinate calls with historical lenders to discuss transition |
| 6. | Employee Discussions | KO / BK / MM / AG / LE | Reed Smith | N/A | Discuss messaging / transition plan with Company and begin discussions with employees |
| 7. | Establish Rights Offering Cash Escrow Account | MM / AG / LE | KCC | N/A | KCC delivered the Funding Notice to Mulberry on 8/20/2024<br><br>Discuss / coordinate with KCC creation of escrow account and funding |
| 8. | Establish GUC Cash Pool Account | MM / AG / LE | KCC | N/A | TSS to work with KCC to create escrow account (with terms reasonably acceptable to the UCC) to be established and funded on the Effective Date with the GUC Cash Pool |
| B. | Effective Date Closing Checklist | | | | |

2

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| 1. | Reorganized Holdings Bank Account | MM / AG / LE | Reed Smith | N/A | Discuss opening bank account for Reorganized Holdings to hold residual plan cash and make post-effective date payments to professionals<br><br>Discuss with existing Eletson bank(s) to open account at parent level |
| 2. | Funds Rights Offering Account | MM / AG / LE | KCC | $[53,500,000]<br>[Insert Payee Information] | Up to $53,500,000 to be delivered to KCC escrow account by no later than five (5) business days prior to the Effective Date |
| 3. | Pay Administrative Claims (Non-Professionals Fee Claims) | | | | |
| | - Togut 503(b)(3)(A) | MM / AG / LE | | $2,594,805.56<br>[Insert Payee Information] | Amount allowed per Claims Decision [ECF 1211]<br><br>To be paid from KCC escrow account |
| | - WSFS 503(b)(3)(A) | MM / AG / LE | | $1,843,156.14<br>[Insert Payee Information] | Amount allowed per Claims Decision [ECF 1211]<br><br>To be paid from KCC escrow account |
| | - NAF 503(b)(3)(A) | MM / AG / LE | | $225,000.00<br>[Insert Payee Information] | Amount allowed per Court Order [ECF 1158]<br><br>To be paid from KCC escrow account |
| | - UST Fees | MM / AG / LE | | TBD | Discuss with UST timing of payment of outstanding UST Fees arising prior to the Effective Date<br><br>Amounts if any to be paid on Effective Date to be paid from KCC escrow account |
| 4. | Pay DIP Claims | MM / AG / LE | Legal Scale | $[ ]<br>[Insert Payee Information] | Need final payoff amount with interest through anticipated 11/12 closing |

3

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| | | | | | TSS / Legal Scale to prepare DIP payoff letter<br><br>To be paid from KCC escrow account |
| 5. | Pay Backstop Party Fees and Expenses | MM / AG / LE | Varies | Varies | |
| | - List of Professionals to Come | MM / AG / LE | Name | $[____]<br>[Insert Payee Information] | To be paid from KCC escrow account |
| 6. | Pay Priority Tax Claims | MM / AG / LE | Name | $[____]<br>[Insert Payee Information] | TSS to review whether any priority tax claims to be paid on the Effective Date<br><br>See IRS POC #23 |
| 7. | Pay Other Priority Claims | MM / AG / LE | Name | $[____]<br>[Insert Payee Information] | TSS to review whether any other priority claims to be paid on the Effective Date |
| 8. | Pay Secured Claims | MM / AG / LE | Name | $[____]<br>[Insert Payee Information] | TSS to review whether any secured claims to be paid on the Effective Date |
| 9. | Fund GUC Cash Pool Account | MM / AG / LE | KCC | $[____]<br>[Insert Payee Information] | TSS to calculate Cash Pool amount in accordance with the PC Plan |
| 10. | Initial GUC Cash Out Distribution | MM / AG / LE | KCC | See Appendix A | Initial distribution for undisputed / allowed claims, with reserve for one subsequent, final distribution<br><br>Discuss cash out funding to WSFS and DB<br><br>Discuss WSFS and DB charging liens |

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| 11. | Pay Convenience Class Claims | MM / AG / LE | KCC | See Appendix B | KCC to pay Convenience Claims in accordance with the PC Plan on the Effective Date |
| 12. | Issue New Equity | MM / AG / LE | TBD | N/A | Discuss issuing equity to PS / Mulberry / Dupont |
| 13. | Cancel Existing Equity | MM / AG / LE | N/A | N/A | Existing equity interests automatically cancelled by operation of the PC Plan |
| 14. | Cancel Existing Old Notes / 2022 Notes / Related Agreements | MM / AG / LE | Perkins Thompson Hine | N/A | Automatically cancelled by operation of the PC Plan<br><br>Discuss with WSFS and DB counsel whether any additional documentation needed or effective, including with respect to Section 5.4 carve-outs |
| 15. | LK / VH / VK Employment Agreements | MM / AG / LE | Reed Smith | N/A | Reed Smith to identify all positions at all entities<br><br>Discuss resignation or termination<br><br>TSS to document resignation or termination and Reed Smith / Sidley to coordinate signatures |
| 16. | Additional Employment Agreements | MM / AG / LE | Reed Smith | N/A | Consider whether additional termination / resignations necessary |
| 17. | Shareholders Agreement | MM / AG / LE | Legal Scale Dechert | N/A | TSS to finalize Shareholders Agreement from the Plan Supplement (including Schedule A for minority holders)<br><br>Dechert to review and sign off per PC Plan<br><br>TSS to obtain Holdings signature to be held in escrow for the Effective Date |

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| 18. | Amended Certificate of Incorporation | MM / AG / LE | Legal Scale | N/A | TSS / Legal Scale to finalize amended certificate of incorporation<br><br>TSS to discuss with Liberian counsel whether needs to be filed / registered locally<br><br>TSS to coordinate and prepare signature page to be held in escrow |
| 19. | Amended By-Laws | MM / AG / LE | Legal Scale | N/A | TSS / Legal Scale to finalize amened by laws<br><br>TSS to discuss with Liberian counsel whether needs to be filed / registered locally |
| 20. | D&O Insurance | MM / AG / LE | N/A | N/A | Discuss updating D&O coverage for new directors |
| 21. | Subsidiary Governance | MM / AG /LE | Reed Smith<br>Legal Scale | N/A | Legal Scale preparing forms of governance documents replacing board members of all subsidiary entities as of the Effective Date<br><br>Legal Scale to coordinate with local counsel in applicable jurisdictions |
| 22. | Bank Account Authorizations | MM / AG / LE | Reed Smith | N/A | Obtain list of all authorized signatories for all bank accounts<br><br>Obtain point of contact for each bank |
| **B.** | **Immediately After Effective Date Occurs (Same Day)** | | | | |
| 1. | File Notice of Effective Date | DP | N/A | N/A | TSS to file notice of Effective Date in the form attached to the Confirmation Order |

6

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| 2. | Trustee Appeal | MM / AG / LE | Dechert | N/A | Discuss which party files notice with the SDNY District Court regarding resolution of Trustee Appeal |
| 3. | Local Recognition | MM / AG / LE | N/A | N/A | Consider whether to file recognition proceeding in Greece under the Model Law |
| **C.** | **Post-Closing Workstreams** | | | | |
| 1. | Togut Engagement Letter | KO / BK | N/A | N/A | TSS to draft post-effective date engagement letter |
| 2. | Eletson Holdings Press Release | KO / BK / MM | N/A | N/A | Prepare post-closing press release announcing successful restructuring |
| 3. | COC Closing Eletson Finance (US) and Eletson MI | MM / AG / LE | UST | N/A | Eletson Finance and Eletson MI cases deemed closed on Effective Date per PC Plan § 12.12 <br><br> TSS to prepare an order, in form and substance satisfactory to the UST, closing and issuing a final decree as of the Effective Date |
| 4. | Final Fee Applications | KO / BK / MM / AG / LE | Various | N/A | Professionals to file final fee applications by 30 days after the Effective Date <br><br> Reed Smith, Dechert, FTI, Riveron, Investments, HFR, KCC <br><br> Final allowed amounts to the extent not paid during the chapter 11 cases to be paid by Reorganized Holdings |

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| | | | | | Discuss segregation of residual plan cash to provide for payment of professional fees when allowed |
| 5. | Administrative Claims Bar Date | MM / AG / LE | TBD | N/A | To be filed within 30 days after the Effective Date. |
| 6. | Employment Agreements | KO / BK / MM | N/A | N/A | Consider whether employment agreements necessary for A. Spears (CEO), others |
| 7. | EIP | KO / BK / MM / AG / LE | N/A | N/A | Plan contemplates EIP implemented by the new board after the Effective Date |
| 8. | Claims Reconciliation | KO / BK / MM /AG / LE | N/A | N/A | Finalize claims reconciliation and make final distributions |
| 9. | Obtain All Internal Documents / Communications | KO / BK / MM | TBD | TBD | Access servers and obtain all information |
| 10. | Obtain Third Party Documents / Communications | KO / BK / MM | TBD | TBD | Email third party professionals and request copies of all records and communications |
| 11. | Post-Confirmation Reports | KO / BK / MM /AG / LE | N/A | N/A | Reorganized Holdings shall file and serve on the UST quarterly reports of the disbursements made, within 15 days after the conclusion of such period, until the chapter 11 cases are closed |

| # | Item | TSS Party | Other Parties | Wire Info | Information |
|---|------|-----------|---------------|-----------|-------------|
| 12. | Payment of UST Fees | KO / BK / MM /AG / LE | N/A | N/A | All U.S. Trustee Fees payable after the Effective Date shall be paid by Reorganized Holdings until the closing of the chapter 11 cases |
| 13. | Final Decree Closing Cases | KO / BK / MM /AG / LE | N/A | N/A | TBD pending final claims reconciliation and distributions |

## Schedule 1 – Sources and Uses

[To come]

## Appendix A

Initial GUC Cash Out Distribution on the Effective Date

[To Come]

## Appendix B

Convenience Claims Paid on the Effective Date

[To Come]

**Appendix C**

Contact List

| Party | Counsel | Contact(s) |
|---|---|---|
| Debtors | Reed Smith LLP | Derek Baker– DBaker@reedsmith.com |
| | | Derek Osei Bonsu– DOsei-Bonsu@reedsmith.com |
| Petitioning Creditors | Togut, Segal & Segal LLP | TOGUT |
| | Legal Scale | Kyle Ortiz – Kortiz@teamtogut.com |
| | | Bryan Kotliar – bkotliar@teamtogut.com |
| | | Martha Martir- mmartir@teamtogut.com |
| | | Amanda Glaubach – aglaubach@teamtogut.com |
| | | Leila Ebrahimi – lebrahimi@teamtogut.com |
| | | |
| | | LEGAL SCALE |
| | | Mehak Rashid - Mehak@legalscale.com |
| | | Neil ODonnel - Neil@legalscale.com |
| Creditors' Committee | Dechert LLP | DECHERT |
| | FTI | David Herman- David.Herman@dechert.com |
| | | Stephen Zide- Stephen.Zide@dechert.com |
| | | Owen Haney- Owen.Haney@dechert.com |
| | | |
| | | FTI |
| | | Michael Cordasco - Michael.Cordasco@fticonsulting.com |
| | | Joseph Sternberg - Joseph.Sternberg@fticonsulting.com |
| | | Marshal Eisler - Marshall.Eisler@fticonsulting.com |
| WSFS | Perkins Coie LLP | Tina Moss - TMoss@perkinscoie.com |
| NAF | Seward & Kissel LLP | Robert Gayda - gayda@sewkis.com |
| | | Catherine LoTiempo - lotempio@sewkis.com |
| AB Bank | White & Case LLP | Kim Havlin – kim.havlin@whitecase.com |
| | | Philip Abelson – Philip.abelson@whitecase.com |
| Deutsche Bank | Thompson Hine LLP | John Bae - John.Bae@thompsonhine.com |
| Sunrise APL | Chalos & Co PC | Briton P. Sparkman -  bsparkman@chaloslaw.com |

## Exhibit 2

**Reed Smith October 28 Response Email**

| | |
|---|---|
| **From:** | Baker, Derek J. |
| **Sent:** | Monday, October 28, 2024 5:38 PM |
| **To:** | Leila Ebrahimi; Osei-Bonsu, Derek M. |
| **Cc:** | Bryan Kotliar; EXT Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| **Subject:** | RE: Eletson - Closing Matters |
| **Attachments:** | Eletson - PC Plan Closing Checklist.docx |

All – we are in receipt of your email; however, it is likely a bit premature at this point. The Debtors – under the direction of the Shareholders and in the exercise of their fiduciary duties – are reviewing the Decision. An initial review of the attached appears to call for actions from parties other than the Debtor (which ReedSmith does not represent) and from persons that a shareholder of the Debtor does not have any right to direct under applicable non-bankruptcy law.

We also want to understand the requests being made and want confirmation that any actions requested to be undertaken and undertaken by ReedSmith (as well as any costs incurred in responding to any objections to fee statements submitted) will be compensated and will not be otherwise subject to any objection by Pach Shemen or anyone affiliated with it (including Levona, the Indenture Trustee(s), the Committee or any other person acting upon information provided or directed by PS). Please confirm.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

**From:** Leila Ebrahimi <lebrahimi@teamtogut.com>
**Sent:** Monday, October 28, 2024 9:05 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Bryan Kotliar <bkotliar@teamtogut.com>; EXT Kyle Ortiz <kortiz@teamtogut.com>; Amanda Glaubach <aglaubach@teamtogut.com>; Martha Martir <mmartir@teamtogut.com>
**Subject:** Eletson - Closing Matters

==External E-Mail - FROM lebrahimi@teamtogut.com <lebrahimi@teamtogut.com>==

Reed Smith Team,

We'd like to begin the process of working with you, the Debtors, and the other parties on consummating the PC Plan in accordance with the Court's decision from Friday. **Please let us know when you are available today / tomorrow for a call with us.**

1

# Exhibit 3

**Togut October 28 Response Email**

| From: | Bryan Kotliar |
|---|---|
| To: | Baker, Derek J. |
| Cc: | Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| Subject: | Re: Eletson - Closing Matters |
| Date: | Monday, October 28, 2024 7:30:10 PM |
| Attachments: | 597CF39D-802E-4454-B1AD-DA0D1DE7FE3A.png |
| | Eletson - PC Plan Closing Checklist.docx |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**



Derek,

As you know, the Court confirmed the PC Plan. Thus, we have every right to work to effectuate that plan promptly. This is particularly so considering the current liquidity situation with the DIP being nearly fully drawn.

In light of these circumstances, we are working with all of the parties to implement the plan as quickly as possible and save these estates needless administrative expenses. It is also critical to ensuring a smooth transition of the Debtors' and their non-debtor subsidiaries' operations, which is in their best interests.

You, the Debtors, and their current shareholders have no basis to refuse to cooperate with us and the other parties in effectuating the Court's order. We are asking you for the information that you have or that you have access to (such as, by way of Eletson Holdings' ownership of its subsidiaries to which they owe fiduciary duties). There are obviously instances where you do not have information, but we are asking for your assistance in obtaining it.

Thus, please let us know what information that you have that you will provide, by when, and what you do not have that you will assist us with obtaining. As for Reed Smith's fees related to this work, to the extent that you are assisting in a productive and good faith manner, we will not object to such fees.

Best regards,

Bryan

———

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com



On Oct 28, 2024, at 5:38 PM, Baker, Derek J. <DBaker@ReedSmith.com> wrote:

All – we are in receipt of your email; however, it is likely a bit premature at this point. The Debtors – under the direction of the Shareholders and in the exercise of their fiduciary duties – are reviewing the Decision. An initial review of the attached appears to call for actions from parties other than the Debtor (which ReedSmith does not represent) and from persons that a shareholder of the Debtor does not have any right to direct under applicable non-bankruptcy law.

We also want to understand the requests being made and want confirmation that any actions requested to be undertaken and undertaken by ReedSmith (as well as any costs

<u>**Exhibit 4**</u>

**Reed Smith October 30 Response Email**

| From: | Baker, Derek J. |
|---|---|
| To: | Bryan Kotliar |
| Cc: | Leila Ebrahimi; Osei-Bonsu, Derek M.; Catherine LoTempio; gayda@sewkis.com; Mehak Rashid; neil@legalscale.com; Herman, David; Zide, Stephen; Haney, Owen Sargent; Michael.Cordasco@fticonsulting.com; Joseph.Sternberg@fticonsulting.com; Marshall.Eisler@fticonsulting.com; Moss, Tina N. (Perkins Coie); kim.havlin@whitecase.com; philip.abelson@whitecase.com; Bae, John; James Lee; Leanne Rehder Scott; bsparkman@chaloslaw.com; Kyle Ortiz; Martha Martir; Amanda Glaubach |
| Subject: | RE: Eletson - Closing All Hands |
| Date: | Wednesday, October 30, 2024 3:04:00 PM |
| Attachments: | image001.png |

I don't know that we have anything to report at this time. I don't want to waste anyone's time getting on a call to simply report that.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
**reedsmith.com**

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Wednesday, October 30, 2024 10:21 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>
**Cc:** Leila Ebrahimi <lebrahimi@teamtogut.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Catherine LoTempio <lotempio@sewkis.com>; gayda@sewkis.com; Mehak Rashid <Mehak@legalscale.com>; neil@legalscale.com; Herman, David <David.Herman@dechert.com>; Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>; Michael.Cordasco@fticonsulting.com; Joseph.Sternberg@fticonsulting.com; Marshall.Eisler@fticonsulting.com; Moss, Tina N. (Perkins Coie) <TMoss@perkinscoie.com>; kim.havlin@whitecase.com; philip.abelson@whitecase.com; Bae, John <John.Bae@thompsonhine.com>; James Lee <james.lee@veritaglobal.com>; Leanne Rehder Scott <lscott@veritaglobal.com>; bsparkman@chaloslaw.com; Kyle Ortiz <kortiz@teamtogut.com>; Martha Martir <mmartir@teamtogut.com>; Amanda Glaubach <aglaubach@teamtogut.com>
**Subject:** Re: Eletson - Closing All Hands

---

<mark>**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**</mark>

---

Good morning Derek - following up again on scheduling the closing calls. Please let us know what days and times work this week for you.

Thank you,

# Exhibit 5

**Togut October 30 Response Email**

| | |
|---|---|
| **From:** | Bryan Kotliar |
| **To:** | Baker, Derek J. |
| **Cc:** | Leila Ebrahimi; Osei-Bonsu, Derek M.; Catherine LoTempio; gayda@sewkis.com; Mehak Rashid; neil@legalscale.com; Herman, David; Zide, Stephen; Haney, Owen Sargent; Michael.Cordasco@fticonsulting.com; Joseph.Sternberg@fticonsulting.com; Marshall.Eisler@fticonsulting.com; Moss, Tina N. (Perkins Coie); kim.havlin@whitecase.com; philip.abelson@whitecase.com; Bae, John; James Lee; Leanne Rehder Scott; bsparkman@chaloslaw.com; Kyle Ortiz; Martha Martir; Amanda Glaubach |
| **Subject:** | Re: Eletson - Closing All Hands |
| **Date:** | Wednesday, October 30, 2024 3:43:08 PM |
| **Attachments:** | 597CF39D-802E-4454-B1AD-DA0D1DE7FE3A.png image001.png |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**



Derek -

Will the Debtors and Reed Smith be cooperating with our requests for information and assisting with closing the PC Plan?

We have outstanding requests to you by separate emails, to which we have not received any information. And now you will not answer my question of when you are available for closing calls with the other parties.

We intend to schedule all hands closing calls - one for later this week and then daily next week. If there are days and times that work better for you than others, please let us know.

Best regards,

Bryan

---

**Bryan M. Kotliar** | Partner
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com



On Oct 30, 2024, at 3:04 PM, Baker, Derek J. <DBaker@ReedSmith.com> wrote:

I don't know that we have anything to report at this time. I don't want to waste anyone's time getting on a call to simply report that.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**

# **Exhibit 6**

**Reed Smith October 30 Response Email**

| From: | Baker, Derek J. |
|---|---|
| To: | Bryan Kotliar |
| Cc: | Leila Ebrahimi; Osei-Bonsu, Derek M.; Catherine LoTempio; gayda@sewkis.com; Mehak Rashid; neil@legalscale.com; Herman, David; Zide, Stephen; Haney, Owen Sargent; Michael.Cordasco@fticonsulting.com; Joseph.Sternberg@fticonsulting.com; Marshall.Eisler@fticonsulting.com; Moss, Tina N. (Perkins Coie); kim.havlin@whitecase.com; philip.abelson@whitecase.com; Bae, John; James Lee; Leanne Rehder Scott; bsparkman@chaloslaw.com; Kyle Ortiz; Martha Martir; Amanda Glaubach |
| Subject: | RE: Eletson - Closing All Hands |
| Date: | Wednesday, October 30, 2024 3:48:00 PM |
| Attachments: | image001.png |

We read most of the information requested to be of entities that are not a Debtor. If you can identify what information you want is "from a debtor" we are happy to review it.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
**reedsmith.com**

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Wednesday, October 30, 2024 3:43 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>
**Cc:** Leila Ebrahimi <lebrahimi@teamtogut.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Catherine LoTempio <lotempio@sewkis.com>; gayda@sewkis.com; Mehak Rashid <Mehak@legalscale.com>; neil@legalscale.com; Herman, David <David.Herman@dechert.com>; Zide, Stephen <Stephen.Zide@dechert.com>; Haney, Owen Sargent <Owen.Haney@dechert.com>; Michael.Cordasco@fticonsulting.com; Joseph.Sternberg@fticonsulting.com; Marshall.Eisler@fticonsulting.com; Moss, Tina N. (Perkins Coie) <TMoss@perkinscoie.com>; kim.havlin@whitecase.com; philip.abelson@whitecase.com; Bae, John <John.Bae@thompsonhine.com>; James Lee <james.lee@veritaglobal.com>; Leanne Rehder Scott <lscott@veritaglobal.com>; bsparkman@chaloslaw.com; Kyle Ortiz <kortiz@teamtogut.com>; Martha Martir <mmartir@teamtogut.com>; Amanda Glaubach <aglaubach@teamtogut.com>
**Subject:** Re: Eletson - Closing All Hands

---

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

---

Derek -

Will the Debtors and Reed Smith be cooperating with our requests for information and assisting with closing the PC Plan?

**Exhibit 7**

**Togut November 4 Email**

| From: | Bryan Kotliar |
| --- | --- |
| To: | Baker, Derek J. |
| Cc: | Leila Ebrahimi; Osei-Bonsu, Derek M.; Catherine LoTempio; gayda@sewkis.com; Mehak Rashid; neil@legalscale.com; Herman, David; Zide, Stephen; Haney, Owen Sargent; Michael.Cordasco@fticonsulting.com; Joseph.Sternberg@fticonsulting.com; Marshall.Eisler@fticonsulting.com; Moss, Tina N. (Perkins Coie); kim.havlin@whitecase.com; philip.abelson@whitecase.com; Bae, John; James Lee; Leanne Rehder Scott; bsparkman@chaloslaw.com; Kyle Ortiz; Martha Martir; Amanda Glaubach; Jasper, Paul S. (Perkins Coie) |
| Subject: | Re: Eletson - Closing All Hands |
| Date: | Monday, November 4, 2024 5:35:08 PM |
| Attachments: | 597CF39D-802E-4454-B1AD-DA0D1DE7FE3A.png |

---

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

---



Derek,

Pursuant to the Confirmation Order [ECF 1223], including, without limitation, paragraphs 5(i) and 5(iii) thereof, the Petitioning Creditors hereby instruct the Debtors to, and to cause their non-Debtor subsidiaries (the "Subsidiaries") to, do and provide the following:

- (1) Provide an employee roster for all Subsidiaries, identify key personnel, and facilitate and schedule / coordinate discussions with the Petitioning Creditors' representatives and employees; identify payroll provider and personnel involved in coordinating payroll

- (2) Provide copies of all employment-related agreements with Subsidiaries, including, without limitation, any agreements regarding employment, services, separation, retention, severance, incentive, bonus, consulting, contractor or related agreements or arrangements

- (3) Provide copies of any employee benefit plans and retirement plans at the Subsidiaries

- (4) Provide copies of (or otherwise access to) all books and records of the Debtors and the Subsidiaries, including all charters, certificates of incorporation, by laws, and similar corporate constituent documents for all Subsidiaries

- (5) Provide copies of loan agreements, liens, indemnification agreements, and agreements for indebtedness for all Subsidiaries; if any of the foregoing does not exist in a written agreement, provide a description of all such agreements

- (6) Provide a list of all members of the board (or other similar governing body) and officers for all Subsidiaries, including contact information and KYC/AML information for each; identify whether any counsel (in house or otherwise) representing any officers or directors in any legal actions

- (7) Provide a list of all legal, financial, and other professionals retained / employed by the Debtors and all Subsidiaries, outstanding amounts due to each, and points of contact

- (8) Provide a list (or other description) of all pending, outstanding, and/or threatened or otherwise potentially known litigations (threatened, actual, or otherwise) against or instituted by the Debtors and all Subsidiaries

- (9) Provide copies of all insurance policies, including, without limitation, D&O insurance (including any tail coverage) to which Eletson Holdings is listed as an additional insured and information related to any insurance benefits, including claims, rights, and proceeds, arising therefrom.

- (10) Provide a list of material contracts and material suppliers for all Subsidiaries

- (11) Provide a list of all bank accounts and authorized signatories for all Subsidiaries, along with approved users, account information, and points of contact at each bank

- (12) Identify personnel responsible for IT and related services and provide access to Eletson's email platform and website

- (13) Identify employee(s) responsible for assisting the Petitioning Creditors and their counsel with consummating the Plan and transitioning the ownership and management of the company, including providing available days and times this week to discuss closing matters

Finally, paragraph 5(i) of the Confirmation Order directs the Debtors to cooperate with the Petitioning Creditors in good faith to implement and consummate the Plan. You have still not responded to my question below to that effect, which has been pending for nearly a week. Please let us know if the Debtors will be cooperating in good faith, and if so, how you plan to do that.

Best regards,

# **Exhibit 8**

**Togut November 5 Email**

| **From:** | Bryan Kotliar <bkotliar@teamtogut.com> |
| **Sent:** | Tuesday, November 5, 2024 9:30 AM |
| **To:** | Baker, Derek J.; Eletson Bankruptcy Team (S) |
| **Cc:** | Kyle Ortiz; Brian Shaughnessy; Martha Martir; Zide, Stephen; Herman, David |
| **Subject:** | Eletson - SME Vessels - URGENT |

External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>



**This message needs your attention**

- Some Recipients have never replied to this person.

Report or Mark Safe                                    Powered by Mimecast

Derek / Derek,

We have learned that all four of the Debtors' SME vessels have stopped moving this morning. What is the status of those four vessels?

Please also confirm they are continuing to operate in the ordinary course and that there have been no changes in their operations. If there has been any changes, please let us know what they are (and why) as soon as possible.

All rights reserved.

Best regards,

Bryan

---

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

**Togut Segal & Segal LLP**

## Exhibit 9

**Reed Smith November 6 Email**

| **From:** | Solomon, Louis M. |
| **Sent:** | Wednesday, November 6, 2024 9:54 AM |
| **To:** | Bryan Kotliar; Baker, Derek J. |
| **Cc:** | Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| **Subject:** | RE: Eletson - Closing Matters |

Bryan,

We are in receipt of your document requests and are working with our clients to compile this information. We note that you have scheduled a call for this morning, notwithstanding the fact that the Debtors are unable to attend at that time. We are still in the process of collecting documents and do not have any pertinent updates for today's on hands call. We believe our time would be better spent continuing to compile documents in response to Pach Shemen's requests.

I also think I saw an email from you about vessels not being in service. Was that from you? We did check, and we were told that the report you received was inaccurate. Do you have any more information?

Thank you.

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile: +1.917.292.2484
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Wednesday, October 30, 2024 10:20 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>
**Cc:** Leila Ebrahimi <lebrahimi@teamtogut.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Kyle Ortiz <kortiz@teamtogut.com>; Amanda Glaubach <aglaubach@teamtogut.com>; Martha Martir <mmartir@teamtogut.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>
**Subject:** Re: Eletson - Closing Matters

---

External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>

---

**Exhibit 10**

**Reed Smith November 8 Email**

| | |
|---|---|
| **From:** | Baker, Derek J. |
| **Sent:** | Friday, November 8, 2024 4:38 PM |
| **To:** | Bryan Kotliar; Solomon, Louis M. |
| **Cc:** | Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| **Subject:** | RE: Eletson - Closing Matters |

Bryan:

In response to your request that ReedSmith provide information WE have in response to your request that ReedSmith provide you information that ReedSmith has in response to your information requests, our responses are in **Bold**:

- Employee roster for all entities
- Copies of all employment agreements
- Copies of all charters, certificates of incorporation, by laws, and similar corporate constituent documents for all entities –
    - **EletsonBK093425-094686; EletsonBK097123-97308; EletsonBK093258-093291; 093448-93559; 094249-94300; 094409-94482; 097025-097108.**
- Copies of all loan documents for all entities:
    - **Piraeus - EletsonBK025683-25809.**
    - **ABB - EletsonBK017075-17084; EletsonBK024299 - 24401.**
    - **Alpha Bank - EletsonBK016657-58; EletsonBK16673-79; EletsonBK024426.**
    - **CitiBank EletsonBK024746 - 24790.**
- List of all board members and officers for all entities
    - **There are no lists that have been produced. However, the board members are listed on the minutes discussed in the Board Minutes and Resolutions EletsonBK093258-093291; 093448-93559; 094249-94300; 094409-94482; 097030-097108)**
- List of all legal, financial and other professionals retained / employed by each entity and outstanding amounts due to each
    - **We presume you have the various fee statements for ReedSmith and the various debtor professionals for Holdings and ReedSmith for Corp. as identified in the filed documents**
- List of all pending, outstanding, and/or threatened or otherwise potentially known litigations (threatened, actual, or otherwise) against or instituted by all entities
    - **See DIP Schedule 4(g)**

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

## Exhibit 11

**Togut November 11 Email**

| From: | Bryan Kotliar <bkotliar@teamtogut.com> |
|---|---|
| Sent: | Monday, November 11, 2024 9:51 AM |
| To: | Baker, Derek J. |
| Cc: | Solomon, Louis M.; Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| Subject: | Re: Eletson - Closing Matters |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**



**This message needs your attention**

• Some Recipients have never replied to this person.

Report or Mark Safe                     Powered by Mimecast

Thanks Derek. What is the status of the balance of the requests?

---

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

**TOGUT SEGAL & SEGAL LLP**

On Nov 8, 2024, at 4:38 PM, Baker, Derek J. <DBaker@ReedSmith.com> wrote:

Bryan:
In response to your request that ReedSmith provide information WE have in response to your request that ReedSmith provide you information that ReedSmith has in response to your information requests, our responses are in **Bold**:

- Employee roster for all entities
- Copies of all employment agreements
- Copies of all charters, certificates of incorporation, by laws, and similar corporate constituent documents for all entities –
    - **EletsonBK093425-094686; EletsonBK097123-97308; EletsonBK093258-093291; 093448-93559; 094249-94300; 094409-94482; 097025-097108.**
- Copies of all loan documents for all entities:
    - **Piraeus - EletsonBK025683-25809.**
    - **ABB - EletsonBK017075-17084; EletsonBK024299 - 24401.**
    - **Alpha Bank - EletsonBK016657-58; EletsonBK16673-79; EletsonBK024426.**
    - **CitiBank EletsonBK024746 - 24790.**
- List of all board members and officers for all entities
    - **There are no lists that have been produced. However, the board members are listed on the minutes discussed in the Board Minutes and Resolutions**

# Exhibit 12

**Reed Smith November 11 Response Email**

| | |
|---|---|
| **From:** | Baker, Derek J. |
| **Sent:** | Monday, November 11, 2024 1:57 PM |
| **To:** | Bryan Kotliar |
| **Cc:** | Solomon, Louis M.; Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| **Subject:** | RE: Eletson - Closing Matters |

Bryan:

The below information is the information we (Reed Smith) have. We (Reed Smith) do not have the other information.

We have asked the officers of Holdings to determine whether Holdings has the other materials and, if not, inquire as to which entities do have the information.


**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
**reedsmith.com**

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Monday, November 11, 2024 9:51 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>
**Cc:** Solomon, Louis M. <LSolomon@reedsmith.com>; Leila Ebrahimi <lebrahimi@teamtogut.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Kyle Ortiz <kortiz@teamtogut.com>; Amanda Glaubach <aglaubach@teamtogut.com>; Martha Martir <mmartir@teamtogut.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>
**Subject:** Re: Eletson - Closing Matters

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

Thanks Derek. What is the status of the balance of the requests?


**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

## Exhibit 13

**Togut November 12 Email**

| From: | Bryan Kotliar |
| To: | Baker, Derek J. |
| Cc: | Solomon, Louis M.; Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S) |
| Subject: | Re: Eletson - Closing Matters |
| Date: | Tuesday, November 12, 2024 8:48:34 AM |
| Attachments: | 597CF39D-802E-4454-B1AD-DA0D1DE7FE3A.png |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**



Derek,

The Confirmation Order [Docket No. 1223] requires the Debtors and their agents to cooperate with the Petitioning Creditors and assist in consummating the Plan, including participate in closing calls, which you have repeatedly failed to do.

The majority of our information requests remain outstanding. The requests are repeated below, but we again note that as counsel to EHI and pursuant to your duty to the creditors and the Court, any additional information which Reed Smith or the Debtors possess or have access to, should also be provided to assist in the consummation of the Court-approved Plan which was found to be in the best interests of the Debtors, their estates, and their creditors. For example, we have sought the employee roster for all entities and copies of all employment agreements, which have not been provided.

We request you promptly provide us with the documents or information requested and a detailed status update of the requests you have not responded to so far, despite our repeated requests since October 28, 2024.

To the extent your response is that this is not information of the Debtors' or Reed Smith's possession, custody, or control, a position on which we reserve all rights and do not agree as set forth in the letter we filed with the Court on November 6, 2024 [Docket No. 1227], the Debtors control their subsidiaries and have access to the requested information, we request you promptly identify the specific entities, people, and processes that you are undertaking to obtain the information. We request you schedule calls for as soon as possible for us to speak to the appropriate personnel at the company as well as any third-party advisors, including counsel, assisting with this process that would make obtaining the information more efficient. As you know, we plan to finish closing by November 14, 2024, so any delay in this information may be obstructing our closing.

Finally, as provided by section 9.1(k) of the Plan, we request that the Debtors confirm that "since the Conversion Date", there have not been and are not contemplated any "material adverse changes in the operations, assets, revenue, financial condition, profits, or prospects of the Debtors or their non-Debtor subsidiaries and/or Affiliates (other than virtue of the Chapter 11 Cases)", including, but not limited to, changes in the ordinary course operations, management, or governance of Eletson Corporation and changes in the chartering, operations or management of any vessels beneficially owned or operated, directly or indirectly, by the Debtors or their subsidiaries.

*****

**Information Requests**

- (1) Provide an employee roster for all Subsidiaries, identify key personnel, and facilitate and schedule / coordinate discussions with the Petitioning Creditors' representatives and employees; identify payroll provider and personnel involved in coordinating payroll

- (2) Provide copies of all employment-related agreements with Subsidiaries, including, without limitation, any agreements regarding employment, services, separation, retention, severance, incentive, bonus, consulting, contractor or related agreements or arrangements

- (3) Provide copies of any employee benefit plans and retirement plans at the Subsidiaries

- (4) Provide copies of (or otherwise access to) all books and records of the Debtors and the Subsidiaries, including all charters, certificates of incorporation, by laws, and similar corporate constituent documents for all Subsidiaries

- (5) Provide copies of loan agreements, liens, indemnification agreements, and agreements for indebtedness for all Subsidiaries; if any of the foregoing does not exist in a written agreement, provide a description of all such agreements

- (6) Provide a list of all members of the board (or other similar governing body) and officers for all Subsidiaries, including contact information and KYC/AML information for each; identify whether any counsel (in house or otherwise) representing any officers or directors in any legal actions

- (7) Provide a list of all legal, financial, and other professionals retained / employed by the Debtors and all Subsidiaries, outstanding amounts due to each, and points of contact

- (8) Provide a list (or other description) of all pending, outstanding, and/or threatened or otherwise potentially known litigations (threatened, actual, or otherwise) against or instituted by the Debtors and all Subsidiaries

- (9) Provide copies of all insurance policies, including, without limitation, D&O insurance (including any tail coverage) to which Eletson Holdings is listed as an additional insured and information related to any insurance benefits, including claims, rights, and proceeds, arising therefrom.

- (10) Provide a list of material contracts and material suppliers for all Subsidiaries

- (11) Provide a list of all bank accounts and authorized signatories for all Subsidiaries, along with approved users, account information, and points of contact at each bank

- (12) Identify personnel responsible for IT and related services and provide access to Eletson's email platform and website

- (13) Identify employee(s) responsible for assisting the Petitioning Creditors and their counsel with consummating the Plan and transitioning the ownership and management of the company, including providing available days and times this week to discuss closing matters

---

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com



On Nov 11, 2024, at 1:56 PM, Baker, Derek J. <DBaker@ReedSmith.com> wrote:

Bryan:
The below information is the information we (Reed Smith) have. We (Reed Smith) do not have the other information.
We have asked the officers of Holdings to determine whether Holdings has the other materials and, if not, inquire as to which entities do have the information.
**Derek J. Baker**
dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600
**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
**reedsmith.com**

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Monday, November 11, 2024 9:51 AM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>

## Exhibit 14

**Reed Smith November 12 Response Email**

| From: | Baker, Derek J. |
|---|---|
| Sent: | Tuesday, November 12, 2024 3:13 PM |
| To: | Bryan Kotliar |
| Cc: | Solomon, Louis M.; Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S); Solow, Richard C. |
| Subject: | RE: Eletson - Closing Matters |
| Attachments: | RE: Eletson - Closing Matters |

Bryan:

We disagree with the tenor and statements in your email. The confirmation order in no way requires anyone to participate in "closing calls".

The Confirmation Order only requires cooperation to implement and consummate the plan. (See Order ¶ 5). YOUR Plan makes clear that the only implementation needed for the consummation of YOUR Plan is for the execution and implementation of the Definitive Documents which you have stated are part of your plan supplement. Plan § 5.2(b). None of the "information" requests relate to any implementation called for on YOUR Plan. Neither ReedSmith nor any Debtor has in any way obstructed YOUR plan – i.e., the reconstitution of Eletson Holdings, Inc., under applicable non-bankruptcy law under the terms of YOUR Definitive Documents under YOUR Plan. Moreover, as YOUR Plan requires compliance with applicable non-bankruptcy law (§ 5.2(b)(i) & (x)), there is no evidence or confirmation that such compliance has occurred.

Nevertheless, as it relates to "information" requests made to ReedSmith – we (ReedSmith) have ABSOLUTELY cooperated in responding to your information requests made of ReedSmith. Those information requests were duplicative and unnecessary but we nevertheless for you the information that YOU ALREADY HAD. (We are re-attaching the response we provided last week).

Finally, today at 11:18 a.m. ET, ReedSmtith was advised "that four members of the board of Eletson Holdings have resigned, namely Lascarina and her sister Eleni , Vassili kerstikoff and Takis Costantaras. There are ongoing proceedings for filing in the vacancies and reinstating eight members at the board of Eletson Holdings." That is all the information we know at this time.


**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

**Exhibit 15**

**Togut November 12 Response Email**

| From: | Bryan Kotliar <bkotliar@teamtogut.com> |
| --- | --- |
| Sent: | Tuesday, November 12, 2024 4:14 PM |
| To: | Baker, Derek J. |
| Cc: | Solomon, Louis M.; Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir; Eletson Bankruptcy Team (S); Solow, Richard C. |
| Subject: | Re: Eletson - Closing Matters |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**



**This message needs your attention**

• Some Recipients have never replied to this person.

Report or Mark Safe                                    Powered by Mimecast

Derek,

What is your response to the LISCR letter request I sent this morning? What is your response on the MAC question in my email below?

As to your email, we disagree with nearly all of your email and your gross misinterpretation of the Plan and the Confirmation Order, and we reserve all rights. To one of your points, you say that "there is no evidence or confirmation that such compliance" with "applicable non-bankruptcy law" has occurred. There is no such requirement in the Plan, and the provisions you cite are discretionary protections for the Plan Proponents (and the conditions precedent are waivable by the Plan Proponents). The Debtors, however, are required to take such actions directed by the Plan Proponents to assist in effectuating the Plan.

What applicable non-bankruptcy law are you aware of that has not been complied with? To the extent that the Debtors are receiving counsel on that issue, you are directed to put us in touch with that counsel immediately to discuss any of these alleged issues.

As to the balance of your email, what is the status of the officers of Eletson Holdings (including those officers like LK and VK who were also directors that you say have resigned) and the directors and officers of Eletson's subsidiaries? Have there been any changes / resignations? And are there any other changes that we should be aware of (including on account of any other MACs)?

Best regards,

Bryan

---

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

**TOGUT SEGAL & SEGAL LLP**

## Exhibit 16

## Authorization Letter

# Eletson Holdings Inc.
[Current Address of Record][1]

November [___], 2024

Liberian Corporate Registry
LISCR, LLC
22980 Indian Creek Drive, Suite 200
Dulles, Virginia, 20166 USA

Re: Request for Change of Address of Record ("**AOR**")

To whom it may concern:

We are writing to formally request a change to the AOR for Eletson Holdings Inc., a Liberian Corporation with registration number C-40191 (the "**Company**"). Currently, our AOR is listed as [Current Address of Record][2] (the "**Previous AOR**").

We hereby instruct you to remove the Previous AOR from your records. Furthermore, any and all persons previously authorized by the Company prior to the date hereof are no longer duly authorized to act on behalf of the Company in any capacity, including, but not limited, making filings with LISCR.

Please find the details of the Company's new AOR ("**New AOR**") as of the date hereof:

New AOR Address:
c/o Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119

Responsible Individual:
Adam Spears, Chief Executive Officer and President

Phone Number:
(212) 201-5582

---

[1] ⌧₄ cﬀ⊠₄ ⊠Aﬀ⊠₄ ₀₄ ⌧ ⁶ﬁ₃₄ ﬀﬁ⌧ ₀₄ ⧧∩ﬀﬁ⌧₀ﬀ⧧T ₋∞ﬀﬁ ᶜ⊠∩∩∩∩ﬀﬁ₄ ⌧ ⊠∩ﬀﬁᵀ₄ ∩ᴎ⌧
[2] ⌧₄ cﬀ⊠₄ ⊠Aﬀ⊠₄ ₀₄ ⌧ ⁶ﬁ₃₄ ﬀﬁ⌧ ₀₄ ⧧∩ﬀﬁ⌧₀ﬀ⧧T ₋∞ﬀﬁ ᶜ⊠∩∩∩∩ﬀﬁ₄ ⌧ ⊠∩ﬀﬁᵀ₄ ∩ᴎ⌧

Email Address:
adam.spears@eletsonholdings.com
bkotliar@teamtogut.com; and
kortiz@teamtogut.com

Fax:
212-967-4258

For the avoidance of doubt, please be notified that Adam Spears is hereby duly authorized to act on behalf of the Company in all respects, including, but not limited to, executing and making any and all filings with LISCR on behalf of the Company.

We request that you kindly update your records accordingly to reflect the New AOR and direct all future correspondence and notices to the New AOR.

Thank you for your attention to this request. We look forward to your confirmation of the change.

Sincerely,

[Current Person of Record][3]
[Title ]

---

[3] [illegible]

## Exhibit 17

**Togut November 13 Email**

| | |
|---|---|
| **From:** | Bryan Kotliar |
| **To:** | Solomon, Louis M.; Osei-Bonsu, Derek M.; Eletson Bankruptcy Team (S) |
| **Cc:** | Zide, Stephen; Herman, David; Kyle Ortiz; Brian Shaughnessy; John McClain; Jared Borriello |
| **Subject:** | Eletson |
| **Date:** | Wednesday, November 13, 2024 1:51:08 PM |
| **Attachments:** | LISCR Letter.docx |
| | 597CF39D-802E-4454-B1AD-DA0D1DE7FE3A.png |

---

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

---



Reed Smith team,

Consistent with the Court's direction at today's status conference, please let us know when you are available to meet and confer today regarding the issues with the Liberian registry. I propose 3:30 p.m. (ET) - let us know if that does not work for you.

In the meantime, while we disagree with your explanation that what we are asking for violates Liberian law, we have the following proposed alternatives that we'd like to discuss with you and whichever Liberian counsel you mentioned today. If you have other ideas, please let us know - we are looking to be constructive. In that regard, working constructively toward an Effective Date, kindly introduce us to your Liberian counsel and share with us any laws and requirements you are informed are required to be satisfied to effectuate the Plan.

Finally, to allow for these discussions to continue and for your and your Liberian counsel's time to review, we will adjourn our target effective date to Tuesday, November 19.

**(1) Change AOR to Reorganized Holdings Representatives**

You work with us, our Liberian counsel, and your Liberian counsel on reviewing and revising the draft AOR letter change we sent you on Tuesday and filed with the Court to have the existing AOR designate one of Reorganized Holdings representatives (we picked Adam Spears, we can change his title for purposes of this if that was the issue) which will be submitted on the plan effective date.

**(2) Change AOR to Reed Smith**

Same as item (1) above but instead of a Reorganized Holdings representative, the new AOR can be someone at Reed Smith, Holdings current counsel. Raising this in case there are other issues that you have about the appropriate Reorganized Holdings representative.

**(3) Existing AOR Makes the Filings**

Subject to further discussion with our Liberian counsel, we would likely be willing to have the existing AOR (and please let us know who that is) make the appropriate filings of the amended and restated certificate of incorporation, amended by laws, and shareholders agreement with the Liberian registry after the Effective Date.

*****

Best regards,

Bryan

---

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com



**Exhibit 18**

**Reed Smith November 14 Daniolos Email**

| | |
|---|---|
| **From:** | Solomon, Louis M. |
| **Sent:** | Thursday, November 14, 2024 11:01 AM |
| **To:** | DANIOLOS John Markianos |
| **Cc:** | Baker, Derek J.; Osei-Bonsu, Derek M.; Solow, Richard C.; Peles, Joshua M.; Underwood, Colin A. |
| **Subject:** | Eletson |
| **Attachments:** | LISCR Letter.docx |

Mr. Daniolos,

I want to make sure the email below gets to you – I sent it yesterday but may have sent it only to the Holdings directors with whom we have been communicating.  The questions we have been asked to answer, and as counsel for Holdings we are desirous of answering, include the following:

1. Counsel for the creditors at the Togut firm asked for your contact information, which has already been given to them but which we can share again.  I have also given them the information that HPA supplied you with the Liberian law advice.
2. If, as you advised based on Liberian law, the attached letter cannot be signed consistently with Liberian law, do any of the three alternatives set out in the email below work?  If these work, kindly advise.
3. If these do not work, is there any way that does work that does not involve seeking recognition of the Bankruptcy order in Liberia and/or Greece (apparently the creditors do not want to go this route, even though that is what they said in their plan).
4. Can you tell us who and where and what is the "Address of Record" that currently exists?
5. I had a thought, which I ask you to consider.  If the creditors were to stipulate that they would go to Liberia and Greece to seek recognition and enforcement of the Bankruptcy order, would that affect or alter your view on whether there is a way to have the AOR changed?
6. Quite apart from these issues, we are requesting clarification on the email you sent me yesterday about the new Board at Holdings.  Can you share any other information on that?

Thank you for your prompt attention to this.

Sincerely,

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400

## Exhibit 19

**Reed Smith November 15 Email**

Bryan, we have not heard back from counsel on the issues raised on our call yesterday. I did have one suggestion, which no one has authorized us to suggest but do so in the spirit of trying to move things along. Would Petitioning Creditors stipulate to going and seeking confirmation of the Plan Order in Liberia and Greece in exchange for a stipulation by the directors of Holdings that they will file the letter once the confirmation is accomplished? I ask because as I read the Plan it was always the plan to get that confirmation until just recently.

When we hear back from counsel, we will advise.

Regards.

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile: +1.917.292.2484
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Thursday, November 14, 2024 6:17 PM
**To:** Solomon, Louis M. <LSolomon@reedsmith.com>
**Cc:** Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; Zide, Stephen <stephen.zide@dechert.com>; Herman, David <David.Herman@dechert.com>; Kyle Ortiz <kortiz@teamtogut.com>; Brian Shaughnessy <bshaughnessy@teamtogut.com>; John McClain <jmcclain@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>
**Subject:** Re: Eletson

---

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

---

Reed Smith team,

## Exhibit 20

**Togut November 15 Response Email**

| From: | Bryan Kotliar |
| To: | Solomon, Louis M. |
| Cc: | Osei-Bonsu, Derek M.; Eletson Bankruptcy Team (S); Zide, Stephen; Herman, David; Kyle Ortiz; Brian Shaughnessy; John McClain; Jared Borriello |
| Subject: | Re: Eletson |
| Date: | Friday, November 15, 2024 2:12:54 PM |
| Attachments: | 597CF39D-802E-4454-B1AD-DA0D1DE7FE3A.png |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**



Lou,

The stipulation you describe is unnecessary - sections 1141 and 1142 of the Bankruptcy Code, the Plan, and the Confirmation Order already require them to update Holdings AOR, which is what we are asking the Debtors (who you represent) to do.

Please identify for me what it is that Holdings and Reed Smith is doing to assist us in identifying Holdings' current AOR / person of record. We also don't understand why you are directing these requests to "counsel" and not management. We are asking to update the AOR for Holdings to reflect the Court-approved changes to the shares and management of Holdings - that does not require a recognition proceeding.

Best regards,

Bryan

---

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com



On Nov 15, 2024, at 12:39 PM, Solomon, Louis M.
<LSolomon@reedsmith.com> wrote:

Bryan, we have not heard back from counsel on the issues raised on our call yesterday. I did have one suggestion, which no one has authorized us to suggest but do so in the spirit of trying to move things along. Would Petitioning Creditors stipulate to going and seeking confirmation of the Plan Order in Liberia and Greece in

# Exhibit 21

**Reed Smith November 17 Email**

Bryan,

We heard back from Greek counsel to the Directors of Holdings. Without waiving any applicable privilege or immunity, we can report that we are advised that that counsel has advised the Directors to refrain from taking any action at this stage regarding a change to the Address of Record for Holdings, including the three alternatives proposed in your email of November 13.

As we previously disclosed to the Court last week, following the resignation of four of the Directors of Holdings, the Piraeus First Instance Court appointed provisional board members with limited authority to take certain corporate actions until the hearing of the respective application on February 4, 2025. It is our understanding that a change in the Address of Record may constitute a material change in Holdings' representation and corporate structure, and for this reason, the provisional Directors could be held in contempt of the Piraeus First Instance Court's order should they proceed with a change of the Address of Record at this time.

The Directors' Greek counsel has also advised us that the US bankruptcy orders will need to be recognized and enforced in both Greece and Liberia. It is our understanding that a change to the Address of Record cannot supersede the requirements to obtain judicial recognition under Greek and Liberian law. Further, under Greek law, the provisional Directors may be subject to liability by Holdings' shareholders and subsidiaries should they proceed to change the Address of Record without a Greek order enforcing the US bankruptcy judgment.

Regards.


**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile: +1.917.292.2484
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

# Exhibit 22

## Spears Letter

# Eletson Holdings Inc.

c/o Togut, Segal & Segal LLP

One Penn Plaza, Suite 3335

New York, NY 10119

November 19, 2024

Reed Smith LLP (**"*Reed Smith*"**)

599 Lexington Avenue
New York, NY 10022
Attention:

      Louis M. Solomon, Esq.

      Alyssa F. Conn, Esq.

      Colin A. Underwood, Esq.

355 S Grand Ave Ste 2900,
Los Angeles, CA 90071
Attention:

      Peter J. Kennedy, Esq.

To whom it may concern:

On behalf of Eletson Holdings Inc. and its subsidiaries (collectively, "***Eletson***"), I am writing to provide Reed Smith specific instructions regarding the ongoing legal matters involving Eletson. Reed Smith is hereby instructed as follows:

1. **Engagement Personnel**. Please identify the personnel at Reed Smith who are responsible for managing all matters related to Eletson (the "***Relevant Personnel***"). Please provide their full names, roles, and contact information.

2. **Access to Personnel**. We request that Reed Smith make all Relevant Personnel available for a meeting with our team to discuss their prior and ongoing representation of any Eletson entities. To facilitate this, please provide available dates and times for each Relevant Personnel for a meeting to be scheduled within three (3) days from the date hereof (or such later date as we request).

3. **Retention and Preservation of Files**. We request that you immediately take all necessary steps to preserve and retain all files, documents, and communications relevant to the matters for which Reed Smith has provided counsel to Eletson. This includes electronic files, physical documents and any other materials that may be pertinent.

4. **Transmittal of Files and Access to Systems**. To ensure a complete and seamless transition, please promptly provide all documents and communications related to Eletson files. This includes, but is not limited to:

   a) All executed contracts, drafts, amendments, and related documentation;

   b) Emails, letters, internal memos, and any other written or electronic communications;

   c) Research, legal opinions, pleadings, motions, filings, memoranda, and any drafts and final documents prepared during representation;

   d) Full access to all platforms and tools used for Eletson-related matters, such as Gravity Stack Slackspace and similar systems. This includes any login credentials, permissions, and associated user documentation;

   e) Any digital records, including databases, spreadsheets, presentations, or other electronically stored information (ESI);

   f) Hard copies of files, records, or other materials housed at your office or in storage. Please provide a detailed inventory of such documents; and

   g) Any additional items, including case notes, timelines, or strategies, that may aid in the continuity of handling Eletson matters.

   For e-discovery and electronic records, please ensure data integrity by providing native file formats where applicable, along with any metadata or audit trails. If there are specific technical requirements or processes involved, promptly let me know.

   Should you require any further authorizations, details, or clarification to process this request, do not hesitate to contact me. Your timely and thorough response to this request is expected and appreciated.

5. **Restriction on Actions**. Effective immediately, no action should be taken, nor any filings or decisions made, on behalf of Eletson in any jurisdiction without the express written approval or instructions from the new personnel designated by our organization. Such designated personnel shall include myself and Mark Lichtenstein. Please ensure that no steps are taken without prior authorization.

6. **Outstanding Proceedings**. Please provide a comprehensive list of all outstanding proceedings to which Eletson is currently a party, including matters in which Reed Smith is not acting as counsel. Please identify any ongoing or threatened litigation, arbitration, regulatory matters, or similar proceedings involving Eletson.

7. **Work Streams and Client Codes**. Please provide a detailed breakdown of all outstanding work streams, client codes, or similar records associated with your current or past work with Eletson. This information will assist us in maintaining a clear understanding of all matters in which you are currently or in the past have been engaged.

8. **Other Counsel Representing Eletson**. Please provide the names of all law firms, attorneys, or other legal representatives known to Reed Smith who are representing Eletson in any actual, potential, or threatened litigation, dispute or other legal matters. This includes any matters not directly handled by Reed Smith.

9. **Co-Counsel and Opposing Counsel**. In connection with all open matters involving Eletson, we request that you provide the names of all co-counsel, opposing counsel, and any other parties involved in these proceedings. This will help us ensure that all legal resources are properly coordinated and that all relevant parties are accounted for.

10. **Reed Smith Fees**. Please identify (i) all outstanding amounts owed to Reed Smith by Eletson and (ii) which Eletson entities are party to the applicable engagement letters with Reed Smith for any and all outstanding amounts owed to Reed Smith.

Please also identify whether any of Reed Smith's fees for work done on behalf of Eletson have been paid by any third parties. Please identify those third parties and how much they have paid in the past and have agreed to pay in the future. Please provide copies of all related agreements with such third parties.

We appreciate your immediate attention to these matters. If you require any clarification or further instructions, please do not hesitate to reach out to me directly at adam.spears@eletsonholdings.com.

Docusign Envelope ID: B1564BA7-8F6F-4B44-8B03-4F985EF2CAD1

Thank you for your prompt assistance.

Sincerely,

**Eletson Holdings Inc.**


**By:** Adam Spears _____

Name: Adam Spears
Title: Chief Executive Officer
adam.spears@eletsonholdings.com

CC: bkotliar@teamtogut.com; kortiz@teamtogut.com

# Eletson Holdings Inc.

c/o Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119

November 19, 2024

7 King's Bench Walk (**"*7KBW*"**)
Temple, London EC4Y 7DS
United Kingdom
Attention:

     David Allen, KC
     David Bailey, KC

To whom it may concern:

On behalf of Eletson Holdings Inc. and its subsidiaries (collectively, "***Eletson***"), I am writing to provide 7KBW specific instructions regarding the ongoing legal matters involving Eletson. 7KBW is hereby instructed as follows:

1. **Engagement Personnel**. Please identify the personnel at 7KBW who are responsible for managing all matters related to Eletson (the "***Relevant Personnel***"). Please provide their full names, roles, and contact information.

2. **Access to Personnel**. We request that 7KBW make all Relevant Personnel available for a meeting with our team to discuss their prior and ongoing representation of any Eletson entities. To facilitate this, please provide available dates and times for each Relevant Personnel for a meeting to be scheduled within three (3) days from the date hereof (or such later date as we request).

3. **Retention and Preservation of Files**. We request that you immediately take all necessary steps to preserve and retain all files, documents, and communications relevant to the matters for which 7KBW has provided counsel to Eletson. This includes electronic files, physical documents and any other materials that may be pertinent.

4. **Transmittal of Files and Access to Systems**. To ensure a complete and seamless transition, please promptly provide all documents and communications related to Eletson files. This includes, but is not limited to:
   a) All executed contracts, drafts, amendments, and related documentation;
   b) Emails, letters, internal memos, and any other written or electronic communications;
   c) Research, legal opinions, pleadings, motions, filings, memoranda, and any drafts and final documents prepared during representation;

d) Full access to all platforms and tools used for Eletson-related matters, such as Gravity Stack Slackspace and similar systems. This includes any login credentials, permissions, and associated user documentation;

e) Any digital records, including databases, spreadsheets, presentations, or other electronically stored information (ESI);

f) Hard copies of files, records, or other materials housed at your office or in storage. Please provide a detailed inventory of such documents; and

g) Any additional items, including case notes, timelines, or strategies, that may aid in the continuity of handling Eletson matters.

For e-discovery and electronic records, please ensure data integrity by providing native file formats where applicable, along with any metadata or audit trails. If there are specific technical requirements or processes involved, promptly let me know.

Should you require any further authorizations, details, or clarification to process this request, do not hesitate to contact me. Your timely and thorough response to this request is expected and appreciated.

5. **Restriction on Actions**. Effective immediately, no action should be taken, nor any filings or decisions made, on behalf of Eletson in any jurisdiction without the express written approval or instructions from the new personnel designated by our organization. Such designated personnel shall include myself and Mark Lichtenstein. Please ensure that no steps are taken without prior authorization.

6. **Outstanding Proceedings**. Please provide a comprehensive list of all outstanding proceedings to which Eletson is currently a party, including matters in which 7KBW is not acting as counsel. Please identify any ongoing or threatened litigation, arbitration, regulatory matters, or similar proceedings involving Eletson.

7. **Work Streams and Client Codes**. Please provide a detailed breakdown of all outstanding work streams, client codes, or similar records associated with your current or past work with Eletson. This information will assist us in maintaining a clear understanding of all matters in which you are currently or in the past have been engaged.

8. **Other Counsel Representing Eletson**. Please provide the names of all law firms, attorneys, or other legal representatives known to 7KBW who are representing Eletson in any actual, potential, or threatened litigation, dispute or other legal matters. This includes any matters not directly handled by 7KBW.

9. **Co-Counsel and Opposing Counsel**. In connection with all open matters involving Eletson, we request that you provide the names of all co-counsel, opposing counsel, and any other parties involved in these proceedings. This will help us ensure that all legal resources are properly coordinated and that all relevant parties are accounted for.

10. **7KBW Fees**. Please identify (i) all outstanding amounts owed to 7KBW by Eletson and (ii) which Eletson entities are party to the applicable engagement letters with 7KBW for any and all outstanding amounts owed to 7KBW.

Please also identify whether any of 7KBW's fees for work done on behalf of Eletson have been paid by any third parties. Please identify those third parties and how much they have paid in the past and have agreed to pay in the future. Please provide copies of all related agreements with such third parties.

We appreciate your immediate attention to these matters. If you require any clarification or further instructions, please do not hesitate to reach out to me directly at adam.spears@eletsonholdings.com.

Thank you for your prompt assistance.

Sincerely,

**Eletson Holdings Inc.**

**By:** _Adam Spears_ _____
Name: Adam Spears
Title: Chief Executive Officer
adam.spears@eletsonholdings.com

CC: bkotliar@teamtogut.com; kortiz@teamtogut.com

## Exhibit 23

## Togut District Court Letter

# TOGUT, SEGAL & SEGAL LLP

ONE PENN PLAZA
NEW YORK, NEW YORK 10119

———

WWW.TOGUTLAWFIRM.COM

———

(212) 594-5000

KYLE J. ORTIZ
(212) 201-6577
KORTIZ@TEAMTOGUT.COM

November 21, 2024

**VIA ECF**

The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

      Re:   *In re Eletson Holdings Inc.*, No. 24-cv-05096-LJL
            [rel. 23-cv-07331-LJL; 24-cv-08672-LJL]

Dear Judge Liman:

We write on behalf of reorganized Eletson Holdings Inc. ("Reorganized Holdings") and Eletson Corp., in response to Reed Smith's letter to this Court dated November 20, 2024 (Dkt. No. 22, the "Letter").

Louis Solomon, in the Letter, claims that Reed Smith is still acting on behalf of Eletson Corp. That claim is incorrect. Reed Smith is no longer authorized to act or speak on behalf of Eletson Corp., on any issue, in any matter.[1] On November 19, 2024, Reorganized Holdings formally notified Reed Smith via letter, stating:

> Effective immediately, no action should be taken, nor any filings or decisions made, on behalf of Eletson [or its subsidiaries] in any jurisdiction without the express written approval or instructions from the new personnel designated by our organization. Such designated personnel shall include [Adam Spears] and Mark Lichtenstein. Please ensure that no steps are taken without prior authorization.

*See* Exhibit A hereto. The Letter was sent by Reed Smith to this Court without any such approval, authorization or instruction from Reorganized Holdings or Eletson Corp.

---

[1]   Additionally, contrary to Mr. Solomon's assertion that Reed Smith is counsel of record to Eletson Corp. in this case (No. 24-cv-05096-LJL), Eletson Corp. is not a party to this proceeding and Reed Smith has never appeared on its behalf. Although Reed Smith was counsel to Eletson Corp. in the related arbitration confirmation proceedings (No. 23-cv-07331-LJL), the two actions have not been consolidated under a single docket number pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure. For that reason, among many others, Reed Smith's filing the Letter in this proceeding is improper. *See* Individual Practices in Civil Cases § 2.E.

Togut, Segal & Segal llp

Honorable Lewis J. Liman
United States District Court
November 21, 2024
Page 2

Mr. Solomon's unauthorized attempt to act on behalf of Eletson Corp. has been reported to the boards of Reorganized Holdings and Eletson Corp. A termination of Reed Smith as counsel to Eletson Corp. is forthcoming.

With respect to Reed Smith's supposed representation of Reorganized Holdings, that representation automatically terminated on the Effective Date of the confirmed Plan (November 19, 2024).[2] As stated in Section 2.5 of the Plan: "On the Effective Date, the retention, including all rights and duties arising from, or related to, the Chapter 11 Cases of each of the Debtors' retained professionals shall terminate." (*See* Bankr. Dkt. No. 1132). The Togut firm is now counsel for Reorganized Holdings and Eletson Corp.

At a November 12, 2024 hearing before this Court, Reed Smith telegraphed that it would help the former Eletson Holdings shareholders and officers obstruct the implementation of the Plan and the Bankruptcy Court's confirmation Order.[3] True to form, Reed Smith now argues in the Letter that "the purported new shareholders of Holdings (a Liberian corporation with its principal place of business and center of main interests in Greece) have made no showing that they have taken the steps necessary under Liberian and Greek law to confirm their capacity to act on behalf of Holdings." Letter at 1. This position is directly at odds with Section 1141 of the Bankruptcy Code, which provides that "the provisions of a confirmed plan bind the debtor," and also violates Section 1142(a) of the Bankruptcy Code, which states that "[n]otwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court." 11 U.S.C. § 1142(a). The Bankruptcy Code, and only the Bankruptcy Code, governs implementation of the confirmed Plan.

Accordingly, Reed Smith's argument that steps must be taken under Greek and/or Liberian law before Reorganized Holdings and its shareholders can replace the original Eletson Holdings board and its former shareholders is not only irrelevant but also an attempt to circumvent bedrock bankruptcy law and the unambiguous language of the confirmed Plan. It is particularly remarkable for such parties to argue that the Bankruptcy Court's confirmation Order (Bankr. Dkt. No. 1223) does not bind them in other jurisdictions, unless a recognition proceeding is completed in those jurisdictions, when they are the ones that invoked the Bankruptcy Court's jurisdiction by voluntarily converting the involuntary Chapter 7 proceedings to Chapter 11 (Bankr. Dkt. Nos. 204, 215). Eletson Holdings' former officers, directors and shareholders have not appeared

---

[2] Section 1.62 of the Plan defines "Effective Date" as follows: "***Effective Date*** means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have become satisfied or waived in accordance with the Plan; and (c) the Plan is declared effective." (Bankr. Dkt. No. 1132 (emphasis in original)). All of those conditions either occurred or were duly waived as of November 19, 2024. In fact, Reed Smith was on the closing call that day on behalf of the Debtors and raised no objection, as they could not.

[3] *See* Nov. 12, 2024 Hr'g Tr. 6:24-25 (MR. SOLOMON: ". . . the effective date of the transaction is going to itself be the subject of debate . . .").

Togut, Segal & Segal llp

Honorable Lewis J. Liman
United States District Court
November 21, 2024
Page 3

before this Court to make these arguments; instead, Reed Smith purports to serve as their mouthpiece while they attempt to play jurisdictional games with this Court and the Bankruptcy Court to avoid the ramifications of their voluntary conduct.

The Debtors appealed the Bankruptcy Court's Order confirming the Petitioning Creditors' Plan and rejecting theirs. But the Debtors did not seek a stay. Reed Smith is now trying to obtain that stay through the back door by citing inapplicable foreign law instead of following the laws to which the Debtors voluntarily submitted in the bankruptcy, and ignoring the reality that Reorganized Holdings and its subsidiaries have new shareholders and new counsel. Paragraph 5(iii) of the Bankruptcy Court's confirmation Order states that Eletson Holdings "shall not take any actions inconsistent with the Plan or this Confirmation Order without the prior written consent of the Petitioning Creditors or further order of the Court." (*See* Bankr. Dkt. No. 1223). Reed Smith and the former shareholders of Eletson Holdings are ignoring that instruction.

Reed Smith's actions blatantly contravene the Plan, the Bankruptcy Court's Order confirming that Plan, and Sections 1141 and 1142 of the Bankruptcy Code. These issues will be addressed with Judge Mastando in short order.

In the meantime, we urge this Court to disregard any further acts or statements by Reed Smith allegedly on behalf of Reorganized Holdings or Eletson Corp., and to hold Reed Smith in contempt for any such misconduct.

We are available to discuss these issues at the Court's convenience.

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Kyle J. Ortiz*

Kyle J. Ortiz
A Member of the Firm

## Exhibit 24

## November 21 Adam Spears Letter

**Eletson Holdings Inc.**
c/o Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119

November 21, 2024

Reed Smith LLP (**"*Reed Smith*"**)

1717 Arch Street
Philadelphia, PA 19103
Attention:
> Derek J. Baker, Esq.
> Joshua M. Peles, Esq.

355 S Grand Ave Ste 2900,
Los Angeles, CA 90071
Attention:
> Peter J. Kennedy, Esq.

To whom it may concern:

You are hereby notified that Eletson Holdings Inc. and its subsidiaries (collectively, the "Company") have terminated all of Reed Smith's engagements with the Company for all matters as of November 20, 2024 (the "Termination Date"). As a reminder, Eletson Holdings Inc.'s engagement of Reed Smith terminated on November 19, 2024 by operation of its Court-approved chapter 11 plan.

On November 20, 2024, Reed Smith attorney Louis Solomon filed a letter with the U.S. District Court for the Southern District of New York purportedly on behalf of certain Company entities advancing positions against the Company's interests. This filing was not authorized by any Company personnel, including those identified in the instructions previously sent to Reed Smith in prior letters dated November 19, 2024.

You are also hereby notified that the Company has not agreed to and is not obligated to pay any of Reed Smith's fees and/or expenses incurred after the Termination Date. The Company is undertaking a rigorous review of all outstanding fees and/or expenses purportedly owed to Reed Smith by the Company. You are directed to provide copies of invoices for all fees and expenses purportedly owed to Reed Smith by the Company through the Termination Date **by no later than December 5, 2024**.

In addition to all of the requests in the Company's November 19, 2024 letters to Reed Smith, as well as all of Reed Smith's obligations to the Company under, among other things, applicable Professional Rules of Responsibility and rules governing attorney conduct, you are instructed to preserve and return to the Company all client materials.

You must coordinate with the Company's counsel at Legal Scale LLP (Attn: Neil O'Donnell, Esq. (neil@legalscale.com) and Bryan Judd, Esq. (bryan@legalscale.com)) regarding the submission of invoices and the return of client materials. In addition, should you have any questions, you may reach me by email at adam.spears@eletsonholdings.com.

All rights reserved.

Sincerely,

**Eletson Holdings Inc.**

By: _____
<span style="font-size:smaller">Adam Spears (Nov 21, 2024 14:23 EST)</span>
Name: Adam Spears
Title: Chief Executive Officer
adam.spears@eletsonholdings.com

CC: bkotliar@teamtogut.com; kortiz@teamtogut.com

**Exhibit 25**

**Hockinson Email**

**From:** Len Hoskinson <lhoskinson@ayntree.us>
**Sent:** Wednesday, December 4, 2024 6:59 PM
**To:** Weller, Charles G. <CWeller@ReedSmith.com>; Solomon, Louis M. <LSolomon@reedsmith.com>
**Cc:** Adam Spears <adam.spears@eletsonholdings.com>; Mark Lichtenstein <mark.lichtenstein@eletsonholdings.com>;
Bryan Kotliar <bkotliar@teamtogut.com>; Kennedy, Peter J. <PKennedy@ReedSmith.com>
**Subject:** TERMINATION YOUR REPRESENTATION OF ELETSON GAS AND ITS SUBSIDIARIES EFFECTIVE 4 DEC 2024

**External E-Mail - FROM Len Hoskinson <lhoskinson@ayntree.us>**



**This message needs your attention**

- No employee in your company has ever replied to this person.

Report or Mark Safe                                    Powered by Mimecast

Dear Reed Smith.

I am writing to formally terminate your representation of Eletson Gas LLC and its subsidiaries (collectively, "Eletson Gas").

Consider this email as formal notice of termination, effective immediately.

As set forth in prior correspondence, Reed Smith's representation as to Eletson Holdings Inc. terminated by operation of its plan of reorganization on November 19, 2024 and was terminated by Eletson Holdings Inc.'s subsidiaries other than Eletson Gas, such as Eletson Corp., on November 20, 2024.

Eletson Gas LLC has not agreed to and is not obligated to pay any of Reed Smith's fees and/or expenses incurred after the date hereof.

Ensure that no further action is taken by you on Eletson Gas LLC or Eletson Corp or any of their subsidiaries.

Additionally, promptly provide me with a complete copy of the Eletson Gas LLC and Eletson Corp files, including all documents, correspondence and notes, in a timely manner, as well as any other files that you may have in connection with any of their subsidiaries.

If there are any outstanding invoices or administrative matters, notify me promptly so I may address them.

Thank you for your attention to this matter. Please confirm receipt of this notice at your earliest convenience.


Sincerely,
Leonard J. Hoskinson
CEO
Eletson Gas LLC & Eletson Corp

This e-mail is confidential and may be privileged. If you are not the intended addressee, (i) you should not read the contents of this e-mail or any attachments, disclose them to any other person or use them in any way, and (ii) please delete this e-mail and any attachments from your system and notify the sender immediately. The integrity of this message cannot be guaranteed on the Internet. We cannot therefore be considered responsible for the contents. Any unauthorized use or dissemination is prohibited.

**Exhibit 26**

**Togut November 26 Email**

| From: | Leila Ebrahimi <lebrahimi@teamtogut.com> |
| --- | --- |
| Sent: | Tuesday, November 26, 2024 4:02 PM |
| To: | Baker, Derek J.; Osei-Bonsu, Derek M. |
| Cc: | Kyle Ortiz; Bryan Kotliar; Amanda Glaubach; Martha Martir |
| Subject: | Eletson - MOR Info Requests |
| Attachments: | Finance September MOR.pdf; Agathonissos September MOR.pdf; Holdings September MOR.pdf |

**External E-Mail - FROM lebrahimi@teamtogut.com <lebrahimi@teamtogut.com>**

Derek,

We are preparing the October MORs and will also be doing the November stub period through 11/19 and have a few questions about the inputs. We tried reviewing prior MORs but still couldn't figure out some of this stuff.

Let us know if you have this information. Happy to jump on a call if easier.

Thank you.


**Eletson Holdings Inc.**
- Part 1(b) and (e) - receipts and disbursements in October and stub-November.
- Are there any disbursements besides professional fees paid for via DIP proceeds?
- Part 2 (f) - what was included in "post petition payables" for September? What is included in October and stub-November?
- Part 5 - were any professionals paid with funds other than DIP proceeds?
- Balance Sheet -
- What is the "investments in subsidiaries" comprised of in the September MOR? What is the amount outstanding for October and stub-November?
- What is the "short-term debt" comprised of in the September MOR? What is the amount outstanding for October and stub-November?
- What is the "trade accounts payable" comprised of in the September MOR? What is the amount outstanding for October and stub-November?
- Support Documents - provide an explanation for each category on each of the documents (Balance Sheet, Income Statement, Shareholder Equity Statement, and Cash Flow) for September, October, and stub-November.

**Eletson Finance (US) LLC**
- Part 1(b) and (e) - provide all receipts and disbursements for October and stub-November.
- Part 1(e) - what was the $501 of disbursements listed in the September MOR?
- Balance Sheet - What is the "trade accounts payable" comprised of in the September MOR? What is the amount outstanding for October and stub-November?
- Support Documents - provide an explanation for each category on each of the documents (Balance Sheet, Income Statement, Shareholder Equity Statement, and Cash Flow) for September, October, and stub-November.

**Agathonissos Finance LLC**
- Part 1(b) and (e) - provide all receipts and disbursements for October and stub-November.

- Support Documents - provide an explanation for each category on each of the documents (Balance Sheet, Income Statement, Shareholder Equity Statement, and Cash Flow) for September, October, and stub-November.

—
**Leila Ebrahimi**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5583 | Mobile: +1 201 961 3262
lebrahimi@teamtogut.com | togutlawfirm.com

**Exhibit 27**

**Reed Smith November 27 Response Email**

| From: | Baker, Derek J. |
|---|---|
| Sent: | Wednesday, November 27, 2024 1:55 PM |
| To: | Leila Ebrahimi; Osei-Bonsu, Derek M. |
| Cc: | Kyle Ortiz; Bryan Kotliar; Amanda Glaubach; Martha Martir |
| Subject: | RE: Eletson - MOR Info Requests |

ReedSmith does not possess the information you seek; rather the information for Monthly Operating Reports has been historically provided by Holdings' officers. We have forwarded your inquiry to the officers of Holdings known to Reed Smith and asked them to provide a response.

**Derek J. Baker**

dbaker@reedsmith.com
D: +1 215-851-8148
M: +1 215-285-1600

**Reed Smith**
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
T: +1 215 851 8100
F: +1 215 851 1420
reedsmith.com

**From:** Leila Ebrahimi <lebrahimi@teamtogut.com>
**Sent:** Tuesday, November 26, 2024 4:02 PM
**To:** Baker, Derek J. <DBaker@ReedSmith.com>; Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>
**Cc:** Kyle Ortiz <kortiz@teamtogut.com>; Bryan Kotliar <bkotliar@teamtogut.com>; Amanda Glaubach <aglaubach@teamtogut.com>; Martha Martir <mmartir@teamtogut.com>
**Subject:** Eletson - MOR Info Requests

**External E-Mail - FROM lebrahimi@teamtogut.com <lebrahimi@teamtogut.com>**

Derek,

We are preparing the October MORs and will also be doing the November stub period through 11/19 and have a few questions about the inputs. We tried reviewing prior MORs but still couldn't figure out some of this stuff.

Let us know if you have this information. Happy to jump on a call if easier.

Thank you.

**Eletson Holdings Inc.**
- Part 1(b) and (e) - receipts and disbursements in October and stub-November.
- Are there any disbursements besides professional fees paid for via DIP proceeds?

<u>**Exhibit 28**</u>

**Togut November 27 Response Email**

| | |
|---|---|
| **From:** | Bryan Kotliar <bkotliar@teamtogut.com> |
| **Sent:** | Wednesday, November 27, 2024 2:29 PM |
| **To:** | Baker, Derek J. |
| **Cc:** | Leila Ebrahimi; Osei-Bonsu, Derek M.; Kyle Ortiz; Amanda Glaubach; Martha Martir |
| **Subject:** | Re: Eletson - MOR Info Requests |

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

Derek,

Who are you referring to when you say "the officers of Holdings known to Reed Smith"?

Holdings' officers do not have this information, which is why we started by asking you / Reed Smith as Holdings' former counsel and the party that filed these prior to the Effective Date.

To the extent that you or any former officers or directors of Holdings or any of its subsidiaries has this information, you're directed to provide it.

All rights reserved.

Best regards,

Bryan
—
**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com


> On Nov 27, 2024, at 1:55 PM, Baker, Derek J. <DBaker@reedsmith.com> wrote:
>
>
> ReedSmith does not possess the information you seek; rather the information for Monthly Operating Reports has been historically provided by Holdings' officers.  We have forwarded your inquiry to the officers of Holdings known to Reed Smith and asked them to provide a response.
>
>
> **Derek J. Baker**
>
> dbaker@reedsmith.com
> D: +1 215-851-8148
> M: +1 215-285-1600
>
> **Reed Smith**
> Three Logan Square
> Suite 3100
> 1717 Arch Street

## Exhibit 29

## Daniolos Letter



TO:     Louis M. Solomon
        Reed Smith LLP
        599 Lexington Avenue
        New York, New York 10022
        Lsolomon@reedsmith.com

<u>VIA EMAIL</u>

December 10, 2024

Dear Mr. Solomon,

1. I am writing this letter in connection with the motion for sanctions which I understand was filed in the Bankruptcy Court for the Southern District of New York on November 25, 2024.

2. I am an attorney duly licensed under the laws of the Republic of Greece, and a partner of the law firm Daniolos Law Firm of 13 Defteras Merarchias Street, Piraeus 185 35, Greece. I have been represented individuals who have been Directors and Officers of Eletson Holdings Inc. (EHI) and by Eletson Corporation concerning issues of Greek Law and Liberian Law. I have not been involved at all with the dispute of Eletson Holdings Inc with Levona Holdings Ltd. of the BVI (Levona) and I have not been involved in the Eletson Holdings Bankruptcy proceedings or represented any party in those proceedings. .

3. In the first place, I note that I have not received any formal service of process or summons in accordance with Greek law or the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents concerning the motion for sanctions against Daniolos Law Firm. In addition, neither I personally nor Daniolos Law Firm has participated in any way or represented any party in connection with the bankruptcy proceedings involving EHI and other Debtors — or, indeed, in any other legal proceedings in any U.S. court or jurisdiction. Given the personal threats Pach Shemen and its affiliates have leveled against me personally solely for acting as counsel under Greek law, neither I nor the Daniolos Law Firm is prepared to subject itself to the jurisdiction of the US Bankruptcy Court. Nothing that I have done or not done has subjected me or the Daniolos Law Firm to such jurisdiction, and in writing this letter I am specifically and fully reserving all rights not to subject to said jurisdiction. The Daniolos Law Firm will be making a submission to the Bankruptcy Court explaining that we have not been properly served and that the Court does not have jurisdiction over us. Without waiving any objection concerning the lack of service and absence of jurisdiction, I nevertheless offer the following recitation of facts concerning certain events involving my representation of certain clients in Greece. In offering this recitation, I do not intend to waive any applicable privilege concerning my work for those clients (or any other clients). Additionally, should the Court believe that my attempting to help lay out facts somehow subjects me to jurisdiction with respect to the bogus and indeed fraudulent motion for sanctions, then I request that the Court disregard what follows so that I may fully maintain my objection to jurisdiction.

4. Sometime at the end of August or early September 2024, I met with Mrs Laskarina Karastamati Vasilis Chadzieleftheriadis, Vasilis Kertsikoff, and Emmanouil Andreoulakis

1

GNL 1692198v1

Alassia Building, 13 Defteras Merarchias Street 185 35 Piraeus Greece, Tel +30 210 4138800, 210 8226801, Fax +30 210 4138809, 210 8217869

*In cooperation with Kyriakides Georgopoulos Law Firm*         **www.daniolos.gr**

(all of whom were then directors of Eleston Holdings, Inc. ("EHI")). They explained to me the complicated dispute with Levona and its affiliated entities under the control of the Murchinson parties involving **(a)** an arbitration conducted in New York that resulted in a decision awarding Eletson Gas LLC and certain Cypriot preferred shareholders about $100 million compensation against Levona and **(b)** an application before the Southern District of New York bankruptcy court against EHI and other related companies for involuntary bankruptcy under article 7 of the US bankruptcy code, which developed into a chapter 11 procedure, the judgment of which was awaited. They asked me and the Daniolos Law Firm to advise them (and the rest of the individuals who were then directors) on the legal position and obligations under Greek law and Liberian law of the Directors of EHI if the bankruptcy judgment was issued against EHI. They did not ask me or the Daniolos Law Firm for any advice concerning the bankruptcy proceeding itself or United States law.

5. I do not intend to waive any privileges in this letter and do not intend to convey the specific substance of any advice I gave. However, I replied that as per my understanding of the governing law, the directors must ensure that the company complies with all legal obligations of the place of its incorporation (in this case Liberia) and the place where its main interests are situated (in this case Greece) and that there are certain judicial recognition procedures that must be followed for foreign (non Greek) judgments to have legal effects in Liberia and Greece.

6. On Saturday October 26, 2024, Mrs Laskarina Karastamati informed me as a factual matter that the bankruptcy judgment was issued in favor of the Petitioning Creditors. During the week of October 28, I met with Laskarina Karastamati, Vasilis Chadzieleftheriadis, Vasilis Kertsikoff and Emmanouil Andreoulakis who showed me a Closing Checklist and emails of Togut Segal & Segal (TSS, acting for the Petitioning Creditors) to Reed Smith (acting for EHI) dated October 28, asking for various actions to implement the approved re-organization plan, which as I was told was not yet in effect. They again asked me for advice about their legal obligations under Greek Law and Liberian law as Directors of EHI following said bankruptcy judgement.

7. I believe that the effect of the judgment with respect to the US jurisdiction is a matter for the US court. I also know, based on my 33 years of experience and practice in the international shipping and maritime trade, that the effects of a US bankruptcy judgment outside the USA are dependent on some form of judicial recognition at any respective jurisdiction as it relates to entities not incorporated in the US. Without disclosing the particulars of my communications, the Court in New York can conclude that any communications with these individuals was fully consistent with my understanding of the relevant law. Particularly for Greece, recognition of the US bankruptcy judgment and plan would have to be made under the provisions of law 3858/2010 giving effect to the 1997 UNCITRAL Model Law on Cross Border Insolvency which requires an application to be submitted.

8. Greece is important in that respect because my understanding is that it is the place of main interests of EHI, i.e. the jurisdiction where its management is effected (given that all BoD members of the company are Greek residents) and where Eletson Corporation of Liberia, a subsidiary of EHI, had established an office pursuant to article 25 of law 25/1975 where it employed many employees and it manages a significant number of Greek flagged ships

2

(tankers and gas carriers). I was concerned that in the absence of Greek recognition of the US bankruptcy court decision, there would be no legal basis for anyone to act in accordance with that US decision in respect of any activities in Greece. Furthermore, delivery of EHI and all its subsidiaries to the Petitioning Creditors without any judicial recognition in Greece of the bankruptcy judgment would violate Greek law and would expose those involved to liabilities, including towards subsidiary companies, or towards the shipowning companies of vessels under its management, and even to liabilities of Eletson Corporation which was the approved managing company under the existing International Safety Management certificates issued on behalf of the Greek State under the provisions of the International Convention for the Safety of Life at Sea of 1974 (SOLAS). Such liabilities that may arise for these individuals who consulted me are both civil and criminal in nature. Recognition in Greece of the US bankruptcy court decision is also of vital importance to the operation of Greek rule of law, since it involves entities whose very existence or operation stems from Greek law and protections.

9.   Article 331 of the Penal Code provides that :

*"Whoever arbitrarily exercises a demand relating to a right which he either actually has or by conviction appropriates shall be punished with a fine or community service. Criminal prosecution shall require a criminal complaint"*.

Article 390 of the Penal code provides that :

*"1. Whoever, in violation of the rules of diligent management, knowingly causes certain damage to the property of another, of which by law or contract he has custody or management (total, or partial, or only for a specific act), shall be punished with imprisonment and, if the damage caused is particularly great, with imprisonment of at least three (3) months and a fine. If the damage caused exceeds in total the amount of €120,000, imprisonment up to ten (10) years and a fine are imposed.*

*2. If the infidelity is directed against the legal person of the Greek State, legal persons governed by public law or local authorities and the damage caused exceeds in total the amount of € 120,000, imprisonment of at least ten (10) years and a fine of up to one thousand (1,000) daily units shall be imposed. This act is time-barred after twenty (20) years."*.

Whilst I am not an expert in criminal law, I believe that if the Directors complied with the US bankruptcy judgement without it having been judicially recognized in Greece (and therefore, without a binding legal obligation under Greek law) they would face criminal exposure under the above provisions of the Penal Code following a criminal complaint of shareholders of EHI, employees of its subsidiaries and/or counterparties of agreements. In my practice, I have seen prosecutions such as this when basic and vitally important provisions such as the ones we are here dealing with are disregarded.

10.  As a result of the advice I gave, which is fully supported by Greek law, the individuals who were Directors of EHI expressed the position that, as regards their duties as Directors, they could take no action in Greece for the consummation of the Petitioning Creditors plan before the bankruptcy judgment is judicially recognized by a Greek court. It is important to note that this Greek judicial recognition was after all mentioned in various documents submitted as binding by Pach Shemen, which I have seen. It is also mentioned in par B.3

of page 6 of the Petitioning Creditors' Check List which states : *"Consider whether to file recognition proceeding in Greece under the Model Law"*.

11. I reserved my position as regards the necessity of judicial recognition of the bankruptcy judgement in Liberia, due to the law under which EHI have been incorporated, until I obtained legal advice from Liberian counsel. I noted, however, that the Petitioning Creditors made specific reference to compliance with Liberian law, which I saw, and the the above checklist also provides in par.B.18 and B.19 of page 5 *"TSS to discuss with Liberian counsel whether needs to be filed / registered locally"* as regards the *"Amended Certificate of Incorporation"* and the *"Amended By-Laws"* respectively. And, as I set out below, I subsequently confirmed my understanding of Liberian law, and I conveyed that to counsel at Reed Smith as well. Notwithstanding, Greece is also an important jurisdiction for bankruptcy or insolvency purposes, in accordance with Greek law and the Insolvency Regulation of the European Union, because it is undisputed that EHI is headquartered in Greece and its center main interests is Greece.

12. I do not know how much of this advice was conveyed by the individuals who were EHI Directors to Reed Smith who at that time represented the Debtors (including EHI) before the bankruptcy court, but I understand that in the subsequent days the pressure on behalf of the Petitioning Creditors for action by the EHI Directors increased significantly. At that point, I was told that some of the Directors declared that they were exhausted by all this litigation, the pressure and the uncertainty and did not wish to continue their duties. Under article III Section 2 of the EHI By-Laws dated 2007, the BoD of the company consists of 8 persons and, under Section 5, the majority of the Directors constitutes a quorum. Therefore, depending on the number of Directors stepping down the company could end up with an un-operative BoD with no quorum possibility, in which case, it might be necessary for a judicial supplementation of the BoD pursuant to article 69 of the Greek Civil Code which provides :

> *"If the persons necessary for the management of a legal person are absent or if their interests conflict with those of the legal person, the court appoints an interim management at the request of anyone with a legitimate interest"*

13. On November 8, 2024, I was advised that four out of the eight Directors of EHI had resigned that day. Specifically, the Directors who resigned were Laskarina Karastamati, Eleni Karastamati, Vasilis Ketrsikoff, and Panagiotis Konstantaras. I did not advise any director of EHI to resign. The Daniolos Law Firm and I were not involved in the decision to resign by these individuals. At the instruction of Mr Vasilis Chatzieleftheriadis I sent an email on November 12 to Reed Smith (who were representing EHI) advising them of this development (that was my first communication with Reed Smith). I also advised them of the legal advice I had received that day from Heritage Partners and Associates of Liberia saying that the bankruptcy judgment issued by the Southern District of New York court can have no legal effects in Liberia before being judicially recognized by a Liberian court and that the Liberian International Shipping and Corporate Registry (LISCR) would not accept any recordings for EHI on the basis of the above judgment until such judicial recognition. This legal advice was confirmed on November 18 by an additional legal opinion from the law firm Lex Group of Liberia LLC. I also advised Reed Smith that it was my opinion that

4

similarly under Greek law the bankruptcy judgment also needed to be recognized by a Greek Court.

14. On November 13 I was advised by Vasilis Chatzieleftheriadis that two minority shareholders of EHI had instructed their Greek lawyers to submit before the Piraeus Court of First Instance an application to appoint provisional BoD members for EHI. This application had been submitted on November 12 and the applicants had obtained a provisional order of the court appointing the following eight persons as provisional BoD members for EHI until the hearing of the application on February 4, 2025 with the mandate to take care of urgent business of the company and to appoint lawyers to protect its interests (particularly before the courts of New York) :

     Vasileios Chadzieleftheriadis
     Konstantinos Chadzieleftheriadis
     Ioannis Zilakos
     Emmanouil Andreoulakis
     Adrianos Psomadakis-Karastamatis
     Panos Paxinos
     Eleni Giannakopoulou
     Niki Zilakou

Neither I nor anyone else in the Daniolos Law Firm advised anyone or represented anyone concerning this application or had any role in this application. Again at the request of Mr Vasilis Chatzieleftheriadis on November 13 I advised Reed Smith of the above development.

15. Even though my law firm and myself are not involved in the drafting and filing of this application (which, as mentioned above, was filed by two minority shareholders of EHI), the above provisional BoD members requested that I continue my services towards them in person, providing legal advice on their duties and their legal responsibilities under Greek law and Liberian law. As a result, I met with all of the court-appointed provisional directors on 14 and 15 November (except Mrs Niki Zilakou who was unavailable) and explained their responsibilities from their appointment as provisional BoD members of EHI under Greek law and Liberian law.

16. On November 14, 2024, Reed Smith sent me an email passing on certain questions they had received from TSS relating to a request for the change of the person who is entitled to submit documents to LISCR on behalf of EHI (the so called "Address of Record"). Upon consulting with the provisional BoD members of EHI, I replied to Reed Smith on November 16 my time (the evening of November 15 NY time), pointing out my previous advice to the individuals who were EHI Directors, i.e. that because the bankruptcy judgment needed judicial recognition both in Greece and Liberia my advice to the provisional BoD members was that they should not take any such action, particularly given the limited nature of their authority as provisional Directors appointed by the Piraeus Court. Such conduct by these directors would be inconsistent with Greek and Liberian law and would be illegal, exposing these directors to the harms and liabilities referred to above. This included the request to disclose the identity of the person who is currently designated with LISCR as the Address of Record. That information is nonpublic and because under

5

the circumstances there was no clear reason why TSS required that information (other than to harass and threaten that individual personally), my advice pursuant to Greek and Liberian law was that they deny that request. In that email, I explained that the provisional BoD could not accept any of the three options that had been proposed by TSS, and further informed Reed Smith that the provisional BoD could not even stipulate to conditions under which it might comply with any of TSS's proposals, because such a stipulation "cannot substitute the necessity of the aforementioned requirements under Greek and Liberian law."

17. I should also add that as per standard practice in Piraeus, the Address of Record persons are lawyers who are instructed by their clients to incorporate the companies. These lawyers owe a duty of fidelity towards the persons that have entrusted to them their interests and may face criminal proceedings if they breach this duty. Article 233 of the Penal Code which provides that :

> "1. A lawyer who knowingly harms the interests of the person he has undertaken to legally protect, or who assists both parties by advice or service in the same litigation, either simultaneously or consecutively, shall be punishable by imprisonment for up to three years or a fine.
>
> 2. However, if he has acted in concert with those who have opposing interests or in pursuit of profit, he shall be punished with imprisonment for not less than one year and a fine"

As a result, even if the identity of the AoR person was revealed, such person would not be in position to comply with any instructions of TSS and their clients before the bankruptcy judgment and the respective plan were judicially recognized in Greece, without facing criminal liability.

18. On November 20, 2024, I was told by Vasilis Chatzieleftheriadis that Mark Lichtenstein acting on behalf of the allegedly reorganized EHI sent 15 emails to various departments of Eletson Corporation (including operations, finance, legal etc) and to members of the provisional BoD of EHI, claiming to give instructions and requesting the abstention from certain actions involving EHI and its subsidiaries (including Eletson Corporation). A similar letter dated November 19 had been sent to Reed Smith requesting the delivery of files (paper and electronic) and the abstention from any action without specific authorization. Reed Smith sent me this letter asking "what if anything is now expected of Reed Smith". I replied to Reed Smith on November 21 reiterating that pursuant to two legal opinions from two separate Liberian law firms, the effectiveness of the bankruptcy judgement in Liberia required the prior judicial recognition by a Liberian court. The Pach Shemen directives were seeking to compel illegal conduct in Greece and Liberia, which could not be countenanced. I also repeated my opinion that the prior judicial recognition of the judgment in Greece is necessary for the judgment to become effective in Greece. I also passed on to Reed Smith the instructions of Eletson Corporation and of the EHI provisional Directors that Reed Smith was to continue representing these two companies before any US courts.

19. On Saturday November 23, 2024, I received an email from Bryan Kotliar of TSS attaching the bankruptcy court confirmation order and other related legal documents as well as a letter of TSS of the same day complaining of alleged violations of the bankruptcy judgment and of US bankruptcy law by "my clients", without specifying to which clients TSS are

6

referring to, and accusing me that *"your firm purportedly filed and obtained an ex parte order from the First Instance Court of Piraeus appointing provisional members of an officio functus Board of Directors, acting, inter alia, on behalf of two former minority shareholders of EHI, Elafonissos Shipping Corporation and Keros Shipping Corporation (the "Former Minority Shareholders") and/or the "Board of Directors of Eletson Holdings, Inc."*. The letter concluded offering a *"reasonable release of claims"* against me personally if I confirmed by 5:00 EST of Monday November 25 that I agreed to take a list of actions provided therein, including to vacate the provisional order of the Piraeus court appointing provisional BoD members for EHI, threatening, amongst others, *"costly litigation"* and sanctions against me for alleged contempt of court.

20. I replied to the above message by my email of Monday November 25 at 18:35 Greek time (11:35 am EST) pointing out that *"Your assumption that our firm represents the two minority shareholders of EHI that requested before the Piraeus First Instance Court the appointment of provisional BoD members is erroneous. Therefore I am not in a position to respond to the points you raise"*. I repeated my opinion that the bankruptcy judgment needed to be judicially recognized in Liberia and Greece *"which are the two jurisdictions determining the corporate authorities and powers of corporations incorporated in Liberia but having in Greece their center of their main interests and their representation"*.

21. At 16:19 Greek time of Monday November 25, 2024, I received an email from Reed Smith attaching a copy of an emergency motion of the *"reorganized Eletson Holdings Inc"* represented by TSS for sanctions against various parties, including Daniolos Law Firm (on November 26 I also received an email at 16:26 Greek time, from the email address rlizarraga-angulo@veritaglobal.com containing links to the same documents). By perusing these documents I understand that the sanctions motion was filed with court on Monday November 25 at 09:06, i.e. before the time limit that had been provided for my reply (5:00 EST) and before even TSS had received my reply which was sent on Monday November 25 at 18:35 Greek time (11:35 am EST). Other than the above Reed Smith courtesy notification of the motion for sanctions and the receipt of the links from the email address rlizarraga-angulo@veritaglobal.com I have not received any formal service or summons about this motion for sanctions against Daniolos Law Firm that meets the requirements of Greek Law and/or the Hague Convention.

22. From all the above it can be seen that, neither myself personally, nor Daniolos Law Firm, participated in any way, or represented any party, in the bankruptcy proceedings involving EHI and other Debtors and therefore we cannot be bound by any judgment issued by the Southern District of New York Bankruptcy court. It is my understanding that neither I nor the Daniolos Law Firm are under the jurisdiction of the Southern District of New York Bankruptcy Court.

23. Most importantly, however, I and the Daniolos Law Firm have not acted in contempt of the above judgement in any way. In fact, neither myself nor the Daniolos Law Firm are involved in the application before the Piraeus court for the appointment of provisional BoD members for EHI at all. For the avoidance of doubt, I am not suggesting that such a filing is at all contemptuous of the US Bankruptcy Court. It should be underlined that the right of a person living in Greece to seek judicial protection before the Courts of Greece is an absolute right protected by the Greek Constitution and the European Convention on Human

7

Rights. Consequently, recourse to the courts cannot be an act of contempt of the US Bankruptcy Court.

24. I do not understand how there could even be a contemplation of contempt of any foreign court when our only involvement has been to provide to the individuals who were EHI Directors (those that held their position before the Piraeus Court appointment of provisional BoD members and those provisionally appointed by the court) our legal opinion as regards their duties and responsibilities under Greek law and under Liberian law upon the advice of Liberian counsel. Not only have we not shown any disrespect to the Southern District New York court or to the bankruptcy judgement, but, on the contrary we advised the individuals who were EHI Directors of the steps that are necessary for this judgment to become effective in the Greek jurisdiction. Besides, how can we be held in contempt of court and of the bankruptcy judgment because of our legal opinion that it must be judicially recognized in Greece pursuant to the Greek law giving effect to the UNCITRAL Model law on Cross Border Insolvency, when the exactly same consideration is included in the TSS Check List that was drafted sometime between 26 and 28 October and provides in par.B.3 of page 6: *"Consider whether to file recognition proceeding in Greece under the Model Law"*.

25. Further and as regards specifically the list of actions we were requested to take by the TSS email dated November 19 mentioned above, in view of the duty of any lawyer to protect his clients in a legitimate manner, under applicable law, in the jurisdiction of his practice, it would not be possible to comply with the requests of TSS for information and documents of our clients, because this is a criminal offence under Greek law. More specifically, as mentioned above, under Article 233 of the Greek Penal Code (breach of trust by lawyers) any lawyer who knowingly causes harm to the interests of his/her client or that in the same case, assist by advice or other services, his opponents, or acts for his/her opponents, at the same time or successively, is punished by imprisonment of up to three years or a monetary penalty.

26. Finally, it is worth noting that the acts of Mark Lichtenstein, or Adam Spears, and possibly their lawyers, purporting to act on behalf of EHI (and stating so towards third parties in Greece) on the basis of a foreign judgement which has not been recognized in Greece, may well amount to serious criminal offences, like fraud (deceit) under Article 386 of the Greek Penal Code and/or extortion (under Article 385 of the Greek Penal Code) and/or arbitrary self-enforcement of Rights (under Article 331 of the Greek Penal Code). Consequently, an objection to comply with such a harassment in this jurisdiction cannot be deemed a contempt of foreign Court.

27. Finally, I must reiterate that having not been party to the above mentioned bankruptcy proceedings and having not taken any action whatsoever in the USA, I do not believe that I or the Daniolos Law Firm can be found to be subject to the US jurisdiction for the sanctions motion in question. All our rights and privileged are hereby reserved to the fullest extent.

Yours sincerely

Ioannis (John) Markianos-Daniolos

8

GNL 1692198v1