**ReedSmith**
Driving progress
through partnership
**Louis M. Solomon**
Direct Phone:  +1 212 549 0400
Email:  lsolomon@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

February 4, 2025

**Via ECF**

Honorable John P. Mastando
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

**Re: *In re Eletson Holdings, Inc., et al.*, Bankr. S.D.N.Y. 1:23-bk-10322 (JPM)**

Dear Judge Mastando:

We write on behalf of Reed Smith.  Additionally, insofar as Your Honor has determined that Provisional Holdings still exists in some fashion and is entitled or required to have counsel, we write on behalf of Provisional Holdings within the scope of our limited representation as articulated below.

We write to advise the Court concerning the efforts of Provisional Holdings and Reed Smith to comply with this Court's order of January 29, 2025 (ECF 1402 (the "Order")).  Provisional Holdings and Reed Smith take the Order with utmost seriousness and respect.  Reed Smith and, to our knowledge, Provisional Holdings are taking all lawful steps to comply with the Order without compromising or violating legal rights that exist under non-US law.  At the same time, Reed Smith is informed that Provisional Holdings has been advised by competent counsel in both Liberia and Greece that in certain respects compliance with the Order would violate and is prohibited by Liberian and Greek law. Provisional Holdings is doing all it can to live lawfully under all three legal regimes.  It is therefore the purpose of this letter to summarize what has been and is being done, to identify with clarity the role that Reed Smith is attempting to play, and to request that Your Honor *sua sponte* reconsider the Order, or grant a motion to stay the Order pending an expedited appeal of the Order or pending a date certain (we suggest March 20, 2025) to determine whether the by-then active litigations concerning these very issues going on Liberia and Greece may shed important light on the issues.  We are working on the appeal and stay papers now and hope to have them on file tomorrow, before the compliance deadline. (Throughout this letter, Reed Smith wishes to make clear that it does not have authority and has no intention of waiving any privilege or immunity held by Provisional Holdings).

***First***, as I explained to Your Honor at the hearing on January 29, 2025 (1/29 Hr'g. Tr. at 47:4-20), Reed Smith, with the cooperation of Provisional Holdings, has confirmed the limited nature of Reed Smith's retention by Provisional Holdings, as permitted by Local Rule 1.4(c).  Reed Smith does not represent any other of the persons or entities who are the subject of the Order, assuming for the moment that Provisional Holdings is subject to the Order.  Reed Smith's clear articulation of the limited role it is playing should serve as Notice of Limited Retention.  Reed Smith is happy to file a separate notice should the Court wish.

Honorable John P. Mastando
February 4, 2025
Page 2



Reed Smith recognizes that, at the January 29, 2025 hearing, the scope of Reed Smith's role in representing Provisional Holdings was raised (1/29 Hr'g Tr. at 56:11-23). To eliminate confusion, Reed Smith feels duty-bound to continue to perform that role in the context of Your Honor's comments and the limited nature of the matters set forth below. Specifically, Reed Smith's role in the above-captioned action (and related appeals) has been limited to the following, with the addition of the Provisional Holdings representation just discussed:

1. Responding to all motions and applications in which Reed Smith itself has been named as a party;

2. Any appeal from the Order;

3. The pending appeal to the Second Circuit from Judge Liman's dismissal of Provisional Eletson Holdings' appeal from the Bankruptcy Court (*see In Re: Eletson Holdings Inc*, Case No. 25-176), including the recently requested briefing by Judge Liman regarding a motion to strike the stipulation of voluntary dismissal of such appeal and Reorganized Holdings' Motion to Strike the notice of appeal (*see In Re: Eletson Holdings Inc.,* Case No. 1:24-cv-08672-LJL, Dkt No. 38; *Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL, Dkt. No. 253);

4. Briefing and argument regarding Goulston & Storrs PC's *Motion to Compel Reed Smith LLP To Produce The Eletson Client File, Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL, Dkt. No. 242). Until ordered otherwise, Reed Smith remains counsel in that matter.

*Second*, Reed Smith and to our knowledge Provisional Holdings have taken all lawful steps available to comply with the Order. They each are continuing to do so (we have been advised that, as part of the legal proceedings in Liberia and Greece, Provisional Holdings is availing itself of statutory protections that exist in other jurisdictions, a fundamental right that we do not even read the Order as prohibiting). To Reed Smith's knowledge, Provisional Holdings has reached out to counsel in Liberia and Greece to try to do all it can without running afoul of the laws of Liberia or Greece. We have participated as counsel in numerous calls with Liberian and Greek counsel, and we have been advised of many additional calls and meetings that Reed Smith did not attend, to find ways to act consistently with all applicable laws. Indeed, Provisional Holdings sought and obtained affidavits from Greek and Liberian counsel that are being filed in the District Court concerning Liberian and Greek law. We attach those affidavits hereto as **Exhibits A and B**. Provisional Holdings is also actively participating in the ongoing recognition and related proceedings going on in Liberia and Greece, as we discuss below. That active participation is being done to confirm or eliminate the ineluctable illegality that Provisional Holdings is now operating under.

Additionally, Pach Shemen has interpreted the Order as enabling it to seek voluminous additional documents and cause Provisional Holdings and Reed Smith to do substantial additional work. Provisional Holdings has instructed Reed Smith to comply as best it can with those requests, subject to not causing violation of Liberian or Greek law. Reed Smith believes it has done so, as we detail below. Other than empty additional threats against Reed Smith, Pach Shemen has not identified anything concrete that Reed Smith or Provisional Holdings should be doing.

Honorable John P. Mastando
February 4, 2025
Page 3



With respect to Reed Smith, pursuant to this limited authority, Reed Smith had cooperated in good faith in compliance with the Order. For example, after the entry of the Order, Reed Smith (1) confirmed Provisional Holdings received the Order, as entered, (2) spoke with Provisional Holdings about its obligations pursuant to the Order; and (3) provided whatever assistance has been requested by Pach Shemen, to the extent of Reed Smith's ability. I and others at Reed Smith in the last week have spoken with Provisional Holdings many times regarding its obligation to comply with the Order. Additionally, Reed Smith sent the Order to Liberian and Greek counsel, and spoke with them several times about the obligations it created in light of foreign law.

Additionally, as mentioned, Pach Shemen served on Reed Smith a punishing set of discovery requests and other demands related to the Order. Reed Smith spent many hours going through those demands and requests and provided answers to as many of them as possible. For the Court's information, relevant communications on this topic are attached hereto as **Exhibits C and D**. Further communications on this same subject appear as **Exhibits E and F**. Reed Smith also continues to incur significant expense of its own counsel to ensure compliance with the Order.

**Third**, Reed Smith has been advised both by counsel for Provisional Holdings and by Provisional Holdings that the Order has made it impossible for Provisional Holdings to comply both with it and binding foreign law in Greece and Liberia. Respectfully, while these issues were extensively briefed, Provisional Holdings disagrees with Your Honor's January 24 oral decision (ECF 1402-1), which did not engage in a comity analysis as required by Second Circuit authority. *See Animal Sci. Prods. v. Hebei Welcome Pharm. Co. (In re Vitamin C Antitrust Litig.)*, 8 F.4th 136, 145 (2d Cir. 2021) (lack of true conflict does not "extinguish the remaining comity *factors sub silentio*"); *Linde v. Arab Bank, PLC*, 706 F.3d 92, 111 (2d Cir. 2013) ("The concept of international comity requires a particularized analysis of the respective interests of the foreign nation and the requesting nation."). These issues, among others, will be the subject of the appeal of the Order described above, and evidence the rock and hard place between which Provisional Holdings finds itself.

As an example, Greek law precludes Provisional Holdings from taking certain steps contemplated under the Order without incurring the imposition of criminal sanctions (ECF 1288, Ex. 29 at ¶¶ 7-11). This extends, for example, to Provisional Holdings' ability to disclose the AOR (*id*. at ¶ 16). And notwithstanding Your Honor's January 24 oral ruling and the Order, recognition in Liberia is still required for the Confirmation Order to take effect there—Eletson Holdings' place of incorporation. Highlighting these realities should not suggest that Provisional Holdings does not take the Order seriously, but that in some instances insurmountable constraints of foreign law remain precluding further compliance.

**Fourth**, and highly pertinent, as counsel to Provisional Holdings, we have been advised by its Greek and Liberian counsel that two new proceedings have been initiated in Greece by Reorganized Holdings. In one, we are advised that Reorganized Holdings moved to intervene regarding the minority shareholders' application for appointment of provisional management (Ex. B at ¶ 21). In the other, Reorganized Holdings has filed a petition for Greek recognition of the Confirmation Order (Ex. B. at ¶¶ 14-18). Reed Smith is not counsel in those proceedings, and we do not profess to have any knowledge of Liberian or Greek law other than what we are being told by competent Liberian and Greek counsel. We raise this with Your Honor to confirm that, in addition to the ongoing recognition

Honorable John P. Mastando
February 4, 2025
Page 4



proceeding moving forward in Liberia, there are now proceedings including recognition proceedings ongoing in Greece.

These Liberian and Greek proceedings will provide clarity as to the very issues addressed by Your Honor, including the extraterritorial effect of both the Confirmation Order and the Order and the present corporate form of Eletson Holdings, consistent with principles of international comity. As far as we can tell, the litigations in Liberia and Greece addressing the very issue of illegality that Provisional Holdings is at risk on will not only answer the questions definitely but appear to be proceeding apace. We are advised that the Greek recognition proceeding will be heard on March 19, 2025. Neither the Liberian nor Greek recognition action seems to have been dismissed as being frivolous. And given that Pach Shemen deliberately and for its own strategy waived its right to await those rulings before going effective with its plan, it would be fundamentally unfair for this Court to punish Provisional Holdings for needing to await the clarification of the law from those proceedings. These proceedings are themselves sufficient grounds for Your Honor to stay the Order or to grant Provisional Holdings reconsideration or forthcoming motion to stay pending an expedited appeal or pending before the March 19, 2025 recognition proceeding in Greece (Liberia might well rule earlier – we do not know). *See, e.g., In re HBLS, L.P.,* 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (deferring to foreign proceeding where movant sought "enforcement of prior orders of this Court").

In summary, Reed Smith, and, based on what we know, Provisional Holdings are doing everything in their power to act in compliance with *all* applicable laws. Reed Smith and Provisional Holdings are also doing all that could reasonably be asked to comply with the unduly burdensome and unreasonable document and information requests from Pach Shemen. Reed Smith has no role to play, and is playing no role, in connection with Liberian law or proceedings or Greek law or proceedings.

We ask that Your Honor consider this letter. Should Your Honor feel that ways exist that are not being pursued to comply with the Order that are not, in the opinions of competent counsel, violative of Liberian or Greek law, Reed Smith and Provisional Holdings very much welcome a conference with Your Honor to explore those avenues. We also ask that Your Honor *sua sponte* reconsider or stay the Order or grant the forthcoming motion to stay pending an expedited appeal or March 20, 2025, in light of the Greek recognition proceeding.

Respectfully submitted,

Louis M. Solomon

cc. Counsel of Record

# Exhibit

# A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 24-cv-08672-LJL |
| Debtors.[1] | [rel. 23-cv-07331-LJL; 24-cv-05096-LJL] |

## DECLARATION OF GERALD PADMORE CONFIRMING THE DECLARATION OF BETTY LAMIN-BLAMO DATED DECEMBER 9, 2024, WHICH WAS FILED IN THE BANKRUPTCY COURT

Gerald Padmore declares as follows under 28 U.S.C. § 1746:

1. I am a Liberian citizen admitted to practice law in the Republic of Liberia.

2. I have practiced as a Liberian lawyer for over 50 years. My areas of practice include corporate and business organizations, natural resources, and international arbitration.

3. I am submitting this declaration in support of Provisional Eletson Holdings' Motion to Strike Stipulation and Agreement to Dismiss Appeal Under Rule 42(A) of the Federal Rules Of Appellate Procedure.

4. Recently, in the Bankruptcy Court, Counselor Betty Lamin Blamo submitted a declaration in connection with the motion for sanctions filed against Reed Smith LLP. That declaration, which can be found at Bankruptcy ECF No. 1289, is attached hereto as **Exhibit A**. I fully adopt here the legal statements and conclusions in that declaration.

5. Further, I believe there are three points of Liberian law especially pertinent to this motion. First, Holdings is a Liberian corporation with its principal place of business in Greece.

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

Under the Liberian Business Corporations Act ("Liberia BCA" relevant portions attached hereto as **Exhibit B**), which governs Holdings' interests, "the situs of the ownership of capital shares of all [Liberian] corporations . . . shall be regarded as in Liberia" (Liberia BCA § 5.14).

6.      Second, under Liberian law, a foreign court order that purports to cancel or extinguish the common shares of Holdings and purports to issue new shares cannot, if inconsistent with the BCA or the governing documents of the corporation, be given effect under Liberian law until it has been recognized by the Liberian courts. This is not to say that a foreign court lacks jurisdiction in all respects as it relates to a Liberian corporation. A foreign court may properly acquire jurisdiction in certain matters as prescribed by statute including Bankruptcy proceedings involving non-resident Liberian corporations.  Notwithstanding, even if a foreign court were to properly acquire jurisdiction, a decision or order of such court to the extent that it i) mandates alterations of or amendments to the Articles of Incorporation of a Liberian corporation; ii) otherwise requires action to be taken by officers or officials of the Liberian Government; or iii) is inconsistent with the BCA, will not be enforceable unless it has been recognized and given full effect by a Liberian court.

7.      Third, under Liberian law, to amend the articles of incorporation of a Liberian corporation, Chapter 9 of the BCA sets forth clear steps for an amendment of the Articles of Incorporation, none of which is pursuant to an order of a foreign court. Furthermore, the corporation must state "the manner in which the amendment of the articles of incorporation was authorized" (Liberia BCA § 9.5). Such authorization must be by the shareholders, in some cases also by the Directors, and in limited instances by the Directors alone. Any such order must thus be recognized by a Liberian court before the Registrar or Deputy Registrar, who are officials of the

Government of Liberia, appointed by the President of Liberia, can be required to accept an amendment for filing as consistent with the requirements of the BCA.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that matters of opinion stated therein represent my true opinion.

Executed on January 31, 2025, in Monrovia, Liberia

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

ELETSON HOLDINGS INC., et al.,

Chapter 11

Debtors

Case No. 23-10322 (JPM)

(Jointly Administered)

## DECLARATION OF BETTY LAMIN-BLAMO PURSUANT TO 28 U.S.C. § 1746

I, Betty Lamin-Blamo, a Liberian citizen who is admitted to practice law in the Republic of Liberia, hereby declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States of America as follows:

1.      I am an attorney duly licensed to practice in the Republic of Liberia.  I am the Senior Consulting Counsel of the law firm of Lex Group Liberia LLC, located at Congo Town, Opposite Dominion Christian Fellowship Church, Monrovia, Liberia

2.      I have practiced law in Liberia for over twenty (20) years. My specialties include international business transactions, commercial transactions, corporate law, criminal law, civil litigation, and criminal prosecution.  Prior to establishing Lex Group Liberia, I was Solicitor General/Deputy Attorney General of the Government of Liberia from 2013-2017. Prior to my appointment in the Liberian Government, I worked at the Sherman & Sherman, Inc., (the largest law firm in Liberia at the time) for nine (9) years (2003-2012). As a lawyer at Sherman & Sherman, I advised numerous foreign and local clients on various aspects of Liberian law. From 2008-2013, I served as an Assistant Professor of Law at the Louis Arthur Grimes School of Law, where I offered courses in Corporations Law and Legal Research & Writing.

3.      I hold a law degree (Bachelor of Laws, LLB) from the Louis Arthur Grimes School of Law, University of Liberia awarded in 2003 with distinction, and as the top student of my 2003 class. I also hold a law degree (Master of Law, LLM) from Indiana University School of Law (IU), Bloomington, Indiana, United States of America awarded in 2008, along  with a Certificate of Excellence for obtaining the highest GPA in the graduate legal studies program at IU (2008), and

1

the CALI Excellence for the Future Award, for my excellent achievement in the study of secured transactions, having scored the highest grade in the secured transactions law class during the spring of 2008. I am admitted to the practice of law in Liberia as an attorney (2004), and a counselor of the Supreme Court of Liberia (2007). I am a former Member of the Board of Examiners of the Supreme Court of Liberia, and was most recently appointed to serve on the Courts Rules Revision Committee constituted by the Supreme Court of Liberia to review the rules of all courts of Liberia. I am currently a member of the Liberia National Bar Association, and a former Member of the Executive Council of the Liberia National Bar Association.

4.      This declaration (the "**Declaration**") pertains primarily to Eletson Holdings, a Liberian non-resident corporation which is involved in certain bankruptcy proceedings before the Southern District of New York Bankruptcy Court pursuant to Chapter 11 of the US Bankruptcy Code, against a certain group of creditors (the "**Petitioning Creditors**") who recently obtained a confirmation order by the aforementioned court confirming the plan of reorganization that the Petitioning Creditors proposed, which I understand is subject to an appeal.

5.      I have been provided with: *(i)* the Petitioning Creditors' Amended Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors (the "**Plan**"), *(ii)* the Notice of Filing of Third Amended Plan Supplement to the Petitioning Creditors' Amended Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors (the "**Plan Supplement**"); *(iii)* Notice of (I) The Occurrence of the Effective Date and (II) Final Deadlines for Filing Certain Claims (the "**Effective Date Notice**"); *(iv)* currently applicable constitutional documents of Eletson Holdings that have been previously lawfully filed with LISCR over the past years, namely: The Amended and Restated Articles of Incorporation filed on 29 June 2007, The Articles of Amendment (to the aforementioned Amended and Restated Articles of Incorporation) filed on 29 June 2018 (collectively the "**Existing Articles of Incorporation**"); *(v)* The Amended Bylaws adopted on 26 June 2007 of Eletson Holdings (the "**Existing Bylaws**"). *(vi)* The Declaration of Liberian Counselor-at-Law James A.A. Pierre II dated November 25, 2024, who I understand has been engaged by the Petitioning Creditors in this matter (the "**Pierre Declaration**"). *(vii)* the Memorandum and opinion and order confirming petitioning creditors' amended joint chapter 11 plan of reorganization of Eletson Holdings Inc and its affiliated debtors dated 25.10.2024 issued by the United States Bankruptcy Court for the Southern District of New York and the Order signed on 04.11.2024 confirming petitioning creditors' amended joint chapter 11 plan

2

of Eletson Holdings Inc. and its affiliated debtors (the "**Confirmation Order**") (vii) Certificate of Incumbency dated 22 November 2024.

6.      This Declaration addresses certain questions of Liberian law that have been raised with me as indicated below and provides comments on certain parts of the Pierre Declaration. I reserve the right to supplement my opinions, including in response to questions raised by the Court or the parties, and to opine on other matters raised by the parties.

7.      The analysis and conclusions of this Declaration are based on Liberian law, including other permitted and applicable laws because of Liberia's General Construction Law, and not the laws of another jurisdiction. Liberia's General Construction Law provides that the rules adopted for chancery proceedings in England and the common law and usages of the courts of England, and the United States of America, as set forth in the case law and in Blackstone's and Kent's commentaries and other treatises and digests shall be considered applicable Liberian law where Liberian statutory and common law are silent on a subject and/or does not succinctly speak to that subject. **General Construction Law, Title 15, Liberian Code of Law Revised.** With regards to the issues addressed below, there is indeed applicable Liberian statutory and common law.

8.      Based on the foregoing, and subject to the qualifications expressed above, our opinion is as follows:

*First Question*: **Will the Chapter 11 Plan and the Confirmation Order be automatically recognized in Liberia [*No*], or is the prior judicial recognition of the judgment in Liberia necessary for the judgment to be given effect over a Liberian non-resident Corporation, such as Eletson Holdings? [*Yes*]  More specifically, under Liberian law, is the effect of the SDNY Bankruptcy Court judgment (i.e. the Confirmation Order confirming the Plan), by virtue of which the common shares of a non-resident Liberian corporation are cancelled and extinguished and new shares ("Reorganized Equity") are issued, immediate and automatic, in the sense that the purported new shareholders may act in their capacity as valid new shareholders on the face of such judgment (Confirmation Order) [*No*], or is it necessary for certain legal steps to be taken for the new shareholders to be recognized as shareholders? [*Yes*]**

9.      Under Liberian law, the purported new shareholders may not and are not authorized to act in the capacity as valid new shareholders in reliance upon the Southern District of New York Bankruptcy Court Confirmation Order, unless the judgment is recognized by a competent Liberian court.   A foreign judgment i.e. a confirmation order confirming a Chapter 11 plan confirmation judgment of the Southern District of New York Bankruptcy Court which purports to cancel and extinguish the common shares of a non-resident Liberian corporation and purports to issue new shares ("Reorganized Equity") is not considered conclusive as to any act(s) enumerated therein,

3

and cannot be given automatic effect under Liberian law, but may be admitted as evidence[1] and enforced by a Liberian court based on comity without a retrial on the merits provided that:

    a) the judgment is final in the jurisdiction granting the judgment and has not been appealed.

    b) the court granting the judgment had jurisdiction over the subject matter and the parties

    c) the judgment does not offend the principles of the laws of the Republic of Liberia as to due process, natural justice or public policy;

    d) the judgment was not obtained by fraud; and

    e) the defendant was actually present in person or by duly appointed representative, and the judgment does not in effect constitute a default judgment.

10.    The Liberian Supreme Court speaking on the issue of international comity and recognition of foreign judgments, in the case **Turner V. Burnette, 24 LLR 212 (1975),** held:

> "We would like to address ourselves to the important issue of what effect, if any, should our courts give to the judgment of the Circuit Court of Cook County, Chicago, Ill., U.S.A. The Constitution of the United States of America, Article IV, Section 1, provides that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state; but this provision does not require the granting of full faith and credit to a judgment rendered by a court of a foreign nation. See Aetna Life Insurance Company v. Tremblay, [1912] USSC 36; 223 U.S. 185 (1912); 4.7 AM. JUR., 2d, Judgments, §127. In fact, even if it did, no law has any effect of its own force, beyond the limits of the sovereignty from which its authority is derived. Hilton v. Guyot, [1895] USSC 185; 159 U.S 113 (1895). The Liberian Constitution has no such provision, and there is no statute or treaty with respect to the effect to be given a foreign judgment. In the absence of a special compact, no sovereign state is bound to give effect within its territory to a judgment rendered by the tribunals of another country; and it is at liberty to give or refuse effect to it as may be found just and equitable. The extent to which the judicial decree of one nation is allowed to operate within the territory of another nation depends upon "the comity of nations." In Hilton v. Guyot, supra, at 143, the United States Supreme Court said: "Comity, in the legal sense, is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." See also 47 AM. JUR., 2d, Judgments, § 1215. It is also stated in 16 AM. JUR., 2d, Conflict of Laws, § 5, that "in considering the question of comity, it should also be borne in mind that the recognition of

---

[1] Section 25.12, Title 1, Liberian Code of Laws Revised, Civil Procedure law

4

foreign laws cannot be claimed as a right but only as a favor or courtesy. The application of comity does not rise to the effect of establishing an imperative rule of law; it has the power to persuade but not command. Comity being voluntary, and not obligatory, rests in the discretion of the tribunal of the forum and is governed by certain more or less widely recognized rules."

11.     Unless a formal petition is filed before a court of competent jurisdiction in the Republic of Liberia for the recognition and enforcement of the order or judgment, and the petition is heard and granted, the SDNY Confirmation Order which purports to cancel and extinguish the common shares of a non-resident Liberian corporation and purports to issue new shares ("Reorganized Equity") is not immediately and automatically conclusive and cannot be given recognition and effect by competent Liberian authorities.

_**Second Question**_: **Will the Petitioning Creditors (proponents of the confirmed Chapter 11 plan), on the mere face of the SDNY Confirmation Order, be able to submit to the Liberian Registry (LISCR) new constitutional or other organizational documents (such as new Articles of Incorporation) for Eletson Holdings [_No_], or is it necessary first to proceed with the judicial recognition of this Confirmation in Liberia [_Yes_]?**

12.     Unless the foreign judgment in favor of the Petitioning Creditors is recognized and adjudged enforceable by a competent Liberian court, LISCR in its capacity as statutory registered agent, cannot accept instructions, filings, or submission of information relating to directors, management, and ownership (certificate of incumbency) from the Petitioning Creditors. Pursuant to **Section 3.1 of the Business Corporation Act**, LISCR is the statutory registered agent for Liberian non-resident domestic corporations and Foreign Maritime Entities. LISCR is responsible for receipt and service of process, and to ensure the keeping of the required information of directors, management, and ownership to enable accessibility and availability of that information to the relevant competent authorities. Filings and submission of information relating to directors, management, and ownership (certificate of incumbency) can be made and accepted <u>only</u> from a pre-designated authorized representative of the non-resident domestic corporation and Foreign Maritime Entities known and referred to as the Address of Record ("AOR") as per the procedure established by LISCR, unless otherwise instructed by a competent Liberian court.

13.     The Registrar or Deputy Registrar, who are officials of the Liberian Government authorized under the Business Corporation Act to effect amendments to the Articles of Incorporation of an existing corporation once filed, cannot upon the request or instruction of the Petitioning Creditors in reliance on a foreign judgment, or directly by order of a foreign court itself, effect an amendment to the Articles of Incorporation of a Liberian corporation, unless the judgment

is recognized and adjudged enforceable by a Liberian court. Amendments to the Articles of Incorporation of a Liberian corporation and the bylaws are only permissible in accordance with the procedures established by the Liberian Business Corporation Act, and the corporation's constitutional documents (i.e. the Articles of Incorporation and Bylaws) and are effected by the Registrar or Deputy Registrar. The prescribed procedure outlined in these constitutional documents and the Business Corporation Act, cannot be circumvented by the force of a foreign judgment that is not recognized by a competent Liberian court.

*Third Question*: **Is the judicial recognition in Liberia of the Southern District of New York Bankruptcy Court Judgment a required step in order to change the "Address of Record" for Eletson Holdings with LISCR? [*Yes*] Would an attempt to change the "Address of Record" for Eletson Holdings with LISCR without a judicial recognition be regarded as a circumvention of Liberian applicable law? [*Yes*]**

14.     The judicial recognition in Liberia of the Southern District of New York Bankruptcy Court judgment is required to change the "Address of Record" of Eletson Holdings. The mere fact that the Southern District of New York Bankruptcy Court judgment granted the Petitioning Creditors the right to participate in a rights offering and in addition to take certain other actions to become shareholders (or that the effective date of the Plan has purportedly occurred by virtue of the "Effective Date Notice"), is not considered conclusive as to any of the act(s) or determination contained therein under Liberian law, but the judgment may be admitted as evidence and enforced by a Liberian court based on comity, if it meets certain standards as outlined in the response to the First Question herein above. Hence, an attempt to change the Address of Record in reliance on a foreign judgment will be considered an outrage against the settled principles of the applicable laws of Liberia. Even if the AOR were changed through the appropriate procedures by the existing shareholders, the new AOR could not lawfully take instructions from Pach Shemen, the purported shareholders, by virtue of the NY court's judgment, which has not been recognized by the Liberian Court. Under Liberian law, the Petitioning Creditors/Pach Shemen is not recognized as shareholders, unless the Liberian Court affirms their status as such, and would have no authority to instruct the AOR to do anything.

**Fourth Question: If a foreign court were to order the change of the Address of Record (AOR) without a prior judicial recognition, of the foreign judgment by a Liberian court, would such a court order be in violation of Liberian law? [*Yes*] Would the Liberian authorities be obliged to comply with such foreign court order, without a prior judicial recognition by a Liberian court? [*No*] If a foreign court were to order the amendment or change of Articles of Incorporation and/or change of the shareholders of a Liberian non-resident Corporation without a prior judicial recognition by a Liberian court, would that be effective? [*No*]**

15. If the Southern District of New York Bankruptcy Court attempts to compel the current AOR to effect a change of the AOR, the current AOR must communicate with LISCR and the Registrar to put them on notice that an unauthorized change of AOR is being attempted noting that the relevant judgment of the foreign court that has not been recognized by a Liberian court. The existence of a LISCR office in Virginia, USA or anywhere else in the world does not change this analysis. LISCR is not a regular registered agent. It is a statutory registered agent, and in the exercise of its duties, is subject to the laws of Liberia. An attempt to change the Address of Record and/or amend the Articles of Incorporation to effect a change in the ownership of a Liberian company upon the orders of a foreign court, and pursuant to a foreign judgment which has not been recognized by a Liberian court will be deemed an attempt to circumvent the applicable laws of Liberia. The filing of amended Articles of Incorporation of a Liberian corporation are acts of (and are signed by) the Registrar or Deputy Registrar, who are officials of the Liberian Government. The Registrar or Deputy Registrar can only be directed to take a certain action by the Liberian courts. Therefore, obtaining appropriate recognition from the Liberian competent courts of the Southern District of New York Bankruptcy Court judgment for Eletson Holdings is necessary under applicable Liberian law.

16. An amendment to the Articles of Incorporation of Eletson Holdings effecting a change in ownership of the shares of Eletson Holdings will require a prior judicial recognition. For purposes of title, action and jurisdiction of courts, the situs of ownership of shares of a Liberian corporation is Liberia[2]. The determination of a change in the ownership of a Liberian corporation by way of a judgment from a foreign court which potentially gives rise to an amendment of the Articles of Incorporation of the corporation to reflect a change in ownership, can only be legally done if the judgment is recognized by a Liberian court of competent jurisdiction.

17. In view of the above analysis, I disagree with the Pierre Declaration that there are two avenues in implementing the Plan and the Southern District of New York Bankruptcy Court Confirmation. Filing a petition to recognize the Confirmation Order before a competent Liberian Court is a necessary requirement for the enforcement of the judgment. Indeed, I have been made aware that the law firm of Pierre, Tweh, & Associates Inc. filed on behalf of an entity named "Pach Shemen, LLC" on 26 November 2024, a "*Petition for the Enforcement of a Foreign Judgement*" versus "*Eletson Holdings Inc.*" before the Civil Law Court, Sixth Judicial Circuit (Montserrado

---

[2] Section 5.14, Title 5, Liberian Code of Laws Revised, Business Corporation Act

County) of Liberia. This Petition was withdrawn on 3rd of December 2024, and subsequently refiled on the 5th of December 2024. I reserve the right to comment on this Petition once I have had the chance to review it thoroughly. But the mere fact that such petition was filed by Pierre, Tweh, & Associates Inc. indicates that they concede that this is the course of action that should be followed under Liberian law.

**Fifth Question: Without having first obtained a final judgment by a competent Liberian Court recognizing the Plan and the Confirmation Order, are the efforts of the Petitioning Creditors to hold themselves out as "new shareholders" owning the "Reorganized Equity" of Eletson Holdings considered a violation of applicable Liberian law?**

18.    Yes. The Petitioning Creditors cannot and should not hold themselves out as "new shareholders" of Eletson Holdings. The conclusiveness and effect to be given to the Southern District of New York Bankruptcy Court Confirmation Order confirming the provisions of the Plan generally, and more specifically as to "Reorganized Equity" must be determined by a competent Liberian court. Unless a competent Liberian court has made a final determination on this matter, the Petitioning Creditors cannot lawfully act in a capacity as being shareholders of Eletson Holdings. As noted above, pursuant to Section 5.14, Title 5, Liberian Code of Laws Revised, Business Corporation Act for purposes of title, action, attachment, garnishment and jurisdiction of courts, the situs of the ownership of shares of a Liberian corporation is Liberia[3].

**Sixth Question: Can the Petitioning Creditors adopt currently new Bylaws and enter into a Shareholders Agreement for Eletson Holdings (such as the one contained in the Plan Supplement) without having become lawfully under Liberian law the actual shareholders of Eletson Holdings? [No.] Under the current state of affairs can such Bylaws or Shareholders Agreement have any legal validity under applicable Liberian Law? [No.]**

19.    Unless a formal petition is filed with a competent court in Liberia and a final decision is issued for the recognition and enforcement of the foreign order or judgment confirming the Plan and the Plan Supplement which designated the Petitioning Creditors as shareholders, their designation or confirmation as shareholders by the Southern District of New York Bankruptcy Court is not conclusive. Therefore, any acts performed by the Petitioning Creditors in their capacity as purported shareholders, including the purported adoption of new Bylaws or the execution of a shareholder's agreement in reliance upon the foreign order and/or judgment entered by the Southern District of New York Bankruptcy Court will not be deemed valid under applicable Liberian law

---

[3] Section 5.14, Title 5, Liberian Code of Laws Revised, Business Corporation Act

**_Seventh Question_**: Irrespective of the answer to the previous question, if the Petitioning Creditors were to "somehow" acquire the status of "shareholder" merely by virtue of the SDNY Bankruptcy Court Confirmation Order and Plan, would the Bylaws or a Shareholders Agreement be sufficient to amend the Articles of Incorporation of Eletson Holdings?

20.     No. Under the Business Corporation Act, amendment to the articles of incorporation may be authorized by the vote of holders of the majority of all outstanding shares entitled to vote at a shareholders meeting or by written consent of all of shareholders entitled to vote thereon. The articles of incorporation may require that such amendment of the articles of incorporation must also be approved by the board prior to authorization, by vote or written consent of the shareholders [4] Certain amendments may be approved by the board without approval of the shareholders. In any case, in a Liberian Corporation the bylaws and any shareholders agreement are hierarchically inferior legal instruments as compared to the Articles of Incorporation which supersede any other document, except for the Liberian Business Corporation Act[5]. In other words, the fact that the Petitioning Creditors purported to adopt new Bylaws and a shareholders' agreement cannot in any way supersede the existing Amended and Restated Articles of Incorporation of Eletson Holdings.

21.     Further, it is noteworthy that although LISCR, as a practical matter, may provide "pre-clearance" as to the form of certain documents to be filed with the Registrar or Deputy Registrar (including any contemplated amendment to the Articles of Incorporation of  a Liberian Corporation) it must be clarified that LISCR does not provide legal advice nor does its "pre-clearance" constitute a legal presumption that the contents of the documents to be filed is lawful under Liberian law . LISCR also does not file articles of incorporation or amended articles of incorporation. Under Liberian law, that is the duty of the registrar or deputy registrar.  Contrary to the assertion made in paragraph six (6) of the Pierre Declaration that LISCR is the deputy registrar, LISCR is not the deputy registrar by law, neither has it been designated by agreement to act in that role[6]. Because LISCR serves as the statutory registered agent of non-resident Liberian corporations and maintains the records of the AOR and other relevant information pertaining to non-resident domestic corporation, it does the back-office pre-clearances and ensures that only the authorized AOR carries out the necessary filings before the Deputy Registrar. Currently, Cllr. Magaret Ansumana is the Government of Liberia's designated Deputy Registrar, and she files Articles of Incorporation and Amendments to Articles of Incorporation for non-resident domestic.

---

[4] Section 9.3(1)(2), Title 5, Liberian Code of Law Revised, Business Corporation Act
[5] Section 4.9(2), Title 5, Liberian Code of Law Revised, Business Corporations Law
[6] Section 1.2, Title 5, Liberian Code of Law Revised, Business Corporation Act

corporations. Only the Liberian courts are competent to adjudicate the validity of the provisions of the Articles of Incorporation or of other organizational (corporate governance) documents of a Liberian Corporation. LISCR is the statutory registered agent only, and it has no such authority.

22.     In any case, as already explained, if the Petitioning Creditors hold themselves out as if they have acquired the status of "shareholder" only by virtue of Southern District of New York Bankruptcy Court judgment and/or order without a recognition of the judgment by a Liberian court, the judgment and any acts or actions taken by the purported shareholders pursuant to such judgment will not be enforced by the competent authorities of the Liberian Government including LISCR which is the statutory registered agent of the Government of Liberia.

23.     In view of all the above I disagree with the conclusions of the Pierre Declaration, primarily in respect of the assertion that it is a matter of Eletson Holding's former counsel and former management providing its cooperation for the Conformation Order and the Plan to be given effect under Liberian law. For the Petitioning Creditors to be able to acquire the status of shareholders of Eletson Holdings, and implement the rest of the provisions of the Plan., it is a requirement that the Petitioning Creditors file a petition for the enforcement of the judgment in a competent Liberian court, and obtain a final judgment from the court, that actually recognize and enforce the Plan and the Confirmation Order. Neither Eletson nor its former counsel can lawfully instruct LISCR, or the Registrar or Deputy Registrar- i.e. the Government of Liberia to enforce a foreign judgment that has not been recognized by a Liberian court, or to act in a manner that is contrary to law.

I certify under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct.

Executed on December 9, 2024, in the City of Monrovia, Republic of Liberia

Betty Lamin-Blamo

Counselor-at Law & Senior Consulting Counsel

# EXHIBIT B



"AN ACT TO FURTHER AMEND PART I (THE BUSINESS CORPORATION ACT) AND PART III (THE PARTNERSHIP AND LIMITED PARTNERSHIP ACTS) OF THE ASSOCIATION LAW, TITLE 5, LIBERIAN CODE OF LAWS REVISED"

APPROVED: APRIL 3, 2020

PUBLISHED BY AUTHORITY
MINISTRY OF FOREIGN AFFAIRS
MONROVIA, LIBERIA

PRINTED: APRIL 6, 2020

5.     *Cancelled shares; eliminated shares*. Shares cancelled under Section 5.12 shall be restored to the status of authorized but unissued shares, except that if the articles of incorporation prohibit the reissue of any shares required or permitted to be cancelled under Section 5.12, the board shall approve and deliver to the Registrar or the Deputy Registrar articles of amendment under Section 9.5 eliminating such shares from the number of authorized shares. Shares affected by this provision do not include bearer shares that are disabled pursuant to Section 5.1.7(b).

*Prior legislation:* 1976 Liberian code of Laws Revised, Chapter 5, §5.12, amended effective June 19, 2002; amended effective April 23, 2018

### §5.13. Reduction of stated capital by action of the board.

1.     *When the board may reduce capital*. Except as otherwise provided in the articles of incorporation, the board may at any time reduce the stated capital of a corporation by eliminating from stated capital amounts previously transferred by the board from surplus to stated capital and not allocated to any designated class or series of shares, or by eliminating any amount of stated capital represented by issued shares having a par value to the extent that the stated capital exceeds the aggregate par value of such shares, or by reducing the amount of stated capital represented by issued shares without par value. If, however, the consideration for the issue of shares without par value was fixed by the shareholders under Section 5.4.3, the board shall not reduce the stated capital represented by such shares except to the extent, if any, that the board was authorized by the shareholders to allocate any portion of such consideration to surplus.

2.     *Limitation on amount of reduction*. No reduction of stated capital shall be made under Section 5.13 unless after such reduction the stated capital exceeds the aggregate preferential amounts payable upon involuntary liquidation upon all issued shares having preferential rights in the assets plus the par value of all other issued shares with par value.

3.     *Notice to shareholders*. When a reduction of stated capital has been effected under Section 5.13, the amount of such reduction shall be disclosed in the next financial statement covering the period in which such reduction is made that is furnished by the corporation to all its shareholders, or, if practicable, in the first notice of dividend or share distribution that is furnished to the holders of each class or series of its shares between the date of such reduction

and the next financial statement, and in any event to all its shareholders within six months of the date of such reduction.

*Prior legislation:* 1956 Code 4:19; Lib. Corp. L., 1948, §19.

### §5.14. Situs of ownership of shares.

For all purposes of title, action, attachment, garnishment and jurisdiction of all courts, but not for the purpose of taxation, the situs of the ownership of the capital shares of all corporations existing under this Title, whether organized under this Chapter or otherwise, shall be regarded as in Liberia.

Effective: June 19, 2002

### §5.15. Custodial Requirements for Bearer Share Certificates.

1.    *Purpose of the Section.* This Section 5.15 sets forth the requirements of a Custodial Agreement that will satisfy Section 5.1.6(1)(b)(ii).

2.    *Custodial Agreement.* Any owner of a share issued in bearer form (for purposes of this Section 5.15, an "***Owner***"), if it elects to deposit the certificate representing such share with a Custodian in accordance with Section 5.1.6(b)(ii), shall enter into a Custodial Agreement with a Custodian and deliver to such Custodian the original certificate representing such bearer share. Such Custodial Agreement shall, at a minimum, specify the following:

   (a)    the full name and address of the Owner and of the Beneficial Owner;

   (b)    the full name and address of at least two legal representatives of the Owner who shall be natural persons;

   (c)    an instruction by the Owner that the Custodian shall hold such certificate in accordance with Section 5.15; and

   (d)    any other information, requirements or undertakings as may be required or requested by the Custodian.

3.     *Information to corporation*. Each Custodian that enters into such a Custodial Agreement shall inform in writing the corporation that issued any relevant shares in bearer form: (i) the name and contact details of the Custodian; (ii) the identification number of each certificate delivered to the Custodian and the number of shares evidenced by each such certificate; and (iii) the date on which such certificate(s) were delivered to the Custodian.

4.     *Retention period*. Subject to Section 5.15.5, a Custodian with whom a certificate evidencing a bearer share has been deposited in accordance with this Section 5.15 shall retain the information and documents provided to it under Section 5.15.2, any instruction filed under Section 5.15.10, any notice sent pursuant to Section 5.15.9 and a record of the location of the certificate evidencing the bearer share, in each case for a period of 5 years after the end of the calendar year in which the Custodial Agreement expires or is terminated. The Custodian may hold inside or outside Liberia any or all certificates evidencing bearer shares deposited in accordance with this Section 5.15, and shall ensure that each such certificate remains at all times within its custody and control. The Custodian shall issue a receipt to each Owner confirming the bearer share certificates in custody along with a copy of the Custodial Agreement. The Custodian shall inform the Registrar within 30 days when it receives share certificates to maintain in its custody and confirm that information required to be provided by the owner of a share under Section 5.15.2 has been submitted, and if requested by the Registrar in accordance with Section 5.15.8, the relevant Owner thereof.

5.     *Cessation of custodial relationship*. A Custodian may cease acting as Custodian under this Section 5.15 in respect of a certificate evidencing a bearer share, by giving the Owner not less than thirty (30) days' notice of the Custodian's election to cease acting as Custodian in respect of the relevant certificate. A Custodian who ceases to act as a Custodian under this Section 5.15 in respect of a certificate evidencing a bearer share shall maintain copies of all documents relating to such certificate in accordance with Section 5.15.4 for a period of 5 years after the date on which it delivers the relevant certificate to another person in accordance with Section 5.15.6. The Custodian does not need to specify any reason for its election to cease acting as custodian under this Section 5.15.

qualified, by a majority of the directors. A certificate setting forth the amendment and certifying that the corporation has not received any payment for any of its shares and that the amendment has been duly adopted in accordance with this Section 9.3.3 shall be executed, acknowledged and filed with the Registrar or the Deputy Registrar in accordance the Section 1.4 and for this purpose an incorporator shall be deemed to be an officer of the corporation. Upon such filing by the Registrar or the Deputy Registrar, the corporation's articles of incorporation shall be deemed to be amended accordingly as of the date on which the articles of incorporation became effective, except as to those persons who are substantially and adversely affected by the amendment and as to those persons the amendment shall be effective from the filing date.

4.    *Amendment by subscribers*. The articles of incorporation may be amended by consent in writing of the holders of all outstanding subscription rights to shares of the corporation, provided that such holders verify that no shares have been issued.

5.    *Other provisions for amendment unaffected*. Section 9.3 shall not alter the vote required under any other section for the adoption of an amendment referred to therein, nor alter the authority of the board to authorize amendments under any other section. No shareholder approval is necessary to file any statement in accordance with Section 5.1.5.

6.    *Requirement in articles of incorporation in excess of statutory requirement*. Whenever the articles of incorporation shall require action by the board of directors, by the holders of any class or series of shares or by the holders of any other securities having voting power, the vote of a greater number or proportion than is required by any section of this Act, the provision of the articles of incorporation requiring such greater vote shall not be altered, amended or repealed except by such greater vote.

7.    *Abandonment of proposed amendment*. The resolution authorizing a proposed amendment to the articles of incorporation may provide that at any time prior to the effectiveness of the filing of the amendment with the Registrar or the Deputy Registrar, notwithstanding authorization of the proposed amendment by the shareholders of the corporation, the board of directors may abandon such proposed amendment without further action by the shareholders.

*Prior legislation:* 1956 Code 4:4 (3rd par.); Lib. Corp. L., 1948, §4; 1976 Liberian Code of Laws Revised, Chapter 9, §9.3, amended effective June 19, 2002

### §9.4. Class voting on amendments.

Notwithstanding any provisions in the articles of incorporation, the holders of the outstanding shares of a class shall be entitled to vote as a class upon a proposed amendment, and in addition to the authorization of an amendment by vote of the holders of a majority of all outstanding shares entitled to vote thereon, the amendment shall be authorized by vote of the holders of a majority of all outstanding shares of the class if the amendment would increase or decrease the aggregate number of authorized shares of such class, increase or decrease the par value of the shares of such class, or alter or change the powers, preferences or special rights of the shares of such class so as to affect them adversely. If any proposed amendment would alter or change the powers, preferences, or special rights of one or more series of any class so as to affect them adversely, but shall not so affect the entire class, then only the shares of the series so affected by the amendment shall be considered a separate class for the purposes of Section 9.4.

*Prior legislation:* 1956 Code 4:4 (2nd par.) (c); Lib. Corp. L., 1948, §4 (3rd par.) (c).

### §9.5. Articles of amendment.

The articles of amendment shall be executed for the corporation by any officer or other authorized signatory of the corporation, and where that officer or other authorized signatory is not a natural person, the instruments shall be signed by the person or persons who are the authorized signatories of that legal entity, and acknowledged and filed in accordance with provisions of Section 1.4 and shall set forth:

  (a)  The name of the corporation;

  (b)  The date its articles of incorporation and any amendments thereof were filed;

  (c)  Each section affected thereby;

  (d)  If any such amendment provides for a change in or elimination of issued shares and, if the manner in which the same shall be effected is not set forth in the articles of amendment, then a statement of the manner in which the same shall be effected shall be included in or annexed to the articles of amendment or furnished without cost to any shareholder who requests a copy of such statement;

133

(e)     If any amendment reduces stated capital, then a statement of the manner in which the same is effected and the amounts from which and to which stated capital is reduced;

(f)     The manner in which the amendment of the articles of incorporation was authorized.

The articles of amendment shall be filed with the Registrar or the Deputy Registrar in accordance with the provisions of Section 1.4.

*Prior legislation:* 1956 Code 4:4 (par. 2); Lib. Corp. L., 1948, §4 (par. 2); 1976 Liberian Code of Laws Revised, Chapter 9, §9.5, amended effective June 19, 2002

### §9.6. Effectiveness of amendment.

1.     *Time when effective.* Upon filing of the articles of amendment with the Registrar or the Deputy Registrar, the amendment shall become effective as of the filing date stated thereon and the articles of incorporation shall be deemed to be amended accordingly.

2.     *Limitations on effect of amendment.* No amendment shall affect any existing cause of action in favor of or against the corporation, or any pending suit to which it shall be a party, or the existing rights of persons other than shareholders; and in the event the corporation name shall be changed, no suit brought by or against the corporation under its former name shall abate for that reason.

*Prior legislation:* 1976 Liberian Code of Laws Revised, Chapter 9, §9.6, amended effective June 19, 2002

### §9.7. Right of dissenting shareholders to payment.

A holder of any adversely affected shares who does not vote in favor of or consent in writing to an amendment in the articles of incorporation shall, subject to and by complying with the provisions of Section 10.8, have the right to dissent and to receive payment for such shares, if the articles of amendment (a) alter or abolish any preferential right of any outstanding shares having preferences; or (b) create, alter, or abolish any provision or right in respect of the redemption of any outstanding shares; or (c) alter or abolish any preemptive right of such holder to acquire

shares or other securities; or (d) exclude or limit the right of such holder to vote on any matter, except as such right may be limited by the voting rights given to new shares then being authorized of any existing or new class.

**§9.8. Restated articles of incorporation.**

1.      *Procedure for integrating document*. At any time after its articles of incorporation have been amended, a corporation may by action of its board, without necessity of vote of the shareholders, cause to be prepared a document entitled "Restated Articles," which will integrate into one document its articles of incorporation (or articles of consolidation) and all amendments thereto, including those affected by articles of merger.

2.      *Required statement of no change*. The restated articles shall also set forth that this document purports merely to restate but not to change the provisions of the articles of incorporation as amended and that there is no discrepancy between the said provisions and the provisions of the restated articles.

3.      *Execution and filing*. The restated articles shall be executed and filed as provided in Section 9.5.

4.      *Effect of restated articles*. A copy of the restated articles filed with the Registrar or the Deputy Registrar as provided in Section 1.4 shall be presumed, until otherwise shown, to be the full and true articles of incorporation of the corporation as in effect on the date filed.

5.      *Other method of integrating*. A corporation may also integrate its articles of incorporation and amendments thereto by the procedure provided in this Chapter for amending the articles of incorporation.

*Prior legislation:* 1976 Liberian Code of Laws Revised, Chapter 9, §9.8, amended effective June 19, 2002

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

ELETSON HOLDINGS INC., et al.,

                Debtors.[1]

Chapter 11

Case No.: 24-cv-08672-LJL
[rel. 23-cv-07331-LJL;
24-cv-05096-LJL]

---

### DECLARATION OF JOHN MARKIANOS-DANIOLOS REGARDING THE OPPOSITION TO MOTION TO STRIKE FILINGS, TO DISMISS THE APPEAL, AND/OR TO DISPLACE ATTORNEYS

Ioannis (John) Markianos-Daniolos, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am a partner of the Daniolos Law Firm, which maintains its office at 13 Defteras Merarchias Street, Piraeus 185 35, Greece. I am an attorney duly licensed under the laws of the Republic of Greece. I received a Bachelor of Law degree from the University of Athens in 1988 and a Master of Law degree from the University College of London in 1989. I have been practicing law in Greece for over 30 years. I am a member of the Athens Bar Association, a member and president of the Greek Maritime Law Association, and a founding member of the Hellenistic Society of Maritime Lawyers. I have been ranked in Chambers Europe Guide for many years, and I am currently ranked in Band 2 for Shipping. I have also served two consecutive terms as member of the Executive Council of the CMI (Committee Maritime International) from 2018 to 2024.

2.      I have never represented any of the Debtors in these cases, including Eletson

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

1

Holdings Inc. ("Eletson Holdings") until earlier today when I did so in a Greek Court as described below. I have provided legal advice on matters of Greek law to Eletson Corporation, a subsidiary of Eletson Holdings.

3.        I previously submitted a declaration regarding the "Motion to Strike" the Stipulation and Agreement to Dismiss the Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure on January 31, 2025 ("January 31 Declaration").

4.        I am now submitting this declaration regarding the opposition to the Motion to Strike Filings, to Dismiss the Appeal, and/or to Displace Attorneys, solely to provide the Court with the position of Greek Law as to certain questions presented to me and for no other purpose.

5.        The questions I was asked to address in this declaration are the same as those I addressed in the January 31 Declaration. Thus, this declaration is substantially the same as the January 31 Declaration. However, there have been two factual developments in Greece on Monday February 3, 2025 relating to the ongoing Greek legal proceeding and now a new Greek legal proceeding, both of which I address below. These new developments do not alter my analysis or conclusions which remain the same as in the January 31 Declaration

6.        I make this declaration based upon my knowledge of and experience in Greek law and based on my review of various documents in and related to this matter and the underlying bankruptcy proceedings including without limitation: (a) the Petitioning Creditors' Amended Joint Chapter 11 Plan of Reorganization of Eletson Holdings, Inc. and its Affiliated Debtors and relevant supplements and amendments (the "Plan"); (b) the October 25, 2024, Memorandum and Opinion and Order confirming the Plan and the November 4, 2024, order confirming the Plan (the "Confirmation Order"); (c) Notice of the (I) the Occurrence of the Effective Date and (II) Final Deadlines for Filing Certain Claims; (d) the transcript of the January 24, 2025 hearing in

2

the United States Bankruptcy Court for the Southern District of New York; and (e) a November

12, 2024, order from the Piraeus Court of the First Instance provisionally appointing eight Greek

residents as provisional members of the Board of Directors ("Provisional Directors") of Eletson

Holdings (the "Piraeus Court Order").

7.      The opinions expressed herein are made based upon my current knowledge of the

facts. I reserve the right to amend, alter, or modify these opinions if I discover new or previously

unknown facts or if there are new legal developments.

8.      Eletson Holdings Inc. is a company organized and existing under the laws of

Liberia, with a principal place of business in Greece. Greece is also the center of main interests

of Eletson Holdings, i.e. the jurisdiction where its management has been and is effected and

where Eletson Corporation of Liberia, a subsidiary of Eletson Holdings, has established an office

pursuant to article 25 of law 25/1975 where it employs many employees and manages a

significant number of Greek and Liberian flagged ships. Since its principal place of business and

center of main interests are in Greece, Eletson Holdings is governed by Greek law, in addition to

Liberian law. Under article 10 of the Greek Civil Code *The capacity of a legal person is

regulated by the law of its seat"*. This has authoritatively been interpreted to mean the law of the

place of the actual seat, where the management is being effected. Exceptionally, under law

791/1978, ship-owning companies of ships managed by companies having established an office

in Greece pursuant to art. 25 of law 27/1975 (like Eletson Corporation) and their holding

companies (such as Eletson Holdings) are regulated for matters of incorporation and legal

capacity by the law of the place of their incorporation (in this case Liberia), but all other matters

are governed by the law of their actual seat (i.e. the law of the center of their main interests, in

this case Greece), including bankruptcy law matters and jurisdiction for bankruptcy. Thus,

3

Greece is an important jurisdiction for bankruptcy or insolvency purposes, both in respect of governing law and court jurisdiction, in accordance with Greek law and the Insolvency Regulation of the European Union, as accepted by many precedents of the maritime department of the courts of Piraeus, but also by leading precedents of the Supreme Court of Greece.

9.    I understand that there has been a question raised in this matter concerning whether Eletson Holdings with the Directors appointed by the Piraeus Court Order and the officers that existed in November 2024 still exist under Greek law with those directors and those officers. I also understand that for purposes of convenience this entity has been referred to in this Court as "Provisional Holdings" or "Provisional Eletson Holdings".

10.    I have been asked to answer the following questions solely from the perspective of Greek law: (a) Are the Confirmation Order and Plan automatically recognized in Greece?; (b) Are the Confirmation Order and Plan currently recognized and effective in Greece?; (c) Is the Piraeus Court Order still valid and in effect in Greece?; (d)  Are the provisional board members appointed by the Piraeus Court Order recognized in Greece as the current board members of Eletson Holdings?; (e) Does "Provisional Eletson Holdings" currently exist in Greece?; and (f) Are the provisional directors and officers  of "Provisional Eletson Holdings" (or anyone else) permitted to act in Greece to effectuate the Confirmation Order and Plan prior to their recognition by a Greek Court?

11.    The short answers to these questions are (a) No, the Confirmation Order and Plan are not automatically recognized in Greece; (b) No, the Confirmation Order and Plan are not currently recognized and effective in Greece (c) Yes, the Piraeus Court Order is still valid and in effect in Greece; (d) Yes, the provisional board members appointed by the Piraeus Court Order are recognized in Greece as the current board members of Eletson Holdings; (e) Yes,

4

"Provisional Eletson Holdings" currently exists in Greece; and (f) No, the provisional directors and officers of "Provisional Eletson Holdings" (or anyone else) are not permitted to act in Greece to effectuate the Confirmation Order and Plan prior to their recognition by a Greek Court. I explain these answer more fully below.

12.    Under Greek law, in insolvency cases outside Greece and the EU, in order for the Confirmation Order and Plan to have any effect in Greece, a Greek Court must recognize and confirm the Confirmation Order and Plan (articles 4, 6 and 15 of law 3858/2010, Uni Membered First Instance Court of Rethymnon 166/2012, Multi Membered First Instance Court of Athens 437/2013) . The Confirmation Order and Plan are not automatically recognized under Greek law. The judicial recognition of any United States bankruptcy court decision in Greece is also of vital importance to the operation of Greek rule of law since it involves entities whose very existence or operation stems from Greek law and its protections.

13.    In order to effectuate such recognition and confirmation, pursuant to articles 15 and 17 of law 3858/2010 giving effect to the 1997 UNCITRAL Model Law on Cross Border Insolvency, an application must be submitted before a Greek court by the liquidator appointed by the court that issued the bankruptcy order (*representative* as per article 15 of the UNCITRAL model law) of the reformed company.

14.    It has come to my attention since I submitted the January 31 Declaration that on February 3, 2025, the entity that is referred to in this Court as "Reorganized Holdings" submitted an application to the Court of First Instance of Athens ("Athens Court") asking the Athens Court to recognize the Confirmation Order, and, until a judgment is issued to such application, to immediately issue a provisional order appointing Adam Spears as the manager of "Reorganized Holdings".

15.     This application was not submitted by a liquidator/"representative" of "Reorganized Holdings" but was submitted by "Reorganized Holdings" itself. "Reorganized Holdings" attempted to justify doing so by arguing that there is no "liquidator" (representative) appointed by the United States Bankruptcy Court for the Southern District of New York in proceedings under chapter 11, and that the debtor itself may act in the capacity of "liquidator" (representative) as *debtor in possession*". "Reorganized Holdings" also attempted to justify filing this application in the Athens Court, rather than in Piraeus Court, by arguing that Eletson Holdings Inc has its center of main interests in New York (at One Pennsylvania Plaza Suite 3335, New York NY 10119) and not Piraeus Greece, both now and prior to its reorganization.

16.     "Provisional Eletson Holdings", together with the two minority shareholders Elafonissos Shipping Corporation and Keros Shipping Corporation, filed today in Athens a joinder of proceedings opposing this recognition application, including the request to provisionally appoint Adam Spears. The application for recognition of the Confirmation Order (and the joinder/opposition) are set to be heard by the Athens Court on March 19, 2025.

17.     The Athens Court today considered the request for a provisional order appointing Adam Spears as manager of the company. "Provisional Eletson Holdings" and the two minority shareholders argued, among other things, that (a) the allegation that Eletson Holdings had and has its center of main interest in New York is wrong, and (b) any provisional order appointing Adam Spears would be unfounded and would also conflict with the Piraeus Court Order.

18.     The Athens Court is expected to issue its decision on the request for a provisional order appointing Adam Spears as manager soon (which likely will be tomorrow). As noted above, while I (and the Daniolos Law Firm) have not previously represented Eletson Holdings

6

(including Provisional Eletson Holdings), I did appear on behalf of "Provisional Eletson Holdings" in the Athens Court today.

19.     In any event, since the Athens Court has not yet heard and decided the application for recognition of the Confirmation Order, the Confirmation Order and Plan have no effect in Greece and are not valid in Greece.

20.     On November 12, 2024, in response to the resignation of four board members of Eletson Holdings, the minority shareholders of Eletson Holdings submitted an application before the Piraeus Court of First Instance to appoint provisional management due to the remaining four board members not being able to constitute a quorum. The Piraeus Court initially set this application to be heard on February 4, 2025 and in the meantime issued a provisional order appointing eight provisional board members for Eletson Holdings with a mandate to take care of the urgent business of the Company including the authority to appoint lawyers to protect its interests, particularly before the Courts of New York. I understand that this order (which is the final part of a longer document) with a translation is being submitted to the Court with the declaration of Louis Solomon. This Piraeus Court Order remains in effect at least until the hearing. Under Greek law, the Piraeus Court Order remains in effect and the provisional board members appointed by that order remain the board members of Eletson Holdings. In addition, the officers of Eletson Holdings that were appointed by the provisional board members following the issuance of the Piraeus Court Order remain the officers of Eletson Holdings under Greek law today. Thus, the entity that has been referred to in this Court as "Provisional Eletson Holdings" currently exists under Greek law and has the authority to hire lawyers to protect its interests.

21.     It has come to my attention since I submitted the January 31 Declaration that on Monday February 3, 2025, the entity that in this Court is being called "Reorganized Holdings"

7

intervened in this proceeding in front of the Piraeus Court and requested that the hearing be

moved to April 1, 2025. The Piraeus Court accepted the adjournment request and moved the

hearing to April 1, 2005 and it also extended until then the provisional order dated November 12,

2024, appointing the provisional board members. Therefore, this provisional order continues to

exist at least until April 1, 2024.

22.    In light of the lack of recognition of the Confirmation Order and Plan by a Greek

Court, there is currently no legal basis for anyone to act in accordance with the Confirmation

Order and Plan in Greece. Furthermore, delivery of Eletson Holdings and all its subsidiaries to

the Petitioning Creditors in accordance with the Confirmation Order and Plan without judicial

recognition in Greece of the Confirmation Plan and Order would violate Greek law and would

expose to liabilities those involved, including towards employees of subsidiary companies, or

towards the ship-owning companies of vessels under its management, and even to liabilities of

Eletson Corporation which was the approved managing company under the existing International

Safety Management certificates issued on behalf of the Greek State under the provisions of the

International Convention for the Safety of Life at Sea of 1974 (SOLAS). Such liabilities may be

either or both civil and criminal in nature.

23.    While I am not an expert in Greek criminal law, based on the statutes below, I

believe if the Provisional Directors (or anyone else) complied with the Confirmation Order and

Plan prior to their being judicially recognized in Greece, they could be subject to criminal

liability if there is a criminal complaint from the shareholders of Eletson Holdings, employees of

its subsidiaries and/or counterparties of agreements.

24.    Article 331 of the Penal Code provides that:

8

Whoever arbitrarily exercises a demand relating to a right which he either actually has or by conviction appropriates shall be punished with a fine or community service. Criminal prosecution shall require a criminal complaint.

25.    Article 390(1) and (2) of the Penal code provides that:

1.  Whoever, in violation of the rules of diligent management, knowingly causes certain damage to the property of another, of which by law or contract he has custody or management (total, or partial, or only for a specific act), shall be punished with imprisonment and, if the damage caused is particularly great, with imprisonment of at least three (3) months and a fine. If the damage caused exceeds in total the amount of €120,000, imprisonment up to ten (10) years and a fine are imposed.

2.  If the infidelity is directed against the legal person of the Greek State, legal persons governed by public law or local authorities and the damage caused exceeds in total the amount of € 120,000, imprisonment of at least ten (10) years and a fine of up to one thousand (1,000) daily units shall be imposed. This act is time-barred after twenty (20) years.

26.    The potential criminal liability detailed above would also give rise to civil claims for compensation under the tort provisions of the Greek Civil Code.

27.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: Piraeus, Greece
          February 4, 2025


Ioannis Markianos-Daniolos

9

# Exhibit

## C

| From: | Conn, Alyssa F. |
|---|---|
| To: | Bryan Kotliar; Solomon, Louis M.; Eletson Bankruptcy Team (S); Curtin, William E.; Sabino, Michael; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; DANIOLOS John Markianos; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com |
| Cc: | Kyle Ortiz; Brian Shaughnessy; Jared Borriello; John McClain |
| Bcc: | Eletson Corpora_Levona Holdings__738583_00036 Other Correspondence; Eletson Corpora_Levona Holdings_738583_00036 Correspondence Re__Limited Representation of Holdings |
| Subject: | RE: Eletson - Court Directed Obligations |
| Date: | Tuesday, January 28, 2025 5:41:28 PM |
| Attachments: | 2025-01-28 Solomon Ltr. to B. Kotliar re__Court Directed Obligations(815461397.3).pdf |
| | image001.png |

Bryan,

Please see the attached correspondence.

**Alyssa Conn**

Global Commercial Disputes

*She/Her/Hers*

aconn@reedsmith.com

D: +1 212.549.4250

M: +1 908.655.2662

**Reed Smith**

599 Lexington Avenue

New York, NY 10022-7650

T: +1 212 521 5400

F: +1 212 521 5450

**reedsmith.com**

**From:** Bryan Kotliar

**Sent:** Sunday, January 26, 2025 7:02 PM

**To:** Solomon, Louis M. ; Eletson Bankruptcy Team (S) ; Curtin, William E. ; Sabino, Michael ; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; DANIOLOS John Markianos ; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com

**Cc:** Kyle Ortiz ; Brian Shaughnessy ; Jared Borriello ; John McClain

**Subject:** Eletson - Court Directed Obligations

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

To: Reed Smith, Sidley, Daniolos, Rimon, Mr. Kertsikoff,* Ms. Karastamati,* and Mr. Hadjieleftheriadis:*
*(\*note: we understand you are not represented by counsel individually in this matter, if that is not the case, please identify your counsel and provide their contact information)*
As you're aware, this past Friday, the Court directed Holdings' former shareholders, officers, directors, counsel, and others to comply with the Plan and Confirmation Order to assist in effectuating the Plan, including by taking all steps "reasonably necessary as requested by the board of Reorganized Eletson Holdings Inc. or its agent to assist in amending the AOR and updating the corporate governance documents." *See* Jan. 24, 2025 Hr'g Tr. at 43:16-44:3 (copy attached). This is in addition to your and the other parties' obligations already set forth in the Plan and Confirmation and required by the Bankruptcy Code.

We are requesting that you take the following actions as soon as possible. Again, given this recent ruling, your obligations to cooperate in good faith with us under paragraph 5 of the Confirmation Order, and the

injunctive provisions of the Confirmation Order, we expect that you will work with us in good faith to accomplish these and other tasks to effectuate the Plan.

- (1) Update or amend Holdings' AOR to reflect that Adam Spears is Holdings' AOR, by no later than seven days from the entry of the order to be entered by the Court

- (2) Assist with the filing of further amended articles of incorporation with LISCR by the current AOR or Mr. Spears as the new AOR, by no later than seven days from the entry of the order to be entered by the Court.

- (3) Withdraw all pleadings filed in opposition to the recognition proceeding currently pending in Liberia, including, without limitation, the opposition to the petition, the motion to strike, the motion to intervene, and the motion to dismiss.

- (4) Update or amend all other AOR or similar filings with applicable authorities for Holdings' subsidiaries, including, without limitation, the four SMEs and Eletson Corp.

- (5) Obtain or provide certificates of incumbency for Holdings and each of its wholly owned subsidiaries, including, without limitation, the four SMEs and Eletson Corp, reflecting their new management.

- (6) Provide days and times that Holdings' representatives can obtain keys and passwords for Eletson Maritime's offices located in Stanford, CT and Eletson Corp.'s offices located in Greece.

- (7) Describe all property located at the Stanford, CT office and Greek offices and identify all property that has been removed from those locations since November 19, 2024 (or confirm in writing that no property has been removed since such date)

- (8) Contact all banks and for all accounts maintained by Holdings and its wholly owned subsidiaries, including the four SMEs and Eletson Corp., instruct the banks to remove access and authorizations for all existing personnel and replace and direct new authorizations and access for Adam Spears, Len Hoskinson, and Mark Lichtenstein

- We have been in contact with what we understand to be the significant majority of the existing banks.
- We will email the banks which we've had contact with, copy you into the email chain as well as Laskarina Karastamati, Vasilis Kertsikoff, and Vasilis Hadjieleftheriadis, and issue a joint instruction on yours and their behalf.
- To the extent that the banks respond with any questions, you are directed to inform them of the foregoing instructions and changes to the authorizations.
- You are also directed to cooperate with us and the banks in providing all paperwork requested by the banks, such as various corporate documents to the extent that your assistance is needed with doing so.

- (9) File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."

- (10) Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.

- (11) Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.

- (12) Instruct all counsel or former counsel acting or purporting to act on behalf of Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.

This list is not exhaustive and is not intended to be a complete list of all things needed from you to effectuate the Plan and we reserve all rights, including to amend or supplement this list at any time.

Given this recent ruling, we expect your prompt good faith cooperation. We also expect that you will share this message with anyone not included on this email chain that you know are needed to effectuate these and other implementation tasks.

**Please respond to this email by no later than January 28 at 5:00 p.m. (ET) confirming that you will work with us in good faith.**

Best regards,

Bryan

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com



# Exhibit

# D



**Driving progress**
through partnership

**Louis M. Solomon**
Direct Phone: +1 212 549 0400
Email: lsolomon@reedsmith.com

Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
+1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

January 28, 2025

**By Electronic Mail**

Bryan Kotliar, Esq.
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119
bkotliar@teamtogut.com

Re: *In re Eletson Holdings, Inc., et. al.*, Bankr. S.D.N.Y. 1:23-bk-10322 (JPM)

Dear Bryan:

Reed Smith LLP ("Reed Smith") is in receipt of your email sent Sunday, January 26, 2025 requesting that Reed Smith (and others not represented by Reed Smith) take certain actions. We write to inform you that, following the Court's ruling on Friday, January 24, 2025, Reed Smith's role in the above-captioned action (and related appeals) has been limited to the following (I'm excluding representations in the UK and BVI, if any, and subject to any clarification to be made by the Court about the presence in this action of Provisional Holdings):

1. Responding to all motions and applications in which Reed Smith itself has been named as a party and, in one case, the fee application of Dr. Furchtgott-Roth;

2. Any appeal from the order to be entered by Judge Mastando following his 1/24 decision;

3. The pending appeal to the Second Circuit from Judge Liman's dismissal of Provisional Eletson Holding's appeal from the Bankruptcy court (*see In Re: Eletson Holdings Inc*, Case No. 25-176), including the recently requested briefing by Judge Liman regarding a motion to strike the stipulation of voluntary dismissal of such appeal and Reorganized Holdings's Motion to Strike the notice of appeal (*see In Re: Eletson Holdings Inc.,* Case No. 1:24-cv-08672-LJL, Dkt No. 38; *Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL, Dkt. No. 253);

4. Briefing and argument regarding Goulston & Storrs PC's *Motion to Compel Reed Smith LLP To Produce The Eletson Client File*, *Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL, Dkt. No. 242). (Until ordered otherwise, Reed Smith remains counsel in that matter.)

Reed Smith intends to prepare and file a notice to Judge Mastando so that there is no confusion. Reed Smith recognizes that any future obligation to "cooperate in good faith" is going to be animated by the

ABU DHABI ♦ ASTANA ♦ ATHENS ♦ ATLANTA ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ ORANGE COUNTY ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH
PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

Bryan Kotliar, Esq.
January 28, 2025
Page 2



above matters, and if you disagree with that, we are willing to discuss it. Accordingly, Reed Smith responds to your requests as follows:

**1.      Update or amend Holdings' AOR to reflect that Adam Spears is Holdings' AOR, by no later than seven days from the entry of the order to be entered by the Court.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**2.      Assist with the filing of further amended articles of incorporation with LISCR by the current AOR or Mr. Spears as the new AOR, by no later than seven days from the entry of the order to be entered by the Court.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**3.      Withdraw all pleadings filed in opposition to the recognition proceeding currently pending in Liberia, including, without limitation, the opposition to the petition, the motion to strike, the motion to intervene, and the motion to dismiss.**

Reed Smith does not and has never represented any parties in connection with proceedings in Liberia. Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**4.      Update or amend all other AOR or similar filings with applicable authorities for Holdings' subsidiaries, including, without limitation, the four SMEs and Eletson Corp.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**5.      Obtain or provide certificates of incumbency for Holdings and each of its wholly owned subsidiaries, including, without limitation, the four SMEs and Eletson Corp, reflecting their new management.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

Bryan Kotliar, Esq.
January 28, 2025
Page 3



**6.     Provide days and times that Holdings' representatives can obtain keys and passwords for Eletson Maritime's offices located in Stanford, CT and Eletson Corp.'s offices located in Greece.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. Reed Smith does not possess the information requested. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**7.     Describe all property located at the Stanford, CT office and Greek offices and identify all property that has been removed from those locations since November 19, 2024 (or confirm in writing that no property has been removed since such date)**

Reed Smith does not possess the information, capacity, or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**8.     Contact all banks and for all accounts maintained by Holdings and its wholly owned subsidiaries, including the four SMEs and Eletson Corp., instruct the banks to remove access and authorizations for all existing personnel and replace and direct new authorizations and access for Adam Spears, Len Hoskinson, and Mark Lichtenstein**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. Reed Smith does not possess the information requested. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**9.     File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."**

Reed Smith does not and has never represented the parties who sought relief from the Greek Court. Reed Smith does not possess the capacity or authority to comply with the request.

**10.    Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. Reed Smith is unaware that any instructions have been provided to Novum or any other SME charterers and has not searched any privileged documents to ascertain whether, as part of discovery, information concerning charterers was made available.

**11.    Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.**

Reed Smith does not possess the information, capacity, or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

Bryan Kotliar, Esq.
January 28, 2025
Page 4



     **12.**    **Instruct all counsel or former counsel acting or purporting to act on behalf of Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.**

     Reed Smith does not possess the capacity or authority to comply with the request. Reed Smith's representation of Eletson Holdings, Inc. terminated upon the Effective Date and Reorganized Eletson Holdings, Inc. has not sought to re-engage Reed Smith. And obviously, with respect to the matters in which Reed Smith is engaged, it will not be taking instruction from the entities we think you are referring to here.

Sincerely,

Louis M. Solomon

# Exhibit

# E

| From: | Conn, Alyssa F. |
|---|---|
| To: | Solomon, Louis M.; Bryan Kotliar; Kyle Ortiz |
| Cc: | Eletson Bankruptcy Team (S); William E. Curtin; Michael Sabino; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; John Markianos DANIOLOS; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com; Brian Shaughnessy; Jared Borriello; John McClain |
| Bcc: | Eletson Corpora_Leyona Holdings__738583_00036 Correspondence Re__Limited Representation of Holdings |
| Subject: | RE: Eletson - Court Directed Obligations |
| Date: | Tuesday, February 4, 2025 11:08:29 AM |
| Attachments: | 2025-02-04 Solomon Ltr. to B. Kotliar re__Court Directed Obligations(815478391.2).pdf |

Bryan,

Please see the attached correspondence.

**Alyssa Conn**

Global Commercial Disputes

*She/Her/Hers*

aconn@reedsmith.com

D: +1 212.549.4250

M: +1 908.655.2662

**Reed Smith**

599 Lexington Avenue

New York, NY 10022-7650

T: +1 212 521 5400

F: +1 212 521 5450

**reedsmith.com**

**From:** Solomon, Louis M.
**Sent:** Friday, January 31, 2025 3:13 PM
**To:** Bryan Kotliar ; Kyle Ortiz
**Cc:** Conn, Alyssa F. ; Eletson Bankruptcy Team (S) ; William E. Curtin ; Michael Sabino ;
michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; John Markianos DANIOLOS ;
vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com;
lascarina.karastamati@eletson.com; Brian Shaughnessy ; Jared Borriello ; John McClain
**Subject:** RE: Eletson - Court Directed Obligations

We are working on it, and I think we are talking Monday right? We have a great
many filings in these matters.

Regards.

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile: +1.917.292.2484
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Friday, January 31, 2025 2:49 PM

**To:** Kyle Ortiz <kortiz@teamtogut.com>
**Cc:** Conn, Alyssa F. <AConn@reedsmith.com>; Solomon, Louis M. <LSolomon@reedsmith.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; William E. Curtin <wcurtin@sidley.com>; Michael Sabino <msabino@sidley.com>; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; John Markianos DANIOLOS <j.markianos@daniolos.gr>; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com; Brian Shaughnessy <bshaughnessy@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; John McClain <jmcclain@teamtogut.com>
**Subject:** Re: Eletson - Court Directed Obligations

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

Lou, Alyssa - following up on the below. When can we expect your responses?

—

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

> On Jan 28, 2025, at 8:50 PM, Kyle Ortiz <kortiz@teamtogut.com> wrote:
>
> Please see below from Mr. Kotliar (who is having tech issues):
> Lou, Alyssa,
> You did not respond to my request that you confirm that Reed Smith is going to work with us in good faith. We are going to start by assuming that you will, since those are your obligations under the Court's January 24 decision (which is not stayed, even if you do say you intend to appeal) and have been long outstanding under the Confirmation Order since November 4. If that is not the case, let us know.
> Your request to limit your cooperation in good faith to the four matters enumerated in your letter is misplaced. As the Court directed in its January 24 decision and the Confirmation Order, your are obligated "to comply with the plan and the confirmation order to assist in effectuating the Chapter 11 plan" and you are "ordered to take all steps reasonably necessary as requested by the board of Reorganized Eletson Holdings Inc. or its agent to assist in amending the AOR and updating the corporate governance documents, including the amended articles of incorporation with LISCR, within seven days of the date of the order to be issued following this ruling." Jan 24, 2025 Hr'g Tr. at 43:16-3.
> To that end, in nearly all of our initial requests, you state that Reed Smith "has passed along the request." How did you pass along the request and who, specifically did you contact? We request that you email these parties and copy us so that we can dialogue with them directly.
> We also request that you provide all of your communications with these parties and identify who they are. Reed Smith has taken the position several times that it does not represent any of the parties to the Sanctions Motion. If that is the case, your communications with these parties are not privileged, and we request that you provide

them. If you are asserting any privilege, we request that you identify which parties with whom you are asserting a privilege and the basis therefore.

Finally, as to the AOR issue, please identify for us who the AOR is and provide their contact information. We'd note that despite claiming that you are unable to fulfill any of our requests, you were able to obtain a certificate of incumbency for Eletson Holdings and Eletson Corporation (each without their respective consent) which you provided to Judge Liman in the district court proceedings. You are clearly able to work with the applicable parties when it suits you. We request that you identify who you worked with to obtain these certificates and provide copies of all communications with them.

All rights reserved.

---

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

> On Jan 28, 2025, at 5:41 PM, Conn, Alyssa F. <AConn@reedsmith.com> wrote:
>
> Bryan,
>
> Please see the attached correspondence.
>
> **Alyssa Conn**
> Global Commercial Disputes
> *She/Her/Hers*
> aconn@reedsmith.com
> D: +1 212.549.4250
> M: +1 908.655.2662
> **Reed Smith**
> 599 Lexington Avenue
> New York, NY 10022-7650
> T: +1 212 521 5400
> F: +1 212 521 5450
> **reedsmith.com**
>
> **From:** Bryan Kotliar <bkotliar@teamtogut.com>
> **Sent:** Sunday, January 26, 2025 7:02 PM
> **To:** Solomon, Louis M. <LSolomon@reedsmith.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; Curtin, William E. <wcurtin@sidley.com>; Sabino, Michael <msabino@sidley.com>; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; DANIOLOS John Markianos <j.markianos@daniolos.gr>; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com
> **Cc:** Kyle Ortiz <kortiz@teamtogut.com>; Brian Shaughnessy

<bshaughnessy@teamtogut.com>; Jared Borriello
<jborriello@teamtogut.com>; John McClain <jmcclain@teamtogut.com>
**Subject:** Eletson - Court Directed Obligations

**External E-Mail - FROM bkotliar@teamtogut.com
<bkotliar@teamtogut.com>**

To: Reed Smith, Sidley, Daniolos, Rimon, Mr. Kertsikoff,* Ms. Karastamati,*
and Mr. Hadjieleftheriadis:*

(*note: we understand you are not represented by counsel individually in this
matter, if that is not the case, please identify your counsel and provide their
contact information)

As you're aware, this past Friday, the Court directed Holdings' former
shareholders, officers, directors, counsel, and others to comply with the Plan
and Confirmation Order to assist in effectuating the Plan, including by taking
all steps "reasonably necessary as requested by the board of Reorganized
Eletson Holdings Inc. or its agent to assist in amending the AOR and
updating the corporate governance documents." See Jan. 24, 2025 Hr'g Tr. at
43:16-44:3 (copy attached). This is in addition to your and the other parties'
obligations already set forth in the Plan and Confirmation and required by the
Bankruptcy Code.

We are requesting that you take the following actions as soon as possible.
Again, given this recent ruling, your obligations to cooperate in good faith with
us under paragraph 5 of the Confirmation Order, and the injunctive provisions
of the Confirmation Order, we expect that you will work with us in good faith to
accomplish these and other tasks to effectuate the Plan.

- (1) Update or amend Holdings' AOR to reflect that Adam Spears is Holdings'
AOR, by no later than seven days from the entry of the order to be entered by
the Court

- (2) Assist with the filing of further amended articles of incorporation with
LISCR by the current AOR or Mr. Spears as the new AOR, by no later than
seven days from the entry of the order to be entered by the Court.

- (3) Withdraw all pleadings filed in opposition to the recognition proceeding
currently pending in Liberia, including, without limitation, the opposition to the
petition, the motion to strike, the motion to intervene, and the motion to
dismiss.

- (4) Update or amend all other AOR or similar filings with applicable
authorities for Holdings' subsidiaries, including, without limitation, the four
SMEs and Eletson Corp.

- (5) Obtain or provide certificates of incumbency for Holdings and each of its
wholly owned subsidiaries, including, without limitation, the four SMEs and
Eletson Corp, reflecting their new management.

- (6) Provide days and times that Holdings' representatives can obtain keys
and passwords for Eletson Maritime's offices located in Stanford, CT and
Eletson Corp.'s offices located in Greece.

- (7) Describe all property located at the Stanford, CT office and Greek offices
and identify all property that has been removed from those locations since
November 19, 2024 (or confirm in writing that no property has been removed
since such date)

- (8) Contact all banks and for all accounts maintained by Holdings and its
wholly owned subsidiaries, including the four SMEs and Eletson Corp.,
instruct the banks to remove access and authorizations for all existing
personnel and replace and direct new authorizations and access for Adam
Spears, Len Hoskinson, and Mark Lichtenstein

1. We have been in contact with what we understand to be the significant majority of the existing banks.

2. We will email the banks which we've had contact with, copy you into the email chain as well as Laskarina Karastamati, Vasilis Kertsikoff, and Vasilis Hadjieleftheriadis, and issue a joint instruction on yours and their behalf.

3. To the extent that the banks respond with any questions, you are directed to inform them of the foregoing instructions and changes to the authorizations.

4. You are also directed to cooperate with us and the banks in providing all paperwork requested by the banks, such as various corporate documents to the extent that your assistance is needed with doing so.

- (9) File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."

- (10) Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.

- (11) Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.

- (12) Instruct all counsel or former counsel acting or purporting to act on behalf of Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.

This list is not exhaustive and is not intended to be a complete list of all things needed from you to effectuate the Plan and we reserve all rights, including to amend or supplement this list at any time.

Given this recent ruling, we expect your prompt good faith cooperation. We also expect that you will share this message with anyone not included on this email chain that you know are needed to effectuate these and other implementation tasks.

**Please respond to this email by no later than January 28 at 5:00 p.m. (ET) confirming that you will work with us in good faith.**

Best regards,

Bryan

_____

**Bryan M. Kotliar | Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

RSUSv12021

<2025-01-28 Solomon Ltr. to B. Kotliar re_ Court Directed
Obligations(815461397.3).pdf>

# Exhibit

# F



**Driving progress**
**through partnership**

**Louis M. Solomon**
Direct Phone: +1 212 549 0400
Email: lsolomon@reedsmith.com

Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
+1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

February 4, 2025

**By Electronic Mail**

Bryan Kotliar, Esq.
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119
bkotliar@teamtogut.com

Re: *In re Eletson Holdings, Inc., et. al.*, Bankr. S.D.N.Y. 1:23-bk-10322 (JPM)

Dear Bryan:

Reed Smith LLP ("Reed Smith") is in receipt of (1) your January 28, 2025 follow up email ("1/28
Email") to our correspondence; and (2) your email sent on January 30, 2025 ("1/30 Email") regarding
the Order entered in the Bankruptcy Court. We write in a consolidated response to both.

**Scope of Reed Smith's Authority to Act**

Reed Smith disagrees with your statement in the 1/28 Email that it has not responded to your request to
confirm that it will work with you in good faith. Our letter made no fewer than nine references to our
willingness to do so—indeed, more than willingness; Reed Smith *is* working with you in good faith.
We also would like to correct your misapprehension that Reed Smith "requested" to limit its cooperation
to the four categories of matters set forth in the letter. Reed Smith was not making a request to limit
cooperation. Rather, it was reporting a limitation placed on Reed Smith's representation (which was
already limited in scope) by Provisional Holdings, which engaged Reed Smith following the Greek
Court order.

Separate and apart from the above, we note the inconsistency and incompatibility of what you are
requesting. In your 1/30 Email, you state that Reed Smith has no authority to act on behalf Provisional
Holdings and that it has been terminated as to Reorganized Holdings. Yet you are asking Reed Smith to
act on behalf of one or both. If you say Reed Smith is required to carry out actions and accept service
on behalf of Provisional Holdings, then you are acknowledging that Provisional Holdings exists, and
that Reed Smith has the authority to carry out its representation of Provisional Holdings. If you
maintain that Reed Smith's authority to act on behalf of any Holdings entity terminated as of the
Effective Date, then Reed Smith would have no power to carry out any of your requests.

Under either scenario, Reed Smith's cooperation is manifest—but clearly not enough for you. Reed
Smith can give nonprivileged documents. We have. Reed Smith can also pass along requests. It has

Bryan Kotliar, Esq.
February 4, 2025
Page 2



done that, too. It does not control Provisional Holdings, and it has no role in Liberian or Greek law or proceedings. Reed Smith has made that clear on the record.

**Reed Smith's Contacts at Provisional Holdings**

Your 1/28 Email requests that Reed Smith disclose who it has been passing along the requests to. Reed Smith is happy to provide that information. Reed Smith passed along the requests from your email, along with our response, to its contacts on the board of Provisional Holdings: Vasilis Hadjieleftheriadis and Manolis Andreoulakis. The Daniolos Law Firm (DLF) is our main point of contact, as Greek counsel for Provisional Holdings and/or individual Board members. We note that your original email cc'd Mr. Hadjieleftheriadis and DLF.

**Request for Communications**

As stated above, Reed Smith's contacts at Provisional Holdings are first, Provisional Holdings's (and/or certain Board members') Greek counsel and second Mr. Hadjieleftheriadis and Mr. Andreoulakis. These communications were and remain privileged. For your information, as you know, Reed Smith does not represent any of the individuals.

Further, regardless of whether such communications are privileged, it is unclear from your request how these communications would fall under the Court's direction to "assist in effectuating the chapter 11 plan," or take steps reasonably necessary to "assist in amending the AOR and updating the corporate governance documents, including the amended articles of incorporation with LISCR." These are forward-looking tasks that do not require disclosure of prior communications.

**Identification of the AOR**

As Judge Mastando acknowledged during the 1/30 Hearing, there are confidentiality issues related to disclosure of the AOR which have not been ruled on (1/30 Hr'g Tr. 48:1-3). Reed Smith has passed along the request to Provisional Holdings, consistent with Judge Mastando's direction (1/30 Hr'g Tr. 49:18-19). Reed Smith does not know who the AOR is.

**Certificate of Incumbency**

Reed Smith requested and received the Certificates of Incumbency from Provisional Holdings and Eletson Corporation and disputes any characterization that it obtained them without their consent. We have already provided you with the names of our contacts at Provisional Holdings and have passed along your request. There is no further action that Reed Smith can take.

Sincerely,

*Louis M. Solomon*

Louis M. Solomon