IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Eletson Holdings Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |

**MOTION FOR STAY OF ENFORCEMENT OF JANUARY 29, 2025
ORDER PENDING APPEAL**

Provisional Eletson Holdings Inc. ("Provisional Holdings") and Reed Smith LLP (collectively, "Appellants"), pursuant to section 105(a) of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 8007(a) and 9006(b), respectfully move this Court for a stay of enforcement of the Court's January 29, 2025 Order (Dkt. No. 1402) pending resolution of an appeal to the District Court. (Dkt. No. 1411) Alternatively, Appellants request a stay until at least March 20, 2025, at which time Appellants may report on the result of the March 19, 2025 court hearing in Greece on the application of Reorganized Holdings, Inc. ("Reorganized Holdings" or "Appellee") for recognition of the Confirmation Order. In further alternative, Appellants request that the Court grant a temporary stay to allow Appellants an opportunity to seek a stay pending appeal from the District Court. In support of this motion, Appellants submit the following:

**JURISDICTION**

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334 as well as the District Court's Amended Standing Order of Reference (M-431).

2.      The District Court has appellate jurisdiction pursuant to Bankruptcy Rule 8003 and

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

1

28 U.S.C. § 158, which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals … from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).

3.  The Court's January 29, 2025 Order is a final, appealable order. "[P]ostjudgment orders are usually subject to appellate review." *Amara v. CIGNA Corp.*, 53 F.4th 241, 251 (2d Cir. 2022) (citing *In re Farmers' Loan & Trust Co.*, 129 U.S. 206, 213-14 (1889)). "'[A] practical rather than a technical construction of finality is *especially* appropriate in the post-judgment context.'" *Amara*, 53 F.4th at 250 (quoting *United States v. Yalincak*, 853 F.3d 629, 636 (2d Cir. 2017) (emphasis in original)). Thus, a "postjudgment order is final when it has finally disposed of a question, and there are no pending proceedings raising related questions." *Amara*, 53 F.4th at 251 (2d Cir. 2022) (citation omitted). "This rule ensures that the trial court's disposition of important questions that arise after a final judgment are subject to appellate review." *Id.*

## BACKGROUND

4.  In their court-approved Disclosure Statement, Petitioning Creditors expressly undertook to "make every effort to ensure that any Confirmation Order entered by the Bankruptcy Court and the steps taken pursuant to the Confirmation Order to implement the Plan are recognized and are effective in all applicable jurisdictions." (Dkt. No. 847 § VIII.A.3) Crucially, Petitioning Creditors understood, and indeed advised all interested parties of, the risk that "a foreign court may refuse to recognize the effect of the Confirmation Order." (*Id.*)

5.  The at-issue Plan provides that Petitioning Creditors must comply with and respect non-U.S. law to effectuate the Plan and reorganization of Eletson Holdings Inc. ("Holdings") (Dkt No. 846 §§ 5.2(b), 5.4, V.5.1, V.5.9, IX.9.1, XI.11.2, sXI.11.3)

6.  The Confirmation Order states that it "shall constitute, to the greatest extent permissible under applicable law, all approvals and consents, if any, required by the laws, rules or

2

regulations of any state or U.S. or foreign governmental authority with respect to the implementation or consummation of the Plan and any act that may be necessary or appropriate for the implementation or consummation of the Plan." (Dkt No. 1223 ¶ 5(iv))

7. Holdings is organized and existing under the laws of Liberia. (Dkt. No. 847 at § VIII.A.3) Under the Liberian Business Corporations Act, "[f]or all purposes of title, action, attachment, garnishment and jurisdiction of all courts . . . the situs of the ownership of capital shares of all [Liberian] corporations … shall be regarded as in Liberia." TX-91 § 5.14.

8. Holdings has its principal place of business and center of main interests in Greece. (Dkt. No. 1407, Ex. B ¶ 8) Since its principal place of business and center of main interests are in Greece, Eletson Holdings is governed by Greek law, in addition to Liberian law. (*Id.*)

9. On November 12, 2024, in response to the resignation of four board members of Holdings, the minority shareholders of Holdings submitted an application before the Piraeus Court of First Instance in Greece to appoint provisional management due to the remaining four board members not being able to constitute a quorum. (Dkt. No. 1407, Ex. B ¶ 20) The Piraeus Court issued a provisional order, dated November 12, 2024 (the "Greek Order"), appointing eight provisional board members for Holdings with a mandate to take care of the urgent business of the Company including the authority to appoint lawyers to protect its interests, including appeal of this Court's decision confirming the Plan. (*Id.*) Reorganized Holdings has intervened in the Piraeus proceeding and requested that the hearing on the application of the minority shareholders be continued. (Dkt. No. 1407, Ex. B ¶ 21) As a result, the Piraeus Court moved the hearing to April 1, 2025. (*Id.*) The Piraeus Court also extended until April 1, 2025 Greek Order appointing the provisional board members. (*Id.*)

10. On November 25, 2024, Reorganized Holdings filed a *Motion for An Order*

3

*Imposing Sanctions* and asked this Court to grant it authority to take control of Holdings without first obtaining recognition and enforcement of the Confirmation Order under Liberian or Greek law. (Dkt. No. 1268)

11. On January 6, 2025, this Court held an evidentiary hearing regarding Reorganized Holdings' motion and heard testimony from Betty Lamin-Blamo, an expert on Liberian law, regarding the requirements of Liberian law with regards to Holdings, the Plan, and the Confirmation Order. Ms. Lamin-Blamo testified that any changes to Holdings' Address of Record ("AOR"), Articles of Incorporation ("AOI"), or shareholders can only be made following recognition of the Confirmation Order in Liberia. (Dkt. No. 1289 at ¶ 12; 1/6/2025 Hr'g Tr. 93:22-184:12) Ms. Lamin-Blamo explained that no matter what the parties might "agree" to, if a change to Holdings' AOR is based on a foreign court order, that order must first be recognized and enforced in Liberia to effectuate that change. (Dkt. No. 1289 ¶ 14)

12. On January 24, 2025, this Court held a status conference and addressed Reorganized Holdings' motion. (Dkt. No. 1402-1)

13. On January 29, 2025, this Court entered the Order from which the appeal lies. (Dkt. No. 1402) The Order states, "[t]he Debtors and the Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to take all steps reasonably necessary as requested by Holdings to unconditionally support the effectuation, implementation, and consummation of the Plan, including, but not limited to, by no later than seven (7) days from the date of service of this Order in accordance with applicable law (the "Compliance Deadline"), taking all steps reasonably necessary to update or amend (a) Holdings' AOR to reflect that Adam Spears is Holdings' AOR and (b) Holdings' corporate governance documents on file with LISCR as directed by Holdings." (*Id.* ¶ 2)

4

14. The Order defines "Related Parties" to mean, "subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, founds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing clauses (a)-(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees." (Dkt. No. 1402 at 3 n.4)

15. Material developments in Greece have occurred following this Court's January 29, 2025 Order.

16. On February 3, 2025, the entity referred to as Reorganized Holdings submitted an application to the Court of First Instance of Athens (the "Athens Court") asking the Athens Court to recognize the Confirmation Order, and, until a judgment is issued to such application, to immediately issue a provisional order appointing Adam Spears as the manager of "Reorganized Holdings." (Dkt. No. 1407, Ex. B ¶ 14)

17. The recognition application of Reorganized Holdings and Adam Spears states:

This behavior of my so-called management which alleges that represents me [the company] and refers to me [the company] as "provisional Eletson Holdings Inc", such a legal body exists only in the imagination of my ex-shareholders and ex-managers, obliged me [i.e. the company], through the actions of my lawful

5

> management, to apply to the bankruptcy court of the Southern District of New York and to request protection. This application was heard on January 24, 2025 and was accepted on the same day. By its order dated 01.29.2025, which is immediately enforceable, the above bankruptcy court ordered my ex-shareholders and the above ex members of my BoD to perform, within 7 days from service to them of the order, whatever is necessary for the implementation of the reorganization plan, reserving the right to impose on them sanctions, following a new application on my behalf, in case of no compliance"

(Dkt No. 1410, Ex. A ¶ 6)

18.   On February 4, 2025, Provisional Holdings, together with the two minority shareholders, Elafonissos Shipping Corporation and Keros Shipping Corporation, filed in the Athens Court a joinder of proceedings opposing Reorganized Holdings' recognition application, including the request to provisionally appoint Adam Spears. (Dkt. No. 1407, Ex. B ¶ 16; Dkt. No. 1410, Ex. A ¶ 7)

19.   That same day, February 4, 2025, the Athens Court held a hearing to consider the request by Reorganized Holdings for a provisional order appointing Adam Spears as manager of the company. (Dkt. No. 1410, Ex. A ¶ 10) The hearing was held in front of a three-judge panel including the President of the Athens Court. (*Id.*)

20.   On February 5, 2025, the Athens Court issued a decision dismissing and denying Reorganized Holdings' request for a provisional order appointing Adam Spears as manager of the Company. This decision was handwritten on the front page of the application by the President of the Court and states "Dismisses provisional order, Athens 4-2-25." (Dkt. No. 1410, Ex. A ¶ 11)

21.   The application for recognition of the Confirmation Order (and the joinder/opposition) are set to be heard by the Athens Court on **March 19, 2025**. (Dkt. No. 1410, Ex. A ¶ 8)

22. On February 5, 2025, Appellants filed the *Notice of Appeal* from this Court's January 29, 2025 Order. (Dkt. No. 1411)

## LEGAL STANDARD

23. "The same standards that govern a stay pending an appeal from a District Court order to the Court of Appeals apply in the case of an appeal from the Bankruptcy Court to the District Court." *New York Skyline, Inc. v. Empire State Bldg. Co. L.L.C. (In re New York Skyline, Inc.)*, No. 09-10181, 2013 Bankr. LEXIS 4141, *8 (S.D.N.Y. Oct. 2, 2013) (citing *In re Savage & Assocs., P.C.*, No. 05 Civ. 2072 (SAS), 2005 U.S. Dist. LEXIS 3161 (S.D.N.Y. Feb. 28, 2005)).

24. A four-factor balancing test governs a motion to stay a bankruptcy court order pending appeal that is filed pursuant to Bankruptcy Rule 8007. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007). Under the four-factor test, this Court shall consider: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Id.* at 346.

25. To grant the stay, this Court engages in a balancing of the relevant considerations—the Court need not find that each factor weighs in favor of the request for the stay. *See, e.g.*, *In re Adelphia*, 361 B.R. at 347 ("[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed."); *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (The Second Circuit has "noted that the degree to which a factor must be present varies with the strength of the other factors, meaning that 'more of one excuses less of the other.'") (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).

7

26. Appellants meet the standard for granting the stay.

## BASIS FOR RELIEF

**A.   Provisional Holdings will suffer irreparable injury absent the stay.**

27. "A showing of probable irreparable harm is the principal prerequisite for the issuance of a stay." *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (quoting *In re Adelphia*, 361 B.R. at 347).

28. Here, but for a stay, Provisional Holdings is caught between different legal systems and different commands as to what it needs to do. As an example, Greek law precludes Provisional Holdings from taking certain steps contemplated under the January 29, 2025 Order without incurring the imposition of criminal sanctions. (Dkt. No. 1288, Ex. 29 at ¶¶ 7-11) The January 29, 2025 Order thus places Provisional Holdings in a real Catch-22. Regardless of what Provisional Holdings does, if the January 29, 2025 Order is not stayed, Provisional Holdings faces irreparable harm.

29. Appellants will respectfully submit on appeal that Reorganized Holdings' *Motion for an Order Imposing Sanctions* should have been resolved differently based on the language of the Plan and Confirmation Order, United States law, and foreign law. If there is no stay, Provisional Holdings will be caught in between legal systems without even having a chance for an appeal to which it is statutorily entitled. In other words, if there is no stay, the appeal will be effectively mooted before it even begins.

30. The potential mooting of an appeal constitutes irreparable harm warranting the grant of a stay pending appeal. *See, e.g.*, *In re Adelphia*, 361 B.R. at 347-48 ("[W]here the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied.") (footnotes omitted); *In re Legacy Healthcare, LLC*, No. 09-cv-1102A, 2010 U.S. Dist. LEXIS 98329, at *5 (W.D.N.Y. Sept. 20, 2010) (granting stay pending

appeal and noting that "'where the denial of a stay pending appeal risks mooting the appeal,' irreparable harm is established") (quoting *In re DBSD North America, Inc.*, 09 Civ. 10156, 2010 U.S. Dist. LEXIS 44996 (S.D.N.Y. May 7, 2010)).

31. These harms are not ones that Provisional Holdings could recover from or that would be remedied by financial contributions. The Court should stay enforcement of the January 29, 2025 Order to prevent these harms from befalling Provisional Holdings while the appeal is pending.

**B.    Reorganized Holdings will not suffer substantial injury if enforcement of the January 29, 2025 Order is stayed pending appeal.**

32. The second factor to be weighed is whether the appellee—here, Reorganized Holdings—will be substantially harmed by granting the stay. In considering this factor, the Court balances the harm to Provisional Holdings if it does not grant the stay against the harm to Reorganized Holdings if the Court grants the stay. *See In re Country Squire Assocs., L.P.*, 203 B.R. 182, 184 (2d Cir. BAP 1996) ("In measuring whether any such injury [to the non-moving parties] would be 'substantial,' it is appropriate to compare it with the irreparable harm [the movant] will suffer if the foreclosure sale is not stayed.").

33. The only "harm" Reorganized Holdings can credibly identify is delay while it seeks recognition in the applicable foreign jurisdictions (i.e., Liberia and Greece), as Petitioning Creditors promised to do. This requirement of seeking foreign recognition, however, is expressly contemplated in the Disclosure Statement (which is binding) and the Plan, which includes conditions precedent to the Effective Date, including that "all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law." (Dkt. No. 846 § 9.1(1)) Reorganized Holdings attempts to create

9

its own urgency through its voluntary decision to waive those protections (Dkt. No. 1258 at 2), which does not absolve it of the obligation comply with applicable non-U.S. law to effectively reorganize Holdings. *See Green v. City of New York*, No. 97 Civ. 8191, 2000 U.S. Dist. LEXIS 11691, at *4 (S.D.N.Y. Aug. 16, 2000) ("[P]arties to a contract are free to make any agreement they wish absent a violation of law or transgression of a strong public policy."); *Rutkin v. Reinfeld*, 229 F.2d 248, 255 (2d Cir. 1956) ("[I]f a contract is entered into with a view of violating the laws of another country it is unenforceable even though it does not otherwise contravene the law of the place where it is made or of the forum."). It is only when recognition is accomplished that Reorganized Holdings may exercise authority it seeks to exercise under the Plan. In light of the express promises Petitioning Creditors made in the Disclosure Statement and Plan, this is an important matter of first impression that would benefit from appellate review.

34. In any event, stay-related delay alone is insufficient harm to warrant denying a stay. *See San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*, 548 U.S. 1301 (2006) (finding harm of slight delay outweighed by risk of irreparable harm); *Catskill Mts. Chapter of Trout Unlimited, Inc. v. United States EPA*, 630 F. Supp. 2d 295, 306-07 (S.D.N.Y. 2009) (rejecting argument that the non-moving party would be prejudiced by the "lengthy duration" of a stay). Furthermore, Reorganized Holdings may still change the AOR by proceeding through proper channels, including by seeking judicial recognition in Liberia and Greece.

35. Simply put, there is no risk of harm, let alone substantial harm, to Reorganized Holdings by ordering a stay of enforcement pending resolution of the appeal. Even if there were a substantial harm suffered by Reorganized Holdings, such harm would not outweigh the harm suffered by Provisional Holdings if the stay were not granted.

36. Given the foregoing, this factor also weighs in favor of granting the stay.

**C.     Appellants' appeal has at least a reasonable possibility of success on the merits.**

37.     The third factor pertains to whether an appellant has demonstrated "a substantial possibility, although less than a likelihood, of success." *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35, 39 (2d Cir. 1993); *CQS ABS Master Fund Ltd. v. MBIA Inc.*, No. 12 Civ. 6840, 2014 U.S. Dist. LEXIS 185280, *7-8 (S.D.N.Y. Jan. 29, 2014) ("Plaintiffs do not need to show very much - the issue need only be 'a fair ground for litigation.'"); *In re Sears Holding Corp.*, No. 19 civ. 9140, 2024 U.S. Dist. LEXIS 97572, *6 (S.D.N.Y. May 29, 2024) ("And while I think I reached the right result, I cannot and will not pretend that there is not an argument of substance on the other side. So while I could not in good conscience find that MOAC is *likely* to succeed on appeal … there are sufficiently serious questions going to the merits") (emphasis in original).

38.     Appellants have satisfied this threshold. Petitioning Creditors made explicit promises to comply with foreign law (as reflected in the Disclosure Statement, Confirmation Order, and Plan), and Holdings, as an entity governed by Greek and Liberian law, has an existence that is unchanged at least until courts of those jurisdictions grant recognition of the Confirmation Order.

39.     Under Liberian law, any changes to Holdings' AOR, AOI, or shareholders can only be made following recognition of the Confirmation Order in Liberia. (Dkt. No. 1289 at ¶ 12; 1/6/2025 Hr'g Tr. 93:22:184:12) No matter what the parties might "agree" to, if a change to Holdings' AOR is based on a foreign court order, that order must first be recognized and enforced in Liberia to effectuate that change. (Dkt. No. 1289 ¶ 14)

40.     Under Greek law, for the Confirmation Order and Plan to have any effect, a Greek court must recognize and confirm the Confirmation Order and Plan. (Dkt. No. 1407, Ex. B. ¶ 12 (citing articles 4, 6 and 15 of law 3858/2010, Uni Membered First Instance Court of Rethymnon

11

166/2012, Multi Membered First Instance Court of Athens 437/2013)) The Confirmation Order and Plan are not automatically recognized under Greek law. The judicial recognition of any United States bankruptcy court decision in Greece is also of vital importance to the operation of Greek rule of law since it involves entities whose very existence or operation stems from Greek law and its protections. (Dkt. No. 1407, Ex. B ¶ 12)

41. On February 3, 2025, Reorganized Holdings attempted to obtain recognition of the Confirmation Order in Greece along with provisional relief. (Dkt. No. 1407, Ex. B ¶ 14) On February 5, 2025, the Greek court denied Reorganized Holdings' request for provisional relief. (Dkt. No. 1410, Ex. A ¶ 11) The matter is set for hearing on Reorganized Holdings' application for recognition of the Confirmation Order on March 19, 2025. (Dkt. No. 1407, Ex. B ¶ 16; Dkt. No. 1410, Ex. A ¶ 8)

42. With its actions in this Court, Reorganized Holdings seeks to take unfettered control of Holdings without first obtaining recognition and enforcement of the Confirmation Order as required by the Plan. The presumption against extraterritoriality and principles of international comity call for a rejection of Reorganized Holdings' efforts.

43. With respect to the presumption against extraterritoriality, while Reorganized Holdings relies on the Bankruptcy Code, Sections 1141, 1142, and 105(a), these provisions cannot overcome the "longstanding principle of American law that legislation of Congress, unless contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991), *superseded by statute on other grounds*. "[I]t is well established that generic terms like 'any' or 'every' do not rebut the presumption against extraterritoriality." *Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 118 (2013). And, contrary to what Reorganized Holdings might argue, this is not a domestic application

of the Bankruptcy Code, as all actions Reorganized Holdings seeks to compel are to take place abroad.

44. With respect to international comity, many principles show the improper nature of Reorganized Holdings' efforts. Notably, "[w]hen determining whether a foreign corporation has observed the proper corporate formalities, courts apply the law of the country of incorporation." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 648 (S.D.N.Y. 2018). Moreover, "[c]omity is especially important in the context of the Bankruptcy Code." *Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*, 93 F.3d 1036, 1048 (2d Cir. 1996). Congress "enacted chapter 15 of the Bankruptcy Code … to foster international cooperation and comity." *In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016). Finally, because proceedings in Liberia and Greece are now pending, "adjudicatory comity" is present, which is "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts." *Maxwell*, 93 F.3d at 1047.

45. For all of these reasons, the law favors a rejection of Reorganized Holdings' efforts, and Appellants' appeal has a reasonable possibility of success on the merits.

**D.    Public interest favors a stay.**

46. The final factor—whether the any public interest is affected by entering the stay—favors a stay pending appeal as well.

47. There is, of course, a public interest in preserving the relief that a party seeks through an appeal. That is especially true in this case, where the Disclosure Statement and Plan include express promises to comply with foreign law, and the issue of whether Reorganized Holdings must comply with the Disclosure Statement and Plan in that regard presents an important matter of first impression for courts to address on appeal.

48. Further, there is a public interest in conserving judicial resources. *See In re Gorsoan Ltd.*, No. 18-MC-431, 2020 U.S. Dist. LEXIS 128980, *25 (S.D.N.Y. July 21, 2020) (finding that the "public interest factor militates in favor of a stay" because of the public interest in "preserving judicial resources by avoiding unnecessary proceeding shawl the appeal in this action is pending"); *see also In re Google Digit. Adver. Antitrust Litig.*, No. 1:21-md-03010, 2023 U.S. Dist. LEXIS 112959, *6 (S.D.N.Y. June 12, 2023) (same).

49. Before Reorganized Holdings proceeds with enforcement actions that will occupy the time and energy of this Court and all parties involved, Appellants should be permitted to pursue their rights to seek further review and determine whether there is even a basis for such enforcement actions by Reorganized Holdings.

### ALTERNATIVE RELIEF – TEMPORARY STAY

50. If the Court does not grant this requested stay pending appeal, Appellants request that the Court grant a stay to last (at least) until March 20, 2025, at which point Appellants can report to the Court any result from the March 19, 2025 hearing in Greece, during which the Athens Court will hear Reorganized Holdings' application to recognize the Confirmation Order and Provisional Holdings' opposition thereto. (Dkt. No. 1407, Ex. B ¶¶ 14-16; Dkt. No. 1410, Ex. A ¶ 8) *See In re HBLS, L.P.*, 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (deferring to foreign proceeding where movant sought "enforcement of prior orders of this Court").

51. In further alternative, Appellants respectfully submit that it would be proper to grant a temporary stay to allow Appellants to request a stay pending appeal from the District Court. Recently, in granting a temporary stay to allow an appellant to seek a stay from the court to which the party was appealing, the District Court acknowledged that "[c]ourts in this Circuit have previously granted temporary stays for this precise purpose." *King Spider LLC v. Panda (Hong*

*Kong Tech. Co.)*, No. 24-CV-2668 (JGLC), 2025 U.S. Dist. LEXIS 10528, *10 (S.D.N.Y. Jan. 21, 2025) (citing *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, No. 12-CV-423 (JGK), 2012 U.S. Dist. LEXIS 78291 (S.D.N.Y. June 5, 2012)). "[O]ur Court of Appeals has noted this practice favorably." *U.S. Bank*, 2012 U.S. Dist. LEXIS 78291, *4; *see also Diorinou v. Mezitis*, 237 F.3d 133, 138 (2d Cir. 2001) ("The District Court helpfully stayed its order until November 30 to permit Mezitis to seek a stay pending appeal from this Court.").

52. For this alternative request, Appellants ask that the Court order a stay that will expire in seven days from the Court's order granting the temporary stay unless Appellants file a motion to stay pending appeal in the District Court within that seven-day period, in which case the temporary stay will continue until the District Court decides the motion to stay pending appeal.

53. This is a proper approach in the event the Court does not grant a full stay pending appeal or a stay at least until March 20, 2025 so that Appellants can report on the result of the hearing in Greece. *See, e.g.*, *Srour v. New York City*, No. 22 Civ. 3 (JPC), 2023 U.S. Dist. LEXIS 192497, *9 (S.D.N.Y. Oct. 26, 2023) ("[T]he Court will grant in part Defendants' alternative request to extend the temporary stay of the injunction in order to afford them an opportunity to seek a stay before the Second Circuit …. The temporary stay will therefore continue through 11:59 p.m. on October 30, 2023. As stated above, if Defendants apply for a stay pending appeal before the Second Circuit prior to 11:59 p.m. on October 30, 2023, the temporary stay will remain in effect until the Second Circuit decides the stay motion.").

## NO BOND IS NECESSARY

54. Bankruptcy Rule 8007 grants the Court discretion to determine whether a bond is necessary to stay the case. *See* Fed. R. Bankr. Proc. 8007 (court may condition relief on filing a bond). A bond is unnecessary where little to no risk of injury to an appellee exists. *See, e.g.*, *In re*

*Sphere Holding Corp.*, 162 B.R. 639, 644 (Bankr. E.D.N.Y. 1994) (requiring "posting of a bond . . . is discretionary"); *In re Homaidan*, 650 B.R. 372, 443-44 (Bankr. E.D.N.Y. 2022) ("'[C]ourts in this circuit have declined to require any bond where there was no showing of a likelihood of harm to the enjoined party.'"); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (holding that courts have wide discretion "to dispense with the bond requirement where there has been no proof of likelihood of harm"). Given the absence of any potential injury to Reorganized Holdings here (and especially no substantial injury), Appellants respectfully submit that a bond is not warranted.

## CONCLUSION

55. Absent a stay, Provisional Holdings will be severely prejudiced and suffer irreparable harm in the form of facing a choice between the commands of different legal systems. On the other hand, Reorganized Holdings will not be harmed by a stay, other than with stay-related delays that are trivial in comparison to the harms suffered by Provisional Holdings if the stay is not entered. Appellants thus respectfully request a stay of enforcement of the January 29, 2025 Order pending appeal.

56. Alternatively, Appellants request that the Court grant a stay to last (at least) until March 20, 2025, at which point Appellants can report to the Court any result from the March 19, 2025 hearing in Greece, during which the Athens Court will hear Reorganized Holdings' application to recognize the Confirmation Order and Provisional Holdings' opposition thereto. (Dkt. No. 1407, Ex. B ¶¶ 14-16; Dkt. No. 1410, Ex. A ¶ 8)

57. In further alternative, Appellants respectfully request that the Court issue a temporary stay to allow Appellants an opportunity to seek a stay pending appeal in the District Court. Specifically, Appellants request that the Court order a stay that will expire in seven days

from the Court's order granting the temporary stay unless Appellants file a motion to stay pending appeal in the District Court within that seven-day period, in which case the temporary stay will continue until the District Court decides the motion to stay pending appeal.

58. Appellants also request any such other relief that this Court finds is proper and necessary under the circumstances.

DATED:   New York, New York
         February 5, 2025

/s/ *Louis M. Solomon*
Andrew L. Buck
Louis M. Solomon
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
abuck@reedsmith.com
lsolomon@reedsmith.com
*Counsel for Provisional Eletson Holdings Inc. and Reed Smith LLP*

17