TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Brian F. Shaughnessy
Amanda C. Glaubach

*Counsel for Eletson Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
:
In re:                                                          :          Chapter 11
:
ELETSON HOLDINGS INC., et al.,[1]          :          Case No. 23-10322 (JPM)
:
:          (Jointly Administered)
Debtors.          :
:
-------------------------------------------------------------x

## EMERGENCY MOTION OF ELETSON HOLDINGS INC. FOR ENTRY OF A FURTHER ORDER IN SUPPORT OF CONFIRMATION AND CONSUMMATION OF THE COURT-APPROVED PLAN OF REORGANIZATION

Eletson Holdings Inc. ("Holdings"), by and through its undersigned

counsel, hereby submits this emergency motion (the "Motion"), pursuant to

sections 105, 1141, and 1142 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A**

---

[1]    The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

(the "<u>Proposed Order</u>") again compelling the Ordered Parties[2] to update Holdings'

AOR and imposing sanctions and other costs until they do so.[3]

      In support of this Motion, Holdings submits the Declaration of Bryan M.

Kotliar, Esq. attached hereto as **Exhibit B** (the "<u>Kotliar Declaration</u>"),[4] and respectfully

states:

**<u>PRELIMINARY STATEMENT</u>**[5]

      1.     The Order issued by this Court on January 24, 2025 requires the

Ordered Parties to update the AOR no later than seven days after service of the Order.

It has been more than seven days since such service and the AOR has not been updated.

Even worse, Reed Smith has filed more pleadings with Judge Liman challenging the

authority of Holdings' new owners and management, in clear contravention of the

findings of this Court in the January 24, 2025 decision and the Order.  In other words,

Reed Smith and its true clients—the former officers, directors, and shareholders of

Holdings—have made clear that they have no intention of complying with the Order.

Instead, they continue to raise fabricated issues around authority and confidentiality to

further their obstructive efforts.

      2.     Accordingly, the Court should find the Ordered Parties in

contempt, impose coercive monetary sanctions of $25,000 per day against the Ordered

Parties on a joint and several basis, and require the Ordered Parties to pay, on a joint

and several basis, Holdings' fees and expenses in connection with this Motion, the

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Order (as defined below).

[3]    By separate motion filed contemporaneously herewith, Holdings is requesting that, pursuant to the Order, the Court schedule the hearing with respect to this Motion as soon as possible.

[4]    Exhibits cited to herein as "Ex. __" are attached to the Kotliar Declaration.

[5]    Capitalized terms used but not otherwise defined in this Preliminary Statement have the meanings ascribed to such terms below.

2

Sanctions Motion, the Liberian proceedings, the Greek proceedings, and all further
actions related to updating the AOR, until the Ordered Parties do so.[6]

**JURISDICTION AND VENUE**

3.      This United States Bankruptcy Court for the Southern District of
New York (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157
and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012
(Preska, C.J.) (the "Amended Standing Order").  Holdings confirms its consent,
pursuant to Bankruptcy Rule 7008, to the extent that it is later determined that the
Court, absent consent of the parties, cannot enter final orders or judgments in
connection herewith consistent with Article III of the United States Constitution.

4.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and
1409.

5.      Pursuant to Section 11.1 of the Plan and Paragraph WW of the
Confirmation Order, the Court retains exclusive jurisdiction over all matters arising out
of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of
the Plan and section 1142 of the Bankruptcy Code.  In particular, under Section 11.1(d)
of the Plan, the Court retains jurisdiction to "enter such orders as may be necessary or
appropriate to implement or consummate the provisions of this Plan . . . "  Plan
§ 11.1(d).

---

[6]   Holdings reserves the right to return to this Court for other additional orders in aid of effectuating
the Plan.

3

**BACKGROUND**

**A.  The Ordered Parties' Continued Refusal to Update the AOR**

6.    On October 25, 2024, the Court issued a decision [Docket No. 1212], confirming the Petitioning Creditors' chapter 11 plan [Docket No. 1132, Ex. 1] (the "Plan") and overruling the Debtors' and Former Majority Shareholders' objections thereto [Docket Nos. 1029, 1033], among other things.  On November 4, 2024, the Court entered the order confirming the Plan [Docket No. 1223] (the "Confirmation Order").

7.    On November 19, 2024 (the "Effective Date"), the Plan went effective.  *See* Docket No. 1258 (Notice of Effective Date) at 2.

8.    On November 25, 2024, Holdings filed the *Emergency Motion of Reorganized Eletson Holdings Inc. for an Order Imposing Sanctions on Eletson Holdings' (A) Existing Person of Record and (B) Former Shareholders, Officers, Directors, and Counsel, Including Reed Smith LLP* [Docket No. 1268] (the "Sanctions Motion").  On December 10, 2024, respectively, Reed Smith, the Daniolos Law Firm, and the Former Majority Shareholders (through Sidley Austin) filed objections to the Sanctions Motion [Docket Nos. 1285, 1287, 1291], which Holdings responded to on December 13, 2024 [Docket No. 1299].  On December 13, 2024, the Creditors' Committee filed a statement in support of the Sanctions Motion [Docket No. 1301].  The Court held a trial on the Sanctions Motion on January 6, 2025, and thereafter the parties submitted post-trial proposed findings of fact and conclusions of law on January 13, 2025 [Docket Nos. 1355, 1356] and post-trial briefs on January 17, 2025 [Docket Nos. 1371, 1372].

9.    On January 24, 2025, the Court issued an oral decision (the "Decision") granting the Sanctions Motion, as modified, which was followed on

4

January 29, 2025 by an accompanying order [Docket No. 1402] (the "Order").[7]  In the

Decision, the Court found that:[8]

- "The new members of the board of directors [of Holdings] are Adam Spears, Leonard Hoskinson, and Timothy Matthews."  Decision at 24:14-16.

- On the Effective Date, "the board members of the former debtor, certain of whom are now members of the provisional board, were automatically deemed to have resigned or otherwise ceased to be a director manager of Eletson Holdings Inc."  *Id.* at 26:5-26:10 (internal quotation marks omitted).

- "Reorganized Eletson Holdings Inc., the same corporate entity as the former debtor, Eletson Holdings, but with the new owners, board, and management as approved by this court in the confirmation order, is the only Eletson Holdings Inc."  *Id.* at 26:17-20 (internal quotation marks omitted).

- The unstayed Confirmation Order "recognizes the [authority of the] new board of Eletson and gives the new board of Eletson under section 5.2 of the plan the ability to act on behalf of Eletson . . . ."  *Id.* at 26:12-27:2 (internal quotation marks and citations omitted).

- "[T]he confirmation order and Chapter 11 plan are binding on Reorganized Eletson Holdings Inc.'s former shareholder, officers, directors, counsel, nominees and others as defined in section 1.124 of the plan pursuant to Section 1141 and 1142 of the Bankruptcy Code."  *Id.* at 43:11-15.

10. The Decision and the Order require the Debtors and their Related

Parties (as defined in the Plan), including, without limitation, the existing person of

record at the AOR currently on file with LISCR, the Former Shareholders, the Former

D&Os, Reed Smith, and the Former D&Os Counsel to (i) comply with the Confirmation

Order and the Plan and assist in effectuating, implementing, and consummating the

terms thereof, and (ii) take all steps reasonably necessary to update or amend

(a) Holdings' AOR to reflect Adam Spears as the AOR for Holdings and (b) Holdings'

---

[7]    A copy of the transcript of the Decision is attached as Exhibit A to the Order.

[8]    Despite Reed Smith's mistaken assertion previously that the Court made no findings during its hour long oral ruling, the Court clearly states "[b]ased on the above and considering the evidence submitted in support and in opposition of the motion, the Court *finds* as follows."  Decision at 19:5-7 (emphasis added).

corporate governance documents on file with LISCR by no later than seven (7) days

from the date of service of the Order in accordance with applicable law

(the "<u>Compliance Deadline</u>").  *Id.* at 43:16-44:3; Order ¶¶ 1-2.

11.    On January 29 and 30, 2025, Holdings, through Kurtzman Carson

Consultants LLC dba Verita Global ("<u>Verita</u>") and Togut, Segal & Segal LLP (the "<u>Togut</u>

<u>Firm</u>"), served the Order on all parties in interest.  *See* Docket Nos. 1406, 1408.  A table

setting forth the details regarding service of the Order on the Ordered Parties is

attached hereto as **<u>Exhibit C</u>**.

12.    The Order provides that should the Ordered Parties fail to meet the

Compliance Deadline, Holdings may request a hearing on shortened notice to

determine (a) whether the Ordered Parties "are in violation of this Order, the []

Decision, the Plan, the Confirmation Order, and/or the Bankruptcy Code, as

applicable," and (b) "such other and further relief, including, without limitation, the

imposition of coercive and/or compensatory monetary sanctions."  Order ¶ 4.

13.    The Compliance Deadline passed on February 5, 2025.  As of the

date hereof—*i.e.*, more than seven days from service of the Order —the AOR has not

been updated as required by the Order.  Nor has the AOR been identified.  Rather, Reed

Smith has recycled its meritless argument that it is illegal to reveal the AOR to Eletson

Holdings itself, an argument explicitly rejected in both the Decision and the Order.

**B.  <u>Additional Misconduct by the Ordered Parties Since the Decision</u>**

14.    Following the Decision, on January 26, 2025, counsel for Holdings

emailed certain of the Ordered Parties—consisting of Reed Smith, the Former D&Os

Counsel, Sidley Austin, Rimon (purported counsel to "Provisional Holdings"), Vassilis

Kertsikoff, Vasilis Hadjieleftheriadis, and Lascarina Karastamati (*i.e.*, certain of the

Former D&Os)—a list of requests pursuant to the Plan, the Confirmation Order, the

Decision, and the Order, including a request for those parties to update the AOR.
*See* Ex. 1 (Email from B. Kotliar to Ordered Parties on Jan. 26, 2025).

15.     On January 28, 2025, Reed Smith responded by falsely stating that
they do not "possess the capacity or authority to comply" with each request, and that
they had "passed along the request" to the other Ordered Parties.  *See* Ex. 2 (Letter from
L. Solomon to B. Kotliar dated Jan. 28, 2025).  Reed Smith also stated that they would be
limiting any good faith cooperation to only four enumerated matters, namely,
(1) "responding to all motions and applications in which Reed Smith itself has been
named a party," (2) any appeal from the Order, (3) "the pending appeal to the Second
Circuit from Judge Liman's dismissal of Provisional Eletson Holding's [*sic*] appeal from
the Bankruptcy court," and (4) briefing regarding Goulston and Storrs PC's motion to
compel Reed Smith to produce its client file currently pending before Judge Liman.  *Id.*

16.     Counsel to Holdings immediately responded, requesting, among
other things, (1) that Reed Smith identify the parties that it had purportedly conveyed
Holdings' requests to, (2) to be included in communications with any parties receiving
the aforementioned "requests," (3) proof of all communications with any relevant
parties, and (4) that Reed Smith identify the AOR.  *See* Ex. 3 (Email from K. Ortiz to A.
Conn and L. Solomon on Jan. 28, 2025).  Counsel for Holdings also requested that Reed
Smith identify any alleged attorney-client relationships or other bases to withhold
documents and communications from Holdings.  *See id.*

17.     On February 4, 2025, Reed Smith responded to counsel for
Holdings and stated among other things, that it does not represent "any of the
individuals" of Provisional Holdings, and asserted the attorney-client privilege with
respect to Holdings' request for documents and communications.  *See* Ex. 4 (Email from
A. Conn to B. Kotliar on Feb. 4, 2025); *see also* Ex. 5 (Letter from L. Solomon to B. Kotliar

dated Feb. 4, 2025).  In the same letter, Reed Smith falsely argued that the identity of the

AOR cannot be provided to Holdings because it is "confidential."  *See* Ex. 5.

18.    Reed Smith's assertion that it does not "possess the capacity or

authority to comply with" Holdings' request to update the AOR and that such request

is "outside the scope of its limited representation" of "Provisional Holdings" is contrary

to Reed Smith's prior course of conduct.  Indeed, on November 15, 2024, Lou Solomon

of Reed Smith asked if the Petitioning Creditors would "stipulate to going and seeking

confirmation of the Plan Order in Liberia and Greece *in exchange for a stipulation by*

*the directors of Holdings that they will file the [AOR] letter once the confirmation is*

*accomplished?*"  *See* Ex. 6 (Email from L. Solomon to B. Kotliar on Nov. 15, 2024)

(emphasis added).  As usual in these cases, Reed Smith just talks out of both sides of its

mouth.

19.    Rather than cooperating, on January 31, 2025—after the Order was

entered—Reed Smith and Rimon, purportedly on behalf of *Holdings*, filed a motion to

strike with Judge Liman concerning the stipulation to dismiss the confirmation appeal,

asserting that the new shareholders, board of directors, and management of Holdings

lack the capacity and authority to appear before Judge Liman.  *See* Exs. 7-11 (Notice of

Motion to Strike; Daniolos Declaration in Support of Motion to Strike; Padmore

Declaration in Support of Motion to Strike; Memorandum of Law in Support of Motion

to Strike; Solomon Declaration in Support of Motion to Strike).

20.    The Motion to Strike flies in the face of this Court's (and Judge

Liman's) prior findings and holdings, and violates Bankruptcy Rule 9011.  In short,

Reed Smith and its clients are pretending that the Decision and the Order by this Court

never happened, and that Judge Liman did not dismiss their Confirmation Order

Appeal based on the same exact reasoning. But it all happened, and Reed Smith and its clients are bound by those orders.

21.     On February 4, 2025, just two days before the Compliance Deadline, Reed Smith sent a letter to the Court making clear that it will not comply with the Order, nor will its clients. *See* Docket No. 1407 at 1. In that letter, Reed Smith requested another untimely backdoor stay of the Confirmation Order until March 20, 2025, based on issues in Liberia and Greece that this Court already held are irrelevant to the Confirmation Order. Reed Smith also sought reconsideration of comity issues directly, and correctly addressed by the Court in the Decision. Reed Smith also fabricated issues of compliance like the purported "confidentiality" of the AOR. *See id.* at 3. In doing so, Reed Smith continues to act as if it, not the Court, can unilaterally determine when this Court's orders apply, stating "notwithstanding Your Honor's January 24 oral ruling and the Order, recognition in Liberia is still required for the Confirmation Order to take effect there." *Id.*

22.     Reed Smith further argued that because "new" proceedings have been initiated in Greece by Holdings, a stay of the Confirmation Order is necessary to provide "clarity" as to the very issues addressed by this Court in the Decision and Order. *See id.* at 2, 3. But Reed Smith, as it often does, left out the fact that the Greek and Liberian proceedings were commenced by Holdings because of Reed Smith's and its clients' opposition to the Confirmation Order, as well as the fact that Reed Smith and its clients have opposed recognition of the Confirmation Order in Greece and Liberia. *See* Docket No. 1412 ¶ 18.

23.     The duplicity of Reed Smith against Holdings, its former client, is laid out in Holdings' responsive letter filed on February 5, 2025 [Docket No. 1409]. But one need look no further than statements made by Mr. Solomon and Mr.

Hadjieleftheriadis to this Court, to see that Reed Smith's instruction by the "Provisional Board" has been to obstruct implementation of the Plan. *See, e.g.,* Solomon Decl. [Docket No. 1288] ¶ 41 ("We were also informed that the Provisional Board . . . had designated Reed Smith to represent Holdings and directed Reed Smith to refuse all requests contained in the Spears Letter. We were also directed to object to or pursue other legal remedies disputing the authority of Togut or any other counsel that was not appointed by the Provisional Board . . . ."); Hadjieleftheriadis Decl. [Docket No. 1290], Ex. A at Pgs 42 of 205 (referring to creating "obstacle[s] to implementing the Plan"), 46 of 205 (same).

24.     On February 5, 2025, both the Majority Shareholders and Reed Smith, acting for itself and purportedly on behalf of "Provisional Holdings," each filed a notice of appeal of the Order [Docket Nos. 1411, 1413] and a related motion to stay the Order [Docket Nos. 1412, 1414], even though the Order does nothing more than require compliance with the Confirmation Order. Reed Smith and its clients chose not to seek a stay of the Confirmation Order, which is now final and binding, as this Court has already held. *See* Decision at 27:13-15. The appeal, which fails to satisfy the applicable standard for a stay, is interlocutory and should not be allowed to proceed.

25.     It should also be noted that Reed Smith filed the appeal and motion to stay on behalf of "Provisional Holdings" after this Court held that Provisional Holdings does not exist. Decision at 26:17-20. As Judge Liman observed, Reed Smith's clients "are by operation of the plan, are the former directors of Eletson Holdings." *See* Ex. 13 (Dec. 23, 2024 S.D.N.Y. Hr'g Tr.) at 20:12-14. Reed Smith should stop pretending that those individuals are not its clients, whose interests Reed Smith now represents against the interests of its former client, Holdings.

10

26.     Reed Smith and the other Ordered Parties are trying to buy themselves time with the above misconduct; they are bent on circumventing, not satisfying, the Order.  Their mockery of this Court's and Judge Liman's rulings warrants severe sanctions.

### RELIEF REQUESTED

27.     Paragraph 4 of the Order provides that if by the Compliance Deadline, the applicable parties do not update or amend (a) Holdings' AOR to reflect Adam Spears as AOR of Holdings and (b) Holdings' corporate governance documents on file with LISCR, then "Holdings may request a hearing on shortened notice . . . to determine whether the applicable parties are in violation of this Order, the Decision, the Plan, the Confirmation Order, and/or the Bankruptcy Code, as applicable, and consider such other and further relief, including, without limitation, the imposition of coercive and/or compensatory monetary sanctions."  Order ¶ 4.

28.     As of the date hereof, the Ordered Parties have failed to comply with the Order and continue to act in derogation of their obligations under the Plan, the Confirmation Order, the Decision, and the Order.

29.     As set forth in paragraphs 65 to 66 of the Sanctions Motion and paragraph 21 of the Sanctions Reply, which are incorporated herein by reference, the Court can order coercive monetary sanctions and other relief to compel compliance with its orders.

30.     Thus, in accordance with the terms of the Order, Holdings requests that the Court (a) find the Ordered Parties in contempt of Court, (b) again compel them to update the AOR, (c) impose coercive monetary sanctions against the Ordered Parties on a joint and several basis of $25,000 per day, and (d) require the Ordered Parties on a joint and several basis to pay, on a joint and several basis, Holdings' fees and expenses

11

in connection with this Motion, the Sanctions Motion, the Liberian proceedings, the

Greek proceedings, and all further actions related to updating the AOR until the

Ordered Parties do so.

## RESERVATION OF RIGHTS

31.     Holdings reserves all rights, including the right to seek additional

sanctions and damages against the Ordered Parties, or any additional parties, for any

conduct, including conduct that occurred prior to or after the Effective Date, or for any

other purposes.

## NOTICE

32.     Notice of this Motion will be given to the following parties or their

counsel:  (a) the Ordered Parties; (b) the U.S. Trustee; and (c) any party that has

requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties").  Holdings

submits that, in light of the nature of the relief requested, no other or further notice

need be provided.

33.     After the Court schedules the hearing with respect to this Motion,

Holdings will file a notice of hearing and serve such notice on the Notice Parties.


*[Concludes on following page.]*

## <u>CONCLUSION</u>

**WHEREFORE**, Holdings respectfully requests that the Court (a) enter the Proposed Order, and (b) grant such other and further relief as the Court deems just and proper.

DATED:  February 6, 2025
New York, New York

TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Kyle J. Ortiz*
KYLE J. ORTIZ
BRYAN M. KOTLIAR
BRIAN F. SHAUGHNESSY
AMANDA C. GLAUBACH
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel for Eletson Holdings Inc.*

<u>**Exhibit A**</u>

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                    :
In re:                              :        Chapter 11
                                    :
ELETSON HOLDINGS INC., et al.,[1]   :        Case No. 23-10322 (JPM)
                                    :
                                    :        (Jointly Administered)
            Debtors.                :
                                    :
-----------------------------------------------------------------x

### FURTHER ORDER IN SUPPORT OF CONFIRMATION AND CONSUMMATION OF THE COURT-APPROVED PLAN OF REORGANIZATION

Upon the motion (the "Motion")[2] of Eletson Holdings Inc. ("Holdings") for entry of an order (this "Order"), pursuant to sections 105, 1141, and 1142 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), compelling the Ordered Parties to update Holdings' AOR and imposing sanctions and other costs until the Ordered Parties do so; and the Court having jurisdiction to consider the Motion and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, 11 U.S.C. §§ 105 and 1142, and the Court's inherent jurisdiction to interpret and enforce its own orders (including the Confirmation Order ordering that the Plan be implemented and the Order in Support (defined below)); and consideration of the Motion and relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court having the authority to enter a final order consistent with Article

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

III of the United States Constitution; and venue being proper before this Court pursuant
to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been
provided; and it appearing that no other or further notice need be provided; and it
appearing that the relief requested in the Motion is in the best interests of the Debtors,
their estates, their creditors, all parties in interest; and the Court having reviewed the
Motion and the declaration annexed thereto; and this Court having issued an oral
decision on January 24, 2025 (the "Decision") and entered the *Order in Support of
Confirmation and Consummation of the Court-Approved Plan of Reorganization* on January
29, 2025 [Docket No. 1402] (the "Order in Support");[3] and this Court having determined
that the legal and factual bases set forth in the Motion establish just cause for the relief
granted herein; and all objections to the Motion, if any, having been withdrawn or
overruled; and upon all of the proceedings had before the Court and after due
deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

      1.     The Court FINDS that the Ordered Parties are in contempt of Court
as a result of their violations of the Bankruptcy Code, the Plan, the Confirmation Order,
the Decision, and the Order in Support.

      2.     The Debtors and the Related Parties,[4] including without limitation,
the Ordered Parties, are authorized, required, and directed to immediately take all steps

---

[3]    A copy of the Decision is attached as Exhibit A to the Order in Support.

[4]    As set forth in Section 1.124 of the Plan,

      "***Related Parties*** means, subject to any exclusions expressly set forth in the Plan, (a) any
      Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest,
      successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment
      funds or investment vehicles, managed or advised accounts, funds, or other entities, and
      investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing
      in clauses (a) and (b), such Entity's or Person's respective current and former officers,
      directors, principals, equity holders (regardless of whether such interests are held
      directly or indirectly, and any fund managers, fiduciaries, or other agents with any

reasonably necessary to update or amend (a) Holdings' AOR to reflect that Adam

Spears is Holdings' AOR and (b) Holdings' corporate governance documents on file

with LISCR as directed by Holdings.

　　　　3.　　　The Court hereby imposes the following sanctions on each of the

Ordered Parties on a joint and several basis:  (a) coercive monetary sanctions of $25,000

per day until Holdings' AOR is updated to reflect that Adam Spears is Holdings' AOR;

(b) compensatory monetary sanctions in a to-be-determined amount to pay for

Holdings' fees and expenses in connection with the Motion, the Sanctions Motion, the

Liberian proceedings, the Greek proceedings, and all further actions related to updating

the AOR until the Ordered Parties do so.

　　　　4.　　　This Order is immediately effective and enforceable upon its entry.

　　　　5.　　　This Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation, interpretation, or reinforcement of this

Order.

Dated: _____, 2025

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　HONORABLE JOHN P. MASTANDO III
　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE

---

　　　　involvement related to the Debtors), members, partners, employees, agents, sub-agents,
　　　　trustees, advisory board members, financial advisors, attorneys, accountants, actuaries,
　　　　managers, investment managers, investment bankers, consultants, representatives,
　　　　management companies, fund advisors and other professionals; and (d) with respect to
　　　　each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs,
　　　　executors, estates, servants, and nominees.

**Exhibit B**

**Kotliar Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ELETSON HOLDINGS INC., et al.,[1] | : | Case No. 23-10322 (JPM) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors[1]. | : |  |
|  | : |  |

---------------------------------------------------------------x

### DECLARATION OF BRYAN M. KOTLIAR, ESQ. IN SUPPORT OF EMERGENCY MOTION OF ELETSON HOLDINGS INC. FOR ENTRY OF A FURTHER ORDER IN SUPPORT OF CONFIRMATION AND CONSUMMATION OF THE COURT-APPROVED PLAN OF REORGANIZATION

I, Bryan M, Kotliar, Esq. hereby declare under penalty of perjury, pursuant to section 1746 of Title 28 of the United States Code, as follows:

1.      I am a partner at the law firm of Togut, Segal & Segal LLP (the "Togut Firm"), counsel to Eletson Holdings Inc. ("Holdings"), as reorganized, in the above-captioned chapter 11 cases.

2.      I respectfully submit this Declaration in support of the *Emergency Motion of Eletson Holdings Inc. for Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* (the "Motion") filed contemporaneously herewith.

3.      Attached hereto are true and correct copies of the following documents:

---

[1]     The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

| Exhibit | Description |
|---|---|
| 1. | January 26, 2025 Email from B. Kotliar to Ordered Parties |
| 2. | January 28, 2025 Letter from L. Solomon to B. Kotliar |
| 3. | January 28, 2025 Email from K. Ortiz to A. Conn and L. Solomon |
| 4. | February 4, 2025 Email from A. Conn to B. Kotliar |
| 5. | February 4, 2025 Letter from L. Solomon to B. Kotliar |
| 6. | November 15, 2024 Email from L. Solomon to B. Kotliar |
| 7. | Notice of Motion to Strike Stipulation and Agreement to Dismiss Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure [Case No. 24-cv-08672-LJL, Docket No. 43] |
| 8. | Declaration of John Markianos-Daniolos Regarding the Motion to Strike Stipulation and Agreement to Dismiss Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure [Case No. 24-cv-08672-LJL, Docket No. 44] |
| 9. | Declaration of Gerald Padmore Confirming the Declaration of Betty Lamin-Blamo Dated December 9, 2024, Which was Filed in the Bankruptcy Court [Case No. 24-cv-08672-LJL, Docket No. 45] |
| 10. | Memorandum in Support of Court-Designated "Motion to Strike" Stipulation and Agreement to Dismiss Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure [Case No. 24-cv-08672-LJL, Docket No. 46] |
| 11. | Declaration of Louis M. Solomon [Case No. 24-cv-08672-LJL, Docket No. 47] |
| 12. | December 23, 2024 District Court Hearing Transcript |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true to the best of my knowledge.

Dated:  February 6, 2025
        New York, New York

                              /s/ Bryan M. Kotliar
                              Bryan M. Kotliar

# Exhibit 1

**From:** **Bryan Kotliar** bkotliar@teamtogut.com  📎
**Subject:** Eletson - Court Directed Obligations
**Date:** January 26, 2025 at 7:02 PM

**To:** Solomon, Louis M. LSolomon@reedsmith.com, Eletson Bankruptcy Team (S) EletsonBankruptcyTeam@reedsmith.com, Curtin, William E. wcurtin@sidley.com, Sabino, Michael msabino@sidley.com, michael.lazaroff@rimonlaw.com, anthony.acampora@rimonlaw.com, DANIOLOS John Markianos j.markianos@daniolos.gr, vassilis.kertsikoff@eletson.com, vasilis.hadjieleftheriadis@eletson.com, lascarina.karastamati@eletson.com

**Cc:** Kyle Ortiz kortiz@teamtogut.com, Brian Shaughnessy bshaughnessy@teamtogut.com, Jared Borriello jborriello@teamtogut.com, John McClain jmcclain@teamtogut.com

BK

---

To: Reed Smith, Sidley, Daniolos, Rimon, Mr. Kertsikoff,* Ms. Karastamati,* and Mr. Hadjieleftheriadis:*

*(\*note: we understand you are not represented by counsel individually in this matter, if that is not the case, please identify your counsel and provide their contact information)*

As you're aware, this past Friday, the Court directed Holdings' former shareholders, officers, directors, counsel, and others to comply with the Plan and Confirmation Order to assist in effectuating the Plan, including by taking all steps "reasonably necessary as requested by the board of Reorganized Eletson Holdings Inc. or its agent to assist in amending the AOR and updating the corporate governance documents."  *See* Jan. 24, 2025 Hr'g Tr. at 43:16-44:3 (copy attached). This is in addition to your and the other parties' obligations already set forth in the Plan and Confirmation and required by the Bankruptcy Code.

We are requesting that you take the following actions as soon as possible.  Again, given this recent ruling, your obligations to cooperate in good faith with us under paragraph 5 of the Confirmation Order, and the injunctive provisions of the Confirmation Order, we expect that you will work with us in good faith to accomplish these and other tasks to effectuate the Plan.

- (1) Update or amend Holdings' AOR to reflect that Adam Spears is Holdings' AOR, by no later than seven days from the entry of the order to be entered by the Court

- (2) Assist with the filing of further amended articles of incorporation with LISCR by the current AOR or Mr. Spears as the new AOR, by no later than seven days from the entry of the order to be entered by the Court.

- (3) Withdraw all pleadings filed in opposition to the recognition proceeding currently pending in Liberia, including, without limitation, the opposition to the petition, the motion to strike, the motion to intervene, and the motion to dismiss.

- (4) Update or amend all other AOR or similar filings with applicable authorities for Holdings' subsidiaries, including, without limitation, the four SMEs and Eletson Corp.

- (5) Obtain or provide certificates of incumbency for Holdings and each of its wholly owned subsidiaries, including, without limitation, the four SMEs and Eletson Corp, reflecting their new management.

- (6) Provide days and times that Holdings' representatives can obtain keys and passwords for Eletson Maritime's offices located in Stanford, CT and Eletson Corp.'s offices located in Greece.

- (7) Describe all property located at the Stanford, CT office and Greek offices and identify all property that has been removed from those locations since November 19, 2024 (or confirm in writing that no property has been removed since such date)

- (8) Contact all banks and for all accounts maintained by Holdings and its wholly owned subsidiaries, including the four SMEs and Eletson Corp., instruct the banks to remove access and authorizations for all existing personnel and replace and direct new authorizations and access for Adam Spears, Len Hoskinson, and Mark Lichtenstein

  - We have been in contact with what we understand to be the significant majority of the existing banks.
  - We will email the banks which we've had contact with, copy you into the email chain as well as Laskarina Karastamati, Vasilis Kertsikoff, and Vasilis Hadjieleftheriadis, and issue a joint instruction on yours and their behalf.
  - To the extent that the banks respond with any questions, you are directed to inform them of the foregoing instructions and changes to the authorizations.
  - You are also directed to cooperate with us and the banks in providing all paperwork requested by the banks, such as various corporate documents to the extent that your assistance is needed with doing so.

- (9) File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."

- (10) Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.

- (11) Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.

- (12) Instruct all counsel or former counsel acting or purporting to act on behalf of Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.

This list is not exhaustive and is not intended to be a complete list of all things needed from you to effectuate the Plan and we reserve all rights, including to amend or supplement this list at any time.

Given this recent ruling, we expect your prompt good faith cooperation. We also expect that you will share this message with anyone not included on this email chain that you know are needed to effectuate these and other implementation tasks.

**Please respond to this email by no later than January 28 at 5:00 p.m. (ET) confirming that you will work with us in good faith.**

Best regards,

Bryan

 BKNYSD0469_01-24-2025.pdf

---

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

TOGUT SEGAL & SEGAL LLP

**Exhibit 2**



**Louis M. Solomon**
Direct Phone:  +1 212 549 0400
Email:  lsolomon@reedsmith.com

Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
+1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

January 28, 2025

**By Electronic Mail**

Bryan Kotliar, Esq.
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119
bkotliar@teamtogut.com

Re: *In re Eletson Holdings, Inc., et. al*., Bankr. S.D.N.Y. 1:23-bk-10322 (JPM)

Dear Bryan:

Reed Smith LLP ("Reed Smith") is in receipt of your email sent Sunday, January 26, 2025 requesting that Reed Smith (and others not represented by Reed Smith) take certain actions. We write to inform you that, following the Court's ruling on Friday, January 24, 2025, Reed Smith's role in the above-captioned action (and related appeals) has been limited to the following (I'm excluding representations in the UK and BVI, if any, and subject to any clarification to be made by the Court about the presence in this action of Provisional Holdings):

1. Responding to all motions and applications in which Reed Smith itself has been named as a party and, in one case, the fee application of Dr. Furchtgott-Roth;

2. Any appeal from the order to be entered by Judge Mastando following his 1/24 decision;

3. The pending appeal to the Second Circuit from Judge Liman's dismissal of Provisional Eletson Holding's appeal from the Bankruptcy court (*see In Re: Eletson Holdings Inc*, Case No. 25-176), including the recently requested briefing by Judge Liman regarding a motion to strike the stipulation of voluntary dismissal of such appeal and Reorganized Holdings's Motion to Strike the notice of appeal (*see In Re: Eletson Holdings Inc.,* Case No. 1:24-cv-08672-LJL, Dkt No. 38; *Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL, Dkt. No. 253);

4. Briefing and argument regarding Goulston & Storrs PC's *Motion to Compel Reed Smith LLP To Produce The Eletson Client File*, *Eletson Holdings Inc. et al. v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL, Dkt. No. 242). (Until ordered otherwise, Reed Smith remains counsel in that matter.)

Reed Smith intends to prepare and file a notice to Judge Mastando so that there is no confusion. Reed Smith recognizes that any future obligation to "cooperate in good faith" is going to be animated by the

Bryan Kotliar, Esq.
January 28, 2025
Page 2



above matters, and if you disagree with that, we are willing to discuss it. Accordingly, Reed Smith responds to your requests as follows:

**1.    Update or amend Holdings' AOR to reflect that Adam Spears is Holdings' AOR, by no later than seven days from the entry of the order to be entered by the Court.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**2.    Assist with the filing of further amended articles of incorporation with LISCR by the current AOR or Mr. Spears as the new AOR, by no later than seven days from the entry of the order to be entered by the Court.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**3.    Withdraw all pleadings filed in opposition to the recognition proceeding currently pending in Liberia, including, without limitation, the opposition to the petition, the motion to strike, the motion to intervene, and the motion to dismiss.**

Reed Smith does not and has never represented any parties in connection with proceedings in Liberia. Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**4.    Update or amend all other AOR or similar filings with applicable authorities for Holdings' subsidiaries, including, without limitation, the four SMEs and Eletson Corp.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**5.    Obtain or provide certificates of incumbency for Holdings and each of its wholly owned subsidiaries, including, without limitation, the four SMEs and Eletson Corp, reflecting their new management.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

Bryan Kotliar, Esq.
January 28, 2025
Page 3



**6.      Provide days and times that Holdings' representatives can obtain keys and passwords for Eletson Maritime's offices located in Stanford, CT and Eletson Corp.'s offices located in Greece.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. Reed Smith does not possess the information requested. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**7.      Describe all property located at the Stanford, CT office and Greek offices and identify all property that has been removed from those locations since November 19, 2024 (or confirm in writing that no property has been removed since such date)**

Reed Smith does not possess the information, capacity, or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**8.      Contact all banks and for all accounts maintained by Holdings and its wholly owned subsidiaries, including the four SMEs and Eletson Corp., instruct the banks to remove access and authorizations for all existing personnel and replace and direct new authorizations and access for Adam Spears, Len Hoskinson, and Mark Lichtenstein**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. Reed Smith does not possess the information requested. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

**9.      File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."**

Reed Smith does not and has never represented the parties who sought relief from the Greek Court. Reed Smith does not possess the capacity or authority to comply with the request.

**10.     Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.**

Reed Smith does not possess the capacity or authority to comply with the request, and such request is outside the scope of its limited representation. Reed Smith is unaware that any instructions have been provided to Novum or any other SME charterers and has not searched any privileged documents to ascertain whether, as part of discovery, information concerning charterers was made available.

**11.     Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.**

Reed Smith does not possess the information, capacity, or authority to comply with the request, and such request is outside the scope of its limited representation. However, in an effort to cooperate in good faith, Reed Smith has passed along the request.

Bryan Kotliar, Esq.
January 28, 2025
Page 4



        12.    **Instruct all counsel or former counsel acting or purporting to act on behalf of
Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.**

        Reed Smith does not possess the capacity or authority to comply with the request. Reed Smith's
representation of Eletson Holdings, Inc. terminated upon the Effective Date and Reorganized Eletson
Holdings, Inc. has not sought to re-engage Reed Smith. And obviously, with respect to the matters in
which Reed Smith is engaged, it will not be taking instruction from the entities we think you are
referring to here.

Sincerely,

Louis M. Solomon

**Exhibit 3**

**From:** Kyle Ortiz kortiz@teamtogut.com
**Subject:** Re: Eletson - Court Directed Obligations
**Date:** January 28, 2025 at 8:50 PM
**To:** Conn, Alyssa F.  AConn@reedsmith.com
**Cc:** Bryan Kotliar bkotliar@teamtogut.com, Solomon, Louis M. LSolomon@reedsmith.com, Eletson Bankruptcy Team (S)
EletsonBankruptcyTeam@reedsmith.com, Curtin, William E. wcurtin@sidley.com, Sabino, Michael msabino@sidley.com,
michael.lazaroff@rimonlaw.com, anthony.acampora@rimonlaw.com, DANIOLOS John Markianos j.markianos@daniolos.gr,
vassilis.kertsikoff@eletson.com, vasilis.hadjieleftheriadis@eletson.com, lascarina.karastamati@eletson.com, Brian Shaughnessy
bshaughnessy@teamtogut.com, Jared Borriello jborriello@teamtogut.com, John McClain jmcclain@teamtogut.com

KO

Please see below from Mr. Kotliar (who is having tech issues):

Lou, Alyssa,

You did not respond to my request that you confirm that Reed Smith is going to work with us in good faith.  We are going to start by
assuming that you will, since those are your obligations under the Court's January 24 decision (which is not stayed, even if you do say
you intend to appeal) and have been long outstanding under the Confirmation Order since November 4.  If that is not the case, let us
know.

Your request to limit your cooperation in good faith to the four matters enumerated in your letter is misplaced.  As the Court directed in
its January 24 decision and the Confirmation Order, your are obligated "to comply with the plan and the confirmation order to assist in
effectuating the Chapter 11 plan" and you are "ordered to take all steps reasonably necessary as requested by the board of Reorganized
Eletson Holdings Inc. or its agent to assist in amending the AOR and updating the corporate governance documents, including the
amended articles of incorporation with LISCR, within seven days of the date of the order to be issued following this ruling."  Jan 24, 2025
Hr'g Tr. at 43:16-3.

To that end, in nearly all of our initial requests, you state that Reed Smith "has passed along the request." How did you pass along the
request and who, specifically did you contact?  We request that you email these parties and copy us so that we can dialogue with them
directly.

We also request that you provide all of your communications with these parties and identify who they are.  Reed Smith has taken the
position several times that it does not represent any of the parties to the Sanctions Motion.  If that is the case, your communications with
these parties are not privileged, and we request that you provide them.  If you are asserting any privilege, we request that you identify
which parties with whom you are asserting a privilege and the basis therefore.

Finally, as to the AOR issue, please identify for us who the AOR is and provide their contact information.  We'd note that despite
claiming that you are unable to fulfill any of our requests, you were able to obtain a certificate of incumbency for Eletson Holdings and
Eletson Corporation (each without their respective consent) which you provided to Judge Liman in the district court proceedings.  You
are clearly able to work with the applicable parties when it suits you.  We request that you identify who you worked with to obtain these
certificates and provide copies of all communications with them.

All rights reserved.

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

On Jan 28, 2025, at 5:41 PM, Conn, Alyssa F. <AConn@reedsmith.com> wrote:

Bryan,

Please see the attached correspondence.

**Alyssa Conn**
Global Commercial Disputes
*She/Her/Hers*

aconn@reedsmith.com
D: +1 212.549.4250
M: +1 908.655.2662

**Reed Smith**
599 Lexington Avenue
New York, NY 10022-7650
T: +1 212.521.5400

F: +1 212 521 5450
**reedsmith.com**

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Sunday, January 26, 2025 7:02 PM
**To:** Solomon, Louis M. <LSolomon@reedsmith.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; Curtin, William E. <wcurtin@sidley.com>; Sabino, Michael <msabino@sidley.com>; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; DANIOLOS John Markianos <j.markianos@daniolos.gr>; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com
**Cc:** Kyle Ortiz <kortiz@teamtogut.com>; Brian Shaughnessy <bshaughnessy@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; John McClain <jmcclain@teamtogut.com>
**Subject:** Eletson - Court Directed Obligations

---

**External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>**

---

To: Reed Smith, Sidley, Daniolos, Rimon, Mr. Kertsikoff,* Ms. Karastamati,* and Mr. Hadjieleftheriadis:*

*(*note: we understand you are not represented by counsel individually in this matter, if that is not the case, please identify your counsel and provide their contact information)*

As you're aware, this past Friday, the Court directed Holdings' former shareholders, officers, directors, counsel, and others to comply with the Plan and Confirmation Order to assist in effectuating the Plan, including by taking all steps "reasonably necessary as requested by the board of Reorganized Eletson Holdings Inc. or its agent to assist in amending the AOR and updating the corporate governance documents." *See* Jan. 24, 2025 Hr'g Tr. at 43:16-44:3 (copy attached). This is in addition to your and the other parties' obligations already set forth in the Plan and Confirmation and required by the Bankruptcy Code.

We are requesting that you take the following actions as soon as possible. Again, given this recent ruling, your obligations to cooperate in good faith with us under paragraph 5 of the Confirmation Order, and the injunctive provisions of the Confirmation Order, we expect that you will work with us in good faith to accomplish these and other tasks to effectuate the Plan.

- (1) Update or amend Holdings' AOR to reflect that Adam Spears is Holdings' AOR, by no later than seven days from the entry of the order to be entered by the Court

- (2) Assist with the filing of further amended articles of incorporation with LISCR by the current AOR or Mr. Spears as the new AOR, by no later than seven days from the entry of the order to be entered by the Court.

- (3) Withdraw all pleadings filed in opposition to the recognition proceeding currently pending in Liberia, including, without limitation, the opposition to the petition, the motion to strike, the motion to intervene, and the motion to dismiss.

- (4) Update or amend all other AOR or similar filings with applicable authorities for Holdings' subsidiaries, including, without limitation, the four SMEs and Eletson Corp.

- (5) Obtain or provide certificates of incumbency for Holdings and each of its wholly owned subsidiaries, including, without limitation, the four SMEs and Eletson Corp, reflecting their new management

management.

- (6) Provide days and times that Holdings' representatives can obtain keys and passwords for Eletson Maritime's offices located in Stanford, CT and Eletson Corp.'s offices located in Greece.

- (7) Describe all property located at the Stanford, CT office and Greek offices and identify all property that has been removed from those locations since November 19, 2024 (or confirm in writing that no property has been removed since such date)

- (8) Contact all banks and for all accounts maintained by Holdings and its wholly owned subsidiaries, including the four SMEs and Eletson Corp., instruct the banks to remove access and authorizations for all existing personnel and replace and direct new authorizations and access for Adam Spears, Len Hoskinson, and Mark Lichtenstein

- We have been in contact with what we understand to be the significant majority of the existing banks.
- We will email the banks which we've had contact with, copy you into the email chain as well as Laskarina Karastamati, Vasilis Kertsikoff, and Vasilis Hadjieleftheriadis, and issue a joint instruction on yours and their behalf.
- To the extent that the banks respond with any questions, you are directed to inform them of the foregoing instructions and changes to the authorizations.
- You are also directed to cooperate with us and the banks in providing all paperwork requested by the banks, such as various corporate documents to the extent that your assistance is needed with doing so.

- (9) File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."

- (10) Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.

- (11) Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.

- (12) Instruct all counsel or former counsel acting or purporting to act on behalf of Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.

This list is not exhaustive and is not intended to be a complete list of all things needed from you to effectuate the Plan and we reserve all rights, including to amend or supplement this list at any time.

Given this recent ruling, we expect your prompt good faith cooperation.  We also expect that you will share this message with anyone not included on this email chain that you know are needed to effectuate these and other implementation tasks.

**Please respond to this email by no later than January 28 at 5:00 p.m. (ET) confirming that you will work with us in good faith.**

Best regards,

Bryan

---

**Bryan M. Kotliar** | **Partner**

Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com


<image001.png>


This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

RSUSv12021

<2025-01-28 Solomon Ltr. to B. Kotliar re_ Court Directed Obligations(815461397.3).pdf>

**Exhibit 4**

**From:** Conn, Alyssa F. AConn@reedsmith.com 📎
**Subject:** RE: Eletson - Court Directed Obligations
**Date:** February 4, 2025 at 11:13 AM
**To:** Solomon, Louis M. LSolomon@reedsmith.com, Bryan Kotliar bkotliar@teamtogut.com, Kyle Ortiz kortiz@teamtogut.com
**Cc:** Eletson Bankruptcy Team (S) EletsonBankruptcyTeam@reedsmith.com, William E. Curtin wcurtin@sidley.com, Michael Sabino msabino@sidley.com, michael.lazaroff@rimonlaw.com, anthony.acampora@rimonlaw.com, John Markianos DANIOLOS j.markianos@daniolos.gr, vassilis.kertsikoff@eletson.com, vasilis.hadjieleftheriadis@eletson.com, lascarina.karastamati@eletson.com, Brian Shaughnessy bshaughnessy@teamtogut.com, Jared Borriello jborriello@teamtogut.com, John McClain jmcclain@teamtogut.com

AC

Bryan,

Please see the attached correspondence.

**Alyssa Conn**
Global Commercial Disputes
*She/Her/Hers*

aconn@reedsmith.com
D: +1 212.549.4250
M: +1 908.655.2662

**Reed Smith**
599 Lexington Avenue
New York, NY 10022-7650
T: +1 212 521 5400
F: +1 212 521 5450
reedsmith.com

---

**From:** Solomon, Louis M. <LSolomon@reedsmith.com>
**Sent:** Friday, January 31, 2025 3:13 PM
**To:** Bryan Kotliar <bkotliar@teamtogut.com>; Kyle Ortiz <kortiz@teamtogut.com>
**Cc:** Conn, Alyssa F. <AConn@reedsmith.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; William E. Curtin <wcurtin@sidley.com>; Michael Sabino <msabino@sidley.com>; michael.lazaroff@rimonlaw.com; anthony.acampora@rimonlaw.com; John Markianos DANIOLOS <j.markianos@daniolos.gr>; vassilis.kertsikoff@eletson.com; vasilis.hadjieleftheriadis@eletson.com; lascarina.karastamati@eletson.com; Brian Shaughnessy <bshaughnessy@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>; John McClain <jmcclain@teamtogut.com>
**Subject:** RE: Eletson - Court Directed Obligations

We are working on it, and I think we are talking Monday right?  We have a great many filings in these matters.

Regards.

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile:  +1.917.292.2484

Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

**From:** Bryan Kotliar <[bkotliar@teamtogut.com](mailto:bkotliar@teamtogut.com)>
**Sent:** Friday, January 31, 2025 2:49 PM
**To:** Kyle Ortiz <[kortiz@teamtogut.com](mailto:kortiz@teamtogut.com)>
**Cc:** Conn, Alyssa F. <[AConn@reedsmith.com](mailto:AConn@reedsmith.com)>; Solomon, Louis M.
<[LSolomon@reedsmith.com](mailto:LSolomon@reedsmith.com)>; Eletson Bankruptcy Team (S)
<[EletsonBankruptcyTeam@reedsmith.com](mailto:EletsonBankruptcyTeam@reedsmith.com)>; William E. Curtin <[wcurtin@sidley.com](mailto:wcurtin@sidley.com)>;
Michael Sabino <[msabino@sidley.com](mailto:msabino@sidley.com)>; [michael.lazaroff@rimonlaw.com](mailto:michael.lazaroff@rimonlaw.com);
[anthony.acampora@rimonlaw.com](mailto:anthony.acampora@rimonlaw.com); John Markianos DANIOLOS
<[j.markianos@daniolos.gr](mailto:j.markianos@daniolos.gr)>; [vassilis.kertsikoff@eletson.com](mailto:vassilis.kertsikoff@eletson.com);
[vasilis.hadjieleftheriadis@eletson.com](mailto:vasilis.hadjieleftheriadis@eletson.com); [lascarina.karastamati@eletson.com](mailto:lascarina.karastamati@eletson.com); Brian
Shaughnessy <[bshaughnessy@teamtogut.com](mailto:bshaughnessy@teamtogut.com)>; Jared Borriello
<[jborriello@teamtogut.com](mailto:jborriello@teamtogut.com)>; John McClain <[jmcclain@teamtogut.com](mailto:jmcclain@teamtogut.com)>
**Subject:** Re: Eletson - Court Directed Obligations

External E-Mail - FROM [bkotliar@teamtogut.com](mailto:bkotliar@teamtogut.com) <[bkotliar@teamtogut.com](mailto:bkotliar@teamtogut.com)>

Lou, Alyssa - following up on the below.  When can we expect your responses?

—

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
[bkotliar@teamtogut.com](mailto:bkotliar@teamtogut.com) | [togutlawfirm.com](http://togutlawfirm.com)

On Jan 28, 2025, at 8:50 PM, Kyle Ortiz <[kortiz@teamtogut.com](mailto:kortiz@teamtogut.com)> wrote:

Please see below from Mr. Kotliar (who is having tech issues):

Lou, Alyssa,

You did not respond to my request that you confirm that Reed Smith is going
to work with us in good faith.  We are going to start by assuming that you
will, since those are your obligations under the Court's January 24 decision
(which is not stayed, even if you do say you intend to appeal) and have been
long outstanding under the Confirmation Order since November 4.  If that is
not the case, let us know.

Your request to limit your cooperation in good faith to the four matters
enumerated in your letter is misplaced.  As the Court directed in its January
24 decision and the Confirmation Order, your are obligated "to comply with
the plan and the confirmation order to assist in effectuating the Chapter 11
plan" and you are "ordered to take all steps reasonably necessary as
requested by the board of Reorganized Eletson Holdings Inc. or its agent to
assist in amending the AOR and updating the corporate governance
documents, including the amended articles of incorporation with LISCR,
within seven days of the date of the order to be issued following this ruling."

Jan 24, 2025 Hr g Tr. at 43:16-3.

To that end, in nearly all of our initial requests, you state that Reed Smith "has passed along the request." How did you pass along the request and who, specifically did you contact? We request that you email these parties and copy us so that we can dialogue with them directly.

We also request that you provide all of your communications with these parties and identify who they are. Reed Smith has taken the position several times that it does not represent any of the parties to the Sanctions Motion. If that is the case, your communications with these parties are not privileged, and we request that you provide them. If you are asserting any privilege, we request that you identify which parties with whom you are asserting a privilege and the basis therefore.

Finally, as to the AOR issue, please identify for us who the AOR is and provide their contact information. We'd note that despite claiming that you are unable to fulfill any of our requests, you were able to obtain a certificate of incumbency for Eletson Holdings and Eletson Corporation (each without their respective consent) which you provided to Judge Liman in the district court proceedings. You are clearly able to work with the applicable parties when it suits you. We request that you identify who you worked with to obtain these certificates and provide copies of all communications with them.

All rights reserved.

——

**Bryan M. Kotliar ∣ Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 ∣ New York, NY 10119
Direct: +1 212 201 5582 ∣ Mobile: +1 516 410 1361
bkotliar@teamtogut.com ∣ togutlawfirm.com

On Jan 28, 2025, at 5:41 PM, Conn, Alyssa F. <AConn@reedsmith.com> wrote:

Bryan,

Please see the attached correspondence.

**Alyssa Conn**
Global Commercial Disputes
*She/Her/Hers*

aconn@reedsmith.com
D: +1 212.549.4250
M: +1 908.655.2662

**Reed Smith**
599 Lexington Avenue

New York, NY 10022-7650
T: +1 212 521 5400
F: +1 212 521 5450
reedsmith.com

---

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Sunday, January 26, 2025 7:02 PM
**To:** Solomon, Louis M. <LSolomon@reedsmith.com>; Eletson
Bankruptcy Team (S)
<EletsonBankruptcyTeam@reedsmith.com>; Curtin, William E.
<wcurtin@sidley.com>; Sabino, Michael
<msabino@sidley.com>; michael.lazaroff@rimonlaw.com;
anthony.acampora@rimonlaw.com; DANIOLOS John Markianos
<j.markianos@daniolos.gr>; vassilis.kertsikoff@eletson.com;
vasilis.hadjieleftheriadis@eletson.com;
lascarina.karastamati@eletson.com
**Cc:** Kyle Ortiz <kortiz@teamtogut.com>; Brian Shaughnessy
<bshaughnessy@teamtogut.com>; Jared Borriello
<jborriello@teamtogut.com>; John McClain
<jmcclain@teamtogut.com>
**Subject:** Eletson - Court Directed Obligations


**External E-Mail - FROM bkotliar@teamtogut.com
<bkotliar@teamtogut.com>**

To: Reed Smith, Sidley, Daniolos, Rimon, Mr. Kertsikoff,* Ms.
Karastamati,* and Mr. Hadjieleftheriadis:*

*(\*note: we understand you are not represented by counsel individually
in this matter, if that is not the case, please identify your counsel and
provide their contact information)*

As you're aware, this past Friday, the Court directed Holdings' former
shareholders, officers, directors, counsel, and others to comply with
the Plan and Confirmation Order to assist in effectuating the Plan,
including by taking all steps "reasonably necessary as requested by
the board of Reorganized Eletson Holdings Inc. or its agent to assist in
amending the AOR and updating the corporate governance
documents."  *See* Jan. 24, 2025 Hr'g Tr. at 43:16-44:3 (copy attached).
This is in addition to your and the other parties' obligations already set
forth in the Plan and Confirmation and required by the Bankruptcy
Code.

We are requesting that you take the following actions as soon as
possible.  Again, given this recent ruling, your obligations to cooperate
in good faith with us under paragraph 5 of the Confirmation Order, and
the injunctive provisions of the Confirmation Order, we expect that you
will work with us in good faith to accomplish these and other tasks to
effectuate the Plan.

- (1) Update or amend Holdings' AOR to reflect that Adam Spears is
Holdings' AOR, by no later than seven days from the entry of the order
to be entered by the Court

- (2) Assist with the filing of further amended articles of incorporation with LISCR by the current AOR or Mr. Spears as the new AOR, by no later than seven days from the entry of the order to be entered by the Court.

- (3) Withdraw all pleadings filed in opposition to the recognition proceeding currently pending in Liberia, including, without limitation, the opposition to the petition, the motion to strike, the motion to intervene, and the motion to dismiss.

- (4) Update or amend all other AOR or similar filings with applicable authorities for Holdings' subsidiaries, including, without limitation, the four SMEs and Eletson Corp.

- (5) Obtain or provide certificates of incumbency for Holdings and each of its wholly owned subsidiaries, including, without limitation, the four SMEs and Eletson Corp, reflecting their new management.

- (6) Provide days and times that Holdings' representatives can obtain keys and passwords for Eletson Maritime's offices located in Stanford, CT and Eletson Corp.'s offices located in Greece.

- (7) Describe all property located at the Stanford, CT office and Greek offices and identify all property that has been removed from those locations since November 19, 2024 (or confirm in writing that no property has been removed since such date)

- (8) Contact all banks and for all accounts maintained by Holdings and its wholly owned subsidiaries, including the four SMEs and Eletson Corp., instruct the banks to remove access and authorizations for all existing personnel and replace and direct new authorizations and access for Adam Spears, Len Hoskinson, and Mark Lichtenstein

1. We have been in contact with what we understand to be the significant majority of the existing banks.
2. We will email the banks which we've had contact with, copy you into the email chain as well as Laskarina Karastamati, Vasilis Kertsikoff, and Vasilis Hadjieleftheriadis, and issue a joint instruction on yours and their behalf.
3. To the extent that the banks respond with any questions, you are directed to inform them of the foregoing instructions and changes to the authorizations.
4. You are also directed to cooperate with us and the banks in providing all paperwork requested by the banks, such as various corporate documents to the extent that your assistance is needed with doing so.

- (9) File the necessary pleadings with the Greek Court to withdraw or dismiss with prejudice the proceedings filed there concerning the appointment of the "provisional board."

- (10) Withdraw all instructions provided to Novum and any other SME charterers and contact all charterers and identify Adam Spears as the new contact moving forward.

- (11) Provide a list of and contact information for all key employees and contact such key employees and put them in touch with Adam Spears.

- (12) Instruct all counsel or former counsel acting or purporting to act on behalf of Holdings or any of its wholly owned subsidiaries to only take instructions from the new boards.

This list is not exhaustive and is not intended to be a complete list of all things needed from you to effectuate the Plan and we reserve all rights, including to amend or supplement this list at any time.

Given this recent ruling, we expect your prompt good faith cooperation.  We also expect that you will share this message with anyone not included on this email chain that you know are needed to effectuate these and other implementation tasks.

**Please respond to this email by no later than January 28 at 5:00 p.m. (ET) confirming that you will work with us in good faith.**

Best regards,

Bryan

———

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal **LLP**
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

<image001.png>

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

RSUSv12021

<2025-01-28 Solomon Ltr. to B. Kotliar re_ Court Directed Obligations(815461397.3).pdf>



2025-02-04 Solomon Ltr. to B. Kotliar re_ Court Directed...

**Exhibit 5**



**Driving progress
through partnership**

**Louis M. Solomon**
Direct Phone:  +1 212 549 0400
Email:  lsolomon@reedsmith.com

Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
+1 412 288 3131
Fax +1 412 288 3063
reedsmith.com

February 4, 2025

**By Electronic Mail**

Bryan Kotliar, Esq.
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119
bkotliar@teamtogut.com

Re: *In re Eletson Holdings, Inc., et. al.*, Bankr. S.D.N.Y. 1:23-bk-10322 (JPM)

Dear Bryan:

Reed Smith LLP ("<u>Reed Smith</u>") is in receipt of (1) your January 28, 2025 follow up email ("<u>1/28
Email</u>") to our correspondence; and (2) your email sent on January 30, 2025 ("<u>1/30 Email</u>") regarding
the Order entered in the Bankruptcy Court. We write in a consolidated response to both.

<u>**Scope of Reed Smith's Authority to Act**</u>

Reed Smith disagrees with your statement in the 1/28 Email that it has not responded to your request to
confirm that it will work with you in good faith.  Our letter made no fewer than nine references to our
willingness to do so—indeed, more than willingness; Reed Smith *is* working with you in good faith.
We also would like to correct your misapprehension that Reed Smith "requested" to limit its cooperation
to the four categories of matters set forth in the letter.  Reed Smith was not making a request to limit
cooperation.  Rather, it was reporting a limitation placed on Reed Smith's representation (which was
already limited in scope) by Provisional Holdings, which engaged Reed Smith following the Greek
Court order.

Separate and apart from the above, we note the inconsistency and incompatibility of what you are
requesting.  In your 1/30 Email, you state that Reed Smith has no authority to act on behalf Provisional
Holdings and that it has been terminated as to Reorganized Holdings.  Yet you are asking Reed Smith to
act on behalf of one or both.  If you say Reed Smith is required to carry out actions and accept service
on behalf of Provisional Holdings, then you are acknowledging that Provisional Holdings exists, and
that Reed Smith has the authority to carry out its representation of Provisional Holdings.  If you
maintain that Reed Smith's authority to act on behalf of any Holdings entity terminated as of the
Effective Date, then Reed Smith would have no power to carry out any of your requests.

Under either scenario, Reed Smith's cooperation is manifest—but clearly not enough for you.  Reed
Smith can give nonprivileged documents.  We have.  Reed Smith can also pass along requests.  It has

Bryan Kotliar, Esq.
February 4, 2025
Page 2



done that, too.  It does not control Provisional Holdings, and it has no role in Liberian or Greek law or proceedings.  Reed Smith has made that clear on the record.

**Reed Smith's Contacts at Provisional Holdings**

Your 1/28 Email requests that Reed Smith disclose who it has been passing along the requests to. Reed Smith is happy to provide that information. Reed Smith passed along the requests from your email, along with our response, to its contacts on the board of Provisional Holdings: Vasilis Hadjieleftheriadis and Manolis Andreoulakis. The Daniolos Law Firm (DLF) is our main point of contact, as Greek counsel for Provisional Holdings and/or individual Board members.  We note that your original email cc'd Mr. Hadjieleftheriadis and DLF.

**Request for Communications**

As stated above, Reed Smith's contacts at Provisional Holdings are first, Provisional Holdings's (and/or certain Board members') Greek counsel and second Mr. Hadjieleftheriadis and Mr. Andreoulakis. These communications were and remain privileged.  For your information, as you know, Reed Smith does not represent any of the individuals.

Further, regardless of whether such communications are privileged, it is unclear from your request how these communications would fall under the Court's direction to "assist in effectuating the chapter 11 plan," or take steps reasonably necessary to "assist in amending the AOR and updating the corporate governance documents, including the amended articles of incorporation with LISCR." These are forward-looking tasks that do not require disclosure of prior communications.

**Identification of the AOR**

As Judge Mastando acknowledged during the 1/30 Hearing, there are confidentiality issues related to disclosure of the AOR which have not been ruled on (1/30 Hr'g Tr. 48:1-3). Reed Smith has passed along the request to Provisional Holdings, consistent with Judge Mastando's direction (1/30 Hr'g Tr. 49:18-19).  Reed Smith does not know who the AOR is.

**Certificate of Incumbency**

Reed Smith requested and received the Certificates of Incumbency from Provisional Holdings and Eletson Corporation and disputes any characterization that it obtained them without their consent. We have already provided you with the names of our contacts at Provisional Holdings and have passed along your request.  There is no further action that Reed Smith can take.

Sincerely,

Louis M. Solomon

**Exhibit 6**

From: **Solomon, Louis M.** LSolomon@reedsmith.com 📎
Subject: RE: Eletson
Date: November 15, 2024 at 12:40 PM
To: Bryan Kotliar bkotliar@teamtogut.com
Cc: Osei-Bonsu, Derek M. DOsei-Bonsu@reedsmith.com, Eletson Bankruptcy Team (S) EletsonBankruptcyTeam@reedsmith.com, Zide, Stephen stephen.zide@dechert.com, Herman, David David.Herman@dechert.com, Kyle Ortiz kortiz@teamtogut.com, Brian Shaughnessy bshaughnessy@teamtogut.com, John McClain jmcclain@teamtogut.com, Jared Borriello jborriello@teamtogut.com

Bryan, we have not heard back from counsel on the issues raised on our call yesterday.  I did have one suggestion, which no one has authorized us to suggest but do so in the spirit of trying to move things along.  Would Petitioning Creditors stipulate to going and seeking confirmation of the Plan Order in Liberia and Greece in exchange for a stipulation by the directors of Holdings that they will file the letter once the confirmation is accomplished?  I ask because as I read the Plan it was always the plan to get that confirmation until just recently.

When we hear back from counsel, we will advise.

Regards.

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile:  +1.917.292.2484
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Thursday, November 14, 2024 6:17 PM
**To:** Solomon, Louis M. <LSolomon@reedsmith.com>
**Cc:** Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Eletson Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; Zide, Stephen <stephen.zide@dechert.com>; Herman, David <David.Herman@dechert.com>; Kyle Ortiz <kortiz@teamtogut.com>; Brian Shaughnessy <bshaughnessy@teamtogut.com>; John McClain <jmcclain@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>
**Subject:** Re: Eletson

External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>

Reed Smith team,

As a follow up on today's call, please get back to us with the name of the address of record and person of record for Eletson Holdings Inc. with LISCR.  Please also put us in touch with Greek counsel for the directors and Liberian counsel to discuss today's issues.

Please also let us know what other feedback you receive from whoever you speak to

about the Liberian issues we discussed.

Best regards,

Bryan

———

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

TOGUT SEGAL & SEGAL LLP

> On Nov 13, 2024, at 3:24 PM, Solomon, Louis M.
> <LSolomon@reedsmith.com> wrote:
>
> We used them earlier in the case: HPA.
>
> Best.
>
> **Louis M. Solomon** (bio)
> E-Mail: Lsolomon@reedsmith.com
> Direct Tel.: +1.212.549.0400
> Mobile:  +1.917.292.2484
> Reed Smith LLP
> 599 Lexington Avenue
> New York, New York 10022
>
> _____
>
> **From:** Bryan Kotliar <bkotliar@teamtogut.com>
> **Sent:** Wednesday, November 13, 2024 3:22 PM
> **To:** Solomon, Louis M. <LSolomon@reedsmith.com>
> **Cc:** Osei-Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Eletson
> Bankruptcy Team (S) <EletsonBankruptcyTeam@reedsmith.com>; Zide,
> Stephen <stephen.zide@dechert.com>; Herman, David
> <David.Herman@dechert.com>; Kyle Ortiz <kortiz@teamtogut.com>; Brian
> Shaughnessy <bshaughnessy@teamtogut.com>; John McClain
> <jmcclain@teamtogut.com>; Jared Borriello <jborriello@teamtogut.com>
> **Subject:** Re: Eletson
>
> ==External E-Mail - FROM bkotliar@teamtogut.com <bkotliar@teamtogut.com>==
>
> Tomorrow at 10am ET works for us - I will send a calendar and Zoom link
> shortly.
>
> We are working with Pierre Tweh as our Liberian counsel.
>
> What is the name of your Liberian counsel?  Looking forward to you setting

up that introduction.

---

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com

<image001.png>

On Nov 13, 2024, at 2:24 PM, Solomon, Louis M.
<LSolomon@reedsmith.com> wrote:

Bryan, Derek and I can't make it today.  And Kyle
made clear to the Court how constructive you all
want to be.  Passing that, can you do 930a or 10a
tomorrow?

You know who our Liberian counsel is, and yes will
can try to make an introduction.  Who have you
been using?

Regards.

**Louis M. Solomon** (bio)
E-Mail: Lsolomon@reedsmith.com
Direct Tel.: +1.212.549.0400
Mobile:  +1.917.292.2484
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022

_____

**From:** Bryan Kotliar <bkotliar@teamtogut.com>
**Sent:** Wednesday, November 13, 2024 1:50 PM
**To:** Solomon, Louis M. <LSolomon@reedsmith.com>; Osei-
Bonsu, Derek M. <DOsei-Bonsu@reedsmith.com>; Eletson
Bankruptcy Team (S)
<EletsonBankruptcyTeam@reedsmith.com>
**Cc:** Zide, Stephen <stephen.zide@dechert.com>; Herman,
David <David.Herman@dechert.com>; Kyle Ortiz
<kortiz@teamtogut.com>; Brian Shaughnessy
<bshaughnessy@teamtogut.com>; John McClain
<jmcclain@teamtogut.com>; Jared Borriello
<jborriello@teamtogut.com>
**Subject:** Eletson

**External E-Mail -
FROM bkotliar@teamtogut.com<bkotliar@teamtogut.com>**

Reed Smith team,

Consistent with the Court's direction at today's status conference, please let us know when you are available to meet and confer today regarding the issues with the Liberian registry. I propose 3:30 p.m. (ET) - let us know if that does not work for you.

In the meantime, while we disagree with your explanation that what we are asking for violates Liberian law, we have the following proposed alternatives that we'd like to discuss with you and whichever Liberian counsel you mentioned today. If you have other ideas, please let us know - we are looking to be constructive. In that regard, working constructively toward an Effective Date, kindly introduce us to your Liberian counsel and share with us any laws and requirements you are informed are required to be satisfied to effectuate the Plan.

Finally, to allow for these discussions to continue and for your and your Liberian counsel's time to review, we will adjourn our target effective date to Tuesday, November 19.

**(1) Change AOR to Reorganized Holdings Representatives**

You work with us, our Liberian counsel, and your Liberian counsel on reviewing and revising the draft AOR letter change we sent you on Tuesday and filed with the Court to have the existing AOR designate one of Reorganized Holdings representatives (we picked Adam Spears, we can change his title for purposes of this if that was the issue) which will be submitted on the plan effective date.

**(2) Change AOR to Reed Smith**

Same as item (1) above but instead of a Reorganized Holdings representative, the new AOR can be someone at Reed Smith, Holdings current counsel. Raising this in case there are other issues that you have about the appropriate Reorganized Holdings representative.

**(3) Existing AOR Makes the Filings**

Subject to further discussion with our Liberian counsel, we would likely be willing to have the existing AOR (and please let us know who that is) make the appropriate filings of the amended and restated certificate of incorporation, amended by laws, and shareholders agreement with the Liberian registry after the Effective Date.

*****

Best regards,

Bryan

———

**Bryan M. Kotliar** | **Partner**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5582 | Mobile: +1 516 410 1361
bkotliar@teamtogut.com | togutlawfirm.com


\<image001.png\>

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

RSUSv12021

**Exhibit 7**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 24-cv-08672-LJL |
| Debtors.[1] | [rel. 23-cv-07331-LJL; 24-cv-05096-LJL] |

**NOTICE OF MOTION TO STRIKE STIPULATION AND
AGREEMENT TO DISMISS APPEAL UNDER RULE 42(A) OF THE
FEDERAL RULES OF APPELLATE PROCEDURE**

PLEASE TAKE NOTICE that upon the (i) Declaration of Louis M. Solomon, dated

January 31, 2025, (ii) Declaration of John Markianos-Daniolos, dated January 31, 2025 (iii)

Declaration of Gerald Padmore, dated January 31, 2025, submitted herewith and the exhibits

attached thereto, the accompanying Memorandum of Law dated January 31, 2025, and all prior

pleadings and proceedings had herein, Appellant Eletson Holdings, Inc. ("Holdings"), by and

through its attorneys, shall move this Court, pursuant to this Court's Order dated January 27,

2025 (ECF 38) and Order entered in *In re Eletson Holdings, Inc.*, Case No. 25-176 (2d Cir.) at

ECF 9 before Honorable Lewis J. Liman, at the Daniel Patrick Moynihan United States

Courthouse, Courtroom 15C, 500 Pearl St., New York, NY 10007, at 10 a.m. on February 14,

2025 the Court, for an Order striking the Stipulation and Agreement to Dismiss the Appeal

Under Rule 42(A) of the Federal Rules of Appellate Procedure (ECF 30), and for such other and

further relief as the Court deems just and proper.

---

[1] The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC,
and Agathonissos Finance LLC.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Court Order (ECF 38),

opposition papers are to be filed no later than 5 p.m. on February 7, 2025.

DATED:    New York, New York
              January 31, 2025

**RIMÔN, P.C.**

*/s/ Michael S. Lazaroff*
Michael S. Lazaroff
400 Madison Ave, Suite 11D
New York NY 10017
P: 646.738.4151
michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479 – 6300
anthony.acampora@rimonlaw.com

*Counsel for Appellant Eletson
Holdings, Inc.*

**REED SMITH LLP**

*/s/ Louis M. Solomon*
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: lsolomon@reedsmith.com

*Counsel for Appellant Eletson
Holdings, Inc.*

**Exhibit 8**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

ELETSON HOLDINGS INC., et al.,

Debtors.[1]

Chapter 11

Case No.: 24-cv-08672-LJL
[rel. 23-cv-07331-LJL;
24-cv-05096-LJL]

## DECLARATION OF JOHN MARKIANOS-DANIOLOS REGARDING THE
## MOTION TO STRIKE STIPULATION AND AGREEMENT TO DISMISS APPEAL
## UNDER RULE 42(A) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

Ioannis (John) Markianos-Daniolos, pursuant to 28 U.S.C. § 1746, declares under penalty

of perjury:

1.       I am a partner of the Daniolos Law Firm, which maintains its office at 13 Defteras

Merarchias Street, Piraeus 185 35, Greece. I am an attorney duly licensed under the laws of the

Republic of Greece. I received a Bachelor of Law degree from the University of Athens in 1988

and a Master of Law degree from the University College of London in 1989. I have been

practicing law in Greece for over 30 years. I am a member of the Athens Bar Association, a

member and president of the Greek Maritime Law Association, and a founding member of the

Hellenistic Society of Maritime Lawyers. I have been ranked in Chambers Europe Guide for

many years, and I am currently ranked in Band 2 for Shipping. I have also served two

consecutive terms as member of the Executive Council of the CMI (Committee Maritime

International) from 2018 to 2024.

2.       I have never represented any of the Debtors in these cases, including Eletson

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos
Finance LLC.

Holdings Inc. ("Eletson Holdings"). I have provided legal advice on matters of Greek law to
Eletson Corporation, a subsidiary of Eletson Holdings.

3.      I submit this declaration regarding the "Motion to Strike" the Stipulation and
Agreement to Dismiss the Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure
solely to provide the Court with the position of Greek Law as to certain questions presented to
me and for no other purpose.

4.      I make this declaration based upon my knowledge of and experience in Greek law
and based on my review of various documents in and related to this matter and the underlying
bankruptcy proceedings including without limitation: (a) the Petitioning Creditors' Amended
Joint Chapter 11 Plan of Reorganization of Eletson Holdings, Inc. and its Affiliated Debtors and
relevant supplements and amendments (the "Plan"); (b) the October 25, 2024, Memorandum and
Opinion and Order confirming the Plan and the November 4, 2024, order confirming the Plan
(the "Confirmation Order"); (c) Notice of the (I) the Occurrence of the Effective Date and (II)
Final Deadlines for Filing Certain Claims; (d) the transcript of the January 24, 2025 hearing in
the United States Bankruptcy Court for the Southern District of New York; and (e) a November
12, 2024, order from the Piraeus Court of the First Instance provisionally appointing eight Greek
residents as provisional members of the Board of Directors ("Provisional Directors") of Eletson
Holdings (the "Piraeus Court Order").

5.      The opinions expressed herein are made based upon my current knowledge of the
facts. I reserve the right to amend, alter, or modify these opinions if I discover new or previously
unknown facts or if there are new legal developments.

6.      Eletson Holdings Inc. is a company organized and existing under the laws of
Liberia, with a principal place of business in Greece. Greece is also the center of main interests

2

of Eletson Holdings, i.e. the jurisdiction where its management has been and is effected and
where Eletson Corporation of Liberia, a subsidiary of Eletson Holdings, has established an office
pursuant to article 25 of law 25/1975 where it employs many employees and manages a
significant number of Greek and Liberian flagged ships. Since its principal place of business and
center of main interests are in Greece, Eletson Holdings is governed by Greek law, in addition to
Liberian law. Under article 10 of the Greek Civil Code "*The capacity of a legal person is
regulated by the law of its seat*". This has authoritatively been interpreted to mean the law of the
place of the actual seat, where the management is being effected. Exceptionally, under law
791/1978, ship-owning companies of ships managed by companies having established an office
in Greece pursuant to art. 25 of law 27/1975 (like Eletson Corporation) and their holding
companies (such as Eletson Holdings) are regulated for matters of incorporation and legal
capacity by the law of the place of their incorporation (in this case Liberia), but all other matters
are governed by the law of their actual seat (i.e. the law of the center of their main interests, in
this case Greece), including bankruptcy law matters and jurisdiction for bankruptcy. Thus,
Greece is an important jurisdiction for bankruptcy or insolvency purposes, both in respect of
governing law and court jurisdiction, in accordance with Greek law and the Insolvency
Regulation of the European Union, as accepted by many precedents of the maritime department
of the courts of Piraeus, but also by leading precedents of the Supreme Court of Greece.

7.    I understand that there has been a question raised in this matter concerning
whether Eletson Holdings with the Directors appointed by the Piraeus Court Order and the
officers that existed in November 2024 still exist under Greek law with those directors and those
officers. I also understand that for purposes of convenience this entity has been referred to in
this Court as "Provisional Holdings" or "Provisional Eletson Holdings".

3

8. I have been asked to answer the following questions solely from the perspective of Greek law: (a) Are the Confirmation Order and Plan automatically recognized in Greece?; (b) Are the Confirmation Order and Plan currently recognized and effective in Greece?; (c) Is the Piraeus Court Order still valid and in effect in Greece?; (d) Are the provisional board members appointed by the Piraeus Court Order recognized in Greece as the current board members of Eletson Holdings?; (e) Does "Provisional Eletson Holdings" currently exist in Greece?; and (f) Are the provisional directors and officers of "Provisional Eletson Holdings" (or anyone else) permitted to act in Greece to effectuate the Confirmation Order and Plan prior to their recognition by a Greek Court?

9. The short answers to these questions are (a) No, the Confirmation Order and Plan are not automatically recognized in Greece; (b) No, the Confirmation Order and Plan are not currently recognized and effective in Greece (c) Yes, the Piraeus Court Order is still valid and in effect in Greece; (d) Yes, the provisional board members appointed by the Piraeus Court Order are recognized in Greece as the current board members of Eletson Holdings; (e) Yes, "Provisional Eletson Holdings" currently exists in Greece; and (f) No, the provisional directors and officers of "Provisional Eletson Holdings" (or anyone else) are not permitted to act in Greece to effectuate the Confirmation Order and Plan prior to their recognition by a Greek Court. I explain these answer more fully below.

10. Under Greek law, in insolvency cases outside Greece and the EU, in order for the Confirmation Order and Plan to have any effect in Greece, a Greek Court must recognize and confirm the Confirmation Order and Plan (articles 4, 6 and 15 of law 3858/2010, Uni Membered First Instance Court of Rethymnon 166/2012, Multi Membered First Instance Court of Athens 437/2013). The Confirmation Order and Plan are not automatically recognized under Greek law.

4

The Recognition of any United States bankruptcy court decision in Greece is also of vital importance to the operation of Greek rule of law since it involves entities whose very existence or operation stems from Greek law and its protections.

11. In order to effectuate such recognition and confirmation, pursuant to articles 15 and 17 of law 3858/2010 giving effect to the 1997 UNCITRAL Model Law on Cross Border Insolvency, an application must be submitted before a Greek court by the liquidator appointed by the court that issued the bankruptcy order (*representative* as per article 15 of the UNCITRAL model law) of the reformed company. To the best of my knowledge, no one has submitted such an application to any Greek Court. Thus, the Confirmation Order and Plan have no effect in Greece and are not valid in Greece.

12. On November 12, 2024, in response to the resignation of four board members of Eletson Holdings, the minority shareholders of Eletson Holdings submitted an application before the Piraeus Court of First Instance to appoint provisional management due to the remaining 4 board members not being able to constitute a quorum. The Piraeus Court set this application to be heard on February 4, 2025 and in the meantime issued a provisional order appointing eight provisional board members for Eletson Holdings with a mandate to take care of the urgent business of the Company including the authority to appoint lawyers to protect its interests, particularly before the Courts of New York. I understand that this order (which is the final part of a longer document) with a translation is being submitted to the Court with the declaration of Louis Solomon. This Piraeus Court Order remains in effect at least until the hearing on February 4, 2025. Under Greek law, the Piraeus Court Order remains in effect and the provisional board members appointed by that order remain the board members of Eletson Holdings. In addition, the officers of Eletson Holdings that were appointed by the provisional board members following the

5

issuance of the Piraeus Court Order remain the officers of Eletson Holdings under Greek law today. Thus, the entity that has been referred to in this Court as "Provisional Eletson Holdings" currently exists under Greek law and has the authority to hire lawyers to protect its interests.

13.     In light of the lack of recognition of Confirmation Order and Plan by a Greek Court, there is currently no legal basis for anyone to act in accordance with the Confirmation Order and Plan in Greece. Furthermore, delivery of Eletson Holdings and all its subsidiaries to the Petitioning Creditors in accordance with the Confirmation Order and Plan without judicial recognition in Greece of the Confirmation Plan and Order would violate Greek law and would expose to liabilities those involved, including towards employees of subsidiary companies, or towards the ship-owning companies of vessels under its management, and even to liabilities of Eletson Corporation which was the approved managing company under the existing International Safety Management certificates issued on behalf of the Greek State under the provisions of the International Convention for the Safety of Life at Sea of 1974 (SOLAS). Such liabilities may be either or both civil and criminal in nature.

14.     While I am not an expert in Greek criminal law, based on the statutes below, I believe if the Provisional Directors (or anyone else) complied with the Confirmation Order and Plan prior to their being judicially recognized in Greece, they could be subject to criminal liability if there is a criminal complaint from the shareholders of Eletson Holdings, employees of its subsidiaries and/or counterparties of agreements.

15.     Article 331 of the Penal Code provides that:

> Whoever arbitrarily exercises a demand relating to a right which he either actually has or by conviction appropriates shall be punished with a fine or community service. Criminal prosecution shall require a criminal complaint.

16.     Article 390(1) and (2) of the Penal code provides that:

6

1. Whoever, in violation of the rules of diligent management, knowingly causes certain damage to the property of another, of which by law or contract he has custody or management (total, or partial, or only for a specific act), shall be punished with imprisonment and, if the damage caused is particularly great, with imprisonment of at least three (3) months and a fine. If the damage caused exceeds in total the amount of €120,000, imprisonment up to ten (10) years and a fine are imposed.

2. If the infidelity is directed against the legal person of the Greek State, legal persons governed by public law or local authorities and the damage caused exceeds in total the amount of € 120,000, imprisonment of at least ten (10) years and a fine of up to one thousand (1,000) daily units shall be imposed. This act is time-barred after twenty (20) years.

17.     The potential criminal liability detailed above would also give rise to civil claims

for compensation under the tort provisions of the Greek Civil Code.

18.     I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Dated: Piraeus, Greece
       January 31, 2025

Ioannis Markianos-Daniolos

7

**Exhibit 9**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 24-cv-08672-LJL |
| Debtors.[1] | [rel. 23-cv-07331-LJL; 24-cv-05096-LJL] |

**DECLARATION OF GERALD PADMORE CONFIRMING THE DECLARATION
OF BETTY LAMIN-BLAMO DATED DECEMBER 9, 2024, WHICH WAS FILED IN
THE BANKRUPTCY COURT**

Gerald Padmore declares as follows under 28 U.S.C. § 1746:

1.      I am a Liberian citizen admitted to practice law in the Republic of Liberia.

2.      I have practiced as a Liberian lawyer for over 50 years.  My areas of practice include corporate and business organizations, natural resources, and international arbitration.

3.      I am submitting this declaration in support of Provisional Eletson Holdings' Motion to Strike Stipulation and Agreement to Dismiss Appeal Under Rule 42(A) of the Federal Rules Of Appellate Procedure.

4.      Recently, in the Bankruptcy Court, Counselor Betty Lamin Blamo submitted a declaration in connection with the motion for sanctions filed against Reed Smith LLP.  That declaration, which can be found at Bankruptcy ECF No. 1289, is attached hereto as **Exhibit A**.  I fully adopt here the legal statements and conclusions in that declaration.

5.      Further, I believe there are three points of Liberian law especially pertinent to this motion.  First, Holdings is a Liberian corporation with its principal place of business in Greece.

---

[1] The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

Under the Liberian Business Corporations Act ("Liberia BCA" relevant portions attached hereto as **Exhibit B**), which governs Holdings' interests, "the situs of the ownership of capital shares of all [Liberian] corporations . . . shall be regarded as in Liberia" (Liberia BCA § 5.14).

6.      Second, under Liberian law, a foreign court order that purports to cancel or extinguish the common shares of Holdings and purports to issue new shares cannot, if inconsistent with the BCA or the governing documents of the corporation, be given effect under Liberian law until it has been recognized by the Liberian courts. This is not to say that a foreign court lacks jurisdiction in all respects as it relates to a Liberian corporation. A foreign court may properly acquire jurisdiction in certain matters as prescribed by statute including Bankruptcy proceedings involving non-resident Liberian corporations. Notwithstanding, even if a foreign court were to properly acquire jurisdiction, a decision or order of such court to the extent that it i) mandates alterations of or amendments to the Articles of Incorporation of a Liberian corporation; ii) otherwise requires action to be taken by officers or officials of the Liberian Government; or iii) is inconsistent with the BCA, will not be enforceable unless it has been recognized and given full effect by a Liberian court.

7.      Third, under Liberian law, to amend the articles of incorporation of a Liberian corporation, Chapter 9 of the BCA sets forth clear steps for an amendment of the Articles of Incorporation, none of which is pursuant to an order of a foreign court. Furthermore, the corporation must state "the manner in which the amendment of the articles of incorporation was authorized" (Liberia BCA § 9.5). Such authorization must be by the shareholders, in some cases also by the Directors, and in limited instances by the Directors alone. Any such order must thus be recognized by a Liberian court before the Registrar or Deputy Registrar, who are officials of the

Government of Liberia, appointed by the President of Liberia, can be required to accept an amendment for filing as consistent with the requirements of the BCA.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that matters of opinion stated therein represent my true opinion.

Executed on January 31, 2025, in Monrovia, Liberia

**Exhibit 10**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 24-cv-08672-LJL |
| Debtors.[1] | [rel. 23-cv-07331-LJL; 24-cv-05096-LJL] |

## MEMORANDUM IN SUPPORT OF COURT-DESIGNATED "MOTION TO STRIKE" STIPULATION AND AGREEMENT TO DISMISS APPEAL UNDER RULE 42(A) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

Michael S. Lazaroff
RIMÔN, P.C.
400 Madison Ave, Suite 11D
New York NY 10017
Tel: (646) 738-4151
michael.lazaroff@rimonlaw.com

Louis M. Solomon
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 549-0400
Lsolomon@reedsmith.com

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND ...................................................................................................4

   A.   The Existence Of Provisional Holdings And The Lack Of Capacity and Authority Of
       Reorganized Holdings................................................................................................. 4

   B.   Petitioning Creditors Promised to Seek Recognition and Enforcement of the Plan and
       Confirmation Order.................................................................................................... 5

   C.   The Confirmation Ruling, Confirmation Order, and Notice of Appeal............................. 8

   D.   Petitioning Creditors Take the Plan Effective Pursuant to Holdings' Existing Restated
       Articles of Incorporation, Without Seeking Court Approval and Without Seeking
       Recognition and Enforcement in Liberia or Greece ........................................................ 9

   E.   Liberian Law Mandates That the Confirmation Order Be Recognized and Enforced ..... 11

ARGUMENT .......................................................................................................................12

I.    This Court Is Respectfully Without Authority to Enter the Stipulation..............................12

   A.   Respectfully, This Court Has no Authority to Enter the Stipulation Since the
       Appeal Has Been Docketed .................................................................................... 12

   B.   The Filing of the Notice of Appeal Divested the Court of Jurisdiction to Consider
       the Stipulation ...................................................................................................... 13

II.   On the Merits, the Court Should Strike the Stipulation Because the Appellant
     Provisional Holdings is Not a Party .....................................................................................15

   A.   Provisional Holdings is Currently an Existing Entity Recognized By Liberia and Greece
       With a Fundamental Right to Pursue the Appeal........................................................ 15

   B.   Provisional Holdings Relied on the Petitioning Creditors' Undertakings to Seek
       Recognition and Enforcement of the Confirmation Order in Declining to Seek a Stay of
       the Order ............................................................................................................. 17

   C.   Principles of International Comity Dictate Rejection of the Stipulation ........................ 19

      1.   Sections 1441 and 1142 Cannot Overcome the Presumption Against Extraterritoriality
          19

      2.   Comity Instructs That the Notice of Appeal Should Not Be Dismissed...................... 20

      3.   The Recent Bankruptcy Order Did Not Properly Address Issues of International
         Comity ............................................................................................................ 25

CONCLUSION.....................................................................................................................27

CERTIFICATE OF COMPLIANCE .........................................................................................29

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023)...........................................................................................19, 20

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.*,
  585 U.S. 33 (2018)....................................................................................................25

*Animal Sci. Prods. v. Hebei Welcome Pharm. Co.* (*In re Vitamin C Antitrust Litig.*),
  8 F.4th 136 (2d Cir. 2021) .....................................................20, 21, 22, 23, 25, 27

*Asarco LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014)....................................................................................16

*Asvesta v. Petroutsas*,
  580 F.3d 1000 (9th Cir. 2009) ................................................................................23

*Babitt v. Vebeliunas (In re Vebeliunas)*,
  332 F.3d 85 (2d Cir. 2003).......................................................................................25

*Burger King Corp. v. The Horn & Hardart Co.*,
  893 F.2d 525 (2d Cir.1990)......................................................................................14

*Carroll v. Trump*,
  88 F.4th 418 (2d Cir. 2023) .....................................................................................14

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  316 F. Supp. 3d 635 (S.D.N.Y. 2018)....................................................................22

*Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*,
  906 F.2d 1059 (5th Cir. 1990) .................................................................................14

*EEOC v. Arabian Am. Oil Co.*,
  499 U.S. 244 (1991), *superseded by statute on other grounds*................................19

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  2004 WL 1119652 (S.D.N.Y. 2004)......................................................................18

*Green v. City of New York*,
  No. 97 Civ. 8191, 2000 U.S. Dist. LEXIS 11691 (S.D.N.Y. Aug. 16, 2000) ........18

*Gucci Am. v. Bank of China*,
  768 F.3d 122 (2d Cir. 2014).....................................................................................27

*Hosking v. TPG Capital Mgmt. (In re Hellas Telecomms. (Lux.) II SCA), L.P.*,
   555 B.R. 323 (Bankr. S.D.N.Y. 2016) ........................................................................ 2, 21, 24

*In re British Am. Ins. Co.*,
   425 B.R. 884 (Bankr. S.D. Fla. 2010) .................................................................................. 21

*In re Goodman Bros. Steel Drum Co. v. Liberty Mut. Ins. Co.*,
   247 B.R. 604 (Bankr. E.D.N.Y. 2000) ................................................................................ 18

*In re HBLS, L.P.*,
   468 B.R. 634 (Bankr. S.D.N.Y. 2012) ................................................................................. 25

*In re Neptune World Wide Moving, Inc.*,
   111 Bankr. 457 (Bankr. S.D.N.Y. 1990) ............................................................................ 18

*In re PT Bakrie Telecom Tbk*,
   601 B.R. 707 (Bankr. S.D.N.Y. 2019) ................................................................................. 24

*Kiobel v. Royal Dutch Petro. Co.*,
   569 U.S. 108 (2013) .............................................................................................................. 19, 26

*Leonhard v. United States*,
   633 F.2d 599 (2d Cir.1980) .................................................................................................. 14

*Liles v. S.C. Dep't of Corr.*,
   414 F.2d 612 (4th Cir. 1969) ............................................................................................... 15

*Linde v. Arab Bank*,
   PLC, 706 F.3d 92 (2d Cir. 2013) ........................................................................................ 27

*Maxwell Commun. Corp. PLC by Homan v. Societe Generale*,
   93 F.3d 1036 (2d Cir. 1996) ...................................................................................... *passim*

*Murray v. The Schooner Charming Betsy*,
   6 U.S. (2 Cranch) 64 (1804), *superseded by statute on other grounds* ................... 20

*Next Invs., LLC v. Bank of China*,
   12 F.4th 119 (2d Cir. 2021) ................................................................................................. 26

*Nike, Inc. v. Wu*,
   349 F. Supp. 3d 310 (S.D.N.Y. 2018) ................................................................................. 27

*NRDC v. United States FDA*,
   884 F. Supp. 2d 108 (S.D.N.Y. 2012) ................................................................................. 15

*Oriental Commercial & Shipping Co. v. Rosseel, N.V.*,
   702 F. Supp. 1005 (S.D.N.Y. 1988) .................................................................................... 23

*Outlaw v. City of N.Y.*,
    2024 WL 4825955 (S.D.N.Y. Nov. 19, 2024) .................................................15

*Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ........................................................................24

*Rutkin v. Reinfeld*,
    229 F.2d 248 (2d Cir. 1956) ......................................................................18

*Sagone v. Florence Cnty. Det. Ctr., et. al*,
    1995 WL 354871 (4th Cir. June 14, 1995) ...............................................12

*Solus Alt. Asset Mgmt., LP v. Delphi Auto. PLC (In re DPH Holdings Corp.)*,
    553 B.R. 20 (Bankr. S.D.N.Y. 2016) ........................................................17

*U.S.A. v. Sanders*,
    2023 WL 3320157 (S.D. Ill. May 9, 2023) ...............................................12

*United States v. Cantu*,
    2007 WL 4299182 ...................................................................................13

*United States v. Funds Held ex rel. Wetterer*,
    210 F.3d 96 (2d Cir. 2000) ........................................................................22

*United States v. Hatcher*,
    2008 WL 11460705 (N.D. Ala. June 11, 2008) ........................................12

*United States v. Hitchmon*,
    602 F.2d 689 (5th Cir. 1979) ....................................................................12

*United States v. Jacques*,
    6 F.4th 337 (2d Cir. 2021) ........................................................................13

*United States v. Lincoln Sav. Bank (In Re Commercial Millwright Serv. Corp.)*,
    245 B.R. 597 (Bankr. N.D. Iowa 1999) ...................................................15

*United States v. Martinez*,
    763 F.2d 1297 (11th Cir.1985) .................................................................12

*United States v. Persico*,
    2012 WL 13122783 (E.D.N.Y. May 15, 2012) ........................................14

*United States v. Rodgers*,
    101 F.3d 247 (2d Cir. 1996) ......................................................................14

*United States v. Salerno*,
    868 F.2d 524 (2d Cir.) ..............................................................................14

*United States v. White*,
 2024 WL 5103317 (2d Cir. Dec. 13, 2024) ........................................................... 13

*Usoyan v. Republic of Turk.*,
 6 F.4th 31 (D.C. Cir. 2021) ......................................................................... 21, 24

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
 825 F.2d 709 (2d Cir. 1987) ............................................................................. 23

*Webb v. GAF Corp.*,
 78 F.3d 53 (2d Cir.1996) ................................................................................. 14

*WesternGeco LLC v. ION Geophysical Corp.*,
 585 U.S. 407 (2018) ....................................................................................... 20

**Statutes**

11 U.S.C. § 1141 ................................................................................. 19, 20, 26

11 U.S.C. § 1142 ................................................................................. 19, 20, 26

28 U.S.C. § 1291 .............................................................................................. 1

**Other Authorities**

20 Moore's Federal Practice - Civil § 303.32(2)(a)(i) ........................................... 12

Restatement (Third) of the Foreign Relations Law (the "Restatement (Third)"),
 Part IV ch. 1, introductory note ..................................................................... 21

Richard J. Cooper, Kyle J. Ortiz and Thomas S. Kessler, *Addressing Treatment of Equity Under
Foreign Law and the Code*, 40-4 ABIJ 14 (2021) ................................................ 8

Appellant Eletson Holdings, Inc. ("Holdings") respectfully submits this memorandum of law in support of what this Court designated as a "Motion to Strike" the Stipulation and Agreement to Dismiss the Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure (ECF 30) (the "Stipulation"). The accompanying Declarations of Louis M. Solomon ("Solomon Decl."), John Markianos-Daniolos ("Daniolos Decl.") and Gerald Padmore ("Padmore Decl.") contain pertinent information and attach relevant exhibits.

## PRELIMINARY STATEMENT

On December 23, 2024, this Court ruled that Goulston & Storrs PC ("Goulston") represents reorganized Eletson Holdings, Inc. ("Reorganized Holdings")—in this Court's view the only "Eletson Holdings, Inc."—for purposes of the underlying appeal of the bankruptcy court's Confirmation Ruling[2], and granted the first Stipulation of Dismissal on December 30, 2024 (ECF 20) (the "Dismissal Order"). Respectfully, Holdings disagrees with that ruling and the Dismissal Order and, accordingly, has sought immediate appellate review of this final order dismissing the case under 28 U.S.C. § 1291 (ECF 24). That appeal has been docketed in the Second Circuit. Appellants believe they have the right to prosecute that appeal.

Through the Stipulation, Reorganized Holdings, Petitioning Creditors, and the Committee (together, the "Stipulating Parties") seek to use the same argument previously accepted by this Court in the very order that is the subject of the appeal. The Stipulating Parties should not be permitted to rely on the ruling being appealed to deprive Holdings of its right to pursue that appeal.

Holdings is organized and exists under the laws of Liberia, with its principal place of business in Greece. All of Holdings' assets are corporations organized and existing under the

---

[2] Capitalized terms used herein but otherwise undefined have the meaning provided in the Stipulation.

laws of either Liberia or the Marshall Islands, with principal places of business in Greece. The fact that vital non-U.S. aspects of the case needed to be respected and complied with was central to the plan to reorganize an entity whose very existence depends upon non-U.S. law.

Where the overwhelming locus of an entity's assets and operations are subject to non-U.S. law, U.S. courts must take care to respect the applicable law of other jurisdictions, even if other parties to a U.S. proceeding disregard the importance of those non-U.S. interests. "Comity is especially important in the context of the Bankruptcy Code." *Maxwell Commun. Corp. PLC by Homan v. Societe Generale*, 93 F.3d 1036, 1048 (2d Cir. 1996). Indeed, Congress enacted Chapter 15 of the Bankruptcy Code "to foster international cooperation and comity, and provide greater certainty and more efficient administration of cross-border cases." *Hosking v. TPG Capital Mgmt. (In re Hellas Telecomms. (Lux.) II SCA), L.P.*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016).

Until recently, Petitioning Creditors had committed to honor non-U.S. legal requirements. In over a dozen prominent places, they represented they would honor non-U.S. law before implementing their Plan, including through an express undertaking to seek recognition and enforcement of the Plan and Confirmation Order "in all applicable jurisdictions" (Solomon Decl., Ex. A at § VIII.A.3). Yet at the very last minute, Petitioning Creditors decided to try to circumvent non-U.S. law and walk away from their commitments to comply with it. They instead impermissibly modified the Plan in a profound and fundamental way—without obtaining prior approval—to try to avoid the need to secure the non-U.S. legal approvals that they had promised to get. Then, Petitioning Creditors claimed to have waived condition precedents to comply with foreign law—as if waiver of a self-expressed condition could eliminate the obligation to comply with applicable law (obviously it does not). Pach Shemen, which controls

- 2 -

Petitioning Creditors and Stipulating Parties, has in fact filed a petition in Liberia seeking recognition of the Confirmation Order. That proceeding is pending.

Appellants believe there are, at a minimum, good faith and legitimate questions concerning the authority and capacity of the entity currently asserting it is "Eletson Holdings, Inc.," which we refer to herein as Reorganized Holdings. We believe the Second Circuit is statutorily entitled to consider those questions, even if this Court believes that its ruling was correct. Those questions include (without limitation) (1) whether Reorganized Holdings has complied with the Plan and its requirements to abide by "applicable law"; (2) whether as a result of Reorganized Holdings' actions Provisional Holdings has ceased to exist *anywhere in the world*, despite ongoing proceedings in Liberia and a Greek Court order appointing a provisional board of directors and making quite clear that Provisional Holdings has not ceased to exist; (3) whether Reorganized Holdings has complied with Holdings' Articles of Incorporation ("AOI"); and (4) whether, under the governing law relating to the extraterritoriality of the provisions of the Bankruptcy Code and fundamental notions of international comity, the Bankruptcy Court, and in turn this Court, had the authority to determine that Provisional Holdings does not exist and that Reorganized Holdings is the only entity that can speak for Holdings.

For ease of reference, we refer to the entity currently recognized by Greece and Liberia (and most recently by the U.S. Bankruptcy Court) as "Provisional Holdings," with the caveat that nothing in the use of the word "provisional" shall be taken as an admission that "Provisional Holdings" no longer exists.

## FACTUAL BACKGROUND

### A.    The Existence of Provisional Holdings and the Lack of Capacity and Authority of Reorganized Holdings

Since its principal place of business and center of main interests are in Greece, Holdings is under the jurisdiction of Greek law, in addition to Liberian law (Daiolos Decl. ¶ 6).  On November 12, 2024, acting upon an application by Holdings' minority shareholders, a Greek court issued a provisional order (the "Greek Order") that appointed a provisional board for Holdings, which does not include any of the persons currently purporting to act for Reorganized Holdings (Solomon Decl. ¶ 2 & Ex. B).  That provisional order, which is subject to a final hearing on February 4, 2025, remains in effect (Daniolos Decl. ¶¶ 7-13).  Pach Shemen declared the Plan effective on November 19, 2024 (the "Effective Date"), though in doing so it waived very specific conditions making it clear that Petitioning Creditors knew that they were obliged to seek and obtain recognition of the Bankruptcy Plan before it could be enforced.  Pursuant to the Plan, Reed Smith LLP's ("Reed Smith") representation of Holdings in the bankruptcy terminated at that time.  Thereafter, the provisional board members, acting under the authority vested in them by the Greek Order, retained Reed Smith for limited purposes, including to represent and preserve Provisional Holdings' rights in connection with the already-filed appeal of the Confirmation Decision (Solomon Decl. ¶ 2).  Provisional Holdings exists under Greek law independently of the Greek Order because the Confirmation Order has not been recognized in Greece and a proceeding to do so has not been commenced (Daniolos Decl. ¶¶ 7-13).

Irrespective of the Greek Order and Greek law, Provisional Holdings also still exists because Reorganized Holdings has not yet complied with "all applicable law."  As Pach Shemen—which purports to be in control of Reorganized Holdings—and the other Petitioning Creditors knew full well when they made their explicit promises to comply with foreign law,

Holdings, as a Liberian entity, has an existence that is and will remain unchanged until a Liberian court grants recognition (which Petitioning Creditors explicitly promised to seek) to the Confirmation Order and authorizes the Liberian corporate authority to extinguish the existing shares and issue new shares as set forth in the Plan. Only when that is accomplished, and not before (and only when applicable Greek law too is complied with), will Pach Shemen become the lawfully-recognized shareholder of that entity, which will then and only then become a reorganized version of Holdings that can properly be denominated Reorganized Holdings. Until that happens, Pach Shemen (through Reorganized Holdings) has no power or authority to act for that Liberian legal entity, or to select its counsel or make submissions on its behalf to this Court.

### B. Petitioning Creditors Promised to Seek Recognition and Enforcement of the Plan and Confirmation Order

Compliance with applicable non-U.S. law is itself a fundamental and material part of the Plan and Confirmation Order (even were it not implicit under doctrines of extraterritoriality and comity, discussed below). That Holdings is organized and existing under the laws of Liberia, with a principal place of business in Greece, was expressly acknowledged by Petitioning Creditors in their Disclosure Statement (*see* Solomon Decl., Ex. A at § VIII.A.3 ("[t]he Debtors are incorporated in Liberia and some of their interests are governed by the laws of foreign jurisdictions other than the United States."). Indeed, pursuant to the Liberian Business Corporations Act, which governs Holdings' interests, "[f]or all purposes of title, action, attachment, garnishment and jurisdiction of all courts . . . the situs of the ownership of capital shares of all [Liberian] corporations . . . shall be regarded as in Liberia" (Solomon Decl., Ex. C ("Liberia BCA") § 5.14; as explained in Padmore Decl. ¶¶ 5-6 & Ex. A ¶¶ 9-11, 15-22). To that end, a foreign judgment, *i.e.*, the Confirmation Order, which purports to cancel and extinguish the common shares of a non-resident Liberian corporation and purports to issue new shares is not

considered conclusive and *cannot be given automatic effect* under Liberian law (Padmore Decl. ¶ 5-6 & Ex. A ¶ 9-11).

Accordingly, in their (court-approved) Disclosure Statement, Petitioning Creditors expressly undertook to "***make every effort to ensure*** that any Confirmation Order entered by the Bankruptcy Court and the steps taken pursuant to the Confirmation Order to implement the Plan ***are recognized and are effective in all applicable jurisdictions***" (Solomon Decl., Ex. A at § VIII.A.3) (emphasis added).  Crucially, Pach Shemen and the other Petitioning Creditors understood, and indeed advised all interested parties of, the risk that "***a foreign court may refuse to recognize the effect of the Confirmation Order***" (*id.*) (emphasis added).  Creditors who voted in favor of the Plan—and opted into the Rights Offering—did so in light of the express undertakings in the Disclosure Statement.  Significantly, Judge Mastando did not address this binding representation in his recent ruling (the "January 24 Decision") (*see* Solomon Decl., Ex. D ("1/24/25 Bankr. Tr.")).

Further, the Backstop Agreement supporting the Rights Offering could be terminated "following the occurrence of . . . any law (statutory or common), statute, regulation, rule, code, or ordinance enacted, adopted, issued or promulgated by ***any Governmental Entity that prohibits implementation of the Approved Plan*** or the Rights Offering in a way that cannot be remedied" (Solomon Decl., Ex. E at 44) (emphasis added).  "Governmental Entity" is specifically defined as "any U.S. ***or non-U.S. international***, regional, federal, state, municipal or local governmental, ***judicial,*** administrative, ***legislative or regulatory authority***, ***entity***, instrumentality, ***agency, department***, commission, ***court or tribunal of competent jurisdiction*** (including any branch, department or official thereof)" (*id.*, n.3) (emphasis added).

The Plan itself is replete with provisions recognizing the need to comply with non-U.S.

law to effectuate the reorganization of Holdings (*see, e.g.*, Solomon Decl., Ex. F ("Plan")

§§ V.5.1, V.5.2, V.5.4 ("all . . . stock (*where permitted by applicable law*) . . . shall be

cancelled"), V.5.9, IX.9.1  XI.11.2 (jurisdictional provisions of documents contained in Plan

Supplement "shall control"), XI.11.3 (recognizing bankruptcy court may be "without

jurisdiction" over certain "matters arising out of the Plan") (emphasis added).  Section 5.2(b) of

the Plan acknowledges satisfaction of "the applicable requirements of applicable law" to

implement the Plan and a change of control:

> (b) The Debtors, with the prior written consent of the Plan Proponents, or
> Reorganized Holdings, as applicable, and the Plan Proponents, may, in their
> discretion, *take such action __as permitted by applicable law__*, including those
> Reorganized Holdings determine are reasonable, necessary or appropriate to
> effectuate the Plan, including: (i) the execution and delivery of any appropriate
> agreements or other documents of formation, merger, amalgamation,
> consolidation, restructuring, conversion, disposition, transfer, arrangement,
> continuance, dissolution, sale, purchase, or liquidation containing terms that are
> consistent with the terms of this Plan and *that satisfy the applicable requirements
> of applicable law* and any other terms to which the applicable Entities may agree;
> . . . (iii) *the __filing of appropriate certificates or articles of incorporation__,
> reincorporation, merger, consolidation, conversion, amalgamation,
> arrangement, continuance, or dissolution __pursuant to applicable state or
> provincial law__*; . . . (vi) *all actions that the applicable Entities determine to be
> necessary to obtain the __requisite regulatory approvals__ to effectuate this Plan*; . .
> . (ix) the issuance of the Reorganized Equity; and (x) all other actions that the
> applicable Entities determine to be necessary, including *making filings or
> recordings that __may be required by applicable law__ in connection with this Plan,
> and such action and documents are deemed to require no further action or
> approval (__other than any requisite filings required under the applicable state,
> provincial and federal or foreign law__ or such consent or consultation rights as
> set forth in the Plan*) (*id.* § 5.2(b) (emphasis added)).

Further, the Plan included twelve conditions precedent to the Effective Date, including

that "all actions, *documents, certificates, and agreements necessary to implement the Plan* shall

have been effected or executed and delivered to the required parties and, to *the extent required,

filed with the applicable government units in accordance with applicable law*" (*id.* § 9.1(l))

(emphasis added).  While Petitioning Creditors purported to waive conditions in order to trigger

the Effective Date, the fact that these express conditions were in the Plan makes it clear that

Petitioning Creditors knew of these obligations and cannot now be heard to complain that they

somehow have a right to proceed without that compliance.  Nor does their unilateral waiver—

done for a strategic purpose of walking away from their promises to comply—absolve

Petitioning Creditors of their obligation to comply with applicable non-U.S. law.

### C.   The Confirmation Ruling, Confirmation Order, and Notice of Appeal

On October 25, 2024, the Bankruptcy Court issued the Confirmation Ruling [Bankr. Dkt.

1212] and on November 4, 2024, the Bankruptcy Court entered the Confirmation Order

(Solomon Decl., Ex. G).  The Confirmation Order itself recognizes the constraints on its

extraterritorial reach, stating that it "shall constitute, ***to the greatest extent permissible under***

***applicable law***, all approvals and consents, if any, required by the laws, rules or regulations of

any state or U.S. or foreign governmental authority with respect to the implementation or

consummation of the Plan and any act that may be necessary or appropriate for the

implementation or consummation of the Plan" (*id.* ¶ 5(iv)); *see also* Richard J. Cooper, Kyle J.

Ortiz and Thomas S. Kessler, *Addressing Treatment of Equity Under Foreign Law and the Code*,

40-4 ABIJ 14 (2021) (Solomon Decl., Ex. H) ("Ortiz Article") ("**a confirmation order is**

**unlikely to act as a substitute for applicable foreign legal requirements, particularly when**

**adjudicated by foreign courts**").

On November 7, 2024, the Debtors filed the Notice of Appeal of the Confirmation Ruling

[Bankr. Dkt. 1233].  On November 19, 2024, Petitioning Creditors filed the Effective Date

Notice, providing notice "that all conditions precedent to the Effective Date . . . have been

satisfied *or waived*" [Bankr. Dkt. 1258].  On November 21, 2024, Provisional Holdings directed

Reed Smith to file Appellant's statement of issues and the record for the appeal [Bankr. Dkt.

1262] "to ensure that any and all deadlines related to the Notice of Appeal are adhered to and is

based on instructions given before the Effective Date of the Plan and reiterated since" (*id.* at 1).

> **D.** **Petitioning Creditors Take the Plan Effective Pursuant to Holdings' Existing Restated Articles of Incorporation, Without Seeking Court Approval and Without Seeking Recognition and Enforcement in Liberia or Greece**

The Plan and Disclosure Statement "contemplate the submission of certain documents (or

forms thereof) and schedules" to effectuate the Plan [Bankr. Dkt. 1134 at 2] (Plan Supplements

are "integral to and considered part of the Amended Plan")).  On August 2, September 19, and

November 12, 2024, Petitioning Creditors filed plan supplements, which included a Form of

Amended By-Laws, Form of Amended Certificate of Incorporation, and Form of Shareholders

Agreement [Bankr. Dkts. 913, 1134, 1240] (the "Prior Plan Supplements").  By submitting the

Prior Plan Supplements, which were reviewed and commented on by Petitioning Creditors'

expert on Liberian law prior to submission, Petitioning Creditors recognized that they would be

required to file an Amended AOI in Liberia in order to implement the Plan and change control

and management of Holdings (*see* Solomon Decl., Ex. I ("Liberian counsel for the Petitioning

Creditors has been working with the Liberian Registry ("LISCR") on filing the Amended

Certificate of Incorporation and Amended By-Laws for Reorganized ***Holdings as part of***

***implementing the change in ownership and management of Eletson Holdings Inc.***

***('Holdings') as set forth in the Plan***") (emphasis added)).

However, just hours before the filing Effective Date Notice, Petitioning Creditors

materially modified their Plan—without Court approval or re-solicitation—by filing a third

amended plan supplement (Solomon Decl., Ex. J) (the "Plan Supplement").  In the Plan

Supplement, Petitioning Creditors represented that "Eletson Holdings Inc. will ***continue under***

***its existing Restated Articles of Incorporation***" (*id.* at 3 (emphasis added)).  In a clear bait and

switch, Petitioning Creditors dispensed with their proposed amended AOI and, instead, purported

to implement a change in ownership and management of Holdings pursuant to Holdings' existing AOI. The existing AOI, however, contains certain restrictions on the transfer or Holdings' shares: "[a]ny purported transfer of shares of common stock not permitted hereunder shall be void and of no effect, and the purported transferee shall have no rights as a stockholder of [Holdings] and no other rights against or with respect to [Holdings]" (Solomon Decl., Ex. K, § 5). These restrictions are also reflected on the Share Certificates issued by Holdings in 2007, which state:

> THE SHARES OF CLASS A COMMON STOCK OF ELETSON HOLDINGS INC. ("CORPORATION") REPRESENTED BY THIS CERTIFICATE MAY NOT BE TRANSFERRED, WHETHER BY SALE, ASSIGNMENT, PLEDGE, GIFT, APPOINTMENT OR OTHERWISE, EXCEPT IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE V OF THE ARTICLES OF INCORPORATION, AS AMENDED AND RESTATED, OF THE CORPORATION, AND **THE CORPORATION WILL NOT REGISTER ANY SUCH TRANSFER WHICH [IS] NOT IN COMPLIANCE WITH SUCH ARTICLE** (Solomon Decl., Ex. L) (emphasis added).

To date, Reorganized Holdings has provided no proof that it has complied with Holdings' existing AOI or Liberian law, *see* Liberia BCA § 5.14, in order to cancel Holdings' shares and exercise authority on behalf of Holdings. Reorganized Holdings, therefore, lacks authority and capacity in this proceeding—a position both Petitioning Creditors and Pach Shemen's affiliate, Levona Holdings Ltd., have taken previously before this Court and in the Bankruptcy Court (*see, e.g.*, Solomon Decl. Exs. M at 1-2, N at 1, O ¶¶ 48-51).

After recognizing this obvious deficiency, Pach Shemen filed three separate actions in Liberia seeking recognition of the Confirmation Order. The first two, filed in November and December 2024, sought relief against Provisional Holdings as the Respondent, making it clear that Reorganized Holdings judicially recognized that Provisional Holdings still existed. Pach Shemen described Provisional Holdings as an entity that (among other things) "filed its own

bankruptcy plan" separate from Pach Shemen's (Solomon Decl., Exs. P & Q).  Given that

Provisional Holdings was the only other entity that had submitted a reorganization plan, these

filings made clear that the entity Pach Shemen sought relief against was Provisional Holdings.

Pach Shemen withdrew each of those two petitions, once of its own accord and once after

Provisional Holdings had filed an opposition.  Pach Shemen's third Liberian application, filed

January 7, 2025 (Solomon Decl., Ex. R), purported to seek relief against Reorganized Holdings

itself.  Provisional Holdings subsequently sought to intervene (Solomon Decl., Ex. S).  That

application is pending, and the Liberian court will determine whether Provisional Holdings has a

right to intervene in the recognition proceeding.

## E.    Liberian Law Mandates That the Confirmation Order Be Recognized

The Liberian International Ship & Corporate Registry ("LISCR") is the statutory

registered agent for Liberian non-resident domestic corporations and Foreign Maritime Entities

(Padmore Decl., Ex. A ¶ 12; Liberia BCA § 3.1), with responsibility for administering the

Liberian Corporate Registry.  Any changes to Holdings' AOI must be filed through LISCR and

accepted by the Registrar or Deputy Registrar and Minister of Foreign Affairs or the Deputy

Minister of Foreign Affairs, all of whom are officials of the Liberian government (Padmore Decl.

¶ 7 & Ex. A at ¶ 21).  To change the *articles of incorporation* of a Liberian corporation, the

corporation must state "the manner in which the amendment of the articles of incorporation was

authorized" (Liberia BCA § 9.5; Padmore Decl. ¶ 7).  This means that if a change is made

*pursuant to a foreign court order*, that foreign court order must be presented to LISCR (Padmore

Decl. ¶ 7), and LISCR will need the foreign court order to be recognized by a Liberian court

before acting (*id.*).

## <u>ARGUMENT</u>

I.     **This Court Is Respectfully Without Authority to Enter the Stipulation**

    A.     **Respectfully, This Court Has no Authority to Enter the Stipulation Since the Appeal Has Been Docketed**

Federal Rule of Appellate Procedure ("FRAP") 42(a) provides that:

> Before an appeal has been docketed by the circuit clerk, the district court may dismiss the appeal on the filing of a stipulation signed by all parties or on the appellant's motion with notice to all parties.

"However, once the appeal is docketed, the district court may not entertain a motion to dismiss, even when agreed to by all parties; at that stage, the power to dismiss rests only in the circuit court. Thus, the time for the district court time to dismiss under Appellate Rule 42(a) may be very brief indeed . . . ." 20 Moore's Federal Practice - Civil § 303.32(2)(a)(i).

Here, the Notice of Appeal was filed on January 16, 2025 (ECF 24), and the Stipulation was filed on January 20, 2025. The Second Circuit docketed the appeal on January 23, 2025 (*In Re: Eletson Holdings Inc.,* Case Number: 25-176). Thus, this Court has no authority to consider the "stipulation" purportedly "signed by all parties" to "dismiss the appeal" by the clear and unequivocal language of this rule. "[O]nce an appeal has been docketed, the Court of Appeals controls all aspects of that appeal – both substantial and procedural." *United States v. Hatcher*, 2008 WL 11460705, at *2 (N.D. Ala. June 11, 2008); *see also United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) (en banc) superseded by statute on other grounds as recognized in *United States v. Martinez,* 763 F.2d 1297 (11th Cir.1985) ("after the appeal is docketed, dismissal may be effected *only* in the court of appeals") (emphasis in the original); *Sagone v. Florence Cnty. Det. Ctr., et. al,* 1995 WL 354871, *1 (4th Cir. June 14, 1995) ("Because the appeal by that time was docketed in this Court, however, the magistrate judge lacked jurisdiction to dismiss the appeal, and the order vacating the notice of appeal is of no effect"); *U.S.A. v.*

*Sanders*, 2023 WL 3320157, at *2 (S.D. Ill. May 9, 2023) ("Because an appeal has already been docketed and an appeal number has already been assigned, if Sanders wishes to withdraw his appeal, that request must be made to the Seventh Circuit Court of Appeals."); *United States v. Cantu*, 2007 WL 4299182, at *1 (S.D. Tex. Dec. 5, 2007 ("After the appeal is docketed, dismissal may be effected only in the court of appeals")). Thus, this Court has no authority under FRAP 42(a) to even consider the Stipulation; if it does anything with the Stipulation, it should strike it.

### B. The Filing of the Notice of Appeal Divested the Court of Jurisdiction to Consider the Stipulation

In the Second Circuit, it is well established that the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control ***over those aspects of the case involved in the appeal***." *United States v. White*, 2024 WL 5103317, at *4 (2d Cir. Dec. 13, 2024) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)) (emphasis added); *see also United States v. Jacques*, 6 F.4th 337, 342 (2d Cir. 2021) ("filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal'"; the district court was not allowed to modify judgment subject to pending appeal). Here, the Notice of Appeal for "each and every part of the judgment" was filed on January 16, 2025 (ECF 24). The particular issue that is the focus of the current appeal is whether or not the First Stipulation of Dismissal, signed by counsel purporting to represent Holdings and purporting to dismiss the appeal from the Bankruptcy Court, should have been accepted by this Court over the objection of Provisional Holdings. Thus, the appeal concerns precisely the same issue presented to this Court now by the Stipulation: among other things, whether counsel selected and retained by Reorganized Holdings has the authority to enter a stipulation on behalf of Provisional Holdings. This Court

therefore lacks jurisdiction to enter the Stipulation as that is the very same issue that is the
subject of the appeal. Indeed, the Fifth Circuit has explained that after a notice of appeal is
taken, the district court may not take any action that would "alter the status of the case as it rests
before the Court of Appeals." *Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d
1059, 1063 (5th Cir. 1990).

     While the Second Circuit has noted that there may be some unusual, narrow
circumstances where the district court can retain jurisdiction even while the appeal proceeds in
the Second Circuit, those circumstances are absent here. For example, in *United States v.
Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996), the Second Circuit held that "filing a notice of appeal
from a district court order that is patently unappealable" did not divest the district court of
jurisdiction to resentence. This exception applies, thus, when a notice of appeal is from a non-
final order, is untimely, or "flies in the face of controlling law". *See, e.g, Burger King Corp. v.
The Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990) (no final order); *Leonhard v. United
States,* 633 F.2d 599, 610–11 (2d Cir.1980) (no final order); *United States v. Persico*, 2012 WL
13122783, at *1 (E.D.N.Y. May 15, 2012); *Carroll v. Trump*, 88 F.4th 418, 433–34 (2d Cir.
2023) (appeal was frivolous as binding law defeated arguments). The exception does not apply
here as Provisional Holdings' appeal is from a final order, timely, and, as explained *infra,* based
on precedent and binding law. We have found no case applying these narrow exceptions to the
very issue being appealed.

     However, even if the exception were to apply, this would only permit this Court to
proceed with the underlying action, such as proceeding to trial. *See, e.g. United States v.
Salerno*, 868 F.2d 524, 540 (2d Cir.) (frivolous appeal so district court retained jurisdiction to
proceed to trial); *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir.1996) (district court retained

jurisdiction to grant preliminary injunction).  It would not permit the district court to dismiss the appeal itself.  As the Fourth Circuit stated in *Liles v. S.C. Dep't of Corr.*, 414 F.2d 612, 614 (4th Cir. 1969), "[n]either by the statutes of the United States nor the Federal Rules of Appellate Procedure is the district court given the power to deny review by this court of a case in which an appeal as of right is assured."

## II.     On the Merits, the Court Should Strike the Stipulation Because the Appellant Provisional Holdings is Not a Party

A motion to strike is "vested in the trial court's sound discretion." *Outlaw v. City of N.Y.*, 2024 WL 4825955, at *3 (S.D.N.Y. Nov. 19, 2024) (quoting *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013)).  The Court's discretionary power to strike from its docket derives "not [from] rule or statute but [from] the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)).  This extends to "any filed paper which it determines to be abusive or otherwise improper under the circumstances."  *NRDC v. United States FDA*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012).  For the reasons below, this Court should strike or reject the Stipulation.

### A.     Provisional Holdings is Currently an Existing Entity Recognized By Liberia and Greece With a Fundamental Right to Pursue the Appeal

There is no dispute that Holdings is a Liberian corporation.  Nor can it be disputed that, as of this date, Liberia has not recognized the Plan and the Confirmation Order.  This is a fact not changed in any respect by Judge Mastando's statement, quoting Reorganized Holdings and not making a separate finding, is incomplete, and taken out of context by Reorganized Holdings here, that "Reorganized Holdings . . . is the only Eletson Holdings, Inc." (1/24/25 Bankr. Tr. at 26:16-21).  "A Chapter 11 debtor has been viewed as a 'different entity' for certain purposes as it passes through the Chapter 11 process." *United States v. Lincoln Sav. Bank (In Re Commercial*

*Millwright Serv. Corp.),* 245 B.R. 597, 602 (Bankr. N.D. Iowa 1999) (citing *United States v. Gerth*, 991 F.2d 1428, 1435 (8th Cir. 1993)) (holding that Chapter 11 plan constituted a change in debtor's identity and structure). "To determine whether or not entities are the same the court must look to the substance of the [Reorganization] Plan," including the definition of the reorganized entity, whether the reorganized entity continues the debtor entity's existence, and whether the claims, causes of action, and property of the debtor entity vest in the reorganized entity. *Asarco LLC v. Goodwin*, 756 F.3d 191, 203 (2d Cir. 2014) (quoting *Cross Media Mktg. Corp. v. CAB Mktg., Inc.*, 367 B.R. 435, 451 (Bankr. S.D.N.Y. 2007)).

"Reorganized Holdings" is not just Holdings with a name change. "Reorganized Holdings" is defined as "***reorganized*** Eletson Holdings from and after the Effective Date" (Plan § 1.121) (emphasis added)—that is, the entity must first go through the legal process of reorganizing before it can become Reorganized Holdings. Further, once properly and lawfully reorganized, Reorganized Holdings will include the property of *all three Debtors* (*id*. §§ 5.2 (c); 5.15(b); *see also* 1/24/25 Bankr. Tr. at 23:19-20) ("[p]usuant to the plan, the Reorganized Eletson Holdings entity ***was created*** . . . .") (emphasis added). While the Stipulating Parties will no doubt argue that Holdings has already been reorganized with new management, a new board and new counsel, that simply ignores not only Greek law and the Greek Order, but importantly, the promises and representations made by Petitioning Creditors and the reality that the Confirmation Order has not been recognized by Liberia or Greece. Provisional Holdings, at least as recognized extraterritorially, including in Liberia and Greece, remains a distinct entity until Liberia and Greece recognize and accept the effects of the Confirmation Order. To suggest otherwise would have the effect of nullifying the sovereign laws of Liberia and Greece and the rights and protections afforded to corporations under those laws.

- 16 -

Reed Smith and RIMÔN, P.C. ("Rimon") do not represent and have never represented

Reorganized Holdings, including for purposes of the present appeal. Reed Smith and Rimon,

however, have been retained by Provisional Holdings to represent its interests, which has the

rights of any litigant to be represented by counsel and heard before entry of an order affecting its

rights. Until such time as there is a final determination in the appropriate fora—including

Liberia and Greece—that Provisional Holdings does not exist, Reed Smith and/or Rimon should

be permitted advance Provisional Holdings' rights in the appeal.

**B.** **Provisional Holdings Relied on the Petitioning Creditors' Undertakings to Seek Recognition and Enforcement of the Confirmation Order in Declining to Seek a Stay of the Order**

The Stipulating Parties' efforts to have this Court grant dismissal of the appeal would

erroneously result in thwarting a party's right to have its day in court—here Provisional

Holdings' right to have this Court's dismissal of the appeal, a final order, reviewed by the

Second Circuit. Based on the promises set forth in the Plan and Disclosure Statement,

Provisional Holdings relied on the explicit undertaking that Petitioning Creditors would seek

recognition of the Confirmation Order in applicable foreign jurisdictions before the Plan could

be implemented and a change of corporate control could occur. *See Solus Alt. Asset Mgmt., LP

v. Delphi Auto. PLC (In re DPH Holdings Corp.)*, 553 B.R. 20, 26 (Bankr. S.D.N.Y. 2016) ("For

purposes of interpreting a confirmed chapter 11 plan, 'all documents which were confirmed

together to form the contract are added to the plan itself.'") (citing *In re WorldCom, Inc.*, 352

B.R. 369, 377 (Bankr. S.D.N.Y. 2006)). In fact, Petitioning Creditors undertook to "***make every

effort to ensure*** that any Confirmation Order . . . and the steps taken pursuant to the

Confirmation Order to implement the Plan ***are recognized and are effective in all applicable

jurisdictions***" (Solomon Decl., Ex. A § VIII.A.3). That undertaking—which Judge Mastando did

not address in the January 24 Decision and which the Stipulating Parties now seek to evade

review of—is binding.  *See e.g., Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2004 WL 1119652, at \*5-6 (S.D.N.Y. 2004) (rejecting position "that disclosure statements are without binding effect"); *In re Goodman Bros. Steel Drum Co. v. Liberty Mut. Ins. Co.,* 247 B.R. 604, 611 (Bankr. E.D.N.Y. 2000) (noting the Bankruptcy Code does not support the proposition that a disclosure statement is without legal effect); *In re Neptune World Wide Moving, Inc.,* 111 Bankr. 457, 461 (Bankr. S.D.N.Y. 1990) (noting line of cases holding that disclosure statements "are critical to the decisions of creditors to accept or reject proposed plans and that [proponents] may not take positions inconsistent with their statements in disclosure statements after the creditors have accepted the terms of the proposed plans").

Petitioning Creditors understood, and indeed advised creditors, that "***a foreign court may refuse to recognize the effect of the Confirmation Order***" (Solomon Decl., Ex. A § VIII.A.3). This outcome was always an inherent risk, as acknowledged in the Disclosure Statement (and in the Back Stop Agreement supporting the Rights Offering) (*see* Solomon Decl. Ex. E at 44), and that is why Petitioning Creditors included conditions precedent in the Plan.  They could have attempted to satisfy these before taking the Plan effective.  Instead, they made the knowing decision to waive those conditions, take the Plan effective immediately without obtaining approvals in compliance with applicable non-U.S. law, and attempt improperly to exercise control of Holdings pursuant to Holdings' existing AOI, which is not without consequence.  That Petitioning Creditors chose to accept that risk does not absolve Reorganized Holdings of the obligation to comply with applicable non-U.S. law in order to effectively reorganize Holdings. *See Green v. City of New York*, No. 97 Civ. 8191, 2000 U.S. Dist. LEXIS 11691, at \*4 (S.D.N.Y. Aug. 16, 2000) ("[P]arties to a contract are free to make any agreement they wish absent a violation of law or transgression of a strong public policy.") (Solomon Decl., Ex. T); *Rutkin v.*

*Reinfeld*, 229 F.2d 248, 255 (2d Cir. 1956) ("[I]f a contract is entered into with a view of

violating the laws of another country it is unenforceable even though it does not otherwise

contravene the law of the place where it is made or of the forum.").  It is only when that is

ultimately accomplished that Reorganized Holdings may finally exercise authority and control

over reorganized Holdings as contemplated by the Plan.

Petitioning Creditors cannot avoid the process they promised to undertake:  seeking

judicial recognition in Liberia of the Confirmation Order.  That is because "[u]nder Liberia law,

the purported new shareholders may not and are not authorized to act in the capacity as valid

new shareholders in reliance upon the . . . Confirmation Order, unless the judgement is

recognized by a competent Liberian court" (Padmore Decl., Ex. A ¶ 9; Liberia BCA § 5.14).

### C.    Principles of International Comity Dictate Rejection of the Stipulation

#### 1.    Sections 1441 and 1142 Cannot Overcome the Presumption Against Extraterritoriality

The Stipulating Parties will argue that 11 U.S.C. §§ 1141 and 1142 are statutes of

unlimited reach to force non-compliance with a foreign sovereign's laws.  This ignores the

principle that "United States law governs domestically but does not rule the world."  *Kiobel v.*

*Royal Dutch Petro. Co.*, 569 U.S. 108, 115 (2013).  The Supreme Court has repeatedly held that

there is a "longstanding principle of American law that legislation of Congress, unless a contrary

intent appears, is meant to apply only within the territorial jurisdiction of the United States."

*EEOC v. Arabian Am. Oil Co*., 499 U.S. 244, 248 (1991), *superseded by statute on other*

*grounds*.  Accordingly, the Supreme Court has developed a simple two-step framework to

determine extraterritoriality.  Courts must consider (1) if "Congress has affirmatively and

unmistakably instructed" that a law applies extraterritorially; and if not, (2) if the case at bar

involves a domestic application of the statute. *See, e.g., Abitron Austria GmbH v. Hetronic Int'l,*

- 19 -

*Inc.*, 600 U.S. 412, 417-418 (2023).

Here, Sections 1141 and 1142 are not being applied domestically to implement the Plan. Rather, all conduct ordered by the Bankruptcy Court is to take place *in foreign countries*. *See WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 414 (2018) (focus test turns on "determining how the statute has actually been applied"); *Abitron Austria GmbH,* 600 U.S. at 419 ("[I]f all the conduct . . . took place outside the United States, then courts do not need to determine . . . the statute's 'focus' at all."). It is improper for a court to apply §§ 1141 and 1142, or § 105, to purely foreign conduct.

## 2. Comity Instructs That the Notice of Appeal Should Not Be Dismissed

Even if the effects of the Confirmation Order, January 24 Decision or the Bankruptcy Code *can* apply extraterritorially, that does not mean they *should*. "[S]tatutes should not be interpreted to regulate foreign persons or conduct if that regulation would conflict with principles of international law." *Animal Sci. Prods. v. Hebei Welcome Pharm. Co.* (*In re Vitamin C Antitrust Litig.*), 8 F.4th 136, 143 n.8 (2d Cir. 2021) (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 815 (1993) (Scalia, J., dissenting in part)). "[I]nternational comity is a separate notion from the presumption against extraterritoriality." *Maxwell Commun. Corp. PLC by Homan v. Societe Generale* (*In re Maxwell Commun. Corp. plc*), 93 F.3d 1036, 1047 (2d Cir. 1996). As a longstanding principle of American jurisprudence, "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains, and consequently can never be construed to violate neutral rights, or to affect neutral commerce, further than is warranted by the law of nations as understood in this country." *Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804), *superseded by statute on other grounds.*

- 20 -

"Comity is especially important in the context of the Bankruptcy Code." *Maxwell Commun. Corp. PLC by Homan v. Societe Generale*, 93 F.3d 1036, 1048 (2d Cir. 1996). Indeed, Congress enacted Chapter 15 of the Bankruptcy Code "to foster international cooperation and comity, and provide greater certainty and more efficient administration of cross-border cases." *Hosking v. TPG Capital Mgmt., L.P.*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016); *see also In re British Am. Ins. Co.*, 425 B.R. 884, 899 (Bankr. S.D. Fla. 2010) ("International uniformity is a primary goal of the Model Law [on Cross-Border Insolvency promulgated by the United Nations Commission on International Trade Law in 1997] and thus of chapter 15.") (citing 11 U.S.C. §§ 1501(a), 1508).

"International law has long recognized limitations on the authority of states to exercise jurisdiction to prescribe in circumstances affecting the interests of other states." Restatement (Third) of the Foreign Relations Law (the "Restatement (Third)"), Part IV ch. 1, introductory note. "Comity can . . . be described as a golden rule among nations—that each must give the respect to the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances." *Usoyan v. Republic of Turk.*, 6 F.4th 31, 48 (D.C. Cir. 2021). Overall, "[c]omity is a doctrine that takes into account the interests of the United States, the interests of the foreign state, and those mutual interests the family of nations have in just and efficiently functioning rules of international law." *Maxwell,* 93 F.3d at 1048. As "[t]he Judiciary does not have the 'institutional capacity' to consider all factors relevant to creating a cause of action that will inherently affect foreign policy," comity must be carefully considered. *Animal Sci. Prods*. 8 F.4th at 162 (quoting *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 639 (2021)).

When addressing international comity, courts apply Section 403 of the Restatement (Third). *See id.* at 1047-48. Courts first consider whether "there is a true conflict between

American law and that of a foreign jurisdiction." *Maxwell*, 93 F.3d at 1049. "A true conflict exists if compliance with the regulatory laws of both countries would be impossible." *Id*. In this case, the Confirmation Order must be recognized and enforced to give effect to a reorganization of a Liberian-incorporated entity, which involves the cancellation of its shares (Padmore Decl. ¶¶ 5-7 & Ex. A ¶¶ 8-11, 15-16, 18). Regardless, the Second Circuit has recently clarified that even the absence of a "true conflict" would not "extinguish the remaining comity factors *sub silentio*." *Animal Sci. Prods*., 8 F.4th at 145 ("we have described the conflict between domestic and foreign law as merely an important criterion," and applying "true conflict" as just one of many considerations).

The Restatement (Third) factors help courts follow the guidance that "a state may not exercise jurisdiction to prescribe law with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable." § 403(1). Section 403(2) lays out non-exhaustive factors, which apply "where appropriate." In this case, the Court must consider "the link of the activity to the territory of the regulating state, i.e., the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory." § 403(2)(a). All aspects of the Confirmation Order affect a Liberian corporation whose interests, existence, and shares are governed by Liberian law.

*First*, because Holdings is incorporated in Liberia, and its principal place of business and center of main interests is in Greece, this Court should defer to Liberian and Greek laws. "When determining whether a foreign corporation has observed the proper corporate formalities, courts apply the law of the country of incorporation." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 648 (S.D.N.Y. 2018); *United States v. Funds Held ex rel. Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000) ("The district court erred . . . in failing to consider the not-for-

profit corporation law of Guatemala in deciding . . . whether the [Association] maintained the requisite corporate formalities."); *Abu-Nassar v. Elders Futures*, 1991 WL 45062 at *4 (S.D.N.Y. Mar. 28, 1991) ("Court looks to foreign law regarding requirements of corporate status for a foreign corporation."); *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 702 F. Supp. 1005, 1020-21 (S.D.N.Y. 1988) (addressing corporate formalities of an English company under the laws of England).

*Second*, the mode of regulation here—a foreign judgment—weighs in favor of deferring to Liberian and Greek recognition. It is a common feature of the international system that foreign proceedings and foreign judgments do not impugn the law of sovereign nations, but rather proceed through a recognition process. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 (9th Cir. 2009) ("The extent to which the United States, or any state, honors the judicial decrees of foreign nations is a matter of choice, governed by the comity of nations."); Yuliya Zeynalova, The Law on Recognition and Enforcement of Foreign Judgments: Is It Broken and How Do We Fix It?, 31 Berkeley J. Int'l L. 150, 165 (2013) (common feature of recognition schemes is that a "foreign judgment sought to . . . comply with the public policy of the enforcing jurisdiction.").

Here, reciprocity and interests of foreign relations are important. *Animal Sci. Prods.*, 8 F.4th at 161. Liberia and Greece certainly could be concerned with the Plan, including that it purports to cancel shares subject to Liberian law and provide control to non-Liberian based entities and individuals. These sovereigns may, therefore, deem that the Confirmation Order, a judgment, violates their interests and should not take effect, just as the United States applies such an interest to foreign judgments sought to apply within its borders. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2d Cir. 1987) (foreign judgments that "violate domestic public policy" are not afforded comity). Holdings should not be put at risk that it is

being ordered and directed by a U.S. Court to take actions that a Liberian or Greek Court will find is not only ineffectual but violative of that country's laws. All Provisional Holdings is seeking is appellate review of these issues.

*Third*, Sections 403(2)(e), (f), and (g) of the Restatement apply with equal force in the bankruptcy context; "[c]omity is especially important in the context of the Bankruptcy Code." *Maxwell*, 93 F.3d at 1048. Congress agrees, having "enacted chapter 15 of the Bankruptcy Code . . . to **foster international cooperation and comity**." *In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016) (emphasis added). Even a case under Chapter 15 "is commenced by the foreign representative of a debtor filing a petition for **recognition** of a foreign proceeding." *In re PT Bakrie Telecom Tbk,* 601 B.R. 707, 713 (Bankr. S.D.N.Y. 2019); *see also Usoyan*, 6 F.4th at 48 (comity is akin to the "golden rule"). It would thus violate the "golden rule" to strip Liberia and Greece of the ability to recognize and enforce the Confirmation Order.

*Fourth*, because recognition proceedings now pending in at least Liberia, "adjudicatory comity" is present, which is a "discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state, the so-called comity among courts." *Maxwell*, 93 F.3d at 1047. Under the "totality of the circumstances," including the similarity of the parties and issues, the "adequacy of the alternate forum," and the connections between the litigation and both the U.S. and the foreign jurisdiction, *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006), deference to the Liberian proceeding is warranted. It is between Pach Shemen and Provisional Holdings, is rooted in the laws of Liberia and its sovereign interests, and is under the expertise of its courts. There is "no need for this Court to inject itself into proceedings that have already been or can be handled in

- 24 -

[Liberia]." *In re HBLS, L.P.*, 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (deferring to foreign

proceeding where movant sought "enforcement of prior orders of this Court.").

Accounting for these principles, *Animal Sci. Prods.,* is particularly instructive. 8 F.4th at

160. There, and although weighing factors against deferring to comity, the Second Circuit held

that international comity required abstention. *Id*. at 159-163. This was because (1) defendants

were "companies owned by Chinese nationals, located and headquartered in China and primarily

doing business there," (2) the United States had an interest in reciprocal treatment, (3) and the

record demonstrated that the action could infringe on China's "rights as a sovereign to enact and

enforce regulations governing Chinese companies conducting business within China's

borders." *Id*. As demonstrated, these considerations, but with respect to Liberia and Greece, are

similarly present here.

**3.     The Recent Bankruptcy Order Did Not Properly Address Issues of International Comity**

Respectfully, the January 24 Decision is not binding on this Court, will be subject to its

own appeal, and failed to properly address Liberian law, Greek law, and international comity.

Pursuant to Fed. R. Civ. P. 44.1, Judge Mastando's determination of Liberian law "must be

treated as a ruling on a question of law." *Animal Sci. Prods. v. Hebei Welcome Pharm. Co*., 585

U.S. 33, 36 (2018) (quoting Fed. R. Civ. P. 44.1). Thus, the ruling is afforded *de novo* review,

even if intertwined with difficult factual questions. *See Babitt v. Vebeliunas (In re Vebeliunas),*

332 F.3d 85, 90 (2d Cir. 2003) ("Mixed questions of fact and law are subject to de novo

review.").

Because the court viewed itself as merely enforcing the Confirmation Order and not a

specific law, based on its mistaken view that "Reorganized Holdings has not asked the former

debtors nor related parties to do anything that requires Liberian government or court

enforcement" (1/24/2024 Tr. at 40:4-10), it impermissibly failed to apply the Restatement factors or otherwise consider the sovereign interests of at least Liberia. Respectfully, such a view is inconsistent with Second Circuit case law, and led the court to contravene the long-standing principle that United States law does "not rule the world." *Kiobel v. Royal Dutch Petro. Co*., 569 U.S. 108, 115 (2013). As such, Judge Mastando's ruling should not influence this Court.

The Second Circuit has instructed that "when *a court order* will infringe on sovereign interests of a foreign state, [courts should] eschew any categorical rule and instead draw on the eight-factor framework found in Section 403 of the Restatement (Third) of Foreign Relations Law." *Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021). For example, in *Next Invs., LLC*, the Second Circuit recognized that an order to restrain assets as to Chinese banks raised international comity concerns. *Id*. at 131-132. Like the occurrences before Judge Mastando, the banks asserted that Chinese law prohibited freezing customer accounts, whereas in response the judgment creditor "dispute[d] [that] reading of Chinese law and dismisse[d] the possibility that the Banks… would actually be sanctioned for freezing Defendants' accounts." *Id*. at 132. The Second Circuit, therefore, recognized that comity was applicable, noting that there existed "a 'fair ground of doubt' about how the comity factors would apply." *Id*.

This is important for two reasons. *First*, it demonstrates that comity is just as relevant in the context of court orders as it is in the direct application of United States laws. Despite that the January 24 Decision and subsequent orders rely on Sections 1141 and 1142, which Provisional Holdings maintains cannot be applied extraterritorially, or in any event calls into question Congress's prescriptive jurisdiction, reframing an issue under the lens of a court's inherent authority to enforce its own orders does not nullify all comity concerns. Such an articulation would swallow the rule, at substantial risk of infringing on the laws of nations.

- 26 -

*Second*, Judge Mastando was required to engage in the comity analysis guided by the Restatement. "The concept of international comity requires a particularized analysis of the respective interests of the foreign nation and the requesting nation." *Linde v. Arab Bank*, PLC, 706 F.3d 92, 111 (2d Cir. 2013). And "[t]he Second Circuit has clarified that this analysis *requires* a court to weigh all of the relevant interests of all of the nations affected by the court's decision." *Nike, Inc. v. Wu,* 349 F. Supp. 3d 310, 335 (S.D.N.Y. 2018). For example, in *Gucci Am. v. Bank of China*, the Second Circuit explained that "[a] comity analysis drawing upon § 403 is…appropriate before ordering a nonparty foreign bank to freeze assets abroad…," and then remanded to the district court so that it could apply the Restatement considerations, which it did not do in the first instance. 768 F.3d 122, 139 (2d Cir. 2014). Further, the court, "given the important role that comity plays," held that even where not raised below, such an issue should not be deemed forfeited. *Id*. Accordingly, it is clear under recent Second Circuit authority that Judge Mastando's comity analysis was insufficient to address meaningfully the issue and should be revisited. Failing to adhere to this requirement, the January 24 Decision quickly deemed *Animal Sci. Prods.*, as inapposite. 8 F.4th 136 (2d Cir. 2021). This was clear error.

## **CONCLUSION**

The Court should strike the Stipulation and grant such other relief as the Court deems proper.


DATED:    New York, New York
            January 31, 2025           **RIMÔN, P.C.**

                                    */s/ Michael S. Lazaroff*
                                    Michael S. Lazaroff
                                    400 Madison Ave, Suite 11D
                                    New York NY 10017
                                    P: 646.738.4151
                                    michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479 – 6300
anthony.acampora@rimonlaw.com

*Counsel for Appellant Eletson*
*Holdings, Inc.*

**REED SMITH LLP**

*/s/ Louis M. Solomon*
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: lsolomon@reedsmith.com

*Counsel for Appellant Eletson*
*Holdings, Inc.*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of S.D.N.Y. Local Rule 7.1(c), because,

excluding the parts of the document exempted by that rule, and relying on the word count of the

word-processing program used to prepare this document, this document contains 8,740 words.

Dated:  January 31, 2025

/s/ Louis M. Solomon
Louis M. Solomon

**<u>Exhibit 11</u>**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ELETSON HOLDINGS INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 24-cv-08672-LJL<br>[rel. 23-cv-07331-LJL;<br>24-cv-05096-LJL] |

### DECLARATION OF LOUIS M. SOLOMON

Louis M. Solomon declares as follows under 28 U.S.C. § 1746:

1.      I am a partner at the law firm Reed Smith LLP ("Reed Smith"). I submit this Declaration as part of Appellant Eletson Holdings, Inc.'s ("Holdings") Motion to Strike the Stipulation and Agreement to Dismiss the Appeal Under Rule 42(A) of the Federal Rules of Appellate Procedure (ECF 30) (the "Stipulation"). I am familiar with the facts, pleadings, and proceedings referenced herein, including by reference to public or official documents. I make this Declaration based on my personal knowledge, and without intention, authorization, or effect of waiving or compromising any privilege or immunity held by Reed Smith or our clients.

2.      Reed Smith was informed that, on November 12, 2024, a Greek Court issued a provisional order that appointed a provisional board for Holdings, which does not include any of the persons purporting to act for Reorganized Holdings (*see* Ex. B).  Pursuant to the authority vested by the Greek Order, the provisional board retained Reed Smith for limited purposes, including to represent Provisional Holdings before this Court in connection with Holdings' appeal of the Confirmation decision.

---

[1] The Debtors in these chapter 11 cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

3.      A true and correct copy of the *Amended Disclosure Statement in Support of Petitioning Creditors' Amended Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and Its Affiliated Debtors* dated July 8, 2024, [Bankr. ECF 847, Ex. 1] is annexed hereto as Exhibit A.

4.      A true and correct copy of the order issued by the Piraeus First Instance Court in Greece on November 12, 2024 [Bankr. ECF 1290, Ex. A] is annexed hereto as Exhibit B.

5.      A true and correct copy of the Liberia Business Corporation Act is annexed hereto as Exhibit C.

6.      A true and correct copy of the transcript of the January 24, 2025 hearing before Honorable John P. Mastando III is annexed hereto as Exhibit D.

7.      A true and correct copy of the *Notice of Filing of Solicitation Version of Proposed Order (I) Approving (A) The Rights Offering and Related Procedures and Materials and (B) The Backstop Agreement, and (II) Granting Related Relief* dated July 9, 2024 [Bankr. ECF 851] is annexed hereto as Exhibit E.

8.      A true and correct copy of the *Notice of Filing of Solicitation Version of Petitioning Creditors Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors* dated July 8, 2024 [Bankr. ECF 846] is annexed hereto as Exhibit F.

9.      A true and correct copy of the *Findings of Fact, Conclusions of Law, and Order Confirming Petitioning Creditors' Amended Joint Chapter 11 Plan of Eletson Holdings Inc. and Its Affiliated Debtors* dated November 4, 2024 [Bankr. ECF 1223] is annexed hereto as Exhibit G.

10.     A true and correct copy of the article titled *Addressing Treatment of Equity Under Foreign Law and the Code* is annexed hereto as Exhibit H.

11.     A true and correct copy of Letter to the Honorable John P. Mastando III from Kyle J. Ortiz re: Status Conference dated November 13, 2024 [Bankr. ECF 1242] is annexed hereto as Exhibit I.

12.     A true and correct copy of *Notice of Filing of Third Amended Plan Supplement to the Petitioning Creditors' Amended Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors*, dated November 19, 2024, [Bankr. ECF 1255], containing the *Revised Form of Shareholders Agreement* at pp. 90-114 thereof, is annexed hereto as Exhibit J.

13.     A true and correct copy of the Restated Articles of Incorporation of Eletson Holdings Inc. dated June 29, 2007 are annexed hereto as Exhibit K.

14.     A true and correct excerpt from the *Declaration of Vasilis Hadjieleftheriadis in Support of Reed Smith's Opposition to Emergency Motion of Reorganized Eletson Holdings Inc. for an Order Imposing Sanctions* dated December 10, 2024 [Bankr. ECF 1290] is annexed hereto as Exhibit L.

15.     A true and correct copy of a Letter addressed to Judge Lewis J. Liman from Isaac Nessar re Discovery as to Capacity and Authority dated January 11, 2024 in *Eletson Holdings, Inc. et al. v. Levona Holdings Ltd.*, Case No. 23-cv-07331 [ECF 75] is annexed hereto as Exhibit M.

16.     A true and correct copy of Letter to Honorable John P. Mastando III from Isaac Nesser requesting a discovery conference dated February 26, 2024 [Bankr. ECF 441] is annexed hereto as Exhibit N.

17.     A true and correct copy of *Levona's Memorandum in Further Support of Motion to Compel Discovery* dated June 7, 2024 [Bankr. ECF 754] is annexed hereto as Exhibit O.

18.     A true and correct copy of Pach Shemen, LLC's November 26, 2024 application

before a Liberian court is annexed hereto as Exhibit P.

19.     A true and correct copy of Pach Shemen, LLC's December 5, 2024 application

before a Liberian court is annexed hereto as Exhibit Q.

20.     A true and correct copy of Pach Shemen, LLC's January 7, 2025 application

before a Liberian court is annexed hereto as Exhibit R.

21.     A true and correct copy of the motion to intervene in Pach Shemen LLC's January

7, 2025 application in Liberia [Bankr. ECF 1359, Ex. 17] is annexed hereto as Exhibit S.

22.     A true and correct copy of *Green v. City of New York*, No. 97 Civ. 8191, 2000

U.S. Dist. LEXIS 11691 (S.D.N.Y. Aug. 16, 2000) is annexed hereto as Exhibit T.


I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, NY
       January 31, 2025

                                           */s/ Louis M. Solomon*
                                           Louis M. Solomon

4

**Exhibit 12**

OCNAEleC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ELETSON HOLDINGS INC. et al.,

 4                    Petitioners,

 5            v.                              23 Civ. 7331 (LJL)

 6   LEVONA HOLDINGS LTD.,
                                             Remote Conference
 7
                     Respondents.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             December 23, 2024
10                                           9:34 a.m.

11   Before:

12                    HON. LEWIS J. LIMAN,

13                                           District Judge

14                         APPEARANCES

15   REED SMITH LLP
          Attorney for Petitioner
16   BY:  LOUIS M. SOLOMON
          COLIN A. UNDERWOOD
17
     QUINN EMANUEL URQUHART & SULLIVAN LLP
18        Attorneys for Respondent
     BY:  ISAAC NESSER
19

20   TOGUT, SEGAL & SEGAL LLP
          Attorneys for Respondent
21   BY:  KYLE J. ORTIZ

22
     GOULSTON & STORRS
23        Attorneys for Respondent
     BY:  JENNIFER FUREY
24

25
```

1           THE COURT:  Good morning, everybody.  This is a

2    conference in two matters.  In 23 civ. 7331, I have

3    Mr. Nesser's application for relief from the stay.  In

4    24 civ. 8672, which is the bankruptcy appeal, I have the motion

5    to expedite the entry of the stipulation of dismissal.  I have

6    Mr. Solomon's opposition in both cases.

7           I propose to hear Mr. Nesser first, then I'll hear the

8    applicants in the bankruptcy case for the stipulation of

9    voluntary dismissal and then I'll hear from Mr. Solomon.

10          Mr. Nesser.

11          MR. NESSER:  Thank you, your Honor.  Good morning.

12          So, your Honor of course issued a stay several weeks

13   ago.  We had requested that stay initially and we have no

14   problem with it continuing in principle.  However, we've had a

15   series of events that are causing us to believe that the

16   Eleston parties -- parties purporting to represent Eleston are

17   taking actions during the pendency of the stay that are

18   designed to take advantage of the stay and to change stats on

19   the ground while the stay is pending, which we think is

20   inconsistent with the purpose of the stay and frankly an effort

21   to avoid your Honor from being able to resolve these issues

22   efficiently.

23          And, as we said in the letter, most recently we had a

24   threat or indication that there's going to be a filing in

25   England to recognize or enforce the JAMS arbitration.  I should

1   say I don't know whether that will be England.  It was a letter

2   we got from Reed Smith London counsel.  They haven't told us

3   what they're planning to file precisely or where they're

4   planning to file it, other to say the purpose of it is they're

5   upset they don't have the money that they think Levona owes to

6   Eleston Gas, which of course is crazy in a number of respects.

7          Number one, the award is subject to vacate a

8   proceeding.  Number two, Eleston Gas is not represented by Reed

9   Smith.  And number three, even if neither of those were true,

10  the bankruptcy court issued a lift stay order that precludes

11  any enforcement of the award.  So we think it's out of order in

12  a number of different respects, but it is concerning because

13  it's suggesting they are trying to take advantage of the stay.

14         We've had other issues, too.  They're purporting to

15  arrest our ships.  So they are arresting our ships.  They've

16  been making arguments that I believe counsel in the other

17  matter has presented to your Honor concerning issues in Liberia

18  and Greece, supposedly.  And we think there's a threat that

19  things are spiraling out of control.  So we requested therefore

20  that the stay be lifted so that Levona can proceed quickly on

21  its vacatur petition.

22         THE COURT:  Let me ask you this question:  Why should

23  I do anything more -- even assuming I agree with you -- than

24  lift the stay for the limited purposes of permitting you to

25  make a motion to enjoin any of the foreign proceedings that

OCNAEleC

```
 1   would seek to confirm an award that is subject of orders before

 2   me and proceedings before me, and perhaps, to permit motions

 3   for intervention by Gas or by the parties who receive benefits

 4   under the award?

 5         MR. NESSER:  So, your Honor, on the issue of

 6   intervention by Gas we think -- and I suppose you'll hear more

 7   about this in the context of the other application before your

 8   Honor today.  But we don't believe that Gas has any ability to

 9   intervene.  We believe that Gas, as a subsidiary of Holdings is

10   controlled by Holdings.

11         So the suggestion that Reed Smith, representing

12   Eleston Gas could pursue such an intervention motion, seems

13   wrong based on what Levona understands.  And certainly the

14   suggestion that Reed Smith could represent Eleston Gas

15   notwithstanding that it's been on the other side of all of this

16   for so long, seems incorrect.  That seems to me, as counsel for

17   Levona, as if it were to represent a disabling conflict.

18   Obviously that's not my conflict to police.

19         Having said all of that, yes, if your Honor is

20   amenable to permitting a motion to enjoin the foreign

21   proceedings, we would be happy to proceed that way.

22         I would note one other thing.  This could be --

23         THE COURT:  Wait.  Mr. Nesser, before you note the one

24   other thing.

25         MR. NESSER:  Yes.
```

1          THE COURT:  There were two parts to my question.  One

2    was the intervention, but the other part --

3          MR. NESSER:  Sure.

4          THE COURT:  -- was why should I open it up for foreign

5    discovery in 7331.

6          MR. NESSER:  Sure.  And what I meant to express is if

7    that's your Honor's inclination, we have no objection to

8    leaving discovery stayed, so long as we could pursue the

9    injunction against the foreign proceedings that your Honor

10   noted.  Because our concern, as we said, we would be content to

11   have the stay remain in place.  Our concern is that there are

12   actions that are being taken during the pendency of the stay

13   that are designed to take advantage of the stay.  It's like,

14   idle minds are the devil's workshop.  Right?

15         So we just have the stay here and it's causing an

16   opening for things to happen elsewhere.  But if your Honor were

17   going to entertain an injunction to preclude the stuff from

18   happening elsewhere, then we think it would probably resolve

19   it.

20         The one other thing I was going to mention is that all

21   of this could be pretty easily avoided of Mr. Solomon or his

22   colleagues at Reed Smith would represent now that they're not

23   going to file an international proceeding to recognize or

24   enforce the award purporting to represent Eleston Gas.  That

25   seems out of bounds in so many different ways, but that seems

1    like it ought to be an easy ask.  So that representation that

2    that won't be that action filed, there won't be other actions

3    filed purportedly on behalf of Eleston Gas anywhere in the

4    world.  That would, you know, avoid the need for any of this to

5    be filed.

6            THE COURT:  Okay.  Let me hear from the applicant in

7    the bankruptcy matter.

8            I'm putting aside, by the way, the colorful language

9    about idle minds and devil's workshop, which is colorful

10   language, but not really pertinent to any issue before me.

11           Go ahead, counsel.

12           MS. FUREY:  Thank you, your Honor, and --

13           THE COURT:  Please identify yourself for the record.

14   I'm not sure that you have addressed me.

15           MS. FUREY:  Good morning, your Honor.  My name is

16   Jennifer Furey.  I'm an attorney at Goulston & Storrs and I

17   represent Eleston Holdings Inc.

18           Before I turn to the second matter of the appeal, I

19   did just want to note one other request as it relates to the

20   331 matter that you were just discussing with Levona's counsel.

21   And that is, on behalf of Eleston Holdings Inc., we would

22   request that if the stay be lifted for a limited purpose, that

23   purpose also include Eleston -- a motion or request by Eleston

24   Holdings to compel Reed Smith to turnover its file.

25           As has been noted in various letters, we, the

 1   plaintiffs, indisputably become effective, we, as Goulston &

 2   Storrs, as new counsel for Eleston Holdings Inc.  Reed Smith is

 3   former counsel of Eleston Holdings Inc.  A request has been

 4   made by both directly from Eleston Holdings and by Goulston &

 5   Storrs to Reed Smith for the files.  And those requests have

 6   been rejected out of turn and not a single document has been

 7   submitted.

 8           So I just wanted to --

 9           THE COURT:  Let me ask you the question with respect

10   to that request.

11           I understand that there are some proceedings currently

12   in front of Judge Mastando, including a motion for sanctions.

13   Am I correct about that?

14           MS. FUREY:  Correct.  It does not include -- correct.

15   There are pending proceedings in front of the bankruptcy judge.

16           THE COURT:  And why wouldn't that request that you're

17   making now for the files be more appropriately raised in the

18   bankruptcy court.  In front of me in 7331, is the question of

19   whether to vacate the arbitration award.

20           There are discovery requests that are currently

21   pending in front of me that call for some of the records of

22   Reed Smith.  But it seems to me that the corporate governance

23   issues that you're raising are better raised in the bankruptcy

24   court.  Why isn't that the case?

25           MS. FUREY:  Your Honor, in front of the bankruptcy

1   court there is a very limited motion that's been filed, and

2   that's just a motion for sanctions.  So that is a motion to

3   determine whether Reed Smith and other parties, including

4   former debtors, should be subject to sanctions for failure to

5   comply with the order.

6          In front of this Court, your Honor, is a proceeding

7   which ultimately could determine whether the arbitration should

8   be confirmed or vacated.  The files that we're seeking relate

9   really to that matter because they go to whether in fact the

10  arbitration should be confirmed or vacated.  And without those

11  files -- and this is not, you know, this is apart from

12  discovery.  As new counsel for Eleston Holdings, we need to be

13  in a position to assess that, to assess the viability of those

14  claims, to assess our strategy, to assess whether they -- you

15  know, the confirmation proceedings should be continued, and

16  whether, you know, what our arguments are, you know, and how

17  strong they are against vacature.  And that really is step one

18  as new counsel and that is very much the heart of the 331

19  matter.  And without those files --

20         THE COURT:  I take it by your request, there are

21  fairly well-established standards in New York with respect to

22  documents that prior counsel should be required to turnover,

23  and those that it need not be required to turnover.  I haven't

24  refreshed myself in anticipation of this conference.  But my

25  general recollection is that certain internal firm e-mails are

OCNAEleC

1    not necessarily the subject of -- need not be turned over.

2            I take it you're not -- there are limits to what

3    you're seeking?

4            MS. FUREY:  There may be limits to what we're seeking,

5    your Honor.  My understanding of the New York law is that

6    internal e-mails, to the extent that they are legal memorandum,

7    work product, meant for the benefit of the client, certainly

8    would need to be turned over.  E-mails between lawyers within

9    the firm over, you know, something else, scheduling, whatever,

10   or just banter, may not be.  That being said, we're not --

11           THE COURT:  I think it's the *Proskauer Rose* decision.

12   Right?

13           MS. FUREY:  Exactly.  Exactly, your Honor.  But we're

14   not even there yet because Reed Smith is refusing to turnover a

15   single document.  Not even the pleadings.  Nothing.

16           So this isn't a case where we have been negotiating

17   over the scope of the file and what is appropriately belongs to

18   client or the firm.  This is a situation where we've been

19   completely -- we haven't been able to see a single document,

20   even though they are --

21           THE COURT:  All right.  Ms. Furey, let me ask you -- I

22   understand that issue now.

23           Let me ask you to address your motion to expedite and

24   the stipulation of voluntary dismissal.  And maybe you have

25   eluded to it, but confirm for me that the plaintiff

OCNAEleC

1    confirmation is now a final order and is not subject to

2    staying.

3         Also, explain to me your understanding of the Greek

4    proceedings and whatever order exists in Greece.  And then make

5    your argument to me with respect to the relief you're seeking

6    in the bankruptcy case.

7         MS. FUREY:  Yes, your Honor.

8         So the plan, the confirmation order in the bankruptcy

9    was entered on November 4th.  The bankruptcy plan went into

10   effect on November 19th.  It has not been stayed, and no party

11   to this appeal has ever disputed those facts.

12        THE COURT:  Okay.

13        MS. FUREY:  So the plan has indisputably become

14   effective, and it has not been stayed.  My understanding --

15        THE COURT:  To order of the bankruptcy court?

16        MS. FUREY:  Exactly, your Honor.  Yes.

17        There's a confirmation order, again, that was entered

18   into on November 4th.  The plan indisputably went into effect

19   on November 19th.  There has been no stay.

20        THE COURT:  Okay.

21        MS. FUREY:  As far as the Greek order, so as you saw,

22   Reed Smith informed cocounsel, rely upon an ex parte Greek

23   order giving temporary authority -- so-called temporary

24   authority to a so-called provisional board.  We believe that

25   this Greek order was obtained fraudulently.  It was obtained

1    through --

2            THE COURT:  You've attached for me the Greek order.

3    It's a lengthy document.  Most of it appears to be the

4    application.  Where is the actual order portion of it?

5            MS. FUREY:  You're correct, your Honor, that is the

6    application.  The reason we included the whole thing is I think

7    there was a notation on the application that was an order as

8    well, just saying an order.  But it starts on page 399.  So the

9    actual order is from pages 399 to 402.

10           And as we note in our letter, there's a lot -- there

11   are many misrepresentations, you know, in this Greek letter.

12   But on page 373, I'm just going to note one of them that is

13   particularly applicable here.

14           On page 373 of the application in Greece, the

15   applicants say:  Therefore, today, the company lacks management

16   and legal representation.  And that's the basis for which they

17   sought this provisional board.  And of course that is false.

18   The plan, which is a binding order, which raised judicata

19   effect, resulted in immediate creation of a new board of

20   directors after the automatic resignation of the former board.

21   And that's plan Section 5.10.

22           But even -- so but even taking -- even if you took

23   this Greek court order at face value, that a provisional board

24   has been appointed in Greece, that is -- and that Reed Smith

25   has been retained from that provisional board.  That cannot

1   mean that Reed Smith can act contrary -- or whomever they claim

2   to represent -- can act contrary to this Court's orders or the

3   orders of the bankruptcy court.

4       So this, I would say that while certainly we dispute

5   any sort of enforceability of the Greek order, your Honor, you

6   don't need to even go there because it's irrelevant for

7   purposes of this particular request.

8       So this particular situation arose because Reed Smith,

9   without clarifying with whom they represent, asked this Court

10  to hold the entry of stipulation.  But they do so on this false

11  narrative that there's some dispute as to EHI authority to

12  enter into a stipulation of dismissal in this U.S. proceeding.

13  But this is wrong in multiple respects.

14      First, the plan indisputably went effective.  We said

15  no stay was sought or brand.  Again, these facts are

16  acknowledged by all parties.  And on the effective date of the

17  plan, Reed Smith as existing counsel of Eleston Holdings was

18  automatically terminated, shares changed hands, money was paid,

19  a new board of directors was appointed and new counsel,

20  Goulston & Storrs, was then retained.

21      So this is not about a foreign entity seeking to do

22  something in a foreign jurisdiction.  This is about an entity

23  that was voluntarily reorganized through a U.S. bankruptcy

24  proceeding in which it consented to personal jurisdiction

25  seeking to act in this United States court.

1          So to argue that the stipulation should not be entered

2   is an assault on this Court's authority.  It's also an assault

3   on the plan, the bankruptcy plan, because the Court -- like all

4   plans with foreign issues, contains an order for the debtors

5   and all counsel to cooperate in the implementation of the plan.

6   And it also contains injunction language against interference

7   of the implementation of the plan.  And that must mean

8   something.

9          And Reed Smith, in its former debtors actions, are

10   causing major repercussion damage and, frankly, havoc.  They're

11   using this open appeal to cause -- to file inappropriately on

12   behalf of my client, Eleston Holdings, motions in foreign

13   jurisdictions and trying to relitigate issues that have been

14   already decided by the U.S. courts.

15          So as explained in our letter, your Honor, the former

16   debtors again, on behalf of EHI, my clients, filed a motion to

17   dismiss the foreign recognition proceeding in Liberia.  Now,

18   this proceeding was only necessary because EHI's former

19   management refused to provide information necessary to file AOR

20   in Liberia.  So they had to go -- EHI had to file --

21          THE COURT:  Yeah.  I've read those papers.

22          Let me ask you this question, which pertains to the

23   proceedings before Judge Mastando.  Before Judge Mastando, are

24   you making the arguments that the proceedings in Liberia, the

25   proceedings in Greece, are in violation of the injunction that

1    he issued?  And therefore, aren't a lot of these issues already

2    in front of Judge Mastando?  Are you asking me to step on Judge

3    Mastando's toes?

4         MS. FUREY:  No, your Honor.  I'm not counsel in the

5    bankruptcy case.  Togut is.  And so I will let Togut explain

6    exactly the scope of those orders.  But I certainly have read

7    everything that has been filed.  And I will tell you that we

8    are absolutely not asking you to step on Judge Mastando's toes.

9    Because the issues in front of Judge Mastando is whether those

10   filings are sanctionable or not and whether the refusal to

11   recognize the effectiveness of the plan and the obstruction of

12   this activity is sanctionable.

13        Here, we are asking your Honor to dismiss -- to enter

14   a stipulation dismissal that is filed in your court.  So Judge

15   Mastando has not been asked, nor would he have the authority

16   to, enter that stipulation of dismissal in your court.  And

17   this should be --

18        THE COURT:  I get your argument.

19        Why don't I hear very briefly from Togut just how this

20   relates to the proceedings in front of Judge Mastando and then

21   my being asked to prejudge the questions before him whether the

22   conduct of Reed Smith is sanctionable.  It would not be my

23   intent to do that.

24        MR. ORTIZ:  Good morning, your Honor.  This is Kyle

25   Ortiz of Togut Segal.  We represent the petition creditors

OCNAEleC

1   during the bankruptcy and then we're engaged by Eleston

2   Holdings following the effective date as well.

3          The proceedings in the bankruptcy court, your Honor,

4   are an effort to really seek compliance with the plan, as well

5   as, you know, seek to put parties in contempt and sanctions if

6   they refuse to do.  So we certainly believe that the actions in

7   Liberia and in Greece are in violation of the plan and part of

8   what we are seeking to sanction these parties on.  But I do

9   think there's some distinction here.

10          One, in those proceedings, only Reed Smith has

11   appeared to respond.  They're making the argument that they're

12   not here with regard to any of the other parties that we are

13   seeking sanctions against.  And therefore, it really, at this

14   point, according to Reed Smith, is just Reed Smith that's

15   there.  I also would need we had a proceeding in front of Judge

16   Mastando on Friday.  And I'm going to be careful here, your

17   Honor, because we don't yet have a transcript, and if my memory

18   is wrong I will correct myself through a letter or somehow.

19   But I do believe he was asking about this appeal.  And one of

20   the issues we raised is the fact that they're now seeking to

21   use the fact that the appeal, in our view, is improperly still

22   open to argue that they have a grounds for dismissal in

23   Liberia, which is a bit of a shell game.  And Mastando asked

24   the question -- I'm sorry, Judge Mastando asked the question

25   well -- if that appeal is dismissed, wouldn't that be something

OCNAEleC

1    you could tell the Liberian court.

2           So I don't think Judge Mastando necessarily thinks

3    that the two are necessarily connected.  I think Judge Mastando

4    is somebody who is a very methodical and careful judge and

5    tries to just look at what's directly in front of him and make

6    sure that he is addressing those things and isn't the type of

7    judge who really reaches outside of what directly is in front

8    of him.

9           But I don't think they're necessarily perfectly

10   intertwined, your Honor.

11          THE COURT:  Okay.

12          Mr. Solomon, let me hear from you.

13          MR. SOLOMON:  Thank you, your Honor.

14          There is a 100 percent overlap between the predicate

15   facts that we disagree with and think we will disprove of the

16   motion to expedite dismissal of an appeal and the matters

17   between Judge Mastando.  A 100 percent overlap.

18          So the question there, as Mr. Ortiz just said, is the

19   implementation of the plan.  And we have been heard, your

20   Honor.  We did not have an opportunity to respond to the

21   letters that your Honor is now speaking to.

22          THE COURT:  Who are you representing at the moment?

23   As you're speaking to me, who are you speaking on behalf of?

24          MR. SOLOMON:  We are representing Eleston Holdings.

25   Eleston Holdings continues to exist.  We call it provisional

OCNAEleC

```
 1    just so that we don't get confused.  They call the Eleston
 2    Holdings that they I believe improperly are purporting to
 3    represent, as reorganized holdings.
 4            There are, in the plan and in the confirmation order,
 5    over a dozen different places, all of this, everything I'm
 6    about to tell your Honor is before Judge Mastando.  Over a
 7    dozen different places where the plan and the confirmation
 8    order say that any order entered here is an order only to the
 9    extent it is compliant with all applicable law, including the
10    law of Liberia.  This is a Liberian corporation.  And you don't
11    just extinguish the shares, you don't just change the board of
12    a Liberian corporation.
13            Your Honor would remember earlier in the year it was
14    Levona who was arguing to your Honor that you needed to look at
15    Liberian law to be able to answer questions of incorporation.
16    That is exactly what is happening here.  So it is true that the
17    plan went defective.  It is not true that it is implementable.
18    It is only implementable if and when the Liberian court
19    recognizes the award, recognizes the confirmation order.
20            Now, we believe that this is a --
21            THE COURT:  So tell me, I'm going to pull up the plan
22    of confirmation at the moment.  And you will tell me what
23    you're relying on.
24            Give me one moment to pull it up.
25            MR. SOLOMON:  All of these papers were submitted to
```

1   Judge Mastando, your Honor.

2          THE COURT:  I've got the -- I'm going to have the plan

3   of confirmation.  The plan of confirmation was submitted to me.

4   It was submitted to me in 7331.

5          Maybe, Mr. Nesser, you have the docket number.  I've

6   got it.  Nevermind it is Dkt. No. 202-3.

7          All right.  Tell me what you're pointing to,

8   Mr. Solomon.

9          MR. SOLOMON:  Thank you, your Honor.  It is really

10  exactly what Judge Mastando said he needs to have a hearing, an

11  evidentiary hearing.

12         THE COURT:  No, just tell me what you're referring to.

13         MR. SOLOMON:  In 5.2(b) of the plan, it says that:

14  The plan proponents can take action as permitted by applicable

15  law.  And then it --

16         THE COURT:  Hold on for a second.  Hold on for a

17  second.

18         MR. SOLOMON:  I'm sorry, your Honor.  It's page 35 of

19  148.

20         THE COURT:  I'm 5.2(b) of the plan, which is on page

21  27 of the plan of --

22         MR. SOLOMON:  That's right, your Honor.  And if your

23  Honor would --

24         THE COURT:  Hold on for a second.

25         Okay.  What are you relying upon, Mr. Solomon?

OCNAEleC

1          Mr. Solomon, what are you relying upon?

2          MR. SOLOMON:  I'm sorry, I thought your Honor could

3    hear me.

4          We are relying on the multiple places in 5.2(b).  This

5    is the first of several things I would like to call to your

6    Honor's attention, which we haven't been able to put in in

7    writing.  But it here specifically says that they can take

8    actions as permitted by applicable law.  And then it lists

9    execution and delivery of appropriate agreements, execution and

10   delivery of instruments, the filing of appropriate

11   certificates.  If applicable law is defined to include foreign

12   law.

13         In Section 5.4, your Honor, we are -- the Goulston

14   letter says to your Honor that the board was replaced and the

15   shares were canceled.  Incorrect.  Factually incorrect.

16         THE COURT:  Hold on for a second.  Okay.  Why are you

17   saying that's incorrect?

18         MR. SOLOMON:  It is incorrect because 5.4 explicitly

19   says that:  Notes, stock where permitted by applicable law can

20   be canceled.  Applicable law does not permit the cancellation

21   of the stock.

22         It's for that reason, your Honor, that Pach Shemen,

23   the merchant entity, went and sought and is now in the middle

24   of a proceeding to recognize the bankruptcy plan because none

25   of the stock is canceled, we're not permitted by applicable

1    law.

2            We submitted to Judge Mastando expert reports of a

3    Liberian lawyer who goes through the Liberian statute, and why

4    for a Liberian corporation there needs to be recognition of the

5    bankruptcy plan and the confirmation order before any of these

6    corporate acts, any of them, can be taken.

7            Now, Judge Mastando, in entering the confirmation

8    order, I was just reading from the plan, your Honor, and there

9    are about ten places there.  I will not burden your Honor with

10   the rest.  But in the confirmation order itself, this is make

11   21 --

12           THE COURT:  What is your clients, who I gather are by

13   operation of the plan, are the former directors of Eleston

14   Holdings, have any standing to raise any of these issues?  Your

15   clients enter an injunction not to interfere with all these

16   actions that Eleston Holdings and the current directors who are

17   replaced as of the effective date would want to take.

18           MR. SOLOMON:  We believe that's factually and legally

19   incorrect, your Honor.  As we will -- we have shown Judge

20   Mastando in our proof to him on the 6th and the 7th.

21           The order and the plan have injunctions only to the

22   extent permissible under applicable law.  I'm reading from

23   paragraph five of the confirmation order.

24           THE COURT:  Aren't you basically then saying that the

25   order of the bankruptcy court is almost elusory?  That it --

OCNAEleC

 1   before it has any effect.  It would have to be blessed by a

 2   Liberian court --

 3           MR. SOLOMON:  Not at all, your Honor.

 4           THE COURT:  Seems an extreme position as a matter of

 5   international bankruptcy law.

 6           MR. SOLOMON:  Well, with respect, your Honor, what

 7   we've shown to Judge Mastando, and we've briefed this issue, I

 8   think what is extreme is the position that the merchants and

 9   parties are taking, that you can have a non-U.S. entity with

10   non-U.S. assets, wholly foreign, and you can ignore non-U.S.

11   law.  There is no -- there is no law that permits that, your

12   Honor.  And our position is twofold.  Our position is that no

13   law permits it.  And as a matter of international law, you have

14   to go and respect other countries' laws.

15           But, second, this particular plan, and this is the

16   reason why Judge Mastando said I'm not going to do this by

17   motion.  I need to have a full set of papers and I need to have

18   a hearing.  Because this particular plan says that the limit

19   that it goes to is only to the extent permissible under

20   applicable law.

21           In the disclosure statement that was made to all

22   creditors, okay, it acknowledges that the debtors are

23   incorporated in Liberia, governed by the laws of foreign

24   jurisdictions other than the United States.  And they

25   specifically, the planned proponents, specifically undertook to

1    "make every effort to ensure that the confirmation order are

2    recognized and are effective in all applicable jurisdictions."

3    So we are not saying that this is -- that what the bankruptcy

4    court did here is a nullity.  Not at all.

5         In fact, what our expert in Liberian law submitted to

6    Judge Mastando is a law that says there are a limited number of

7    objections that one can make before -- by the way, your Honor,

8    it's the same thing as somebody came here.  There are a limited

9    number of objections that someone can make under Chapter 15.

10   And I believe that the -- until that is done, it is incorrect

11   to say that Holdings doesn't exist and Holdings doesn't have

12   the right to be represented by counsel before your Honor.

13        So, actually, the question is who is asking for this

14   appeal to be shut down?  It is the same party who's trying to

15   oppose the appeal.  And we believe, and we have asserted, and

16   we intend to prove to Judge Mastando, your Honor, these are the

17   same issues that until such time as they obtain recognition,

18   and I don't think it's for this Court, and Judge Mastando

19   understand it's not for him, to be deciding what is going on in

20   Liberia.  That is as a separate sovereign and they're going to

21   do whatever they're going to do there.  What this Court does as

22   a result of that is a different question.

23        But where we find ourselves, where Reed Smith finds

24   itself, is in between two separate orders.  We have the

25   bankruptcy order here, and this bankruptcy order is explicitly

1   subject to compliance with foreign law.  And we have an order

2   of a Greek court, which says that until such time as that

3   happens, then this provisional board of Holdings is entitled to

4   protect itself.  It's entitled to defend itself.

5         And it's for that reason, that we don't think this

6   appeal should be dismissed at all.  We have -- I think there

7   are a couple of issues of law on this appeal that I think are

8   important for the district courts to assess.  We would like to

9   be heard on that, the idea.  But it was completely prejudicial

10  to say, no, you can't even be heard because of a misreading, a

11  flat, explicit misreading, in the facts that the Goulston

12  letter purports to give, your Honor, of what the plan is and

13  why we are entitled to be heard.

14        THE COURT:  Give me one moment.

15        Anything else from you Mr. Solomon?

16        MR. SOLOMON:  Briefly.  I am happy to answer any other

17  questions.

18        But the comment, your Honor, that we haven't been able

19  to respond to their letter.  It made some factual statements,

20  but that we somehow knew about the Greek order.  We knew

21  nothing about the Greek order.  Reed Smith knew nothing about

22  the Greek order.  These were a minority of shareholders who

23  went to Greece and obtained that order.  And we believe it's a

24  valid and binding order.  But this order was done before the

25  effective date of the plan.  And the position that --

1          THE COURT:  Mr. Solomon, the question I've got for you

2     is:   If I were to adopt your view, which is to do nothing on

3     the bankruptcy appeal, under your view, at what point would I

4     either dismiss the action or hear the action?

5          MR. SOLOMON:  From our perspective, your Honor, I

6     think that action should be briefed now.  If your Honor wants

7     to wait, your Honor will gain some --

8          THE COURT:  Well, I'm certainly not going to permit

9     briefing of the action when I've got an order from the

10    bankruptcy court that, on its face, says that your firm is

11    terminated in terms of the representation of Eleston Holdings.

12          I hear your argument that there are caveats about

13    under applicable law, but I'm certainly not going to have the

14    appeal briefed by Eleston, by Reed Smith.

15          So in the absence of that, what is your proposal?

16          MR. SOLOMON:  That the Court wait for there to be

17    recognition of this bankruptcy plan.

18          THE COURT:  So what does that mean, besides what's

19    already happened?

20          MR. SOLOMON:  Oh, the proceeding in Liberia, we are

21    told is measured in weeks or months, not months or years.  But

22    I'm not counsel there.  This is just what Judge Mastando was

23    told.  And if, if the bankruptcy order is pending --

24          THE COURT:  In the proceeding in Liberia, what is

25    being asked for in Liberia?

1          MR. SOLOMON:  That the order of the bankruptcy court

2     that confirmed the plan of reorganization, be recognized in

3     Liberia.  And as a result of that, if it is recognized in

4     Liberia, then the various corporate actions, which Goulston

5     says have already been taken, and have not, would then be

6     taken.  There would be a cancellation of the shares.  There

7     would be a change of the board of directors.  There would be a

8     new management.  This would affect Holdings.  Doesn't at all

9     affect Gas.  But that's a separate question that I think goes

10    to the other, to the other --

11         THE COURT:  So aren't you in effect asking for the

12    very stay of Judge Mastando's order that you haven't got, from

13    this Court?

14         MR. SOLOMON:  With due respect, Judge, I don't think

15    so.  There are plenty of times when more than one activity will

16    affect what is going on.  We -- it was not our plan.  It was

17    their plan.  And their plan repeatedly says they are going to

18    go and seek implementation in foreign jurisdictions before they

19    can implement.  And that is the matter that is before Judge

20    Mastando.

21         By the way, I might say, your Honor, that since it's

22    exactly the same issue, Judge Mastando may have views on this

23    that your Honor will find illuminating.  And that I think is

24    measured in a much more expedited timeframe than what's

25    happening in Liberia.  Although, I understand Liberia to be

OCNAEleC

1    fairly expedited.  But I think Judge Mastando, I didn't tell

2    you, he has a hearing set for the 6th and the 7th to address

3    these very issues.

4              THE COURT:  Okay.

5              Let me hear from counsel in the bankruptcy, in the

6    bankruptcy matter before me.  And whether it's the Togut firm

7    or the other firm, I'm indifferent.  Whoever is the best

8    situated to address the arguments that Mr. Solomon has made.

9              MR. ORTIZ:  Good morning, your Honor.  Again, Kyle

10   Ortiz of Togut Segal from petitioning creditors and now

11   reorganized holdings.  I'm probably better positioned because

12   it's my name at the end of that plan, and I'm involved in the

13   bankruptcy proceeding.

14             THE COURT:  Let me pull up the plan again.

15             MR. ORTIZ:  Of course.

16             THE COURT:  Okay.

17             MR. ORTIZ:  Thank you, your Honor.

18             So I think it's important to start from the fact that

19   you will find no Chapter 11 plan I think really ever that

20   doesn't say at various places "where permitted by applicable

21   law."  That does not imply, by any means, that there's any

22   applicable law that is in the way of what you're doing.  You

23   put that in to the extent that it ultimately happens.

24             So to the extent that we say "where permitted by

25   applicable law" and he wants to read that as meaning we will go

1    seek a recognition proceeding in Liberia I think he's starting

2    from a false premise.  And I do believe this is something they

3    created once we asked them, as we are entitled to under the

4    plan in various places, to take a simple action of updating an

5    address of record.  And then they refused to do that, which is

6    what necessitated an entirely unnecessary Liberian proceeding.

7            And I think your Honor really hit it on the head when

8    you noted that they didn't bring a stay.  And that this is all

9    intended to kind of create issues in multiple jurisdictions and

10   tell every court, wait for the other court, to get more time,

11   to do other things, to potentially end up with a ruling in

12   Greece or elsewhere that conflicts with it.  Which we think is

13   an issue.

14           THE COURT:  Well, what is it in the plan that you say

15   is now effective by court order that I've got to honor that

16   gives the people who charged you with representation and

17   discharged them the ability to file this notice of dismissal?

18           MR. ORTIZ:  Well, your Honor, I think it's a whole

19   number of places, and I'll go through them relatively quickly

20   for you.

21           I think you start, your Honor, with Section 5.4.  I

22   want to note that there is, as you heard Mr. Solomon

23   acknowledge, your Honor, that there is no debate that an

24   effective date occurred.  And that, 5.4 says:  Except as

25   provided in this plan, or in the confirmation order, on the

1  effective date, all notes, stock -- I acknowledge -- where

2  permitted by applicable law.  But that does not imply there was

3  any applicable law.

4       It goes on to say a bunch of things and then it says:

5  Shall be canceled, and the obligations of the Debtors

6  thereunder or in any way related thereto shall be fully

7  released, terminated, extinguished, and discharged, in each

8  case without notice to or order of the bankruptcy court, act or

9  action under applicable law, regulation, order, or rule, or any

10  requirement of further action, vote, or other approval or

11  authorization by any Person.  And of course person is defined

12  to mean really anyone that would have been on the other side.

13       And then, your Honor, you can turn to the next page

14  5.8., which says:  On the effective date -- it doesn't say

15  after recognition; it doesn't say after counsel to the former

16  debtors believe he has sufficient proof -- that Reorganized

17  Holdings is authorized to issue or cause to be issued the

18  reorganized equity in accordance with the terms of this plan,

19  which we did, your Honor, through the Rice offering, which my

20  client spent $3.5 million to implement.

21       And then, your Honor, can you look at Section 5.10(c),

22  which is on page 32.  That says:  The members of the governing

23  board of each debtor prior to the effective date, in their

24  capacities as such -- so at that point, anybody that's on the

25  board, whether provisionally or otherwise -- shall have no

1   continuing obligations to Reorganized Holdings on or after the

2   effective date and each such member will be deemed to have

3   resigned or shall otherwise cease to be a director or manager

4   of the applicable debtor on the effective date. Commencing on

5   the effective date, each of the directors of Reorganized

6   Holdings shall serve pursuant to the terms of the new corporate

7   governance documents.

8           And then 5.2, your Honor, I think another very

9   important section, specifically for this issue.  5.2(c)

10  provides that:  Except as otherwise provided in this Plan, or

11  any agreement instrument, or other document incorporated in the

12  plan or the plan supplement, on the effective date -- not after

13  recognition, on the effective date -- all property in each

14  estate, including all retained causes of action -- which would

15  include this appeal -- and any property acquired by any of the

16  debtors, including interests held by the debtors in their

17  respective non-Debtor direct and indirect subsidiaries and

18  affiliates shall vest in Reorganized Holdings.

19          It is also worth noting, your Honor that Reorganized

20  Holdings is a defined term, which means Eleston Holdings Inc.

21  on and after the effective date.

22          And then further in that same 5.2(c) it says:  On and

23  after the effective date, except as otherwise provided in this

24  plan, Reorganized Holdings may operate its business and may

25  use, acquire, or dispose of property and maintain, prosecute,

1  abandon, compromise or settle any claims, interests, or causes

2  of action without supervision or approval by the Bankruptcy

3  Court and free of any restrictions of the Bankruptcy Code or

4  Bankruptcy Rules.

5       So, your Honor, this notion there's an effective date,

6  that says on the effective date all these things occur, but on

7  effective date, none of these things occur, is just completely

8  inconsistent with how bankruptcy works.  And there's a lot of

9  concern you'll hear about complying with Liberian and Greek

10  law.  But I hear no concern with complying with U.S. law under

11  1141 and 1142 of the Bankruptcy Code that say a plan is binding

12  on the debtor, the very debtor who sought the jurisdiction of

13  this Court.

14       And I would note, your Honor, we negotiated things

15  like a third interim C order with the debtors prior to the

16  effective date that provided that we would pay them after the

17  effective date as Reorganized Holdings.  Judge Mastando later

18  entered that order after the effective date, and they had no

19  problem reaching out to us to ask for payment of their fees.

20  But they seem to think the other provisions don't apply because

21  out of delay, an attempt to create a stay, they have

22  manufactured arguments based on boilerplate language.  Which I

23  really appreciate, your Honor, that you took counsel into the

24  document and made him point you to specific language.

25       The other thing he raised that we say in the

<br></br>

1    disclosure statement that we would seek recognition is just a

2    misstatement, that is a risk factor, that we say if the foreign

3    company, somebody might challenge it.  He took a risk factor as

4    an invitation, your Honor, and now wants to say that was

5    somehow a promise that we made.

6            So I think there are multiple --

7            THE COURT:  Okay.  I'm prepared to rule.

8            MR. ORTIZ:  I'm sorry, your Honor.

9            THE COURT:  I'm prepared to rule.

10           In the bankruptcy appeal, I'm going to grant the

11   motion to expedite the granting of the stipulation of

12   dismissal, and I'm going to grant the stipulation of dismissal.

13   Because, number one, there is an order of the Court, the

14   bankruptcy court, that has become final that I am to honor.

15   And that order recognizes the new board of Eleston, gives the

16   new board of Eleston, under 5.2, the ability to act on behalf

17   of Eleston.  That's under 5.10 and 5.11, and gives them, under

18   the plan of confirmation, authority with respect to this

19   appeal.

20           If the former owners of Eleston, the former directors

21   of Eleston, want relief from those provisions of the plan, go

22   to what is or would have been the bankruptcy court and not to

23   me.

24           And, second, with respect to 7331, I'm going to lift

25   the stay, except with respect to discovery.  So that means that

OCNAEleC

1    motions to intervene can be made in 7331.  And a motion for an

2    injunction with respect to the foreign proceedings, if

3    appropriate, can be made.  Mr. Nesser has supported that

4    application.  There's no prejudice to any party by the partial

5    lifting of the stay.

6             I'll try to put all of this in a very short order.

7    But I believe that a transcript is being made of this.  Am I

8    correct that there's a court reporter on?

9             THE COURT REPORTER:  Yes, Judge.

10            THE COURT:  I'm going to direct the parties to order a

11   copy of this transcript on an expedited basis.  I have no doubt

12   that they will do it.  Otherwise, the arguments have been very

13   helpful.

14            We're adjourned.  Thank you all.

15            (Adjourned)

16

17

18

19

20

21

22

23

24

25

## Exhibit C

### Service Table[1]

| Name | Docket Numbers | Service Address / Email |
|---|---|---|
| Elafonissos Shipping Corp.<br><br>(Former Minority Shareholder) | 1406 & 1408 | Mail service:<br>118, Kolokotroni Street, Piraeus, 185 35 Greece<br><br>Email:<br>ioannis.zilakos@eletson.com[2] |
| Keros Shipping Corp.<br><br>(Former Minority Shareholder) | 1406 & 1408 | Mail service:<br>118, Kolokotroni Street, Piraeus, 185 35 Greece<br><br>Email:<br>manolis.andreoulakis@eletson.com[3] |
| Laskarina Karastamati[4]<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr<br>lascarina.karastamati@eletson.com |
| Vasilis Kertsikoff[5]<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr<br>vassilis.kertsikoff@eletson.com |
| Eleni Karastamati<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |

---

[1]    This Service Table is qualified in its entirety by reference the affidavits of service filed at Docket Numbers 1406 and 1408 (the "Affidavits of Service").  To the extent that any discrepancies exist between the summary in this table and the Affidavits of Service, the Affidavits of Service control.

[2]    Ioannis Zilakos, a representative of Elafonissos Shipping Corp., is also a Former D&O.

[3]    Manolis Andreoulakis, a representative of Keros Shipping Corp., is also a Former D&O.

[4]    Laskarina Karastamati, a Former D&O, is also a representative of Lassia Investment Company, a Former Shareholder.

[5]    Vassilis Kertsikoff, a Former D&O, is also a representative of Family Unity Trust Company, a Former Shareholder.

| Name | Docket Numbers | Service Address / Email |
|---|---|---|
| Panagiotis Konstantaras<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>KostelanetzLLP, Claude M. Millman, Esq., 7 World Trade Center, 34th Floor, New York, NY 10007<br><br>Email:<br>crule@kostelanetz.com<br>cmillman@kostelanetz.com |
| Vasileios Chadzieleftheriadis[6]<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr<br>vasilis.hadjieleftheriadis@eletson.com |
| Konstantinos Chadzieleftheriadis<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Ionnis Zilakos<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Ioannis Zilakos<br><br>(Former D&O) | 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Emmanouil Andreoulakis<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Andrioanos Psomadakis-Karastamatis<br><br>(Former D&O) | 1406 & 1408 | Email:<br>j.markianos@daniolos.gr |

---

[6]    Vasilis Hadjieleftheriadis, a Former D&O, is also a representative of Glafkos Trust Company, a Former Shareholder.

| Name | Docket Numbers | Service Address / Email |
|------|----------------|-------------------------|
| Panox Paxinos<br><br>(Former D&O) | 1406 & 1408 | Email:<br>j.markianos@daniolos.gr |
| Panos Paxinos<br>(Former D&O) | 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Eleni Giannakopoulou<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Niki Zilakou<br><br>(Former D&O) | 1406 & 1408 | Mail service:<br>Daniolos Law Firm, John Markianos-Daniolos, 13, Defteras Merarchias Street, Piraeus, 185 35 Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Michael S. Lazaroff, Rimon, P.C.<br><br>(Purported Counsel to Holdings) | 1406 & 1408 | Mail Service:<br>400 Madison Avenue, Suite 11D<br>New York, New York 10017<br><br>Email:<br>michael.lazaroff@rimonlaw.com |
| Anthony, Acampora, Rimon P.C.<br><br>(Purported Counsel to Holdings) | 1406 | Email:<br>Anthony.acampora@rimonlaw.com |
| John Markianos-Daniolos, Daniolos Law Firm<br><br>(Former D&O Counsel) | 1406 & 1408 | Mail Service:<br>13, Defteras Merarchias Street Piraeus, 185 35 Greece<br><br>Email: j.markianos@daniolos.g |
| Lex Liberia Group LLC<br><br>(Purported Counsel to Holdings) | 1408 | Mail Service:<br>Congo Town, Opposite Dominion Christian Fellowship Church, Monrovia, Liberia |
| Moses Paegar, Justice Advocates | 1408 | Mail Service:<br>18th Street, Sinkor |

| Name | Docket Numbers | Service Address / Email |
|---|---|---|
| and Partners<br><br>(Purported Counsel to Holdings) | | Monrovia, Liberia |
| J. Johnny Momoh, J. Johnny Momoh & Associates Law Chambers<br><br>(Purported Counsel to Holdings) | 1408 | Mail Address:<br>8th Street, Sinkor, Monrovia, Liberia |
| Reed Smith LLP, Charles Weller, Louis Solomon, Alyssa Conn, Colin Underwood, Joshua M. Peles, Paul Singer, Peter Kennedy<br><br>(Former Counsel to Holdings and Certain Subsidiaries) | 1406 & 1408 | Mail Service:<br>1 Blossom Yard, London, E1 6RS, United Kingdom<br>599 Lexington Avenue New York, NY 10022<br>1717 Arch Street, Philadelphia, PA 19103<br>Reed Smith Centre, 225 Fifth Avenue, Pittsburgh, PA 15222<br>355 S Grand Ave Ste 2900, Los Angeles, CA 90071<br><br>Email:<br>Cweller@reedsmith.com<br>LSolomon@reedsmith.com<br>AConn@reedsmith.com<br>CUnderwood@reedsmith.com<br>jpeles@reedsmith.com<br>psinger@reedsmith.com<br>pkennedy@reedsmith.com |
| 7 King's Bench Walk, David Allen KC, David Bailey, KC<br><br>(Former Counsel to Holdings) | 1406 | Email:<br>dallen@7kbw.co.uk<br>dbailey@7kbw.co.uk |
| Harney Westwood & Riegels (BVI)<br><br>(Counsel to Eletson Corp.) | 1406 | Email:<br>Claire.goldstein@harneys.com<br>Kimberly.crabbe-adams@harneys.com |
| Harneys Fiduciary<br><br>(Counsel to Eletson Corp.) | 1406 | Email:<br>Ross.munro@harneysfiduciary.com |

4

| Name | Docket Numbers | Service Address / Email |
|---|---|---|
| Daniolos Law Firm<br><br>(Former D&O Counsel) | 1406 & 1408 | Mail Service:<br>13, Defteras Merarchias Street, Piraeus 185 35, Greece<br><br>Email:<br>j.markianos@daniolos.gr |
| Sidley Austin<br><br>(Counsel to the Former Majority Shareholders) | 1406 & 1408 | Mail Service:<br>787 Seventh Avenue, New York, NY 10019<br><br>Email:<br>wcurtin@sidley.com |