Andrew L. Buck
Louis M. Solomon
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
abuck@reedsmith.com
lsolomon@reedsmith.com
*Counsel for Provisional Eletson
Holdings Inc. and Reed Smith LLP*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Eletson Holdings Inc., *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION FOR STAY OF ENFORCEMENT OF
JANUARY 29, 2025 ORDER PENDING APPEAL**

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

JURISDICTION .................................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 6

BASIS FOR RELIEF ............................................................................................................. 6

    A.   Provisional Holdings will suffer irreparable injury absent the stay. ................................ 6

    B.   Reorganized Holdings will not suffer substantial injury if enforcement of the January 29, 2025 Order is stayed pending appeal. ............................................................ 8

    C.   Appellants' appeal has at least a reasonable possibility of success on the merits. ........ 10

    D.   Public interest favors a stay. ........................................................................................ 12

ALTERNATIVE RELIEF – TEMPORARY STAY ........................................................ 13

NO BOND IS NECESSARY .............................................................................................. 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accent Delight Int'l*,
    2018 U.S. Dist. LEXIS 107890 (S.D.N.Y. June 27, 2018) ...................................................... 10

*In re Adelphia Communs. Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) ............................................................................................. 6, 7

*Amara v. CIGNA Corp.*,
    53 F.4th 241 (2d Cir. 2022) .................................................................................................. 3, 4

*CohnReznick v. Platinum Partners Value Arbitrage Fund L.P. (In re Platinum Partners Value Arbitrage Fund L.P.)*,
    2018 U.S. Dist. LEXIS 109684 (S.D.N.Y. June 29, 2018) ....................................................... 6

*In re Country Squire Assocs., L.P.*,
    203 B.R. 182 (2d Cir. BAP 1996) ............................................................................................ 8

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*,
    2024 U.S. App. LEXIS 12684 (2d Cir. May 29, 2024) ............................................................. 4

*Diorinou v. Mezitis*,
    237 F.3d 133 (2d Cir. 2001) ................................................................................................... 13

*In re Gorsoan Ltd.*,
    2020 U.S. Dist. LEXIS 128980 (S.D.N.Y. July 21, 2020) ...................................................... 12

*In re HBLS, L.P.*,
    468 B.R. 634 (Bankr. S.D.N.Y. 2012) .................................................................................... 13

*In re Hellas Telecomms. (Luxembourg) II SCA*,
    555 B.R. 323 (Bankr. S.D.N.Y. 2016) .................................................................................... 12

*Hizam v. Clinton*,
    2012 U.S. Dist. LEXIS 135104 (S.D.N.Y. Sept. 20, 2012) ...................................................... 7

*Jock v. Sterling Jewelers, Inc.*,
    738 F. Supp. 2d 445 (S.D.N.Y. 2010) .................................................................................... 10

*Nat'l Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec.*,
    842 F. Supp. 2d 720 (S.D.N.Y. 2012) .................................................................................... 10

*Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*,
 93 F.3d 1036 (2d Cir. 1996) ................................................................................................12

*O'Sullivan v. Deutsche Bank AG*,
 2018 U.S. Dist. LEXIS 70418 (S.D.N.Y. Apr. 26, 2018) ......................................................12

*San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*,
 548 U.S. 1301 (2006) .............................................................................................................8

*Srour v. New York City*,
 2023 U.S. Dist. LEXIS 192497 (S.D.N.Y. Oct. 26, 2023) ....................................................14

*In re Taub*,
 470 B.R. 273 (E.D.N.Y. 2012) ...............................................................................................6

*In re Zarnel*,
 619 F.3d 156 (2d Cir. 2010) ...................................................................................................5

**Statutes**

28 U.S.C. § 158............................................................................................................................2

28 U.S.C. § 158(a)(1)...................................................................................................................2

**Rules**

Bankr. Rule 8003 .........................................................................................................................2

**Other Authorities**

15B Charles Alan Wright, Fed. Prac. & Proc., § 3916 (2d ed., Apr. 2022 update)..........................4

**INTRODUCTION**

1. Proper resolution of this stay motion is aided by a proper understanding of what this appeal is (and is not) about. This appeal is about whether it was correct for the Court to issue the January 29, 2025 Order (Dkt. No. 1402), which addresses the duties of "Debtors" and "Related Parties" under the Plan to effectuate consummation of the Plan and update the corporate governance documents in Liberia of a Liberian entity with a principal place of business in Greece. This appeal is *not* about whether it was correct for the Court to issue the October 25, 2024 Order Confirming the Plan. (Dkt. No. 1212) That appeal is a separate matter, currently working its way through the District Court and Second Circuit.

2. Reorganized Holdings' opposition shows a misunderstanding of the situation or an attempt to confuse the issues. Almost every aspect of Reorganized Holdings' opposition boils down to an argument that Appellants did not seek to stay the Confirmation Order and that Appellants now seek to obtain that stay through the "backdoor." (*See, e.g.*, Dkt. No. 1443 ¶ 1) But that is plainly incorrect—in fact, it is both incorrect and irrelevant to the matter at hand now. Nothing about *this* appeal or *this* stay motion challenges the Court's October 25, 2024 Order confirming the Plan. In fact, for present purposes, the Court's October 25, 2024 Order could be perfectly appropriate, and that would not change the valid arguments Appellants will raise regarding the January 29, 2025 Order and whether it should be stayed pending appeal.

3. Reorganized Holdings also strains to argue that the District Court rejected the arguments that Appellants will raise on appeal. But that is also incorrect—and equally irrelevant to whether Appellants have a right to seek Second Circuit review. The issues in this appeal have not been before the District Court. Instead, the District Court addressed issues surrounding an appeal of *the October 25, 2024 Order* and who had the right to prosecute that appeal. On February 14, 2025, the District Court issued an indicative ruling that the appellant in that case—Eletson

Holdings—was not represented by the attorneys prosecuting the appeal, *i.e.*, Reed Smith LLP and Rimon PC, and the Second Circuit will now address that issue. In any event though, the situation here is different. In contrast to the matter addressed by the District Court, this appeal is advanced by Provisional Holdings (to the extent permitted) and Reed Smith LLP as parties.

4. Each of the relevant considerations favors a stay here. On the reasonable possibility of success on appeal, the grounds for Appellants' arguments come directly from the record. Holdings is a foreign entity governed by Liberian and Greek law; Petitioning Creditors made promises to comply with foreign law through the Disclosure Statement, Plan, and Confirmation Order; and, under Liberian law, any changes to Holdings' AOR, AOI, or shareholders can be made only following recognition of the Confirmation Order in Liberia. The same is true under Greek law. This Court made its ruling on what the Plan says and what foreign law requires, which Appellants acknowledge, but this is not a situation where the ruling followed directly from a controlling statute or case. Under any estimate, Appellants present a substantial question on appeal.

5. If it turns out that Provisional Holdings is correct that the laws of Liberia and Greece will not allow Provisional Holdings to take the actions this Court has ordered before the Plan has been confirmed in those respective countries, and Provisional Holdings is forced to decide which laws to comply with before its appeal can be resolved, that is irreparable harm. Stays pending appeal are designed to address this exact situation.

## JURISDICTION

6. The District Court has appellate jurisdiction pursuant to Bankr. Rule 8003 and 28 U.S.C. § 158, which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals … from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). Reorganized Holdings asserts arguments against jurisdiction that fail to address the relevant law and facts.

7. First, the January 29, 2025 Order is a "final" order. Reorganized Holdings does not

dispute that the January 29, 2025 Order is a "postjudgment" order or that *Amara v. CIGNA Corp.*, 53 F.4th 241 (2d Cir. 2022) controls on this issue. Under *Amara*, "postjudgment orders are usually subject to appellate review." 53 F.4th at 251. "This rule ensures that the trial court's disposition of important questions that arise after a final judgment are subject to appellate review." *Id.* at 251. Ultimately, a "postjudgment order is final when it has finally disposed of a question, and there are no pending proceedings raising related questions." *Id.*

8. The January 29, 2025 Order finally disposed of the questions before the Court, and there were no *pending* proceedings raising related questions. After the January 29, 2025 Order, there was nothing that the Court *necessarily* needed to do. The Court contemplated that the parties *could* return, but the Court did not contemplate that it *necessarily* would address further matters. The January 29, 2025 Order has to be final because it was possible there would be no further related proceedings, and the Notice of Appeal was filed when there were not pending related proceedings. If the January 29, 2025 Order were not considered final, then Appellants would have been left without any guarantee of appellate review, because there was no guarantee that further proceedings would occur and give Appellants a chance to appeal the January 29, 2025 Order.

9. The Second Circuit addressed this situation in *Amara*, where the lower court issued post-judgment orders dictating how a defendant should calculate pension benefits. 53 F.4th at 245. The plaintiffs made the mistake of not immediately appealing those post-judgment orders. The Second Circuit reasoned that the post-judgment orders were final. In rejecting the plaintiffs' argument that they were not final, the Second Circuit stated, "Plaintiffs' theory implies that the [post-judgment] orders were immune from appellate review (because they were non-final) *unless* Plaintiffs chose to move for further relief." *Id.* at 254-55. But that could not be right, the Second Circuit reasoned, because "[if] the [postjudgment orders] were 'not found final' at that time, 'there

[was] a real risk that all opportunity for review [would] be lost.'" *Id.* at 255 (quoting 15B Charles Alan Wright, Fed. Prac. & Proc., § 3916 (2d ed., Apr. 2022 update)). It is the same situation here.

10. Reorganized Holdings argues that an order of "contempt" that does not impose "sanctions" generally is not final. (Dkt. No. 1443 ¶¶ 18-19) That rule applies where a contempt order is entered so that a party will satisfy a discovery obligation in an ongoing proceeding, such as a post-judgment collection matter, *see Amara*, 53 F.4th at 249-53; *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 2024 U.S. App. LEXIS 12684, *9 (2d Cir. May 29, 2024), but that is not this situation. The January 29, 2025 Order is not a contempt order, and the January 29, 2025 Order was issued when there were no pending proceedings on related matters.

11. Second, the January 29, 2025 Order also represents a "decision" by this Court. Reorganized Holdings contends otherwise by claiming that the order merely clarifies a preexisting order. (Dkt. No. 1443 ¶ 19) The test is whether the Order is "substantive" in contrast to a "ministerial." *Amara*, 53 F.4th at 252. "The appropriate inquiry for whether an order is substantive or ministerial is whether the order affects rights or creates liabilities not previously resolved by the adjudication of the merits." *Id.* (citation omitted). When a party moves to enforce an order, that only confirms the party's own view that the order resolved an important matter and was thus a decision permitting appellate review. *See id.* at 255 ("Plaintiffs' motion to enforce and for sanctions only confirms their own view that the [post-judgment] Orders resolved important, but ancillary, postjudgment matters and were thus final decisions permitted appellate review."). Here, as in *Amara*, the Court's post-judgment order resolved important, substantive matters. The order was preceded by an evidentiary hearing, and it was followed by a motion for contempt and sanctions to enforce. Both facts show the January 29, 2025 Order is "substantive" and not "ministerial."

12. Finally, Appellants have standing. Any "person aggrieved" has standing to appeal

a bankruptcy court order. *In re Zarnel*, 619 F.3d 156, 160 (2d Cir. 2010). Reorganized Holdings does not dispute that Reed Smith has standing as an aggrieved entity. Reorganized Holdings does not dispute that the Majority Shareholders are aggrieved entities. Reorganized Holdings focuses only on Provisional Holdings. (Dkt. No. 1443 ¶ 6) But Reorganized Holdings does not contend that Provisional Holdings is not aggrieved. Instead, Reorganized Holdings contends that Provisional Holdings "does not exist." (*Id.*) That is wrong.

13. Provisional Holdings is very much "in existence." Provisional Holdings was represented by counsel during the proceedings before this Court that led to the January 29, 2025 Order (Dkt. No. 1405 at 11, 17), and Provisional Holdings filed a notice of appeal from that order (Dkt. No. 1411). And, contrary to what Reorganized Holdings argues, the District Court did not hold that Provisional Holdings does not exist. That issue was not before the District Court. The District Court addressed whether the counsel in the case before it properly represented *Eletson Holdings*—not whether Provisional Holdings exists as an entity, it clearly does.

14. As noted in the Motion to Stay (Dkt. No. 1412 ¶ 9), on November 12, 2024, in response to the resignation of four board members of Holdings, the minority shareholders of Holdings submitted an application before the Piraeus Court of First Instance in Greece to appoint provisional management due to the remaining four board members not being able to constitute a quorum. (Dkt. No. 1407, Ex. B ¶ 20) The Piraeus Court issued a provisional order, dated November 12, 2024 (the "Greek Order"), appointing eight provisional board members for Holdings with a mandate to take care of the urgent business of the Company including the authority to appoint lawyers to protect its interests, including appeal of this Court's decision confirming the Plan. (*Id.*)

15. Reorganized Holdings argues that, per Provisional Holdings' own theory, the Greek Order is invalid until recognized in a foreign jurisdiction. Reorganized Holdings is confused. As

5

Provisional Holdings has stated, *the Plan* is not fully consummated until recognized in a foreign jurisdiction because the Plan (and the Disclosure Statement and Confirmation Order) provide that Petitioning Creditors must comply with and respect non-U.S. law to effectuate the Plan and reorganization of Eletson Holdings Inc. (Dkt. No. 847 § VIII.A.3; Dkt No. 846 §§ 5.2(b), 5.4, V.5.1, V.5.9, IX.9.1, XI.11.2, XI.11.3; Dkt. No. 1223 ¶ 5(iv)) The same thing does not exist for the Greek Order. Reorganized Holdings has identified no special process to be followed before this Court can, and should, grant comity to Greek orders. Appellants know of no such special process. Provisional Holdings exists and had standing as an aggrieved entity to appeal.

## LEGAL STANDARD

16. Reorganized Holdings tries to pass off the four stay-pending-appeal factors as required *elements*, but Reorganized Holdings is also forced to acknowledge that the "*factors* are evaluated on a sliding scale … [where] 'more of one excuses less of the other.'" (Dkt. No. 1443 ¶ 15, quoting *CohnReznick v. Platinum Partners Value Arbitrage Fund L.P. (In re Platinum Partners Value Arbitrage Fund L.P.)*, 2018 U.S. Dist. LEXIS 109684 (S.D.N.Y. June 29, 2018) (emphasis added)) This Court engages in a "balancing" of the relevant considerations. *In re Adelphia Communs. Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007).

## BASIS FOR RELIEF

**A. Provisional Holdings will suffer irreparable injury absent the stay.**

17. "A showing of probable irreparable harm is the principal prerequisite for the issuance of a stay." *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012). But for a stay, Provisional Holdings is caught between different legal systems and different commands as to what it needs to do. Provisional Holdings cannot take the action this Court has commanded *and* comply with the law of the relevant foreign jurisdictions (Dkt. No. 1288, Ex. 29 ¶¶ 7-11; Dkt. No. 1289 at ¶ 12; 1/6/2025 Hr'g Tr. 93:22:184:12)—*i.e.*, the jurisdictions where Eletson Holdings is incorporated

(Liberia, Dkt. No. 847 at § VIII.A.3) and operates its principal place of business (Greece, Dkt. No. 1407, Ex. B ¶ 8), and where recognition proceedings are underway. On February 19, 2025, Provisional Holdings initiated a proceeding in Liberia to clarify the obligations imposed on Holdings' Address of Record. (Dkt. No. 1453, Feb. 19, 2025 Supp. Decl. of John Markianos-Daniolos ¶ 7) Provisional Holdings intends to advance those proceedings as expeditiously as possible. (*Id.*)

18. Appellants recognize that this Court reached its own conclusion on what foreign law requires. Appellants understand the Court's ruling, but it is not determinative of the issue here, which is whether Provisional Holdings will suffer irreparable harm without a stay if Provisional Holdings is eventually determined to be right on what foreign law requires. "The potential for irreparable injury should be evaluated taking into account the possibility that the ruling sought to be stayed is erroneous." *Hizam v. Clinton*, 2012 U.S. Dist. LEXIS 135104, *16-17 (S.D.N.Y. Sept. 20, 2012). If Provisional Holdings is right that the laws of Liberia and Greece prohibit Provisional Holdings from taking the actions this Court has ordered before the Plan has been confirmed in those respective countries, and Provisional Holdings is forced to decide which laws to comply with before its appeal can be resolved, that is irreparable harm. *See In re Adelphia*, 361 B.R. at 347-48. Stays pending appeal are designed to address this exact situation. And that is why Appellants have proposed that the Court *at least* issue a stay until March 20, 2024, at which time the parties can report on the status of the matters, including the matter in Greece, which is scheduled for a hearing on March 19, 2024. (*See* Dkt. No. 1410, Ex. A ¶ 8)

19. Reorganized Holdings faults Provisional Holdings for opposing Reorganized Holdings' efforts in Liberia and Greece. This argument misses the mark. As we read the papers filed in those countries, Provisional Holdings is not seeking to attack this Court's Order

7

collaterally. On the contrary, Provisional Holdings has stated that it respects this Court's Order. At the same time, Provisional Holdings (which was created by a Greek Order) is entitled (if not required) to argue in Greece and Liberia the standards that the law of those nations impose. Like any other person or entity, Provisional Holdings is entitled (if not required) to advocate in court (and hire counsel to advocate) based on the legal advice it receives and the obligations it has under that law. In any event, Petitioning Creditors and Reorganized Holdings have no basis to claim the moral high ground. Petitioning Creditors instituted their bankruptcy litigation plan to gain control of Eletson and use that control to get out from a valid arbitration award. And now, Petitioning Creditors (as Reorganized Holdings) are improperly attempting to shortcut the requirements of the Plan with threats of contempt and sanctions. Petitioning Creditors and Reorganized Holdings have no basis to castigate Provisional Holdings and its counsel for advocating their position in court.

20. The harms described herein are not ones that Provisional Holdings could recover from. The Court should issue the stay to prevent these harms from while the appeal is pending.

**B.     Reorganized Holdings will not suffer substantial injury if enforcement of the January 29, 2025 Order is stayed pending appeal.**

21. On this second factor, the Court balances the harm to Provisional Holdings if it does not grant the stay against the harm to Reorganized Holdings if the Court grants the stay. *In re Country Squire Assocs., L.P.*, 203 B.R. 182, 184 (2d Cir. BAP 1996) ("In measuring whether any such injury [to the non-moving parties] would be 'substantial,' it is appropriate to compare it with the irreparable harm [the movant] will suffer if the foreclosure sale is not stayed."). As Appellants pointed out in their Motion—and as remains true—the only harm that Reorganized Holdings might actually suffer from a stay is a minor delay that cannot overcome the irreparable harm to Appellants if they are not afforded a stay. *See San Diegans for Mt. Soledad Nat'l War Mem'l v. Paulson*, 548 U.S. 1301 (2006) (finding harm of slight delay outweighed by risk of irreparable harm). Even with

a stay, Reorganized Holdings may still change the AOR by acting through proper channels, including seeking recognition in Liberia and Greece.

22. Reorganized Holdings argues that it would be injured by a stay based on the false premise that it is entitled to "revenue" and "profits" from Holdings' subsidiaries under the Plan. (Dkt. No. 1443 ¶ 44; *see also* Spears Declaration, Dkt. No. 1446) In his declaration, Mr. Spears suggests that "Holdings would suffer substantial harm if a stay pending appeal were issued" based, in part, on "[t]he continued loss of revenue and profits from Holdings' operating subsidiaries, e.g., the SMEs." (Dkt. No. 1446 ¶ 13) That assertion is unsupported and woefully misplaced. The SMEs to which Mr. Spears refers are independent, non-debtor Greek entities. (Dkt. No. 1453, Feb. 19, 2025 Supp. Decl. of John Markianos-Daniolos ¶ 8) While the SMEs are wholly owned subsidiaries of Holdings, Holdings is only entitled to the *equity* in these entities. (*Id.*) To be clear, Holdings does not receive and has no entitlement to, as Mr. Spears wrongly suggests, the *revenues and profits* from the SMEs. (*Id.*) The notion that Reorganized Holdings can now obtain revenue from the subsidiaries is a fiction that Reorganized Holdings and Adam Spears manufactured to mislead this Court.

23. The Spears declaration also refers to "[a]dditional legal fees and costs associated with responding to the Appeal, the Motion, and the legal proceedings in Greece and Liberia …." (Dkt. No. 1446 ¶ 13) None of this, however, relates to the stay pending appeal. These costs will not go away if the Court declines to issue a stay pending appeal. The stay pending appeal will only help to conserve litigation resources. Simply put, there is no risk of harm, let alone substantial harm, to Reorganized Holdings by ordering a stay of enforcement pending resolution of the appeal. Even if there were a substantial harm suffered by Reorganized Holdings, such harm would not outweigh the harm suffered by Provisional Holdings if the stay were not granted.

**C. Appellants' appeal has at least a reasonable possibility of success on the merits.**

24. The third factor pertains to whether an appellant has shown a reasonable possibility of success on the merits. Even where the Court is confident in its ruling, this factor favors a stay where the appeal presents a substantial question on an issue of first impression. *In re Accent Delight Int'l*, 2018 U.S. Dist. LEXIS 107890, *4 (S.D.N.Y. June 27, 2018) (citing *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010)); *Nat'l Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 732-733 (S.D.N.Y. 2012). Appellants satisfy this threshold.

25. The grounds for Appellants' arguments come directly from the record. Holdings is a foreign entity—it is incorporated in Liberia (Dkt. No. 847 at § VIII.A.3) and has its principal place of business in Greece (Dkt. No. 1407, Ex. B ¶ 8). As such, it is governed by Liberian and Greek law. (*Id.*) And, Petitioning Creditors made explicit promises to comply with foreign law:

26. **Disclosure Statement**. In their court-approved Disclosure Statement, Petitioning Creditors expressly undertook to "make every effort to ensure that any Confirmation Order entered by the Bankruptcy Court and the steps taken pursuant to the Confirmation Order to implement the Plan are recognized and are effective in all applicable jurisdictions." (Dkt. No. 847 § VIII.A.3) Crucially, Petitioning Creditors understood, and indeed advised all interested parties of, the risk that "a foreign court may refuse to recognize the effect of the Confirmation Order." (*Id.*)

27. **The Plan**. The Plan provides that Petitioning Creditors must comply with and respect non-U.S. law to effectuate the Plan and reorganization of Eletson Holdings Inc. (Dkt No. 846 §§ 5.2(b), 5.4, V.5.1, V.5.9, IX.9.1, XI.11.2, sXI.11.3)

28. **The Confirmation Order**. The Confirmation Order states that it "shall constitute, to the greatest extent permissible under applicable law, all approvals and consents, if any, required by the laws, rules or regulations of any state or U.S. or foreign governmental authority with respect

to the implementation or consummation of the Plan and any act that may be necessary or appropriate for the implementation or consummation of the Plan." (Dkt No. 1223 ¶ 5(iv))

29. Further, Provisional Holdings presented foreign-law evidence showing that:

30. **Under Liberian law**, any changes to Holdings' AOR, AOI, or shareholders can only be made following recognition of the Confirmation Order in Liberia. (Dkt. No. 1289 ¶ 12; 1/6/2025 Hr'g Tr. 93:22:184:12) No matter what the parties might "agree" to, if a change to Holdings' AOR is based on a foreign court order, that order must first be recognized and enforced in Liberia to effectuate that change. (Dkt. No. 1289 ¶ 14)

31. **Under Greek law**, for the Confirmation Order and Plan to have any effect, a Greek court must recognize and confirm the Confirmation Order and Plan. (Dkt. No. 1407, Ex. B. ¶ 12 (citing articles 4, 6 and 15 of law 3858/2010, Uni Membered First Instance Court of Rethymnon 166/2012, Multi Membered First Instance Court of Athens 437/2013)) The Confirmation Order and Plan are not automatically recognized under Greek law. The judicial recognition of any United States bankruptcy court decision in Greece is also of vital importance to the operation of Greek rule of law since it involves entities whose very existence or operation stems from Greek law and its protections. (Dkt. No. 1407, Ex. B ¶ 12)

32. Reorganized Holdings is now seeking foreign recognition, as contemplated by the Disclosure Statement, Plan, Confirmation Order, and Liberian and Greek law. The only thing contrary to what was intended by the Plan is Reorganized Holdings' efforts to require the Former Debtors and Related Parties to effectuate a change to Holdings' AOR before Reorganized Holdings obtains recognition in Liberia and Greece.

33. This Court has made its ruling on what is required by the Plan and foreign law, but that ruling does not directly follow from any controlling case law. The Court addressed a first-of-

its-kind issue and made a first-of-its-kind ruling. The District Court *and/or the Second Circuit*, however, could reach a different conclusion. Appellants have a substantial question for appeal.

34. Reorganized Holdings asserts that "Judge Liman has already rejected every single argument …." (Dkt. No. 1443 ¶ 20) That, however, is false. As explained, these issues have not been in front of the District Court. Instead, the District Court has addressed issues surrounding an appeal of *the October 25, 2024 Order* and who had the right to prosecute that appeal. In contrast to the issues addressed the District Court, Reorganized Holdings has asked this Court to order the Former Debtors and Related Parties to update the AOR of a foreign entity in a foreign jurisdiction—when the law of that foreign jurisdiction requires recognition in the jurisdiction before that can happen. Reorganized Holdings' motion infringes upon settled notions of international comity. "Comity is especially important in the context of the Bankruptcy Code." *Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*, 93 F.3d 1036, 1048 (2d Cir. 1996). Congress "enacted chapter 15 of the Bankruptcy Code … to foster international cooperation and comity." *In re Hellas Telecomms. (Luxembourg) II SCA*, 555 B.R. 323, 343 (Bankr. S.D.N.Y. 2016). Appellants' appeal has a reasonable possibility of success.

**D.   Public interest favors a stay.**

35. The public interest favors a stay as well. Reorganized Holdings argues that the public interest disfavors delay. (Dkt. No. 1443 ¶ 45) However, a stay pending appeal—which is authorized by the Bankruptcy Rules and controlling case law—inherently comes with delay, which is just something that is weighed against the irreparable harm that the moving party would face without a stay pending appeal. "[S]ome delay is inherent in any stay." *O'Sullivan v. Deutsche Bank AG*, 2018 U.S. Dist. LEXIS 70418, *30 (S.D.N.Y. Apr. 26, 2018).

36. Reorganized Holdings does not dispute that there is a public interest in conserving resources. *See In re Gorsoan Ltd.*, 2020 U.S. Dist. LEXIS 128980, *25 (S.D.N.Y. July 21, 2020)

(finding that the "public interest factor militates in favor of a stay" because of the public interest in "preserving judicial resources by avoiding unnecessary proceedings while the appeal in this action is pending"). Instead, Reorganized Holdings argues that Appellants are wasting resources "by refusing to comply with the Plan and Confirmation Order whose finality they did not seek to stay." (Dkt. No. 1443 ¶ 50) Appellants, however, are not refusing to comply with the Plan and Confirmation Order. Appellants are advancing their (valid) position on what is called for under the Plan and Confirmation Order and explaining that the parties and Court do not need to waste resources adjudicating whether Appellants have complied with the Court's January 29, 2025 Order while the unique issues associated with it are on appeal. Before Reorganized Holdings proceeds with enforcement actions that will occupy the time and energy of this Court and the parties, Appellants should be permitted to pursue their rights to seek further review and determine whether there is even a basis for such enforcement actions by Reorganized Holdings.

## ALTERNATIVE RELIEF – TEMPORARY STAY

37. This Court should grant a full stay pending appeal. In the alternative, the Court should grant a stay to last (at least) until March 20, 2025, at which point Appellants can report to the Court any result from the March 19, 2025 hearing in Greece, during which the Athens Court will hear Reorganized Holdings' application to recognize the Confirmation Order and Provisional Holdings' opposition thereto. (Dkt. No. 1407, Ex. B ¶¶ 14-16; Dkt. No. 1410, Ex. A ¶ 8) *See In re HBLS, L.P.*, 468 B.R. 634, 640 (Bankr. S.D.N.Y. 2012) (deferring to foreign proceeding where movant sought "enforcement of prior orders of this Court"). This is not full relief, but it is practical relief that is tailored to this case and eminently reasonable, as evidenced by the fact that Reorganized Holdings does not even attempt to argue against it.

38. The same goes for the other alternative relief requested by Appellants. The Court should at least grant a temporary stay to allow Appellants time to seek a stay from the District

Court, which is a favored practice expressly approved by the Second Circuit. *See Diorinou v. Mezitis*, 237 F.3d 133, 138 (2d Cir. 2001). For this alternative request, Appellants ask that the Court order a stay that will expire in seven days from the Court's order granting the temporary stay unless Appellants file a motion to stay pending appeal in the District Court within that seven-day period, in which case the temporary stay will continue until the District Court decides the motion to stay pending appeal. *See, e.g.*, *Srour v. New York City*, 2023 U.S. Dist. LEXIS 192497, *9 (S.D.N.Y. Oct. 26, 2023) ("[I]f Defendants apply for a stay pending appeal before the Second Circuit prior to 11:59 p.m. on October 30, 2023, the temporary stay will remain in effect until the Second Circuit decides the stay motion."). Reorganized Holdings has no response.

## NO BOND IS NECESSARY

39. Reorganized Holdings does not dispute that Bankruptcy Rule 8007 grants the Court discretion to determine whether a bond is necessary to stay the case. Nor does Reorganized Holdings dispute that a bond is unnecessary where little to no risk of injury to an appellee exists. Reorganized Holdings faces nothing more than minor delay—something that is inherent to every stay. Nonetheless, Reorganized Holdings asks for a bond of more than $48 million. This ask, however, is based on a total fiction. As with the "substantial harm" factor, Reorganized Holdings argues that the stay "would further delay Holdings' access to and full control of its operating subsidiaries and the substantial revenue that they generate." (Dkt. No. 1443 ¶ 56, citing Spears Decl.) That is just wrong. Nothing in the Plan or Confirmation Order gives Reorganized Holdings control over the subsidiaries' revenue and profits. The subsidiaries, or SMEs, to which Mr. Spears refers are independent, non-debtor Greek entities. (Dkt. No. 1453, Feb. 19, 2025 Supp. Decl. of John Markianos-Daniolos ¶ 8) While the SMEs are wholly owned subsidiaries of Holdings, Holdings is only entitled to the *equity* in these entities. (*Id.*) Holdings does not receive and has no entitlement to, as Mr. Spears wrongly suggests, the *revenues and profits* from the SMEs. (*Id.*) The

14

assertion that Reorganized Holdings and Mr. Spears are entitled to this revenue is made up to support an argument that lacks any connection to the facts of the case.

40. Reorganized Holdings also contends that "Holdings will be forced to incur much more in legal fees and costs to contest the Appeal …." (Dkt. No. 1443 ¶ 56) Reorganized Holdings is confused as to what a bond relates to. It does not relate to the costs of contesting the appeal—those costs exist regardless of whether there is a stay. Instead, a bond is necessary only to protect an appellee against losses that would occur as a result of not enforcing the at-issue order while the appeal is pending, in the event the appeal is eventually ineffectual. On this point, Reorganized Holdings has nothing to offer. Because Reorganized Holdings cannot show any purpose for a bond, the Court should grant the stay without requiring a bond.

## CONCLUSION

41. This Court should grant the stay pending appeal.

DATED: New York, New York
February 19, 2025

/s/ *Louis M. Solomon*
Andrew L. Buck
Louis M. Solomon
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
abuck@reedsmith.com
lsolomon@reedsmith.com
*Counsel for Provisional Eletson*
*Holdings Inc. and Reed Smith LLP*