TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Brian F. Shaughnessy
Amanda C. Glaubach

*Counsel for Eletson Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re: : Chapter 11
:
ELETSON HOLDINGS INC., et al.,[1] : Case No. 23-10322 (JPM)
:
: (Jointly Administered)
Debtors. :
:
---------------------------------------------------------------x

## NOTICE OF HEARING OF ELETSON HOLDINGS INC.'S MOTION FOR ENTRY OF AN ORDER APPROVING CROSS-BORDER COURT-TO-COURT COMMUNICATIONS PROTOCOL

**PLEASE TAKE NOTICE** that, on March 3, 2025, Eletson Holdings Inc.

("Holdings") filed *Eletson Holdings Inc.'s Motion for Entry of an Order Approving Cross-Border Court-to-Court Communications Protocol* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion

(the "Hearing") will take place on **March 17, 2025 at 10:00 A.M. (Prevailing Eastern Time)** before the Honorable John P. Mastando III, United States Bankruptcy Judge for the Southern District of New York, in the United States Bankruptcy Court for the Southern District of New York (the "Court"), in Courtroom 501, located at One Bowling

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

Green, New York, New York 10004.

　　　　　**PLEASE TAKE FURTHER NOTICE** that, the Hearing shall be held via Zoom for Government.  Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, must make an electronic appearance utilizing the Electronic Appearance portal located at the Court's website at: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Appearances must be entered no later than **March 16, 2025, at 4:00 p.m. (Prevailing Eastern Time) (the "<u>Appearance Deadline</u>")**.  After the Appearance Deadline has passed, parties who have made their electronic appearance through the Court's website to appear via Zoom for Government will receive an invitation from the Court with a Zoom link that will allow  them to attend the Hearing.  Requests to receive a Zoom link should not be emailed to the Court, and the Court will not respond to late requests that are submitted on the day of the hearing.  Further information on the use of Zoom for Government can be found at the Court's website at https://www.nysb.uscourts.gov/zoom-videohearing-guide.

　　　　　**PLEASE TAKE FURTHER NOTICE** that, objections, if any, to the Motion must be made in writing, stating in detail the reasons therefor, and must be filed with the Clerk of the Bankruptcy Court, so as to be actually received by the Honorable Judge Mastando III, with electronic copies emailed to Chambers at: JPM.chambers@nysb.uscourts.gov;  and upon:  (i) Togut, Segal & Segal LLP, *counsel for Eletson Holdings Inc.*, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Kyle J. Ortiz, Esq. (kortiz@teamtogut.com); and Bryan M. Kotliar, Esq. (bkotliar@teamtogut.com);  and (ii) the Office of the United States Trustee for Region 2, Attn:  Daniel Rudewicz, Esq. (Daniel.Rudewicz@usdoj.gov) One Bowling Green, Room 534, New York, New York 10004-1408, no later than **March 10, 2025 at 12:00 P.M.**

**(Prevailing Eastern Time) (the "<u>Objection Deadline</u>")**.

        **PLEASE TAKE FURTHER NOTICE** that the Motion, as well as all other case related filings can be viewed and/or obtained by (i) accessing the Court's Website for a fee, or (ii) by contacting the Office of the Clerk of the United States Bankruptcy Court, Southern District of New York.  Please note that a PACER password is required to access documents on the Court's Website.

Dated:  New York, New York
       March 3, 2025

TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Kyle J. Ortiz*
KYLE J. ORTIZ
BRYAN M. KOTLIAR
BRIAN F. SHAUGHNESSY
AMANDA C. GLAUBACH
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel for Eletson Holdings Inc.*

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Brian F. Shaughnessy
Amanda C. Glaubach

*Counsel for Eletson Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                          :
In re:                                    :          Chapter 11
                                          :
ELETSON HOLDINGS INC., et al.,[1]         :          Case No. 23-10322 (JPM)
                                          :
                                          :          (Jointly Administered)
                Debtors.                  :
                                          :
-------------------------------------------------------------x

### ELETSON HOLDINGS INC.'S MOTION
### FOR ENTRY OF AN ORDER APPROVING CROSS-BORDER
### COURT-TO-COURT COMMUNICATIONS PROTOCOL

Eletson Holdings Inc. ("Holdings"), by and through its undersigned

counsel, hereby submits this motion (the "Motion") for entry of an order, substantially

in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to

sections 105(a) and 1525 of title 11 of the United States Code (the "Bankruptcy Code")

and consistent with General Order M-511, *Procedural Guidelines for Coordination and*

*Cooperation Between Courts in Cross-Border Insolvency Matters* (the "Cross-Border

Guidelines"), entered on February 17, 2017, and General Order M-532, *Adoption of*

*Judicial Insolvency Network Modalities of Court-to-Court Communication* (the "Modalities of

---

[1] The Debtors in these chapter 11 cases are: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

Communication"), entered on September 4, 2019, approving the Cross-Border Court-to-Court Communications Protocol, attached to the Proposed Order as **Exhibit 1** (the "Protocol").

In support of this Motion, Holdings submits the Declaration of Bryan M. Kotliar, Esq. filed contemporaneously herewith (the "Kotliar Declaration"), and respectfully states:

## JURISDICTION AND VENUE

1. This United States Bankruptcy Court for the Southern District of New York (this "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order"). Pursuant to Bankruptcy Rule 7008, Holdings confirms its consent to the Court's exercise of jurisdiction to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 1501, and 1525 of the Bankruptcy Code.

4. Pursuant to Section 11.1 of the Plan[2] and Paragraph WW of the Confirmation Order, the Court retains exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Sanctions Motion (as defined below).

the Plan and Section 1142 of the Bankruptcy Code.  In particular, under Section 11.1(d) of the Plan, the Court retains jurisdiction to "enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan . . . ."  Plan § 11.1(d).

## BACKGROUND

### A.  General Background

5.     On October 25, 2024, the Court issued a decision [Docket No. 1212] (the "Confirmation Decision") confirming the Petitioning Creditors' chapter 11 plan [Docket No. 1132, Ex. 1] (the "Plan") and overruling the Debtors' and Former Majority Shareholders' objections thereto [Docket Nos. 1029, 1033], among other things.

6.     On November 4, 2024, the Court entered the order confirming the Plan [Docket No. 1223] (the "Confirmation Order").  Through the Confirmation Order, the Court ordered the Debtors and all of their Related Parties[3]—including the Ordered Parties—to work in good faith to facilitate the Plan's consummation in full, to refrain from actions inconsistent with full consummation of the Plan, and to take directions from the Petitioning Creditors in connection with Plan implementation, stating:

- "The Debtors and . . . their [] Related Parties are hereby directed to cooperate in good faith to implement and consummate the Plan," Confirmation Order ¶ 5(i); and

- "[A]ll . . . parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan," *id.* ¶ 12.

---

[3]     Under the Plan, "Related Parties" includes, *inter alia*, the Debtors; the Debtors' predecessors, successors, and assigns; the Debtors' parents, owners, subsidiaries and affiliates; current and former officers, directors, principals, direct and indirect equity holders, fiduciaries, employees, agents, attorneys, managers, representatives, and other professionals; and all of the foregoing's respective heirs, servants, and nominees.  *See* Plan § 1.124.

Notably, these provisions became effective on the date that the Confirmation Order was entered, November 4, 2024, as opposed to the later Effective Date.

7.       On November 19, 2024 (the "<u>Effective Date</u>"), the Plan went effective.  *See* Docket No. 1258 (Notice of Effective Date) at 2.  On the Effective Date, all of Holdings' existing officers and directors, including the Remaining Directors (defined below) and the Provisional Appointees, were "deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor . . . ."  Plan § 5.10(c); *see also* Consummation Decision (defined below) at 26:5-26:10; Ex. 1 (Feb. 14, 2025 S.D.N.Y. Hr'g Tr.) at 108:11-13.

8.       On November 25, 2024, Holdings filed the *Emergency Motion of Reorganized Eletson Holdings Inc. for an Order Imposing Sanctions on Eletson Holdings' (A) Existing Person of Record and (B) Former Shareholders, Officers, Directors, and Counsel, Including Reed Smith LLP* [Docket No. 1268] (the "<u>Sanctions Motion</u>").  On December 10, 2024, Reed Smith, the Daniolos Law Firm, and the Former Majority Shareholders (through Sidley Austin LLP), respectively, filed objections to the Sanctions Motion [Docket Nos. 1285, 1287, 1291], which Holdings responded to on December 13, 2024 [Docket No. 1299] (the "<u>Sanctions Reply</u>").  On December 13, 2024, the Creditors' Committee filed a statement in support of the Sanctions Motion [Docket No. 1301].

9.       The Court held a trial on the Sanctions Motion on January 6, 2025, and thereafter the parties submitted post-trial proposed findings of fact and conclusions of law [Docket Nos. 1355, 1356] and post-trial briefs [Docket Nos. 1371, 1372] on January 13 and 17, 2025, respectively.

10.       On January 24, 2025, the Court issued an oral decision (the "<u>Consummation Decision</u>") granting the Sanctions Motion, as modified, which was

followed on January 29, 2025 by an accompanying order [Docket No. 1402]

(the "<u>Consummation Order</u>").[4]  In the Consummation Decision, the Court found that:[5]

- "The new members of the board of directors [of Holdings] are Adam Spears, Leonard Hoskinson, and Timothy Matthews."  Consummation Decision at 24:14-16.

- On the Effective Date, "the board members of the former debtor, certain of whom are now members of the provisional board, were automatically deemed to have resigned or otherwise ceased to be a director manager of Eletson Holdings Inc."  *Id.* at 26:5-26:10 (internal quotation marks omitted).

- "Reorganized Eletson Holdings Inc., the same corporate entity as the former debtor, Eletson Holdings, but with the new owners, board, and management as approved by this court in the confirmation order, is the only Eletson Holdings Inc."  *Id.* at 26:17-20 (internal quotation marks omitted).

- The unstayed Confirmation Order "recognizes the [authority of the] new board of Eletson and gives the new board of Eletson under section 5.2 of the plan the ability to act on behalf of Eletson . . . ."  *Id.* at 26:12-27:2 (internal quotation marks and citations omitted).

- "[T]he confirmation order and Chapter 11 plan are binding on Reorganized Eletson Holdings Inc.'s former shareholder[s], officers, directors, counsel, nominees and others as defined in section 1.124 of the plan pursuant to Section 1141 and 1142 of the Bankruptcy Code."  *Id.* at 43:11-15.

11.     In the Consummation Order, the Court ordered the same things

*already* required by the Confirmation Order, *see supra* ¶ 8, *i.e.*, the Court required the

Ordered Parties to work in good faith to facilitate the Plan's consummation in full,

stating:

> Pursuant to section 1142 of the Bankruptcy Code, the Debtors and their Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof[.]

---

[4]     A copy of the transcript of the Consummation Decision is attached as Exhibit A to the Consummation Order and Exhibit 2 to the Kotliar Declaration.

[5]     Despite Reed Smith's mistaken assertion previously that the Court made no findings during its hour long oral ruling, the Court clearly states "[b]ased on the above and considering the evidence submitted in support and in opposition of the motion, the Court *finds* as follows."  Consummation Decision at 19:5-7 (emphasis added).

Consummation Order ¶ 1.

12.     On February 6, 2025, Holdings filed the *Emergency Motion of Eletson Holdings Inc. for Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* [Docket No. 1416] (the "<u>Motion for Further Order</u>"), asking the Court to compel the Ordered Parties to update the AOR (as defined below) and imposing sanctions on the Ordered Parties, among other things.

13.     On February 14, 2025, Judge Liman held a hearing concerning the appeal from the Confirmation Order (the "<u>Confirmation Appeal</u>") that Reed Smith seeks to continue to prosecute on behalf of the Provisional Board. *See In re Eletson Holdings Inc.*, 24-cv-08672 (LJL) (S.D.N.Y. 2025) [Docket No. 66].[6] After more than an hour of criticizing Reed Smith and its clients during argument for their obstructive tactics, Judge Liman issued an extensive bench ruling that: (1) rejected Reed Smith's arguments that foreign recognition of the Confirmation Order is necessary before the Confirmation Order is effective, pointing out the "inherent absurdity" of Reed Smith's arguments, Ex. 1 (Feb. 14, 2025 SDNY Hr'g Tr.) at 99:2-4; (2) held that the Provisional Board and Reed Smith are not entitled to speak for Holdings in the United States District Court for the Southern District of New York, and that post-Effective Date actions purportedly taken by the Provisional Board's counsel on behalf of Holdings were "plainly unauthorized," likening counsel to "interloper[s]" and striking the notices of appearance and notices of appeal that the Provisional Board's counsel purported to file on Holdings' behalf, *id.* at 92:15-93:3, 95:8-22, 105:17-106:24; and (3) issued an indicative ruling that Holdings' decision to dismiss the Confirmation

---

[6]     Judge Liman's February 14, 2025 order was entered "[f]or the reasons stated on the record during" the hearing. Ex. 3 (Feb. 14, 2025 SDNY Order) at 1.

Appeal should be recognized and that the Second Circuit should dismiss the Confirmation Appeal, *id.* at 92:15-93:3.

14.     On February 20, 2025, the Court issued an oral decision [Docket No. 1468, Ex. A] (the "<u>February 20 Decision</u>") granting the Motion for Further Order, and found that certain of the Ordered Parties were in contempt of Court. *See* Ex. 4 (Feb. 20, 2025 Hr'g Tr.) at 103:19-25 ("Therefore, given the clear and unambiguous language in the January 29th order, the clear and convincing proof of noncompliance, and the failure to comply with the order, the Court finds that the January 29th order has not been complied with. Now, where the court finds a party in contempt, it may impose monetary sanctions upon that party."). Notwithstanding the Court's finding, the Court gave the Ordered Parties one more chance to comply with the Court's orders by February 24, 2025 at 2:00 p.m. *See id.* at 105:5-107:12. Finally, the Court ruled that if any of the Ordered Parties fail to comply with the February 20 Decision, they will "be subjected to a sanctions order pursuant to the standards set forth above by the Court for violation of the plan, the confirmation order, the January 24th bench ruling, the January 29th order, and this order." *Id.* at 107:14-17.

15.     Following the submission of incomplete certifications and consistent with the February 20 Decision, on February 27, 2025, the Court entered an order [Docket No. 1495] (the "<u>Sanctions Order</u>") imposing sanctions on certain parties, namely, the Provisional Board, Vasilis Hadjieleftheriadis, the Former Majority Shareholders, and the AOR.

**B. <u>Foreign Representative Order</u>**

16.     On November 25, 2024, Holdings filed a motion seeking entry of an order authorizing Adam Spears to act as the "foreign representative" for Holdings to

the extent necessary to seek and obtain recognition of the Court's orders in jurisdictions outside of the United States [Docket No. 1269] (the "Foreign Representative Motion").

17.     On December 20, 2024, the Court entered a modified form of order [Docket No. 1326] (the "Foreign Representative Order").  The Foreign Representative Order was neither appealed nor sought to be stayed and is a final order of this Court.

### C.  The Greek Proceedings

18.     On November 11, 2024, in violation of paragraph 12 of the Confirmation Order, Elafonissos Shipping Corporation and Keros Shipping Company (together, the "Former Minority Shareholders") filed a petition (the "Former Minority Shareholders' Greek Petition") with the First Instance Court of Piraeus in Greece (the "Greek Court"), seeking the appointment of a provisional board of directors of Holdings, despite the fact that, pursuant to the Confirmation Order and the Plan, the board of Holdings would be replaced on the Effective Date approximately one week later.  Ex. 5 (Former Minority Shareholders' Greek Petition).

19.     The Former Minority Shareholders' Greek Petition collaterally attacked this Court's orders, including the claims-objection decision [Docket No. 1211] (the "Claims Decision"), the Confirmation Decision, and the Confirmation Order, seeking to relitigate these rulings by the Court as if they never happened.  *Id.* at 19-27 (describing the "in bad faith method" of the bankruptcy petition and the "totally questionable nature of" the Petitioning Creditors' claims previously heard and adjudicated by this Court).  The Former Minority Shareholders not only argued that the Confirmation Decision, Confirmation Order, and Plan must be recognized abroad before they can be effective, but the Former Minority Shareholders also made clear that they would actively seek to overturn all three.  *Id.* at 35, 38, 41-42, 46.  For example, the Former Minority Shareholders asked the Greek Court to authorize the provisional

board of directors to "turn against" the Confirmation Decision and Confirmation Order and "to oppose" the Confirmation Order's validity, "as an impediment to the recognition of the [Confirmation] Decision in Greece . . . ." *Id.*

20.     On November 12, 2024, the Greek Court issued an *ex parte* interim order (the "Greek Order") appointing the following persons to replace (i) Laskarina Karastamati, (ii) Vassilis Kertsikoff, (iii) Eleni Karastamati, and (iv) Panagiotis Konstantaras (collectively, the "Resigning Directors"):  (a) Adrianos Psomadakis-Karastamatis, (b) Panos Paxinos, (c) Eleni Giannakopoulou, and (d) Niki Zilakos (collectively, the "Provisional Appointees").  The Greek Court thereby purported to appoint a provisional board of directors of Holdings (the "Provisional Board") comprised of:  (i) Vasileios Hadjieleftheriadis, (ii) Konstantinos Hatzieleftheriadis, (iii) Ioannis Zilakos, and (iv) Emmanuel Andreoulakis (collectively, the "Remaining Directors") plus (v) the Provisional Appointees.

21.     The Greek Court appointed the Provisional Board for "temporary management" of Holdings and authorized the Provisional Board to, among other things:

> Obtain judicial protection . . . before the **Greek Courts,** in order to challenge the [Confirmation Decision] in which it was filed by the U.S. Bankruptcy Court for reason of lack of international jurisdiction of that latter.
>
> In addition, in the event that the Creditors apply for the acknowledgement and execution of the [Confirmation Decision] in Greece, where Eletson Holdings is based in fact, the latter to appear and be represented before the competent Greek Courts *in order to oppose*, otherwise and as an *impediment to the recognition of the [Confirmation Decision] in Greece*, due to the inadequacy of the issuing party's international jurisdiction in the [Confirmation Decision], that is, the foreign Bankruptcy court of the U.S., and for their other claims in their favor.

Ex. 6 (Greek Order) at 34-35.

22.     The Greek Court appointed the Provisional Board for "temporary management" of Holdings and authorized the Provisional Board to, among other

things, "oppose" and "challenge" the Confirmation Order's recognition by the Greek

courts. The Greek Court initially set a general shareholders' meeting for February 4,

2025 to elect a new board of directors of Holdings.

23. On February 3, 2025, Holdings filed an application in the Greek

Court seeking recognition of the Confirmation Order, citing the Foreign Representative

Order ("Holdings' Greek Petition"). Holdings also sought on February 4, 2025 to

intervene in the pre-existing proceedings initiated by the Former Minority

Shareholders' Greek Petition. Ex. 7 (Holdings' Greek Intervention Application).

24. On February 4, 2025, the Daniolos Law Firm moved to dismiss

Holdings' Greek Petition on behalf of the Provisional Board. Ex. 8 (the "Daniolos

Opposition"). The Daniolos Opposition argued, *inter alia*, that Greek judicial

recognition of the Confirmation Order is a necessary prerequisite to the Confirmation

Order having legal effect at all anywhere without qualification:

> Until the disputed bankruptcy decision is recognized by a court in Greece (but
> also in Liberia where the statutory seat of the company is located), it does not
> produce any legal effects and therefore the lawyer who appears to represent our
> company does not have any relevant mandate.

Daniolos Opposition at 2. Also on February 4, 2025, the Provisional Board and Former

Minority Shareholders, through separate Greek counsel, the Calavros Law Firm, sought

to intervene in the proceedings concerning Holdings' Greek Petition, making the same

arguments made in the Former Minority Shareholders' Greek Petition that the

Confirmation Order should not be recognized in Greece, *e.g.*, because the Court lacked

jurisdiction over Holdings. Ex. 9 ("Former Minority Shareholders' Greek Intervention

Application") at 3, 52-5, 59.

25. On February 4, 2025, the Greek Court adjourned the planned

shareholders' hearing, and set a hearing on April 1, 2025 to consider the various filings

in the proceedings in the Greek Court concerning Holdings (collectively, the "Greek Proceedings"). *Id.* at 61.

26. On February 27, 2025, Holdings received an email from the Sofos & Partners Law Firm purporting to serve a copy of a notice of the filing of an unauthorized motion for injunctive relief (the "Improper Motion") filed in the Single-Member First Instance Court of Piraeus. *See* Ex. 10 (Improper Motion). The Improper Motion names certain of Holdings' new officers and directors (Adam Spears and Leonard Hoskinson), one of its new shareholders (Pach Shemen LLC), and other respondents. It was filed by the Kalavros Law Firm, which improperly claims to act on behalf of plaintiff-applicants Holdings, certain of Holdings' subsidiaries (Eletson Corp., Eletson Gas, and the four SMEs), and Holdings' former minority shareholder Elafonissos Shipping Corporation.

27. The Improper Motion challenges this Court's jurisdiction and seeks unlawful relief in direct contravention of this Court's and the District Court's findings and orders, including, among other things, (a) an injunction preventing Holdings' new (Court approved) officers, directors, and shareholders from exercising even the most fundamental management and ownership rights vested in them by the Plan and Confirmation Order, including, (i) claiming to represent Holdings or its subsidiaries, (ii) performing any acts of administration or management of Holdings or its subsidiaries, (iii) claiming the boards of directors of Holdings and its subsidiaries have been changed, and (iv) attempting *to register any changes with any authority, including LISCR*; and (b) *the imposition of a monetary fine of €5,000, at least three months incarceration, and* **fees and other costs**. *See* Ex. 10 (Improper Motion) at 54-55. In an attempt to undermine the mandates of the Confirmation Order, whereby the Court approved Holdings' new officers, directors, and shareholders, to act on behalf of

Holdings, the Improper Motion mischaracterizes this Court's own decision and states that "the opposing parties blatantly violate the 20.12.2024 decision of the same Judge Mastando, by which the only authority given to Adam Spears in a jurisdiction outside the US was to file applications in Liberia and Greece for recognition of the Court's bankruptcy judgment, making it clear that this does not prevent (nor can the opposing parties claim to prevent) or limit any party from defending against the recognition." *Id.* at 44. The Improper Motion, which was apparently filed on February 19, 2025 is scheduled for a hearing in Greece on March 13, 2025.

28. Further, the Improper Motion cross-references yet another proceeding, apparently filed on January 17, 2025, in the Piraeus Multi-Member Court of First Instance (Ordinary Procedures – Maritime Litigation Section) against the defendants-respondents to the Improper Motion, certain of the other petitioning creditors (VR Global Partners, L.P. and Alpine Partners (BVI), L.P.),[7] and certain new shareholders of Holdings (DuPont Capital Management and Mulberry Street Ltd.) seeking to frustrate implementation of the Plan and to challenge this Court's jurisdiction and binding orders. *See* Ex. 10 at 48-49. That action seeks, among other things, (a) a declaration from the Greek Court that the Confirmation Decision and Confirmation Order "do not have any effect" and "are not binding" on Holdings and that Holdings "has not been declared bankrupt and/or placed in any form of reorganization by virtue of" the Confirmation Decision or Confirmation Order, (b) to invalidate the actions of Holdings' new board appointed pursuant the Plan and

---

[7] By including VR Global Partners, L.P. and Alpine Partners (BVI), L.P., the former officers, directors, and shareholders of Holdings are not only violating the Plan injunction on interfering with distributions to creditors, but the Court's Claims Objection Ruling [Docket No. 1211] and related Order [Docket No. 1381] (which were not appealed and the appeals period has expired), which found that those parties did not act in bad faith.

Confirmation Order, and (c) a declaration that the new board appointed pursuant to the Plan and Confirmation Order has no authority to represent Holdings or any of its subsidiaries. *Id.* at 49.

**D.  The Liberian Proceedings**

29.     Since before the Effective Date, various parties have wrongfully asserted that the Confirmation Order must be recognized in Liberia for the Plan to effectuate a change in the ownership and management of Holdings and refused to update Holdings' "address of record" ("AOR") and corporate-governance documents on file with LISCR, LLC, the Liberian International Ship & Corporate Registry ("LISCR").  As a result, on November 26, 2024, Pach Shemen, LLC ("Pach Shemen"), a Petitioning Creditor, Plan Proponent, and shareholder of Holdings commenced a proceeding (the "Initial Liberian Proceeding") against Holdings in Liberia seeking, among other things, recognition of the Confirmation Order and an order instructing LISCR to change the AOR to a person designated by Pach Shemen.  *See* Ex. 11 (Initial Liberian Recognition Proceeding Petition).

30.     On December 16, 2024, Liberian law firm Lex Group Liberia LLC, purportedly on behalf of Holdings with authorization by the Provisional Board, filed: (a) an Initial Response to Liberian Recognition Proceeding (the "Initial Response"), which argued that recognition of the Confirmation Order should not be granted based upon arguments already rejected by this Court, Ex. 12 (Initial Response); and (b) an Initial Motion to Dismiss Liberian Recognition Proceeding Petition (the "Initial MTD"), which sought to dismiss the Initial Liberian Proceeding for jurisdictional reasons, including the pendency of the Confirmation Order Appeal in the District Court, Ex. 13 (Initial MTD).

31.     On December 23, 2024, Pach Shemen dismissed the Liberian Petition without prejudice.  *See* Ex. 14 (Notice of Voluntary Discontinuance of Liberian Recognition Proceeding Petition).

32.     On January 7, 2025, after the District Court dismissed the Confirmation Order Appeal and this Court entered the Foreign Representative Order, Pach Shemen commenced another proceeding in Liberia (the "<u>Subsequent Liberian Proceeding</u>" and, together with the Initial Liberian Proceeding, the "<u>Liberian Proceedings</u>") against Reorganized Holdings "represented by Adam Spears, its Foreign Representative in Liberia, by and through his Attorney-in-Fact, Counsellor Kunkunyo W. Teh, of the City of Monrovia."  *See* Ex. 15 (Subsequent Liberian Recognition Petition).  Like the Initial Liberian Proceeding, the Subsequent Liberian Proceeding seeks, among other things, recognition of the Confirmation Order and an order instructing LISCR to change the AOR to a person designated by Pach Shemen.  *See id.*

33.     On January 9, 2025, Holdings "represented by Adam Spears," filed its returns in the Subsequent Liberian Proceeding supporting the application by Pach Shemen and consenting to the entry of a recognition order.  Ex. 16 (Eletson Holdings' Returns in Subsequent Liberian Recognition Proceeding).

34.     Also on January 9, 2025, both the Provisional Board (which alone opposed recognition in the Initial Liberian Proceeding) *and the Former Shareholders*—including both the Former Majority Shareholders and the Former Minority Shareholders—filed: (a) a response to the Subsequent Liberian Recognition Petition that was substantially similar to the Initial Response (the "<u>Subsequent Response</u>"); (b) a motion to dismiss that was substantially similar to the Initial MTD (the "<u>Subsequent MTD</u>"); (c) a motion to intervene that sought permission to appear and be heard in the Subsequent Liberian Proceeding (the "<u>Motion to Intervene</u>"); and (d) a motion to strike

that challenged Mr. Spears' authority to represent reorganized Holdings in the Subsequent Liberian Proceeding (the "<u>Motion to Strike</u>" and, together with the Subsequent Response, the Subsequent MTD, and the Motion to Intervene, the "<u>Subsequent Liberian Pleadings</u>" in the "<u>Liberian Proceedings</u>"). *See* Exs. 17-20. Notably, within the Motion to Strike, the Provisional Board and Former Shareholders argue that Mr. Spears has not been authorized to act as "the foreign representative in Liberia" by "***any . . . competent authority***." Ex. 20 (Motion to Strike) ¶ 3 (emphasis added).

35.     On February 12, 2025, the Liberian Court assigned a hearing on the Motion to Intervene for February 17, 2025. This hearing was subsequently reassigned and took place on March 3, 2025, at which time it was granted on default. A hearing on the Subsequent MTD is currently scheduled for March 4, 2025.

## **RELIEF REQUESTED**

36.     To assist Holdings with implementation of the Plan, which has been obstructed and frustrated by Holdings' former officers, directors, owners and their respective counsel (*see* Sanctions Mot. ¶¶ 9-37; *see also* Motion for Further Order ¶¶ 6-26), Holdings request that the Court enter the Proposed Order and approve the Protocol to facilitate the Court's communications with the courts overseeing the Greek Proceedings, the Liberian Proceedings, and any other proceedings that are necessary to effectuate implementation of the Plan.

## <u>BASIS FOR RELIEF</u>

**A. Adoption of the Protocol**
   **<u>Will Promote Judicial Efficiency and Prevent Inconsistent Rulings</u>**

37.    Section 1525 of the Bankruptcy Code provides:

(a) Consistent with section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee.

(b) The court is entitled to communicate directly with, or to request information or assistance directly from, a foreign court or a foreign representative, subject to the rights of a party in interest to notice and participation.

11. U.S.C. § 1525.[8]

38.    In addition, section 105(a) of the Bankruptcy Code provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11. U.S.C. § 105(a).

---

[8]    Section 1501(b) of the Bankruptcy Code provides:

(b) This chapter applies where –

(1) The assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding;

(2) assistance is sought in a foreign country in connection with a case under this title;

(3) a foreign proceeding and a cause under this title with respect to the same debtor are pending concurrently; or

(4) creditors or other interested persons in a foreign country have an interest in request the commencement of, or participating in, a case or proceeding under this title.

11 U.S.C. ¶ 1501(b).

39.     Pursuant to sections 105(a) and 1525 of the Bankruptcy Code and in order to facilitate the efficient and effective administration of cross-border issues that have arisen and may arise in the future from time to time, Holdings believes that it is necessary to set out and have this Court, the Liberian Court, and the Greek Court (and any other courts as may be necessary) adopt and approve a set of administrative and procedural guidelines for dealing with such cross-border issues.  The Protocol is designed to promote the orderly and efficient implementation of the Plan, honor the independence and integrity of this Court and each of the other affected courts, promote international cooperation and respect among the courts, facilitate the fair and open implementation of the Plan, and implement a framework to address issues that have arisen and may arise in the future with respect to implementation of the Plan.

40.     Without the Protocol, the parties will continue to litigate the same issues across multiple jurisdictions, the consequence of which is twofold: (1) it is a blatant waste of judicial resources and (2) it creates a risk of inconsistent rulings. Indeed, the Former Shareholders and purported members of the Provisional Board have already demonstrated their willingness to engage in procedural maneuvering across jurisdictions by filing duplicative challenges in Greece and Liberia that mischaracterize and change this Court's ruling.  Thus, a framework for efficient information-sharing will benefit all courts involved.

41.     The Protocol implements established cross-border insolvency practices that have been endorsed by this Court in the Cross Border Guidelines and the Modalities of Communications.  Courts both in this district and in others have authorized similar protocols for managing cross-border proceedings to address, similar to here, recognition issues across multiple jurisdictions.  *See In re PT Garuda Indonesia (Persero) Tbk*, No. 22-11274 (Bankr. S.D.N.Y. Apr. 3, 2023) [Docket No. 46]; *In re PB Life*

*and Annuity,* No. 20-12791 (Bankr. S.D.N.Y. Feb. 15, 2023) [Docket No. 476]; *In re Three Arrows Capital, Ltd,* No. 22-10920 (Bankr. S.D.N.Y. Dec. 6, 2022) [Docket No. 72]; *In re LATAM Airlines Group S.A.,* No. 20-11254 (JLG) (Bankr. S.D.N.Y. Sept. 1, 2020) [Docket No. 978]; *In re Aralez Pharmaceuticals U.S. Inc.,* No. 18-12425 (MG) (Bankr. S.D.N.Y. Nov. 1, 2018) [Docket No. 237]; *In re Ezra Holdings Ltd.,* No. 17-22405 (RDD) (Bankr. S.D.N.Y. Nov. 1, 2018) [Docket No. 343].

**B. Adoption of the Protocol Will Protect**
**the Integrity of the Plan and this Court's Authority**

42.     The Protocol is essential to protect both the integrity of this Court's orders and the successful implementation of the Plan.  As discussed above, the record plainly demonstrates a pattern of deliberate obstruction by the Former Shareholders and purported Provisional Board:  they have engaged in coordinated multi-jurisdictional campaigns seeking to directly undermine this Court's orders and to relitigate and invalidate the Court's final, unstayed Confirmation Order.  However, despite this Court having already found these parties to be in contempt for their failure to abide by this Court's orders [*see* Docket No. 1495], they still continue their world-wide campaign in which they do everything but comply with this Court's orders.

43.     Through adoption of the Protocol, the Court can be certain that a proper mechanism for ensuring that the foreign courts have accurate information about the Chapter 11 Case, the Plan, and this Court's orders.  This transparency serves the interests of justice and allows each court to make informed decisions based on accurate information rather than partisan characterizations.  Through adoption of the Protocol, the Court can implement a proper mechanism to ensure that the foreign courts have accurate information about the Chapter 11 Case, the Plan, and this Court's orders.

44.     Accordingly, Holdings requests that the Court adopt the Protocol and help put an end to the Former Shareholders and purported Provisional Board's worldwide obstruction campaign.

## RESERVATION OF RIGHTS

45.     Holdings reserves all rights, including the right to seek additional relief with respect to implementing and effectuating the Plan.

## NOTICE

46.    Notice of this Motion will be given to the following parties or their counsel:  (a) the U.S. Trustee; and (b) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Holdings submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## CONCLUSION

**WHEREFORE**, Holdings respectfully requests that the Court (a) enter the Proposed Order and (b) grant such other and further relief as the Court deems just and proper.


DATED:  March 3, 2025                     TOGUT, SEGAL & SEGAL LLP
        New York, New York                By:

                                          */s/ Kyle J. Ortiz*
                                          KYLE J. ORTIZ
                                          BRYAN M. KOTLIAR
                                          BRIAN F. SHAUGHNESSY
                                          AMANDA C. GLAUBACH
                                          One Penn Plaza, Suite 3335
                                          New York, New York 10119
                                          (212) 594-5000

                                          *Counsel for Eletson Holdings Inc.*

## Exhibit A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
ELETSON HOLDINGS INC., et al.,            :        Case No. 23-10322 (JPM)
                                          :
                    Debtors.[1]           :        (Jointly Administered)
-----------------------------------------------------------------x

## ORDER APPROVING CROSS-BORDER
## COURT-TO-COURT COMMUNICATIONS PROTOCOL

Upon the motion  (the "Motion")[2] of Eletson Holdings Inc. ("Holdings"),

for entry of an order (this "Order"), pursuant to sections 105(a) and 1525 of the

Bankruptcy Code and consistent with General Order M-511, *Procedural Guidelines for*

*Coordination and Cooperation Between Courts in Cross-Border Insolvency Matters* (the

"Cross-Border Guidelines"), entered on February 17, 2017, and General Order M-532,

*Adoption of Judicial Insolvency Network Modalities of Court-to-Court Communication* (the

"Modalities of Communication"), entered on September 4, 2019, approving the Cross-

Border Court-to-Court Communications Protocol, attached hereto as **Exhibit 1** (the

"Protocol"), all as set forth more fully in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and

1334 and the Amended Standing Order; and consideration of the Motion and the relief

requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being

proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper

notice of the Motion having been provided, and no other or further notice need be

---

[1]   The Debtors in these cases are:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos
      Finance LLC. The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35
      Piraeus, Greece. The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square,
      Suite 424, Stamford, Connecticut 06901.

[2]   Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to
      such terms in the Motion or the Protocol, as applicable.

provided; and the Court having reviewed the Motion and the declaration filed in support thereof, and heard the statements of counsel at a hearing on the Motion, if any (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the and at the record of the Hearing establish just cause for the relief granted herein; and the Court having determined that the relief requested is in the best interests of Holdings, the creditors, and all parties in interest;  and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Protocol is approved in all respects, subject to approval of the same by the Greek Court, the Liberian Court, and any other applicable courts (the "<u>Additional Courts</u>") as it may be amended or supplemented by further order of this Court, obtained after notice and a hearing.  Additional Courts may be subject to the Protocol following a notice filed by Holdings setting forth the same.

3.      Nothing herein shall prejudice the rights of any party in interest to apply for modifications to the Protocol as warranted to facilitate the administration of the Chapter 11 Cases and the implementation and effectuation of the Plan in conjunction with the respective proceedings before the Greek Court, the Liberian Court and the Additional Courts, as applicable.

4.      For the avoidance of doubt, the Protocol is procedural in nature and shall not constitute a limitation on or waiver by the Court of any powers, responsibilities, or authority, or a substantive determination of any matter in controversy before the Court, or a waiver by any of the parties in interest of the Chapter 11 Cases of any of their substantive rights and claims, except to the extent specifically provided for in the Protocol, as permitted by applicable law.

5.     For the avoidance of doubt, to the extent that there are any inconsistencies relating to the Protocol and other matters set forth herein as between this Order and the orders of the Greek Court, the Liberian Court, and any Additional Courts, the terms and provisions of this Order shall control over matters arising in or relating to the Chapter 11 Cases, the proceedings before this Court, and the implementation and effectuation of the Plan.

6.     This Protocol contemplates reciprocal adoption by the Greek Court, Liberian Court, and any Additional Courts, with appropriate modifications as each court may require consistent with its own laws and procedures.  Nothing in this Protocol shall be construed as requiring foreign courts to adopt identical provisions, and modifications by foreign courts shall be respected to the fullest extent consistent with this Court's obligations to implement the Plan.

7.     Holdings shall file a copy of this Order (including exhibits) with (a) each of the Liberian Court and Greek Courts by no later than three (3) business days from the date of the entry of this Order and (b) any Additional Courts promptly upon Holdings initiating proceedings in such Additional Courts or Holdings' learning of the existence of any such proceedings in such Additional Courts.

8.     Any Bankruptcy Rule (including Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective immediately and enforceable upon its entry.

9.     Holdings is authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

10.     This Court shall retain exclusive jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation, and enforcement

of this Order.

DATED:  New York, New York
             _____, 2025

                                      _____
                                      JOHN P. MASTANDO III
                                      UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Protocol**

# CROSS-BORDER COURT-TO-COURT COMMUNICATIONS PROTOCOL

This cross-border court-to-court communications protocol (the "Protocol") shall govern the conduct of all parties in interest in the Proceedings (as such term is defined below).

The *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* (the "Guidelines") attached as **Schedule A** hereto, shall be incorporated by reference and form part of this Protocol. The *Modalities of Court-to-Court Communication* (the "Modalities of Communication") attached as **Schedule B** hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines and/or the Modalities of Communication, this Protocol shall govern.

## I.     BACKGROUND

### A.  General Background

1.       On September 25, 2023, Eletson Holdings Inc. ("Holdings"), Eletson Finance (US) LLC ("Eletson Finance"), and Agathonissos Finance LLC ("Eletson MI" and, together with Holdings and Eletson Finance, the "Debtors") voluntarily converted involuntary chapter 7 cases to voluntary chapter 11 cases (the "Chapter 11 Cases"), submitting themselves to and invoking the jurisdiction of the U.S. Bankruptcy Court for the Southern District of New York (the "U.S. Court") to oversee the restructuring of the Debtors (together with their non-Debtor affiliates and subsidiaries, collectively, the "Company"). *See* Docket Nos. 201 & 215.[3]

---

[3]     References herein to "Docket No. __" are references to the docket of the jointly administered Chapter 11 Cases pending in the U.S. Court under case number 23-10322 (JPM).

2. On October 25, 2024, the U.S. Court issued a decision [Docket No. 1212] (the "<u>Confirmation Decision</u>") (a) confirming the plan of reorganization proposed by certain of the Debtors' creditors (the "<u>Petitioning Creditors</u>") [Docket No. 1132, Ex. 1] (the "<u>Plan</u>"), (b) overruling the Debtors' and the objections filed by Lassia Investment Company, Glafkos Trust Company, and Family Unity Trust Company, the Debtors' former majority shareholders (the "<u>Former Majority Shareholders</u>") objections thereto [Docket Nos. 1029, 1033], and (c) denying confirmation of the plan of reorganization proposed by the Debtors [Docket No. 1111, Ex. A], among other things.

3. On November 4, 2024, the U.S. Court entered the order confirming the Plan [Docket No. 1223] (the "<u>Confirmation Order</u>"). Through the Confirmation Order, the U.S. Court ordered the Debtors and all of their Related Parties[4] to work in good faith to facilitate the Plan's consummation in full, to refrain from actions inconsistent with full consummation of the Plan, and to take directions from the Petitioning Creditors in connection with Plan implementation, stating:

- "The Debtors and . . . their [] Related Parties are hereby directed to cooperate in good faith to implement and consummate the Plan," (Confirmation Order ¶ 5(i)); and

- "[A]ll . . . parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined

---

[4] Under the Plan, "Related Parties" means "subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund anagers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisor board members, financial advisors, attorneys, accounants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)-(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees." *See* Plan § 1.124.

from taking any actions to interfere with the implementation or consummation of the Plan," (*id.* ¶ 12).

4.      On November 19, 2024 (the "<u>Effective Date</u>"), the Plan went effective. *See* Docket No. 1258 (Notice of Effective Date) at 2.

5.      On November 25, 2024, Holdings filed the *Emergency Motion of Reorganized Eletson Holdings Inc. for an Order Imposing Sanctions on Eletson Holdings' (A) Existing Person of Record and (B) Former Shareholders, Officers, Directors, and Counsel, Including Reed Smith LLP* [Docket No. 1268] (the "<u>Sanctions Motion</u>").  On December 10, 2024, Reed Smith, the Daniolos Law Firm, and the Former Majority Shareholders (through Sidley Austin LLP), repsectively, filed objections to the Sanctions Motion [Docket Nos. 1285, 1287, 1291], which Holdings responded to on December 13, 2024 [Docket No. 1299] (the "<u>Sanctions Reply</u>").  On December 13, 2024, the official committee of unsecured creditors appointed in the Chapter 11 Cases filed a statement in support of the Sanctions Motion [Docket No. 1301].

6.      The U.S. Court held a trial on the Sanctions Motion on January 6, 2025, and thereafter the parties submitted post-trial proposed findings of fact and conclusions of law [Docket Nos. 1355, 1356] and post-trial briefs [Docket Nos. 1371, 1372] on January 13 and 17, 2025, respectively.

7.      On January 24, 2025, the U.S. Court issued an oral decision (the "<u>Consummation Decision</u>") granting the Sanctions Motion, as modified, which was followed on January 29, 2025 by an accompanying order [Docket No. 1402] (the "<u>Consummation Order</u>").  In the Consummation Decision, the U.S. Court found that:

- "The new members of the board of directors [of Holdings] are Adam Spears, Leonard Hoskinson, and Timothy Matthews."  Consummation Decision at 24:14-16.

- On the Effective Date, "the board members of the former debtor, certain of whom are now members of the provisional board, were automatically deemed to have resigned or otherwise ceased to be a director manager of Eletson Holdings Inc." *Id.* at 26:5-26:10 (internal quotation marks omitted).

- "Reorganized Eletson Holdings Inc., the same corporate entity as the former debtor, Eletson Holdings, but with the new owners, board, and management as approved by this court in the confirmation order, is the only Eletson Holdings Inc." *Id.* at 26:17-20 (internal quotation marks omitted).

- The unstayed Confirmation Order "recognizes the [authority of the] new board of Eletson and gives the new board of Eletson under section 5.2 of the plan the ability to act on behalf of Eletson . . . ." *Id.* at 26:12-27:2 (internal quotation marks and citations omitted).

- "[T]he confirmation order and Chapter 11 plan are binding on Reorganized Eletson Holdings Inc.'s former shareholder[s], officers, directors, counsel, nominees and others as defined in section 1.124 of the plan pursuant to Section 1141 and 1142 of the Bankruptcy Code." *Id.* at 43:11-15.[5]

8.     In the Consummation Order, the U.S. Court ordered the same things already required by the Confirmation Order (*see* Consummation Order ¶ 8), *i.e.*, the U.S. Court required the Ordered Parties to work in good faith to facilitate the Plan's consummation in full, stating:

> Pursuant to section 1142 of the Bankruptcy Code, the Debtors and their Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof[.]

Consummation Order ¶ 1.

9.     Prior to the Effective Date, on November 7, 2024, the Debtors filed an appeal of the Confirmation Order, but did not seek or obtain a stay of such order. *See* Docket No. 1233. On December 30, 2024, the U.S. District Court for the Southern District of New York (the "District Court") approved a stipulation entered into by the

---

[5]     Also on the Effective Date, pursuant to Section 12.11 of the Plan, Eletson Finance and Eletson MI were deemed dissolved "without any further action under applicable law, regulation, or rule, including any action by the stockholder, members, board of directors, board of managers, or similar governing body of the Debtors . . . ."

Debtors, the Creditors' Committee, and the Petitioning Creditors. *See In re Eletson Holdings Inc.,* Case No. 24-cv-08672 (LJL) (S.D.N.Y. Dec. 30, 2024) [Docket No. 20] (the "Appeal Dismissal Order").

10. On further appeal to the Court of Appeals for the Second Circuit (the "Second Circuit"), the Second Circuit referred the matter to the District Court, which again, dismissed the appeal or, in the alternative, recommended that the Second Circuit dismiss the appeal. *See In re Eleteson Holdings Inc.,* Case No. 24-cv-08672 (LJL) (S.D.N.Y. Dec. 30, 2024) [Docket No. 20].

11. On February 6, 2025, Holdings filed the *Emergency Motion of Eletson Holdings Inc. for Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* [Docket No. 1416] (the "Motion for Further Order"), asking the U.S. Court to compel the Ordered Parties to update the AOR (as defined below) and imposing sanctions on the Ordered Parties, among other things.

12. On February 14, 2025, Judge Liman held a hearing concerning the appeal from the Confirmation Order (the "Confirmation Appeal") that Reed Smith seeks to continue to prosecute on behalf of the Provisional Board. *See In re Eletson Holdings Inc.,* 24-cv-08672 (LJL) (S.D.N.Y. 2025) [Docket No. 66]. After more than an hour of criticizing Reed Smith and its clients during argument for their obstructive tactics, Judge Liman issued an extensive bench ruling that: (1) rejected Reed Smith's arguments that foreign recognition of the Confirmation Order is necessary before the Confirmation Order is effective; (2) held that the Provisional Board and Reed Smith are not entitled to speak for Holdings in the District Court, and that post-Effective Date actions purportedly taken by the Provisional Board's counsel on behalf of Holdings were unauthorized, and striking the notices of appearance and notices of appeal that the Provisional Board's counsel purported to file on Holdings' behalf; and (3) issued an

indicative ruling that Holdings' decision to dismiss the Confirmation Appeal should be recognized and that the Second Circuit should dismiss the Confirmation Appeal.

13. On February 20, 2025, the U.S. Court issued an oral decision [Docket No. 1468, Ex. A] (the "February 20 Decision") granting the Motion for Further Order, and found that certain of the Ordered Parties were in contempt of Court. Notwithstanding the U.S. Court's finding, the U.S. Court gave the Ordered Parties one more chance to comply with the Court's orders by February 24, 2025 at 2:00 p.m. Finally, the Court ruled that if any of the Ordered Parties fail to comply with the February 20 Decision, they will be subject to sanctions for failure to comply with the U.S. Court's orders.

14. Following the submission of incomplete certifications and consistent with the February 20 Decision, on February 27, 2025, the U.S. Court entered an order [Docket No. 1495] (the "Sanctions Order") imposing sanctions on certain parties, namely, the Provisional Board, Vasilis Hadjieleftheriadis, the Former Majority Shareholders, and the AOR.

## B. Foreign Representative Order

15. On November 25, 2024, Holdings filed a motion seeking entry of an order authorizing Adam Spears to act as the "foreign representative" for Holdings to the extent necessary to seek and obtain recognition of the U.S. Court's orders in jurisdictions outside of the United States [Docket No. 1269] (the "Foreign Representative Motion").

16. On December 20, 2024, the U.S. Court entered a modified form of order [Docket No. 1326] (the "Foreign Representative Order"). The Foreign Representative Order was neither appealed nor sought to be stayed and is a final order of this Court.

### C. <u>The Greek Proceedings</u>

17.　　On November 11, 2024, in violation of paragraph 12 of the Confirmation Order, Elafonissos Shipping Corporation and Keros Shipping Company (together, the "<u>Former Minority Shareholders</u>") filed a petition (the "<u>Former Minority Shareholders' Greek Petition</u>") with the First Instance Court of Piraeus in Greece (the "<u>Greek Court</u>"), seeking the appointment of a provisional board of directors of Holdings, despite the fact that, pursuant to the Confirmation Order and the Plan, the board of Holdings would be replaced on the Effective Date approximately one week later.

18.　　The Former Minority Shareholders' Greek Petition collaterally attacked the U.S. Court's orders, including the claims-objection decision [Docket No. 1211] (the "<u>Claims Decision</u>"), the Confirmation Decision, and the Confirmation Order, seeking to relitigate these rulings by the U.S. Court as if they never happened. The Former Minority Shareholders not only argued that the Confirmation Decision, Confirmation Order, and Plan must be recognized abroad before they can be effective, but the Former Minority Shareholders also made clear that they would actively seek to overturn all three. For example, the Former Minority Shareholders asked the Greek Court to authorize the provisional board of directors to "turn against" the Confirmation Decision and Confirmation Order and "to oppose" the Confirmation Order's validity, "as an impediment to the recognition of the [Confirmation] Decision in Greece . . . ."

19.　　On November 12, 2024, the Greek Court issued an *ex parte* interim order (the "<u>Greek Order</u>") appointing the following persons to replace (i) Laskarina Karastamati, (ii) Vassilis Kertsikoff, (iii) Eleni Karastamati, and (iv) Panagiotis Konstantaras (collectively, the "<u>Resigning Directors</u>"): (a) Adrianos Psomadakis-Karastamatis, (b) Panos Paxinos, (c) Eleni Giannakopoulou, and (d) Niki Zilakos (collectively, the "<u>Provisional Appointees</u>"). The Greek Court thereby purported to

appear a provisional board of directors of Holdings (the "Provisional Board") comprised of: (i) Vasileios Hadjieleftheriadis, (ii) Konstantinos Hatzieleftheriadis, (iii) Ioannis Zilakos, and (iv) Emmanuel Andreoulakis (collectively, the "Remaining Directors") plus (v) the Provisional Appointees.

20. The Greek Court appointed the Provisional Board for "temporary management" of Holdings and authorized the Provisional Board to, among other things:

> Obtain judicial protection . . . before the **Greek Courts,** in order to challenge the [Confirmation Decision] in which it was filed by the U.S. Bankruptcy Court for reason of lack of international jurisdiction of that latter."
>
> . . .
>
> In addition, in the event that the Creditors apply for the acknowledgment and execution of the [Confirmation Decision] in Greece, where Eletson Holdings is based in fact, the latter to appear and be represented before the competent Greek Courts *in order to oppose,* otherwise and as an *impediment to the recognition of the [Confirmation Decision] in Greece,* due to the inadequacy of the issuing party's international jurisdiction in the [Confirmation Decision], that is, the foreign Bankruptcy court of the U.S., and for their other claims in their favor.

21. The Greek Court appointed the Provisional Board for "temporary management" of Holdings and authorized the Provisional Board to, among other things, "oppose" and "challenge" the Confirmation Order's recognition by the Greek courts. The Greek Court initially set a general shareholders' meeting for February 4, 2025 to elect a new board of directors of Holdings.

22. On February 3, 2025, Holdings filed an application in the Greek Court seeking recognition of the Confirmation Order, citing the Foreign Representative Order ("Holdings' Greek Petition"). Holdings also sought on February 4, 2025 to intervene in

the pre-existing proceedings initiated by the Former Minority Shareholders' Greek Petition.

23.     On February 4, 2025, the Daniolos Law Firm moved to dismiss Holdings' Greek Petition on behalf of the Provisional Board (the "<u>Daniolos Opposition</u>"). The Daniolos Opposition argued, *inter alia*, that Greek judicial recognition of the Confirmation Order is a necessary prerequisite to the Confirmation Order having legal effect at all anywhere without qualification:

> Until the disputed bankruptcy decision is recognized by a court in Greece (but also in Liberia where the statutory seat of the company is located), it does not produce any legal effects and therefore the lawyer who appears to represent our company does not have any relevant mandate.

Daniolos Opposition at 2.

24.     Also on February 4, 2025, the Provisional Board and Former Minority Shareholders, through separate Greek counsel, the Calavros Law Firm, sought to intervene in the proceedings concerning Holdings' Greek Petition, making the same arguments made in the Former Minority Shareholders' Greek Petition that the Confirmation Order should not be recognized in Greece, *e.g.*, because the Court lacked jurisdiction over Holdings  (the "<u>Former Minority Shareholders' Greek Intervention Application</u>").

25.     On February 4, 2025, the Greek Court adjourned the planned shareholders' meeting, and set a hearing on March 19, 2025 to consider the various filings in the proceedings in the Greek Court concerning Holdings (collectively, the "<u>Greek Proceedings</u>").

26.     On February 27, 2025, Holdings received an email from the Sofos & Partners Law Firm purporting to serve a copy of a notice of the filing of an unauthorized motion for injunctive relief (the "<u>Improper Motion</u>") filed in the Single-Member First Instance Court of Piraeus.  The Improper Motion names certain of

Holdings' new officers and directors (Adam Spears and Leonard Hoskinson), one of its new shareholders (Pach Shemen LLC), and other respondents. It was filed by the Kalavros Law Firm, which improperly claims to act on behalf of plaintiff-applicants Holdings, certain of Holdings' subsidiaries (Eletson Corp., Eletson Gas, and the four SMEs), and Holdings' former minority shareholder Elafonissos Shipping Corporation.

27. The Improper Motion challenges the U.S. Court's jurisdiction and seeks unlawful relief in direct contravention of the U.S. Court's and the District Court's findings and orders, including, among other things, (a) an injunction preventing Holdings' new (U.S. Court approved) officers, directors, and shareholders from exercising even the most fundamental management and ownership rights vested in them by the Plan and Confirmation Order, including, (i) claiming to represent Holdings or its subsidiaries, (ii) performing any acts of administration or management of Holdings or its subsidiaries, (iii) claiming the boards of directors of Holdings and its subsidiaries have been changed, and (iv) attempting *to register any changes with any authority, including LISCR*; and (b) *the imposition of a monetary fine of €5,000, at least three months incarceration, and* **fees and other costs**. In an attempt to undermine the mandates of the Confirmation Order, whereby the U.S. Court approved Holdings' new officers, directors, and shareholders, to act on behalf of Holdings, the Improper Motion mischaracterizes the U.S. Court's own decision. The Improper Motion, which was apparently filed on February 19, 2025 is scheduled for a hearing in Greece on March 13, 2025.

28. Further, the Improper Motion cross-references yet another proceeding, apparently filed on January 17, 2025, in the Piraeus Multi-Member Court of First Instance (Ordinary Procedures – Maritime Litigation Section) against the defendants-respondents to the Improper Motion, certain of the other petitioning

creditors (VR Global Partners, L.P. and Alpine Partners (BVI), L.P.),[6] and certain new shareholders of Holdings (DuPont Capital Management and Mulberry Street Ltd.) seeking to frustrate implementation of the Plan and to challenge the U.S. Court's jurisdiction and binding orders. That action seeks, among other things, (a) a declaration from the Greek Court that the Confirmation Decision and Confirmation Order "do not have any effect" and "are not binding" on Holdings and that Holdings "has not been declared bankrupt and/or placed in any form of reorganization by virtue of" the Confirmation Decision or Confirmation Order, (b) to invalidate the actions of Holdings' new board appointed pursuant the Plan and Confirmation Order, and (c) a declaration that the new board appointed pursuant to the Plan and Confirmation Order has no authority to represent Holdings or any of its subsidiaries.

### D. **The Liberian Proceedings**

29.     Since before the Effective Date, various parties have wrongfully asserted that the Confirmation Order must be recognized in Liberia for the Plan to effectuate a change in the ownership and management of Holdings and refused to update Holdings' "address of record" ("AOR") and corporate-governance documents on file with LISCR, LLC, the Liberian International Ship & Corporate Registry ("LISCR"). As a result, on November 26, 2024, Pach Shemen, LLC ("Pach Shemen"), a Petitioning Creditor, a proponent of the Plan, and shareholder of Holdings commenced a proceeding (the "Initial Liberian Proceeding") against Holdings in Liberia seeking, among other things, recognition of the Confirmation Order and an order instructing

---

6    By including VR Global Partners, L.P. and Alpine Partners (BVI), L.P., the former officers, directors, and shareholders of Holdings are not only violating the Plan injunction on interfering with distributions to creditors, but the Court's Claims Objection Ruling [Docket No. 1211] and related Order [Docket No. 1381] (which were not appealed and the appeals period has expired), which found that those parties did not act in bad faith.

LISCR to change the AOR to a person designated by Pach Shemen (the "Initial Liberian Recognition Proceeding Petition").

30.     On December 16, 2024, Liberian law firm Lex Group Liberia LLC, purportedly on behalf of Holdings with authorization by the Provisional Board, filed: (a) an Initial Response to Liberian Recognition Proceeding (the "Initial Response"), which argued that recognition of the Confirmation Order should not be granted based upon arguments already rejected by this Court, Ex. 4 (Initial Response); and (b) an Initial Motion to Dismiss Liberian Recognition Proceeding Petition (the "Initial MTD"), which sought to dismiss the Initial Liberian Proceeding for jurisdictional reasons, including the pendency of the Confirmation Order Appeal in the District Court.

31.     On December 23, 2024, Pach Shemen dismissed the Liberian Petition without prejudice (the "Notice of Voluntary Discontinuance of Liberian Recognition Proceeding Petition").

32.     On January 7, 2025, after the District Court dismissed the appeal of the Confirmation Order and the U.S. Court entered the Foreign Representative Order, Pach Shemen commenced another proceeding in Liberia (the "Subsequent Liberian Proceeding" and, together with the Initial Liberian Proceeding, the "Liberian Proceedings") against Holdings "represented by Adam Spears, its Foreign Representative in Liberia, by and through his Attorney-in-Fact, Counsellor Kunkunyo W. Teh, of the City of Monrovia" (the "Subsequent Liberian Recognition Petition"). Like the Initial Liberian Proceeding, the Subsequent Liberian Proceeding seeks, among other things, recognition of the Confirmation Order and an order instructing LISCR to change the AOR to a person designated by Pach Shemen.

33.     On January 9, 2025, Holdings "represented by Adam Spears," filed its returns in the Subsequent Liberian Proceeding supporting the application by Pach

12

Shemen and consenting to the entry of a recognition order ("<u>Eletson Holdings' Returns in Subsequent Liberian Recognition Proceeding</u>").

34.     Also on January 9, 2025, both the Provisional Board (which alone opposed recognition in the Initial Liberian Proceeding) *and the Former Shareholders*—including both the Former Majority Shareholders and the Former Minority Shareholders—filed: (a) a response to the Subsequent Liberian Recognition Petition that was substantially similar to the Initial Response (the "<u>Subsequent Response</u>"); (b) a motion to dismiss that was substantially similar to the Initial MTD (the "<u>Subsequent MTD</u>"); (c) a motion to intervene that sought permission to appear and be heard in the Subsequent Liberian Proceeding (the "<u>Motion to Intervene</u>"); and (d) a motion to strike that challenged Mr. Spears' authority to represent reorganized Holdings in the Subsequent Liberian Proceeding (the "<u>Motion to Strike</u>" and, together with the Subsequent Response, the Subsequent MTD, and the Motion to Intervene, the "<u>Subsequent Liberian Pleadings</u>" in the "<u>Liberian Proceedings</u>").  Notably, within the Motion to Strike, the Provisional Board and Former Shareholders argue that Mr. Spears has not been authorized to act as "the foreign representative in Liberia" by "*any . . . competent authority*."

35.     On February 12, 2025, the Liberian Court assigned a hearing on the Motion to Intervene for February 17, 2025.  This hearing was subsequently reassigned and is now scheduled for March 3, 2025, at which time it was granted on default. A hearing on the Subsequent MTD is currently scheduled for March 4, 2025.

## II.      THE PROTOCOL

36.     For convenience, (a) the Chapter 11 Cases, the Greek Proceedings, the Liberian Proceedings, and any other additional proceedings (the "<u>Additional Proceedings</u>") in additional courts (the "<u>Additional Courts</u>") which may affect Holdings and/or to which Holdings may become a party (the "<u>Additional</u>

<u>Proceedings</u>") shall be referred to herein collectively as the "Proceedings," and (b) the U.S. Court, the Greek Court, the Liberian Court, and the Additional Courts shall be referred to herein collectively as the "Courts," and, each individually, as a "Court."

37.     Notwithstanding anything contrary in the exhibits, in these Proceedings, "Paralell Proceedings" shall exclusively mean the Chapter 11 Cases, the Greek Proceedings, the Liberian Proceedings, and the Additinonal Proceedings and shall not have any other meaning.  As it is used in the Protocol, the term Parallel Proceedings is not to be considered synonymous with the term concurrent proceedings as used in Chapter V of the Model Law on Cross-Border Insolvency adopted by the United Nations Commission on International Trade Law.  The Protocol shall apply to or contemplate Additional Proceedings provided that Holdings files a notice on the docket of the U.S. Court specifying the same.

38.     As set forth in the Guidelines and Modalities of Communication, the Courts may, to the extent permitted by practice and procedure, and with the prior consent of each Court, engage in Court-to-Court communications and conduct joint videoconference hearings or joint teleconference hearings with respect to any matter related to the administration of the Proceedings (including, without limitation, the implementation and effectuation of the Plan) if necessary to facilitate the proper and efficient administration of the Proceedings (including, without limitation, the implementation and effectuation of the Plan).  Holdings and the Foreign Representative will arrange for a translator for any such hearing.  For the avoidance of doubt, during Court-to-Court communications, a Court shall not disclose any document or information filed under seal in that Court with any other Court.

39.     If the Courts agree that a joint videoconference hearing or joint teleconference hearing is necessary or appropriate, the party submitting any notice,

submission, or application that are or become the subject of the joint hearing of the Courts (the "<u>Pleadings</u>") shall provide a copy of the pleadings to all of the following parties via email: (a) Adam Spears, in his capacity as Foreign Rep (adam.spears@eletsonholdings.com); (b) counsel to Holdings, Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119, Attn: Kyle J. Ortiz, Esq. (kortiz@teamtogut.com) and Bryan M. Kotliar, Esq. (bkotliar@teamtogut.com); (c) the Office of the United States Trustee for Region 2, Alexander Hamilton Custom House, One Bowling Green, Room 534, New York, NY 10004, Attn: Daniel Rudewicz, Esq. (daniel.rudewicz@usdoj.com); (d) all parties that have filed a notice of appearance and/or a request for notices pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (e) any other person or entity with respect to specific matters who has been reasonably requested to participate by any of the foregoing parties (collectively, the "<u>Notice Parties</u>"). For the avoidance of doubt, Pleadings filed under seal with any Court shall not be provided to any party mentioned in this paragraph, except as required under the orders of the Court in which the Pleading was filed.

40. Holdings and/or the Foreign Rep shall issue written reports to the Courts (a) at such time as they consider it to be appropriate to inform the Court on the progress of the restructuring or developments in any of the Proceedings, or (b) as otherwise directed by any of the Courts (the "<u>Reports</u>"). Such Reports shall be accompanied by a professional translation of any documents attached that are not in the language in which the relevant Court conducts its business.

41. Any Report submitted to any of the Courts shall be concurrently submitted to any other Court and by email to the Notice Parties. Copies of any Report shall be filed with the Courts (together with translations where required), subject to appropriate redactions. For the avoidance of doubt, any Report filed under seal with

any Court shall not be concurrently submitted to the other Courts or Notice Parties, except as required under the orders of the Court in which the Report was filed subject to substantially identical confidentiality restriction as entered by the Court that directed the sealing of the relevant documents.

42.     At the request of any Court, Holdings and the Foreign Represenative shall make themselves available to respond to inquiries of the Courts regarding the content of any Report (each, a "<u>Chambers Conference</u>").  Holdings for the Chapter 11 Cases and/or the Foreign Representative for the Proceedings shall promptly give notice by email to the Notice Parties of any Chambers Conference.  Counsel to the Notice Parties shall be entitled to appear at any such Chambers Conference.

43.     For the avoidance of doubt, each Court shall have sole and exclusive jurisdiction over any estate representative or any professional retained by or with the approval of such Court.  Nothing in this protocol shall require any estate representative or professional retained to take any action that violates any provision of law or professional rule to which they are subject.

44.     Each Court shall have sole and exclusive jurisdiction over the conduct of proceedings in such Court and the hearing and determination of matters arising in such proceedings.

45.     All documents filed on behalf of Holdings in relation to any application for approval of this Protocol will be served on the Notice Parties.

46.     Except as expressly set forth herein, nothing in this Protocol shall affect or prejudice the rights of Holdings or the Notice Parties to take any action in or in connection with the Proceedings.

47.     This Protocol shall be deemed effective upon its approval by the U.S. Court, the Greek Court, the Liberian Court, and the Additional Courts.  This Protocol

shall have no binding or enforceable legal effect until approved by the U.S. Court, the Greek Court, the Liberian Court, and the Additional Courts, as applicable.

This Protocol may not be amended except with prior notice to Holdings and the Notice Parties, as well as the approval of the U.S. Court, the Greek Court, the Liberian Court, and the Additional Courts, as applicable.

## <u>SCHEDULE A</u>

[to be inserted separately]

## **SCHEDULE B**

[to be inserted separately]