**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

Eletson Holdings Inc., *et al.*,

                              Debtors[1].

**NOT FOR PUBLICATION**

Chapter 11

Case No. 23-10322 (JPM)
(Jointly Administered)

**MEMORANDUM OPINION AND ORDER DENYING PURPORTED PROVISIONAL ELETSON HOLDINGS INC.'S, REED SMITH LLP'S, AND FORMER MAJORITY SHAREHOLDERS' MOTION FOR STAY OF ENFORCEMENT OF JANUARY 29, 2025 ORDER PENDING APPEAL**

---

[1] Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

Pending before the Court is the *Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal* (the "**Stay Motion**") filed by Reed Smith on behalf of purported Provisional Eletson Holdings Inc. and Reed Smith LLP (collectively, the "**Movants**").  (ECF Docket No. 1412).  The Movants seek a stay of the Court's January 29, 2025 *Order In Support Of Confirmation And Consummation Of The Court-Approved Plan Of Reorganization* (the "**Jan. 29 Order**") (ECF Docket No. 1402) pending the resolution of the appeal of the Jan. 29 Order (the "**Notice of Appeal**") (ECF Docket No. 1411) or, in the alternative, a temporary stay of the Jan. 29 Order.  (ECF Docket No. 1412).  The Movants seek a stay of the Jan. 29 Order because they allege that: i) purported Provisional Eletson Holdings Inc. will suffer irreparable injury absent a stay; ii) Reorganized Eletson Holdings will not suffer substantial injury as a result of a stay of the Jan. 29 Order; iii) Movants' appeal has a reasonable possibility of success on the merits; and iv) there is a public interest in granting a stay pending appeal.  (*Id.*).

The Stay Motion is supported by the *Supplemental Declaration of John Markianos-Daniolos in Support of Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal* (the "**Daniolos Supplemental Declaration**") (ECF Docket No. 1453), which was filed as a supplement to the *Declaration of John Markianos-Daniolos* attached to the *Letter to the Honorable John P. Mastando Regarding Compliance with Order* (ECF Docket No. 1407), and the *Declaration of John-Markianos-Daniolos Regarding the Motion for Stay of Enforcement of January 29, 2025* attached to the *Letter to the Honorable John P. Mastando Regarding Update on Greek Proceeding* (ECF Docket No. 1410).  The former Majority Shareholders of Eletson Holdings Inc. (the "**Majority Shareholders**") filed a *Joinder of the Majority Shareholders of*

*Eletson Holdings Inc. to Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal* (the "**Joinder**").  (ECF Docket No. 1414).

Togut, Segal & Segal LLP filed *Eletson Holdings Inc.'s Opposition to Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal* (the "**Objection**").  (ECF Docket No. 1443).  Filed in support of the Objection is the *Declaration of Adam Spears In Support of Eletson Holdings Inc.'s Opposition to Motion to Stay of Enforcement of January 29, 2025 Order Pending Appeal* (the "**Adam Spears Declaration**").  (ECF Docket No. 1446).  Also filed in support of the Objection is the *Declaration of Jared C. Borriello, Esq. In Support of Eletson Holdings Inc.'s Opposition Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal.*  (ECF Docket No. 1447).

Reed Smith filed a *Reply in Support of Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal* (the "**Reply**").  (ECF Docket No. 1454).

The Court has reviewed and considered the Stay Motion, the Objection, the Reply, all supporting declarations and letters, and the record as a whole. For the reasons set forth herein, the Court DENIES the Stay Motion.

## II.   **JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(L).

## III.   **BACKGROUND**

### A.  **PRE-CONFIRMATION HISTORY AND CHAPTER 11 FILING.**

Although the history of this case is complex, the Court will review certain background facts for context.  The Debtors are part of an international gas shipping enterprise (the "**Eletson Enterprise**").  (*See Memorandum Opinion and Order Denying: (i) Motion in Limine; (ii) Motion*

3

*to Exclude; and (iii) Motions to Appoint a Chapter 11 Trustee*, ECF Docket No. 721). The

Eletson Enterprise collectively owns and operates a fleet of gas tanker ships engaged in the

business of shipping refined petroleum products and crude oil. (*Id.*). On October 22, 2013,

Eletson Holdings Inc. partnered with Blackstone Tactical Opportunities ("**Blackstone**") to form

Eletson Gas ("**Gas**"), whose preferred shares were held by Blackstone while Eletson Holdings

Inc. held the common shares of Gas. (*Id.*).

On March 8, 2023, Pach Shemen, VR Global, and Alpine filed involuntary chapter 7

bankruptcy petitions against the Debtors. (*See* Docket No. 1). On September 6, 2023, the

Debtors stipulated to conversion of the involuntary Chapter 7 cases to voluntary Chapter 11

cases. (ECF Docket No. 204); (*see also* ECF Docket No. 215).

On October 20, 2023, the United States Trustee appointed the Official Committee of

Unsecured Creditors (the "**Committee**"). (Docket No. 233).

While the bankruptcy cases progressed, an arbitrator issued a Final Award as part of an

arbitration proceeding on September 29, 2023. (*See generally* Final Award). In the Final

Award, the arbitrator found that the Debtors had exercised the option under a certain binding

offer letter to acquire the Gas Preferred Shares by transferring shares of the Symi and the

Telendos to Levona. (*Id.* at 34–38). The Final Award also concluded that the Gas Preferred

Shares had been transferred to affiliates of the Debtors' principles (the "**Cypriot Nominees**") as

of March 11, 2022. (*Id.* at 96). Additionally, the arbitrator assessed certain damages against

Levona, Pach Shemen, and Murchinson. (*Id.* at 50–52, 56, 62, 69, 99–101).

Thereafter, Eletson Holdings Inc. and Eletson Corp. filed a petition in the United States

District Court for the Southern District of New York (the "**District Court**" pending at *Eletson*

4

*Holdings, Inc. v. Levona Holdings Ltd.*, 23-cv-07331-LJL (S.D.N.Y.)) to confirm the Final

Award.[2]  (District Court Docket No. 1).

On February 9, 2024, the District Court issued an *Opinion and Order*, which confirmed

the Final Award in part but vacated certain portions of the damages and certain findings made by

the arbitrator relating to Levona, Pach Shemen, and Murchinson's liability under an alter ego

theory.  (District Court Docket No. 83).  On September 6, 2024, the District Court granted

Levona's motion to amend its vacatur petition to raise the possibility that the Debtors had

withheld key documents from the arbitrator, stating:

> Crediting the inferences for which Levona argues, the newly-produced documents
> put the lie to Eletson's suggestion that these documents would be irrelevant. The
> documents are highly relevant both to the arbitration and to the proceedings before
> [the District Court]. They tend to show fraud in the arbitration proceeding.

(ECF Docket No. 1084, Ex. A at p. 16).  The District Court went on to state that "Levona has

proffered evidence that would suggest that the [allegedly withheld documents] may be just the

tip of the iceberg and that there may be other relevant documents that would support its claims

that extraordinary circumstances prevented it from filing earlier and that fraud was committed in

the arbitration." (*Id.* at 47).  Accordingly, the District Court granted Levona discovery to

determine whether the Final Award "was procured by fraud or undue means." (*Id.*).

## B.  <u>THE COMPETING PLANS, CONFIRMATION, AND PURPORTED CONFIRMATION APPEALS.</u>

In this case, the Debtors and Petitioning Creditors filed competing Chapter 11 plans.  The

Court held evidentiary hearings in connection with plan confirmation (and with certain claim

---

[2] References to "**District Court Docket No.**" are to filings entered on the docket in *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 23-cv-07331-LJL (S.D.N.Y.).

objections) on September 9, 10, 11, 12, and 13, 2024.  (*See* ECF Docket Nos. 1124, 1125, 1130, 1160, 1161).

On October 25, 2024, the Court issued its *Memorandum Opinion And Order Confirming Petitioning Creditors' Amended Joint Chapter 11 Plan Of Reorganization Of Eletson Holdings Inc.* (the "**Chapter 11 Plan**") *And Its Afilliated Debtors, Sustaining Objections To Competing Plan, And Denying Motion In Limine* (the "**Confirmation Opinion**").  (ECF Docket No. 1212). Thereafter, on November 4, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Petitioning Creditors' Amended Joint Chapter 11 Plan of Eletson Holdings Inc. and Its Affiliated Debtors* (the "**Confirmation Order**").  (ECF Docket No. 1223).

On November 14, 2024, Reed Smith appealed the Confirmation Order on behalf of Eletson Holdings Inc. (the "**Confirmation Appeal**").[3]  *In re Eletson Holdings Inc.*, Case No. 24-CV-8672 (LJL), Docket No. 1.  The Confirmation Appeal was dismissed by the District Court in an order dated December 30, 2024 "for reasons stated on the record on December 23, 2024."  *Id.* at Docket No. 19.  The District Court then entered the *Stipulation and Agreement To Dismiss Appeal Under Rule 8023 of the Federal Rules of Bankruptcy Procedure.  Id.* at Docket Nos. 20, 31.  Rimon P.C. and Reed Smith then filed a *Motion to Strike Document No. 31 Stipulation and Agreement to Dismiss* (the "**Motion to Strike**").  *Id.* at Docket No. 43.

Judge Liman denied the Motion to Strike at a hearing held on February 14, 2025, upholding the dismissal of the Confirmation Appeal.  *See* District Court Docket No. 270.

---

[3] References to "**Confirmation Appeal Docket No.**" are to filings entered on the docket in *In re Eletson Holdings Inc.*, 24-cv-08672-LJL (S.D.N.Y.).

### C. **POST-CONFIRMATION NON-COMPLIANCE WITH CHAPTER 11 PLAN AND CONFIRMATION ORDER.**

#### 1. **Initial Sanctions Motion.**

On November 12, 2024, the First Instance Court of Piraeus in Greece (the "**Greek Court**") appointed the purported Provisional Board of Eletson Holdings Inc. (the "**Provisional Board**"). (TX-81 submitted in connection with the Evidentiary Hearing, the "**Greek Court Order**"). The purported Provisional Board was appointed because, after certain members – Laskarina Karastamati, Vasileios Kertsikoff, Eleni Karastamati, and Panagiotis Konstantara – of the previous board (the "**Previous Board**")[4] resigned on November 8, 2024, Elafonissos Shipping Corporation and Keros Shipping Company (the "**Former Minority Shareholders**") sought relief from the Greek Court to appoint a temporary board to manage the company while the Confirmation Order was being appealed. (TX-31 submitted in connection with the January 6, 2025 Evidentiary Hearing).[5]

On November 25, 2025 Reorganized Holdings filed the *Emergency Motion of Reorganized Eletson Holdings Inc. for an Order Imposing Sanctions on Eletson Holdings' (A) Existing Person of Record and (B) Former Shareholders, Officers, Directors, and Counsel, Including Reed Smith LLP* (the "**Sanctions Motion**"). (ECF Docket No. 1268). Filed in support of the Sanctions Motion was the *Declaration of James Pierre* (Exhibit B to the Sanctions Motion) and the *Declaration of Bryan M. Kotliar* (Exhibit C to the Sanctions Motion). (*Id.*).

---

[4] During the Chapter 11 Cases, the board of directors consisted of: Vasileios Chatzieleftheriadis, Konstantinos Chatzieleftheriadis, Ioannis Zilakos, Emmanuel Andreoulakis, Vassilis Kertsikoff, Eleni Giannakopoulou, Panagiotis Konstantara, and Laskarina Karastamati. (TX-31 submitted in connection with the Evidentiary Hearing).

[5] The purported Provisional Board includes certain of the Previous Board members: Vasileios Chatzieleftheriadis, Konstantinos Chatzieleftheriadis, Ioannis Zilakos, Niki Zilakou, Adrianos Psomadakis-Karastamatis, Eleni Giannakopoulou, Panos Paxinos, Emmanouil Andreoulakis. (TX-104 submitted in connection with the Evidentiary Hearing). The Court notes that no recognition of the Greek Court Order has been sought in the U.S. or Liberia according to the evidence presented at trial. (*See* ECF Docket No. 1405, Jan. 24 Decision Hr'g Tr. 23:8-11).

7

The Sanctions Motion argued that the former debtors, and *inter alia*, their former parents, owners, subsidiaries, affiliates, and personnel (including their officers, directors, principals, direct and indirect equity holders, and attorneys) have attempted to subvert the Confirmation Order by, *inter alia*, arguing that Reorganized Eletson Holdings Inc. cannot act in Liberia or Greece without undertaking formal recognition proceedings.  (Sanctions Motion, at ¶ 37). Reorganized Eletson Holdings Inc. sought an order: 1) finding that Reorganized Holdings Inc.'s former shareholders, officers, directors, counsel, and other parties have failed to comply with the Plan (as defined in the Confirmation Opinion) and Confirmation Order; 2) compelling these parties to comply with the Confirmation Order and effectuate the Chapter 11 Plan by updating the Liberian International Ship & Corporate Registry (the "**LISCR**") to reflect Reorganized Eletson Holdings, Inc. as the new owner of the Reorganized Debtor; and 3) finding that these parties are in contempt for failing to comply with the Plan and Confirmation Order and should be sanctioned.  (*Id.* at pp. 15-28); (*see also Revised Proposed Order*, ECF Doc. No. 1330).

Reed Smith LLP filed an *Opposition to Emergency Motion of Reorganized Eletson Holdings Inc. for an Order Imposing Sanctions* (the "**Sanctions Objection**").  (ECF Docket No. 1287).  The Objection asserted, in part, that: compliance with Section 1141 and 1142 of the Bankruptcy Code is not applicable in a foreign jurisdiction, and complying with the Confirmation Order would entail recognition proceedings pursuant to foreign law and thus there is no basis for a contempt finding and that the parties otherwise complied with efforts to implement the Chapter 11 Plan.  (*Id.* at pp. 16-30).

On January 3, 2025, the "Certificate of Eletson and Incumbency of Eletson Holdings Inc." was filed by Eletson Holdings Inc.'s address of record ("**AOR**") with the Liberian International Ship & Corporate Registry ("**LISCR**") to reflect the purported Provisional Board

members and Mr. Chatzieleftheriadis as "acting President/Treasurer/Director of Eletson Holdings Inc." (TX-104 submitted in connection with the Evidentiary Hearing).

The Court held an evidentiary hearing on January 6, 2025 (the "**Evidentiary Hearing**") on the Sanctions Motion. (Evidentiary Hearing Hr'g Tr., ECF Docket No. 1382). Reorganized Eletson Holdings Inc. presented their Liberian law expert witness, Mr. James-Pierre, and Reed Smith presented their Liberian law expert witness, Ms. Lamin-Blamo. Both parties withdrew their fact witnesses. (*See* Evidentiary Hearing Hr'g Tr. 7:13-14, 17:5-15).

On January 13, 2025, Reed Smith filed its *Findings of Fact and Conclusions of Law* ("**Reed Smith's Findings of Facts**"). (ECF Docket No. 1356). Also, on the same date, Reorganized Eletson Holdings, Inc. filed its *Proposed Findings of Fact and Conclusions of Law Approving Pending Motion for Contempt and Other Relief Against, Inter Alia, Reed Smith, Eletson Holding's Address of Record and Former Shareholders, Officers and Directors* ("**Reorganized's Findings of Facts**"). (ECF Docket No. 1355).

The parties filed post-trial briefs on January 17, 2025. (*See* Reorganized Holdings' Post-Trial Brief Concerning the Sanctions Motion, ECF Docket No. 1371); (*see also* Reed Smith's Post-Hearing Brief in Opposition to Emergency Motion, ECF Doc. No. 1372).

The Court issued its oral ruling on the Sanctions Motion on January 24, 2025 (the "**Jan. 24 Decision**"). (*See* ECF Docket No. 1402, Exhibit A – Oral Decision, Jan. 24 Decision Hr'g Tr.).

On January 29, 2025, the Court entered the *Order In Support Of Confirmation And Consummation Of The Court-Approved Plan Of Reorganization* (the "**Jan. 29 Order**"). (ECF Docket No. 1402).

## 2. **Subsequent Sanctions Motion.**

On February 6, 2025, Reorganized Holdings filed the *Emergency Motion of Eletson Holdings Inc. For Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* (the "**Motion in Support**").  (ECF Docket No. 1416).  The Motion in Support argues that the Ordered Parties (as defined in the January 29 Order): 1) had refused to update the AOR by the compliance deadline and 2) had further attempted to subvert the Confirmation Order by arguing the materiality of proceedings in Greece as related to compliance with the January 29 Order.  (*Id.*).

The Court held a hearing on February 20, 2025 on the Motion in Support and issued its oral decision (the "**Feb. 20 Decision**") and stated that: "[a]lthough the Court finds that the [Jan. 24 Decision] and the [Jan. 29 Order] are clear and unambiguous, the Court will provide the parties one final opportunity for compliance."  (ECF Docket No. 1468, Feb. 20 Decision Hr'g Tr. 105:5-8).  The Court thus ordered, *inter alia*:

> a) Reed Smith, Sidley Austin, the former board members, the purported Provisional Board, the Former Majority Shareholders, and Vasilis Hadjieleftheriadis to file certifications by February 24, 2025 indicating that they had instructed the AOR to: i) communicate with and take direction from Reorganized Eletson Holdings Inc., ii) update or amend the AOR as directed by Reorganized Eletson Holdings Inc., and iii) update or amend Reorganized Eletson Holdings Inc.'s corporate governance documents on file with LISCR as directed by Reorganized Eletson Holdings Inc.;
>
> b) the purported Provisional Board, Vasilis Hadjieleftheriadis, the Former Majority Shareholders, Reed Smith and/or Sidley Austin to submit under seal to this Court the identity of the AOR; and
>
> c) the AOR to file a certification by February 24, 2025 stating that it will i) communicate with and take direction from Reorganized Eletson Holdings Inc., ii) indicate that it has or will update or amend the current AOR as directed by Reorganized Eletson Holdings Inc., and iii) indicate that it has or will update or amend Reorganized Eletson Holdings Inc.'s corporate governance documents on file with LISCR as directed by Holdings.

(*See id.* at 105:10-107:12).

10

Based on certain parties' noncompliance with the Feb. 20 Decision, the Court entered an *Order In Support Of Confirmation And Consummation Of The Court-Approved Plan Of Reorganization And Imposing Sanctions On Certain Parties* on February 27, 2025.  (ECF Docket No. 1495).  The Former Majority Shareholders, the purported Provisional Board, Mr. Vasilis Hadjieleftheriadis and the AOR were sanctioned for failing to comply with the Court's directives in the Jan. 29 Order and the Feb. 20 Decision.  (*Id.*).

### D. THE STAY MOTION, RESPONSES AND REPLIES.

On February 5, 2025, Reed Smith filed a *Notice of Appeal*, appealing the Jan. 29 Order. (ECF Docket No. 1411).  On the same date, Reed Smith filed the Stay Motion.  (ECF Docket No. 1412).  Also filed in support of the Stay Motion is the *Supplemental Declaration of John Markianos-Daniolos in Support of Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal*.  (ECF Docket No. 1453).

The Majority Shareholders filed a *Joinder of the Majority Shareholders of Eletson Holdings Inc. to Motion for Stay of Enforcement of January 29, 2025 Order Pending Appeal*. (ECF Docket No. 1414, the "**Stay Joinder**").

Filed in response to the Stay Motion and Stay Joinder was the Objection, supported by the Declaration of Adam Spears and the Declaration of Jared C. Borriello.  (ECF Docket Nos. 1443, 1446, 1447)

Reed Smith filed its Reply on February 19, 2025. (ECF Docket No. 1454).

## IV. LEGAL ANALYSIS AND DISCUSSION.

### A. MOVANTS DO NOT HAVE STANDING

While the Movants' fail to meet the "heavy burden" of proving that a stay pending appeal is warranted (see *infra* section (IV)(B)), the Court will first address arguments regarding Movants' standing to bring the Stay Motion.  The Court finds that purported Provisional Eletson

Holdings Inc., to the extent it purports to be the debtor in this case, lacks standing in this Court, which is supported by Judge Liman's dismissal of the Confirmation Appeal in the District Court. *See* Confirmation Appeal Docket No. 19; *see also* District Court Docket No. 270.

Judge Liman found that the Chapter 11 Plan and the Confirmation Order entered by this Court "recognizes the new board of [Eletson] and gives the new board of [Eletson], under [Section] 5.2 [of the Chapter 11 Plan] the ability to act on behalf of [Eletson], [which is] under [Sections] 5.10 and 5.11 [of the Plan], and gives them, under the plan of confirmation, authority . . . ." (*see also* TX-40 submitted in connection with the Evidentiary Hearing, Judge Liman Hr'g Tr. 31:15-17) (the "**Dec. 23 Judge Liman Hr'g Tr.**"); (*see also* Chapter 11 Plan, §§ 5.2, 5.4, 5.10).

Furthermore, Judge Liman reaffirmed this Court's holding in the Jan. 24 Decision and his holding at the Dec. 23 Hearing, and stated at a hearing on February 14, 2025:

> As of the effective date and by order of the bankruptcy court, Eletson Holdings is now the reorganized Eletson Holdings. Thus, as Judge Mastando recently ruled, there are not two separate Eletson Holdings. [Judge Mastando] stated: 'Essentially, reorganized Eletson Holdings is the only Eletson Holdings Inc.' . . . [Judge Mastando] ruled: 'Upon the effective date, equity interest[s] of the former debtors were extinguished, and all equity interest[s] in reorganized holdings were issued to the new holdings . . . The board members of the former debtor, certain of whom are now members of the provisional board, were automatically deemed to have resigned or otherwise ceased to be a director or manager of Eletson Holdings Inc.' The Court has independently reviewed the plan of confirmation of the petitioning creditors that was confirmed by the bankruptcy court and it agrees . . . As of the effective date, the authority of the prior managers of Eletson Holdings ended . . . The authority to manage Eletson Holdings is vested in the new board.

District Court Docket No. 270, Judge Liman Hr'g Tr. 96:17-25, 97:1-13 (the "**Feb. 14 Judge Liman Hr'g Tr.**"); (*see also* Jan. 24 Decision Hr'g Tr. 26:16-21).

Therefore, the Court agrees with Reorganized Eletson Holdings Inc. that purported Provisional Eletson Holdings Inc. does not have standing to request a stay pending appeal. (Objection, ¶ 6); *see Tsuei Yih v. Fronter Communs. Corp.*, 2020 U.S. Dist. LEXIS 172959, at *5

(S.D.N.Y. September 21, 2020) (determining that the movant lacked standing to pursue the stay

pending appeal and therefore could not pursue the motion nor meet the four-factor test for

determining whether a stay pending appeal is warranted).

The Court further agrees with Reorganized Eletson Holdings Inc. that the attempt by

purported "Provisional Eletson Holdings Inc." to "seek[] a stay of the [Jan. 29 Order] – which

served only to enforce the Confirmation Order" essentially acts as an improper attempt to obtain

a stay of the Confirmation Order.  (Objection, ¶ 8).

## B.  <u>THE MOVANTS FAIL TO MEET THE STANDARD FOR STAY PENDING APPEAL</u>

Since the stay is also sought on behalf of the Former Majority Shareholders, and

assuming that purported Provisional Eletson Holdings Inc. does have standing and/or that the

stay is sought on behalf of the purported Provisional Board, the Court will address the merits of

the Stay Motion.

Pursuant to Federal Rule of Bankruptcy Procedure 8007, a "party must move first in the

bankruptcy court" for "a stay of the bankruptcy court's judgment, order, or decree pending

appeal," or "an order suspending, modifying, restoring, or granting an injunction while an appeal

is pending."  Fed. R. Bankr. P. 8007(a)(1)(A), (C).

To determine whether to grant or deny a motion to stay an order pending appeal, the

Court must consider four factors: "(1) whether the movant will suffer irreparable injury absent a

stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant

has demonstrated a substantial possibility, although less than a likelihood, of success on appeal,

and (4) the public interests that may be affected."  *See In re G.L.A.D. Enters., LLC*, 2023 Bankr.

LEXIS 1482, at *5 (Bankr. S.D.N.Y. June 6, 2023) (citing *Hirschfeld v. Board of Elections*, 984

F.2d 35, 39 (2d Cir. 1993) (citations omitted)); *see also Nken v. Holder*, 556 U.S. 418, 434 (2009).

"The movant's burden is a 'heavy' one." *In re 473 W. End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005)). The moving party "must show 'satisfactory' evidence on all four criteria" and "failure to satisfy one prong of this standard for granting a stay will doom the motion." *See In re G.L.A.D. Enters., LLC*, 2023 Bankr. LEXIS 1482, at * 5 (internal citations omitted). The Second Circuit explained that it has "treated these [four factors] somewhat like a sliding scale, citing approvingly other circuits' formulation that . . . more of one [factor] excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (citation omitted); *see also In re GMC*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) (deciding that applying an 'all or nothing' approach or 'balancing approach' was not dispositive in the case because the movants had failed to demonstrate likelihood of success, prejudice to those opposing the stay, and the public interest).

Here, Court finds that all four factors weigh heavily in favor of Reorganized Eletson Holdings Inc. – the objecting party – and support denial of the stay pending appeal. (Objection, ¶¶ 18, 31, 39, 44, 48).

### 1. Movants Have Not Shown Irreparable Harm Absent A Stay.

A showing of irreparable harm is the "principal prerequisite" for the issuance of a stay pending appeal. *See In re Calpine Corp.*, 2008 Bankr. LEXIS 217, at *4 (Bankr. S.D.N.Y. January 24, 2008). The Movants must demonstrate that an injury is "neither remote nor speculative, but actual and imminent." *Id.* (internal citations omitted). Additionally, the two factors – irreparable injury to the movant and likelihood of success on appeal – are the two "most critical" factors. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 U.S. Dist. LEXIS 113309, at *3 (S.D.N.Y. August 26, 2015) (quoting *Nken*, 556 U.S. at 434.

The Movants argue that purported Provisional Eletson Holdings Inc. is "caught between different legal systems and different commands as to what it needs to do." (Stay Motion, ¶ 28). The Movants further argue that the Jan. 29 Order places purported Provisional Eletson Holdings Inc. "in a real Catch-22" as the Jan. 29 Order directs compliance in one way while "Greek law precludes Provisional Holdings from taking certain steps contemplated under the January 29, 2025 Order without incurring the imposition of criminal sanctions." (*Id.*). Movants further argue that "[i]f there is no stay, Provisional Holdings will be caught in between legal systems without even having a chance for an appeal . . .[i]n other words, if there is no stay, the appeal will be effectively mooted before it begins." (*Id.* at ¶ 29).

Reorganized Eletson Holdings Inc. objects, arguing that Movants have not shown "that Greek law is even applicable here, nor did they present any evidence on that issue at [the Evidentiary Hearing]. Their lone expert testified about Liberian law." (Objection, ¶ 31). Reorganized Eletson holdings Inc. further argues that ". . . Movants have not shown that the Greek Order has been recognized and enforced in Liberia . . . Thus, according to Movants' own reasoning, the Greek Order is not effective and the Provisional Board does not exist." (*Id.* at ¶ 35).

First, the Court agrees with Reorganized Eletson Holdings Inc. that the Movants have not shown that an irreparable injury exists. (Motion, ¶¶ 28, 31). The only evidence submitted at the Evidentiary Hearing, which led to the Court's determination in the Jan. 24 Decision, was the Liberian law experts' testimony presented by the parties regarding, *inter alia*, whether disclosing and amending the AOR might be a violation of Liberian law. (*See* Jan. 24 Decision Hr'g Tr. 36:18-25, 37:1-23). The *Daniolos Letter*, relied upon by Movants to exhibit that the Jan. 29 Order may expose them to foreign sanctions, states that there is alleged "criminal exposure" to

15

the "Directors" of the purported Provisional Eletson Holdings Board by complying with the Confirmation Order "without it having been judicially recognized in Greece . . . ." (ECF Docket No. 1288, Daniolos Letter, ¶ 9). No evidence was submitted at the Evidentiary Hearing regarding any need for recognition in Greece. The evidence that was submitted at the Evidentiary Hearing included documentation that the AOR filed the "Certificate of Eletson and Incumbency of Eletson Holdings Inc." with LISCR on January 3, 2025 – based on the Greek Court Order and allegedly reflecting the purported Provisional Board members' "authority" – without seeking recognition in Liberia, which clearly weighs against the Movants' arguments. (*See* Jan. 24 Decision Hr'g Tr. 42:4-13 (citing TX-104 in connection with the Evidentiary Hearing)); *see also* Feb. 14 Hr'g Tr. 103:14-25.

The Movants have also not demonstrated how assisting with the implementation of the Chapter 11 Plan and Confirmation Order – the purpose of the Jan. 29 Order – would violate foreign law. (*See* Objection, ¶ 33); (*see also* Stay Motion, ¶¶ 28-29). In fact, this Court already determined that "the Court is not seeking to displace foreign law here with this Court's [Jan. 29 Order,] but to enforce the confirmation order, which may involve implementing corporate acts in a foreign jurisdiction." (Jan. 24 Decision Hr'g Tr. 34:4-7). The Court's ruling in the Jan. 24 Decision is further supported by Judge Liman's determination that "[a]s Judge Mastando ruled, and I [Judge Liman] agree, the plan does not require Eletson Holdings to take any action that would violate the law of Liberia." Feb. 14 Judge Liman Hr'g Tr. 104:8-10. Further, Judge Liman held that:

> This ruling does not offend principles of extraterritoriality or comity. The [District] Court is not applying the ruling of the bankruptcy court extraterritorially. It is applying it to a proceeding in the United States relating to an entity that voluntarily invoked the powers of the United States court, and that is properly here. Principles of comity apply when the conduct of a United States court 'will infringe on sovereign interests of a foreign state.' [citing] *Next Investors LLC v. Bank of China*, 12 F.4th 119, 131 . . . [H]ere the United

16

States court is not taking action that would require a party to infringe some sovereign interest of a foreign state.

Feb. 14 Judge Liman Hr'g Tr. 103:14-25, 104:1.

Therefore, any potential injury to the Movants, which has not been evidenced, is remote as there is no foreign law that the Movants are being asked to violate. *Id.*; (*see also* Jan. 24 Decision Hr'g Tr. 34:4-7). Courts agree that a "hypothetical and remote" harm is insufficient to constitute irreparable harm to stay a court's order pending appeal. *See In re G.L.A.D. Enters., LLC*, 2023 Bankr. LEXIS 1482, at *6.

Second, there is no risk of irreparable injury to the Movants based on the potential "risk of mootness." (Objection, ¶ 39). Courts have determined that "merely invoking equitable mootness . . . is not sufficient to demonstrate irreparable harm." *In re Calpine*, 2008 Bankr. LEXIS 217 at *13. The Movants' argument that they will be harmed by the enforcement of the Jan. 29 Order (Stay Motion, ¶¶ 28-29) is without merit because the Movants have sought a stay of the Jan. 29 Order, which *implements* and enforces the Chapter 11 Plan and Confirmation Order, rather than a stay of the Confirmation Order itself (the appeal of which was dismissed). (*See* ECF Docket No. 1405, Jan. 24 Decision Hr'g Tr. 43:16-21) (emphasis added); *see also* District Court Docket Nos. 19, 20. Had the Movants or others previously sought a stay of the Confirmation Order based on the concern that implementing the Chapter 11 Plan might have rendered the appeal moot, that may have established potential injury, but that is not the case here. *See In re Calpine*, 2008 Bankr. LEXIS 217 at * 13 (finding that mootness of a confirmation order is "a risk that is present in any post-confirmation appeal of a chapter 11 plan . . ." but determining that this alone did not evidence irreparable harm). Therefore, a denial of a stay of the Jan. 29 Order – which enforces the Confirmation Order – would not cause irreparable harm to Movants. (Objection, ¶ 40).

## 2. **There Is No Substantial Possibility of Success On Appeal.**

To succeed on this factor, Movants must show that they have a "substantial possibility" of success on the merits. *See In re G.L.A.D. Enters.*, LLC, 2023 Bankr. LEXIS 1482 at *7.

The Movants argue that their appeal has a reasonable possibility of success on the merits because "Petitioning Creditors made explicit promises to comply with foreign law . . ." and have failed to do so by failing to obtain recognition of the Confirmation Order in Greece and Liberia. (Stay Motion, ¶ 38).  Movants argue that pursuant to "Liberian law, any changes to Holdings' AOR, AOI, or shareholders can only be made following recognition of the Confirmation Order in Liberia."  (*Id.* at ¶ 39).  They further assert that "[u]nder Greek law, for the Confirmation Order and Plan to have any effect, a Greek court must recognize and confirm the Confirmation Order and Plan."  (*Id.* at ¶ 40).  The Movants also claim that ". . . this is not a domestic application of the Bankruptcy Code, as all actions Reorganized Holdings seek to compel are to take place abroad."  (*Id.* at ¶ 43).

Reorganized Eletson Holdings Inc. argues that that an appeal has no likelihood of success because the Jan. 29 Order is a nonfinal order that cannot be appealed.  (Objection, ¶ 18).  To this effect, they also argue that a contempt order is not sufficiently final to be appealable.  (*Id.* at ¶ 19).  Also, Reorganized Eletson holdings Inc. asserts that the appeal is without merit because Judge Liman has rejected "multiple times" many of the Movants' arguments in the Stay Motion. (*Id.* at ¶ 20).  Reorganized Eletson Holdings Inc. further claims that the appeal "has zero chance of success" because the Movants' arguments that "foreign judicial recognition must be obtained" were overruled by this Court and District Court. (*Id.* at ¶¶ 24-27).

The Court agrees with Reorganized Eletson Holdings Inc. that the appeal has little possibility of success.  The Court also agrees with Reorganized Eletson Holdings Inc. that

Movants seek to simply reargue issues of international comity that have previously been addressed by this Court and the District Court.  (Objection, ¶¶ 20, 24-26).

The Court finds that Movants will not likely succeed on appeal because the "comity" argument raised by the Movants has been argued at the District Court level and failed.  On December 23, 2024, the Movants argued, before the District Court, that the Confirmation Order requires foreign recognition.  (Dec. 23 Judge Liman Hr'g Tr. 20:2-6 ("[F]or a Liberian corporation there needs to be recognition of the bankruptcy plan and the confirmation order . . .")).  In response, Judge Liman described their position as "an extreme position as a matter of international bankruptcy law." (*Id.* at 21:4-5).  The Confirmation Appeal was thus dismissed. (Dec. 23 Judge Liman Hr'g Tr. at 31:7-19).

Then, this Court held the Evidentiary Hearing, at which Reorganized Eletson Holdings Inc's Liberian law expert and Movants' Liberian law expert testified regarding, *inter alia*, whether Liberian law prohibits a party from changing or amending the AOR and LISCR.  (*See* Jan. 24 Decision Hr'g Tr. 36:8-17).  This Court found in the Jan. 24 Decision:

> While Reed Smith argues that Section 1142 of the Bankruptcy Code applies to just state preemption, this argument misses the point because the Court is not seeking to displace foreign law here with this Court's order but to enforce the confirmation order, which may involve implementing corporate acts in a foreign jurisdiction.

Jan. 24 Decision Hr'g Tr. 34:2-7.

This Court then ordered that certain Ordered Parties must comply with the Confirmation Order to help effectuate the Chapter 11 Plan by "tak[ing] all steps reasonably necessary as requested by the board of Reorganized Eletson Holdings Inc. or its agent to assist in amending the AOR and updating the corporate governance documents [with LISCR]. . . ."  (*Id.* at 43:21-25).

19

At a subsequent hearing before the District Court, Reed Smith again argued that the

Confirmation Order requires foreign recognition.  *See* Feb. 14 Judge Liman Hr'g Tr. 98:22-25,

99:1.  Before explaining why the foreign recognition argument was "defective," Judge Liman

took a moment to pause on "its inherent absurdity."  *Id.* at 48:2-4, 48:22.  Judge Liman held, as

discussed *supra* section (IV)(B)(1), that "[t]his ruling does not offend principles of

extraterritoriality or comity.  The [District] Court is not applying the ruling of the bankruptcy

court extraterritorially.  It is applying it to a proceeding in the United States relating to an entity

that voluntarily invoked the powers of the United States court, and that is properly here.

Principles of comity apply when the conduct of a United States court 'will infringe on sovereign

interests of a foreign state.'"  Feb. 14 Judge Liman Hr'g Tr. 103:14-21 (internal citations

omitted).  Judge Liman further found that "[t]he bankruptcy court's order does not have to be

recognized everywhere again in order to be recognized anywhere . . . ."  Feb. 14 Judge Liman

Hr'g Tr. 105:7-9.

Thus, Movants do not have a substantial possibility of success and therefore a stay

pending appeal is not warranted.

### 3.  The Stay Will Cause Reorganized Eletson Holdings Inc. And Other Parties To Suffer Substantial Harm.

For this factor, the Movants argue that Reorganized Eletson Holdings Inc. and other

parties will not be substantially harmed by granting the stay because the only "harm" is "delay

while [Reorganized Eletson Holdings Inc.] seeks recognition in the applicable foreign

jurisdictions . . . as Petitioning Creditors promised to do."  (Stay Motion, ¶ 33).

Reorganized Eletson Holdings Inc. objects, arguing that Reorganized Holdings will be

harmed by the "delay" because it is the "continued complete frustration" of the confirmed

Chapter 11 Plan and the "benefit of the bargain struck by Holdings' new owners," which Reed

Smith also benefitted from.  (Motion, ¶ 42).  Reorganized Eletson Holdings Inc. further states that "[h]ad a stay of the Confirmation Order been attempted before the Plan's Effective Date . . . the current, rightful owners of the Eletson business would not have spent millions more fighting to secure their control of the company."  (*Id.* at ¶ 43).

A movant seeking a stay pending appeal "must also establish that the non-moving party or other parties [do] not suffer substantial harm if the stay is granted."  *See In re Adelphia*, 361 B.R. at 349.  Here, the Court agrees with Reorganized Eletson Holdings Inc. that a stay will lead to further harm suffered by the new owners of Reorganized Eletson Holdings Inc.

To date, Reorganized Eletson Holdings Inc. has not received the "benefit of the bargain" of paying $53.5 million to pay off Eletson Holdings Inc.'s pre-existing debts in exchange for "ownership and control of Holdings."  (Objection, ¶ 42); (*see also* Chapter 11 Plan, § 5.6). These amounts were distributed to Eletson Holdings Inc.'s creditors – including to Reed Smith – "at Reed Smith's [insistence] following the Effective Date [on November 19, 2024]. . . ." (Objection, ¶ 42).  A stay of the Jan. 29 Order will inevitably lead to further harm to the new holders of Reorganized Eletson Holdings Inc.  (Objection, ¶ 42).

In addition, Movants' argument that Reorganized Eletson Holdings Inc. will not be substantially harmed as "recognition" is contemplated in the Chapter 11 Plan contravenes this Court's determinations in the Jan. 24 Decision and the Feb. 20 Decision.  (*See* Stay Motion, ¶ 33).  This Court found in the Jan. 24 Decision that "just because the plan references compliance with applicable law, that does not mean that there is applicable law that needs to be applied here or that is not being followed for the purposes of this motion."  (Jan. 24 Decision Hr'g Tr. 36:9-13); *see also* Feb. 14 Judge Liman Hr'g Tr. 104:8-13 (concurring with this Court's finding in the Jan. 24 Decision).

Therefore, as granting a stay pending appeal would harm Reorganized Eletson Holdings

Inc., this factor also weighs heavily in favor of Reorganized Eletson Holdings Inc. and against

the Stay Motion.

### 4. <u>Public Interests Are Not Affected.</u>

Movants argue that a stay pending appeal is warranted because there is a "public interest

in preserving the relief that a party seeks through an appeal." (Stay Motion, ¶ 47). The Movants

further argue that "there is a public interest in conserving judicial resources." (*Id.* at ¶ 48).

Movants assert that "before Reorganized Holdings proceeds with enforcement actions that will

occupy the time and energy of this Court and all parties involved, Appellants should be permitted

to pursue their rights to seek further review . . . ." (*Id.* at ¶ 49).

Reorganized Eletson Holdings Inc. argues that: 1) the public interest is not served by

"protecting 'private' interests" of Movants; 2) the Movants have "it backwards" and that the

public interest is best served by "preserving the authority and reach of the Bankruptcy Code over

those who submit themselves" to United States bankruptcy courts; and 3) a stay would not

preserve judicial resources because Reorganized Eletson Holdings Inc. "has instituted no

'enforcement actions' that a stay" would obviate and it is the Movants who are "wasting judicial

resources by refusing to comply with the Plan and Confirmation Order whose finality they did

not seek to stay." (Objection, ¶¶ 47-50).

The Court agrees with Reorganized Eletson Holdings Inc. that the public interest does not

support a stay of the Jan. 29 Order because the public interest is best supported by enforcing

orders that seek to implement a confirmation order and by proceeding expeditiously to

implement a confirmed, Chapter 11 plan and a confirmation order that has not been stayed.

First, there is no public interest in staying the Jan. 29 Order, which implements the

Confirmation Order, as there is a strong public interest in preserving finality of confirmed,

chapter 11 plans.  The Movants seek a stay pending an appeal to re-litigate their interpretation of

the Confirmation Order and Chapter 11 Plan.  (Motion, ¶ 47).  As the Court discussed, *supra*

section (IV)(B)(1), if the Movants were concerned about "preserving" their relief on appeal to

stay the implementation of the Confirmation Order and Chapter 11 Plan, as the Movants allege it

"include[s] express promises to comply with foreign law," then a stay of the Confirmation Order

could have been sought.  (*See* Jan. 24 Decision Hr'g Tr. 43:9-15); *see also* Feb. 14 Judge Liman

Hr'g Tr. 97:9-11.  In fact, the public interest is better served if parties can rely on the finality of

chapter 11 plans and confirmation orders.  *See In re BGI, Inc.*, 2012 Bankr. LEXIS 5244, at * 20

(Bankr. S.D.N.Y. November 2, 2012) ("Congress and the courts have stressed the need for

parties to be able to rely on the finality of chapter 11 plans and related orders in conducting

business and in dealing with the reorganized debtor.").  Indeed, promoting "emergence from

chapter 11 [is] an issue[] of significant public interest" that cannot be furthered if parties can

seek a backdoor stay of a confirmation order by staying an implementation order months later.

*See In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 685 (Bankr. S.D.N.Y. 2016) (denying stay);

(*see also* Objection, ¶ 48).

Second, Courts note that the "public interest favors the expedient administration of the

bankruptcy proceedings." *In re Adelphia Communs. Corp.*, 361 BR 337, 349 (S.D.N.Y. 2007).

It, therefore, would not be expedient to stay the Jan. 29 Order, which seeks to further

implementation of the confirmed Chapter 11 Plan.  (Objection, ¶ 48 ("[t]he public interest is

interested in preserving the authority and reach of the Bankruptcy Code over those who submit

themselves to the jurisdiction of U.S. bankruptcy courts . . .")).  This is also furthered by Judge

Liman's determination that "[t]he bankruptcy court's order does not have to be recognized

everywhere again in order to be recognized anywhere . . . ." Feb. 14 Judge Liman Hr'g Tr. 105:7-9.

Accordingly, expeditious administration of a bankruptcy case best serves the public interest relative to continued litigation of already rejected claims. *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y.2004) (finding the public interest favors expeditious administration of bankruptcy cases and preservation of assets over litigating claims that lack substantial possibility of success); *see also See In re G.L.A.D. Enters.*, LLC, 2023 Bankr. LEXIS 1482 at *8-9 ("Since the public has a strong interest in the expeditious administration of the bankruptcy proceedings . . ., the public interest factor weighs heavily in favor of denying a stay pending appeal"). Therefore, the Movants do not prevail on the last factor.

## V.    **CONCLUSION**

For the foregoing reasons, the Stay Motion is DENIED.[6]

**IT IS SO ORDERED.**

Dated: New York, New York
       March 6, 2025

                              /S/ John P. Mastando III
                              HONORABLE JOHN P. MASTANDO III
                              UNITED STATES BANKRUPTCY JUDGE

---

[6] The reasoning set forth in this opinion and order also applies to any argument to stay the Court's February 27, 2025 *Order In Support Of Confirmation And Consummation Of The Court-Approved Plan Of Reorganization And Imposing Sanctions On Certain Parties*.  (ECF Docket No. 1495).