TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Brian F. Shaughnessy
John N. McClain, III
Jared C. Borriello

*Counsel for Eletson Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 11
                                              :
ELETSON HOLDINGS INC.,                        :        Case No.: 23-10322 (JPM)
                                              :
                                              :
                          Debtor.[1]          :
                                              :
------------------------------------------------------------x

## ELETSON HOLDINGS INC.'S OMNIBUS REPLY
## IN SUPPORT OF ITS FOREIGN OPPOSITION SANCTIONS MOTION

---

[1]    Prior to November 19, 2024, the Debtors in these cases were:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC.  Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc.  The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

# **TABLE OF CONTENTS**

**Page**

REPLY ......................................................................................................................... 1

   I.     The Non-Responding Ordered Parties Should Be Held in Contempt .................. 1

  II.    The Responding Ordered Parties Should Also Be Held In Contempt ................. 4

       A.    The Former Majority Shareholders ................................................................ 5

       B.    Reed Smith ....................................................................................................... 7

       C.    The Daniolos Firm ........................................................................................ 16

CONCLUSION ....................................................................................................... 17

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Chigirinskiy v. Panchenkova,*
No. 14-CV-4410, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015) ........................................... 14

*DeRosa v. Nat'l Envelope Corp.,*
595 F.3d 99 (2d Cir. 2010) .................................................................................................. 6

*Dreamtex, Inc. v. Alva Advance, LLC,*
No. 22 CIV. 9248, 2023 WL 5390998 (S.D.N.Y. Aug. 22, 2023) .......................................... 2

*Hart v. Blanchette,*
Case No. 12-CV-6458-CJS, 2019 WL 1416632 (W.D.N.Y. Mar. 29, 2019) ........................ 16

*In re Hickory Mill Apartments of Columbus, Ltd.,*
133 B.R. 898 (Bankr. S.D. Ohio 1991) ................................................................................ 16

*In re Millard,*
501 B.R. 644 (Bankr. S.D.N.Y. 2013) .................................................................................. 14

*In re Navigator Gas Transport PLC,*
Case No. 03-10471, (Bankr. S.D.N.Y. Apr. 5, 2004) ........................................................... 12

*In re Treco,*
240 F.3d 148 (2d Cir. 2001) ................................................................................................ 14

*In re World Parts, LLC,*
291 B.R. 248 (Bankr. W.D.N.Y 2003) ............................................................................ 11, 15

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,*
441 F. Supp. 2d 552 (S.D.N.Y. 2006) ................................................................................. 14

*Masonic Hall & Asylum Fund v. Off. Comm. Unsecured Creditors of Refco Inc.
(In re Refco Inc.),* 2006 WL 3409088 (S.D.N.Y. Nov. 16, 2006) ........................................ 14

*Matter of Rimsat, Ltd.,*
98 F.3d 956 (7th Cir. 1996) ........................................................................................... 13, 14

*Sapon v. Hanbat Rest., Inc.,*
No. 18 CIV. 11457 (SLC), 2021 WL 621170 (S.D.N.Y. Feb. 16, 2021) ................................ 2

**Rules**

22 NYCRR Part 1200, Rule 1.9(a) ...................................................................................... 16

Fed. R. Bankr. P. 9014(c) ..................................................................................................... 2

Fed. R. Civ. P. 55(a) ............................................................................................................ 2

Eletson Holdings Inc. ("Holdings"), by and through its undersigned counsel, hereby submits this omnibus reply (this "Reply") to the objections to the *Emergency Motion of Eletson Holdings Inc. for Entry of a Further Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization* [Docket No. 1459] (the "Foreign Opposition Sanctions Motion")[2] filed by the Former Majority Shareholders [Docket No. 1506] (the "FMS Objection"), the Daniolos Law Firm [Docket No. 1507] (the "Daniolos Objection"), and Reed Smith [Docket No. 1508] (the "Reed Smith Objection" and, together with the FMS Objection and the Daniolos Objection, the "Objections"). In support of the Foreign Opposition Sanctions Motion and this Reply, Holdings submits the second Declaration of Jared C. Borriello, Esq., filed contemporaneously herewith (the "Borriello Reply Declaration"), and respectfully states:[3]

## **REPLY**

### **I. The Non-Responding Ordered Parties Should Be Held in Contempt**

1. As a threshold matter, most of the Ordered Parties—including, among others, the Provisional Board members[4] (including Vasilis Hadjieleftheriadis), Vassilis Kertsikoff, Lascarina Karastmati, and the Former Minority Shareholders—did not

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Foreign Opposition Sanctions Motion or the documents that it incorporates by reference, as applicable.

[3]   Exhibits cited to herein as "Ex. __" are attached to the Borriello Reply Declaration (Ex. 23-38) and the Declaration of Jared C. Borriello (Ex. 1-22) annexed to the Foreign Opposition Sanctions Motion.

[4]   Pursuant to 5.10(c) of the Plan, all members of the Debtors' board (provisional or otherwise) prior to the Effective Date were "deemed to have resigned or [] otherwise cease to be a director or manager of the applicable Debtor on the Effective Date." Plan § 5.10(c). Thus, while we refer to the Provisional Board members as short-hand for the collection of individuals who continue to hold themselves out as board members in violation of the Plan, Holdings takes no direction from this collection of individuals post Effective Date.

respond to the Foreign Opposition Sanctions Motion at all. All of these parties, who were included as Ordered Parties in the Court's earlier Consummation Order, *see* [Docket No. 1402], should accordingly be held in contempt by default. *See* Fed. R. Bankr. P. 9014(c) (Fed. R. Civ. P. 55 applies in contested matters); Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see Sapon v. Hanbat Rest., Inc.*, No. 18 CIV. 11457 (SLC), 2021 WL 621170, at *2 (S.D.N.Y. Feb. 16, 2021) (default judgment against defendant under Fed. R. Civ. P. 55 where defendant failed to respond to motion, and "Defendants' default has prejudiced Plaintiffs by delaying the recovery of the amounts they were due . . . and causing Plaintiffs to incur additional attorneys' fees to bring the Motion."); *Dreamtex, Inc. v. Alva Advance, LLC*, No. 22 CIV. 9248 (VM), 2023 WL 5390998, at *2 (S.D.N.Y. Aug. 22, 2023) ("where a party fails to oppose a particular argument, it is deemed waived") (citation omitted).

        2.      The Ordered Parties' strategic absence should not be rewarded. Any claims about service or jurisdiction have already been addressed by this Court numerous times. *See, e.g.*, Docket No. 1468, Ex. A (Feb. 20, 2025 Hr'g Tr.) at 90:22-94:1. And any argument that the Ordered Parties need more time to find counsel is comical. Ex. 23 (March 4, 2025 Email J. Peles to B. Kotliar). The Confirmation Order binding the Ordered Parties was entered more than four months ago. The Ordered Parties chose to hire Reed Smith immediately after the Effective Date to advocate against its former client. They should have hired someone else to represent them. The first sanctions motion was filed more than two months ago. Again, they should have hired new counsel. Instead, Reed Smith continues to facilitate their obstruction of the Confirmation Order and other, related orders. And of course they had no problem

hiring Liberian and Greek lawyers months ago to challenge the Confirmation Order. Their attempted delay tactics are obvious and untenable.

3.      Additionally, the fact that certain former directors, including Vassilis Kertsikoff and Lascarina Karastamati resigned just prior to the Effective Date is irrelevant.  Pursuant to section 5.10(c) of the Plan, all directors were deemed to have resigned on the Effective Date.  Thus, their slightly earlier resignation does not alter the binding effect of the Plan on such parties.  Indeed, the definition of Related Parties includes "former officers, directors, [and] principals."  Plan § 1.124.  That definition also includes "subsidiaries" and "affiliates" and those subsidiaries and affiliates' "current and former officers, directors, [and] principles."  *Id*.

4.      Furthermore, despite being removed by the current board of Holdings from their positions as officers and directors of Holdings' subsidiaries, including, Eletson Corp., Eletson Gas, and the four wholly-owned SMEs (*see* Ex. 32 (Omnibus Written Consent of Parent);  Ex. 33 (Eletson Corp. Removal);  Ex. 34 (Eletson Gas Removal)), Vassilis Kertsikoff and Lascarina Karastamati continue to hold themselves out as holding those positions, including by having those entities file actions inconsistent with the Plan and subsequent orders enforcing it.  *See, e.g.,* Ex. 26 (Jan. 17, 2025 Greek Injunction Petition) and Ex. 31 (Feb. 19, 2025 Greek Injunction Motion);  *see also* Ex. 35 (Certificate of Incumbency of Eletson Corp. filed on January 3, 2025) and Ex. 38 (Kimolos II SME Certificate of Incumbency, dated Feb. 5, 2025).

5.      Reed Smith continues to feign ignorance concerning the consequence and operation of the Plan by referencing Eletson Corp. and Eletson Gas as non-debtors.  This ignores, as has been reiterated over and over by this Court and the District Court, that pursuant to 5.2(c) of the Plan all property of the Debtors, "including interest held by the Debtors in their respective non-Debtor direct and indirect subsidiaries and Affiliates

shall vest in Reorganized Holdings, free and clear . . ."  Plan § 5.2(c); *see also* Confirmation Order ¶ 7.  The status of these entities as non-debtors during the Chapter 11 Cases has no meaning post-Effective Date.  The effect of the Plan was to grant the interest in those entities to reorganized Holdings.  Thus, Reed Smith has it entirely backward when it claims that Holdings (which they continue to incorrectly refer to as a "Murchinson entity") is using this Court's orders to harm the business interests of Eletson Corp. and Eletson Gas.  That is nonsensical.  Holdings has significant interest in such entities.  This Court's orders are what gave Holdings its interest in Eletson Corp. and Eletson Gas.  Confirmation Order ¶ 7.  Claiming otherwise is ignoring the clear and unambiguous language of the Plan, the Confirmation Order, and the subsequent orders further enforcing them.

6. Consequently, although claiming to have no role, Vassilis Kertsikoff and Lascarina Karastamati continue to have a large role in the coordinated efforts of Reed Smith and the three principles it has always represented to disrupt, frustrate and impede implementation of the Plan.  They continue to claim to be directors and officers of Eletson Corp. and the common share appointed directors of Eletson Gas despite being removed by Holdings' current board pursuant to authority vested in them under the Plan, and then using that usurped authority to bring actions contrary to the interest of Holdings.

## II. The Responding Ordered Parties Should Also Be Held In Contempt

7. The Ordered Parties that did respond to the Foreign Opposition Sanctions Motion—the Former Majority Shareholders, the Daniolos Law Firm, and Reed Smith— argue that they are not responsible for the oppositions to recognition of the Confirmation Order filed in the Liberian Proceedings and Greek Proceedings (collectively, the "Foreign Oppositions").  These arguments are meritless.  A summary

4

of statements from certain of the Foreign Oppositions collaterally attacking the Plan and this Court's jurisdiction and orders is attached hereto as **Appendix A**.

### A. The Former Majority Shareholders

8.     The Former Majority Shareholders argue that they did not initiate any of the Foreign Oppositions and therefore cannot be held in contempt because they "cannot terminate or withdraw actions to which they are not parties."  FMS Obj. ¶ 8.

9.     But the Former Majority Shareholders still argue to this Court that they remain Holdings' majority shareholders because the Confirmation Order has not yet been recognized by a Liberian court.  *See* Docket No. 1291 ¶ 20 ("[T]he Confirmation Order has no effect under Liberian law absent an order of an empowered Liberian court granting it such authority."); FMS Obj. at 1 (styling themselves as "the majority shareholders of Eletson Holdings Inc.").

10.     Under Liberian corporate law, the shareholders of a Liberian corporation may influence the corporation's actions, including by replacing the corporation's board of directors if the board fails to act as the shareholders wish.  *See* Ex. 24 (Liberian Business Corporations Act, Title 5 (2020)) at § 6.7.2 (providing that "any director or the entire board of directors of a corporation . . . may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote"); Ex. 25 (Jan. 6, 2025 Hr'g Tr.) at 150:22-151:1 (Lamin-Blamo testifying how shareholders of Liberian corporation can direct corporate actions by voting); Consummation Decision at 37:24-38:4 (recognizing same).  Thus, regardless of whether they initiated the Foreign Oppositions, under their own theory of how things stand in the Eletson world, the Former Majority Shareholders are capable of causing the Holdings' board—whoever it is—to: (1) withdraw Holdings' support for any filing that opposes recognition of the Confirmation Order, (2) intervene in any proceedings to which Holdings is not a party

to support recognition, and (3) effect changes to the directorships of Holdings'
subsidiaries and causing such subsidiaries to take similar actions to support the Plan.
The Former Majority Shareholders should be deemed estopped from taking any
position to the contrary. *See DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir.
2010) (describing judicial estoppel). This is especially significant because certain
Holdings' subsidiaries have joined in the Foreign Oppositions, and Vassilis Kertsikoff
and Laskarina Karastamati purport to be on the board that directed such joinder. *See,
e.g.,* Ex. 12 (Motion to Dismiss Subsequent Liberian Recognition Petition), Ex. 26 (Jan.
17, 2025 Greek Injunction Petition).

11.     Despite these purported powers and their obligations under the
Bankruptcy Code, the Confirmation Order, the Consummation Order, the Court's
February 20, 2025 order requiring certifications regarding compliance (*see* 11 U.S.C.
§§ 1141(a), 1142(a); Docket Nos. 1223, 1402, 1468, Ex. A), and the Court's recent order
concluding that they had failed to comply ([Docket No. 1495] (the "Sanctions Order")),
the Former Majority Shareholders have never taken any steps to cause Holdings or its
subsidiaries to support foreign recognition of the Confirmation Order.

12.     Rather, as noted in the Foreign Opposition Sanctions Motion (¶ 26), the
Former Majority Shareholders have joined in the Subsequent Liberian Pleadings
opposing recognition of the Confirmation Order abroad. *See* Ex. 11 (Subsequent
Liberian Petition) at 5 (arguing that "[t]he bankruptcy proceedings were initiated in bad
faith"), 10 ("within the territory of Liberia, Adam Spears is not recognized and has no
such authority until a competent Liberian authority grants and confirms his authority").
The Foreign Majority Shareholders do not dispute this and the FMS Objection reflects
no indication that the Former Majority Shareholders intend to withdraw their support
for the Foreign Oppositions.

13. Additionally, the FMS Objection ignores the provisions of the Confirmation Order and Plan requiring the Former Majority Shareholders to (1) "cooperate in good faith to implement and consummate the Plan," (2) "to take or not take any and all actions as instructed by the Petitioning Creditors and . . . not take any actions inconsistent with the Plan and this Confirmation Order without the prior written consent of the Petitioning Creditors or further order of the Court," and (3) not "tak[e] any actions to interfere with the implementation or consummation of the Plan." Confirmation Order ¶¶ 5(i), 5(iii), 12. On multiple occasions, Holdings has directed the Former Majority Shareholders to withdraw, or cause to be withdrawn, all actions opposing recognition of the Confirmation Order. But the Former Majority Shareholders have refused to do so. *See* Ex. 27 (Feb. 27, 2025 Email W. Curtin to B. Kotliar); Ex. 28 (Jan. 24, 2025 Email B. Kotliar to W. Curtin); Ex. 29 (Jan. 10, 2025 Email W. Curtin to B. Kotliar); Ex. 30 (Dec. 30, 2024 Email W. Curtin to B. Kotliar). The Former Majority Shareholders have already admitted to this Court that such a refusal should result in contempt. *See* Docket No. 1468, Ex. A (Feb. 20, 2025 Hr'g Tr.) at 53:4-11 ("MR. VELEVIS: I think your order envisioned that they would ask us to do something, to take a step, and then if we said no to that step, then we would potentially be held in contempt. We being my client.").

14. The Foreign Opposition Sanctions Motion seeks to stop, for good, this obstructionist behavior by the Former Majority Shareholders and the other Ordered Parties.

**B. Reed Smith**

15. Reed Smith, like the rest of the Ordered Parties, is also bound by the Confirmation Order to cooperate in good faith and help implement, as opposed to obstruct, the Plan. *See* Confirmation Order ¶¶ 5(i), 5(iii), 12.

16.     Reed Smith argues that it only represents the Provisional Board[5] in American courts, and only then in certain specified proceedings.  RS Obj. ¶¶ 5-7.  Reed Smith argues that all of its clients' efforts to undermine the Confirmation Order anywhere other than in the United States is happening by its clients' hands alone, assisted by their foreign lawyers, and that because the foreign lawyers are the ones filing the Foreign Oppositions, Reed Smith cannot be held in contempt.  *Id.* ¶ 15.

17.     But the evidence makes clear that Reed Smith is the architect of the Ordered Parties' entire obstructive scheme.  The Foreign Oppositions parrot *verbatim* Reed Smith's already-rejected theory that the Confirmation Order cannot have any legal effect until judicial recognition is obtained in Liberia.  *Compare* Docket No. 1287 (Reed Smith's Opposition to Sanctions Motion) ¶ 69-70 ("a recognition proceeding is needed in both Liberia and Greece . . . the Plan and Confirmation Order needed to be recognized and enforced in foreign jurisdictions before the Plan is implemented and a change of corporate control occurs"), *with* Ex. 4 (Liberian Initial Response) ¶ 3.11 ("Petitioner is attempting to take control of the Respondent before obtaining a judgment from a competent Liberian court approving the enforcement of the New York bankruptcy court's confirmation order issued on November 4, 2024"); Ex. 31 (Feb. 19, 2025, Greek Injunction Motion) at 24 ("these decisions of the US Bankruptcy Court have not been recognized in Greece . . . therefore, they have no legal effect in Greece").

18.     Reed Smith also continues to argue—to this Court, the District Court, and the Second Circuit—that the Foreign Oppositions are proper.  Reed Smith continues to

---

[5]     As noted above, the Provisional Board is nothing more than a collection of individuals holding themselves out as board members in violation of the Plan and Confirmation Order, those individuals are: Vasileios Hatzieleftheriadis,  Konstantinos Hatzieleftheriadis, Ioannis Zilakos, Emmanuel Andreoulakis, Adrianos Psomadakis - Karastamatis, Panos Paxinos, Eleni Giannakopoulou, and Niki Zilakos

do this on behalf of the former officers and directors of Holdings, the same people who are directly involved in the Foreign Oppositions. Thus, at a minimum, Reed Smith is attempting to facilitate those proceedings by trying to convince U.S. courts that they should be allowed to proceed. But Reed Smith's involvement is no doubt deeper and more direct, despite its proclamations to the contrary.

19. For example, the Liberian-recognition theory—rejected by this Court and by the District Court, which called it an "extreme position of international bankruptcy law," (Docket No. 1339, Ex. 2 (Dec. 23, 2024 Hr'g Tr.) at 32:24-33:5)—is Reed Smith arguing by proxy. And the record in this case demonstrates that Reed Smith has run point on getting the foreign lawyers involved in the Foreign Oppositions.[6] Indeed, the Provisional Board's Liberian counsel testified that she was initially contacted in connection with this case by Reed Smith and was getting paid by "Eletson, Reed." Ex. 25 (Jan. 6, 2025 Hr'g Tr.) at 97:7-21, 171:9-12; *see* Docket No. 1193 at 373 (Reed Smith interim fee application seeking reimbursement for payments made to Lex Group Liberia). And Reed Smith has worked closely with Daniolos—who is represented in this Court by a former Reed Smith partner—and the other Greek counsel in connection with the Foreign Oppositions, regularly submitting Greek filings on the docket in this Court and the District Court and arguing that the Greek filings provide cause to refrain from enforcing the Court's orders. *See, e.g.,* Docket No. 1410 (attaching Daniolos

---

[6] Reed Smith represented Holdings and its subsidiaries for "more than thirty years" prior to the Effective Date (*see* Docket No. 235-2 (Baker Decl.) ¶ 15), which makes its ongoing efforts to obstruct its former clients' effective reorganization particularly egregious and any denial of its central role in those efforts not credible. No firm working on behalf of the Ordered Parties, other than Reed Smith, has the necessary cross-border expertise and institutional knowledge of Holdings' operations to orchestrate a coordinated worldwide campaign against implement Plan and this Court's orders. *See* Baker Decl. ¶¶ 3, 15.

declaration and Greek filings); SDNY, Case No. 028672 (LJL), Docket No. 61 (citing Daniolos' analysis of Greek law as basis to be heard on appeal).

20.     Reed Smith claims to just be the messenger, passing along "its very limited and superficial views of" foreign law and the Foreign Oppositions. RS Obj. ¶ 33.  But the reality is that Reed Smith's own position to this Court is that the Foreign Oppositions are "valid and appropriate" and should be deferred to based upon what the foreign laws require.  *Compare id.* ¶ 33 ("Reed Smith does not profess to have knowledge regarding Liberian and Greek law, and the rights afforded to parties and entities subject to those laws"), *with id.* ¶ 30 ("Movant's other filings in the foreign proceedings are also riddled with untruths and apparent violations of foreign law"). But Reed Smith is quite clearly not the messenger regarding the Foreign Oppositions. Even when purporting to speak only for itself, Reed Smith remains the fake Provisional Board's mouthpiece in this Court.  And it is this very course that constitutes Reed Smith's contempt: acting like it is just participating in limited litigation in American courts on the Provisional Board's behalf, while actually fueling and trying to justify the Foreign Oppositions.  *See* Docket No. 1407 (February 4, 2025 Reed Smith letter arguing that "Liberian and Greek proceedings will provide clarity as to the very issues addressed by Your Honor, including the extraterritorial effect of both the Confirmation Order and the Order and the present corporate form of Eletson Holdings, consistent with principles of international comity.").

21.     Simply put, Reed Smith's persistent argument in this Court, the District, and the Second Circuit that the Confirmation Order is not effective has been and continues to be used in the Foreign Oppositions as a basis to challenge recognition abroad.  *See* Ex. 4 (Initial Liberia Response) ¶¶ 1.1, 3.2, 3.9 (arguing pending American appeal is grounds to deny recognition in Liberia); Ex. 1 (Greek Petition) at 23, 34, 41

(arguing pending American appeal is grounds for appointment of "Provisional Board" in Greece); *id.* Ex. 18 (Daniolos Opposition to Holdings' Greek Petition) at 36-37 (describing "abusive" dismissal of American appeal as a ground for opposing recognition in Greece).

22.     Reed Smith relies on *In re World Parts, LLC*, 291 B.R. 248 (Bankr. W.D.N.Y 2003) for the proposition that an attorney lacks privity with its client sufficient to be held in contempt because its client failed to comply with a court order.  RS Obj. ¶ 14, 19. But *World Parts* is inapposite; it discusses when *a nonparty* to an order—there, the attorney—can be held in contempt.  *World Parts*, 291 B.R. at 254 ("for nonparties, a finding of civil contempt requires . . . a relationship of privity with the named party"). Here, Reed Smith is itself a party to the orders it is violating.  Reed Smith is a Related Party within the meaning of the Confirmation Order and Plan and, as the Court has expressly noted in its post-confirmation orders, Reed Smith is itself an Ordered Party bound to aid in the Plan's implementation.  *See, e.g.*, Consummation Order at preamble & ¶ 1 (defining Ordered Parties as including Reed Smith and ordering: "Pursuant to section 1142 of the Bankruptcy Code, the Debtors and their Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof.").[7]

23.     One would expect that a party would seek to distance itself from others' contemptuous actions when faced with a contempt motion.  That is the course that the

---

[7]     *World Parts* does provide that even nonparties to a court order can be held in contempt when they "act affirmatively to cause or facilitate a violation of that order."  291 B.R. at 254 (quoting 17 Am.Jur.2d Contempt § 62 (nonparty can be held in contempt if they "act in collusion or combination with the named defendants")).  Because here we have a named party to the subject order facilitating the Foreign Oppositions in collusion with other named parties—*i.e.*, the Ordered Parties writ large—a contempt finding is justified *a fortiori*.

debtors and their counsel took in *Navigator Gas* in distancing themselves from Cambridge's improper actions in the Isle of Man. *See In re Navigator Gas Transport PLC*, Case No. 03-10471, [Docket No. 1508] at 2 (Bankr. S.D.N.Y. Apr. 5, 2004) ("The Debtors do not support the positions taken by Cambridge and set forth in the Cambridge Petition. Having voluntarily availed themselves of United States law and submitted to the jurisdiction on the Court, the Debtors have no intention nor any interest in seeing the efficacy of this Court's rulings subverted.").

24. Reed Smith has done the opposite here, arguing that the Foreign Oppositions are "appropriate and valid proceedings" that "Exist to Counteract Movant's Abuse of this Court's Orders." RS Obj. ¶ 25 & p. 10.

25. Reed Smith's attempt to justify the Foreign Oppositions is premised on "international comity" and "the presumption against extraterritoriality," as well as their argument that *Navigator Gas* is distinguishable. RS Obj. ¶ 25. But the Court already considered and rejected each of these arguments, multiple times. *See* Consummation Decision at 36-43 (rejecting comity arguments), 33:9-17 (holding *Navigator Gas* instructive in this case); Consummation Order ¶¶ 1-2 (authorizing, requiring and directing compliance with the Confirmation Order and Plan); [Docket No. 1468], Ex. A (Feb. 20, 2025 Hr'g Tr.) at 92:11-19, 104:15-23 (relying on *Navigator* Gas); 102:2-9 (declining to revisit Reed Smith's comity argument); *see also* Sanctions Order ¶ I (finding no support for the proposition that a debtor who voluntarily submits to the jurisdiction of this Court can refuse to comply with the Confirmation Order by withholding the identity of the AOR).

26. Reed Smith also argues that the Greek Court orders justify the Foreign Oppositions. RS Obj. ¶ 25. Of course, Reed Smith neglects to mention that the Greek Court order was never recognized in Liberia, despite Reed Smith's own "extreme"

theory that a non-Liberian court order is needed to affect a Liberian corporation. Consummation Decision at 23:8-10, 42:19-20, 42:23-43:8.  In other words, Reed Smith is arguing that the Greek Court's decisions should be respected in the United States (even though they were obtained in violation of the Confirmation Order), while this Court's decisions should be ignored, in the United States.  Unfortunately for Reed Smith and the other Ordered Parties, the law is not on their side, and it is the Greek Court that lacks jurisdiction over these disputes.

27.  *Matter of Rimsat, Ltd.*, 98 F.3d 956 (7th Cir. 1996) is instructive.  In that case, the Seventh Circuit entertained a host of arguments made by the operating receiver of a company ("Hilliard") who, after chapter 11 proceedings were underway, (1) sought and obtained an order of a Nevis court purporting to change the nature of the receivership in ways that would wrest the bankruptcy court of jurisdiction and (2) attempted to use the post-petition Nevis proceeding in arguing that the bankruptcy court should dismiss or suspend the chapter 11 proceedings, including on comity grounds.  Speaking for the panel and rejecting the arguments, Judge Posner stated that the post-petition Nevis proceeding "bespoke an effort to derail the bankruptcy proceeding by a foreign proceeding instituted later" and that the bankruptcy court was not obligated "to abstain on the basis of a proceeding instituted after, and in an effort to defeat, the bankruptcy proceeding—strategic conduct that is not to be encouraged."  *Id.* at 961-62.  Rejecting the argument that comity favored deference to the post-petition Nevis proceeding, the Court held that:

> Hilliard's appeal to comity must fail.  Comity is a doctrine of adjustment, not a mandate for inaction.  In the case of parallel inconsistent proceedings in domestic and foreign courts, one must yield; there is no presumption that it is the domestic; and the bankruptcy judge did not abuse his discretion in deciding that the receivership proceeding in Nevis should be the one.

*Id.* The Ordered Parties' attempts to use the Foreign Oppositions to derail the Confirmation Order are comparable to the involuntary debtor's attempt in *Rimsat* to have the chapter 11 proceedings dismissed or suspended in favor of a foreign receivership. This Court should follow *Rimsat* and similar cases. *See, e.g., Masonic Hall & Asylum Fund v. Off. Comm. Unsecured Creditors of Refco Inc. (In re Refco Inc.)*, 2006 WL 3409088, at *8 (S.D.N.Y. Nov. 16, 2006) (refusing to "cause needless delay" by staying enforcement of its own order under comity principles in favor of subsequent stay obtained in the Cayman Islands, noting that "[t]he principle of comity has never meant categorical deference to foreign proceedings") (citing *In re Treco*, 240 F.3d 148, 157 (2d Cir. 2001)); *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006) (imposing anti-suit injunction against proceedings in Brazil potentially undermining pending American action and rejecting comity-based arguments that Brazilian proceedings should be allowed to proceed, noting: "defendants' petition to the Brazilian courts was . . . more of an attempt to defeat this Court's plain jurisdiction"); *cf. In re Millard*, 501 B.R. 644, 653 (Bankr. S.D.N.Y. 2013) (improper to collaterally attack Cayman Islands main proceeding through American Chapter 15 recognition proceedings).

28.     To be clear, the facts are even stronger here than in *Rimsat*, which involved a parallel proceeding. Here, we have a completed chapter 11 proceeding in which a final judgment has been rendered: the Confirmation Order confirming the Plan, binding the Ordered Parties to help carry out the Plan under sections 1141 and 1142 of the Bankruptcy Code. When dealing with a completed foreign proceeding as opposed to a concurrent parallel foreign proceeding, comity is a one-way street, and the already-rendered judgment functions as *res judicata*. *See Chigirinskiy v. Panchenkova*, No. 14-CV-4410 JPO, 2015 WL 1454646, at *13-15 (S.D.N.Y. Mar. 31, 2015) (rejecting "conten[tion]

that a *pending* case in a foreign jurisdiction is not a prerequisite to comity-based abstention" and rejecting comity argument because "all relevant proceedings in Russia are now over" and concluding that *res judicata* barred claim because Russian court had already rejected it) (emphasis added).

29.     If it has no involvement in the Foreign Oppositions to this Court's Confirmation Order as it claims, why does Reed Smith attempt to justify the Foreign Oppositions as "appropriate and valid"?  RS Obj. ¶ 25.  The answer, of course, is that Reed Smith is the architect of the Ordered Parties' entire campaign to effectively undo the Confirmation Order abroad.  Indeed, one would have to believe it was entirely coincidence that Reed Smith began making arguments to the District Court and this Court - about contesting the effective date, claiming that additional steps were still required under foreign law, and that the Confirmation Order needed to be recognized - on November 12, 2024, the very same date that the minority shareholders were seeking appointment of the Provisional Board.  Ex. 36 (Nov. 12, 2024 SDNY Hr'g Tr.) at 6:24-7:1-7, 7:13-8:3, 10:24-25, 11:6-10;  Ex. 37 (Nov. 13, 2024 Hr'g Tr.) 13:5-10, 34:4-7, 36:6-11, 37:1-12.

30.     Since confirmation, Reed Smith and the other Ordered Parties have been running a shell game with Holdings and the Court, where the Ordered Parties constantly switch hats, claiming ignorance as to the others' misconduct.  Reed Smith does so throughout its objection.  *See* RS Obj. ¶ 34 ("there is no basis to hold Reed Smith in contempt for actions undertaken by parties who it does not represent in foreign proceedings and over whom it has no control in those proceedings").[8]  But as the Court

---

[8]     This appears to be an admission by Reed Smith that the Provisional Board members are acting in contempt of the Court's orders.  Reed Smith's invocation of *World Parts* is particularly telling.  In that case, while the attorney was not held in contempt because he had "no management authority" over

has recognized, a law firm has an obligation to oversee its clients' compliance with court orders.  Docket No. 1468, Ex. A (Feb. 20, 2025 Hr'g Tr.) at 101:4-6; *see Hart v. Blanchette*, Case No. 12-CV-6458-CJS, 2019 WL 1416632, at *22 (W.D.N.Y. Mar. 29, 2019) ("It is axiomatic that attorneys must comply with court orders and have a responsibility to oversee their clients' compliance.") (collecting cases).

31.     If, in fact, Reed Smith has no influence over the Provisional Board such that it cannot stop the Provisional Board's contemptuous actions, the very cases cited by Reed Smith in its Objection indicate that Reed Smith should be seeking to withdraw its representation of the Provisional Board.  *See In re Hickory Mill Apartments of Columbus, Ltd.*, 133 B.R. 898, 901–02 (Bankr. S.D. Ohio 1991) ("If partnership counsel cannot convince management to alter its decisions for legal reasons and cannot defend those decisions, the appropriate action is to seek to withdraw as counsel for the partnership entity.") (cited in RS Obj. ¶ 22).

32.     But Reed Smith has not sought to withdraw.  Instead, it continues to improperly defend the actions of the former officers and directors of Holdings.

## C.  The Daniolos Firm

33.     The Daniolos Objection is meritless for many of the reasons stated above with respect to Reed Smith.  Mr. Daniolos has submitted multiple declarations to this

---

his debtor client, the debtor's directors and officers were themselves found in contempt because they had such authority and caused the debtor to violate the court order.  *World Parts*, 291 B.R. at 254-255.

If the Reed Smith Objection thus evinces Reed Smith throwing its clients under the bus for its own benefit, it would not be the first time.  Indeed, Reed Smith made and continues to make the same arguments (parroted by the Foreign Oppositions) in American courts like this Court—including in those specific limited proceedings in which Reed Smith actually admits it represents the Provisional Board—in direct conflict with its former client Holdings' interests without any consent and in blatant disregard of ethical rules to which it is subject.  *See* New York Rules of Professional Conduct § 1.9(a) (June 10, 2022) ("Duties to Former Clients": "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.").

Court about the status of the proceedings in Greece. Docket Nos. 1453, 1410, 1407. By his own admission, he and his firm are directly involved. And as the Court noted at the January 29, 2025 hearing in addressing whether they might be before the Court: "Well, but if the law firm in Greece is representing the debtor in this case, in this Chapter 11, or purporting to, then it then it might be a different issue." Ex. 39 (Jan. 29, 2025 Hr'g Tr.) at 45:20-22. If Daniolos is purporting to represent the Debtor entity and to participate in these proceedings, then it is a Related Party covered by the Confirmation Order and Plan.

### CONCLUSION

For the foregoing reasons, the Court should overrule the Objections and grant the Foreign Opposition Sanctions Motion in its entirety.

DATED:  March 7, 2025  
            New York, New York

TOGUT, SEGAL & SEGAL LLP  
By:

*/s/ Kyle J. Ortiz*  
KYLE J. ORTIZ  
BRYAN M. KOTLIAR  
BRIAN F. SHAUGHNESSY  
JOHN N. McCLAIN, III  
JARED C. BORRIELLO  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000

*Counsel for Eleston Holdings Inc.*

# APPENDIX A

Foreign Opposition Pleadings – Debtor and Related Party Statements Contrary to the Plan and Subsequent Orders

| The U.S. Bankruptcy Court Lacks Jurisdiction | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Greek Petition (11/11/24) | Former Minority Shareholders[1] | "ELETSON HOLDINGS is entitled to and has a direct legitimate interest to receive judicial protection, and . . . with the corresponding legal remedies provided before the Greek Courts, in order to appeal the judgment of the Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) to which it was subjected by the U.S. Bankruptcy Court, among other reasons also *due to lack of international jurisdiction* of the latter, in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council." | Ex. 1 at 27.[2] |
| Greek Petition (11/11/24) | Former Minority Shareholders | "[I]n the event that the (purported as) Creditors apply for the acknowledgment and enforcement of the above voluntary bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter is entitled to and has a direct legitimate interest in appearing and being represented before the competent Greek Courts and protests, otherwise and as an impediment to the acknowledgment of the above Bankruptcy Decision in Greece, the lack of international jurisdiction of the US Foreign Bankruptcy Court which issued the Bankruptcy decision." | Ex. 1 at 27. |

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Foreign Opposition Sanctions Motion or the documents that it incorporates by reference, as applicable.

[2] Exhibits cited to herein as "Ex. __" are attached to the Borriello Reply Declaration (Ex. 23-31) and the Declaration of Jared C. Borriello (Ex. 1-22) annexed to the Foreign Opposition Sanctions Motion [Docket No. 1459].

| The U.S. Bankruptcy Court Lacks Jurisdiction | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Greek Petition (11/11/24) | Former Minority Shareholders | "[The] Court should regulate and appoint a temporary management of the Company in order to manage the Company and to convene an extraordinary General Assembly for the election of a new Board of Directors:<br><br>….<br><br>• . . . . *to appeal, with the respective statutory legal remedies and means, before the Greek Courts, in order to challenge the Decision of Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) in which it was filed by the U.S. Bankruptcy Court for reasons of lack of international jurisdiction* of the latter in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council . . .<br><br>• . . . to appear and be represented before the competent Greek Courts *in order to oppose, otherwise and as an impediment to the recognition of the above Bankruptcy Decision in Greece, due to the inadequacy of the issuing party's international jurisdiction in the Bankruptcy Decision, that is, the foreign Bankruptcy Court of the U.S., and for their other claims in their favor*" | Ex. 1 at 33-35, 44, 48-49. |
| Greek Petition (11/11/24) | Former Minority Shareholders | "It is clearly concluded from the above that ELETSON HOLDINGS is entitled to and has a direct legitimate interest to receive judicial protection, and in particular to support the appeal against the above Bankruptcy Decision of the U.S. - Southern District of New York comprising Judge John P. MASTANDO, which is already filed, which confirms the Decision of Voluntary Bankruptcy (Chapter 11) of ELETSON HOLDINGS and its other companies of interest dated 10/25/2024, as well as the amended plan of reorganization of the Creditors before the New York Bankruptcy Court . . . . in order to appeal the judgment of the Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) to which it was subjected by the U.S. Bankruptcy | Ex. 1 at 27. |

| The U.S. Bankruptcy Court Lacks Jurisdiction | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| | | Court, among other reasons also due to lack of international jurisdiction of the latter, in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council.  In addition, in the event that the (purported as) Creditors apply for the acknowledgment and enforcement of the above voluntary bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter is entitled to and has a direct legitimate interest in appearing and being represented before the competent Greek Courts and protests, otherwise and as an impediment to the acknowledgment of the above Bankruptcy Decision in Greece, the lack of international jurisdiction of the US Foreign Bankruptcy Court which issued the Bankruptcy decision." | |
| Greek Petition (11/11/24) | Former Minority Shareholders | "Obtain judicial protection and be represented; so that, on the one hand, can support the appeal against the above Bankruptcy Decision, which is already issued, of the U.S. Bankruptcy Court - Southern District of New York comprising of Judge John P. MASTANDO which confirms the Voluntary Bankruptcy Decision dated 10/25/2024 (Chapter 11) of ELETSON HOLDINGS and its other companies of interest, as well as the amended plan for the reorganization of the Creditors before the New York Bankruptcy Court, as the relevant deadline for its exercise (of the appeal) would expire, as per the immediately above stated, on 11/08/2024, on the other hand to appeal, with the respective statutory legal remedies and means, before the Greek Courts, in order to challenge the Decision of Voluntary Bankruptcy dated 10/25/2024 (Chapter 11) in which it was filed by the U.S. Bankruptcy Court for reasons of lack of international jurisdiction of the latter in accordance with the provisions of Regulation 2015/848 of the European Parliament and of the Council." | Ex. 1 at 34. |
| Greek Petition (11/11/24) | Former Minority Shareholders | "In addition, in the event that the Creditors apply for the acknowledgment and execution of the above voluntary | Ex. 1 at 35. |

| The U.S. Bankruptcy Court Lacks Jurisdiction | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| | | bankruptcy decision in Greece, where ELETSON HOLDINGS is based in fact, the latter to appear and be represented before the competent Greek Courts in order to oppose, otherwise and as an impediment to the recognition of the above Bankruptcy Decision in Greece, due to the inadequacy of the issuing party's international jurisdiction in the Bankruptcy Decision, that is, the foreign Bankruptcy Court of the U.S., and for their other claims in their favor." | |
| January 17, 2025 Greek Injunction Petition | Provisional Eletson Holdings Inc.[3], Elafonissos Shipping Corp., Eletson Corp, Eletson Gas, Kastos SME, Kinaros SME, Fourni SME, and Kimolos SME | "Consequently, the Involuntary Bankruptcy decision dated 10/25/2024. . . .and the Amended Creditors' Restructuring Plan does not have any consequence as to [Eletson Holdings] in the Greek legal order, nor is it binding, and that [Eletson Holdings] has not been declared under the above decision under a bankruptcy regime and/or is place in any form of Restructuring, since the above U.S. Bankruptcy Court lacks jurisdiction, taking into account, that the Company's registered sat is in Greece." | Ex. 26 at 54-55. |
| Former Minority Shareholders' Greek Intervention Application (2/4/25) | Provisional Eletson Holdings Inc. and Former Minority Shareholders | "**Lack of jurisdiction of the U.S. Bankruptcy Court - Southern District of New York**, comprising of Judge John R. MASTANDO, both in respect of the judgment of the voluntary bankruptcy of Eletson Holdings and the other companies issued in New York on 10/25/2024, (Chapter 11), as well as the Order dated 11/04/2024 of the same as above bankruptcy court confirming the decision of voluntary bankruptcy dated 10/25/2024 (Chapter 11) of Eletson Holdings and the other companies and the amended Creditors' Restructuring Plan, as discussed in chapter B.1. herein." | Ex. 19 at 3, 52. |
| Former Minority Shareholders' | Provisional Eletson Holdings Inc. and | "Following the above and taking into account the fact that for more than forty years, the place where indeed the management of | Ex. 19 at 42, 55. |

---

[3]  "Provisional Eletson Holdings Inc." is used herein to indicate unauthorized foreign filings made in the name of Eletson Holdings Inc. at the direction of the Provisional Board, the Former Majority Shareholder, and/or the former directors of Eletson Holdings Inc.

| The U.S. Bankruptcy Court Lacks Jurisdiction | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Greek Intervention Application (2/4/25) | Former Minority Shareholders | the interests of the Company is exercised, s [sic] Greece and Piraeus, in particular, where the Company has offices, at 118 Kolokotroni St,,[sic] it follows that the exclusive jurisdiction for the initiation of the insolvency proceedings lies exclusively with the courts of Greece and in particular according to Greek law (Code of Civil Procedure, in conjunction with article 78 of Law 4738/2020 and article 51 of Law 2172/1993) the courts of Piraeus. " | |
| Former Minority Shareholders´ Greek Intervention Application (2/4/25) | Provisional Eletson Holdings Inc. and Former Minority Shareholders | "Therefore, the Voluntary Bankruptcy Decision issued in New York on 10/25/2024 for ELETSON HOLDINGS and the other companies by the U.S. Bankruptcy Court - Southern District of New York, comprising of Judge John R. MASTANDO, as well as the Order dated 11/04/2024 of the same as above Bankruptcy Court confirming the 10/25/2024 decision of voluntary bankruptcy (Chapter 11) of ELETSON HOLDINGS and the other companies, and the Amended Creditors Restructuring Plan *does not have any consequence as to the Company in the Greek legal order, nor does it bind, while the Company has not been declared under the above decisions in bankruptcy and/or in any form of Restructuring, since the above U.S. Bankruptcy Court lacks jurisdiction, taking into account, that the Company's registered seat is in Greece.*" | Ex. 19 at 42. |
| February 19, 2025, Greek Injunction Motion | Provisional Eletson Holdings Inc., Elafonissos Shipping Corp., Eletson Corp., Eletson Gas, Kastos SME, Kinaros SME, Fourni SME, and Kimolos SME | "Following the above and taking into account the fact that for more than forty years the place where the administration of the Company's interests has been exercised in an organised, permanent and continuous manner is Greece and in particular Piraeus, where the Company maintains offices at Kolokotroni Street No. 118, *it follows that the courts of Greece and in particular, according to Greek law (CCP in conjunction with Article 78 of Law 4738/2020 and Article 51 of Law 2172/1993), the courts of Piraeus have exclusive jurisdiction to initiate insolvency proceedings.*" | Ex. 31 at 23. |

| The U.S. Bankruptcy Court Lacks Jurisdiction | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| | | | |
| February 19, 2025, Greek Injunction Motion | Provisional Eletson Holdings Inc., Elafonissos Shipping Corp., Eletson Corp., Eletson Gas, Kastos SME, Kinaros SME, Fourni SME, and Kimolos SME | "Accordingly, the Chapter 11 Bankruptcy Judgement issued in New York on 25.10.2024. . . . Amended Creditors Plan or Reorganization do not have any effect on [Eletson Holdings] in the Greek legal order, nor are they binding on it, and the present [Eletson Holdings] has not been declared bankrupt and/or placed in any form of reorganization by virtue of the aforementioned decisions, since the aforementioned US Bankruptcy Court lacked jurisdiction, taking into account that the Company's registered office is located in Greece." | Ex. 31 at 24. |

| The Bankruptcy Cases were Filed in Bad Faith | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "That having made findings concerning *the bad faith actions of Murchinson and its affiliates*, the U.S. Bankruptcy Court nevertheless concluded that this conduct was not relevant to the issue of whether the Petitioning Creditors' Plan should be confirmed. The Bankruptcy Court found that its mandate under U.S. Bankruptcy Code Section 303 was limited to considering whether the Petitioning Creditors had engaged in bad faith in connection with proposing the Petitioning Creditors' Plan and accordingly did not consider fully the substantial evidence establishing Pach Shemen's bad faith conduct prior to and during the pendency of the bankruptcy proceedings. *While the Bankruptcy Court appears to have believed that it was precluded from looking at Pach Shemen's bad faith outside the very narrow issue of the proposal of the plan, this court is not so constrained and should refuse the enforcement of the bankruptcy judgment in Liberia, because was obtained by the misuse of laws and with such bad faith on the part of the Petitioner. This court is at liberty to decide whether the Petitioner's conduct as a whole prior to and during the pendency of the bankruptcy proceedings was done in bad faith, was unjust and inequitable,* and hence, a judgment obtained by such means should not be enforced in Liberia." | Ex. 4 ¶ 1.3. |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "The bankruptcy proceeding were initiated in bad faith. . . .As mentioned above and as determined by the Arbitrator Ariel E. Belen in his final arbitral award dated September 29, 2023, the conduct of Levona, as well as the affiliated companies Murchinson and the Petitioner which, according to the Arbitrator, are described as "each being the alter ego of the other" - towards the Respondent is entirely illegal, in breach of contract, unethical, and utterly in bad faith. . . .It misused the bankruptcy procedure to protect itself against a possible unfavorable arbitration award." | Ex. 4 ¶ 3.3. |
| Initial Response to | Provisional Eletson Holdings Inc. | "Following Levona's anti-contractual and bad-faith behavior, the Respondent and its subsidiary Eletson Corporation initiated arbitration | Ex. 4 ¶ 2.7. |

| The Bankruptcy Cases were Filed in Bad Faith | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Liberian Recognition Proceeding (12/16/24) | | "in New York against Levona on July 29, 2022, based on the arbitration clause contained in Article 12.14(a) of the LLCA." | |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "During the arbitration, serious illegalities and violations of good faith and fair dealing by Levona/Murchison were revealed, which occurred before it even acquired Blackstone's shares (units) in Eletson Gas, after the acquisition, and during the arbitration itself." | Ex. 4 ¶ 2.8. |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "Consequently, the petition for bankruptcy was not made due to true and genuine insolvency of the Respondent and for its restructuring for the equal and fair satisfaction of the creditors, but it was made a shield of protection of its alter ego Levona in case the arbitration award was issued against it." | Ex. 4 ¶ 2.11. |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "Subsequently, following the bad faith tactics of Levona and its affiliated companies Murchinson/Pach Shemen, on October 25, 2024, the Bankruptcy Court of New York, presided over by Judge John P. MASTANDO, approved Petitioner's September 19, 2024 plan and on November 4, 2024 , the court issued a confirmation order whose recognition is hereby sought, rejecting the objections of the Respondent and approving the reorganization plan proposed by the Creditors." | Ex. 4 ¶ 2.12. |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "Having made these findings concerning the bad faith actions of Murchinson and its affiliates, the U.S. Bankruptcy Court nevertheless concluded that this conduct was not relevant to the issue of whether the Petitioning Creditors' Plan should be confirmed. The Bankruptcy Court found that its mandate under U.S. Bankruptcy Code Section 303 was limited to considering whether the Petitioning Creditors had" | Ex. 4 ¶ 3.7. |

| The Bankruptcy Cases were Filed in Bad Faith | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| | | engaged in bad faith in connection with proposing the Petitioning Creditors' Plan, and accordingly did not consider fully the substantial evidence establishing Pach Shemen's bad faith conduct prior to and during the pendency of the bankruptcy proceedings. While the Bankruptcy Court appears to have believed that it was precluded from looking at Pach Shemen's bad faith outside the very narrow issue of the proposal of the plan, this court is not so constrained and should not accept to recognize in Liberia a bankruptcy judgment that was obtained by the misuse of laws and with such bad faith of the Petitioner. The court is at liberty to decide whether the Petitioner's conduct as a whole prior to and during the pendency of the bankruptcy proceedings was done in bad faith, was therefore unjust and inequitable, and hence, a judgment obtained by that means should not be enforced in Liberia." | |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "Because the U.S. Bankruptcy Court did not consider whether (or to what extent) the overall bad faith conduct of Murchison and Pach Shemen in planning and carrying out the scheme to seize control of the Respondent (and through it, Eletson Gas) by means of a multi-year conspiracy was egregious enough to warrant rejecting the entire campaign and denying Pach Shemen standing as the sole shareholder of Respondent, that issue has been left for the Liberian court to determine." | Ex. 4 ¶ 3.8. |
| Subsequent Response to Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. and Former Shareholders | "[H]aving made finding concerning the bad faith actions of Murchinson and its affiliates, the U.S. Bankruptcy Court nevertheless concluded that this conduct was not relevant to the issue of whether the Petitioning Creditors' Plan should be confirmed." | Ex. 11 ¶ 1.3. |

| The Bankruptcy Cases were Filed in Bad Faith | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Subsequent Response to Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. and Former Shareholders | "Consequently, the petition for bankruptcy was not made due to true and genuine insolvency of the Intervenors. . . . but it was made a shield of protection of its alter ego Levona in case the arbitration award was issued against it." | Ex. 11 ¶ 2.11. |
| Subsequent Response to Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. and Former Shareholders | "Subsequently, follow the bad faith tactics of Levona and its affiliated companies. . . ." | Ex. 11 ¶ 2.12. |
| Subsequent Response to Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. and Former Shareholders Trust | "The bankruptcy proceeding were initiated in bad faith. . . .As mentioned above and as determined by the Arbitrator Ariel E. Belen in his final arbitral award dated September 29, 2023, the conduct of Levona, as well as the affiliated companies Murchinson and the Petitioner which, according to the Arbitrator, are described as "each being the alter ego of the other" - towards the Respondent is entirely illegal, in breach of contract, unethical, and utterly in bad faith. . . .It misused the bankruptcy procedure to protect itself against a possible unfavorable arbitration award." | Ex. 11 ¶ 3.3. |
| Subsequent Response to Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. and Former Shareholders | "Having made these findings concerning the bad faith actions of Murchinson and its affiliates, the U.S. Bankruptcy Court nevertheless concluded that this conduct was not relevant to the issue of whether the Petitioning Creditors' Plan should be confirmed." | Ex. 11 ¶ 3.7. |
| Greek Petition (11/11/24) | Former Minority Shareholders | "During the arbitration, serious illegal acts and violations of morality by Levona/Murchinson were revealed, which occurred before they had even acquired the shares (units) of Blackstone in Eletson Gas, after the acquisition and during the course of arbitration." | Ex. 1 at 9. |

| The Bankruptcy Cases were Filed in Bad Faith | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Greek Petition (11/11/24) | Former Minority Shareholders | "Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, are liable to pay. . ." | Ex. 1 at 13. |
| Greek Petition (11/11/24) | Former Minority Shareholders | "That is, Levona through the alter ego of Pach Shemen LLC spent just US$2 million but sought repayment of US$183 million and filed for bankruptcy against her opposing party in the then pending ELETSON HOLDINGS Arbitration (!)." | Ex. 1 at 19. |
| Greek Petition (11/11/24) | Former Minority Shareholders | "Subsequently, and upon manipulations, in bad faith, of Levona and its affiliated companies, Murchinson/Pach Shemen, two decisions were issued on 10/25/2024 by the Bankruptcy Court of New York, consisting of John P. MASTANDO J, with which the oppositions of the alleged debtors were dismissed (ELETSON HOLDINGS, Agathonisos Finance LLC and Eletson Finance (US) LLC) against the claims of certain creditors (by Pach Shemen LLC; VR Global Partners L.P., Alpine Partners L.P.) and the reorganization plan proposed by the Creditors was approved." | Ex. 1 at 22. |
| Greek Petition (11/11/24) | Former Minority Shareholders | From a number of documents, and as already adjudicated by Judge-Arbitrator Ariel E. BELEN final arbitration decision award dated 09/29/2023, the conduct of Levona, as well as its affiliates Murchinson and Pach Shemen, for which, indeed, the aforementioned Arbitrator mentions characteristically that 'each is an alter ego of the other', against ELETSON HOLDINGS, is entirely illegal, unconventional, unethical and totally in bad faith. . . .Their bad faith conduct led to the bankruptcy of ELETSON HOLDINGS, fully manipulated by them, which, although it was vindicated in the Arbitration Award dated 29.09.2023, was brought to a state of purportedly voluntary bankruptcy by actions of Levona/Murchinson/Pach Shemen and the other companies of its interests. The manipulation, in bad faith, of the | Ex. 1 at 23. |

| The Bankruptcy Cases were Filed in Bad Faith | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| | | bankruptcy of the Company by Levona/Murchinson/Pach Shemen is proven by. . . ." | |
| Greek Petition (11/11/24) | Former Minority Shareholders | "Furthermore, another reason that makes the Company's bankruptcy manipulated and contrary to morality are the true causes and purpose for which involuntary bankruptcy petitions were filed. In particular, the above involuntary bankruptcy petitions were not filed for the purpose of financially restructuring Eletson Holdings, but were intended to gain a strategic advantage in the arbitration proceedings that had already been commenced between Eletson Holdings and Eletson Corporation on the one hand as plaintiffs, and Levona (an affiliate of Murchinson), on the other hand as defendant." | Ex. 1 at 25. |
| Greek Petition (11/11/24) | Former Minority Shareholders | "Finally, another reason that makes the bankruptcy of ELETSON HOLDINGS one in bad faith and manipulated, is that it was caused on the basis of disputed claims." | Ex. 1 at 26. |
| January 17, 2025 Greek Injunction Petition | Provisional Eletson Holdings Inc., Elafonissos Shipping Corp., Eletson Corp, Eletson Gas, Kastos SME, Kinaros SME, Fourni SME, and Kimolos SME | ". . . the conduct of Levona, as well as its affiliates Murchinson and Pach Shemen, for which, indeed, the aforementioned Arbitrator mentions characteristically that 'each is an alter ego of the other', against ELETSON HOLDINGS, is entirely illegal, unconventional, unethical and totally in bad faith." | Ex. 26 at 39. |
| February 19, 2025, Greek Injunction Motion | Provisional Eletson Holdings Inc., Elafonissos Shipping Corp., Eletson Corp, Eletson Gas, Kastos SME, Kinaros SME, | "The bad faith filing of a bankruptcy petition against ELETSON HOLDINGS by its opponent in the Arbitration, Levona and its other affiliated companies." | Ex. 31 at 19. |

| Pleading | Claimants | Relevant Language | Source |
|---|---|---|---|
| **The Bankruptcy Cases were Filed in Bad Faith** | | | |
| | Fourni SME, and Kimolos SME | | |
| February 19, 2025, Greek Injunction Motion | Provisional Eletson Holdings Inc., Elafonissos Shipping Corp., Eletson Corp, Eletson Gas, Kastos SME, Kinaros SME, Fourni SME, and Kimolos SME | "Subsequently, and following bad faith manipulations by Levona and its coconspirators, Murchinson/Pach Shemen, were issued on 25.10.2024 by the Bankruptcy Court of New York, consisting of Judge John P. MASTANDO, two judgments, which dismissed the objections of the alleged debtors (ELETSON HOLDINGS, Agathonisos Finance LLC and Eletson Finance (US) LLC) against the claims of certain alleged creditors (from Pach Shemen LLC, VR Global Partners L.P., Alpine Partners L.P.) and approved the Amended Creditor Plan of Reorganization." | Ex. 31 at 21. |
| February 19, 2025, Greek Injunction Motion | Provisional Eletson Holdings Inc., Elafonissos Shipping Corp., Eletson Corp, Eletson Gas, Kastos SME, Kinaros SME, Fourni SME, and Kimolos SME | "It was this bad faith behaviour that led to the bankruptcy of ELETSON HOLDINGS, which, although it was vindicated in the Arbitration Decision of 29.09.2023, was in a state of alleged voluntary bankruptcy due to the illegal and abusive actions of the current first and third defendants and other companies of their interests." | Ex. 31 at 46. |

| Challenging Enforcement of Plan / Other Rulings | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "That the Respondent's current Board of Directors have authorized Lex Group Liberia to file these returns challenging the enforcement of the judgment, because this court is at liberty to give or to refuse to give effect to the foreign judgment, which is sought to be enforced, if this court finds that to do so would be unjust and inequitable. The Supreme Court of Liberia in the case Turner V. Burnette, 24 LLR 212 (1975), held that "The Liberian Constitution has no such provision, and there is no statute or treaty with respect to the effect to be given a foreign judgment. In the absence of a special compact, no sovereign state is bound to give effect within its territory to a judgment rendered by the tribunals of another country; and it is at liberty to give or refuse effect to it as may be found just and equitable" [Emphasis supplied]. In the instant case, Respondent says that it would be unjust and inequitable to give effect to the foreign judgment sought to be enforced for the following factual and legal reasons." | Ex. 4 ¶ 1.2. |
| Initial Response to Liberian Recognition Proceeding (12/16/24) | Provisional Eletson Holdings Inc. | "The judgment sought to be recognized and enforced is the subject of an appeal that has not been determined. Whilst this appeal may not have automatically under US law the effect of stay of execution or enforceability, it is obvious that if the petition is upheld and the Petitioner is allowed to apply the judgment within Liberia and change the corporate structure and governess of the Respondent, then the above appeal will be in practice totally neutralized, it will have no realistic purpose to be judicially determined. The fact that a judgment in a case that is on appeal is enforceable by the US court does not mean that it is enforceable in Liberia." | Ex. 4 ¶ 3.2. |
| Subsequent Response to Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. and Former Shareholders | "[T]he December 20, 2024 Order by Judge Mastando was not for Adam Spears to act as foreign representative of the Co-Intervenor / Eletson Holdings Inc's in Liberia. . . . Rather it was for Adam Spears to be the sole foreign representative of the 'Reorganized Eletson Holding Inc.'" | Ex. 11 ¶ 3.23. |

| Challenging Enforcement of Plan / Other Rulings | | | |
|---|---|---|---|
| Pleading | Claimants | Relevant Language | Source |
| Greek Petition (11/11/24) | Former Minority Shareholders | "[A] temporary management of eight-member composition of the foreign shipping company "ELETSON HOLDINGS INC." must be appointed with an annual term of office . . . to administer the Company:  …. (**d**) In order to make a decision to appoint attorneys and to exercise on behalf of the Company "ELETSON HOLDINGS INC." all legal remedies  (Greek or foreign) and aids in the name and on behalf of the aforementioned company, in order to . . . *turn against the Voluntary Bankruptcy Decision of ELETSON HOLDINGS (Chapter 11) issued on 10/25/2024 in New York by the U.S. Bankruptcy Court - Southern District of New York comprising of John P. MASTANDO, as well as the Order of the same U.S. Bankruptcy Court - Southern District of New York dated 11/04/2024, which court consisted of Judge John P. MASTANDO, confirming the Decision of Voluntary Bankruptcy (Chapter 11), dated 10/25/2024, of ELETSON HOLDINGS and the other companies and the amended Creditors' reorganization plan . . .*" | Ex. 1 at 40-41. |
| Mot. to Strike in Subsequent Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. | "[N]either the board of [Eletson Holdings] nor the shareholders have at any time appointed or designated Mr. Adam Spears to act as its "foreign representative in Liberia" nor has he obtained such authorization form any other competent authority." | Ex. 14 ¶ 3. |
| Mot. to Strike in Subsequent Liberian Recognition Proceeding (1/9/25) | Provisional Eletson Holdings Inc. | "The judgement of the Bankruptcy court ordering the reorganization of [Eletson Holdings] has not been recognized in Libera or ordered enforced by any competent court in Liberia[.]" | Ex. 14 ¶ 4. |