**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC., et al., | Case No.: 23-10322 (JPM) |
| Debtors.[1] | (Jointly Administered) |

**REED SMITH LLP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ITS MOTION TO WITHDRAW ITS LIMITED REPRESENTATION OF
PROVISIONAL HOLDINGS**

---

[1] The Court has ordered the following footnote to be included in this caption: "Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On [March 5, 2025], the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on [March 5, 2025], all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119" (Dkt. 1515 ¶ 7).

## PRELIMINARY STATEMENT

1.      Over and over again, the various law firms hired by the Murchinson entities have cast aspersions on Reed Smith LLP ("Reed Smith"), making unsubstantiated and inaccurate claims about Reed Smith's representation of clients, its motives, and its purported involvement in foreign proceedings. In doing so, they have attacked Reed Smith's legitimate fee applications and filed four sanctions motions against Reed Smith without putting forward any evidence substantiating their claims of sanctionable conduct.

2.      Reorganized Holdings' *Objection To The Motion Of Reed Smith LLP To Withdraw Its "Limited" Representation Of "Provisional Holdings"* (Dkt. 1566) (the "Objection"), highlights the contradictory arguments that Reorganized Holdings has been asserting throughout these post-Plan Confirmation proceedings. Specifically, it:

- files contempt motions seeking joint and several liability against Reed Smith (Dkts. 1268, 1416, 1459), then claims it is inappropriate when Reed Smith defends itself (Objection ¶ 4);

- wants Reed Smith to stay in these proceedings so that it can (i) continue to advance arguments against Provisional Holdings, including that it does not exist (*see* Objection ¶ 5 & n.5), but then claims (ii) Reed Smith is acting inappropriately in carrying out its responsibilities in defending Provisional Holdings against those claims (Objection ¶¶ 12, 14); and

- wants Reed Smith to stay in these proceedings so that it can claim it has effectively served foreign individuals who are not Reed Smith's clients (Objection ¶ 3), then assert Reed Smith is secretly representing those individuals when Reed Smith corrects the record (Objection ¶ 4).

3.      Reorganized Holdings accuses Reed Smith of "gamesmanship" (Objection ¶ 5). In reality, Reorganized Holdings set up the pieces, the board, and an ever-shifting set of rules on its post-Plan Confirmation motions in order to claim "contempt" when Reed Smith legitimately defends itself or Provisional Holdings or seeks appropriate (and constitutionally protected) review of this Court's decisions.

-1-

4.     Faced with these attacks and in light of the fact that the tasks for which Reed Smith entered its appearance in these Bankruptcy Proceedings are complete, Reed Smith requests that the Court grant Reed Smith's *Motion To Withdraw Its Limited Representation Of Provisional Holdings* (Dkt. 1566) (the "Motion") (*see* Motion ¶ 4).

## FACTUAL BACKGROUND

### A.    Reed Smith Has Never Represented Any Eletson-Affiliated Individual Or Shareholder

5.     Once again, one of the Murchinson law firms has made unsubstantiated claims that Reed Smith "deliberately concealed its representation" of the individual directors or officers of the Eletson entities (Objection ¶¶ 1-2 & n.4). In doing so, *it cites to its own briefs and letters* (Dkt. Nos. 1272; 1350), a so-ordered stipulation with the US Trustee that makes *no findings* that Reed Smith represented any individual (Dkt. 1228), and a Declaration by Louis M. Solomon confirming that Reed Smith *never represented* any of the Eletson individuals (Dkt. 1215). None of these documents support its assertion. Incredibly, it also asserts that Reed Smith has been acting for the Family Unity Trust Company, Glafkos Trust Company, Lassia Investment Company (the "Majority Shareholders"), despite their representation by separate counsel throughout these entire bankruptcy proceedings. Although Reed Smith has refuted these allegations at length previously (*see* Dkts. 1013, 1019, 1350), we again briefly summarize the facts here for convenience.

6.      In connection with its retention application and accompanying declarations, Reed Smith disclosed all of its relevant contacts and connections with the former Debtors, their affiliates and parties in interest (*See* Dkts. 235, 261, 297, 330, and 386).

7.     At the behest of the Official Committee of Unsecured Creditors (the "Committee"), the Court ordered that parties each produce their engagement letters executed in connection with the bankruptcy, as well as for certain proceedings outside of the bankruptcy.

Accordingly, Eletson Holdings Inc. ("Holdings") produced its engagement letters including an engagement letter executed with Reed Smith in connection with Reed Smith's representation of Eletson Corporation ("Corp") and Holdings in the Arbitration proceedings (the "Arbitration Engagement Letter") (Dkt. 1272, Ex. A)—a retention that preceded these chapter 11 cases.

8.      The Arbitration Engagement Letter provides "We confirm that Reed Smith LLP will be pleased to act for Eletson Holdings Inc. and Eletson Corporation (and their respective affiliates) and Lascarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis (together, the 'Eletson Interests') in this matter, **on the terms of this letter**" (emphasis added). (Dkt. 1272 at 4 of 23).

9.      However, the Arbitration Engagement Letter makes clear that Reed Smith's "Client" is only two entities Holdings and Corp:

> Our client for purposes of our representation is Client (for the avoidance of doubt ***this shall include both entities*** defined as Client herein) as specifically identified in the engagement letter for the matter, ***and not***, unless expressly named in the engagement letter, any "Affiliates"; of Client. "Affiliates" of Client that are ***excluded*** from the meaning of Client include, but are not limited to (a) shareholders or constituent partners, members or other equity stakeholders, . . . (d) officers, (e) directors, (f) employees or (g) any other party related by family relationship, management position or capacity, contractual, cross-ownership or otherwise.

(Dkt. 1272 at 13 of 23).

10.      This definition of "Client" was specifically modified to clarify that there were **two** entities that were considered the "Client", and that other "Affiliates" were expressly excluded from the definition. Thus the "Client" (as defined) is separate and distinct from the "Eletson Interests" definition that Reorganized Holdings misleadingly emphasizes (*see* Dkt. 1013).

11.      The Eletson Interests, which includes the individual principals, were included only because of threats of litigation against them in their individual capacities. However, as set forth in the exclusion provision of the Arbitration Engagement Letter, should any of the Clients'

Affiliates (as defined) seek representation from Reed Smith, a subsequent discussion with Reed

Smith would be necessary to begin a new engagement (*see* Dkt. 1013).

12.     Notwithstanding this clear delineation on August 16, 2024, Petitioning Creditors

filed a letter (Dkt. 957) accusing Reed Smith of knowingly concealing its supposed

representation of the Principals from this Court. In response to the Petitioning Creditors' letter,

on August 19, 2024, the United States Trustee also filed a letter (Dkt. 968).

13.     Reed Smith responded on August 22, 2024 (Dkt. 1013), explaining that Reed

Smith has never represented, rendered invoices to, nor received any payment from the principals,

consistent with Reed Smith's prior disclosures and Declarations.

14.     On September 27, 2024, the United States Trustee filed a motion seeking the

disgorgement of Reed Smith's fees based on a claim that Reed Smith's disclosures had been

inadequate (Dkt. 1166). This motion was quickly settled via a stipulation between Reed Smith

and the United States Trustee, which the United States Trustee was satisfied was an effective

resolution to the purported issues of Reed Smith's disclosures (Dkt. 1216). Although Petitioning

Creditors and the Committee each filed a reservation of rights to Reed Smith's stipulation with

the United States Trustee (Dkts. 1222, 1224), they took no further action, preferring to continue

their unsubstantiated allegations and to allow additional fees to accrue, subsequently seeking

sanctions and using the Fee Objection to threaten Reed Smith (Dkt. 1350).

**B.     Reed Smith Properly Advanced Arguments Related To Provisional Holdings
        And Other Parties In Order To Defend Against Joint And Several Liability
        Sought In The Sanctions Motions**

15.     Reorganized Holdings' bad-faith arguments that Reed Smith has been advocating

for nonclients or appearing "on behalf of Provisional Holdings only when doing so serves its

objectives" (Objection ¶¶ 4, 12, 14) rewrite and misconstrue the manner in which Reorganized

Holdings brought its sanctions motions.

16.    On November 25, 2024, Reorganized Holdings filed its *Motion For An Order Imposing Sanctions* (Dkt. 1268) (the "November 25 Motion") against Reed Smith, the Majority Shareholders; the existing person of record at the address of record of Holdings on file with the Liberian International Ship & Corporate Registry (the "AOR"); Elafonissos Shipping Corporation, and Keros Shipping Corporation; unspecified former officers and directors (together, the "Unspecified Former D&Os"); as well as Daniolos Law Firm ("DLF"). Along with the November 25 Motion, Reorganized Holdings submitted a proposed order (the "Proposed Order") seeking coercive and compensatory sanctions ***jointly and severally*** against all the named respondents for past conduct (November 25 Motion, at Ex. A). Neither the November 25 Motion nor the Proposed order originally named Provisional Holdings as a respondent, but Reorganized Holdings later sought relief against the ***Debtors***, *i.e.*, Provisional Holdings, in connection with the November 25 Motion.

17.    Reed Smith was faced with an impossible choice: address issues concerning parties it did and does not represent, or risk being held liable for the conduct of nonclient parties over whom it had no control and who Reed Smith believed in good faith had not been served. Given the risks and potential impact of a decision on Provisional Holdings—whom Reed Smith suspected was the true target of the November 25 Motion—Reed Smith filed its opposition on December 10, 2024, which included substantive arguments and a note regarding service deficiencies (Dkt. 1287)

18.    On December 27, 2024, without prior leave of Court, Reorganized Holdings filed a revised proposed order (the "Revised Proposed Order"), changing the parties against whom it sought relief and doubling down on its attempts to hold Reed Smith liable for the conduct of others (Dkt. 1330 at Ex. A). Specifically,

-5-

- Paragraph 1 of the Revised Proposed Order sought to add Provisional Holdings, despite never having named it as a respondent on the motion: "Confirmation and Plan are binding on the *Former Debtors*" (*id*. at ¶ 1)— defined as including Eletson Holdings Inc. and distinct from Reorganized Holdings (*see id.* at 1 & n.1); and

- Paragraph 6 of the Revised Proposed Order modified the initial proposed sanctions from joint and several liability of the respondents in the amount of $100,000, to $20,000 from each respondent ***creating independent liabilities for each respondent for the conduct of other respondents*** (*id*. at ¶ 6).

19.    On December 31, 2024, Reed Smith opposed the Revised Proposed Order (Dkt. 1338). On January 2, 2025, Reorganized Holdings moved its target again, now purportedly seeking "sanctions only to the extent that the Violating Parties fail to comply with the Revised Proposed Order, as opposed to sanctions for the Violating Parties' prior conduct (for which Eletson Holdings reserves it right to seek sanctions at a later date)" (Dkt. 1339).

20.    This change in the Proposed Order and Revised Proposed Order suggested that Reorganized Holdings had withdrawn the request for a finding of contempt and/or sanctions for past conduct. If true, this representation negated the need for Reed Smith's participation in the January 6, 2025 evidentiary hearing, given that all of Reorganized Holdings' allegations about Reed Smith's past conduct had been withdrawn and Reorganized Holdings did not intend to put forward any evidence to suggest Reed Smith had the capacity to carry out the relief it sought. Reed Smith raised these points at the evidentiary hearing (Dkt. 1382, ("1/6/25 Hr'g Tr.") 8:10-9:9, 22:1-23:2).

21.    Nonetheless, Reorganized Holdings insisted on going forward with the hearing (1/6/25 Hr'g Tr. 1-17), bearing out Reed Smith's prudence in anticipating Reorganized Holdings' arguments against Provisional Holdings and making the appropriate substantive arguments. And, notwithstanding its assertions that "there is only one Eletson Holdings," Reorganized Holdings expressly recognized that Reed Smith has a "client" (*id*. at 13:10-13,

14:3-6), asserted that Reorganized Holdings has "the authority to direct and control the ***former***

***debtors***," (*id.* at 16:25), and stated that Reorganized Holdings was "trying to enforce [the

Confirmation Order] ***on the debtor***" (*id.* at 34:25).

22.    Following the January 6 hearing, Reorganized Holdings again took the position

that Provisional Holdings exists, by asking the Court to make findings against Provisional

Holdings, using the locution "the Former Debtors (calling themselves 'Provisional Holdings' or

the 'Provisional Board')" (Dkt. 1355 ¶¶ 142, 148). The "Debtors" and "Former Debtors" were

named alongside "the Former Shareholders, the Former Board, and the Former Officers"

(*id.* ¶ 148), making clear that the "Former Debtors"—Provisional Holdings—is a distinct entity

against whom Reorganized Holdings sought relief.

23.    On January 24, 2025, the Court issued its decision on the November 25 Motion.

Later that day, Reorganized Holdings submitted an amended proposed order to the court which

*specifically included Debtors* as separate from the defined "Related Parties":

> The ***Debtors*** and the Related Parties, including without limitation, the Ordered Parties,
> are authorized, required, and directed to take all steps reasonably necessary as requested
> by Holdings to unconditionally support the effectuation, implementation, and
> consummation of the Plan, including, but not limited to, by no later than seven (7) days
> from the date of the entry of this Order (the "<u>Compliance Deadline</u>"), taking all steps
> reasonably necessary to update or amend (a) Holdings' AOR to reflect that Adam Spears
> is Holdings' AOR and (b) Holdings' corporate governance documents on file with
> LISCR as directed by Holdings.

(Ex. A, 1/24/2025 E-mail to Chambers and Attached Proposed Order, ¶ 2) (emphasis added).

24.    On January 29, 2025, the Court held a conference regarding the submitted

proposed orders. During that conference, it held: "The order will apply to who it applies to, and it

will be served on counsel. It will be served on Reed Smith. Reed Smith also represents

Provisional Holdings, which, the parties will argue whatever that means," (Dkt. 1425, ("<u>1/29/25</u>

<u>Bankr. Tr.</u>") 43:11-15). That same day, the Court entered its *Order In Support Of Confirmation*

*And Consummation Of The Court-Approved Plan Of Reorganization* ("Consummation Order"),
which included the very language differentiating between "Debtors" and "Related Parties" in
Reorganized Holdings' January 24, 2025 proposed order (Dkt. 1402 ¶ 2).

25.     Following entry of the Consummation Order, Reorganized Holdings brought
another sanctions motion on February 6, 2025 (the "February 6 Motion") (Dkt. 1416). Again,
Reorganized Holdings sought joint and several liability.

26.     Reorganized Holdings again declined to bring its February 6 Motion against
Provisional Holdings, stating that this Court and the District Court had held that Provisional
Holdings does not exist (February 6 Motion ¶ 25). Thus, Reed Smith submitted its opposition on
its own behalf, still cognizant of Reorganized Holdings' request for joint and several liability,
and the fact that Reorganized Holdings might again change the requested relief to target
Provisional Holdings (*see* Dkt. 1440).

27.     On February 20, 2025, the Court declined to sanction Reed Smith, instead
directing Reed Smith to submit a certification regarding the identity of the AOR and that it had
"informed the purported Provisional board, whose members were identified at the January 24th
bench ruling . . .  that the purported Provisional board, Mr. Hadjieleftheriadis, and the former
directors must instruct the AOR, one, to communicate with and take direction from Reorganized
Eletson Holdings, two, to update or amend the AOR as directed by Reorganized Holdings, and
three, to update or amend Holdings' corporate governance documents on file with LISCR as
directed by Holdings." (Dkt. 1505, ("2/20/25 Hr'g Tr") 105:10-109:6).

28.     The Court also found that "service by Verita and Togut by direct mail and email
to former directors, shareholders, and their respective attorneys [*i.e.* DLF and Sidley Austin

LLP] to be sufficient notice" (2/20/25 Hr'g Tr. 92:4-5 (citing affidavits of service at 1406, 1408, 1428, 1429) (listing DLF and Sidley Austin as attorneys for these parties)).

29.    Reed Smith submitted the required certification (Dkt. 1475) and was not sanctioned (Dkt. 1495). Notwithstanding this fact, on February 19, 2025, Reorganized Holdings *again* sought contempt and sanctions against the "Ordered Parties," defined to include Reed Smith under the Sanctions Motion and Consummation Order, on a joint and several liability basis (Dkt. 1459 ("February 19 Motion")). Reed Smith filed a response on March 4, 2025 (Dkt. 1508). Again, Reed Smith was candid with the Court in that it was compelled to address certain arguments because of Reorganized Holdings' "attempt to hold Reed Smith jointly and severally liable for actions as to which it has no role" (Dkt. 1508 ¶ 24).

30.    On March 12, 2025, the Court heard argument on the February 19 Motion. During that hearing, Reed Smith raised for the Court the issues it was facing in representing itself and its client Provisional Holdings (Dkt. 1564, ("3/12/25 Hr'g Tr.") 34:12-40:25). Notwithstanding Reorganized Holdings' assertions that Provisional Holdings is a "coordinated group of individuals," (Objection at 3 n.5), this Court has determined that Provisional Holdings has sufficient independent existence to be held in contempt, and that its existence is separate from "the Purported Provisional Board" (Dkt. 1537) ("As a result of the Violating Parties' violations of this Court's orders and this Court's finding of contempt, the Court hereby imposes coercive monetary sanctions in the amount of $5,000 per party per day against . . . (iii) Purported Provisional Holdings, (iv) the Purported Provisional Board, . . .").

31.    As the facts demonstrate, Reed Smith's representation and arguments throughout all of the contempt motions have been in direct response to relief sought by Reorganized

Holdings or back-door arguments it has made against Provisional Holdings through contempt motions against Reed Smith alone.

### C. Reed Smith's Appearances And Arguments On Behalf Of Provisional Holdings Have Consistently Been On Behalf Of Provisional Holdings, Not Any Individual

32.    Reorganized Holdings asserts that Reed Smith has "consistently advocated for its true clients in its pleadings, at hearings, and in numerous letters far beyond this scope" (Objection ¶ 14). A simple review of the cited documents reveals that this is incorrect.

33.    Each and every document cited by Reorganized Holdings either: (1) falls within one of the enumerated limitations on Reed Smith's representation (*see* Dkts. 1262, 1293, 1313, 1354, 1410, & 1448 Ex. A (filings and letters regarding issues affecting the appeal pending in the Second Circuit), Dkt. 1426 (related to the joint and several liability allegations in which Reed Smith was named as a respondent), Objection Ex. 10 (related to required scheduling notifications submitted on behalf of Reed Smith in Case No. 25-445 (document turnover appeal) and Provisional Holdings in Case No. 25-176 (dismissal of Provisional Eletson Holdings' appeal from the Bankruptcy Court))); or (2) relates to arguments made on behalf of Eletson Gas LLC, who is not subject to the Motion (Objection, Ex. 8, 1/3/25 Hr'g Tr. 32:2-7; *id.* Ex. 9, 3/25/25 Hr'g Tr. 22:24-23:16).

34.    Finally, Reorganized Holdings misconstrues Judge Liman's comments in the recent Opinion and Order Denying the Stay Motion (Dkt. 1561 Ex. A ("3/24 District Court Decision"). He did not hold that Reed Smith represented any individual, in fact, he states the opposite: "Reed Smith reported to and owed a duty of loyalty to Eletson Holdings, a distressed company whose main creditor was Pach Shemen" (3/24 District Court Decision at 29).

## ARGUMENT

### I.    REORGANIZED HOLDINGS HAS ARTICULATED NO VALID REASON WHY REED SMITH SHOULD NOT BE PERMITTED TO WITHDRAW

#### A.    Reed Smith's Termination Is Permissible Under Local Rule 1.4(c)(3)

35.    Reorganized Holdings' principal argument that Reed Smith cannot end its representation under Local Rule 1.4(c)(3) fails to address that Reed Smith's limited tasks for which it was appointed have come to an end in these Bankruptcy Proceedings.

36.    As noted in the Motion, Reed Smith's limited scope of representation of Provisional Holdings pertained to: "(i) responding on behalf of Reed Smith to all motions and applications in which Reed Smith itself has been named as a party, including the turnover application in the District Court; (ii) any appeal from this Court's January 29, 2025 Order [Dkt No. 1402], and (iii) the pending appeal to the Second Circuit from Judge Liman's dismissal of Provisional Eletson Holdings' appeal from the Bankruptcy Court (*see In Re: Eletson Holdings Inc.,* Case No. 25-176) [*see* Dkt. 1465]" (Motion ¶ 5). Consistent with those tasks, Reed Smith has (1) responded to the sanctions motions on its own behalf (Dkt. 1287, 1434, 1440, 1508); (2) filed notices of appeal regarding the January 29, 2025 Order and its follow-on sanctions orders (Dkt. 1411; 1537[2]); (3) made filings to ensure review by the Second Circuit of Judge Liman's dismissal would be protected (*e.g.,* Dkts. 1262, 1293); and (4) apprised the Court of matters affecting the pending Second Circuit appeal (*e.g.,* Dkts. 1313, 1354, 1410).

37.    As of the scheduled hearing date on this Motion, Reed Smith will have completed all tasks necessary in the Bankruptcy Court related to its limited engagement of Provisional Holdings. Accordingly, pursuant to Local Rule 1.4(c)(3), Reed Smith's representation in these Bankruptcy proceedings may terminate without leave of the Court.

---

[2] Reed Smith anticipates finalizing and filing the required statement of issues and designation of items to be included in the record on appeal prior to withdrawal.

-11-

**B. Reed Smith's Withdrawal Will Not Disrupt The Bankruptcy Proceedings**

38.    Should the Court find that an Order of the Court is necessary for withdrawal, it should issue such an order as there is good cause to do so and Reed Smith's withdrawal will not disrupt these proceedings. *See Thekkek v. LaserSculpt, Inc.*, 2012 U.S. Dist. LEXIS 7646, *4 (S.D.N.Y. Jan. 23, 2012) ("The Court thus considers two issues in determining the motion: 'the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding.'")

39.    As stated above, Reed Smith's departure will not cause disruption. There is nothing left for Reed Smith to do on behalf of Provisional Holdings in this Court. There are no pending motions against or by Provisional Holdings and Reed Smith has already carried out its obligations in submitting notices of appeal related to the January 29 Order and related sanctions against Provisional Holdings (Dkt. 1411; 1537).

40.    Given Reorganized Holdings' arguments that it has "been opposing Reed Smith's purported representation of Holdings, Provisional Holdings, and other company entities for months" (Objection at 8 n.8)—and even asserted that Reed Smith was acting unethically in continuing to represent Provisional Holdings (Dkt. 1314 at 3)—it is inconceivable for Reorganized Holdings to object to Reed Smith's withdrawal now. Reorganized Holdings argues that Reed Smith cannot "both relinquish its role in this Court and continue pressing appeals that originate from it" (Objection ¶ 6). This argument ignores the fact that parties often have separate counsel in appeal proceedings. Indeed, Goulston & Storrs PC appears to be representing Reorganized Holdings in the Second Circuit appeal of the Plan Appeal dismissal. *In Re: Eletson Holdings Inc.,* Case No. 25-176, Dkt. 12.1.

41.    Reorganized Holdings' arguments that the Motion is "ploy" "by Reed Smith and its clients to . . . evade service of (likely) additional motions" (Objection ¶ 2), are unavailing. As has been demonstrated to this Court over and over again, Reed Smith does not represent any

individuals, coordinated or not (*see* Fact § A, *supra*), and has never accepted service on their

behalf or made arguments outside of Reed Smith's potential joint and several liability for their

conduct (*see* Fact § B, *supra*). In any event, the Court held at the February 20, 2025 hearing that

Reorganized Holdings properly effectuated service to former directors and shareholders via

email, mail, and service on Sidley Austin and DLF, not Reed Smith (2/20/25 Hr'g Tr. 92:4-5

(citing affidavits of service at 1406, 1408, 1428, 1429) (listing DLF and Sidley Austin as

attorneys for these parties)).

## II.    REED SMITH SHOULD NOT BE SUBJECT TO CONTINUOUS SANCTIONS MOTIONS FOR DEFENDING PROVISIONAL HOLDINGS

42.    Reorganized Holdings requests that the Court deny Reed Smith's withdrawal until

replacement counsel can be identified—replacement counsel for ***an entity that Reorganized***

***Holdings insists does not exist***. Reorganized Holdings cannot have it both ways. Having

repeatedly argued to the Court that it should refuse to recognize or entertain argument from

Provisional Holdings, Reorganized Holdings now asserts that that this allegedly non-existent

entity must have counsel (Objection ¶ 18) ("This is particularly important because Provisional

Holdings purports to be an entity and must be represented by counsel").

43.    Reorganized Holdings' gamesmanship is clear: It asserts that Provisional

Holdings must have counsel not for the purpose of that counsel actually representing Provisional

Holdings here, but solely so that there will be someone to be served with motions seeking further

sanctions against a purportedly nonexistent entity, and someone to be sanctioned for attempting

to respond to any such motions.

44.    Accordingly, to the extent the Court denies Reed Smith's motion to withdraw

subject to finding new counsel, the Court should permit Reed Smith to actually defend

Provisional Holdings without the constant threat of sanctions motions for doing so.

III.     **AN ORDER REQUIRING DISCLOSURE OF SOURCE OF PAYMENT FOR LEGAL FEES AS A CONDITION OF WITHDRAWAL IS IMPROPER**

45.     Reorganized Holdings' request that Reed Smith disclose its fee arrangements as a condition of its withdrawal should be denied. Reorganized Holdings has cited no authority to support that such a proposition would be appropriate on a withdrawal motion. Nor has Reorganized Holdings sought discovery in connection with an adversary proceeding or contested matter requesting regarding information, which would need to be properly issued and evaluated under the Federal Rules of Civil Procedure. *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[O]nce an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure.").

46.     However, even if Reorganized Holdings were to issue such a discovery request, courts in this circuit have declined to compel parties to produce agreements regarding litigation financing, heavily scrutinizing their relevance to the claims made in the case. *See Kaplan v. S.A.C. Capital Advisors, L.P.,* 141 F. Supp. 3d 246, 247-48 (S.D.N.Y. 2015) (litigation financing discovery denied over an argument in shareholder litigation that agreement went to the adequacy of counsel); *Hybrid Ath., LLC v. Hylete, LLC*, 2019 U.S. Dist. LEXIS 148245, *36 (D. Conn. Aug. 30, 2019) (finding no meaningful purpose to litigation financing or fee related discovery that would be relevant or proportional to the claims of the case). The Court should deny Reorganized Holdings' request.

IV.     **THE COURT SHOULD DENY REORGANIZED HOLDINGS' REQUESTS FOR THE PROPOSED ORDER**

**A.  The Court Should Not Include Any Reservation Of Rights**

47.     Reorganized Holdings improperly requests that the Court include in any order granting the Motion an express reservation for potential claims or causes of action against Reed Smith "whether arising before or after the Effective Date" (Objection ¶ 23). The Court should

reject this request. If Reorganized Holdings wishes to reserve its rights, it can file a separate

statement (*see, e.g.,* Dkts. 1222, 1224) (Petitioning Creditors and Committee reservation of rights

to Reed Smith's stipulation with the United States Trustee)

### B. The Court Should Not Enter An Order Regarding Use Of Client Files While The Issue Is Pending Before The Second Circuit

48.     Finally, the Court should deny Reorganized Holdings' request that the Court

condition Reed Smith's withdrawal on a prohibition against using purported "client confidential

information of Holdings or its affiliates and subsidiaries" (Objection ¶ 25). This request is an

improper end run around proceedings that are already under way in the Second Circuit in the

turnover proceeding. *See Eletson Holdings Inc. v. Levona Holdings Ltd.* Case No. 25-445) and

Reorganized Holdings' arguments are more properly addressed there.

### CONCLUSION

For the foregoing reasons, the Court should grant Reed Smith's Motion.

DATED:    New York, New York
          March 31, 2025

                              **REED SMITH LLP**

                              */s/ Louis M. Solomon*
                              Louis M. Solomon
                              599 Lexington Avenue
                              New York, NY 10022
                              Telephone: (212) 251-5400
                              Facsimile: (212) 521-5450
                              E-Mail: lsolomon@reedsmith.com

                              *Reed Smith LLP*

# EXHIBIT A

| | |
|---|---|
| **From:** | Leila Ebrahimi <lebrahimi@teamtogut.com> |
| **Sent:** | Friday, January 24, 2025 1:23 PM |
| **To:** | JPM.orders@nysb.uscourts.gov |
| **Cc:** | Bryan Kotliar; Kyle Ortiz; John McClain; Brian Shaughnessy; Jared Borriello; Amanda Glaubach; Solomon, Louis M.; William E. Curtin; Eletson Bankruptcy Team (S); j.markianos@daniolos.gr; David Herman; Stephen Zide; Moss, Tina N. (Perkins Coie); Bae, John; Haney, Owen Sargent |
| **Subject:** | In Re Eletson Holdings Inc. Case No. 23-10322 (JPM) Submission of Sanctions Order Related Docket Nos. 1268, 1330 |
| **Attachments:** | Amended Proposed Sanctions Order (1 24 25) for submission final.docx; Amended Proposed Sanctions Order (1 24 25) for submission final.pdf; redline - TSS Sanctions Order (1 24 vs 12 27) for submission.pdf |

**External E-Mail - FROM lebrahimi@teamtogut.com <lebrahimi@teamtogut.com>**

 **This message needs your attention**
• This is their first mail to some recipients.

Report or Mark Safe

Powered by Mimecast

Dear Chambers,

Consistent with the Court's direction following today's status conference and ruling on the motion [Docket No. 1268] (the "Motion"), we respectfully submit a copy of the further revised proposed order (the "Revised Proposed Order") on the Motion in MS Word and PDF formats. For the Court's convenience, we are also attaching a redline of the Revised Proposed Order against the previous version filed at docket number 1330.

We respectfully request that the Court enter the Revised Proposed Order in the form attached to this email, should you have any questions, please do not hesitate to contact the undersigned by phone at 201-961-3262 or email at lebrahimi@teamtogut.com. Thank you.

Respectfully submitted,

Leila Ebrahimi

—
**Leila Ebrahimi**
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335 | New York, NY 10119
Direct: +1 212 201 5583 | Mobile: +1 201 961 3262
lebrahimi@teamtogut.com | togutlawfirm.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                          :
In re:                                    :        Chapter 11
                                          :
ELETSON HOLDINGS INC., et al.,[1]         :        Case No. 23-10322 (JPM)
                                          :
                                          :        (Jointly Administered)
                            Debtors.      :
                                          :
------------------------------------------------------------x

### ORDER IN SUPPORT OF CONFIRMATION AND CONSUMMATION OF THE COURT-APPROVED PLAN OF REORGANIZATION

Upon the motion [Docket No. 1268] (the "Motion")[2] of Eletson Holdings Inc., as

reorganized ("Holdings"), for entry of an order (this "Order") against Holdings' (a) existing

person of record at the address of record (the "AOR") currently on file with the Liberian

International Ship & Corporate Registry ("LISCR") and (b) former shareholders[3] (the "Former

Shareholders"), officers and directors (together, the "Former D&Os"), and counsel, including

Reed Smith LLP ("Reed Smith"), as well as counsel for the Former D&Os at Daniolos Law Firm

("Former D&Os Counsel" and, together with the AOR, the Former Shareholders, the Former

D&Os, and Reed Smith, the "Ordered Parties"), holding the Ordered Parties in civil contempt,

imposing monetary sanctions upon the Ordered Parties, and granting related relief; and the Court

---

[1]   The Debtors in these chapter 11 cases are:  Eletson Holdings Inc. ("Holdings"), Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[3]   The Former Shareholders are comprised of the following five entities: (a) Family Unity Trust Company ("Family Unity"), (b) Glafkos Trust Company ("Glafkos"), (c) Lassia Investment Company ("Lassia" and, together with Family Unity and Glafkos, the "Former Majority Shareholders"), (d) Elafonissos Shipping Corporation, and (e) Keros Shipping Corporation.

having jurisdiction to consider the Motion and relief requested therein pursuant to 28 U.S.C.

§§ 157 and 1334, the Amended Standing Order, 11 U.S.C. §§ 105 and 1142, and the Court's

inherent jurisdiction to interpret and enforce its own orders (including the Confirmation Order

directing the implementation of the Plan); and consideration of the Motion and relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having the

authority to enter a final order consistent with Article III of the United States Constitution; and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

sufficient notice of the Motion having been provided; and it appearing that no other or further

notice need be provided; and it appearing that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, all parties in interest, and Holdings; and the

Court having considered the Motion, the objections thereto filed by the Daniolos Law Firm

[Docket No. 1285], Reed Smith [Docket No. 1287] and Sidley Austin LLP, on behalf of the

Former Majority Shareholders [Docket No. 1291] (collectively, the "Objections"), the reply in

support of the Motion filed by Holdings [Docket No. 1299], and the Committee's statement in

support of the Motion [Docket No. 1301], all testimony and evidence admitted into the record of

the trial held on January 6, 2025, and all of the post-trial briefing submitted in connection

therewith; and, for the reasons set forth in the Court's oral ruling on the Motion at the status

conference held on January 24, 2025 (the "Oral Decision"); and this Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and all Objections having been overruled; and upon all of the proceedings had before the

Court and after due deliberation and sufficient cause appearing therefor,

2

**IT IS HEREBY FOUND AND DETERMINED THAT:**[4]

      A.      The Effective Date (as defined in the Plan) of the Plan occurred on November 19, 2024.

      B.      On the Effective Date, all of the Former D&Os, including, without limitation, Vasilis Hadjieleftheriadis, Konstantinos Hadjieleftheriadis, Ionnis Zilakos, Emmanuel Androulakis, Vassilis Kertiskoff, Eleni Karastamati, Panagiotis Konstantaras, Laskarina Karastamati, Eleni Vandorou, Andrianos Psomadakis-Karastamatis, Panos Paxinos, Eleni Giannakopoulou, and Niki Zilakos were deemed to resign or were terminated as set forth in Section 5.10 of the Plan.

      C.      From and after the Effective Date, the members of the board of directors of Holdings appointed pursuant to the Confirmation Order and the Plan, were Adam Spears, Leonard Hoskinson, and Timothy B. Matthews (the "New Board").

      D.      Also on the Effective Date, all outstanding equity interests in Holdings, including any equity interests owned by the Former Shareholders, were cancelled, extinguished, and discharged, and the new equity interests in Holdings were issued pursuant to the Plan and Confirmation Order.

      E.      Pursuant to sections 1141 and 1142 of the Bankruptcy Code, the Confirmation Order and Plan are binding on the Debtors and their Related Parties (as defined in the Plan),[5] including, without limitation, the Ordered Parties.

---

[4]    The findings and conclusions set forth herein and in the Oral Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014, and are incorporated by reference as though fully set forth herein.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

[5]    As set forth in Section 1.124 of the Plan,

        "***Related Parties*** means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Pursuant to section 1142 of the Bankruptcy Code, the Debtors and their Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof.

2.      The Debtors and the Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to take all steps reasonably necessary as requested by Holdings to unconditionally support the effectuation, implementation, and consummation of the Plan, including, but not limited to, by no later than seven (7) days from the date of the entry of this Order (the "Compliance Deadline"), taking all steps reasonably necessary to update or amend (a) Holdings' AOR to reflect that Adam Spears is Holdings' AOR and (b) Holdings' corporate governance documents on file with LISCR as directed by Holdings.

3.      Holdings shall serve a copy of this Order on all parties in interest consistent with applicable law.

4.      If the applicable parties do not cause the specific acts set forth in paragraph 2 to occur by the Compliance Deadline or fail to take such actions (or not take such actions) as directed by Holdings in accordance with paragraph 2, Holdings may request a hearing

---

successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

on shortened notice for a date and time to be scheduled by the Court to determine whether the

applicable parties are in violation of this Order, the Oral Decision, the Plan, the Confirmation

Order, and/or the Bankruptcy Code, as applicable, and consider such other and further relief,

including, without limitation, the imposition of coercive and/or compensatory monetary

sanctions.

       5.      This Order is without prejudice to Holdings' rights to seek coercive and/or

compensatory monetary sanctions.

       6.      Those portions of the Motion that were not ruled upon by the Court in its

Oral Decision are deemed withdrawn without prejudice or denied without prejudice.

       7.      This Order is immediately effective and enforceable upon its entry.

       8.      The Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2025

_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

23-10322-jpm    Doc 1572    Filed 03/31/25    Entered 03/31/25 16:06:49    Main Document
Pg 24 of 36

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                    :
In re:                     :       Chapter 11
                    :
ELETSON HOLDINGS INC., et al.,[1]   :       Case No. 23-10322 (JPM)
                    :
                    :       (Jointly Administered)
             Debtors.     :
                    :
-------------------------------------------------------------x

## ORDER IN SUPPORT OF CONFIRMATION AND CONSUMMATION
## OF THE COURT-APPROVED PLAN OF REORGANIZATION

Upon the motion [Docket No. 1268] (the "Motion")[2] of Eletson Holdings Inc., as

reorganized ("Holdings"), for entry of an order (this "Order") against Holdings' (a) existing

person of record at the address of record (the "AOR") currently on file with the Liberian

International Ship & Corporate Registry ("LISCR") and (b) former shareholders[3] (the "Former

Shareholders"), officers and directors (together, the "Former D&Os"), and counsel, including

Reed Smith LLP ("Reed Smith"), as well as counsel for the Former D&Os at Daniolos Law Firm

("Former D&Os Counsel" and, together with the AOR, the Former Shareholders, the Former

D&Os, and Reed Smith, the "Ordered Parties"), holding the Ordered Parties in civil contempt,

imposing monetary sanctions upon the Ordered Parties, and granting related relief; and the Court

---

[1]    The Debtors in these chapter 11 cases are:  Eletson Holdings Inc. ("Holdings"), Eletson Finance (US) LLC, and
Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR
185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite
424, Stamford, Connecticut 06901.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

[3]    The Former Shareholders are comprised of the following five entities: (a) Family Unity Trust Company
("Family Unity"), (b) Glafkos Trust Company ("Glafkos"), (c) Lassia Investment Company ("Lassia" and,
together with Family Unity and Glafkos, the "Former Majority Shareholders"), (d) Elafonissos Shipping
Corporation, and (e) Keros Shipping Corporation.

having jurisdiction to consider the Motion and relief requested therein pursuant to 28 U.S.C.

§§ 157 and 1334, the Amended Standing Order, 11 U.S.C. §§ 105 and 1142, and the Court's

inherent jurisdiction to interpret and enforce its own orders (including the Confirmation Order

directing the implementation of the Plan); and consideration of the Motion and relief requested

therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having the

authority to enter a final order consistent with Article III of the United States Constitution; and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

sufficient notice of the Motion having been provided; and it appearing that no other or further

notice need be provided; and it appearing that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, all parties in interest, and Holdings; and the

Court having considered the Motion, the objections thereto filed by the Daniolos Law Firm

[Docket No. 1285], Reed Smith [Docket No. 1287] and Sidley Austin LLP, on behalf of the

Former Majority Shareholders [Docket No. 1291] (collectively, the "Objections"), the reply in

support of the Motion filed by Holdings [Docket No. 1299], and the Committee's statement in

support of the Motion [Docket No. 1301], all testimony and evidence admitted into the record of

the trial held on January 6, 2025, and all of the post-trial briefing submitted in connection

therewith; and, for the reasons set forth in the Court's oral ruling on the Motion at the status

conference held on January 24, 2025 (the "Oral Decision"); and this Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and all Objections having been overruled; and upon all of the proceedings had before the

Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[4]

A.      The Effective Date (as defined in the Plan) of the Plan occurred on November 19, 2024.

B.      On the Effective Date, all of the Former D&Os, including, without limitation, Vasilis Hadjieleftheriadis, Konstantinos Hadjieleftheriadis, Ionnis Zilakos, Emmanuel Androulakis, Vassilis Kertiskoff, Eleni Karastamati, Panagiotis Konstantaras, Laskarina Karastamati, Eleni Vandorou, Andrianos Psomadakis-Karastamatis, Panos Paxinos, Eleni Giannakopoulou, and Niki Zilakos were deemed to resign or were terminated as set forth in Section 5.10 of the Plan.

C.      From and after the Effective Date, the members of the board of directors of Holdings appointed pursuant to the Confirmation Order and the Plan, were Adam Spears, Leonard Hoskinson, and Timothy B. Matthews (the "New Board").

D.      Also on the Effective Date, all outstanding equity interests in Holdings, including any equity interests owned by the Former Shareholders, were cancelled, extinguished, and discharged, and the new equity interests in Holdings were issued pursuant to the Plan and Confirmation Order.

E.      Pursuant to sections 1141 and 1142 of the Bankruptcy Code, the Confirmation Order and Plan are binding on the Debtors and their Related Parties (as defined in the Plan),[5] including, without limitation, the Ordered Parties.

---

[4]     The findings and conclusions set forth herein and in the Oral Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014, and are incorporated by reference as though fully set forth herein.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

[5]     As set forth in Section 1.124 of the Plan,

"*Related Parties* means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest,

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Pursuant to section 1142 of the Bankruptcy Code, the Debtors and their Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof.

2.      The Debtors and the Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to take all steps reasonably necessary as requested by Holdings to unconditionally support the effectuation, implementation, and consummation of the Plan, including, but not limited to, by no later than seven (7) days from the date of the entry of this Order (the "Compliance Deadline"), taking all steps reasonably necessary to update or amend (a) Holdings' AOR to reflect that Adam Spears is Holdings' AOR and (b) Holdings' corporate governance documents on file with LISCR as directed by Holdings.

3.      Holdings shall serve a copy of this Order on all parties in interest consistent with applicable law.

4.      If the applicable parties do not cause the specific acts set forth in paragraph 2 to occur by the Compliance Deadline or fail to take such actions (or not take such actions) as directed by Holdings in accordance with paragraph 2, Holdings may request a hearing

---

successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

on shortened notice for a date and time to be scheduled by the Court to determine whether the

applicable parties are in violation of this Order, the Oral Decision, the Plan, the Confirmation

Order, and/or the Bankruptcy Code, as applicable, and consider such other and further relief,

including, without limitation, the imposition of coercive and/or compensatory monetary

sanctions.

5.      This Order is without prejudice to Holdings' rights to seek coercive and/or

compensatory monetary sanctions.

6.      Those portions of the Motion that were not ruled upon by the Court in its

Oral Decision are deemed withdrawn without prejudice or denied without prejudice.

7.      This Order is immediately effective and enforceable upon its entry.

8.      The Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2025

_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                    :
In re:                                              :        Chapter 11
                                                    :
ELETSON HOLDINGS INC., et al.,[1]                   :        Case No. 23-10322 (JPM)
                                                    :
                                                    :        (Jointly Administered)
                           Debtors.                 :
                                                    :
----------------------------------------------------------------x

## ORDER ~~(I) HOLDING CERTAIN PERSONS IN~~ IN SUPPORT OF CONFIRMATION ~~CIVIL CONTEMPT,~~ ~~(II) IMPOSING SANCTIONS~~ AND CONSUMMATION OF THE COURT-APPROVED PLAN OF REORGANIZATION ~~(III) GRANTING RELATED RELIEF~~

Upon the motion [Docket No. 1268] (the "~~Emergency~~ Motion")[2] of

~~Eletson~~ Reorganized Holdings Inc., as reorganized ("Holdings"), for entry of an order (this

"Order") against ~~Reorganized~~ Holdings' (a) existing person of record at the address of record

(the "AOR") currently on file with the Liberian International Ship & Corporate Registry

("LISCR") and (b) former shareholders[3] (the "Former Shareholders"), officers and directors

(together, the "Former D&Os"), and counsel, including Reed Smith LLP ("Reed Smith"), as well

as counsel for the Former D&Os at Daniolos Law Firm ("Former D&Os Counsel" and, together

---

[1] The Debtors in these chapter 11 cases are:  Eletson Holdings Inc. ("Holdings"), Eletson Finance (US) LLC, and Agathonissos Finance LLC.  The address of the Debtors' corporate headquarters is 118 Kolokotroni Street, GR 185 35 Piraeus, Greece.  The Debtors' mailing address is c/o Eletson Maritime, Inc., 1 Landmark Square, Suite 424, Stamford, Connecticut 06901.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the ~~Emergency~~ Motion.

[3] The Former Shareholders are comprised of the following five entities: (a) Family Unity Trust Company ("Family Unity"), (b) Glafkos Trust Company ("Glafkos"), (c) Lassia Investment Company ("Lassia" and, together with Family Unity and Glafkos, the "Former Majority Shareholders"), (d) Elafonissos Shipping Corporation, and (e) Keros Shipping Corporation.

with the AOR, the Former Shareholders, the Former D&Os, and Reed Smith, the

"OrderedViolating Parties"), holding the OrderedViolating Parties in civil contempt, imposing

monetary sanctions upon the OrderedViolating Parties, and granting related relief; and the Court

having jurisdiction to consider the Emergency Motion and relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334, and the Amended Standing Order, 11 U.S.C. §§ 105 and 1142, and

the Court's inherent jurisdiction to interpret and enforce its own orders (including the

Confirmation Order directing the implementation of ordering that the Plan be implemented);

and consideration of the Emergency Motion and relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b);) and the Court having the authority to enter a

final order consistent with Article III of the United States Constitution; and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient

notice of the Emergency Motion having been provided; and it appearing that no other

or further notice need be provided; and it appearing that the relief requested in the

Emergency Motion is in the best interests of the Former Debtors, their estates, their

creditors, all parties in interest, and Reorganized Holdings; and the Court having

consideredreviewed the Emergency Motion, and the objectionsdeclarations annexed

thereto filed by the Daniolos Law Firm [Docket No. 1285], Reed Smith [Docket No. 1287] and

Sidley Austin LLP, on behalf of the Former Majority Shareholders [Docket No. 1291]

(collectively, the "Objections"), the reply in support of the Motion filed by Holdings [Docket No.

1299], and the Committee's statement in support of the Motion [Docket No. 1301], all testimony

and evidence admitted into the record of the trial held on January 6, 2025, and all of the post-trial

briefing submitted in connection therewith; and, for the reasons set forth in the Court's oral

ruling on the Motion at the status conference held on January 24, 2025 (the "Oral Decision");;

and this Court having determined that the legal and factual bases set forth in the ~~Emergency~~ Motion establish just cause for the relief granted herein; and all Objections~~objections to the Emergency Motion, if any,~~ having been ~~withdrawn or~~ overruled; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINEDORDERED THAT:**[4]

1.    The Effective Date (as defined in the Plan) of the Plan occurred on November 19, 2024.

2.    On the Effective Date, all of the Former D&Os, including, without limitation, Vasilis Hadjieleftheriadis, Konstantinos Hadjieleftheriadis, Ionnis Zilakos, Emmanuel Androulakis, Vassilis Kertiskoff, Eleni Karastamati, Panagiotis Konstantaras, Laskarina Karastamati, Eleni Vandorou, Andrianos Psomadakis-Karastamatis, Panos Paxinos, Eleni Giannakopoulou, and Niki Zilakos were deemed to resign or were terminated as set forth in Section 5.10 of the Plan.

3.    From and after the Effective Date, the members of the board of directors of Holdings appointed pursuant to the Confirmation Order and the Plan, were Adam Spears, Leonard Hoskinson, and Timothy B. Matthews (the "New Board").

4.    Also on the Effective Date, all outstanding equity interests in Holdings, including any equity interests owned by the Former Shareholders, were cancelled, extinguished, and discharged, and the new equity interests in Holdings were issued pursuant to the Plan and Confirmation Order.

1.5.    Pursuant to sections 1141 and 1142 of the Bankruptcy Code, theThe Confirmation Order and Plan are binding on the Former Debtors and their Relatedthe Violating Parties (as defined in the Plan),[5] including, without limitation Reed Smith, the Former D&Os,

---

[4]    The findings and conclusions set forth herein and in the Oral Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014, and are incorporated by reference as though fully set forth herein.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

[5]    As set forth in Section 1.124 of the Plan,

the Ordered Parties~~Former D&Os Counsel, and the Former Shareholders and their counsel~~.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      Pursuant to section 1142 of the ~~The Court FINDS that the Violating Parties have violated, among other things, the~~ Bankruptcy Code, the ~~Debtors~~Plan, and their Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof.

2.      The Debtors and the Related Parties, including without limitation, the Ordered Parties, are authorized, required, and directed to take all steps reasonably necessary as requested by Holdings to unconditionally support the effectuation, implementation, and consummation of the Plan~~, by failing to comply with their applicable obligations thereunder~~, including, but not limited to, by no later than seven (7) days from the date of the entry of this Order (the "Compliance Deadline"), taking all steps reasonably necessary: ~~(a) failing~~ to update or amend (a) ~~LISCR with Reorganized~~ Holdings' AOR to reflect that Adam Spears is Holdings' AOR ~~current Amended Certificate of Incorporation as requested by~~

---

"***Related Parties*** means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

23-10322-jpm    Doc 1572    Filed 03/31/25    Entered 03/31/25 16:06:49    Main Document
Pg 34 of 36

~~Reorganized Holdings' new board pursuant to the authority provided by Confirmation Order ¶ 5(iii); and~~ (b) ~~otherwise opposing, in this Court and elsewhere, Reorganized~~ Holdings' corporate governance documents on file with LISCR ~~new board's efforts to ensure that the Plan be implemented~~ as directed by Holdings.

2.3.     Holdings shall serve a copy of this ~~within the Confirmation~~ Order on all parties, *e.g.*, ~~by filing an opposition~~ in interest consistent with applicable law. ~~Liberian court to the Petitioning Creditors' petition seeking to have the Confirmation Order recognized in Liberia.~~

~~3.    As a result of these actions and omissions, the Motion is GRANTED to the extent set forth herein.~~

~~4.    The Violating Parties, including Reed Smith, the Former D&Os, the Former D&Os Counsel, and the Former Shareholders and their counsel, are ORDERED to take all steps reasonably necessary as requested by Reorganized Holdings' new board to unconditionally support the implementation of the Plan as required by the Confirmation Order.~~

~~5.    The Violating Parties, including Reed Smith, the Former D&Os, the Former D&Os Counsel, and the Former Shareholders and their counsel, are ORDERED to: (a) cause LISCR to be updated to reflect Reorganized Holdings' current Amended Certificate of Incorporation; (b) cause LISCR to be updated to reflect that Adam Spears is Holdings' AOR going forward; and (c) cause powers of attorney to be executed by the Former D&Os and the Former Shareholders providing to Reorganized Holdings' new board all and whatever authority to direct or control the Former Debtors that the Former D&Os or Former Shareholders may still claim, and specifically providing~~

Reorganized Holdings' new board with the authority to act on behalf of the Former Debtors in foreign courts, including in Liberia and Greece.

6.4.    If the applicable partiesViolating Parties do not cause the specific acts set forth inwithin paragraph 2 to occur by the Compliance Deadline or fail to take such actions (or not take such actions) as directed by Holdings in accordance with paragraph 2, Holdings may request a hearing on shortened notice for a5 to be accomplished and memorialized upon the docket in the above-captioned cases within five (5) business days after the date and time to be scheduled by the Court to determine whether the applicable parties are in violationof entry of this Order, the Oral Decision, the Plan, the Confirmation Order, and/or the Bankruptcy Code, as applicable, and consider such other and further relief, including, without limitation, the imposition of Court will find the Violating Parties in contempt of court and order coercive and/or compensatory monetary sanctions.  against each of them of $20,000 per day for each day until the acts are accomplished and memorialized.

7.5.    This Order is without prejudice to Reorganized Holdings' rights to seek coercive and/or compensatory monetary sanctions.

6.    Those portions of the Motion that were not ruled upon by the Court in its Oral Decision are deemed withdrawn without prejudice or denied without prejudice.

8.    The Court will consider additional coercive and/or compensatory monetary sanctions in to-be-determined amounts each time that the Violating Parties take any actions that interfere with the implementation and consummation of the Plan hereafter.

9.    Any request by Reorganized Holdings to consider additional coercive and/or compensatory monetary sanctions pursuant to paragraph 8 of this Order or for other further relief to aid in the enforcement of this Order shall be on two

~~(2) business days' notice, unless the matter at issue does not allow for two (2) business~~

~~days' notice.  In the event of any dispute as to any such request, the disputing party~~

~~may contact this Court, together with counsel for Reorganized Holdings, by telephone~~

~~to resolve the dispute in an expeditious manner prior to the expiration of such notice~~

~~period.~~

~~10.~~7.    This Order is~~shall be~~ immediately effective and enforceable upon its

entry.

~~11~~8.    The Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2025~~2024~~

_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

_____