UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re:

ELETSON HOLDINGS INC.,[1]

                                    Debtor.

----------------------------------------------------------------x

<u>**NOT FOR PUBLICATION**</u>

Chapter 11

Case No. 23-10322 (JPM)

**OPINION AND ORDER DENYING WITHOUT PREJUDICE REED SMITH'S MOTION
TO WITHDRAW ITS LIMITED REPRESENTATION OF PURPORTED
PROVISIONAL ELETSON HOLDINGS INC.**

## I.    INTRODUCTION

Before the Court is the *Motion of Reed Smith LLP to Withdraw Its Limited Representation of Provisional Holdings*, filed on March 18, 2025 (the "**Motion**").  (ECF Docket No. 1543).

In opposition to the Motion is *Eletson Holdings Inc.'s Objection to the Motion of Reed Smith LLP to Withdraw Its "Limited" Representation of "Provisional Holdings"* (the "**Objection**").  (ECF Docket No. 1566).

Reed Smith filed its *Reply to Motion to Withdraw Its Limited Representation of Provisional Holdings* on March 31, 2025 (the "**Reply**").  (ECF Docket No. 1572).  A hearing was held on April 3, 2025 (the "**April 3 Hearing**," the transcript of which can be found at ECF Docket No. 1604).  Reed Smith also filed a letter on April 11, 2025 in support of the Motion (the "**April 11th Letter**") following the April 3 Hearing.  (ECF Docket No. 1595).

---

[1]    Prior to November 19, 2024, the Debtors in these cases were:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC.  Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc.  The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

The Court has reviewed and considered the Motion, related pleadings filed in support of the Motion, the Objection, and arguments at the April 3 Hearing.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(L).

## III.    SUMMARY OF ARGUMENTS

Reed Smith argues that, under Local Civil Rule 1.4(c)(3) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "**Local Rules**"), a "limited scope representation terminates without the need for leave of court once the attorney files a notice stating that the tasks for which the appearance was entered have been completed." (Motion, ¶ 9). Reed Smith asserts that its "limited" role was "submitted in a letter to the Court" (the "**February 4th Letter**") [ECF Docket No. 1407] after a Greek court appointed the purported Provisional Board of Eletson Holdings. (Motion, ¶ 4). Reed Smith argues that the February 4th Letter confirmed the limited scope of Reed Smith's post-confirmation representation of purported Provisional Eletson Holdings Inc., which allegedly was "limited to the following: (i) responding to all motions and applications in which Reed Smith itself has been named as a party, including the turnover application in the District Court; (ii) any appeal from this Court's January 29, 2025 Order [Dkt. No. 1402]; (iii) the pending appeal to the Second Circuit from Judge Liman's dismissal of Provisional Eletson Holdings' appeal from the Bankruptcy Court; and (iv) briefing and argument regarding Goulston & Storrs PC's *Motion to Compel Reed Smith LLP To Produce The Eletson Client File* in the District Court . . . ." (Motion, ¶ 4); (*see also* the February 4th Letter). Reed Smith argues that the Motion was filed "as a

2

precaution and to prevent further litigation over the scope of Reed Smith's representation of Provisional Holdings." (Motion, ¶ 7).

Reed Smith argues that based on Local Rule 1.4(c)(3) "the tasks for which Reed Smith's limited appearance was entered have been completed in connection with matters in this Court." (Motion, ¶ 10). Reed Smith then asserts, however, that it will "continue to represent [purported] Provisional Holdings in the limited scope as set forth above and/or as or as requested by the client in a manner consistent with Reed Smith's professional obligations and/or consistent with any orders of this Court, the District Court, or any other Court with jurisdiction over Reed Smith." (*Id.*). Thus, Reed Smith continues to represent Provisional Holdings in matters including: the turnover application in the District Court and/or Second Circuit Court of Appeals, any appeal from this Court's January 29 Order, and the pending appeal to the Second Circuit from Judge Liman's dismissal of Provisional Eletson Holdings' appeal from the Bankruptcy Court. (Motion, ¶ 5). In the alternative, Reed Smith requests "an order pursuant to Rule 2090-1 of the Local Bankruptcy Rules for the Southern District of New York" to withdraw for "cause shown." (Motion, ¶ 11).

Reorganized Eletson Holdings Inc. argues in the Objection that Reed Smith "has steadfastly and zealously advocated for its true clients, the family that formerly owned Holdings." (Objection, ¶ 2). Reorganized Eletson Holdings further argues that the Motion is a "transparent ploy by Reed Smith and its clients to retreat from this Court to evade service . . . ." (Objection, ¶ 3). Reorganized Eletson Holdings also asserts that the "withdrawal is a sham" because Reed Smith still reserves its rights to represent purported Provisional Eletson Holdings Inc. (Objection, ¶ 5). Reorganized Eletson Holdings claims that "Reed Smith has the audacity to seek withdrawal and simultaneously tell this Court that it will continue to represent

3

Provisional Holdings in other, directly related matters, such as appeals of this Court's orders in

the District Court and appeals of this Court's and the District Court's orders in the Second

Circuit." (Objection, ¶ 6). Reorganized Eletson Holdings argues that the Court should not grant

the withdrawal because Reed Smith has not demonstrated sufficiently the reason for withdrawing

and has not filed a substitution of counsel in the event of withdrawal. (Objection, ¶ 20).

In the Reply, Reed Smith argues that it can withdraw its limited representation pursuant

to Local Rule 1.4(c)(3) without leave of this Court because the limited purpose for which Reed

Smith was "retained" has now been satisfied. (Reply, ¶¶ 36-37). Reed Smith also asserts that,

should the Court find that an order of the Court is necessary for withdrawal, there is "cause" for

withdrawal, and withdrawal will not disrupt these proceedings.

## IV.    LEGAL ANALYSIS AND DISCUSSION

### A. REED SMITH'S PURPORTED LIMITED SCOPE REPRESENTATION AND WITHDRAWAL ARE NOT APPROPRIATE UNDER THE FACTS AND CIRCUMSTANCES

#### a. Reed Smith's Purported Limited Scope Representation Is Inconsistent With Its Representations And The Facts Of The Case.

First, Reed Smith seeks relief pursuant to Local Rule 1.4(c)(3), which concerns limited

scope representation. Reed Smith asserts that the February 4th Letter encapsulates the scope of

Reed Smith's limited representation of purported Provisional Eletson Holdings, which allegedly

resulted "after a Greek court appointed a provisional board of Holdings." (Motion, ¶ 4). Reed

Smith states that the reason for filing the instant Motion was merely "as a precaution and to

prevent further litigation over the scope of Reed Smith's representation of Provisional Holdings."

(Motion, ¶ 7). However, this Court finds that: 1) Reed Smith's purported limited scope

representation and withdrawal are contrary to Reed Smith's assertion that it will continue to

represent purported Provisional Eletson Holdings Inc. (and Reed Smith has, in fact, continued to

represent purported Provisional Holdings); and 2) seeking relief pursuant to Local Rule 1.4(c)(3)

is not appropriate in the first instance here, and to the extent that Reed Smith purports to continue

to represent *the* Eletson Holdings Inc. – the Debtor in this case – Reed Smith's purported limited

scope representation and withdrawal are both inappropriate under Local Rule 1.4(c).

At the outset, the Court notes that Reed Smith never sought approval of a limited scope

representation, nor was such approval granted (regardless of whether approval is necessary in the

context of an actual limited scope representation).[2]

Moreover, as to the first point above (regarding the scope of the representation), Reed

Smith has asserted that it will continue to represent purported Provisional Eletson Holdings in

Reed Smith's alleged "limited role" pursuant to the February 4th Letter and the February 21st

Letter [ECF Docket No. 1465] (the February 4th Letter and the February 21st Letter, together the

"**February Letters**").  (Motion, ¶ 7).  Reed Smith continues to argue that while the "tasks for

which Reed Smith's limited appearance was entered have been completed," nonetheless it will

"continue to represent Provisional Holdings in the limited scope . . . as requested by the client in

a manner consistent with Reed Smith's professional obligations . . . ."  (Motion, ¶ 10).  It is thus

unclear as to what extent Reed Smith has continued or will continue its representation of

purported Provisional Eletson Holdings Inc. before this Court because Reed Smith has taken

inconsistent positions on its representation, and Reed Smith is certainly continuing the related

representations in the District Court and Second Circuit Court of Appeals as set forth in, *inter

alia*, the February Letters.  The Court agrees with Reorganized Eletson Holdings that "Reed

Smith has sporadically appeared on behalf of Provisional Holdings . . . For example, Reed Smith

---

[2]   The Court agrees with Reorganized Eletson Holdings that the failure to file an objection to, or obtain any ruling
      regarding, the February Letters does not constitute tacit approval of a limited scope representation.  (Objection,
      ¶ 13, fn. 8).

opposed the Sanctions Motion for itself [Docket No. 1287] (filed on behalf of 'Reed Smith

LLP') and, on the same day, filed a joinder on behalf of Provisional Holdings to the Former

Majority Shareholders' objection to Holdings' motion . . . to appoint Adam Spears as its foreign

representative [Docket No. 1293 (filed as 'Counsel to Provisional Holdings')."  (Objection, ¶

12).  Therefore, it is also unclear, going forward, what Reed Smith's selective representation of

purported Provisional Eletson Holdings may include.  In addition, this Court has issued orders

sanctioning purported Provisional Eletson Holdings and the purported Provisional Eletson

Holdings Board (the "**Sanctions Orders**") (ECF Docket Nos. 1495, 1537), and the Court finds

that it would be inappropriate for a party that has been sanctioned by the Court to have counsel

withdraw without substitute counsel, which has not been proposed should withdrawal be

permitted.

> b. **Reed Smith's Purported Limited Scope Representation of Purported
>    Provisional Eletson Holdings is Not Appropriate Pursuant to Local Rule
>    1.4(c).**

As to the second point referenced above (whether Local Rule 1.4(c) applies in these

circumstances), Reed Smith's limited scope representation of purported Provisional Eletson

Holdings was never determined by the Court to be appropriate in the first instance.  Local Rule

1.4(c) provides:

> Where a party and an attorney have agreed to limited-scope representation, the attorney
> must file a notice that describes the scope of the representation for any matter that may
> require the attorney to file papers with the court; appear before a judge, arbitrator, or
> mediator; or communicate with opposing counsel. Notice is not required if the attorney is
> providing short-term, limited legal services under a program sponsored by a court,
> government agency, bar association, or not-for-profit legal services organization unless
> the attorney will file papers with the court; appear before a judge, arbitrator, or mediator;
> or provide continuing representation in the matter.

Local Rule 1.4(c)(1).

The 2025 Committee Notes to Local Rule 1.4(c)(1) provide, in relevant part:

6

> Both the Eastern and Southern District have come to allow an attorney to appear on behalf of an otherwise unrepresented party for limited purposes only -- for example, for purposes of mediation, motion practice, or some aspect of discovery. Among other things, allowing for such limited-scope appearances facilitates the recruitment of counsel to take on pro bono matters and promotes access to justice. The rule is amended to codify and regulate this practice of limited-scope appearances.

Local Rule 1.4(c)(1), 2025 Committee Notes.

Limited scope representation terminates pursuant to Local Rule 1.4(c)(3) "once the attorney files a notice stating that the tasks for which the appearance was entered have been completed." Local Rule 1.4(c)(3).

The relief Reed Smith seeks pursuant to Rule 1.4(c)(3) is not appropriate because, not only do the tasks related to Reed Smith's representation of purported Provisional Eletson Holdings and the purported Provisional Eletson Board continue, but withdrawal pursuant to Local Rule 1.4(c)(3) presumes that such limited scope representation was appropriate in the first instance. The Court finds that is not the case here.

As discussed above, Reed Smith asserts that it will "continue to represent Provisional Holdings" as described above; thus, a termination pursuant to Local Rule 1.4(c)(3) is premature by Reed Smith's own admissions. (Motion, ¶ 10). Further, even though Reed Smith repeatedly asserts that the filing of the February Letters legitimizes the "limited scope representation," such purported limited representation does not fit within the purpose of Rule 1.4(c). As set forth in the 2025 Committee Notes, the Local Rule 1.4(c) is intended in part to "facilitate[] the recruitment of counsel to take on pro bono matters and promotes access to justice." Local Rule 1.4(c)(1), 2025 Committee Notes. Here, Reed Smith's representation of purported Provisional Eletson Holdings (after previously having represented the Debtor, Eletson Holdings Inc.) is seeking to do neither. Moreover, as set forth above, purported Provisional Eletson Holdings and

the purported Provisional Eletson Board are subject to the Sanctions Orders and thus should not

be without counsel.

Finally, to the extent that Reed Smith is purporting to represent purported Provisional

Eletson Holdings Inc., which is essentially claiming to be *the* Eletson Holdings Inc. – the Debtor

in this case[3] – such limited scope representation would not be appropriate, nor consistent with the

Bankruptcy Code.

### B.  REED SMITH HAS NOT ESTABLISHED "CAUSE" FOR WITHDRAWAL PURSUANT TO LOCAL BANKRUPTCY RULE 2090-1(e)

Reed Smith's alternative request for withdrawal pursuant to Local Bankruptcy Rule

2090-1(e) is also inappropriate.  Reed Smith argues that "should the Court find that an Order of

the Court is necessary for withdrawal, it should issue such an order as there is good cause to do

so, and Reed Smith's withdrawal will not disrupt these proceedings."  (Reply, ¶ 38); (*see also*

Motion, ¶ 11).

Southern District of New York Local Bankruptcy Rule 2090-1(e) states that "[a]n

attorney who has appeared as attorney of record may withdraw or be replaced only by order of

the Court for cause shown."   Local Bankruptcy Rule 2090-1(e).  The Court agrees with

Reorganized Eletson Holdings Inc. that pursuant to Local Bankruptcy Rule 2090-1(e), Reed

Smith has failed to meet its burden to demonstrate "that its withdrawal at this time, prior to

identifying substitutional counsel, would not disrupt" ongoing proceedings and matters before

this Court.  (Objection, ¶ 20).  Courts consider whether "the prosecution of the suit is [likely to

be] disrupted by the withdrawal of counsel."  *In re Albert*, 277 B.R. 38, 51 (Bankr. S.D.N.Y.

2002) (internal citations omitted).  In *In re Albert*, for instance, the Court denied the motion to

---

[3]    This proposition is supported by Reed Smith's assertion in the April 11th Letter that "[i]f Provisional Holdings succeeds on its appeals, it would be reinstated as the Debtor before this Court . . . ."  (April 11th Letter, ¶ 5).

withdraw of creditor's counsel, as determinations related to pleadings were ongoing and withdrawal would have caused "undue and prejudicial delay." *Id.*  This Court also granted Reed Smith leave to submit additional caselaw on the issue of withdrawing as counsel at this stage of the case.  (April 11th Letter, ¶ 1).  Reed Smith asserts in its April 11th Letter that withdrawal of its representation of purported Provisional Eletson Holdings here would not affect the proceedings – even if the matters on appeal are reversed and remanded to this Court – because a "dismissed party is no longer a part of the underlying proceeding."  (*Id.*, ¶ 5).  Both cases cited to by Reed Smith are distinct from the instant case.  Specifically, *Stanford v. Kuwait Airlines Corp.* and *In re Agent Orange Prod. Liab. Litig. MDL No. 381* stand for the proposition that a Rule 54(b) final judgement certification is not required for a defendant's dismissal to take procedural effect.  *Stanford v. Kuwait Airlines Corp.*, 1987 U.S. Dist. LEXIS 10981, at *6 (S.D.N.Y. Nov. 25, 1987) (affirming magistrate's ruling that plaintiff cannot compel depositions of a dismissed defendant even though a final judgement had not been entered under Rule 54(b)); *see also In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 162–63 (2d Cir. 1987) ("[A] dismissed defendant who fails to obtain a Rule 54(b) certification does not remain a party to the case for purposes of determining diversity.").  In contrast, this Court has neither dismissed Reed Smith (despite its role as former counsel for the Debtor), nor purported Provisional Eletson Holdings, which is subject to the ongoing Sanctions Orders of this Court.

Reed Smith also argues in its Motion that it filed the withdrawal to "prevent further litigation over the scope of Reed Smith's representation of [purported] Provisional Holdings." (Motion, ¶ 7).  However, preventing "further litigation" is not sufficient "cause" to withdraw – especially when the subject clients are involved in ongoing motions and appeals in these cases and are subject to the Sanctions Orders.

Moreover, as stated above, to the extent Reed Smith is purporting to represent purported Provisional Eletson Holdings acting as Eletson Holdings Inc. – the Debtor in this case – Reed Smith also cannot withdraw its purported limited representation without substitute counsel. Indeed, Reed Smith admitted as much when it claimed in the April 11th Letter that, "[i]f Provisional Holdings succeeds on its appeals, it would be reinstated as the Debtor before this Court . . ."  (*See* the April 11th Letter).

Additionally, Courts have considered litigants who "reside[] overseas" and have demonstrated "significant difficulties in communicating" as further reasons to deny withdrawal of counsel.  *In re Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 657 B.R. 382, 392-393 (Bankr. S.D.N.Y. 2024) (denying counsel's motion to withdraw in adversary proceeding as it would disrupt a critical stage of litigation).  Thus, withdrawal is not appropriate here given that Reed Smith's client – purported Provisional Eletson Holdings – is subject to the Sanctions Orders and has attempted to argue that it is not subject to service.  (*See e.g.*, ECF Docket No. 1287 at ¶ 10) ("To Reed Smith's knowledge, Movants have not validly served all of the respondents to the Motion"); (*see also* ECF Docket No. 1419 at 1 ("Although the Emergency Motion expressly seeks sanctions jointly and severally against a number of entities and individuals, there is no evidence that any has been served properly.")).

In addition, as stated earlier, while Reed Smith argues for withdrawal, it simultaneously asserts that Reed Smith will continue to represent purported Provisional Eletson Holdings in its "limited scope . . . as requested by the client in a manner consistent with Reed Smith's professional obligations and/or consistent with any orders of this Court, the District Court, or any other Court with jurisdiction over Reed Smith." (Motion, ¶ 10).  The Court agrees with

Reorganized Eletson Holdings that absent substitute counsel – withdrawal at this point is not appropriate.  (Objection, ¶ 20).

Therefore, due to the pending Sanctions Orders and other ongoing matters, withdrawal without substitute counsel would leave Reed Smith's client, purported Provisional Eletson Holdings Inc, without representation before this Court while litigation is ongoing.

## V.      CONCLUSION

For the reasons set forth above, the Motion to Withdraw is DENIED without prejudice, subject to purported Provisional Eletson Holdings obtaining substitute counsel.  The Court's denial without prejudice of the Motion to Withdraw is not in any way expressing any approval of, or any opinion regarding, the propriety of Reed Smith's representation (or any other party's representation) of purported Provisional Eletson Holdings, the purported Provisional Eletson Holdings Board, or any other entity in connection with these or any other proceedings.


Dated: May 13, 2025
New York, New York

                                              S/ John P. Mastando III
                                              HONORABLE JOHN P. MASTANDO III
                                              UNITED STATES BANKRUPTCY JUDGE