TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Bryan M. Kotliar
Brian F. Shaughnessy
John N. McClain, III
Jared C. Borriello

*Counsel for Eletson Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                        :
In re:                                  :      Chapter 11
                                        :
ELETSON HOLDINGS INC.,¹                 :      Case No. 23-10322 (JPM)
                                        :
                                        :
                Debtor.                 :
                                        :
-------------------------------------------------------------x
```

**ELETSON HOLDINGS INC.'S OBJECTION TO
MOTION OF APARGO LIMITED, FENTALON LIMITED, AND DESIMUSCO
TRADING LIMITED FOR RECONSIDERATION OF MARCH 25, 2025 ORDER**

---

[1]    Prior to November 19, 2024, the Debtors in these cases were:  Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC.  Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc.  The Debtor's mailing address is c/o Togut, Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, New York 10119.

## TABLE OF CONTENTS

**Page**

BACKGROUND.................................................................................................................1

   I.    Prepetition Disputes Between Eletson and Levona..............................................1

   II.   Plan Confirmation ...............................................................................................4

   III.  Sanctions Motions ...............................................................................................6

   IV.  Appeals ................................................................................................................9

ARGUMENT...................................................................................................................9

   I.    The Motion Is Untimely......................................................................................9

   II.   The Court Does Not Have Jurisdiction to Grant the Motion .....................................12

   III.  The Purported Nominees Cannot Demonstrate Standing ........................................13

       a.    The Purported Nominees Cannot Demonstrate Prudential Standing.............14

       b.    The Purported Nominees Cannot Demonstrate Constitutional Standing.......15

       c.    The Purported Nominees Cannot Demonstrate Party-in-Interest Standing ...22

   IV.  Reconsideration Is Not Warranted ....................................................................23

       a.    Rule 59(e)/Rule 60(b) Generally ...........................................................23

       b.    Rule 60(b)(1) ......................................................................................25

       c.    The Purported Nominees Are Not Entitled to Reconsideration .....................26

CONCLUSION ...............................................................................................................31

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1077 Madison Street, LLC v. Smith*,
  670 F. App'x 745 (2d Cir. 2016) ................................................................................................19

*Breeden v. Kirkpatrick v. Lockhart, LLP*,
  268 B.R. 704 (S.D.N.Y. 2001) ...................................................................................................16

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................................................................15

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
  2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012) .............................................................................15

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) .........................................................................................................17

*Davidson v. Scully*,
  172 F. Supp. 2d 458 (S.D.N.Y. 2001) ........................................................................................27

*Dietrich v. Bauer*,
  198 F.R.D. 397 (S.D.N.Y. 2001) ................................................................................................24

*Feldman L. Grp. P.C. v. Liberty Mut. Ins. Co.*,
  819 F. Supp. 2d 247 (S.D.N.Y. 2011) ........................................................................................24

*Fox v. Bd. of Trs. of State Univ. of New York*,
  42 F.3d 135 (2d Cir. 1994) .........................................................................................................18

*Fuller v. Interview, Inc.*,
  No. 07 Civ. 5728 (RJS), 2014 WL 2601376 (S.D.N.Y. May 14, 2014) ...............................18, 19

*Glob. Gold Min., LLC v. Ayvazian*,
  612 F. App'x 11 (2d Cir. 2015) ..................................................................................................18

*Howard v. MTA Metro-N. Commuter R.R.*,
  866 F. Supp. 2d 196 (S.D.N.Y. 2011) ...................................................................................26, 27

*In re 310 Assocs.*,
  346 F.3d 31 (2d Cir. 2003) .........................................................................................................10

*In re Buckskin Realty, Inc.*,
  845 F. App'x 68 (2d Cir. 2021) ..................................................................................................12

*In re de Kleinman*,
  150 B.R. 524 (Bankr. S.D.N.Y. 1992) ........................................................................................12

*In re Ditech Holding Corporation,*
  Case No. 19-10412 (JLG), 2025 WL 674909 (Bankr. S.D.N.Y. Feb. 28, 2025) ........................10

*In re Facebook, Inc., Initial Pub. Offering Derivative Litig.,*
  797 F.3d 148 (2d Cir. 2015) ....................................................................................................15

*In re Facebook, Inc., IPO Securities and Derivative Litig.,*
  43 F. Supp. 3d 369 (S.D.N.Y. 2014).......................................................................24, 25, 26, 28

*In re Fairfield Sentry Limited,*
  No. 10-13164 (SMB), 2020 WL 4813565 (Bankr. S.D.N.Y. Aug. 10, 2020) ............................13

*In re Indesco Int'l, Inc.,*
  354 B.R. 600 (Bankr. S.D.N.Y. 2006).......................................................................................29

*In re Johns-Manville Corp.,*
  843 F.2d 636 (2d Cir. 1988) ....................................................................................................14

*In re Mader,*
  661 B.R. 1 (E.D.N.Y. 2021) .....................................................................................................11

*In re Martin Paint Stores,*
  199 B.R. 258 (Bankr. S.D.N.Y. 1996).......................................................................................22

*In re Motors Liquidation Co.,*
  580 B.R. 319 (Bankr. S.D.N.Y. 2018).................................................................14, 15, 22, 23

*In re Old Carco LLC,*
  423 B.R. 40 (Bankr. S.D.N.Y. 2010).........................................................................................10

*In re Richardson Foods, Inc.,*
  667 B.R. 500 (Bankr. S.D.N.Y. 2025)....................................................................................9, 27

*In re Sabine Oil & Gas Corp.,*
  No. 16-CV-2561 (JGK), 2016 WL 4203551 (S.D.N.Y. Aug. 9, 2016 .........................................12

*In re Teligent, Inc.,*
  640 F.3d 53 (2d Cir. 2011) ......................................................................................................22

*Karaha Bodas Co. v. Negara,*
  335 F.3d 357 (5th Cir. 2003)...................................................................................................29

*Lowinger v. Morgan & Co. LLC,*
  841 F.3d 122 (2d Cir. 2016).....................................................................................................24

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992)................................................................................................................15

*Munafo v. Metro. Transp. Auth.,*
  381 F.3d 99 (2d Cir. 2004) ......................................................................................................24

*Munn v. APF Mgmt. Co., LLC*,
  No. 19-CV-10791 (CS), 2021 WL 2355308 (S.D.N.Y. June 9, 2021)..........................................25

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986) (Rule 60(b)) ...................................................................................24

*Niederland v. Chase*,
  425 Fed. App'x. 10 (2d Cir. 2011) ...........................................................................................10

*Paddington Partners v. Bouchard*,
  34 F.3d 1132 (2d Cir. 1994) .....................................................................................................24

*Pastor v. P'ship for Children's Rts.*,
  856 F. App'x 343 (2d Cir. 2021) ..............................................................................................24

*PenneCom B.V. v. Merrill Lynch & Co.*,
  372 F.3d 488 (2d Cir. 2004) .....................................................................................................18

*PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.*,
  229 F.R.D. 450 (S.D.N.Y. 2005)...............................................................................................24

*Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*,
  No. 87 CIV. 7560 (PKL), 1993 WL 42786 (S.D.N.Y. Feb. 17, 1993).......................................18

*Prince v. Jelly*,
  No. 3:17-CV-01284 (SRU), 2018 WL 806577 (D. Conn. Feb. 9, 2018)....................................26

*QS Holdco Inc. v. Bank of Am. Corp.*,
  No. 18-CV-824 (RJS), 2020 WL 6321712 (S.D.N.Y. Jan. 6, 2020)..........................................25

*Rafter v. Liddle*,
  288 Fed. Appx. 768 (2d Cir. 2008) ...........................................................................................25

*Rai v. WB Imico Lexington Fee, LLC*,
  2017 WL 4350567 (S.D.N.Y. June 28, 2017) ...........................................................................25

*Southern Blvd., Inc. v. Martin Paint Stores*,
  207 B.R. 57 (S.D.N.Y. 1997)....................................................................................................23

*Spells v. United States*,
  No. 04-CR-1304 PKC, 2014 WL 5520691 (S.D.N.Y. Oct. 29, 2014) .......................................24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..................................................................................................................15

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998)....................................................................................................................22

*Thatcher v. Lamanna*,
  No. 1:17-CV-04540 (ALC), 2020 WL 1047087 (S.D.N.Y. Mar. 4, 2020)...........................26, 28

*U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*,
    475 B.R. 347 (S.D.N.Y. 2012) ........................................................................................ 19

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................ 15, 16

*Wilson v. Wexford Med.*,
    Case No. 3:18-CV-00890, 2020 WL 930112 (S.D.W. Va. Feb. 26, 2020) ............................ 11, 22

**Statutes**

11 U.S.C. § 101(2) .......................................................................................................... 20

11 U.S.C. § 1109 ....................................................................................................... 13, 22

11 U.S.C. § 1109(b) .................................................................................................. 20, 22

6 Del. C. § 18-1001 ....................................................................................................... 15

Del. Code Ann. tit. 6, § 18-702(e) .................................................................................. 17

**Rules**

Fed. R. Bankr. P. 8002 .................................................................................................... 10

Fed. R. Bankr. P. 8008(a) ................................................................................................ 13

Fed. R. Bankr. P. 9023 ................................................................................................. 9, 10

Fed. R. Bankr. P. 9024 ...................................................................................................... 9

Fed. R. Civ. P. 59(e) .................................................................................................. passim

Fed. R. Civ. P. 60(b) .................................................................................................. passim

Fed. R. Civ. P. 60(b)(1) ............................................................................................. passim

Fed. R. Civ. P. 60(c) ...................................................................................................... 10

Eleteson Holdings Inc. ("Holdings"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to the *Motion of Apargo Limited, Fentalon Limited, and Desimusco Trading Limited for Reconsideration of March 25, 2025 Order* [ECF No. 1587] (the "Motion" by the "Purported Nominees").[1]  In support of this Objection, Holdings submits the Declaration of Jared C. Borriello, Esq. (the "Borriello Declaration"),[2] filed contemporaneously herewith, and respectfully states:

## BACKGROUND[3]

## I.    Prepetition Disputes Between Eletson and Levona

1.      Prior to the Petition Date, Holdings and its subsidiaries and affiliates operating under the name Eletson (collectively, the "Company" or "Eletson")—which included, *inter alia*, Holdings' subsidiaries Eletson Corp. ("Corp.") and Eletson Gas LLC ("Gas")—operated an international shipping group that was owned and managed by three families: the families of Laskarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis (the "Former Principals" and their "Principal Families").  Ex. 1 (S.D.N.Y. Confirmation Decision) at 2.

2.      Gas was formed in 2013 as a joint venture by Holdings and funds managed by Blackstone Tactical Opportunities ("Blackstone").  *Id.* at 3.  Gas is governed by that certain Third Amended and Restated Limited Liability Company Agreement

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion.

[2]    Exhibits cited herein as Ex. __ are attached to the Borriello Declaration.

[3]    The long factual background of this case has been described in-depth many times, including in the Confirmation Decision and the Sanctions Motions (described below), which Holdings incorporates by reference herein.  The Background section of this Objection describes only those facts that either were not described within those documents or which are of particular relevance to the Motion.

dated August 16, 2019 (the "LLCA")[4] between Gas, Holdings, Corp., and Blackstone, as amended. *Id.* at 3. Holdings owned the common shares of Gas (which it retains at present). *Id.* The preferred shares of Gas (the "Preferred Shares") were owned initially by Blackstone until November 2021, when Blackstone sold its interests in Gas to Levona Holdings, Ltd. ("Levona"), who replaced it as party to the LLCA. *Id.*

3.      On February 22, 2022, Holdings, Corp., Gas, and its wholly owned subsidiary EMC Gas Corporation entered into a Binding Offer Letter (the "BOL") with Levona. *Id.* at 5-6  Pursuant to the BOL, *inter alia*, Levona agreed to grant a limited option for either Gas or its nominee to buy Levona out of the Preferred Shares on certain terms (the "Purchase Option"). *Id.*

4.      On July 29, 2022, Holdings and Corp. commenced a JAMS arbitration proceeding (the "Arbitration") in New York concerning a dispute they had with Levona as to whether Eletson had exercised the Purchase Option. *Id.* at 12.

5.      Despite initially claiming in the Arbitration that Holdings and Corp. had exercised the Purchase Option and that Holdings was the sole unit holder of Gas, Holdings and Corp. changed their story ***after*** these bankruptcy cases were commenced. They asserted for the first time in the Arbitration that neither Holdings, Corp., nor Gas had ever owned the Preferred Shares, but that the Preferred Shares had instead been transferred to three Cypriot entities, *i.e.*, the Purported Nominees. *Id.* at 20-22. During the course of the Arbitration and Chapter 11 Cases, it was discovered

---

[4]     A copy of the LLCA and the amendment to the LLCA dated April 16, 2020, is attached as Exhibits A and B, respectively, to the Purported Nominees' attorney declaration in support of the Motion. [ECF No. 1588].

that the Purported Nominees are indirectly owned by members of the Principal Families.[5]

6.      On April 17, 2023, the parties agreed to and this Court entered a stipulated stay-relief order that: (1) stayed any Arbitration award pending further order of this Court; and (2) provided that neither Eletson nor Levona "shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset of property related thereto absent further order of this Court." [ECF No. 48] (the "Stay Relief Order") ¶¶ 3-4.

7.      On July 28, 2023, the arbitrator issued an "interim" arbitration award, which was corrected on August 15, 2023 and followed on September 29, 2023 by a final arbitration award. *See* Ex. 3 (the "Arbitration Award"). Among other things, the arbitrator found that Gas exercised the Purchase Option for the Preferred Shares and that such shares had been transferred to the Purported Nominees effective as of March 11, 2022. *Id.* at 46; Ex. 1 at 31.

8.      On August 18, 2023, Holdings and Corp. filed a petition with the District Court for the Southern District of New York (the "District Court") commencing

---

[5]    In their May 5, 2023, pre-hearing brief in the Arbitration, Holdings and Corp. disclosed that the Purported Nominees are related to the Principal Families. *See id.* at 22. However, at least one Former Principal—Laskarina Karastamati—has admitted that she controls and is a shareholder of Fentalon, and has indicated that the other Purported Nominees are related to the other Former Families. *See* Ex. 2 (Aug. 3, 2023 Dep. Tr. of Laskarina Karastamati) at 32:6-10 ("[S]ome of the [ultimate beneficial owners] of Eletson Holdings are the [ultimate beneficial owners] of the preferred nominees."); 32:22-33:11 (Ms. Karastamati confirming that each of the Purported Nominees is related to one of the three Principal Families); 49:13-20 (Ms. Karastamati admitting she was involved in the negotiation of the transfer of the Preferred Shares in her capacity as a shareholder of Fentalon).

There is some confusion about whether the ownership and control of the Purported Nominees has recently changed. Originally, all three Purported Nominees filed Rule 7.1 statements in the Arbitration Confirmation Proceeding (defined below) disclosing no corporate parent. *See* [S.D.N.Y ECF Nos. 290, 304-305]. On April 9, 2025, however, Desimusco and Fentalon, without explanation, filed updated Rule 7.1 statements identifying "Blige Corporation" and "Ascella Limited" as their respective corporate parents. *See* [S.D.N.Y. ECF Nos. 306-307]. And on April 25, 2025, Apargo filed as updated Rule 7.1 statement identifying "Davit Seas Ltd." as its corporate parent. *See* [S.D.N.Y. ECF No. 327].

a proceeding (the "<u>Arbitration Confirmation Proceeding</u>") seeking confirmation of the corrected interim arbitration award, which petition was amended on October 19, 2023 to seek confirmation of the Arbitration Award.[6]

9.      On February 9, 2024, the District Court issued an opinion and order confirming and vacating the Arbitration Award in part, which was subsequently amended and superseded on April 19, 2024 solely to correct a typographical error [S.D.N.Y. ECF No. 104] (the "<u>S.D.N.Y. Confirmation Decision</u>").  *See* Ex. 1 at 123-124.

10.     On September 6, 2024, the District Court granted Levona's motion for leave to conduct discovery and file an amended answer to the Confirmation Petition on the basis that Holdings and Corp. appeared to commit fraud during the Arbitration by withholding critical evidence showing that the Purchase Option had never been exercised.  [S.D.N.Y. ECF No. 162 at 33-34].  On February 14, 2025, the District Court clarified that the Arbitration Award was not final and still "subject to Levona's pending motion to vacate the award and its defense on fraud in the arbitration."  [S.D.N.Y. ECF No. 268].

## II.   <u>Plan Confirmation</u>

11.     On September 5, 2024, the Petitioning Creditors[7] filed their proposed Chapter 11 plan.  [ECF No. 1132, Ex. 1] (the "<u>Plan</u>").  The Debtors filed their

---

6    *See Eletson Holdings Inc. et al., v. Levona Holdings Ltd.*, Case No. 23-cv-07331-LJL (S.D.N.Y.) [ECF Nos. 14, 46, 62] (the "<u>Confirmation Petition</u>").

     Documents cited herein as "S.D.N.Y. ECF No. __" are to documents filed on the electronic filing docket of *Eletson Holdings, Inc. et al., v. Levona Holdings Ltd.*, Case No. 23-cv-07331-LJL (S.D.N.Y.).  All other documents cited herein as "ECF No. __" are to documents filed on the electronic filing docket of the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>").

7    The Petitioning Creditors are Pach Shemen LLC; VR Global Partners, L.P.; Alpine Partners (BVI), L.P.; Gene B. Goldstein, In His Capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust; Mark Millet, In His Capacity as Trustee of the Mark E. Millet Living Trust; Mark Millet, In His Capacity as Trustee of the Millet 2016 Irrevocable Trust; Robert Latter; Tracy Lee Gustafson; Jason Chamness; and Ron Pike.

own proposed plan [ECF No. 1111] and the Debtors and Former Majority Shareholders[8] filed objections to the Plan, but the Purported Nominees did not object. *See* [ECF Nos. 1029, 1033] (the "Plan Objections").

12.     On October 25, 2024, the Court issued a decision [ECF No. 1212] (the "Confirmation Decision") that, *inter alia*, confirmed the Plan and overruled the Plan Objections. On November 4, 2024, the Court entered an order confirming the Plan, [ECF No. 1223] (the "Confirmation Order") that incorporated the Confirmation Decision by reference. Confirmation Order ¶ 1. In the Confirmation Order, *inter alia*, the Court: (1) ordered the Debtors and their Related Parties[9] "to cooperate in good faith to implement and consummate the Plan," *id.* ¶ 5(i); (2) directed the Debtors "to take or not take any and all actions as instructed by the Petitioning Creditors" and to "not take any actions inconsistent with the Plan or [the] Confirmation Order without the prior written consent of the Petitioning Creditors or further order of the Court," *id.* ¶ 5(iii); (3) ordered that "all property of each of the Debtors' Estates, including all Retained Causes of Action, and any property acquired by any of the Debtors, including interests

---

[8]     The "Former Majority Shareholders" are: (1) Lassia Investment Company; (2) Glafkos Trust Company; and (3) Family Unity Trust Company.

[9]     As set forth in Section 1.124 of the Plan:

Related Parties means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtors), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)-(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

held by the Debtors in their respective non-Debtor direct and indirect subsidiaries and Affiliates shall vest in Reorganized Holdings," *id.* ¶ 7; and (4) provided that "all Holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan," *id.* ¶ 12.

13.    No party appealed or sought to stay the Confirmation Order.  On November 19, 2024 (the "Effective Date"), the Plan went effective.  [ECF No. 1258].

### III.    Sanctions Motions

14.    As this Court is well aware, both before and since the Effective Date, various parties, including Eletson's former management and shareholders, have gone to great lengths to obstruct implementation of the Plan.  As a result, Holdings brought a series of motions seeking to enforce the Confirmation Order.  *E.g.*, [ECF No. 1268] (the "First Sanctions Motion"); [ECF No. 1416] (the "Second Sanctions Motion"); and [ECF No. 1459] (the "Third Sanctions Motion" and, together with the First and Second Sanctions Motion, the "Sanctions Motions").  The Sanctions Motions describe the relevant issues in depth and are each incorporated by reference herein.

15.    On November 27, 2024, after the filing of the First Sanctions Motion, Gas and the Purported Nominees filed a petition through the K.F. Kalavros Law Firm ("Kalavros") purporting to commence a proceeding with the Piraeus Single-Member Court of First Instance in Greece seeking "recognition" of the Arbitration Award and its "declaration as enforceable" (the "Greek Arbitration Confirmation Proceeding").  *See* Ex. 4 (the "Greek Arbitration Confirmation Petition").

16.    On January 29, 2025, the Court granted the First Sanctions Motion [ECF No. 1402] (the "Consummation Order").  In the Consummation Order, the Court

6

ordered the Debtors and their Related Parties: (1) "to comply with the Confirmation Order and the Plan to assist in effectuating, implementing, and consummating the terms thereof," Consummation Order ¶ 1; and (2) to "take all steps reasonably necessary as requested by Holdings to unconditionally support the effectuation, implementation and consummation of the Plan," *id.* ¶ 2.

17.     On February 28, 2025, in connection with the Third Sanctions Motion, counsel to Holdings filed a letter alerting the Court to "improper filings in direct opposition to the recognition proceedings in Liberia and Greece by Holdings' former directors, officers, and shareholders" that had come to Holdings' attention. [ECF No. 1496] (the "February 28 Letter").  On March 3, 2025, Holdings filed a revised proposed order that included the Greek Arbitration Confirmation Proceeding.  [ECF No. 1499] (the "Revised Proposed Order").

18.     On March 4, 2025, objections to the Third Sanctions Motion were filed by each of: (1) the Former Majority Shareholders, [ECF No. 1506]; (2) the Daniolos Law Firm, [ECF No. 1507]; and (3) Reed Smith, [ECF No. 1508].  The Purported Nominees never filed any response or objection to the Third Sanctions Motion or the Revised Proposed Order.

19.     On March 12, 2025, the Court granted the Third Sanctions Motion. [ECF No. 1536] (Mar. 12, 2025 Hr'g Tr.) (the "March 12 Decision").  On March 13, 2025, the Court entered an order granting the Third Sanctions Motion that incorporated the March 12 Decision by reference.  [ECF No. 1537] (the "March 13 Order").[10]  In the March

---

[10]  The Court also granted the Second Sanctions Motion, but the Purported Nominees have not asked the Court to reconsider it.  *See* [ECF No. 1495].

13 Order, *inter alia*, the Court: (1) directed the Violating Parties[11] to "withdraw any and all filings that oppose or undermine in any way the judicial recognition of the Confirmation Order," specifically including the Greek Arbitration Confirmation Proceeding, March 13 Order ¶ 1; and (2) enjoined the Violating Parties from "making any filings in any court seeking to oppose or undermine in any way the judicial recognition of the Confirmation Order," *id.* ¶ 2.

20.    As of the date of this Objection, none of the parties subject to the Sanctions Orders have complied with any of the Sanctions Orders.

21.    Following entry of the March 13 Order, Reed Smith filed letters on the docket, on Reed Smith's own behalf, objecting to the Third Sanctions Order on the basis that, *inter alia*, the Greek Arbitration Confirmation Proceeding was commenced under "a Treaty to which the United States is a party." [ECF No. 1539] ¶ 3; *see also* [ECF No. 1548]. The Purported Nominees, on the other hand, never raised any objection to the March 13 Order before the instant Motion was filed.

22.    On March 25, 2025, the Court rejected Reed Smith's arguments and ruled that the Greek Arbitration Confirmation Proceeding was properly included within the March 13 Order. *See* Ex. 5 (Mar. 25, 2025 Hr'g Tr.) (the "<u>March 25 Decision</u>") at 6:16-10:3. As the Court found:

> [T]o the extent Gas is acting without the consent of Reorganized Holdings, because the interests in the subsidiaries, including Eletson Gas, vested in Reorganized Holdings[,] the Greek arbitration proceeding violates the Plan, the Confirmation Order, the [Consummation] Order, and the March 13 Order, and that proceeding is properly included in the March 13 Order.

---

[11]    The Violating Parties included: (1) the Former Majority Shareholders; (2) Holdings' former minority shareholders: Keros Shipping Corporation and Elafonissos Shipping Corporation; (3) purported Provisional Eletson Holdings, Inc. ("<u>Provisional Holdings</u>"); (4) Provisional Holdings' purported board of directors (defined as: Vassilis Chatzieleftheriadis, Konstatinos Chatzieleftheriadis, Ioannis Zilakos, Niki Zilakos, Adrianos Psomadakis-Karastamatis, Eleni Giannakopoulous, Panos Paxinoz, and Emmanuel Andreulaks) (collectively, the "<u>Provisional Board</u>"); and (5) Vasilis Hadjieleftheriadis. *See* March 13 Order ¶ A.

*Id.* at 9:16-22.

## IV.    Appeals

23.    Various parties have appealed from the Consummation Order and the March 13 Order.  Each of: (1) the Provisional Board/Reed Smith [ECF No. 1411]; and (2) the Former Majority Shareholders [ECF No. 1413] appealed the Consummation Order.  And each of (1) Reed Smith (purportedly on behalf of Provisional Holdings) [ECF No. 1558]; (2) the Daniolos Law Firm [ECF No. 1562]; and (3) the Former Majority Shareholders [ECF No. 1563] appealed the March 13 Order.[12]

24.    All of the above-described appeals were noticed before the Purported Nominees' Motion was filed on April 8, 2025, and remain pending as of the date of this Objection.  The Purported Nominees have not appealed any order of this Court.

## ARGUMENT

## I.    The Motion Is Untimely

25.    Motions for reconsideration like the Motion may be brought as a motion to alter or amend a judgment under Rule 59(e) or for relief from a judgment or order under Rule 60(b).  *E.g., In re Richardson Foods, Inc.*, 667 B.R. 500, 511 (Bankr. S.D.N.Y. 2025).  Rules 59(e) and 60(b) are made applicable in bankruptcy cases through Bankruptcy Rules 9023 and 9024, respectively.

26.    Bankruptcy Rule 9023 provides that a motion "to alter or amend a [bankruptcy-court] judgment must be filed 14 days after the judgment is entered,"

---

[12]    The appeals from the March 13 Order initiated: (1) *Provisional Eletson Holdings Inc. v. Reorganized Holdings, Inc.*, Case No. 25-cv-2824-LJL (S.D.N.Y.); (2) *Daniolos Law Firm v. Reorganized Holdings Inc.*, Case No. 25-cv-2895-LJL (S.D.N.Y.); and (3) *Lassia Investment Company v. Reorganized Holdings, Inc.*, Case No. 25-cv-2789 (S.D.N.Y.).

altering Rule 59(e)'s[13] 28-day deadline applicable in non-bankruptcy cases.  Fed. R.

Bankr. P. 9023; *see In re Ditech Holding Corporation*, Case No. 19-10412 (JLG), 2025 WL

674909, at *6 (Bankr. S.D.N.Y. Feb. 28, 2025) (same).

27.     As for Rule 60(b) motions, Bankruptcy Rule 9024 states that such

motions must generally be made "within a reasonable time" and "no more than a year

after the entry of the judgment or order" where, as here, the motion is based upon Rule

60(b)(1) and the movant's allegation that the court made an error in the challenged

order.  Fed. R. Civ. P. 60(c).  But courts have made clear that a Rule 60(b)(1) motion to

correct an error by the court "may not be brought after [the] time to appeal has run."  *In

re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003); *see In re Old Carco LLC*, 423 B.R. 40, 46

(Bankr. S.D.N.Y. 2010) (same).  "One of the reasons for not permitting Rule 60(b)(1)

motions to correct court errors after the deadline for appeal is to prevent the rule from

becoming a vehicle to assert an otherwise time-barred appeal."  *Niederland v. Chase,* 425

Fed. App'x. 10, 12-13 (2d Cir. 2011) (summary order).  Because Bankruptcy Rule 8002

imposes a 14-day deadline to notice appeals of bankruptcy-court orders, a Rule 60(b)(1)

motion like the one here must be filed within 14 days of the order for which

reconsideration is sought.

28.     Through their April 8, 2025 Motion, the Purported Nominees claim

that the Court "made fundamental errors of law and fact" and asks the Court to strike

or vacate: (1) the March 13 Order; and (2) the March 25 Decision, neither of which the

Purported Nominees have appealed.  Motion ¶ 27.  Because the Motion was not filed by

---

[13]    The Purported Nominees do not specify that they are moving under Rule 59(e), but that they are
attempting to do so is clear from the Motion.  The Motion nowhere requests a new trial—the only
aspect of Rule 59 not covered by Rule 59(e)—but instead asks that the March 13 Order and March 25
Decision be stricken or vacated.  *See* Motion at 1, 21.  In any event, as set forth herein, any Rule 59
motion is untimely.

March 27, 2025, the March 13 Order cannot be reconsidered under either Rules 59(e) or 60(b)(1).

29.     That leaves the March 25 Decision, which was itself the Court's denial of Reed Smith's request that the Court reconsider the March 13 Order.  In substance, then, the Purported Nominees' arguments that the Court "fundamental[ly] err[ed]" in the March 25 Decision are arguments that the Court "fundamental[ly] err[ed]" in the March 13 Order—which, of course, the Court already reconsidered and rejected in the March 25 Decision.

30.     The Purported Nominees are plainly seeking time-barred reconsideration through the backdoor.  Indeed, even if the Court were to grant the relief the Purported Nominees seek with respect to the March 25 Decision and strike the language therein to which they object, the March 13 Order would remain in place, leaving the parties in the exact same position as they are now.  *See In re Mader*, 661 B.R. 1, 11 (E.D.N.Y. 2021) ("An appeal from an order denying a Rule 60(b) motion brings up for review only the denial of the motion and not the merits of the underlying judgment for errors that could have been asserted on direct appeal.  That is, a motion for reconsideration is not a vehicle for relitigating old issues securing a rehearing on the merits, or otherwise taking a second bit[e] at the apple.") (cleaned up and citations omitted); *cf. Wilson v. Wexford Med.*, Case No. 18-CV-00890, 2020 WL 930112, at *2 (S.D.W. Va. Feb. 26, 2020) (rejecting the defendants' "backdoor approach to staying the original order by moving to stay the second order" compelling past-due compliance with the original order as futile, noting:  "Even if Defendants' Motion to Stay is granted . . . that stay would not stay the [original] Order, which remains in effect").  The Court should thus reject the Purported Nominees' efforts to revive their forfeited rights to seek post-judgment relief or appellate relief by bringing a motion to reconsider the

11

denial of a previous request for reconsideration, and deny the Motion as untimely. *See In re Buckskin Realty, Inc.*, 845 F. App'x 68, 70-71 (2d Cir. 2021) (summary order) ("successive motions for reconsideration do not toll the time to appeal").

## II.    The Court Does Not Have Jurisdiction to Grant the Motion

31.    A bankruptcy court lacks jurisdiction to grant a Rule 59(e) or 60(b) motion where an appeal from the order whose reconsideration is sought has been filed. Indeed, a bankruptcy court lacks the jurisdiction to even modify its order once the order has been appealed, and even if the modification would obviate the appeal:

> The filing of a bankruptcy appeal confers jurisdiction on the appellate court and divests the trial court of control over those aspects of the case involved in the appeal. Once a notice of appeal is filed no lower court should be able to vacate or modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal.

*In re Sabine Oil & Gas Corp.*, No. 16-CV-2561 (JGK), 2016 WL 4203551, at *6 (S.D.N.Y. Aug. 9, 2016 (cleaned up and citations omitted). For this reason, a bankruptcy court cannot grant Rule 59(e) or Rule 60(b) requests for relief from orders that have been appealed. *See In re de Kleinman*, 150 B.R. 524, 526-27 (Bankr. S.D.N.Y. 1992) (because of pending appeal, the bankruptcy court lacked jurisdiction to grant relief under Rule 60(b)).

32.    Appeals of the March 13 Order were taken by Provisional Holdings and the Former Majority Shareholders on March 24 and March 26, 2025, respectively, and both appeals concern "each and every part" of the March 13 Order and the March 12 Decision."  [ECF Nos. 1558 & 1563] ¶ 1.  Further, the statements of issues for both appeals concern "[w]hether it was error for the Bankruptcy Court to grant the [Third Sanctions Motion] and issue the [March 13 Order]."  [ECF Nos. 1581 & 1592] ¶¶ 1-2.

33.     The Purported Nominees filed the instant Motion after those

appeals were filed, on April 8, 2025.  [ECF No. 1587].  Accordingly, the Motion

improperly seeks relief the Court is without jurisdiction to grant.[14]

34.     Bankruptcy Rule 8008 ("Indicative Rulings") describes the

"Bankruptcy Court's Options" in this type of circumstance, and makes clear that

granting the Motion is not one of them.  In relevant part, Bankruptcy Rule 8008

provides:

> Motion for Relief Filed When an Appeal Is Pending; Bankruptcy Court's
> Options.  If a party files a timely motion in the bankruptcy court for relief
> that the court lacks authority to grant because an appeal has been docketed
> and is pending, the bankruptcy court may: (1) defer considering the motion;
> (2) deny the motion; (3) state that it would grant the motion if the court
> where the appeal is pending remands for that purpose; or (4) state that the
> motion raises a substantial issue.

Fed. R. Bankr. P. 8008(a); *see In re Fairfield Sentry Limited*, No. 10-13164 (SMB), 2020 WL

4813565, at *12 (Bankr. S.D.N.Y. Aug. 10, 2020) (denying Rule 60(b)(1) motion to vacate

an order on appeal and refusing to issue an indicative ruling or defer consideration of

the motion under Bankruptcy Rule 8008).

35.     The Motion therefore cannot be granted.

## III.    The Purported Nominees Cannot Demonstrate Standing

36.     A party seeking relief in a bankruptcy case has the burden of

demonstrating that it has each of the following: (1) prudential standing;

(2) constitutional standing; and (3) party-in-interest standing, *i.e.*, that the party is a

"party in interest" within the meaning of 11 U.S.C. § 1109.  *In re Motors Liquidation Co.*,

---

[14]   For the reasons described above, reconsidering the March 25 Decision would make no practical
difference since the March 13 Order would remain in effect.  *See supra* ¶¶ 29-30.  Thus, even if the
Court has jurisdiction to reconsider the March 25 Decision, it should exercise its discretion not to do
so.

580 B.R. 319, 340-43 (Bankr. S.D.N.Y. 2018).  A failure to satisfy any of these burdens

precludes relief.  *Id.* at 342.  The Purported Nominees cannot satisfy their burden on any

of these three independent requirements.

### a.   *The Purported Nominees Cannot Demonstrate Prudential Standing*

37.     The doctrine of prudential standing bars litigants from "asserting

the constitutional and statutory rights of others in an effort to obtain relief for injury to

themselves."  *In re Johns-Manville Corp.*, 843 F.2d 636, 644 (2d Cir. 1988).

> The prudential concerns limiting third-party standing are particularly
> relevant in the bankruptcy context.  Bankruptcy proceedings regularly
> involve numerous parties, each of whom might find it personally expedient
> to assert the rights of another party even though that other party is present
> in the proceedings and is capable of representing himself.

*Id.*

38.     The Purported Nominees fail to demonstrate prudential standing

here because they attempt, through the Motion, to assert Gas's rights, rather than their

own.  The first paragraph of the Motion makes that clear:

> [T]he Preferred Shareholders respectfully assert that the Court erred by
> entering the March 25 Order, which, on this reading, effectively **enjoins
> non-debtor and non-party Eletson Gas LLC ("Gas")** from pursuing a
> Greek arbitration confirmation proceeding.  As the owner of the preferred
> shares in Gas, as found [in the Arbitration Award], the Preferred
> Shareholders have a direct, cognizable interest in the reconsideration of the
> March 25 Order <u>to the extent it seeks to restrict or sanction the conduct of
> Gas</u>, particularly as to its ability to pursue judicial remedies.

Motion ¶ 1 (emphases added).  And throughout the Motion, the Purported Nominees'

arguments almost exclusively concern what Gas should be allowed to do.

39.     Even if the Purported Nominees are Gas's shareholders, which they

are not, they cannot assert Gas's rights.  Members of a Delaware LLC can bring a

derivative action on behalf of the LLC only "if managers or members with authority to

do so have refused to bring the action or if an effort to cause those managers or

members to bring the action is not likely to succeed."  6 Del. C. § 18-1001; *see Clarex Ltd.
v. Natixis Sec. Am. LLC*, Case No. 12-Civ-0722 (PAE), 2012 WL 4849146, at *6 (S.D.N.Y.
Oct. 12, 2012) ("It is black-letter law that one corporation cannot assert an affiliate's legal
rights.").  Gas has asserted its own rights in the Greek Arbitration Confirmation
Proceeding, which the Purported Nominees have nowhere claimed is unlikely to
succeed.[15]  Accordingly, the Purported Nominees' Motion should be denied for lack of
prudential standing.  *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d
148, 155-56 (2d Cir. 2015) (likening derivative-standing question to prudential standing
and affirming dismissal of complaint where shareholders lacked derivative standing).

### b.  *The Purported Nominees Cannot Demonstrate Constitutional Standing*

40.    Once a party has demonstrated prudential standing, it must then
demonstrate constitutional standing, which arises from the "case or controversy"
requirement of Article III of the United States Constitution.  *Motors Liquidation*, 580 B.R.
at 341.  To demonstrate constitutional standing, a party must establish "'an invasion of a
legally protected interest' that is 'concrete and particularized' and 'actual or imminent,
not conjectural or hypothetical.'"  *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39
(2016)).  The asserted injury must be "likely" as opposed to merely "speculative," *Lujan
v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and must be "certainly impending," *Clapper
v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (finding lack of standing where
"respondents' theory of future injury is too speculative").

41.    As under prudential standing, a party can only assert its own legal
rights, not those of other parties.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III
judicial power exists only to redress or otherwise to protect against injury to the

---

[15]    Were they to so claim, they would erode their claim to constitutional standing.  *See infra* Section III.b.

complaining party, even though the court's judgment may benefit others collaterally.");
*Breeden v. Kirkpatrick v. Lockhart, LLP*, 268 B.R. 704, 708 (S.D.N.Y. 2001) (party seeking
relief must show a "personal stake in the outcome of the controversy" (citing *Warth*)).
Thus, for the same reasons that the Purported Nominees lack prudential standing to
seek reconsideration on Gas's behalf, they also lack constitutional standing.

42.     But the Purported Nominees also cannot establish constitutional
standing to bring the Motion on their own behalf.  There can be no meaningful dispute
that Gas and its actual owners are bound by the Confirmation Order that the March 13
Order was entered to enforce.  The Purported Nominees' entire argument rests upon
the faulty premises that "Gas is not a subsidiary of Reorganized Holdings" and that the
"change in management of Reorganized Holdings does not affect the operation or
decision-making abilities of Gas."  Motion at 2.  But it is undisputed that Holdings has
at all relevant times held all of the common equity interests of Gas, and the Debtors—
then indirectly owned and directly managed by the same individuals that currently
own the Purported Nominees, *see* Ex. 1 (S.D.N.Y. Confirmation Decision) at 22; *supra* ¶ 5
n.5—have told the Court repeatedly throughout the Chapter 11 Cases that Gas is
Holdings' subsidiary.  *E.g.*, [S.D.N.Y. ECF No. 67-44] (May 17, 2023 Bankr. Hr'g Tr.) at
25:6-11 (Debtors' counsel stating: "Eletson Gas . . . is a wholly owned subsidiary, that is
to say Holdings owns all the common of Eletson Gas"); [ECF No. 458] (Mar. 7, 2024
*Debtors' Motion for Entry of Orders re: Post-Petition Financing*) at ¶ 11 ("EMC Gas is a non-
Debtor subsidiary of non-Debtor Eletson Gas LLC, which, in turn, is a non-Debtor
subsidiary of Holdings.").  It therefore cannot be seriously disputed that the
Confirmation Order binds Gas and its actual owners and obligates them to act in good
faith to help implement the Plan, since they are "Related Parties" of the Debtors.
*See* Plan § 1.124 ("Related Parties" include Debtors' "subsidiaries" and the subsidiaries'

16

"direct[] or indirect[]" "equity holders"); Confirmation Order ¶ 5(i) (Debtors' "Related

Parties are hereby directed to cooperate in good faith to implement and consummate

the Plan.").[16]

   43. There does exist, however, an actual dispute regarding who owns

Gas's Preferred Shares—Levona, Gas (and thus effectively Holdings[17]), or the Purported

Nominees.  Holdings disputes that the Purported Nominees own any interests in Gas.

So does Levona, and this dispute was central to the Arbitration between Levona,

Holdings, and its subsidiary Corp.

   44. But that dispute has never been resolved by any final judgment.

Although the arbitrator rendered his Arbitration Award, the award has not been finally

confirmed: as the Purported Nominees themselves concede, confirmation is "full[y]

stay[ed.]"  Motion ¶ 14.  Indeed, Judge Liman has said that confirmation is "subject to

the resolution of Levona's pending motion to vacate the award and its defense based on

fraud in the arbitration." [ECF No. 1448, Ex. B] (Feb. 14, 2025 S.D.N.Y. Hr'g Tr.) at 115:9-

25; *see also* Stay Relief Order ¶ 4 (staying "use [of the] Arbitration Award or any asset or

property related thereto absent a further order of this Court").

   45. Until it is finally confirmed in a final judgment, the Arbitration

Award—upon which the Purported Nominees rely extensively as if it were an

enforceable judgment with preclusive effect—is inoperative.  *See D.H. Blair & Co. v.

Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) ("Because arbitration awards are not self-

---

[16] As discussed below, if the Purported Nominees own the Preferred Shares as they claim—and as is the basis for their having standing to bring the Motion—the owners are also enjoined from undermining the Plan's implementation under Confirmation Order ¶ 12.  *See infra* ¶ 49-53.

[17] Under Delaware law, if the Preferred Shares were returned to Gas, they were canceled as a matter of law, which would result in Holdings becoming the owner of all of Gas's equity interests.  Del. Code Ann. tit. 6, § 18-702(e).

enforcing, they must be given force and effect by being converted to judicial orders by courts[.]" (cleaned up and citation omitted); *Fox v. Bd. of Trs. of State Univ. of New York*, 42 F.3d 135, 142 (2d Cir. 1994) (noting a "judgment was stayed and is effectively inoperative"). Courts routinely reject arguments relying upon arbitration awards that have not been finally confirmed and reduced to judgment, particularly where, as here, the awards are subject to vacatur proceedings. *See, e.g.*, *Fuller v. Interview, Inc.*, Case No. 07 Civ. 5728 (RJS), 2014 WL 2601376, at *6 (S.D.N.Y. May 14, 2014) ("Since the arbitral award here is unconfirmed and the subject of a pending motion to vacate, it is not yet entitled to preclusive effect."); *Glob. Gold Min., LLC v. Ayvazian*, 612 F. App'x 11, 13 (2d Cir. 2015) (summary order) (reversing district court's ruling relying on arbitrator's factual finding: "At the time of the district court's ruling here, a motion to vacate the arbitral award had been timely filed . . . and there had been no final judgment deciding it. The award therefore had not yet become final and, thus, had no preclusive effect.").

46.    According preclusive effect to an arbitration award is particularly inappropriate where, as here, there are ongoing proceedings to determine whether the arbitration award relied upon was procured by fraud. *See PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (vacating judgment dismissing claim on collateral-estoppel grounds holding claimant was entitled to present evidence that it was not afforded full and fair opportunity to prove its case in arbitration on account of "a fraudulent scheme to dupe the arbitrators"). Finally, even where arbitration awards have been confirmed, if the confirmation order has not been reduced to a final judgment, preclusion does not apply. *See Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*, Case No. 87 CIV. 7560 (PKL), 1993 WL 42786, at *8–9 (S.D.N.Y. Feb. 17, 1993) (refusing to accord preclusive effect to confirmed arbitration award because no

final confirmation judgment had been entered and confirmation was subject to appellate review and not final).

47.    It is the Purported Nominees' burden to prove that they are Gas's Preferred Shareholders in order to both: (1) demonstrate standing to bring the instant Motion on their own behalf, *see 1077 Madison Street, LLC v. Smith*, 670 F. App'x 745, 746 (2d Cir. 2016) ("Where standing is raised as a defense by the defendant, the plaintiff is required to prove its standing before it may be determined whether the plaintiff is entitled to relief."); and, if standing is established, (2) show entitlement to the relief sought in the Motion under Rules 59(e) or 60(b)(1), *see infra* ¶ 58.  And because the Arbitration Award is not final but instead subject to ongoing vacatur proceedings, the Purported Nominees cannot rely upon it to demonstrate that they are Gas's Preferred Shareholders.

48.    The Purported Nominees' argument that they are the Preferred Shareholders is thus mere speculation.  And "where a court is being asked to declare who should get the proceeds of a hypothetical judgment based on a hypothetical outcome in a separate pending litigation, courts generally hold that the case or controversy requirement is not satisfied."  *U.S. Dep't of Treasury v. Off. Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 363 (S.D.N.Y. 2012); *see Fuller, supra* (declining to accord preclusive effect to arbitration award and adjourning proceedings "until the arbitral award is either confirmed or vacated").

49.    Of course, if the Purported Nominees did own the Preferred Shares, they would be bound by the Confirmation Order and obligated to help implement the Plan, *see supra* ¶ 42, and would also be enjoined from interfering with implementation by Confirmation Order ¶ 12.

50.     <u>First</u>, under the Purported Nominees' theory of the world—*i.e.*, the
world described in the Arbitration Award—the Purported Nominees were:
(1) nominated by Gas to receive the Preferred Shares in exchange for undertaking an as-
yet-unpaid €3 million obligation to Gas; and (2) nominated by Holdings and Corp.
(along with Gas) to receive the damages portion of the Arbitration Award.  *See* Ex. 3
(Arbitration Award) at 46, 64.  Were that actually adjudged to have taken place, these
nominations would make the Purported Nominees "Related Parties" bound by the
Confirmation Order to help implement the Plan in good faith.  Plan § 1.124 (defining
"Related Parties" as including Debtors' "subsidiaries" and the Debtors and subsidiaries'
direct and indirect "equity holders" and "nominees"); Confirmation Award ¶ 5(i)
(Related Parties obligated to help implement the Plan).

51.     <u>Second</u>, the Purported Nominees are (or were on the Effective
Date) each wholly owned by the same families that own the Former Majority
Shareholders—who each owned 30.7% of the Debtors' equity interests before the
Effective Date, Ex. 6 (Stock Transfer Ledger)—making the Purported Nominees
"affiliates" of the Debtors and the Former Majority Shareholders that are "enjoined
from taking any actions to interfere with the implementation or consummation of the
Plan."  Confirmation Order ¶ 12; *see* 11 U.S.C. § 101(2) ("affiliate" includes entity with
20%+ voting rights in debtor or business association 20%+ owned by entity or person
directly or indirectly owning or controlling 20%+ voting rights in debtor); *id.* § 1109(b)
("party in interest" includes "the debtor" and "equity security holder[s]").

52.     And <u>third</u>, by purporting to exercise control over how the
Arbitration Award is used in the Greek Arbitration Confirmation Proceeding, the
Purported Nominees are purporting to exercise control over Holdings' property.
Because Holdings and its subsidiary Corp. are the claimants in the Arbitration, the right

to seek to have the Arbitration Award confirmed—or to seek to enforce the Arbitration Award were it to be finally confirmed in the future—is a Retained Cause of Action under the Plan that Holdings owns and Holdings' new management now has the right to control. *See* Plan § 1.128 ("Retained Causes of Action shall include . . . all claims and Causes of Action related to or arising under the Eletson Gas Transfer"); *id.* § 1.65 ("Eletson Gas Transfer means any purported transfer of preferred shares in Eletson Gas LLC"); *id.* § 5.2(c) ("on the Effective Date, all property in each Estate, including all Retained Causes of Action . . . shall vest in Reorganized Holdings . . . .  Reorganized Holdings . . . may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action . . . .").  Judge Liman recently recognized this when he accepted Holdings and Corp.'s stipulation to withdraw their Confirmation Petition, which was previously filed before the Effective Date by the Debtors—who were then controlled by the same individuals that control the Purported Nominees.  *See* [S.D.N.Y. ECF No. 350].  That they now purport to control a Retained Cause of Action both: (1) provides another reason why the Purported Nominees are bound by the Confirmation Order ¶ 12 (enjoining "Holders of Claims or Interests" of the Debtors from interfering with the Plan's implementation); and (2) demonstrates that the Purported Nominees are violating Confirmation Order ¶ 12 by interfering with Holdings' property.

53.    Thus, under the Purported Nominees' own theories, they are subject to the Confirmation Order and are both obligated to help implement the Plan in good faith and enjoined from undermining the Plan—regardless of what the March 13 Order and March 25 Decision say.  This reinforces why the Purported Nominees cannot demonstrate any injury caused by the March 13 Order or March 25 Decision, as necessary for standing to bring the Motion: even if the March 13 Order and March 25

Decision were set aside, the Confirmation Order would still prohibit the Purported

Nominees from continuing the Greek Arbitration Confirmation Proceeding.

Confirmation Order ¶ 12; *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107

(1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into

federal court; that is the very essence of the redressability requirement."); *see also*

*Wexford*, 2020 WL 930112, at *2 (rejecting backdoor attempt to stay underlying order by

seeking stay of order enforcing it because underlying order would remain effective if

stay were granted).

### c. *The Purported Nominees Cannot Demonstrate Party-in-Interest Standing*

54.     If a party seeking relief in a Chapter 11 case demonstrates both

prudential and constitutional standing, it must also prove that it is a "party in interest"

within the meaning of 11 U.S.C. § 1109 in order to obtain relief.  *Motors Liquidation*, 580

B.R. at 342.  The Bankruptcy Code does not define "party in interest," *In re Teligent, Inc.*,

640 F.3d 53, 60 (2d Cir. 2011), but Section 1109 includes a non-exclusive list of parties

properly considered parties in interest.  11 U.S.C. § 1109(b).  If not on Section 1109(b)'s

list, the party must "(1) have a 'direct' stake in the proceeding and (2) 'be a creditor of a

debtor . . . or be able to assert an equitable claim against the estate.'"  *Motors Liquidation*,

580 B.R. at 342 (citation omitted).  Regarding the "direct stake" requirement, as with the

other standing requirements, a party claiming party-in-interest standing must "assert

his own legal rights and interests, and cannot rest his claim to relief on the legal rights

of interests of third parties."  *In re Martin Paint Stores*, 199 B.R. 258, 263-64 (Bankr.

S.D.N.Y. 1996).  If a party cannot demonstrate a "legally protected interest affected by

the bankruptcy proceeding," the party lacks party-in-interest standing.  *Id.* at 263.

55.     The Purported Nominees: (1) have never claimed to be, and are not,

parties of a type listed under Section 1109(b); and (2) have never claimed to be, and are

not, creditors of the Debtors or able to assert any equitable claim against the Debtors.
These facts are sufficient to deny the Motion for the Purported Nominees' lack of party-in-interest standing. *Motors Liquidation*, 580 B.R. at 342.

56.    The Purported Nominees also have never claimed to have, and do not have, any direct stake in the Chapter 11 Cases.[18]  For the reasons described above, the Purported Nominees cannot prove standing. *See supra* Section III.[19]

## IV.    Reconsideration Is Not Warranted

57.    The Motion also fails under the strict standards for obtaining the "extraordinary remed[ies]" of Rule 59(e) and 60(b)(1) relief.

### a.   *Rule 59(e)/Rule 60(b) Generally*

58.    Former District Judge Sweet said:

> The standards governing motions under Local Rule 6.3 along with [Rules] 59(e) and 60(b) are the same, and a court may grant reconsideration where the party moving for reconsideration demonstrates an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.
>
> **Reconsideration of a court's prior order under . . . Fed. R. Civ. P. 59(e) or 60(b) is an extraordinary remedy** to be employed sparingly in the interests of finality and conservation of scarce judicial resources.
>
> **The burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might materially have influenced its earlier decision.  A**

---

[18]   At most, the Purported Nominees themselves may ultimately be adjudged to have contract rights that can be enforced against non-debtor Levona, from whom the Purported Nominees claim they should have received Gas's Preferred Shares.  But at this point, because the Arbitration Award has not been finally confirmed and is subject to Levona's motion to vacate, that right is speculative. *See supra* Section III.b.  This makes the Purported Nominees' lack of standing all the more clear. *See Southern Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) (where a "party's legal rights and interests can only be asserted against the debtor's creditors, not against the debtor . . . it is not a party in interest under the Second Circuit's view of section 1109").

[19]   If the Purported Nominees are deemed "part[ies] in interest" sufficient to have standing to bring the Motion, then they are also directly bound by Confirmation Order ¶ 12 for this reason and are thereby enjoined from interfering with Plan implementation.  And because the Greek Arbitration Confirmation Proceeding purports to exercise control over one of Holdings' Retained Causes of Action, that proceeding violates Confirmation Order ¶ 12. *See supra* ¶ 52.

23

> **party seeking reconsideration may neither repeat arguments already**
> **briefed, considered and decided, nor advance new facts, issues or**
> **arguments not previously presented to the Court. . . .**
>
> **Motions for reconsideration are not vehicles for taking a second bite of**
> **the apple and the court should not consider facts not in the record to be**
> **facts that the court overlooked**.

*In re Facebook, Inc., IPO Securities and Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y.

2014) (emphases added and citations omitted), *aff'd sub nom. Lowinger v. Morgan & Co.*

*LLC*, 841 F.3d 122 (2d Cir. 2016); *see Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147-48

(2d Cir. 1994) (noting that a movant's "fail[ure] to interpose a defense that could have

been presented earlier" is not a basis for relief and affirming denial of Rule 60(b) motion

where movant "offered no justification for its failure earlier to raise the issue").

59.    "Like a motion under Rule 59(e), a Rule 60(b) motion is not a

substitute for an appeal." *Dietrich v. Bauer*, 198 F.R.D. 397, 400 (S.D.N.Y. 2001).  Also

"[l]ike Rule 59(e), Rule 60(b) does not provide a party with the opportunity to relitigate

the merits of a case in an attempt to win a point already carefully analyzed and

justifiably disposed." *Feldman L. Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247,

266 (S.D.N.Y. 2011) (cleaned up and citation omitted); *see Pastor v. P'ship for Children's*

*Rts.*, 856 F. App'x 343, 345 (2d Cir. 2021) ("[A] Rule 60(b) motion is properly denied

where it seeks only to relitigate issues already decided.").

60.    Movants under either Rule 59(e) or Rule 60(b) must demonstrate

that exceptional circumstances warrant relief.  *Spells v. United States*, Case No. 04-CR-

1304 PKC, 2014 WL 5520691, at *1 (S.D.N.Y. Oct. 29, 2014) (Rule 59(e)); *Nemaizer v. Baker*,

793 F.2d 58, 61 (2d Cir. 1986) (Rule 60(b)).  The decision to grant or deny relief under

Rules 59(e) or 60(b) is entrusted to the judge's discretion.  *Munafo v. Metro. Transp.*

*Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (Rule 59(e)); *PG 1044 Madison Assocs., L.L.C. v.*

*Sirene One, L.L.C.*, 229 F.R.D. 450, 452 (S.D.N.Y. 2005) (Rule 60(b)).

23-10322-jpm    Doc 1664    Filed 05/22/25    Entered 05/22/25 22:23:42    Main Document
Pg 31 of 37

### b. *Rule 60(b)(1)*

61.     Rule 60(b)(1), which gives courts the discretion to relieve a party
from an order because of "mistake, inadvertence, surprise, or excusable neglect," Fed.
R. Civ. P. 60(b)(1), "is available for a [] court to correct legal errors, such as when the
judge has made a substantive mistake of law or fact, or **overlooked certain parties'
arguments or evidence in the record**." *Rai v. WB Imico Lexington Fee, LLC*, Case No. 09
CIV. 9586, 2017 WL 4350567, at *2 (S.D.N.Y. June 28, 2017) (emphasis added).

62.     As with other motions for reconsideration, absent a change in
controlling law or the discovery of new evidence, a Rule 60(b)(1) motion must be based
upon evidence or controlling authority already "in the record" and "previously
presented to the Court" before the subject order was entered that the court
"overlooked," and facts, issues, and arguments not previously presented cannot be
considered overlooked. *Facebook*, 43 F. Supp. 3d at 373 ("A party seeking
reconsideration may n[ot] . . . advance new facts, issues or arguments not previously
presented to the Court. . . .  [T]he court should not consider facts not in the record to be
facts that the court overlooked."); *Rafter v. Liddle*, 288 Fed. Appx. 768, 769 (2d Cir. 2008)
("While [movant] attached an affidavit to her reconsideration motion that contained
certain facts not in the original record . . . we do not consider facts not in the record to
be facts that the court overlooked.") (internal citations and quotations omitted); *Munn v.
APF Mgmt. Co., LLC*, Case No. 19-CV-10791 (CS), 2021 WL 2355308, at *3 (S.D.N.Y. June
9, 2021) (denying Rule 60(b)(1) motion: "The Court could not have overlooked this issue
when it decided Defendants' motions to dismiss, because Plaintiff never raised it").

63.     A Rule 60(b)(1) movant must show that the court "clear[ly] err[ed]"
by overlooking existing authorities or evidence. *QS Holdco Inc. v. Bank of Am. Corp.*,
Case No. 18-CV-824 (RJS), 2020 WL 6321712, at *1 (S.D.N.Y. Jan. 6, 2020) ("Rule 59(e)

and Rule 60(b) are extraordinary remedies aimed at correcting clear errors or presenting

facts or controlling authority the district court overlooked."); *Prince v. Jelly*, Case No. 17-

CV-01284 (SRU), 2018 WL 806577, at *3 (D. Conn. Feb. 9, 2018) (denying Rule 60(b)(1)

motion because movant failed to show the "earlier decision was clearly erroneous"); *see

also Facebook*, 43 F. Supp. 3d at 373 (same).  The movant must also show that the court's

clear error "changed the outcome of the Court's judgment."  *Thatcher v. Lamanna*, Case

No. 17-CV-04540 (ALC), 2020 WL 1047087, at *2 (S.D.N.Y. Mar. 4, 2020) (cleaned up and

citations omitted).  Also like other motions for reconsideration:

> Rule 60(b)(1) is not to be invoked to provide a movant an additional
> opportunity to make arguments or attempt to win a point already carefully
> analyzed and justifiably disposed.

*Howard v. MTA Metro-N. Commuter R.R.*, 866 F. Supp. 2d 196, 210 (S.D.N.Y. 2011)

(cleaned up and citations omitted).

### c. The Purported Nominees Are Not Entitled to Reconsideration

64.     Through the Motion, the Purported Nominees improperly seek to

relitigate matters already decided with reference to facts not in the record and legal

arguments and authorities not raised to the Court before it rendered the March 13

Order or the March 25 Decision.  Indeed, while the Purported Nominees themselves cite

authority from this Court stating that Rule 59(e) and 60(b) movants seeking

reconsideration "must show that the court overlooked controlling decisions or factual

matters that might have materially influenced its earlier decision," Motion ¶ 26 (citation

omitted), in the very next paragraph the Purported Nominees make expressly clear that

their Motion is based upon "decisions and factual matters **not before** [the Court] that

**would have**" changed the outcome if they had been previously presented, *id.* ¶ 27.  For

that reason alone, reconsideration cannot be granted.  *Facebook*, 43 F. Supp. 3d at 373

(parties seeking reconsideration cannot "advance new facts, issues or arguments not

previously presented to the Court"); *Davidson v. Scully*, 172 F. Supp. 2d 458, 463
(S.D.N.Y. 2001) ("It is well established that the submission of new evidence is precluded
on a motion for reconsideration.").

65.     The Purported Nominees could have responded to and litigated the
Third Sanctions Motion and raised their new LLCA- and New York Convention[20]-based
arguments—after all, the Purported Nominees appeared in the Chapter 11 Cases and
had full notice of the proceedings, *see* [ECF No. 507] (Notice of Appearance filed by
counsel for Purported Nominees), and neither the LLCA nor the Convention are newly
available evidence or authority.  But the Purported Nominees chose not to respond and
be heard.  Having made that choice, and having failed to timely appeal the March 13
Order, the Purported Nominees must now live with the consequences.  *See Davidson*,
172 F. Supp. at 464 (S.D.N.Y. 2001) ("A motion for reconsideration should not be used to
put forward additional arguments which the movant could have made, but neglected to
make before judgment." (cleaned up and citation omitted)); *Richardson*, 667 B.R. at 513-
14 (rejecting argument that newly filed claims were new evidence because "the
information supporting the alleged claims was available to Movants prior to filing of
the [underlying] Motion").

66.     Further, the Motion makes arguments about the March 13 Order
already fully considered and decided by this Court twice, most recently and clearly in
the March 25 Decision in which the Court already denied reconsideration.  As noted
above, Rules 59(e) and Rule 60(b)(1) cannot be used to relitigate matters already
decided.  *See Davidson*, 172 F. Supp. 2d at 461 (Rule 59(e) "may [not] be used as a vehicle
for relitigating issues already decided by the Court"); *Howard*, 866 F. Supp. 2d at 210

---

[20]     The *Convention on Recognition and Enforcement of Foreign Arbitral Awards* (the "Convention").

("Rule 60(b)(1) is not to be invoked to provide a movant an additional opportunity to make arguments or attempt to win a point already carefully analyzed and justifiably disposed.") (cleaned up and citations omitted).

67.     In any event, the Purported Nominees' arguments do not establish any clear error warranting relief.  The Purported Nominees invoke the LLCA, arguing that it: (1) shows that Gas is not a subsidiary of Holdings, Motion ¶¶ 29-30; and (2) does not say that Gas needs Holdings' consent to pursue the Greek Arbitration Confirmation Proceeding, *id.* ¶¶ 33-35.  As a threshold matter, these are Gas's arguments to make, not the Purported Nominees, and the arguments should be disregarded on standing grounds.  *See supra* Section III.a.  Further: (1) that Gas is Holdings' subsidiary has been admitted many times on the record by the Purported Nominees' principals, *see supra* ¶ 42; and (2) the LLCA requires Holdings' consent before Gas can retain new counsel like the Kalavros firm, which was improperly retained to file the Greek Arbitration Confirmation Proceedings on Gas's behalf.  *See* LLCA § 3.2 & Schedule VII.  And finally, findings that Gas is a subsidiary and needs Holdings' consent to bring the Greek Arbitration Confirmation Proceeding were not necessary for the Court to determine that the Greek Arbitration Confirmation Proceeding was properly included in the March 13 Order, making these issues immaterial to the merits of the Motion.  *See Facebook, Thatcher, supra.*

68.     The Purported Nominees also newly argue that there is no evidence that the Greek Arbitration Confirmation Proceeding undermines the Confirmation Order or involves a key asset retained by Holdings under the Plan.  Motion ¶¶ 31-45.  But the fact that the Greek Arbitration Confirmation Proceeding violates the Confirmation Order and interferes with the Plan is plain.  The Plan provides that claims related to the Preferred Shares are a Retained Cause of Action

whose use vested with Holdings to control, *see supra* ¶ 52, and the Confirmation Order and Plan bind Gas and its owners to assist in implementing the Plan.  If the Purported Nominees wanted to challenge what the Plan says, or whether they could be bound by the Confirmation Order, those were also objections that needed to be raised much earlier—*i.e.*, before the confirmation trial concluded, or in a direct appeal of the Confirmation Order.  *See In re Indesco Int'l, Inc.*, 354 B.R. 600, 665 (Bankr. S.D.N.Y. 2006) (barring parties "from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization, to object to the confirmation of the plan or to appeal the confirmation order").  The Purported Nominees were silent then, too.

69.    Finally, the Purported Nominees also newly argue that the Convention allows for "concurrent enforcement and annulment actions" and that therefore the March 25 Order "cannot stand."  *See* Motion ¶¶ 46-50 (quoting *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 367 (5th Cir. 2003)).  It is puzzling that the Purported Nominees argue that the Convention allows for enforcement in Greece while emphasizing that they "have sought confirmation, **not enforcement,** of" the Arbitration Award.  Motion ¶ 48 (emphasis in original).  The Purported Nominees cite no case saying that the Convention contemplates that non-parties to an arbitration, the result of which is an unconfirmed award subject to ongoing vacatur proceedings in one forum, can rely upon the award to bootstrap their own non-party standing to seek confirmation of the award in another forum—but not to actually enforce the award, since a bankruptcy-court order requires that the award come back to the original forum before it can be enforced.  The Purported Nominees cite no such case because it does not exist; that is because their object is to obstruct a key aspect of a confirmed bankruptcy plan and prevent that plan's implementation and the Convention does not bless that.

70.    In any event, whether or not the Convention generally allows parties to undertake parallel confirmation proceedings is a distinct question from the relevant question here, *i.e.*, whether this Court clearly erred by overlooking documents and authorities not presented to it before concluding that the Greek Arbitration Confirmation Proceeding violates the Confirmation Order and the Plan.  And the Court got it right.

[*Remainder of page intentionally left blank*]

## **CONCLUSION**

For the foregoing reasons, Holdings respectfully requests that the Court:

(1) deny the Motion; and (2) grant such other and further relief as the Court deems just

and proper.

DATED:  May 22, 2025                         TOGUT, SEGAL & SEGAL LLP
         New York, New York                    By:

                                              */s/ John N. McClain III*
                                              KYLE J. ORTIZ
                                              BRYAN M. KOTLIAR
                                              BRIAN F. SHAUGHNESSY
                                              JOHN N. McCLAIN, III
                                            JARED C. BORRIELLO
                                            One Penn Plaza, Suite 3335
                                            New York, New York 10119
                                            (212) 594-5000

                                            *Counsel for Eletson Holdings Inc.*