**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Eletson Holdings Inc., *et al.*,<br><br>Debtors[1]. | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |

### MEMORANDUM OPINION AND ORDER GRANTING, IN PART, LEVONA HOLDINGS LTD.'S MOTION TO ENFORCE THE STIPULATED STAY RELIEF ORDER AND FOR SANCTIONS AGAINST THE PURPORTED PREFERRED NOMINEES PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE

---

[1] Prior to November 19, 2024, the debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "**Debtors**").  On March 5, 2025, the Court entered a final decree and order closing the Chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC.  Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the Chapter 11 case of Eletson Holdings Inc.  The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

Pending before the Court is the *Motion to Enforce The Stipulated Stay Relief Order And For Sanctions Against (A) The Purported Preferred Nominees And (B) Reed Smith LLP Pursuant To Section 105(a) Of The Bankruptcy Code And Inherent Authority* (the "**Motion**") filed by Levona Holdings Ltd. ("**Levona**") on January 16, 2025.  (ECF Docket No. 1367).  In support of the Motion is the *Declaration Of Isaac Nesser In Support of Levona's Motion To Enforce The Stipulated Stay Relief Order And For Sanctions Against (A) The Purported Preferred Nominees And (B) Reed Smith LLP Pursuant To Section 105(a) Of The Bankruptcy Code And Inherent Authority* (the "**Nesser Declaration**").  (ECF Docket No. 1369).  Levona seeks enforcement of the *Stipulation And Order Granting Alleged Debtor's Motion for Relief from Stay to Proceed with, or to Confirm the Inapplicability of, the Automatic Stay to Prepetition Arbitration Proceedings* entered by this Court on April 17, 2023 (the "**Stay Relief Order**," ECF Docket No. 48) based on alleged violations of the Stay Relief Order.  Levona alleges that Desimusco Trading Limited, Apargo Limited, and Fentanlon Limited (the purported "**Preferred Nominees**" or "**Cypriot Nominees**") violated the Stay Relief Order by: 1) changing Eletson Gas LLC's share registry to reflect the Arbitrator issuing the Final Award (hereafter, the "**Arbitration Award**")[2] and 2) commencing litigation against Levona in England (the "**English Enforcement Proceeding**"), allegedly seeking enforcement of the Arbitration Award.  (Motion, ¶ 2).  Based on the alleged violations of the Stay Relief Order, Levona seeks an order from the Court: 1) "restor[ing] the status quo" by ordering the parties to rescind the changes to the share registry

---

[2] As fully set forth below, *infra* Section III(A), confirmation proceedings related to the Arbitration Award are pending in the District Court before Judge Liman.

and other acts in violation of the Stay Relief Order; 2) ordering the parties to "terminate the English Enforcement Proceedings;" 3) enjoining the Cypriot Nominees from committing further acts or commencing further proceedings to enforce the Arbitration Award; and 4) imposing sanctions.  (Motion, ¶ 8).

On February 13, 2025, Levona filed a *Supplemental Memorandum of Law in Support of Levona's Motion to Enforce the Stipulated Relief Order and for Sanctions Against (A) The Purported Preferred Nominees and (B) Reed Smith* (the "**Supplemental Memorandum of Law**").  (ECF Docket No. 1431).  In support of the Supplemental Memorandum of Law, Levona filed the *Declaration of Isaac Nesser*.  (ECF Docket No. 1432).

Reorganized Eletson Holdings Inc. filed its *Joinder and Reservation of Rights of Eletson Holdings Inc. to Levona Holdings Ltd.'s Motion to Enforce the Stipulated Stay Relief Order and for Sanctions Against (A) the Purported Preferred Nominees and (B) Reed Smith LLP Pursuant to Section 105(a) of the Bankruptcy Code and Inherent Authority* (the "**Joinder**").  (ECF Docket No. 1387).

On February 14, 2025, Reed Smith LLP ("**Reed Smith**") filed its *Opposition to Levona Holdings Ltd.'s Motion to Enforce the Stipulated Stay Relief Order and for Sanctions Against (A) the Purported Preferred Nominees and (B) Reed Smith LLP Pursuant to Section 105(a) of the Bankruptcy Code and Inherent Authority* (the "**Reed Smith Objection**").  (ECF Docket No. 1434).  In support of the Reed Smith Objection is the *Declaration of Louis M. Solomon* (the "**Solomon Declaration**").  (ECF Docket No. 1435).

Also on February 14, 2025, the *Preferred Shareholders' Objection to Sanctions Motion* was filed (the "**Preferred Shareholders' Objection**") by the Cypriot Nominees.  (ECF Docket No. 1437).

3

On February 24, 2025, Levona filed its *Reply in Support of its Motion to Enforce the Stay Relief Order and For Sanctions Against (A) The Purported Preferred Nominees and (B) Reed Smith* (the "**Levona Reply**").  (ECF Docket No. 1476).  Accompanying the Levona Reply is the *Declaration of Isaac Nesser in Support of Levona's Reply* (the "**Nesser Reply Declaration**").[3] (ECF Docket No. 1478).

Subsequently, on February 26, 2025, Reed Smith filed the *Response to Levona Holdings Ltd.'s Supplemental Memorandum in Support of Motion to Enforce the Stipulated Stay Relief Order and for Sanctions Against (A) the Purported Preferred Nominees and (B) Reed Smith LLP* (the "**Reed Smith Response**").  In support of the Reed Smith Response is the *Declaration of Louis M. Solomon* (the "**Solomon Response Declaration**").  (ECF Docket No. 1487).

On March 3, 2025, the Court held a hearing (the "**March 3d Hearing**") on the Motion. (*See* ECF Docket No. 1521, *Transcript Regarding Hearing Held on March 3, 2025* (the "**March 3 Hr'g Tr.**")).

On April 2, 2025, Levona filed a *Letter* (the "**April 2d Letter**") addressing certain issues raised at the March 3d Hearing.  (ECF Docket No. 1575).

On April 10, 2025, Reed Smith filed a *Letter* in response to the April 2d Letter (the "**April 10th Letter**," together with the April 2d Letter, the "**Letters**").  (ECF Docket No. 1594).

The Court has reviewed and considered the Motion, the Reed Smith Objection, the Preferred Shareholders' Objection, the Levona Reply, the Reed Smith Response, all supporting declarations, the Letters, and the record as a whole.  For the reasons set forth herein, the Court **GRANTS**, in part, the Motion.

---

[3] Portions of certain filings and supporting documents were filed under seal.  (*See* Nesser Reply Declaration, Exhibits 1-3).  As further discussed, *infra*, the Court only relies on Exhibit 1 for purposes of this Opinion and Order.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and

(b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.).

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## III.    BACKGROUND

### A.  <u>THE ARBITRATION, THE ARBITRATION AWARD, AND THE STAY RELIEF ORDER</u>

Eletson Holdings Inc. ("**Eletson Holdings**") and Eletson Corporation ("**Corp.**") are part

of an international gas shipping enterprise (the "**Eletson Enterprise**").  (*See* ECF Docket No.

1212, at p. 12, *Memorandum Opinion and Order Confirming Petitioning Creditors' Amended

Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. And Its Affiliated Debtors,

Sustaining Objections to Competing Plans, and Denying Motion In Limine*).  The Eletson

Enterprise collectively owns and operates a fleet of gas tanker ships engaged in the business of

shipping refined petroleum products and crude oil.  (*Id.*).  On October 22, 2013, Eletson

Holdings partnered with Blackstone Tactical Opportunities ("**Blackstone**") to form Eletson Gas

LLC ("**Gas**"), whose preferred shares were held by Blackstone, while Eletson Holdings held the

common shares of Gas.  (*Id.*).

Subsequently, Murchinson and Blackstone reached a deal whereby Murchinson

purchased 100% of Blackstone's interests in Gas.  *See Eletson Holdings, Inc. v. Levona Holdings

Ltd.*, 23-cv-7331-LJL (S.D.N.Y. 2023), District Court Docket No. 83, *Opinion and Order* dated

February 9, 2024 at p. 11.[4]  In November 2021, Levona Ltd. ("**Levona**") acquired Blackstone's

---

[4] References to "**District Court Docket No.**" are to filings entered on the docket in *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 23-cv-7331-LJL (S.D.N.Y. 2023).

The case styled *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 23-cv-7331-LJL (S.D.N.Y. 2023) in the United States District Court for the Southern District of New York will be referred to generally as the "**Confirmation Proceedings**."

stake in Gas. *Id.* Levona is a special purpose entity affiliated with Murchinson. *Id.* Thereafter, Eletson Holdings entered into discussions and negotiations with Levona with respect to the preferred shares. *Id.*

In July 2022, Eletson Holdings and Corp. filed an arbitration against Levona to resolve a dispute regarding the ownership of the preferred shares of Eletson Gas (the "**Arbitration**"). *See* District Court Docket No. 83, *Opinion and Order* at p. 12. In the Arbitration, Eletson Holdings argued that it had fulfilled certain obligations to Levona and thus the preferred shares had been transferred to the Cypriot Nominees. *See* District Court Docket No. 67, Ex. 58. *Final Award* at p. 28.

On March 8, 2023, while the Arbitration was pending, Pach Shemen, VR Global, and Alpine (the "**Petitioning Creditors**") filed involuntary Chapter 7 bankruptcy petitions against the Debtors in this Court. (*See* Docket No. 1).

On April 17, 2023, the Court entered the Stay Relief Order to allow the Arbitration to continue during the pendency of the bankruptcy case. (ECF Docket No. 48). The relevant portions of the Stay Relief Order provide:

> 3. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified with respect to the Arbitration solely to the extent necessary and for the sole purpose of permitting a trial, any related pre-trial proceedings (including any remaining discovery), any related post-trial proceedings or briefing, and a final determination or award to be made by the Arbitrator, including any appeals, with respect to the claims currently pending in the Arbitration (the "Arbitration Award"). The Arbitration Parties are authorized to provide a copy of this Stipulation and Order to the Arbitrator.

> 4. Any Arbitration Award, whether in favor of any Arbitration Party, shall be stayed pending further order of the Bankruptcy Court on a motion noticed following the issuance of the Arbitration Award. For avoidance of doubt, no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent a further order of this Court.

6

(Stay Relief Order, ¶¶ 3, 4).  The Stay Relief Order provides that it was entered "to facilitate the [bankruptcy proceedings] and the orderly adjudication of the Stay Motion and to maintain the status quo in the Arbitration . . . ."  (ECF Docket No. 23).  The Stay Relief Order was signed by "Reed Smith LLP" as "[c]ounsel for [the Debtors,] Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC."  (Stay Relief Order, p. 5).

On September 6, 2023, the Debtors voluntarily stipulated to convert the Chapter 7 cases to Chapter 11 cases.  (ECF Docket No. 204); (*see also* ECF Docket No. 215).

While the bankruptcy cases progressed, the arbitrator issued the Arbitration Award on September 29, 2023.  *See* District Court Docket No. 83, p. 25 (citing District Court Docket No. 67, Ex.58).  In the Arbitration Award, the arbitrator found, *inter alia*, that the Gas preferred shares had been transferred to the Cypriot Nominees as of March 11, 2022.  *Id.* at p. 31. Additionally, the arbitrator awarded certain damages against Levona, Pach Shemen, and Murchinson to be paid to Corp., and to non-parties Gas and the Cypriot Nominees.  *See* District Court Docket No. 295, *Opinion and Order Denying Stay Pending Appeal* dated March 24, 2025 at p. 2.

Thereafter, on August 18, 2023, Eletson Holdings and Corp. filed a petition in the District Court to confirm the Arbitration Award (defined, *supra* note 4, as the "Confirmation Proceedings").  *See* District Court Docket No. 1.

On February 9, 2024, the District Court issued an *Opinion and Order*, which confirmed, in part, the Arbitration Award, but vacated certain portions of the damages and certain findings made by the arbitrator relating to Levona, Pach Shemen, and Murchinson's liability under an alter ego theory.  *See* District Court Docket No. 83 at pp. 123-124.

Meanwhile, on February 26, 2024, the Cypriot Nominees instructed Gas to (1) record their purported ownership in the "preferred shares" at issue in the Arbitration explicitly referencing the Arbitration Award (the "**Demand for Registration of Preferred Units of Eletson Gas LLC**") and (2) remove the then-current board members who had been appointed by Levona, and to appoint the new directors (the "**Notice of Removal and Appointment of New Directors**"). (Motion, ¶ 30, and filed under seal at ECF Docket No. 1478, Nesser Reply Declaration, Ex. 1). Also, the newly-constituted board executed a written consent that states that "any Director of [Eletson Gas] . . . is hereby authorized to take any action deemed necessary to comply with, and enforce, the aforementioned [Arbitration Award]" (the "**Unanimous Written Consent of the Board of Directors of Eletson Gas LLC**," together with "Demand for Registration of Preferred Units of Eletson Gas LLC" and "Notice of Removal and Appointment of New Directors," the "**February 26th Corporate Actions**"). (*Id.*).[5]

On September 6, 2024, the District Court granted Levona's motion to amend its vacatur petition to raise the possibility that the Debtors had withheld certain key documents from the arbitrator, and the District Court found:

> Crediting the inferences for which Levona argues, the newly-produced documents put the lie to Eletson's suggestion that these documents would be irrelevant. The documents are highly relevant both to the arbitration and to the proceedings before [the District Court]. They tend to show fraud in the arbitration proceeding.

*See* District Court Docket No. 162 at p. 16.

The District Court further stated that "Levona has proffered evidence that would suggest that the [allegedly withheld documents] may be just the tip of the iceberg and that there may be other relevant documents that would support its claims that extraordinary circumstances

---

[5] Although the February 26th Corporate Documents were filed under seal at Nesser Reply Declaration, Exhibit 1, the documents were quoted in their entirety in the publicly-filed version of the Motion at ¶ 30. The Court only quotes those portions in this Opinion and Order.

prevented it from filing earlier and that fraud was committed in the arbitration." *Id.* Accordingly, the District Court allowed Levona to take discovery to determine whether the Arbitration Award "was procured by fraud or undue means." *Id.* Further, on February 14, 2025, the District Court reaffirmed that the Arbitration Award was not yet final and was still "[s]ubject to the resolution of Levona's pending motion to vacate the award and its defense on fraud in the arbitration." District Court Docket No. 268.

On November 4, 2024, this Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Petitioning Creditors' Amended Joint Chapter 11 Plan of Eletson Holdings Inc. and Its Affiliated Debtors* (the "**Confirmation Order**"). (ECF Docket No. 1223). The Confirmation Order confirmed the Petitioning Creditors' Chapter 11 Plan [*see generally* ECF Docket No. 846]. (*Id.*).

On December 16, 2024, Gas filed a petition before the High Court of Justice, Business & Property Courts of England and Wales Commercial Court in the United Kingdom seeking an order enforcing the Arbitration Award against Levona (the "**English Proceeding**").[6] (Motion, ¶ 2); (*see also* ECF Docket No. 1699, *Letter re: Foreign Proceedings Status Report* (the "**Foreign Proceedings Status Letter**")).

On March 14, 2025, Eletson Holdings, through its new board pursuant to the Confirmation Order, was re-domiciled in the Republic of the Marshall Islands. (ECF Docket No. 1555, Exs. 2, 3).

The Court also notes that, on November 28, 2024, the Cypriot Nominees had filed a petition in the Piraeus Single Member Court of First Instance, styled the "Petition for

---

[6] *See* Motion, ¶ 30 fn. 8 ("In an abundance of caution, Levona . . . has not attached the English [Enforcement Proceeding] . . . because it was provided to Levona in the context of a confidential arbitration.").

Recognition of The Arbitration Award in Order to Be Executable in Greece" (the "**Greek Proceeding**").  (Foreign Proceedings Status Letter, Exhibit A).

On June 2, 2025, the District Court entered the *Preliminary Injunction Order* (the "**Anti-Suit Injunction Order**") and the *Preliminary Injunction Findings of Fact and Conclusions of Law* (the "**Anti-Suit Injunction**").  District Court Docket Nos. 407, 413.  The District Court granted Levona's requested relief seeking an anti-injunction against the Cypriot Nominees and ordered that the Cypriot Nominees and "their agents, servants, employees, attorneys; and any other persons who are in active concert or participation with Intervenors, including Eletson Gas LLC, shall: (a) take all steps necessary to dismiss the [Greek Proceeding] . . . and the [English Proceeding] seeking to confirm and/or enforce the arbitration award . . . ."  District Court Docket No. 407 at p. 1.

Judge Liman also found, in part, that there was cause to impose an anti-suit injunction on certain parties from pursuing petitions in Greece and the United Kingdom because "[t]he Gas that is appearing in the U.K. is controlled by the [Cypriot Nominees], claims to be owned by the [Cypriot Nominees], and is pursuing the interests of the [Cypriot Nominees]." District Court Docket No. 413, the Anti-Suit Injunction at p. 17.  The District Court also found, *inter alia*, that:

> resolution of [the Arbitration Proceeding] should be dispositive of the cases before the courts in Greece and England.  If the Court decides to vacate the Award, those courts should be prevented under principles of comity from recognizing and enforcing the [Arbitration] Award.  By contrast, if the Court decides not to vacate the [Arbitration] Award, there would be little if anything for the courts in England and Greece to do.

*Id.* at p. 22.  Further, the District Court explained that:

> [s]hould contempt proceedings be brought for violations of this injunction, the Court anticipates little difficulty in concluding that Gas, Laskarina Karastamati, Vassilis Kertsikoff, Vasilis Hadjieleftheriadis, Lassia Investment Company, Family Unity Trust Company, and Glafkos Trust Company are sufficiently "in privity" with, in "active concert" with, "aiding," or "abetting" Intervenors [Apargo Limited, Fentalton Limited,

and Desimusco Trading Limited] to bring them within range of the Court's contempt
power.

*Id.* at p. 21.

Thereafter, the Greek Proceeding and the English Proceeding were ultimately withdrawn
following the District Court's *Preliminary Injunction Order*.  *See* District Court Docket No. 422
(confirming that the Greek Proceeding and the English Proceeding were dismissed without
prejudice).

## B.  THE PARTIES' ARGUMENTS

On January 16, 2025, Levona filed the Motion alleging violations of the Stay Relief
Order.  Specifically, Levona argues that the "Violating Parties" (as defined in the Motion at p. 1)
violated the Stay Relief Order by: 1) "changing the share registry of Eletson Gas to reflect a
transfer of the preferred shares away from Levona and changing Eletson Gas's board of directors
by removing and replacing Levona's designees" [Motion, ¶ 30]; and 2) filing the English
Enforcement Proceeding, which "seeks recognition and enforcement of the [Arbitration] Award"
[Motion, ¶ 32].  Levona seeks the following relief:

> The Court should therefore use its equitable power to enforce the Stay Relief Order and
> restore the status quo by ordering the [Cypriot Nominees] to rescind the changes
> purportedly made to Eletson Gas's share registry, withdraw any associating filings made
> with the Trust Company of the Marshall Islands, Inc., and rescind any other actions taken
> or purportedly taken in furtherance of the [violations listed above].

> Similarly, the Court should order the Violating Parties to terminate immediately the
> English Enforcement Proceeding, which seeks "recognition and/or enforcement" of the
> Arbitration award in violation of the Stay Relief Order, and enjoin them from
> commencing any other proceeding to enforce the Arbitration Award.

(Motion, ¶¶ 35, 36).

Levona then argues that pursuant to the Bankruptcy Court's inherent powers, the Court
can issue a finding of contempt and an award of sanctions because: 1) the Stay Relief Order is
"clear and unambiguous;" 2) the alleged noncompliance is "clear and convincing" as evidenced

by the change in Gas's share registry, the replacement of the board of directors, and the filing of

the English Proceeding; and 3) the "Violating Parties" have not made "reasonable" efforts to

comply with the Stay Relief Order.  (Motion, pp. 18-24).  Accordingly, Levona seeks coercive

sanctions of up to $1,000 per day and compensatory sanctions.  (Motion, ¶¶ 52-54).

      In the Reed Smith Objection, Reed Smith argues that neither the Cypriot Nominees nor

Reed Smith is bound by the Stay Relief Order.  (Objection, ¶ 47).  Reed Smith argues that the

Stay Relief Order is limited to "[Eletson] Holdings, Corp, and Levona."  (*Id.* (citing Stay Relief

Order, ¶ D)).  Reed Smith argues that "even if the Court finds that the 'Violating Parties' were

subject to the Stay Relief Order, the act of updating the share registry does not rise to the level of

. . ." a violation of the Stay Relief Order.  (Objection, ¶ 51).  Reed Smith also asserts that: 1) the

Stay Relief Order does not "clearly and unambiguously prohibit" confirming the Arbitration

Award in other jurisdictions; and 2) Reed Smith has "diligently attempted to comply in a

reasonable manner" with the Stay Relief Order.  (Objection, ¶¶ 61, 65).

      Additionally, in opposition to the Motion, the Cypriot Nominees argue that: 1) they are

not bound by the "Stay Stipulation" (entered as the "Stay Relief Order") because they are not

"Arbitration Parties;" 2) Levona is incorrect in arguing that the Stay Relief Order applies

generally because the second sentence of the Stay Relief Order only applies to "Arbitration

Parties;" and 3) even if the "Stay Stipulation" applied to the Cypriot Nominees, there is no "clear

and convincing" evidence that the Cypriot Nominees acted in violation of the Stay Relief Order

because when the "Preferred Shares were transferred to the [Cypriot Nominees] on March 11,

2022 . . . [i]t is at that moment that the Preferred Shares are deemed to be held by the [Cypriot

Nominees] . . . ."  (Preferred Shareholders' Objection, ¶¶ 11, 15, 19).

In the April 2d Letter, Levona asserts that "entities associated with the [Cypriot Nominees]" have relied on changes to Eletson Gas's governance to assert their control over Gas in pending litigation in the Southern District of Texas involving "pending litigation related to the possession of Eletson Gas ships [where] entities associated with the Purported Preferred Nominees have recently relied on their Purported Governance Changes as the basis for a claim that they control Eletson Gas."  (April 2d Letter, p. 1).  Levona argues that this reliance is based on "misrepresentations . . . [that] double down on the Stay Relief Order violations . . . ." (*Id.* at p. 2).

In the April 10th Letter, Reed Smith asserts that Levona's attempts to exercise control over Gas amount to a violation of the Stay Relief Order and the pending Confirmation Proceedings.  (April 10th Letter, pp. 1-2).  Reed Smith also addresses certain other arguments regarding control of Gas.

## IV.   LEGAL ANALYSIS AND DISCUSSION

### A.  <u>THE PARTIES ARE BOUND BY THE TERMS OF THE STAY RELIEF ORDER</u>

Reed Smith argues that it is not bound by the Stay Relief Order because Reed Smith does not fall within the definition of "Arbitration Party."  (Reed Smith Objection, ¶¶ 47–48).  The Cypriot Nominees also argue that they "are not parties to or bound by the Stay [Relief Order]" because "[c]ourts have held a stipulation binds only those who are signed parties to it." (Preferred Shareholders Objection, ¶¶ 10, 11).

Levona asserts that the "first sentence of paragraph 4 [of the Stay Relief Order] is not limited to the Arbitration Parties but rather applies generally."  (Motion, ¶ 43).  Levona also argues that "limiting the [Stay Relief] Order's application to only Arbitration Parties would render the Order . . . contrary to the object of the stipulation . . . ."  (*Id.*).  Levona further asserts

that the Cypriot Nominees and Reed Smith are "in any event bound by the [Stay Relief] Order because they had notice of it and acted in concert with the Arbitration Parties." (*Id.*).

The Court agrees with Levona that the Stay Relief Order applies generally and broadly. The general application of the Stay Relief Order serves to prevent the use of the Arbitration Award until the proceedings related to the Arbitration conclude, and the parties return to this Court. (ECF Docket No. 23); (*see also* Stay Relief Order, ¶ 3 (lifting the stay "solely to the extent necessary and for the sole purpose" of permitting proceedings related to the Arbitration to continue)). The proceedings related to the Arbitration have not concluded in District Court. District Court Docket No. 268, Amended Opinion and Order dated February 14, 2025 (determining that confirmation of the Arbitration Award is subject to the resolution of Levona's pending motion to vacate the Arbitration Award based on allegations of fraud).

Further, the language of the Stay Relief Order would be inconsistent with its purpose if read the way the Cypriot Nominees propose. When interpreting its own orders, the Court will "give force and effect to every word… and make it as a whole consistent and reasonable. In applying this rule, effect must be given to that which is unavoidably and necessarily implied in [an order], as well as to that which is expressed in the most appropriate language." *In re Jamesway Corp.*, 205 BR 32, 35 (Bankr. S.D.N.Y. 1996) (quoting *In re Doty*, 129 Bankr. 571, 588 (Bankr. N.D. Ind. 1991)); *see also In re Petrie Retail, Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) (finding that a bankruptcy court has authority to "interpret and enforce its own orders").

In paragraph four (4) of the Stay Relief Order, the first sentence provides that "*[a]ny* Arbitration Award, whether in favor of any Arbitration Party, *shall be stayed* pending further order of the Bankruptcy Court on a motion noticed following the issuance of the Arbitration Award." (Stay Relief Order, ¶ 4) (emphasis added). This language, on its face, stays the

14

Arbitration Award as to any party, and no motion has been filed in the Bankruptcy Court seeking

such a "further order." The first sentence of paragraph 4 applies to all parties and is not limited

to just the "Arbitration Parties" because, in theory, any person or party can attempt to take action

based on the Arbitration Award. Indeed, the Arbitration Award itself grants certain relief and

damages to non-Arbitration Parties.

The Stay Relief Order further provides, in the second sentence of paragraph 4, that: "[f]or

avoidance of doubt, no Arbitration Party shall transfer, depose of, transact in, hypothecate,

encumber, impair or otherwise use any such Arbitration Award or any asset of property related

thereto absent a further order of this Court." (Stay Relief Order, ¶ 4). The second sentence does

not limit application of the entire Stay Relief Order to only the Arbitration Parties – rather, it

specifies the "Arbitration Parties" for the "avoidance of doubt" since they are among the parties

most likely to act on the Arbitration Award. Reed Smith's argument that paragraph 4 of the Stay

Relief Order only applies to "Arbitration Parties" is thus incorrect. Reed Smith asserts that

courts should not construe orders as "bind[ing] the world at large through a broadly worded

injunction." (See Reed Smith Objection, ¶ 48 (internal citations omitted)). However, neither

Reed Smith nor the Cypriot Nominees are "the world at large" – especially considering that Reed

Smith *signed* the Stay Relief Order on behalf of the Debtors (*see* Stay Relief Order, ¶ p. 5), and

Reed Smith was counsel for the Debtors in these bankruptcy proceedings for approximately

twenty (20) months. Further, binding parties that may seek to act, and have actually acted, upon

the Arbitration Award is not binding "the world" with an injunction meant to protect assets of the

estate. The Court also rejects the Cypriot Nominees' assertion that the Stay Relief Order does

not apply to them because they did not sign the Stipulation as one of the "Arbitration Parties"

[*see* Preferred Shareholders' Objection, ¶¶ 10, 11] for the same reasons stated earlier, as it would

be "contrary to the object of the stipulation" [Motion, ¶ 43]. Also, the Stay Relief Order states explicitly that enforcement "shall be stayed" without limiting this provision. (Reply, ¶ 4). Additionally, as the District Court has already found: "[Eletson] Gas, Laskarina Karastamati, Vassilis Kertsikoff, Vasilis Hadjieleftheriadis [individuals who are principles and representatives of the Cypriot Nominees], Lassia Investment Company, Family Unity Trust Company, and Glafkos Trust Company [the three entities that are the former majority shareholders] are sufficiently 'in privity' with, in 'active consent' with, 'aiding,' or 'abetting' [the Cypriot Nominees] to bring them within range of the Court's contempt power." *See* Anti-Suit Injunction, p. 21.

Furthermore, if the second sentence of paragraph 4 was read differently, it would alter the purpose of the Stay Relief Order. (*See generally*, Stay Relief Order, ¶ 3). Reading paragraph 4 of the Stay Relief Order as only applying to some "Arbitration Parties" would divest the Stay Relief Order of its purpose: to prevent any party from "transact[ing] in, hypothecat[ing], encumber[ing], impair[ing], or otherwise us[ing]" Arbitration Award absent an order of this Court. (Stay Relief Order, ¶ 3). Such construction would "render the Order ineffectual, contrary to the object of the stipulation . . . because . . . non-parties could then dispose of the [Arbitration] Award." (Motion, ¶ 43). Force is given to the understanding of an order "as a whole," *(see In re Jamesway Corp.*, 205 BR at 35), and the Court "will not adopt a construction" of the Stay Relief Order that would render it ineffective. *In re Nat'l Events Holdings, LLC*, 2025 Bankr. LEXIS 316, at *15 (Bankr. S.D.N.Y. February 12, 2025) (relying upon *In re Jamesway Corp.*, and determining that the purpose of the order should inform the understanding of specific clauses). As stated earlier, the purpose of the Stay Relief Order was to resolve certain objections to the Stay Relief Motion [ECF Docket Nos. 5-8] and to permit proceedings related to the Arbitration

to proceed.  Indeed, if the Stay Relief Order permitted *some* parties to pursue litigation or act

upon the Arbitration Award, that would defeat the overall purpose of the Stay Relief Order –

ensuring the Arbitration continues without assets potentially leaving the estate.  (Stay Relief

Order, ¶ 3 (lifting the stay "solely to the extent necessary and for the sole purpose of permitting"

the Arbitration to continue)).  This is also consistent with the District Court's Anti-Suit

Injunction, which determined that permitting enforcement of the Arbitration Award in foreign

jurisdictions could frustrate the Confirmation Proceedings because "resolution of [the

Confirmation Proceedings] should be dispositive of the cases before the courts in Greece and

England.  If the [District Court] decides to vacate the Award, those courts should be prevented

under principles of comity from recognizing and enforcing the Award."  Anti-Suit Injunction, p.

22; *see also id.* at p. 24 (". . . a court in a primary jurisdiction must be able to enjoin proceedings

in a court in a secondary jurisdiction when those proceedings in a secondary jurisdiction threaten

to undermine the first court's authority to vacate, set aside, or suspend the award.").

Accordingly, reading the specific language of paragraph 4 within the context of the

purpose of the Stay Relief Order makes clear that the Stay Relief Order applies generally – to

more than just the "Arbitration Parties."  (*See* Stay Relief Order, ¶ 4 ("*Any* Arbitration Award,

whether in favor of *any* Arbitration Party, *shall be stayed* pending further order of the

Bankruptcy Court . . .") (emphasis added)).  Therefore, the Stay Relief Order applies to the

Cypriot Nominees and to Reed Smith.

## B.  VIOLATIONS OF THE STAY RELIEF ORDER

### a.  The February 26th Corporate Actions Are Violations of the Stay Relief Order.

Levona alleges that the "purported amendment of the share registry of Eletson Gas and

purported replacement of Eletson Gas's board of directors, both undertaken in explicit reliance

on the [Arbitration] Award, violate the language and purpose of the Stay Relief Order, which

provides that the [Arbitration] Award is 'stayed . . . pending further order of the Bankruptcy

Court.'" (Motion, ¶ 35). The Court agrees with Levona that the February 26th Corporate

Actions, which purport to: appoint a new board of directors for Gas, institute changes to the

share registry based on the Arbitration Award, and authorize actions to enforce the Arbitration

Award, constitute violations of the Stay Relief Order. (Reply, ¶ 30).

As explained earlier, the Arbitration Award (dated September 29, 2023) found that the

"preferred interests in [Gas] were transferred to the [Cypriot Nominees], effective as of March

11, 2022 . . . ." (ECF Docket No. 286-2 at p. 96). This Court had entered the Stay Relief Order

on April 17, 2023. (ECF Docket No. 48). On February 9, 2024, the District Court confirmed the

Arbitration Award in part (but subsequently, on September 6, 2024, granted Levona's motion to

amend the vacatur petition to raise the possibility of fraud in the Arbitration). District Court

Docket Nos. 83, 162. Through the February 26th Corporate Actions, the Cypriot Nominees

directed Gas to (1) register their purported ownership of the preferred interests at issue in the

Arbitration; (2) remove the current Levona board members and appoint their own members; and

(3) "take any action deemed necessary to comply with, and enforce, the [Arbitration Award]."

(Motion, ¶ 30). The Court finds that the February 26th Corporate Actions violate the Stay Relief

Order.

Regarding the February 26th Corporate Actions, the documents entitled "Demand for

Registration of Preferred Units of Eletson Gas" and "Unanimous Written Consent of the Board

of Directors of Eletson Gas LLC," openly appear to be enforcing the Arbitration Award and

Judge Liman's partial confirmation thereof (subject to, *inter alia*, resolution of Levona's vacatur

petition). (Motion, ¶ 30 and filed under seal at Ex. 1 to the Nesser Reply Declaration). Indeed,

the document entitled "Demand for Registration of Preferred Units of Eletson Gas" states that "as declared and confirmed by the [Arbitration Award] . . . [and] confirmed by the Hon. Judge Lewis J. Liman . . .", the preferred shares of Gas are purportedly owned by the Cypriot Nominees and thus Eletson Gas is "hereby requested to proceed to the recordation of the . . . [preferred shares] in the Register of the Company." (*Id.*). Further, the "Unanimous Written Consent of the Board of Directors of Eletson Gas LLC" states that "any Director of the Company, each acting singly, be and is hereby authorized to take any action deemed necessary to comply with, and enforce, the aforementioned [A]ward." (*Id.*). Additionally, the document entitled "Notice of Removal and Appointment of New Directors" expressly requests a change of the Gas board. (*Id.* (Cypriot Nominees informing Gas that the former directors appointed by Levona "are removed from their respective capacities as Directors and have been replaced with Eleni Chatzieleftheriadi, Konstantinos Kertsikoff, Adrianos Psomadakis-Karastamatis, and Maria Binou")).

The Court agrees with Levona that updating the share registry and replacing Gas's board of directors are not "ministerial acts." (Levona Reply, ¶ 11); (*see also* Reed Smith Objection, ¶ 51). Changing the official share registry to reflect a new controlling interest is a significant corporate event. *See*, *e.g.*, *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 395 (S.D.N.Y. 2011) (characterizing the change of control because of a merger as "consequential" and "important"). Also, updating the share registry and changing the board violate the Stay Relief Order because such changes can only occur if the Cypriot Nominees hold the preferred interests, which is an issue that is still being determined in the District Court. (*See generally* Confirmation Proceedings). The express language of the Stay Relief Order "stays" any actions taken in furtherance of the "Arbitration Award" as discussed, *supra* Section (IV)(A). (Stay Relief Order,

¶ 4).  The Cypriot Nominees assert that the changes to the share registry "are only a reflection of the reality confirmed by the September 2023 Arbitration Award" and therefore not a violation of the Stay Relief Order.  (Preferred Shareholders Objection, ¶ 21).  However, Judge Liman's decisions in April 2024, September 2024, and February 2025 confirm that there has been no finality as to the Arbitration Award.  District Court Docket Nos. 104, 162, 268; *see also* Anti-Suit Injunction, pp. 3-4.  Indeed, on February 14, 2025, the District Court reaffirmed that the Arbitration Award was still "[s]ubject to the resolution of Levona's pending motion to vacate the award and its defense on fraud in the arbitration."  District Court Docket No. 268.  Therefore, actions such as the "Unanimous Written Consent of the Board of Directors of Eletson Gas LLC," which states that Gas "is hereby authorized to take any action deemed necessary to comply with, and *enforce*, the aforementioned [A]ward," constitute a direct violation of the Stay Relief Order. (Motion, ¶ 30).

Accordingly, the changes to the share registry and to the board of Eletson Gas constitute violations of the Stay Relief Order.  Thus, the Cypriot Nominees are in violation of the Stay Relief Order.

### b. The English Proceeding to Enforce the Arbitration Award Has Been Withdrawn Pursuant to the Anti-Suit Injunction.

Levona also alleges that the English Enforcement Proceeding violates the Stay Relief Order.  Levona asserts that "Reed Smith filed the English Enforcement Proceeding on December 16, 2024, purportedly on behalf of Eletson Gas LLC," and that the proceeding seeks "recognition and enforcement of the [Arbitration] Award."  (Motion, ¶ 32).  Levona argues that the English Enforcement Proceeding was filed allegedly "so as to address a perceived failure by Levona to pay money that is purportedly 'due and owing' – ignoring that *no* money is due or owing, and that *no* money can be collected, because the [Arbitration] Award is ***stayed*** by order of this Court .

. . ." (Motion, ¶ 45) (emphasis in the Motion). Levona proceeds to assert that while filings in the English Enforcement Proceeding indicate that they will await resolution in the District Court, the filings do not state that enforcement will await an order from this Court "as required by the Stay Relief Order." (Motion, ¶ 45, n. 10).

In opposition, Reed Smith, on behalf of Gas, argues that it is "patently incorrect" that Gas would not await an order of this Court. (Reed Smith Objection, ¶ 66). Reed Smith argues that the English Enforcement Proceeding seeks to simply recognize the Arbitration Award. (*Id.* at ¶ 63). Further, Reed Smith asserts that there is an explicit reference to the Stay Relief Order in the English Enforcement Proceeding, and Reed Smith makes clear in the Proceeding that Eletson Gas will not take further action without leave of the Bankruptcy Court. (Solomon Declaration, Exhibit I at ¶ 94).

The Court need not address the merits of the arguments raised on these issues because the English Proceeding has since been withdrawn pursuant to the District Court's Anti-Suit Injunction.[7] District Court Docket No. 407. The District Court's Anti-Suit Injunction directed that Gas "shall take all steps necessary to dismiss the proceedings they have initiated in . . . the U.K. seeking to confirm and/or enforce the arbitration award . . . ." District Court Docket No. 407. The English Proceeding was thus dismissed pursuant to the District Court's order. *See* District Court Docket No. 422 (confirming that the English Proceeding was dismissed without prejudice). Based on Levona's failure to ascribe actions taken by or under the direction of Reed Smith in contravention of the Stay Relief Order, the Court finds that Reed Smith has not violated the Stay Relief Order.

---

[7] The Court also need not address the Greek proceeding seeking enforcement of the Arbitration Award as it was not raised by the parties and was also dismissed subsequent to Judge Liman's Anti-Suit Injunction. (*See* Foreign Proceedings Status Letter).

## C.  <u>FAILURE TO COMPLY WITH THE STAY RELIEF ORDER WARRANTS A FINDING OF CONTEMPT</u>

This Court has inherent power to enforce compliance with its orders through civil contempt.  *See In re Markus*, 78 F.4th 554, 563 (2d Cir. 2023) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (internal citations omitted).  The power to hold a party in contempt and impose sanctions is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* at 564 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44).  Indeed, bankruptcy courts have the inherent power to enforce compliance with their own orders and sanction noncompliant parties.  *See Markus*, 78 F.4th at 570 ("A bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's order.")

Therefore, to obtain a finding of contempt and an order imposing sanctions, the movant must establish that: "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply."  *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. 527, 535 (Bankr. S.D.N.Y. 2007) (citations omitted); (*see also* ECF Docket No. 1495, Feb. 20 Order sanctioning parties due to noncompliance with the Confirmation Order); (*see further* ECF Docket No. 1537, March 13 Order sanctioning parties due to noncompliance with Confirmation Order).  The "clear and convincing" standard requires a "quantum of proof adequate to demonstrate the 'reasonable certainty' that a violation occurred."  *In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 535.

### a. The Stay Relief Order is Clear and Unambiguous.

Levona argues that the Stay Relief Order is "clear and unambiguous." (Levona Sanctions Motion, at ¶ 41); (*see also* Levona Reply, ¶ 18). Levona asserts that the Stay Relief Order "clearly and unambiguously" states that "any arbitration Award" will be stayed pending further order of this Court. (Levona Reply, ¶ 18).

Reed Smith argues that the Stay Relief Order does not apply to Reed Smith and Gas, and that "even if it had [applied to other parties], Levona has not established that [] the Stay Relief Order clearly and unambiguously prohibits Gas from filing the English [Proceeding] . . . ." (Reed Smith Opposition, ¶ 58). Reed Smith asserts that the Stay Relief Order is not clear and unambiguous regarding the potential for multiple award confirmation proceedings. (Reed Smith Opposition, ¶¶ 59–64).[8] The Cypriot Nominees do not address whether the Stay Relief Order is "clear and unambiguous." (Preferred Shareholders Objection, ¶¶ 18-21).

The Court finds that the Stay Relief Order is clear and unambiguous. As an initial matter, the recitals of the Stay Relief Order explain its context. (Stay Relief Order, ¶¶ A–I, ¶ 1 ("[T]he above recitals are incorporated herein in their entirety.")). Eletson Holdings, prior to plan confirmation, sought entry of the Stay Relief Order to modify the automatic stay "to permit the Arbitration to continue before the Arbitrator." (*Id.* at ¶ F). The Stay Relief Order was thus entered "solely and to the extent necessary and for the sole purpose of permitting" the proceedings related to the Arbitration to continue, while at the same time staying any "Arbitration Award . . . pending further order of the Bankruptcy Court." (Stay Relief Order, ¶¶ 3, 4).

---

[8] Given that the Court has determined that the only actions in violation of the Stay Relief Order are the actions of the Cypriot Nominees, *supra* Section (IV)(B)(a), the Court will not address these arguments asserted by Reed Smith, unless otherwise necessary.

As determined, *supra* Section (IV)(A), the Stay Relief Order generally applies to all

persons – but, more importantly, it certainly applies to the parties at issue in the Motion. The

clear objective of the Stay Relief Order is to allow the Arbitration to proceed without violating

the automatic stay. (Stay Relief Order, ¶ F). The Stay Relief Order allows "a final determination

or award to be made by the Arbitrator." (*Id.* at ¶ 3). However, any resulting "Arbitration Award

in favor of any Arbitration Party, *shall be stayed* pending further order of the Bankruptcy Court"

to prevent the loss of an estate asset potentially subject to this Court's jurisdiction. (*Id.* at ¶ 4)

(emphasis added).

### b. Proof of Noncompliance with the Stay Relief Order is Clear and Convincing.

Next, the Court will address whether certain parties' noncompliance is "clear and

convincing." As stated earlier, the "clear and convincing" standard requires a "quantum of proof

adequate to demonstrate the 'reasonable certainty' that a violation occurred." *In re Chief Exec.*

*Officers Clubs, Inc.*, 359 B.R. at 535.

First, as to Reed Smith, the February 26th Corporate Actions do not demonstrate that

Reed Smith violated the Stay Relief Order. Levona has not offered any evidence demonstrating

that Reed Smith facilitated the February 26th Corporate Actions. (Motion, ¶¶ 44-46). In

addition, the English Proceeding has been withdrawn. (*See* Foreign Proceedings Status Letter).

Also, the documents setting forth the February 26th Corporate Actions themselves do not

identify Reed Smith. (*See generally* Motion, ¶ 30); (*see also* Nesser Reply Declaration).

Moreover, producing, or failing to produce, information about Gas's share registry does not itself

violate the Stay Relief Order. (*See* Motion, ¶¶ 19–28 (highlighting Levona's requests to review

the share registry)). Thus, the Court finds that Reed Smith is not in violation of the Stay Relief

Order based on the actions alleged in the instant Motion.

24

Second, as to the Cypriot Nominees, Levona has met its burden of demonstrating with "reasonable certainty" that the Cypriot Nominees have violated the Stay Relief Order.  As discussed, *supra* Section (IV)(B)(a), the Cypriot Nominees and/or their representatives acted based on the Arbitration Award, in violation of the Stay Relief Order by effectuating the February 26th Corporate Actions.  (Motion, ¶ 30 (citing Nesser Reply Declaration, Ex. 1, the "Demand for Registration of Preferred Units of Eletson Gas LLC," and the "Notice of Removal and Appointment of New Directors" initiated by the Cypriot Nominees directing changes to the share registry and board of directors)).  Indeed, in the "Demand for Registration of Preferred Units of Eletson Gas LLC," the Cypriot Nominees directed that Gas "proceed [with] the recordation of the . . . [preferred shares] in the Register of the Company" upon and "as declared and confirmed by the [Arbitration Award] . . . [and] confirmed by the Hon. Judge Lewis J. Liman . . . ." (Motion, ¶ 30).  Additionally, appointing a new board for Gas, as reflected in the "Notice of Removal and Appointment of New Directors," is a further example of the Cypriot Nominees' purported reliance on the Arbitration Award to implement a corporate governance change. (Motion, ¶ 44).  In addition, the "Unanimous Written Consent of the Board of Directors of Eletson Gas LLC" states that "any Director of the Company, each acting singly, be and is hereby authorized to take any action deemed necessary to comply with, and enforce, the aforementioned [A]ward" (*Id.* at 30).

The Cypriot Nominees argue that even if the Stay Relief Order applies to them, Levona has not met the "heavy burden of proving by *clear and convincing evidence* that the Preferred Shareholders [the Cypriot Nominees] acted in violation of the Stay Stipulation . . . ."  (Preferred Shareholders Objection, ¶ 19).  They argue that the Preferred Shares were transferred to them on March 11, 2022 and therefore the February 26th Corporate Actions "are only a reflection of the

reality confirmed by the September 2023 Arbitration Award . . . ." (*Id.* at ¶ 21). However, changing the share registry to transfer the preferred shares away from Levona and replacing Gas's board of directors reflect an intention to substantively enforce the Arbitration Award. (Motion, ¶ 30). The Cypriot Nominees do not refute that such actions were undertaken. (*See* Reply, ¶ 19). Therefore, the evidence is "clear and convincing" that the Cypriot Nominees are not in compliance with the Stay Relief Order.

### c.    Parties Have Not Diligently Attempted to Comply in a Reasonable Manner.

Levona argues that the alleged Violating Parties "stonewalle[d]" their repeated efforts to obtain information on Eletson Gas's share registry. (Motion, ¶ 48). They assert that the "Violating Parties' months-long cover-up campaign" to conceal the changes to the share registry "shows a failure to" diligently comply with the Stay Relief Order. (*Id.* at ¶ 49). Additionally, Levona argues that the specific nature of the February 26th Corporate Actions demonstrates the alleged Violating Parties' noncompliance. (*Id.* at ¶ 50). Reed Smith counters that it produced the share registry on August 29, 2024. (Reed Smith Opposition, ¶ 35). Furthermore, Reed Smith argues that Levona has made no showing that Reed Smith had the authority to execute the February 26th Corporate Actions. (*See id.* at ¶ 54). The Cypriot Nominees do not address this prong, only arguing that Levona failed to meet its burden by "clear and convincing evidence." (Preferred Shareholders' Objection, ¶ 19).

Courts have held that the party(s) to be held in contempt must not have diligently attempted to comply with the Court's order in a reasonable manner. *See In re Chief Exec. Officers Clubs, Inc.*, 359 B.R. at 535.

First, as set forth, *supra* Section (IV)(C)(b), Levona has not established that Reed Smith did not diligently attempt to comply in a reasonable manner with the Stay Relief Order based on

the withdrawal of the English Enforcement Proceeding and specific actions taken with respect to the changes in the share registry and the board composition. (*See* Motion, ¶¶ 49-51).

Second, as to the Cypriot Nominees, the February 26th Corporate Actions clearly demonstrate that the Cypriot Nominees did not comply in a reasonable manner with the Stay Relief Order. Parties must have "made diligent and energetic efforts to comply in a reasonable manner [with the order]." *Nike, Inc. v. Wu*, 2020 WL 257475, at *25 (S.D.N.Y. Jan. 17, 2020). Parties need not exhaust every available option to comply with an order. *See id.* The Second Circuit has indicated "substantial" compliance is the appropriate standard for contempt. *See id.* In the instant case, the Cypriot Nominees have clearly failed to comply with the Stay Relief Order. As demonstrated, *supra* Section (IV)(B)(a), the February 26th Corporate Actions seek to enforce and effectuate the Arbitration Award in violation of the Stay Relief Order. (Stay Relief Order, ¶¶ 3–4). Such actions do not reflect "substantial" compliance with the Stay Relief Order. (*Id.*). Instead, the Cypriot Nominees defend their actions by asserting that the update to the share registry is "only a reflection of the reality confirmed by the September 2023 Arbitration Award . . ." [Preferred Shareholders' Objection, ¶ 21], ignoring the ongoing proceedings in the District Court. Therefore, the Cypriot Nominees have not diligently attempted to comply and have failed to justify their noncompliance of the Stay Relief Order [*see* Preferred Shareholders' Objection, ¶ 21]. The Cypriot Nominees are, thus, in contempt of the Stay Relief Order.

### D.  **THE COURT HAS AUTHORITY TO IMPOSE MONETARY SANCTIONS**

Where the court finds a party in contempt, it may impose monetary sanctions upon that party. *See In re Markus*, 78 F.4th at 570. (finding that a bankruptcy court can impose sanctions to compensate an injured party and secure future compliance). In *Markus*, the Second Circuit upheld the bankruptcy court's decision, which imposed a daily $1,000 sanction upon debtor's counsel for failure to comply with the court's orders. *Id.* at 570. The Court can impose

27

sanctions relative to the "character and magnitude of the harm threatened by continued
contumacy, and the probable effectiveness of any suggested sanction in bringing about
compliance with the court order." *In re Chief Exec. Officers, 359 B.R.* at *530*; (*see also* ECF
Docket No. 1495 (imposing sanctions of $1,000 per party per day on certain parties)); (*see also*
ECF Docket No. 1537 (imposing sanctions of $5,000 per party per day)); (*see also* ECF Docket
No. 1716 (imposing sanctions of $10,000 and $5,000 per day on certain parties)).

V.    **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**, in part, and it is **HEREBY**

**ORDERED** that:

1. The Cypriot Nominees (Desimusco Trading Co., Apargo Ltd., and Fentalon Ltd.) are found to be in contempt for violating the Stay Relief Order.

2. The Cypriot Nominees are ordered within five (5) business days to rescind their changes to the share registry and to the board of directors of Eletson Gas LLC and are prevented from taking further acts in violation of the Stay Relief Order.

3. If the Cypriot Nominees do not comply within five (5) business days of entry of this Order, the Court will impose coercive monetary sanctions in the amount of $1,000 per day per party against the Cypriot Nominees until compliance with this Order has been effectuated.

4. This Order shall be immediately effective and enforceable upon its entry.

5. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.


**IT IS SO ORDERED:**

Dated:  New York, New York
         August 1, 2025                          /S/ John P. Mastando III
                                        **HONORABLE JOHN P. MASTANDO III**
                                        **UNITED STATES BANKRUPTCY JUDGE**