UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
ELETSON HOLDINGS INC.,[1]                                     :    Case No. 23-10322 (JPM)
                                                              :
                    Debtor.                                   :
                                                              :
---------------------------------------------------------------x

# ELETSON HOLDINGS INC.'S RESPONSE TO OBJECTIONS TO THE APPLICATION FOR ATTORNEYS' FEES AND COSTS

---

[1] Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

23-10322-jpm    Doc 1787    Filed 08/17/25    Entered 08/17/25 14:20:00    Main Document
Pg 2 of 10

Eletson Holdings Inc. ("Holdings"), by and through its undersigned counsel, hereby submits this reply (this "Reply") to (i) the objection [Docket No. 1755] (the "Objection") filed by the falsely characterized "Eletson Holdings Inc. entity that the Second Circuit recognizes[2] as being represented by the undersigned counsel in *In re: Eletson Holdings, Inc.*, No. 25-176, Dkt. 50.1" ("Respondent") to Holdings' Application for Attorneys' Fees and Costs [Docket No. 1729] (the "Fee Application") and (ii) the joinder [Docket No. 1782] (the "Joinder") to the Objection filed by the Former Majority Shareholders and Elafonnissos Shipping Corporation.[3] Holdings respectfully states:

**REPLY**

1. The fees and costs requested in the Fee Application are reasonable and were based on necessary services to combat the actions taken by the Violating Parties. Actions that this Court has determined were perpetrated in contempt of Court pursuant to numerous orders. Holdings respectfully requests that the Objection and the Joinder be overruled, and the Fee Application be granted, subject to certain deductions or deferrals Holdings agrees to make as set forth below.

**I.    Respondent's Responsibility**

2. "Respondent" is twisting itself into knots to not identify itself as "Purported Provisional Holdings," a fake entity that the Greek court no longer recognizes. Yet, for the past eight months, Reed Smith LLP ("Reed Smith") who is now "Limited Counsel for the Respondent" (despite this Court previously holding that any purported limited scope representation by Reed

---

[2] Holdings disputes this latest creative nomenclature for Purported Provisional Holdings and the collection of individuals holding themselves out as the Purported Provisional Board of this fictional entity. The use of the term "Provisional Holdings" is not an admission that some fictional alternative to Holdings exists. "Provisional Holdings" is simply a shorthand for the collection of individuals that call themselves the Provisional Board of Holdings in violation of multiple orders of this Court and the Bankruptcy Court. Nevertheless, what remains is an enterprise – a coordinated group of individuals including former insiders, owners and counsel – acting under the "Provisional Holdings" name to assert positions adverse to Holdings, including attempts to obstruct its Plan.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Fee Application.

2

Smith was not appropriate)[4] appeared in this Court and the appellate courts, opposing various Sanctions Motions, as counsel for Purported Provisional Holdings (which is really shorthand for the collection of individuals that comprise the Purported Provisional Board). "Respondent" (or Purported Provisional Holdings) cannot have it both ways: either it does not exist and therefore its Objection should be disregarded or it is pretending to exist for limited purposes and should be held responsible for the attorneys' fees and costs incurred by Holdings to overcome the actions taken by Purported Provisional Holdings (and the underlying parties directing this fictitious entity), designed to obstruct implementation of the Plan.

3.   Remarkably, the thrust of the argument put forth by Reed Smith seems to be that its purported clients (whoever they are) should be rewarded for the challenges Reed Smith created by purporting to represent entities that don't exist and Reed Smith's ever shifting nomenclature for such entities making it such that they were not specifically named (in part because any mention of them is paraded around to other courts as evidence of their existence). Of course, it is challenging to specifically name entities prior to their invention. But it is unquestionable that the collection of people behind the fiction have been involved in the global efforts to obstruct implementation of the Plan.

**II.  Fees Incurred in Connection with the Greek
And Liberian Proceedings Were Justifiable**

4.   The Objection asserts that Holdings should not be entitled to fees relating to recognition and enforcement proceedings in Greece and Liberia because Holdings would have commenced those actions anyway. This is simply not true. Holdings would not have needed to take the extensive courses of action in Greece and Liberia *but for* the Violating Parties' failure to take

---

[4]   *See* Opinion and Order Denying Without Prejudice Reed Smith's Motion to Withdraw Its Limited Representation of Purported Provisional Eletson Holdings Inc. [Docket No. 1655] at 6.

3

previously directed actions in connection with implementation of the Plan. The Attorneys' Fees Motion (and the accompanying declarations from Greek and Liberian counsel) specifically outlined the sequence of events where the Violating Parties either took affirmative action or ignored Court orders to provide information that required Holdings to take counter-measures in these jurisdictions.[5]

5. The Court has, in multiple oral decisions and orders, expressly recognized Holdings' right to seek fees and expenses in connection with the Greek and Liberian proceedings. *See* AOR Sanctions Order [Docket No. 1495] ¶ 3 ("Reorganized Holding, Inc.'s rights are expressly reserved to seek additional coercive and compensatory monetary sanctions in to-be-determined amounts, including, without limitation, to pay for Reorganized Eletson Holdings, Inc.'s fees and expenses in connection with . . . the Liberian proceedings, the Greek proceedings, and all further actions related hereto."); *See* Foreign Opp. Sanctions Order [Docket No. 1537] ¶ 4 ("Holdings' rights are expressly reserved to seek additional coercive and compensatory monetary sanctions in to-be-determined amounts, including, without limitation, to pay for Holdings' fees and expenses in connection with the . . . Liberian proceedings, Greek proceedings, and all further actions related hereto.")). In the March 12 Decision, the Court, in finding that "noncompliance was clear and convincing" for purposes of imposing sanctions on the Violating Parties, stated that it agreed with "Holdings that the former majority and minority shareholders, the purported provisional board, purported Provisional Eletson Holdings, and Mr. Hadjieleftheriadis have a clear record of noncompliance . . . . These parties have 'actively opposed judicial recognition proceedings filed by Reorganized Eletson Holdings in Liberia and Greece." *See* March 12 Hr'g Tr. 75:13-25. Finally, the Foreign Oppositions

---

[5] As noted in the Orfanidou Declaration annexed to the Fee Application, the Fee Application excluded certain services and fees unrelated to the Violating Parties' actions. Orfanidou Declaration at 4, n.3.

4

Sanctions Order ordered the Violating Parties to "withdraw any and all filings that oppose or undermine in any way the judicial recognition of the Confirmation Order, including, without limitation, filings in the Liberian Proceedings and the Greek Proceedings." *See* Foreign Opp. Sanctions Order, ¶ 1.

6. Accordingly, at the May 15th hearing, the Court found - in granting the Attorneys' Fees Motion - that Holdings was entitled to attorney's fees for the Violating Parties' failure to comply with its orders, including the Foreign Opposition Sanctions Order. *See* May 15 Hr'g Tr. 46:23-25; 47:1-11 (noting that the Foreign Opposition Sanctions Order expressly reserved Holdings' right to seek fees and expenses in connection with, among other things, the Liberian proceedings and the Greek proceedings).

7. The actions taken to redomicile Holdings in the Marshall Islands was only necessary due to all the obstacles the Violating Parties created in replacing the AOR in Liberia (and therefore all a result of the Violating Parties' failure to comply with the Confirmation Order and the Sanctions Orders). The Fee Application only seeks approximately $2,530.88 in fees incurred by Togut during the requested time period in connection with redomiciling. In an effort to streamline the Court's consideration of the Fee Application, Holdings agrees to carve-out these discrete fees relating to redomiciling in the Marshall Islands for the purposes of *this* Fee Application and reserves the right to seek further fees and costs in connection with such actions (including fees incurred by foreign counsel) at a later date.

### III. Fees Relating to Appeals

8. Holdings does not currently seek fees in connection with the appeal from the (unstayed) Confirmation Order, which was the subject of a colloquy from the May 15th hearing transcript misquoted by the Respondent (*see* Objection ¶ 39). Holdings maintains that the

5

sanctioned Violating Parties should ultimately be responsible for all fees and expenses in connection with the various appeals of the Sanctions Orders as part of their concerted effort to obstruct the Plan. However, for the purpose of *this* Fee Application and proposed order, Holdings agrees to carve-out fees relating to the appeals of the various Sanctions Orders and reserves the right to seek further fees and costs in connection with such appeals at a later date.

### IV.    Omnibus Sanctions Replies

9.    Respondent also appears to be complaining that it should not be responsible for fees incurred where Holdings filed omnibus replies to objections to the Sanctions Motions because not every party was found in contempt. An omnibus reply is certainly more cost-efficient than preparing individual replies to each objection. This Court has also found that all the Violating Parties are intertwined. *See* July 2 Hr'g Tr. 73:15-74:7. The allegations relating to the various parties all relate to the same conduct. It would be absurd and impossible to divide the words typed on the page between various parties, particularly when many of those parties are the same ultimate actors wearing different hats. Where it was clear that a party was not part of a particular motion, they were carved out (see, e.g., the proposed order reflecting that the Former Minority Shareholders are not responsible for fees relating to the AOR Sanctions Motion).

### V.    The Fees Are not Excessive or Unreasonable

10.    Contrary to Respondent's assertions, the detailed time records are sufficient for this Court to determine the reasonableness of the fees. As a threshold matter, all of the fees requested were incurred post-Effective Date. Therefore, the records at issue are not subject to the U.S. Trustee guidelines (in any event, the U.S. Trustee did not raise any objection to the Fee Application).

11.    Respondent complains about alleged "block billing" and "vague entries." Block billing is not prohibited as long as the court can determine the reasonableness of the work performed.

6

*See Adorno v. Port. Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010); *United States, ex rel. Fox Rx, Inc. v. Omnicare, Inc.,* No. 12 Civ. 275(DLC), 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) ("The use of 'block billing' here is perfectly reasonable; the specific tasks in each 'block' are described with sufficient detail and clarity to conform 'the reasonableness of the work performed.'"); *Barclays Capital Inc. Theflyonthewall.com*, No. 06 Civ. 4908 (DLC), 2010 WL 2640095, at *4-5 (S.D.N.Y. June 30, 2010) (finding that the time entries challenged were not so vague as to frustrate review for reasonableness and explaining that "it would be unreasonable to expect a detailed description for a snippet of time related to an email or a telephone call. Similarly, a file review conducted over many hours by a junior associate does not require a more detailed description of the precise files reviewed."); *Coty Inc. v. Excell Brands, LLC*, No. 15-CV-7029 (JMF), 2017 WL 4159929, at *2 (S.D.N.Y. Sept. 18, 2017) (citation omitted) (the court could adequately assess the reasonableness of the work performed because each of the time entries contained "enough detail and specificity as to afford reasonable confidence that the time billed was productively spent, even if it is impossible to reconstruct the precise amounts of time allocable to each specific task listed in the block entry.").

12. In determining the appropriate fee award, courts consider the complexity of the issues in the particular case. *See Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 303 (S.D.N.Y. 1999); *Barclays*, 2010 WL 2640095, at *5 (citing *Bliven v. Hunt*, 579 F.3d 204, 213) (2d Cir. 2009)) ("In determining whether the claimed hours were reasonably expended, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."). When looking at the time detail and matter codes, this Court can ascertain the nature of the work performed and see that it was not vague. Moreover, allegations about overstaffing is ironic considering the

7

extensive and highly litigious matters raised since the Effective Date – as a result of the Violating Parties' actions. Reed Smith, which had nine attorneys present on zoom at the same hearing it complains that Holdings had eight, has no credibility.

13. The Objection cites two discrete instances where the total time for a specific entry did not match the parentheticals within the entry. These were isolated data entry errors and Holdings will reduce its Fee Application request by $6,791.50 on account of those discrepancies.

14. As noted in the Fee Application, foreign counsel is not typically required to provide the same level of detail in time records that a U.S. counsel typically does. As set forth in the Orfanidou Declaration, the detail annexed to that declaration provides information that Avgitidis (Greek counsel) normally and ordinarily prepares in its business pursuant to the firm's practices. Orfanidou Declaration ¶ 8. And as set forth in the Pierre Declaration, Holdings agreed to a negotiated fixed fee for the PITA firm (one of Holdings' Liberian firms). Pierre Declaration ¶ 10. The declarations attached to both the underlying Attorneys' Fees Motion and the Fee Application provide sufficient specificity on the services performed by Greek and Liberian counsel.

15. Given the Court's familiarity with this case, it can assess the reasonableness of the work performed by Togut, Avgitidis and PTA on an informed basis.

**VI.    The Fee Order Was Not Stayed**

16. Respondent argues that the Court should defer ruling on the Fee Application pending resolution of the applicable appeals. Once again, Respondent is attempting to get a back-door stay of an unstayed order of this Court. Unstayed orders are immediately effective and binding. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975); *Diaz-Roa v. Hermes Law, P.C.*, No. 24-cv-2105 (LJL), 2025 WL 1151483, at *4 (S.D.N.Y. Apr. 18, 2025) (Liman, J.) ("No motion to stay the effect of the Court's oral ruling or Opinion and Order has been made. The oral ruling granting the motion to stay

8

and the Opinion and Order denying the motion to compel therefore remain in effect until and unless the Second Circuit vacates or reverse them."). The Court specifically found at the May 15th hearing that the Fee Order was granted notwithstanding the appeals of the Sanctions Orders. *See* May 15 Hr'g Tr. 47:12-19. The Court thus maintains its jurisdiction to consider the Fee Application which was specifically directed to be filed by the Fee Order.

## **CONCLUSION**

17. For the foregoing reasons, the Court should overrule the Objection and the Joinder and grant the Fee Application, subject to deductions of $171,086.30 on account of amounts to be deferred or written-off as set forth above.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| DATED: August 17, 2025<br>New York, New York | HERBERT SMITH FREEHILLS KRAMER (US) LLP<br><br>By:<br><br>*/s/ Kyle J. Ortiz*<br>Kyle J. Ortiz, Esq.<br>Brian F. Shaughnessy, Esq.<br>Jennifer Sharret, Esq.<br>Andrew Citron, Esq.<br>1177 Avenue of the Americas<br>1177 Avenue of the Americas<br>New York, New York 10036<br>(212) 715-9100<br>Email: kyle.ortiz@hsfkramer.com<br>Brian.shaughnessy@hsfkramer.com<br>Jennifer.sharret@hsfkramer.com<br>Andrew.citron@hsfkramer.com<br><br>*Counsel for Eletson Holdings Inc.* |