**HERBERT SMITH FREEHILLS
KRAMER (US) LLP**
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
Kyle J. Ortiz
Brian F. Shaughnessy
David E. Blabey Jr.
Andrew J. Citron

*Counsel for Eletson Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                   :

In re:                             :       Chapter 11
                                   :

ELETSON HOLDINGS INC.,[1]    :       Case No. 23-10322 (JPM)
                                   :
                                   :

             Debtor.        :
                                   :
------------------------------------------------------------x

## ELETSON HOLDINGS INC.'S MOTION FOR EXTENSION OF DEADLINE TO FILE AVOIDANCE ACTIONS GOVERNED BY 11 U.S.C. § 546(a)

Pursuant to Fed. R. Bankr. P. 9006(b), Eletson Holdings Inc. ("Holdings"), by and

through its undersigned counsel, hereby moves (the "Motion") for an Order extending the

deadline to commence avoidance actions governed by section 546(a) of title 11 of the United

States Code (the "Bankruptcy Code").

---

[1] Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

## PRELIMINARY STATEMENT

1.      Holdings requests an extension of the two-year deadline for commencing

avoidance actions governed by 11 U.S.C. § 546(a), which currently expires on **September 25,**

**2025**.  An extension is warranted because the need to file potential avoidance actions regarding

the Eletson Gas ("Gas") preferred shares at issue in the Arbitration may be mooted by

developments in pending litigation before Judge Liman.  Additionally, Holdings requires

additional time to investigate whether any other potential fraudulent transfer claims exist.  That is

because Holdings still does not have full access to its own books and records due to the former

owners' obstruction of the Plan and ongoing contempt of the Confirmation Order.  Granting

Holdings such relief will not unduly prejudice any party and will promote the conservation of

estate resources while preventing overlapping judicial proceedings.

## RELEVANT FACTS

### I.      The Purported Transfer of Eletson Gas's Preferred Shares

2.      The facts surrounding this case and the potential fraudulent transfer claims are

well known to this Court.  Holdings will thus discuss only those facts essential to the Motion.

3.      The Debtors' chapter 7 involuntary petition was filed in this Court on March 7,

2023.  ECF 1.

4.      On September 13, 2023, the Debtors moved to convert the involuntary chapter 7

cases to voluntary chapter 11 cases.  ECF 201.

5.      The Court granted that motion on September 25, 2023.  ECF 215.  Pursuant to

11 U.S.C. §§301(b), 303(h), and 348(a), the conversion date constitutes the date of the "order for

relief" for the purposes of 11 U.S.C. § 546(a).

6.      Unless extended by the Court, the two-year deadline for commencing actions

listed in 11 U.S.C. § 546(a) is therefore September 25, 2025.

7.      The potential fraudulent transfer claims at issue (that are now known to Holdings) concern the purported transfer of the preferred shares in Eletson Gas (the "Preferred Shares") to certain Cypriot Nominees (the "Purported Nominees") in March 2022.  The Purported Nominees are owned by the same parties that formerly controlled Holdings.  *See* ECF 394 at ¶ 39.[2]

8.      More specifically, in or about November 2021, Levona Ltd. ("Levona") acquired the Preferred Shares from Blackstone Tactical Opportunities ("Blackstone").  ECF 239 at ¶ 15.

9.      On February 22, 2022, Levona entered into a "binding offer letter" with Gas (the "BOL"), which vested in Eletson Gas the option for it or its nominee to purchase the Preferred Shares for "an amount equal to US$1 plus an amount equal to US$23,000,000 less the Net Value."  *Id.*

10.     A dispute then arose about whether Gas had exercised the option, and Holdings and Eletson Corporation initiated an arbitration in July 2022 seeking a ruling that Eletson Gas had exercised its option to purchase the Preferred Shares from Levona (the "Arbitration").  *Id.* at ¶ 16.  Following the commencement of these bankruptcy cases, the parties that formerly controlled Holdings asserted for the first time that Gas not only had exercised the option, but also transferred the Preferred Shares to the Purported Nominees.  *Id.* at ¶ 22.

11.     As Reed Smith admitted directly to the Arbitrator, the purpose of this purported transfer was to prevent Holdings' creditors from obtaining the value of the Preferred Shares:

> "As soon as they said, . . . if we win in this proceeding, they're going to take that asset and they are–it goes back into Holdings and so, lo and behold, the bankruptcy allows them to take it . . . and that's when we said, well, wait a minute, I went back to my client and it says these nominees, why don't we just transfer it to the nominees and they said, we don't have to, we have already done it."

---

[2] For the avoidance of doubt, Holdings does not concede that the foregoing transfers occurred, and, indeed, ongoing legal proceeding may establish that Levona itself remains the rightful owner of the Preferred Shares.

ECF 394 at ¶ 39.

12.    As the Arbitrator later found, (the former management of) Holdings raised this

transfer theory for the first time in the Arbitration on May 5, 2023, several weeks after this Court

entered the Stay Relief Order (ECF 48), which permitted the Arbitration to proceed only as to

"claims currently pending" at the time of the order.  ECF 239 at ¶ 22.

13.    Upon information and belief, the families that formerly owned Eletson decided

that the Purported Nominees would pay Eletson Gas three million euros in return for the shares.

However, as Laskarina Karastamati (owner of one of the Purported Nominees) has admitted, the

three million euros have never been paid, and neither Eletson Gas nor Holdings has received any

value in return for the shares.  *Id.* at ¶ 26.

14.    On July 28, 2023, the Arbitrator entered an interim award, which was superseded

by a final award (the "Award") on September 29, 2023.  The Award found, *inter alia*, that

Eletson Gas exercised the buyout option and transferred the Preferred Shares to the Purported

Nominees "effective as of March 11, 2022."  ECF 394 at ¶ 41.

15.    On August 18, 2023, Eletson Holdings Inc. and Eletson Corp. filed a petition in

the United States District Court for the Southern District of New York (the "District Court") to

confirm the Award, with the case being assigned to the Hon. Lewis Liman.  *Id.* at ¶ 43.

16.    On February 9, 2024, Judge Liman issued an Opinion and Order granting in part

and denying in part Eletson's petition to confirm and granting in part and denying in part a cross-

petition by Levona to vacate the Award.  *Eletson Holdings Inc. and Eletson Corp. v. Levona*

*Holdings Ltd. and Apargo Limited, Fentalon Limited, and Desimusco Trading Limited*, No. 1:23-

cv-07331-LJL (S.D.N.Y.) (the "Levona Arbitration") (ECF 83).

17.    On September 6, 2024, Judge Liman granted a motion by Levona to file an

amended answer and amended cross-petition to vacate based on newly produced documents

showing that the Award was procured by fraud in the Arbitration. *Id.* (ECF 162). In that ruling, Judge Liman stated that "Levona has presented evidence that, if credited, would show that Eletson engaged in fraudulent activity that Levona could not have discovered and that went to a pivotal issue in the arbitration." *Id.* (ECF 162, at 47).

18.     Meanwhile, on November 4, 2024, this Court confirmed the Petitioning Creditors' bankruptcy plan (the "Plan") (ECF 1223), which then went effective on November 19, 2024 (the "Effective Date"). The Plan provides for the retention of several retained causes of action "that are not released or waived pursuant to this Plan or a Final Order of the Bankruptcy Court." ECF 1132 at § 1.128. Further, "[f]or the avoidance of doubt, the Retained Causes of Action shall include Avoidance and Other Actions and all claims and Causes of Action related to or arising under the Eletson Gas Transfer." *Id.*[3]

19.     On August 21, 2025, Holdings joined Levona's Amended Cross-Petition to Vacate the Award, arguing that the Award had been obtained through fraud. *See* Levona Arbitration (ECF 558) (the "Joinder"). As the Joinder explains in depth, documents recovered from the Debtor's email server reveal evidence that the purported transfer of the Preferred Shares never occurred and was instead fabricated by Eletson's former management and shareholders and their attorneys. *See id.* at 6-13. Documents produced in these cases, but withheld in the Arbitration, reinforce this. *Id.* at 13-17. For the Court's convenience, the Joinder and the documents are all attached to the accompanying Declaration of Andrew Citron, dated August 28, 2025, which is being filed substantially contemporaneously to this Motion.

20.     As one of many examples, ███████████████████████████████

████████████████████████████████████████████████████████████

---

[3] Section 1.65 of the Plan (ECF 1132) defined "Eletson Gas Transfer" as "any purported transfer of preferred shares in Eletson Gas LLC."



21.     As Judge Liman observed in his anti-suit injunction decision on June 2, 2025:

> Levona has presented substantial evidence that a fraud was committed by Eletson Corp. and Eletson Holdings, including by withholding the Withheld Documents and critical evidence on a pivotal issue and by presenting perjured testimony. . . . [The Purported Nominees] have offered no evidence to the contrary.  While [The Purported Nominees] challenge the Court's decisions permitting Levona to assert fraud in the arbitration, . . . those rulings are law of the case.  Intervenors offer no reason for the Court to reconsider them.  Levona will have its day in court, as will [The Purported Nominees].

Levona Arbitration (ECF 413 at 43).  No hearing on Holdings' Joinder has yet been scheduled.

Thus, it is unclear when Judge Liman will rule on the pending motion to vacate the Award.

## II.     Other, Unknown, Potential Fraudulent Transfers

22.     The history of obstruction that currently plagues Holdings' efforts to implement the Plan is both well-known to this Court and too complicated to summarize in a brief manner.  The numerous sanctions orders that have been issued against Holdings' former management and shareholders tell that story.  *See* ECF 1495 (Order in Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization and Imposing Sanctions on Certain Parties); ECF 1537 (Order in Further Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization); ECF 1712 (Order Awarding Attorneys' Fees and Costs); ECF 1716 (Order in Further Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization).

23.     Suffice it to say that Holdings has neither control over its own assets nor access to many of its own documents, as detailed in its recent Rule 2004 motion and related opposition to the Purported Nominees' motion to quash.  *See generally* ECF 1778 (Eletson Holdings Inc.'s Opposition to Apargo Limited, Fentalon Limited, and Desimusco Trading Limited's Motion For a Protective Order/To Quash).  Holdings has received zero documents from that Rule 2004 investigation because of the obstructionist tactics of, among others, the Purported Nominees and their principals.  Holdings' investigation into the misconduct of its former management and shareholders has thus only begun.  In other words, there could be other fraudulent transfers of which Holdings is not yet aware, due to no fault of its own.

## **<u>RELIEF REQUESTED</u>**

24.     Holdings may have certain valuable claims against its former owners and management, as well as their affiliates, including potential fraudulent transfer claims under section 548(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 548(a).  Section 546(a) of the Code imposes deadlines for commencing certain of these claims, providing as follows:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
> (1) the later of—
>      (A) <u>2 years after the entry of the order for relief</u>; or
>      (B) 1 year after the appointment or election of the first trustee under section 702, 1104,1202, or 1302 of this title if such period specified in subparagraph (A); or
> (2) the time the case is closed or dismissed.

11 U.S.C.§ 546(a) (underlining added).  Thus, as is most relevant here, fraudulent transfer claims of the sort discussed above must be commenced within two years after the entry of the order for relief—*i.e.*, by September 25, 2025.

25.     Fed. R. Bankr. P. 9006(b) provides that the Court may, for cause shown, order a period of time enlarged if the request therefore is made before the time originally prescribed.

Courts, including ones within the Second Circuit, have held that Rule 9006(b) and/or equitable

tolling principles can be used to extend the time for commencing an action under Section 548.

*See IBT International, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 699 (11th

Cir. 2005) (holding that "§ 546 is indeed a statute of limitations, subject to waiver, equitable

tolling, and equitable estoppel") (citing *In re Rodriguez,* 283 B.R. 112, 116–18 (Bankr. E.D.N.Y.

2001)); *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.*), 14 F.3d 1380, 1385 (9th Cir.

1994) ("We conclude that § 546(a)(1) is subject to equitable tolling in proper circumstances); *In*

*re Randall's Island Fam. Golf Centers, Inc.*, 288 B.R. 701, 706 (Bankr. S.D.N.Y. 2003) ("It is

well-settled that equitable tolling may be applied, in appropriate circumstances, to toll the statute

of limitations imposed under 11 U.S.C. § 546(a)"); *In re Kwok*, 2024 WL 666646, at *4 (Bankr.

D. Conn. Feb. 15, 2024) ("The Court concludes for these reasons that Rule 9006(b) could

provide a mechanism to extend the statutes of limitation set forth by section[] . . . 546(a)").

26.     The requirements of Rule 9006(b) are satisfied in this case because Holdings is

seeking an extension of the period to file a potential fraudulent transfer complaint under the

Bankruptcy Code before that period expires under Section 546.

27.     Consistent with the foregoing authorities, which represent the overwhelming

majority of caselaw on the issue, Holdings requests that this Court apply its powers under Rule

9006(b) and/or the principles of equitable tolling to extend the deadline for the filing of a

potential actual or constructive fraudulent transfer action against applicable parties, as it relates

to the purported transfer of the Preferred Shares to the Purported Nominees and other potential

fraudulent transfer actions that Holdings may see fit to assert.

28.     At this time, Holdings is not in the best position to bring a potential fraudulent

transfer action relating to the purported transfer of the Preferred Shares, as the question of

whether the transfer of the Preferred Shares actually occurred is a central question in currently ongoing proceedings to vacate the Award before the District Court. A final judgment confirming that no such transfer actually took place would moot the need for the filing of such a fraudulent transfer action, thus preserving estate and judicial resources.

29.    Concurrently, given ongoing disputes between Holdings and its former management and shareholders, including the latter's refusal to cooperate in discovery requests and ongoing failures to provide Holdings with relevant documents and property despite ongoing contempt sanctions, *see, e.g.,* ECF 1792 (Holdings' Motion to Compel Production of Documents), ECF 1716 (Order in Further Support of Confirmation and Consummation of the Court-Approved Plan of Reorganization), Holdings is not in a position to adequately investigate other potential fraudulent transfers that could be asserted by the bankruptcy estate under the Bankruptcy Code.

30.    Providing an additional nine months to Holdings to file a potential fraudulent transfer complaint, without prejudice to later extensions as needed, is consistent with the posture of this case, the facts known to the Court and Holdings at this time, and the appropriate deference due to the proceedings to vacate the Award before Judge Liman.

## **CONCLUSION**

For the foregoing reasons, Holdings respectfully requests that the Court extend the deadline for commencing avoidance actions governed by 11 U.S.C. § 546(a) from September 25, 2025, to and including June 25, 2026, and for such other and further relief as the Court deems just and proper.

DATED:  August 28, 2025

New York, New York

HERBERT SMITH FREEHILLS KRAMER
(US) LLP
By:

*/s/ Brian F. Shaughnessy*
Kyle J. Ortiz
Brian F. Shaughnessy
David E. Blabey Jr.
Andrew J. Citron
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
E-mail: kyle.ortiz@hsfkramer.com
        brian.shaughnessy@hsfkramer.com
        david.blabey@hsfkramer.com
        andrew.citron@hsfkramer.com
*Counsel for Eletson Holdings Inc.*

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                :

In re:                                :        Chapter 11
                                :

ELETSON HOLDINGS INC.,[1]      :        Case No. 23-10322 (JPM)
                                :

                Debtor.       :

                                :

------------------------------------------------------------x

## ORDER APPROVING ELETSON HOLDINGS INC.'S MOTION FOR EXTENSION OF DEADLINE TO FILE AVOIDANCE ACTIONS GOVERNED BY 11 U.S.C. § 546(a)

Upon Eletson Holdings Inc.'s *Motion for an Extension of Deadline to File Avoidance Actions Governed By 11 U.S.C. § 546(a)* [Docket No. ___] (the "Motion"),[2] and the accompanying Declaration of Andrew J. Citron made in support of the Motion (the "Citron Declaration"), for entry of an order (this "Order"), pursuant to Fed. R. Bankr. P. 9006(b), approving the Motion and extending the deadline for commencing avoidance actions governed by 11 U.S.C. § 546(a) from September 25, 2025 to and including June 25, 2026; and the Court having jurisdiction to consider the Motion and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order, 11 U.S.C. §§ 105 and 1142, and the Court's inherent jurisdiction to interpret and enforce its own orders; and the Motion and relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court having the authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court

---

[1]       Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On March 5, 2025, the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

[2]       Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, as applicable.

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest; and the Court having reviewed the Motion and Citron Declaration related thereto; and this Court having determined that the legal and factual bases set forth in the Motion and Citron Declaration establish just cause for the relief granted herein,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      It is necessary and appropriate that the Court extend the deadline for commencing avoidance actions governed by 11 U.S.C. § 546(a) from September 25, 2025, to and including June 25, 2026.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is **GRANTED**;

2.      The deadline for commencing avoidance actions governed by 11 U.S.C. § 546(a) is extended from September 25, 2025, to and including June 25, 2026.

3.      This Order shall be immediately effective and enforceable upon its entry.

4.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2025

_____
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE