UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

ELETSON HOLDINGS INC.,[1]

                        Debtor.
-------------------------------------------------------------x

FOR PUBLICATION

Chapter 11

Case No. 23-10322 (JPM)

**MEMORANDUM OPINION AND ORDER GRANTING ELETSON HOLDINGS INC.'S AND LEVONA HOLDINGS LTD.'S JOINT MOTION FOR SANCTIONS AGAINST THE CYPRIOT ENTITIES, VASSILIS KERTSIKOFF AND LASKARINA KARASTAMATI**

---

[1] Prior to November 19, 2024, the debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Debtors"). On March 5, 2025, the Court entered a final decree and order closing the Chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the Chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

### I. INTRODUCTION

Before the Court is the joint motion ("Motion") of Debtor Eletson Holdings Inc. ("Holdings") and Levona Holdings Ltd. ("Levona") (together, "Movants") for sanctions against Apargo Limited, Desimusco Trading Limited, and Fentalon Limited (the three "Cypriot Nominees"), as well as against Vassilis Kertsikoff and Laskarina Karastamati (together with the Cypriot Nominees, "Alleged Violating Parties"). Dkt. No. 1809 (Motion).[2] In support of the Motion are declarations of Kyle Ortiz and Isaac Nesser. Dkt. Nos. 1810 (Ortiz Decl.), 1811 (Nesser Decl.).

The Motion argues that the Alleged Violating Parties have failed to comply with this Court's *Memorandum Opinion and Order Granting, In Part, Levona Holdings Ltd.'s Motion to Enforce the Stipulated Stay Relief Order And For Sanctions Against the Purported Preferred Nominees Pursuant to Section 105(a) of the Bankruptcy Code* dated August 1, 2025 ("August Contempt Opinion and Order"). Dkt. No. 1809 (Motion); *see also* Dkt. No. 1759 (August Contempt Opinion and Order). The August Contempt Opinion and Order determined that certain corporate actions taken by the Cypriot Nominees on or around February 26, 2024, discussed further below, were violations of this Court's *Stipulation and Order Granting Alleged Debtor's Motion for Relief From Stay To Proceed With, Or To Confirm The Inapplicability Of, The Automatic Stay To Prepetition Arbitration Proceedings* dated April 17, 2023 ("Stay Relief Order"). Dkt. No. 1759 (August Contempt Opinion and Order) at 8, 17–20; Dkt. No. 48 (Stay Relief Order).

---

[2] All references to "Dkt. No." refer to the docket in this case.

The Cypriot Nominees filed an opposition ("Cypriot Nominees' Opp."), supported by a declaration of Hal Shaftel. Dkt. Nos. 1850 (Cypriot Nominees' Opp.), 1851 (Shaftel Decl.). The Movants filed a reply ("Movants' Reply"), supported by a declaration of Jared Borriello. Dkt. Nos. 1863 (Movants' Reply), 1864 (Borriello Decl.).[3]

The Court held a hearing on the Motion on November 3, 2025.

For the reasons discussed herein, the Court **GRANTS** the Motion.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## III.    BACKGROUND

### A.    The Arbitration, Stay Relief Order, and August Contempt Opinion and Order

In July 2022, Holdings and Eletson Corporation filed an arbitration against Levona to resolve a dispute over the ownership of the preferred shares in Eletson Gas, LLC ("Gas"), and "thereby the control over [Gas's] decision making and assets." *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 545–46 (S.D.N.Y. 2024).

In March 2023, while the arbitration was pending, certain creditors (Pach Shemen, VR Global, and Alpine) filed involuntary Chapter 7 bankruptcy petitions against the Debtors in this Court. *Involuntary Petition Against a Non-Individual*, Dkt. No. 1 (03/07/23 Pet.).[4,5]

---

[3] The exhibits to the Borriello declaration were filed under seal. *Order Authorizing The Filing Under Seal Of Certain Exhibits And Information Relating to Eletson Holdings Inc.'s And Levona Holdings Ltd.'s Reply In Further Support Of The Joint Sanctions Motion*, Dkt. No. 1870 (10/30/25 Or.).

[4] In September 2023, the Debtors voluntarily stipulated to convert the Chapter 7 cases to Chapter 11 cases. *Order Converting These Cases To Cases Under Chapter 11*, Dkt. No. 215 (09/25/23 Or.).

[5] Familiarity with the prior proceedings in this matter is presumed. A background of the case can be found in the District Court's September 2025 opinion dismissing various appeals from this Court and affirming certain of this

In April 2023, this Court entered the Stay Relief Order to modify:

> "[t]he automatic stay under section 362(a) of the Bankruptcy Code . . . with respect to the Arbitration solely to the extent necessary and for the sole purpose of permitting a trial, any related pre-trial proceedings (including any remaining discovery), any related post-trial proceedings or briefing, and a final determination or award to be made by the Arbitrator, including any appeals, with respect to the claims currently pending in the Arbitration (the 'Arbitration Award')."

Dkt. No. 48 at 3. However, the Stay Relief Order explicitly stated further that "no Arbitration Party shall transfer, dispose of, transact in, hypothecate, encumber, impair or otherwise use any such Arbitration Award or any asset or property related thereto absent a further order of this Court." *Id.* at 4.

In September 2023, the arbitrator issued a Final Award, finding, inter alia, that the preferred shares had been transferred to the Cypriot Nominees by Levona, after Gas in March 2022 had exercised its right to a buyout option by transferring its ownership shares in two ships to Levona. *Eletson Holdings*, 731 F. Supp. 3d at 559–62, 594. On February 9, 2024, the District Court confirmed the arbitration award in part,[6] but the District Court subsequently granted Levona leave to file an amended answer to assert fraud as a basis for vacating the award. *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2024 U.S. Dist. LEXIS 160367, at *1–2, 25 (S.D.N.Y. Sept. 6, 2024) (ruling that "newly-produced documents . . . tend to show fraud in the arbitration proceeding"). The District Court also issued an order "to make clear that the confirmation of the [Arbitration] Award was subject to the resolution of Levona's pending motion to vacate the award and its defense based on fraud in the arbitration." *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2025 U.S. Dist. LEXIS 107138, at *5 (S.D.N.Y.

---

Court's prior sanctions orders. *In re Eletson Holdings Inc.*, No. 25-cv-1312, 2025 U.S. Dist. LEXIS 187947, at *4–28 (S.D.N.Y. Sept. 22, 2025).

[6] *Eletson Holdings*, 731 F. Supp. 3d at 615–16; *see also Eletson Holdings Inc. et al v. Levona Holdings Ltd.*, No. 23-cv-7331 S.D.N.Y., Dkt. No. 105 (04/19/24 Or. correcting typographical error in 02/09/24 Or.).

June 2, 2025).

On February 26, 2024, the Cypriot Nominees took certain actions to enforce the arbitration award, despite failing to obtain any further relief or order from this Court (the "February 26 Corporate Actions"): 1) they authorized Gas to record the Cypriot Nominees' purported ownership of the preferred shares, based on the arbitration award, in Gas's share registry (the "Demand for Registration of Preferred Units of Eletson Gas LLC"); 2) they removed the then-current board members who had been appointed by Levona, and appointed new directors, again based on the same ownership claim (the "Notice of Removal and Appointment of New Directors"); and 3) the newly-constituted board executed a written consent authorizing any action to enforce the arbitration award (the "Unanimous Written Consent of the Board of Directors of Eletson Gas LLC").[7] Dkt. No. 1759 (August Contempt Opinion and Order) at 8; Dkt. No. 1367 (*Levona Holdings Ltd.'s Motion to Enforce the Stipulated Stay Relief Order And For Sanctions Against (A) The Purported Preferred Nominees And (B) Reed Smith LLP Pursuant To Section 105(a) Of The Bankruptcy Code And Inherent Authority*) ("Levona's January 2025 Sanctions Motion") at 14.[8]

In August 2025, this Court found the Cypriot Nominees in contempt of the Stay Relief Order because of the February 26 Corporate Actions. Dkt. No. 1759 (August Contempt Opinion and Order) at 17–20. As an initial matter, the Court found that the Cypriot Nominees were bound by the terms of the Stay Relief Order, despite not being parties to the arbitration, as "the Stay Relief Order applies generally and broadly," as "[t]he general application of the Stay Relief Order

---

[7] Levona does not concede that the February 26 Corporate Actions were effective. For purposes of the present Motion, this issue is not before the Court, as "[t]he Cypriot Nominees do not refute that such actions were undertaken." Dkt. No. 1759 (August Contempt Opinion and Order) at 26.

[8] The documents evidencing the February 26 Corporate Actions were filed under seal, Dkt. No. 1478 (Nesser Decl.) (Ex. 1), but were quoted in their entirety in the publicly-filed version of the motion granted in part by the August Contempt Opinion and Order, Dkt. No. 1367 (Levona's January 2025 Sanctions Motion) at 14.

serves to prevent the use of the Arbitration Award until the proceedings related to the Arbitration conclude." *Id.* at 14.  The Court found that construing the Stay Relief Order as applying to only the arbitration parties would "render the [Stay Relief] Order ineffectual." *Id.* at 16.  The Court then held that the February 26 Corporate Actions violated the Stay Relief Order. *Id.* at 17–20.  The Court ruled that the Demand for Registration of Preferred Units of Eletson Gas and the Unanimous Written Consent of the Board of Directors of Eletson Gas LLC "openly appear[ed] to be enforcing the Arbitration Award and Judge Liman's partial confirmation thereof," and that the Notice of Removal and Appointment of New Directors "expressly request[ed] a change of the Gas board." *Id.* at 18–19.  The Court further found that "[c]hanging the official share registry to reflect a new controlling interest is a significant corporate event," and that "updating the share registry and changing the board violate the Stay Relief Order because such changes can only occur if the Cypriot Nominees hold the preferred interests, which is an issue that is still being determined in the District Court." *Id.* at 19.

The Court thus concluded that the Stay Relief Order was clear and unambiguous, *id.* at 23–24; that there was clear and convincing evidence that the Cypriot Nominees had failed to comply with the Stay Relief Order, as "the Cypriot Nominees and/or their representatives acted based on the Arbitration Award . . . by effectuating the February 26 Corporate Actions," *id.* at 25; and that the Cypriot Nominees had not diligently attempted to comply with the Stay Relief Order in a reasonable manner, as the "February 26 Corporate Actions [sought] to enforce and effectuate the Arbitration Award in violation of the Stay Relief Order," *id.* at 27.

The Court ordered the Cypriot Nominees "within five (5) business days to rescind their *changes* to the share registry and to the board of directors of Eletson Gas LLC." *Id.* at 29 (emphasis added).  The Court further ordered that "[i]f the Cypriot Nominees do not comply within five (5)

business days of entry of this Order, the Court will impose coercive monetary sanctions in the amount of $1,000 per day per party against the Cypriot Nominees until compliance with this Order *has been effectuated*." *Id.* (emphasis added).

### B. The Parties' Arguments

On August 8, 2025, five business days after the August Contempt Opinion and Order, the Cypriot Nominees filed a letter ("Purported Compliance Letter") stating that they had "today provided timely notice to Eletson Gas that they rescind the prior instructions covered by the [August Contempt Opinion and] Order." Dkt. No. 1771 (Purported Compliance Letter) at 1. The Purported Compliance Letter also claimed that the Cypriot Nominees "understand that the current management of Eletson Gas remains in place consistent with the rationale of the Status Quo Injunction,"[9] that "[n]o part of the [August Contempt Opinion and] Order . . . addresses, let alone disturbs, the mechanics of the daily operations of Eletson Gas consistent with the Status Quo Injunction or the identity of the day-to-day management team, including Mr. Kertsikoff (President/Treasurer) and Ms. Karastamati (Secretary)," and that "[i]n the current procedural posture, both the Status Quo Injunction and Final Award represent at the very least a binding contract on the parties." *Id.* at 2.

Floyd Zadkovich LLP, claiming to represent Gas, thereafter filed a letter stating that none of Gas's lawful board, Holdings, or Levona had received notice of the purported rescission, and requested that the Cypriot Nominees provide a certificate of incumbency from the Marshall Islands as evidence of compliance with the August Contempt Opinion and Order. Dkt. No. 1773 at 1–2. They also noted that the status quo injunction had been vacated by the District Court, and thus that

---

[9] The Status Quo Injunction refers to an injunction that had been issued by the arbitrator in the arbitration proceedings, enjoining any action to transfer or sell assets of Gas or to notice or conduct board meetings for that purpose. *Eletson Holdings*, 731 F. Supp. 3d at 553–54.

injunction could not support the position that Kertsikoff and Karastamati remained day-to-day management of Gas. *Id.* at 2. Indeed, the Court notes that the District Court has found that "[t]he status quo injunction by the arbitrator is no longer in effect." Dkt. No. 1796 (*Letter to the Honorable John P. Mastando Regarding Aug. 19, 2025 D. Ct. Hearing Transcript*, attaching D. Ct. 8/19/25 Hr'g Tr.) at 24; *see also Eletson Holdings*, 731 F. Supp. 3d at 616 (vacating ¶A.7 of the final arbitration award).

On August 12, 2025, the Cypriot Nominees filed a letter in response, stating that "the client that the Floyd Zadkovich firm represents is not the *bona fide* Eletson Gas," and that "the notices were provided in the same manner as the original notices that were rescinded." Dkt. No. 1777 at 1–2.

On September 8, 2025, Holdings and Levona filed the Motion, which seeks to increase the sanctions against the Cypriot Nominees to $5,000 per day, to sanction Kertsikoff and Karastamati at $1,000 per day, and to enjoin the Alleged Violating Parties from exercising control over Gas. Dkt. No. 1809 at 9.

First, the Movants argue that the Cypriot Nominees bear the burden of proving their compliance with this Court's August Contempt Opinion and Order, and that they have not done so. *Id.* at 10. Movants argue that the Cypriot Nominees' statement that they sent a notice "rescind[ing] the prior instructions" gives "no indication what the notice said, or if it was implemented," which "would have been simple to provide." *Id.* at 11. Movants further claim that "[t]he Cypriot [Nominees] were also required to rescind the prior filings in the Marshall Islands, and they should be required to provide evidence of what the current registry states with respect to the shares and board of Eletson Gas." *Id*.

Second, the Movants assert that the Alleged Violating Parties incorrectly rely on the status

quo injunction in asserting that they control Gas, as "Judge Liman has made clear that the status quo injunction is no longer in place." *Id.* at 11–12. Movants assert that "Holdings and Levona collectively control" Gas, as Levona owns the preferred shares of Gas, pending a further ruling from the District Court on the arbitration award. *Id.* at 12.

The Cypriot Nominees argue in opposition that they were "not required by the [August Contempt Opinion and] Order to do so," but they nonetheless "advised the Court in writing . . . that they complied." Dkt. No. 1850 (Cypriot Nominees' Opp.) at 1. They argue that the burden is on the Movants to establish contempt, not on the Cypriot Nominees to prove that their contempt has been purged or that they have complied with the August Contempt Opinion and Order. *Id.* at 7–8. And regardless of burden, the Cypriot Nominees assert that they complied by "timely transmit[ing] two formal notices . . . which unequivocally rescinded their two prior notices," and by "advis[ing] the Court on the public docket . . . even though the [August Contempt Opinion and] Order did not mandate it." *Id.* at 8. The Cypriot Nominees claim that "[t]here can be no claim of non-compliance by not <u>voluntarily</u> furnishing copies" of the notices, that they "reported that they rescinded," and that this Court did not "instruct[] [them] to provide notice of their compliance." *Id.* at 8–9 (emphasis in original). The two alleged rescission notices were attached to the Shaftel Declaration in support of the Cypriot Nominees' opposition. *Id.* at 9 (citing Dkt. No. 1851 (Shaftel Decl.) at 50–51 (Ex. B), 53–54 (Ex. C.)).

The Cypriot Nominees argue further that the alleged rescission notices "could not be clearer in stating that . . . the Cypriot Nominees repealed their notices regarding the board nominees and stock registry listing." *Id.* at 10. And they assert that their statements that the (i) rationale of the status quo injunction remains correct, and (ii) that management of Gas should continue consistent with that rationale, do "not relate . . . to compliance with the [August Contempt Opinion

and] Order." *Id.* at 11–12, 22–23. They further argue that Kertsikoff and Karastamati (whom they do not represent) are not covered by the August Contempt Opinion and Order. *Id.* 1 at n.2, 13–14. The Cypriot Nominees also claim that there is no basis for injunctive relief, as Gas is outside the bankruptcy estate, *id.* at 14–17, and the Movants have improperly filed their request in a contested matter as opposed to an adversary proceeding, and have not met the standard for that relief (including posting a bond), *id.* at 17–24.

The Movants reply that the Cypriot Nominees "have failed to submit corrective Marshall Island filings or any actual evidence demonstrating they have rescinded" the February 26 Corporate Actions, and that this Court's August Contempt Opinion and Order "requires them to 'rescind their changes' . . . not to *request* that the changes be rescinded." Dkt. No. 1863 (Movants' Reply) at 2–4. The Movants further argue that they do not seek new injunctive relief, rather they "seek enforcement of the Court's prior orders." *Id.* at 5–7. Lastly, the Movants argue that Kertsikoff and Karastamati "as related parties acting in concert with the Cypriot [Nominees] . . . are bound by the [August Contempt Opinion and] Order." *Id.* at 7–8.

IV.    **LEGAL ANALYSIS**

A.    **Legal Standard**

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Worms v. Rozhkov (In re Markus)*, 78 F.4th 554, 564 (2d Cir. 2023) (citation modified); *see also* Dkt. No. 1759 (August Contempt Opinion and Order) at 22. "[T]his power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Worms*, 78 F.4th at 564 (citation modified). Accordingly, "a bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in

non-nominal amounts to compensate an injured party and coerce future compliance with the court's order." *Id.* at 570.  Additionally, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders.").

To obtain a finding of contempt and an order imposing sanctions, the movant must establish that: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see also* Dkt. No. 1759 (August Contempt Opinion and Order) at 22.  "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation modified).

B. **The Cypriot Nominees' Failure to Comply With The August Contempt Opinion and Order**

As an initial matter, the Court agrees with Movants that they do not seek new injunctive relief, but rather compliance with this Court's prior orders, including the August Contempt Opinion and Order.  Dkt. No. 1759 (August Contempt Opinion and Order) at 29; Dkt. No. 1863 (Movants' Reply) at 5–7.

Indeed, on August 1, 2025, this Court found that the Cypriot Nominees were in contempt based on their violations of the Stay Relief Order.  Dkt. No. 1759 (August Contempt Opinion and Order) at 22–29.  The Court specified that the Cypriot Nominees were in violation of the Stay

Relief Order because of the February 26 Corporate Actions, as "the Cypriot Nominees and/or their representatives acted based on the Arbitration Award . . . by *effectuating* the February 26 Corporate Actions." *Id.* at 17–20, 25 (emphasis added). The Court ordered the Cypriot Nominees "within five (5) business days to rescind their *changes* to the share registry and to the board of directors of Eletson Gas LLC." *Id.* at 29 (emphasis added). The Court further ordered that "[i]f the Cypriot Nominees do not comply within five (5) business days of entry of this Order, the Court will impose coercive monetary sanctions in the amount of $1,000 per day per party against the Cypriot Nominees until compliance with this Order *has been effectuated*." *Id.* (emphasis added). To the extent necessary, the Court now concludes that the August Contempt Opinion and Order, like the Stay Relief Order, was clear and unambiguous. *King*, 65 F.3d at 1058.

In response, the Cypriot Nominees submitted a letter claiming that they had complied. Dkt. No. 1771 (Purported Compliance Letter). Movants dispute that alleged compliance, and the parties disagree on whose burden it is to demonstrate compliance or lack of compliance. Dkt. No. 1809 (Motion) at 10; Dkt. No. 1850 (Cypriot Nominees' Opp.) at 7–8; Dkt. No. 1863 (Movants' Reply) at 1–2.

Regardless of burden,[10] the Court agrees with Movants that the Cypriot Nominees have

---

[10] The caselaw cited by the Movants as to burden addresses a contemnor's burden to purge a contempt finding by showing inability to comply, typically because of financial inability to pay a sanction. Dkt. No. 1809 (Motion) at 10; Dkt. No. 1863 (Movants' Reply) at 1–2; *see, e.g., Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt. . . . The alleged contemnor bears the burden of producing evidence of his inability to comply."). The Cypriot Nominees cite caselaw as to the movant's burden to establish contempt in the first instance. Dkt. No. 1850 (Cypriot Nominees' Opp.) at 7–8. Neither party cites caselaw addressing exactly the situation here, when a Court has *already* determined that a party is in contempt, gives the violating party a further period to comply to avoid sanctions, and then that party claims to have complied, but that compliance is in dispute. While the Court need not decide the issue (as the Cypriot Nominees clearly have not complied with the August Contempt Opinion and Order, regardless of the precise burden), the Court notes that Movants' caselaw weighs towards finding the burden to be on the Cypriot Nominees, and that a reasonable standard would place the burden on the Cypriot Nominees to demonstrate that they have complied with the initial contempt order. *See, e.g., SEC v. Platinum Inv. Corp.*, No. 02-cv-6093, 2004 U.S. Dist. LEXIS 16763, at *7 (S.D.N.Y. Aug. 20, 2004) ("In order to purge a civil contempt citation, *a contemnor must establish* 'clearly, plainly and unmistakably' that compliance with the underlying order *has either been accomplished* or is impossible." (citing *Huber*, 51 F.3d at 10) (emphasis added)); *see also SEC*

failed to rescind the changes to the share registry and to the board of directors of Gas as effectuated by the February 26 Corporate Actions, and thus that the Cypriot Nominees' compliance with the August Contempt Opinion and Order has not been effectuated. This Court ordered the Cypriot Nominees to "rescind their changes to the share registry and to the board of directors of Eletson Gas LLC" within 5 business days. Dkt. No. 1759 (August Contempt Opinion and Order) at 29. The Court further ordered sanctions "until compliance with this Order *has been effectuated*." *Id.* (emphasis added). The Court now concludes that compliance has not been effectuated, and, to the extent necessary, that the proof of noncompliance is clear and convincing, and that the Cypriot Nominees have not diligently attempted to comply in a reasonable manner. *King*, 65 F.3d at 1058.

While the Cypriot Nominees' letter states that they "today provided timely notice to Eletson Gas that they rescind the prior instructions covered by the [August Contempt Opinion and] Order," Dkt. No. 1771 (Purported Compliance Letter) at 1, the letter did not assert that any changes were actually made, nor did the letter provide the actual notice purportedly sent to Gas.[11] This

---

*v. Res. Dev. Int'l LLC*, 217 F. App'x. 296, 299 (5th Cir. 2007) (finding no abuse of discretion in district court's denial of a motion to purge contempt, based on the district court's conclusion that the contemnor had made "some efforts to comply" that "did not go far enough," and that there was clear and convincing evidence of noncompliance based on the contemnor's "claims that he has no assets" and his "fail[ure] to produce documentation to the district court regarding the source of the more than $75,000 he used to pay accounting fees"); *MAS Wholesale Holdings LLC v. NW Rosedale Inc.*, No. 19-cv-1294, 2021 U.S. Dist. LEXIS 136039, at *7 (E.D.N.Y. July 21, 2021) (concluding that after "Plaintiff sued Defendants for contempt and won . . . [t]he burden then fell to Defendants to comply with the Court's Contempt Order"); *Trujillo v. Williams*, No. 04-cv-635, 2019 U.S. Dist. LEXIS 66172, at *9 (D.N.M. Apr. 18, 2019) (concluding that "[i]n the face of . . . clear and convincing evidence, Defendants have not established, as they must, that they have complied with either the Contempt Order or the [Order Underlying the Contempt Order], or that they could not comply with either Order").

[11] This Court has previously sanctioned the Former Majority Shareholders (Lassia Investment Company, Glafkos Trust Company, and Family Unity Trust Company) and other violating parties for somewhat similar conduct, which has been affirmed on appeal by the District Court. *See In re Eletson Holdings Inc.*, No. 25-cv-1312, 2025 U.S. Dist. LEXIS 187947, at *52–82 (S.D.N.Y. Sept. 22, 2025). In affirming the sanctions, the District Court noted that "[t]he Confirmation Plan's language that [the Former Majority Shareholders] cooperate in 'good faith' clearly cover[ed] [their] vexatious conduct." *Id.* at 63–64 (citing *Inst. Of Cetacean Rsch. v. Sea Shepard Cons. Soc'y*, 774 F. 3d 935, 945–55 (9th Cir. 2014) ("By construing their obligations narrowly to include only refraining from acts specifically enumerated in the injunction, and not acts likely to nullify the injunction, the Defendants assumed the risk that their attempts at technical compliance would prove wanting. We accordingly reject the Defendants' good faith argument, and hold [Defendants] in civil contempt.")). The District Court also concluded that the Former Majority Shareholders' argument challenging the clarity of this Court's orders was frivolous, *id.* at 73–76; that the proof of noncompliance

Court ordered the Cypriot Nominees to "rescind their *changes*," Dkt. No. 1759 (August Contempt Opinion and Order) at 29 (emphasis added), not to rescind their *instructions*, which is all their letter purports to do.

Nearly two months after the deadline issued by this Court, in their opposition to the present Motion, the Cypriot Nominees first included the purported rescission notices.[12] Dkt. No. 1851 (Shaftel Decl.) at 50–51 (Ex. B), 53–54 (Ex. C.). As compared to the documents that purported to effectuate the February 26 Corporate Actions, *id.* at 56 (Ex. D), 58 (Ex. E), which provide notice of changes that purportedly had occurred, the recent purported rescission notices merely state that the Cypriot Nominees "rescind[] . . . [their] requested changes," as opposed to providing proof of or notice of actual or effectuated changes.

The Court agrees with Movants that the Cypriot Nominees could have rescinded the changes purportedly effectuated by the February 26 Corporate Actions in the same manner and form as the Cypriot Nominees originally purported to cause them to occur. Dkt. No. 1863 (Movants' Reply) at 2–4. The Cypriot Nominees do not contest that these changes were originally made through the February 26 Corporate Actions, nor have they provided any evidence that they were unable to rescind them in the same manner that they originally purported to cause them to occur. The Court further agrees with Movants that compliance with this Court's August Contempt Opinion and Order requires more than merely sending a letter requesting changes, which is all

---

was clear and convincing, *id.* at 76; and that this Court did not abuse its discretion in finding that the Former Majority Shareholders did not diligently attempt to comply in a reasonable manner, as "not only did the parties not meet [their] burden [to prove that compliance was not possible]; their own declarations demonstrate that they could have complied, or attempted compliance, but did not," *id.* at 79.

[12] Movants argue that the purported rescission notices are inadmissible, because they are attached to the declaration of the Cypriot Nominees' counsel as opposed to declarations of the signatories of the purported notices. Dkt. No. 1863 (Movants' Reply) at 4. The Court need not decide the issue, because, even if admissible, the purported notices do not even purport to allege that compliance with this Court's August Contempt Opinion and Order has been effectuated.

their Purported Compliance Letter claims to do. *Id.* And similarly, the Court agrees that simply sending notices that have the word "rescission" is insufficient to effectuate the changes that needed to be accomplished to comply with the August Contempt Opinion and Order. *Id.* For example, the Notice of Removal and Appointment of New Directors evinces that the Cypriot Nominees, as part of the February 26 Corporate Actions, purported to both remove the prior board members and to appoint new board members. Dkt. No. 1851 (Shaftel Decl.) at 58 (Ex. E.). To undo these changes, the Cypriot Nominees needed to both remove their own purported board members, and to reappoint the prior board members as they were prior to the February 26 Corporate Actions. The Cypriot Nominees' purported rescission notice, however, merely states that "each of the [Cypriot] Nominees rescinds . . . its requested changes to the board of directors." Dkt. No. 1851 (Shaftel Decl.) at 53–54 (Ex. C). It does not state that any changes have occurred, like the reappointment of the members of the previously constituted board.

Moreover, the Cypriot Nominees have only provided purported rescission notices as to two of the three corporate actions for which this Court found them in contempt. *See* Dkt. No. 1759 (August Contempt Opinion and Order) 8, 17–20. Absent from the Cypriot Nominees' opposition is any statement that they also rescinded the changes caused by the Unanimous Written Consent of the Board of Directors of Eletson Gas LLC, which purported to authorize any action to enforce the arbitration award on behalf of the board as constituted by the Cypriot Nominees' board appointments. *Id.* In addition, as Movants argue, the Cypriot Nominees have also not supported their contention that they have rescinded the February 26 Corporate Actions by providing any relevant or required filings from the Marshall Islands. *See* Dkt. No. 1367 (Levona's January 2025 Sanctions Motion) at 4 (asserting that "the purported corporate governance changes [in the February 26 Corporate Actions] were filed with the Trust Company of the Marshall Islands, Inc. .

. . in September 2024"); Dkt. No. 1863 (Movants' Reply) at 1 ("[T]he purported changes to Eletson Gas's share register and board of directors . . . [i]s reflected in . . . filings made in the Marshall Islands.") (citing Dkt. No. 1864 (Borriello Decl.) (Ex. A) (filed under seal)).

Finally, the Court notes that the District Court has concluded that probable cause exists that a fraud was committed on the arbitrator, related to the issue of who owns the preferred shares of Gas. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2025 U.S. Dist. LEXIS 184584, at *4–6 (S.D.N.Y. Sept. 19, 2025) (concluding that there is "probable cause to believe that Eletson, under its prior management, contrived an after-the-fact and false story that the [the Cypriot Nominees] had been nominated to receive the Preferred Shares of Eletson Gas in order to keep those shares remote from an involuntary bankruptcy proceeding").

Accordingly, the Motion is granted as to the Cypriot Nominees.

## C. Kertsikoff and Karastamati's Failure to Comply With The August Contempt Opinion and Order

As to Kertsikoff and Karastamati, the Motion is also granted. As an initial matter, neither Kertsikoff nor Karastamati have responded to the Motion, and the Court can thus grant the Motion by default. *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984) ("[I]n civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party."). In any event, the Court agrees with Movants that Kertsikoff and Karastamati "as related parties acting in concert with the Cypriot [Nominees] . . . are bound by the [August Contempt Opinion and] Order." Dkt. No. 1863 (Movants' Reply) at 7–8. The Cypriot Nominees acknowledge in their opposition that Kertsikoff and Karastamati have "voluntarily . . . acted as . . . 'representatives'" for two of the Cypriot Nominees. Dkt. No. 1850 (Cypriot Nominees' Opp.) at 5. And as Judge Liman has previously found, there is "little difficulty in concluding that Gas,

Laskarina Karastamati, Vassilis Kertsikoff, Vassilis Hadjieleftheriadis, Lassia Investment Company, Family Unity Trust Company, and Glafkos Trust Company are sufficiently in privity with, in active concert with, aiding or abetting [the Cypriot Nominees] to bring them within range of the Court's contempt power." *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2025 U.S. Dist. LEXIS 107138, at *30–31 (S.D.N.Y. June 2, 2025) (citation modified).

Accordingly, the Motion is also granted as to Kertsikoff and Karastamati.

### V.     CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**, and it is **HEREBY ORDERED** that:

1. The Cypriot Nominees (Desimusco Trading Co., Apargo Ltd., and Fentalon Ltd.) are found to continue to be in contempt for violating the Stay Relief Order, and they are found to be in contempt, to the extent such a finding is necessary, of the August Contempt Opinion and Order.

2. The Cypriot Nominees are sanctioned at $1,000 per party per day, running from the period of August 8th, 2025, to the date of the entry of this Memorandum Opinion and Order, and $5,000 per party per day commencing on the date of the entry of this Memorandum Opinion and Order.

3. Vassilis Kertsikoff and Laskarina Karastamati are found in contempt for violating the Stay Relief Order and the August Contempt Opinion and Order.

4. Vassilis Kertsikoff and Laskarina Karastamati are sanctioned at $1,000 per party per day, commencing on the date of the entry of this Memorandum Opinion and Order.

5. All sanctions arising from the August Contempt Opinion and Order and this Memorandum Opinion and Order shall continue until compliance with the August Contempt Opinion and Order and this Memorandum Opinion and Order has been effectuated. All sanctions

arising from the August Contempt Opinion and Order and this Memorandum Opinion and Order are in addition to any sanctions this Court may have previously awarded against any party.

**IT IS SO ORDERED.**

Dated: November 19, 2025　　　　　　　　　　　／s/ John P. Mastando III　　　　　　　
　　　　New York, New York　　　　　　　　　　HONORABLE JOHN P. MASTANDO III
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE