UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

FOR PUBLICATION

------------------------------------------------------------x
:
In re:                                                      :   Chapter 11
:
ELETSON HOLDINGS INC.,[1]                                   :   Case No. 23-10322(JPM)
:
:
              Debtor.                                       :
:
------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER DENYING MOTION OF ROLNICK KRAMER SADIGHI LLP, LASSIA INVESTMENT COMPANY, GLAFKOS TRUST COMPANY, FAMILY UNITY TRUST COMPANY, AND ELAFONISSOS SHIPPING CORPORATION TO QUASH OR, IN THE ALTERNATIVE, FOR A PARTIAL PROTECTIVE ORDER

---

[1] Prior to November 19, 2024, the debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Debtors"). On March 5, 2025, the Court entered a final decree and order closing the Chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the Chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

**I.    INTRODUCTION**

On September 22, 2025, this Court entered a judgment ("September 22, 2025 Judgment") in favor of Eletson Holdings, Inc. ("Holdings") against Family Unity Trust Company, Glafkos Trust Company, and Lassia Investment Company ("Former Majority Shareholders"); Vasilis Hadjieleftheriadis; Konstatinos Chatzieleftheriadis, Ioannis Zilakos, Niki Zilakos, Adrianos Psomadakis-Karastamatis, Eleni Giannakopoulous, Panos Paxinoz, and Emmanel Andreulaks ("Purported Provisional Board"); Elafonissos Shipping Corporation ("Elafonissos") and Keros Shipping Corporation (collectively, "Former Minority Shareholders"); and Laskarina Karastamati (collectively with all proceeding, save Holdings, "Judgment Debtors").  Dkt No. 1836.[2]

Before the Court is the *Motion of Rolnick Kramer Sadighi LLP, Lassia Investment Company, Glafkos Trust Company, Family Unit Trust Company, and Elafonissos Shipping Corporation to Quash or, in the Alternative, for a Partial Protective Order* ("Motion") filed November 21, 2025.  Dkt. No. 1888.  In support of the Motion is the declaration of Justin Harris ("Harris Declaration").  Dkt. No. 1889.  The Motion seeks to quash subpoenas – or, in the alternative, to limit their scope – issued by Holdings to Rolnick Kramer Sadighi LLP ("RKS") and Reed Smith LLP ("Reed Smith") to assist in collecting the September 22, 2025 Judgment.

The Court is further in receipt of Holdings' opposition to the Motion ("Opposition") filed December 5, 2025.  Dkt. No. 1904.  In support of the Opposition is the declaration of Jaclyn Grodin ("Grodin Declaration").  Dkt. No. 1905.

---

[2] All references to "Dkt. No." absent a separate case name and number refer to docket entries in this case.  References to "Dkt. No." that include a separate case name and number, as in *Avalon Holdings Corp. v. Guy Gentile*, Case No. 18-cv-7291 (DLC) (RLJ), Dkt. No. 359-1, refer to the docket entries in the case name and number included.

2

The Court is also in receipt of the reply in support of the Motion ("Reply") filed by RKS, the Former Majority Shareholders, and Elafonissos (together with the Former Majority Shareholders, the "Former Foreign Shareholders," and collectively, with RKS, "Movants") filed December 12, 2025. Dkt. No. 1916. In support of the Reply is the declaration of Richard Bodnar. Dkt. No. 1917.

The Court held a hearing on the Motion on December 19, 2025.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## III.    BACKGROUND

The Motion begins by noting that Elafonissos moves to quash based on lack of personal jurisdiction, and for the subsequent bases to be described below only upon a finding that that this Court has personal jurisdiction over Elafonissos.[3]  Motion at 1 n.2.

The Motion then argues that the Former Foreign Shareholders have standing to oppose the subpoena issued to Reed Smith, because that subpoena seeks information concerning the funds or assets of the Judgment Debtors, which includes the Former Foreign Shareholders, and that information will be used to collect a debt from the Former Foreign Shareholders. Motion at 6–7.

---

[3] Elafonissos raised this personal jurisdiction challenge in its March 27, 2025 motion to reconsider two of this Court's prior sanctions orders. Dkt. No. 1569. The Court denied the motion on July 2, 2025, holding that the Court had personal jurisdiction over Elafonissos, as Elafonissos had received actual notice of this Court's orders and proceedings, Elafonissos had voluntarily appeared before the Court and consented to its jurisdiction, and Elafonissos had sufficient minimum contacts with this forum. Dkt. Nos. 1714 (07/07/25 Or.), 1721 (Tr. of 07/02/25 Hr'g) at 13, 28–47. Elafonissos appealed, Dkt. No. 1725 (Notice of Appeal), and that appeal is pending in the District Court.

3

Next, the Motion argues that the subpoenas are null and void under New York Civil Practice Law and Rules ("C.P.L.R.") § 5224, because the subpoenas fail to comply with the certification requirement of § 5224(a)(3)(i), and § 5224(a)(3)(ii) states that a failure to comply with § 5224(a)(3)(i) renders the subpoenas null and void. *Id.* at 7–9. Specifically, the Motion argues that the certifications in the subpoenas state their compliance with § 5224, but fail to state their compliance with New York General Business Law ("G.B.L.") § 601, which is also required by § 5224(a)(3)(i). *Id.* at 8. Further, the Motion argues that the subpoenas substituted the phrase "one or more of the Judgment Debtors" in place of "debtor" in the following phrase of the certification required by § 5224(a)(3)(i): "I have a reasonable belief that the party receiving this subpoena has in their possession information about the debtor" (all caps formatting removed). *Id.* at 8–9. The Motion asserts that Holdings lacks this requisite, reasonable belief, as "RKS represents only the four [Former] Foreign Shareholders," "Reed Smith has only represented the bankruptcy debtors, none of which are Judgment Debtors," and "RKS has *no* affiliation with most of the fourteen debtors the Subpoenas target, and Reed Smith may not have any either." *Id.* at 9.

The Motion further argues that the subpoena as to RKS seeks "to impair RKS's ability to represent the [Former] Foreign Shareholders–including in the appeal of the *very orders and judgments* the Subpoena purports to be related to." *Id.* at 10. The Motion argues that the subpoena improperly targets RKS to "manufacture" a conflict of interest between it and its clients, by asking RKS to disclose client information learned during the course of its representation, and that Holdings alternatively could have subpoenaed the Former Foreign Shareholders themselves (which Holdings eventually did), or "counterparties" to their business deals. *Id.* (citing *Astraea NYC LLC v. Rivada Networks, Inc.*, 592 F. Supp. 3d 181, 183 (S.D.N.Y. 2022)). The Motion also argues that the timing of the subpoenas, "right after" RKS appealed the September 22, 2025

4

Judgment, "strongly suggests" a plan to "reduce the likelihood of appellate review and introduce uncertainty into the attorney-client relationship." *Id.* at 10–12.

Alternatively, if this Court enforces the subpoenas, the Motion asks for a protective order limiting their scope, arguing that the subpoenas are overbroad in instructing RKS and Reed Smith to provide information concerning all fourteen Judgment Debtors, even though RKS only represents four, concerning time before RKS's representation in this case and extending into the future. *Id.* at 12–13. Further, the Motion argues that the requested information – "any and all" entities, accounts, or assets associated with any Judgment Debtor; "any transfers" from a Judgment Debtor; and "any deposits or escrowed assets" the firm is aware of that may be returned to any Judgment Debtor – is overbroad, especially as it is not limited to non-privileged information. *Id.* at 13. Accordingly, the Motion requests a limitation on the subpoenas "to tailor their requests more narrowly and eliminate from their scope any information that may be privileged or excessive." *Id.* at 14.

In response, Holdings first argues that the language in the subpoenas' certifications is appropriate. Opposition at 3 (citing *Avalon Holdings Corp. v. Guy Gentile*, Case No. 18-cv-7291 (DLC) (RLJ), Dkt. No. 359-1). Holdings distinguishes the authorities cited by RKS, arguing that none "stand for the proposition that the Information Subpoenas are invalid for any minor deviation from the language of the statute, which of course is not the law." *Id.* at 4. In any event, Holdings asserts that RKS's argument is now moot, as the declaration of Jaclyn Grodin included with the Opposition "includes a supplemental attorney certification . . . that tracks the langue of C.P.L.R. § 5224(a)(3)(i)." *Id.* (citing Grodin Declaration at ¶ 9). Holdings contends that it "has a reasonable belief that both Reed Smith and RKS each have relevant information about each of the fourteen Judgment Debtors." *Id.* (emphasis removed). The Opposition further notes that the "Motion

5

should also be denied because the [Movants] failed to meet and confer in a 'good faith effort,'" as RKS failed to raise the argument during the meet-and-confer that the subpoenas were invalid based on the language in the certifications. *Id.* n. 3.

The Opposition next argues that the subpoenas are "narrowly tailored to seek information from RKS and Reed Smith to collect a debt from the judgment debtors." *Id.* at 5–6. Further, the Opposition argues that RKS and Reed Smith, despite being counsel, are proper targets for discovery. *Id.* at 6 (citing *Avalon Holdings Corp. v. Gentile*, 350 F.R.D. 8, 14 (S.D.N.Y. 2025)). Further, the Opposition argues that the subpoenas do not target privileged information; rather, the subpoenas properly seek "information concerning payments made by the Judgment Debtors, the dates, amounts, accounts from which such payments were made, and the escrow accounts held on behalf of the Judgment Debtors." *Id.* at 7. Lastly, the Opposition argues that the subpoenas do not undermine appellate review, especially as the Judgment Debtors failed to seek a stay of the September 22, 2025 Judgment, and thus it is immediately enforceable notwithstanding any appeal. *Id.* at 7–8.

The Reply repeats RKS's argument that the subpoenas are null and void based on their purportedly deficient certifications. Reply at 2–4, 6–7. The Reply also repeats RKS's argument that Holdings lacks the reasonable belief necessary to issue the subpoenas, as neither RKS nor Reed Smith "has ties to all fourteen of the judgment debtors." *Id.* at 4–5. The Reply argues that *Avalon Holdings Corp.* does not supply precedent for upholding the certification's language, as the court there did not "decide or even consider the sufficiency of any subpoena certification," as it was not raised by the parties. *Id.* at 5–6. The Reply also argues that the subpoenas are void ab initio, and cannot be "retroactively validated" by a new declaration "supplying a supplemental attorney certification that tracks the statute." *Id.* at 7–8. Further, the Reply argues that Holdings

6

misrepresents RKS's good faith efforts at the meet-and-confer over the subpoenas, and that the meet-and-confer was in any event futile given the parties' disagreement as to whether the subpoenas are void. *Id.* at 8–9. The Reply also repeats RKS's argument that the subpoenas "insert[] conflicts of interest into RKS's ongoing representation of the Foreign Shareholders." *Id.* at 9–11. And lastly, the Reply repeats RKS's request for a protective order. *Id.* at 11–12.

### IV. LEGAL ANALYSIS

#### A. Legal Standard

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). "Post-judgment discovery is governed by Federal Rule of Civil Procedure 69, which provides that '[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.'" *Id.* (quoting Fed. R. Civ. P. 69(a)(2)). "The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment." *Id.* "New York state's post-judgment discovery procedures, made applicable to proceedings in aid of execution by Federal Rule 69(a)(1), have a similarly broad sweep." *Id.* "The New York Civil Practice Law and Rules provide that a 'judgment creditor may compel disclosure of all matters relevant to the satisfaction of the judgment.'" *Id.* (quoting C.P.L.R. § 5223). "[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *Id.*

"Discovery of a judgment debtor's assets is conducted routinely under the Federal Rules of Civil Procedure." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002). "A judgment creditor is entitled to discover the identity and location of any of the judgment

7

debtor's assets, wherever located." *Id.* (quoting *National Service Industries, Inc. v. Vafla Corp.*, 694 F.2d 246, 250 (11th Cir. 1982) (citation modified)). "[Under Rule 69(a),] the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Id.* (citation omitted).

### B. Motion to Quash

For the reasons discussed below, the Court agrees with Holdings and the Motion is DENIED.

First, RKS makes two principal contentions that the subpoenas are null and void under C.P.L.R. § 5224: first, that the certifications in the subpoenas state their compliance with Section 5224, but fail to state their compliance with G.B.L. § 601, which is required by Section 5224(a)(3)(i), Motion at 8; and second, that the subpoenas substituted the phrase "one or more of the Judgment Debtors" in place of "debtor" in the certification required by § 5224(a)(3)(i), Motion at 8–9.

Section 5224(a)(3)(i) requires the following certification to be included with information subpoenas:

> I hereby certify that this information subpoena complies with rule 5224 of the Civil Practice Law and Rules and Section 601 of the General Business Law that I have a reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist the creditor in collecting the judgment.

§ 5224(a)(3)(i) (all caps formatting removed).

Holdings' subpoenas contain the following certifications:

> I hereby certify that this Information Subpoena complies with Rule 5224 of the (New York) Civil Practice Law and Rules and that the undersigned have a reasonable belief that the party receiving this Subpoena has in their possession information about one or more of the Judgment Debtors that will assist the Judgment Creditor in collecting the Judgment.

Dkt. Nos. 1889-1 (Ex. A Harris Declaration) at 3, 1889-2 (Ex. B Harris Declaration) at 3.

8

RKS is thus correct that the certifications contain two changes from the language in the statute.  The first is the omission of a reference to G.B.L. § 601, and the second the substitution of the phrase "one or more of the Judgment Debtors" in place of "debtor."  RKS is also correct that § 5224(a)(3)(ii) provides that "if an information subpoena, served on an individual or entity other than the judgment debtor, does not contain the certification provided for in subparagraph (i) of this paragraph, such subpoena shall be deemed null and void."

G.B.L. § 601 enumerates twelve prohibited practices of a creditor or the creditor's agent. "If such principal creditor or agent sends more than fifty information subpoenas per month," subsection 11 contains record-keeping requirements, including that:

> [c]ontemporaneous records shall be kept that set forth with specificity the grounds for such principal creditor or agent's reasonable belief, which must be certified and accompany each information subpoena pursuant to rule fifty-two hundred twenty-four of the civil practice law and rules, that the party receiving the subpoena has in its possession information about the debtor that will assist the creditor in collecting his or her judgement.

G.B.L. § 601(11).  That subsection further provides for a civil, monetary penalty in an action brought by the Attorney General for failure to comply with this subsection, "[i]n addition to any other penalty that may be imposed." *Id.*

The parties have not addressed G.B.L. § 601(11) specifically.  Whether Holdings' omission that the information subpoenas comply with G.B.L. § 601 renders the subpoenas null and void is an issue this Court need not reach, because, as Holdings argues, Opposition at 4 (citing Grodin Declaration at ¶ 9), Holdings has now certified with respect to each subpoena that they comply with G.B.L. § 601.  Moreover, and discussed further below, insofar as § 601(11) requires that the issuer of a subpoena "set forth with specificity the grounds" of his reasonable belief and to accompany those grounds with the subpoena, Holdings has now also done so.  Grodin Declaration at ¶ 10.  The Court also agrees with Holdings that this is an issue that the parties could have

9

resolved through a genuine, good-faith effort to meet-and-confer over the subpoenas. Opposition at 4 n.3. The Court also notes that Holdings is correct that one District Court in the Southern District of New York has denied a law firm's motion for a protective order involving a subpoena whose certification also omitted reference to G.B.L. § 601, seeking information concerning a former client and judgment debtor. Opposition at 3; *Avalon Holdings Corp. v. Gentile*, 350 F.R.D. 8, 14 (S.D.N.Y. 2025); *Avalon Holdings Corp. v. Guy Gentile*, Case No. 18-cv-7291 (DLC) (RLJ), Dkt. No. 359-1 at 3. RKS is correct, Reply at 5–6, that the Court in *Avalon Holdings* did not address the language of the certification specifically, because the issue was not raised by the parties, but this Court finds nonetheless that the case supports Holdings' arguments.

The Motion's second assertion is without merit. That the original certifications in the subpoenas substituted "one or more of the Judgment Debtors," or, as in the updated certification provided by the Grodin Declaration, "each of the Judgment Debtors," in place of "debtor" – in other words, that the certifications pluralized debtor because in this case there is not one judgment debtor but in fact fourteen – is not a basis to conclude that the "information subpoena[s] . . . do[] not contain the certification provided for in subparagraph (i) of this paragraph," C.P.L.R. § 5224(a)(3)(ii), and this is thus not a basis to conclude that the subpoenas are null and void and should be quashed.

The Motion also argues that Holdings lacks the reasonable belief required by Section 5224(a)(3)(i), as "RKS represents only the four [Former] Foreign Shareholders," that "Reed Smith has only represented the bankruptcy debtors, none of which are Judgment Debtors," and that "RKS has *no* affiliation with most of the fourteen debtors the Subpoenas target, and Reed Smith may not have any either." Motion at 9. The Court notes that Holdings has now elaborated on the basis of its belief: RKS is counsel to the Former Foreign Shareholders; Reed Smith is former counsel to

10

Holdings,[4] which was owned by the Former Foreign Shareholders; eight of the Judgment Debtors were members of the purported provisional board of Holdings, which was appointed upon an application by Elafonissos and others; Laskarina Karastamati is a former director of Holdings who also directs or previously directed Lassia Investment Company; and Vasilis Hadjieleftheriadis is a former director of Holdings who also directs or previously directed Glafkos Trust Company. Grodin Declaration at ¶ 10; *see also* Dkt. No. 1564 (Tr. of 3/12/25 Hr'g) at 72 (finding that the former majority shareholders, the former minority shareholders, the purported provisional board, the purported Provisional Holdings, and Hadjieleftheriadis failed to cooperate in good faith to implement and consummate the confirmation plan). Moreover, to the extent that RKS or Reed Smith have knowledge as to some but not all of the Judgment Debtors, they can easily so assert in their responses to the subpoenas – this is not a basis to quash the subpoenas at the outset. And as cited above, "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd.*, 695 F.3d at 207.

Although RKS acknowledges that there is no prohibition on issuing subpoenas to counsel, Reply at 9, the Motion argues that the subpoena as to RKS seeks "to impair RKS's ability to represent the [Former] Foreign Shareholders–including in the appeal of the *very orders and judgments* the Subpoena purports to be related to," Motion at 10 (citing *Astraea NYC LLC v. Rivada Networks*, Inc., 592 F. Supp. 3d 181, 183 (S.D.N.Y. 2022)). As an initial point, the Court agrees with Holdings that the Judgment Debtors failed to seek a stay of the September 22, 2025

---

[4] Reed Smith has also at a minimum purported to represent purported Provisional Eletson Holdings. *See* December 10, 2024 Statement, Dkt. No. 1293; February 4, 2025 Letter, Dkt. No. 1407; *see also In re Eletson Holdings Inc.*, 2025 U.S. Dist. LEXIS 187947, at *28, 33, 37 (S.D.N.Y. Sept. 22, 2025) ("It is necessary first to understand the background of Provisional Holdings in order to rule on its legal existence. The moniker was first introduced in the Bankruptcy Proceedings by Reed Smith . . . to describe '[t]he provisional board of directors of Eletson Holdings, Inc.' as it had purportedly been constituted in the Piraeus proceedings in Greece.").

11

Judgment, and thus it is immediately enforceable notwithstanding any appeal. Opposition at 7–8. In addition, *Astraea* does not establish that Movants have met their burden on the Motion. Motion at 10; Reply at 9–10; *Pritchard v. County of Erie (In re County of Erie)*, 473 F.3d 413, 418 (2d Cir. 2007) ("[W]e construe the [attorney-client] privilege narrowly because it renders relevant information undiscoverable . . . The burden of establishing the applicability of the privilege rests with the party invoking it."); *see, e.g, Bennett v. Cuomo*, 2024 U.S. Dist. LEXIS 106523, at *22 (S.D.N.Y. June 12, 2024) ("On a motion to quash asserting that privilege prevents disclosure, the party invoking a privilege bears the burden of establishing its applicability to the case at hand." (citation modified)).

The court in *Astraea* granted a motion to quash an information subpoena issued by a judgment creditor to the judgment debtor's former law firm. *Astraea NYC LLC*, 592 F. Supp. at 183. The court observed that Federal Rule of Civil Procedure 69(a)(2) "says nothing about discovery from the debtor's law firm," that the statute's language, "'[a]ny person'[,] would not ordinarily be taken as including 'any law firm,'" given the attorney-client privilege, and that "the words 'any person'" did not "overcome the force and value of the policy that the lawyer may not reveal the confidences of her client, even though the client himself may well be compelled to disclose them." *Id.* at 182–83. The court concluded that "[t]he proper procedure is not an ill-conceived inquiry of defendant's attorneys seeking information they learned in the course of the case, but to direct relevant questions to the defendant." *Id.* at 183.

As Holdings argues, the subpoena in *Astraea* is distinguishable from the subpoenas at issue here, as the subpoena in *Astraea* sought privileged information. Opposition at 6; *ASTRAEA NY LLC v. Rivada Networks, Inc.*, 21-cv-10493-LLS, Dkt. No. 23-1 at 5–6 ("describe in full detail the contents of . . . [any] contracts" held with the judgment debtor; "describe in full detail the nature

12

of . . . [your] representation" of the judgment debtor, past and present). Here, by contrast, as RKS acknowledges, "most of the questions . . . specifically seek information concerning the funds or assets of the Judgment Debtors." Motion at 7; Opposition at 7 (The subpoenas seek "disclosure from RKS and Reed Smith of information concerning payments made by the Judgment Debtors, the dates, amounts, accounts from which such payments were made, and the escrow accounts held on behalf of the Judgment Debtors."). The remaining questions concern information such as the Judgment Debtors' addresses and other contact information. *See* Dkt. Nos. 1889-1 (Ex. A Harris Declaration) at 4–5, 1889-2 (Ex. B Harris Declaration) at 4–5. "As a general rule, a client's identity and fee information are not privileged." *Lefcourt v. U.S.*, 125 F.3d 79, 86 (2d Cir. 1997); *see also In re Grand Jury Subpoena Served upon Doe*, 781 F.2d 238, 247–48 (2d Cir. 1986) ("While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously. For this reason . . . disclosure of fee information and client identity is not privileged even though it might incriminate the client."); *see also, e.g., Avalon Holdings Corp.*, 350 F.R.D. at 9, 14 (denying a law firm's motion for a protective order over a subpoena issued as to information such as "payment of attorney's fees, including the means and sources of payment" from a former client and judgment debtor).

## V. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: December 30, 2025                                    /s/ John P. Mastando III
     New York, New York                                HONORABLE JOHN P. MASTANDO III
                                                                                  UNITED STATES BANKRUPTCY JUDGE