UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                               :     FOR PUBLICATION
                                                               :
In re:                                                         :     Chapter 11
                                                               :
ELETSON HOLDINGS INC.,[1]                                      :     Case No. 23-10322 (JPM)
                                                               :
                                                               :
                                                               :
                                          Debtor.              :
                                                               :
---------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING MOTION: (I) TO VACATE THE DEFAULT ORDERS AND JUDGMENTS; (II) FOR A TEMPORARY RESTRAINING ORDER STAYING FURTHER ENFORCEMENT OF THE DEFAULT ORDERS AND JUDGMENTS AND ORDERING ANY ENTITY IN POSSESSION OF THE SUBJECT FUNDS TO HOLD SAME IN ESCROW; (III) SETTING EMERGENCY HEARING DATE ON MOTION; AND (IV) FIXING THE FORM AND MANNER OF NOTICE**

---

[1] Prior to November 19, 2024, the debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Debtors"). On March 5, 2025, the Court entered a final decree and order closing the Chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the Chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.    INTRODUCTION

Before the Court is the *Motion: (I) To Vacate The Default Orders And Judgments; (II) For A Temporary Restraining Order Staying Further Enforcement Of The Default Orders And Judgments And Ordering Any Entity In Possession Of The Subject Funds To Hold Same In Escrow; (III) Setting Emergency Hearing Date On Motion; And (IV) Fixing The Form And Manner Of Notice* ("Motion"), dated July 1, 2026, filed by Vassilis Kertsikoff.  Dkt. No. 2077.  The Motion argues that the following orders issuing sanctions and judgments culminating from those orders should be vacated pursuant to Federal Rules of Civil Procedure 55(c) and 60(b): the October 31, 2025 order, Dkt. No. 1874; the November 19, 2025 order, Dkt. No. 1885; the December 30, 2025 judgment, Dkt. No. 1933; the May 4, 2026 orders, Dkt. Nos. 2005, 2006; the May 11, 2026 judgment, Dkt. No. 2009; the May 28, 2026 order, Dkt. No. 2051; and the June 11, 2026 order, Dkt. No. 2069 (collectively, the "Orders and Judgments").  In support of the Motion are the declarations of Michael S. Amato, Dkt. No. 2077-1, and Vassilis Kertsikoff ("Kertsikoff Declaration"), Dkt. No. 2077-2.  The Motion also seeks a temporary restraining order of any enforcement of the Orders and Judgments pending a ruling on the Motion.  Dkt. No. 2077.

Eletson Holdings Inc. ("Holdings") filed a response to the Motion ("Response"), dated July 16, 2026.  Dkt. No. 2083.  In support of the Response is the declaration of Nathaniel Koslof ("Koslof Declaration").  Dkt. No. 2084.

Vassilis Kertsikoff filed a reply ("Reply") on July 23, 2026.  Dkt. No. 2087.

The Court held a hearing on the Motion on July 30, 2026.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and

2

(b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.).  This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III.    BACKGROUND

The Motion argues that the Orders and Judgments should be vacated pursuant to Federal

Rule of Civil Procedure 60(b)(4), as the Orders and Judgments are allegedly void because the

motions giving rise to the Orders and Judgments ("Underlying Motions") "were never properly

served on Kertsikoff and the Court lacks personal jurisdiction over him."  Dkt. No. 2077 at 2–5.

The Motion states that "[t]he burden of proof is ultimately on Reorganized Holdings and Levona

to prove that the Court had personal jurisdiction over Kertsikoff."  *Id.* at 2.

The Motion argues that the Underlying Motions needed to be personally served on

Kertsikoff, as "service cannot be effectuated by mail or email in Greece" because Greece has

objected to such service under Article 10 of the Hague Convention.[2]  *Id.* at 2–3 (citing *Smart Study

Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 170 (2d Cir. 2025)).  The Motion

argues that actual notice does not cure any defects in service, and neither does "emailing the motion

papers to attorneys that never appeared in this Bankruptcy proceeding."  *Id.* at 4.

Next, the Motion asserts that, even if service were proper, exercising jurisdiction over

Kertsikoff would be unreasonable, as "minimum contacts are lacking here, particularly since this

Bankruptcy proceeding was commenced as an involuntary proceeding," and doing so "would

impose a significant burden in terms of travel, expense, and time."  *Id.* at 4–5.

The Motion then argues that the Orders and Judgments should be vacated pursuant to

Federal Rules of Civil Procedure 55(c) and 60(b).  *Id.* at 5–9.  The Motion claims that Kertsikoff's

---

[2] Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial
Matters, 20 U.S.T. 361 (1969) ("Hague Convention").

default was not willful because Kertsikoff was not properly served, *id.* at 5; there is no prejudice to Holdings or Levona as delay does not establish prejudice, *id.* at 6; and Kertsikoff has meritorious defenses to the Underlying Motions, including that: Kertsikoff cannot be held in contempt of orders that "did not expressly apply to him," *id.* at 6–8; there is "no clear proof that Kertsikoff was in contempt" of this Courts order confirming the Chapter 11 plan (Dkt. No. 1223, "Confirmation Order") because "the Court had already recognized that Kertsikoff was in compliance with the Confirmation Order," *id.* at 8; and Kertsikoff purged any contempt by "resign[ing] from Eletson in or about November 2024 . . . in accordance with the Plan," *id.* at 8–9.

The Motion also seeks a temporary restraining order "while this Motion is being decided," arguing, inter alia, that Kertsikoff "will be irreparably harmed if he is incarcerated for purportedly violating the . . . Orders and Judgments." *Id.* at 9–10.

The Response argues that Rule 60(b)(4) does not provide a basis to vacate the Orders and Judgments, as an arguable basis exists on which the Court exercised jurisdiction over Kertsikoff. Dkt. No. 2083 at 12–20. The Response states that the burden lies with the movant. *Id.* at 13. The Response argues that this Court has jurisdiction over Kertsikoff "because he consented to jurisdiction and because his contacts with the forum give rise to specific jurisdiction." *Id.*

The Response further asserts that Kertsikoff consented to jurisdiction by appearing and participating in the bankruptcy cases, which moots his claim of improper service or unreasonableness. *Id.* at 14–15. Next, the Response argues that Kertsikoff was properly served in conformance with this Court's orders permitting email or mail service. *Id.* at 15–16. The Response states that "the Hague Convention is thus irrelevant," that "Kertsikoff consented to jurisdiction, mooting the application of the Hague Convention," and that "at the time the Court first approved of the email service . . . there was . . . an *arguable basis* for email service," notwithstanding that

4

"the Second Circuit has since held otherwise in *Smart Study*." *Id.* at 16. Further, the Response argues that the Hague Convention "contains special and more lenient rules applicable to cases, like this one, involving the need for 'provisional or protective measures.'" *Id.* at 16–17 (citing *Fox Corp. v. Media Deportes Mexico, S. de R.L. de C.V.*, 820 F. Supp. 3d 299, 307–08 (S.D.N.Y. 2026)). The Response states that "there is no doubt that Mr. Kertsikoff received actual notice." *Id.* at 17 & n.12.

Next, the Response argues that exercising personal jurisdiction over Kertsikoff was not unreasonable given "Kertsikoff's extensive participation in the bankruptcy cases," and Kertsikoff's ipse dixit assertion of a lack of minimum contacts and his similarly "vague assert[ion]" that exercising jurisdiction would impose an undue burden on him are not bases to conclude otherwise. *Id.* at 18–20.

The Response further asserts that the Court should deny any Rule 55(c) relief, which "has no separate or independent applicability here (since it incorporates Rule 60(b)), and in any event, Mr. Kertsikoff fails to satisfy the relevant standard." *Id.* at 20. The Response argues that Rule 55(c)'s good cause standard applies only to the entry of default, a ministerial act performed by the clerk of court and which is not relevant to this case, and that the default judgments are subject to review under Rule 60(b). *Id.* The Response then asserts that, even under a good cause standard, the Motion should be denied, as Kertsikoff's default was willful (he was served and noticed for all relevant proceedings), and vacating the Orders and Judgments would be prejudicial to Holdings, which has spent two years and millions in attorneys' fees and costs trying to enforce the Confirmation Order. *Id.* at 21–22.

Next, the Response argues that Kertsikoff has no meritorious defense to the Orders and Judgments or Underlying Motions, as each of the Orders and Judgments did apply to him. *Id.* at

5

22–23.  As to the November 19, 2025 order, Dkt. No. 1885, which "flows" from this Court's August 1, 2025 order, Dkt. No. 1759, Apargo Ltd. "was specially named and sanctioned," and this "is enough," as "there is little distinction between Apargo and Mr. Kertsikoff."  *Id.*  Further, the Response argues that the October 31, 2025 order, Dkt. No. 1874, found Mr. Kertsikoff in contempt of the Confirmation Order, which "clearly and undisputedly applied to him," and that all subsequent orders and judgements that the Motion seeks to vacate "flow from either" the November 19, 2025 order, Dkt. No. 1885, or the October 31, 2025 order, Dkt. No. 1874.  *Id.* at 23.  The Response also asserts that several of the Orders and Judgments "were issued as a result of [Kertsikoff's] noncompliance with subpoenas and depositions," and that Kertsikoff has not presented any meritorious defenses to these orders and judgments.  *Id.* at 24.  Lastly, the Response argues that Kertsikoff has not purged any contempt, and that his resignation from the board of Eletson occurred prior to the Orders and Judgments and "is unrelated to the actions for which he was later held in contempt."  *Id.*[3]

The Reply repeats the argument that Kertsikoff was not properly served with the Underlying Motions.  Dkt. No. 2087 at 3–7.  The Reply claims that Kertsikoff's appearances in this Court "were in a corporate capacity on behalf of the Debtors," that "Kertsikoff never appeared in an individual capacity," and that accordingly he did not waive a personal jurisdiction defense.  *Id.* at 3–5.  The Reply states that Holdings "downplays" *Smart Study*, which "expressly held that email service was prohibited by the Hague Convention."  *Id.* at 5.  The Reply argues that *Fox Corp.* is distinguishable, as "the court permitted email service of a motion seeking a temporary restraining order and a preliminary injunction because of the urgency involved," and that "[n]o

---

[3] The Response also argues that the Kertsikoff Declaration is "not just implausible, but in some cases false and perjurious."  Dkt. No. 2083 at 25–26.

such urgency was present here." *Id.* at 6.  The Reply repeats the argument that actual notice does not cure a service defect. *Id.* at 6–7.  The Reply then repeats the argument that, even assuming proper service, exercising jurisdiction would be unreasonable. *Id.* at 7–9.  The Reply also asserts that the default was not willful, there is no prejudice to Holdings in vacating the Orders and Judgments, and Kertsikoff has meritorious defenses. *Id.* at 9–11.[4]  The Reply argues that Holdings "fails to reference any evidence to show that Kertsikoff controlled Apargo Ltd." *Id.* at 11.[5]  The Reply claims Kertsikoff was not in violation of the Confirmation Order. *Id.* at 12–13.  The Reply again asserts that Kertsikoff purged any contempt by resigning from the board of Eletson. *Id.* at 14.  The Reply also repeats the request for a temporary restraining order. *Id.* at 14–15.

## IV.   LEGAL ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 60(b) provides the "[g]rounds for [r]elief from a [f]inal [j]udgment, [o]rder, or [p]roceeding," and states that the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding" including, inter alia, for "(1) mistake, inadvertence, surprise, or excusable neglect; . . . the judgment is void; . . . [or] any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (4), (6); *see also* Fed. R. Bankr. P. 9024 ("In [g]eneral . . . Fed. R. Civ. P. 60 applies in a bankruptcy case[.]").  "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).

---

[4] The Reply notes that Kertsikoff seeks relief pursuant to Federal Rule of Civil Procedure 60(b)(1), (4), and (6), and that the same good cause standard applies to relief under all three subsections. Dkt. No. 2087 at 9 n.15.

[5] "Apargo was owned by Kertsikoff[.]" *Eletson Holdings, Inc. v. Levona Holdings, Ltd.*, No. 23-cv-7331, 2026 U.S. Dist. LEXIS 5528, at *4 (S.D.N.Y. Jan. 12, 2026).

Federal Rule of Bankruptcy Procedure 9020 provides that Rule 9014 "governs a motion for a contempt order[.]"  Bankruptcy Rule 9014(b)(1) in turn provides that a motion in a contested matter "must be served … in the manner for serving a summons and complaint provided by Rule 7004."  Bankruptcy Rule 7004(a) provides that Federal Rule of Civil Procedure 4(f) "applies in an adversary proceeding."  Federal Rule of Civil Procedure 4(f)(1) provides that an individual in a foreign country may by served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

### B. **Motion to Vacate the Orders and Judgments**

#### i. **Burden of proof**

The Motion argues that the burden of proof is on Holdings to demonstrate that the Court had personal jurisdiction over Kertsikoff as to the Orders and Judgments that the Motion seeks to vacate.  Dkt. No. 2077 (Motion) at 2 (citing *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986) ("When either subject matter or personal jurisdiction is contested under Rule 60(b)(4), the burden of proof is properly placed on the party asserting that jurisdiction existed."));  Dkt. No. 2087 (Reply) at 2.  Holdings responds that the burden lies with the movant. Dkt. No. 2083 (Response) at 13 (citing *In re Richardson Foods, Inc.*, 667 B.R. 500, 512 (Bankr. S.D.N.Y. 2025) ("The movants bear a heavy burden because Rule 60 provides extraordinary relief and is, therefore, generally viewed with disfavor." (citation modified)); *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005) ("[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur.")).  Holdings asserts that Kertsikoff received

8

actual notice of all relevant proceedings. Dkt. No. 2083 (Response) at 17 & n.12. Kertsikoff

contends that he only received notice after a bank account in his name was frozen, and the funds

therein were subsequently ordered turned over to Holdings by this Court. Dkt. No. 2077

(Motion) at 4, 13; Dkt. No. 2087 (Reply) at 6–7. In light of Kertsikoff's extended and extensive

involvement in this case, discussed further below, the Court agrees with Holdings that Kertsikoff

had actual notice of all relevant proceedings and delayed in bringing the Motion. Moreover,

while Kertsikoff disputes his actual notice of the Underlying Motions, he cannot dispute his

actual notice of the original proceeding in which the Underlying Motions were filed – this very

bankruptcy case in which he participated in multiple ways. Accordingly, the burden lies on

Kertsikoff. *Burda Media, Inc.*, 417 F.3d at 299.

### ii.  **Service under the Hague Convention**

The Motion principally argues that this Court lacks personal jurisdiction over Kertsikoff

because Holdings served the Underlying Motions on Kertsikoff by mail or email, and not personal

service as purportedly required by Article 10 of the Hague Convention. Dkt. No. 2077 (Motion)

at 2–5; Dkt. No. 2087 (Reply) at 3–7; *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*,

164 F.4th 164, 170 (2d Cir. 2025) (holding that email service on China-based defendants was

improper under Federal Rule of Civil Procedure 4(f) given China's objection to service by the

methods provided under Article 10 of the Hague Convention). Holdings argues that "at the time

the Court first approved of the email service . . . there was . . . an *arguable basis* for email service,"

stating that "the Second Circuit has since held otherwise in *Smart Study*." Dkt. No. 2083

(Response) at 16. However, Holdings argues further that the Hague Convention "contains special

and more lenient rules applicable to cases, like this one, involving the need for 'provisional or

protective measures.'" *Id.* at 16–17 (citing *Fox Corp. v. Media Deportes Mexico, S. de R.L. de*

9

*C.V.*, 820 F. Supp. 3d 299, 307–08 (S.D.N.Y. 2026)). Accordingly, Holdings argues that "even in the wake of *Smart Study*, the manner of service of the papers underlying the . . . Orders and Judgments was appropriate under the Hague Convention." *Id.* at 17. Kertsikoff replies that Holdings "downplays" *Smart Study*, and that *Fox Corp.* is distinguishable, as that "court permitted email service of a motion seeking a temporary restraining order and a preliminary injunction because of the urgency involved," and that "[n]o such urgency was present here." Dkt. No. 2087 (Reply) at 6.

The Court agrees with Holdings and the District Court in *Fox Corp.* 820 F. Supp. 3d at 306–08. As in *Fox Corp.*, the Court here previously held that mail and email service upon Kertsikoff was authorized prior to *Smart Study*. *Id.* at 306; *see, e.g.,* Dkt. No. 1468 (Feb. 20, 2025 Hr'g Tr.) at 92:3–6; Dkt. No. 1874 (Oct. 31, 2025 Or. Imposing And Increasing Sanctions Against The Violating Parties) ¶ 6; *see also* Dkt. No. 1933 (Dec. 30, 2025 Judgment); Dkt. No. 2009 (May 11, 2026 Supplemental Judgment Against Vassilis Kertsikoff). Also as in *Fox Corp.*, here the Court concludes that "*Smart Study's* holdings do not invalidate the Court's exercise of jurisdiction to either (1) grant plaintiffs' motions for temporary injunctive relief; or (2) hold [defendant and its affiliate who had appeared before the Court] and their co-contemnors in civil contempt and impose appropriate sanctions on them." 820 F. Supp. 3d at 306. "*Smart Study* does not address the scope of a district court's jurisdiction to order, in case of urgency, any 'provisional or protective measures,' even where usual Hague Convention service has not been effectuated." *Id.*

As Kertsikoff correctly points out, *Fox Corp.* addressed a temporary restraining order and a preliminary injunction. Dkt. No. 2087 (Reply) at 6. Kertsikoff, however, fails to address that *Fox Corp.* also imposed civil contempt and sanctions. 820 F. Supp. 3d at 307 ("[T]he Court has exercised jurisdiction only by entering temporary injunctive relief and by sanctioning

10

contumacious conduct. The text of the Hague Convention, as well as the well-reasoned opinions

of other courts that have interpreted it, fully support the conclusion that the Hague Convention

authorizes the Court to do so[.]”). Moreover, the Orders and Judgments to one extent or another

all relate back to violations of or attempts to undermine this Court's unstayed Confirmation Order,

which enjoined all actions taken to interfere with the implementation or consummation of the plan

of reorganization. Dkt. No. 1223 (Confirmation Order) at §§ 5(iii),[6] 12.[7] Thus, as in *Fox Corp.*,

at issue in this case are both injunctive relief and sanctions resulting from contumacious conduct.

There thus was and has been the same level of urgency here as was contemplated in *Fox Corp.*

Smart Study*, and Kertsikoff's argument here, rests on Article 10 of the Hague Convention,

and a country's objection to service thereunder through "postal channels." 164 F.4th at 170; Dkt.

No. 2077 (Motion) at 2–3; Dkt. No. 2087 (Reply) at 5–6. However, "Article 15 [of the Hague

Convention] also preserves a judge's authority to 'order, in case of urgency, any provisional or

protective measures.'" *Smart Study*, 164 F.4th at 167 (quoting Hague Convention, art. 15(3)); *Fox*

---

[6] "**Plan Implementation Authorization.** . . . In connection with actions taken pursuant to this Paragraph 4 and all other actions required by the Plan and this Confirmation Order to effectuate, implement, or consummate the Plan and the transactions contemplated therein, the Debtors are hereby authorized and directed to take or not take any and all actions as instructed by the Petitioning Creditors and shall not take any actions inconsistent with the Plan or this Confirmation Order without the prior written consent of the Petitioning Creditors or further order of the Court." Dkt. No. 1223 (Confirmation Order) at § 5(iii).

[7] "**Exculpation and Injunction Provisions.** The injunctions, exculpations, and related provisions set forth in Article X of the Plan are incorporated herein in their entirety, and, in accordance with Bankruptcy Rule 3020(c)(1), are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further notice to or order or action on the part of this Court or any other party. Upon entry of this Confirmation Order, all Holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan or interfering with any distributions and payments contemplated by the Plan." Dkt. No. 1223 (Confirmation Order) at § 12.

*Corp.*, 820 F. Supp. 3d at 307. "Article 15(3) does not impose any requirements regarding the form of service, electronic or otherwise, that is required before a court may order such measures." 820 F. Supp. 3d at 307.

"[T]he entry of temporary injunctive relief and the imposition of civil contempt sanctions squarely fall within the category of 'provisional or protective measures[.]'" *Id.* at 308. "Both a temporary restraining order and a preliminary injunction are 'protective' in that they are designed to prevent irreparable injury that would otherwise likely occur while litigation continues." *Id.* "Temporary injunctive relief is also, by definition, 'provisional' because both a temporary restraining order and a preliminary injunction remain in force only until a court renders a subsequent decision on the merits." *Id.*

"Likewise, civil contempt sanctions are inherently 'protective' in that a court has authority to impose such sanctions when its orders to preserve the status quo . . . are violated." *Id.* (citation modified); *see also Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004) ("The imposition of civil contempt sanctions may serve dual purposes: *to secure future compliance with court orders* and to compensate the party that has been wronged." (emphasis added)). "Civil contempt sanctions are also 'provisional,' lasting only as long as the contemnor persists in the contumacious conduct." *Fox Corp.*, 820 F. Supp. 3d at 308. As all of the Orders and Judgments that the Motion seeks to vacate stem from Kertsikoff's contumacious conduct, the Orders and Judgments all concern provisional and protective measures. *Id.* Indeed, as noted above, *supra* nn. 6–7, this Court's Confirmation Order enjoined Kertsikoff and others from taking any actions to interfere with the implementation or consummation of the plan of reorganization.

Accordingly, the Court concludes that the service of the Underlying Motions was

authorized pursuant to Article 15 of the Hague Convention, and thus complied with Federal Rule of Civil Procedure 4(f).[8] Moreover, as discussed more below, in light of Kertsikoff's participation in this case, the Court also concludes that the service of the Underlying Motions was otherwise reasonably calculated to give notice to Kertsikoff of the proceedings relating to the Orders and Judgments.

The Court also agrees with Holdings that Kertsikoff has consented to this Court's jurisdiction.  Dkt. No. 2083 (Response) at 14–15; *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 ("[A]n individual may submit to the jurisdiction of the court by appearance . . . . A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court."); *In re Bozel S.A.*, 434 B.R. 86, 98 (Bankr. S.D.N.Y. 2010) ("[Debtor's sole director] purposefully availed himself of the protections afforded by U.S. law by signing and filing for the Debtor's Chapter 11 petition in New York."); *see also In re Eletson Holdings Inc.*, No. 25-cv-1312, 2025 U.S. Dist. LEXIS 187947, at *78 n.19 (S.D.N.Y. Sept. 22, 2025) ("Sanctions can be imposed on a third party when that party was the major shareholder, chief executive, and only person affiliated with the defendant to have a substantive role in the litigation, or where the party had aligned himself closely with Defendants in the litigation." (citation modified)).  As Holdings argues and Kertsikoff does not dispute, "Kertsikoff was one of the principals of pre-reorganized Holdings, a company that *voluntarily* sought chapter 11 relief in this Court."  Dkt. No. 2083 (Response) at 14; Dkt. No. 1020 (Aug. 26, 2024 Kertsikoff Declaration) at ¶¶ 1,4; *see also* Dkt. No. 1021 (Aug. 26, 2024 Hadjieleftheriadis

---

[8] Kertsikoff also cites to *In re Teknek, LLC*, 512 F.3d 342 (7th Cir. 2007).  Dkt. No. 2077 (Motion) at 4.  That case did not contemplate – and certainly did not refute – that service in the manner of the Underlying Motions was authorized pursuant to Article 15 of the Hague Convention as a provisional or protective measure.

Declaration) at ¶ 25; *Eletson Holdings, Inc. v. Levona Holdings, Ltd.*, No. 23-cv-7331, 2026 U.S. Dist. LEXIS 5528, at *3–4 (S.D.N.Y. Jan. 12, 2026) ("Kertsikoff served as the chairman, president, and director of Eletson Gas, and as the director of Family Unity Trust Co. ("Family Unity") . . . . Family Unity [was a] controlling shareholder[] of Holdings . . . owning 30.7% of the common shares of Holdings."). Kertsikoff was actively involved in the case, submitting at least ten declarations, including a declaration in support of first-day relief and a declaration in support of confirmation of the Debtors' proposed plan. Dkt. Nos. Nos. 123, 161, 236, 248, 290, 381, 516, 580, 986, 1020. Kertsikoff also was deposed, and testified at the confirmation hearing. Dkt. No. 548 Ex. A; Dkt. No. 1130 (Sept. 11, 2024 Hr'g Tr.) at 197:18–21. He was involved in the Debtors' proposed plan of reorganization. Dkt. No. 1130 (Sept. 11, 2024 Hr'g Tr.) at 133:7–16 (Vasilis Hadjieleftheriadis testifying that he, "Laskarina, and Vassilis Kertsikoff had the primary role in [plan] negotiations"), 203 (Kertsikoff testifying as to his involvement). He also submitted a ballot on behalf of a majority shareholder. Dkt. No. 2084 ("Koslof Declaration") Ex. A.

Kertsikoff's only argument to the contrary is the bare assertion that "minimum contacts are lacking here," and his argument that this is "particularly" so given that the case commenced as an involuntary proceeding is obviously undermined by Holdings' subsequent consent to convert to a voluntary proceeding. Dkt. No. 2077 (Response) at 4–5; Dkt. No. 215 (Sept. 25, 2023 Or. converting involuntary chapter 7 cases to voluntary chapter 11 cases).

For the above stated reasons, the Motion is DENIED.

The request for a temporary restraining order is DENIED as moot. Moreover, Kertsikoff has failed to establish irreparable harm absent a restraining order: money damages do not establish irreparable harm, and neither does his potential incarceration for defying this Court's orders. *See, e.g., We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021) ("Economic harms . .

. [can] be remedied with money damages, and [therefore] . . . fail[] to demonstrate . . . irreparable harm[.]"); *Int'l Union v. Bagwell*, 512 U.S. 821, 828 (1994) ("[T]he  contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." (citation modified)).

## V.      CONCLUSION

The Motion is DENIED.

**IT IS SO ORDERED.**

Dated:  August 3, 2026                            /s/ John P. Mastando III
       New York, New York               HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE