UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ELETSON HOLDINGS INC.,[1] | Case No. 23-10322 (JPM) |
| Debtor. | |

**MEMORANDUM OPINION AND ORDER GRANTING ELETSON HOLDINGS INC.'S MOTION FOR AN ORDER AUTHORIZING TURNOVER UNDER § 542(e) OF THE BANKRUPTCY CODE AND CONFIRMING TRANSFER OF ATTORNEY-CLIENT PRIVILEGE**

[1] Prior to November 19, 2024, the debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Debtors"). On March 5, 2025, the Court entered a final decree and order closing the Chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on March 5, 2025, all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the Chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I. INTRODUCTION

Before the Court is Eletson Holdings Inc.'s ("Eletson" or "Holdings") Motion For An Order Authorizing Turnover Under § 542(e) Of The Bankruptcy Code And Confirming Transfer Of Attorney-Client Privilege ("Motion"), dated August 14, 2026. Dkt. No. 2094.[2]

In opposition to the Motion are Riveron, RTS LLC's ("Riveron") (I) Limited Objection To Eletson Holdings Inc.'s Motion For An Order Authorizing Turnover Under § 542(e) Of The Bankruptcy Code And Confirming Transfer Of Attorney-Client Privilege, And (II) Reservation Of Rights ("Riveron's Objection"), dated August 25, 2026, Dkt. No. 2098,[3] and Reed Smith LLP's ("Reed Smith") Opposition To Motion For An Order Authorizing Turnover Under § 542(e) Of The Bankruptcy Code And Confirming The Transfer Of Attorney-Client Privilege ("Reed Smith's Objection"), dated August 25, 2026, Dkt. No. 2100.

The Court is also in receipt of Holdings' reply to Reed Smith's Objection ("Reply"), dated August 28, 2026, Dkt. No. 2104, and Holdings' revised proposed order ("Revised Proposed Order"), dated August 28, 2026, Dkt. No. 2105.

The Court held a hearing on the Motion on September 1, 2026 ("Hearing").

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and

[2] All references to Dkt. No. refer to docket entries in this case, except where preceded by 2d Cir. No. xx-xxx or S.D.N.Y. No. xx-cv-xxxx, which refer to docket entries in cases in the Second Circuit and Southern District of New York respectively.

[3] At the Hearing, Riveron stated that it had no objection to the Motion given the revisions in the Revised Proposed Order, and accordingly Riveron's Objection is not further discussed in this Opinion and Order.

(b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III. BACKGROUND

The Motion seeks an order "(i) authorizing former advisors and professionals of Holdings and any of its affiliates and subsidiaries . . . to turn over all books, records and other documents and information developed and maintained in the course of, or in connection with, the former professionals' representation of Eletson that relate to the property, financial affairs and the Chapter 11 estates, and (ii) confirming that the attorney-client privilege held by Holdings prepetition with respect to such former professionals remains with Holdings and is now controlled by its new management following the Effective Date." Dkt. No. 2094 at 1–2.[4]

Reed Smith's Objection argues that: 1) the Motion seeks "nearly identical relief" as to that granted in a turnover over by the District Court in the vacatur proceeding before that court, S.D.N.Y. No. 23-cv-7331, Dkt. Nos. 269 (Feb. 14, 2025 Or.), 270 (Feb. 14, 2025 Hr'g Tr.) at 106–115 ("District Court's Turnover Order"); 2) Reed Smith appealed the District Court's Turnover Order and obtained a stay before the Second Circuit pending appeal, 2d Cir. No. 25-445, Dkt. No. 66 (June 25, 2025 Or.) ("Second Circuit's Stay Order"); and the Motion "invites this Court to ignore the Second Circuit's [Stay Order]." Dkt. No. 2100 at 1–2, 4–5. Reed Smith's Objection states that the Motion concedes that "a subset of the Eletson Client File is the subject of a currently

---

[4] The Motion defines the Eletson Client Files as "the client files developed and maintained in the course of, or in connection with, the representation of the Debtors." Dkt. No. 2094 at 2.

The Motion defines Former Professionals to include: 1) Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), legal counsel to Eletson on restructuring prior to filing for bankruptcy; 2) Reed Smith LLP, prior bankruptcy counsel to Eletson; 3) Dr. Harold Furchtgott-Roth, an economic expert for Eletson in the bankruptcy; 4) Riveron, financial advisor to Eletson; and 5) Investments and Finance Limited, financial advisor to Eletson. *Id.* at 3.

pending appeal," but nonetheless the Motion seeks an order to turn over all client files, and does not identity what the "subset" is. *Id.* at 2, 7–8. Reed Smith's Objection thus argues that the Court should deny the Motion in light of the Second Circuit's Stay Order, the pending appeal of the Turnover Order, a separate pending appeal purportedly of the plan confirmation (in which the Second Circuit will potentially rule on who controls Eletson and privilege issues that implicate the Motion), as well as this Court's recent stay of discovery in the pending adversary proceeding before this Court. *Id.* at 2, 7–11. Reed Smith also argues that complying with the Motion would be "extraordinarily burdensome." *Id.* at 10. Reed Smith's Objection asserts in the alternative that § 542(e) does not authorize the requested relief, as Holdings seeks "materials of non-debtor clients and Reed Smith's own internal and defense files," or otherwise privileged material, which goes beyond § 542(e)'s language encompassing "the debtor's property or financial affairs." *Id.* at 3, 11–13. Reed Smith's Objection also argues that "[t]he client's transfer of control to an opposing party does not give that party unfettered access to privileged communications regarding matters on which the parties are now opposed." *Id.* at 13 (citing *Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 671 (1996)).

The Reply argues that the Reed Smith Objection "fundamentally distorts the purpose of the Motion and the relief sought," which only "seeks fundamental and routine relief." Dkt. No. 2104 at 2. The Reply asserts that "[t]he materials in question are property of Holdings and should have been handed over long ago consistent with the Plan and Confirmation Order." *Id.* The Reply argues that the Revised Proposed Order "makes it overtly explicit" that the relief sought does not contravene the Second Circuit's Stay Order. *Id.* at 2–5. The Reply further asserts that the confirmed bankruptcy plan and confirmation order are unstayed, fully enforceable, and that Holdings seeks the turnover of property pursuant to the confirmed plan and confirmation order.

*Id.* at 5–7. The Reply states that the District Court has held that *Tekni-Plex, Inc.* is "inapplicable" and "does not apply to a bankruptcy proceeding." *Id.* at 7–8. The Reply states that the Motion does not seek materials of "non-debtor clients and Reed Smith's own internal and defense files." *Id.* at 9.

## IV. LEGAL ANALYSIS

### A. Legal Standard

"Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e).

> The legislative history indicates that this subsection was designed to deprive accountants and attorneys of the leverage they held under state law liens to receive payment in full ahead of other creditors when the information they hold is necessary to the administration of the estate, but that it was not intended to undercut any applicable privilege such as the attorney-client privilege.

*In re O.P.M. Leasing Services, Inc.*, 13 B.R. 64, 69–70 (S.D.N.Y. 1981); *see also Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 471 (Bankr. S.D.N.Y. 2006) ("§ 542(e) was intended by Congress to apply to professionals holding certain documentation relating to a debtor's property or financial affairs."). A turnover action may be commenced by the trustee or the debtor on behalf of the bankruptcy estate. *In re Herrera*, 390 B.R. 746, 748 (Bankr. S.D. Fla. 2008) (granting debtors' motion pursuant to § 542(e) and rejecting debtors' former attorney's argument that § 542(e) "is inapplicable here since § 542(e) provides authority for a trustee to obtain documents, not authority for a debtor to demand production"); 5 Collier on Bankruptcy ¶ 542.07 (16th ed. 2026).

### B. Turnover Motion

The District Court's Turnover Order held that "Reed Smith is ordered to turn over to Petitioners' counsel of record Reed Smith's Eletson client file as described in the oral ruling." S.D.N.Y. No. 23 cv-7331, Dkt. No. 269 (Feb. 14, 2025 Or.). At the February 14, 2025 hearing, the District Court stated:

> The motion to compel . . . is granted. Eletson Holdings seeks (1) the entire file maintained by Reed Smith in any matter wherein it represented Eletson Corp. or Eletson Holdings in relation to the arbitration award, the enforcement thereof or the monetization of it and the disputes underlying the award; (2) all communications between Eletson Corp., Eletson Holdings, and/or any agents thereof, including Reed Smith, and any third party relating to the arbitration; and (3) unredacted time sheets through the current date relating to the arbitration. . . . To be clear, however, [the motion to compel] is not limited to the file in connection with this action. It applies to the files in connection with the arbitration proceeding and award, this enforcement action to confirm or, alternatively, vacate the award, and efforts to monetize it. Reed Smith is ordered to produce the requested documents, subject to the exception that it may maintain documents it created while providing copies of the same and is ordered to produce a log in the event that it withholds any documents from the Eletson client file.

S.D.N.Y. No. 23 cv-7331, Dkt. No. 270 (Feb. 14, 2025 Hr'g Tr.) at 106–07.[5] The District Court also overruled Reed Smith's objection that "the request is overbroad because it is not limited to files in connection with this action, but applies more generally to the award and the arbitration proceedings that gave rise to these proceedings," as "the arbitration proceedings are inextricably intertwined with these proceedings." *Id.* at 113.

The Second Circuit then issued a stay of the District Court's Turnover Order pending appeal of that order. 2d Cir. No. 25-445, Dkt. No. 66 (June 25, 2025 Or.). The Second Circuit "decline[d] to . . . stay the district court or bankruptcy court proceedings" in their entirety, but stated its "trust that both courts will tailor their proceedings to protect the privileged property at

[5] The Reply accordingly defines Vacatur Documents as "materials relating to the arbitration award, the enforcement thereof, or the monetization of it and the disputes underlying the award." Dkt. No. 2104 at 2.

issue." *Id.*

The Motion states the following regarding that pending appeal before the Second Circuit:

> Holdings is aware that turnover of a subset of the Eletson Client File is the subject of a currently pending appeal before the Second Circuit [Case No. 25-445] relating to a turnover order entered by the District Court in the context of the vacatur proceeding [Case No. 1:23-cv-7331] (the "Vacatur Proceeding"). Thus, Holdings is willing to hold enforcement of this order with regard to documents relating to the Vacatur Proceeding in abeyance pending outcome of the Second Circuit decision. Holdings respectfully requests that all other recorded information, documents, books and records developed and maintained in the course of, or in connection with, the representation of the Debtors, including relating to the Debtors' property and financial affairs, be turned over upon entry of the Proposed Order.

Dkt. No. 2094 at 2 n.2.

Relatedly, on June 11, 2025, this Court ordered and authorized Microsoft Corporation to provide administrator level account access to Holdings and its designee. Dkt. No. 1691 ("Microsoft Order"). On June 25, 2025, Louis Solomon appealed the Microsoft Order on behalf of purported "Provisional Holdings" to the District Court. Dkt. No. 1703 (Notice of Appeal). On August 26, 2025, the District Court granted Levona's motion to compel production of, inter alia, documents obtained pursuant to the Microsoft Order. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2025 U.S. Dist. LEXIS 165962, at *18 (S.D.N.Y. Aug. 26, 2025). On October 14, 2025 the District Court dismissed the appeal of the Microsoft Order. *In re Eletson Holdings Inc.*, No. 25-cv-5753, 2025 U.S. Dist. LEXIS 202761, at *3–4 (S.D.N.Y. Oct. 14, 2025) (dismissing appeal of Microsoft Order and finding that "[t]hough the lawyers who filed this appeal are real, the entity on whose behalf they purport to speak is not . . . 'Provisional Eletson Holdings' has no legal existence and no standing to appeal orders of the Bankruptcy Court"). On October 21, 2025, Louis Solomon appealed the District Court's dismissal to the Second Circuit. S.D.N.Y. No. 25-cv-5753, Dkt. No. 26 (Notice of Appeal). On October 31, 2025, the Second Circuit declined Reed Smith's motion for "an injunction barring the current owners of Eletson Holdings,

Inc. (under the terms of the bankruptcy reorganization plan), and other persons and entities from accessing certain documents contained in a Microsoft account," and also declined to stay the District Court's August 26, 2025 order granting Levona's motion to compel pursuant to the Microsoft Order. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2d Cir. No. 25-445, Dkt. No. 105. The Second Circuit denied the motion on procedural grounds, as Reed Smith failed to seek the relief first in the District Court, but also found on the merits that, "in any event, the Movants have not made a showing that an injunction or stay is justified." *Id.* Reed Smith subsequently stipulated before the Second Circuit to withdraw its appeal of the District Court's dismissal of the appeal of the Microsoft Order. 2d Cir. No. 25-2673, Dkt. No. 47.

As a preliminary matter, the Court of course agrees with Reed Smith that this Court is bound by the rulings of the Second Circuit. Reed Smith's Opposition at 8–9. However, as argued in the Reply, and by Holdings at the Hearing, the Court concludes that the Motion does not seek relief as to documents within the scope of the Second Circuit's Stay Order. Reply at 2–5, 9.[6] For example, Holdings seeks the following documents that are not encompassed by the Second Circuit's Stay Order: "documents generated in connection with, among other things, Holdings' day-to-day business operations, contractual obligations, the restructuring process, claims that have been asserted against or by Holdings and its subsidiaries, postpetition financing matters, and Plan negotiations, among other categories of documents." *Id.* at 4, 10 ("The files at issue in the Motion,

[6] The Court finds Reed Smith's citation to *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20-cv-3699, 2024 U.S. Dist. LEXIS 104185, at *6 (S.D.N.Y. June 6, 2024), unpersuasive. Reed Smith Opposition at 9 ("Deference to the Circuit in this instance is also required here, as 'compel[ling]' disclosure of documents 'poses the threat of inconsistent rulings about whether or not the [documents] [are] protected from disclosure.'" (citing *PDV USA, Inc.* at *6)). As discussed further in the text, the Court finds that the Motion does not seek documents that run afoul of the Second Circuit's Stay Order. Moreover, the Court in *PDV* was considering a motion to compel production of a document whose protected status was directly being considered on appeal to the Eleventh Circuit. *PDV USA, Inc.*, 2024 U.S. Dist. LEXIS 104185, at *6.

which may include bankruptcy-specific records concerning the Chapter 11 case, DIP financing, plan negotiations, and records relating to the Debtors' financial affairs generally, including contractual obligations and potential claims and causes of action asserted by or against third parties are categorically distinct from the materials covered by the Turnover Order Appeal, which is limited to files relating to the arbitration award, its enforcement, and its monetization.").

The Court finds that such documents fall within the scope of § 542(e), as they "relat[e] to the Debtor's property or financial affairs," and the confirmed Plan provides that the post-confirmation Debtor retains all causes of action (and thus includes claims that could by brought by the trustee pursuant to § 542(e)).[7] *Int'l Asset Recovery Corp. v. Thomson McKinnon Sec. Inc.*, 335 B.R. 520, 525 (S.D.N.Y. 2005) ("[T]he Code permits the post-confirmation debtor to retain the powers of a trustee if the confirmed plan so provides."); *see* Dkt. No. 1132 (Plan) at § 5.2(c) (vesting all estate property and causes of action in Holdings upon the effective date and stating that "Reorganized Holdings may operate its business and may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules"); *see also id.* § 5.15(b) ("[A]ny Cause of Action that a Debtor may hold against any Person or Entity shall vest in Reorganized Holdings."), § 7.6 (disallowing claims held by persons or entities against whom "any of the Debtors or Reorganized Holdings has commenced a proceeding asserting a Cause of Action under section[] . . . 542"); Motion at 5–6.

Further, as argued by Holdings (and as found on numerous occasions by this Court and the

---

[7] And, as cited above, "[a] turnover action may be commenced by the trustee or the debtor on behalf of the bankruptcy estate." 5 Collier on Bankruptcy ¶ 542.07 (16th ed. 2026); *In re Herrera*, 390 B.R. at 748.

District Court), the confirmed plan is effective, no party sought or obtained a stay of the order confirming the plan, and the relevant parties are thus bound by the terms of the confirmed plan and the confirmation order. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2025 U.S. Dist. LEXIS 165962, at *10 (S.D.N.Y. Aug. 26, 2025) ("Reed Smith's representation of Holdings was terminated as a result of the Confirmation Order which became effective in November 2024 and was not appealed or stayed."); *In re Eletson Holdings Inc.*, No. 25-cv-1312, 2025 U.S. Dist. LEXIS 187947, at *48 (S.D.N.Y. Sept. 22, 2025) ("[T]he Confirmation Order is binding on the former shareholders that participated in the bankruptcy process and on their counsel[.]").

Reed Smith argues that granting the Motion would result in "an extraordinarily burdensome , and unnecessary, review process." Reed Smith's Objection at 10. The Court agrees with Holdings that such an "objection is no basis to deny an owner its property." Reply at 10. Indeed, Reed Smith does not argue or cite a case that stands for the proposition that this purported burden should be considered when deciding whether to grant or deny a motion pursuant to § 542(e). As proposed by Holdings, Reed Smith can (and shall) "promptly turn over the plainly non-[Vacatur Documents], including contracts, corporate and financial records, third-party correspondence, and materials concerning the Chapter 11 case, DIP financing, and Plan negotiations, and identify on a log any documents they contend fall within the Vacatur Documents or are otherwise withheld, preserving those for resolution if and when the [Second Circuit's] Stay Order is lifted." *Id.*

Lastly, the Court agrees with Holdings that the District Court has ruled that *Tekni-Plex,*

*Inc.* does not apply to this bankruptcy proceeding. Reply at 7–8; S.D.N.Y. No. 23-cv-7331, Dkt. No. 270 (Feb. 14, 2025 Hr'g Tr.) at 108–109 ("The exception recognized in [*Tekni-Plex*] is not applicable. First, *Tekni-Plex* does not apply to a bankruptcy proceeding in federal court. . . . Second, by its terms, *Tekni-Plex* is limited to a merger context in which the claims of the acquiring company did not derive from its ownership of the acquired company, but from rights it retained."); *Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 129–130 (N.Y. 1996). In any event, the Court agrees with Holdings that, as to the information Holdings seeks in the Motion – concerning Holdings' property or financial affairs that are not within the scope of the Second Circuit's Stay Order – *Tekni-Plex, Inc.* supports granting the Motion. Reply at 8.[8] *Tekni-Plex* concerned a post-merger company that initiated an arbitration against an officer and sole-shareholder of the pre-merger company, alleging breach of representations and warranties as to the merger. *Tekni-Plex, Inc.,* 89 N.Y.2d at 127–29. To represent him in the arbitration, the officer and sole-shareholder of the pre-merger company retained the law firm that had also served as counsel to the pre-merger

[8] The Court also concludes that *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30, 36 (1997), does not support denial of the Motion. Reed Smith's Objection at 12–13 ("An attorney is under no duty to disclose its client files if doing so 'might violate a duty of nondisclosure owed to a third party, or otherwise imposed by law.'" (citing *Sage Realty Corp.* at 37)); Reply at 8–9. The Court in *Sage Realty* held in favor of "an expansive general right of the client to the contents of the attorney's file, upon termination of the attorney-client relationship." 91 N.Y.2d at 36. That weighs towards granting the Motion, which is based on a client's (Holding's) request for contents of its prior-representation's (Reed Smith's) files. As quoted by Reed Smith, that Court did provide for an exception where disclosure "might violate a duty of nondisclosure owed to a third party," but Reed Smith does not identify who the purported "third party" is in the present case apart from stating that "the documents [Holdings] requests must give way to the duty of nondisclosure that Reed Smith owes to others." Reed Smith Opposition at 12. The Court agrees with Holdings that, insofar as Reed Smith is alluding to its purported obligation to the former directors, officers, and owners of Holdings, or Eletson Corporation, that the "corporate privilege as to the Debtors' materials passed to Holdings on the Effective Date." Reply at 9. Moreover, as stated by Holdings, "[t]o the extent any Former Professional in fact holds materials belonging to a truly independent client, Holdings does not seek them and the Revised Proposed Order excludes them; the remedy is to log any such materials, not to withhold Holdings' entire file." *Id.*

company. *Id.* at 129. As argued by Holdings, the Court in *Tekni-Plex* – in considering what confidential communications between the pre-merger company and counsel passed to the post-merger company – drew a distinction between "general business communications and those relating to the merger negotiations." *Id.* at 130, 136. As to the former, the Court held that "the management of [the post-merger company] continue[d] the business operations of the pre-merger entity. Control of the attorney-client privilege with regard to confidential communications arising out of those operations . . . thus passed to the management of [the post-merger company]." *Id.* at 36 (citing *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well.")); *see also Tekni-Plex, Inc.,* 89 N.Y.2d at 133 ("*Weintraub* establishes that where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations."). The Court finds that this discussion in *Tekni-Plex* is the portion of that opinion relevant to the documents sought by the Motion, which, as discussed above, relate to the Debtor's property or financial affairs. As to communications regarding the merger negotiations, the Court in *Tekni-Plex* held that the post-merger company did not succeed to the pre-merger company's right to control the attorney-client privilege. 89 N.Y.2d at 138–39. However, as just noted, as to the information sought by the Motion, this exception does not apply, as the Motion (at this time) seeks documents relating to the Debtor's property or financial affairs and not those covered by the Second Circuit's Stay Order.

## V. CONCLUSION

The Motion is **GRANTED**. The Court will enter a separate order specifying the relief.

**IT IS SO ORDERED.**

Dated: September 15, 2026
New York, New York

/s/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE